# EXHIBIT 1

to Plaintiffs' Motion for a Preliminary Injunction

and a Stay Under 5 U.S.C. § 705

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SVITLANA DOE, et al., <br><br> Plaintiffs, <br><br><br> – *versus* – <br><br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, et al., <br><br> Defendants. | **Civil Action No.: 1:25-cv-10495-IT** |

**DECLARATION OF ALEJANDRO DOE**

I, Alejandro Doe, upon my personal knowledge, hereby declare as follows:

1.  I was born in Diriamba, Nicaragua, in May 2000. I am a national of Nicaragua.

2.  I currently live in Gainesville, Georgia. I have lived in Gainesville since I entered the United States.

3.  I entered the United States under the parole process for Nicaraguans, a component of the CHNV parole processes announced on January 6, 2023. My cousin—a U.S. citizen who lives in Washington—sponsored me through the program. I received travel authorization on May 15, 2024, and arrived in the United States on July 29, 2024. After spending hours at inspection at the airport, officers granted me a temporary two-year stay in the United States. I received work authorization pursuant to my parole in September 2024.

4.  I fled Nicaragua because of the physical danger my family faced and the untenable economic reality.

5.      In 2018, demonstrators in several Nicaraguan cities began protests against social security reforms decreed by President Daniel Ortega that raised income and payroll taxes while reducing pension benefits. The demonstrations—mostly involving elderly individuals, university students, religious leaders, and other activists—were immediately and heavily oppressed, and government and pro-government militia and security forces used live ammunition on protestors. Dozens of people were killed and scores injured in the initial days. After only a few months, the death toll reached upwards of three hundred. Countless others were imprisoned.

6.      Despite my fear, I attended marches with my family and friends, aware of the risks but determined to speak out for the lives lost and the injustices suffered. However, the Nicaraguan government eventually linked my family to the protests, actively persecuting my uncle and cousins. One day, government actors illegally raided my grandmother's house looking for them, but after an unsuccessful search, abducted my father from her home instead. All along the way to prison, they violently interrogated him, beating him in the ribs.

7.      Once there, prison staff continued to torture him. They would beat and psychologically abuse him, telling him that they were going to kill him and that he would never leave the prison. In the three days he spent in prison, the guards provided him food on only two occasions.

8.      When the government released my father, he was labeled an opponent of the regime, and our family decided we needed to leave the country. We felt we had no other option. When the United States announced the parole process for Nicaragua, my cousin, a U.S. citizen, submitted an application to sponsor my father. In August

2023, my father lawfully entered the U.S. with parole status. In 2024, my siblings and I followed him, also having been sponsored and having received parole status.

9.      In Nicaragua, the sociopolitical and economic situation makes it very difficult to earn a living wage. I held various jobs to provide for myself and my family, working as a tattoo artist and a street vendor. Together between these jobs, I averaged about $500 per month.

10.     I also studied Integral Communication Design at Universidad Politécnica de Nicaragua (Polytechnic University of Nicaragua). However, my school was one of the epicenters of the 2018 protests and subsequent governmental repression, and I was unable to return to school for some time. The government eventually seized control of my university, stripping its legal registration and renaming it to bring it under government management and control. By that point, I needed to work full-time to provide for myself and my family and I was not able to finish my studies.

11.     When I arrived in the U.S., it took some time to adapt to the many differences between Nicaragua and Georgia, including the food, climate, and the length of day. In Nicaragua, the length of day does not change much throughout the year given its proximity to the equator—the sun sets between 5:00–6:00pm. But when I arrived in Gainesville, the sun did not set until around 9:00pm. It also gets much colder in Gainesville. Nonetheless, the community in Gainesville is very welcoming and united.

12.     After I received work authorization in September 2024, I found work the following month producing marble bathroom panels. I have learned this trade since arriving in the United States.

13.    I first heard rumors about the termination of the CHNV parole processes toward the end of January, including that existing grants of parole could be revoked. This made me feel extremely worried about my family's safety and wellbeing. It was my goal to save as much money as possible while in the United States to have a better chance of success in Nicaragua upon our return.

14.    We are good people looking for a better future. We strive to follow the legal avenues to travel to the United States, even at great personal and financial sacrifice. My family sold many of our possessions to make the trip to the United States. But I found a sponsor for parole, I paid for my own flight, and I waited to work in the United States until I had work authorization. I pay taxes. I am self-sufficient here, and pay for everything I need, including my own rent each month.

15.    After all my family's sacrifice and efforts to follow the law, the prospect of having our parole cancelled, losing work authorization, and being subject to deportation feels like a betrayal. It would be devastating. We would lose everything we have worked so hard to achieve, and we would likely be forced to break apartment leases we have entered into, rendering us homeless. Because of this fear, my family and I have been sharing our bank account passwords with one another in case anything were to happen.

16.    I am afraid to leave my apartment. I have heard rumors and seen news of immigration officials showing up at jobsites, and while I was granted parole, I feel like I am in limbo and could be swept up in an enforcement action. Because I have to work to survive, however, I cannot afford to stay home from work. I am also

Catholic, and frequently attend religious services, but I have been staying home recently due to this fear.

17. On January 21, 2025, I submitted an application for asylum (Form I-589) based on my family's political persecution to United States Citizenship and Immigration Services, and on February 7, 2025, I traveled to Atlanta, Georgia to provide biometrics. Knowing I had a chance of asylum gave me some small degree of hope in the face of a sudden parole termination.

18. That is, until I learned the Trump administration also indefinitely paused processing all immigration applications from individuals who entered the U.S. pursuant to parole. This came as a gut punch. We are overwhelmed—parole and asylum were the only avenues that could keep my family safe. If we are no longer permitted to remain in the U.S., we would have to look for alternatives to go somewhere else, because we cannot safely return to Nicaragua.

19. For years, the Nicaraguan government has kept a close eye on individuals who apply for asylum in other countries, as it views those people as political dissidents. What's more, the Parliament loyal to the Ortega-Murillo dynasty recently engaged in law reform legalizing the banishment and denial of entry or exit to people deemed to be critics of Nicaragua, including Nicaraguan citizens. It is my understanding that thousands of individuals have been already stripped of their nationality and exiled, and I am aware of various individuals granted humanitarian parole in the United States that have been denied reentry into Nicaragua in the past few weeks. I am worried about what will happen if we are deported and cannot

reenter Nicaragua, or what will happen to my family given my family's history of political persecution by the State.

20.    Maintaining my parole status and continuing with my asylum application is critical for me, my family, and the community we are a pad of. I am participating in this lawsuit so that I, along with other individuals who are in the same position, can have our applications for immigration benefits processed, as they should be.

21.    I am willing to serve as a class representative on behalf of those who am similarly situated to me.

22.    I know that if the class is certified, I will be representing more than just myself in this case. I have spoken with the lawyers who represent me about what being a class representative means. I want to help everyone in my situation because we are all harmed by the indefinite pause on the processing of immigration applications benefits.

23.    For all of the above reasons, however, I fear having my real name become public in this lawsuit. I fear that if the U.S. government knows that I am participating, it will retaliate against me and my family and deport us all to Nicaragua. I fear that if we are deported, the Nicaraguan government will retaliate against us in turn as parolees, as asylum-seekers, and as a family previously designated by the government as "defectors" and "traitors." If I am not permitted to use a pseudonym in this lawsuit, I will likely decide not to participate. I cannot risk my safety and that of my family.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Gainesville, Georgia on February 28, 2025.

ALEJANDRO DOE

CERTIFICATE OF INTERPRETATION AND TRANSCRIPTION

I, Brandon Galli-Graves, certify that I am fluent in English and Spanish, that I am competent to

interpret between these languages, and that I transcribed the foregoing between English and

Spanish accurately. I further certify that I provided a translation of the foregoing to Alejandro

Doe in Spanish and that he affirmed that it is true and correct.


Executed: 2/28/2025

_____

Brandon Galli-Graves