# EXHIBIT 10

to Plaintiffs' Motion for a Preliminary Injunction
and a Stay Under 5 U.S.C. § 705

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, *et al*.,<br><br>   *Plaintiffs*,<br><br>   v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>   *Defendants*. | Case No.: 1:25-cv-10495-IT |

**DECLARATION OF KYLE VARNER**

I, Kyle Varner, upon my personal knowledge, hereby declare as follows:

1. I was born in 1984 in Glendora, California. I am a United States citizen.

2. I currently live in Spokane, Washington. I am a physician at Providence Holy Family Hospital in Spokane. In my personal capacity, I have been involved in supporting liberal and libertarian movements in Venezuela, including Vente Venezuela and Movimiento Libertario de Venezuela, for many years. I have also traveled to various countries in Latin America, including doing global health work at the Venezuelan border. I have seen first-hand the challenges faced by people in poverty in Venezuela. When I learned about the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV"), I knew I needed to get involved with that as well. It seemed too good to be true, a pathway through which U.S.-based sponsors could support people to come to the United States and help them start a new chapter of their lives here.

3. Between October 2022 and June 2023, I submitted applications to sponsor 79 individuals under the CHNV parole processes. Forty-eight of the applications were approved, and forty-three of those individuals are still in the United States now. Currently, two of them

have active parole status in the United States. The rest have applications for other kinds of immigration relief that have either been approved or are still pending. At least 31 have pending applications for asylum, TPS, or other immigration relief. I also have 32 other pending applications for CHNV sponsorship. All the people I have sponsored are Venezuelan, except for two – one Cuban individual and one Nicaraguan individual – whose applications are still pending. The first beneficiaries to arrive in the United States arrived in November 2022.

4. The people I have sponsored are individuals I already knew through my activism with the Venezuelan political movements, family members of individuals I already knew, or individuals who reached out to me on Facebook. As the CHNV process was rolling out, I posted on Facebook that I would be open to sponsoring people, and I received such an overwhelming response that I had to take the post down. Of the people who reached out to me on Facebook, I was drawn to the stories of people who were either stuck in Mexico or Central America with nowhere to go, or who described compelling asylum cases.

5. My beneficiaries include a son who was only able to pay for his mother's life-saving cancer treatment because he came to the United States and got a job here; a daughter who has been supporting her father and grandmother through her job here; and a mother and her young son who stayed with my parents for about eight months when they first arrived. My parents see the boy as their own grandchild now, and he calls them his grandparents. They still enjoy spending time together, including going fishing.

6. I identify as a Libertarian, and I strongly believe that immigration is the most important civil rights issue of our time. I feel that there is something fundamentally and morally wrong with treating people differently and giving them fewer rights simply because they

were not born in this country. At the core of this is a belief that people should have the ability to move freely and build their lives without restriction. My commitment to immigration advocacy and supporting immigrants in multiple capacities are an expression of my political beliefs, which are rooted in these fierce moral convictions.

7. Therefore, I am deeply committed to this parole process, and I have put countless hours of my time and untold resources into supporting the people I sponsored. I did the financial calculations immediately to determine how many people I could sponsor given my financial situation, and then I set about sponsoring as many as possible. First, it took me many hours to fill out all the applications. I would work during the day, then stay up late at night doing applications. One night, I even stayed up the entire night completing sponsorship forms. The first four applications that I submitted were approved very quickly. After that, we were waiting for a while on the others, so I contacted my Congressional representative's office multiple times to ask for their assistance in expediting the applications.

8. When the people I sponsored received approval to travel to the United States, I bought plane tickets for most of them. For some, I bought plane tickets twice because, when Texas and other states filed suit to terminate the CHNV parole processes, I contacted all my beneficiaries who had been granted parole and asked them if we could move up their travel date. I wanted to ensure they traveled before the court did anything to affect the process. That required buying a new plane ticket for a lot of people. Fortunately, they were all able to arrive safely in the United States.

9. After my beneficiaries arrived in the United States, I continued to provide support and provided significant amounts of resources to them to help them get settled quickly and

securely. Many of the people I sponsored lived with me for some period of time at first. I had twenty-five people in my house at one point. But I helped them find other safe housing, including co-signing some leases. I also rented properties I own to many of them, charging them reduced rates, helping pay for utilities, and providing favorable terms like no security deposit and month-to-month tenancy, which allowed them to be free of a fixed-term contract. At some points when I was waiting for sponsorship applications to be granted, I kept properties that I own vacant so that beneficiaries could live there when they were approved for parole. Often times this meant I missed out on renting it to other renters.

10. I also paid for most of my beneficiaries' work permit applications, which cost $410 each, and, after they got their work permit, I helped them with job applications. I bought SIM cards for their phones and helped many of them enroll in community college ESL (English as a Second Language) courses. For those who did not know how to drive, I taught a few to drive and found volunteers to help others learn. Finally, as a physician, I was able to help provide free medical care for minor health conditions, so they wouldn't have to go to the hospital. I helped translate and summarize Spanish-language medical records from Venezuela as well, so they could maintain continuity of care in the United States when they found providers. I essentially put my life on hold for about two years to provide for and support the people I sponsored through the CHNV parole processes. I wanted to make sure they were on solid footing as soon as possible, which would serve as a launching pad for their lives here and allow them to support their families and other loved ones.

11. I first got confirmation that the Trump administration was going to terminate the CHNV parole processes when my beneficiaries started messaging me, asking me what they should do and telling me how scared they were. I then read news reporting that processing of new CHNV applications had been terminated, and that existing grants of parole could be revoked. It was heartbreaking. Over the last few years, both my parents and I have gotten to know my beneficiaries well. I have connected with all of them and supported them as they navigated settling in a new country and the difficulties that come with that. If they become deportable, I may never see them again, and it is scary to think about what challenges and danger lie back in Venezuela if they were forced to go back.

12. Additionally, I am concerned about the individuals I have sponsored whose applications are now pending indefinitely. I put a lot of time and effort into understanding their stories and submitting their applications, and it is truly unfair that they are being deprived of a safe, legal pathway to the United States. Daily life in Venezuela, Nicaragua, and Cuba is not only challenging, but dangerous. I am very familiar with conditions in Venezuela in particular, and I know that my beneficiaries whose applications are now paused will continue to struggle with low wages and extreme poverty, violence and crime, and government systems that are not able to support the people that rely on them.

13. On February 19, I read news reporting that the administration was pausing processing of immigration benefits requests submitted by people who had come to the United States through the CHNV parole processes. Many of my beneficiaries who are in the United States have pending applications for asylum, TPS, or other immigration relief because it is unsafe for them to return to their countries of origin. If those applications are not adjudicated, they will be gravely harmed, not only because they will be deprived of the

right to access the U.S. immigration system in a fair and just way, but also because they could be forced to return to countries where it is dangerous and unsustainable for them.

14. I also put my own time and money into helping my beneficiaries apply for their affirmative immigration protections. I made sure that everyone knew that applying for asylum was an option and that they needed to do it within a year of arrival. In some cases, I lent money to help pay for lawyer fees. I helped many of them compile documents, recommended certified translator services, allowed them to use my printer and scanner, and connected and recommended them to attorneys. This time and money that I have put in will be lost if my beneficiaries' applications are not adjudicated.

15. To help the people I have sponsored who are in the U.S. prepare for the possibility that their parole could be revoked, I held meetings to teach people about their rights. I told my beneficiaries to memorize my phone number in case they are detained, and to give me any contact information I may need for their families or other loved ones. I told them to make plans for their kids in the event that they are detained. I have spent a lot of time educating my in Spokane beneficiaries and others in the immigrant community that it is not safe to travel to the adjoining state of Idaho, and that they should generally avoid rural areas because of anti-immigrant sentiment. It has been difficult explaining the concerns of anti-immigrant violence to people who came to the USA believing that this would be a place where they would be safe.

16. I have spent a lot of time researching alternative options for where people can go, and I'm trying to put some money away to be able to hire lawyers for people. I have also spent a lot of time just talking to my beneficiaries as they process this tremendous betrayal and

have to re-plan their lives and think through the huge implications this has for them. I have been trying to be as supportive as I can be.

17. Serving as a CHNV parole sponsor is by far the most important thing I have done in my life. I put so much time, money, and heart into supporting the people I have sponsored, including those whose applications are still pending, because I wanted to see them build a life here, be successful, and then be able to pay it forward and help their families and other people in their communities. It is very frustrating to have put a lot of time and money and effort into a process that the government is now reversing course on. My beneficiaries and I followed all the rules laid out by the government, and I worked hard to make sure that the people I sponsored had a strong start in a new country. It is difficult to see all that effort go to waste if the government goes back on its word and starts trying to deport them.

18. If the beneficiaries who are here lose their status and their work authorization, they will not be able to support themselves or their families, and they won't realize their full potential. I will definitely need to put more time and resources into making sure they have a place to live, including waiving rent for those who are renting properties of mine, and that they don't go hungry. I would never tell someone that I helped bring to the United States, "sorry, at this point, you're on your own." I would do everything I can to continue supporting them.

19. I am participating in this lawsuit so that I, along with other individuals who are in the same position, can have our sponsorship applications for CHNV parole processed, as they should be.

20. I am willing to serve as a class representative on behalf of those who are similarly situated to me.

21. I know that if the class is certified, I will be representing more than just myself in this case. I have spoken with the lawyers who represent me about what being a class representative means. I want to help everyone in my situation because we are all harmed by the indefinite pause on the processing of sponsorship applications for CHNV parole.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Spokane, Washington on March 13, 2025.

_____
Kyle Varner