# EXHIBIT 11

to Plaintiffs' Motion for a Preliminary Injunction
and a Stay Under 5 U.S.C. § 705

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SVITLANA DOE, *et al.*, <br><br>    *Plaintiffs,* <br><br>     v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br>    *Defendants.* | Case No.: 1:25-cv-10495-IT |

**DECLARATION OF WILHEN PIERRE VICTOR**

I, Wilhen Pierre Victor, upon my personal knowledge, hereby declare as follows:

1. I was born in Haiti in 1967. I arrived in the United States in August 1996 and became a U.S. citizen on October 10, 2002.

2. I currently live in Woburn, Massachusetts. I have lived in Woburn since 2013. I have three siblings who live in Massachusetts as well. I am employed as a Licensed Practical Nurse ("LPN") in a local nursing home.

3. Along with my two children (a 28-year-old daughter and a 17-year-old son), I live with my brother, his wife, and her three children (ages 7, 13, and 16), all of whom are from Haiti and came to the United States under the Cuba, Haiti, Nicaragua, Venezuela ("CHNV") humanitarian parole processes.

4. My brother and his family were approved to travel to the United States under CHNV parole in May 2024. His wife and her children arrived in the United States in June 2024, and my brother arrived shortly after in July 2024. All were granted two years of parole upon entry to the United States.

5.  In addition, I have applied to sponsor my niece (age 13), who is the daughter of my brother currently in the United States, as well as my cousin (age 50), for CHNV parole. Both are currently in Haiti, and their parole applications remain pending.

6.  I applied for a green card for my brother in 2007, and it remains pending. We are still waiting for U.S. Citizenship and Immigration Services ("USCIS") to schedule an interview for him. As my brother's green card application remained pending when the CHNV parole processes began, I decided to apply for CHNV parole for him and his family

7.  My brother is ineligible to apply for Temporary Protected Status ("TPS"), having arrived in the United States after the cutoff date. He does plan to apply for asylum.

8.  I first learned about the CHNV parole processes from news reports that described how people were applying to bring their family members experiencing dangerous conditions to the United States. My family and I were so excited to hear about it. Finally, there was a safe, legal pathway for my family members in Haiti to come to the U.S.

9.  I spent significant time and effort into gathering documentation for, filling out, and submitting the applications for my family members, and after my brother and his family received approval to travel to the U.S., I pooled money with other family members   to pay for their airfare from Haiti.  I also prepared my home to accommodate five additional people to live with me and my two children.

10. It was extremely urgent for my brother, his wife, and their children to leave Haiti given the political and socioeconomic conditions there. In my family's experience, Haiti does not currently have any meaningful law enforcement or government oversight, meaning people in Haiti live in a mostly lawless state, in constant danger of falling victim to

violent crimes such as murders and kidnappings.  Kidnapping for ransom also frequently occurs in Haiti.

11. Additionally, my brother had searched for a job in Haiti for over thirteen years, but he was unsuccessful.  His wife also did not have good employment prospects while in Haiti. While there, she sold things for a small business, but she did not make enough money to feed or care for their family. She and my brother relied on money from other family members to get by.

12. If forced to return to Haiti, my brother's wife's children would also not be able to receive a proper education, as they would not be able to attend school consistently there. When they were back in Haiti, there was often gang violence, including gunfire, in the streets of where they lived, which prevented them from going outside at all. My brother's wife's children often could not go outside to attend school for up to a week due to the violence.

13. The conditions in Haiti that led to my brother and his family's departure for the United States have persisted for a long time and were the reason I submitted a green card application on his behalf in 2007—nearly twenty years ago. The situation in Haiti has only worsened since then.

14. Because of the conditions in Haiti, my brother is very concerned and anxious about the possibility of having to return there because the region he previously lived in is now even more dangerous than before, having been evacuated by residents and replaced with gangs.  He cannot imagine what life there would be like if he, his wife, and her three young children were forced to return. I was so relieved that my brother and his family were able to come to the U.S. through CHNV parole and be safe here, especially because of their young children. When my sister and I met them at the airport, we felt so much

3

happiness, relief, and joy. The last time I saw my brother in person was in 2001 when I returned to Haiti after our mother passed away, so we were finally reunited after more than 20 years. My brother had been waiting for so long to come to the United States, and I feel blessed to be able to provide for them here and be a good sister to my brother and aunt to his children.

15. My brother and his family have adjusted well to life in the United States, and they are actively engaged in their local community.  My brother quickly got a job working in the kitchen of a nursing home, and his wife has been actively searching for a job.  They both attend English classes and go to church regularly, and their children are attending school. In his free time, my brother helps me around the house, including with yardwork and clearing snow. It has been wonderful to have him around, not only because he helps out and supports me, but because we are finally reunited as a family after so long.

16. When I heard that the CHNV process was going to be terminated and that my brother and his family's parole status could be terminated early, I was shocked. If their parole were terminated before their expected expiration date in 2026, my brother and his family would be forced to return to unpredictable, dangerous, possibly life-threatening, conditions in Haiti. They would also lose the ability to apply for asylum in the United States. We do not know how to even start making plans for this possibility, because it is simply impossible to plan for life in Haiti given the unstable political and socioeconomic conditions there, but we do know that it would be devastating. We followed all the rules that the government laid out for us to bring our families to safety here, and it feels like a major betrayal if the Trump administration ends their parole early and then tries to deport them.

4

17. Additionally, I heard that the administration is pausing processing of immigration relief requests for people who have come to the United States under CHNV parole, which could include my brother. This means my brother could be forced to forfeit his pending green card application *over seventeen years* after I filed the application on his behalf. This would be deeply unjust given how long we have been waiting on his application.

18. I am also very concerned about how the end to the CHNV parole process is affecting my niece and cousin, whose applications are now on pause indefinitely. My niece, who is my brother's child and only 13 years old, is left in Haiti without either of her parents. After my brother left for the United States, her mother also came to the United States without her, leaving her in the care of her aunt. She is so young, and in Haiti she cannot go to school reliably because of the gang violence shutting down the streets. She fears leaving her house because of the violence that is rampant. She needs to be reunited in a safe place with her father, who is worried about her and talks with her as often as possible. Although I have been sending money back to Haiti to support her, and talked to her on the phone, I have not had the chance to meet my niece in person. If she came to the United States, I would look forward to the opportunity to meet her and be an even better aunt to her.

19. My cousin also lives under fear of violence in Haiti. She has heard that people who have family members in the United States are targeted by the gangs for ransom, and that the gangs will kidnap people and threaten to kill them if they are not given large sums of money – it can be anywhere from $200,000 to $300,000. If the person cannot produce the money, the gangs will kill them. My cousin lives in an area with significant gang violence that makes it hard to go outside even to run errands for daily needs. It is unsafe for her to continue to stay there.

20. If my niece and cousin are not able to come to the United States through CHNV parole, the time and energy I put into their applications will be lost, but even more importantly, we will not be able to all reunite as a family and they will continue to live with the terrors of the ongoing violence in Haiti. It has been wonderful having my brother and his family here with me and my children, but without my niece and cousin, our family is incomplete. To me, it feels like the U.S. government provided a route to safety in the U.S. so that families like ours can be together, and now it is taking it away without any regard for just how dangerous and uncertain it is in Haiti.

21. I am participating in this lawsuit so that I, along with other individuals who are in the same position, can have our sponsorship applications for CHNV parole processed, as they should be.

22. I am willing to serve as a class representative on behalf of those who are similarly situated to me.

23. I know that if the class is certified, I will be representing more than just myself in this case. I have spoken with the lawyers who represent me about what being a class representative means. I want to help everyone in my situation because we are all harmed by the indefinite pause on the processing of sponsorship applications for CHNV parole.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Woburn, Massachusetts on March 15, 2025.

Wilhen Pierre Victor