# EXHIBIT 20

to Plaintiffs' Motion for a Preliminary Injunction
and a Stay Under 5 U.S.C. § 705

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)

for approval. All comments will become a matter of public record.

**Overview of This Information Collection**

*Title:* Record of Vessel Foreign Repair or Equipment Purchase.
*OMB Number:* 1651–0027.
*Form Number:* CBP Form 226.
*Current Actions:* Revision of an existing information collection.
*Type of Review:* Revision.
*Affected Public:* Businesses.
*Abstract:* 19 U.S.C. 1466(a) provides for a 50 percent *ad valorem* duty assessed on a vessel master or owner for any repairs, purchases, or expenses incurred in a foreign country by a commercial vessel registered in the United States. CBP Form 226, Record of Vessel Foreign Repair or Equipment Purchase, is used by the master or owner of a vessel to declare and file entry on equipment, repairs, parts, or materials purchased for the vessel in a foreign country. This information enables CBP to assess duties on these foreign repairs, parts, or materials. CBP Form 226 is provided for by 19 CFR 4.7 and 4.14 and is accessible at: *https://www.cbp.gov/document/forms/form-226-record-vessel-foreign-repair-or-equipment-purchase.*

*Proposed Change*

This form is anticipated to be submitted electronically as part of the maritime forms automation project through the Vessel Entrance and Clearance System (VECS), which will eliminate the need for any paper submission of any vessel entrance or clearance requirements under the above referenced statutes and regulations. VECS will still collect and maintain the same data, but will automate the capture of data to reduce or eliminate redundancy with other data collected by CBP.

*Type of Information Collection:* Record of Vessel Foreign Repair or Equipment Purchase.
*Estimated Number of Respondents:* 421.
*Estimated Number of Annual Responses per Respondent:* 28.
*Estimated Number of Total Annual Responses:* 11,788.
*Estimated Time per Response:* 2 hours.
*Estimated Total Annual Burden Hours:* 23,576.

Dated: April 22, 2022.

**Seth D. Renkema,**
*Branch Chief, Economic Impact Analysis Branch, U.S. Customs and Border Protection.*
[FR Doc. 2022–08983 Filed 4–26–22; 8:45 am]
**BILLING CODE 9111–14–P**

**DEPARTMENT OF HOMELAND SECURITY**

**Implementation of the Uniting for Ukraine Parole Process**

**AGENCY:** Department of Homeland Security.
**ACTION:** Notice.

**SUMMARY:** This notice announces the implementation of a U.S. Department of Homeland Security (DHS) parole process called *Uniting for Ukraine.* Pursuant to this process, DHS will offer certain Ukrainian citizens and their immediate family members who were recently displaced by Russia's war of aggression in Ukraine, pass biometric and biographic vetting, have sufficient financial support in the United States, and meet other eligibility requirements, an opportunity to apply for and receive advance authorization to travel to the United States for the purpose of seeking a discretionary grant of parole for urgent humanitarian reasons or significant public benefit for up to two years. The process is intended to be a safe, legal, and orderly pathway to support vulnerable Ukrainian citizens and their immediate family members in Europe who have been displaced from their country as a result of Russia's unprovoked invasion.

**DATES:** DHS will make the *Uniting for Ukraine* parole process available on April 25, 2022.

**FOR FURTHER INFORMATION CONTACT:** Daniel Delgado, Office of Strategy, Policy, and Plans, Department of Homeland Security, 2707 Martin Luther King, Jr. Avenue SE, Washington, DC 20528–0445

**SUPPLEMENTARY INFORMATION:**

**I. Background**

On February 24, 2022, Russia's military launched an unprovoked full-scale invasion of the sovereign nation of Ukraine, marking the largest conventional military action in Europe since World War II[1] and causing the fastest growing refugee crisis in modern history. As of April 10, 2022, nearly 12 million people have fled Russia's invasion, including seven million displaced inside Ukraine.[2] Russia's forces have continued to engage in significant, sustained bombardment of major cities, indiscriminately targeting civilian populations and causing widespread terror.[3] While most of those fleeing the violence remain in Europe,[4] the United States has committed to welcoming up to 100,000 displaced Ukrainians and others fleeing Russian aggression.[5] Among other legal pathways, the United States will consider, on a case-by-case basis, granting Ukrainians advance authorization to travel to the United States for the purpose of seeking a discretionary grant of parole for urgent humanitarian reasons or significant public benefit.[6]

The Immigration and Nationality Act (INA) provides the Secretary of Homeland Security with discretionary authority to parole noncitizens into the United States temporarily, under such reasonable conditions that the Secretary may prescribe, on a case-by-case basis, for ''urgent humanitarian reasons or significant public benefit.'' INA sec. 212(d)(5)(A), 8 U.S.C. 1182(d)(5)(A); *see also* 6 U.S.C. 202(4) (charging the Secretary with the responsibility for ''[e]stablishing and administering rules . . . governing . . . parole''). Parole is not an admission of the individual to the United States, and a parolee remains an ''applicant for admission'' during the period of parole in the United States. INA sec. 212(d)(5)(A), 8 U.S.C. 1182(d)(5)(A). DHS may set the duration of the parole based on the purpose for granting the parole request, and may impose reasonable conditions on parole. INA sec. 212(d)(5)(A), 8 U.S.C. 1182(d)(5)(A). DHS may terminate parole in its discretion at any time. *See* 8 CFR 212.5(e). Individuals who are paroled into the United States generally may apply for employment authorization. *See* 8 CFR 274a.12(c)(11).

---

[1] ''Russia invades Ukraine on multiple fronts in 'brutal act of war','' *PBS,* Feb. 24, 2022, available at: https://www.pbs.org/newshour/world/russia-invades-ukraine-on-multiple-fronts-in-brutal-act-of-war (last visited Apr. 20, 2022); Natalia Zinets and Aleksandar Vasovic, ''Missiles rain down around Ukraine,'' *Reuters,* Feb. 24, 2022, available at: https://www.reuters.com/world/europe/putin-orders-military-operations-ukraine-demands-kyiv-forces-surrender-2022-02-24/ (last visited Apr. 20, 2022).

[2] ''Russia's invasion of Ukraine in maps—latest updates,'' *Financial Times,* Apr. 20, 2022, available at: https://www.ft.com/content/4351d5b0-0888-4b47-9368-6bc4dfbccbf5 (last visited Apr. 20, 2022).

[3] Ukraine: Humanitarian Impact Situation Report No. 1, United Nations Office for the Coordination of Humanitarian Affairs, Feb. 26, 2022, available at: https://reliefweb.int/report/ukraine/ukraine-humanitarian-impact-situation-report-no-1-500-pm-26-february-2022 (last visited Apr. 20, 2022).

[4] Map: Where Ukraine refugees are heading, *ABC News,* Mar. 30, 2022, available at https://abcnews.go.com/International/map-ukrainian-refugees-heading/story?id=83178031.

[5] *FACT SHEET: The Biden Administration Announces New Humanitarian, Development, and Democracy Assistance to Ukraine and the Surrounding Region,* White House Briefing Room, Mar. 24, 2022, available at https://www.whitehouse.gov/briefing-room/statements-releases/2022/03/24/fact-sheet-the-biden-administration-announces-new-humanitarian-development-and-democracy-assistance-to-ukraine-and-the-surrounding-region/ (last visited Apr. 20, 2022).

[6] *See* INA section 212(d)(5), 8 U.S.C. 1182(d)(5); 8 CFR 212.5(f).

*Uniting for Ukraine* establishes a process by which eligible Ukrainian citizens and their immediate family members, if supported by an individual or entity in the United States, can apply for advance authorization to travel to the United States for the purpose of seeking a discretionary grant of parole. If advance authorization is granted, the recipient will be permitted to board a flight to the United States for the purpose of requesting parole. This notice outlines the process by which U.S.-based persons can apply to financially support eligible Ukrainian citizens and their immediate family members, the process by which those Ukrainians may request advance authorization to travel to the United States, and the relevant screening and vetting that is required prior to issuance of such travel authorization and any grant of parole.

The decision to parole a noncitizen into the United States is made at the port of entry, on a case-by-case basis, pursuant to section 212(d)(5)(A) of the INA, 8 U.S.C. 1182(d)(5)(A); as a result, approval of travel authorization to apply for parole at a U.S. port of entry, *see* 8 CFR 212.5(f), does not guarantee that the individual will be paroled. If parole is granted pursuant to this process, it will generally be for a term of up to two years.

## II. Ongoing Armed Conflict, Human Rights Abuses, and Humanitarian Situation in Ukraine

Russia's full-scale military invasion of Ukraine, beginning on February 24, 2022, has indiscriminately targeted civilian populations, placing civilians throughout the country at significant risk of physical harm.[7] As of mid-April 2022, Russian forces continue sustained shelling campaigns of cities and towns across Ukraine that have harmed, killed, and injured civilians and struck hospitals, schools, and apartment buildings.[8] Artillery attacks and air strikes by Russia's military forces have become regular occurrences in cities across Ukraine since the start of the February 2022 invasion.[9] Aerial bombardments in and around major cities have been reported as Russia's forces continue to target critical infrastructure.[10] In an April 13, 2022 update, the United Nations (UN) Office of the High Commissioner for Human Rights (OHCHR) reported 4,521 civilian casualties during the ongoing Russian invasion of Ukraine, with more casualties expected as the fighting continues.[11] OHCHR also notes that these estimates likely significantly undercount civilian fatalities.[12]

Russia's unprovoked war against Ukraine continues to "generate further population displacement, damage civilian infrastructure, and exacerbate humanitarian needs across the country." [13] Since February 24, 2022, significant infrastructural damage in Ukraine from Russia's air strikes has "left hundreds of thousands of people without electricity or water, while bridges and roads damaged by shelling have left communities cut off from markets for food and other basic supplies." [14] In February 2022, the U.N. Office for the Coordination of Humanitarian Affairs (UNOCHA) estimated that millions of Ukrainian nationals were in need of water, sanitation and hygiene assistance.[15] Those without access to alternative water sources have been most heavily impacted.[16]

Food security remains an ongoing is concern in Ukraine, with more than one million Ukrainian nationals in need of food assistance—including a significant number that are severely or moderately food insecure.[17] The impact on women has been particularly pronounced: "available data show that female-headed households are an estimated 1.3 times more often experiencing food insecurity, compared to the overall population." [18] According to the United Nations, women and girls also face "higher risks of human rights violations and sexual exploitation and abuse, including transactional sex, survival sex and conflict-related sexual violence." [19]

Critical medicines, health supplies and equipment, and shelter and protection for those displaced from their home are also in short supply.[20] According to the United Nations, more than a million Ukrainian nationals were in need of health care assistance, even prior to the initiation of conflict; the conflict has significantly exacerbated these challenges.[21] Hospitals have struggled with the volume of COVID cases and Ukraine has one of the lowest vaccination rates in Europe.

These factors, coupled with the ongoing violence, have led to large scale displacements of Ukrainians. Since Russia invaded Ukraine, over five million people have, as of April 19, 2022, fled Ukraine for Poland, Hungary, Slovakia, Romania, and Moldova.[22] Another seven million have been internally displaced inside Ukraine.[23]

---

[7] *Press briefing notes on Ukraine,* UN OHCHR, Mar. 8, 2022, available at: *https://www.ohchr.org/en/press-briefing-notes/2022/03/press-briefing-notes-ukraine* (last visited Apr. 20, 2022).

[8] *War Crimes by Russia's Forces in Ukraine, Press Statement,* U.S. Secretary of State Antony J. Blinken, Mar. 23, 2022, available at: *https://www.state.gov/war-crimes-by-russias-forces-in-ukraine/* (last visited Apr. 20, 2022).

[9] "Fear, darkness and newborn babies: inside Ukraine's underground shelters," *The Guardian,* Feb. 26, 2022, available at: *https://www.theguardian.com/world/2022/feb/26/fear-darkness-and-newborn-babies-inside-ukraine-underground-shelters* (last visited Apr. 20, 2022).

[10] "Russia's invasion of Ukraine in maps—latest updates," *Financial Times,* Apr. 20, 2022, available at: *https://www.ft.com/content/4351d5b0-0888-4b47-9368-6bc4dfbccbf5* (last visited Apr. 20, 2022).

[11] UN OHCHR, "Ukraine: civilian casualty update 13 April 2022," Apr. 13, 2022, available at: *https://www.ohchr.org/en/news/2022/04/ukraine-civilian-casualty-update-13-april-2022* (last visited Apr. 20, 2022).

[12] *See supra* note 7.

[13] *Ukraine—Complex Emergency,* U.S. Agency for International Development, Mar. 25, 2022, available at: *https://www.usaid.gov/sites/default/files/documents/2022-03-25_USG_Ukraine_Complex_Emergency_Fact_Sheet_8.pdf* (last visited Apr. 20, 2022).

[14] *Ukraine: Humanitarian Impact, Situation Report No. 01,* UNOCHA Ukraine, Feb. 26, 2022, available at: *https://reliefweb.int/report/ukraine/ukraine-humanitarian-impact-situation-report-no-1-500-pm-26-february-2022* (last visited Apr. 20, 2022).

[15] *2022 Humanitarian Needs Overview—Ukraine,* UNOCHA, p. 73, Feb. 11, 2022, available at: *https://www.humanitarianresponse.info/sites/www.humanitarianresponse.info/files/documents/files/ukraine_2022_hno_eng_2022-02-11.pdf* (last visited Apr. 20, 2022).

[16] *2022 Humanitarian Needs Overview—Ukraine,* UNOCHA, p. 39, Feb. 11, 2022, available at: *https://www.humanitarianresponse.info/sites/www.humanitarianresponse.info/files/documents/files/ukraine_2022_hno_eng_2022-02-11.pdf* (last visited Apr. 20, 2022).

[17] *2022 Humanitarian Needs Overview—Ukraine,* UNOCHA, p. 79, Feb. 11, 2022, available at: *https://www.humanitarianresponse.info/sites/www.humanitarianresponse.info/files/documents/files/ukraine_2022_hno_eng_2022-02-11.pdf* (last visited Apr. 20, 2022).

[18] *2022 Humanitarian Needs Overview—Ukraine,* UNOCHA, p. 51, Feb. 11, 2022, available at: *https://www.humanitarianresponse.info/sites/www.humanitarianresponse.info/files/documents/files/ukraine_2022_hno_eng_2022-02-11.pdf* (last visited Apr. 20, 2022).

[19] *Rapid Gender Analysis of Ukraine: Secondary data review,* UNHCR, Mar. 29, 2022, *https://data2.unhcr.org/en/documents/details/91723* (last visited Apr. 20, 2022).

[20] *Ukraine: Humanitarian Impact, Situation Report No. 01,* UNOCHA Ukraine, Feb. 26, 2022, available at: *https://reliefweb.int/report/ukraine/ukraine-humanitarian-impact-situation-report-no-1-500-pm-26-february-2022* (last visited Apr. 20, 2022).

[21] *2022 Humanitarian Needs Overview—Ukraine,* UNOCHA, p. 87, Feb. 11, 2022, available at: *https://www.humanitarianresponse.info/sites/www.humanitarianresponse.info/files/documents/files/ukraine_2022_hno_eng_2022-02-11.pdf* (last visited Apr. 20, 2022); *Impact of Health Reform on the Primary Healthcare Level in Conflict-Affected Areas of Donetsk and Luhansk Oblasts,* Médicos del Mundo, June 2021, available at: *https://reliefweb.int/report/ukraine/impact-healthcare-reform-primary-healthcare-level-conflict-affected-areas-donetsk-and* (last visited Apr. 20, 2022).

[22] Operational Data Portal, UNHCR, Apr. 19, 2022, available at: *https://data2.unhcr.org/en/situations/ukraine* (last visited Apr. 20, 2022).

[23] *One in Six People Internally Displaced in Ukraine,* International Organization on Migration, Apr. 21, 2022, available at: *https://reliefweb.int/*

Continued

## III. Uniting for Ukraine

Pursuant to the process established by *Uniting for Ukraine,* U.S.-based individuals who agree to provide financial support to Ukrainian citizens and their immediate family members (supporters) will be able to initiate a process that will ultimately allow those Ukrainian citizens and their immediate family members (Ukrainian beneficiaries) to seek advance authorization to travel to the United States for the purpose of seeking parole into the United States at a U.S. port of entry. *See* INA section 212(d)(5)(A), 8 U.S.C. 1182(d)(5)(A) (permitting parole of a noncitizen into the United States for urgent humanitarian reasons or significant public benefit); 8 CFR 212.5(f). The determination as to whether to parole a particular noncitizen who presents such authorization remains a case-by-case, discretionary determination made upon arrival at the port of entry.

## IV. Participation in Uniting for Ukraine and Filing Process

### 1. Eligibility

Certain Ukrainian citizens, and certain non-Ukrainian immediate family members,[24] who were physically present in Ukraine as of February 11, 2022 and have a U.S.-based supporter are eligible for this process. The process is triggered when a prospective supporter files a Form I–134, *Declaration of Financial Support,* with U.S. Citizenship and Immigration Services (USCIS) through an online portal. USCIS will review that form in order to verify and vet the information submitted. Once USCIS determines that the Form I–134 includes sufficient evidence of financial support, the relevant Ukrainian beneficiary will be notified and will be prompted to submit any additional required information. To be eligible, the Ukrainian beneficiary must possess a valid Ukrainian passport, or if a child without their own passport, be included in a parent's passport. At this time, only children traveling with a parent or a legal guardian will be eligible for *Uniting for Ukraine.* Individuals who are not eligible for *Uniting for Ukraine* may make an appointment at the nearest U.S. Embassy or consulate for additional information about available options.

The Ukrainian beneficiary also must clear biographic and biometric background checks, and will need to meet public health requirements, including, as appropriate, proof of required vaccinations, as determined by DHS's Chief Medical Officer, in consultation with the Centers for Disease Control and Prevention (CDC). Pursuant to these requirements, Ukrainian beneficiaries must demonstrate proof of first doses of measles, polio, and COVID–19 vaccines and must complete a screening for tuberculosis for all individuals two years of age or older. These requirements may be adjusted in accordance with evolving public health needs; the most up-to-date requirements will be available at *www.dhs.gov/ukraine.*

### 2. Processing Steps

*Filing and confirmation of financial support:* The process is initiated when a supporter—either an individual or an individual acting on behalf of an organizations—files a Form I–134, *Declaration of Financial Support,* online using the myUSCIS platform. This declaration must include biographic and financial information on the supporter, and biographic identifying information on the Ukrainian beneficiary.

The individual who submits and signs the Form I–134 must be a U.S.-based person in lawful status, a parolee, or a beneficiary of deferred action or Deferred Enforced Departure. The individual can, however, represent an organization. If the individual is acting on behalf of an organization, and if that organization is providing the financial or other services to support the Ukrainian beneficiary, this information should be provided as part of the evidence submitted with the Form I–134.

USCIS will conduct background checks on the supporter to protect against exploitation and abuse and to determine the supporters' financial suitability to support beneficiaries. If the supporter is approved, USCIS will notify the Ukrainian beneficiary electronically with an invitation to create a myUSCIS account.

*Ukrainian beneficiary account registration:* Following USCIS's approval of the named supporter, the Ukrainian beneficiary will receive an electronic communication from USCIS with instructions on how to set up an account with myUSCIS and other next steps. The Ukrainian beneficiary will be required to confirm their biographic information on myUSCIS and attest to completion of all other requirements, including the required vaccinations and screening listed above.

*Vetting and Clearance:* Biographic information provided by the prospective Ukrainian beneficiary will be vetted against national security and law enforcement databases. The my USCIS system will transmit biographic information for Ukrainian beneficiaries directly to U.S. Customs and Border Protection (CBP) and into CBP's Automated Targeting System (ATS) for vetting. Only Ukrainian beneficiaries who complete all the requirements, including vaccinations, and clear the vetting of their biographic information will receive the necessary advanced authorization to travel to the United States to seek parole

Once vetting is complete and advance authorization to travel has been approved, Ukrainian beneficiaries will receive a notification in myUSCIS in an automated manner. Cleared individuals will be authorized to travel via commercial routes to the United States for a period of 90 days. Carriers utilizing CBP's Document Validation program will be able to access this authorization to facilitate generation of a boarding pass. Carriers who are not participants in the Document Validation program will utilize manual verification mechanisms to generate a boarding pass.

*Travel and public health related requirements:* Ukrainian beneficiaries who receive advance authorization to travel to the United States will be responsible for arranging and funding their travel to the United States. In addition, Ukrainian beneficiaries must follow all applicable requirements, as determined by DHS's Chief Medical Officer, in consultation with CDC, with respect to health and travel,[25] including

---

*report/ukraine/ukraine-humanitarian-impact-situation-report-no-1-500-pm-26-february-2022* (last visited Apr. 24, 2022).

[24] Ukrainians' immediate family members who are not Ukrainian citizens may also be considered for parole under *Uniting for Ukraine.* Immediate family members, for the purposes of *Uniting for Ukraine,* include: The spouse or common-law partner of a Ukrainian citizen; and their unmarried children under the age of 21. Non-Ukrainian immediate family members authorized to travel under this process must accompany the principal Ukrainian when completing travel to the United States. Unaccompanied minors and family groups that include minors traveling with adults that are not the child's parent or legal guardian are not currently eligible for this process.

[25] Changes to requirements for travel by air were implemented by, *inter alia,* Presidential Proclamation 10294 of October 25, 2021, 86 FR 59603 (Oct. 28, 2021) (''Presidential Proclamation''), and a related CDC orders, 86 FR 61224 (Nov. 5, 2021) and 87 FR 20405 (Apr. 7, 2022). *See also* CDC, *Requirement for Proof of Negative COVID–19 Test or Recovery from COVID–19 for All Air Passengers Arriving in the United States, https://www.cdc.gov/quarantine/pdf/Global-Testing-Order-10-25-21-p.pdf* (Oct. 25, 2021); *Requirement for Airlines and Operators to Collect Contact Information for All Passengers Arriving into the United States, https://www.cdc.gov/quarantine/pdf/CDC-Global-Contact-Tracing-Order-10-25-2021-p.pdf* (Oct. 25, 2021). CDC later amended its testing order following developments related to the Omicron variant. *See* CDC, *Requirement for Proof of Negative COVID–19 Test Result or Recovery from COVID–19 for All Airline Passengers Arriving into the United States, https://www.cdc.gov/quarantine/*

vaccination and/or testing requirements for diseases like COVID–19, polio, measles, and tuberculosis.

*Parole determination at a U.S. port of entry:* Upon arrival at a port of entry, Ukrainian beneficiaries will be inspected by a CBP officer who will make a case-by-case processing determination, to include consideration of parole. Individuals granted parole pursuant to this process will generally be paroled for a period of up two years. Individuals granted parole under this process will be eligible to apply for employment authorization with USCIS.

## V. Paperwork Reduction Act

Under the Paperwork Reduction Act (PRA), 44 U.S.C. chapter 35, all Departments are required to submit to the Office of Management and Budget (OMB) for review and approval, any new reporting requirements they impose. OMB has approved USCIS Form I–134, *Declaration of Financial Support,* and assigned the revision to OMB control number 1615–0014.

USCIS is making some changes to this form in connection with the implementation of the *Uniting for Ukraine* process and has submitted a request to OMB for emergency approval of the required changes under 5 CFR 1320.13. Following OMB approval of the emergency request, USCIS will publish a notice under the PRA and will make some revisions to the currently approved burden for OMB control number 1615–0014.

## VI. Implementation

This process will be implemented beginning on April 25, 2022.

**Alejandro N. Mayorkas,**
*Secretary of Homeland Security.*
[FR Doc. 2022–09087 Filed 4–25–22; 4:15 pm]
**BILLING CODE 9110–9M–P**

---

## DEPARTMENT OF THE INTERIOR

### Geological Survey

**[GX22EE000101100]**

### Public Meeting of the National Geospatial Advisory Committee

**AGENCY:** Department of Interior.
**ACTION:** Notice of public meeting.

**SUMMARY:** In accordance with the Federal Advisory Committee Act of 1972, the U.S. Geological Survey (USGS) is publishing this notice to announce that a Federal Advisory Committee meeting of the National Geospatial Advisory Committee (NGAC) will take place.

**DATES:** The meeting will be held as a webinar on Wednesday, May 18, 2022, from 1:00 p.m. to 5:00 p.m., and on Thursday, May 19, 2022, from 1:00 p.m. to 5:00 p.m. (Eastern Daylight Time).

**ADDRESSES:** The meeting will be held on-line and via teleconference. Instructions for accessing the meeting will be posted at *www.fgdc.gov/ngac.* Comments can be sent to Ms. Dionne Duncan-Hughes, Group Federal Officer by email to *gs-faca@usgs.gov.*

**FOR FURTHER INFORMATION CONTACT:** Mr. John Mahoney, Federal Geographic Data Committee (FGDC), USGS, by mail at 909 First Avenue, Room 703, Seattle, WA 98104; by email at *jmahoney@usgs.gov;* or by telephone at (206) 375–2565.

**SUPPLEMENTARY INFORMATION:** This meeting is being held under the provisions of the Federal Advisory Committee Act of 1972 (5 U.S.C., Appendix 2), the Government in the Sunshine Act of 1976 (5 U.S.C. 552B, as amended), and 41 CFR 102–3.140 and 102–3.150.

*Purpose of the Meeting:* The NGAC provides advice and recommendations related to management of Federal and national geospatial programs, the development of the National Spatial Data Infrastructure (NSDI), and the implementation of the Geospatial Data Act of 2018 (GDA) and the Office of Management and Budget Circular A–16. The NGAC reviews and comments on geospatial policy and management issues and provides a forum to convey views representative of non-federal stakeholders in the geospatial community. The NGAC meeting is one of the primary ways that the FGDC collaborates with its broad network of partners. Additional information about the NGAC meeting is available at: *www.fgdc.gov/ngac.*

*Agenda Topics:*
—FGDC Update
—GDA Reporting
—Landsat Advisory Group
—Partnerships/Stakeholder Engagement
—3D Elevation Program
—Executive Order 14008/Climate Mapping Initiative
—Public Comment

*Meeting Accessibility/Special Accommodations:* The webinar meeting is open to the public and will take place from 1:00 p.m. to 5:00 p.m. on May 18, 2022, and from 1:00 p.m. to 5:00 p.m. on May 19, 2022. Members of the public wishing to attend the meeting should visit *www.fgdc.gov/ngac* or contact Mr. John Mahoney (see **FOR FURTHER INFORMATION CONTACT**). Webinar/conference line instructions will be provided to registered attendees prior to the meeting. Individuals requiring special accommodations to access the public meeting should contact Mr. John Mahoney (see **FOR FURTHER INFORMATION CONTACT**) at least five (5) business days prior to the meeting so that appropriate arrangements can be made.

*Public Disclosure of Comments:* There will be an opportunity for public comment during both days of the meeting. Depending on the number of people who wish to speak and the time available, the time for individual comments may be limited. Written comments may also be sent to the Committee for consideration. To allow for full consideration of information by the Committee members, written comments must be provided to John Mahoney (see **FOR FURTHER INFORMATION CONTACT**) at least three (3) business days prior to the meeting. Any written comments received will be provided to the committee members before the meeting.

Before including your address, phone number, email address, or other personally identifiable information (PII) in your comment, you should be aware that your entire comment—including your PII—may be made publicly available at any time. While you may ask us in your comment to withhold your PII from public review, we cannot guarantee that we will be able to do so.

*Authority:* 5 U.S.C. Appendix 2.

**Kenneth Shaffer,**
*Deputy Executive Director, Federal Geographic Data Committee.*
[FR Doc. 2022–08924 Filed 4–26–22; 8:45 am]
**BILLING CODE 4338–11–P**

---

## INTERNATIONAL TRADE COMMISSION

### Notice of Receipt of Complaint; Solicitation of Comments Relating to the Public Interest

**AGENCY:** International Trade Commission.
**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the U.S. International Trade Commission has received a complaint entitled *Certain CPAP Pillows, DN 3615;* the Commission is soliciting comments on any public interest issues raised by the complaint or complainant's filing pursuant to the Commission's Rules of Practice and Procedure.

**FOR FURTHER INFORMATION CONTACT:** Lisa R. Barton, Secretary to the Commission,

---

*pdf/Amended-Global-Testing-Order_12-02-2021-p.pdf* (Dec. 2, 2021).