# EXHIBIT 31

to Plaintiffs' Motion for a Preliminary Injunction
and a Stay Under 5 U.S.C. § 705

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)


Specialist, Marketing & Outreach, Federal Insurance, Federal Insurance and Mitigation Administration, 202–322–6215, *joshua.heath@fema.dhs.gov.*

**SUPPLEMENTARY INFORMATION:** E.O. 12862 directs Federal Agencies to provide service to the public that matches or exceeds the best service available. Section 1(b) of E.O. 12862 requires government agencies to ''survey customers to determine the kind and quality of services they want.'' In addition, the Foundations for Evidence-Based Policymaking Act of 2018 (''Evidence Act'') enables agencies to collect and analyze data to use as evidence in policymaking, as well as assess the effectiveness and efficiency of current programs. To work continuously to ensure that our programs are effective and meet our customers' needs, FEMA seeks to obtain the Office of Management and Budget's (OMB) approval of a generic clearance to collect information through mixed methods (quantitative and qualitative) to improve marketing, outreach, and other promotional activities of services, programs, and opportunities offered by FEMA.

This proposed information collection previously published in the **Federal Register** on May 5, 2023, at 88 FR 29143 with a 60-day public comment period. No comments were received. The purpose of this notice is to notify the public that FEMA will submit the information collection abstracted below to the Office of Management and Budget for review and clearance.

**Collection of Information**

*Title:* Generic Clearance for the Multi-Modal Mixed Methods Collection of Information to Inform Agency Marketing and Outreach.

*Type of Information Collection:* New information collection.

*OMB Number:* 1660–NW131.
*FEMA Forms:* Not applicable.
*Abstract:* In accordance with the Evidence Act, the collected information will equip FEMA with vital feedback from the general public and stakeholders that will allow for evidence-based improvements to FEMA's programs and services. FEMA will collect, analyze, and interpret information to identify strengths and weaknesses of programs based on current stakeholder experience and make improvements in the marketing and other promotional activities based on feedback.

*Affected Public:* Individuals and households, business or other for-profit, Federal Government, State, local or Tribal government, non-profit institutions.

*Estimated Number of Respondents:* 45,600.
*Estimated Number of Responses:* 45,600.
*Estimated Total Annual Burden Hours:* 7,861.
*Estimated Total Annual Respondent Cost:* $374,020.
*Estimated Respondents' Operation and Maintenance Costs:* $0.
*Estimated Respondents' Capital and Start-Up Costs:* $0.
*Estimated Total Annual Cost to the Federal Government:* $748,830.

**Comments**

Comments may be submitted as indicated in the **ADDRESSES** caption above. Comments are solicited to (a) evaluate whether the proposed data collection is necessary for the proper performance of the Agency, including whether the information shall have practical utility; (b) evaluate the accuracy of the Agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used; (c) enhance the quality, utility, and clarity of the information to be collected; and (d) minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses.

**Millicent Brown Wilson,**

*Records Management Branch Chief, Office of the Chief Administrative Officer, Mission Support, Federal Emergency Management Agency, Department of Homeland Security.*

[FR Doc. 2023–17281 Filed 8–10–23; 8:45 am]

**BILLING CODE 9111–52–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**[CIS No. 2754–23; DHS Docket No. USCIS–2014–0013]**

**RIN 1615–ZC03**

**Implementation of Changes to the Haitian Family Reunification Parole Process**

**AGENCY:** Department of Homeland Security (DHS).
**ACTION:** Notice of changes to Haitian Family Reunification Parole.

**SUMMARY:** This notice announces that the Secretary of Homeland Security (Secretary) has authorized updates to modernize Haitian Family Reunification Parole (HFRP). HFRP provides a lawful, safe, and orderly pathway for certain Haitians to seek parole into the United States, allowing them to reunite with family as they wait for their immigrant visas to become available so they may apply to adjust status to lawful permanent resident (LPR). The Secretary has authorized these updates to HFRP in light of technological advancements and process efficiencies created since the HFRP's inception in 2014. Every step of the updated process will be completed online with the exception of a medical exam by a panel physician and the parole determination made upon arrival at an interior U.S. port of entry (POE).

**DATES:** DHS will begin using the Form I–134A, Online Request to be a Supporter and Declaration of Financial Support, for this process on August 11, 2023.

**FOR FURTHER INFORMATION CONTACT:** Reńa Cutlip-Mason, Chief, Humanitarian Affairs Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security, by mail at 5900 Capital Gateway Drive, Camp Springs, MD 20746, or by phone at 800–375–5283.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

In 2014, U.S. Citizenship and Immigration Services (USCIS) launched HFRP to expedite family reunification through lawful, safe, and orderly channels of migration to the United States, increase existing avenues for lawful migration from Haiti, and help Haiti in its recovery from the long-term impacts of the January 12, 2010 earthquake that devastated the country.[1] Under HFRP, the U.S. Government (USG) invites certain eligible United States citizen (U.S.C.) and LPR petitioners to file a request and initiate consideration for parole for certain family members in Haiti who are the beneficiaries of an approved Form I–130, Petition for Alien Relative. Since it was established in 2014, HFRP has allowed certain beneficiaries of family-based immigrant petitions that were approved on or before December 18, 2014 to request a discretionary grant of parole to enter the United States up to approximately two years before their immigrant visas become available,

---

[1] *Implementation of Haitian Family Reunification Parole Program,* 79 FR 75581 (Dec. 18, 2014). Note that, consistent with other processes described in this notice, DHS now refers to HFRP as a process rather than a program.

rather than remain in Haiti awaiting availability of their immigrant visas.[2]

If travel is authorized for the beneficiaries, these family members are allowed to travel to the United States before their immigrant visas become available and seek parole on a case-by-case basis upon arrival at a port of entry (POE) in the United States.[3] If granted parole into the United States, HFRP parolees may apply for employment authorization while they wait for their immigrant visas to become available so they may apply to adjust to LPR status.[4]

As launched in 2014, USCIS required invited petitioners to file a completed Form I–131, Application for Travel Document, and submit the required fee(s) or fee waiver request for consideration of parole for each beneficiary. USCIS also required that USCIS officers interview beneficiaries in Port-au-Prince, Haiti, to verify their eligibility for HFRP. The National Visa Center (NVC) at the U.S. Department of State (State) first issued invitations to eligible petitioners to apply for HFRP in March 2015. Due to several factors, including anticipated policy changes,[5] a change in Administrations, the permanent closure of USCIS's field office in Port-au-Prince, Haiti, on December 20, 2019, extremely limited visa processing due to COVID–19,[6] and severe insecurity in the country,[7] new invitations to the HFRP process have not issued since June 2016 and interviews have not taken place since December 2019.

In the meantime, technology has evolved since the launch of HFRP in 2014. DHS is now able to electronically collect biographic information and evidentiary documents to facilitate identity verification, national security checks, and public safety vetting. DHS has expanded capacity to intake forms through online processes and allow individuals to upload supporting documentation directly online as part of the application process. The updated process for HFRP utilizes these technological developments to make the advance travel authorization and parole process more efficient and accessible while maintaining national security and public safety vetting measures as well as other measures for case-by-case adjudication.

In addition, DHS has recently implemented parole processes that are similar to HFRP but that follow different procedures, which utilize these recent technological developments. These include the filing of a Form I–134A, Online Request to be a Supporter and Declaration of Financial Support, the use of a fully electronic request for advance travel authorization (as opposed to the petitioner's use of the Form I–131 under the 2014 HFRP procedures), and processing without a requirement for an in-person interview abroad. Most recently, on July 10, 2023, DHS implemented family reunification parole (FRP) processes for certain Colombians,[8] Guatemalans,[9] Hondurans,[10] and Salvadorans [11] along these lines. DHS is now conforming the HFRP process to these recently announced processes.

**II. Modernized Process**

*A. Petitioners*

Invitations to participate in the HFRP process will continue to issue to certain petitioners who have an approved Form I–130 filed on behalf of a Haitian principal beneficiary. Invitations will continue to issue at the USG's discretion, based on operational capacity, the expected period of time until the principal beneficiary's immigrant visa becomes available and in a manner calibrated to best achieve the foreign policy aims of this process.

Petitioners who have an approved [12] Form I–130 filed on behalf of a Haitian principal beneficiary outside the United States should ensure that their mailing address and other contact information are up to date with State's NVC as this is the information that will be used to issue invitations. The invitations will provide information about how the petitioner may file a request to be a supporter with USCIS to initiate this process on behalf of a Haitian principal beneficiary of an approved Form I–130 and how to file separate requests for any immediate family members [13] of the principal beneficiary.

As part of the request process, the petitioner will be required to provide evidence of their income and assets and commit to provide financial support to the beneficiary named in the request for the period of parole. Petitioners will also be required to provide evidence to verify the familial relationship between the principal beneficiary of the Form I–130 and all immediate family members of the principal beneficiary for whom the petitioner will be filing a request to be a supporter under this process. As

---

[2] *Id.; see also* USCIS, The Haitian Family Reunification Parole Program (June 22, 2022), *https://www.uscis.gov/humanitarian/humanitarian-parole/the-haitian-family-reunification-parole-hfrp-program.* To participate in HFRP, beneficiaries must have a petitioner who filed a Form I–130, Petition for Alien Relative, on behalf of a principal beneficiary, and was invited to participate in the HFRP process after the Form I–130 was approved. The principal beneficiary of that petitioner's approved Form I–130 must be a Haitian national.

[3] *See Implementation of Haitian Family Reunification Parole Program,* 79 FR 75581 (Dec. 18, 2014). S*ee also* USCIS, The Haitian Family Reunification Parole Program (June 22, 2022), *https://www.uscis.gov/humanitarian/humanitarian-parole/the-haitian-family-reunification-parole-hfrp-program.*

[4] 8 CFR 274a.12(c)(11).

[5] In August 2019, USCIS announced an intention to terminate HFRP, although USCIS never formally terminated the process. *See* USCIS to End Certain Categorical Parole Programs (Aug. 2, 2019), *https://www.uscis.gov/archive/uscis-to-end-certain-categorical-parole-programs.* In June 2022, USCIS reversed its 2019 announcement. *See also* The Haitian Family Reunification Parole (HFRP) Program: Alert (June 22, 2022), *https://www.uscis.gov/humanitarian/humanitarian-parole/the-haitian-family-reunification-parole-hfrp-program.*

[6] On March 19, 2020, the U.S. Embassy Port-au-Prince, Haiti, issued a Health Alert and suspended all non-emergency consular services. *See* Health Alert—U.S. Embassy Port-au-Prince, Haiti (March 19, 2020), *https://ht.usembassy.gov/security-alert-u-s-embassy-port-au-prince-haiti-january-8-2020-4-3-2-3-2-2-3-3-2-2-2-2-2-3-2-2-4-3-2-2-2-5-2-2-2/.*

[7] The assassination of Haiti's late President Jovenel Moïse exacerbated political and economic instability in Haiti, undermining state institutions and generating a power vacuum that has since been occupied by gangs. *See Implementation of a Parole Process for Haitians,* 88 FR 1243, 1246–47 (Jan. 9, 2023) (discussing conditions in Haiti). Due to the lawlessness in the country, the U.S. Embassy in Haiti temporarily suspended visa processing and continues to operate at a limited capacity. *See* Security Alert: U.S. Embassy Port-au-Prince, Haiti (Feb. 5, 2023), *https://ht.usembassy.gov/security-alert-u-s-embassy-port-au-prince-haiti-80.* To further complicate matters, on August 14, 2021, a 7.2 magnitude earthquake hit Haiti, killing more than 2,200 people, injuring over 12,000 more, destroying tens of thousands of homes, and crippling Haiti's already fragile infrastructure. *See* UNICEF, Massive earthquake leaves devastation in Haiti: UNICEF and partners are on the ground providing emergency assistance for children and their families (Oct. 4, 2021), *https://www.unicef.org/emergencies/massive-earthquake-devastation-haiti.*

[8] *See Implementation of a Family Reunification Parole Process for Colombians,* 88 FR 43591 (July 10, 2023).

[9] *See Implementation of a Family Reunification Parole Process for Guatemalans,* 88 FR 43581 (July 10, 2023).

[10] *See Implementation of a Family Reunification Parole Process for Hondurans,* 88 FR 43601 (July 10, 2023).

[11] See *Implementation of a Family Reunification Parole Process for Salvadorans,* 88 FR 43611 (July 10, 2023).

[12] In certain circumstances, such as if the beneficiary is no longer eligible for the Form I–130 (*e.g.,* the petitioner is no longer an LPR or U.S.C.), parole would be denied, and the Form I–130 approval would be revoked. If DHS revokes Form I–130 approval, the beneficiary will no longer be eligible for an immigrant visa. DHS will make these determinations on a case-by-case basis and will provide a written notice of the revocation of the approved Form I–130.

[13] Throughout this notice ''immediate family members'' is used as a shorthand for the derivative beneficiary spouse and children of a principal beneficiary. *See* the Immigration and Nationality Act (INA), sec. 203(d), 8 U.S.C. 1153(d); *see also* INA sec. 101(b)(1), 8 U.S.C. 1101(b)(1) (defining ''child'' in general, as meaning ''an unmarried person under twenty-one years of age'').

part of the review process, the petitioner must also pass security and background vetting, including for public safety, national security, human trafficking, and exploitation concerns.

*B. Beneficiaries*

Previously, the HFRP process limited eligibility to Haitian principal beneficiaries of Forms I–130 and their immediate family members that were approved by USCIS on or before December 18, 2014 and for whom an immigrant visa was not currently available. The volume of invitations issued was limited based on operational capacity and other factors, as described above. The revised process is open to all Haitian principal beneficiaries of an approved Form I–130 and their immediate family members who have not yet received an immigrant visa regardless of the date on which USCIS approved the Form I–130. However, as mentioned above, the process will still be available on an invitation-only basis.

In addition, individuals whose immigrant visas were not available but were expected to become available within a specific time range were previously sent invitations to participate in the HFRP process. USCIS will no longer apply a time limit for expected immigrant visa availability. However, USCIS will consider when a beneficiary's immigrant visa is expected to become available when determining which petitioners will receive invitations to initiate this process on behalf of the beneficiary of their approved Form I–130.

To be eligible to be considered under this process, a beneficiary must not have been issued an immigrant visa at the time the invitation issues to the petitioner and, if authorized to travel, must now travel by commercial air with sufficient documentation (*e.g.,* international passport) to an interior POE.

In addition, as with the 2014 HFRP process, each beneficiary must undergo and pass national security and public safety vetting and must demonstrate that they otherwise merit a favorable exercise of discretion by DHS. Under this updated process, U.S. Customs and Border Protection (CBP) will consider a beneficiary's previous immigration history, encounters with USG entities, and the results of national security and public safety vetting when determining a beneficiary's eligibility to be issued advance authorization to travel to the United States. CBP will determine, on a case-by-case basis, whether to exercise discretion to grant parole to the beneficiary at an interior POE upon their arrival. CBP also will consider other factors in making discretionary determinations consistent with long-standing policy and practice.

Upon arrival at an interior POE, each beneficiary must demonstrate to CBP that a grant of parole is warranted based on a significant public benefit or for urgent humanitarian reasons and that the beneficiary merits a favorable exercise of discretion. Each beneficiary must also comply with all additional requirements, including vaccination requirements and other public health guidelines, prior to traveling to the United States.

Participation in this process is not limited to beneficiaries currently living in Haiti. However, as noted above, beneficiaries must be outside the United States to participate in the process, and the principal beneficiaries must be Haitian nationals.

A beneficiary of this process who enters the United States between POEs rather than being considered for parole under this process will be processed under Title 8 of the U.S. Code and face appropriate consequences. For example, they may be subject to potential criminal prosecution,[14] expedited removal proceedings,[15] or removal proceedings under section 240 of the INA, 8 U.S.C. 1229a. In addition, beneficiaries who enter the United States between POEs rather than being considered for parole under this process may already be, or may become, ineligible for adjustment of status [16] or for an immigrant visa [17] as a result of entering without inspection and not having been admitted or paroled.[18]

---

[14] 8 U.S.C. 1325, 1326 (for illegal entry and reentry, respectively).

[15] INA sec. 235(b)(1)(A)(i), 8 U.S.C. 1225(b)(1)(A)(i).

[16] INA sec. 245(a), 8 U.S.C. 1255(a) (requiring adjustment of status applicants to be inspected and admitted or inspected and paroled, as well as be admissible); INA sec. 245(c), 8 U.S.C. 1255(c)(2) (adjustment of status applicants are ineligible if they are in unlawful immigration status on the date of filing the application for adjustment of status or fail to maintain continuously a lawful status since entry into the United States); INA sec. 212(a), 8 U.S.C. 1182(a) (grounds of inadmissibility that render applicants for adjustment of status ineligible).

[17] INA sec. 221(g), 8 U.S.C. 1201(g) (immigrant visa applicants are ineligible for immigrant visas if inadmissible under INA sec. 212(a), 8 U.S.C. 1182(a)); INA sec. 212(a), 8 U.S.C. 1182(a) (grounds of inadmissibility that render applicants for immigrant visas ineligible).

[18] For example, an applicant for adjustment of status who previously accrued more than one year of unlawful presence, departed, and thereafter reentered the United States without admission or parole is inadmissible and ineligible for adjustment unless they apply for and obtain consent to reapply for admission from outside the United States after waiting ten years after their last departure from the United States. *See* INA sec. 212(a)(9)(C)(i)(I), 8 U.S.C. 1182(a)(9)(C)(i)(I). In addition, an applicant for an immigrant visa who accrued more than 180 days of unlawful presence in the United States, departed (or is removed, as applicable), and again seeks admission (by filing an immigrant visa application) within 3 or 10 years of departure (or removal) is inadmissible and ineligible for an immigrant visa unless they apply for and obtain a waiver of inadmissibility. *See* INA sec. 212(a)(9)(B), 8 U.S.C. 1182(a)(9)(B). Additionally, an applicant for an immigrant visa who was ordered removed, departed, and again seeks admission within certain periods of time thereafter is inadmissible and therefore ineligible for an immigrant visa unless they apply for and obtain consent to reapply for admission. *See* INA sec. 212(a)(9)(A), 8 U.S.C. 1182(a)(9)(A).

---

*C. Description of Updated Process for HFRP*

DHS announces these updates to the HFRP process in light of lessons learned, technological advancements made, and efficiencies created in parole processes developed and implemented since HFRP's inception in 2014. Except for the medical exam by a panel physician and the ultimate parole determination made in person, on a case-by-case basis, by CBP at an interior POE, all steps of the updated HFRP process will generally be completed online. As a result, the process will no longer require an in-country interview for each beneficiary.

Step 1: Invitation Sent to Petitioner

An invitation may be sent to a petitioner who has filed an approved Form I–130 on behalf of the principal beneficiary and any derivative beneficiaries listed on the Form I–130. The decision whether to send the invitation is based on multiple discretionary factors. Such factors may include operational capacity considerations, the expected period of time until the beneficiary's immigrant visa becomes available, as well as other measures calibrated to best achieve the policy aims of this process as described in this notice.

Only after receiving an invitation may the petitioner file a Form I–134A request to initiate consideration under this HFRP process. Participation in the process will continue to be voluntary. The invitation will instruct the petitioner on next steps to initiate this process on behalf of the beneficiaries, including instructions on documentation to include in their Form I–134A filing. Each invitation will include an identifying number that the petitioner must include in the Form I–134A for each beneficiary on whose behalf they wish to request to be a supporter.

Step 2: Petitioner Files Form I–134A Online

After receiving an invitation to initiate this process, the U.S. citizen

(U.S.C.) or LPR petitioner who filed the approved Form I–130 on behalf of the beneficiaries will submit a Form I–134A for each beneficiary with USCIS through the USCIS online web portal. The petitioner must submit a separate Form I–134A for each beneficiary, including derivatives of the principal beneficiary. The petitioner will not be required to pay a fee to file Form I–134A. The Form I–134A identifies and collects information on both the petitioner and the beneficiary.

The petitioner must submit evidence establishing their income and assets and commit to provide financial support to the beneficiary for the duration of parole. The petitioner must also submit evidence establishing the family relationships between the principal beneficiary and all derivative beneficiaries.

USCIS will perform background checks on the petitioner and verify their financial information to ensure that the petitioner is able to financially support the beneficiary. If the petitioner's Form I–134A is confirmed, the request proceeds to the next step.

Step 3: Beneficiary Electronically Provides Information To Support the Request

If a petitioner's Form I–134A is confirmed by USCIS, the beneficiary named in the Form I–134A will receive an email from USCIS with instructions to create a USCIS online account and next steps for completing the request. The beneficiary will be required to confirm their biographic information in their online account and attest to meeting eligibility requirements.

As part of confirming eligibility in their USCIS online account, a beneficiary who seeks advance authorization to travel to the United States will need to confirm that they meet public health requirements, including certain vaccination requirements.

Step 4: Beneficiary Submits Request in CBP One Mobile Application

After confirming biographic information in their USCIS online account and completing required eligibility attestations, the beneficiary will receive instructions through their USCIS online account for accessing the CBP One mobile application. The beneficiary must enter certain biographic and biometric information—including a ''live'' facial photograph—into CBP One.

Step 5: Approval To Travel to the United States

A beneficiary who establishes eligibility for this process, passes all the requisite vetting, and demonstrates that they otherwise warrant a favorable exercise of discretion, may receive an electronic advance authorization from CBP to travel to the United States. This will facilitate their ability to travel to the United States to seek a discretionary grant of parole, on a case-by-case basis, at an interior POE.

The beneficiary will receive a notice in their USCIS online account confirming whether CBP has, in its discretion, provided the beneficiary with advance authorization to travel to the United States. If approved, the beneficiary is responsible for securing their own travel via commercial air to an interior POE inside a U.S. airport.[19]

Approval of advance authorization to travel does not guarantee a beneficiary will be paroled into the United States upon inspection at the POE. Whether to parole the beneficiary is a discretionary, case-by-case determination made by CBP at the time the beneficiary arrives at the interior POE.

Step 6: Beneficiary Seeks Parole at the POE

To use the advance authorization to travel to the United States, the beneficiary must have sufficient documentation (*e.g.,* international passport) to travel on a commercial airline. Beneficiaries under the age of 18 to whom CBP issues advance authorization to travel under this process may be subject to additional screening and/or travel parameters in coordination with U.S. authorities to ensure appropriate travel arrangements and coordination with their parent(s) or legal guardian(s). This FRP process does not affect CBP's legal obligations regarding the identification and processing of unaccompanied children.[20]

CBP will inspect each beneficiary arriving at an interior POE under this process and consider each individual, on a case-by-case basis, for a grant of discretionary parole for a period of up to three years. Upon arrival at an interior POE, the beneficiary will be required to submit additional biometrics to DHS, including another photograph and fingerprints. This biometric information will support additional vetting against available databases to inform an independent determination by CBP officers as to whether parole is warranted on a case-by-case basis and whether the beneficiary merits a favorable exercise of discretion.

A beneficiary who is determined to pose a national security or public safety threat will be denied parole. A beneficiary who otherwise does not warrant parole pursuant to section 212(d)(5)(A) of the INA, 8 U.S.C. 1182(d)(5)(A), as a matter of discretion upon inspection, will be processed under an appropriate disposition and may be referred to U.S. Immigration and Customs Enforcement (ICE) for detention.

Step 7: Parole

If granted parole at the POE, on a case-by-case basis, parole will generally be granted for a period of up to three years, subject to satisfying applicable health and vetting requirements, and the parolee will be eligible to apply for employment authorization for the duration of the parole period.[21]

Parole may be terminated upon notice at DHS's discretion, and the noncitizen may be placed into removal proceedings and/or detained if, for example, the parolee fails to maintain the conditions for the parole or other derogatory information emerges during the parole period. A noncitizen paroled into the United States under this process may request additional periods of parole. DHS will determine whether an additional period is warranted, on a case-by-case basis, for urgent humanitarian reasons or significant public benefit. All of the steps in this process, including the decision to confirm or non-confirm the Form I–134A, as well as the decision whether to issue advance authorization to travel and make the parole decision at the interior POE, are entirely discretionary and not subject to appeal on any grounds.

*D. Termination, No Private Rights, and Severability*

The Secretary retains the sole discretion to terminate this HFRP process at any point. This process is being implemented as a matter of the Secretary's discretion. It is not intended to and does not create any rights, substantive or procedural, enforceable by any party in any matter, civil or criminal. The 2014 decision to implement this process remains unchanged and is severable from the

---

[19] Air carriers can validate an approved and valid travel authorization submission using the same mechanisms that are currently in place to validate that a traveler has a valid visa or other documentation to facilitate issuance of a boarding pass for air travel.

[20] *See* 6 U.S.C. 279(g)(2) (defining ''unaccompanied alien child'').

[21] 8 CFR 274a.12(c)(11).

procedural updates announced in this notice.

## III. Regulatory Requirements

### A. Administrative Procedure Act

The changes to the HFRP process announced in this notice are exempt from notice-and-comment rulemaking and delayed effective date requirements on multiple grounds and are therefore amenable to immediate issuance and implementation.

*First,* the HFRP process, and these updates to that process, constitute a general statement of policy,[22] *i.e.,* a "statement issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power."[23] As section 212(d)(5)(A) of the INA, 8 U.S.C. 1182(d)(5)(A), provides, parole decisions are made by the Secretary "in his discretion." This policy creates a process for making discretionary, case-by-case parole decisions. The updates to the process do not change the nature of the policy and fall under the exception for general statements of policy. Additionally, this falls under the separate exception for rules of agency organization, procedure, or practice[24] because it sets forth updates to how agencies will implement the HFRP process.

*Second,* even if the updates to this process were considered to be a legislative rule that will normally be subject to requirements for notice-and-comment rulemaking and a delayed effective date, the updates are exempt from such requirements because they involve a foreign affairs function of the United States.[25] As discussed in the July 10, 2023 notices announcing four new family reunification processes,[26] the United States continues to engage hemispheric partners to increase their efforts to collaboratively manage irregular migration.[27] Improving the efficiency and accessibility of HFRP is necessary to ensure our foreign partners' continued collaboration on migration issues, including the ability of the United States to meet other immigration-management priorities such as the implementation of the initial phases of Safe Mobility Offices (SMOs) in Guatemala, Costa Rica, and Colombia.[28] Also, as with the four new processes, delays in implementing these procedural changes would complicate broader ongoing and future discussions and negotiations with key foreign partners about migration management. As such, foreign partners have requested that the United States ensure that functional, efficient lawful pathways exist for Haitian nationals.

### B. Paperwork Reduction Act (PRA)

Under the Paperwork Reduction Act (PRA), 44 U.S.C. chapter 35, all Departments are required to submit to the Office of Management and Budget (OMB), for review and approval, any new reporting requirements they impose. The updates to the HFRP process announced by this notice require changes to the collection of information on Form I–134A, Online Request to be a Supporter and Declaration of Financial Support (OMB control number 1615–0157), and the collection of information on Form I–131, Application for Travel Document (OMB control number 1615–0013), which will be used for this HFRP process and are being revised in connection with this notice by adjusting the burden estimate. The updates to this process also require changes to the collection of information for Advance Travel Authorization (ATA) (OMB Control Number 1651–0143). USCIS and CBP have submitted, and OMB has approved, requests for emergency authorization of the required changes (under 5 CFR 1320.13) to Form I–134A, Form I–131, and ATA for a period of six (6) months. USCIS and CBP will issue respective 60-day **Federal Register** notices seeking comment on these changes on or before August 25, 2023.[29]

**Alejandro N. Mayorkas,**
*Secretary, U.S. Department of Homeland Security.*

[FR Doc. 2023–17344 Filed 8–10–23; 8:45 am]
**BILLING CODE 9111–97–P ; 9111–14–P**

---

## DEPARTMENT OF HOMELAND SECURITY

[CIS No. 2753–23; DHS Docket No. USCIS–2007–0043]

RIN 1615–ZC04

### Implementation of Changes to the Cuban Family Reunification Parole Process

**AGENCY:** Department of Homeland Security (DHS).

**ACTION:** Notice of changes to Cuban Family Reunification Parole.

**SUMMARY:** This notice announces that the Secretary of Homeland Security (Secretary) has authorized updates to modernize Cuban Family Reunification Parole (CFRP). CFRP provides a lawful, safe, and orderly pathway for certain Cubans to seek parole into the United States, allowing them to reunite with family as they wait for their immigrant visas to become available so they may apply to adjust status to lawful permanent resident (LPR). The Secretary has authorized these updates to CFRP in light of technological advancements and process efficiencies created since the CFRP's inception in 2007. Every step of the updated process will be completed online with the exception of a medical exam by a panel physician and the parole determination made upon arrival at an interior U.S. port of entry (POE).

**DATES:** DHS will begin using the Form I–134A, Online Request to be a Supporter and Declaration of Financial Support, for this process on August 11, 2023.

**FOR FURTHER INFORMATION CONTACT:** René Cutlip-Mason, Chief, Humanitarian Affairs Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security, by mail at 5900 Capital Gateway Drive, Camp Springs,

---

[22] 5 U.S.C. 553(b)(A).

[23] *See Lincoln* v. *Vigil,* 508 U.S. 182, 197 (1993) (quoting *Chrysler Corp.* v. *Brown,* 441 U.S. 281, 302 n.31 (1979)).

[24] 5 U.S.C. 553(b)(A).

[25] 5 U.S.C. 553(a)(1).

[26] *See* footnotes 8, 9, 10, and 11; *see also* DHS press release "DHS Announces Family Reunification Parole Processes for Colombia, El Salvador, Guatemala, and Honduras" (July 7, 2023), https://www.dhs.gov/news/2023/07/07/dhs-announces-family-reunification-parole-processes-colombia-el-salvador-guatemala.

[27] *See* The White House, Joint Statement from the United States and Guatemala on Migration (Jun 1, 2023), https://www.whitehouse.gov/briefing-room/statements-releases/2023/06/01/joint-statement-from-the-united-states-and-guatemala-on-migration/ and https://www.state.gov/u-s-colombia-joint-commitment-to-address-the-hemispheric-challenge-of-irregular-migration/; *see* United States Department of State, U.S.-Colombia Joint Commitment to Address the Hemispheric Challenge of Irregular Migration (June 4, 2023), https://www.state.gov/u-s-colombia-joint-commitment-to-address-the-hemispheric-challenge-of-irregular-migration/; *see* The White House, Readout of Principal Deputy National Security Advisor Jon Finer's Meeting with Colombian Foreign Minister Alvaro Leyva (June 11, 2023), https://www.whitehouse.gov/briefing-room/statements-releases/2023/06/11/readout-of-principal-deputy-national-security-advisor-jon-finers-meeting-with-colombian-foreign-minister-alvaro-leyva/; *see* United States Department of State, U.S.-Costa Rica Joint Commitment to Address the Hemispheric Challenge of Irregular Migration (June 12, 2023), https://www.state.gov/u-s-costa-rica-joint-commitment-to-address-the-hemispheric-challenge-of-irregular-migration/.

[28] *See* DHS, Fact Sheet: U.S. Government Announces Sweeping New Actions to Manage Regional Migration (April 27, 2023), https://www.dhs.gov/news/2023/04/27/fact-sheet-us-government-announces-sweeping-new-actions-manage-regional-migration. DHS has previously announced the intention to establish Regional Processing Centers (RPCs) but will now refer to them as Safe Mobility Offices (SMOs) following the launch of the *MovilidadSegura.org* website and the announcements with hosting countries.

[29] Per the normal clearance procedures at 5 CFR 1320.10(e).