# EXHIBIT 32

to Plaintiffs' Motion for a Preliminary Injunction
and a Stay Under 5 U.S.C. § 705

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)



procedural updates announced in this notice.

## III. Regulatory Requirements

### A. Administrative Procedure Act

The changes to the HFRP process announced in this notice are exempt from notice-and-comment rulemaking and delayed effective date requirements on multiple grounds and are therefore amenable to immediate issuance and implementation.

*First,* the HFRP process, and these updates to that process, constitute a general statement of policy,[22] *i.e.,* a ''statement issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power.'' [23] As section 212(d)(5)(A) of the INA, 8 U.S.C. 1182(d)(5)(A), provides, parole decisions are made by the Secretary ''in his discretion.'' This policy creates a process for making discretionary, case-by-case parole decisions. The updates to the process do not change the nature of the policy and fall under the exception for general statements of policy. Additionally, this falls under the separate exception for rules of agency organization, procedure, or practice [24] because it sets forth updates to how agencies will implement the HFRP process.

*Second,* even if the updates to this process were considered to be a legislative rule that will normally be subject to requirements for notice-and-comment rulemaking and a delayed effective date, the updates are exempt from such requirements because they involve a foreign affairs function of the United States.[25] As discussed in the July 10, 2023 notices announcing four new family reunification processes,[26] the United States continues to engage hemispheric partners to increase their efforts to collaboratively manage irregular migration.[27] Improving the

efficiency and accessibility of HFRP is necessary to ensure our foreign partners' continued collaboration on migration issues, including the ability of the United States to meet other immigration-management priorities such as the implementation of the initial phases of Safe Mobility Offices (SMOs) in Guatemala, Costa Rica, and Colombia.[28] Also, as with the four new processes, delays in implementing these procedural changes would complicate broader ongoing and future discussions and negotiations with key foreign partners about migration management. As such, foreign partners have requested that the United States ensure that functional, efficient lawful pathways exist for Haitian nationals.

### B. Paperwork Reduction Act (PRA)

Under the Paperwork Reduction Act (PRA), 44 U.S.C. chapter 35, all Departments are required to submit to the Office of Management and Budget (OMB), for review and approval, any new reporting requirements they impose. The updates to the HFRP process announced by this notice require changes to the collection of information on Form I–134A, Online Request to be a Supporter and Declaration of Financial Support (OMB control number 1615–0157), and the collection of information on Form I–131, Application for Travel Document (OMB control number 1615–0013), which will be used for this HFRP process and are being revised in connection with this notice by adjusting the burden estimate. The updates to this process also require changes to the collection of information for Advance Travel Authorization (ATA) (OMB

Control Number 1651–0143). USCIS and CBP have submitted, and OMB has approved, requests for emergency authorization of the required changes (under 5 CFR 1320.13) to Form I–134A, Form I–131, and ATA for a period of six (6) months. USCIS and CBP will issue respective 60-day **Federal Register** notices seeking comment on these changes on or before August 25, 2023.[29]

**Alejandro N. Mayorkas,**
*Secretary, U.S. Department of Homeland Security.*

[FR Doc. 2023–17344 Filed 8–10–23; 8:45 am]

**BILLING CODE 9111–97–P ; 9111–14–P**

## DEPARTMENT OF HOMELAND SECURITY

[CIS No. 2753–23; DHS Docket No. USCIS–2007–0043]

RIN 1615–ZC04

## Implementation of Changes to the Cuban Family Reunification Parole Process

**AGENCY:** Department of Homeland Security (DHS).

**ACTION:** Notice of changes to Cuban Family Reunification Parole.

**SUMMARY:** This notice announces that the Secretary of Homeland Security (Secretary) has authorized updates to modernize Cuban Family Reunification Parole (CFRP). CFRP provides a lawful, safe, and orderly pathway for certain Cubans to seek parole into the United States, allowing them to reunite with family as they wait for their immigrant visas to become available so they may apply to adjust status to lawful permanent resident (LPR). The Secretary has authorized these updates to CFRP in light of technological advancements and process efficiencies created since the CFRP's inception in 2007. Every step of the updated process will be completed online with the exception of a medical exam by a panel physician and the parole determination made upon arrival at an interior U.S. port of entry (POE).

**DATES:** DHS will begin using the Form I–134A, Online Request to be a Supporter and Declaration of Financial Support, for this process on August 11, 2023.

**FOR FURTHER INFORMATION CONTACT:** René Cutlip-Mason, Chief, Humanitarian Affairs Division, Office of Policy and Strategy, U.S. Citizenship and Immigration Services, Department of Homeland Security, by mail at 5900 Capital Gateway Drive, Camp Springs,

---

[22] 5 U.S.C. 553(b)(A).

[23] *See Lincoln* v. *Vigil,* 508 U.S. 182, 197 (1993) (quoting *Chrysler Corp.* v. *Brown,* 441 U.S. 281, 302 n.31 (1979)).

[24] 5 U.S.C. 553(b)(A).

[25] 5 U.S.C. 553(a)(1).

[26] *See* footnotes 8, 9, 10, and 11; *see also* DHS press release ''DHS Announces Family Reunification Parole Processes for Colombia, El Salvador, Guatemala, and Honduras'' (July 7, 2023), *https://www.dhs.gov/news/2023/07/07/dhs-announces-family-reunification-parole-processes-colombia-el-salvador-guatemala.*

[27] *See* The White House, Joint Statement from the United States and Guatemala on Migration (Jun 1, 2023), *https://www.whitehouse.gov/briefing-room/statements-releases/2023/06/01/joint-statement-from-the-united-states-and-guatemala-on-migration/* and *https://www.state.gov/u-s-colombia-joint-commitment-to-address-the-hemispheric-challenge-of-irregular-migration/; see* United States Department of State, U.S.-Colombia Joint

Commitment to Address the Hemispheric Challenge of Irregular Migration (June 4, 2023), *https://www.state.gov/u-s-colombia-joint-commitment-to-address-the-hemispheric-challenge-of-irregular-migration/; see* The White House, Readout of Principal Deputy National Security Advisor Jon Finer's Meeting with Colombian Foreign Minister Alvaro Leyva (June 11, 2023), *https://www.whitehouse.gov/briefing-room/statements-releases/2023/06/11/readout-of-principal-deputy-national-security-advisor-jon-finers-meeting-with-colombian-foreign-minister-alvaro-leyva/; see* United States Department of State, U.S.-Costa Rica Joint Commitment to Address the Hemispheric Challenge of Irregular Migration (June 12, 2023), *https://www.state.gov/u-s-costa-rica-joint-commitment-to-address-the-hemispheric-challenge-of-irregular-migration/.*

[28] *See* DHS, Fact Sheet: U.S. Government Announces Sweeping New Actions to Manage Regional Migration (April 27, 2023), *https://www.dhs.gov/news/2023/04/27/fact-sheet-us-government-announces-sweeping-new-actions-manage-regional-migration.* DHS has previously announced the intention to establish Regional Processing Centers (RPCs) but will now refer to them as Safe Mobility Offices (SMOs) following the launch of the *MovilidadSegura.org* website and the announcements with hosting countries.

[29] Per the normal clearance procedures at 5 CFR 1320.10(e).

MD 20746, or by phone at 800–375–5283.

**SUPPLEMENTARY INFORMATION:**

## I. Background

In 2007, U.S. Citizenship and Immigration Services (USCIS) launched CFRP in furtherance of the United States' commitment under the U.S.-Cuba Migration Accords [1] to direct Cuban migration into lawful, safe, and orderly channels and to continue regular review of the migration situation and proper implementation of the Accords.[2] Under CFRP, the U.S. Government (USG) invites certain eligible United States citizen (U.S.C.) and LPR petitioners to file a request and initiate consideration for parole for certain family members in Cuba who are the beneficiaries of an approved Form I–130, Petition for Alien Relative.[3]

If travel is authorized for the beneficiaries, these family members are allowed to travel to the United States before their immigrant visas become available and seek parole on a case-by-case basis upon arrival at a port of entry (POE) in the United States.[4] If granted parole into the United States, CFRP parolees may apply for employment authorization while they wait to apply to adjust to LPR status.[5] Unlike parolees under similar family reunification parole (FRP) processes, CFRP beneficiaries may apply for adjustment one year after their parole into the United States under the Cuban Adjustment Act.[6] They do not need to wait for their immigrant visas to become available to apply for adjustment.[7]

Beneficiaries must have a petitioner who filed a Form I–130 on behalf of a principal beneficiary and has been invited to participate in the CFRP process after the Form I–130 was approved. The principal beneficiary of that petitioner's Form I–130 must be a Cuban national. Consistent with a **Federal Register** notice updating the CFRP process in 2014, beginning February 17, 2015, USCIS required invited petitioners to file a completed Form I–131, Application for Travel Document, and submit the required fee(s) or fee waiver request for consideration of parole for each beneficiary.[8] Also consistent with that notice, USCIS required that USCIS officers or U.S. Department of State (State) consular officers interview beneficiaries in Havana, Cuba, to verify their eligibility for the program.[9] If USCIS issued a travel document to a given beneficiary, that individual could then travel to the United States to seek parole.

In May 2022, the United States announced the resumption of CFRP operations following suspension of CFRP interviews in September 2017 [10] and closure of the USCIS Havana Field Office on December 10, 2018.[11] In August 2022, USCIS began mailing CFRP interview notices to petitioners with instructions for the beneficiary interview. On August 18, 2022, USCIS restarted interviews at the U.S. Embassy in Cuba. However, USCIS has had limited capacity to conduct interviews due to operational constraints in Cuba. Specifically, while both State and USCIS are working to fully resume operations in Havana, these efforts are taking time to fully realize, which is one reason DHS is implementing these operational changes. Furthermore, the economic and political crisis in Cuba, which has been marked by food shortages, rolling blackouts, and countrywide internet outages,[12] impacts the USG capacity to process parole requests in Cuba for Cuban nationals and their immediate family members [13] under CFRP.

In short, interview capacity limitations in Cuba, resource constraints within DHS and State, and the pending application caseload have made the process inefficient and inaccessible to many beneficiaries in Cuba. Many applications are pending, and no new invitations to access CFRP have been sent since August 23, 2016.

In the meantime, technology has evolved since the launch of the CFRP process in 2007. DHS is now able to electronically collect biographic information and evidentiary documents to facilitate identity verification, national security checks, and public safety vetting. DHS has expanded capacity to intake forms through online processes and allow individuals to upload supporting documentation directly online as part of the application process. The updated process for CFRP utilizes these technological developments to make the advance travel authorization and parole process more efficient and accessible while maintaining national security and public safety vetting measures as well as other measures for case-by-case adjudication.

In addition, DHS has recently implemented parole processes that are similar to CFRP but that follow different procedures that utilize these recent technological developments. These include the filing of a Form I–134A, Online Request to be a Supporter and Declaration of Financial Support, the use of a fully electronic request for advance travel authorization (as opposed to the petitioner's use of the Form I–131 under the 2014 CFRP procedures), and processing without a requirement for an in-person interview abroad. Most recently, on July 10, 2023, DHS implemented FRP processes for certain Colombians,[14] Guatemalans,[15]

---

[1] See generally U.S. Department of State archived website on Cuban migration, *https://1997-2001.state.gov/regions/wha/cuba/migration.html.* Under the Accords, the United States committed itself to total legal migration to the United States from Cuba of a minimum of 20,000 Cubans each year, not including immediate relatives of U.S. citizens (USCs). See Joint Communiqué on Migration, U.S.-Cuba (Sept. 9, 1994) (known together with the Joint Statement With the Republic of Cuba on Normalization of Migration (May 2, 1995) as the U.S.-Cuba Migration Accords).

[2] Cuban Family Reunification Parole Program, 72 FR 65588 (Nov. 15, 2007). Note that, consistent with other processes described in this notice, DHS now refers to CFRP as a process rather than a program.

[3] Id.; see also USCIS, The Cuban Family Reunification Parole Program (Sept. 1, 2022), *https://www.uscis.gov/humanitarian/humanitarian-parole/the-cuban-family-reunification-parole-program.*

[4] Id.

[5] See 8 CFR 274a.12(c)(11).

[6] See Public Law 89–732, 80 Stat. 1161 (Nov. 2, 1966), as amended (Immigration and Nationality Act (INA), sec. 245, Note 1, 8 U.S.C. 1255, Note 1).

[7] Id.

[8] Notice of Changes to Application Procedures for the Cuban Family Reunification Parole Program, 79 FR 75579 (Dec. 18, 2014).

[9] 79 FR 75581.

[10] See U.S. Department of State, Biden Administration Measures to Support the Cuban People (May 16, 2022), *https://www.state.gov/biden-administration-measures-to-support-the-cuban-people/.* See also U.S. Embassy in Cuba, USCIS Resumes Cuban Family Reunification Parole Program Operations (September 1, 2022), *https://cu.usembassy.gov/uscis-resumes-cuban-family-reunification-parole-program-operations/#:~:text=CFRP%20processing%20was%20suspended%20due,office%20in%20Havana%20in%202018.*

[11] See USCIS, USCIS Closes Havana Field Office on December 10, 2018 (December 10, 2018), *https://www.uscis.gov/archive/uscis-closes-havana-field-office-on-dec-10-2018.*

[12] New York Times, 'Cuba Is Depopulating': Largest Exodus Yet Threatens Country's Future, Dec. 10, 2022, *https://www.nytimes.com/2022/12/10/world/americas/cuba-us-migration.html;* Dave Sherwood, Reuters, Oct. 1, 2022, Banging pots, Cubans stage rare protests over Hurricane Ian blackouts. *https://www.reuters.com/world/americas/cubans-havana-bang-pots-protest-days-long-blackout-after-ian-2022-09-30/;* The Economist, Cuba is Facing Its Worst Shortage of Food Since the 1990s (July 1, 2021), *https://www.economist.com/the-americas/2021/07/01/cuba-is-facing-its-worst-shortage-of-food-since-the-1990s.*

[13] Within this notice, "immediate family members" is used as a shorthand for the derivative beneficiary spouse and children of a principal beneficiary. See INA sec. 203(d), 8 U.S.C. 1153(d); see also INA sec. 101(b)(1), 8 U.S.C. 1101(b)(1) (defining "child", in general, as meaning "an unmarried person under twenty-one years of age").

[14] See Implementation of a Family Reunification Parole Process for Colombians, 88 FR 43591 (July 10, 2023).

[15] See Implementation of a Family Reunification Parole Process for Guatemalans, 88 FR 43581 (July 10, 2023).

Hondurans,[16] and Salvadorans [17] along these lines. DHS is now conforming the CFRP process to these recently announced processes.

## II. Modernized Process

### A. Petitioners

As done under the 2007 process and the revised process in 2014, invitations to participate in the CFRP process will issue to certain petitioners who have an approved Form I–130 filed on behalf of a Cuban principal beneficiary. Invitations will continue to issue at the USG's discretion, based on operational capacity, the expected period of time until the principal beneficiary's immigrant visa becomes available, and in a manner calibrated to best achieve the foreign policy aims of this process.

Petitioners who have an approved [18] Form I–130 filed on behalf of a Cuban principal beneficiary outside the United States should ensure that their mailing address and other contact information are up to date with State's National Visa Center (NVC), as this is the information that will be used to issue invitations. The invitations will provide information about how the petitioner may file a request to be a supporter with USCIS to initiate this process on behalf of a Cuban principal beneficiary of an approved Form I–130, and how to file separate requests for any immediate family members of the principal beneficiary.

As part of the request process, the petitioner will be required to provide evidence of their income and assets and commit to provide financial support to the beneficiary named in the request for the period of parole. Petitioners will also be required to provide evidence to verify the familial relationship between the principal beneficiary of the Form I–130 and all immediate family members of the principal beneficiary for whom the petitioner will be filing a request to be a supporter under this process. As part of the review process, the petitioner must also pass security and background vetting, including for public safety,

national security, human trafficking, and exploitation concerns.

### B. Beneficiaries

The threshold eligibility criteria for participation in the CFRP continue to apply. Principal beneficiaries must be Cuban nationals who have a petitioner who has been invited to participate. However, DHS is implementing an update for the petitioner to initiate this process so the beneficiary can be considered for issuance of advance authorization to travel to the United States where the beneficiary can seek a discretionary grant of parole at an interior POE.

To be eligible to be considered under this process, a beneficiary must not have been issued an immigrant visa at the time the invitation issues to the petitioner and, if authorized to travel, must now travel by commercial air with sufficient documentation (*e.g.*, international passport) to an interior POE.

In addition, as with the 2007 process and the revised 2014 process, each beneficiary must undergo and pass national security and public safety vetting and must demonstrate that they otherwise merit a favorable exercise of discretion by DHS. Under this updated process, U.S. Customs and Border Protection (CBP) will consider a beneficiary's previous immigration history, encounters with USG entities, and the results of national security and public safety vetting when determining a beneficiary's eligibility to be issued advance authorization to travel to the United States. CBP will determine, on a case-by-case basis, whether to exercise discretion to grant parole to the beneficiary at an interior POE upon their arrival. CBP also will consider other factors in making discretionary determinations consistent with long-standing policy and practice.

Upon arrival at an interior POE, each beneficiary must demonstrate to CBP that a grant of parole is warranted based on a significant public benefit or for urgent humanitarian reasons and that the beneficiary merits a favorable exercise of discretion. Each beneficiary must also comply with all additional requirements, including vaccination requirements and other public health guidelines, prior to traveling to the United States. For consistency with other FRP processes, parole will generally be granted for a period of up to three years, rather than the two years under the previous CFRP process.

Participation in this process is not limited to beneficiaries currently living

in Cuba.[19] However, as noted above, beneficiaries must be outside the United States to participate in the process, and the principal beneficiaries must be Cuban nationals.

A beneficiary of this process who enters the United States between POEs rather than being considered for parole under this process will be processed under Title 8 of the U.S. Code and face appropriate consequences. For example, they may be subject to potential criminal prosecution,[20] expedited removal proceedings,[21] or removal proceedings under section 240 of the INA, 8 U.S.C. 1229a. In addition, beneficiaries who enter the United States between POEs rather than being considered for parole under this process may already be or may become ineligible for adjustment of status [22] or for an immigrant visa [23] as a result of entering without inspection and not having been admitted or paroled.[24]

---

[19] DHS recognizes that permitting Cubans to be processed under the CFRP process when not physically present in Cuba means that not all Cubans who are paroled under the CFRP process would count towards the U.S. Government's annual obligation under the U.S.-Cuba Migration Accords.

[20] 8 U.S.C. 1325, 1326 (for illegal entry and reentry, respectively).

[21] INA sec. 235(b)(1)(A)(i), 8 U.S.C. 1225(b)(1)(A)(i).

[22] INA sec. 245(a), 8 U.S.C. 1255(a) (requiring adjustment of status applicants to be inspected and admitted or inspected and paroled, as well as be admissible); INA sec. 245(c), 8 U.S.C. 1255(c)(2) (adjustment of status applicants are ineligible if they are in unlawful immigration status on the date of filing the application for adjustment of status or fail to maintain continuously a lawful status since entry into the United States); INA sec. 212(a), 8 U.S.C. 1182(a) (grounds of inadmissibility that render applicants for adjustment of status ineligible).

[23] INA sec. 221(g), 8 U.S.C. 1201(g) (immigrant visa applicants are ineligible for immigrant visas if inadmissible under INA sec. 212(a), 8 U.S.C. 1182(a)); INA sec. 212(a), 8 U.S.C. 1182(a) (grounds of inadmissibility that render applicants for immigrant visas ineligible).

[24] For example, an applicant for adjustment of status who previously accrued more than one year of unlawful presence, departed, and thereafter reentered the United States without admission or parole is inadmissible and ineligible for adjustment unless they apply for and obtain consent to reapply for admission from outside the United States after waiting ten years after their last departure from the United States. *See* INA sec. 212(a)(9)(C)(i)(I), 8 U.S.C. 1182(a)(9)(C)(i)(I). In addition, an applicant for an immigrant visa who accrued more than 180 days of unlawful presence in the United States, departed (or is removed, as applicable), and again seeks admission (by filing an immigrant visa application) within 3 or 10 years of departure (or removal) is inadmissible and ineligible for an immigrant visa unless they apply for and obtain a waiver of inadmissibility. *See* INA sec. 212(a)(9)(B), 8 U.S.C. 1182(a)(9)(B). Additionally, an applicant for an immigrant visa who was ordered removed, departed, and again seeks admission within certain periods of time thereafter is inadmissible and therefore ineligible for an immigrant visa unless they apply for and obtain consent to reapply for admission. *See* INA sec. 212(a)(9)(A), 8 U.S.C. 1182(a)(9)(A).

---

[16] *See Implementation of a Family Reunification Parole Process for Hondurans,* 88 FR 43601 (July 10, 2023).

[17] *See Implementation of a Family Reunification Parole Process for Salvadorans,* 88 FR 43611 (July 10, 2023).

[18] In certain circumstances, such as if the beneficiary is no longer eligible for the Form I–130 (*e.g.*, the petitioner is no longer an LPR or U.S.C.), parole would be denied, and the Form I–130 approval would be revoked. If DHS revokes Form I–130 approval, the beneficiary will no longer be eligible for an immigrant visa. DHS will make these determinations on a case-by-case basis and will provide a written notice of the revocation of the approved Form I–130.

*C. Description of Updated Process for CFRP*

DHS announces these updates to the CFRP process in light of lessons learned, technological advancements made, and efficiencies created in parole processes developed and implemented since CFRP's inception in 2007. Except for the medical exam by a panel physician and the ultimate parole determination made in person, on a case-by-case basis, by CBP at an interior POE, all steps of the updated CFRP process will generally be completed online. As a result, the process will no longer require an in-country interview for each beneficiary.

Step 1: Invitation Sent to Petitioner

An invitation may be sent to a petitioner who has filed an approved Form I–130 on behalf of the principal beneficiary and any derivative beneficiaries listed on the Form I–130. The decision whether to send the invitation is based on multiple discretionary factors. Such factors may include operational capacity considerations, the expected period of time until the beneficiary's immigrant visa becomes available, as well as other measures calibrated to best achieve the policy aims of this process as described in this Notice.

Only after receiving an invitation may the petitioner file a Form I–134A request to initiate consideration under this CFRP process. Participation in the process will continue to be voluntary. The invitation will instruct the petitioner on next steps to initiate this process on behalf of the beneficiaries, including instructions on documentation to include in their Form I–134A filing. Each invitation will include an identifying number that the petitioner must include in the Form I–134A for each beneficiary on whose behalf they wish to request to be a supporter.

Step 2: Petitioner Files Form I–134A Online

After receiving an invitation to initiate this process, the U.S.C. or LPR petitioner who filed the approved Form I–130 on behalf of the beneficiaries will submit a Form I–134A for each beneficiary with USCIS through the USCIS online web portal. The petitioner must submit a separate Form I–134A for each beneficiary, including derivatives of the principal beneficiary. The petitioner will not be required to pay a fee to file Form I–134A. The Form I–134A identifies and collects information on both the petitioner and the beneficiary.

The petitioner must submit evidence establishing their income and assets and commit to provide financial support to the beneficiary for the duration of parole. The petitioner must also submit evidence establishing the family relationships between the principal beneficiary and all derivative beneficiaries.

USCIS will perform background checks on the petitioner and verify their financial information to ensure that the petitioner is able to financially support the beneficiary. If the petitioner's Form I–134A is confirmed, the request proceeds to the next step.

Step 3: Beneficiary Electronically Provides Information To Support the Request

If a petitioner's Form I–134A is confirmed by USCIS, the beneficiary named in the Form I–134A will receive an email from USCIS with instructions to create a USCIS online account and next steps for completing the request. The beneficiary will be required to confirm their biographic information in their online account and attest to meeting eligibility requirements.

As part of confirming eligibility in their USCIS online account, a beneficiary who seeks advance authorization to travel to the United States will need to confirm that they meet public health requirements, including certain vaccination requirements.

Step 4: Beneficiary Submits Request in CBP One Mobile Application

After confirming biographic information in their USCIS online account and completing required eligibility attestations, the beneficiary will receive instructions through their USCIS online account for accessing the CBP One mobile application. The beneficiary must enter certain biographic and biometric information—including a ''live'' facial photograph—into CBP One.

Step 5: Approval To Travel to the United States

A beneficiary who establishes eligibility for this process, passes all the requisite vetting, and demonstrates that they otherwise warrant a favorable exercise of discretion, may receive an electronic advance authorization from CBP to travel to the United States. This will facilitate their ability to travel to the United States to seek a discretionary grant of parole, on a case-by-case basis, at an interior POE.

The beneficiary will receive a notice in their USCIS online account confirming whether CBP has, in its discretion, provided the beneficiary with advance authorization to travel to the United States. If approved, the beneficiary is responsible for securing their own travel via commercial air to an interior POE inside a U.S. airport.[25]

Approval of advance authorization to travel does not guarantee a beneficiary will be paroled into the United States upon inspection at the POE. Whether to parole the beneficiary is a discretionary, case-by-case determination, made by CBP at the time the beneficiary arrives at the interior POE.

Step 6: Beneficiary Seeks Parole at the POE

To use the advance authorization to travel to the United States, the beneficiary must have sufficient documentation (*e.g.,* international passport) to travel on a commercial airline. Beneficiaries under the age of 18 to whom CBP issues advance authorization to travel under this process may be subject to additional screening and/or travel parameters in coordination with U.S. authorities to ensure appropriate travel arrangements and coordination with their parent(s) or legal guardian(s). This FRP process does not affect CBP's legal obligations regarding the identification and processing of unaccompanied children.[26]

CBP will inspect each beneficiary arriving at an interior POE under this process and consider each individual, on a case-by-case basis, for a grant of discretionary parole for a period of up to three years. Upon arrival at an interior POE, the beneficiary will be required to submit additional biometrics to DHS, including another photograph and fingerprints. This biometric information will support additional vetting against available databases to inform an independent determination by CBP officers as to whether parole is warranted on a case-by-case basis and whether the beneficiary merits a favorable exercise of discretion.

A beneficiary who is determined to pose a national security or public safety threat will be denied parole. A beneficiary who otherwise does not warrant parole pursuant to section 212(d)(5)(A) of the INA, 8 U.S.C. 1182(d)(5)(A), as a matter of discretion upon inspection, will be processed under an appropriate disposition and may be referred to U.S. Immigration and

---

[25] Air carriers can validate an approved and valid travel authorization submission using the same mechanisms that are currently in place to validate that a traveler has a valid visa or other documentation to facilitate issuance of a boarding pass for air travel.

[26] *See* 6 U.S.C. 279(g)(2) (defining ''unaccompanied alien child'').

Customs Enforcement (ICE) for detention.

Step 7: Parole

If granted parole at the POE, on a case-by-case basis, parole will generally be granted for a period of up to three years, subject to satisfying applicable health and vetting requirements, and the parolee will be eligible to apply for employment authorization for the duration of the parole period.[27]

Parole may be terminated upon notice at DHS's discretion, and the noncitizen may be placed into removal proceedings and/or detained if, for example, the parolee fails to maintain the conditions for the parole or other derogatory information emerges during the parole period. A noncitizen paroled into the United States under this process may request additional periods of parole. DHS will determine whether an additional period is warranted, on a case-by-case basis, for urgent humanitarian reasons or significant public benefit. All of the steps in this process, including the decision to confirm or non-confirm the Form I–134A, as well as the decision whether to issue advance authorization to travel and the parole decision at the interior POE, are entirely discretionary and not subject to appeal on any grounds.

*D. Termination, No Private Rights, and Severability*

The Secretary retains the sole discretion to terminate this CFRP process at any point. This process is being implemented as a matter of the Secretary's discretion. It is not intended to and does not create any rights, substantive or procedural, enforceable by any party in any matter, civil or criminal. The 2007 decision to implement this process remains unchanged and is severable from the procedural updates announced in this notice.

### III. Regulatory Requirements

*A. Administrative Procedure Act*

The changes to the CFRP process announced in this notice are exempt from notice-and-comment rulemaking and delayed effective date requirements on multiple grounds and are therefore amenable to immediate issuance and implementation.

*First,* the CFRP process, and these updates to that process, constitute a general statement of policy,[28] *i.e.,* a "statement issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." [29] As section 212(d)(5)(A) of the INA, 8 U.S.C. 1182(d)(5)(A), provides, parole decisions are made by the Secretary "in his discretion." This policy creates a process for making discretionary, case-by-case parole decisions. The updates to the process do not change the nature of the policy and fall under the exception for general statements of policy. Additionally, this falls under the separate exception for rules of agency organization, procedure, or practice [30] because it sets forth updates to how agencies will implement the CFRP process.

*Second,* even if the updates to this process were considered to be a legislative rule that will normally be subject to requirements for notice-and-comment rulemaking and a delayed effective date, the updates are exempt from such requirements because they involve a foreign affairs function of the United States.[31] As discussed in the July 10, 2023 notices announcing four new family reunification processes,[32] the United States continues to engage hemispheric partners to increase their efforts to collaboratively manage irregular migration.[33] Improving the efficiency and accessibility of CFRP is necessary to ensure our foreign partners' continued collaboration on migration issues, including the ability of the United States to meet other immigration-management priorities such as the implementation of the initial phases of Safe Mobility Offices (SMOs) in Guatemala, Costa Rica, and Colombia.[34] Also, as with the four new processes, delays in implementing these procedural changes would complicate broader ongoing and future discussions and negotiations with key foreign partners about migration management. As such, foreign partners have requested that the United States ensure that functional, efficient lawful pathways exist for Cuban nationals.

*B. Paperwork Reduction Act (PRA)*

Under the Paperwork Reduction Act (PRA), 44 U.S.C. chapter 35, all Departments are required to submit to the Office of Management and Budget (OMB), for review and approval, any new reporting requirements they impose. The updates to the CFRP process announced by this notice require changes to the collection of information on Form I–134A, Online Request to be a Supporter and Declaration of Financial Support (OMB control number 1615–0157), and the collection of information on Form I–131, Application for Travel Document (OMB control number 1615–0013), which will be used for this CFRP process and are being revised in connection with this notice by adjusting the burden estimate. The updates to this process also require changes to the collection of information for Advance Travel Authorization (ATA) (OMB Control Number 1651–0143). USCIS and CBP have submitted, and OMB has approved, requests for emergency authorization of the required changes (under 5 CFR 1320.13) to Form I–134A, Form I–131, and ATA for a period of six (6) months. USCIS and CBP will issue respective 60-day **Federal Register** notices seeking comment on these changes on or before August 25, 2023.[35]

**Alejandro N. Mayorkas,**

*Secretary, U.S. Department of Homeland Security.*

[FR Doc. 2023–17376 Filed 8–10–23; 8:45 am]

**BILLING CODE 9111–97–P; 9111–14–P**

---

[27] 8 CFR 274a.12(c)(11).

[28] 5 U.S.C. 553(b)(A).

[29] *See Lincoln* v. *Vigil,* 508 U.S. 182, 197 (1993) (quoting *Chrysler Corp.* v. *Brown,* 441 U.S. 281, 302 n.31 (1979)).

[30] 5 U.S.C. 553(b)(A).

[31] 5 U.S.C. 553(a)(1).

[32] *See* footnotes 14, 15, 16, and 17; *see also* DHS press release "DHS Announces Family Reunification Parole Processes for Colombia, El Salvador, Guatemala, and Honduras" (July 7, 2023), *https://www.dhs.gov/news/2023/07/07/dhs-announces-family-reunification-parole-processes-colombia-el-salvador-guatemala.*

[33] *See* The White House, Joint Statement from the United States and Guatemala on Migration (Jun 1, 2023), *https://www.whitehouse.gov/briefing-room/statements-releases/2023/06/01/joint-statement-from-the-united-states-and-guatemala-on-migration/* and *https://www.state.gov/u-s-colombia-joint-commitment-to-address-the-hemispheric-challenge-of-irregular-migration/; see* United States Department of State, U.S.-Colombia Joint Commitment to Address the Hemispheric Challenge of Irregular Migration (June 4, 2023), *https://www.state.gov/u-s-colombia-joint-commitment-to-address-the-hemispheric-challenge-of-irregular-migration/; see* The White House, Readout of Principal Deputy National Security Advisor Jon Finer's Meeting with Colombian Foreign Minister Alvaro Leyva (June 11, 2023), *https://www.whitehouse.gov/briefing-room/statements-releases/2023/06/11/readout-of-principal-deputy-national-security-advisor-jon-finers-meeting-with-colombian-foreign-minister-alvaro-leyva/; see* United States Department of State, U.S.-Costa Rica Joint Commitment to Address the Hemispheric Challenge of Irregular Migration (June 12, 2023), *https://www.state.gov/u-s-costa-rica-joint-commitment-to-address-the-hemispheric-challenge-of-irregular-migration/.*

[34] *See* DHS, Fact Sheet: U.S. Government Announces Sweeping New Actions to Manage Regional Migration (April 27, 2023), *https://www.dhs.gov/news/2023/04/27/fact-sheet-us-government-announces-sweeping-new-actions-manage-regional-migration.* DHS has previously announced the intention to establish Regional Processing Centers (RPCs) but will now refer to them as Safe Mobility Offices (SMOs) following the launch of the MovilidadSegura.org website and the announcements with hosting countries.

[35] Per the normal clearance procedures at 5 CFR 1320.10(e).