# EXHIBIT 36

to Plaintiffs' Motion for a Preliminary Injunction
and a Stay Under 5 U.S.C. § 705

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, *et al.*,<br><br>*Plaintiffs*,<br><br>– *versus* –<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>*Defendants*. | No: 1:25-cv-10495-IT |

**DECLARATION OF ESTHER H. SUNG IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND STAY**

1. My name is Esther H. Sung, I am over the age of 18, and my business address is P.O. Box 27280, Los Angeles, CA 90027.

2. I am the legal director of Justice Action Center, counsel of record for the Plaintiffs in the above-captioned action. I am a member in good standing of the State Bar of California and I have been admitted *pro hac vice* in this action.

3. I respectfully submit this declaration in connection with Plaintiffs' Motion for Preliminary Injunction and Stay ("Motion.").

4. Attached as **Exhibit 37** to the Index of Exhibits is a compilation of true and correct copies of the legislative amendments, in chronological order as enacted, to the parole authority codified at 8 U.S.C. §1182(d)(5).

5. Attached as **Exhibit 38** is a true and correct copy of a page from the CATO Institute's website, dated July 27, 2023, titled "126 Parole Orders over 7 Decades: A Historical Review of Immigration Parole Orders." The document is available at

https://www.cato.org/blog/126-parole-orders-over-7-decades-historical-review-immigration-parole-orders.

6. Attached as **Exhibit 39** is a true and correct copy of the **Declaration of Yael Schacher**, dated June 19, 2023. Ms. Schacher is a historian who focuses "on the relationship between foreign policy and migration policy, particularly as it relates to humanitarian protection," and she has "conducted extensive archival research on the Executive branch's use of the statutory parole authority." Schacher Decl. ¶ 3. Ms. Schacher's expert report—which "explain[s] and summarize[s] the legislative and administrative history of parole programs under 8 U.S.C. § 1182(d)(5), with particular focus on the programmatic use of parole, including after the statute was revised in 1980 and 1996, and how the Cuban, Haitian, Nicaraguan, and Venezuelan (CHNV) parole processes compare to past parole programs," *id.* ¶ 5—was submitted by Intervenor Defendants as part of the trial record in Texas's lawsuit challenging as unlawful the CHNV parole processes, *Texas v. DHS*, No. 6:23cv7 (S.D. Tex. filed Jan. 23, 2023). I and other attorneys at Justice Action Center represent the Intervenor Defendants in that case.

7. Attached as **Exhibit 40** is a true and correct copy of the fact **Declaration of Eric Schwartz**, dated June 19, 2023, which was also submitted by Intervenor Defendants in the *Texas* case. From 1993 to 2001, Mr. Schwartz served in the White House on the National Security Council, and then from 2009 to 2011 as the Assistant Secretary of State for the Bureau of Population, Refugees, and Migration. His declaration discusses, on the basis of his own personal knowledge, how the parole authority was used by the Executive to address specific foreign policy, migration, and humanitarian issues challenges.

8. Attached as **Exhibit 41** is a true and correct copy of the fact **Declaration of Morton H. Halperin**, dated June 16, 2023, which was also submitted by Intervenor Defendants in the *Texas*

case. Mr. Halperin was a national security advisor in the Johnson, Nixon, and Clinton Administrations, and his declaration—which is supported by primary source documents attached to it—discusses how he saw the Executive use the parole authority to address the Cuban migration crisis of the 1990s.

9. Attached as **Exhibit 42** is a true and correct copy of the fact **Declaration of Debra Rogers**, dated October 19, 2024. Ms. Rogers had a 38-year career in public service that started with the Immigration and Naturalization Service (INS) and continued with DHS upon its creation in 2003 through 2023. Ms. Rogers' declaration discusses her intimate involvement in the development of the Military Parole-In-Place process and the various reasons why DHS issued the guidance creating it. Ms. Rogers' declaration was submitted with an amicus brief by individuals who were denied intervention in a different Texas's lawsuit, this one challenging as unlawful the Keeping Families Together parole processes. *Texas v. DHS*, No. 6:24cv306 (E.D. Tex. filed August 23, 2024). I and other attorneys at Justice Action Center represented the individuals who filed the amicus brief with Ms. Rogers' declaration after unsuccessfully seeking intervention as defendants.

10. Attached as **Exhibit 43** is a true and correct copy of a June 15, 2001 memorandum from Bo Cooper, General Counsel of the U.S. Immigration and Naturalization Service, addressed to Jeffrey L. Weiss, the Director of the Office for International Affairs, providing a "Legal Opinion" on the "Parole of Individuals From the Former Soviet Union Who are Denied Refugee Status." The memorandum, which was issued shortly after the enactment of the Illegal Immigrant Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104, 208 Division C., § 602(a), 110 Stat. 3009-546, 3009-689 (1996), examined whether "the Attorney General may continue to parole individuals into the United States from the Former Soviet Union after they are denied refugee status." Acknowledging that through IIRIRA, Congress specified that parole should be granted

3

"only on a case-by-case basis for urgent humanitarian reasons or significant public benefit," the memorandum concluded that "[d]esignating, whether by regulation or policy, a class whose members generally would be considered appropriate candidates for parole does not conflict with a 'case-by-case' decision requirement, since the adjudicator must individually determine whether a person is a member of the class and whether there are any reasons not to exercise the parole authority in the particular case."

11.    Attached as **Exhibit 44** is a true and correct copy of a USCIS webpage providing an "Update on Form I-134A," stating that because of the January 20, 2025 "Securing Our Borders" Executive Order, USCIS "is pausing acceptance of Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, until we review all categorical parole processes as required by that order." Until the release of the "Update on Form I-134A" on January 28, 2025, Form I-13A had been the online application form filed by individuals who wished to sponsor a foreign national for admission to the United States through the U4U and CHNV parole processes.

12.    Attached as **Exhibit 45** is a true and correct copy of "Updated Guidance," issued by U.S. Customs and Border Protection, providing guidance to airline carriers and advising that "[c]arriers that transport [individuals] subject to the Presidential Executive Order ["Securing Our Borders"] may be subject to a carrier fine for each [individual] brought to the United States." The Guidance further advised that "impacted programs" subject to the "Securing Our Borders" Executive Order include Uniting for Ukraine; Operation Allies Welcome; Family Reunification Parole; parole for Cubans, Haitians, Nicaraguans, and Venezuelans; and 'Central American Minor [CAM]'." The "Updated Guidance" was first published on X.com by Kathleen Bush-Joseph (@KathleenBus hJo2), *available at* x.com/KathleenBushJo2/status/1887111257725038888.

13. Attached as **Exhibit 46** is a true and correct copy of a communication sent by USCIS to a CHNV parole beneficiary, advising CHNV parole beneficiaries that "USCIS has placed an administrative hold on all benefit requests filed by [individuals] who are or were paroled into the United States under the U4U, CHNV, or FRP processes, pending the completion of the required screening and vetting to identify any fraud, public safety, or national security concerns." We received a copy of this USCIS communication from the parole beneficiary's attorney.

14. Attached as **Exhibit 47** is a true and correct copy of a communication sent by USCIS to a U4U parole beneficiary who has applied for TPS, stating that "UCSIS is pausing the processing of any immigration benefit requests filed by or on behalf of [individuals] who were paroled under the U4U, CHNV, or FRP processes . . ." We received a copy of this USCIS communication from the parole beneficiary's attorney.

15. Attached as **Exhibit 48** is a true and correct copy of a communication, sent on February 28, 2025, from USCIS to a Military Parole in Place sponsor, indicating that "due to the current administration," the MPIP sponsor's application "is now on hold until further notice." We received a copy of this USCIS communication from the sponsor's attorney.

16. Attached as **Exhibit 49** is a true and correct copy of a communication, dated March 5, 2025, from a USCIS Immigration Services Officer to a U4U parole beneficiary, stating that due to the January 20, 2025 Executive Order entitled "Security Our Borders," USCIS "has placed an administrative hold on all benefit requests filed by [individuals] who are or were paroled into the United States under the U4U, CHNV, or FRP processes . . ." We received a copy of this USCIS communication from the parole beneficiary's attorney.

17. Attached as **Exhibit 50** is a true and correct copy of USCIS's webpage regarding the G-1055, its fee schedule, available at https://www.uscis.gov/g-1055.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, State of Texas, on this 17th day of March, 2025.

/s/ *Esther H. Sung*
Esther H. Sung
California Bar No. 255962*
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276
esther.sung@justiceactioncenter.org

\* admitted *pro hac vice*