# EXHIBIT 42

to Plaintiffs' Motion for a Preliminary Injunction
and a Stay Under 5 U.S.C. § 705

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, §<br>§<br>§<br>*Plaintiffs*, §<br>§<br>§ Civil Action No. 6:24-CV-00306<br>v. §<br>§ Judge J. Campbell Barker<br>UNITED STATES DEPARTMENT OF §<br>HOMELAND SECURITY, *et al.*, §<br>§<br>§<br>§<br>*Defendants* § | |

## DECLARATION OF DEBRA ROGERS

I, DEBRA ROGERS, hereby declare pursuant to 28 U.S.C. § 1746:

1. My name is Debra Rogers and I am currently a leadership coach drawing upon experiences gained during my 38-year career in public service.

2. I began my service with the Immigration and Naturalization Service (INS) in 1986 and remained with the agency through the creation of the Department of Homeland Security (DHS) in 2002. From 2008 to 2023, I was a Senior Executive at DHS, primarily with the U.S. Citizenship and Immigration Services (USCIS). During that time, I served in many different capacities, including as Deputy Associate Director for Domestic Operations, Associate Director for Field Operations, Deputy Citizenship and Immigration Services (CIS) Ombudsman, Deputy Associate Director for Customer Service and Public Engagement, and for the last two years of my government service, I served as a Senior Counselor to the USCIS Director and was detailed to the DHS Office of the Secretary as the Director of the Immigrant Military Members and Veterans Initiative (IMMVI).

3. I first became aware of hardships experienced by military service members married to noncitizens without lawful immigration status in the early 2000s, when I was serving as an INS manager and later as the USCIS District Director in San Diego, California. At the time, U.S. service members—of which there are many in the San Diego region— occasionally came into our office expressing concerns about the possibility that their undocumented family members would be subjected to immigration enforcement, particularly while the service members were away on periods of deployment. In some cases, their family members were eligible to become lawful permanent residents (green card holders) by adjusting their status from within the United States, but in other cases family members were unable to adjust status because they had not been inspected and admitted or paroled, as required by immigration law. For some but not all of these individuals, leaving the country to consular process—often while seeking an inadmissibility waiver abroad—was an option, but it came with uncertainties and the risk of potentially lengthy delays. I know from my own casework that such families often expressed great concern to me about the prospect of being separated for an unknown length of time, but they also worried about the prospect of remaining in the country, subject to the possibility of immigration enforcement. These concerns about the welfare of their family impacted the U.S. service member's military readiness.

4. At the time, USCIS had approximately 26 district offices and 84 field offices. As I knew from my own observations, beginning in 2006 when I held supervisory roles at USCIS Headquarters overseeing national operations, the absence of a policy on the matter resulted in different offices handling these cases differently. Some offices assisted by expediting advance parole requests and coordinating with the State Department, while other offices

granted parole in place to family members of military personnel. For instance, I recall that the San Antonio Field Office, which covered a geographic area containing several military bases that were home to these families, granted parole in place in some circumstances. Other offices did not know or understand that parole in place was an option. Our office in San Diego consulted with our local counsel to identify possible options that included coordinating closely with our State Department counterparts, typically in Mexico, to expedite visa processing outside the United States and re-entry at the U.S. Port of Entry. This ad hoc, office-by-office approach to the issue continued for a number of years, with different offices around the country handling seemingly like cases in materially different ways.

5. During that period, thousands of adjudicators nationwide had general guidance and training regarding how to consider requests for humanitarian or significant public benefit parole under the statute, 8 U.S.C. 1182(d)(5)(A), but lacked specific guidance regarding whether or how they could exercise the statutory parole authority to help military personnel or their family members avoid periods of family separation, including where that could promote military readiness.

6. The lack of specific guidance or a formal policy about these cases resulted in inconsistent adjudications across the agency, which was challenging from a management perspective and meant that military service members and their families requesting assistance from the agency could not reasonably predict how a request for parole would be handled or understand where and how to make such a request.

7. The lack of such guidance or policy also meant that most of these cases were raised by attorneys with particular expertise in handling immigration matters pertaining to military

personnel and their family members. The broader public, including military personnel and their family members who lacked counsel, were less likely to request discretionary relief such as parole in place.

8. In 2009, when I was serving as the Associate Director for Field Operations, I began working with others on a DHS/USCIS policy recommendation designed to improve USCIS' use of its discretionary authorities to help military service members and their close family members who lacked lawful immigration status.

9. In 2010, Secretary of Homeland Security Janet Napolitano confirmed in a letter to Members of Congress that DHS was utilizing parole, on a case-by-case basis, to assist military personnel and their family members, including to shorten periods of family separation and to facilitate adjustment to lawful permanent residence from within the United States, where possible and appropriate. Letter from Janet Napolitano, Secretary, DHS, to Hon. Zoe Lofgren, August 30, 2010, attached as **Exhibit A**.

10. Also in 2010, and as part of the agency's regular communications with its workforce, information was conveyed through USCIS leadership channels to officers in the field to remind them about the availability of parole in place as a potential option for noncitizen family members of U.S. military service members.

11. In October 2010, I left USCIS to take the position of Deputy CIS Ombudsman and served for a period of time in 2012 as Acting CIS Ombudsman. By statute, the role of the CIS Ombudsman is to assist stakeholders in resolving problems with USCIS, identify areas in which stakeholders have such problems, and, to the extent possible, propose changes in the administrative practices of USCIS to mitigate those problem areas. *See* 6 U.S.C. § 272(b). Among other things, the statute also requires the CIS Ombudsman to regularly report to

Congress the Ombudsman's findings, recommendations, and the actions taken (and not taken) regarding recommendations and identified problems. *Ibid.* § 272(c).

12. In my roles in the Office of the CIS Ombudsman, I continued to receive concerns from both within USCIS and from outside stakeholders about the lack of clear and consistent guidance provided to USCIS field offices on how to exercise their discretionary authorities, including parole in place, with respect to family members of U.S. service members, as well as similar concerns about the lack of guidance for the public about how to make such requests.

13. The Office of the CIS Ombudsman raised those concerns repeatedly within the Department to USCIS and in several reports to Congress. *See, e.g.*, Citizenship and Immigration Services Ombudsman, Annual Report 2011, June 29, 2011 ("2011 CIS Ombudsman Report to Congress"), available at https://www.dhs.gov/sites/default/files/publications/cisomb-annual-report-2011.pdf; Citizenship and Immigration Services Ombudsman, Annual Report 2012, June 25, 2012 ("2012 CIS Ombudsman Report to Congress"), *available at* https://www.dhs.gov/sites/default/files/publications/cisomb-2012-annualreport.pdf.

14. In the 2011 Annual Report to Congress, the CIS Ombudsman wrote with respect to "Discretionary Relief for Military Families," that "Members of Congress and U.S. military leaders have consistently emphasized to the Department of Homeland Security that military immigration issues (e.g. military naturalization; regularization of military dependent immigration status; preserving military family unity) are aspects of military readiness that USCIS must address." 2011 CIS Ombudsman Report to Congress, 20. The report further noted that although USCIS had "committed to issuing policies on the use of discretionary relief for military family members," it had "not indicated when it will publish these

policies." *Ibid*. The report continued, "Stakeholders report a great deal of confusion regarding the exact nature of the relief available to military family members and how to request it. Meanwhile, overseas deployments of military members continue, as do their concerns regarding the immigration status of dependent spouses, children, and parents who remain in the United States during such deployments." *Ibid*.

15. On May 22, 2012, I authored a letter on the topic as Acting CIS Ombudsman to then-USCIS Director, Alejandro Mayorkas. In that letter, I explained that despite the assurances provided by Secretary Napolitano to Congress in August 2010 regarding the consideration of available discretionary options for family members of service members, "[t]he lack of guidance has led to troubling inconsistency across the country." Letter from Debra Rogers, Acting CIS Ombudsman, to Alejandro Mayorkas, Director, USCIS, May 22, 2012, attached as **Exhibit B**. I provided the following examples:

   a. "Some USCIS field offices consider parole requests on a case-by-case basis for any immediate family member of a U.S. Serviceman or woman; others consider requests from spouses only; and the remainder does not consider requests at all.

   b. "Some USCIS field offices will consider parole requests for immediate family members of U.S. Servicemen or women and also accept and adjudicate related adjustment of status applications; and other offices will only consider parole requests, but will not accept or consider adjustment of status applications, claiming they lack guidance from USCIS Headquarters to proceed.

   c. "Some USCIS field offices require an I-131 application with fee before they will consider a parole request; and other offices require only a letter from the family requesting parole.

    d. "In addition, there is no instruction to the public or those who assist military families on how to request a review of their circumstances to determine which discretionary benefits are available to them."

16. I explained in that letter that "[p]ermitting widespread inconsistency across USCIS field offices is untenable," and relayed the experience of the spouse of a deployed U.S. Serviceman who recently had spent two nights in U.S. Immigration and Customs Enforcement custody after having been arrested by local police on a minor traffic violation while driving to buy candles for the couple's young daughter's birthday party. In that case, a request for parole had been filed and left pending with a local USCIS office for months.

17. In the 2012 Annual Report to Congress, when I was still serving as Acting CIS Ombudsman, I reiterated the Office of CIS Ombudsman's ongoing concern with the lack of guidance provided by USCIS to its field offices on how to administer discretionary relief, including parole in place, for family members of U.S. service members. 2012 CIS Ombudsman Report to Congress, 23.

18. On November 15, 2013, the Office of the Director issued USCIS Policy Memorandum PM-602-0091, addressing the use of parole for certain family members of active-duty members of the U.S. Armed Forces, the Selected Reserve of the Ready Reserve, and former members of the U.S. Armed Forces and Selected Reserve. The Policy Memorandum amended relevant portions of the Adjudicator's Field Manual. *See* USCIS Policy Memorandum PM-602-0091, Parole of Spouses, Children and Parents of Active Duty Members of the U.S. Armed Forces, the Selected Reserve of the Ready Reserve, and Former Members of the U.S. Armed Forces or Selected Reserve of the Ready Reserve and the Effect of Parole on Inadmissibility under Immigration and Nationality Act § 212(a)(6)(A)(i) (Nov. 15, 2013).

19. The policy acknowledged that both current and former service members "face stress and anxiety because of the immigration status of their family members in the United States." To address these and other concerns, a new section was added to the Adjudicator's Field Manual, which is relied upon by line and supervisory adjudicators in individual cases, stating that "[t]he fact that the individual is a spouse, child or parent" of a current or former service member "ordinarily weighs heavily in favor of parole in place. Absent a criminal conviction or other serious adverse factors, parole in place would generally be an appropriate exercise of discretion for such an individual."

20. During my career I acted in various capacities as a supervisory adjudications officer. That was the case when I was the District Director in San Diego and before that when I served as a Supervisory Immigration Officer. In those roles, I understood how adjudicators routinely applied broad policy guidance to the specific facts presented in individual adjudications to make case-by-case determinations. That was no different with parole in place adjudications under the 2013 military families parole policy or under the version of that policy that superseded the original in 2016. Adjudicators would continue to look at each case individually, weighing the positive factors identified generally by the policy with any negative factors that could weigh against a grant.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct.

Executed at Ashburn, VA on October 19, 2024

_____
Debra Rogers

# **EXHIBIT A**



*Secretary*
U.S. Department of Homeland Security
Washington, DC 20528

# Homeland Security

August 30, 2010

The Honorable Zoe Lofgren
U.S. House of Representatives
Washington, DC 20515

Dear Representative Lofgren:

Thank you for your July 9, 2010 letter regarding the immigration needs of soldiers and their families. The Department of Homeland Security (DHS), including U.S. Citizenship and Immigration Services (USCIS), is committed to assisting military families. In partnership with the Department of Defense, USCIS launched the Naturalization at Basic Training Initiative in August 2009, a program that gives non-citizen enlistees an opportunity to naturalize immediately before graduation from basic training. Since January 2009, USCIS has naturalized over 500 military personnel through this initiative.

In addition, a new DHS policy under this Administration promotes the use of several discretionary authorities to help military dependents secure permanent immigration status in the United States as soon as possible. On a case-by-case basis, DHS utilizes parole and deferred action to minimize periods of family separation, and to facilitate adjustment of status within the United States by immigrants who are the spouses, parents and children of military members. Where military dependents have already departed the United States to seek an immigrant visa through consulate processing, DHS in collaboration with the Department of State, is expediting the adjudication of all necessary waivers, including the Form I-601, Waiver of Inadmissibility.

Finally, DHS as a matter of policy does not initiate removal proceedings involving military dependents absent the existence of serious, negative factors indicating that the individuals pose a threat to public safety or national security. On a case by case basis, we also consider requests for joint motions to reopen past proceedings where relief for a military dependent appears to be available.

Thank you for your concern. I hope to continue to foster a close working relationship with you on this and other important issues. An identical letter will be sent to the representatives who co-signed your letter. If you need additional assistance, please do not hesitate to contact me at (202) 282-8203.

Yours very truly,

Janet Napolitano

www.dhs.gov

Copyright © 2015 American Immigration Lawyers Association

# **EXHIBIT B**

# Appendix 4: Acting Ombudsman Letter to USCIS on Military Immigration Issues

U.S. Department of Homeland Security
Washington, DC 20528-1225

**Homeland Security**

May 22, 2012

Alejandro Mayorkas, Director
U.S. Citizenship and Immigration Services
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001

Dear Director Mayorkas:

I would like to bring to your attention issues that are adversely affecting U.S. Servicemen and women and their families, and urge you to provide USCIS field directors with guidance on how to effectively implement programs to support the U.S. Military.

As you know, on July 9, 2010 eighteen Members of Congress sent a letter to DHS Secretary Napolitano urging her to address, within her authority, the immigration needs of U.S. Servicemen and women.[1] The letter stressed that keeping families together is a military readiness issue, quoting Retired Lieutenant General Ricardo Sanchez, former commander of ground forces in Iraq: "We should not continue to allow our citizenship and immigration bureaucracy to put our war-fighting readiness at risk."[2] In addition, the letter encouraged DHS to join in motions to reopen where legal relief may be available, consider deferred action where no permanent relief is available but strong equities exist, and consider favorably exercising parole authority for close family members that entered without inspection.

In response to this letter, Secretary Napolitano outlined a number of options available to members of the military and their families, including the Naturalization at Basic Training Program and the use of discretionary authorities to help military dependents secure permanent immigration status.[3] The letter states that, on a case-by-case basis, DHS will consider parole and deferred action to minimize periods of family separation and to facilitate adjustment of status for spouses, parents and children of military members. Most of the options outlined in Secretary Napolitano's letter are within the purview of USCIS.

Your agency is commended for fully implementing the Naturalization at Basic Training initiative in partnership with the Department of Defense (DOD). The four largest branches of the U.S. Military now provide U.S. Servicemen and women the opportunity to apply for naturalization and, if found eligible by USCIS, become citizens upon graduation from basic training. This initiative required a great deal of coordination with the DOD and an abiding commitment from USCIS Headquarters and Field leadership; it offers a lasting benefit to all who participate.

---
[1] Letter from Congress of the United States House of Representatives, July 9, 2010.
[2] *Id.*
[3] Letter from Secretary Janet Napolitano, U.S. Department of Homeland Security, August 30, 2010.

www.dhs.gov/cisombudsman

*Citizenship and Immigration Services Ombudsman*

Unfortunately, USCIS has not provided its field offices with consistent guidance on how to administer available discretionary options for family members of U.S. Servicemen and women. The lack of guidance has led to troubling inconsistency across the country. For example:

- Some USCIS field offices consider parole requests on a case-by-case basis for any immediate family member of a U.S. Serviceman or woman; others consider requests from spouses only; and the remainder does not consider requests at all.

- Some USCIS field offices will consider parole requests for immediate family members of U.S. Servicemen or women and also accept and adjudicate related adjustment of status applications; and other offices will only consider parole requests, but will not accept or consider adjustment of status applications, claiming they lack guidance from USCIS Headquarters to proceed.

- Some USCIS field offices require an I-131 application with fee before they will consider a parole request; and other offices require only a letter from the family requesting parole.

In addition, there is no instruction to the public or those who assist military families on how to request a review of their circumstances to determine which discretionary benefits are available to them.

Our office has expressed concern about these issues for over a year, emphasizing the customer impact and the need for resolution. Permitting widespread inconsistency across USCIS field offices is untenable. Just recently, the spouse of a deployed U.S. Serviceman was apprehended by local police for a minor traffic violation on her way to pick up candles for their young daughter's birthday party. She was turned over to Immigration and Customs Enforcement and spent two nights at an immigration detention center before being released. Meanwhile, her request for parole had been pending for months at a local USCIS office. Imagine the impact on their child.

Our office is asking you to empower your field directors to fully and fairly exercise the authority entrusted to them, and to work in collaboration with the DOD to address the urgent needs of U.S. Servicemen and women. Our troops need to know that their government, specifically USCIS, will do everything in its power to care for their families while they are protecting our country and when they return home. USCIS has the honor of demonstrating a true commitment to our Servicemen and women and we urge you to do so.

Sincerely,

*Debra Rogers*
Debra Rogers
Acting CIS Ombudsman

Page 2