# EXHIBIT 43

to Plaintiffs' Motion for a Preliminary Injunction
and a Stay Under 5 U.S.C. § 705

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)



**U.S. Department of Justice**
Immigration and Naturalization Service

HQCOU 90/15-P; HQCOU 120/17-P

Office of the General Counsel

*425 I Street NW*
*Washington, DC 20536*

JUN 1 5 2001

MEMORANDUM FOR JEFFREY L. WEISS, DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS

FROM: Bo Cooper
General Counsel

SUBJECT: Legal Opinion: Parole of Individuals From the Former Soviet Union Who Are Denied Refugee Status

**I. Question Presented:**

1. May the Attorney General continue to parole individuals into the United States from the Former Soviet Union after they are denied refugee status?

**II. Summary Conclusion:**

1. Yes. Section 212(d)(5)(A) of the Immigration and Nationality Act, as amended, authorizes the Attorney General to parole individuals into the United States from the Former Soviet Union after they are denied refugee status.

**III. Analysis:**

**A. Introduction**

This memorandum explores the legal basis upon which, and the extent to which, the Immigration and Naturalization Service (INS) may continue to parole into the United States individuals who are denied refugee status after applying through the in-country refugee program in Moscow. Since 1988, the INS has exercised its discretionary authority to parole into the United States aliens from the Former Soviet Union who were denied refugee status. In 1996, the 104th Congress amended the standards which guide the Attorney General's exercise of the parole power. As amended in 1996, section 212(d)(5)(A) of the Immigration and Nationality Act (INA, or the Act) does not curtail the Attorney General's legal authority to parole into the United States individuals from the Former Soviet Union who are denied refugee status.

Cuba AR_000092

Memorandum for Jeffrey L. Weiss  Page 2
Subject: Parole of Individuals From the Former Soviet Union Who Are Denied Refugee Status

### B. Refugee Processing and Parole in the Context of the Former Soviet Union

Before 1988, Soviet refugee applicants were processed in Rome. The shift to in-country processing in Moscow began in August 1988 with approximately 2000 Armenians who were divested of their Soviet citizenship, but unable to leave the Soviet Union for lack of State Department funding for their transportation and temporary support in Rome. At the inception of in-country refugee processing in Moscow, INS adjudicators apparently construed refugee eligibility more broadly than permitted by the statute and, as a result, approval rates were high. Attorney General Edwin Meese instructed INS to bring the Moscow program "into sync" with existing statutes and INS procedures, but nonetheless offered to parole into the United States those individuals who did not qualify as refugees.[1]

*The Lautenberg Amendment (1990)*: When INS aligned its overseas refugee processing with the standards set out in the Act, refugee approval rates in the Moscow program declined appreciably. Congress responded by adopting a provision, commonly known as the Lautenberg Amendment, designed to restore the traditionally high approval rates for certain categories of refugee applicants by reducing the evidentiary burden for establishing eligibility for refugee status.[2] While not expressly endorsing parole of those denied refugee status, section 599E of the Lautenberg Amendment does permit nationals of the Soviet Union, Vietnam, Laos, or Cambodia to adjust their status if they had been paroled into the United States after being denied refugee status.

To date, INS in Moscow continues both to process qualified refugee applicants under the reduced evidentiary standards set out in the Lautenberg Amendment and also to parole into the United States a high percentage of Lautenberg category members who are denied refugee status.

---

[1] Letter from Edwin Meese, Attorney General, to then Lt. General Colin Powell, Assistant to the President for National Security Affairs (Aug. 4, 1988) (on file with the INS, Office of the General Counsel).

[2] Sections 599D and E of the Foreign Operations, Export Financing, and Related Programs Appropriations Act of 1990, Pub. L. No. 101-167, 103 Stat. 1195 (1989). An introductory note to the July 13, 1989, Senate Voting Record on the Lautenberg Amendment explains:

> Proponents stated that this amendment is necessary to correct the actions of Attorney General Meese, who, in 1988, changed the criteria under which Soviet Jews and Vietnamese . . . could qualify as refugees. In the past, these two groups of people have been assumed to have a well-founded fear of persecution and, therefore, have automatically qualified as refugees. As a result of the Attorney General's actions in March 1988, the denial rate for Soviet Jews rose from seven percent to a high of 38 percent. . . . Many of the refugees from the Soviet Union and Vietnam, who have been turned down, are displaced and uprooted. They have given up their country, homes, and families because they thought they could rely on the U.S. government's long-standing promise of resettlement.

Senate Voting Record No. 134, Bill No. S.1160 (H.R. 1487), Amendment No. 367. Temp. Cong. Rec. S-8394 (July 20, 1989).

Memorandum for Jeffrey L. Weiss  
Subject: Parole of Individuals From the Former Soviet Union Who Are Denied Refugee Status

Page 3

Parole decisions are made on a case-by-case basis in accordance with section 212(d)(5)(A) of the Act.

### C. Evolution of INA Section 212(d)(5)

The Attorney General's parole authority has changed little since 1952, when it was codified into section 212(d)(5) of the INA. Though subsequent Congresses often debated the proper scope of the Attorney General's parole power,[3] section 212(d)(5) has been amended only three times in the past fifty years. As originally enacted, section 212(d)(5) of the Act provided:

> (5) The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5) (1952); Act of June 27, 1952, 66 Stat. 163.

*The Refugee Act of 1980*: As part of the comprehensive restructuring of refugee admission procedures achieved in the Refugee Act of 1980,[4] the 96th Congress split section 212(d)(5) into subparagraphs (A) and (B), adding the underlined text as follows:

> (A) The Attorney General may, except as provided in subparagraph (B), in his discretion parole into the United States. . . .
>
> (B) The Attorney General may not parole into the United States an alien who is a refugee unless the Attorney General determines that compelling reasons in the public interest with respect to that particular alien require that the alien be paroled into the United States rather than be admitted as a refugee under section 207.

1980 Refugee Act § 202(f). This language was designed to funnel all refugee admissions under the numerical cap to be established annually by the President after consultations with Congress,

---

[3] See, e.g., Arthur Helton, *Immigration Parole Power: Toward Flexible Responses to Migration Emergencies*, 71 INTERPRETER RELEASES 1637 (Dec. 12, 1994); Deborah E. Anker & Michael H. Posner, *The Forty Year Crisis: A Legislative History of the Refugee Act of 1980*, 19 SAN DIEGO L. REV. 9 (1981); Elizabeth J. Harper, IMMIGRATION LAWS OF THE UNITED STATES 503-14 (3d ed. 1975).

[4] Refugee Act of 1980, Pub. L. 96-212, 94 Stat. 108, *codified as* 8 U.S.C. §§ 1157-1159 (1980) (hereinafter 1980 Refugee Act).

Cuba AR_000094

Case 2:25-cv-00104-95-DC Document 92-2 Filed on 03/24/03/17/25 SD Page 5 of 7 45

Memorandum for Jeffrey L. Weiss                                                    Page 4
Subject: Parole of Individuals From the Former Soviet Union Who Are Denied Refugee Status

and thus to discourage the admission of additional refugees under the Attorney General's parole power.[5]

*The Immigration Act of 1990*: In 1990, the 101st Congress added a minor limitation to section 212(d)(5)(A): "The [AG] may, except as provided in subparagraph (B) <u>or in section 214(f)</u>, in his discretion parole. . ." (emphasis added).[6] This amendment curtails the Attorney General's power to parole an alien crewmember who is present in the United States during a labor dispute that leads to a strike or lockout. See also INA § 214(f)(2)(A). Until this point, no Congress had modified the substantive criteria that guide the Attorney General's exercise of the parole authority.

*The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA)*: In 1996, as part of its overhaul of the INA, the 104th Congress narrowed the Attorney General's parole authority by striking "for emergent reasons or for reasons deemed strictly in the public interest" and inserting "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." IIRIRA § 602(a).[7]

### D. Construing INA Section 212(d)(5)(A), as Amended by IIRIRA Section 602

The question presented is whether, under the amended statutory criteria, INS may continue to parole into the United States persons denied refugee status.

*Plain Meaning*: The preferred method of statutory construction is to carry out the plain meaning of the text of a statute. Perry v. Commerce Loan Co., 383 U.S. 392, 400, reh'g denied, 384 U.S. 934 (1966), *cited in* Matter of H-N-, Int. Dec. 3414 (BIA 1999). The 104th Congress replaced "emergent" reasons with "urgent humanitarian" reasons, and "strictly in the public interest" with "significant public benefit." IIRIRA § 602(a). The differences between these phrases are perceptible, but the text alone is insufficient to determine whether Congress intended, by this amendment, to end the practice of paroling those denied refugee status from the Former Soviet Union.

---

[5] For analysis of this amendment to section 212(d)(5) of the Act and of the 1980 Refugee Act in general, see Anker & Posner, *supra* note 3.

[6] Reference to section 214(f) added by section 202(b) of the Immigration Act of 1990, Act of Nov. 29, 1990, Pub. L. 101-649, 104 Stat. 4978.

[7] Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. 104-208, 110 Stat. 3009-546 (Sept. 30, 1996). At the same time, Congress also inserted a provision requiring the Attorney General to submit an annual report describing the number and category of aliens paroled into the United States, including information such as the country of origin, duration of parole, current status of such parolees. IIRIRA § 602(b).

Memorandum for Jeffrey L. Weiss  Page 5
Subject: Parole of Individuals From the Former Soviet Union Who Are Denied Refugee Status

Section 602 of IIRIRA, which amends INA section 212(d)(5), is entitled "Limitation on Use of Parole."[8] Titles have a communicative function. They may be considered to clarify uncertainty in the text but cannot limit the text's plain meaning. 2A Sutherland, *Statutes and Statutory Construction* (6th ed., Norman Singer ed.) § 47.03. The title "Limitation on Use of Parole" confirms what the text suggests, but does not resolve by *how much* Congress intended to curtail the Attorney General's parole authority.

*Legislative History*: The legislative history of IIRIRA section 602 is similarly vague. Describing the import of proposed language that would ultimately be adopted in the final version of IIRIRA section 602, a Senate Report states only that the amendment "[t]ightens The [sic] Attorney General's parole authority...." S. Rep. No. 249, 104th Cong., 2d Sess. 21 (1996). Nor does the final Conference Report for IIRIRA explain to what extent parole should be "tightened." H.R. Conf. Rep. No. 828, 104th Cong., 2d Sess. 245 (1996).

While the legislative history does not clarify to what extent Congress sought to limit the parole authority, it does indicate that the 104th Congress rejected language that would have circumscribed the Attorney General's authority to parole individuals who were denied refugee status. The adopted Senate language replaced an earlier House proposal, section 524 of H.R. 2202, that enumerated four exclusive reasons for which the Attorney General could parole an individual into the United States: medical emergency; organ donation; to visit a dying relative; and to assist U.S. law enforcement efforts (or to protect an individual who so assisted). In addition, section 524 provided:

> (D) LIMITATION ON THE USE OF PAROLE AUTHORITY- The Attorney General may not use the parole authority under this paragraph to permit to come to the United States aliens who have applied for and have been found to be ineligible for refugee status or any alien to whom the provisions of this paragraph do not apply.

The 104th Congress specifically considered, but rejected, the House's proposal to limit the practice of paroling into the United States those denied refugee status. "[W]here the language under question was rejected by the legislature and thus not contained in the statute it provides an indication that the legislature did not want the issue considered." 2A Sutherland, *supra*, § 48.04.

*Re-Authorization of the Lautenberg Amendment*: Within the Omnibus Consolidated Appropriations Act of 1997, Congress both amended the Attorney General's parole authority (Division C) and re-authorized the Lautenberg Amendment for an additional year (Division A). *Compare* Pub. L. 104-208, Div. C, Title VI § 602(a), 110 Stat. 3009-689 (Sept. 30, 1996), *with* Pub. L. 104-208, Div. A, Title I § 101(c) [Title V, § 575(2)], 110 Stat. 3009-168 (Sept. 30, 1996). As discussed above, the Lautenberg Amendment affords adjustment of status to those who are paroled into the United States after being denied refugee status. Not only did the 104th Congress specifically reject proposed limits to the Attorney General's authority to parole denied

---

[8] This title is not codified into the INA.

Memorandum for Jeffrey L. Weiss  Page 6
Subject: Parole of Individuals From the Former Soviet Union Who Are Denied Refugee Status

refugee applicants, it tacitly approved of the practice by renewing an existing provision that permitted these parolees to adjust their status to that of lawful permanent residents. Subsequent Congresses have re-authorized the Lautenberg Amendment four (4) times since IIRIRA.[9]

*Case-by-case basis of parole decisions*: For indivi... s found to be ineligible to be classified as a refugees, parole decisions must comply with t case-by-case requirement of amended section 212(d)(5)(A) of the Act and may not be made on a "blanket" basis. Designating, whether by regulation or policy, a class whose members generally would be considered appropriate candidates for parole does not conflict with a "case-by-case" decision requirement, since the adjudicator must individually determine whether a person is a member of the class and whether there are any reasons not to exercise the parole authority in the particular case.

Under current practice, every refugee applicant is interviewed by an immigration officer for possible classification as a refugee. If the applicant is found not to be eligible for refugee status, the officer considers the merits of the case for an offer of parole. So long as individual consideration is given to parole decisions, the Service's determination - that it is generally in the public interest to parole denied refugee applicants from Moscow who belong to groups specified in the Lautenberg Amendment - does not violate the case-by-case requirement.

## IV. Conclusion:

While section 602 of IIRIRA generally tightens the criteria by which parole decisions are made, it is the opinion of the General Counsel that section 212(d)(5)(A), as amended, does not curtail the Attorney General's legal authority to parole into the United State individuals from the Former Soviet Union who are denied refugee status.

---

[9] Pub. L. 105-118, Title V, § 574(2), Nov. 26, 1997, 111 Stat. 2432; Pub. L. 105-277, Div. A, § 101(f) [Title VII, § 705(2)], Oct. 21, 1998, [12 Stat. 2681-389; Pub. L. 106-113, Div. B, § 1000(a)(4) [Title II, § 214(2)], Nov. 29, 1999, 113 Stat. 1535, 1501A-240; Pub. L. 106-554, enacting by reference Title II, § 212(2) of H.R. 5656, Dec. 21, 2000, 14 Stat. 2763A-25.