# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SVITLANA DOE,** *et al.*, )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**KRISTI NOEM, in her official capacity as** )<br>**Secretary of Homeland Security, et al.;** )<br>)<br>**Defendants.** ) | Civil Action No.<br><br>1:25-cv-10495-IT |

### DECLARATION OF KIKA SCOTT

I, Kika Scott, make the following declaration, as permitted by Section 1746 of Title 28 of the United States Code. I am aware that this declaration will be filed in the above-captioned civil action with the United States District Court for the District of Massachusetts. I hereby certify:

1. I am the Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services ("USCIS"), a component agency within the United States Department of Homeland Security ("DHS"). I have held this position since February 9, 2025. Previously, I was the Chief Financial Officer, USCIS, DHS, since May 27, 2019.

2. The statements contained in this declaration are based upon my personal knowledge, and upon information provided to me in my official capacity.

3. President Trump signed Executive Order 14165 on January 20, 2025.[1] Pursuant to that Executive Order, on January 23, 2025, Acting Director Jennifer Higgins directed that USCIS adjudicators should not make any final decisions (approval, denial, closure) or issue a travel document or I-94 for any initial parole or re-parole application, petition, motion, or other request, filed under Uniting for Ukraine (U4U), the parole programs for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV), Operation Allies Welcome

---

[1] Executive Order 14165, Securing Our Borders, 90 Fed. Reg. R 8467 (Jan. 20, 2025) (published Jan. 30, 2025).

1

(OAW) re-parole, Family Reunification Parole (FRP) programs, and the Central American Minors (CAM) parole program. She further instructed that the pause did not apply to requests for advance parole, non-categorical Form I-131 Humanitarian Parole, or government referrals for parole filed and adjudicated on a case-by-case basis for urgent humanitarian reasons or significant public benefit.

4. On January 28, 2025, USCIS provided notice on its website (*see, e.g.,* www.uscis.gov/i-134A) that it was pausing acceptance of the Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, until the Agency had reviewed all categorial parole programs as instructed by Executive Order (EO) 14165. The Form I-134A is used to initiate the parole processes for the U4U, CHNV, and FRP programs.

5. The CHNV parole programs were also previously briefly paused in July 2024 to evaluate program vulnerabilities, as has been publicly reported.[2] The then-Secretary of Homeland Security instructed USCIS and U.S. Customs and Border Protection (CBP) to pause the CHNV parole programs due to concerns that fraud, public safety, and national security were insufficiently addressed and that U.S.-based supporters were not sufficiently screened and vetted.

6. On February 14, 2025, Acting Deputy Director Andrew Davidson issued a USCIS-wide administrative hold on all pending benefit requests filed by aliens who are or were paroled into the United States pursuant to INA § 212(d)(5)(A) under the U4U, CHNV, and FRP programs pending the completion of additional vetting to identify any fraud, public safety, or national security concerns. The hold was issued pursuant to EO 14165.

7. As of the date of this declaration, the programs have not been terminated. Benefit requests submitted by U4U, CHNV, and FRP parolees remain pending and on hold until USCIS completes its review of the programs and the screening and vetting that these parolees and their supporters received to ensure that it comported with the uniform

---

[2] *See, e.g.,* Staff of H. Comm. on the Judiciary, 119th Cong., The Biden-Harris Administration's CHNV Parole Program Two Years Later: A Fraud-Ridden, Unmitigated Disaster (2024), https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2024-11-20%20The%20Biden%20Harris%20Administration%27s%20CHNV%20Parole%20Program%20Two%20Years%20Later%20-%20A%20Fraud-Ridden%2C%20Unmitigated%20Disaster.pdf.

baseline that existed on January 19, 2021. USCIS has issued a temporary pause to review vetting procedures to ensure that only individuals who are eligible for immigration benefits receive them.

8. Although certain categorical parole programs have been paused pending further review, DHS and USCIS continue to accept and process certain individual parole requests filed on Form I-131, Application for Travel Documents, Parole Documents, and Arrival/Departure Records, on a case-by-cases basis, for urgent humanitarian reasons or significant public benefit, including requests based on military parole in place (MIL PIP), Immigrant Military Members and Veterans Initiative (IMMVI), U.S. Government referrals for parole, as well as individual parole requests not under a particular program or process.[3] Additionally, in some instances where an alien needs to remain in the United States after their period of parole terminates, the alien may request a new period of parole, also known as re-parole, by filing Form I-131 with USCIS from within the United States. Such requests are also adjudicated on a case-by-case basis for urgent humanitarian reasons or significant public benefit which warrants the new period of parole.

9. The Immigration and Nationality Act ("INA") confers upon the Secretary of Homeland Security ("Secretary") the narrow discretionary authority to parole aliens into the United States "temporarily under such conditions as [DHS] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit . . . but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled...." ." *See* INA 212(d)(5)(A), 8 U.S.C. 1182(d)(5)(A); *see also* 8 CFR 212.5(a) and (c) through (e) (discretionary authority for establishing conditions of parole and for terminating parole). Pursuant to EO 14165, the Secretary is evaluating categorical parole programs to determine whether to exercise her discretion in this way, evaluating whether

---

[3] *See, e.g.*, Humanitarian or Significant Public Benefit Parole for Aliens Outside the United States https://www.uscis.gov/humanitarian/humanitarian_parole

       the programs still serve their intended purposes and are consistent with the goals of the current Administration.

9. In this case, DHS, including USCIS, would be harmed if a preliminary injunction were granted to require DHS to resume review of requests filed under certain parole programs before the Secretary of DHS has completed her review. Requiring USCIS to review requests related to parole under the paused parole programs while the Secretary's review is taking place would require USCIS to allocate resources away from other Administration priorities, even though the Secretary may decide not to exercise her discretion to continue these categorical parole programs. Further, to the extent that fraud, public safety, and national security concerns exist among individuals seeking to support a potential beneficiary and among potential beneficiaries under the paused programs, requiring DHS to continue screening, vetting, and reviewing individuals' requests to be a supporter or applications for parole or re-parole would harm the agency's ability to fulfill its mission for the reasons explained below.

10. From their inception, DHS has expressly advised the public that the parole programs are discretionary. In establishing the CHNV parole programs, DHS stated that "[t]he Secretary retains the sole discretion to terminate the [Parole Program] … at any point"[4] and that "DHS may terminate parole in its discretion at any time."[5] The CHNV parole programs were "being implemented as a matter of the Secretary's discretion. [They are] not intended to and [do] not create any rights, substantive or procedural, enforceable by any party in any matter, civil or criminal." DHS made similar statements regarding FRP, including explaining, "The Secretary retains the sole discretion to terminate this FRP process at any point."[6] In establishing the CAM program, DHS explained, "DHS may terminate parole in its discretion at any time."[7]

---

[4] *E.g.*, 88 FR at 1268 (Cuba).

[5] *E.g.*, 88 FR at 1272 (Cuba).

[6] 88 FR 43611 at 43619 (FRP for Salvadorans).

[7] 88 FR at 21698 (CAM).

4

11. In most instances, potential beneficiaries of these parole programs are currently outside of the United States. If individuals are engaged in fraud, or wish to cause harm to the United States, requiring DHS to resume these programs would facilitate the arrival of aliens who may be bad actors onto U.S. soil. Further, once paroled into the United States, DHS would need to expend additional resources to terminate parole and remove the alien, as appropriate.

13. Permitting aliens to travel to the United States, if they are engaged in fraud, also undermines the integrity of the immigration system. If the American public believes that DHS does not have thorough vetting and that aliens who do not warrant a favorable exercise of discretion are paroled into the United States, then there is less trust in the immigration system. Further, perception that DHS is not combatting fraud is likely to encourage more fraudulent applications, petitions, and requests. In this instance, there is reason to believe that there is fraud occurring in these parole programs, based on USCIS' findings in its prior review of the CHNV programs.

14. USCIS would also be harmed if the February 14, 2025 Davidson Memo to pause adjudication of immigration benefits filed by aliens who were paroled into the United States under these programs were enjoined. A temporary hold on processing of immigration benefit requests filed by aliens paroled into the United States under the U4U, CHNV, and FRP programs allows USCIS, in coordination with other partners in DHS, to determine the scope of any further fraud, and implement measures to prevent those individuals from obtaining further immigration benefits in the United States.

15. USCIS may, in its discretion, issue temporary holds on adjudication of certain benefits to conduct investigations and vetting to determine that an individual is eligible for the benefit sought. USCIS has an obligation to only grant immigration benefits to individuals who are eligible for them, and to investigate the individual's background to ensure eligibility. In this instance, as articulated in the February 14, 2025 Davidson Memo, USCIS determined that parolees whose immigration benefits are subject to the hold may not have received screening and vetting to the maximum degree possible or that comports

with the uniform baseline that existed on January 19, 2021, as required per EO 14161, prior to being granted parole. Without this hold, and taking the time to flag cases where the parolee (and/or their supporter) may have committed fraud or pose a national security or public safety concern for additional review, USCIS may inadvertently grant immigration benefits to aliens who are either ineligible for the benefit sought as a matter of law or where the benefit is discretionary, does not warrant a favorable exercise of discretion. Further, while parole is not a permanent benefit, many aliens who were paroled into the United States under these programs now have applications pending that would provide them permanent status in the United States. If USCIS later determines that these benefits were improperly granted, it may be difficult and time-consuming to rescind or terminate.

16. I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge. Executed this 20th day of March, 2025, in Camp Springs, Maryland.

KIKA M SCOTT
Digitally signed by KIKA M SCOTT
Date: 2025.03.20 23:01:49 -04'00'

Kika Scott
Senior Official Performing the Duties of the Director
U.S. Citizenship and Immigration Services
Department of Homeland Security