YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

AUGUST FLENTJE
*Acting Director*

EREZ REUVENI
*Assistant Director*

PATRICK GLEN
KATHERINE J. SHINNERS
BRIAN C. WARD
*Senior Litigation Counsel*
JOSEPH DARROW
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-7537
Email: joseph.a.darrow@usdoj.gov

ELISSA FUDIM
ZACHARY CARDIN
DANIEL SCHUTRUM-BOWARD
*Trial Attorneys*

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Svitlana Doe, *et al.*, | ) Civil Action No. 1:25-cv-10495 |
| Plaintiffs, | ) |
| v. | ) |
| Kristi Noem, in her official capacity as Secretary of Homeland Security, *et al.*, | ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................. 1

LEGAL AND PROCEDURAL BACKGROUND ................................................. 2

STANDARD .................................................................................... 5

ARGUMENT .................................................................................... 6

    I.   The Court Lacks Jurisdiction Over Plaintiffs' Request. ..................................... 6

      A.   Plaintiffs Have not Established Standing to Seek Injunctive Relief. .............................. 6

      B.   Section 1252(a)(2)(B)(ii) Precludes Jurisdiction. ........................................ 10

    II.   Plaintiffs Are Not Likely to Succeed Because they Cannot Obtain APA Review. .......... 11

      A.   Plaintiffs Challenge Decisions Committed to Agency Discretion. ............................. 12

      B.   Plaintiffs Do Not Challenge Final Agency Action. ....................................... 14

      C.   Statutes Preclude Review ........................................................ 19

      D.   Organizational and Supporter Plaintiffs Are Not in the Zone of Interests. ................. 19

    III.   Plaintiffs Are Not Likely to Succeed on the Merits of their APA Claims. ................. 20

      A. Plaintiffs' Contrary to Law Claims Lack Merit. ....................................... 20

      B. The Challenged Actions are Not Arbitrary or Capricious. ............................... 23

    IV. Plaintiffs Do Not Satisfy the Remaining Factors for Obtaining Injunctive Relief. ........... 26

      A.   Plaintiffs Fail to Show Likely Irreparable Harm. ...................................... 26

      B.   The Balance of the Equities and Public Interest Do Not Support Injunctive Relief. ..... 27

    V.  At Minimum, Any Relief Must be Limited to the Parties and their Specific Harms. ......... 29

    CONCLUSION .................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Air Transp. Ass'n. of Am., Inc. v. Nat'l Mediation Bd.*,
   719 F. Supp. 2d 26 (D.D.C. 2010) ............................................. 22

*Amanullah v. Nelson*, 811 F.2d 1, 6 (1st Cir. 1987) ............................ 2

*APA. Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ......................................................... 15

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
   5 F.4th 997 (9th Cir. 2021) ................................................. 15

*Arizona v. United States*,
   567 U.S. 387 (2012) ..................................................... 13, 29

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*,
   208 F.3d 1 (1st Cir. 2000) ........................................... 14, 16-17

*Ayuda, Inc. v. Reno*,
   7 F.3d 246 (D.C. Cir. 1993) ................................................. 20

*Baxter v. Palmigiano*,
   425 U.S. 308 (1976) ......................................................... 30

*Bennet v. Spear*,
   520 U.S. 154–78 (1997) ............................................ 14, 16, 17

*Biden v. Texas*,
   597 U.S. 785 (2022) ..................................................... 15, 17

*Brnovich v. Biden*,
   630 F.Supp.3d 1157 (D. Ariz. 2022) ......................................... 15

*Celebi v. Mayorkas*,
   744 F. Supp. 3d 100 (D. Mass. 2024) ......................................... 8

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
   370 F.3d 151 (1st Cir. 2004) ............................................... 27

*Cheejati v. Blinken*,
   106 F.4th 388 (5th Cir. 2024) .............................................. 11

*Clarke v. Security Indus. Ass'n*,
   479 U.S. 388 (1987) ........................................................ 19

*Conservation L. Found. of New England, Inc. v. Reilly*,
   950 F.2d 38 (1st Cir. 1991) ................................................ 29

*Crane v. Johnson*,
   783 F.3d 244 (5th Cir. 2015) ........................................................................... 13

*Dep't of Commerce v. New York*,
   588 U.S. 752 (2019) ........................................................................... 26

*Doe #1 v. Trump*,
   944 F.3d. 1222 (9th Cir. 2019) ........................................................... 28

*DTC Energy Grp., Inc. v. Hirschfeld*,
   912 F.3d 1263 (10th Cir. 2018) ......................................................... 26

*Fed'n for Am. Immigration Reform (FAIR), Inc. v. Reno*,
   93 F.3d 897 (D.C. Cir. 1996) ............................................................ 19

*FERC v. Electric Power Supply Ass'n*,
   577 U.S. 260 (2016) ........................................................................... 23

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ........................................................................... 17

*Florida v. United States*,
   660 F. Supp. 3d 1239 (N.D. Fla. 2023) ............................................. 15

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ................................................................. 7, 30

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
   528 U.S. 167 (2000) ........................................................................... 6

*Gill v. Whitford*,
   585 U.S. 48 (2018) ........................................................... 6, 29, 30

*Haaland v. Brackeen*,
   599 U.S. 255 (2023) ........................................................................... 10

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ................................................................. 13, 14

*Howe v. Bank for Int'l Settlements*,
   194 F. Supp. 2d 6 (D. Mass. 2002) ................................................... 12

*INS v. Legalization Assistance Project*,
   510 U.S. 1301 (1993) ......................................................................... 29

*Jean v. Nelson*,
   727 F.2d 957 (11th Cir. 1984) ........................................................... 2

*Jean v. Nelson*,
   472 U.S. 846 (1985) ........................................................................... 12

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ........................................................................... 21

*Knauff v. Shaughnessy,*
    338 U.S. 537 (1950) ................................................................................. 2

*Kucana v. Holder,*
    558 U.S. 233 (2010) ................................................................................. 11

*LaMarche v. Mayorkas,*
    691 F. Supp. 3d 274 (D. Mass. 2023) ....................................................... 11

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) ............................................................................ 12, 14

*Loa-Herrera v. Trominski,*
    231 F.3d 984 & n.12 (5th Cir. 2000) ....................................................... 11

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................................. 6

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ................................................................................. 15

*Manshadi v. Allen, No. 24-CV-10118-ADB,*
    2025 WL 524173 (D. Mass. Feb. 18, 2025) .............................................. 18

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ............................................................................ 23, 24

*Munaf v. Geren,*
    553 U.S. 674–90 (2008) ............................................................................ 6

*Nken v. Holder,*
    556 U.S. 418 (2009) ............................................................................ 6, 28

*Nw. Immigrant Rts. Project v. USCIS,*
    496 F. Supp. 3d 31 (D.D.C. 2020) ............................................................ 6

*Olsen v. United States,*
    414 F.3d 144 (1st Cir. 2005) ................................................................... 17

*Patel v. Garland,*
    142 S. Ct. 1614 (2022) ............................................................................ 10

*Penobscot Air Services, Ltd. v. FAA,*
    164 F.3d 713 (1st Cir. 1999) ................................................................... 25

*R.I.L-R v. Johnson,*
    80 F. Supp. 3d 164–80 (D.D.C. 2015) ..................................................... 30

*River Street Donuts, LLC v. Napolitano,*
    558 F.3d 111 (1st Cir. 2009) ................................................................... 23

*Roe v. Mayorkas, No. 22-cv-10808-ADB,*
    2023 WL 3466327 (D. Mass. Apr. 28, 2023) ........................................... 11

*Sierra Club v. Larson*,
    769 F. Supp. 420 (D. Mass. 1991) ...................................................................... 27

*Skalka v. Kelly*,
    246 F. Supp. 3d 147 (D.D.C. 2017) ................................................................ 18-19

*Telecomms. Rsch. & Action Ctr. v. F.C.C.*,
    750 F.2d 70 (D.C. Cir. 1984) ............................................................................ 18

*Texas v. Biden*,
    20 F.4th 928 (5th Cir. 2021) ............................................................................. 21

*Thigulla v. Jaddou*,
    94 F.4th 770 (8th Cir. 2024) ............................................................................. 11

*Thompson v. N. Am. Stainless*,
    562 U.S. 170 (2011) ......................................................................................... 19

*U.S. v. Fausto*,
    484 U.S. 439 (1988) ......................................................................................... 20

*United States v. Oladosu*,
    744 F.3d 36 (1st Cir. 2014) ............................................................................... 12

*United States v. Texas*,
    599 U.S. 670 ............................................................................................. 10, 30

*V.U.C. v. USCIS*,
    557 F. Supp. 3d 218 (D. Mass. 2021) ............................................................... 18

*Washington v. Mayorkas, No. 24-cv-10318-RGS*,
    2024 WL 3835029 (D. Mass. Aug. 15, 2024) ................................................... 18

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................... 6, 26, 28

*Yavari v. Pompeo*,
    2019 WL 6720995 (C.D. Cal. Oct. 10, 2019) ................................................... 18

*Zepeda v. U.S. I.N.S.*,
    753 F.2d 719 (9th Cir. 1983) ............................................................................ 30

*Zheng v. Napolitano*, 2009 WL 1258908 (D. Colo. May 4, 2009) .............................. 13

## STATUTES

5 U.S.C. § 701 ............................................................................................... 12, 19

5 U.S.C. § 704 ..................................................................................................... 14

5 U.S.C. § 706 ..................................................................................................... 18

6 U.S.C. § 202 ....................................................................................................... 2

8 U.S.C. § 1103 ................................................................................................ 2

8 U.S.C. § 1182 ....................................... 1, 2, 4, 9, 10, 12, 13, 18, 20, 21

8 U.S.C. § 1185 ............................................................................................ 18

8 U.S.C. § 1229a ............................................................................................ 7

8 U.S.C. § 1252 ................................................................... 9, 10, 19, 27

8 U.S.C. §§ 1252 ............................................................. 9, 10, 13, 14, 20

## REGULATIONS

87 Fed. Reg. 25040 (Apr. 17, 2022) ....................................................... 3

87 Fed. Reg. 63507 (Oct. 19, 2022) ....................................................... 3

88 Fed. Reg. 1243 (Jan. 9, 2023) ........................................................... 3

88 Fed. Reg. 1255 (Jan. 9, 2023) ........................................................... 3

88 Fed. Reg. 1266 (Jan. 9, 2023) ........................................................... 3

88 Fed. Reg. 21694 (Apr. 11, 2023) ....................................................... 3

90 Fed. Reg. 8443 (Jan. 20, 2025) ......................................................... 4

90 Fed. Reg. 8451 (Jan. 20, 2025) ......................................................... 4

90 Fed. Reg. 8467 (Jan. 20, 2025) ......................................................... 4

## INTRODUCTION

The Court should deny Plaintiffs' request for a preliminary injunction. The Department of Homeland Security (DHS) has issued guidance temporarily placing on hold certain programs that allow categories of aliens to seek parole—a form of temporary, entirely discretionary permission to come to or remain the United States—to reevaluate categorical parole programs to determine whether they continue to meet their intended purpose and current priorities. To address legitimate, acknowledged fraud concerns, DHS has also temporarily paused immigration benefit adjudications filed by parolees who entered the United States through the some of the programs that are under review. Plaintiffs seek to enjoin implementation of this guidance, but they have not identified imminent irreparable injury caused by the guidance that could justify the expedited extraordinary remedy they seek, let alone any injury redressable by the requested injunction. Parole is a temporary, discretionary act to which no alien can claim entitlement. In any event, no individual is precluded from filing a parole request outside of the paused parole programs. And Plaintiffs have not shown that a pause on benefit adjudications causes them harm because those adjudications often take months or years to adjudicate. Plaintiffs' claimed harms are simply not imminent and are not caused by the challenged guidance. Further, an injunction of the agency guidance at issue cannot provide relief to Plaintiffs, as Plaintiffs would still not be entitled to parole, re-parole, or expedited consideration of their benefit requests.

Plaintiffs also cannot meet the other requirements for a preliminary injunction or a stay. They have failed to demonstrate a likelihood of success on their claims under the Administrative Procedure Act (APA), the only claims they advance in support of their Motion. As a threshold matter, the challenged agency actions are unreviewable under the APA because decisions whether to grant parole, asylum, and certain adjustment applications are committed to agency discretion,

1

and because the challenged guidance is not final agency action but is instead a pause on adjudications pending further review of the programs and vetting standards. Further, the guidance is well within DHS's authority and is neither contrary to law nor arbitrary and capricious. Plaintiffs also have not shown likely irreparable injury arising from the guidance, and any attenuated harms they claim are outweighed by the legitimate and strong public interest in ensuring proper national-security and public-safety vetting of applicants. Finally, the requested relief is at minimum overbroad, as it goes beyond what is necessary to address Plaintiffs' own alleged harms.

## LEGAL AND PROCEDURAL BACKGROUND

Legal Background. The Executive Branch has broad constitutional and statutory power over the administration and enforcement of the nation's immigration laws. *Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see, e.g.*, 6 U.S.C. § 202(4); 8 U.S.C. § 1103(a)(1), (3). The INA authorizes the Secretary of Homeland Security, "in [her] discretion," to "parole into the United States" applicants for admission "temporarily under such conditions as [the Secretary] may prescribe" "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The "parole of such alien shall not be regarded as an admission … and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled" and "his case shall continue to be dealt with in the same manner as that of any other applicant for admission[.]" *Id.* "Congress has delegated remarkably broad discretion to executive officials under the INA, and these grants of statutory authority are particularly sweeping in the context of parole[.]" *Amanullah v. Nelson*, 811 F.2d 1, 6 (1st Cir. 1987).

The Parole Programs. Plaintiffs claim to be beneficiaries and supporters of multiple parole programs administered by Defendants within the past several years: Uniting for Ukraine (U4U);

the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV); a process for individuals initially paroled under Operation Allies Welcome (OAW) to seek re-parole; the Family Reunification Parole (FRP) processes; the Central American Minors (CAM) program; and parole in place for military family members (MPIP). Doc. No. 25 at 5. U4U offers certain Ukrainian citizens and their immediate family members an opportunity to seek a discretionary grant of parole for urgent humanitarian reasons or significant public benefit for up to two years. *Implementation of the Uniting for Ukraine Parole Process*, 87 Fed. Reg. 25040 (Apr. 17, 2022). Under CHNV, nationals of Cuba, Haiti, Nicaragua and Venezuela who meet eligibility requirements, including having a U.S. supporter, may be able to seek parole for a two-year term. *See* 87 Fed. Reg. 63507 (Oct. 19, 2022); 88 Fed. Reg. 1243, 1255, 1266 (Jan. 9, 2023). OAW refers to an interagency operation to evacuate and resettle qualifying Afghan nationals in 2021 and 2022, many of whom were paroled into the United States following United States military withdrawal from Afghanistan. FRP permits certain Colombian, Cuban, Guatemalan, Ecuadorian, Haitian, Honduran, and Salvadoran nationals who are beneficiaries of family-based immigrant visa petitions to be considered for parole while waiting for their immigrant visas to become available. Doc. No. 25 at 8 n.12 (listing Notices for FRP processes). CAM permits lawfully present aliens from El Salvador, Honduras and Guatemala to have their qualifying children and select relatives from these countries considered for refugee status or parole to join their family members in the United States. *Central American Minors Program*, 88 Fed. Reg. 21694 (Apr. 11, 2023). MPIP permits certain current or former servicemembers and their spouses, parents, and children who are present in the United States without admission to apply for parole. National Defense Authorization Act FY 2020, Pub. L. No. 116-92, § 1758 (2019), *codified at* 8 U.S.C. § 1182 note.

　　Factual and Procedural History. On January 20, 2025, the President signed executive orders

calling for DHS to "re-establish a uniform baseline for screening and vetting standards and procedures ... for any alien seeking a visa or immigration benefit," *Protecting the United States From Foreign Terrorists*, 90 Fed. Reg. 8451 (Jan. 20, 2025); to ensure that § 1182(d)(5)(A) parole "is exercised only on a case-by-case basis in accordance with the plain language of the statute," *Protecting the American People Against Invasion*, 90 Fed. Reg. 8443 (Jan. 20, 2025); and "consistent with applicable law, take all appropriate action to: … [t]erminate all categorical parole programs that are contrary to the policies of the United States established in my Executive Orders, including the program known as" CHNV, *Securing Our Borders*, 90 Fed. Reg. 8467 (Jan. 20, 2025). The EOs themselves did not terminate CHNV or take any other action concerning parole, but rather exhorted DHS to examine and modify its processes as appropriate to fit these principles.

Accordingly, on that same day, Acting Homeland Security Secretary Benjamine Huffman issued a memorandum directing DHS to review over a 60-day period its existing parole policies to determine which are in strict compliance with § 1182(d)(5)(A). It instructs DHS and its subagencies, following that review, to "pause, modify or terminate" any parole policy that does not comply if: it "was not promulgated pursuant to the procedural requirements of the [APA] or any comparable scheme," no "legitimate reliance interests" are protected, and "[d]oing so is otherwise consistent with applicable statutes, regulations, and court orders." Huffman Memo, Ex. A, Doc. No. 41-1 at 2. On January 23, 2025, the Acting Director of U.S. Citizenship and Immigration Services (USCIS), Jennifer Higgins, sent an email requesting that USCIS officers "do not make any final decisions (approval, denial, closure) or issue a travel document or I-94 for any initial parole or re-parole application" for enumerated parole programs, including those challenged by Plaintiffs except for MPIP, until further instructions are issued. Higgins Email, Ex. B, Doc. No. 41-2 at 1. In a February 14, 2025 memorandum, USCIS Acting Deputy Director Andrew Davidson

4

explained that a preliminary internal investigation had uncovered hundreds of potential instances

of fraud in the CHNV program and had exposed "serious vulnerabilities" in DHS's vetting process.

Davidson Memo, Ex. C, Doc. No. 41-3 at 2. Accordingly, Davidson directed USCIS to "place an

administrative hold on all immigration benefit requests filed by aliens who are or were paroled

under U4U, CHNV, or FRP processes, pending the completion of the required screening and

vetting … to identify any fraud, public safety, or national security concerns." *Id.*

Plaintiffs—12 aliens who claim to be beneficiaries of one of the parole programs (Parolee

Plaintiffs), 6 U.S. citizens or lawful permanent residents who allege sponsoring/supporting aliens

in the parole processes (Supporter Plaintiffs), and one entity, the Haitian Bridge Alliance

(Organizational Plaintiff), which claims to provide services to CHNV parolees and supporters from

Haiti—filed this suit on February 28, 2025, amending their complaint on March 17, 2025. Doc.

Nos. 1, 22. Plaintiffs challenge what they term the "termination" of the parole programs and

"suspension" of adjudication of requests for re-parole and other immigration

applications—asylum, Temporary Protected Status (TPS), and/or adjustment of status. *Id.* On

March 18, 2022, Plaintiffs moved for a preliminary injunction based only on their APA claims.

Doc. Nos. 24, 25. The alleged necessity for this emergency relief is that Parolee Plaintiffs *could*

*be* placed in removal proceedings *once* their period of parole term is terminated, *if* it is not

extended, or *if* they have not obtained an immigration status by then. Doc. No. 25 at 26-28.

Plaintiffs do not assert that they are currently in removal proceedings. *Id.*

**STANDARD**

"A preliminary injunction is an extraordinary and drastic remedy" that "is never awarded

as of right." *Munaf v. Geren,* 553 U.S. 674, 689–90 (2008). A plaintiff "must establish that he is

likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "[H]arm to the opposing party and weighing the public interest … merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The same standard governs a request to postpone the effective date of an administrative action under § 705 of the APA. *See Nw. Immigrant Rts. Project v. USCIS*, 496 F. Supp. 3d 31, 45 (D.D.C. 2020). The Court may not issue relief that is broader than necessary to remedy actual harm shown by specific Plaintiffs. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018).

## ARGUMENT

### I.    The Court Lacks Jurisdiction Over Plaintiffs' Request.

#### A.   Plaintiffs Have not Established Standing to Seek Injunctive Relief.

Plaintiffs must establish standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). To do so, Plaintiffs must demonstrate a concrete and particularized "injury in fact" that is "fairly ... trace[able] to the challenged action of the defendant," and that must be "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). This standard is not met. The defect in both Plaintiffs' Complaint and their request for injunctive relief is that their claimed injuries—and, in particular, the harms they assert as the basis for this expedited preliminary injunction—are not fairly traceable to, and cannot be redressed by, an injunction of the challenged agency actions. Parole is a temporary, discretionary permission to come to or remain in the United States to which no Plaintiff or their family members (or anyone) can claim entitlement—whether before or after the challenged agency guidance was issued. Moreover, benefit requests in many cases take months or years to adjudicate.  Plaintiffs' claimed harms are simply not caused by the challenged pauses

on certain parole applications and benefit adjudications.

Plaintiffs' claimed injury is not fairly traceable to the guidance documents identified. As an initial matter, Defendants cannot address the Doe Plaintiffs' factual assertions on the expedited time frame for this opposition, as Defendants do not yet have their identifying information. Regardless, Plaintiffs' assertions do not establish the requisite causal link. The Parolee Plaintiffs claim injury from the risk of removal from the United States or a loss of their eligibility for employment authorization based on parole. *See* Doc. No. 25 at 25, 26. Yet any risk of removal is both attenuated and pre-existing due to the nature of parole. This alleged injury is thus not traceable to the Huffman Memo nor to any pause on separate benefit adjudications. *First*, the risk of removal from the United States is attenuated, as multiple, discretionary steps must occur before that could happen. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) ("[W]here the government action is so far removed from its distant (even if predictable) ripple effects . . . the plaintiffs cannot establish Article III standing."). The Plaintiffs would have to first be placed in some form of removal proceedings. If a Parolee Plaintiff who asserts a fear of return to her home country or entitlement to TPS is placed in removal proceedings under § 1229a, those claims could be raised before the immigration judge. *See, e.g.*, 8 U.S.C. §§ 1229a(c)(4), 1254a(b)(5)(B); 8 C.F.R.§ 1244.18(b). Indeed, if the government were to commence removal proceedings under 8 U.S.C. § 1229a, any pending asylum applications that are alleged to be on hold would be re-filed in immigration court. *Second*, as the Parolee Plaintiffs themselves acknowledge, they were granted temporary, discretionary permission to enter or remain in the United States, without any guarantee of future status or continuation of that permission. No one is entitled to parole, an extension of the initial period of parole, or to re-parole under any of the listed programs. Accordingly, a pause on the acceptance or adjudication of requests under the

parole programs does not take away any pre-existing rights or benefits. Similarly, the Supporter Plaintiffs cannot claim injury from the alleged loss of an avenue to file requests to support family members or strangers for parole, because that ability was always limited by the inherently discretionary nature of the statutory parole authority, which does not mention supporters. *Third*, none of the Plaintiffs are injured by the pause on any parole program because USCIS continues to accept individual applications for parole or re-parole outside of the paused parole programs. Scott Decl., Ex. D, Doc. No. 41-4 at 3 ¶ 8.

Nor have the Parolee Plaintiffs demonstrated that they have suffered, or will imminently suffer, an injury from any pause on the adjudication of applications for other benefits, which applies only to U4U, FRP, or CHNV parole recipients. The adjudication hold guidance they challenge has been in place for a little over one month. *See* Doc. No. 41-3; *see also* Doc. No. 25 at 12. Benefit adjudications generally take several months to several years. *See, e.g.*, *Celebi v. Mayorkas*, 744 F. Supp. 3d 100, 104 (D. Mass. 2024) (finding three-and-a-half-year wait for adjudication of asylum application not unreasonable, and noting backlog of 900,000 asylum applications); USCIS, *Historic Processing Times*, Ex. E, Doc. No. 41-5 (noting recent average TPS application processing times of 5-6 months and average adjustment of status processing times of up to 13.4 months); OIG Report (June 2024), at https://perma.cc/PJA4-SJ3S. Plaintiffs have not attempted to show that *any* Plaintiff's benefit application would have been adjudicated were it not for the adjudication pause. Causation is thus lacking.

Second, even assuming Plaintiffs' claimed injuries were sufficiently traceable to the guidance documents, they are not redressable by this Court. Plaintiffs seek to enjoin implementation of the Huffman, Higgins, and Davidson guidance. But enjoining that guidance would not remedy the harms they assert. Enjoining that guidance would not prevent termination

of any parole program or alter Defendants' preexisting ability to place aliens in removal proceedings and could thus not effect any stay of removal or prevent the commencement of removal proceedings—relief that Congress has said is unavailable. *See* 8 U.S.C. §§ 1252(a)(5), (g), 1252(f)(1).[1] Enjoining the guidance would also not compel grants of parole or re-parole that would allow them or family members to be eligible for employment authorization as a parolee— which relief is also unavailable because the Court cannot compel this discretionary action. *See infra* §§ I(B), II(C). DHS has the "discretion" to determine whether to parole any individual, regardless of the existence of any programs or processes for re-parole. 8 U.S.C. § 1182(d)(5)(A). Indeed, Plaintiffs can still seek parole outside the paused parole programs even without obtaining an injunction. Doc. No. 41-4 at 3, ¶ 8. Enjoining the guidance also could not compel adjudication of any pending benefit requests within a particular time frame—and to have any claim to do so, Plaintiffs would be required to show unreasonable delay for each application as they identify no mandatory statutory timeline for adjudication. *See infra* § II(B).

Redressability cannot be established where a "judicial decree rendering" guidance "a nullity does nothing to change the fact that federal officials possess the same underlying" discretion without the guidance. *See United States v. Texas*, 599 U.S. 670, 691 (Gorsuch, J., concurring). Because enjoining or vacating the agency guidance at issue would not eliminate the agency's underlying ability to exercise discretion regarding parole or to control the pace of adjudication of specific immigration benefit requests, redressability is lacking. *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) ("It is a federal court's judgment, not its opinion, that

---

[1] Any challenge to DHS's exercise of discretion to bring removal proceedings or execute removal orders would be barred by 8 U.S.C. § 1252(g). Courts are also precluded by 8 U.S.C. § 1252(f)(1) from issuing non-individual injunctive relief that would restrain the operation of statutory provisions governing removal. And any claims that arise out of § 1229a removal proceedings may only be brought on a petition for review in the court of appeals. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9).

remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability.").

**B. Section 1252(a)(2)(B)(ii) Precludes Jurisdiction.**

Even if Plaintiffs had standing, Congress precluded review of Plaintiffs' claims challenging parole decisions or other discretionary benefit applications through 8 U.S.C. § 1252(a)(2)(B)(ii), which provides that "no court shall have jurisdiction to review . . . any other decision or action . . . the authority for which is specified . . . to be in the discretion of the . . . Secretary." Whether to grant parole under § 1182(d)(5)(A)—which permits the Secretary to, "in [her] discretion" temporarily parole an applicant for admission into the United States—is just such a "decision or action" and is thus subject to the bar. *See* 8 U.S.C. § 1182(d)(5)(A). Likewise, asylum and most applications for adjustment of status are discretionary. 8 U.S.C. §§ 1158(b)(1), 1255(a). Section 1252(a)(2)(B)(ii) thus precludes jurisdiction over Plaintiffs' challenges to Defendants' review of parole processes and pause on adjudication of re-parole, asylum or adjustment of status for parole beneficiaries pending further vetting.

Section 1252(a)(2)(B)(ii)'s jurisdictional bar encompasses both DHS's discretionary ultimate decisions in individual cases as well as their discretion to promulgate general guidance impacting the exercise of parole and these other discretionary determinations. In *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022), the Supreme Court held that § 1252(a)(2)(B)(i)—the sister provision to § 1252(a)(2)(B)(ii)—which bars jurisdiction to review "any judgment regarding the granting of relief" under certain INA provisions bars review of "judgments of whatever kind" covered by the statute, and "not just discretionary judgments or the last-in-time judgment," and so this provision "encompasses not just the granting of relief but also any judgment relating to the granting of relief." The Court has explained that §§ 1252(a)(2)(B)(i) and (ii) cover decisions "of a like kind." *Kucana v. Holder,* 558 U.S. 233, 247 (2010). Given this parallel, § 1252(a)(2)(B)(ii)'s bar on review of discretionary decisions encompasses the agency's judgments regarding guidance and

process for rendering of discretionary judgments, *see id.*, and bars review of Plaintiffs' challenge to DHS's decisions to call for re-examination of its discretionary use of parole and to pause adjudications of immigration benefits to permit thorough screening.

Although courts within this district have found that challenges to parole policies are not barred by § 1252(a)(2)(B)(ii), *see Roe v. Mayorkas*, No. 22-cv-10808-ADB, 2023 WL 3466327 (D. Mass. Apr. 28, 2023), *followed by LaMarche v. Mayorkas*, 691 F. Supp. 3d 274 (D. Mass. 2023), certain Circuit Courts have more recently found other policies relating to adjudication holds for discretionary benefit adjudications to be precluded from review by this section. *See Thigulla v. Jaddou*, 94 F.4th 770 (8th Cir. 2024) (holding retrogression hold policy applicable to adjustment applications unreviewable under § 1252(a)(2)(B)(ii)); *Cheejati v. Blinken*, 106 F.4th 388 (5th Cir. 2024) (similarly determining hold policy barred from review); *see also Loa-Herrera v. Trominski*, 231 F.3d 984, 990-91 & n.12 (5th Cir. 2000) (finding challenges to "manner in which that discretionary judgment is exercised" and to "whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints" are barred from review). Thus, in light of *Patel* and subsequent circuit precedent, Plaintiffs' challenges are barred from judicial review.

## II.    Plaintiffs Are Not Likely to Succeed Because they Cannot Obtain APA Review.

Plaintiffs' APA claims (Claims 1 through 4) are the sole basis for their motion. Doc. No. 25 at 14–25.[2] Because the challenged agency actions are not amenable to APA review, their APA

---

[2] In a footnote, Plaintiffs refer to their Fifth Claim, asserting that "the Court has inherent equitable authority to enjoin the unlawful actions of the federal officials even outside of the APA," Doc. No. 25 at 20 n.23. They do not develop this argument or support this claim, thereby waiving it for purposes of this motion. *See United States v. Oladosu*, 744 F.3d 36, 39 (1st Cir. 2014). Even assuming Plaintiffs could assert a challenge to agency action outside the confines of the APA, they do not state a viable *ultra vires* claim. "'A claim of error in the exercise of [their statutory] power is . . . not sufficient.'" *Howe v. Bank for Int'l Settlements*, 194 F. Supp. 2d 6, 21 (D. Mass. 2002) (quoting *Larson v. Foreign & Domestic Commerce Corp.*, 337 U.S. 682, 690 (1949)). "An official

claims fail at the threshold and Plaintiffs are not likely to succeed on those claims.

### A. Plaintiffs Challenge Decisions Committed to Agency Discretion.

Plaintiffs cannot obtain APA review because they challenge agency conduct that is "committed to agency discretion." 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993).

*First*, Defendants' challenge what they call the "termination" of parole processes operated under 8 U.S.C. § 1182(d)(5)(A). Even if this characterization were correct (it is not, *infra*), the APA would not provide for review of DHS's expressly discretionary determinations concerning parole. The text of § 1182(d)(5) commits parole decisions to the "discretion" of the Secretary of Homeland Security. 8 U.S.C. § 1182(d)(5)(A); *see also Jean*, 472 U.S. at 857 (underscoring the discretionary nature of parole policies). If DHS has discretion to grant parole and operate parole processes, as Plaintiffs concede, it likewise has the discretion to end parole programs as part of its broader policy framework. Doc. No. 41-4 at 4, ¶ 10. Plaintiffs argue that the "parole authority is not unbounded" and the statute "contains limits on [how] the authority can be exercised." Doc. No. 25 at 18. But they ignore that the statute's "limits"—that parole may be granted "only a case-by-case basis" and only for "urgent humanitarian reasons or significant public benefit"—only imposes requirements on *granting* parole; it imposes no limits, other than the Secretary's exercise of "discretion," on *denying* parole or determining that in her "opinion" the "purposes of such parole …have been served." 8 U.S.C. § 1182(d)(5)(A). ); *see Zheng v. Napolitano*, No. 09-cv-00347-REB-MEH, 2009 WL 1258908, at *2 (D. Colo. May 4, 2009) (rejecting argument seeking to

---

may be said to act ultra vires only when he acts without any authority whatever.'" *Id.* (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11 (1984)). While Plaintiffs disagree with DHS's position on parole programs and its pause on benefit request adjudications, they do not and cannot argue that DHS lacks statutory authority to continue, modify or terminate its parole processes, or to control benefit request adjudications for parole beneficiaries by tightening security and fraud screening and vetting standards.

"engraft[ ] the requirements pertaining to initial parole decisions onto parole revocation decisions."). There is no statute or regulation that commits DHS to accepting or adjudicating requests for parole under the challenged processes. The decision to end parole programs or deny parole in individual cases (neither of which are made in the documents Plaintiffs challenge) reflects the agency's exercise of judgment about a complicated public policy matter involving judgments concerning public safety, utilization of immigration resources, and foreign affairs. The concerns justifying executive discretion are "greatly magnified in the [immigration] context," *Crane v. Johnson*, 783 F.3d 244, 247 (5th Cir. 2015), which implicates the "dynamic nature of relations with other countries" and the need for policies to be "consistent with this Nation's foreign policy," *Arizona v. United States*, 567 U.S. 387, 397 (2012). Decisions whether to operate categorical parole programs benefitting nationals of various countries involve the "complicated balancing of a number of factors which are peculiarly within [agency] expertise," including the Executive Branch's comprehensive efforts to manage national security and public safety, for which there are no judicially manageable standards permitting court superintendence. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

*Second*, Plaintiffs challenge the pause on adjudication of requests from parole program beneficiaries any immigrant benefit, including but not limited to, for re-parole, asylum, TPS, or adjustment of status pending the requisite screening and vetting. *See* Doc. No. 22 at ¶¶ 285–292. Like parole, the benefits Plaintiffs claim to have applied for are expressly discretionary. *See* 8 U.S.C. §§ 1158(b)(1)(A) (asylum), 1254a(a)(1)(A) (TPS), 1255(a) (adjustment). Moreover, none of these identified adjudications have mandatory deadlines by which the agency must reach a decision on the application. *See id.*; *infra* § II.B. The decision as to the requisite process and timing for decisions on these applications involve the same "complicated balancing of a number of factors

which are peculiarly within [the agency's] expertise" as the ultimate decisions themselves. *Heckler*, 470 U.S. at 831. The Court has "no meaningful standard against which to judge the agency's exercise of discretion" as to how much and how extensive screening and vetting must be before decisions can be reached on these applications to avoid fraud and public safety concerns. *See Lincoln*, 508 U.S. at 191; Doc. No. 41-3. Accordingly, all aspects of Plaintiffs' challenges here are committed to agency discretion and unreviewable under the APA.

### B.  Plaintiffs Do Not Challenge Final Agency Action.

Plaintiffs cannot obtain APA review of their claims because the actions they challenge, the internal agency guidance concerning re-examining parole programs and pausing related immigration adjudications pending more thorough vetting, are not final agency actions. The APA only permits review of challenges to "final agency actions." 5 U.S.C. § 704. To be final, an agency action "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and it "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennet v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and internal quotation marks omitted). Final agency action constitutes a "definitive statement" of the agency's position with "direct and immediate consequences." *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*, 208 F.3d 1, 5 (1st Cir. 2000) (internal quotation marks and citations omitted).

At the threshold, Plaintiffs' attempt to challenge wholesale Defendants' pausing and re-examination of various different parole processes does not constitute discrete agency action cognizable under the APA. Plaintiffs cannot obtain APA review of "an abstract decision," such as to reject categorical parole programs that do not conform with § 1182(d)(5)(A), "apart from specific agency action." *Biden v. Texas*, 597 U.S. 785, 809 (2022). Nor can they use the APA to

obtain "wholesale" or "programmatic" improvement of an entire campaign of agency conduct, but must rather challenge "some concrete action applying" a particular policy "to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Plaintiffs here do not challenge a discrete agency decision, but the government's overall guidance of reconsidering parole processes and pausing individual adjudications pending further vetting. *See* Am. Compl., Doc. No. 22. Numerous courts have held plaintiffs cannot amalgamate disagreements with overarching immigration policies or different agency actions and challenge them all in "one fell swoop" but must instead "identify a particular action ... to challenge under the APA." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1011–12 (9th Cir. 2021); *accord Florida v. United States*, 660 F. Supp. 3d 1239, 1270 (N.D. Fla. 2023); *Brnovich v. Biden*, 630 F.Supp.3d 1157, 1173 (D. Ariz. 2022).

If Plaintiffs contend they are challenging discrete agency actions, they are wrong. Plaintiffs do not claim to be challenging the EOs, *see* Doc. No. 25 at 19-20, and they cannot. Presidential action is not reviewable under the APA. *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992). Instead, Plaintiffs challenge three documents they claim "terminate" their parole options and "suspend" immigration benefits applications. Doc. No. 25 at 19-20. They challenge the Huffman memorandum, which directs DHS to review over a 60-day period existing parole policies to determine which are in strict compliance with § 1182(d)(5)(A) and provides authority, following that review, to "pause, modify or terminate" any parole policy that does not comply if: it "was not promulgated pursuant to the procedural requirements of the [APA] or any comparable scheme," no "legitimate reliance interests" are protected and "[d]oing so is otherwise consistent with applicable statutes, regulations, and court orders." Doc. No. 41-1. This document does not specifically discuss CHNV, U4U, OAW, FRP, CAM, MPIP or any other particular parole policy,

15

much less require their termination. *See id.*; *see also* Doc. No. 41-4; *contra* Doc. No. 1 at ¶¶ 124-137. They also challenge the Higgins email, which requests that USCIS officers "do not make any final decisions (approval, denial, [administrative] closure) or issue a travel document or I-94 for any initial parole or re-parole application" for enumerated parole programs until further instructions are issued, Ex. B, and the Davidson memorandum, which "place[s] an administrative hold on all benefit requests filed by aliens who are or were paroled into the United States under the U4U, CHNV, or FRP processes, pending the completion of the required screening and vetting … to identify any fraud, public safety, or national security concerns," Doc. No. 41-3; *see also* Doc. No. 24-46 (Plaintiffs' exhibit showing USCIS message placing a "hold" on benefits requests only "pending the completion of the required screening and vetting"). Neither the Higgins email nor the Davidson memo imposes a "moratorium" prohibiting DHS officers from proceeding with parole or immigration benefit applications, or require them to deny future parole or benefits requests "and deport as many parolees as possible," as Plaintiffs suggest. *Compare* Doc. No. 41-2 and 41-3 *with* Doc. No. 25 at 14, 20.

Thus, the actions Plaintiffs challenge represent guidance about re-examining agency actions that potentially constitute "categorical parole programs" and pausing adjudication of immigration applications to complete requisite vetting, but do not represent the consummation of the agency's decision-making process on any particular parole program, much less on the ultimate parole and benefit determinations for Plaintiffs themselves. *See Bennet*, 520 U.S. at 177-78. Further, these memoranda do not themselves determine rights and obligations or impose legal consequences "directly and immediately" on Plaintiffs. *See id.*; *Ass'n of Int'l Auto. Mfrs.*, 208 F.3d at 5. Plaintiffs do not allege that they have had their parole denied or terminated or an immigration benefit denied on the basis of these memoranda. Plaintiffs challenge mere

interlocutory guidance that has not itself ended any described parole program much less determinately and directly imposed consequences on individual aliens, which is not final agency action challengeable under the APA. *See Bennett*, 520 U.S. at 177-78.

As none of these interlocutory and operational documents are decisional documents representing the consummation of the agency's decision-making process and explanation of that decision to the public, *see Texas*, 597 U.S. at 809-10, it would be unfair and would frustrate the purposes of the APA review to judge them as if they were. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (APA review focuses on whether "agency decision" is supported by the record before it when it made that decision); *Olsen v. United States*, 414 F.3d 144, 155 (1st Cir. 2005) (same); *infra* § III(B). Plaintiffs and the Court would be better served to wait until the agency has concluded its review process and issued final decisions with direct and immediate effects, and examine the agency's accompanying explanation for them based on the record before the agency when it makes those decisions. *See id.*

If Plaintiffs argue that a mere pause on adjudication of parole requests and benefits pending further review and vetting constitutes final agency action, they again are wrong. The Higgins and Davidson memoranda expressly pause any final determinations, granting or denying, and explicitly and categorically do not represent the consummation of the agency's decision-making process on aliens' applications. *See Bennett*, 520 U.S. at 177-78. Further, Plaintiffs do not bring any mandamus claims or APA unreasonable delay claims, nor argue that any source of law dictates that they are entitled to decisions in any set timeframe. Neither extension of Plaintiffs' parole, the timing of which is expressly in DHS's discretion, nor asylum or any of the immigration benefits Plaintiffs describe must be adjudicated within any particular timeframe. *See* 8 U.S.C. § 1182(d)(5)(A) (decision whether and when to end parole is "in the opinion of the Secretary of

Homeland Security"); 8 U.S.C. § 1185(d); *Washington v. Mayorkas*, No. 24-cv-10318-RGS, 2024 WL 3835029, at *1 (D. Mass. Aug. 15, 2024) (explaining plaintiff "has not identified any provision of the law entitling him to immediate adjudication of his asylum application" and joining "courts across the country" in holding that § 1185(d)(7) "bars Plaintiff from claiming any legally enforceable right to have [his] application[ ] adjudicated within the provided timeframes" in § 1158(d)(5)(A)).

Plaintiffs are in essence seeking to use their APA challenge to agency memoranda under 5 U.S.C. § 706(2) in lieu of a class-wide mandamus or APA § 706(1) unreasonable-delay action for adjudication of those benefits. But courts have rejected mandamus claims attempting to hold the agency's adjudication of these applications to a set timeframe, *see, e.g., V.U.C. v. USCIS*, 557 F. Supp. 3d 218, 224 (D. Mass. 2021) (holding, in U-nonimmigrant-status context, that the court is without "power to order USCIS to accelerate the pace of adjudication generally, or to dictate the overall order of adjudications"), and the First Circuit has noted the "insurmountable difficulty" of certifying an unreasonable delay class, *Crosby v. Soc. Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir. 1986). Further, Plaintiffs cannot show the timing of the adjudication is not guided by a rule of reason—the time necessary to conduct the required public safety screening and vetting, Ex. C—nor that the 1.5 months since the challenged memoranda were issued comes anywhere near unreasonable. *See Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984); *Manshadi v. Allen*, 2025 WL 524173, at *6 & n.2 (D. Mass. Feb. 18, 2025) (collecting cases showing periods over two years not unreasonable); *Yavari v. Pompeo*, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (collecting cases holding immigration delays not unreasonable until "in excess of five, six, seven years"); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017).

In sum, Plaintiffs challenge outcomes they imagine will flow from an amalgam of prefatory guidance that does not have any direct and final consequences on their parole status or the outcome of their applications for other immigration statuses. This is not final agency action.

### C.  Statutes Preclude Review.

As discussed above, the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii) applies here and thus precludes APA review of Plaintiffs' claims. *See* 5 U.S.C. § 701(a)(2).

### D.  Organizational and Supporter Plaintiffs Are Not in the Zone of Interests.

APA review is also unavailable here because the Organizational and U.S. citizen and LPR Plaintiff's claims do not fall within the zone of interests of § 1182(d)(5)(A). A plaintiff "may not sue unless he falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Thompson v. N. Am. Stainless*, 562 U.S. 170, 177 (2011). This inquiry asks whether Congress intended for a particular plaintiff to invoke a particular statute to challenge agency action. *See Clarke v. Security Indus. Ass'n*, 479 U.S. 388, 399 (1987). If a plaintiff is not the object of a challenged regulatory action—plaintiff has no right of review as its "interests are so marginally related to … the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* at 399.

Nothing in the text, structure, or purpose of the INA generally, or § 1182(d)(5)(A) specifically, suggests that Congress intended to permit organizations or any person or entity who is not an alien to bring lawsuits to challenge its discretionary determinations concerning paroling aliens. *See Fed'n for Am. Immigration Reform (FAIR), Inc. v. Reno*, 93 F.3d 897, 902 (D.C. Cir. 1996). Congress in the parole statute did not contemplate financial supporters for parole beneficiaries, negating any Supporter Plaintiff's claim to being within the zone of interests of the parole statute. *See* 8 U.S.C. § 1182(d)(5)(A). Indeed, Congress has generally provided that only

the aliens against whom the immigration laws are enforced may challenge application of those laws—and only in certain circumstances and only through removal proceedings. *See, e.g.,* 8 U.S.C. §§ 1226(e); 1252(a)(2)(B)(ii), 1252(a)(5), (b)(9), (g). A detailed review scheme that allows only some parties to challenge specific executive action is "strong evidence that Congress intended to preclude [other parties] from obtaining judicial review." *U.S. v. Fausto*, 484 U.S. 439, 448 (1988); *see also Ayuda, Inc. v. Reno*, 7 F.3d 246, 250 (D.C. Cir. 1993) (holding that organizational plaintiff could not challenge INS policies "that bear on an alien's right to legalization"). Allowing third parties who cannot be beneficiaries of parole to challenge the Executive Branch's parole decisions through the APA would circumvent Congress's design.

## III.    Plaintiffs Are Not Likely to Succeed on the Merits of their APA Claims.

But even assuming their claims are reviewable, Plaintiffs are not likely to succeed on the merits of their challenge. Plaintiffs argue that the termination of parole programs and pause in adjudication of certain relief and benefits applications is contrary to the statute and that both actions are also arbitrary and capricious. Doc. No. 25 at 14-25. The argument regarding termination is wholly without merit, as the challenged agency actions do not terminate any programs, while the pause in adjudications is neither contrary to statute nor arbitrary and capricious.

### A. Plaintiffs' Contrary to Law Claims Lack Merit.

<u>Parole</u>. Plaintiffs' argument regarding the "termination" of parole programs lacks merit on its face, as the challenged DHS directive does not terminate any parole program. *See supra* § II.B. The Huffman memo directed a broad review of existing parole programs for compliance with the "text and structure of 8 U.S.C. § 1182(d)(5)" and requires DHS components to "[f]ormulate a plan for phasing out any" programs or processes found to not be in accordance with law. Doc. No. 41-1. During the pendency of this review, the Huffman memo permitted DHS components to "pause,

modify, or terminate" any of the parole programs covered by the review, but only "in a manner that protects any legitimate reliance interests" and is "otherwise consistent with applicable statutes, regulations, and court orders." *Id.* The challenged guidance does not constitute a decision modifying or terminating any of the named parole processes, Doc. No. 41-4, so Plaintiffs have no likelihood of succeeding on their challenge to the "termination" of these programs.[3]

And even had Defendants terminated any of the parole processes, the Secretary's interpretation of the statute—that it should be limited to granting parole based on aliens' individual circumstances in most cases—is fully consistent with the statutory language. *See* 8 U.S.C. § 1182(d)(5)(A); Doc. No. 41-1. Courts have reached similar conclusions about the meaning of the parole statute. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 301 (2018) (explaining that the interaction of the detention provision, 8 U.S.C. § 1225(b), and the parole provision, 8 U.S.C. § 1182(d)(5)(A), "authorize release [on parole] only under limited circumstances"); *Texas v. Biden*, 20 F.4th 928, 996 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022) (explaining "parole can be exercised only within narrow parameters (case-by-case and with a public-interest justification)"). "DHS cannot use that power to parole aliens *en masse*; that was the whole point of the 'case-by-case' requirement that Congress added." *Texas*, 20 F.4th at 997. Other Administrations' determinations about how to implement intentionally undefined terms in the parole statute are not dispositive. *Compare* H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 77-78 (1996) *with* H.R. Rep. No. 828, 104th Cong., 2d Sess. 245 (1996). "[T]he APA permits agencies to change their views of what is best in the public interest ... from time to time [because Administrations] themselves change, underlying philosophies differ, and experience often dictates

---

[3] Plaintiffs argue that whether or not they characterize what is occurring as "terminating" the parole programs "is immaterial to the legal infirmities of the actions," Doc. No. 22 at ¶ 275, but whether these programs continue to exist or not is fundamental to the claims Plaintiffs are making.

changes." *Air Transp. Ass'n. of Am., Inc. v. Nat'l Mediation Bd.,* 719 F. Supp. 2d 26, 44 (D.D.C. 2010), *aff'd,* 663 F.3d 476 (D.C. Cir. 2011) (internal quotation omitted). The current understanding of the meaning of § 1182(d)(5)(A) as preliminarily expressed in the Huffman memo is consistent with, not contrary to, the statute and case law.

<u>Pause in Adjudications</u>. Nor is the pause in accepting and adjudicating parole applications contrary to law. Plaintiffs certainly point to no contrary statutes in their complaint. *See* Doc. No. 22 at ¶¶ 272-83. Although the parole programs may be "authorized" by statute, *see id.* ¶ 280, that says nothing about the propriety of the new Administration pausing adjudication to consider whether they should continue. In fact, some of these programs have previously been paused, without challenge. *See* Staff of H. Comm. on the Judiciary, 118th Cong., *The Biden-Harris Administration's CHNV Parole Program Two Years Later: A Fraud-Ridden, Unmitigated Disaster* 2 (Nov. 20, 2024).

Plaintiffs' contention that the pause in adjudication for, *e.g.*, asylum applications and applications for TPS, is contrary to the INA is similarly misguided. Plaintiffs argue that a pause in adjudication "is in excess of [] statutory authority and contrary to the statutory regime Congress created that give applicants the right to apply for immigration benefits to be adjudicated under the legal standards and through the process that Congress created." Doc. No. 22 at ¶ 290. But no action taken by DHS forecloses the filing of applications for TPS, asylum, or other potential immigration benefits, nor does any action displace the appropriate legal standards for considering such applications or foreclose ultimate adjudication of those applications. DHS is temporarily pausing final adjudication pending further review of applications and vetting of applicants, and Plaintiffs fail to point to any statutory provision that would *require* adjudication of the applications within a set period or that would divest DHS of the flexibility inherent in the current directives to conduct

a more fulsome review prior to any final decision. *See supra* § II.B. Thus, Plaintiffs cannot succeed on their contrary-to-law claims.

**B. The Challenged Actions are Not Arbitrary or Capricious.**

Even assuming the re-examination of parole policies and pause in adjudications constituted final agency action subject to substantive review, they easily satisfy the APA's "highly deferential" standard. *River Street Donuts, LLC v. Napolitano*, 558 F.3d 111, 114 (1st Cir. 2009). Under the "narrow" scope of review permitted "under the 'arbitrary and capricious' standard" a court may not "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Accordingly, "[a reviewing] court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016). An agency need only "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43.

<u>Parole Processes</u>. Plaintiffs argue that "DHS's termination of the categorical parole programs fails the APA's reasoned decisionmaking requirement" because "DHS has not given *any* explanation for its actions, much less a reasonable one" and because DHS "failed to consider numerous relevant factors" in doing so. Doc. No. 25 at 21-22. That is because, as explained, the guidance does not in fact terminate any specific categorical parole program and thus does not provide the reasons for termination. *Supra* §§ II.B, III.A; Doc No. 41-4. The Huffman memo merely calls for pausing parole processes to re-examine their conformity with the statute and says a decision to terminate would be made if DHS "can do so in a manner that protects any legitimate reliance interests" and would be "consistent with applicable statutes, regulations, and court orders." Doc. No. 41-1 at2.

Pause in Adjudications. As explained, the Higgins email and Davidson memorandum are interlocutory documents merely temporarily pausing adjudication, not decisional documents taking final concrete actions challengeable under the APA. *Supra* § II.B. But even if it was final agency actions, the Davidson memorandum shows that DHS decided to pause final adjudication of benefits applications for aliens who entered under certain parole programs due to: 1) continuing fraud concerns, despite an earlier pause in the parole programs during the prior administration (also due to fraud); 2) the possibility of collusion between beneficiaries and supporters in perpetrating that fraud; and 3) the need for more intensive screening and vetting of applicants seeking immigration benefits, especially in the context of the parole programs where participants had not undergone significant vetting prior to entry. Doc No. 41-3. The agency's rationales are supported by significant, documented concerns about fraud and abuse within the covered parole programs, as well as more streamlined, lighter vetting under the prior programs than what is required under current administration directives. *Id.* And the ends adopted by DHS—a pause in final adjudication "pending the completion of the required screening and vetting . . . to identify any fraud, public safety, or national security concerns"—are well-tailored to meet these concerns. *Id.* DHS's determination thus represents a "reasoned decision" based on a "reasoned evaluation of the relevant factors." *Penobscot Air Services, Ltd. v. FAA*, 164 F.3d 713, 720 (1st Cir. 1999).

Plaintiffs argue that DHS failed to consider important aspects of the problem in pausing final adjudications, *see* Doc. No. 22 at ¶¶ 299, 305; Doc. No. 25 at 23-25, but the bases Plaintiffs assert are either irrelevant or simply represent a different policy choice that the agency could have, but was not required to, adopt. Plaintiffs contend, for instance, that DHS has not explained "the statutory basis for the systemwide 'pause'" on adjudications, Doc. No. 25 at 23, but this is backwards. There being no statutory requirement that these applications be adjudicated in a certain

time period, *see supra* § II.B, there is no statutory bar or prohibition on DHS taking additional time to conduct background and security checks prior to adjudication. Congress has granted broad discretion to DHS as to how and when it adjudicates the covered applications, *supra* § II.A., and the temporary pause here falls well within that discretion. Plaintiffs also argue, Doc. No. 25 at 23-24, that the pause constitutes a "radically changed course" based on a lack of new information. Yet there is no question, as the documents Plaintiffs challenge indicate, that DHS is tightening screening standards for immigrants and other applicants for immigration benefits based on evidence that previous screening methods did not identify widespread fraud. The new vetting standards require additional time to implement and apply, and it is also reasonable to believe that a more fulsome vetting may uncover additional evidence of fraud. Moreover, given the rationale for the pause—the need for higher vetting to address fraud and other concerns—there was no "reasonable alternative[]" to a pause in adjudication. *See* Doc. No. 25 at 24. Any continuation of adjudications *without* the required screening would have side-stepped the concerns noted by DHS.

Plaintiffs' additional arguments fare no better. The decision to pause adjudications for those already in the United States clearly has no effect on the government's ability to "manage[] migration flows at the southern border," Doc. No. 22 at ¶¶ 299, 305, and, because any adjudications will be undertaken under the appropriate statutory and/or regulatory standards, consideration of those applications is fully in compliance with the "criteria the statute makes relevant," *id.* Nor are any reliance interests implicated, where applicants have no protected interest in discretionary parole, inherently temporary in nature, or most forms of relief from removal, have no expectation of receiving a decision on any set deadline, and a temporary pause in any event does not displace the interests they *may* have in an ultimate final adjudication in the future. *See id.* And here, the determination by DHS was made specifically to advance domestic policy objectives—ensuring

appropriate screening and vetting for applicants seeking to live in the United States. *See id.*

Plaintiffs' arbitrary and capricious argument ultimately boils down to a disagreement with DHS's rationale for pausing adjudication. But this Court may not "second-guess[] the [Department's] weighing of risks and benefits" and "substitute [its own] judgment for that of the agency." *Dep't of Commerce v. New York*, 588 U.S. 752, 777 (2019).

## IV. Plaintiffs Do Not Satisfy the Remaining Factors for Obtaining Injunctive Relief.

### A.  Plaintiffs Fail to Show Likely Irreparable Harm.

Plaintiffs have not established the imminent irreparable injury necessary to obtain preliminary injunctive relief. To sustain injunctive relief, the threat of irreparable injury must be "*likely* in the absence of an injunction," rather than a mere "possibility." *Winter*, 555 U.S. at 22.

The Organizational Plaintiff does not assert any irreparable harm. *See* Doc. No. 25 at 25-28. The Supporter Plaintiffs allege irreparable injury based on their past expenditure of time, money and resources. *Id*. at 27-28. But "the purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018). The Supporter Plaintiffs also argue that "[i]f parole beneficiaries lose their work authorization . . . , sponsors will be responsible to invest more time and resources into making sure their beneficiaries have everything they need to survive." Doc. No. 25 at 28. But that potential harm is speculative, at best, and is insufficient to support a preliminary injunction.

The Parolee Plaintiffs face the same problem. Their alleged harms are speculative and depend upon potential future events—that the Plaintiff parole beneficiaries will be ultimately removed from the United States and subjected to harm in their native countries—neither of which is a likely, imminent result of the challenged agency action. *Charlesbank Equity Fund II v. Blinds*

*To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) ("A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."). Not only is removal of the Parolee Plaintiffs not certain, there is no evidence that their removal is imminent. *Sierra Club v. Larson*, 769 F. Supp. 420, 422 (D. Mass. 1991) (to establish irreparable harm, harm must be "of such imminence that there is a clear and present need for relief"). "[A]n injunction will not be issued to prevent the possibility of some remote future injury; a presently existing actual threat must be shown." *Id.* (cleaned up). Indeed, before Plaintiffs could be removed, they would be placed in removal proceedings, where they can raise claims to asylum or other protection from removal. *Supra* § I(A).

Further, as set forth above, *supra* § I(A), the "irreparable harm" that the Parolee Plaintiffs allege is not traceable to the termination of the various parole programs, nor to the temporary pause in processing of applications for immigration benefits for those who are in the United States subject to categorical parole. Parole is temporary and discretionary. Each of the Plaintiffs knew at the time they applied for parole that it was temporary and discretionary. That these individuals may have to leave the country at the expiration of their parole term, or may at some point in the future be removed if they do not voluntarily leave, is not the result of any agency action challenged here. It is simply the natural consequence of the temporary and discretionary nature of parole, and the condition they agreed to when they accepted the parole.[4]

### B.  The Balance of the Equities and Public Interest Do Not Support Injunctive Relief.

Plaintiffs' asserted harms are also outweighed by the governmental harms, and an

---

[4] Unnamed "parole applicants" who seek a "possible pathway to the United States," Doc. No. 25 at 28, are not before the Court and any harms asserted on their behalf cannot support injunctive relief. *See infra.* And an injunction could not in any event compel grants of parole to these applicants, and the applicants are not precluded from seeking parole outside the parole programs.

injunction is not in the public interest. *Winter*, 555 U.S. at 20; *Nken*, 556 U.S. at 435. An injunction that precludes a pause on parole programs irreparably harms the United States by limiting the Executive's discretionary authority under § 1182(d)(5). An injunction which divests the Executive of a power vested in it by Congress is itself an irreparable injury. *See Doe #1 v. Trump*, 944 F.3d. 1222, 1228 (9th Cir. 2019) (Bress, J., dissenting) (discussing cases holding an injunction that limits Executive authority is "itself an irreparable injury"). The government would also be harmed by an injunction that prevents it from "ensur[ing] that all aliens seeking admission to the U.S., or who are already in the U.S., are screened and vetted to the maximum degree possible and re-establish[ing] a uniform baseline for screening and vetting standards and procedures" as the President directed in EO 14161, Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats. Plaintiffs argue that "just a fraction" of the supporter applications investigated contained elements of fraud, Doc. No. 25 at 23, but that is immaterial. The government—and the public—is obviously harmed by *any* instances of immigration fraud, and the government is entitled to take steps to minimize the risk of fraud. Doc. No. 41-4 at 3-5, ¶¶ 9-15.

Accordingly, Plaintiffs' asserted harms in the form of *possible* removal or other speculative harms resulting from the pause on certain parole or benefit adjudications are outweighed by the harm to the government and public interest that would result from an order enjoining the Executive from exercising its discretionary powers with respect to immigration including its right to set up vetting procedures to reduce the risk of fraud. As the Supreme Court has recognized, Executive officials must have "broad discretion" to manage the immigration system. *Arizona v. United States*, 567 U.S. 387, 395–96 (2012). Enjoining the Executive Branch's discretion here would mark a severe intrusion into this core executive authority. *See INS v. Legalization Assistance Project*, 510

U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (warning against "intrusion by a federal court into the workings of a coordinate branch of the Government"); *cf.* 8 U.S.C. § 1252(f)(1), (g).

**V.  At Minimum, Any Relief Must be Limited to the Parties and their Specific Harms.**

Even if Plaintiffs were entitled to injunctive relief or a stay of administrative action, the relief they seek is overbroad.  Under settled constitutional and equitable principles, the Court may not issue relief that is broader than necessary to remedy actual harm shown by specific Plaintiffs. *Gill*, 585 U.S. at 73 ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."). Plaintiffs seek universal relief from the challenged agency guidance without any basis.

As noted, the Organizational Plaintiff does not assert or substantiate any injury to support an injunction or any relief beyond the named Individual Plaintiffs. In any event, the Organizational Plaintiff only alleges injury arising from the pause on the Haitian parole process and associated benefits, *see* Doc. No. 22 at ¶¶ 34, 251–260, and thus at most relief would be limited to that process. *See Conservation L. Found. of New England, Inc. v. Reilly*, 950 F.2d 38, 41 (1st Cir. 1991) (allegations of organizational harm were insufficient to warrant nationwide relief). Nor can Supporter Plaintiffs McAnany's and Varner's religiously-motivated or moral and political desires to support additional unidentified parolees support such a broad injunction of the guidance because such convictions do not suffice to establish injury in fact. *See* Doc. No. 25 at 27; *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024) (holding that sincere moral and policy objections to federal action alone cannot support Article III standing).

Plaintiffs have yet to move for class certification, let alone obtain class certification. Therefore, to the extent they are entitled to any relief, it must be limited to the actual named plaintiffs. *Baxter v. Palmigiano,* 425 U.S. 308, 310 n.1 (1976)) ("Because a class has not been certified, the only interests at stake are those of the named plaintiffs."); *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (preliminary injunction overly broad where it granted relief to the

putative class before class certification). This limitation is consistent with the rule that relief should be narrowly tailored to remedy the specific harms shown by plaintiffs. *Gill*, 585 U.S. at 73.[5]

For these reasons, the Court should deny universal relief, whether in the form of a stay of agency action or an injunction. At most, the Court may issue relief to the named Plaintiffs who have established standing, injury and likelihood of success on the merits. *Texas*, 599 U.S. at 703 (2023) (Gorsuch, J., concurring) ("And courts [] must do their part, too, asking whether party-specific relief can adequately protect the plaintiff's interests. If so, an appellate court should not hesitate to hold that broader relief is an abuse of discretion."). Finally, the Court may not issue injunctive relief without issuing the bond required by Rule 65(c). Defendants thus request that, if the Court were to enjoin or stay the guidance at issue, the Court require Plaintiffs to "give[s] security in an amount . . . proper to pay the costs and damages sustained" if Defendants are found "to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## CONCLUSION

For these reasons, the Court should deny a preliminary injunction.

Dated: March 21, 2025                     Respectfully submitted,

                                          By: /s/ *Joseph A. Darrow*
                                          JOSEPH DARROW
                                          *Trial Attorney*
                                          U.S. Department of Justice, Civil Division
                                          Office of Immigration Litigation
                                          P.O. Box 878, Ben Franklin Station
                                          Washington, DC 20044

                                          *Counsel for Defendants*

---

[5] To obtain class certification in support of preliminary injunctive relief, a plaintiff must satisfy all the requirements of class certification under Rule 23. *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 179–80 (D.D.C. 2015) (citing *Berge v. United States*, 949 F. Supp. 2d 36, 49 (D.D.C. 2013)). In short, should the Court even consider issuing classwide relief, it must first thoroughly consider Rule 23 requirements, which Defendants should have an opportunity to address.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2025, I electronically filed this motion with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: *<u>/s/ Joseph A. Darrow</u>*
       JOSEPH A. DARROW
       Trial Attorney
       United States Department of Justice