# ATTACHMENT C

to Plaintiffs' Second Supplemental Motion to Proceed Under Pseudonym

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, et al.<br><br>Plaintiffs,<br><br>– v. –<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, et al.<br><br>Defendants. | Civil Action No.: 1:25-cv-10495-IT |

**DECLARATION OF LUCIA DOE**

I, Lucia Doe, upon my personal knowledge, hereby declare as follows:

1. I was born in Caracas, Venezuela in 1980. I am a national of Venezuela.

2. I currently live in St. Augustine, Florida. I have lived in St. Augustine since I came to the United States through the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV") eight months ago in July 2024.

3. Before coming to St. Augustine, I lived with my mom in Merida, Venezuela. When the parole process for Venezuelans was announced in 2022, I heard about it on the news and later spoke to my sister, Plaintiff Norma Lorena Dus ("Lorena"), about the process. Lorena is a U.S. citizen and lives in West Stockbridge, Massachusetts and she is my sponsor for CHNV parole.

4. I decided to leave Venezuela due to the difficulty my family was having financially. I never wanted to leave Venezuela and live abroad, but unfortunately the situation in Venezuela is unsustainable. In Venezuela, I lived with my mom in Merida. I helped provide for them financially, but the salary I earned working was never sufficient to provide for even basic needs like food, rent, and clothing.

5. In Venezuela, I was employed as the Director of Children's Ministries at a local Christian church in Merida. I have a bachelor's degree in Christian Education from the Universidad Teologica del Caribe (Theological University of the Caribbean) in Saint Just, Puerto Rico. I worked for 12 years at the church and loved my job. However, my salary at the church was around $60 per month, which was not nearly enough to cover our most basic expenses, which were around $500 per month. This was a very typical monthly salary in Merida where I lived. Since no one can live on a salary this low, most people were always looking for side jobs and new income streams. My mom and I were not able to survive on the money I made working at the church, so we had to rely on financial assistance from my siblings living abroad. Thanks to my siblings, we were able to survive and have enough money for food and rent.

6. When I learned about the opportunity for CHNV parole, I talked with Lorena about the possibility of her sponsoring me so that I could go to the U.S. to work and help our family. I felt like there was more to life than the way I was living in Venezuela, and that I shouldn't have to work that hard to just survive.

7. Lorena submitted an application to sponsor me for CHNV parole in December 2022. I was excited when I was approved to travel to the United States in May 2024, and I traveled from Venezuela to Colombia, and then from Colombia to St. Augustine, Florida in July 2024.

8. When I arrived in Florida, U.S. immigration officials reviewed my documents and granted me parole until July 2026. I quickly applied for a social security number and a work permit, and my documents arrived in August 2024.

9. I decided to live in St. Augustine rather than near my sister in Massachusetts because, from a previous trip I made to Florida when I was studying in Puerto Rico, I already had several friends living and working in St. Augustine. I thought it would be easier to find work there and I also needed access to public transportation since I do not have a car. My sister lives in a rural part of Massachusetts and I knew if I lived there, it would be much harder to find a job and get transportation to and from work.

10. I have adapted easily to living in St. Augustine. I am renting a room from a friend and after receiving my work permit, I was hired by a cleaning company. I work cleaning apartments, condominiums, houses, schools, and businesses and I can either ride my bike or take the bus to work. I like to ride my bike around town, and I also enjoy going to the beach. I regularly attend a local Christian evangelical church and hope to get more involved in their ministries.

11. Around the beginning of February, I heard about the possibility of my parole being terminated from the news and social media. I was immediately alarmed and started feeling like I was in a moment of crisis.

12. On March 21, 2025 I heard that the CHNV parole process had been terminated and that the remaining time I had on my parole is being revoked. I am very worried that I will now be here in the U.S. without papers, as that was never part of my plan. I do not want to be in the U.S. without a legal status. I am worried about being deported back to Venezuela and tarnishing my immigration record in a way that does not allow me to come back in the future.

13. From the initial outset of applying for parole my plan has always been to use my full two years of parole to work, financially support my parents, and save money for my future. I

3

also want to pay my sister back for the money she has spent covering my expenses related to my parole, including my work permit and transportation to the United States. I want to stay here for the remainder of time I have left on my parole. It seems very unfair to be in limbo and at risk of being deported when I made many sacrifices to come here legally.

14. If I were to have to return to Venezuela now, there would be many economic implications. I would not have sufficient money to pay back the money I owe to my sister. I would also be returning to Venezuela with very little savings, which would make my future there very uncertain. It would also mean less help for my family and a greater financial burden on my brothers and sisters. If I do have to return, I will need to find a job and it is very difficult to find work in Venezuela if you are older than 40 years old, as people assume that you will not be as productive. Thinking about having to return right away gives me anxiety.

15. Since learning of the possible termination of my parole I have been saving money in case I need to purchase a last-minute plane ticket to return to Venezuela. This is my priority right now and I am trying not to spend money on anything extra.

16. I am participating in this lawsuit so that I, along with other individuals who are in the same position, are allowed to stay in the United States for the remainder of the time that we have left on our parole.

17. I am willing to serve as a class representative on behalf of those who are similarly situated to me.

18. I know that if the class is certified, I will be representing more than just myself in this case. I have spoken with the lawyers who represent me about what being a class

representative means. I want to help everyone in my situation because we are all harmed by the revocation of parole.

19. I am scared to go back to Venezuela and fearful of what the Venezuelan government will do if they see the parole stamp on my passport when I re-enter the country. I have heard many stories of the government interrogating Venezuelans who have returned home after seeking parole or asylum in other countries. Many Venezuelan citizens who have returned have been forced to pay money to military officials at the border in order to be allowed to return to Venezuela, and others have had their passports confiscated or have ended up imprisoned. I have also heard of people disappearing after they have been arrested. I am afraid of the Venezuelan government retaliating against me in this way.

20. I want to use a pseudonym in this litigation because I am afraid of retaliation by the Venezuelan government. The government closely monitors social media and news reports. I have seen reports that government officials interrogate and imprison anyone who speaks out against the government or discusses the difficulties of living in Venezuela. I am afraid of them knowing that I left Venezuela to come to the U.S. on parole and that I am participating in this lawsuit. I try very hard not to talk about politics publicly, but I am implicated by truthfully stating what is going on in Venezuela and saying that I don't feel safe there. I believe that if I use my real name, the government will target me. If I am not able to participate in this litigation using a pseudonym, I may consider not participating at all.

21. While I don't want to be in the United States without legal status and jeopardize my ability to come back legally in the future, I also don't want to be retaliated against and

singled out for removal. I am fearful that if I use my real name I may be targeted and deported.

22. Maintaining my parole status is critical for me and my family. It is the only opportunity I have to better my life.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

                                         Executed in St. Augustine, Florida on March 25, 2025

                                         Lucia Doe

CERTIFICATE OF INTERPRETATION AND TRANSCRIPTION

I, Emily Martin, certify that I am fluent in English and Spanish, that I am competent to interpret between these languages, and that I transcribed the foregoing between English and Spanish accurately. I further certify that I provided a translation of the foregoing to Lucia Doe in Spanish and that she affirmed that it is true and correct.

Executed: 3/25/2025                                    _____

                                                                         Emily Martin