# ATTACHMENT D

to Plaintiffs' Second Supplemental Motion to Proceed Under Pseudonym

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, *et al.*,<br><br>    *Plaintiffs,*<br><br>    *v.*<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>    *Defendants.* | Case No.: 1:25-cv-10495-IT |

**DECLARATION OF MIGUEL DOE**

I, Miguel Doe, upon my personal knowledge, hereby declare as follows:

1. I was born in Diriamba, Nicaragua, on November 7, 2002. I am a national of Nicaragua.

2. I currently live in Gainesville, Georgia. I have lived in Gainesville since I entered the United States.

3. I entered the United States with my brother, Alejandro Doe, under the parole process for Nicaraguans, a component of the CHNV parole processes announced on January 6, 2023. My cousin, a U.S. citizen who lives in Washington, sponsored me through the program. I received travel authorization in May 2024, and arrived in the United States on July 29, 2024. After spending time at inspections at the airport, officers granted me a temporary two-year stay in the United States. I received work authorization pursuant to my parole in September 2024.

4. My U.S. citizen cousin was the first in our family to learn about the CHNV parole processes. She informed my father, and I became aware of them around July or August of 2023, when my father explained the process to me and that he would be traveling to the

United States through the parole process for Nicaraguans. Eventually, my siblings and I followed him. I traveled with my brother, Alejandro Doe.

5. I decided to come to the United States because it seemed like an incredible opportunity. In Nicaragua, I began university studies in 2020, studying nutrition at UNAN-Managua (National Autonomous University of Nicaragua). I studied off-and-on throughout the next three years, but due to COVID- and program-related impediments, I was unable to complete my studies. When COVID spread through Nicaragua, my school closed for some time. When classes resumed, however, the University had made changes to the curriculum and course requirements, and many of the classes I had taken had changed names. In my transcript, it showed I had not taken the courses, and I was forced to retake them. Shortly after, the University told me I could not continue in my second year of study because many of the classes I needed overlapped with the times of other courses I needed. I felt the University could have accommodated me. Instead, they returned me to my first year of study and reclassified me accordingly.

6. Because I was not progressing, I decided to pause my university studies and work for a time. A year later, I returned to school. I did not have the resources to attend a private university, so I returned to UNAN-Managua, but unfortunately, things had not improved there. Classes were always getting cancelled; one month, I only had five classes. I decided I could better spend my time working.

7. I worked for a time in a fast-food restaurant, but the restaurant closed, leaving me without a job. Around December 2023, I became an electrician's assistant, but there were problems with the business. They did not pay us, and the project did not continue. In 2024, I found a job working in construction, which I enjoyed, but it was only temporary.

8. When the opportunity for parole came along, I spent a long time considering it, especially given that I would be leaving not only my friends and community I grew up in, but also my mother with whom I lived and whom I helped take care of. Ultimately, I decided I could best help my family and my own future by coming to the U.S. I was excited to work hard in the United States for two years, save up and invest money, and improve my future as well as my family's.

9. My experience in the U.S. has been better than I hoped. After receiving my work authorization, I found a good job quickly. In Nicaragua, it is very hard to find work, let alone work that pays decent wages. I currently work full-time producing marble panels. Outside of work, I enjoy spending time with my family.

10. I first started to hear rumors of a potential end to the CHNV parole processes on social media. Around this same time, I began seeing videos on the news and social media about immigration raids and deportations. It was hard to distinguish the extent of what was happening amid so much chaos, so I tried not to get too worried about it all. But around the beginning of February, my U.S. citizen aunt confirmed to me and my family that the Trump administration would be ending CHNV parole.

11. Since then, everything has felt uncertain. I've heard about raids and deportations happening in my own town, Gainesville, which has hit the community hard. On March 21, I learned about the publication of the Federal Register notice that will officially terminate the CHNV parole process and revoke my parole. This news makes me fearful for my safety. Neither I nor my family has done anything wrong, but we have felt forced to keep a low profile, avoiding going out whenever possible. I also follow networks that

post about where people have seen ICE, and I try my best to avoid those locations. Living this way has impacted my daily life and makes me worry about the future.

12. I came to this country with the idea that the United States is the land of opportunity—a place where one could get ahead. I came through a legal process. I have done everything the U.S. government has asked, caused no trouble, and I have contributed to the United States. So I could not believe when I learned that the Trump administration is not only cancelling the parole processes, but revoking people's parole as well, leaving us without legal status and work authorization. I never expected this could happen.

13. I never planned on staying in the U.S. indefinitely. My mother remained in Nicaragua alone when I left, and I need to help take care of her. My family has limited resources in Nicaragua. But I have only been in the U.S. for a matter of months, far less than the time the U.S. government initially approved me for parole. I came to this country to work and to be a contributing member of society. I was granted legal permission to be here, but from one day to the next the government has changed its mind, stating that I am now here illegally. This is unjust and unfair.

14. I wish the administration would think through what their actions will do to people. Parole benefits not only parolees, but the United States. We are not bad people, and we are not looking for trouble. We are just here to work and help our families. Families suffer when they're deported.

15. I am worried about what will happen to my own family if we are deported to Nicaragua. Since the 2018 protests in Nicaragua, there is no freedom of expression. Even displaying a Nicaraguan flag can get you imprisoned. If you enter the country as a deportee, you are looked down on by the public loyal to the ruling regime, and you must go through a long,

involved interview process with government officials—the government assumes you are against it.

16. I am heavily weighing my options. I have not accomplished what I hoped to in the U.S. in my short time here, but if I stay in the country undocumented, I could have bigger problems to deal with. I was previously considering filing for asylum given my family's history of political persecution, even though it would make me a bigger target for my own government if I were to be deported. But now even that option has been taken away from me. It feels like an untenable situation, and one that could have been avoided if the U.S. government had kept its word.

17. Defending CHNV parole from termination, maintaining my status and work authorization, and having the opportunity to file for other immigration relief I am eligible for are vital for me. I am participating in this lawsuit so that I, along with other individuals who are in the same position, may be protected from the Trump administration's actions.

18. I am willing to serve as a class representative on behalf of those who are similarly situated to me.

19. I know that if the class is certified, I will be representing more than just myself in this case. I have spoken with the lawyers who represent me about what being a class representative means. I want to help everyone in my situation because we are all harmed by the cancellation of our parole status and work authorization, and the indefinite pause on the processing of immigration applications benefits.

20. For all of the above reasons, however, I fear having my real name become public in this lawsuit. I fear that if the U.S. government knows that I am participating, it will retaliate

against me and my family and deport us all to Nicaragua. I fear that if we are deported, the Nicaraguan government will retaliate against us in turn as parolees, as asylum-seekers, and as a family with a history of State political persecution. If I am not permitted to use a pseudonym in this lawsuit, I will likely decide not to participate. I cannot risk my safety and that of my family.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Gainesville, Georgia on March 24, 2025.



Miguel Doe

## CERTIFICATE OF INTERPRETATION AND TRANSCRIPTION

I, Elia Gil Rojas, certify that I am fluent in English and Spanish, that I am competent to interpret between these languages, and that I transcribed the foregoing between English and Spanish accurately. I further certify that I provided a translation of the foregoing to Miguel Doe in Spanish and that he affirmed that it is true and correct.

Executed: 3/24/2025

                                                                 *Elia Gil Rojas*
                                                                Elia Gil Rojas