# ATTACHMENT F

to Plaintiffs' Second Supplemental Motion to Proceed Under Pseudonym

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>    *Defendants*. | Case No.: 1:25-cv-10495-IT |

### DECLARATION OF GABRIELA DOE

I, Gabriela Doe, upon my personal knowledge, hereby declare as follows:

1. I was born in Managua, Nicaragua in March 1983. I came to the United States in 1992, and in 2011 I became a U.S. citizen. I have been living in the United States for the last 33 years.

2. I currently live in Tacoma, Washington, with my husband and two kids, who are twelve and seventeen years old, respectively. I have lived here in Tacoma for the last 17 years. I work as an accredited representative at a non-profit that provides direct legal services and educational resources to immigrants in the state.

3. I have sponsored seven people through the parole process for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV"). I first learned about CHNV parole processes in 2023, when my uncle asked me if I could sponsor his girlfriend. She was the first person I sponsored under CHNV.

4. Specifically, besides my uncle's girlfriend whom I sponsored in 2023 and whose two-year parole period has since ended, I have sponsored four of my cousins, Ana Doe, her

husband Armando Doe, and her two brothers, Miguel and Alejandro Doe; a family friend whose parole has since ended, and the seventeen-year-old son of another family friend. I also have another cousin, Carlos Doe, who is here in the United States with CHNV parole, but he is sponsored by someone else in the family.

5. Everyone I have sponsored are nationals of Nicaragua. The cousins I am sponsoring were approved for two-year parole periods in 2024 and are currently living in Georgia. The seventeen-year-old boy I sponsored entered the United States and was approved for two years of parole in August 2024, but he has since returned to Nicaragua.

6. For my cousins, four of whom I am sponsoring, life in Nicaragua was becoming more and more dangerous for them. Our family has a history of being on the side of the socialist party in Nicaragua, and I have many family members who are now living in exile outside of Nicaragua because of this. For my family who remained in Nicaragua, many have been targeted by the government and the police for their political beliefs or even because of their relation to our family. My uncle—Ana, Alejandro, and Miguel's father—was even arrested and detained for three to four days because of this, and my aunt, their mother, keeps a low profile in Nicaragua given her name and relation to our family. Because our family name is prominently known by the Nicaraguan police and government as being against the government, continuing to live in Nicaragua was just no longer a safe option for my cousins.

7. I offered to sponsor my cousins through CHNV in 2023. Being able to sponsor them was not only vital for their well-being and safety, but it was also important for me, as someone who believes in the importance of family. I have a special relationship with my cousins, as they supported me greatly when my father became sick with cancer and

2

eventually passed away in June 2023, which was an extremely difficult time for me. My father was the eldest of his nine siblings, and he was known for always taking care of and supporting his family however he could. As it happens, I am the eldest cousin of 27 cousins in our family, so supporting my family and cousins by sponsoring them under the CHNV parole processes not only reflects an important personal value of mine but is also a way for me to continue my father's legacy of supporting the family whatever means necessary.

8. In order to sponsor all of my beneficiaries, I had to provide extensive proof and documents to demonstrate I was able to support all of my beneficiaries, including bank account statements and other financial-related documents. It was a time-consuming process. During the process, I made sure all of my beneficiaries had a checklist of all of the important documents they needed for every step, while helping them through the process to the best of my ability.

9. When the cousins I sponsored arrived in the United States and were granted parole in 2024, they moved to Georgia to be near their father, who has been a great help to them in settling in. After they obtained work authorization and were able to secure employment, they have been very self-sufficient in providing for themselves financially. I continue to support them by helping them navigate the U.S. immigration system, informing them about new changes or policies, and supporting them in exploring other options they have for immigration relief. Since they've been living in the United States, my family and I have visited them in Georgia twice. It was great to be reunited with them here in the United States and see how well they have all been doing. They've all gotten jobs and have established lives for themselves here. My cousins are a very close-knit group, and I

am amazed and proud of how well they've worked together to support one another as they've settled into new lives here in the United States.

10. I first heard about the government's intention in terminating the CHNV parole processes through my work in immigration. Naturally, my family—including those with parole—started to grow more nervous as news about President Trump's plans to terminate the CHNV parole processes began to spread. On Friday, March 21, I learned about the publication of the Federal Register notice that will officially terminate the CHNV parole process. The termination of the CHNV parole process and the revocation of my cousins' parole leaves me feeling scared and worried. I'm worried for my cousins and the prospect of them having to go back to Nicaragua, given how the government and police have persecuted them and my family before. In Nicaragua, once someone leaves the country, it is common for these people to be considered "traitors" of the country; if you try to return, there is no guarantee that the government will allow you to re-enter, basically leaving you stateless. All of these possible outcomes for my cousins if their parole is revoked and they are deported are terrifying to me.

11. As a person who must manage clinical depression and anxiety, the loss of CHNV parole and the impact this would have on my cousins would have a terrible impact on my mental health. All I can do is stay up to date on the news and latest developments of the plans regarding the termination of CHNV, and make sure they understand possible scenarios and other relevant Know Your Rights information. But apart from that, I feel powerless in being able to prevent how this termination will be implemented, and the harm they would suffer as a result. My cousins are rightfully very concerned and worried about what this

termination of CHNV could mean for them, and I try to support and comfort them the best I can, but it is hard to do so when I do not know what lies ahead.

12. CHNV parole has opened doors to new opportunities for all immigrant parolees. As is the case with my cousins, immigrants who have been paroled through this process have shown that how much they bring to the table by helping each other and their communities and hitting the ground running by building productive lives for themselves and their families. The loss of CHNV would mean closing the doors on all of these opportunities and benefits that have been made possible because of this parole process.

13. The loss of CHNV would also mean the loss of having my family here in the United States. It would mean the loss in choices my cousins would have in establishing a full life for themselves, one where they are working hard and contributing to the community, and one that is on their own terms and free of the fear of persecution and instability. My cousins all abided by the process set forth by the U.S. government when creating CHNV, including rigorous vetting and screening at multiple points. I have invested time, effort, and resources into the sponsorship process for all of my cousins and continue to make sure they are all taken care of—continuing my father's legacy in always taking care of your community and loved ones. Now, the U.S. government wants to upend the entire process by terminating CHNV, leaving my cousins vulnerable to deportation and removal and stripping them of the lives they have begun to cultivate here. This is not only cruel but goes against all the reasons that drove me to help my family as a sponsor.

14. I am participating in this lawsuit so that I, along with other individuals who are in the same position, can have our beneficiaries take full advantage of their CHNV parole period, as they should be allowed to do.

15. I am willing to serve as a class representative on behalf of those who are similarly situated to me.

16. I know that if the class is certified, I will be representing more than just myself in this case. I have spoken with the lawyers who represent me about what being a class representative means. I want to help everyone in my situation because we are all harmed by the termination of the CHNV parole program and the revocation of parole.

17. Defending CHNV parole from termination is very important to me and is the reason why I am joining this lawsuit as a plaintiff. However, at the same time, I am fearful that if my real name was disclosed, this would inflict harm onto my family.

18. First, my cousins—Ana, Armando, Alejandro, Carlos, and Miguel Doe—are CHNV parolees and plaintiffs in this lawsuit. As a result, I fear that if I use my real name in this lawsuit, the fact that I have sponsored four of my cousins could lead to them all being identified by either the U.S. government or Nicaraguan government, and thus make them vulnerable to retaliation both in the United States through deportation, for example, or in Nicaragua through continued targeted attacks and persecution.

19. Second, I have several family members here and abroad who could be vulnerable if my real name is used in this lawsuit. I have family members here in the United States who have CHNV parole and are not participating in this lawsuit. If I use my real name in this lawsuit, they could be identified by either the U.S. government or Nicaraguan government, which would make them vulnerable to retaliation in the United States, and if deported, in Nicaragua too.

20. I also have family members in Nicaragua who have no connection to this lawsuit, so I fear that if my real name is disclosed and the Nicaraguan government discovers that I am

6

related to them due to our shared last name, they will face heightened risks of retaliation by the Nicaraguan government who has persecuted our family in the past. For example, after a U.S. based uncle of mine posted anti-Nicaraguan government content on his social media and subsequently received direct threats from pro-government individuals about this post—where they threatened that they would hurt him through his family who was still in Nicaragua—shortly afterwards an uncle of mine in Nicaragua was a victim to an attempted poisoning. Moreover, both my maternal and paternal families were part of the revolution in the 1980s and have declined invitations to join the controlling regime in Nicaragua. As a result, the Nicaraguan government has watched our family closely and has shown—through their actions—that we are a family of interest because of our political past and present. Because of this, I fear that if my real name is used in this lawsuit, this information will get back to Nicaragua and it will only add fuel to the threats and actions the government has taken against my family.

21. Lastly, I have family members here in the United States with varying statuses and I fear that if my real name were used publicly in this lawsuit they could potentially be targeted and retaliated against by the U.S. government, whose plans to deport as many undocumented immigrants as possible are evident.

22. If I were not able to proceed pseudonymously in this lawsuit, I would not proceed any further in this litigation as a plaintiff, out of an abundance of caution for the safety and well-being of my cousins and family here in the United States and in Nicaragua.

23. For these reasons, I am respectfully asking the court to allow me to proceed as plaintiff in this lawsuit under a pseudonym so I can protect my family.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Tacoma, Washington on 3/24/2025

Gabriela Doe

8