# EXHIBIT 3

to Plaintiffs' Emergency Motion for a Preliminary Injunction and Stay of DHS' *En Masse* Truncation of all Valid Grants of CHNV Parole

Doe et al. v. Noem et al., 1:25-cv-10495-IT (D. Mass.)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, et al., <br><br> Plaintiffs, <br><br> *v.* <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, et al., <br><br> Defendants. | Civil Action No.: 1:25-cv-10495-IT |

**DECLARATION OF GUERLINE JOZEF, CO-FOUNDER AND EXECUTIVE DIRECTOR AT HAITIAN BRIDGE ALLIANCE ("HBA")**

I, Guerline Jozef, upon my personal knowledge, hereby declare as follows:

1. I am over the age of 18. I make this declaration based on my own personal knowledge and, if called to testify, could and would testify as stated herein.

2. I am the Co-Founder and Executive Director of the Haitian Bridge Alliance (HBA), a grassroots and community-based nonprofit organization that advocates for fair and humane immigration policies and provides immigrants with humanitarian, legal, and social services, with a particular focus on Black immigrants, the Haitian community, women and girls, LGBTQIA+ individuals, and survivors of torture and other human rights abuses. HBA was incorporated in California in early 2016 to address the needs of an influx of Haitian and other Black immigrants in the U.S and seeking humanitarian protections as conditions in their countries deteriorated. HBA seeks to elevate the issues unique to Black immigrants and builds solidarity and collective movement toward policy change. HBA is headquartered in San Diego, California.

3. As the Co-Founder and Executive Director, I am responsible for the comprehensive oversight of the entire organization. I am the direct liaison to the Board of Directors, and I directly supervise the management team, including the Managing Attorney and Humanitarian Director. I am engaged in both the programmatic and administrative functions of HBA. Furthermore, I play a critical role in amplifying the work of HBA and advocating for the needs of the Black immigrant communities on national and international platforms through frequent speaking engagements, panel discussions, and collaborations with media outlets and relationship building with partners.

4. Informed by our mission, HBA was founded for the purpose of assisting recently arrived Haitian and other Black immigrants in acclimating to the United States and to ensure their success in navigating their new lives in the United States, which includes helping these immigrants access more secure immigration status here in the United States. Since 2016, this founding principle has informed how HBA has developed our core organizational work streams, which are to: advocate for and facilitate access to expanded legal pathways and humanitarian protections for all immigrants with a focus on Haitian and other Black immigrants, and especially recent arrivals; provide holistic humanitarian support to immigrants; and provide legal support to immigrants in the United States. Starting in 2020, HBA has operated a legal department with a small staff of attorneys who provide direct representation to Haitian and other Black people in U.S. immigration matters, including people in ICE detention, those in removal proceedings before the Executive Office for Immigration Review (EOIR), and those filing applications for immigration benefits with USCIS. HBA prioritizes detention cases for people in California, but it also provides limited pro bono representation before EOIR for people in jurisdictions other than

California. HBA's work also focuses on local, state, national, and international advocacy for fair and humane immigration policies and pathways.

5. Since the inception of the CHNV parole processes, HBA has extended its core organizational activities to serve Haitian CHNV parolees and their sponsors as consistent with its mission to provide support to recent Haitian arrivals. These include: (1) legal consultations for Haitian parolees; (2) facilitating access to the expanded legal pathway established by CHNV parole by partnering with Welcome.US in assisting U.S.-based sponsors and their beneficiaries; and (3) humanitarian and integration support services for Haitian nationals lawfully paroled into the United States.

6. After the CHNV parole processes were established, HBA received and continues to receive numerous requests for information on CHNV parole from community members. To help respond to these requests in an effective and impactful way, HBA formed a partnership with Welcome.US, a national initiative that mobilizes and empowers Americans all over the country to welcome and support those seeking refuge in the United States. This partnership focused on mobilizing people eager to sponsor for the parole process Haitians who were fleeing danger and instability in Haiti. As a result, HBA staff along with Welcome.US has provided support to hundreds of people seeking to access the CHNV parole processes.

7. Due to the immense demand for assistance from both prospective and current Haitian CHNV parolees and sponsors, in 2023 we hired a full-time staff member to work directly with Welcome.US. Before we were able to do this, other staff members on our team had to divert some of their efforts and energies to this work.

8. Once Haitian CHNV parolees have arrived in the United States and receive parole, HBA provides humanitarian and legal services to encompass their varying needs. This has been a natural extension of the work HBA's team has always done; our humanitarian services team provides direct humanitarian and social support to recent Haitian arrivals by helping them find and secure temporary housing and other basic living necessities, and we also provide integration education about the United States. HBA's legal services department also provides direct legal assistance to recent Haitian arrivals, in the form of legal consultations and community outreach and education so people better understand what immigration pathways are available to them, such as asylum and Temporary Protected Status ("TPS"). Since the creation of CHNV, HBA has provided these same services to Haitian CHNV parolees.

9. I understand that the Trump administration has terminated the CHNV parole processes, is no longer processing CHNV sponsorship applications, and is prematurely revoking CHNV parolees' grants of parole and work authorization, stripping beneficiaries of their lawful status and ability to work in the United States. I am also aware that USCIS has indefinitely suspended the adjudication of immigration relief applications filed by CHNV and other parolees. These actions directly interfere with and affect HBA's core activities of serving recent Haitian arrivals to enable their success in navigating their new lives in the United States and help them access more secure immigration status here.

10. The administration's actions have concretely and perceptibly impaired both the legal and humanitarian services that HBA provides to recent Haitian arrivals, given the panic that has spread through our community.

11. Since the release of the March 25 FRN, HBA has been receiving increasing numbers of requests for support from individuals with CHNV parole panicking about how the March 25 FRN will affect them. HBA staff responding to these inquiries have had to rapidly analyze the FRN, its interaction with the administration's suspension of adjudication of immigration benefit requests for parolees, and each individual's particular circumstances in order to provide the most updated advice, legal and otherwise, to people impacted by the ever-changing landscape.

12. Additionally, with the termination of CHNV parole comes the termination of work authorization, which throws recently arrived immigrants into immediate crisis. HBA has had to provide emergency humanitarian and legal assistance to individuals seeking help instead of focusing on supporting recent arrivals as they settle into the United States, pay their taxes, gain lawful employment, contribute to their adoptive communities, support themselves and their families, and pursue alternate pathways to longer-term lawful status in the United States. The abrupt rescission of validly issued parole grants and work authorizations for Haitians under the CHNV parole processes on April 24, 2025 has prompted a crisis-based rapid response from HBA's staff that prevents them from focusing on HBA's core activities intended to meet the basic economic and living needs of recent Haitian immigrants to the United States, such as fostering outreach and education, employment readiness, self-reliance, and acclimation within their adopted communities, and providing other direct services.

13. Lastly, the suspension of adjudicating immigration relief applications filed by Haitian CHNV parolees directly interferes with HBA's legal services to recently arrived Haitian migrants. Typically, HBA's outreach and education programs consist of educating Haitian

parolees on other legal relief available to them, now mainly in the form of TPS and asylum, followed by tailored legal consultations to discuss each parolees' individual case and whether they may qualify for other reliefs such as family reunification, for TPS and/or asylum. If CHNV holders are now at risk for detention and deportation, HBA will be required to modify this approach, shifting course away from providing our typical affirmative legal support to Haitian parolees to respond to any new deportation defense needs that they have once they lose their status, which is work that is outside of HBA's normal core legal services for CHNV Haitian parolees.

14. Additionally, the government's actions have created confusion and uncertainty as to what options exist for CHNV parolees and what applications, if any, are being processed. Due to this opacity, HBA has had to learn through trial and error how best to invest its limited resources in providing this kind of assistance, and how to adjust the advice it provides to parolees. For example, following the suspension of adjudication of immigration benefit requests, HBA was not immediately sure whether asylum applications submitted by CHNV parolees would even receive a receipt notice and whether that would provide any greater protection against removal. This affected whether HBA should advise parolees to apply for asylum. Under the new FRN, moreover, HBA now understands that applications for work authorization will not be processed. HBA is currently in the process of helping a CHNV parolee with a pending asylum claim apply for work authorization based on their status as an asylum applicant. Due to the FRN and other directives, we do not know how to help this person. With no adjudication of asylum applications, even if they have an asylum application receipt that may protect them from deportation, they won't be able to get work authorization or protection from detention. HBA knows that these new policies will create

6

more demand for detention/removal defense services and also for humanitarian support, due to the lack of ability to work.

15. HBA's attorneys have also had to create and add new analysis and guidance about the March 25 FRN to its educational materials and will continue to need to do so to the extent there are policy changes that affect CHNV parolees. This makes it more difficult to address all the necessary information that the Haitian CHNV community needs in the time allotted for trainings. The Haitian CHNV community is understandably in crisis given the abrupt termination of the CHNV parole processes, the sudden and indefinite pause in the processing of additional immigration benefits, and now the high likelihood that Haitian CHNV parolees could be subjected to expedited removal in less than a month. The release of the March 25 FRN has only amplified the ongoing, direct, and substantial impact of the administration's termination of parole processes on HBA's core activities of providing affirmative services and legal education to CHNV parolees.

16. HBA is deeply committed to supporting our Haitian community and other immigrant communities and fostering a smoother, more informed path to legal entry and resettlement for Haitian parolees. The CHNV parole processes have been a lifeline for Haitians seeking stability and safety here in the United States and terminating these processes and Haitian parolees' ability to access additional immigration relief while here in the United States would be taking away this lifeline for them.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed in Aliso Viejo, California on March 27, 2025.

_____
Guerline Jozef