# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SVITLANA DOE, et al., | |
| Plaintiffs, | |
| *v.* | Civil Action No.: 1:25-cv-10495-IT |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, et al., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION AND STAY OF DHS'S *EN MASSE* TRUNCATION OF ALL VALID GRANTS OF CHNV PAROLE

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ..................................................................................................................... 7

    I.    PLAINTIFFS HAVE STANDING, THEIR CLAIMS ARE JUSTICIABLE, AND DEFENDANTS' ACTION IS REVIEWABLE ........................................................... 7

    II.    PLAINTIFFS ARE LIKELY TO SUCCEED IN PROVING THAT THE MARCH 25 FRN'S *EN MASSE* TRUNCATION OF ALL VALID GRANTS OF CHNV PAROLE WAS UNLAWFUL ............................................................................................... 10

    III.    PRELIMINARY RELIEF IS NECESSARY TO STOP IMPENDING IRREPARABLE INJURY THAT IS CERTAIN TO OCCUR ................................... 15

    IV.    THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF PRELIMINARY EQUITABLE RELIEF ........................ 18

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arevalo v. Ashcroft*,
    344 F.3d 1 (1st Cir. 2003) ........................................................................................15

*Bennett v. Spear*,
    520 U.S. 154 (1997) ................................................................................................9

*Biden v. Texas*,
    597 U.S. 785 (2022) .........................................................................................10, 11

*Bollat Vasquez v. Mayorkas*,
    520 F. Supp. 3d 94 (D. Mass. 2021) .....................................................................11

*Bollat Vasquez v. Wolf*,
    460 F. Supp. 3d 99 (D. Mass. 2020) .....................................................................11

*Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers,
    Helpers, Warehousemen & Packers*,
    679 F.2d 978 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984) .........................19

*DHS v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) ....................................................................................................9

*Fed. Crop Ins. Corp. v. Merrill*,
    332 U.S. 380 (1947) ..............................................................................................14

*Friends of Sierra R.R., Inc. v. I.C.C.*,
    881 F.2d 663 (9th Cir. 1989) .................................................................................14

*LaMarche v. Mayorkas*,
    691 F. Supp. 3d 274 (D. Mass. 2023) ..............................................................9, 10

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) (per curiam) ...........................................................17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................8

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*,
    496 F. Supp. 3d 600 (D. Mass. 2020) .....................................................................7

*Match-E-Be-Nash-She-Wish and of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) ............................................................................................8, 9

*Nken v. Holder,*
      556 U.S. 418 (2009) ........................................................................................18

*Pacito v. Trump,*
      __ F. Supp. 3d. __, 2025 WL 655076 (W.D. Wash. Feb. 28, 2025) ......................................18

*Patel v. Garland,*
      596 U.S. 328 (2022) ..........................................................................................9

*Roe v. Mayorkas,*
      No. 2-cv-10808-ADB, 2023 WL 3466327 (D. Mass. May 12, 2023) ................................9, 10

*Ross-Simons of Warwick. Inc. v. Baccarat, Inc.,*
      217 F.3d 8 (1st Cir. 2000) ...................................................................................18

*United States ex rel. Accardi v. Shaughnessy,*
      347 U.S. 260 (1954) .......................................................................................14, 15

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.,*
      645 F.3d 26 (1st Cir. 2011) ...................................................................................7

*Winter v. Nat. Res. Def. Council, Inc.,*
      555 U.S. 7 (2008) .........................................................................................7, 18

## Statutes

5 U.S.C.
      § 704 ............................................................................................................9
      § 705 .........................................................................................................1, 7

8 U.S.C.
      § 1225(b)(1)(i) ...............................................................................................11
      § 1182(a)(9)(B) ..............................................................................................16
      § 1182(d)(5)(A) ......................................................................................... *passim*
      § 1225 ..........................................................................................................7
      § 1225(a)(1) ..................................................................................................11
      § 1225(b) .......................................................................................................1
      § 1225(b)(1)(iii)(II) ...................................................................................7, 10, 11
      § 1252(a)(2)(B)(ii) ........................................................................................8, 9

44 U.S.C.
      § 1505 .........................................................................................................13
      § 1507 .....................................................................................................13, 14

INA
      § 225 ...........................................................................................................7
      § 235 ...........................................................................................................7

8 U.S.C. § 1235 .................................................................................................................. 7

49 Stat. 502 .................................................................................................................... 14

**<u>Other Authorities</u>**

8 C.F.R.
    § 212.5(e) ................................................................................................................ 1
    § 212.5(e)(2)(i) ............................................................................................... 6, 13, 14
    § 274a.14(b) ......................................................................................................... 6, 14
    § 274a.14(b)(2) ..................................................................................................... 6, 15

Fed. R. Civ. P
    65 .......................................................................................................................... 1
    65(c) ..................................................................................................................... 19

90 Fed. Reg
    8443, 8444 (Jan. 29, 2025) ...................................................................................... 16
    13611 ................................................................................................................ 1, 15
    13611-12 Background section .................................................................................. 11
    13612 ......................................................................................................... 3, 12, 13
    13614 n.24 ............................................................................................................. 3
    13617 ................................................................................................................... 4
    13617 n.57 ............................................................................................................. 4
    13618 ............................................................................................................... 4, 16
    13618 n.68 ........................................................................................................... 13
    13619 ....................................................................................................... 14, 15, 16
    3619 n.70 ............................................................................................................. 11
    13619-20 ...................................................................................................... *passim*
    13620 ................................................................................................................. 14

**INTRODUCTION**

Plaintiffs respectfully move for a preliminary injunction under Rule 65 and a stay under 5 U.S.C. § 705 of the Secretary of Homeland Security's attempt to cut short via Federal Register Notice every valid period of parole granted through the Cuban, Haitian, Nicaraguan, and Venezuelan (CHNV) parole processes—a blanket exercise of the parole authority directly affecting hundreds of thousands of people *en masse*, including eight individual Plaintiffs[1]—as of April 24, 2025. *See* Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025) (Ex. 51), Doc. No. 71-1.[2] As explained below, the Secretary's action is unprecedented, inhumane, and unlawful for multiple independent reasons, including because it: violates the statute's case-by-case requirement, 8 U.S.C. § 1182(d)(5)(A), and the regulatory (and constitutional) requirement of written notice in these circumstances, 8 C.F.R. § 212.5(e); and is premised on an erroneous interpretation of the expedited removal statute, 8 U.S.C. § 1225(b), which does not permit subjecting CHNV parolees to expedited removal even if they have been here less than two years, negating the Secretary's sole excuse for not "permitting CHNV participants' parole to remain in effect until the natural expiration of the parole, as DHS has in the past done," 90 Fed. Reg. at 13619-20 ("Any lengthening of the wind-down period will increase

---

[1] *See* Alejandro Doe Decl., Doc. No. 24-1 (Plaintiff whose parole period will be cut short by approximately 461 days); Carlos Doe. Decl., Doc. No. 24-4 (same); Miguel Doe Decl., Doc. No. 64-4 (same); Lucia Doe Decl., Doc. No. 64-3 (442 days); Ana Doe Decl., Doc. No. 24-2 (305 days); Armando Doe. Decl., Doc. No. 24-3 (same); Daniel Doe Decl., Doc. No. 64-5 (283 days); Andrea Doe Decl., Doc. No. 27-1 (39 days); *see also* Gabriela Doe Decl., Doc. No. 64-6 (U.S. citizen cousin and sponsor of four of the individual Plaintiffs whose parole has been cut short); Norma Lorena Dus Decl., Doc. No. 71-2 (sponsor and sister of Plaintiff Lucia Doe); Haitian Bridge Alliance ("HBA") Decl., Doc. No. 71-3 (describing the effects of the mass termination of CHNV parole on Plaintiff Haitian Bridge Alliance).

[2] Plaintiffs challenge the Federal Register Notice as a whole, *see* Second Am. Compl., Doc. No. 68 ¶¶ 308-21, 331-41, 349-63, but only seek preliminary relief of its attempt to terminate prematurely the existing grants of parole.

the likelihood that additional CHNV parolees are no longer subject to expedited removal."). If the Secretary's action is allowed to take effect, hundreds of thousands of law-abiding and hardworking noncitizens across the country will be rendered removable and legally unemployable, and all on the same day in late April, inflicting irreparable injury on a breathtaking scale.

## BACKGROUND

Plaintiffs assume the Court's familiarity with the proceedings to date and will endeavor not to repeat their prior brief and exhibits related thereto, which are incorporated by reference.[3] Suffice it to say for present purposes that, without any public announcement or acknowledgement, DHS has: (1) indefinitely suspended the CHNV parole processes (among others) no later than January 23, 2025, based solely on the Secretary's erroneous legal conclusion that they were unlawful, *see* Higgins email dated Jan. 23, 2025, Doc. No. 41-2; Huffman Mem. dated Jan. 20, 2025, Doc. No. 41-1; and (2) indefinitely suspended adjudicating CHNV (and other) parolees' requests for other immigration benefits, including those authorizing employment and/or additional periods of lawful presence, on an unknown date but sometime before trying to justify that action in mid-February, *see* Davidson Mem. dated Feb. 14, 2025, Doc. No. 41-3. On March 24, the Court heard argument on Plaintiffs' request for an emergency preliminary injunction and stay of the two indefinite suspensions to at least require DHS to restart processing of parole applications already conditionally approved and of other pending immigration benefit requests (including for re-parole) of parolees already in the United States. A further hearing on that motion is scheduled for April 7, 2025. Doc. No. 58.

_____

[3] *See* Pls.' Mem. in Supp. of Emerg. Mot. for Prelim. Inj. & Stay, Doc. No. 25; Exhibits 1-50, Doc. Nos. 24-1 through 24-50.

DHS's formal notification that the Secretary had decided to end the CHNV parole processes and prematurely terminate all validly issued grants of parole and related employment authorization related employment authorization was officially published last week. Doc. No. 71-1 (hereinafter, "March 25 FRN" or the "Notice"); *see also* Pls.' Notice dated Mar. 21, 2025, Doc. No. 45 (submitting pre-publication version). The Notice acknowledges that DHS created the CHNV programs based on the prior Secretary's judgment that they would both "provide a significant public benefit for the United States and address the urgent humanitarian reasons underlying the high levels of migration from those countries," 90 Fed. Reg. at 13612; and that President Trump had specifically ordered they nonetheless be terminated, *id.* at 13611; but elsewhere says that the Secretary "is terminating the CHNV parole programs" "in her discretion," *id*. at 13612. The March 25 FRN does not acknowledge that DHS had already indefinitely suspended the CHNV processes and the adjudication of immigration benefits for CHNV parolees.[4]

As to DHS's prior conclusion that the CHNV processes had provided a "significant public benefit," the March 25 FRN acknowledged some (but not all) of DHS's prior reasoning, stating that it now believes that they "are not necessary to reduce levels of illegal immigration, did not sufficiently mitigate the domestic effects of illegal immigration, are not serving their intended purposes, and are inconsistent with th[is] Administration's foreign policy goals." 90 Fed. Reg. at 13612. In contrast, the March 25 FRN says DHS now disagrees about its prior conclusion that the CHNV processes were independently justified by the "urgent humanitarian reasons" prong of 8 U.S.C. § 1182(d)(5)(A), based on its current interpretation of the parole statute. *See* 90 Fed. Reg. at 13612 ("Regarding previous arguments or determinations that these programs were consistent

---

[4] Unlike the other parole processes at issue in this case (but not this motion), re-parole was not available through the CHNV processes. *See* 90 Fed. Reg. at 13614 n.24.

with the requirement of 'urgent humanitarian reasons' for granting parole, DHS believes that consideration of any urgent humanitarian reasons for granting parole is best addressed *on a case-by-case basis consistent with the statute*, and taking into consideration each alien's specific circumstances." (emphasis added)); *see also* Doc. No. 41-1 (setting out that interpretation).

Beyond prospectively terminating the CHNV processes, the March 25 FRN described how DHS would handle several issues as to particular populations of applicants and recipients inherently impacted by the Secretary's termination decision. The Notice states that "there have been approximately 2,970,000 Forms I-134 and I-134A filed with USCIS since October, 2022."[5] 90 Fed. Reg. at 13617 (footnote omitted); *id.* n.58. Of those, USCIS has "confirmed" eligibility in approximately 22 percent of the applications (642,410) and has determined that another 6 percent (181,820) failed to demonstrate eligibility (which the FRN calls "non-confirmed"), with the remaining 2.14 million (some 72 percent) still pending review. *Id.* at 13617 n.58 & accompanying text. The March 25 FRN states that applications pending review will be "issue[d] a notice of non-confirmation." *Id.* at 13618. For applications "confirmed," but where the beneficiary has not yet traveled to the United States, DHS will "rescind the confirmation" and "issue updated notices of non-confirmation." *Id.* at 13618.

---

[5] As the Notice explains, USCIS used Form I-134 for applications to the Venezuela-only CHNV precursor (sometimes referred to as "P4V") announced in October 2022 but switched to using Form I-134A when the CHNV processes were established in January 2023. 90 Fed. Reg. at 13617 n.57; *see also* Sec. Am. Compl. ¶ 96. The March 2025 FRN fails to mention that Form I-134A was *also* used for Family Reunification Parole (FRP) processes established after CHNV or that both forms were also used for the Uniting for Ukraine (U4U) parole process established before CHNV, in April 2022; those omissions make DHS's proffered statistics regarding the CHNV processes less reliable but its intentions regarding U4U and FRP—already singled out in the February 14 Davidson memorandum—even clearer. *See* 90 Fed. Reg. at 13618 ("DHS intends to issue a notice of non-confirmation for *all* remaining pending Forms I–134A. DHS will also rescind the confirmation of *all* Form I–134A that were previously confirmed and issue updated notices of non-confirmation for any potential beneficiaries who have not yet traveled to a [port of entry] POE to seek parole." (emphases added)).

The March 25 FRN addresses three further distinct groups. First, for the undisclosed number of "confirmed" applications where the beneficiary has taken the additional step of applying for "advance travel authorization" (ATA)—the rough parole equivalent of a visa authorizing a noncitizen to come to a U.S. port of entry to seek admission, except parole does not count as an admission—the Notice states "DHS intends to cancel all pending applications for [ATA]." *Id.* at 13618.

Second, the March 25 FRN strongly suggests that, for an unknown number of "confirmed" applications in which the beneficiary had received an approved ATA (which are valid for 90 days), DHS cancelled those ATAs some weeks ago. *See id.* at 13618 (asserting that there "are no currently approved ATAs" for CHNV parolees); *id* at 13618 n.67 & accompanying text (notwithstanding that prior assertion, stating that DHS "considered the alternative of allowing any approved ATAs to remain in place until they were used or expired by their terms," but "would not pursue this route" "[e]ven if there were currently approved ATAs"); *id.* at 13618 n.66 (noting that the assertion of "no currently approved ATAs" was based on Office of Homeland Security Statistics ("OHSS") "analysis of advance travel authorization data . . . valid as of February 27, 2025," but without explaining why DHS chose that date).[6]

Third, the March 25 FRN states that "as one aspect of the termination of the CHNV parole programs," any grants of parole to the "approximately 532,000 inadmissible" [sic] CHNV parolees that "ha[ve] not already expired on April 24, 2025 will terminate on that date." *Id.* at 13618. The Notice states that "the Secretary has determined that the purposes" of those grants of parole "have

---

[6] *Compare with* 90 Fed. Reg. at 13612 n.6 (providing data from OHSS analysis of the identical source for a different purpose, but using that data "valid as of January 22, 2025"); *and id.* at 13617 n.58 (noting that statistics regarding the numbers of Forms I-134/I-134A filed, confirmed, non-confirmed, and pending review are based on "OHSS analysis of . . . data as of January 22, 2025").

been served because" the CHNV programs are unnecessary for border security, have had too much of a "domestic impact," and are "inconsistent with this Administration's foreign policy goals." *Id.* at 13619 n.70.

DHS acknowledged in the March 25 FRN that, to terminate an individual's parole on the Notice's stated basis, its regulations require "written notice to the [parolee]," *id.* at 13620 (quoting 8 C.F.R. § 212.5(e)(2)(i) (emphasis omitted)), but the Notice claims DHS "has determined that publication of this notice in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance." *Id.* ("Federal Register Notice as Constructive Notice"). The Notice also states that "after termination of the parole," any associated employment authorization will be "revoke[d]" pursuant to regulation, *id.* at 13619 (citing 8 C.F.R. § 274a.14(b)), but relies on the same constructive notice to satisfy the DHS regulatory requirement to provide "written notice of intent to revoke the employment authorization" while ignoring that DHS regulations afford an individual "a period of fifteen days from the date of service of the notice within which to submit countervailing evidence." 8 C.F.R. § 274a.14(b)(2).

DHS said it considered two alternatives to cutting short the period of parole and employment authorization of CHNV parolees: "a longer than 30-day wind-down period" and simply "permitting CHNV participants' parole to remain in effect until the natural expiration of the parole, as DHS has in the past done with some parole terminations." 90 Fed. Reg. at 13619-20 (citation omitted). DHS explained that it rejected both alternatives for the same reason: its "strong interest in preserving the ability to initiate expedited removal proceedings to the maximum extent possible." *Id.* at 13620. According to the March 25 FRN, DHS concluded that it must truncate parole because "[e]xpedited removal is available only when an alien has not been continuously

present in the United States for at least . . . two years," *id.* at 13619 (citing 8 U.S.C. § 1225(b)(1)(iii)(II)), "[a]ny lengthening of the wind-down period will increase the likelihood" that CHNV parolees will "accrue more than two years of continuous presence in the United States," which "would essentially foreclose DHS's ability" to remove them via expedited removal, *id.* at 13620 (citing the same expedited removal provision).[7]

Finally, the March 25 FRN confirms that DHS intends to "remove promptly" CHNV parolees lacking authorization to remain in the United States, *id.* at 13618, advising those soon to be in that situation that they "must depart the United States before their parole termination date." *Id.* at 13618-19; *id.* at 13611 (same). As noted above, the Notice cuts short valid grants of parole of eight Plaintiffs, five of whom were sponsored by two other Plaintiffs, *see supra* n.1, and more than five hundred thousand other people who are similarly situated.

## LEGAL STANDARD

Plaintiffs' request for a preliminary injunction and their request for a stay under 5 U.S.C. § 705 are both governed by the familiar four-factor *Winter* test. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 496 F. Supp. 3d 600, 609 (D. Mass. 2020).

## ARGUMENT

## I. PLAINTIFFS HAVE STANDING, THEIR CLAIMS ARE JUSTICIABLE, AND DEFENDANTS' ACTION IS REVIEWABLE

This Court has jurisdiction to consider Plaintiffs' claims because Plaintiffs have standing and fall within the zone of interests of the INA; the Plaintiffs challenge final agency action that is

---

[7] In places, the March 25 FRN erroneously cites to INA section 235 and section 1235 of Title 8 of the U.S. Code, rather than INA § 225 and 8 U.S.C. § 1225. *See* 90 Fed. Reg. at 13619-20.

not committed to agency discretion; and 8 U.S.C. § 1252(a)(2)(B)(ii) does not preclude judicial review of Plaintiffs' claims.

*Jurisdictional standing*. It is beyond dispute that the March 25 FRN inflicts harm on Plaintiffs Armando Doe, Alejandro Doe, Ana Doe, Carlos Doe, Andrea Doe, Lucia Doe, Miguel Doe, and Daniel Doe; as well as the beneficiaries sponsored by Plaintiffs Sandra McAnany, Kyle Varner, Wilhen Pierre Victor, Gabriela Doe, and Norma Lorena Dus; and HBA, which has provided legal and humanitarian services for thousands of CHNV parole beneficiaries. The March 25 FRN terminates the CHNV parole processes and prematurely cuts short the grants of parole and work authorization of hundreds of thousands of CHNV parole beneficiaries. These harms, which are concrete, imminent, and directly traceable to the March 25 FRN more than adequately establish Plaintiffs' standing to challenge the FRN. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

*Prudential standing*. It is likewise beyond serious dispute that the CHNV sponsor Plaintiffs (Sandra McAnany, Kyle Varner, Wilhen Pierre Victor, Gabriela Doe, and Norma Lorena Dus), as well as organizational plaintiff HBA, assert interests that fall within the zone of interests protected by the INA. The zone of interests prudential analysis only forecloses a lawsuit "when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) (internal punctuation and citation omitted). The interests of sponsor Plaintiffs and HBA in welcoming and supporting parole beneficiaries to this country are core to the operation of the CHNV parole processes and easily

meet this test, which is "not meant to be especially demanding" in light of "Congress's evident intent when enacting the APA to make agency action presumptively reviewable." *Id*.[8]

*Statutory jurisdiction*. Contrary to Defendants' earlier suggestion, Doc. No. 42 at 10, the jurisdiction-stripping provision in 8 U.S.C. § 1252(a)(2)(B)(ii) has no application in this case, because Plaintiffs are challenging overarching policy, not individual decisions. *Roe v. Mayorkas*, No. 22-cv-10808-ADB, 2023 WL 3466327, at *8-9 (D. Mass. May 12, 2023) (collecting cases holding that claims "challenging changes in policy"—including policies concerning the discretionary grant of parole—are "reviewable under the APA."); *see also LaMarche v. Mayorkas*, 691 F. Supp. 3d 274, 277-78 (D. Mass. 2023); *cf. DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 17-19 (2020) (holding that the Secretary's decision to end DACA was reviewable under the APA, even though deferred action is discretionary). For the same reason, Defendants' previous reliance on *Patel v. Garland*, 596 U.S. 328, 338 (2022), Doc. No. 42 at 10, is misplaced, as it concerned review of a particular discretionary decision.

*Final agency action not committed to agency discretion*. The March 25 FRN is subject to judicial review under the APA. As its plain language states, the March 25 FRN terminates all individual grants of CHNV parole and work authorization as of April 24, 2025. These actions plainly reflect the consummation of agency decision-making and have immediate and concrete legal consequences for Plaintiffs, making them reviewable. *See* 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). And while individual parole decisions are discretionary, the Supreme Court has explicitly said that DHS's parole policies are subject to APA review. *Biden v. Texas*, 597

---

[8] Defendants claim that the sponsor Plaintiffs and HBA are "not the object of a challenged regulatory action" or the parole statute, Doc. No. 42 at 19, but courts "do not require any indication of congressional purpose to benefit the would-be-plaintiffs." *Match-E-Be-Nash-She-Wish*, 567 U.S. at 225 (internal quotation marks omitted).

U.S. 785, 806-07 (2022) (citing 8 U.S.C. § 1182(d)(5)(A)); *accord LaMarche v. Mayorkas*, 691 F.

Supp. 3d at 277-78; *Roe*, 2023 WL 3466327, at *8-9.

## II.   PLAINTIFFS ARE LIKELY TO SUCCEED IN PROVING THAT THE MARCH 25 FRN'S *EN MASSE* TRUNCATION OF ALL VALID GRANTS OF CHNV PAROLE WAS UNLAWFUL

Plaintiffs are likely to succeed on several claims as to the March 25 FRN, all of them

apparent on the face of the Notice and each of them independently justifying class-wide

preliminary relief as to the Notice's treatment of remaining valid grants of CHNV parole.

Specifically, the March 25 FRN is contrary to statute in three distinct ways and contrary to DHS's

separate regulations regarding the termination of parole and of employment authorization, both of

which require individualized "written notice" to the parolee.

To be clear: Plaintiffs' priority is obtaining class-wide relief as expeditiously as possible,

and to grant that relief, the Court need only decide that Plaintiffs are likely to succeed on any one

of the following bases and need not decide the others.

**1.**   First, the March 25 FRN's explanation that DHS decided against "permitting CHNV

participants' parole to remain in effect until the natural expiration of the parole" or a longer wind-

down period—because doing so would "essentially foreclose" DHS's ability to deport them via

expedited removal by facilitating their continued presence in the United States beyond the two-

year limit for those shortcut procedures, *see* 90 Fed. Reg. at 13619-20 (discussing 8 U.S.C. §

1225(b)(1)(iii)(II))—is based on an obvious legal error. Contrary to the Notice's representations,

8 U.S.C. § 1225(b)(1)(iii)(II) does not permit subjecting the CHNV parolees to expedited removal

*no matter how long they have been in the United States.* By its own terms, that provision only

authorizes using expedited removal as to a noncitizen "who has not been admitted *or paroled* into

10

the United States." 8 U.S.C. § 1225(b)(1)(iii)(II) (emphasis added). By definition, the CHNV parolees "ha[ve] been . . . paroled into the United States."[9] *Id.*

"It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Bollat Vasquez v. Mayorkas*, 520 F. Supp. 3d 94, 108 (D. Mass. 2021) (citation omitted). Given that the Secretary's decision to cut short all existing grants of parole via the CHNV processes was based on an erroneous understanding of the expedited removal statute—and nothing else, 90 Fed. Reg. at 13619-20 —Plaintiffs are likely to succeed in proving that decision unlawful.

**2.** The Secretary's decision to truncate all existing grants of CHNV parole as of April 24 was also contrary to the statutory requirement that the parole authority be exercised "only on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A); *accord Biden v. Texas*, 597 U.S. at 806-07. The Notice recites the statutory "case-by-case" requirement in its Background section, 90 Fed. Reg. at 13611-12, but does not apply or acknowledge it when later stating that Secretary Noem has concluded *en masse* that "the purposes" of every single grant of parole via all four CHNV processes now "have been served." *Id.* at 13619 n.70. Similarly, even though the Background section admonishes that parole determinations should "tak[e] into account each alien's unique circumstances," *id.* at 13612, the Secretary did not do so; instead, she ignored all differentiating considerations, including the amount of time remaining on each person's parole period (be it a day

---

[9] CHNV parolees also cannot be subjected to the other basis for expedited removal, which (among other limitations) can only be applied to "an alien. . . who is arriving in the United States," 8 U.S.C. 1225(b)(1)(i), because CHNV parolees have already arrived in the United States and are now living here. *See Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 111 (D. Mass. 2020) ("Under the statutory language, if [noncitizen] applicants [for admission] are apprehended while crossing the border (whether or not at a check point), they are 'arriving' applicants under the statute, and if apprehended at some point thereafter, they are not 'arriving,' but rather 'alien[s] present in the United States who [have] not been admitted.'" (quoting 8 U.S.C. § 1225(a)(1)) (last two alterations in original)).

or twenty-two months), whether they have any pending applications for a different immigration benefit, or any other individualized other circumstances (be it social, economic, medical, legal, or anything else).

Defendants have previously argued that the statute "only imposes requirements on *granting* parole" and "imposes no limits . . . on *denying*" or terminating parole, Doc. No. 42 at 12 (emphases in original), but the Secretary's decision to change the expiration date of all valid grants of CHNV parole to April 24, 2025 was neither a denial nor a termination *per se*, but rather an *en masse* alteration of the conditions under which all those individuals were paroled, contrary to the statute. *See* 8 U.S.C. § 1182(d)(5)(A) ("The [Secretary] may . . . in h[er] discretion parole into the United States temporarily *under such conditions as [s]he may prescribe only on a case-by-case basis* . . . any alien applying for admission to the United States" (emphasis added)). Plaintiffs are thus likely to succeed in proving that the Secretary violated the parole statute's case-by-case requirement.

**3.** Plaintiffs are also likely to succeed in proving that the Secretary's broader decision to terminate the CHNV parole processes was based on an erroneous legal interpretation of the parole statute—specifically, the interpretation in Acting Secretary Huffman's January 20 memorandum, Doc. No. 41-1, the legal errors of which are discussed at length in Plaintiffs' prior motion for preliminary injunction, Doc. No. 25 at 14-19, In sum, the March 25 FRN acknowledged that DHS had previously concluded that the CHNV processes were independently supported by both grounds on which parole is statutorily authorized (for "urgent humanitarian reasons or significant public benefit"). *See* 90 Fed. Reg. at 13612. In explaining why the Secretary no longer believed the CHNV processes to be justified by the statutory criteria, however, the Notice said that DHS's change of heart regarding the "urgent humanitarian reasons" for CHNV parole rested on its novel interpretation of the parole statute, which tracks the reasoning of (but does not cite) the January 20

Huffman memorandum. *See id.* ("Regarding previous arguments or determinations that these programs were consistent with the requirement of 'urgent humanitarian reasons' for granting parole, DHS believes that consideration of any urgent humanitarian reasons for granting parole is best addressed *on a case-by-case basis consistent with the statute*, and taking into consideration each alien's specific circumstances." (emphasis added)).

As Plaintiffs have previously explained, the Huffman memorandum's interpretation of the parole statute is erroneous. *See* Pls.' Mem. in Supp. of [First] Prelim. Inj., Doc. No. 25 at 14-19. The March 25 FRN's application of that erroneous interpretation to conclude that the CHNV parole processes are not supported by urgent humanitarian reasons is thus unlawful as well, and regardless of what the Notice says about the Secretary's conclusion that those processes do not provide a significant public benefit.

**4.** In addition to the distinct ways that the March 25 FRN is not in accordance with statutory law, it is also contrary to the regulatory authority that parole should be terminated upon "written notice," which DHS claimed to be exercising. *See* 90 Fed. Reg. at 13618 n.68 (quoting 8 C.F.R. § 212.5(e)(2)(i)); *id.* at 13620 (same). The Notice asserted that "publication of this notice in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance," *id.* at 13620, but it cited in support only one inapplicable statute and two inapposite cases. The cited statute provides in relevant part that the "filing of a document" that is "required or authorized to be published" in the Federal Register by 44 U.S.C. § 1505 "is sufficient to give notice of the contents of the document" "except in cases where notice by publication is insufficient in law." 44 U.S.C. § 1507. Even assuming that the March 25 FRN was published pursuant to a requirement or authorization in 44 U.S.C. § 1505— which is far from obvious—the parole regulation's requirement of written notice to terminate

parole means that "notice by publication is insufficient in law," and so 44 U.S.C. § 1507 is inapplicable by its own terms. The two cases the Notice cited in support, meanwhile, just say the same thing as § 1507,[10] making them equally irrelevant to DHS's contention that publication in the Federal Register is "constructive notice" that "satisfies the requirement that DHS provide written notice upon the termination of parole." 90 Fed. Reg. at 13620 (citing 8 C.F.R. § 212.5(e)(2)(i)). DHS may of course change its regulation, but it cannot ignore its rules of process while they remain on the books, as it did here.[11] *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954).

DHS also said it was exercising its regulatory authority "to revoke parole-based employment authorization" under 8 C.F.R. § 274a.14(b), and it similarly disregarded the employment authorization regulation's requirements. *See* 90 Fed. Reg. at 13619 ("DHS has determined that, after termination of the parole, the condition upon which the employment authorization was granted no longer exists and thus DHS intends to revoke parole-based employment authorization consistent with those revocation on notice procedures" (citing 8 C.F.R. § 274a.14(b)). Under the employment authorization regulation, DHS cannot revoke any parolee's employment authorization without first "serv[ing] written notice of intent to revoke the employment authorization," "cit[ing] the reasons indicating that revocation is warranted," and

---

[10] *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947) ("Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." (citing 49 Stat. 502, a precursor to 44 U.S.C. § 1507)); *Friends of Sierra R.R., Inc. v. I.C.C.*, 881 F.2d 663, 667–68 (9th Cir. 1989) ("Publication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance." (citing 44 U.S.C. § 1507 and *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. at 384-85)).

[11] The March 25 FRN also said that DHS will provide "notice to each parolee through their USCIS online account," baldly asserting that it, too, "constitute[s] 'written notice to the alien' under 8 C.F.R. § 212.5(e)(2)(i)," 90 Fed. Reg. at 13620, but there is seemingly no requirement that the CHNV parolees check those accounts or even to maintain access to them.

14

affording the noncitizen "a period of fifteen days from the date of service of the notice within which to submit countervailing evidence." 8 C.F.R. § 274a.14(b)(2). *Id.* In the March 25 FRN, DHS purported to terminate *en masse* work authorizations without serving written notice of intent to revoke, citing reasons why revocation was appropriate, or affording an opportunity to submit countervailing evidence. Importantly, the work authorization regulation says the agency decision following that process "shall be final and no appeal shall lie from the decision to revoke the authorization," *id.*, further underscoring the importance of DHS adhering to its specific procedural protections before exercising its discretion to revoke individuals' means of providing for themselves. *See Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) ("Contrary to the INS's position, we do not think it is significant that adjustment of status [the immigration benefit at issue] is a discretionary form of relief. A right to seek relief is analytically separate and distinct from a right to the relief itself. Consequently, an alien is not precluded from having a vested right in a form of relief merely because the relief itself is ultimately at the discretion of the Executive Branch.") (citing, *inter alia*, *Accardi*, 347 U.S. at 268).

## III.  PRELIMINARY RELIEF IS NECESSARY TO STOP IMPENDING IRREPARABLE INJURY THAT IS CERTAIN TO OCCUR

Plaintiffs face imminent and irreparable harm if the March 25 FRN is not enjoined before April 24, 2025, when "[t]he temporary parole period of [individuals] in the United States under the CHNV parole programs and whose parole has not already expired by [that date] will terminate." 90 Fed. Reg. at 13611. On April 24, Plaintiffs Armando Doe, Alejandro Doe, Ana Doe, Carlos Doe, Andrea Doe, Lucia Doe, Miguel Doe, and Daniel Doe, as well as beneficiaries sponsored by Plaintiffs Sandra McAnany, Kyle Varner, Wilhen Pierre Victor,  Gabriela Doe, and Norma Lorena Dus, and thousands of CHNV beneficiaries served by HBA, will lose their lawful status; lose their work authorization and their ability to work here legally, *see* 90 Fed. Reg. at

15

13619; and be immediately at risk for removal,[12] *see id.* at 13618, which for many of these individuals will almost certainly result in family separation, a return to persecution and potentially death, and/or the inability to pursue the safety and security of alternate legal status here in the United States. Damages cannot adequately address these kinds of injuries.

*Loss of lawful status.* If allowed to remain in effect through April 24, 2025, the March 25 FRN will prematurely cut short the grants of parole of Plaintiffs Armando Doe, Alejandro Doe, Ana Doe, Carlos Doe, Andrea Doe, Lucia Doe, Miguel Doe, and Daniel Doe; the sponsored beneficiaries of Plaintiffs Sandra McAnany, Kyle Varner, Wilhen Pierre Victor, Gabriela Doe, and Norma Lorena Dus; and hundreds of thousands of similarly situated individuals. *See* n.1, *supra*. For some Plaintiffs, like Alejandro Doe, Carlos Doe, Lucia Doe, and Miguel Doe, this represents a loss of over a year of lawful status and the ability to live and work legally in the United States. *Id*. What's more, because Defendants have indefinitely suspended the processing of all applications for immigration benefits filed by or on behalf of CHNV parolees, Plaintiffs and other sponsored CHNV beneficiaries will be without lawful status in the United States starting April 24, 2025. For some of these parole beneficiaries, moreover, losing their lawful status means that they will begin accruing unlawful presence, which has serious negative immigration consequences that can include being barred from the United States. *See* 8 U.S.C. § 1182(a)(9)(B).

---

[12] Although the March 25 FRN asserts that "DHS intends to prioritize for removal" only those CHNV parole beneficiaries without any pending applications for alternate legal status in the United States, 90 Fed. Reg. 13619, that assertion is unenforceable and, more importantly, fundamentally at odds with Executive Order No. 14159 direction to the Secretary and the Attorney General to "prioritize the prosecution of criminal offenses related to the . . . continued unauthorized presence of aliens in the United States," 90 Fed. Reg 8443, 8444 (Jan. 20, 2025); and with the March 25 FRN itself, which justifies cutting short *all* CHNV parole beneficiaries' grants of parole— including of those individuals with pending requests for other relief—to "effectuate their prompt removal." 90 Fed. Reg. 13619.

*Loss of work authorization.* The premature termination of CHNV parole for Plaintiffs and other sponsored CHNV beneficiaries also means the premature termination of work authorization and the ability to provide for oneself and one's family. Losing work authorization has life-altering negative consequences, from forcing Alejandro Doe and his family "to break apartment leases we have entered into, rendering us homeless," Doc. No. 24-1 ¶ 15; to Armando Doe no longer being able to send money to pay for his parents' medical appointments and living expenses, Doc. No. 24-3 ¶ 25, to Lucia Doe depleting her savings and becoming a greater financial burden on her siblings, Doc. No. 64-3 ¶14. All CHNV parole beneficiaries have been forced to confront the likelihood that they will "lose everything we have worked so hard to achieve" during their time here in the United States. Doc. No. 24-1 ¶ 15. "Because of this fear," Alejandro Doe and his family "have been sharing [] bank account passwords with one another in case anything were to happen." *Id.; see also* 71-3 ¶ 12.

*Consequences of removal.* For many CHNV parolees, including Plaintiffs Armando Doe, Alejandro Doe, Ana Doe, Carlos Doe, and Andrea Doe, removal to their home countries will almost certainly result in a return to persecution and even death. *See, e.g.*, Doc. Nos. 24-1 ¶¶ 6-8; 24-2 ¶ 17; 24-3 ¶ 11; 24-4 ¶¶5, 18; 27-1 ¶¶ 3-4; 71-3 ¶ 2. Moreover, Plaintiffs Armando Doe, Alejandro Doe, Ana Doe, Carlos Doe, Andrea Doe, Lucia Doe, and Miguel Doe, as well as the family member beneficiaries of Plaintiffs Wilhen Pierre Victor, face abrupt separation from close family members here in the United States if any one of them is apprehended and removed without their family. *See* Doc. Nos. 24-1 ¶¶ 3, 15; 24-2 ¶¶ 3, 11; 24-3 ¶¶ 3, 23; 24-4 ¶ 2; 26-11 ¶¶ 3, 15; 26-19 ¶¶ 12-13; 64-4 ¶ 3; 64-3 ¶ 3; 71-2 ¶¶ 7, 13; *Leiva-Perez v. Holder*, 640 F.3d 962, 969-70 (9th Cir. 2011) (per curiam) (recognizing that "important [irreparable harm] factors include separation from family members" (cleaned up)).

17

Each of these harms represents a shock and a betrayal to parole beneficiaries who followed the rules to be able to come to the United States through a lawful pathway to find opportunity, build a life here, and contribute to their families and communities. *See, e.g.*, Doc. No. 24-1 ¶ 15 ("After all my family's sacrifice and efforts to follow the law . . . having our parole cancelled, losing work authorization, and being subject to deportation feels like a betrayal. It would be devastating."). Each of these harms, independently and collectively, amounts to "a substantial injury that is not accurately measurable or adequately compensable by money damages." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000).

## IV.    THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST WEIGH HEAVILY IN FAVOR OF PRELIMINARY EQUITABLE RELIEF

The balance of equities and the public interest, which merge here, likewise support Plaintiffs' request for a preliminary equitable relief. *See Winter*, 555 U.S. at 20; *Nken v. Holder*, 556 U.S. 418, 435 (2009). In contrast to the concrete and irreparable injury facing Plaintiffs and hundreds of thousands of similarly situated individuals, Defendants have presented only "an abstract assertion about harm to executive authority over immigration matters." *Pacito v. Trump*, __ F. Supp. 3d __, No. 2:25-cv-255-JNW, 2025 WL 655075, at * 24 (W.D. Wash. Feb. 28, 2025); *see, e.g.*, Doc. No. 42 at 28. While the President has some discretion in identifying and pursuing his own immigration policy goals, "[t]he public interest is not served by maintaining executive actions that conflict with federal law." *Pacito*, 2025 WL 655075, at * 24. Moreover, the States' Amicus Brief highlights the net *positive* impact of humanitarian parole pathways such as the CHNV parole processes, noting that parole beneficiaries "particularly benefit the national, state, and local economies" by "contributing positively to our workforces and growing our economies, especially in businesses around the country facing persistent labor shortages." Amicus Curiae Br. of N.Y., et al., Doc. No. 50 at 11-12.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction and stay of the Secretary's *en masse* truncation of the remaining valid periods of parole granted through the CHNV processes, and to waive Rule 65(c)'s security requirement pursuant to its discretion to do so in "suits to enforce important federal rights or public interests." *Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers*, 679 F.2d 978, 999-1000 (1st Cir. 1982) (internal quotation marks omitted), *rev'd on other grounds*, 467 U.S. 526 (1984).

Dated: March 27, 2025

Respectfully submitted,

*/s/ John A. Freedman*

Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (*pro hac vice*)
Hillary Li (*pro hac vice*)
Laura Flores-Perilla (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
Katie Weng (*pro hac vice* pending)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
 Washington, D.C. 20001-3743
 Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com
katie.weng@arnoldporter.com

H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, Fl. 53
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com

Anwen Hughes (*pro hac vice*)
**HUMAN RIGHTS FIRST**
75 Broad St., 31st Fl.
New York, NY 10004
Telephone: (212) 845-5244
HughesA@humanrightsfirst.org

Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com

Justin B. Cox (*pro hac vice*)
**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

Robert Stout (*pro hac vice*)
Sarah Elnahal (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
rob.stout@arnoldporter.com
sarah.elnahal@arnoldporter.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, John A. Freedman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 27, 2025

/s/ John A. Freedman
John A. Freedman