**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SVITLANA DOE, et al., | |
| *Plaintiffs*, | |
| v. | C.A. No: 1:25-cv-10495-IT |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, et al., | |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**<u>SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION</u>**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND AND PROCEDURAL HISTORY ......................................... 3

    A.      Factual Background ................................................................................. 3

    B.      Procedural History .................................................................................. 6

III.    THE PROPOSED CLASS ................................................................................. 7

IV.     ARGUMENT ...................................................................................................... 8

    A.      The Proposed Class Satisfies Rule 23(a) Requirements ......................... 9

        1.      The Proposed Class Meets the Numerosity Requirement......................... 9

        2.      The Proposed Class Satisfies the Commonality Requirement.................. 11

        3.      The Proposed Class Meets the Typicality Requirement ........................... 13

        4.      The Proposed Class is Adequately Represented ...................................... 15

    B.      The Proposed Class Satisfies Rule 23(b)(2) Requirements ................... 17

V.      CONCLUSION ................................................................................................ 19

i

**TABLE OF AUTHORITIES**

**Page(s)**

<u>Cases</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................15

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985)........................................................................15

*Batalla Vidal v. Nielsen*,
    No. 16-CV-4756 Dkt. 342 (E.D.N.Y.. Nov. 14, 2020)..................................18

*Bowers v. Russell*,
    Civil Action No. 22-cv-10457-PBS, 2025 WL 342077 (D. Mass. Jan. 30,
    2025) ...............................................................................................................9

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..........................................................................................9

*Connor B. ex rel. Vigurs v. Patrick*,
    272 F.R.D. 288 (D. Mass. 2011)...................................................................17

*DeRosa v. Massachusetts Bay Commuter Rail Co.*,
    694 F. Supp. 2d 87 (D. Mass. 2010) .............................................................11

*Diggs v. Mici*,
    CIVIL ACTION NO. 22-cv-40003-MRG, 2024 WL 4425654 (D. Mass. Sept.
    30, 2024) .......................................................................................................11

*Donovan v. Philip Morris USA, Inc.*,
    268 F.R.D. 1 (D. Mass. 2010).........................................................................9

*Emami v. Mayorkas*,
    No. 1:18-cv-1587-JD Dkt. 252 (N.D. Cal. 2024 Mar. 26, 2024)..................18

*George v. Nat'l Water Main Cleaning Co.*,
    286 F.R.D. 168 (D. Mass. 2012)..............................................................10, 11

*Gomez v. Trump*,
    No. 1:20-CV-01419-APM Dkt. 151 (D.D.C. Sept. 30, 2020) .......................18

*In re Credit Suisse-AOL Sec. Litig.*,
    253 F.R.D. 17 (D. Mass. 2008).....................................................................13

*In Re New Motor Vehicles Canadian Export Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008).............................................................................12

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    230 F.R.D. 61 (D. Mass. 2005).............................................................................14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...............................................................................14

*John Doe #1 v. Trump*,
    Case No. 3:19-cv-1743-AI Dkt. 132 (D. Ore. Apr. 7, 2020)...................................18

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
    247 F.R.D. 253 (D. Mass. 2008).............................................................................12

*Payne v. Goodyear Tire & Rubber Co.*,
    216 F.R.D. 21 (D. Mass. 2003).................................................................................9

*Raposo v. Garelick Farms, LLC*,
    293 F.R.D. 52 (D. Mass. 2013).................................................................................11

*Shanley v. Cadle*,
    277 F.R.D. 63 (D. Mass. 2011).................................................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...................................................................................11, 18

**Constitutional Provisions**

U.S. Const. amend V.................................................................................................7

**Statutes**

5 U.S.C. § 706(2)(A)-(C)...................................................................................2, 6, 12

8 U.S.C. § 1182(d)(5)(A)...................................................................................1, 3, 17

**Other Authorities**

Fed. R. Civ. P.
    23......................................................................................................................8
    23(a)....................................................................................................8, 9, 16, 17
    23(a)(1)................................................................................................1, 9, 10, 11
    23(a)(2).................................................................................................2, 11, 13
    23(a)(3).........................................................................................................2, 13
    23(a)(4).........................................................................................................2, 15
    23(b)......................................................................................................8, 9, 17
    23(b)(2)........................................................................................................ *passim*
    23(g)..............................................................................................................16

President Trump's Executive Order 14159...............................................................1

iii

March 25 Federal Register Notice "Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans," 90 Fed. Reg. 13,611 .................................... *passim*

ABC News, *Trump Administration Terminates Program That United Thousands of Families Fleeing Violence in Central America*, ABC NEWS (Nov. 9, 2017, 7:32PM), https://abcnews.go.com/International/trump-administration-terminates-program-united-thousands-families-fleeing/story?id=51050866 .........................11

Julia Ainsley, *U.S. Has Admitted 271,000 Ukrainian Refugees Since Russian Invasion, Far Above Biden's Goal of 100,000*, NBC NEWS (Feb. 24, 2023, 11:15AM), https://www.nbcnews.com/politics/immigration/us-admits-271000-ukrainian-refugees-russia-invasion-biden-rcna72177 .................................10

Chellie Pingree 1st District of Maine, *Afghanistan Evacuation & Resettlement Efforts*, https://pingree.house.gov/resources/afghanistan.htm .................................10

Lisa Kobayashi, *The Success of Military Parole in Place*, KOBAYASHI LAW OFFICE (Nov. 30, 2018), https://www.lisakobayashi.com/the-success-of-military-parole-in-place/ .................................11

Camilo Montoya-Galvez, *1.5 Million Apply for U.S. Migrant Sponsorship Program With 30,000 Monthly Cap*, CBS NEWS (May 22, 2023, 9:56PM), https://www.cbsnews.com/news/us-migrant-sponsorship-program-cuba-haiti-nicaragua-venezuela-applications/ .................................10

Camilo Montoya-Galvez, *U.S. to Revoke Legal Status of More Than a Half-Million Migrants, Urges Them to Self Deport*, CBS NEWS (March 23, 2025, 4:24PM), https://www.cbsnews.com/news/u-s-to-revoke-legal-status-of-over-a-half-million-migrants-chnv/ .................................10

U.S. Citizenship and Immigration Services, Form I-131, Travel Document Applications for the Haitian Family Reunification Parole (HFRP) Program Applications Accepted, Denied, Approved, and Pending As of December 31, 2019, https://www.uscis.gov/sites/default/files/document/data/HFRP_performancedata_fy2020_qtr1.pdf .................................11

## I.      INTRODUCTION

Pursuant to the Court's March 26, 2025 Scheduling Order (Doc. No. 58), this motion supplements Plaintiffs' prior motion for class certification (Doc. No. 46) to expand the proposed class definition to include a subclass of individuals who have received parole through humanitarian parole processes which are subject to the March 25 Federal Register Notice "Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans," 90 Fed. Reg. 13,611 ("March 25 FRN") and subsequent similar actions by Defendants to rescind formally individual grants of parole on a categorical and *en masse* basis, as well as to appoint additional Class Representatives (Norma Lorena Dus, Gabriela Doe, Daniel Doe, Miguel Doe, and Lucia Doe).

As with the originally proposed class, the revised class includes the ***hundreds of thousands*** of individuals who have been or will imminently be harmed by the Defendants' actions to implement President Trump's Executive Order 14159 (titled "Protecting the American People Against Invasion") and Executive Order 14165 (titled "Securing Our Borders"), including Defendants' most recent action to rescind parole on an *en masse* basis through the March 25 FRN. Those actions rescind, in fact or in practice, numerous humanitarian parole processes established pursuant to 8 U.S.C. § 1182(d)(5)(A) that have been used for decades, the grants of parole under these processes to hundreds of thousands of individuals, while also ceasing adjudication of immigration benefits for parolees that would grant them more stable legal status in the United States. Members of the proposed class are all, or will soon be, harmed by the Defendant's actions, as described below, and collectively meet all requirements for class certification.

Rule 23(a)(1)'s numerosity requirement is satisfied because the proposed class includes hundreds of thousands of individuals and is so numerous as to make joinder impracticable. There are thousands of individuals who seek to sponsor parolees: the demand to sponsor beneficiaries through the U4U, CHNV, FRP, MPIP, and CAM parole processes has been overwhelming,

reaching 1.5 million sponsorship applications for the CHNV parole processes alone within the first few months those processes were made available. There are also hundreds of thousands of individuals who have been granted parole, who seek various benefits under the immigration laws, and hundreds of thousands of individuals whose parole grants are in the process of being rescinded.

Rule 23(a)(2)'s commonality requirement is satisfied because fundamental questions of fact and law are common across all class members, where the Defendants terminated parole processes and adjudication of immigration benefits for parolees with several strokes of a pen and in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)-(C), resulting in harm to all putative class members. Among other things, each of the challenged agency actions is predicated upon the same set of fundamental legal errors and is, accordingly, contrary to law under the APA.

Rule 23(a)(3)'s typicality requirement is satisfied because each member of the proposed class would bring the same claim and seek the same relief as the rest of the proposed class that stems from restoration of the *status quo ante*: restoration of the authorized periods of parole from prior to the March 25 FRN and consideration of pending parole requests, re-parole requests, and other requests for immigration benefits for parolees.

Rule 23(a)(4)'s adequacy requirement is satisfied because the Proposed Class Representatives (Svitlana Doe, Maksym Doe, Maria Doe, Alejandro Doe, Armando Doe, Ana Doe, Carlos Doe, Omar Doe, Kyle Varner, Wilhen Pierre Victor, Valentin Rosales Tabares, Marim Doe, Adolfo Gonzalez, Jr., Aleksandra Doe, Teresa Doe, Rosa Doe, Norma Lorena Dus, Gabriela Doe, Daniel Doe, Miguel Doe, and Lucia Doe) have claims that are the same as those of the proposed class and accordingly seek the same remedies. As such, there are no identified conflicts of interest within the proposed class, and the Proposed Class Representatives have demonstrated

their commitment to vigorously prosecuting the action, such as by providing detailed declarations that provide the factual bases for the present action.

Finally, Rule 23(b)(2) is satisfied because the Defendants have "acted or refused to act on grounds that apply generally to the class" through their rescission of lawful parole processes and termination of immigration benefits adjudications, which is why Plaintiffs seek uniform relief among the class members.

Accordingly, Plaintiffs respectfully request that the Court certify the proposed class.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

For approximately seventy years, the categorical and programmatic use of humanitarian parole, pursuant to the statutory authority at 8 U.S.C. § 1182(d)(5)(A), has been a core feature of our nation's immigration policy. *See* Sec. Am. Compl., Doc. No. 68 ¶ 52. Since its first use by President Eisenhower in 1956, humanitarian parole processes have become a commonly used method by which both Republican and Democratic Administrations to achieve important foreign policy goals, manage migration flows, and provide relief to migrants fleeing humanitarian, political, and environmental crises. There have been at least 125 "categorical" parole programs, and they have been used in every single Administration—including President Trump's first Administration. *Id.* at ¶ 47. The parole processes at issue in this case – CHNV, U4U, OAW, FRP, MPIP, and CAM – have been in use for years, if not decades, to similarly allow migrants to seek safety from warfare, political unrest, and relief from other displacement in their home country and reunite or remain with family members.

Starting on January 20, 2025, President Trump and his administration took a series of actions to terminate already existing humanitarian parole processes and suspend the ability of parolees to apply for changes of immigration status and benefits. These executive orders and the

relevant events that followed are described in the Second Amended Complaint (*see* Doc. No. 68) and summarized below.

1.      On January 20, 2025, the President signed Executive Order 14159, titled "Protecting the American People Against Invasion," directing the Secretary of Homeland Security and others to "rescind the policy decisions of the previous administration that led to the increased or continued presence of illegal aliens in the United States," including by "[e]nsuring that the parole authority . . . is exercised only on a case-by-case basis"; and Executive Order 14165, titled "Securing Our Borders," directing the Secretary of Homeland Security to terminate all "categorical parole programs," expressly referencing the CHNV parole processes.

2.      Also on January 20, 2025, Acting Secretary of Homeland Security Benjamine C. Huffman issued a memorandum (the "January 20 Huffman memorandum") to the heads of Immigration and Customs Enforcement ("ICE"), Customs and Border Protection ("CBP"), and U.S. Citizenship and Immigration Services ("USCIS"), titled "Exercising Appropriate Discretion Under Parole Authority," in which he authorized pausing and terminating "categorical parole programs." Acting Secretary Huffman directed the Department of Homeland Security ("DHS") staff to implement a completely novel agency policy—one that would treat the manner in which the parole authority has historically been used as unlawful.

3.      On January 20, 2025, Acting Commissioner of Customs and Border Protection ("CBP") Pete Flores issued a memorandum (the "January 20 Flores memorandum") restricting the CBP personnel authorized to grant parole and requiring that each instance of parole granted by any CBP official be reported to him and the Chief of Staff, along with a justification for the grant.

4.      A few days later, then-Acting Director of U.S. Citizenship and Immigration Services ("USCIS") Jennifer Higgins issued a directive (the "January Higgins directive")

prohibiting USCIS staff from making any further decisions on any request for, among other things, parole, or re-parole made through the U4U, CHNV, CAM, FRP, OAW, or other named parole processes. This directive also prohibited USCIS staff from making decisions on requests from U4U, CHNV, CAM, FRP, OAW, and other parolees for any immigration benefit, including for asylum, Temporary Protected Status ("TPS"), adjustment of status, or a visa, etc.

5.      On January 24, 2025, CBP notified airlines of President Trump's executive order to "terminate all categorical parole programs that are contrary to the policies of the United States" and identified the "impacted programs" as "includ[ing]" U4U, CHNV, and OAW, among others. CBP warned: "Carriers that transport aliens subject to the Presidential Executive Order may be subject to a carrier fine for each alien brought to the United States."

6.      On February 14, 2025, Acting Deputy Director of USCIS Andrew Davidson issued a memorandum (the "February 14 Davidson memorandum") to various USCIS directorates and program offices.  The memorandum directed USCIS personnel not to adjudicate immigration benefit requests (including requests for asylum or temporary protected status) filed by noncitizens who are or were paroled into the United States under various programs, including U4U; CHNV; and family reunification parole for nationals of Colombia, Cuba, Ecuador, El Salvador, Guatemala, Haiti, and Honduras.

7.      On March 21, 2025, DHS made public a Federal Register Notice entitled "Termination of Parole Processes: Cubans, Haitians, Nicaraguans, and Venezuelans," later published in the Federal Register on March 25, 2025 (the "March 25 FRN").  90 Fed. Reg. 13611 (Mar. 25, 2025). The March 25 FRN "terminat[es] the categorical programs for inadmissible aliens from Cuba, Haiti, Nicaragua, and Venezuela and their immediate family members" and further states that "[t]he temporary parole period of [individuals] in the United States under the CHNV

parole programs and whose parole has not already expired by April 24, 2025 will terminate on that date unless the Secretary makes an individual determination to the contrary." *Id.*

8.      The March 25 FRN confirms Defendants' intent to terminate humanitarian parole processes and make it easier to deport individuals paroled through these processes as quickly as possible: it states that "[f]ollowing this termination, and consistent with the direction in Executive Order 14165, DHS generally intends to remove promptly [individuals] who entered the United States under the CHNV parole programs who do not depart the United States before their parole termination date and do not have any lawful basis to remain in the United States." *Id.* at 13618. The March 25 FRN adds that "[t]o effectuate their prompt removal, the U.S. government may in its discretion initiate expedited removal proceedings where appropriate." *Id.* at 13619.

## B.    Procedural History

Plaintiffs filed their complaint on February 28, 2025, *see* Doc. No. 1, in the weeks following the issuance of Executive Orders 14159 and 14165 on January 20, 2025, and as the imminent danger caused by those executive orders to Plaintiffs began to materialize. Plaintiffs filed an amended complaint to add new plaintiffs on March 17, 2025, then filed a second amended complaint on March 27, 2025 to add new plaintiffs, factual allegations, and claims relating to the March 25 FRN.  Doc. Nos. 22, 68.  Plaintiffs filed an emergency motion for preliminary injunction and stay of administrative action on March 17, 2025, *see* Doc. No. 23, and then supplemented that motion on March 27, 2025. Doc No. 70. Plaintiffs filed a Motion to Certify Class on March 21, 2025, Doc. No. 46, which is being supplemented by the present motion to account for publication of the March 25 FRN and subsequent similar actions by Defendants to rescind formally individual grants of parole on a categorical and *en masse* basis.

Plaintiffs assert claims under the Administrative Procedure Act ("APA"), U.S.C. § 706(2)(A)-(C), alleging that each of the challenged agency actions comprising the termination of

parole processes was contrary to law and arbitrary and capricious, and that the suspension of benefits adjudication for parolees was contrary to law, *ultra vires*, and arbitrary and capricious. *See* Doc. No. 68 at 90-99. Plaintiffs also allege that the termination of parole processes and suspension of benefits adjudication failed to comply with the issuing agency's own regulations and also deprived them of notice and opportunity to be heard, and to have their claims adjudicated under the law, in violation of the Due Process Clause of the Fifth Amendment of the Constitution. *See id.* at 100. Plaintiffs, on behalf of the putative class, seek declaratory and injunctive relief from Executive Orders 14159 and 14165, the January 20, 2025 Huffman memorandum, the January Higgins directive, the February 14, 2025 Davidson memorandum, the March 25 FRN, and all DHS actions based thereon, and an order enjoining further implementation of these agency actions and directing Defendants to restore the *status quo ante* and restore authorized periods of parole from prior to the March 25 FRN, as well as resume adjudications of parole and/or re-parole requests under CHNV, OAW, U4U, CAM, MPIP, FRP, and other parole processes as well as other requests for immigration benefits for individuals paroled through those processes. *See id.* at 100-02.

III.    **THE PROPOSED CLASS**

The proposed class is defined as:

a)    All individuals with pending applications to sponsor a beneficiary for any humanitarian parole process, including but not limited to U4U, CHNV, FRP, MPIP, and CAM, which applications are subject to the January 20 Huffman memo and subsequent actions by Defendants to pause or otherwise terminate the processing of such applications (the "Sponsor Subclass");

b)    All individuals who have received parole through humanitarian parole processes, including but not limited to U4U, CHNV, OAW, FRP, MPIP, and CAM, which parole is subject to the March 25 FRN and subsequent similar actions by Defendants to rescind individual grants of parole on a categorical and *en masse* basis (the "Rescinded Parolee Subclass"); and

   c)    All individuals who have received humanitarian parole through already established humanitarian parole processes, such as the U4U, CHNV, OAW, FRP, MPIP, and CAM parole processes, with any pending applications for any additional immigration benefit, which applications are subject to the "administrative hold" set out in the February 14 Davidson memorandum, the January Higgins Directive, and other subsequent actions by Defendants to pause or otherwise terminate the processing of such applications (the "Immigration Benefits Subclass").

*See* Doc. No. 68 at 86.

Plaintiffs would exclude from the class definition any individuals or groups who choose to opt out of the class in order to seek relief in separate litigation.

The claims of the foregoing class are all based on the same nucleus of facts described above, and their claims would be fully and finally resolved by this Court's orders. All members of the foregoing class are subject to the suspension of immigration benefits adjudication for parolees (Immigration Benefits Subclass), subject to the *en masse* rescission of parole (the Rescinded Parolee Subclass), or are sponsors with pending applications for parole beneficiaries who are affected by the termination of the parole processes (Sponsor Subclass).

All claims are asserted on behalf of the class, all relief requested is based on Defendants' common course of conduct directed at the class, and all class members seek uniform relief, including restoration of: their authorized periods of parole from prior to the March 25 FRN, adjudications for pending parole requests and re-parole requests under U4U, CHNV, OAW, FRP, MPIP, CAM, and other parole processes, as well as other requests for immigration benefits for parolees.

## IV.    ARGUMENT

In order to certify a class under Rule 23, the Plaintiffs must satisfy the requirements under Rule 23(a) and fit into one of the categories under Rule 23(b). *See* Fed. R. Civ. P. 23.

Rule 23(a) requires the proposed class to satisfy four criteria:

   (1)    the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Bowers v. Russell*, Civil Action No. 22-cv-10457-PBS, 2025 WL 342077, at *2 (D. Mass. Jan. 30, 2025).

"The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Here, Plaintiffs seek certification of a class for injunctive and declaratory relief under Rule 23(b)(2). "A class qualifies for certification under Rule 23(b)(2) when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 11 (D. Mass. 2010) (quoting Fed. R. Civ. P. 23(b)(2)). "Doubts should be resolved in favor of certification, particularly in early stages of the litigation." *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003).

As demonstrated below, Plaintiffs satisfy each of the requirements for class certification under Rule 23(a) as well as the requirements under Rule 23(b)(2).

**B.    The Proposed Class Satisfies Rule 23(a) Requirements**

**1.    The Proposed Class Meets the Numerosity Requirement**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no threshold number of class members that automatically satisfies this requirement." *Shanley v. Cadle*, 277 F.R.D. 63, 68 (D. Mass. 2011). However, "[c]ourts have generally found that a class size of forty or more individuals will satisfy

the numerosity requirement." *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 173 (D. Mass. 2012).

Here, the proposed class easily meets the numerosity requirement. The Immigration Benefits Subclass alone far exceeds the forty (40) members required to meet the *prima facie* requirement of class certification under Rule 23(a)(1), as do the Rescinded Parolee[1] and Sponsor Subclasses.  Based upon the numbers of parolees in the United States under CHNV, U4U, and OAW parole processes alone, the proposed class consists of *at least* hundreds of thousands of individuals.  Approximately 200,000 Ukrainian parolees have entered the country under the U4U parole process[2]; approximately 532,000 CHNV parolees have entered the country under the CHNV parole processes[3]; and approximately 75,000 Afghan parolees have entered the country  under the OAW parole process.[4] The demand to sponsor beneficiaries through the U4U and CHNV parole processes has also been high: USCIS received over 200,000 sponsorship applications for U4U,[5] and more than 1.5 million sponsorship applications for CHNV parole, in just the first four or five months that the processes were made available.[6] Although there are no reliable statistics on the numbers of applications for FRP and MPIP, as they are not publicly available, the FRP process for

---

[1] Camilo Montoya-Galvez, *U.S. to Revoke Legal Status of More Than a Half-Million Migrants, Urges Them to Self Deport*, CBS NEWS (March 23, 2025, 4:24PM), https://www.cbsnews.com/news/u-s-to-revoke-legal-status-of-over-a-half-million-migrants-chnv/.

[2] Julia Ainsley, *U.S. Has Admitted 271,000 Ukrainian Refugees Since Russian Invasion, Far Above Biden's Goal of 100,000*, NBC NEWS (Feb. 24, 2023, 11:15AM), https://www.nbcnews.com/politics/immigration/us-admits-271000-ukrainian-refugees-russia-invasion-biden-rcna72177.

[3] *See supra* note 1.

[4] Chellie Pingree 1ˢᵗ District of Maine, *Afghanistan Evacuation & Resettlement Efforts*, https://pingree.house.gov/resources/afghanistan.htm (last visited March 20, 2025).

[5] *See supra* note 2.

[6] Camilo Montoya-Galvez, *1.5 Million Apply for U.S. Migrant Sponsorship Program With 30,000 Monthly Cap*, CBS NEWS (May 22, 2023, 9:56PM), https://www.cbsnews.com/news/us-migrant-sponsorship-program-cuba-haiti-nicaragua-venezuela-applications/.

Haiti alone resulted in over 12,000 invitations to eligible sponsors within two years,[7] and it appears that USCIS approved nearly 4,000 MPIP applications within two years in the late 2000s.[8] When the first Trump administration made efforts to terminate CAM parole, over 12,000 people had applied for the program.[9] *Id.* Collectively, the beneficiaries of FRP, MPIP, and CAM number in the many thousands.

While these numbers are not exact, the proposed class certainly amounts to well over "forty or more individuals." *George*, 286 F.R.D. at 173; *see also DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 98 (D. Mass. 2010) (stating a court does not need to know the exact number of a proposed class for the numerosity requirement to be satisfied).  The proposed class therefore meets the numerosity requirement under Rule 23(a)(1).

### 2.    The Proposed Class Satisfies the Commonality Requirement

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "[T]he commonality requirement is met where the questions that go to the heart of the elements of the cause of action will each be answered either 'yes' or 'no' for the entire class and the answers will not vary by individual class member." *Raposo v. Garelick Farms, LLC*, 293 F.R.D. 52, 55 (D. Mass. 2013) (internal quotations and citation omitted). "[A] plaintiff must demonstrate that the proposed class's claims 'depend upon a common contention,' the resolution of which is 'central to the validity' of each of the class's claims." *Diggs v. Mici*, CIVIL ACTION NO. 22-cv-40003-MRG, 2024 WL 4425654, at *4 (D. Mass. Sept. 30, 2024) (citing *Wal-Mart*

---

[7] U.S. Citizenship and Immigration Services, Form I-131, Travel Document Applications for the Haitian Family Reunification Parole (HFRP) Program Applications Accepted, Denied, Approved, and Pending As of December 31, 2019, https://www.uscis.gov/sites/default/files/document/data/HFRP_performancedata_fy2020_qtr1.pdf.

[8] Lisa Kobayashi, *The Success of Military Parole in Place*, KOBAYASHI LAW OFFICE (Nov. 30, 2018), https://www.lisakobayashi.com/the-success-of-military-parole-in-place/.

[9] ABC News, *Trump Administration Terminates Program That United Thousands of Families Fleeing Violence in Central America*, ABC NEWS (Nov. 9, 2017, 7:32PM), https://abcnews.go.com/International/trump-administration-terminates-program-united-thousands-of-families-fleeing/story?id=51050866.

11

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The commonality requirement is a "low bar." *In Re New Motor Vehicles Canadian Export Antitrust Litig*., 522 F.3d 6, 19 (1st Cir. 2008). It requires only the existence of a "*single issue common* to all members of the class." *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 264 (D. Mass. 2008) (italics in original).

The proposed class satisfies Rule 23(a)(2)'s commonality requirements because fundamental questions of fact and law are common to all class members. Here, all class members' claims all arise from the common contention that Defendants terminated the parole processes and adjudication of benefits for parolees in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)-(C), causing direct harm to class members, parole beneficiaries and sponsors alike. In particular, each of the challenged agency actions is predicated upon the same set of fundamental legal errors and is, accordingly, contrary to law under the APA, which will subject them to direct harm. For example, Armando Doe is a humanitarian parole recipient from Nicaragua who received his grant of parole pursuant to the CHNV processes – Armando Doe worked for a digital media company that documented government abuses, and his family is known for its anti-government views. Armando Doe Decl., Doc. No. 24-3, ¶¶ 6-16. Many of his family members have fled Nicaragua after his father-in-law was arrested, imprisoned, and labeled as a defector. *Id.* at ¶¶ 10-11. Because of the March 25 FRN, his parole will expire on April 24, 2025. Because of the Davidson memo, his pending application for asylum has been indefinitely held up. *Id.* at ¶¶ 27-30. If Armando returns to Nicaragua, he and his wife would both be stripped of their citizenship and imprisoned. *Id.* at ¶ 30. Aleksandra Doe, a U4U beneficiary, fears that by the time her parole expires within the next few days (and cannot be renewed because of the Huffman Memorandum), her pending applications for a green card and for TPS will remain unadjudicated because of the Davidson Memorandum, making it possible that Aleksandra and her family will be deported.

12

Aleksandra Doe Decl., Doc. No. 24-17, ¶¶ 13-15. Marim Doe is an active-duty member of the U.S. Navy who applied for MPIP parole for his father, but his MPIP parole application was recently paused because of the Huffman Memorandum. Marim Doe Decl., Doc. No. 24-14, ¶¶ 2, 11, 19. Omar Doe is an OAW beneficiary who served the United States military for eighteen years in Afghanistan and now faces potential deportation with his entire family when his parole expires in September 2025; his parole cannot be renewed because of the Huffman Memorandum and any request for status adjustment will be unadjudicated because of the Davidson Memo. Omar Doe Decl., Doc. No. 6-7, ¶ 9.  Accordingly, the legal solution to each class member's harm is identical: restoration of the *status quo ante*, under which parolees are entitled to the full duration of their authorized parole (i.e., from prior to the March 25 FRN), and adjudications for pending parole requests and re-parole requests under CHNV, OAW, U4U, CAM, MPIP, FRP, and other parole processes, as well as requests for immigration benefits (including status adjustments) for parolees, all resume in the ordinary course.

Because all members of the class face a common problem (which has a common cause) and their harm would be abated through common relief, the commonality requirement under Rule 23(a)(2) is satisfied.

### 3.    The Proposed Class Meets the Typicality Requirement

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). "The typicality requirement 'is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re*

*Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004)).

Like the members of the proposed class, each Proposed Class Representative is a parole beneficiary, the sponsor of a parole beneficiary, or a petitioner for parole on behalf of another individual. As such, each Proposed Class Representative is a sponsor or has a pending application to sponsor a beneficiary for a humanitarian parole process (Kyle Varner, Wilhen Pierre Victor, Valentin Rosales Tabares, Adolfo Gonzalez, Jr., Marim Doe, Norma Lorena Dus, Gabriela Doe, and Rosa Doe), has received parole that was terminated on an *en masse* basis (Alejandro Doe, Armando Doe, Ana Doe, Carlos Doe, Daniel Doe, Miguel Doe, and Lucia  Doe), or has a pending re-parole request or application for additional immigration benefits which are subject to the administrative hold (Aleksandra Doe, Alejandro Doe, Ana Doe, Armando Doe, Carlos Doe, Maksym Doe, Maria Doe, Omar Doe, Svitlana Doe, and Teresa Doe). For example, the CHNV parole processes provided a safe pathway to the United States for married couple Armando and Ana Doe, who fled Nicaragua after Ana's father was captured and tortured by the Nicaraguan government. *See* Armando Doe Decl., Doc. No. 24-3; Ana Doe Decl., Doc. No. 24-2. The March 25, 2025 FRN terminates their parole, and the parole of hundreds of thousands of similarly situated individuals, as of April 24, 2025. If Armando and Ana are deported to the very danger they were forced to escape, they will likely be rendered stateless and imprisoned. Armando Doe Decl., Doc. No. 24-3, ¶ 30. Kyle Varner is a U.S. citizen and physician with deep moral and political convictions that have motivated him to sponsor seventy-nine individuals under CHNV parole processes, forty-three of whom are in the United States. Kyle Varner Decl., Doc. No. 24-10, ¶ 3. Dr. Varner's parole beneficiaries, and those of thousands of similarly situated sponsors, would lose parole on April 24, 2025 and face deportation , pursuant to the March 25 FRN.  Wilhen Pierre Victor is a U.S. citizen, based in this district in Woburn, Massachusetts, who has brought five

14

family members to the United States under CHNV parole processes and has two pending applications for CHNV parole, including for a thirteen-year-old niece who lives without her parents in Haiti. Wilhen Victor Decl., Doc. No. 24-11, ¶¶ 3-6, 18. Under the March 25 FRN, those five family members who are parolees, and hundreds of thousands of similarly situated individuals sponsored under humanitarian parole programs, will lose their parole status on April 24, 2025 and be at risk of deportation, and Ms. Victor would also lose the opportunity to reunite with her niece in the United States under CHNV parole processes. Maksym Doe's U4U parole will expire next month in April 2025, and his request for re-parole (pending from last year) has been indefinitely placed on hold, as have the requests of thousands of similarly situated individuals. Doc. No. 6-5, ¶¶ 3, 17.

Accordingly, each Proposed Class Representative seeks the same relief as the rest of the proposed class: restoration of the authorized periods of parole from prior to the March 25 FRN and adjudications of pending parole requests, re-parole requests, and requests for immigration benefits for parolees.

### 4. The Proposed Class is Adequately Represented

Rule 23(a)(4)'s adequacy requirement is met where the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

First, the Proposed Class Representatives have claims that are the same as those of the proposed class, and accordingly seek the same remedies as the proposed class. Plaintiffs are not aware of any conflicts of interest within the proposed class. The undersigned counsel are also not aware of any conflicts of interest between members of the proposed class. The Proposed Class Representatives have demonstrated their commitment to vigorously prosecuting the action, including by providing declarations that illustrate the factual bases for the present action, *see* ECF No. 24-1–24-8, 24-10–24-18, vigilantly monitoring the status of the case, and remaining in regular contact with counsel, thus representing the interests of the class.

Proposed class counsel (i.e., the undersigned counsel) also satisfy Rule 23(a) and (g). *See* Fed. R. Civ. P 23(g) (reciting the standards for appointing class counsel). Under Rule 23(g), a court that certifies a class must also appoint class counsel and consider:

   i.    the work counsel has done in identifying or investigating potential claims in the action;

   ii.   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

   iii.  counsel's knowledge of the applicable law; and

   iv.   the resources that counsel will commit to representing the class[.]

First, the undersigned counsel has performed significant work both identifying and investigating potential claims in the action, which resulted in the submission of individualized declarations from twenty-three (23) individual plaintiffs and one organizational plaintiff that describe the factual bases for their claims. *See* Doc. Nos. 24-1 - 24-17; 27-1; 64-3 - 64-6; 71-2; 71-3. Second, as set forth in the attached declarations of John Freedman, Karen Tumlin, and Anwen Hughes, the undersigned counsel have decades of experience prosecuting complex civil

16

litigations, claims under the Administrative Procedure Act, and federal class actions, including pursuant to Rule 23(b)(2). *See* Declaration of John A. Freedman ("Freedman Decl."), Doc No. 46-2, ¶¶ 5-9, Declaration of Karen C. Tumlin ("Tumlin Decl."), Doc No. 46-3, ¶¶ 5-6, Declaration of Anwen Hughes ("Hughes Decl."), Doc. No. 46-4, ¶ 4. Third, the undersigned counsel include attorneys who are experienced legal advocates for immigrant and migrant rights, and who have deep knowledge of the relevant laws and regulations concerning humanitarian parole under the relevant statute of the INA, 8 U.S.C. § 1182(d)(5)(A). *See* Freedman Decl., Doc No. 46-2, ¶¶ 6-7, Tumlin Decl., Doc No. 46-3, ¶¶ 5-6, Hughes Decl., Doc No. 46-4, ¶ 4-5. Fourth, the undersigned counsel have committed and will continue to commit significant resources to representing the proposed class and are prepared to continue zealously representing Plaintiffs and all proposed class members throughout all stages of this litigation through trial. *See* Freedman Decl., Doc No. 46-2, ¶ 10, Tumlin Decl., Doc No. 46-3, ¶¶ 4, 7, Hughes Decl., Doc No. 46-4, ¶ 6.

### C.    The Proposed Class Satisfies Rule 23(b)(2) Requirements

Because the proposed class satisfies the requirements under Rule 23(a), the Court should certify the proposed class if one or more of the requirements for maintaining a class action under Rule 23(b) are satisfied. Here, certification is most appropriate under Rule 23(b)(2) because Defendants have, through the challenged agency actions all predicated on the same set of fundamental legal errors, "act[ed] on grounds that apply generally to the [whole] class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). "These requirements demand cohesiveness among class members with respect to their injuries." *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 297 (D. Mass. 2011) (internal quotation and citation omitted). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'"

17

*Wal-Mart*, 564 U.S. at 360 (citation omitted). Such a class is inappropriate, however, when each class member "would be entitled to a *different* injunction or declaratory judgment." *Id.*

Classes challenging particular immigration practices are frequently certified under Rule 23(b)(2). *See, e.g.*, *Gomez v. Trump*, No. 1:20-CV-01419-APM Dkt. 151 (D.D.C. Sept. 30, 2020); *John Doe #1 v. Trump*, Case No. 3:19-cv-1743-AI Dkt. 132 (D. Ore. Apr. 7, 2020); *Batalla Vidal v. Nielsen*, No. 16-CV-4756 Dkt. 342 (E.D.N.Y.. Nov. 14, 2020); *Emami v. Mayorkas*, No. 1:18-cv-1587-JD Dkt. 252 (N.D. Cal. 2024 Mar. 26, 2024).

Here, the requirements under Rule 23(b)(2) are satisfied. Plaintiffs seek injunctive and declaratory relief in response to Defendants' termination of humanitarian parole processes and adjudication of immigration benefits to parolees. Injunctive relief that addresses Defendants' conduct at issue (*i.e.,* vacating and enjoining implementation of the challenged agency actions and directing Defendants to restore the *status quo ante*) would address all of Plaintiffs' claims as well as those of members of the proposed class. Defendants terminated parole processes and adjudication of immigration benefits to parolees, thus harming the entire class. The appropriate remedy to these unlawful terminations is uniform among all class members: vacatur of the challenged agency actions, restoration of the *status quo ante* with the reinstatement of the authorized periods of parole from prior to the March 25 FRN, and adjudications for parole and/or re-parole requests under CHNV, OAW, U4U, CAM, MPIP, FRP and other parole processes as well as other requests for immigration benefits for parolees. As in *Gomez*, *John Doe #1*, *Batalla Vidal*, and *Emami*, because all class members are victims of Defendants' unlawful and arbitrary and capricious conduct and all class members would benefit from the same injunctive and declaratory relief, Rule 23(b)(2)'s requirements are met.

**V.**    **CONCLUSION**

For the reasons set forth above, the Court should permit this matter to proceed as a class action under Federal Rule of Civil Procedure 23(b)(2). Plaintiffs respectfully request that the Court accordingly certify the proposed class and appoint the Proposed Class Representatives and Plaintiffs' counsel to represent the certified class.

Dated: March 27, 2025

Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (*pro hac vice*)
Hillary Li (*pro hac vice*)
Laura Flores-Perilla (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

Anwen Hughes (*pro hac vice*)
**HUMAN RIGHTS FIRST**
75 Broad St., 31ˢᵗ Fl.
New York, NY 10004
Telephone: (212) 845-5244
HughesA@humanrightsfirst.org

Justin B. Cox (*pro hac vice*)
**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

Respectfully submitted,

*/s/ John A. Freedman*
John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
Katie Weng (*pro hac vice* pending)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com
katie.weng@arnoldporter.com

H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, Fl. 53
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com

Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com

Robert Stout (*pro hac vice*)
Sarah Elnahal (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
rob.stout@arnoldporter.com
sarah.elnahal@arnoldporter.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I, John A. Freedman, hereby certify that this document filed through the ECF system will

be sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF).

Dated: March 27, 2025

<i>/s/ John A. Freedman</i><br>John A. Freedman