YAAKOV ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

AUGUST FLENTJE
*Acting Director*

EREZ REUVENI
*Acting Deputy Director*

PATRICK GLEN
BRIAN C. WARD
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Email: katherine.j.shinners@usdoj.gov

ELISSA FUDIM
DANIEL SCHUTRUM-BOWARD
*Trial Attorneys*

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| Svitlana Doe, *et al.*, | ) | Civil Action No. 1:25-cv-10495-IT |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Kristi Noem, in her official capacity as | ) | |
| Secretary of Homeland Security, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DOC. NO. 46)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL HISTORY .................................................................... 2

LEGAL STANDARD FOR CLASS CERTIFICATION .................................................... 5

ARGUMENT ...................................................................................................................... 6

I.    Threshold Issues Preclude Consideration of Class Certification. ................................... 6

II.   The Proposed Classes Are Ill-Defined and Overbroad. ..................................... 9

III.  The Proposed Classes Lack Commonality and Typicality............................................ 11

    A.   The Immigration Benefits Class Lacks Commonality and Typicality....................... 12

    B.   The Sponsor Class Lacks Commonality and Typicality............................................ 16

IV.   Plaintiffs' Proposed Classes Do Not Satisfy Rule 23(b)(2)'s Requirements. ................ 16

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

*Ad Hoc Comm. on Jud. Admin. v. Com. of Mass.*,
  488 F.2d 1241 (1st Cir. 1973) ........................................................................9

*Alliance for Hippocratic Med.*,
  602 U.S. 367 (2024) ......................................................................................13

*Amanullah v. Nelson*,
  811 F.2d 1 (1st Cir. 1987) ..............................................................................6

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, (1997) ......................................................................................1

*American Academy of Pediatrics v. FDA*,
  330 F.Supp.3d 657 (D. Mass. 2018) .............................................................13

*Anversa v. Partners Healthcare Sys.*,
  835 F.3d 167 (1st Cir. 2016) ........................................................................14

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*,
  208 F.3d 1 (1st Cir. 2000) ..............................................................................9

*Bennet v. Spear*,
  520 U.S. 154 (1997) ........................................................................................9

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
  242 F.3d 290 (5th Cir. 2001) ..........................................................................6

*Celebi v. Mayorkas*,
  744 F. Supp. 3d 100 (D. Mass. 2024) ........................................................6, 14

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ..........................................................................................5

*Connor B. ex rel. Vigurs v. Patrick*,
  272 F.R.D. 288 (D. Mass. 2011) ..................................................................17

*Crosby v. SSA*,
  796 F.2d 576 (1st Cir. 1986) ........................................................................14

*Ctr. for Biol. Diversity v. Zinke*,
  260 F. Supp. 3d 11 (D.D.C. 2017) ...............................................................10

*Da Costa v. Immigr. Inv'r Program Office*,
    80 F.4th 330 (D.C. Cir. 2023) ...................................................................13

*Donovan v. Philip Morris USA, Inc.*,
    268 F.R.D. 1 (D. Mass. 2010) ...................................................................19

*Eddlemon v. Bradley Univ.*,
    65 F.4th 335 (7th Cir. 2023) ......................................................................5

*Forsythe v. Sun Life Fin., Inc.*,
    417 F. Supp. 2d 100 (D. Mass. 2006) ........................................................6

*Garcia v. E.J. Amusements of New Hampshire, Inc.*,
    98 F. Supp. 3d 277 (D. Mass. 2015) ........................................................12

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) .................................................................................11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ...................................................................................6

*Hayden v. Freightcar Am., Inc.*,
    2008 WL 375762 (W.D. Pa. Jan. 11, 2008) ..............................................10

*Kale v. Jaddou*,
    2023 WL 4939367 (E.D.N.C. Aug. 2, 2023) ..............................................9

*LaMarche v. Mayorkas*, No.,
    23-cv-30029, 2024 WL 2502929 (D. Mass. May 22, 2024) ................13, 14

*Lemon v. Int'l Union of Operating Engr's*, Local No. 139, AFL–CIO,
    216 F.3d 577 (7th Cir. 2000) ...................................................................17

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) .................................................................................10

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) .....................................................................9

*In re Navy Chaplaincy*,
    306 F.R.D. 33 (D.D.C. 2014) ...................................................................17

*Quadrelli v. Moniz*,
    No. 20-cv-10685-ADB, 2020 WL 3051778 (D. Mass. June 8, 2020) ........17

*Rahman v. Chertoff*,
    530 F.3d 622 (7th Cir. 2008) ...................................................................16

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ..................................................................................................8

*Thigulla v. Jaddou,*
   94 F.4th 770 (8th Cir. 2024) ...............................................................................9

*United States v. Texas,*
   599 U.S. 670 ..........................................................................................................7

*V.U.C. v. USCIS,*
   557 F. Supp. 3d 218 (D. Mass. 2021) ................................................................14

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011)...........................................................................5, 11, 12, 17

*Wild Fish Conservancy v. Jewell,*
   730 F.3d 791 (9th Cir. 2013) .............................................................................10

## STATUTES

5 U.S.C. § 701(a)(2) ....................................................................................................9

5 U.S.C. § 704 ...........................................................................................................10

5 U.S.C. § 706(1) .......................................................................................................13

5 U.S.C. § 706(2)(A)-(C) .............................................................................................3

8 U.S.C. § 1182(d)(5) ................................................................................................20

8 U.S.C. § 1182(d)(5)(A)....................................................................................1, 2, 6

8 U.S.C. § 1252(b)(5) ..................................................................................................7

8 U.S.C. § 1252(a)(2)(B)(ii) ........................................................................................8

8 U.S.C. § 1255(a) .......................................................................................................8

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 23(b)(2)........................................................................................5, 17

## INTRODUCTION

The Court should deny Plaintiffs' request for certification of the "Immigration Benefits" and "Sponsor" Classes in this amorphous challenge to the Department of Homeland Security's (DHS's) use of its discretionary parole authority under 8 U.S.C. § 1182(d)(5)(A), and its processing timelines for certain parolees' applications for other immigration benefits. At the threshold, the individual Plaintiffs who seek to represent these classes are unable to demonstrate Article III standing to challenge the relevant agency guidance and Congress has precluded jurisdiction over challenges to the discretionary exercise of parole authority or the adjudication of discretionary benefits. Because Plaintiffs cannot satisfy threshold jurisdictional requirements, the Court should decline to entertain their request for class certification.

But even if the Court could consider class certification, Plaintiffs' broad and ill-defined proposed classes do not meet the requirements of Rule 23. Plaintiffs seek to obtain class-wide relief against agency guidance documents that pause new parole adjudications or travel authorizations under certain parole programs, as well as the adjudication of applications for other immigration benefits filed by those granted parole under some of those same programs while DHS investigates evidence of fraud related to past parole grants. Recognizing that parole supporters cannot obtain individualized relief to compel discretionary grants of parole, and that most class members seeking other immigration benefits are likely not entitled to individual mandamus or similar relief compelling the adjudication of those applications, Plaintiffs instead attempt to obtain similar relief by enjoining or setting aside the guidance on a classwide basis. But Rule 23 is a procedural rule that cannot be used to circumvent these substantive limitations on individual relief. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, (1997) (reiterating that Rule 23 "shall not abridge, enlarge or modify any substantive right"). These limits on individualized relief likewise

defeat Plaintiffs' request for class treatment. Because DHS retains underlying discretion concerning parole and the adjudication of many immigration benefits, and because processing times for immigration benefits are often already relatively prolonged due to the demand for such benefits and the existing backlog, an injunction or declaratory judgment against the guidance would not provide relief to all members of either class. Thus, the requirements for certifying an injunctive-relief class under Rule 23(b)(2) are not met. Further, relevant differences in the make-up of each class—including differences among the numerous parole programs at issue, material differences in the type of immigration benefit sought by parolees, whether parolees' applications have been unreasonably delayed, and whether they can benefit from an injunction of the guidance—similarly defeat commonality and typicality.[1]

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs brought this lawsuit challenging various Executive Branch actions relating broadly to programs governing requests for parole into the United States, or for re-parole, by certain categories of individuals under 8 U.S.C. § 1182(d)(5)(A). Second Am. Compl., Doc. No. 68 at ¶¶ 3, 158–200. The individual Plaintiffs claim to be parole recipients or supporters of parole requests under the following such programs: Uniting for Ukraine (U4U), the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV programs); a process for individuals initially paroled under Operation Allies Welcome (OAW) to seek re-parole; the Family Reunification Parole processes (FRP programs); parole in place for military family members (MPIP); and the Central American Minors program (CAM). *See* Doc. No. 68 at ¶¶ 3, 16–38.

On January 20, 2025, in accordance with several Executive Orders, Acting Homeland

---

[1] Because Defendants only recently learned the identities of the relevant Doe Plaintiffs, Defendants reserve the right to supplement this Opposition if they uncover facts related to those Plaintiffs' standing, adequacy as class representatives, or any other class certification factor.

Security Secretary Benjamine Huffman directed DHS to review its existing parole policies and to "pause, modify or terminate" any parole policy that does not comply, subject to certain conditions. Huffman Memo, Doc. No. 41-1. On January 23, 2025, Jennifer Higgins, Acting Director of U.S. Citizenship and Immigration Services (USCIS), sent an email requesting that USCIS officers "do not make any final decisions (approval, denial, closure) or issue a travel document or I-94 for any initial parole or re-parole application" for enumerated parole programs, including those identified by Plaintiffs except for MPIP, until further instructions are issued. Higgins Email, Doc. No. 41-2. In a February 14, 2025 memorandum, USCIS Acting Deputy Director Andrew Davidson directed USCIS to "place an administrative hold on all immigration benefit requests filed by aliens who are or were paroled under U4U, CHNV, or FRP processes, pending the completion of the required screening and vetting." Davidson Memo, Doc. No. 41-3.  Plaintiffs assert that these and other actions constitute a termination of parole processes and a suspension of other immigration benefits, that they are *ultra vires*, Doc. No. 68 at ¶ 357, violate due process, *id.* at ¶ 362, and violate the Administrative Procedure Act (APA) because they allegedly are based on an erroneous interpretation of the parole statute, exceed statutory authority, and are arbitrary and capricious, *id.* at ¶¶ 315, 324, 328, 337–340, 345–46.

On March 18, 2025, Plaintiffs moved for to preliminarily enjoin implementation of the Huffman, Higgins, and Davidson guidance, which Defendants opposed. On March 21, 2025, Plaintiffs filed the instant motion (Doc Nos. 46 and 47), which seeks to certify for purposes of their APA claims under 5 U.S.C. § 706(2)(A)-(C) (Claims 1-4) two classes composed of:

1. "All individuals with pending applications to sponsor a beneficiary for any humanitarian parole process, including but not limited to U4U, CHNV, FRP, MPIP, and CAM, which applications are subject to the January 20 Huffman memo and subsequent actions by Defendants to pause or otherwise terminate the processing of such applications (the 'Sponsor Subclass')"; and

2. "All individuals who have received humanitarian parole through already established humanitarian parole processes, such as the U4U, CHNV, OAW, FRP, MPIP, and CAM parole processes, with any pending applications for any additional immigration benefit, which applications are subject to the 'administrative hold' set out in the February 14 Davidson memorandum, the January Higgins Directive, and other subsequent actions by Defendants to pause or otherwise terminate the processing of such applications (the 'Immigration Benefits Subclass')."[2]

Doc. No. 47 at 11, 15. After Plaintiffs filed their motion, they expressed their intent to amend their Complaint to address a new Federal Register Notice of the termination of the CHNV parole programs and of existing grants of parole under those processes (the "CHNV Notice"), and to seek preliminary injunctive relief and class certification relating to the CHNV Notice. *E.g.*, Doc. No. 45. The Court subsequently set a schedule for the then-forthcoming motions concerning the CHNV notice. The Court ordered that, for purposes of the instant class certification motion, it would "exclude[e] consideration of claims relating to the CHNV program, individuals paroled in pursuant to that program, or parole sponsorships pursuant to that program." Doc. No. 58.

Plaintiffs identify the following as Proposed Representatives of the "Immigration Benefits Subclass" ("Immigration Benefits Plaintiffs"): Aleksandra Doe, Alejandro Doe, Ana Doe, Armando Doe, Carlos Doe, Maksym Doe, Maria Doe, Omar Doe, Svitlana Doe, and Teresa Doe. Doc. No. 47 at 16; *see also* Doc. No. 74 at 19. However, Teresa Doe is not a member of this proposed class, as she does not allege or submit evidence that she has a "pending application for any additional benefit." *See* Doc. No. 68 at ¶¶ 276–78. And Alejandro Doe, Ana Doe, Armando Doe, and Carlos Doe are all subject to the CHNV carve-out because they are "individuals paroled in pursuant to [the CHNV] program." *See id.* at ¶¶ 19–22.

Plaintiffs identify the following as Proposed Representatives of the "Sponsor Subclass"[3]

---

[2] While Plaintiffs frame their two classes as "subclasses," these are in fact two separate classes as they do not fall under a single umbrella.

[3] Plaintiffs use the term "sponsor," which is incorrect. Defendants use the term "supporter."

("Sponsor Plaintiffs"): Kyle Varner, Wilhen Pierre Victor, Valentin Rosales Tabares, Adolfo Gonzalez, Jr., Marim Doe, and Rosa Doe. Doc. No. 47 at 11. However, Wilhen Pierre Victor, Kyle Varner and Valentin Rosales Tabares are all CHNV supporters whose claims are carved out from consideration for purposes of this motion.

## LEGAL STANDARD FOR CLASS CERTIFICATION

The class action is a departure from "the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). To justify such departure, proposed class representatives must possess the same interest and same injury as the class members. *See id.* "[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance'" with Rule 23 and "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required[.]" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores*, 564 U.S. at 350). In addition to satisfying these Rule 23(a) prerequisites, a plaintiff must demonstrate that the action fits within at least one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b)(1)–(3). Here, Plaintiffs seek certification under Rule 23(b)(2), which requires the movant to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Courts must rigorously analyze Rule 23's requirements, *Wal-Mart Stores*, 564 U.S. at 350-51, which requires more than accepting Plaintiffs' claims as pleaded, *see Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339 (7th Cir. 2023). Plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23," otherwise certification must be denied. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

## ARGUMENT

### I.    Threshold Issues Preclude Consideration of Class Certification.

Before this Court may consider whether Plaintiffs have proposed a class capable of certification, the Court must first determine that Plaintiffs have Article III standing. "This constitutional threshold must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by Rule 23." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001) (cleaned up); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 118 (D. Mass. 2006) (standing is a "threshold" issue that should be resolved before class certification) (collecting cases).

The Plaintiffs here lack standing. *See* Doc. No. 42 at § I(A). The Immigration Benefits Plaintiffs allege a prospective injury (loss of parole, inability to obtain status, and removal) based on the following causal chain: their parole expires, they are not granted re-parole, their other benefits applications are not quickly adjudicated, they are placed in removal proceedings, and they are subsequently removed. *See* Doc. No. 47 at 15-16. But the Immigration Benefits Plaintiffs' claimed injuries are not traceable to, and cannot be redressed by, relief enjoining or declaring unlawful the challenged agency actions. *See* Doc. No. 42 at § I(A). Parole is discretionary and no one can claim an entitlement to it. 8 U.S.C. § 1182(d)(5)(A); *Amanullah v. Nelson*, 811 F.2d 1, 14 (1st Cir. 1987). In any event, the pause on adjudications under the parole programs does not prevent Plaintiffs from requesting parole outside of those programs. *See* Doc. No. 41-4 at ¶ 8. Moreover, immigration benefit requests—whether for asylum, adjustment of status or TPS—can take months or years to adjudicate. *See, e.g., Celebi v. Mayorkas*, 744 F. Supp. 3d 100, 104 (D. Mass. 2024) (finding three-and-a-half-year wait for adjudication of asylum application not unreasonable, and noting backlog of 900,000 asylum applications); Doc. No. 41-5 (noting recent

average TPS application processing times of 5-6 months and adjustment of status processing times of up to 13.4 months); OIG Report (June 2024), at https://perma.cc/PJA4-SJ3S. And even if Plaintiffs are placed into removal proceedings under § 1229a, they can raise their claims—whether for asylum, TPS, or adjustment of status—in those proceedings, which have multiple levels of appellate review. Similarly, the Sponsor Plaintiffs cannot claim injury from the alleged loss of the ability to support family members or strangers for parole, because that ability was always limited by the inherently discretionary nature of the statutory parole authority, which does not mention supporters or create any right to support a request for parole. In other words, to the extent any Plaintiff is at risk of injury, that risk is not traceable to the challenged agency actions pausing adjudications of parole requests or immigration benefits, but rather to pre-existing circumstances.

Indeed, these Plaintiffs' injuries are not redressable by the relief they seek. For purposes of the two classes at issue here, Plaintiffs seek to set aside, declare unlawful, or enjoin the implementation of the Huffman, Higgins, and Davidson guidance. *See* Doc. No. 40; *see also* Doc. No. 68 at 101, et seq. (Prayer for Relief). But enjoining that guidance or declaring it unlawful would not remedy the harms they assert because it would not create any enforceable legal obligations toward any of the Proposed Representative Plaintiffs or the class members concerning their parole or their pending applications for parole or other benefits. It would do nothing to change the fact that federal officials possess the same underlying statutory discretion absent the guidance. *See* Doc. No. 42 at 16 (citing *United States v. Texas*, 599 U.S. 670, 691 (Gorsuch, J., concurring)). Enjoining that guidance would not prevent the parole of individual Plaintiffs and class members from expiring, would not require the Government to parole or re-parole any of the Representative Plaintiffs or those whom they have supported, would not require the Government to adjudicate any other pending benefit requests within a particular time, and would not restrict DHS's discretion to

place aliens into removal proceedings. Plaintiffs do not directly dispute that DHS retains the underlying discretion to deny individual parole requests, and they point to no authority requiring DHS to decide individual applications for other benefits on a particular time frame. For these reasons, Plaintiffs lack standing. And, because they lack standing, this Court need not consider their motion for class certification.[4]

But standing is not the only threshold jurisdictional impediment to adjudicating class certification. The requirement that jurisdiction be established as a threshold matter has been described as "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Here, as explained in Defendants' opposition to the preliminary injunction, the jurisdictional bar in 8 U.S.C. § 1252(a)(2)(B)(ii) also precludes review of Plaintiffs' claims. Doc. No. 42 at § I(B). Whether to grant parole under Section 1182(d)(5)(A)—which permits the Secretary to, "in [her] discretion" temporarily parole an applicant for admission into the United States—is a "decision or action" "specified" by statute to be in the Secretary's discretion and is thus subject to § 1252(a)(2)(B)(ii)'s review bar. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Additionally, courts have held this section precludes review of decisions concerning the pace of adjudication of other discretionary immigration benefits (like adjustment of status under 8 U.S.C. § 1255(a)), and that the pace of adjudication is "committed to agency discretion" and thus unreviewable under the APA, 5 U.S.C. § 701(a)(2). *See, e.g.*, *Thigulla v. Jaddou*, 94 F.4th 770 (8th Cir. 2024) (hold policy for adjustment applications unreviewable under § 1252(a)(2)(B)(ii)); *Kale v. Jaddou*, 2023 WL 4939367, at *7 (E.D.N.C. Aug. 2, 2023) (pace of adjudication of adjustment application barred

---

[4] Plaintiffs Teresa Doe and Omar Doe lack standing to assert claims on behalf of the Immigration Benefits Subclass for the additional reason that they are not subject to the challenged agency guidance. *See supra* at 4 (stating that Teresa Doe has not demonstrated that she has a pending benefit application); *infra* at 10 (arguing that Omar Doe is not subject to the Davidson Memo).

from review by § 1252(a)(2)(B)(ii) and § 701(a)(2)); Doc. No. 42 at 20-21. Section 1252(a)(2)(B)(ii)'s jurisdictional bar encompasses both DHS's discretionary ultimate decisions in individual cases as well as their discretion to promulgate general guidance impacting the exercise of parole and these other discretionary determinations. *See* Doc. No. 42 at 17-18. Because this Court lacks jurisdiction, it need not—and should not—adjudicate class certification.

## II.    The Proposed Classes Are Ill-Defined and Overbroad.

Under Rule 23, a class must be defined clearly. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660; *cf. Ad Hoc Comm. on Jud. Admin. v. Com. of Mass.*, 488 F.2d 1241, 1243, n.1 (1st Cir. 1973) (noting problems with vaguely-defined and broad classes). Having an inadequately defined or overbroad class often implicates multiple Rule 23 requirements, including typicality, commonality, and the standards for certifying an injunctive-relief class under Rule 23(b)(2).

Here, Plaintiffs seek to certify two classes: the "Sponsor Subclass" and the "Immigration Benefits Subclass." Doc. No. 46 at 1; *supra* at 3-4. Both class definitions contain the amorphous reference to "other subsequent actions by Defendants to pause or otherwise terminate the processing of such applications." This language is not only fatally vague, it also purports to include in the class individuals who are subject to agency action that *has not yet occurred*. Even if Plaintiffs could challenge future agency action—which they cannot[5]—the Court cannot possibly determine whether such action is contrary to law based on the Plaintiffs' current claims challenging other

---

[5]The APA requires final agency action that is not "of a merely tentative or interlocutory nature." 5 U.S.C. § 704; *Bennet v. Spear*, 520 U.S. 154, 177–78 (1997). Final agency action is a "definitive statement" of the agency's position with "direct and immediate consequences." *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*, 208 F.3d 1, 5 (1st Cir. 2000).

conduct. APA challenges can succeed only where the plaintiff "identif[ies] a discrete 'agency action' that fits within the APA's definition of that term" *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir. 2013). It is "entirely certain" that an "entire 'program'—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892–93 (1990); *see also Ctr. for Biol. Diversity v. Zinke*, 260 F. Supp. 3d 11, 20 (D.D.C. 2017). Thus, the class must be limited to those subject to the conduct challenged in the complaint, not some future conduct. *Hayden v. Freightcar Am., Inc.*, 2008 WL 375762, at *6 (W.D. Pa. Jan. 11, 2008) ("[F]uture variables bring uncertainty to the class… [such that] any reference to future possible occurrences defeats the class certification.").

The Immigration Benefits class is likewise overbroad because it includes categories of people who have no claim to relief concerning their pending applications for immigration benefits. As defined, the Immigration Benefits Subclass includes individuals who have voluntarily left the United States, and those who have been placed in removal proceedings where they can renew their requests for immigration benefits. This class is additionally overbroad because the pause on immigration benefits adjudications in the Davidson Memo only applies to parolees under the CHNV, U4U, and FRP programs, and does not apply to class members—like Omar Doe—who were paroled into the country under OAW, MPIP, or CAM. *See* Doc. No. 41-4 at 3, ¶ 6. Because not all Immigration Benefits Subclass members are subject to the Davidson Memo, their claims are not common to the class and they lack the same injury as the rest of the class.

Both proposed classes are also overbroad to the extent they include beneficiaries or supporters of parole programs for which there is no Representative Plaintiff. The Sponsor class purports to include all individuals who have pending applications to support a beneficiary for the

U4U parole process, but no Sponsor Plaintiff has such a pending application. Similarly, the Immigration Benefits class includes those who received parole under CAM, but no named Plaintiff who received parole under CAM has a pending application for any "additional immigration benefit"—and, as just discussed, CAM parolees are in any event not subject to the pause on immigration benefit adjudications under the Davidson Memo.

## III.    The Proposed Classes Lack Commonality and Typicality.

The differences among the class members' claims preclude a finding of commonality or typicality. Rule 23(a)(2) requires questions of law or fact common to the class. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered *the same injury.*'" *Wal-Mart*, 564 U.S. at 350 (citation omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Instead, the "claims must depend upon a common contention" that "is capable of classwide resolution—which means that [the] determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Rule 23(a)(2) "is easy to misread, since [a]ny competently crafted class complaint literally raises common questions." *Wal-Mart Stores*, 564 U.S. at 349, 351. "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350.

The commonality prong tends to merge with the requirement of typicality under Rule 23(a)(3), *see Wal-Mart Stores, Inc.*, 564 U.S. at 350 n.5, because the central inquiry in assessing whether a proposed class has "typicality" is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class." *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015).

**A.  The Immigration Benefits Class Lacks Commonality and Typicality.**

Although the proposed Immigration Benefits class facially challenges two agency actions—the Higgins Email and the Davidson Memo[6]—the crux of this class's injury is that their pending applications for "additional immigration benefits" will take longer to adjudicate by virtue of the pause than they would have otherwise, such that some of these individuals may be placed in removal proceedings or removed before adjudication. *See supra* at 6. Plaintiffs posit that common questions exist about the legality of the agency actions under the APA. Doc. No. 47 at 15. But the propriety of these actions cannot be determined on a common basis, and any determination on the legal justification for the challenged policies cannot drive the resolution of each class member's claim to relief, for several reasons.

*First*, Plaintiffs claim that the "common problem" they and other Immigration Benefits class members face is a risk of removal. Doc. No. 47 at 15–17.  But, to the extent any class member has standing (they do not, *see supra* § I), at minimum the inquiry into legal injury is not common to the proposed class, which encompasses people who have applied for a variety of different, unspecified immigration benefits and are in a variety of different situations concerning their parole. Whether each class member is materially affected by the guidance (and whether their harms are redressable by any classwide relief) depends upon the individual alien's circumstances, including when their current parole term expires, whether their immigration benefit was ripe for adjudication even without the pause, whether DHS places the alien in removal proceedings, whether the alien is able to renew his application or request in those proceedings, and whether the application is

---

[6] Plaintiffs claim that the Higgins Email places a pause on immigration benefits adjudications, *see* Doc. No. 68 at ¶ 189, but on its face, that email addresses only requests for parole or re-parole. *See* Doc. No. 41-2. Accordingly, their challenge is really directed at the Davidson Memo. Further, the Immigration Benefits class as defined cannot challenge pauses on requests for parole, because many class members and proposed representatives have no such pending requests.

granted. The variations in the attenuation of the injury among the Representative Plaintiffs and the class defeat commonality and typicality. *See Alliance for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (to show standing, the "links in the chain of causation . . . must not be too speculative or too attenuated").

*Second*, the Immigration Benefits Class lacks commonality and typicality because an inherently individualized inquiry—whether adjudication of immigration benefits has been unreasonably delayed—is central to their claims. Although they frame their claim as a challenge to a single agency action in the form of the Davidson Memo, their argument that the Davidson Memo's adjudications pause is unlawful hinges on whether a delay in adjudication of each different benefits adjudication—in a variety of unspecified benefits categories—is unreasonable under the APA, 5 U.S.C. § 706(1). And a determination of whether unreasonable delay has occurred under the APA requires a highly case-specific analysis under the *TRAC* factors. "This individualized analysis inherently ensures the court could not 'solve an issue that is central to the validity of each one of the claims in one stroke.'" *LaMarche v. Mayorkas*, No. 23-cv-30029, 2024 WL 2502929, at *8 (D. Mass. May 22, 2024) (denying certification of a class of parole applicants and sponsors seeking to compel adjudication).

For example, an evaluation under the first *TRAC* factor—"the length of the delay in light of 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency,'" *Da Costa v. Immigr. Inv'r Program Office*, 80 F.4th 330, 340 (D.C. Cir. 2023)—will, at minimum, depend on the type of benefit sought. As noted in related briefing, the time to adjudicate different benefits varies greatly, *see* Doc. No. 41-5, and would be influenced by variations in resources needed for adjudication and the number of pending applications. For example, Plaintiff Aleksandra Doe's claims that her TPS application has been

unreasonably delayed (where the average adjudication time is generally 4-5 months, *see id.*) is subject to different considerations than the claim of a class member who has a pending asylum application, for which adjudication times are longer due to the resource-intensive nature of the adjudication and the existing backlog. *Celebi*, 744 F. Supp. 3d at 104.

Other material differences among proposed Immigration Benefits class members would similarly alter the *TRAC* analysis for each class member. For example, the third *TRAC* factor, which addresses risks to health and welfare, requires examining the applicant's particular situation—including when their parole and employment authorization expires—to assess the impact of the delay on the class member's welfare. *See, e.g.*, *V.U.C. v. USCIS*, 557 F. Supp. 3d 218, 223 (D. Mass. 2021) (assessing this *TRAC* factor). And the individualized assessment of the welfare impact will likewise impact the weight of this factor in determining whether the delay is unreasonable in a particular case. For example, some class members—like Plaintiff Maria Doe—currently have parole through January 2027, and thus this factor would currently weigh against a finding of unreasonable delay for her TPS application. Other class members' parole and concomitant work authorization may have already expired. Thus, no one Plaintiff or proposed class member's claim is typical of the others' in this regard. In sum, the Court cannot determine that *any* pause-related wait is inherently unlawful, no matter the circumstances, in the absence of any identified statutory mandate, as doing so would be contrary to the *TRAC* factors. *Anversa v. Partners Healthcare Sys.*, 835 F.3d 167, 178 (1st Cir. 2016) ("The duration of administrative proceedings, without more, cannot suffice to demonstrate that an agency's actions are unreasonable"). "[A] delay of any particular period of time may be quite reasonable in one case and extremely unreasonable in another." *Crosby v. SSA*, 796 F.2d 576, 579–80 (1st Cir. 1986); *Lamarche*, 2024 WL 2502929, at *8 (collecting cases holding that the *TRAC* analysis precluded

14

certification of Rule 23(b)(2) classes seeking to compel adjudication).

*Third*, Plaintiffs' assertion that the pause on adjudication of certain benefits is "contrary to the statutory regime" cannot be decided on a common basis. Doc. No. 68 at ¶ 329. That antecedent legal question of whether the "statutory regime" gives applicants the right to adjudication of these benefits can only be resolved by reference to the particular statutes governing the particular benefit applications at issue—some of which are discretionary. *See supra* at 8; Doc. No. 42 at 17, 20. Plaintiffs' ill-defined class encompasses people who have applied for all kinds of unspecified immigration benefits—regardless of whether the Representative Plaintiffs have also sought those benefits—and whose claims cannot reasonably be analyzed together for purposes of determining whether Defendants have exceeded their authority.

*Fourth*, as explained above, only three categories of parolees in the Immigration Benefits class are even subject to the benefits adjudications pause in the Davidson Memo: U4U, FRP and CHNV parolees (per the Court's order, CHNV is not addressed here). Benefits requests filed by OAW, MPIP, and CAM parolees are not subject to the pause. Doc. No. 41-4 at 3, ¶ 6. It is not even clear how OAW, MPIP and CAM parolees who are already in the country and have pending applications for immigration benefits are injured by the challenged agency actions. But certainly, their claims are not common with those of other class members who are subject to the pause. Omar Doe's claims, for example, are not typical of those of other Plaintiffs or class members who are subject to the benefits pause, because Omar Doe was paroled under OAW, and there is no indication in the record that his pending application for a Special Immigrant Visa is paused.

*Finally*, as noted in Section I, the Immigration Benefits class includes aliens who speculate their immigration benefits applications may be paused due to the Government's future action. As this future agency action does not exist, and none of the Plaintiffs are subject to it, it is impossible

for the Court to determine whether there are common questions in assessing that future action or whether Plaintiffs' claims are typical of those future class members. *See Rahman v. Chertoff*, 530 F.3d 622, 627 (7th Cir. 2008) (vague, open-ended class definition cannot satisfy typicality).

### B. The Sponsor Class Lacks Commonality and Typicality.

Commonality and typicality are also not satisfied for the Sponsor Subclass. Even assuming that anyone in the Sponsor Subclass has standing to seek the relief sought in this lawsuit (they do not, *see supra* § I), at minimum, the inquiry into whether class members have standing is not a common one. Plaintiffs' own complaint demonstrates that each supporter has different and varying alleged interests and injuries, depending on their relationship to the parole beneficiaries (if any) and the nature of the particular parole program at issue. Doc. No. 68 at ¶¶ 28-35. Further, just like the Immigration Benefits class, this class impermissibly includes sponsors who are subject to future "subsequent actions by Defendants to pause or otherwise terminate the processing" of applications to support a beneficiary for any humanitarian parole process. Those future actions do not yet exist, and thus cannot be evaluated under the APA on a common basis with current actions. *See supra* § II. Nor are the current Sponsor Plaintiffs' claims typical of claims of those subject to future, unspecified actions that must be evaluated on their own under the APA.

### IV. Plaintiffs' Proposed Classes Do Not Satisfy Rule 23(b)(2)'s Requirements.

A class may be maintained under Federal Rule of Civil Procedure 23(b)(2) only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Quadrelli v. Moniz*, No. 20-cv-10685-ADB, 2020 WL 3051778, at *6 (D. Mass. June 8, 2020) (quoting *Wal-Mart Stores*, 564 U.S. at 360); *see also In re Navy*

*Chaplaincy*, 306 F.R.D. 33, 56 (D.D.C. 2014) (class not maintainable under Rule 23(b)(2)). "By virtue of its requirement that the plaintiffs seek to redress a common injury ... Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive." *Lemon v. Int'l Union of Operating Engr's*, Local No. 139, AFL–CIO, 216 F.3d 577, 580 (7th Cir. 2000); *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 297 (D. Mass. 2011). The key to a (b)(2) class is that "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360. Rule 23(b)(2) is not satisfied when each class member "would be entitled to a different injunction or declaratory judgment." *Id.*

Plaintiffs claim that Rule 23(b)(2) is satisfied because "[t]he appropriate remedy [] is uniform among all class members: restoration of the *status quo ante* with adjudications for parole and/or re-parole requests under [], OAW, U4U, CAM, MPIP, FRP and other parole processes as well as other requests for immigration benefits for parolees." Doc No. 47 at 15. But, as explained, *supra* §§ I, II, this relief will not redress the injuries of all class members or any of the Plaintiffs.

The Immigration Benefits Subclass includes those who filed applications for immigration benefits years ago, and those who filed only recently; those who seek re-parole; those who seek a variety of other undefined immigration benefits or relief such as TPS, asylum, adjustment of status, or U nonimmigrant status; those who have already been placed in removal proceedings, and those who have not. These are meaningful distinctions as to whether the injunction or declaratory judgment sought in this action could possibly provide relief to each member of the class.

The crux of the Immigration Benefits subclass' injury—and of their claims that the agency guidance is unlawful—is that their pending immigration benefits applications will take longer to adjudicate by virtue of the pause than they would have otherwise, such that some of these individuals may be placed in removal proceedings or removed before adjudication. *See supra* at 6.

But no single injunction or declaratory relief against the challenged guidance can prevent any of these events for each class member. Parole is, by definition, temporary. While parolees may apply for other immigration benefits during their period of parole, there is neither any guarantee nor any requirement that such applications will be adjudicated before the parole period expires. Once a parolee's parole expires, he may be placed in removal proceedings. This is true even if he has a pending application for another immigration benefit. Indeed, some class members may already be in removal proceedings, and an order from this court vacating or enjoining the Huffman, Higgins and Davidson guidance would serve no benefit to them.

For example, consider a hypothetical class member, John Doe. He was paroled into the United States under U4U in 2022. In 2023, he married a United States citizen who submitted an I-130 petition to classify him as an immediate relative, and John Doe simultaneously filed an I-485 application to adjust status to a lawful permanent resident on that basis. In 2024, his parole expired while his I-130 and I-485 applications were pending. In 2025, he was placed in removal proceedings. John Doe falls within the Immigration Benefits subclass. But an injunction by this court vacating the Davidson memorandum would not help him. In fact, even individual mandamus relief would be out of reach for him. Rather, he would have to seek relief in his removal proceedings. Now consider hypothetical Jane Doe. In 2023, Jane, a Honduran national, was granted parole under the CAM program. In 2024, Jane filed for asylum. The Government has not yet adjudicated Jane's asylum application—that process often takes years. No injunction by this Court will affect Jane because the Davidson Memo does not apply to her.

These examples demonstrate that the Immigration Benefits Subclass will not be affected in the same way by relief pertaining to the challenged guidance. For most, to seek relief that will even arguably stem their alleged series of harms, Immigration Benefits subclass members would

need to file individual actions for unreasonable delay in adjudication of those benefits, though none of the individual plaintiffs have alleged facts to support such a claim. Others may need to seek relief in removal proceedings. In fact, Plaintiffs acknowledge that unidentified class members may seek individual relief. Doc No. 47 at 11 ("Plaintiffs would exclude from the class definition any individuals or groups who choose to opt out of the class in order to seek relief in separate litigation."). But under a proper application of Rule 23(b)(2), "[c]lass members have no need to opt out because the best result absent class members could receive is the same relief they would have received as class members." *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 7 (D. Mass. 2010). The fact that the "best result" an absent class member could receive—an order finding the Government unreasonably delayed adjudication of his immigration benefit application, and ordering the Government to adjudicate it by a date certain—is different from the relief sought in this case, demonstrates why certification under Rule 23(b)(2) is improper.

A single injunction or declaratory judgment against the Huffman and Higgins guidance also would not remedy the alleged injuries of the Sponsor Subclass in a uniform manner. At the outset, Plaintiffs do not articulate any injury to the Sponsor Subclass in their class certification motion. And the injuries Plaintiffs assert in their Complaint and other briefing are not cognizable or capable of redress. Those injuries seemingly fall into three categories: *First*, these Plaintiffs allege emotional harm from either the possibility that a loved one may not be able to come to the United States, Doc. No. 68 at ¶ 266, or potential separation from loved ones who are seeking parole-in-place and may be placed in removal proceedings. Doc. No. 68 at ¶ 252. But these harms are both speculative and unlikely to be redressed by classwide relief. Even if the Court enjoined all the guidance at issue, no alien is entitled to a grant of parole, even if he has already been granted advance travel authorization. And even if the Huffman and Higgins guidance were vacated, those

beneficiaries who are within the United States may still ultimately obtain other relief or protection from removal. *Second*, Plaintiffs allege that the Sponsor Subclass has sustained an injury in the way of past expenditure of time, money and resources. Doc. No. 25 at 34-35. But none of these harms can be remedied by the relief sought in this litigation, which is purely prospective, and would not guarantee any grants of parole. *Third*, Plaintiffs allege that supporters may have to spend more money if those they support lose their work authorization (as a consequence of losing parole). Doc. No. 68 at ¶ 247; Doc. No. 25 at 35. However, this does not relate to the harms allegedly suffered by the Sponsor Subclass, which is defined as those with "pending applications to sponsor a beneficiary for any humanitarian parole process"—that is, those for whom parole has not yet been granted. Moreover, this alleged injury is individualized and speculative, and cannot be remedied by relief against the guidance because there is no guarantee of continuation of parole.

In sum, Plaintiffs cannot meet the requirements of Rule 23(b)(2) for either proposed class. The injuries of both classes are not redressable by class-wide injunctive or declaratory relief. *See also supra* § I. It is axiomatic that where redressability is lacking, Section 23(b)(2)'s core requirement—that a single injunction must remedy the entire class's harm—cannot be met. Individualized relief, to the extent available, would be necessary to address the class members' claimed injuries.

## CONCLUSION

The Court should deny Plaintiffs' motion for class certification.

DATED: April 4, 2025              Respectfully submitted

By: /s/ *Katherine J. Shinners*
KATHERINE J. SHINNERS
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
*Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 4, 2025, I electronically filed this motion with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: _/s/ Katherine J. Shinners_
      KATHERINE J. SHINNERS
      Senior Litigation Counsel
      U.S. Department of Justice