YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

MICHELLE LATOUR
*Deputy Director*

PATRICK GLEN
BRIAN C. WARD
KATHERINE J. SHINNERS
*Senior Litigation Counsel*

ELISSA FUDIM
ZACHARY CARDIN
DANIEL SCHUTRUM-BOWARD
JOSEPH A. DARROW
*Trial Attorneys*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-7537
Email: joseph.a.darrow@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ ) | Civil Action No. 1:25-cv-10495 |
| Svitlana Doe, *et al.*, ) |  |
| ) |  |
| Plaintiffs, ) |  |
| ) |  |
| v. ) |  |
| ) |  |
| Kristi Noem, in her official capacity as ) |  |
| Secretary of Homeland Security, *et al.*, ) |  |
| ) |  |
| Defendants. ) |  |
| _____ ) |  |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
## EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION (Doc. No. 70)

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

STANDARD ....................................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

    I.    The Court Lacks Jurisdiction Over Plaintiffs' Request. ...................................... 4

        A.    Plaintiffs Have not Established Standing to Seek Injunctive Relief. ............................. 4

        B.    Section 1252(a)(2)(B)(ii) Precludes Jurisdiction. ......................................... 7

    II.    Plaintiffs Are Not Likely to Succeed on the Merits Because they Cannot Obtain APA Review of Their Claims. ..................................................................................... 8

    III.    Plaintiffs Are Not Likely to Succeed on the Merits of their APA Claims.................... 10

    IV. Plaintiffs Do Not Satisfy the Remaining Factors for Obtaining Injunctive Relief. ............ 17

    V.  At Minimum, Any Relief Must be Limited and Subject to Bond....................................... 19

CONCLUSION................................................................................................................... 20

## **TABLE OF AUTHORITIES**

*Aldea-Tirado v. PricewaterhouseCoopers, LLP,*
 101 F.4th 99 (1st Cir. 2024) ........................................................................ 16

*Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell,*
 No. 25-cv-10276-GAO, 2025 WL 470459 (D. Mass. Feb. 12, 2025) ........................ 6

*Amanullah v. Nelson,*
 811 F.2d 1 (1st Cir. 1987) ...................................................................... 1, 11

*Arizona v. United States,*
 567 U.S. 387 (2012) .................................................................................. 19

*Bank of Commerce v. Bd. of Governors of Fed. Res. Sys.,*
 513 F.2d 164 (10th Cir. 1975) ...................................................................... 16

*Baxter v. Palmigiano,*
 425 U.S. 308 (1976) .................................................................................. 20

*Biden v. Texas,*
 597 U.S. 785 (2022) ............................................................................... 9, 10

*Camp v. U.S. Bureau of Land Mgmt.,*
 183 F.3d 1141 (9th Cir. 1999) ................................................................. 11, 15

*Charlesbank Equity Fund II v. Blinds To Go, Inc.,*
 370 F.3d 151 (1st Cir. 2004) ....................................................................... 18

*Cheejati v. Blinken,*
 106 F.4th 388 (5th Cir. 2024) ........................................................................ 8

*Clarke v. Security Indus. Ass'n,*
 479 U.S. 388 (1987) .................................................................................. 10

*Dep't of Navy v. Egan,*
 484 U.S. 518 (1988) .................................................................................. 19

*DHS v. Regents,*
 591 U.S. 1 (2020) ...................................................................................... 8

*Doe #1 v. Trump,*
 944 F.3d. 1222 (9th Cir. 2019) ..................................................................... 19

*FDA v. Alliance for Hippocratic Medicine,*
 602 U.S. 367 (2024) ................................................................................ 5, 6

*FDA v. Wages & White Lion Invs., L.L.C.*,
  No. 23-1038, 2025 WL 978101 (U.S. Apr. 2, 2025) ............................................ 15

*Fed'n for Am. Immigration Reform (FAIR), Inc. v. Reno*,
  93 F.3d 897 (D.C. Cir. 1996) ............................................................................ 11

*Geda v. USCIS*,
  126 F.4th 835, 846 (3d Cir. 2025) ...................................................................... 8

*Gill v. Whitford*,
  585 U.S. 48 (2018) ...................................................................................... 4, 20

*Great Lakes Dredge & Dock Co., LLC v. Philly Shipyard, Inc.*,
  2024 WL 5109416 (E.D. Pa. Dec. 13, 2024) ...................................................... 17

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) ........................................................................................... 7

*Haig v. Agee*,
  453 U.S. 280 (1981) ......................................................................................... 19

*Hassan v. Chertoff*,
  593 F.3d 785 (9th Cir. 2010) ............................................................................ 18

*Heckler v. Chaney*,
  470 U.S. 821 (1985) ......................................................................................... 10

*Henderson v. Baldwin*,
  54 F. Supp. 438 (W.D. Pa. 1942) ...................................................................... 12

*Ibragimov v. Gonzales*,
  476 F.3d 125 (2d Cir. 2007) .............................................................................. 13

*INS v. Legalization Assistance Project*,
  510 U.S. 1301 (1993) ....................................................................................... 20

*Jean v. Nelson*,
  472 U.S. 846 (1985) ........................................................................................... 9

*Kucana v. Holder*,
  558 U.S. 233 (2010) ........................................................................................... 8

*LaMarche v. Mayorkas*,
  691 F. Supp. 3d 274 (D. Mass. 2023) ....................................................... 8, 9, 10

*Leng May Ma v. Barber*,
    357 U.S. 185 (1958) ........................................................................................... 13

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ............................................................................................. 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 4

*Mass. Correction Officers Federated Union v. Baker*,
    567 F. Supp. 3d 315 (D. Mass. 2021) ............................................................... 18

*Munaf v. Geren*,
    553 U.S. 674 (2008) ............................................................................................. 3

*Nat'l Ctr. for Immigrants Rights, Inc. v. INS*,
    743 F.2d 1365 (9th Cir.1984) ........................................................................... 20

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
    434 U.S. 1345 (1977) ......................................................................................... 19

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................................... 4, 18

*Nw. Airlines, Inc. v. Transp. Workers Union of Am.*,
    451 U.S. 77 (1981) ............................................................................................... 5

*Nw. Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*,
    496 F. Supp. 3d 31 (D.D.C. 2020) ..................................................................... 4

*Patel v. Garland*,
    142 S. Ct. 1614 (2022) ........................................................................................ 8

*Roe v. Mayorkas*,
    No. 22-cv-10808-ADB, 2023 WL 3466327 (D. Mass. Apr. 28, 2023) .............. 8, 10

*Sessions v. Morales-Santana*,
    582 U.S. 47 (2017) ............................................................................................... 5

*Sierra Club v. Larson*,
    769 F. Supp. 420 (D. Mass. 1991) ................................................................... 19

*Thigulla v. Jaddou*,
    94 F.4th 770 (8th Cir. 2024) ............................................................................... 8

*Thompson v. N. Am. Stainless*,
    562 U.S. 170 (2011) ............................................................................................ 10

*Turner v. U.S. Att'y Gen.*,
    130 F.4th 1254 (11th Cir. 2025) ....................................................................... 12

*U.S. v. Fausto*,
    484 U.S. 439 (1988) ............................................................................................ 11

*United States v. Chem. Found.*,
    272 U.S. 1 (1926) ................................................................................................ 21

*United States v. Maxwell*,
    254 F.3d 21 (1st Cir. 2001) ............................................................................... 16

*United States v. Texas*,
    599 U.S. 670 (2023) ........................................................................................ 4, 7

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................................... 4, 18

*Zheng v. Napolitano*,
    2009 WL 1258908 (D. Colo. May 4, 2009) ..................................................... 14

## STATUTES

5 U.S.C. § 701(a)(2) ................................................................................................... 9, 10

5 U.S.C. § 705 ................................................................................................................. 4

5 U.S.C. § 706(2) ............................................................................................................ 3

8 U.S.C. § 1182(d)(5) ................................................................................................... 19

8 U.S.C. § 1182(d)(5)(A) .................................................................................. 1, passim

8 U.S.C. § 1182(d)(5)(C) ............................................................................................... 4

8 U.S.C. § 1225(b) ....................................................................................................... 12

8 U.S.C. § 1225(b)(1)(A)(iii)(II) .................................................................................. 13

8 U.S.C. § 1226(e) ........................................................................................................ 11

8 U.S.C. § 1252(a)(2)(A) .............................................................................................. 13

8 U.S.C. § 1252(a)(2)(B)(ii) ............................................................................... 7, 10, 11

8 U.S.C. § 1252(a)(5) ............................................................................................... 11

8 U.S.C. § 1252(a)(9) ............................................................................................... 11

8 U.S.C. § 1252(e) .................................................................................................... 13

8 U.S.C. § 1432 ........................................................................................................ 13

44 U.S.C. § 1505 ...................................................................................................... 16

44 U.S.C. § 1507 ............................................................................................... 12, 16

## REGULATIONS

8 C.F.R. § 1.2 .................................................................................................... 12, 18

8 C.F.R § 103.2(b)(19)(ii)(B) .................................................................................. 17

8 C.F.R. § 212.0 ....................................................................................................... 12

8 C.F.R. § 212.5(d) .................................................................................................. 14

8 C.F.R. § 212.5(e) .................................................................................................. 18

8 C.F.R § 212.5(e)(2)(i) ................................................................................. 3, 12, 14

8 C.F.R. § 274a.12(c)(11) .......................................................................................... 6

8 C.F.R. § 274a.14(b)(1)(i) ...................................................................................... 17

8 C.F.R. § 274a.14(b)(2) .......................................................................................... 17

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 65(c) ............................................................................................... 20

## FEDERAL REGISTER

87 Fed. Reg. 63507 (Oct. 19, 2022) ........................................................................... 2

88 Fed. Reg. 1243 (Jan. 9, 2023) ............................................................................... 2

88 Fed. Reg. 1255 (Jan. 9, 2023) ............................................................................... 2

88 Fed. Reg. 1266 (Jan. 9, 2023) ............................................................................... 2

88 Fed. Reg. 1279 (Jan. 9, 2023) ............................................................................... 2

90 Fed. Reg. 13611-01 (Mar. 25, 2025) ..................................................................... 2

## INTRODUCTION

Plaintiffs are beneficiaries of discretionary parole programs for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV), under which they requested and received discretionary, temporary grants of parole, as well as supporters of or organizations providing services to parole recipients. Despite the temporary, discretionary nature of parole recipients' permission to remain in the United States, and even though they retain the ability to request a discretionary grant of parole outside those programs, they now ask the Court to compel the continuation of all parole recipients' parole terms under the programs by seeking to enjoin the CHNV program's termination. The Court should decline to entertain such extraordinary relief intruding into the Executive's exercise of discretionary immigration authority.

Even assuming Plaintiffs could establish standing to seek relief from the program's termination (they cannot) and that their claims challenging the discretionary action are reviewable under the APA (they are not), Plaintiffs cannot succeed in showing the CHNV termination is likely unlawful. The Department of Homeland Security (DHS) has "remarkably broad" statutory discretion concerning the exercise of parole authority under 8 U.S.C. § 1182(d)(5)(A). *Amanullah v. Nelson*, 811 F.2d 1, 6 (1st Cir. 1987). That statute authorizes the Secretary of Homeland Security, "in [her] discretion," to "parole" applicants for admission "temporarily under such conditions as [the Secretary] may prescribe" "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). It further provides that parole may be terminated "when the purposes of such parole shall, *in the opinion of* the Secretary of Homeland Security, have been served." *Id.* DHS's decision to terminate the CHNV program and existing grants of parole under that program is within this statutory authority and comports with the notice requirements of the statute and regulations. Additionally, given the temporary nature of CHNV

parole and CHNV parolees' pre-existing inability to seek re-parole under the program, their harms are outweighed by the harms to the public if the Secretary is not permitted to discontinue a program she has determined does not serve the public interest. Finally, the requested universal relief is at minimum overbroad, as it goes far beyond addressing the alleged harms of the parolee Plaintiffs.

## BACKGROUND

The Parole Programs. Plaintiffs claim to be beneficiaries and sponsors of multiple parole programs administered by Defendants within the past several years, including the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV). Doc. No. 25 at 12. Under the CHNV parole program, nationals of Cuba, Haiti, Nicaragua and Venezuela who met eligibility requirements, including a U.S. supporter, could be considered for discretionary advance authorization to travel to certain United States ports of entry to request discretionary consideration for parole for up to a two-year term. *Implementation of a Parole Process for Venezuelans*, 87 Fed. Reg. 63507 (Oct. 19, 2022), as amended by 88 Fed. Reg. 1279 (Jan. 9, 2023); 88 Fed. Reg. 1266 (Jan. 9, 2023) (same for Cubans); 88 Fed. Reg. 1243 (Jan. 9, 2023) (same for Haitians);88 Fed. Reg. 1255 (Jan. 9, 2023) (same for Nicaraguans). The CHNV parole programs were paused in July 2024 due to fraud concerns.[1] On October 4, 2024, DHS announced that was no re-parole process under the CHNV program. 90 Fed. Reg. at 13617 & n.62.

Factual and Procedural History. In a Federal Register Notice published March 25, 2025, DHS terminated the CHNV parole programs. *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13611-01 (Mar. 25, 2025) (FRN); Doc. No. 71-1. Grants of parole under CHNV that have not already expired by April 24, 2025, will

---

[1] Stephen Dinan, "'Parole' program put on hold amid massive fraud," Wash. Times (Aug. 2, 2024), at    https://www.washingtontimes.com/news/2024/aug/2/dhs-suspends-parole-program-amid-rampant-fraud/.

terminate on that date unless the Secretary decides to the contrary in individual cases. *Id.* at 13,611. Upon re-examination and based on DHS's experience operating them, the Secretary determined that the CHNV programs "do not serve a significant public benefit, are not necessary to reduce levels of illegal immigration, did not sufficiently mitigate the domestic effects of illegal immigration, are not serving their intended purposes, and are inconsistent with the Administration's foreign policy goals." *Id.* at 13612. To the extent that "urgent humanitarian reasons" supported any grants of parole under CHNV, "DHS believes that [such] reasons for granting parole [are] best addressed on a case-by-case basis consistent with the statute, and taking into consideration each alien's specific circumstances." *Id.* The FRN provided notice of the termination of parole for CHNV parolees. *Id.* at 13,620; *see* 8 C.F.R § 212.5(e)(2)(i).

Plaintiffs—14 aliens claiming to be beneficiaries of one the parole programs (Parolee Plaintiffs), 9 U.S. citizens or lawful permanent residents claiming to be supporting aliens in the parole programs (Supporter Plaintiffs), and one organization, the Haitian Bridge Alliance (HBA), claiming to provide services to CHNV parolees and supporters from Haiti—challenge, as relevant here, the CHNV FRN under the APA, 5 U.S.C. § 706(2). On March 27, 2025, Plaintiffs filed a "supplemental" motion to preliminarily enjoin Defendants from implementing the FRN, arguing that the FRN is contrary to 8 U.S.C. § 1182(d)(5)(A) and DHS regulations requiring written notice to terminate parole or parole-based work authorization. Doc. Nos. 70, 72.

## STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" that "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The factors assessing harm to the opposing party and weighing the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The same standard governs a request to stay the effective date of an administrative action under 5 U.S.C. § 705. *See Nw. Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs*., 496 F. Supp. 3d 31, 45 (D.D.C. 2020). The Court may not issue relief that is broader than necessary to remedy actual harm shown by specific Plaintiffs. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018).

## ARGUMENT

## I.    The Court Lacks Jurisdiction Over Plaintiffs' Request.

### A.  Plaintiffs Have not Established Standing to Seek Injunctive Relief.

Plaintiffs cannot demonstrate a concrete and particularized "injury in fact" that is "fairly ... trace[able] to the" FRN and "likely" to be "redressed" by the preliminary injunction they seek. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

First, HBA and the Supporter Plaintiffs, as third parties who are not the subject of the challenged parole termination, cannot establish standing to enjoin the FRN. "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562. Generally, a plaintiff lacks a cognizable interest in the Executive Branch's discretionary immigration enforcement decisions over others. *See United States v. Texas*, 599 U.S. 670 (2023) (finding that States, as non-regulated third parties, lacked standing to challenge immigration enforcement guidelines). Further, Congress has specifically authorized suit, and thus defined standing, for certain state officials to challenge policies concerning parole under § 1182(d)(5)(A), but has not done likewise for organizations or parole supporters. *See* 8 U.S.C. § 1182(d)(5)(C). This omission is meaningful, because "when Congress wanted to provide a right to" sue over

parole decisions, "it did so expressly." *See Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 92 & n.24 (1981).[2]

Organizational Plaintiff HBA's asserted injury based on its use of resources to assist Haitian parolees in response to the FRN does not overcome this standing hurdle. *See* Doc. No. 71-3 at ¶¶ 11–12. To show a concrete injury, it is not enough that "an organization diverts its resources in response to defendant's actions" even if it will "expend considerable time, energy, and resources." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394–95 (2024) (*Alliance*). An unregulated organization must instead show that the challenged action "perceptibly impair[s]" or "interferes with" its activities by imposing an affirmative "impediment" to performing those activities. *See id.* HBA's proffered evidence does not satisfy this standard. HBA asserts that it has devoted resources to "analyz[ing] the FRN," providing information to Haitian parolees, and providing "humanitarian and legal assistance to individuals" due to the upcoming termination of their employment authorization. *See* Doc. No. 71-3 at ¶¶ 11–12. It has also updated its "educational materials" to address the FRN. *Id.* at ¶ 15. Thus, at most, HBA has voluntarily diverted its resources from conducting core activities—providing humanitarian and legal support to recent Haitian arrivals, *see id.* at ¶ 8—for one set of clients to conducting the same type of activities for the particular clients impacted by the FRN. HBA does not, and cannot, assert that the FRN actually impedes HBA's activities. And as the Supreme Court's reasoning in *Alliance* made clear, an organization cannot demonstrate standing any time

_____

[2] The Supporter Plaintiffs, who assert no injury to themselves from the FRN, cannot establish standing based on asserted harms to parolees. *See* Doc. No. 72 at 13, 20–23. Courts only recognize standing to assert others' rights in special cases where the third-party plaintiff has "a close relationship with the person who possesses the right [and] there is a hindrance to the possessor's ability to protect his own interests." *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017). The Supporter Plaintiffs have not asserted any hindrance to any current CHNV parolee's ability to bring her own claim. Nor can they, as several CHNV parolees have brought their own claims here.

it shifts resources in response to a policy from one set of direct-service activities to another set of similar activities in support of its mission. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell*, No. 25-cv-10276-GAO, 2025 WL 470459, at *2 (D. Mass. Feb. 12, 2025) (holding that union lacked standing to challenge directive to member employees despite "choosing to divert resources towards 'respond[ing] to tremendous uncertainty created by [the challenged] actions' and away from other union priorities"). To hold otherwise would impermissibly allow organizations to create standing to challenge any policy that touches on their mission by voluntarily devoting resources toward responding to the policy. *See Alliance*, 602 U.S. at 394.

The Parolee Plaintiffs also lack standing because their alleged injuries are not redressable by an injunction or stay of the FRN. Regardless of the existence of the FRN, DHS retains its statutory authority to grant or deny parole based on any urgent humanitarian reason or significant public benefit. *See* 8 U.S.C. 1182(d)(5)(A). Even under the FRN, DHS is free to exercise that statutory discretion—the FRN is clear that DHS officers may "make[] an individual determination to the contrary" of the general guideline for terminating CHNV parole as of April 24, 2025. 90 Fed. Reg. at 13612, 13618. Likewise, DHS retains its statutory discretion to terminate Plaintiffs' parole terms absent the FRN ending the CHNV program. *See* 8 U.S.C. § 1182(d)(5)(A) (Secretary may end parole when "in" her "opinion" its purposes have been served). Redressability cannot be established where a "judicial decree rendering" guidance "a nullity does nothing to change the fact that federal officials possess the same underlying" discretion without the guidance. *See United States v. Texas*, 599 U.S. 670, 691 (2023) (Gorsuch, J., concurring). Because enjoining the FRN would not eliminate the agency's underlying statutory ability to terminate parole for each CHNV parolee, 90 Fed. Reg. at 13612, redressability is lacking. *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023).

**B.  Section 1252(a)(2)(B)(ii) Precludes Jurisdiction.**

In 8 U.S.C. § 1252(a)(2)(B)(ii), Congress precluded review of the termination of parole. That statute provides: "no court shall have jurisdiction to review . . . any other decision or action . . . the authority for which is specified . . . to be in the discretion of the . . . Secretary." The exercise of parole authority under § 1182(d)(5)(A)—which permits the Secretary of Homeland Security to, "in [her] discretion" temporarily parole an applicant for admission into the United States and to terminate that parole "when the purposes of such parole . . ., in the opinion of the Secretary of Homeland Security, have been served"—is just such a "decision or action" that is subject to the bar. *See* 8 U.S.C. § 1182(d)(5)(A). Section 1252(a)(2)(B)(ii) thus precludes jurisdiction over Plaintiffs' challenges to the decision to terminate parole, as publicized in the CHNV FRN.

Plaintiffs argue that § 1252(a)(2)(B)(ii) does not apply as they are "challenging overarching policy, not individual decisions." Doc. No. 72 at 14. This is wrong. *First*, the CHNV parole programs were explicit that those "overarching policy" judgments were entirely discretionary as well under the statute. *See, e.g.*, 88 Fed. Reg. at 1277 ("The Secretary retains the sole discretion to terminate the Parole Process for Cubans at any point …. This process is being implemented as a matter of the Secretary's discretion. It is not intended to and does not create any rights …."). *Second*, Plaintiffs present no reason why the FRN's announcement of the decision to terminate numerous CHNV parolees' existing parole terms is distinguishable from an individual decision to terminate a particular grant of parole for purposes of § 1252(a)(2)(B)(ii). *Third*, § 1252(a)(2)(B)(ii) also bars review of "overarching policy" judgments concerning how the "individual decisions" based on the reasoning in *Patel v. Garland*, 596 U.S. 328 (2022). In *Patel*, the Supreme Court held that sister subsection 1252(a)(2)(B)(i), which bars jurisdiction to review "any judgment regarding the granting of relief" under certain INA provisions bars review of "judgments of whatever kind" covered by the statute, and "not just discretionary judgments or the

last-in-time judgment," and so this provision "encompasses not just the granting of relief but also any judgment relating to the granting of relief." *Id.* at 338–39; *see Kucana v. Holder,* 558 U.S. 233, 247 (2010) (explaining that §§ 1252(a)(2)(B)(i) and (ii) cover decisions "of a like kind"). Plaintiffs' insistence that *Patel* barred only "review of a particular discretionary decision" ignores the Court's explanation that the statutory bar applied to every decision in the chain leading to that particular decision, including, as relevant to the CHNV termination, the agency's guidance related to that ultimate discretionary judgment. Similarly, Plaintiffs' reliance on *Roe v. Mayorkas*, 2023 WL 3466327 (D. Mass. Apr. 28, 2023) and *LaMarche v. Mayorkas*, 691 F. Supp. 3d 274 (D. Mass. 2023), is misplaced. *Roe* wholly failed to address the implications of *Patel* for the scope of section 1252(a)(2)(B)(ii). *See* 2023 WL 3466327, at \*7. Indeed, more recent circuit court decisions have held that § 1252(a)(2)(B)(ii) bars review of DHS policies concerning discretionary adjustment adjudications. *See Thigulla v. Jaddou*, 94 F.4th 770 (8th Cir. 2024); *Cheejati v. Blinken*, 106 F.4th 388 (5th Cir. 2024); *Geda v. USCIS*, 126 F.4th 835, 846 (3d Cir. 2025). And unlike the policy decision challenged here, *Lamarche* dealt with the alleged withholding or delay of an agency decision, 691 F. Supp. 3d 274, 277 (D. Mass. 2023) ("delay is not a discretionary decision"). Finally, unlike the CHNV parole programs, the DACA program addressed in *Regents* was not based on a statute explicitly conferring discretion as required by section 1252(a)(2)(B)(ii). *See* Doc. No. 72 at 14 (citing *DHS v. Regents*, 591 U.S. 1, 17-19 (2020)).

## II.    Plaintiffs Are Not Likely to Succeed on the Merits Because they Cannot Obtain APA Review of Their Claims.

Threshold APA requirements likewise bar Plaintiffs' claims. *First,* Plaintiffs cannot obtain APA review because they challenge agency conduct "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). The APA does not provide for review of DHS's expressly discretionary determination to end a parole process. The text of

§ 1182(d) commits decisions to grant or deny parole explicitly to the "discretion" of the Secretary of Homeland Security. 8 U.S.C. § 1182(d)(5)(A). And while the statute places restrictions on the grant of parole, including its case-by-case and humanitarian or public-interest requirements, it places absolutely no limits on the Secretary's discretion to deny or terminate parole, which she may end simply "when the purposes of such parole shall, *in [the Secretary's] opinion . . .* have been served." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). The decision to terminate the CHNV parole programs involves the "complicated balancing of a number of factors which are peculiarly within [agency] expertise," including the Executive Branch's comprehensive efforts to manage foreign affairs and border security, 90 Fed. Reg. at 13616, for which there are no judicially manageable standards permitting court superintendence. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985). And as discussed, the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii) likewise precludes APA review. *See* 5 U.S.C. § 701(a)(1).

Plaintiffs' only argument on this point is that "while individual parole decisions are discretionary, the Supreme Court has explicitly said that DHS's parole policies are subject to APA review." Doc. No. 72 at 14 (citing *Biden v. Texas*, 597 U.S. 785, 806-07 (2022)). What the Supreme Court *actually* stated was that DHS's exercise of its "discretion *to parole* applicants" was limited by the statute's requirement that parole be "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit" and its exercise of its discretion to *grant* parole under that framework must be reasonable and reasonably explained. *Texas*, 597 U.S. at 806 (emphasis added). The opinion does not speak to DHS's discretion *to deny* parole, *terminate* parole, or *end* a parole program, on which the statute places no restrictions. *See id.*[3]

---

[3] Plaintiffs also cite *Roe* and *LaMarche*. Doc. No. 72 at 15. *Roe* merely echoed the *Texas* analysis. *See* 2023 WL 3466327, at *9. *Lamarche* is inapplicable here, as it dealt with whether there is APA

*Second*, APA review is also unavailable here because HBA and the Supporter Plaintiffs' claims do not fall within the zone of interests of § 1182(d)(5)(A). A plaintiff "may not sue unless he falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Thompson v. N. Am. Stainless*, 562 U.S. 170, 177 (2011). This inquiry asks whether Congress intended for a particular plaintiff to invoke a particular statute to challenge agency action. *See Clarke v. Security Indus. Ass'n*, 479 U.S. 388, 399 (1987). Nothing in § 1182(d)(5)(A) evinces any concerns with the interests of organizations or supporters in assisting parolees or enforcing the statute's provisions. *See Fed'n for Am. Immigration Reform (FAIR), Inc. v. Reno*, 93 F.3d 897, 902 (D.C. Cir. 1996). Indeed, the parole statute does not even mention supporters or sponsors of parole, even though it specifically provides for suit by state officers. *See* 8 U.S.C. § 1182(d)(5)(A), (C). Thus, regardless of what role HBA or Supporter Plaintiffs have played in the CHNV programs, Congress has not indicated an intent that they could challenge actions under the parole statute. To the contrary, Congress has provided that only the aliens against whom the immigration laws are being enforced may challenge application of those laws—and then only in certain circumstances and through removal proceedings, which is strong evidence that Congress intended to preclude suit by other parties. *See, e.g.,* 8 U.S.C. §§ 1226(e); 1252(a)(2)(B)(ii), 1252(a)(5), (b)(9), (g); *U.S. v. Fausto*, 484 U.S. 439, 448 (1988).

### III.    Plaintiffs Are Not Likely to Succeed on the Merits of their APA Claims.

Even assuming Plaintiffs' claims are reviewable, the termination of the CHNV programs accords with the statutory and regulatory authority granted to DHS.

The INA provides "sweeping" "statutory authority" to the Secretary of Homeland Security

---

review of "unreasonable delay or wholesale suspension" of parole adjudications. 691 F. Supp. 3d at 277.

in determining whether parole should be granted and when it should be terminated. *See Amanullah*, 811 F.2d at 6. Under the statute, the Secretary has authority, "in [her] discretion," to "parole" "temporarily under such conditions as [the Secretary] may prescribe," and "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled" and "his case shall continue to be dealt with in the same manner as that of any other applicant for admission[.]" 8 U.S.C. § 1182(d)(5)(A). Regulations implementing the parole authority address the mechanics of terminating parole before its expiration date, providing that "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [the Secretary or her designees], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien[.]" 8 C.F.R. § 212.5(e)(2)(i). Neither the statute nor regulations define or limit what may constitute "written notice" of termination, other than to provide that a charging document qualifies as "written notice." *See id.*

The Secretary's actions concerning CHNV parole are consistent with the statute and regulations. The Secretary determined, in her opinion, that whatever purposes parole under the CHNV programs had served, it was no longer serving those purposes, and that "neither humanitarian reasons nor public benefit" warranted continuation of parole under the program. *See generally* 90 Fed. Reg. at 13,612-17; *see also* 8 U.S.C. § 1182(d)(5)(A) (leaving to the Secretary the determination of when the purposes of parole have been served); 8 C.F.R. § 212.5(e)(2)(i) (similar). The Secretary thus published notice of that determination and its rationale in the *Federal Register* and provided electronic notice of termination to each individual parolee via their USCIS online account. *See* 8 C.F.R. § 212.5(e)(2)(i) (requiring written notice where parole is terminated prior to its expiration date); *see* 44 U.S.C. § 1507; *Camp v. U.S. Bureau of Land Mgmt.*, 183 F.3d

11

1141, 1145 (9th Cir. 1999) (generally, "publication in the Federal Register is legally sufficient notice to all interested or affected parties regardless of actual knowledge"); *Henderson v. Baldwin*, 54 F. Supp. 438, 440 (W.D. Pa. 1942); Doc. No. 88-1, Ex. A (USCIS notice).

Plaintiffs' arguments that these actions are contrary to law lack merit. *First*, Plaintiffs argue (Doc. No. 72 at 15-16) that the decision to terminate existing grants of parole before their expiration was based on a legally erroneous interpretation of the expedited removal statute, 8 U.S.C. § 1225(b)(1). Plaintiffs incorrectly claim that 8 U.S.C. § 1225(b)(1)(A)(iii)(II)—the provision of the expedited removal statute that DHS cites in the FRN, and which is limited to those who cannot demonstrate two years of continuous physical presence—"does not permit subjecting the CHNV parolees to expedited removal." Doc. No. 72 at 15. This provision permits the government to use expedited removal for an alien who "has not been admitted or paroled." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). The use of the present perfect tense ("has not been . . . paroled") here reflects a "state that continues into the present." *See Turner v. U.S. Att'y Gen.*, 130 F.4th 1254, 1261–62 (11th Cir. 2025) (construing former 8 U.S.C. § 1432 and explaining that the present perfect tense can "refer to a . . . state that continues into the present"). Accordingly, an alien who was paroled in the past, but whose parole has terminated or expired, may be processed for expedited removal under § 1225(b)(1)(A)(iiii)(II).[4] This textual interpretation comports with the statutory and historical context: when parole is revoked, an alien reverts to the status he possessed prior to the grant of parole which, in the case of all CHNV parolees, is that of an applicant for admission standing at the threshold of entry. *See* 8 U.S.C. § 1182(d)(5)(A) (at end of parole, alien "shall continue to be dealt with in the same manner as that of any other applicant for admission to

---

[4] Such an alien may also be processed for expedited removal as an alien "arriving in the United States" under § 1225(b)(1)(A)(i). *See also* 8 C.F.R. §§ 235.3(b)(1)(i), 1.2 ("An arriving alien remains an arriving alien even if paroled.")

the United States"); *Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958); *Ibragimov v. Gonzales*, 476 F.3d 125, 137 (2d Cir. 2007). Moreover, Plaintiffs cannot use this lawsuit to challenge the application of expedited removal, as review of expedited removal is extremely limited and systemic challenges, if proper, may only be brought in the District Court for the District of Columbia. *See* 8 U.S.C. § 1252(a)(2)(A), (e). But even assuming this justification was somehow in error, this would not warrant disturbing DHS's decision to terminate existing grants of parole, because that decision lies within DHS's discretion and is supported by DHS's separate findings that "neither humanitarian reasons nor public benefit warrants the continued presence of aliens paroled under the CHNV programs and the purposes of such parole therefore have been served." 90 Fed. Reg. at 13,620; *see also id.* at 13,614–16 (expressing concern with expanded public benefits eligibility of certain parolees), 13,619 ("recognizing strong interest in promptly returning parolees when the basis for the underlying parole no longer exists"); *Nadal-Ginard v. Holder*, 558 F.3d 61, 69 n. 7 (1st Cir. 2009) ("We therefore need not reach the [agency's] other rationale for its decision [because if the other rationale constituted error] . . . there was no prejudice"). And DHS retains the discretion to continue to grant parole on a case-by-case basis for urgent humanitarian reasons or significant public benefit. 90 Fed. Reg. at 13,612.

*Second*, Plaintiffs contend (Doc. No. 72 at 16-17) that the determination to end parole for all CHNV parolees via a single action is in violation of the parole statute's directive that such applications be granted only on a case-by-case basis. But the "case-by-case" requirement only governs grants of parole. The sole statutory requirement to terminate parole is that, "in the opinion of the Secretary," the purposes of parole have been served. 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. § 212.5(e)(2)(i). There is no explicit case-by-case requirement for parole termination in either the statute or the regulations and, although the issue has not arisen with frequency, the

government is unaware of any decision imposing the requirements that govern the *granting* of a parole application on the decision to *terminate* or *revoke* parole. *See*, *e.g.*, *Zheng v. Napolitano*, 2009 WL 1258908, at *2 (D. Colo. May 4, 2009) (rejecting argument asserted in habeas petition that sought to "engraft[] the requirements pertaining to initial parole decisions onto parole revocation decisions"). The parole programs themselves are clear that parole terminations are entirely discretionary. *See, e.g.*, 88 Fed. Reg. 1272 (Cuba program) ("DHS may terminate parole in its discretion at any time"). The Secretary made that determination here regarding the CHNV programs, and nothing more is required under either the statute or the regulations.[5]

In any event, given that the Secretary has determined that the CHNV parole program should no longer exist because there is no longer an urgent humanitarian reason or significant public benefit to support the parole program, *see* 90 Fed. Reg. at 13,612-17, it makes sense to conclude that parole should be terminated for the aliens granted parole under that program. There is no reason to undertake a granular case-by-case assessment of whether parole should be terminated in each case when that decision, for any particular individual, follows from the decision to end the broader program. Moreover, the Secretary retains the authority not to terminate parole in individual cases for significant public benefit or urgent humanitarian reasons, and DHS retains its discretion to *grant* parole to individuals on a case-by-case basis, under the statutorily prescribed standard, notwithstanding the termination of the CHNV programs and the corresponding termination of parole granted pursuant to those programs. *See id.* at 13,612.

---

[5] Plaintiffs seek to avoid this conclusion by arguing inconsistently, in a brief challenging the *termination* of parole programs, that what the Secretary was doing was "neither a denial nor a termination *per se*, but rather an *en masse* alteration of the conditions" of CHNV parole. Doc. No. 72 at 17. Yet the FRN is clear on its face that the Secretary is terminating parole, which is a distinct action from setting or altering the conditions of parole. Indeed, the regulations regarding conditions of parole assume an authorized period of parole is actually in place. *See* 8 C.F.R. § 212.5(d).

*Third*, Plaintiffs renew their argument that termination is premised on the incorrect legal conclusion that DHS lacks the authority to implement a categorical parole program. *See* Doc. No. 72 at 17-18. This is belied by the FRN, which nowhere asserts that the CHNV programs or grants of parole are being terminated because DHS believes them to violate the parole statute. *See* 90 Fed. Reg. 13,611. DHS stated that it "believes that consideration of any urgent humanitarian reasons for granting parole is best addressed on a case-by-case basis consistent with the statute and taking into consideration each alien's specific circumstances." Doc. No. 72 at 18 (quoting 90 Fed. Reg. at 13612). But this observation does not state that a categorical consideration of humanitarian reasons or public benefit would be legally prohibited in creating a program to receive requests for parole for case-by-case consideration. Instead of Plaintiffs' false construction of DHS's rationale, the FRN exhaustively documents the reasons DHS believes these programs are no longer warranted and why their continuation would not serve the humanitarian or public-interest justifications of the statute. *See id.* at 13612–17. Thus, even assuming DHS had alternatively relied on this justification, such a reliance would be at most harmless error. *FDA v. Wages & White Lion Invs., L.L.C.*, No. 23-1038, 2025 WL 978101, at *24 (U.S. Apr. 2, 2025) (stating long-accepted rule that remand is unnecessary "when an agency's decision is supported by a plethora of factual findings, only one of which is unsound"). Ultimately, Plaintiffs point to nothing that *requires* DHS to exercise its discretion to continue to implement such a parole program or grant parole to anyone.

*Fourth*, Plaintiffs argue (Doc. No. 72 at 18-19) that publication in the *Federal Register* was insufficient to constitute the required regulatory notice of termination. As a document "authorized" to be published in the *Federal Register*, *see* 44 U.S.C. § 1505, publication of the notice was "sufficient to give notice of the contents of the document to a person subject to or affected by it," 44 U.S.C. § 1507; *see United States v. Maxwell*, 254 F.3d 21, 25 (1st Cir. 2001). Plaintiffs

nonetheless contend that "notice by publication is insufficient in law" merely because the regulation requires "written notice" of termination. *See* Doc. No. 72 at 19 (quoting 44 U.S.C. § 1507). But this "insufficient in law" exception, for which there is a "lack of clear precedent," *see Camp*, 183 F.3d at 1145, is not relevant here. The statute contains no notice requirements, and the relevant regulation does not specify that written notice must be accomplished by a particular means. In particular, it does not require DHS to "furnish individual notice." *Bank of Commerce v. Bd. of Governors of Fed. Res. Sys.*, 513 F.2d 164, 167 (10th Cir. 1975); *Camp*, 183 F.3d at 1145 (concluding exception applied where regulation required notice to be "sent" to certain parties).

Regardless of the applicability of 44 U.S.C. § 1507, every CHNV parolee will receive individualized notice via their USCIS online account, *see* 90 Fed. Reg. at 13,620, and this notice would independently satisfy the regulatory requirement, *cf. Aldea-Tirado v. PricewaterhouseCoopers, LLP*, 101 F.4th 99, 103-06 (1st Cir. 2024) (finding email notice sufficient). Plaintiffs' sole argument against this method of notice is that "there is seemingly no requirement that the CHNV parolees check those accounts or even [] maintain access to them." Doc. No. 72 at 19 n.11. There is likewise no *requirement* that any parolee open mail addressed to them, but the fact they failed to do so would not support a claim of insufficient notice. So, too, here; DHS is notifying parolees through accounts they created specifically to apply for parole under the CHNV program. *See* 90 Fed. Reg. at 13,620 (noting that all parolees should have such an account); *see also* 8 C.F.R. § 103.2(b)(19)(ii)(B) (providing for electronic notice to aliens and their representatives in cases where the application is filed electronically). It is reasonable to conclude that notice of termination through that same account is sufficient under the regulation.

*Finally*, Plaintiffs assert (Doc. No. 72 at 19-20) that DHS may not revoke work authorization without individualized notice and an opportunity to contest the revocation. For good

16

reason, Plaintiffs do not contest that the regulations warrant revocation; with parole being terminated the "conditions upon which [employment authorization] was granted . . . no longer exist[.]" 8 C.F.R. § 274a.14(b)(1)(i). And, although the regulation does require "written notice of intent to revoke the employment authorization" citing "the reasons indicating that revocation is warranted," 8 C.F.R. § 274a.14(b)(2), the FRN and the electronic notice meet these requirements. It is "written notice" to the alien that explains that "after termination of the parole, the condition upon which the employment authorization was granted no longer exists," 90 Fed. Reg. at 13,619. Plaintiffs additionally note that aliens are "granted a period of fifteen days from the date of service of the notice within which to submit countervailing evidence," Doc. No. 72 at 20 (citing 8 C.F.R. § 274a.14(b)(2)), but nothing in the FRN eliminates this opportunity. And the individualized notice issued to CHNV parolees via their USCIS online account expressly explains this opportunity. *See* Doc. No. 88-1. Where the basis of revocation is the termination of the parole program under which the alien had become eligible for employment authorization, however, it is questionable that any evidence could be submitted that would undercut the revocation determination.

## IV. Plaintiffs Do Not Satisfy the Remaining Factors for Obtaining Injunctive Relief.

The harms the Parolee Plaintiffs assert from termination of parole—loss of "lawful status," loss of work authorization, and potential removal—do not establish the imminent irreparable injury sufficient to obtain preliminary injunctive relief. *See* Doc. No. 72 at 21–22.[6] As an initial matter,

---

[6] Neither the Supporter Plaintiffs nor HBA assert that they will suffer irreparable harm absent an injunction, only that others will. Doc. No. 72 at 20–23. Nor can they, as HBA's claimed diversion of resources is insufficient to establish standing, *see* supra § I(A), let alone irreparable harm. And Supporter Plaintiffs' disappointment with CHNV's termination, concern about parolees, or potential incidental monetary injury from a parolee's potential loss of employment, *see* Doc. No. 71-2 at ¶¶ 8, 11, 12, likewise do not constitute irreparable harm. *See Great Lakes Dredge & Dock Co., LLC v. Philly Shipyard, Inc.*, 2024 WL 5109416, at *8 (E.D. Pa. Dec. 13, 2024); *Mass. Correction Officers Federated Union v. Baker*, 567 F. Supp. 3d 315, 327 (D. Mass. 2021).

every parolee under the CHNV program faced these same potential harms under the terms of their parole, even before the FRN. For example, Carlos Doe's parole was already set to expire in June 2025, *see* Compl. ¶ 220, and the CHNV programs did not include a re-parole component, *supra* at 2. Moreover, each grant of parole, which provides *temporary* right to remain in the United States, was always subject to termination at DHS's discretion. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e); *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010). Parole does not convey any permanent immigration status. *See* 8 C.F.R. § 1.2.

And the potential consequence of removal is not sufficiently imminent or concrete for any of the Plaintiffs to support a finding of irreparable harm. *Winter*, 555 U.S. at 22 (irreparable harm must be "*likely* in the absence of an injunction," rather than a mere "possibility"); *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004); *Sierra Club v. Larson*, 769 F. Supp. 420, 422 (D. Mass. 1991) (irreparable harm must be "of such imminence that there is a clear and present need for relief" "before the merits are decided."). The FRN states that those with pending applications for immigration benefits or petitions filed on their behalf—like many of the Parolee Plaintiffs—will not be prioritized first for removal. 90 Fed. Reg. at 13619. If Plaintiffs are placed into § 1229a removal proceedings, they will be able to assert asylum or other claims to relief in the context of those proceedings and may avoid removal as a result. If Plaintiffs are processed for expedited removal, they will be able to assert fear claims in the context of those proceedings, and may avoid removal as a result.

In any event, the harms asserted by Plaintiffs are outweighed by the harms to the government. An injunction would limit the Administration's ability to pursue its foreign policy goals and to exercise its discretionary powers with respect to immigration, and is thus not in the public interest. *Winter*, 555 U.S. at 20; *Nken*, 556 U.S. at 435. An injunction irreparably harms the

United States by limiting the Executive's ability to exercise its discretionary authority under 8 U.S.C. § 1182(d)(5) as provided by Congress. *See Doe #1 v. Trump*, 944 F.3d 1222, 1228 (9th Cir. 2019) (Bress, J., dissenting) (an injunction that limits presidential authority is "itself an irreparable injury"); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) (noting that "any time a State is enjoined from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury"). The government would also be harmed from pursuing its foreign policy goals, as the government has also assessed that the CHNV parole programs are inconsistent with those goals. 90 Fed. Reg. at 13612; *see also Dep't of Navy v. Egan,* 484 U.S. 518, 529 (1988) ("[F]oreign policy [is] the province and responsibility of the Executive."); *Haig v. Agee,* 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention."). Most importantly, providing Plaintiffs with their requested relief would mark a severe intrusion into the core Executive function of managing the immigration system. *See Arizona v. U.S.*, 567 U.S. 387, 394–96 (2012); *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (warning against "intrusion by a federal court into the workings of a coordinate branch of the Government"). It would impede the Government's strong interest in being able to remove aliens from the United States who lack the ability to obtain more permanent status. *See* Doc. 71-1 at 10 (90 Fed. Reg. at 13619). An injunction could compel DHS "to place a greater proportion of this population in section 240 removal proceedings to effectuate their removal, further straining the already over-burdened immigration court system." *Id*.

## V.  At Minimum, Any Relief Must be Limited and Subject to Bond.

Even if Plaintiffs were entitled to injunctive relief or a stay of administrative action—they are not—the relief they seek is overbroad.  Under settled constitutional and equitable principles, the Court may not issue relief that is broader than necessary to remedy actual harm shown by

specific Plaintiffs. *Gill*, 585 U.S. at 73. Plaintiffs here lack any basis for universal relief from the

FRN. Even if HBA had standing to seek injunctive relief—it does not, *supra* § I(A)—any relief

could at most address Haitian nationals in the geographic areas HBA serves. And class certification

is not appropriate for the reasons argued in response to Plaintiffs' supplemental motion for class

certification. To the extent Plaintiffs are entitled to any relief, such relief must be limited to the

individual named Plaintiffs. *Baxter v. Palmigiano*, 425 U.S. 308, 310 n. 1 (1976)); *Nat'l Ctr. for*

*Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1371 (9th Cir.1984). Additionally, even assuming

the Court agrees with Plaintiffs that the FRN is contrary to law because it provides them with

insufficient notice of the termination, then the Court should—at most—issue relief isolated to any

claimed notice deficiencies consistent with the FRN's severability clause, 90 Fed. Reg. at 13621,

rather than enjoining the entire FRN. For all these reasons, the Court should deny universal relief,

whether in the form of a stay of agency action or an injunction.

If this Court issues any injunctive relief, it should impose a bond requirement, *see* Fed. R.

Civ. P. 65(c). It should also deny Plaintiffs' overly burdensome requested weekly reporting on

compliance. Plaintiffs offer no evidence to rebut the presumption that Defendants' officers will

perform their duties in accordance with applicable law, which includes court orders. *See United*

*States v. Chem. Found.*, 272 U.S. 1, 15 (1926).

## CONCLUSION

For these reasons, the Court should deny a preliminary injunction.

Dated: April 8, 2025                    Respectfully submitted,

                    By: /s/ *Joseph A. Darrow*
                        JOSEPH A. DARROW
                        *Trial Attorney*
                        U.S. Department of Justice, Civil Division
                        Office of Immigration Litigation
                        *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2025, I electronically filed this memorandum with the Clerk of the Court for the United States Court of for the District of Massachusetts by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: <u>*/s/ Joseph A. Darrow*</u>
  JOSEPH A. DARROW
  *Trial Attorney*
  United States Department of Justice