YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
MICHELLE LATOUR
*Deputy Director*
PATRICK GLEN
BRIAN C. WARD
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Email: katherine.j.shinners@usdoj.gov
ELISSA FUDIM
DANIEL SCHUTRUM-BOWARD
*Trial Attorneys*

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ | Civil Action No. 1:25-cv-10495-IT |
| Svitlana Doe, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Kristi Noem, in her official capacity as ) | |
| Secretary of Homeland Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION (Doc. No. 73)

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION .......................................................................................................... 1

FACTUAL AND PROCEDURAL HISTORY ................................................................. 2

LEGAL STANDARD FOR CLASS CERTIFICATION ................................................. 6

ARGUMENT ................................................................................................................... 6

   I.     Threshold Issues Preclude Consideration of Certification of Any Class. ........................ 6

   II.    The Court Should Deny Certification of the Immigration Benefits and Sponsor Classes for the Reasons Stated in Defendants' Prior Opposition. .......................................... 10

   III.   The Rescinded Parolee Class Is Ill Defined and Overbroad. ......................................... 11

   IV.   The Rescinded Parolee Class Lacks Commonality and Typicality. ............................... 13

   V.    The Rescinded Parolee Class Does Not Satisfy Rule 23(b)(2)'s Requirements. ........... 16

CONCLUSION .............................................................................................................. 19

## TABLE OF AUTHORITIES

*Ad Hoc Comm. on Jud. Admin. v. Com. of Mass.*,
  488 F.2d 1241 (1st Cir. 1973) ................................................................. 11

*Alliance for Hippocratic Med.*,
  602 U.S. 367 (2024) ...............................................................................15

*Amanullah v. Nelson*,
  811 F.2d 1 (1st Cir. 1987).........................................................................7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, (1997)................................................................................2

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*,
  208 F.3d 1 (1st Cir. 2000) ...................................................................... 12

*Bennet v. Spear*,
  520 U.S. 154 (1997)................................................................................ 12

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
  242 F.3d 290 (5th Cir. 2001) ....................................................................6

*Celebi v. Mayorkas*,
  744 F. Supp. 3d 100 (D. Mass. 2024) ............................................... 8, 10

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)....................................................................................6

*Connor B. ex rel. Vigurs v. Patrick*,
  272 F.R.D. 288 (D. Mass. 2011)............................................................. 16

*Ctr. for Biol. Diversity v. Zinke*,
  260 F. Supp. 3d 11 (D.D.C. 2017) .......................................................... 12

*Donovan v. Philip Morris USA, Inc.*,
  268 F.R.D. 1 (D. Mass. 2010).................................................................. 18

*Eddlemon v. Bradley Univ.*,
  65 F.4th 335 (7th Cir. 2023) .....................................................................6

*Food & Drug Admin. v. Alliance for Hippocratic Med.*,
  602 U.S. 367 (2024)..................................................................................9

*Forsythe v. Sun Life Fin., Inc.*,
  417 F. Supp. 2d 100 (D. Mass. 2006) .......................................................6

*Garcia v. E.J. Amusements of New Hampshire, Inc.*,
   98 F. Supp. 3d 277 (D. Mass. 2015) ....................................................................... 13

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982) .................................................................................................. 13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ................................................................................................... 6

*Hayden v. Freightcar Am., Inc.*,
   2008 WL 375762 (W.D. Pa. Jan. 11, 2008) ............................................................ 12

*In re Navy Chaplaincy*,
   306 F.R.D. 33 (D.D.C. 2014) ................................................................................... 16

*Lemon v. Int'l Union of Operating Engr's*, Local No. 139, AFL–CIO,
   216 F.3d 577 (7th Cir. 2000) ................................................................................... 16

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .................................................................................................. 12

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ................................................................................... 11

*Quadrelli v. Moniz*,
   No. 20-cv-10685-ADB, 2020 WL 3051778 (D. Mass. June 8, 2020) ...................... 16

*Rahman v. Chertoff*,
   530 F.3d 622 (7th Cir. 2008) ................................................................................... 16

*Sessions v. Morales-Santana*,
   582 U.S. 47 (2017) ..................................................................................................... 9

*United States v. Texas*,
   599 U.S. 670 ............................................................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................... 6, 13, 16

*Wild Fish Conservancy v. Jewell*,
   730 F.3d 791 (9th Cir. 2013) ................................................................................... 12

## STATUTES

5 U.S.C. § 704 ................................................................................................................. 12

8 U.S.C. § 1182(d)(5) ......................................................................................................... 9

8 U.S.C. § 1182(d)(5)(A) ........................................................................................... 2, 7, 9

8 U.S.C. § 1229a ................................................................................................................. 8

8.U.S.C. § 1252(a)(2)(B)(ii) .............................................................................................10

## FEDERAL RULE OF CIVIL PROCEDURE

Fed. R. Civ. P. 23(b)(1)-(3) ................................................................................................6

Fed. R. Civ. P. 23(b)(2) .......................................................................................................6

## FEDERAL REGISTER

90 Fed. Reg. 13,611 ............................................................................................................ 4

88 Fed. Reg. 1255 (Jan. 9, 2023) ....................................................................................... 7

88 Fed. Reg. 1266 (Jan. 9, 2023) ....................................................................................... 7

## INTRODUCTION

The Court should deny Plaintiffs' supplemental motion for class certification, including their request for a new, fatally overbroad and vague class of all individuals who have received parole through various different humanitarian parole programs and who are subject to the recent termination of the parole programs for Cubans, Haitians, Nicaraguans, and Venuzelans (CHNV), or who will be subject to any other similar, future actions.

As previously instructed by the Court, Defendants here address Plaintiffs' requests for certification of (1) the claims of any Plaintiffs that are supporters or beneficiaries of parole under CHNV (CHNV Plaintiffs); and (2) the new proposed "Rescinded Parolee" class. For the reasons explained in Defendants' prior opposition, the "Immigration Benefits Subclass" and "Sponsor Subclass" cannot be certified, because the Class Representatives lack standing, the proposed classes lack commonality and typicality, and the requirements of Rule 23(b)(2) have not been satisfied. *See generally* Doc. No. 85. Nothing in Plaintiffs' supplemental class certification motion changes these arguments.

Additionally, the CHNV Plaintiffs who seek to represent the Rescinded Parolee Subclass cannot demonstrate Article III standing to challenge the CHNV termination, and Congress has precluded jurisdiction over challenges to the discretionary exercise of parole authority like the CHNV termination. Because these Plaintiffs cannot satisfy threshold jurisdictional requirements, the Court should decline to entertain their request for class certification.

But even if the Court could consider class certification of the claims challenging the CHNV termination, Plaintiffs' new broad and ill-defined proposed Rescinded Parolee class does not meet the requirements of Rule 23. Plaintiffs seek classwide relief against a Federal Register Notice that terminates the grant of discretionary parole under the CHNV parole processes. Recognizing that

class members cannot obtain individualized relief to compel the reinstatement or grants of parole on an individual basis because such discretionary acts are precluded from review, Plaintiffs instead attempt to obtain similar relief by enjoining or setting aside the FRN and Davidson memorandum on a classwide basis. But Rule 23 is a procedural rule that cannot be used to circumvent these substantive limitations on individual relief. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, (1997) (reiterating that Rule 23 "shall not abridge, enlarge or modify any substantive right). Indeed, these limits on individualized relief likewise defeat Plaintiffs' request for class treatment. Because DHS retains underlying discretion concerning parole and the adjudication of many immigration benefits, an injunction or declaratory judgment against the FRN would not provide relief to all members of either class and thus the requirements for certifying and maintaining an injunctive-relief class under Rule 23(b)(2) are not met.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs brought this lawsuit challenging various Executive Branch actions that relate broadly to programs governing requests for parole into the United States, or for re-parole, by certain categories of individuals under 8 U.S.C. § 1182(d)(5)(A). Second Am. Compl., Doc. No. 68 at ¶¶ 3, 158–200. The Individual Plaintiffs claim to be parole recipients or supporters of parole requests under various programs. *See* Doc. No. 68 at ¶¶ 3, 16–38. As relevant to this motion, the following Plaintiffs are parole recipients or supporters under the processes for Cubans, Haitians, Nicaraguans, and Venezuelans (the "CHNV Plaintiffs"): Alejandro Doe, Ana Doe, Carlos Doe, Miguel Doe, Andrea Doe, Lucia Doe, Daniel Doe, Sandra McAnany, Kyle Varner, Wilhen Pierre Victor, Gabriela Doe, Norma Lorena Dus, and Valentin Rosales Tabares.

On January 20, 2025, in accordance with several Executive Orders, Acting Homeland Security Secretary Benjamine Huffman issued a memorandum directing DHS to review over a 60-

2

day period its existing parole policies and instructing DHS and its subagencies, following that review, to "pause, modify or terminate" any parole policy that does not comply if: it "was not promulgated pursuant to the procedural requirements of the [APA] or any comparable scheme," no "legitimate reliance interests" are protected, and "[d]oing so is otherwise consistent with applicable statutes, regulations, and court orders." Huffman Memo, Doc. No. 41-1 at 3. On January 23, 2025, the Acting Director of U.S. Citizenship and Immigration Services (USCIS), Jennifer Higgins, sent an email requesting that USCIS officers "do not make any final decisions (approval, denial, closure) or issue a travel document or I-94 for any initial parole or re-parole application" for enumerated parole programs, including those challenged by Plaintiffs except for MPIP, until further instructions are issued. Higgins Email, Doc. No. 41-2 at 2. In a February 14, 2025 memorandum, USCIS Acting Deputy Director Andrew Davidson explained that a preliminary internal investigation had uncovered hundreds of potential instances of fraud in the CHNV program and had exposed "serious vulnerabilities" in DHS's vetting process. Davidson Memo, Doc. No. 41-3 at 3. Accordingly, Davidson directed USCIS to "place an administrative hold on all immigration benefit requests filed by aliens who are or were paroled under U4U, CHNV, or FRP processes, pending the completion of the required screening and vetting . . . to identify any fraud, public safety, or national security concerns." *Id.*

Plaintiffs assert that these and other actions constitute a termination of parole processes and a suspension of other immigration benefits, and that they are *ultra vires*, Doc. No. 68 at ¶ 357, violate constitutional due process, *id.* at ¶ 362, and violate the Administrative Procedure Act (APA) because they allegedly are based on an erroneous interpretation of the parole statute, *id.* at ¶ 315, exceed statutory authority, *id.* at ¶ 328, and are arbitrary and capricious, *id.* at ¶¶ 324, 337–340, 345–46.

On March 18, 2025, Plaintiffs moved for a preliminary injunction and stay of administrative action seeking to enjoin implementation of the Huffman, Higgins, and Davidson guidance, which Defendants opposed. On March 21, 2025, Plaintiffs filed a motion (Doc Nos. 46 and 47) seeking to certify two classes composed of:

1. "All individuals with pending applications to sponsor a beneficiary for any humanitarian parole process, including but not limited to U4U, CHNV, FRP, MPIP, and CAM, which applications are subject to the January 20 Huffman memo and subsequent actions by Defendants to pause or otherwise terminate the processing of such applications (the 'Sponsor Subclass')[1]"; and

2. "All individuals who have received humanitarian parole through already established humanitarian parole processes, such as the U4U, CHNV, OAW, FRP, MPIP, and CAM parole processes, with any pending applications for any additional immigration benefit, which applications are subject to the 'administrative hold' set out in the February 14 Davidson memorandum, the January Higgins Directive, and other subsequent actions by Defendants to pause or otherwise terminate the processing of such applications (the 'Immigration Benefits Subclass')."

Doc. No. 47 at 11.

On March 25, DHS published a federal register notice terminating the CHNV parole processes and providing notice to aliens in the United States under the CHNV parole programs, whose parole has not already expired by April 24, 2025, that their parole will terminate on April 24, 2025, unless the Secretary makes an individual determination to the contrary. Doc. No. 71-1 at 2 (90 Fed. Reg. at 13,611).

Plaintiffs expressed their intent to amend their Complaint to address the CHNV FRN, and to seek preliminary injunctive relief and class certification relating to the CHNV FRN. *See, e.g.*, Doc. No. 45. The Court subsequently set a schedule for the filing and consideration of the motions concerning the CHNV notice. The Court ordered that, for purposes of Plaintiffs' first class

---

[1] To avoid confusion, Defendants use Plaintiffs' class definitions. However, the term "sponsor" is inapplicable to the identified parole programs. Defendants will use the term "supporter" where appropriate.

certification motion, it would "exclude[e] consideration of claims relating to the CHNV program, individuals paroled in pursuant to that program, or parole sponsorships pursuant to that program." Doc. No. 58.

On March 27, 2025, Plaintiffs filed their supplemental motion, explaining that it "expands the proposed class definition to include a subclass of individuals who have received parole through humanitarian parole processes which are subject to the FRN" and also adds new CHNV Plaintiffs as proposed class representatives. Doc. No. 74 at 6. Plaintiffs define their new proposed "Rescinded Parolee Subclass"[2] as individuals who received parole through the CHNV program and which parole is subject to the CHNV FRN, as well as any individual who has received parole through any other "humanitarian parole process" and will be subject to "subsequent similar actions by Defendants to rescind formally individual grants of parole on a categorical and *en masse* basis." *Id.*; *see also* Doc. No. 73.

For purposes of the current motion, Plaintiffs identify the following Plaintiffs as Proposed Representatives of the "Rescinded Parolee Subclass" ("Rescinded Parolee Plaintiffs"): Alejandro Doe, Armando Doe, Ana Doe, Carlos Doe, Daniel Doe, Miguel Doe, and Lucia Doe. Doc. No. 74 at 19. Plaintiffs identify the following CHNV Plaintiffs as Proposed Representatives of the "Immigration Benefits Class" ("CHNV Immigration Benefits Plaintiffs"): Alejandro Doe, Ana Doe, Armando Doe, and Carlos Doe. *Id.* Plaintiffs identify the following CHNV Plaintiffs as Proposed Representatives of the "Sponsor Subclass" ("CHNV Supporter Plaintiffs"): Kyle Varner, Wilhen Pierre Victor, Norma Lorena Dus, Gabriela Doe, and Valentin Rosales Tabares. *Id*.

---

[2] To avoid confusion, Defendants use Plaintiffs' class definitions. However, CHNV parolees' parole has been terminated effective April 24, 2025, not "rescinded."

## LEGAL STANDARD FOR CLASS CERTIFICATION

The class action is a departure from "the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). To justify such departure, proposed class representatives must possess the same interest and same injury as the class members. *See id.* "[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance'" with Rule 23 and "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required[.]" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores*, 564 U.S. at 350)*.* In addition to satisfying these Rule 23(a) prerequisites, a plaintiff must demonstrate that the action fits within at least one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b)(1)–(3). Here, Plaintiffs seek certification under Rule 23(b)(2), which requires the movant to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Courts must rigorously analyze Rule 23's requirements, *Wal-Mart Stores*, 564 U.S. at 350-51, which requires more than accepting Plaintiffs' claims as pleaded, *see Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339 (7th Cir. 2023). Plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23," otherwise certification must be denied. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

## ARGUMENT

## I.    Threshold Issues Preclude Consideration of Certification of Any Class.

Before this Court may consider whether Plaintiffs' proposed classes are capable of certification, the Court must first determine that the CHNV Plaintiffs have Article III standing.

"This constitutional threshold must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by Rule 23." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001) (cleaned up); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 118 (D. Mass. 2006) (standing is a "threshold" issue that should be resolved before class certification) (collecting cases).

The CHNV Plaintiffs—regardless of what class they seek to represent—lack standing to challenge any pauses on adjudications set forth in the Huffman Memo, Higgins Email, and Davidson Memo, for the same reasons stated in Defendants' prior class certification opposition. *See* Doc. No. 85 at 11–13. Additionally, CHNV Plaintiffs have no standing to challenge the Higgins guidance pausing adjudication of requests for re-parole, because, as Plaintiffs concede (at Doc. No. 72 at 3 n.4), there was no opportunity to request re-parole under the CHNV program (although aliens can nonetheless make requests for re-parole outside the program). *See* 90 Fed. Reg. at 13617 & n.62; Doc. No. 41-4 at ¶ 8.

The Rescinded Parolee and other CHNV Plaintiffs likewise lack standing to challenge the CHNV FRN. These Plaintiffs allege a prospective injury (inability to obtain status and removal) based on the following prospective causal chain: after their parole terms end, their requests for other immigration benefits are not quickly adjudicated, they are placed in removal proceedings, and they are subsequently removed. *See* Doc. No. 74 at 19–20. But the CHNV Plaintiffs' claimed injuries are not traceable to, and cannot be redressed by, relief enjoining or declaring unlawful the CHNV FRN. Parole is discretionary and no one can claim an entitlement to it. *See* 8 U.S.C. § 1182(d)(5)(A); *Amanullah v. Nelson*, 811 F.2d 1, 14 (1st Cir. 1987). Indeed, the CHNV parole processes themselves were clear that parole terminations are entirely discretionary. *See, e.g.*, *Implementation of a Parole Process for Cubans*, 88 Fed. Reg. 1266, 1272 (Jan. 9, 2023) ("DHS

may terminate parole in its discretion at any time"); *Implementation of a Parole Process for Nicaraguans*, 88 Fed. Reg. 1255, 1260 (Jan. 9, 2023) (same). In any event, the termination of the CHNV parole program does not prevent Rescinded Parolee Plaintiffs from requesting parole outside of that program by filing a Form I-131, as is contemplated by the CHNV FRN. *See* 90 Fed. Reg. at 13612; Doc. No. 41-4 at ¶ 8. Moreover, requests for other immigration benefits—whether asylum, adjustment of status, or TPS—can take months or years to adjudicate in the ordinary course,[3] and the CHNV FRN does not set any requirements regarding those benefits adjudications. And DHS has indicated in the FRN that those former CHNV parolees with pending applications or petitions for other immigration benefits will not be prioritized for removal. 90 Fed. Reg. at 13619.   If Rescinded Parolee Plaintiffs are placed into removal proceedings under 8 U.S.C. § 1229a, they can renew their requests for relief—whether for asylum, withholding of removal, TPS, or adjustment of status—in those proceedings, which have multiple levels of appellate review. In other words, to the extent any of the Rescinded Parolee Plaintiffs are harmed, that harm is not traceable to the challenged agency action terminating CHNV parole programs, but rather to pre-existing circumstances.

Indeed, these Plaintiffs' injuries are not redressable by an order setting aside, declaring unlawful, or enjoining the implementation of the CHNV FRN. *See* Doc. No. 68 at 101 (Prayer for Relief); *see* Doc. No. 89 at 13. Enjoining or declaring the FRN unlawful would not remedy the harms the Rescinded Parolee Plaintiffs assert, because it would not create any enforceable legal obligations toward them or the class members concerning their continued parole or their pending

---

[3] See, e.g., *Celebi v. Mayorkas*, 744 F. Supp. 3d 100, 104 (D. Mass. 2024) (finding three-and-a-half-year wait for adjudication of asylum application not unreasonable, and noting backlog of 900,000 asylum applications); USCIS, Historic Processing Times, Doc. No. 41-5 (noting recent average TPS application processing times of 5-6 months and average adjustment of status processing times of up to 13.4 months); OIG Report (June 2024), at https://perma.cc/PJA4-SJ3S.

applications for benefits. It would do nothing to change the fact that federal officials possess the same underlying discretion absent the FRN to terminate the Rescinded Parolee Plaintiffs' individual grants of parole. *See* Doc. No. 42 at 9 (citing *United States v. Texas*, 599 U.S. 670, 691 (Gorsuch, J., concurring)). Moreover, the FRN makes clear that the Rescinded Parolee Plaintiffs may ask DHS for a new period of parole outside of the terminated programs, as DHS also retains its statutory authority to grant parole, at its discretion, based on the alien's demonstration of urgent humanitarian reason or significant public benefit, *see* 8 U.S.C. 1182(d)(5)(A), and therefore may "make[] an individual determination to the contrary" of the general guideline for terminating CHNV parole as of April 24, 2025. 90 Fed. Reg. at 13612, 13618. Enjoining the FRN would also not compel adjudication of any other pending benefit requests within a particular time frame.

The CHNV Supporter Plaintiffs—that is, those with "pending" requests to support potential beneficiaries of the now-terminated CHNV parole programs, *see* Doc. No. 72 at 1— likewise lack standing to challenge the termination. Their claimed injury is the inability to support those individuals' parole requests, *see* Doc. No. 74 at 19–20, but that injury is not an interest that is contemplated by the statute, which does not even mention supporters of potential parolees. *See* 8 U.S.C. § 1182(d)(5)(A). This claimed injury is also not traceable to the FRN or redressable by its injunction, because DHS retains the discretion to decline to grant parole to any alien regardless of the FRN. Further, Supporter Plaintiff Varner's moral and political desires to support additional unidentified parolees cannot support an injunction of the guidance because such convictions do not suffice to establish injury in fact. *See* Doc. No. 74 at 19; *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 396 (2024) (holding that sincere moral and policy objections to federal action alone cannot support Article III standing). And the Supporter Plaintiffs "cannot rest [a] claim to relief on the [purported] legal rights of third parties" such as the individuals they have

supported for parole. *See Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017).

For these reasons, the CHNV Plaintiffs lack standing just as the other Proposed Representative Plaintiffs lack standing. *See* Doc. No. 85 at § I. But standing is not the only threshold jurisdictional impediment to adjudicating class certification. Here, as stated in Defendants' motion in opposition to the preliminary injunction, the jurisdictional bar in 8 U.S.C. § 1252(a)(2)(B)(ii) also precludes review of Plaintiffs' challenge to the CHNV FRN and to the termination of each grant of parole. *See* Doc. No. 89 at 14–15. Because this Court lacks jurisdiction, it need not—and should not—adjudicate Plaintiffs' class certification motion.

## II. The Court Should Deny Certification of the Immigration Benefits and Sponsor Classes for the Reasons Stated in Defendants' Prior Opposition.

Plaintiffs' Supplemental Class Certification motion repeats their prior requests and arguments for certification of their fatally vague and overbroad Immigration Benefits and Sponsor Classes. These classes should not be certified for the same reasons stated in Defendants' Opposition to that prior motion. *See* Doc. No. 85. The consideration of CHNV Plaintiffs as proposed representatives of these classes in no way defeats those arguments, but only serves to further demonstrate the material differences among the classes and why the claims cannot be determined on a class-wide basis and are not appropriate for class relief.

For example, with respect to the Immigration Benefits Subclass, an inherently individualized inquiry—or at minimum an inquiry based on the type of immigration benefit sought—is required to resolve their claims. *See* Doc. No. 85 at 18–20. And CHNV Plaintiff Armando Doe demonstrates how the *TRAC* factors and injury analysis must be analyzed differently for each individual with an application for pending immigration benefits. Armando Doe was paroled into the United States under the CHNV parole program for Nicaraguans in February 2024. Doc. No. 24-3 at ¶ 18. But for the FRN terminating his parole as of April 24, 2025, his parole

would have expired in February 2026. *Id*. Because of the current backlog, asylum applications often take years to adjudicate. *Celebi*, 744 F. Supp. 3d at 104. Notwithstanding, Armando waited almost a full year to apply for asylum, until January 2025. Doc. No. 24-3 at 27. Thus, even without the FRN shortening Armando's parole period, it is highly unlikely Armando's asylum application would have been adjudicated before his parole expired. And, as noted, there has never been a re-parole option under CHNV. Armando, thus, like all the individual Plaintiffs in this case, stands in a different position than someone who might be able to state a claim for unreasonable delay on their request for immigration benefits.

## III.    The Rescinded Parolee Class Is Ill Defined and Overbroad.

Under Rule 23, a class must be defined clearly. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Class definitions that include language which is subjective or vague may defeat certification. *Ad Hoc Comm. on Jud. Admin. v. Com. of Mass.*, 488 F.2d 1241, 1243, n.1 (1st Cir. 1973). "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Mullins*, 795 F.3d at 660. Having an inadequately defined or overbroad class often implicates multiple Rule 23 requirements, including typicality, commonality, and the standards for certifying an injunctive-relief class under Rule 23(b)(2).

Here, the Plaintiffs seek to certify a new class composed of:

> All individuals who have received parole through humanitarian parole processes, including but not limited to U4U, CHNV, OAW, FRP, MPIP, and CAM, which parole is subject to the March 25 FRN and subsequent similar actions by Defendants to rescind individual grants of parole on a categorical and en masse basis (the "Rescinded Parolee Subclass").[4]

---

[4] While Plaintiffs frame this class, as well as the two others, as "subclasses," they are in fact separate classes as they do not fall under a single umbrella.

Doc. No. 74 at 12.

Like the prior class definitions, this definition contains the amorphous reference to "other subsequent actions by Defendants to pause or otherwise terminate the processing of such applications." This language is not only fatally vague, it also purports to include in the class individuals who are subject to agency action that *has not yet occurred* and which is not certain to happen. Even if Plaintiffs could challenge speculative future agency action—which they cannot[5]—the Court cannot possibly determine whether such action is contrary to law based on the Plaintiffs' current claims challenging other conduct. APA challenges can succeed only where the plaintiff "identif[ies] a discrete 'agency action' that fits within the APA's definition of that term." *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir. 2013). It is "entirely certain" that an "entire 'program'—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892–93 (1990); *see also Ctr. for Biol. Diversity v. Zinke*, 260 F. Supp. 3d 11, 20 (D.D.C. 2017). It is impossible for the Court to certify a class based on speculative, unidentified future conduct, because there is no way to assess the justifications for an action that has not yet occurred or for which no justifications have thus been provided. There is likewise no way to assess whether there are any common legal questions relating to Plaintiffs' claims asserted against that future action that will drive resolution of each class member's claim. *See also infra* at 16. Thus, the class must be limited

---

[5] This is not permissible because the APA requires final agency action that "marks the consummation of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature." 5 U.S.C. § 704; *Bennet v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and internal quotation marks omitted). Final agency action constitutes a "definitive statement" of the agency's position with "direct and immediate consequences." *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*, 208 F.3d 1, 5 (1st Cir. 2000) (internal quotation marks and citations omitted).

to those subject to the conduct challenged in the complaint, not some future conduct. *Hayden v. Freightcar Am., Inc.*, 2008 WL 375762, at *6 (W.D. Pa. Jan. 11, 2008) ("[F]uture variables bring uncertainty to the class… [such that] any reference to future possible occurrences defeats the class certification.").

**IV.    The Rescinded Parolee Class Lacks Commonality and Typicality.**

The differences among the Rescinded Parolees' class members' claims to relief preclude a finding of commonality or typicality. Rule 23(a)(2) requires questions of law or fact common to the class. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered *the same injury*.'" *Wal-Mart*, 564 U.S. at 350 (citation omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Instead, the "claims must depend upon a common contention" that "is capable of classwide resolution—which means that [the] determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Rule 23(a)(2) "is easy to misread, since [a]ny competently crafted class complaint literally raises common questions." *Wal-Mart Stores*, 564 U.S. at 349, 351 (citation and quotes omitted). "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350.

The commonality prong tends to merge with the requirement of typicality under Rule 23(a)(3), *see id.* at 350 n.5, because "the central inquiry in assessing whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class," *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015).

The proposed Rescinded Parolee class challenges the FRN, which terminates prior grants of parole.[6] The crux of this class's injury is the same as the proposed Immigration Benefits Class— that their pending applications for additional immigration benefits will take longer to adjudicate by virtue of the Davidson memo than they would have otherwise, such that some of these individuals may be placed in removal proceedings or removed after they lose parole on April 24, but before adjudication of their additional benefits applications is complete. *See* Doc. No. 74 at 6, 17. Plaintiffs posit that common questions exist about whether challenged the agency actions are contrary to law under the APA. Doc. No. 74 at 17. But any determination on the legal justification for the challenged policies cannot drive the resolution of each class member's claim to relief, for several reasons.

*First*, the Rescinded Parolee Plaintiffs claim that the "common problem" they and Rescinded Parolee class members face is a risk of removal. Doc. No. 74 at 17-18. As an initial matter, the fact that these class members' parole will end early does not give rise to a viable injury or claim to relief, because parole is discretionary and no one can claim an entitlement to it. *See supra* § I. The CHNV parole processes themselves were clear that parole terminations are entirely discretionary, but Rescinded Parolee Plaintiffs may nonetheless request parole outside of that program by filing a Form I-131. *See supra* § I. But, to the extent any class member has standing relating to an injury concerning their applications for other immigration benefits (they do not, *see supra* § I), at minimum, the inquiry into legal injury is not common to the proposed class, which

---

[6] As defined, the Rescinded Parolee Class are those whose parole was or will be terminated prior to its expiration by the CHNV FRN or other similar actions taken in the future. *See* Doc. No. 73 at 1. This class cannot challenge the Davidson memo, as by definition not all of its members have pending requests for other immigration benefits. Indeed, Rescinded Parolee Plaintiffs Miguel Doe, Lucia Doe, and Daniel Doe do not allege to have any pending requests for immigration benefits. *See* Doc. No. 68 at ¶¶ 222–24, 229–36.

encompasses people who have not applied for any immigration benefits at all (who were granted parole but who have since returned to their home countries), who already have received another immigration benefit, who applied for a variety of different, unspecified immigration benefits, and who are in a variety of different situations concerning their parole status. Whether each class member is materially affected by the FRN (and whether their harms are redressable by any classwide relief) the individual alien's circumstances, including whether they already have TPS (like Daniel Doe, who has TPS until August 2025, *see* Doc. No. 68 at ¶ 234), how long it would have taken for their pending request for an immigration benefit to be adjudicated but for the pause, whether ICE places the alien in immigration proceedings, and whether the alien is able to renew his application or request in those proceedings. The variations in the attenuation of the injury among the Representative Plaintiffs and the class defeat commonality and typicality. *See Alliance for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (to show standing, the "links in the chain of causation . . . must not be too speculative or too attenuated").

Indeed, to the extent that the Rescinded Parolee Class's legal injury is based on an alleged combination of the effect of the CHNV FRN with the Davidson Memo pausing adjudications of other immigration benefits filed by parolees under the CHNV programs, this is not a common injury. As noted, not all Rescinded Parolees have pending requests for immigration benefits or eligibility for such benefits. And some, like Daniel Doe, currently have TPS or some other benefit. But even so, there are no truly common legal questions governing this claim. As explained in Defendants' opposition to Plaintiffs first motion for class certification, Plaintiffs' assertion that the pause on adjudication of certain benefits is "contrary to the statutory regime" cannot be decided on a classwide basis because those benefits are subject to different statutes. And the question of whether the Davidson Memo has unreasonably delayed adjudication is subject to the highly case-

specific analysis of the *TRAC* factors, which would require a different analysis for each class member, rendering class treatment inappropriate. *See* Doc. No. 85 at 18–20.

*Finally*, as noted in Section III, the Rescinded Parole class includes aliens whose parole through other, non-CHNV parole programs may be terminated before the expiration of the initial parole term due to the Government's unspecified, future conduct. As this future agency action does not exist, and none of the Rescinded Parolee Plaintiffs are subject to it, it is impossible for the Court to assess whether there are common questions relating to the assessment of the legality of that future action or whether the named Plaintiffs' claims are typical of all members of the class. *See Rahman v. Chertoff*, 530 F.3d 622, 627 (7th Cir. 2008) (holding that typicality was not met where vague and open-ended class definition did not adequately delineate the particular procedures to which class members were subject).

## V.    The Rescinded Parolee Class Does Not Satisfy Rule 23(b)(2)'s Requirements.

A class may be maintained under Federal Rule of Civil Procedure 23(b)(2) only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Quadrelli v. Moniz*, No. 20-cv-10685-ADB, 2020 WL 3051778, at *6 (D. Mass. June 8, 2020) (quoting *Wal-Mart*, 564 U.S. at 360 (emphasis added)); *see also In re Navy Chaplaincy*, 306 F.R.D. 33, 56 (D.D.C. 2014) (holding class not maintainable under Rule 23(b)(2)). "By virtue of its requirement that the plaintiffs seek to redress a common injury ... Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive." *Lemon v. Int'l Union of Operating Engr's*, Local No. 139, AFL–CIO, 216 F.3d 577, 580 (7th Cir. 2000); *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 297 (D. Mass. 2011). The key to a

(b)(2) class is that "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360. Rule 23(b)(2) is not satisfied when each class member "would be entitled to a different injunction or declaratory judgment." *Id.*

Plaintiffs claim that Rule 23(b)(2) is satisfied because "[t]he appropriate remedy [] is uniform among all class members: restoration of the *status quo ante* with the reinstatement of the authorized periods of parole from prior to the March 25 FRN, and adjudications for parole and/or re-parole requests under CHNV, OAW, U4U, CAM, MPIP, FRP[7] and other parole processes as well as other requests for immigration benefits for parolees." Doc No. 74 at 18. But, as explained, that is not correct. *See supra* §§ I, IV. This relief will not redress the injuries of all class members.

The Rescinded Parolee class includes those who filed requests for immigration benefits years ago, and those who requested benefits only recently or have not requested them at all; those who seek immigration benefits like TPS, which is a paper-based application process, and those who seek immigration benefits like asylum, which requires an interview and is subject to backlog of applicants; those who have already been placed in removal proceedings, and those who have not. These are meaningful distinctions as to whether the injunction or declaratory judgment sought in this action could possibly provide relief to each member of the class.

The crux of the Rescinded Parolee class's claimed injury—and of their claims that the agency guidance is unlawful—is that some of these individuals may be placed in expedited

---

[7] As noted above, those individuals granted parole under any program other than CHNV should not be included in this class, both because no actions similar to the CHNV FRN have been taken at this time with respect to those programs, and also because such inclusion goes beyond what was ordered by the court with respect to this additional briefing. Further, there should be no reference to re-parole as to CHNV parolees because re-parole has never been offered under the CHNV processes.

removal or § 1229a removal proceedings or removed after their parole has ended. *See supra* at 14. But no single injunction or declaratory relief against the challenged FRN can prevent these events for each class member. Parole is, by definition, temporary. While parolees may apply for other immigration benefits during their period of parole, there is neither any guarantee nor any requirement that such applications will be adjudicated before the parole period expires, even without the FRN. This is especially true for CHNV parole, which Plaintiffs concede did not contemplate re-parole once a parole term ends. Once a parolee's parole expires, he may generally be placed in removal proceedings or expedited removal. This is true even if he has a pending request for another immigration benefit, though the CHNV FRN notes that those with a pending benefit request will not be among those prioritized for removal. 90 Fed. Reg. at 13619.

For this reason, the Rescinded Parolee class will not be affected in the same way by relief pertaining to the challenged guidance. For most, to obtain relief that will even arguably stem their alleged series of harms—risk of not obtaining a future immigration benefit, risk of being placed in some form of removal proceedings, and risk of being removed—Rescinded Parolee class members would need to file individual requests for parole through the I-131 process, or actions for unreasonable delay in adjudication of other immigration benefits, or dispute their removal and seek relief as available in the context of the applicable procedures. In fact, Plaintiffs acknowledge that unidentified class members may seek individual relief. Doc No. 74 at 8 ("Plaintiffs would exclude from the class definition any individuals or groups who choose to opt out of the class in order to seek relief in separate litigation."). But under Rule 23(b)(2), "[c]lass members have no need to opt out because the best result absent class members could receive is the same relief they would have received as class members." *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 7 (D. Mass. 2010). The fact that the "best result" an absent class member could receive—an order finding the

Government unreasonably delayed adjudication of his immigration benefit request and ordering the Government to adjudicate the request by a date certain—is different from the relief sought in this case, demonstrates why certification under Rule 23(b)(2) is improper.

## CONCLUSION

The Court should deny Plaintiffs' motion for class certification.

Dated: April 8, 2025                         Respectfully submitted,

By: /s/ *Katherine J. Shinners*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

*Counsel for Defendants*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2025, I electronically filed this opposition with the Clerk of the Court for the United States Court of for the District of Massachusetts by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: _/s/ Katherine J. Shinners_
     KATHERINE J. SHINNERS
     Senior Litigation Counsel
     United States Department of Justice