YAAKOV M. ROTH
*Acting Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
BRIAN C. WARD
*Acting Assistant Director*
PATRICK GLEN
*Senior Litigation Counsel*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Email: katherine.j.shinners@usdoj.gov
ZACHARY CARDIN
ELISSA FUDIM
DANIEL SCHUTRUM-BOWARD
*Trial Attorneys*

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Svitlana Doe, *et al.*, ) | Civil Action No. 1:25-cv-10495 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Kristi Noem, in her official capacity as ) | |
| Secretary of Homeland Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF
# MOTION TO DISMISS COMPLAINT
# UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

## TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................**1**

**LEGAL BACKGROUND AND ALLEGATIONS** ...................................................**1**

**STANDARDS** ...................................................................................................................**5**

**ARGUMENT** ...................................................................................................................**5**

    I.    The Complaint's Allegations Do Not Demonstrate Article III Standing. ......................... 5

    II.    Section 1252(a)(2)(B) Precludes Jurisdiction Over Claims Challenging Discretionary Decisions Concerning Parole (Claims 1, 3, 5, 6, 7)................................................................. 12

    III.    Plaintiffs' APA Claims Fail at the Threshold (Claims 1-5)........................................... 12

    IV.    The Substantive APA Claims Do Not State a Claim............................................... 16

      A.    Plaintiffs' First Claim for Relief Does Not State a Claim. ............................................. 16

      B.    Plaintiffs' Second and Fourth Claims Fail to State a Claim. ......................................... 20

    V.    Plaintiffs Cannot State a Claim for Failure to Follow Agency Procedures (Claim Five). 22

    VI.    Plaintiffs Cannot State a Claim for "Nonstatutory Review" (Claim Six)..................... 23

    VII.    Plaintiffs Cannot State a Due Process Claim (Claim Seven)......................................... 24

**CONCLUSION** ...............................................................................................................**26**

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Aldea-Tirado v. PricewaterhouseCoopers, LLP,*
    101 F.4th 99 (1st Cir. 2024) ................................................................... 23

*Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell,*
    No. 25-cv-10276-GAO, 2025 WL 470459 (D. Mass. Feb. 12, 2025) ....................... 7

*Amanullah v. Nelson,*
    811 F.2d 1 (1st Cir. 1987) ............................................................... 16, 26

*Armstrong v. Exceptional Child Ctr., Inc.,*
    575 U.S. 320 (2015) ....................................................................... 24

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.,*
    208 F.3d 1 (1st Cir. 2000) ................................................................. 14

*Bank of Commerce v. Bd. of Governors of Fed. Res. Sys.,*
    513 F.2d 164 (10th Cir. 1975) ............................................................. 22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................ 5

*Bennet v. Spear,*
    520 U.S. 154 (1997) ....................................................................... 14

*Celebi v. Mayorkas,*
    744 F. Supp. 3d 100 (D. Mass. 2024) .............................................. 10, 20, 21

*Clarke v. Security Indus. Ass'n,*
    479 U.S. 388 (1987) ....................................................................... 16

*Connecticut Bd. of Pardons v. Dumschat,*
    452 U.S. 458 (1981) ....................................................................... 25

*DaimlerChrysler v. Cuno,*
    547 U.S. 332 (2006) ........................................................................ 5

*DHS v. Thuraissigiam,*
    591 U.S. 103 (2020) ....................................................................... 26

*FDA v. Alliance for Hippocratic Medicine,*
    602 U.S. 367 (2024) ................................................................. 6, 7, 11

*Fed'n for Am. Immigration Reform, Inc. v. Reno,*
    93 F.3d 897 (D.C. Cir. 1996) ........................................................................ 16

*Fernandez–Roque v. Smith,*
    734 F.2d 576 (11th Cir. 1984) ...................................................................... 25

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) ...................................................................................... 23

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.,*
    528 U.S. 167 (2000) ........................................................................................ 5

*Hassan v. Chertoff,*
    593 F.3d 785 (9th Cir. 2010) ........................................................................ 12

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ...................................................................................... 15

*Ibragimov v. Gonzales,*
    476 F.3d 125 (2d Cir. 2007) .......................................................................... 19

*Jennings v. Rodriguez,*
    583 U.S. 281 (2018) ...................................................................................... 17

*Kandamar v. Gonzales,*
    464 F.3d 65 (1st Cir. 2006) ........................................................................... 25

*Landon v. Plasencia,*
    459 U.S. 21 (1982) ........................................................................................ 26

*Leng May Ma v. Barber,*
    357 U.S. 185 (1958) ...................................................................................... 19

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) ................................................................................ 14, 16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ..................................................................................... 6, 7

*Lujan v. Nat'l Wildlife Fed'n,*
    497 U.S. 871 (1990) ...................................................................................... 13

*Mississippi v. Johnson,*
    71 U.S. 475 (1867) ........................................................................................ 23

*Mudric v. Att'y Gen. of U.S.*,
    469 F.3d 94 (3d Cir. 2006) ................................................................. 25

*Nadal-Ginard v. Holder*,
    558 F.3d 61 (1st Cir. 2009) ................................................................. 20

*New York v. Trump*,
    133 F.4th 51 (1st Cir. 2025) ................................................................. 13

*Nisselson v. Lernout*,
    469 F.3d 143 (1st Cir. 2006) ................................................................. 5

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ................................................................. 23

*Noem v. Doe*,
    No. 24A1079, 2025 WL 1534782 (U.S. May 30, 2025) ................................ 5, 12

*Norton v. So. Utah Wilderness All.*,
    542 U.S. 55 (2004) ................................................................. 13, 21

*Nw. Airlines, Inc. v. Transp. Workers Union of Am.*,
    451 U.S. 77 (1981) ................................................................. 16

*Puerto Rico v. United States*,
    490 F.3d 50 (1st Cir. 2007) ................................................................. 24

*Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972) ................................................................. 25

*Rios-Campbell v. U.S. Dep't of Com.*,
    927 F.3d 21 (1st Cir. 2019) ................................................................. 14

*Ruiz-Diaz v. United States*,
    703 F.3d 483 (9th Cir. 2012) ................................................................. 25, 26

*Samirah v. O'Connell*,
    335 F.3d 545 (7th Cir. 2003) ................................................................. 12

*Sanchez-Vasquez v. Garland*,
    994 F.3d 40 (1st Cir. 2021) ................................................................. 18

*Sessions v. Morales-Santana*,
    582 U.S. 47 (2017) ................................................................. 8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .................................................................................... 5

*Tate v. Pompeo*,
    513 F. Supp. 3d 132 (D.D.C. 2021) ........................................................... 21

*Thompson v. N. Am. Stainless*,
    562 U.S. 170 (2011) .................................................................................... 16

*Turner v. U.S. Att'y Gen.*,
    130 F.4th 1254 (11th Cir. 2025) ................................................................ 19

*United States v. Herrera-Pagoada*,
    14 F.4th 311 (4th Cir. 2021) ...................................................................... 25

*United States v. Maxwell*,
    254 F.3d 21 (1st Cir. 2001) ........................................................................ 22

*United States v. Texas*,
    599 U.S. 670 (2023) ................................................................................. 6, 8

*V.U.C. v. USCIS*,
    557 F. Supp. 3d 218 (D. Mass. 2021) ......................................................... 21

*Viqueira v. First Bank*,
    140 F.3d 12 (1st Cir. 1998) .......................................................................... 5

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
    5 F.4th 997 (9th Cir. 2021) ........................................................................ 13

*Wild Fish Conservancy v. Jewell*,
    730 F.3d 791 (9th Cir. 2013) ...................................................................... 13

**Statutes**

5 U.S.C. § 701(a) ................................................................................................ 8

5 U.S.C. § 701(a)(1) .......................................................................................... 15

5 U.S.C. § 701(a)(2) .......................................................................................... 14

5 U.S.C. § 704 ................................................................................................... 13

5 U.S.C. § 706(1) .............................................................................................. 20

5 U.S.C. § 706(2) .............................................................................................. 20

5 U.S.C. § 706(2)(C) ............................................................................................ 24

6 U.S.C. § 211(c)(8) ............................................................................................. 9

8 U.S.C. § 1182 .................................................................................................... 2

8 U.S.C. § 1182(d)(5) ........................................................................................... 25

8 U.S.C. § 1182(d)(5)(A) ............................................................................... passim

8 U.S.C. § 1182(d)(5)(C) .................................................................................. 6, 8

8 U.S.C. § 1225(b)(1) ........................................................................................... 19

8 U.S.C. § 1229a .................................................................................................. 11

8 U.S.C. § 1229a(c)(4) ......................................................................................... 11

8 U.S.C. § 1255(b)(1) ........................................................................................... 11

8 U.S.C. § 1158(b)(1) ........................................................................................... 25

8 U.S.C. § 1158(b)(1)(A) ...................................................................................... 15

8 U.S.C. § 1252(a)(5) ........................................................................................... 11

44 U.S.C. § 1505 .................................................................................................. 22

44 U.S.C. § 1507 .................................................................................................. 22

## Regulations

8 C.F.R. § 212.5(d) .............................................................................................. 22

8 C.F.R. § 212.5(e)(2)(i) ................................................................................. 20, 22

8 C.F.R. § 235.3(b)(1)(i) ...................................................................................... 19

72 Fed. Reg. 65588 (Nov. 15, 2007) ..................................................................... 2

79 Fed. Reg. 75581 (Dec. 18, 2014) ..................................................................... 2

87 Fed. Reg. 25040 (Apr. 17, 2022) ...................................................................... 2

87 Fed. Reg. 63507 (Oct. 19, 2022) ...................................................................... 2

88 Fed. Reg. 1243 (Jan. 9, 2023) ................................................................................ 2

88 Fed. Reg. 1255 (Jan. 9, 2023) ................................................................................ 2

88 Fed. Reg. 1266 (Jan. 9, 2023) ................................................................................ 2

88 Fed. Reg. 43601 (July 10, 2023) ........................................................................... 2

88 Fed. Reg. 21694 (Apr. 11, 2023) ........................................................................... 2

88 Fed. Reg. 43581 (July 10, 2023) ........................................................................... 2

88 Fed. Reg. 43591 (July 10, 2023) ........................................................................... 2

88 Fed. Reg. 54635 (Aug. 11, 2023) .......................................................................... 2

88 Fed. Reg. 54639 (Aug. 11, 2023) .......................................................................... 2

88 Fed. Reg. 78762 (Nov. 16, 2023) .......................................................................... 2

90 Fed. Reg. 13611-01 (Mar. 25, 2025) .................................................................... 4

## INTRODUCTION

Parole, by statute, allows for the temporary release of aliens who are applicants for admission into the interior of the United States, and its grant and termination lie within the discretion of the Department of Homeland Security (DHS). *See* 8 U.S.C. § 1182(d)(5)(A). DHS has issued guidance placing on hold requests for parole under certain parole programs, has terminated the parole programs for nationals of Cuba, Haiti, Nicaragua, and Venezuela (CHNV), and has announced the termination of the existing parole periods for CHNV parole recipients (although the Court stayed the effective date of some of these actions). To address legitimate, documented fraud concerns, DHS has also temporarily paused adjudication of requests for other immigration benefits filed by parolees who entered the United States through the CHNV parole programs and the Uniting for Ukraine (U4U) and Family Reunification Parole (FRP) processes.

Despite the temporary, discretionary nature of parole and the fact that there are no mandatory time frames for adjudicating requests for parole or other benefits, Plaintiffs' Complaint asks the Court to declare these actions unlawful. Plaintiffs lack standing and their claims fail at the threshold and on the merits—primarily because of Defendants' broad latitude to take actions with respect to parole and to manage the adjudication of requests for other immigration benefits. Today's Supreme Court decision allowing the Secretary's termination of CHNV parole grants to move forward pending appeal demonstrates that the Complaint should be dismissed.

## LEGAL BACKGROUND AND ALLEGATIONS

Plaintiffs' Second Amended Complaint (Doc. No. 68) challenges several different, recent Executive Branch actions or statements that are broadly related to various parole programs administered by DHS over the past several years.

*Parole.* Parole is a discretionary mechanism for temporarily allowing an alien applying for

1

admission to the United States into the interior of the country based on urgent humanitarian reasons or a significant public benefit. Under the parole statute, the Secretary has authority to "in [her] discretion parole into the United States temporarily under such conditions as [s]he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States," and "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled" and "his case shall continue to be dealt with in the same manner as that of any other applicant for admission[.]" 8 U.S.C. § 1182(d)(5)(A).

*The Parole Programs*. Over the past several years, Defendants have administered various parole programs, including, as relevant here: CHNV; U4U; re-parole for Afghans paroled during Operation Allies Welcome (OAW); Family Reunification Parole (FRP); Military Parole-in-Place (MPIP); and the Central American Minors program (CAM). Doc. No. 68 at ¶¶ 68–157. These programs established processes by which certain nationalities or categories of aliens could request parole, often because DHS had made an assessment that providing such processes for these categories of aliens served urgent humanitarian reasons or provided a significant public benefit.[1]

---

[1] *See* Doc. No. 68 at ¶¶ 98–99; 87 Fed. Reg. 63507 (Oct. 19, 2022) (parole process for Venezuelans); 88 Fed. Reg. 127 (Jan. 9, 2023) (changes to same); 88 Fed. Reg. 1266 (Jan. 9, 2023) (parole process for Cubans); 88 Fed. Reg. 1243 (Jan. 9, 2023) (parole process for Haitians); 88 Fed. Reg. 1255 (Jan. 9, 2023) (parole process for Nicaraguans); 87 Fed. Reg. 25040 (Apr. 17, 2022) (U4U); 88 Fed. Reg. 21694 (Apr. 11, 2023) (CAM); National Defense Authorization Act FY 2020, Pub. L. No. 116-92, § 1758 (2019), codified at 8 U.S.C. § 1182 note (MPIP); *Family Reunification Parole Process for Colombians*, 88 Fed. Reg. 43591 (July 10, 2023); *Family Reunification Parole Process for Ecuadorians*, 88 Fed. Reg. 78762 (Nov. 16, 2023); *Family Reunification Parole Process for Guatemalans*, 88 Fed. Reg. 43581 (July 10, 2023); *Family Reunification Parole Process for Hondurans*, 88 Fed. Reg. 43601 (July 10, 2023) (Ex. 29), Doc. No. 24-29; *Family Reunification Parole Process for Salvadorans*, 88 Fed. Reg. 43611 (July 10, 2023); *Changes to the Haitian Family Reunification Parole Process*, 88 Fed. Reg. 54635 (Aug. 11, 2023); *Changes to the Cuban Family Reunification Parole Process*, 88 Fed. Reg. 54639 (Aug. 11, 2023); *Haitian Family Reunification Parole Program*, 79 Fed. Reg. 75581 (Dec. 18, 2014); *Cuban Family Reunification Parole Program*, 72 Fed. Reg. 65588 (Nov. 15, 2007).

*Plaintiffs' Relationship to the Parole Programs.* The Plaintiffs in this case are: aliens who claim they received parole under U4U, CHNV, OAW, and CAM (Parolee Plaintiffs), some of whom have pending requests for re-parole under those programs, *see* Doc. No. 68 at ¶¶ 16–27, 36–37; individuals who claim to be supporters of beneficiaries requesting parole under MPIP, CAM, FRP, or CHNV (Supporter Plaintiffs), *id.* ¶¶ 28–35, 381; and the Haitian Bridge Alliance (HBA), an organization that claims to provide legal and educational services and support to Haitian migrants and individuals looking to serve as a U.S. supporter to Haitian migrants under the now-terminated Haitian parole program, *id.* ¶¶ 281–93. Plaintiffs seek to represent classes of individuals who have or will have their parole periods terminated, who have or had pending applications to support requests for parole under one of the parole programs, or who have pending applications for benefit requests that are allegedly on hold. *Id.* ¶¶ 295–97.

*Alleged Agency Actions.* On January 20, 2025, Acting Homeland Security Secretary Benjamine Huffman issued a memo (the Huffman Memo) directing DHS to review its existing parole policies and to "pause, modify or terminate" any parole policy that does not comport with the parole statute. Doc. No. 41-1. On January 20, 2025, Acting Commissioner of U.S. Customs and Border Protection (CBP) Pete Flores issued a memo (the Flores Memo) that Plaintiffs allege "restrict[ed] the CBP personnel authorized to grant parole and require[ed] that each parole granted by any CBP official be reported to" Flores and the Chief of Staff. Doc. No. 68 at ¶ 177. On January 23, 2025, Jennifer Higgins, Acting Director of U.S. Citizenship and Immigration Services (USCIS), sent an email requesting that USCIS officers "not make any final decisions (approval, denial, closure) or issue a travel document or I-94 for any initial parole or re-parole application" for enumerated parole programs, including those identified by Plaintiffs except for MPIP, until further instructions are issued. Doc. No. 41-2. On January 24, 2025, CBP notified airlines (the

January 24 CBP Notice) that "Carriers that transport aliens subject to the Presidential Executive Order [to terminate categorical parole programs] may be subject to a carrier fine for each alien brought to the United States." Doc. No. 68 at ¶ 179. In a February 14, 2025 memorandum, USCIS Acting Deputy Director Andrew Davidson issued a memo (the Davidson Memo) directing USCIS to "place an administrative hold on all immigration benefit requests filed by aliens who are or were paroled under U4U, CHNV, or FRP processes, pending the completion of . . . required screening and vetting." Doc. No. 41-3.  Two days ago, the Court stayed the Davidson Memo and the Higgins Email in certain respects. Doc. No. 107 at 49. Defendants have not had adequate time to address the full impact of that ruling on this motion.

In a Federal Register Notice (FRN) published March 25, 2025, DHS terminated the CHNV parole programs. *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13611 (Mar. 25, 2025). Upon re-examination and based on DHS's experience operating them, the Secretary determined that the CHNV programs "do not serve a significant public benefit, are not necessary to reduce levels of illegal immigration, did not sufficiently mitigate the domestic effects of illegal immigration, are not serving their intended purposes, and are inconsistent with the Administration's foreign policy goals." *Id.* at 13612. To the extent that "urgent humanitarian reasons" supported any grants of parole under CHNV, "DHS believes that [such] reasons for granting parole [are] best addressed on a case-by-case basis consistent with the statute, and taking into consideration each alien's specific circumstances." *Id.* Under the FRN, grants of parole under CHNV that had not already expired by April 24, 2025, were to terminate on that date unless the Secretary decided to the contrary in individual cases. *Id.* at 13611. The Court stayed the effective date of this aspect of the FRN. *See* Doc. No. 97. Defendants appealed that ruling, and the Supreme Court today stayed the ruling pending appeal,

allowing the terminations to go into effect. *Noem v. Doe*, No. 24A1079, 2025 WL 1534782 (U.S. May 30, 2025).

Plaintiffs assert that the FRN and agency guidance constitute a termination of parole programs and a suspension of other immigration benefits that are *ultra vires*, Doc. No. 68 at ¶ 357, violate due process, *id.* at ¶ 362, and violate the Administrative Procedure Act (APA) because they allegedly are based on an erroneous interpretation of the parole statute, are arbitrary and capricious, and do not follow agency procedures, *id.* at ¶¶ 315, 324, 328, 337–340, 345–46, 351–53.

## STANDARDS

Federal courts are courts of limited jurisdiction, and the party asserting jurisdiction bears the burden of showing it exists. *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). To survive a Rule 12(b)(6) motion, a "complaint must contain sufficient factual material to 'state a claim to relief that is plausible on its face.'" *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I.    The Complaint's Allegations Do Not Demonstrate Article III Standing.

To allege standing, Plaintiffs must "clearly allege facts demonstrating" a concrete injury that is fairly traceable to the challenged conduct and likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). "[A] plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler v. Cuno*, 547 U.S. 332, 352 (2006), and "each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000). The Complaint does not meet this standard and should be dismissed for lack of jurisdiction.

*HBA lacks organizational standing.* First, HBA, as a third party who is not the subject of any of the challenged actions, cannot establish standing to bring suit. "[W]hen the plaintiff is not

himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992). Generally, a plaintiff lacks a cognizable interest in the Executive Branch's discretionary immigration enforcement decisions over others. *See United States v. Texas*, 599 U.S. 670 (2023) (finding that States, as non-regulated third parties, lacked standing to challenge immigration enforcement guidelines). Further, Congress has specifically authorized suit (and thus defined standing) by certain state officials to challenge policies concerning parole under § 1182(d)(5)(A), but it has not done so for organizations. *See* 8 U.S.C. § 1182(d)(5)(C).

HBA's asserted harms arising from its use of resources to assist Haitian parolees or supporters does not establish a cognizable injury from the challenged actions. *See* Doc. No. 68 at ¶¶ 281–93; Doc. No. 71-3 at ¶¶ 11–12. To show a concrete injury, it is not enough that "an organization diverts its resources in response to defendant's actions" even if it will "expend considerable time, energy, and resources." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394–95 (2024) (*Alliance*). An unregulated organization must instead show that the challenged action "perceptibly impair[s]" or "interferes with" its activities by imposing an affirmative "impediment" to performing those activities. *See id.* Neither HBA's allegations nor the declarations it has submitted in connection with motions for preliminary injunctive relief satisfy this standard. HBA alleges and asserts that it has devoted resources to "analyz[ing] the [CHNV] FRN," providing information to Haitian parolees, and providing "humanitarian and legal assistance to individuals" due to the upcoming termination of their employment authorization. *See* Doc. No. 71-3 at ¶¶ 11–12; Doc. No. 68 at ¶ 292. It has also updated its "educational materials" to address the FRN. Doc. No. 71-3 at ¶ 15; *see also* Doc. No. 68 at ¶ 293. HBA also alleges that it *may* have to "modify its approach to its core activities to meet the needs

of [Haitian] parolees" whose parole is terminated. Doc. No. 68 at ¶¶ 289, 291.

As an initial matter, HBA's speculation that it may perhaps choose to provide different legal services to Haitian clients in the future as a result of the FRN is too attenuated to establish standing at the time of the filing of the complaint. *Lujan*, 504 U.S. at 564 n.2, 569 n.4 (requirement that injury must be "*certainly* impending" cannot be met by allegations of injury at some indefinite future time particularly where "the acts necessary to make the injury happen are at least partly within the plaintiff's own control"). Moreover, all of HBA's claimed injuries are merely a continuation of its core activities—providing humanitarian and legal support to recent Haitian arrivals. *See* Doc. No. 71-3 at ¶ 8; Doc. No. 68 at ¶ 281. In other words, HBA asserts that it will continue to provide humanitarian and legal support to recent Haitian arrivals impacted by the FRN or other agency actions. HBA does not, and cannot, assert that the challenged actions actually impede or impair HBA's activities. And as the Supreme Court's reasoning in *Alliance* made clear, an organization cannot demonstrate standing any time it voluntarily shifts resources in response to a policy from one set of direct-service activities to another set of similar activities in support of its mission. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell*, No. 25-cv-10276-GAO, 2025 WL 470459, at *2 (D. Mass. Feb. 12, 2025) (holding that union lacked standing to challenge directive to member employees despite "choosing to divert resources towards 'respond[ing] to tremendous uncertainty created by [the challenged] actions' and away from other union priorities"). To hold otherwise would impermissibly allow organizations to create standing to challenge any conduct that touches on their mission by voluntarily devoting resources toward responding to the conduct. *See Alliance*, 602 U.S. at 394.

*Supporter Plaintiffs Lack Standing*. The Supporter Plaintiffs, who are also third parties not directly regulated by the challenged actions, likewise lack a cognizable injury from the

downstream impact of discretionary enforcement decisions, including any actual or potential pause on or termination of parole programs, or any pause on adjudication of other requests for immigration benefits by parolees under those programs. *See Texas*, 599 U.S. at 674; Doc. No. 68 at ¶¶ 242–43, 247, 255, 259, 266, 280 (alleging indirect impacts on supporters). As noted, Congress has not authorized supporters to sue to challenge parole policies. *See* 8 U.S.C. § 1182(d)(5)(C).

Next, to the extent the Supporter Plaintiffs claim harms from no longer being able to support beneficiaries for parole (*see* Doc. No. 68 at ¶¶ 242, 262), this claimed harm—assuming it is a cognizable legal interest—is not fairly traceable to the challenged actions. As discussed below, parole under § 1182(d)(5)(A) is inherently discretionary, such that any grant of parole or the continued existence of parole programs is purely at the grace of DHS. *See* Doc. No. 97 (recognizing "broad" discretion of the Secretary with respect to parole). Further, due to statutory limits on judicial review in both 8 U.S.C. § 1252(a)(2)(B)(ii) and the APA, 5 U.S.C. § 701(a), the Court cannot redress this harm, as it cannot compel the Secretary to grant discretionary parole to any beneficiary or direct the Secretary to implement a particular process to receive requests for parole. *See infra* § II. These claimed injuries are thus not traceable to the particular agency actions at issue or redressable by relief related thereto.

Finally, the Supporter Plaintiffs cannot base standing on allegations of harm to aliens with pending requests for parole under the paused or terminated programs. *See, e.g.*, Doc. No. 68 at ¶¶ 241, 245, 248, 317. Courts only recognize standing to assert others' rights in special cases where the third-party plaintiff has "a close relationship with the person who possesses the right [and] there is a hindrance to the possessor's ability to protect his own interests." *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017). Plaintiffs have not asserted any hindrance to any parole

applicant's ability to bring his or her own claim. In any event, given the lack of entitlement to discretionary parole, such claims would suffer from the same traceability and redressability defects as the Parolee Plaintiffs' claims, *see infra* at 9–10, and would fail on the merits.

*All Plaintiffs Lack Standing to Challenge CBP Actions.* No Plaintiff has standing to challenge the Flores Memo (Doc. No. 68 at ¶ 177) or the January 24 CBP Notice (Doc. No. 68 at ¶ 179). None of the Plaintiffs allege that the Flores Memo—which Plaintiffs say "restrict[ed] the CBP personnel authorized to grant parole and required that each parole granted by any CBP official be reported," Doc. No. 68 at ¶ 177—has impacted them. No Plaintiffs allege that they will imminently seek parole from CBP officials who inspect aliens at ports of entry or apprehend persons attempting to illegally enter. *See* 6 U.S.C. § 211(c)(8), (e)(3), (g)(3) (describing relevant CBP duties). Indeed, Plaintiffs do not even allege that the Flores Memo disallows parole by CBP personnel—merely that its use has been restricted to certain personnel. Accordingly, no Plaintiff alleges a concrete injury traceable to the Flores Memo. Similarly, no Plaintiffs allege that they or their relatives or beneficiaries have been denied boarding of a flight to the United States, or that they currently have travel authorization issued pursuant to a parole program that would otherwise allow them to board such a flight. Plaintiffs thus do not allege any concrete injury that is fairly traceable to the alleged January 24 CBP Notice that advised airlines that they could be "subject to a carrier fine" if they bring aliens subject to certain categorical parole programs to the United States. *See* Doc. No. 68 at ¶ 179. These actions are not at issue in this case, and any portions of Plaintiffs' claims pertaining thereto—as well as the CBP Defendants—must be dismissed.

*Parolee Plaintiffs Lack Standing to Challenge Any Pause or Termination of Parole Programs or Adjudication of Requests Immigration Benefits.* The Parolee Plaintiffs claim that they are injured by the pause or termination of certain parole programs and the hold on the

adjudication of other immigration benefit requests because they are at risk of removal from the United States or have lost or will lose eligibility for employment authorization based on parole. *See, e.g.*, Doc. No 68 at ¶¶ 198, 207, 215, 218. This injury is not fairly traceable to the agency guidance because the risk of removal is too attenuated from the challenged conduct, and any risks resulting from the loss of parole are attributable to the inherently discretionary nature of parole, not to the agency guidance.

First, the Parolee Plaintiffs were granted only temporary, discretionary permission to enter the United States, without any guarantee of continuation of that permission or any future status. No one is entitled to parole, an extension or continuation of parole, or to re-parole under any of the parole programs. Indeed, re-parole was not even available under the CHNV parole programs. *See* 90 Fed. Reg. at 13617 & n.62. Accordingly, a pause on the acceptance or adjudication of requests under the parole programs—or a termination of the program—does not take away any pre-existing rights or benefits. Second, Parolee Plaintiffs with pending requests for other immigration benefits such as asylum, TPS, and adjustment of status, cannot demonstrate that they have suffered, or will imminently suffer, an injury from any pause on the adjudication of those requests. Benefit adjudications generally take several months to several years. *See, e.g.*, *Celebi v. Mayorkas*, 744 F. Supp. 3d 100, 104 (D. Mass. 2024) (finding three-and-a-half year wait for adjudication of asylum application not unreasonable); Doc. No. 41-5 (noting average adjustment of status processing times of up to 13.4 months and average TPS application processing times of 5-6 months). Third, the risk of removal from the United States is attenuated, as multiple, discretionary steps must occur before that could happen, even if Plaintiffs are not able to obtain re-parole or secure other legal status. *See Alliance*, 602 U.S. at 383 ("[W]here the government action is so far removed from its distant (even if predictable) ripple effects . . . the plaintiffs cannot

establish Article III standing."). Plaintiffs must first be placed in some form of removal proceedings, and their requests for relief or protection from removal would then have to be denied. If Plaintiffs were placed in removal proceedings under 8 U.S.C. § 1229a, they could renew their applications for asylum or TPS before the immigration judge. *See* 8 U.S.C. § 1229a(c)(4), 1254a(b)(5)(b).[2] If Plaintiffs were placed in expedited removal, they could seek asylum through the credible-fear interview process. *See* 8 U.S.C. § 1255(b)(1).

Further, even if the Parolee Plaintiffs' injuries were traceable to the challenged agency actions, they are not redressable by their claims. Relief from the challenged actions does not alter Defendants' preexisting ability to place aliens in removal proceedings and could thus not prevent the commencement of removal proceedings—relief Congress has said is unavailable. *See* 8 U.S.C. §§ 1252(a)(5), (g). Enjoining or vacating the challenged guidance would also not compel grants of re-parole because the Court cannot compel this discretionary action. *See infra* § II. DHS has the "discretion" to determine whether to parole any individual, regardless of the existence of any program or process for re-parole. 8 U.S.C. § 1182(d)(5)(A). Relief from the Davidson Memo would also not compel adjudication of any pending benefit requests within a particular time frame. To have any claim to do so, Plaintiffs would have to show unreasonable delay for each application as they identify no mandatory statutory timeline for adjudication of their pending rquests. *See infra* § IV(B). For these reasons, the Parolee Plaintiffs lack standing to pursue their claims.[3]

---

[2] USCIS would retain jurisdiction over many parolees' applications for adjustment of status despite pending § 1229a removal proceedings. *See* 8 C.F.R. § 1245.2(a)(1)(ii).
[3] Defendants recognize that this Court has previously determined that certain CHNV Parolee Plaintiffs suffered a cognizable injury from the early termination of their individual parole grants. *See* Doc. No. 97, at 18–19. Defendants respectfully preserve the argument that those claims are not permissibly redressable by an order against the FRN. *See* Doc. No. 89, at 13.

## II.    Section 1252(a)(2)(B) Precludes Jurisdiction Over Claims Challenging Discretionary Decisions Concerning Parole (Claims 1, 3, 5, 6, 7).

In 8 U.S.C. § 1252(a)(2)(B)(ii), Congress precluded review of DHS's decisions concerning the termination of parole programs, pauses on parole adjudication, and the termination of individual grants of parole that are challenged in the First, Third, Fifth, Sixth, and Seventh Claims. Section 1252(a)(2)(B)(ii) provides: "no court shall have jurisdiction to review ... any other decision or action ... the authority for which is specified ... to be in the discretion of the ... Secretary." The exercise of parole authority under § 1182(d)(5)(A)—which permits the Secretary to, "in [her] discretion" temporarily parole an applicant for admission into the United States and to terminate that parole "when the purposes of such parole ..., in [her] opinion ..., have been served"—is just such a "decision or action" that is subject to the bar. *See* 8 U.S.C. § 1182(d)(5)(A); *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003); *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010). Congress's bestowal of discretion to the Secretary to grant or terminate parole necessarily encompasses decisions whether to terminate processes for the grant of parole and to place such programs—or individual requests under such programs—on hold. Accordingly, Plaintiffs' claims challenging those decisions are not subject to review and must be dismissed.[4]

## III.    Plaintiffs' APA Claims Fail at the Threshold (Claims 1-5).

Other threshold requirements likewise bar Plaintiffs' APA claims, warranting their dismissal. *First*, Plaintiffs impermissibly seek to group a number of different agency actions into one action for purposes of their challenges to "termination of parole processes" in their First and

---

[4] Defendants recognize the Court previously held that the parole statute did not grant discretion to terminate parole grants except on an individualized basis, in a ruling that has since been stayed by the Supreme Court. Doc. No. 97 at 20–25; *Noem v. Doe*, No. 24A1079, 2025 WL 1534782 (U.S. May 30, 2025). Defendants respectfully reserve their arguments that the statutory grant of discretion expressly covers the decision to terminate parolees' existing grants of parole as set forth in the CHNV FRN.

Third Claims for Relief. *See* Doc. No. 68 at ¶¶ 163–88, 308–21, 331–41. They similarly group two different guidance documents—the Higgins Email and the Davidson Memo—into one "suspension of benefits adjudication" in their Second and Fourth Claims. *See id.* at ¶¶ 189–200, 322–30, 342– 48. An APA plaintiff must identify and challenge a "circumscribed, discrete agency action[]." *Norton v. So. Utah Wilderness All.*, 542 U.S. 55, 62 (2004); *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir. 2013). Plaintiffs cannot use the APA to obtain "wholesale" or "programmatic" improvement of agency conduct, but must rather challenge "some concrete action applying" a particular policy "to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Here, Plaintiffs are "challenging a variety of" agency actions with different parameters, results, bases, and decisionmakers. *See New York v. Trump*, 133 F.4th 51, 67 (1st Cir. 2025); Doc. No. 68 at ¶ 315. An "entire 'program'—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA." *Lujan*, 497 U.S. at 892–93. At minimum, Plaintiffs' Complaint needs to more clearly identify which particular actions are challenged by which Plaintiffs, and on which basis. *See Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1011–12 (9th Cir. 2021). This is important because most of the agency "actions" Plaintiffs allege, *see* Doc. No. 68 at ¶¶ 163–200, are not final for purposes of APA review, and/or have no impact on Plaintiffs, *see supra* § I.

Second, most of the agency actions that Plaintiffs challenge do not qualify as "final agency actions" as required to bring a claim under the APA. 5 U.S.C. § 704. To be final, an agency action "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and it "must be one by which rights or obligations have been

determined, or from which legal consequences will flow." *Bennet v. Spear*, 520 U.S. 154, 177–78 (1997). Final agency action constitutes a "definitive statement" of the agency's position with "direct and immediate consequences." *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Env't Prot.*, 208 F.3d 1, 5 (1st Cir. 2000) (internal quotation marks and citations omitted). Only one identified action—the CHNV FRN—even arguably qualifies as a final agency action under these standards, and that action was followed by individual notice to affected persons. The remainder of the actions Plaintiffs challenge represent guidance about terminating or re-examining processes that may constitute "categorical parole programs" and pausing adjudication of immigration applications to complete the requisite vetting. The Huffman Memo does not itself pause or modify any parole program, *see* Doc. No. 41-1, and the Court has already determined this Memo is not actionable under the APA. *See* Doc. No. 107 at 11. The Higgins Email and Davidson Memo only direct officers to pause adjudication of certain requests for parole or immigration benefits, *see* Doc. Nos. 41-2, 41-3,[5] and do not represent the consummation of the agency's decision-making process on any particular parole program, much less on the ultimate parole and benefit determinations for Plaintiffs. *See Bennet*, 520 U.S. at 177-78. The challenged documents do not themselves determine rights and obligations or impose legal consequences "directly and immediately" on Plaintiffs. *See id.*; *Ass'n of Int'l Auto. Mfrs.*, 208 F.3d at 5. Accordingly, these portions of the Plaintiffs' APA claims must be dismissed.

*Third,* the challenged decisions are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). DHS's expressly discretionary determinations to pause or discontinue a parole program, or to terminate existing periods of parole,

---

[5] These guidance documents are incorporated by reference into the Complaint and are thus properly considered on a motion to dismiss. *See Rios-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 25 n.2 (1st Cir. 2019).

are thus unreviewable. The text of § 1182(d)(5)(A) commits decisions to grant or deny parole explicitly to the "discretion" of the Secretary. 8 U.S.C. § 1182(d)(5)(A). And while the statute places restrictions on the grant of parole, it places absolutely no limits on the Secretary's discretion to terminate parole "when the purposes of such parole shall, in [the Secretary's] opinion ... have been served." 8 U.S.C. § 1182(d)(5)(A). Terminating or pausing parole programs also involves "complicated balancing of a number of factors which are peculiarly within [agency] expertise," including the Executive Branch's comprehensive efforts to manage foreign affairs and border security, 90 Fed. Reg. at 13616, for which there are no judicially manageable standards permitting court superintendence. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985).[6] And as discussed, the jurisdiction-stripping provision of § 1252(a)(2)(B)(ii) likewise precludes APA review. *See* 5 U.S.C. § 701(a)(1).

Plaintiffs' challenge to a pause on adjudication of their requests for asylum, TPS, or adjustment of status is likewise unreviewable because the adjudication of those benefits is committed to agency discretion. *See* Doc. No. 68 at ¶¶ 196, 206, 211, 214, 217, 220, 272. Like parole, these benefits are expressly discretionary. *See* 8 U.S.C. §§ 1158(b)(1)(A) (asylum), 1254a(a)(1)(A) (TPS), 1255(a) (adjustment). The process and timing for decisions on these applications involve the same "complicated balancing of a number of factors which are peculiarly within [the agency's] expertise" as the ultimate decisions themselves. *Heckler*, 470 U.S. at 831. The Court has "no meaningful standard against which to judge the agency's exercise of discretion" as to how much screening and vetting must be done before decisions can be reached on these applications without raising fraud and public safety concerns. *See Lincoln*, 508 U.S. at 191.

---

[6] Defendants acknowledge that the Court has already held otherwise with respect to the CHNV FRN's termination of existing grants of parole. *See* Doc. No. 97 at 25–27.

*Fourth*, HBA and the Supporter Plaintiffs cannot bring APA claims because they are not within the zone of interests of the relevant statutes. A plaintiff "may not sue unless he falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Thompson v. N. Am. Stainless*, 562 U.S. 170, 177 (2011). This inquiry asks whether Congress intended for a particular plaintiff to invoke a particular statute to challenge agency action. *See Clarke v. Security Indus. Ass'n*, 479 U.S. 388, 399 (1987). Nothing in § 1182(d)(5)(A) evinces any concerns with the interests of organizations or supporters in assisting parolees or enforcing the statute's provisions. *See Fed'n for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 902 (D.C. Cir. 1996). Indeed, the parole statute does not even mention supporters or sponsors of parole, even though it specifically provides for suit by state officers. *See* 8 U.S.C. § 1182(d)(5)(A), (C). This omission is meaningful, because "when Congress wanted to provide a right to" sue over parole decisions, "it did so expressly." *See Nw. Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 92 & n.24 (1981). Nor does the Complaint point to any statute governing other benefit requests that demonstrates a concern with protecting the interests of supporters or of organizations that provide legal or humanitarian services.

## IV.    The Substantive APA Claims Do Not State a Claim.

Even if Plaintiffs' APA claims were reviewable, the Court should dismiss the Plaintiffs' First, Second, and Fourth Claims for Relief for failure to state a claim as a matter of law.

### A.  Plaintiffs' First Claim for Relief Does Not State a Claim.

Plaintiffs' contrary-to-law challenges to decisions to pause or terminate parole programs or individual parole grants are not viable because the INA provides "sweeping" "statutory authority" to the Secretary to grant or terminate parole. *Amanullah v. Nelson*, 811 F.2d 1, 6 (1st Cir. 1987). As explained, the Secretary has authority, "in [her] discretion," to "parole"

"temporarily under such conditions as [the Secretary] may prescribe," and "when the purposes of such parole shall, in [her] opinion . . ., have been served the alien shall forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A).

Defendants' actions concerning parole are entirely consistent with the statute and regulations. As to the Huffman Memo and the Higgins email, the Complaint points to no statutory requirement that the Defendants continue parole programs or adjudicate parole requests in any particular manner or at any particular pace. Indeed, USCIS's pause on consideration of parole requests under certain parole programs is well within the statute's broad grant of discretion to DHS to determine whether to grant parole under prescribed circumstances. This discretion necessarily encompasses the discretion to manage processes for requests for parole or to decline to adjudicate pending requests, whether temporarily or otherwise. As to the CHNV FRN, the Secretary determined, in her opinion, that whatever purposes parole under the CHNV programs had served, it was no longer serving those purposes, and that "neither humanitarian reasons nor public benefit" warranted continuation of parole under the programs. *See generally* 90 Fed. Reg. at 13,612-17.

Plaintiffs' arguments that these actions are contrary to law lack merit. First, Plaintiffs assert that they were based on an "erroneous interpretation of the parole statute" set forth in the Huffman Memo. *See* Doc. No. 68 at ¶ 313. But the Acting Secretary's interpretation of the statute—that it should be limited to granting parole based on aliens' individual circumstances—is fully consistent with the statutory language. *See* Doc. No. 41-1; 8 U.S.C. § 1182(d)(5)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 301 (2018) (explaining that the parole provision and the corresponding detention provision, 8 U.S.C. § 1225(b), "authorize release [on parole] only under limited circumstances"). Moreover, even if the paused or discontinued parole programs are "authorized by the statutory parole authority," *see* Doc. No. 68 at ¶ 318, that does not mean that the statute *requires* DHS to

continue those programs. And, as Plaintiffs recognize, the Huffman Memo—and thus any actions taken pursuant thereto, such as the Higgins Email—was also based on the alternative ground that the Secretary may authorize a pause, modification, or termination of the parole programs as a matter of discretion. *See* Doc. No. 68 at ¶ 174; Doc. No. 41-1. This alternate ground is sufficient to support agency actions pausing parole adjudications under these programs. *Sanchez-Vasquez v. Garland*, 994 F.3d 40, 48 (1st Cir. 2021). ("When . . . an agency premises a decision on alternate grounds, each of which is independently sufficient, we may uphold its decision if either ground is supportable."). And, although Plaintiffs conclusorily allege that this discretion is "subject to constitutional . . . and self-imposed regulatory constraints," Doc. No. 68 at ¶ 320, they have not pointed to any constitutional or regulatory constraints that apply here. *See infra* § VII (explaining that discretionary benefits like parole do not implicate procedural due process concerns); Doc. No. 41-1 (authorizing a pause or termination of parole program where "consistent with applicable statutes, regulations, and court orders"). Nor can they, where the parole programs were expressly subject to termination at any time. *See, e.g.*, 88 Fed. Reg. at 1277 ("The Secretary retrains the sole discretion to terminate the Parole Process for Cubans at any point.").

For its part, the CHNV FRN does not rely on an assertion that the CHNV programs violate the parole statute to terminate the CHNV programs or grants of parole. *See* 90 Fed. Reg. at 13,611. Instead, DHS explained why the purposes of the CHNV parole programs were no longer being served and stated that it "believes that consideration of any urgent humanitarian reasons for granting parole is best addressed on a case-by-case basis consistent with the statute and taking into consideration each alien's specific circumstances." 90 Fed. Reg. at 13612. Ultimately, Plaintiffs point to nothing that *requires* DHS to exercise its discretion to continue to implement such a parole program or grant parole to anyone.

18

Second, Plaintiffs assert that the decision to terminate individual CHNV parole grants was contrary to law because it was based on an erroneous interpretation of the expedited removal statute, 8 U.S.C. § 1225(b)(1). *See* Doc. No. 68 at ¶ 316. Although the Court has preliminarily determined that Plaintiffs are likely to succeed on this argument, *see* Doc. No. 97 at 32, Defendants respectfully maintain that this argument cannot succeed as a matter of statutory interpretation, as supported by the Supreme Court's recent decision staying the effect of this Court's ruling. Contrary to Plaintiffs' assertions, the expedited removal provision at 8 U.S.C. § 1225(b)(1)(A)(iii)(II) permits placing CHNV parolees in expedited removal upon termination of their parole. This provision permits the government to use expedited removal for an alien who "has not been admitted or paroled." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). The use of the present perfect tense ("has not been . . . paroled") here reflects a "state that continues into the present." *See Turner v. U.S. Att'y Gen.*, 130 F.4th 1254, 1261–62 (11th Cir. 2025) (construing former 8 U.S.C. § 1432 and explaining that the present perfect tense can "refer to a . . . state that continues into the present"). Accordingly, an alien whose parole has terminated or expired, may be processed for expedited removal under § 1225(b)(1)(A)(iii)(II).[7] This textual interpretation comports with the statutory and historical context: when parole is revoked, an alien reverts to the status he possessed prior to parole, here an applicant for admission standing at the threshold of entry. *See* 8 U.S.C. § 1182(d)(5)(A); *Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958); *Ibragimov v. Gonzales*, 476 F.3d 125, 137 (2d Cir. 2007). Holding that aliens who were once paroled cannot be subject to expedited removal under § 1225(b)(1)(A)(iii)(II) would require treating former parolees in a different manner than other applicants for admission, but § 1182(d)(5)(A) provides that when parole ends, aliens must

---

[7] Such an alien may also be processed for expedited removal as an alien "arriving in the United States" under § 1225(b)(1)(A)(i). *See also* 8 C.F.R. §§ 235.3(b)(1)(i), 1.2 ("An arriving alien remains an arriving alien even if paroled.").

"return" to their pre-parole status and "be dealt with in the same manner as that of any other applicant for admission." Regulations that apply when parole is terminated reinforce this reading. *See* 8 C.F.R. § 212.5(e)(2)(i) ("further inspection or hearing shall be conducted under section 235 [(8 U.S.C. § 1225)] or 240 of the Act.").

But even assuming the Secretary had erred in that one rationale, this would not warrant disturbing DHS's decision to terminate existing grants of parole, because that decision lies within DHS's discretion and is supported by DHS's separate findings that "neither humanitarian reasons nor public benefit warrants the continued presence of aliens paroled under the CHNV programs and the purposes of such parole therefore have been served." 90 Fed. Reg. at 13,620; *see also id.* at 13,614–16 (expressing concern with expanded public benefits eligibility of certain parolees), 13,619 ("recognizing strong interest in promptly returning parolees when the basis for the underlying parole no longer exists"); *Nadal-Ginard v. Holder*, 558 F.3d 61, 69 n. 7 (1st Cir. 2009) ("We therefore need not reach the [agency's] other rationale for its decision [because if the other rationale constituted error] . . . there was no prejudice").

### B.  Plaintiffs' Second and Fourth Claims Fail to State a Claim.

Both of Plaintiffs' APA challenges to agency guidance pausing the adjudication of requests for other immigration benefits likewise fail to state a claim. As a threshold matter, Plaintiffs frame their claims as challenges to agency policy under 5 U.S.C. § 706(2), but their claims are essentially seeking to *require* speedier adjudication of such applications. Accordingly, these claims seek to compel agency action "unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1). Where a plaintiff challenges the pace of adjudication or policies concerning prioritization of applications, those claims "are best viewed through the lens of unreasonable delay." *See Celebi*, 744 F. Supp. 3d at 107 (quoting *Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 n.8 (D.D.C. 2021)).

Yet Plaintiffs have not alleged that Defendants have a mandatory duty to adjudicate any request for immigration benefits at issue as necessary to support such a claim under the APA. "The only agency action that can be compelled under the APA is action legally *required*," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63, (2004). Nor have they alleged facts to show that the time frames for processing each Plaintiffs' pending requests are unreasonable under the so-called *TRAC* factors, as necessary to support an unreasonable delay claim. *See V.U.C. v. USCIS*, 557 F. Supp. 3d 218, 223 (D. Mass. 2021). Indeed, most Plaintiffs only filed their asylum applications this year, and delays of three and half years or more have been held to not be unreasonable in the asylum context. *See Celebi*, 744 F. Supp. 3d at 104.

Moreover, Plaintiffs' Second Claim fails for the additional reason that Plaintiffs do not identify any "right to apply for immigration benefits" or to the application of particular legal standards, let alone a right that is foreclosed by the identified agency guidance. *See* Doc. No. 68 at ¶ 328. The Davidson Memo involves an administrative hold on certain requests for other immigration benefits to address legitimate, documented fraud concerns. *See* Doc. No. 41-3. It does not foreclose the filing of applications for benefits such as TPS, asylum, or adjustment of status, nor does it purport to ultimately foreclose adjudication of those applications or alter any legal standards that would apply to an ultimate adjudication. *See id.* Whether to grant these benefits ultimately lies in the Executive Branch's discretion. *See infra* § VII. Finally, Plaintiffs offer no support for their naked assertion that the adjudication hold somehow constitutes a "condition" of parole. *See* Doc. No. 698 at ¶ 329. The Davidson Memo does not purport to create "conditions" on parole, *see* Doc. No. 41-3, nor does it involve the type of promises from an alien at the time of parole that have been considered "conditions" of parole—such as "reasonable assurances that the alien will appear at all hearings and/or depart the United States when required to do so." 8 C.F.R.

§ 212.5(d). The Complaint thus does not plausibly allege that the Davidson Memo—or any hold on the adjudication of other immigration benefit—is contrary to law.

## V.    Plaintiffs Cannot State a Claim for Failure to Follow Agency Procedures (Claim Five).

Contrary to Plaintiffs' claim, *see* Doc. No. 68 at ¶¶ 350–55, DHS's provision of notice of the termination of individual CHNV parole grants through publication in the *Federal Register* and individualized notice to a USCIS online account meet its regulatory notice requirements. Regulations implementing the parole authority address the mechanics of terminating parole before its expiration date, providing that "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [the Secretary or her designees], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien[.]" 8 C.F.R. § 212.5(e)(2)(i). Neither the statute nor regulations define or limit what may constitute "written notice" of termination, other than to provide that a charging document qualifies as "written notice." *See id.*

Plaintiffs incorrectly contend that "publication of a FRN" does not constitute "written notice" of termination of parole as required by 8 C.F.R. § 212.5(e)(2)(i). *See* Doc. No. 68 at ¶ 350. As a document "authorized" to be published in the *Federal Register*, *see* 44 U.S.C. § 1505, publication of the termination in the FRN was "sufficient to give notice of the contents of the document to a person subject to or affected by it," 44 U.S.C. § 1507; *see United States v. Maxwell*, 254 F.3d 21, 25 (1st Cir. 2001). The relevant regulation merely requires that the notice be "written," *see* 8 C.F.R. § 212.5(e)(2)(i); it does not specify that written notice must be accomplished by a particular means or require DHS to "furnish individual notice." *See Bank of Commerce v. Bd. of Governors of Fed. Res. Sys.*, 513 F.2d 164, 167 (10th Cir. 1975).

Regardless, every CHNV parolee received individualized notice of termination delivered to their USCIS online account. *See* 90 Fed. Reg. at 13,620. This notice independently satisfies the

regulatory requirement. *Cf. Aldea-Tirado v. PricewaterhouseCoopers, LLP*, 101 F.4th 99, 103-06 (1st Cir. 2024) (finding email notice sufficient). DHS is notifying parolees through online accounts they created specifically to apply for parole under the CHNV program. *See* 90 Fed. Reg. at 13,620 (noting that all parolees should have such an online account); 8 C.F.R. § 103.2(b)(19)(ii)(B) (providing for electronic notice to aliens and their representatives in cases where the application is filed electronically). Plaintiffs' sole prior argument against this method of notice was that "there is seemingly no requirement that the CHNV parolees check those accounts or even [] maintain access to them." Doc. No. 72 at 19 n.11. There is likewise no *requirement* that any parolee open mail addressed to them, but the fact they failed to do so would not support a claim of insufficient notice.

## VI.  Plaintiffs Cannot State a Claim for "Nonstatutory Review" (Claim Six).

Plaintiffs' Sixth Claim asks the Court to use its inherent equitable authority to enjoin Defendants' actions terminating or pausing parole programs and pausing adjudication of certain immigration benefits as in excess of legal authority. Doc. No. 68 at ¶¶ 357-358. This purported equitable claim, untethered to any cause of action, is not cognizable and should be dismissed.

*First*, this claim must be dismissed as to the President because courts cannot issue an injunction purporting to supervise the President's performance of his duties. *See Mississippi v. Johnson*, 71 U.S. 475, 501 (1867); *Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (noting that "grant of injunctive relief against the President [ ] is extraordinary, and should have raised judicial eyebrows"). This limitation reflects the respect due to the President's "unique position in the constitutional scheme." *See Nixon v. Fitzgerald*, 457 U.S. 731, 748 n.27, 749–50 (1982).

*Second*, this non-statutory *ultra vires* claim against the remaining Defendants is barred as it has been supplanted by the APA. In 1976, Congress recognized that "actions challenging official conduct are intrinsically against the United States" and should be "treated as such for all practical

23

purposes." H.R.Rep. No. 1656, 94th Cong., 2d Sess. 11 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 6121, 6131. At the same time, to permit certain lawsuits to continue, Congress waived sovereign immunity from lawsuits seeking nonmonetary relief. Act. of Oct. 21, 1976, Pub. L. No. 94–574, § 1, 90 Stat. 2721, 2721. It codified that waiver in what is now section 706(2)(C) of the APA. Section 706(2)(C), by its express terms, offers a vehicle to challenge unconstitutional and otherwise ultra vires executive action. 5 U.S.C. § 706(2)(C) (permitting review of agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"). Plaintiffs have taken advantage of that waiver of sovereign immunity by asserting claims under the APA. Am. Compl. at ¶¶ 308-355. They cannot *also* assert claims at equity. The power of the federal courts at equity is "subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). The APA creates those statutory limitations and generally precludes non-statutory review. *Puerto Rico v. United States*, 490 F.3d 50, 60 (1st Cir. 2007) ("[T]he existence of the APA as a means for reviewing the FBI's actions at least implies that nonstatutory review is inappropriate."). While the First Circuit has held that limited, non-statutory review may be available when there is no alternative procedure for review, Congress has not clearly precluded review, and the case seeks to enforce a Constitutional right, *id.*, this exceedingly narrow exception does not apply here. This suit does not involve a violation of a Constitutional right, *see infra* § VII, and, if review of any claim is available, it is available under the APA. *See* Doc. No. 68 at ¶¶ 308-355. Thus, they cannot maintain a non-statutory claim. *Puerto Rico*, 490 F.3d at 60.

## VII.    Plaintiffs Cannot State a Due Process Claim (Claim Seven).

Plaintiffs incorrectly allege that they have "a protected interest in applying for parole, re-parole, and other immigration benefits," and that by "terminating the parole processes and

suspending benefits adjudication [Defendants] violate Plaintiffs' right to due process." Doc. No. 68 at ¶¶ 360, 362. To have a protected interest in a benefit for purposes of due process, "a person clearly must have more than an abstract need or desire . . . or a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972). Discretionary benefits do not meet that standard. *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 463 (1981) ("A constitutional entitlement cannot be created ... merely because a wholly and expressly discretionary state privilege has been granted generously in the past."); *United States v. Herrera-Pagoada*, 14 F.4th 311, 320 (4th Cir. 2021); *Kandamar v. Gonzales*, 464 F.3d 65, 69 (1st Cir. 2006).

Grants of parole are undisputedly discretionary. *See* 8 U.S.C. § 1182(d)(5). As such, the denial or revocation of parole does not affect deprivation of a liberty or property interest. *Fernandez–Roque v. Smith*, 734 F.2d 576, 582 (11th Cir. 1984). A pause in considering applications for other benefits similarly does not implicate a deprivation of a protected interest because those other benefits—asylum, TPS, and adjustment of status—are also discretionary. 8 U.S.C. §§ 1158(b)(1) (asylum), 1254a(a)(1) (TPS), 1255(a) (adjustment); *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006) ("Given the discretionary nature of immigration benefits, [alien's] delay-as-due process violation claim must fail at the threshold."). In *Ruiz-Diaz v. United States*, 703 F.3d 483 (9th Cir. 2012), plaintiffs challenged a regulation that prevented concurrently filing an application for adjustment of status with a visa petition, the consequence of which was that their visa status might expire, and they might begin to accrue unlawful presence, before their petitions were adjudicated. *Id*. at 485. The Ninth Circuit held that they had no due process claim: "While the regulation may compound frustration caused by delay, plaintiffs cannot claim that their due process rights have been violated unless they have some 'legitimate claim of entitlement' to

have the petitions approved before their visas expire." *Id*. at 487. Similarly, here, Plaintiffs contend that if their parole is terminated before their other immigration benefits are adjudicated, they may accrue unlawful presence and be subject to removal. *See e.g.* Doc. No. 68 at ¶¶ 207, 218. But they cannot state a due process claim because they lack a statutory right to have their requests for other immigration benefits adjudicated before their parole ends. These principles comport with the broader rule that aliens seeking admission cannot challenge admission or parole decisions under a claim of constitutional right. *Amanullah*, 811 F.2d at 8; *see also DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).

## CONCLUSION

For these reasons, the Court should dismiss the Second Amended Complaint.

Dated: May 30, 2025                    Respectfully submitted,

By: /s/ *Katherine J. Shinners*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2025, I electronically filed this memorandum with the Clerk of the Court for the United States District Court for the District of Massachusetts by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Katherine J. Shinners*
        KATHERINE J. SHINNERS
        *Senior Litigation Counsel*
        United States Department of Justice