**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SVITLANA DOE, et al.,<br><br>  Plaintiffs,<br><br>  *v.*<br><br>KRISTI NOEM, in her official capacity as<br>Secretary of Homeland Security, et al.,<br><br>  Defendants. | Civil Action No.: 1:25-cv-10495-IT |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6)**

# TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 1

LEGAL STANDARD ................................................................................................. 3

ARGUMENT .............................................................................................................. 3

I.        DEFENDANTS' RULE 12(b)(1) MOTION SHOULD BE DENIED ....................... 3

    A.    Plaintiffs Have Article III Standing to Bring Their Claims ............................ 3

    B.    Section 1252(a)(2)(B) Does Not Strip this Court of Jurisdiction ................... 8

II.       DEFENDANTS' RULE 12(B)(6) MOTION SHOULD BE DENIED ...................... 9

    A.    Plaintiffs Properly Plead Administrative Procedure Act Claims (Counts I-V) ............ 9

    B.    Plaintiffs Properly Plead a Termination of Parole Processes Claim (Count I) ........... 12

    C.    Plaintiffs Properly Plead Suspension of Adjudication Claims (Counts II & IV) ........ 14

    D.    Plaintiffs Properly Plead an *Accardi* Claim (Count V) ................................ 16

    E.    Plaintiffs Properly Plead an *Ultra Vires* Claim (Count VI) ......................... 18

    F.    Plaintiffs Properly Plead a Fifth Amendment Due Process Claim (Count VII).......... 20

CONCLUSION ......................................................................................................... 21

CERTIFICATE OF SERVICE ................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*,
No. CV-25-00400 (AHA), 2025 WL 752378 (D.D.C. Mar. 10, 2025) ...................................10

*Al Otro Lado, Inc. v. Nielsen*,
327 F. Supp. 3d 1284 (S.D. Cal. 2018)...............................................................................15

*Alcaraz v. INS*,
384 F.3d 1150 (9th Cir. 2004) .............................................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................3

*Bennett v. Spear*,
520 U.S. 154 (1997)...............................................................................................................10

*Biden v. Nebraska*,
600 U.S. 477 (2023).................................................................................................................4

*Biden v. Texas*,
597 U.S. 785 (2022).................................................................................................8, 11, 12, 13

*Bollat Vasquez v. Wolf*,
460 F. Supp. 3d 99 (D. Mass. 2020) ....................................................................................13

*Bouarfa v. Mayorkas*,
604 U.S. 6 (2024).....................................................................................................................9

*Caplash v. Johnson*,
230 F. Supp. 3d 128 (W.D.N.Y. 2017) ................................................................................18

*Catholic Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*,
513 F. Supp. 3d 154 (D.D.C. 2021) .....................................................................................12

*Chamber of Com. of U.S. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) ............................................................................................19

*CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*,
637 F.3d 408 (D.C. Cir. 2011) ............................................................................................10

*Dames & Moore v. Regan*,
453 U.S. 654 (1981)...............................................................................................................20

*Dart v. United States*,
    848 F.2d 217 (D.C. Cir. 1988) ........................................................................................19

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ................................................................................................5, 11

*DHS v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) ......................................................................................................8

*E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) ....................................................................................12

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ..................................................................................................8

*FEC v. Akins*,
    524 U.S. 11 (1998) ....................................................................................................6

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ..................................................................................................19

*Garcia v. Meza*,
    235 F.3d 287 (7th Cir. 2000) ....................................................................................18

*Gebremichael v. I.N.S.*,
    10 F.3d 28 (1st Cir. 1993) ..........................................................................................20

*Guerrero-Lasprilla v. Barr*,
    589 U.S. 221 (2020) ..................................................................................................9

*Gutierrez-Rogue v. INS.*,
    954 F.2d 769 (D.C. Cir. 1992) ..................................................................................20

*Haitian Refugee Ctr. v. Smith*,
    676 F.2d 1023 (5th Cir. Unit B 1982) ......................................................................20

*Harmon v. Brucker*,
    355 U.S. 579 (1958) ..................................................................................................19

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ................................................................................................7, 8

*Hernandez-Lara v. Lyons*,
    10 F.4th 19 (1st Cir. 2021) ........................................................................................20

*In re Genzyme Corp. Sec. Litig.*,
    754 F.3d 31 (1st Cir. 2014) ........................................................................................3

*Jasperson v. Fed. Bureau of Prisons*,
　　460 F. Supp. 2d 76 (D.D.C. 2006) ........................................................................19

*Kaczmarczyk v. INS*,
　　933 F.2d 588 (7th Cir. 1991) ...............................................................................20

*Leng May Ma v. Barber*,
　　357 U.S. 185 (1958)...............................................................................................14

*Leiva-Perez v. Holder*,
　　640 F.3d 962 (9th Cir. 2011) .................................................................................4

*Lujan v. Defs. of Wildlife*,
　　504 U.S. 555 (1992)............................................................................................5, 6

*Make the Rd. New York v. McAleenan*,
　　405 F. Supp. 3d. 1 (D.D.C. 2019) (Jackson, K.B., D.J.), *rev'd & remanded on
　　other grounds*, 962 F.3d 612 (D.C. Cir. 2020) .....................................................5

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
　　567 U.S. 209 (2012)..............................................................................................12

*MediNatura, Inc. v. FDA*,
　　998 F.3d 931 (D.C. Cir. 2021) .............................................................................10

*Monsanto Co. v. Geertson Seed Farms*,
　　561 U.S. 139 (2010)................................................................................................3

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
　　583 U.S. 109 (2018)..............................................................................................14

*New York v. Trump*,
　　133 F.4th 51 (1st Cir. 2025)............................................................................10, 19

*Perry Cap. LLC v. Mnuchin*,
　　864 F.3d 591 (D.C. Cir. 2017) .............................................................................19

*R.I.L-R v. Johnson*,
　　80 F. Supp. 3d 164 (D.D.C. 2015) .......................................................................15

*Roe v. Mayorkas*,
　　No. 22-cv-10808-ADB, 2023 WL 3466327 (D. Mass. May 12, 2023)...................8

*Ross-Simons of Warwick v. Baccarat*,
　　217 F.3d 8 (1st Cir. 2000).......................................................................................4

*Rumsfeld v. F. for Acad. & Institutional Rts*,
　　547 U.S. 47 (2006)..................................................................................................4

*Ryan v. ICE,*
    974 F.3d 9 (1st Cir. 2020) ...........................................................................................19

*Sierra Club v. Trump,*
    929 F.3d 670 (9th Cir. 2019) .......................................................................................19

*Trump v. Hawaii,*
    585 U.S. 667 (2018) ......................................................................................................7

*United States ex rel. Accardi v. Shaughnessy,*
    347 U.S. 260 (1954) ....................................................................................................16

*Webb v. Injured Workers Pharmacy, LLC,*
    72 F.4th 365 (1st Cir. 2023) ..........................................................................................3

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) ....................................................................................................20

## **Constitutional Provisions**

U.S. Const. amend V .............................................................................................................20

## **Statutes**

5 U.S.C. § 706(2) ..................................................................................................................15

8 U.S.C.
    § 1153(e)(2) .........................................................................................................11, 16
    § 1154 ...........................................................................................................................16
    § 1158 ...........................................................................................................................20
    § 1158(a)(1) ..................................................................................................................15
    § 1158(b)(1)(A) ............................................................................................................11
    § 1182(d)(5)(A) ..........................................................................................9, 11, 12, 20
    § 1225(a)(1) ..................................................................................................................13
    § 1225(b)(1)(A)(i) ........................................................................................................13
    § 1225(b)(1)(A)(iii)(II) ...........................................................................................13, 14
    § 1229a .........................................................................................................................17
    § 1229(a)(1) ..................................................................................................................17
    § 1252(a)(2)(B) ..........................................................................................................3, 8
    § 1252(a)(2)(B)(ii) .........................................................................................................8
    § 1254a .........................................................................................................................16
    § 1254a(b) .....................................................................................................................11
    § 1254a(b)(5)(B) ..........................................................................................................16
    § 1305 ...........................................................................................................................17
    § 1306 ...........................................................................................................................17

44 U.S.C.
   § 1505................................................................................................................18
   § 1505(a)(2).......................................................................................................18
   § 1507................................................................................................................18

Dictionary Act, 1 U.S.C. § 1 ..................................................................................17

## Other Authorities

8 C.F.R.
   § 103.2(b)(19)(ii)(B) .........................................................................................17
   § 212.5(e) ..........................................................................................................12
   § 212.5(e)(2)(i)...................................................................................2, 16, 17, 18
   § 235.3(b)(1)(ii) ...............................................................................................14
   § 235.3(b)(6) .....................................................................................................14
   § 265.1...............................................................................................................17
   § 274a.14(b) .....................................................................................................16

90 Fed. Reg.
   13618...................................................................................................................2
   13619...............................................................................................................4, 5
   13619-20.........................................................................................................2, 13
   13620.................................................................................................................16

Fed. R. Civ. P.
   8(a)(2).................................................................................................................3
   12(b)(1)...............................................................................................................3
   12(b)(6)............................................................................................................3, 9

*Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and
Venezuelans*, 90 Fed. Reg. 13611-01 (Mar. 25, 2025) ............................................2

## INTRODUCTION

The operative complaint (Doc. 68) challenges four actions by Defendants, directed by the President, terminating grants of humanitarian parole and suspending adjudication of immigration benefits. Each challenged action violates the express language of the Immigration and Nationality Act ("INA"), and each is arbitrary and capricious. In addition to violating the Administrative Procedure Act ("APA") and the INA, Defendants violate their regulations and the Due Process Clause and exceed their legal authority. Plaintiffs – eighteen individuals who have received parole, seven individuals who have sponsored parolees (in most cases family members), and an organization that counsels and represents immigrants with or seeking parole – have been directly injured by the actions challenged here, and their harm would be redressed by equitable and declaratory relief. The Defendants' motion to dismiss (Doc. 114) says little not addressed in the Court's prior opinions on injunctive relief (Docs. 97 & 107), and provides no reason to revisit those findings. The motion should be denied in its entirety.

## BACKGROUND

Plaintiffs assume the Court's familiarity with the proceedings to date and will endeavor not to repeat information in their prior briefs (Docs. 25 & 72) and related exhibits (Docs 24-1 through 24-50, 64-2 through 64-6, and 71-1 through 71-3, which are incorporated by reference).

Since the parole authority was established in the INA, at least 125 "categorical" or "programmatic" parole processes have been used to permit large numbers of noncitizens to come to the United States when other immigration pathways were unavailable, insufficiently expeditious, or otherwise inadequate. *See generally* Docs. 24-37; 24-38, 24-39, 24-40, 24-41; 22 ¶¶ 40-62. Within hours of his inauguration, President Trump signed an order directing the Secretary to terminate "all categorical parole programs," naming the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV"). Defendants have implemented the order by taking the

four actions challenged in this suit: the January 20 memorandum issued by Acting Secretary Huffman ("Huffman Memorandum"), Doc. 41-1; the January 23 across-the-board indefinite suspension of all adjudications for parole (or, where available, re-parole) through the OAW, U4U, and other "categorical" processes ("Higgins email"), Doc. 41-2; the February 14 memorandum ordering an indefinite suspension on processing applications for any other immigration benefit filed by any parolee in the country by virtue of CHNV, U4U, or family reunification processes ("Davidson Memorandum"), Doc. 41-3; and Secretary Noem's March 25 Federal Register Notice terminating of the CHNV parole processes. *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13611-01 (Mar. 25, 2025), in which the Secretary announced she was summarily denying the two million pending applications, rescinding and denying conditional approvals, cancelling travel authorizations, and terminating grants of parole for "approximately 532,000" CHNV parolees effective April 24, 2025.  90 Fed. Reg. at 13618.

In terminating the grants, the Secretary cursorily referenced parolees' reliance interests, but said that these were outweighed by the "strong interest" in deporting parolees through expedited removal. *Id.* at 13619. The March 25 FRN acknowledged that to terminate an individual's parole and work authorization, DHS regulations require "written notice to the [parolee]," *id.* at 13620 (quoting 8 C.F.R. § 212.5(e)(2)(i)) (emphasis omitted), but the Notice claims DHS "has determined that publication of this notice in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance." *Id.*

The Secretary rejected the alternative of "permitting CHNV participants' parole to remain in effect until the natural expiration of the parole, as DHS has in the past," citing DHS's "strong interest in preserving the ability to initiate expedited removal proceedings to the maximum extent possible." 90 Fed. Reg. at 13619-20 (citation omitted). The Secretary also stated that DHS intends

to "remove promptly" CHNV parolees lacking authorization to remain in the United States, *id.* at 13618, advising those soon to be in that situation that they "must depart the United States before their parole termination date," *id.* at 13618-19; *id.* at 13611 (same). The Notice cuts short valid grants of parole to eight Plaintiffs and over five hundred thousand others who are similarly situated.

## LEGAL STANDARD

When reviewing a pre-discovery motion to dismiss, a court should accept as true all well-pleaded facts and indulge all reasonable inferences in the plaintiffs' favor. *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 371 (1st Cir. 2023) (Rule 12(b)(1)); *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 40 (1st Cir. 2014) (Rule 12(b)(6). A complaint should not be dismissed under Rule 12(b)(6) if it satisfies Rule 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

### I.  DEFENDANTS' RULE 12(B)(1) MOTION SHOULD BE DENIED

Defendants' Rule 12(b)(1) motion does little more than recycle arguments from their unsuccessful oppositions to the motions for preliminary injunctions. *Compare* Doc. 114 at 5-12 *with* Doc. 42 at 6-11 and Doc. 89 at 4-8. This Court has twice found that Plaintiffs have Article III standing, and that Section 1252(a)(2)(B) is not a jurisdictional bar. Doc. 97 at 17-25 and Doc. 107 at 22-28. Defendants' Motion does not acknowledge these prior decisions or explain why they were wrongly decided. The Rule 12(b)(1) motion should be denied.

#### A.  Plaintiffs Have Article III Standing to Bring Their Claims

To satisfy Article III's standing requirement, a plaintiff must plead an injury which is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-

controversy requirement." *Rumsfeld v. F. for Acad. & Institutional Rts*, 547 U.S. 47, 52 n.2 (2006); *see also Biden v. Nebraska*, 600 U.S. 477, 489 (2023). This Court has twice properly found that Plaintiffs have Article III standing.  Doc. 97 at 17-19, Doc. 107 at 22-25. None of Defendants' arguments change this analysis.

    *Claims Related to CHNV Revocation*: Claims 1, 3, 5, 6, and 7 all challenge the termination of CHNV parole processes, including the revocation of existing grants of parole. In addition to the Sponsor Plaintiffs and Haitian Bridge Alliance (discussed below), the Second Amended Complaint alleges that as CHNV parole recipients, Plaintiffs Armando Doe, Alejandro Doe, Ana Doe, Carlos Doe, Andrea Doe, Lucia Doe, Miguel Doe, and Daniel Doe, have all had their CHNV parole grant prematurely cut short without the notice required by agency regulations. As a result of this, they will lose their lawful status and work authorization, *see* 90 Fed. Reg. at 13619, and be immediately at risk for removal, *see id.* at 13618. Doc. 68 ¶¶ 19-26, 214, 217-18, 220, 223-24, 228, 231, 235; Docs. 24-1 ¶ 15; 24-3 ¶ 25; Doc. 64-3 ¶ 14. For many of these individuals, the challenged actions will result in family separation, Docs. 68 ¶¶ 227-28; 24-1 ¶¶ 3, 15; 24-2 ¶¶ 3, 11; 24-3 ¶¶ 3, 23; 24-4 ¶ 2; 24-11 ¶¶ 3, 15; 27-1 ¶¶ 12-13; 64-3 ¶ 3; a return to persecution and potentially death, Docs. 68 ¶¶ 212-36; 24-1 ¶¶ 6-8; 24-2 ¶ 17; 24-3 ¶ 11; 24-4 ¶¶ 5, 18; 27-1 ¶¶ 3-4, and/or the inability to pursue alternate legal status here in the United States. Doc. 68 ¶¶ 214-15, 217-18, 221, 224, 228, 234. Each of these harms amounts to "a substantial injury." *Ross-Simons of Warwick v. Baccarat*, 217 F.3d 8, 13 (1st Cir. 2000); *see also Leiva-Perez v. Holder*, 640 F.3d 962, 969-70 (9th Cir. 2011) (per curiam). These actions are traceable to the challenged final agency actions, namely the January 20 Huffman Memorandum and the March 25 Federal Register Notice, and would be redressed through the vacatur of these agency actions. Doc. 68 ¶¶ 163-88, 313-21, 333-41, 351-55, 357-58, 362-63. As this Court has already found, Plaintiffs' harms, which are concrete,

imminent, and directly traceable to Huffman Memorandum and the March 25 FRN, more than adequately establish Plaintiffs' standing. Doc. 97 at 17-19; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendants' main argument to the contrary is predicated on their mischaracterization that parolees' sole alleged injury is their purportedly "attenuated . . . risk of removal from the United States." Doc. 114 at 10-11. Defendants ignore the full range of injuries that flow from the loss of lawful status, including loss of work authorization. And their argument fails to recognize that standing is established where it relies on "the predictable effect of Government action." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). Here, Plaintiffs have alleged far more than a predictable effect: Defendants' rationale to truncate grants of parole *en masse* is to "effectuate" mass expedited deportations. Doc. 68 ¶¶ 186, 188 (citing 90 Fed. Reg. at 13619). Expedited removal "deprives [one] of the procedural protections that would otherwise be available," and being threatened with removal is sufficient to confer standing. *Make the Rd. New York v. McAleenan*, 405 F. Supp. 3d 1, 33-34 (D.D.C. 2019) (Jackson, K.B., D.J.), *rev'd & remanded on other grounds*, 962 F.3d 612 (D.C. Cir. 2020).

*Claims Related to Adjudication of Benefits*: Counts 2, 4, 6, and 7 concern the suspension of benefit adjudication for parolees. Because parole is temporary and Plaintiffs Svitlana Doe, Maksym Doe, Maria Doe, Alejandro Doe, Armando Doe, Ana Doe, Carlos Doe, Miguel Doe, Andrea Doe, Omar Doe, Teresa Doe, and Aleksandra Doe cannot currently return to their home countries, they have each applied or were preparing applications for longer-term forms of status that Congress made available to them by legislation, including TPS, Doc. 24-5 ¶ 19; 24-6 ¶ 11; 24-8 ¶ 16; 24-17 ¶ 11, asylum, Doc. 24-1 ¶ 17; 24-3 ¶ 27; 24-4 ¶ 11; 24-7 ¶ 9; 24-19 ¶ 9, Special Immigrant Visas, Doc. 6-7 ¶ 9, Diversity visas, Doc. 24-17 ¶¶ 8-9; and H-1B visas, Doc. 24-6 ¶

11. Because Defendants have ended parole renewals and stopped adjudicating parolees' immigration applications, these Plaintiffs are left with no option but to await with dread the expiration of their parole and work authorizations. The Second Amended Complaint alleges that these actions are traceable to challenged final agency actions that were predicated on legal errors, namely the January 20 Higgins email and the February 14 Davidson Memorandum, and would be redressed through the vacatur of these agency actions. Doc. 68 ¶¶ 189-200, 313-21, 333-41, 351-55, 357-58, 362-63. In sum, as this Court has found, the Plaintiffs' harms, which are concrete, imminent, and directly traceable to the March 25 FRN, more than adequately establish Plaintiffs' standing. Doc. 107 at 22-24; *Lujan*, 504 U.S. at 560-61.

Defendants' argument to the contrary focuses on the discretionary nature of the relief and purportedly temporary nature of the pause. Doc. 114 at 10-11. As this Court has noted, while the programs may be discretionary, "those adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision on an improper legal ground." Doc. 107 at 24 (citing *FEC v. Akins*, 524 U.S. 11, 25, (1998)). And as for the extent of the pause, neither the Higgins email nor the Davidson memo has an expiration date, Docs. 41-2 & 41-3, and both are still being cited as reasons to deny adjudication. Docs. 117-3; 117-4; 117-9. Meanwhile, Plaintiffs' windows to obtain relief while their parole is still pending are closing. *E.g.*, Docs. 24-18 & 24-17 ¶¶ 8-9, 14 (noting that Defendants cancelled a diversity visa interview and that window to receive the visa expires on September 30, 2025). For some, it has already closed: their parole has expired. Docs. 24-4 ¶ 6; 24-5 ¶ 18; 24-15 ¶ 6; 24-17 ¶ 4.

*Sponsors and Haitian Bridge Alliance*: Plaintiffs Sandra McAnany, Kyle Varner, Wilhen Pierre Victor, Gabriela Doe, Norma Lorena Dus, Adolfo Gonzales Jr., Valentin Rosales Tabares, Rosa Doe, and Marim Doe have invested significant emotional energy, time, money, expertise, and

resources into sponsoring and providing for their parole beneficiaries. *See* Docs. 24-9 ¶¶ 4, 9; 24-10 ¶¶ 3, 6-10, 14, 18; 24-11 ¶ 9; 24-13 ¶ 7; 24-14 ¶ 6; 24-16 ¶¶ 6-7; 64-6 ¶¶ 7-9; 71-2 ¶¶ 5-7. Several of these sponsors have also used the processes to reunite with their families, many of whom are fleeing danger or unrest, or to keep their families together in the United States. Docs. 24-11 ¶¶ 3-5, 18; 24-13 ¶¶ 5-6; 24-14 ¶¶ 8-9; 24-16 ¶¶ 6, 16; 64-6 ¶¶ 6, 10; 71-2 ¶ 7. As the Court has noted (concerning MPIP supporters), these harms are sufficiently concrete and imminent to establish Plaintiffs' standing. Doc. 107 at 24-25 (citing *Trump v. Hawaii*, 585 U.S. 667, 698 (2018) ("[A] person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact" and "an American individual who has a bona fide relationship with a particular person seeking to enter the country . . . can legitimately claim concrete hardship if that person is excluded"). In addition to making the same traceability and redressability arguments as they make with respect to parolees, Defendants argue that the Sponsors lack sufficiently "close relationship" to parolees, Doc. 114 at 8-9, ignoring that the Sponsors are predominantly family members, and have all alleged sufficiently close relationships, Docs. 24-11 ¶¶ 3-5; 24-13 ¶ 3; 24-14 ¶¶ 3-5; 24-16 ¶ 6; 64-6 ¶ 4; 71-2 ¶¶ 3, 7.

Similarly, Haitian Bridge Alliance ("HBA"), as an organization, has been directly and concretely injured by the Defendants' actions and has organizational standing. *See generally Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (an organization demonstrates injury through demonstrating "frustration" of mission and activities and a "drain" on "resources" by diverting to counteract unlawful actions). Consistent with its mission and programs of providing educational, counseling, and legal assistance to Haitian immigrants trying to navigate humanitarian immigration protections, HBA has invested extensive resources in assisting over 1,000 Haitian parolees with their applications and resettlement, including hiring additional staff to assist CHNV

parolees. Doc. 68 ¶¶ 39, 281-93, Doc. 71-3. That mission and programming is now frustrated: since the March 25 FRN and in response to increased calls for assistance from the Haitian community, HBA has had to shift resources from helping people apply for parole and status adjustments to conducting know-your-rights trainings and deportation defense needs, and HBA has wasted the significant resources it put into helping Haitians obtain parole or parolees apply for other immigration statuses. Doc. 68 ¶¶ 287-93. These injuries are more than sufficient to establish standing under *Havens Realty* and *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) (distinguishing between the impact on issue advocacy organizations and the injury incurred by organizations that provide direct services, including counseling). Both the Sponsors and HBA have sufficiently alleged their injury-in-fact traceable to the Defendants' agency actions.

**B. Section 1252(a)(2)(B) Does Not Strip this Court of Jurisdiction**

As this Court has now twice correctly held, the jurisdiction-stripping provision in 8 U.S.C. § 1252(a)(2)(B)(ii) has no application because Plaintiffs are challenging overarching policy, not individual decisions. Doc. 97 at 20-25, Doc. 107 at 26-28. Defendants' argument that there is no jurisdiction, Doc. 114 at 12, fails to recognize that in considering jurisdictional bars, courts routinely distinguish between cases challenging the exercise of discretion in particular adjudications and cases challenging policies or procedures adopted to govern adjudications, *e.g.*, *Roe v. Mayorkas*, No. 22-cv-10808-ADB, 2023 WL 3466327, at *8-9 (D. Mass. May 12, 2023) (collecting cases holding challenges to "changes in policy"—including policies concerning the discretionary grant of parole—are "reviewable under the APA."); *Cf. Biden v. Texas*, 597 U.S. 785, 806-07 (2022) (noting the executive's parole authority "is not unbounded" and that "under the APA, DHS's exercise of discretion within that statutory framework must be reasonable and reasonably explained"); *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 17-19 (2020) (holding decision to end DACA was reviewable under the APA, even though deferred action is

discretionary). As this Court noted, a "presumption of reviewability has been 'consistently applied' to immigration statutes and can only be overcome by 'clear and convincing evidence' of congressional intent to preclude judicial review." Doc. 97 at 22-23 (citing *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020)).

Defendants are wrong for a second reason—Plaintiffs do not challenge a discretionary decision. The Supreme Court has made clear that in determining the extent of a jurisdictional bar, "properly identifying the mandatory or discretionary nature of a particular agency action can be critical." *Bouarfa v. Mayorkas*, 604 U.S. 6, 10-11 (2024). The decisions at issue here are outside the statutory scope of DHS' discretion. Contrary to Defendants' argument, by its plain text, the parole statute makes discretionary precisely two decisions: (1) whether to parole a noncitizen ("The Secretary . . . may . . . in his discretion parole into the United States . . . any alien applying for admission," 8 U.S.C. § 1182(d)(5)(A)); and (2) determining "when the purposes of such parole . . . have been served," *id*. Plaintiffs do not challenge either of those decisions; instead, as this Court previously recognized, Plaintiffs seek to enforce limits on the Secretary's failure to abide by non-discretionary limits on her authority to impose conditions on parole *en masse*. Doc. 97 at 21. There is no jurisdictional bar to this suit.

## II.    DEFENDANTS' RULE 12(B)(6) MOTION SHOULD BE DENIED

### A.  Plaintiffs Properly Plead Administrative Procedure Act Claims (Counts I-V)

Notwithstanding Defendants' arguments, Doc. 114 at 12-16, Plaintiffs' APA claims (Claims 1-5) do not fail threshold requirements. *First*, contrary to Defendants' assertions, Plaintiffs do not impermissibly challenge an inchoate "variety of agency actions." *Id.* at 12-13. Rather, Plaintiffs challenge a series of four discrete DHS final agency actions aimed at implementing EOs 14165, 14161, and 14159: the Huffman & Davidson Memorandum, Higgins email, and March 25 FRN. Doc. 68 ¶¶ 6-9, 163-200. Moreover, Defendants' position that it is impermissible to challenge

multiple agency actions in the same litigation is wrong: "a 'series of agency pronouncements' can establish final agency action" challengeable under the APA. *MediNatura, Inc. v. FDA*, 998 F.3d 931, 940 (D.C. Cir. 2021) (citation omitted); *see also AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. CV-25-00400 (AHA), 2025 WL 752378, *8 (D.D.C. Mar. 10, 2025) (finding memorandum and agency policy directives implementing executive order to have been properly asserted under the APA). "[W]e are not aware of any supporting authority for the proposition that the APA bars a plaintiff from challenging a number of discrete final agency actions all at once." *New York v. Trump*, 133 F.4th 51, 68 (1st Cir. 2025) (cited at Doc. 114 at 13).

*Second*, Defendants incorrectly assert that "most" (but not all) of the "agency actions that Plaintiffs challenge" are not "final agency actions." Doc. 114 at 13-14. This is also wrong: all four agency actions are "final agency actions" because they represent the "'consummation' of the agency's decision making process" and are actions "by which 'rights or obligations have been determined', or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). As discussed below, these actions are all based on DHS's "'definitive' legal position concerning [its] statutory authority," *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 412 (D.C. Cir. 2011), satisfying *Bennett*'s first prong; and its second prong is satisfied by the profoundly negative legal consequences flowing from these actions, including (i) over 530,000 CHNV recipients losing their legal status, work authorizations, and being rendered immediately deportable as a direct consequence of the March 25 FRN, (ii) the indefinite suspension of consideration of requests for re-parole or benefits, which means that, as these individual's grants of parole expire, they have no chance of acquiring alternate legal status and will be rendered deportable, as a direct consequence of the Higgins email and the Davidson Memorandum.

*Third*, Defendants incorrectly contend that the agency actions cannot be challenged because they are "committed to agency discretion by law." Doc. 114 at 14. As this Court has previously found, the actions may be challenged because the exception to the "presumption of judicial review" is "restrict[ed] [] to those 'rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard under which to judge the agency's exercise of discretion.'" Doc. 97 at 25 (citing *Dep't of Com.*, 588 U.S. at 772); Doc. 107 at 28-29 (same). Defendants have offered no persuasive arguments to disturb the Court's prior conclusion that the "parole statute establishes standards for the Secretary's exercise of discretion." Doc. 97 at 25 (citing 8 U.S.C. § 1182(d)(5)(A)); *accord Biden v. Texas*, 597 U.S. at 806-07 (2022) (concluding DHS's parole policies are reviewable under the APA). Similarly, as this Court has noted, requests for asylum, TPS, and other immigration benefits also have meaningful standards that can be reviewed. Doc. 107 at 29-30 (discussing 8 U.S.C. § 1158(b)(1)(A) (asylum), 8 U.S.C. § 1254a(b) (TPS)); *see also* 8 U.S.C. § 1153(e)(2) (diversity visas). DHS's wholesale refusal to process immigration benefits for *entire categories* of parolees for an *indefinite period of time* falls outside the scope of its discretionary parole authority and must therefore be reviewed under APA standards. Defendants' citations to *Lincoln* (concerning discretion over internal funding allocation) and *Heckler* (discussing enforcement discretion), are distinguishable, in that they concern agency decisions subject to no meaningful standards.

*Fourth*, Defendants incorrectly argue that Sponsors and HBA fall outside of the "zone of interests" protected by the INA. Doc. 114 at 16. As this Court noted (in finding that MPIP sponsors had standing), the zone of interests analysis only forecloses a lawsuit "when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" Doc. 107 at 25, n.26 (citing

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)).
Defendants' contention that the "parole statute does not even mention supporters," Doc. 114 at 16,
is irrelevant because courts "do not require any indication of congressional purpose to benefit the
would-be-plaintiffs" for prudential standing requirements to be met, 567 U.S. at 225. The interests
of Sponsors and HBA in welcoming and supporting parole beneficiaries to this country are core to
the operation of the parole processes and easily meet this test, which is "not meant to be especially
demanding" in light of "Congress's evident intent when enacting the APA to make agency action
presumptively reviewable." *Id.* Other courts have routinely found that immigrant support
organizations and legal service providers such as HBA fall within the zone of interests protected
by the INA. *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021);
*Catholic Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*, 513 F. Supp. 3d 154, 171
(D.D.C. 2021).

### B.  Plaintiffs Properly Plead a Termination of Parole Processes Claim (Count I)

Plaintiffs' First Claim concerns DHS's termination of humanitarian parole processes,
including terminating grants, rescission of conditional grants, and stopping adjudication of pending
requests or acceptance of new requests—all of which are contrary to law. Doc. 68 ¶¶ 308-21.
Defendants' argument that these actions are all "a matter of discretion," Doc. 114 at 17-18, ignores
that "the [parole] authority is not unbounded," *Biden v. Texas*, 597 U.S. at 806, and is subject to
constraints, *see* 8 U.S.C. § 1182(d)(5)(A) (discretion is "under such conditions as he may prescribe
only on a case-by-case basis"); 8 C.F.R. § 212.5(e) (delineating how parole can be terminated).

Both the Huffman Memorandum and the March 25 FRN ignore these constraints and are
predicated on the assertedly unfettered discretion "to deny parole in any circumstance."  Doc. 68
¶¶ 174, 181.  As the Court previously found, Defendants' actions violate the requirement that
parole authority be exercised "only on a case-by-case basis" and that "by the terms of the statute,

such termination must attend to the reasons an individual alien received parole" and "contemplate[s] termination of parole on an individual, rather than categorical, basis." Doc. 97 at 36-37; *accord Biden v. Texas*, 597 U.S. at 806-07 ("DHS's exercise of discretion within that statutory framework must be reasonable and reasonably explained"). The challenged actions were all predicated on this fundamental legal error.  In particular, in terminating parole *en masse*, Defendants made no attempt to differentiate the individual considerations of the parolees, including the time remaining on parole; pending applications for status adjustments; or individualized humanitarian, social, economic, medical, or legal circumstances.

Moreover, the decision to truncate existing CHNV grants *en masse* was predicated on a second legal error. The March 25 FRN asserts that that doing so is necessary for DHS to process such paroled individuals for expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii)(II); *see* 90 Fed. Reg. at 13619-20. But the INA does not "permit[] placing CHNV parolees in expedited removal upon termination of their parole." *Compare* Doc. 114 at 19, *with* Doc. 97 at 32 (parolees "are not subject to expedited removal even if they have been here less than two years . . . . [T]he statute does not subject persons who were authorized to enter the United States to expedited removal."). By its own terms, 8 U.S.C. § 1225(b)(1)(A)(iii)(II) only authorizes using expedited removal as to a noncitizen "who has *not* been admitted *or paroled* into the United States." 8 U.S.C. § 1225(b)(1)(A)(iii)(II) (emphases added). CHNV parolees "ha[ve] been . . . paroled into the United States."[1] *Id.* Defendants' interpretation of this statute—that an "alien whose parole has been

---

[1] CHNV parolees cannot be subjected to the other basis for expedited removal, which can only be applied to "an alien. . . who is arriving in the United States," 8 U.S.C. 1225(b)(1)(A)(i), because CHNV parolees have already arrived in the United States and are now living here. *See Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 111 (D. Mass. 2020) ("Under the statutory language, . . . if apprehended at some point [after crossing the border] they are not 'arriving,' but rather 'alien[s] present in the United States who [have] not been admitted.'" (quoting 8 U.S.C. § 1225(a)(1)).

terminated or expired" becomes subject to expedited removal, Doc. 114 at 19, is wrong, contrary to the plain text of the statute and basic grammar, and nonsensical. The provision limiting expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii)(II) to people who have *not* been "paroled" would be rendered superfluous surplusage if the Government could subject a previously "paroled" person to expedited removal simply by terminating their parole. *Cf. Nat'l Ass'n of Mfrs. v. Dep't of Def.,* 583 U.S. 109, 128-29 (2018) ("the Court rejects an interpretation of the statute that would render an entire subparagraph meaningless. As this Court has noted time and time again, the Court is 'obliged to give effect, if possible, to every word Congress used.'") (citation omitted). Moreover, Defendants' own regulations implementing the expedited removal statute confirm that their current interpretation of the expedited removal authority is incorrect. *See*, *e.g.*, 8 C.F.R. § 235.3(b)(1)(ii) (expedited removal can only be applied to "aliens who . . . have entered the United States without having been admitted or paroled"); 8 C.F.R. § 235.3(b)(6) (noncitizen can be subjected to expedited removal only if they "cannot satisfy the examining officer that he or she *was* lawfully admitted or paroled").[2] The statute does not permit subjecting parolees to expedited removal no matter how long they have been in the United States. Defendants' motion to dismiss Claim 1 should be denied.

### C.  Plaintiffs Properly Plead Suspension of Adjudication Claims (Counts II & IV)

Plaintiffs' Second and Fourth Claims challenge the indefinite suspension of benefits adjudication for parolees, as directed by the Higgins email, Doc. 68 ¶ 323, and purportedly justified (with regard to CHNV, U4U and FAM processes) in the February 14, 2025 Davidson Memorandum, *id.* ¶ 324. The Court previously found that Plaintiffs were likely to succeed on their

---

[2] Defendants' citations at page 19 do not salvage their position. *Ibragimov* concerns a parolee whose parole was individually revoked, and subsequent removal proceedings proceeded before an immigration judge, not expedited removal. *Leng May Ma v. Barber*, 357 U.S. 185 (1958) similarly involved a parolee whose exclusion and deportation were considered by immigration judges, not expedited removal.

claims that the suspension of benefits was contrary to law (Second Claim) and arbitrary and capricious (Fourth Claim), noting in particular that the Davidson Memorandum's indefinite suspension of adjudications for all benefits, without consideration of alternatives or reliance interests, likely would be shown to be arbitrary and capricious. Doc. 107 at 36-38.

Defendants incorrectly contend that the claims are brought under the wrong section of the Administrative Procedure Act, asserting that these claims are for unreasonable delay and have to be brought under 5 U.S.C. § 706(2). Doc. 114 at 20. As this Court has noted, Plaintiffs are not "bringing unreasonable delay claims . . . Plaintiffs are challenging Defendants' categorical refusal to adjudicate—on any timeline"— benefits applications. Doc. 107 at 27-28. The three cases cited by Defendants—*Celebi*, *Norton*, and *V.U.C.*—are distinguishable because they concern delays in processing particular applications, not a blanket refusal by the agencies to adjudicate all applications indefinitely. Plaintiffs challenge a discrete agency action: Defendants' decision to completely halt adjudication of all parolees' requests for benefits. The decision to suspend all processing is agency action appropriately challenged under 5 U.S.C. § 706(2). *See, e.g.*, *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 173, 186 (D.D.C. 2015) (challenge to DHS detention policy properly brought under § 706(2)); *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1315-22 (S.D. Cal. 2018) (challenge to agency's refusal to consider asylum applications properly brought under § 706(1) when plaintiffs failed to identify a discrete agency policy).

Defendants also contend that parolees have no right to an adjudication of applications for immigration benefits at issue. Doc. 114 at 21-22. Defendants are wrong: numerous statutes and regulations authorize applications for precisely the benefits at issue. For instance, the right to apply for asylum is guaranteed to any individual physically present in the United States, irrespective of that person's status. *See* 8 U.S.C. § 1158(a)(1). Likewise, under many circumstances, a United

States citizen or employer is entitled to initiate a process to sponsor a noncitizen for an immigrant visa based on a family or job-based relationship. 8 U.S.C. § 1154. The Diversity Visa lottery process provides that visas "shall" be issued to eligible immigrants. 8 U.S.C. § 1153(e)(2). Temporary Protected Status is governed by 8 U.S.C. § 1254a, which requires DHS (as the delegee of the Attorney General) to grant such status to an individual and that it "shall establish an administrative procedure for the review of the denial of benefits to aliens under this subsection." 8 U.S.C. § 1254a(b)(5)(B). While the Defendants may have some discretion in evaluating individual applications, they have no discretion to slam the window shut and refuse even to consider them.

### D. Plaintiffs Properly Plead an *Accardi* Claim (Count V)

Plaintiffs' Fifth Claim concerns DHS' failure to abide by its own regulations requiring actual "written," individualized notice of the termination of parole and notice and opportunity to be heard for termination of employment authorizations "to the alien."[3] Under *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-67 (1954), agencies must abide by their own regulations, especially where those regulations confer benefits on individuals or is intended to protect their interests. *See Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004). The Complaint alleges that, rather than complying with their regulations, the March 25 FRN asserted that "constructive notice" in the Federal Register (*see* Doc. 68 ¶ 351) and electronic messages it intends to send to "USCIS online account[s]" was sufficient, "regardless of actual knowledge or hardship resulting from ignorance" (*see* 90 Fed. Reg. at 13620). Defendants ignore the employment authorization regulation, 8 C.F.R. § 274a.14(b)—which alone requires denying their motion.

---

[3] *See* 8 C.F.R. § 212.5(e)(2)(i) (parole termination requires "written notice to the alien"); 8 CFR § 274a.14(b) (employment authorization termination requires "written notice of intent to revoke" with a fifteen-day period "within which to submit countervailing evidence.").

With regard to termination of parole, Defendants assert that 8 C.F.R. § 212.5(e)(2)(i) does not "require DHS to furnish individual notice." Doc. 114 at 22. That is wrong: DHS's regulation requires "written notice to the alien," 8 C.F.R. § 212.5(e)(2)(i), which means DHS must provide each individual *actual notice* when terminating parole. This meaning is corroborated by the regulation's sole example of "written notice to the alien"—a charging document, *id.*, which by statute likewise requires "written notice" and service "in person" or, "if personal service is not practicable, through service by mail." 8 U.S.C. § 1229(a)(1) ("In removal proceedings under section 1229a of this title, written notice . . . shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien . . . .").

Defendants also assert the notice requirement is satisfied by the FRN stating that parolees will be notified electronically through the USCIS online account that they "should" have. Doc. 114. at 22-23. But nothing in the parole regulation authorizes electronic service—unlike other DHS regulations, *compare* 8 C.F.R. § 103.2(b)(19)(ii)(B) (cited by Doc. 114 at 23) (permitting electronic notice only where the individual has an "authorized attorney" or "accredited representative"), and its requirement of *written* notice reflects that the notice is to have a physical form. *See* Dictionary Act, 1 U.S.C. § 1 ("'writing' includes printing and typewriting and reproductions of visual symbols by photographing, multigraphing, mimeographing, manifolding, or otherwise"). Defendants' assertion that there is "no requirement that any parolee open mail," Doc. 114 at 23, ignores that parolees are <u>required</u> (with criminal penalties for noncompliance) to provide and update their mailing address. 8 U.S.C. §§ 1305-06; 8 C.F.R. § 265.1. In contrast, CHNV parolees are under no requirement to maintain these electronic accounts or to check them, and so there is no reason to believe electronic notices will provide *actual* notice. Defendants cite no case supporting their position that email notice alone is sufficient; the closest they come is *Aldea-Tirado* (cited at Doc.

114 at 23) where notice was provided *both* by email *and **first-class mail***.

Defendants are likewise wrong when they suggest that 44 U.S.C. § 1507 relieves them of the obligation to provide actual, written, and individualized notice. *See* Doc. 114 at 22. Section 1507 only allows constructive notice for the few types of documents that "hav[e] general applicability and legal effect" (*see* 44 U.S.C. § 1505(a)(2)) specifically authorized to be filed under 44 U.S.C. § 1505 (which covers Executive Orders, Presidential Proclamations, and documents "required to be published by Congress") and has no applicability to individualized immigration notices or any other case "where notice by publication is insufficient in law" (*see* 44 U.S.C. § 1507). It is for this reason that the relevant agencies' own regulations require individualized written notice "to the alien," *see* 8 C.F.R. § 212.5(e)(2)(i); mere publication in an entry buried in the hundreds of pages of register notices released daily by the federal government is not sufficient; the March 25, 2025 issue of the Federal Register containing the notice of revocation, contained 75 documents and ran 134 pages. Courts have consistently found in the immigration context that notice by publication is insufficient. *See, e.g.*, *Garcia v. Meza*, 235 F.3d 287, 292 (7th Cir. 2000) ("[n]otice by publication is not sufficient with respect to an individual whose name and address are known or easily ascertainable"); *Caplash v. Johnson*, 230 F. Supp. 3d 128, 142-44 (W.D.N.Y. 2017). Neither *Maxwell* nor *Bank of Commerce* concerns anything remotely similar to the liberty interests at issue in this case.

### E.  Plaintiffs Properly Plead an *Ultra Vires* Claim (Count VI)

Plaintiffs' Sixth Claim concerns Defendants' alternative *ultra vires* action for terminating CHNV *en masse* and suspending benefit adjudications without statutory authority under the INA. Doc. 99 ¶ 357. Defendants incorrectly contend that an *ultra vires* claim cannot be asserted because the APA provides the exclusive means to challenge agency action and there is no waiver of sovereign immunity outside the APA. Doc. 114 at 23-24. Not so. "The APA's waiver of sovereign

immunity applies to any suit whether [the claims are] under the APA or not." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996); *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017). Numerous courts have found that the APA does not foreclose an *ultra vires* claim, and plaintiffs can simultaneously assert both APA and *ultra vires* claims. *E.g.*, *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988) ("[T]he APA's own guarantee of judicial review . . . does not repeal the review of *ultra vires* actions."); *Jasperson v. Fed. Bureau of Prisons*, 460 F. Supp. 2d 76, 85 (D.D.C. 2006) (recognizing right to bring both *ultra vires* and APA claims); *Sierra Club v. Trump*, 929 F.3d 670, 694-99 (9th Cir. 2019) (recognizing that Plaintiff could pursue both APA and *ultra vires* claim). Since the *Puerto Rico* decision cited by Defendants, Doc. 114 at 24, numerous First Circuit panels have recognized that a Plaintiff can bring both APA and *ultra vires* claims. *E.g.*, *New York v. Trump*, 133 F. 4th at 61 & n.6; *Ryan v. ICE*, 974 F.3d 9, 19 (1st Cir. 2020) ("When an agency acts in a manner not authorized by statute, its action is ultra vires and a violation of the APA").

Defendants also argue that "courts cannot issue an injunction" against the President. Doc. 114 at 23. This argument does not warrant dismissal of the President. Defendants do not argue that a Court cannot issue declaratory relief as to the President, which is part of the relief sought. Doc. 68 Prayer for Relief ¶¶ 3-5. And the cases Defendants cite do not hold that the President is immune from injunctive relief. *See Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) ("[W]e have left open the question whether the President might be subject to a judicial injunction . . . [and] "need not decide whether injunctive relief against the President was appropriate.") (cited at Doc. 114 at 23). "[J]udicial relief is available to one who has been injured by an act of a government official which is in excess of his express or implied powers," *Harmon v. Brucker*, 355 U.S. 579, 581-82 (1958), and such relief extends to the President where the President has exceeded his legal

authority, *see, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 589 (1952) (finding President's seizure order was unauthorized); *Dames & Moore v. Regan*, 453 U.S. 654, 669-78 (1981) (reviewing whether order exceeded the President's statutory authority).

### F.  Plaintiffs Properly Plead a Fifth Amendment Due Process Claim (Count VII)

Plaintiffs' Seventh Claim challenges Defendants' deprivation of Plaintiffs' due process rights in seeking parole, re-parole, and other immigration benefits. Doc. 68 ¶¶ 359-63. Defendants' contention these benefits are "discretionary," Doc. 114 at 25-26, ignores the nature of Plaintiffs' claim: Defendants are failing to afford the class procedural rights provided by Congress and executive regulations to seek immigration relief. Doc. 68 ¶¶ 45-46, 360-62. For example, in indefinitely suspending consideration of parolee's asylum applications, Defendants deprive class members of their procedural rights under 8 U.S.C. § 1158. *See Gutierrez-Rogue v. INS.*, 954 F.2d 769, 773 (D.C. Cir. 1992) (even "an alien who has unlawfully entered the United States has a Fifth Amendment procedural due process right to petition the government for political asylum.") (cleaned up); *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1038 (5th Cir. Unit B 1982) (same); *Kaczmarczyk v. INS*, 933 F.2d 588, 597 (7th Cir. 1991) (same); *Gebremichael v. I.N.S.*, 10 F.3d 28, 38 (1st Cir. 1993) (recognizing a noncitizen's right in a deportation proceeding). Defendants' cases—*Ruiz-Diaz* and *Mudric*—hold there is no due process claim for delays. As the Court has noted, Plaintiffs are not "bringing unreasonable delay claims." Doc. 107 at 27-28.

Similarly for the termination of CHNV parole and re-parole, parole beneficiaries have a protected due process right that parole be conditioned or terminated lawfully and in accordance with 8 U.S.C. § 1182(d)(5)(A) in ensuring that such measures be taken "only on a case-by-case basis." *See generally Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021) ("due process applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent") (citations and internal punctuation omitted).

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' Motion to Dismiss.

Dated: June 13, 2025

Respectfully submitted,

/s/ John A. Freedman
John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
 Washington, D.C. 20001-3743
 Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com
katie.weng@arnoldporter.com

Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (*pro hac vice*)
Hillary Li (*pro hac vice*)
Laura Flores-Perilla (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, Fl. 53
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com

Anwen Hughes (*pro hac vice*)
**HUMAN RIGHTS FIRST**
75 Broad St., 31st Fl.
New York, NY 10004
Telephone: (212) 845-5244
HughesA@humanrightsfirst.org

Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com

Justin B. Cox (*pro hac vice*)
**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

Robert Stout (*pro hac vice*)
Sarah Elnahal (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
rob.stout@arnoldporter.com
sarah.elnahal@arnoldporter.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, John A. Freedman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: June 13, 2025

*/s/ John A. Freedman*
John A. Freedman