YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

BRIAN C. WARD
*Acting Assistant Director*

PATRICK GLEN
*Senior Litigation Counsel*

KATHERINE J. SHINNERS
*Senior Litigation Counsel*

ZACHARY CARDIN
ELISSA FUDIM
DANIEL SCHUTRUM-BOWARD
*Trial Attorneys*

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Svitlana Doe, *et al.*,  )<br>  )<br>   Plaintiffs,  )<br>  )<br>v.  )<br>  )<br>Kristi Noem, in her official capacity as  )<br>Secretary of Homeland Security, *et al.*,  )<br>  )<br>   Defendants.  )<br>  ) | Civil Action No. 1:25-cv-10495 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
STATEMENT OF UNCONSTESTED FACTS**

Defendants hereby respond to Plaintiffs' Statement of Uncontested Facts (Doc. No. 129-1) pursuant to Local Rule 56.1. In doing so, Defendants note that in an Administrative Procedure Act (APA) case, such as this, a Court's "review is properly confined to the administrative record" and "there are no disputed issues of fact for the court to resolve." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 518 (1st Cir. 2005).

1. Secretary Noem's mass truncation of parole cut short the parole of eight individual Plaintiffs. Alejandro Doe Decl., Doc. No. 24-1; Carlos Doe. Decl., Doc. No. 24-4; Miguel Doe Decl., Doc. No. 64-4; Lucia Doe Decl., Doc. No. 64-3; Ana Doe Decl., Doc. No. 24-2; Armando Doe. Decl., Doc. No. 24-3; Daniel Doe Decl., Doc. No. 64-5; Andrea Doe Decl., Doc. No. 27-1.

**Response: Admit except note that the Secretary "terminated" parole; she did not "truncate" it. 90 Fed. Reg. at 13611.**

2. Secretary Noem's mass truncation of parole cut short the parole of individuals sponsored by five of the individual sponsors. Gabriela Doe Decl., Doc. No. 64-6; Norma Lorena Dus Decl., Doc. No. 71-2; Sandra McAnany Decl., Doc. No. 24-9; Kyle Varner Decl., Doc. No. 24-10; Wilhen Pierre Victor Decl., Doc. No. 24-11.

**Response: Admit except note that the Secretary "terminated" parole; she did not "truncate" it. 90 Fed. Reg. at 13611.**

3. Plaintiff Haitian Bridge Alliance is a non-profit organization dedicated to serving the needs of Haitian migrants in the United States, including parolees. Decl. of Guerline Jozef on behalf of Plaintiff Haitian Bridge Alliance, Doc. No. 71-3.

**Response: Admit.**

4. Through the Federal Register notice published on March 25, 2025, Doc. No. 71-1, Secretary Noem cut short the parole of at least 426,151 individuals, which is the number of people whose parole would have expired on or after May 1, 2025. See Doc. No. 128-4.

**Response: Defendants admit that there were about 426,151 CHNV beneficiaries whose parole was initially scheduled to expire on or after May 1, 2025. See Doc. No. 128-4.**

5. Of those 426,151 individuals, 4,390 had acquired some form of permanent immigration status as of February 25, 2025. Doc. No. 128-4.

**Response: Admit.**

6. Of those 426,151 individuals, 51,828 had Temporary Protected Status as of February 25, 2025. Doc. No. 128-4.

**Response: Admit.**

7. Of those 426,151 individuals, 4,628 had departed the United States as of February 25, 2025. Ex 4.

**Response: Admit.**

8. Of those 426,151 individuals, 212,542 had an application pending for either adjustment of status (I-485), asylum (I-589), or Temporary Protected Status (I-821), as of February 25, 2025. Doc. No. 128-4.

**Response: Admit.**

9. A stated purpose of each of the CHNV parole processes was that, once here, parolees could apply for other forms of relief for which Congress has made them eligible. Doc. No. 24-21 at 3 ("The two-year period will also enable individuals to seek humanitarian relief or other immigration benefits for which they may be eligible"); Doc. No. 24-24 at 3 (same); Doc. No. 24-25 at 3 (same); Doc. No. 24-23 at 4 (same, plus specifically mentioning the Cuban Adjustment

Act, which permits paroled Cubans to adjust to lawful permanent residence after one year); see also Doc. Nos. 128-2 & 128-3 ("Ukraine & CHNV Parolee Immigrant Benefit Tracking").

**Response: Defendants state that the Federal Register Notices speak for themselves. To the extent a further response is required, Defendants deny that a "stated purpose" of the CHNV parole processes was that, once here, parolees could apply for other forms of relief for which Congress has made them eligible, but admit that the Federal Register Notices pertaining to the CHNV parole programs state that the two-year parole period will enable parolees to seek humanitarian relief or other benefits for which they may be eligible. *See e.g.* 24-21 at pg. 3, 24-24 at pg. 3. Defendants refer the Court to the four Federal Register notices for a full and accurate recitation of their contents.**

10. The Administrative Record ("AR") that Defendants produced for the March 25, 2025 Federal Register notice ending the CHNV parole processes has 68 entries consisting of two native format Excel spreadsheets and 66 documents in PDF format totaling 840 pages. See Doc. No. 128-1.

**Response: Admit.**

11. More than one-third of the documents—comprising more than half of the 840 pages—in the AR are various notices printed in the Federal Register. Doc. No. 128-1.

**Response: Admit.**

12. Not counting those printed in the Federal Register, more than 25 of the documents are publicly available online. Doc. No. 128-1.

**Response: Admit.**

13. At least nine of the documents in the AR have already been filed on the docket in this case. Compare Doc. No. 128-1 with Doc. Nos. 24-21, 24-22, 24-23, 24-24, 24-44, 24-45, 41-1, 41-3, and 71-1.[1]

**Response: Admit.**

14. Of the 66 PDF documents, just eight documents (totaling 162 pages) had information that was not publicly available when Defendants produced the AR. They are described in the next seven paragraphs.

**Response: Admit.**

15. One of those not previously public documents is one-page "Decision Document" showing Secretary Noem chose to terminate the CHNV processes over an unknown number of other options (which are redacted). Doc. No. 128-5.

**Response: Defendants decline to characterize, summarize, or otherwise describe the documents in the administrative record, as they speak for themselves, and must be assessed on their face.** *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, **No. 1:22-CV-11091-IT, 2023 WL 6691015, at \*5 (D. Mass. Oct. 12, 2023),** *aff'd*, **123 F.4th 1 (1st Cir. 2024) (On a motion for summary judgment governed by the APA, "[t]he court looks directly to the Administrative Record [] rather than the parties' characterizations of the Administrative Record.").**

16. Two of those not previously public documents are detailed, 8-page reports (dated February 9, 2025 and March 9, 2025) of a USCIS system that tracks immigration benefit requests filed by CHNV and Uniting for Ukraine (U4U) parolees, broken down by benefit request, status

---

[1] Defendants produced a 49-page version of the FRN, CHNV-FRN-154, whereas Document 71-1 is 12-pages.

of request, and processing time; with additional data on the age and gender of the applicant and graphs of weekly processing measures, by parolee nationality. Doc. Nos. 128-2 & 128-3.

**Response: See response to No. 15.**

17. One of those not previously public documents is a five-page CBP memorandum dated March 14, 2025 sent only to "THE FILE" that summarizes impacts of the CHNV processes on Florida airports. Doc. No. 128-6. It refers to the March 25, 2025 FRN in the past tense. Id. at 1.

**Response: See response to No. 15.**

18. One of those not previously public documents is two-page CBP memorandum dated January 27, 2025 entitled, "Implementation of Active Executive Orders." Doc. No. 128-7. This memorandum refers four times to an attached "muster." Defendants did not produce the "muster." Defendants have twice refused to produce the "muster" after Plaintiffs requested that they do so.

**Response: See response to No. 15.**

19. Another of the not previously public documents is a one-page notice CBP sent to airline carriers on January 22, 2025. Doc. No. 128-9. It is similar to one sent two days later (Doc. No. 24-45).

**Response: See response to No. 15.**

20. Another not previously public document is a 14-page May 2024 "Filing Trend Analysis" of the USCIS Fraud Detection and National Security Directorate. Doc. No. 128-10. This report analyzed filings of Form I-134A that were submitted by individuals seeking to sponsor a potential parolee through the CHNV or Uniting for Ukraine ("U4U") parole processes. Id. This is the "fraud" report referenced in the February 14, 2025 Davidson Memorandum (Doc. No. 41-3).

**Response: See response to No. 15.**

21. The last of the not previously public documents are two virtually identical copies of a 63-page USCIS "Reviewer's Guide" providing technical guidance on the processing of CHNV, U4U and Family Reunification Parole ("FRP") parole requests filed by sponsors. Doc. Nos. 128-12 & 128-13. The guides are dated five months apart and only a handful of pages, at most, are different between the two. See id.

**Response: See response to No. 15.**

22. Other than the Federal Register notices announcing the CHNV processes, there is no overlap between the AR for the CHNV termination does and the administrative records for the creation of the CHNV parole processes. Compare Doc. No. 128-1 with Doc. Nos. 128-14 through 128-17.

**Response: See Response to No. 15.**

23. The CHNV parole processes are a historically common use of the statutory parole authority. See Doc. Nos. 24-38 through 24-43.

**Response: Deny. Plaintiffs' characterization of the CHNV parole programs as "historically common" is a relative and vague term. Further, Plaintiffs cite six documents, totaling 116 pages—with no other specificity—to support their conclusion. Further, none of these six documents are part of the Administrative Record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at \*5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.)**

24. DHS employees had authorized each CHNV parolee, on a case-by-case basis, to travel to an airport in United States to request parole. Doc. No. 71-1.

**Response: Admit.**

25. Once each individual flew to an airport in the United States, that individual was inspected by one or more DHS employees who determined, on a case-by-case basis, that that individual warranted a grant of parole.

**Response: Plaintiff has not indicated a source for its purported statement of fact, and therefore, in an abundance of caution, Defendants decline to respond to this statement, other than to refer the Court to the Federal Register Notices related to the CHNV parole programs for a full and accurate recitation of the programs.**

26. When deciding to end the CHNV parole processes and to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the record before DHS when it created those processes. Compare Doc. No. 128-1 with Doc. Nos. 128-14 through 128-17.

**Response: Deny. 90 Fed. Reg. at 13611-19.**

27. When deciding to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the record that was before the agency when agency employees authorized those individuals, on a case-by-case basis, to travel to the United States to request parole at an interior port of entry. See Doc. No. 128-1.

**Response: Deny. 90 Fed. Reg. at 13611-19.**

28. When deciding to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the record that was before the agency when agency employees determined, on a case-by-case basis, that each of those parolees warranted a discretionary grant of parole. Doc. No. 128-1.

**Response: Deny. 90 Fed. Reg. at 13611-19.**

29. When deciding to end the CHNV parole processes and to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the humanitarian considerations on which the agency justified the creation of those processes and the individual grants thereunder. Doc. No. 128-1.

**Response: Deny. 90 Fed. Reg. at 13612.**

30. When deciding to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the humanitarian impact on those parolees. Doc. No. 128-1.

**Response: Deny. 90 Fed. Reg. at 13617-19.**

31. When deciding to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the humanitarian impact on the families of parolees. Doc. No. 128-1.

**Response: Deny. 90 Fed. Reg. at 1367-19.**

32. The Administrative Record has no information about parolees' compliance with statutory and regulatory requirements that they keep DHS updated as to any change to their address. Doc. No. 128-1.

**Response: Admit.**

33. The AR contains no basis on which to evaluate the methods of service available to DHS to make CHNV parolees aware that DHS has truncated their parole and employment authorization. Doc. No. 128-1.

**Response: Deny. 90 Fed. Reg. at 13620. The Secretary explained why she rejected the use of mail for the notice (the possibility of non-compliance with change-of-address requirements), why she believed use of the Federal Register was preferable (based on the size of the affected population), and explained why she believed that additional electronic notice would also be**

beneficial (because processing for the CHNV programs was done electronically, and 8 C.F.R. § 103.2(b)(19)(ii)(B) put aliens on notice that USCIS may use electronic means to provide aliens notices and decisions).

34. Attorney General Pam Bondi has directed federal prosecutors to prioritize "criminal immigration-related violations," including the misdemeanor offense in 8 U.S.C. § 1306 of a noncitizen's failure to give DHS "written notice" of a change of address. Office of the Att'y Gen., General Policy Regarding Charing, Plea Negotiations, and Sentencing 3 (Feb. 5, 2025), https://www.justice.gov/ag/media/1388541/dl?inline.

**Response: Deny. The document cited by Plaintiffs does not instruct federal prosecutors to "prioritize" for prosecution aliens who have failed to give DHS written notice of their change of address. Further, Defendants object to this citation, because for motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at \*5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.)**

35. DHS's position under Secretary Noem is that it has the legal authority to subject CHNV parolees to expedited removal as "arriving aliens," and no matter how long they have been in the United States. See, e.g., Doc. No. 89 at 12 n.4.

**Response: Admit.**

36. On or about June 12, 2025, DHS stated it would email CHNV parolees (whom DHS referred to as "illegal aliens") to notify them that "both their parole is terminated, and their parole-based employment authorization is revoked—effective immediately." Doc. No. 128-20.

**Response: Admit.**


DATED: July 9, 2025                    Respectfully submitted

                                                 By: /s/ *Elissa Fudim*
ELISSA FUDIM
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
*Counsel for Defendants*