**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SVITLANA DOE, *et al.,* | |
| *Plaintiff*, | Civil Action No.: 1:25-cv-10495-IT |
| v. | Leave to file granted on July 15, 2025 |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.,* | |
| *Defendants* | |

**BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS *AMICUS CURIAE* IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE MASS TRUNCATION OF CHNV PAROLE**

Rohan J. Samaraweera (BBO #439900)
SAMARAWEERA LAW OFFICES
382 Hammond Street, Suite 200
Boston, MA 02467-1229
T: (617) 731-1985
Fax: (617) 731-1986
E-M: Samaraweera-Law@comcast.net

GABRIEL CANAAN*
D.C. Bar No. 90025172
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Ste 335
Washington, DC 20001
(202) 232-5590
gcanaan@irli.org

* Admitted *pro hac vice*

Attorneys for *Amicus Curiae*
Immigration Reform Law Institute

**CORPORATE DISCLOSURE STATEMENT**

*Amicus curiae* the Immigration Reform Law Institute ("IRLI") is a 501(c)(3) not-for-profit charitable organization incorporated in the District of Columbia. IRLI has no parent corporation. It does not issue stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ......................................................................................................... ii

INTEREST OF AMICUS CURIAE........................................................................................... 1

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.   Secretary Noem's termination of the CHNV parole programs was an exercise of presidential authority and is unreviewable under the APA ................................................. 4

    II.  Secretary Noem's termination of the CHNV program was not arbitrary and capricious . 7

CONCLUSION.......................................................................................................................... 11

# TABLE OF AUTHORITIES

CASES

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948) ...................... 2

*Dalton v. Specter,* 511 U.S. 462 (1994) ................................................................................ 4

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85 (D.D.C. 2016) .............................. 4

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) ......................................................... 9

*Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020)..................................................................... 10

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ......................................................................... 6

*Leng May Ma v. Barber*, 357 U.S. 185 (1958) ....................................................................... 3

*Nishimura Ekiu v. United States*, 142 U.S. 651 (1892). .......................................................... 2

*Samirah v. O'Connel*, 335 F.3d 545 (7ᵗʰ Cir. 2003). ............................................................ 5

*Tulare Cty. v. Bush,* 185 F. Supp. 2d 18, 28 (D.D.C. 2001) ..................................................... 5

*United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950) ............................................ 2

*United States v. Hansen*, 599 U.S. 762 (2023) ...................................................................... 6

STATUTES

8 U.S.C. § 1225(b)(1)(B) .................................................................................................. 11

8 U.S.C. § 1101(a)(13)(B) ................................................................................................... 3

8 U.S.C. § 1182(d)(5)(A) .................................................................................................... 8

8 U.S.C. § 1182(f)............................................................................................................... 3

OTHER AUTHORITIESF

Cong. Rsch. Serv. LSB 11102, *Humanitarian Parole Authority: A Legal Overview and Recent
Developments* (2024) ....................................................................................................... 8

RULES

Executive Order 14165 at § 7(b), Securing Our Borders, 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025)
(published Jan. 30, 2025). ................................................................................................. 4

Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed.
Reg. 13611 (Mar. 25, 2025)........................................................................................... 4, 10

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law.[1] IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

## INTRODUCTION

Secretary Noem's termination of the previous Administration's categorical grant of parole to 532,000 aliens from Cuba, Haiti, Nicaragua, and Venezuela (CHNV parole programs) was an exercise of inherent Executive power under Article II of the Constitution as well as discretionary delegated legislative power via the parole statute. Indeed, her actions were directed by the President, and because Secretary Noem's actions were at the behest of the President, her actions are unreviewable under the Administrative Procedure Act (APA).

Furthermore, Plaintiffs' reading of the statute introduces a conflict between it and the President's inherent authority. Plaintiffs read the parole statute to preclude the Executive Branch from terminating parole except only on a case-by-case, alien-by-alien basis—even though parole under the CHNV programs had been granted *en masse*. But that reading intrudes upon the

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

President's inherent and independent authority to oversee foreign affairs and immigration policy. And, as the government shows, another reading of the statute is, at the very least, permissible, according to which the statute permits categorical termination of parole programs. Accordingly, to avoid constitutional conflict, this Court should harmonize the parole statute with Secretary Noem's exercise of inherent Executive authority by adopting the government's interpretation.

In any event, Plaintiffs fail to show that Secretary Noem's termination determination is arbitrary and capricious. Secretary Noem thoroughly considered the previous rationales for the CHNV program, including humanitarian concerns, and found them inadequate, and determined that the program no longer served a significant public benefit. Under the Supreme Court's standard of what constitutes an "arbitrary and capricious" agency action, this Court should defer to Secretary Noem's analysis rather than substituting its own policy judgment.

## ARGUMENT

There is no question that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). It is also well-established that the President has independent authority in the areas of foreign policy and national security. *See e.g., Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 109 (1948) ("The President . . . possesses in his own right certain powers conferred by the Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . .

2

inherent in [both Congress and] the executive department of the sovereign"); *see also id.* at 542 ("When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing *an inherent executive power*.") (emphasis added). Indeed, Congress has acknowledged the President's inherent authority to exclude aliens in the nation's interest. *See* 8 U.S.C. § 1182(f) (implementing the President's authority, in the interests of the United States, to "suspend the entry of all aliens or any class of aliens" or "impose on the entry of aliens any restrictions he may deem to be appropriate"). And, granted the President's inherent constitutional power, as Commander-in-Chief, to exclude aliens, it cannot be a nullity even if exercised outside of the precise form of its implementation by Congress in 8 U.S.C. § 1182(f).

"An alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B); *see also id.* § 1182(d)(5)(A) ("[S]uch parole of such alien shall not be regarded as an admission . . . ."). In *Leng May Ma v. Barber*, the Supreme Court held that parolees, even though physically present within the United States, have not effected an entry and are treated under the law as though they remain detained at the border. 357 U.S. 185, 188-90 (1958). *See also Samirah v. O'Connel*, 335 F.3d 545, 546 (2003) ("Although a paroled alien has 'liberty to roam the country,' the law considers him legally detained at the border within the government's custody until his immigration status is determined" (citing *Chavez-Rivas v. Olsen*, 207 F.Supp.2d 326, 328 (2002)).  Accordingly, parolees are subject to the President's inherent exclusion power. Because Secretary Noem terminated the CHNV parole programs at the direction of the President, her action is unreviewable as an exercise of presidential authority, and even if it were reviewable, Plaintiffs fail to show that it was arbitrary and capricious.

3

I.    **Secretary Noem's termination of the CHNV parole programs was an exercise of presidential authority and is unreviewable under the APA.**

In addition to the jurisdictional bars identified by the government, ECF Doc. 140 at 8-10,[2] Secretary Noem's termination is unreviewable as an exercise of presidential authority. On January 20, 2025, President Trump directed Secretary Noem to "[t]erminate all categorical parole programs that are contrary to the policies of the United States established in my Executive Orders, including the program known as the 'Processes for Cubans, Haitians, Nicaraguans, and Venezuelans.'" Executive Order 14165 at § 7(b), Securing Our Borders, 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025) (published Jan. 30, 2025). On March 25, 2025, Secretary Noem complied with the President's directive and issued a notice in the Federal Register terminating the CHNV parole programs and notifying aliens who had been granted parole under that program that any unexpired period of parole would end in thirty days. Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025). In this notice, Secretary Noem made clear that she terminated the CHNV parole programs at "the President's direction, and for the independent reasons stated in this notice…." *Id.* Accordingly, Secretary Noem exercised both inherent Executive authority and delegated statutory authority in terminating the CHNV parole programs.

Because Presidents must always act through subordinates, whether an action is that of the President or the head of an agency, for purposes of APA reviewability, hinges not on whether agency personnel help perform a given action, but on whether the authority to take that action is presidential or delegated by Congress to an agency. *See, a fortiori, Dalton v. Specter,* 511 U.S. 462, 477 (1994) ("Where a statute … commits decisionmaking to the discretion of the President,

---

[2]    Citations are to the pagination in the ECF header and not to the document's internal pagination.

judicial review of the President's decision is not available."). Here, one source of independent authority for Secretary Noem's action came directly from the President in the exercise of his inherent constitutional authority over foreign affairs and immigration policy, and she terminated the CHNV parole programs pursuant to his executive order. As the U.S. District Court for the District of Columbia has explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, *i.e.*, the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.,* 189 F. Supp. 3d 85, 101-04 (D.D.C. 2016) . *See also, e.g., Tulare Cty. v. Bush,* 185 F. Supp. 2d 18, 28 (D.D.C. 2001)  ("A court has subject-matter jurisdiction to review an agency action under the APA only when a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA.") (citing *Dalton,* 511 U.S. at 470) (other internal citations omitted).

Here, Secretary Noem, in addition to "other independent reasons," acted at the direction of the President and implemented his executive order when she terminated the CHNV parole programs. Accordingly, Secretary Noem exercised independent Article II authority in terminating the CHNV parole programs, and this Court lacks jurisdiction to review her actions under the APA. *Dalton,* 511 U.S. at 477. It is, of course, not to the prejudice of the unreviewability of the

Secretary's action that it was pursuant to an order that the President had inherent constitutional authority to issue. Obviously, if actions committed to the President's discretion by a statute are unreviewable under the APA, actions he takes pursuant to his authority under the Constitution are at least equally so.

In any event, Plaintiffs' reading of the parole statute as precluding the Executive from categorically terminating parole programs intrudes on the President's inherent and independent constitutional authority to oversee foreign affairs and immigration policy. A reviewing court should seek to harmonize Congress's enactments with the President's inherent constitutional authority to terminate parole programs. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict."). "When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018)  (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)).

Of course, the "canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Id.* (internal quotation omitted). Here, the government has persuasively established one such permissible construction—that the parole statute's "case-by-case" limitation on grants of parole does not apply to parole terminations. *See* ECF Doc. No. 89 at 20-21; ECF Doc. No. 140 at 21. Thus, to avoid the conflict between Plaintiffs' reading of the parole statute and the Executive's inherent constitutional authority to protect the nation from foreign threats, this Court should construe the statute as permitting categorical terminations of parole.

## II.    Secretary Noem's termination of the CHNV program was not arbitrary and capricious.

As to the merits of Plaintiffs' claims, this Court should reject Plaintiffs' argument that the termination notice was arbitrary and capricious. Plaintiffs' arguments criticizing the adequacy of Secretary Noem's consideration of humanitarian concerns amount to a policy disagreement: Plaintiffs can point to no legal standard—statutory or judicial—that the Federal Register Notice ("FRN") fails to satisfy. There is no judicially manageable standard for evaluating whether terminating or creating CHNV parole advances a "significant public benefit" or "humanitarian reasons" as those terms are undefined in the statute and are therefore entrusted to the Secretary's discretion. And while urgent humanitarian concerns of individual aliens is *a* purpose of the INA's parole statute, that fact alone does not explicate how the Secretary ought to weigh those interests against the public or national interests, or what balance of those two constitutes a "significant public benefit."

Secretary Noem's termination determination was based on a thorough assessment of both the proffered public benefits of the CHNV program and the humanitarian justifications for it, and she reasonably concluded that neither justified its continuation. The purpose of the parole power is to provide exceptional relief outside the formal admission process. H.R. Rep. No. 1365, at 36 (1952), reprinted in 1952 U.S.C.C.A.N. 1653, 1667.[3] The parole statute provides that:

> The Attorney General may … in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case

---

[3] Generally, only those aliens who are admissible under the INA may be admitted into the United States.

shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which replaced "for emergent reasons or for reasons deemed strictly in the public interest," with the narrower language of "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." Cong. Rsch. Serv. LSB 11102, *Humanitarian Parole Authority: A Legal Overview and Recent Developments* (2024) at 3, available at: https://www.congress.gov/crs-product/LSB11102 (citing H.R. Rep. No. 104-828, at 162 (1996)). This change is consistent with the broader objectives of IIRIRA in strengthening the INA's enforcement framework by deterring unlawful entries and expanding grounds for inadmissibility and removal.

Historically, DHS exercised its parole authority through individualized adjudications of Form I-131 filings on a case-by-case basis, assessing each individual applicant's unique humanitarian or public-benefit circumstances. On January 9, 2023, however, DHS departed from that practice when it adopted the CHNV parole programs, each defining uniform eligibility criteria, security-vetting protocols, and two-year parole terms for all qualifying nationals of certain countries. That *en masse* framework supplanted individualized review by automating parole grants through programmatic rules and marked a substantial deviation from the statute's case-by-case design. While ostensibly seeking to reduce the number of illegal crossings at the southern border, CHNV parole served as a de facto admission category, or a means of making would be-illegal aliens legal. In terminating these programs, Secretary Noem's March 2025 order returns DHS practices to the confines of the parole statute, which requires any discretionary grant of parole to be determined on a case-by-case basis, based on individual circumstances. By re-emphasizing

individualized "urgent humanitarian reasons" or "significant public benefit" review going forward, the Secretary Noem's order restores the statute's default case-by-case constraints and corrects the CHNV program's departure from prior DHS practice.

Plaintiffs make a series of categorizations of the Secretary's decision-making process, all of which amount to either ignoring the explanations offered in the FNR or taking issue with the Secretary's policy determination. They allege that she "completely failed in her duty to examine the relevant data and articulate a satisfactory explanation" for her policy change, ECF Doc. 129 at 13 (citing *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ); that she did not disclose the "theory underlying" her decision, *id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) and thus failed both "to provide a reasoned explanation for abandoning her predecessor's rationale," *id.*, and "to consider any of the facts or circumstances underlying DHS's prior conclusions." *id.* at 14. For much of this characterization, Plaintiffs rely on interspersed quotes from *Encino Motorcars,* but omit the full context, which reads:

> The agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc.* v. *State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) (internal quotation marks omitted). That requirement is satisfied when the agency's explanation is clear enough that its "path may reasonably be discerned." *Bowman Transp., Inc.* v. *Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974). But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law. See 5 U.S.C. §706(2)(A); *State Farm*, *supra*, at 42-43, 103 S. Ct. 2856, 77 L. Ed. 2d 443.

*Encino Motorcars,* 579 U.S. at 221.

Secretary Noem's termination decision clearly satisfies these requirements. It can be reasonably inferred that Secretary Noem fully considered the relevant factors before deciding to terminate the CHNV parole program, and the order provides well beyond a "minimal level of analysis" of prior DHS reasoning before changing the agency's parole policy. Section III of the

FRN demonstrates that each of the six purported "public benefits" rationales for the CHNV program—(1) enhancing border security; (2) minimizing domestic impacts; (3) improving vetting; (4) reducing DHS resource strain; (5) deterring dangerous journeys by migrants; and (6) advancing foreign-policy goals—failed to materialize or substantiate the mass parole policy. 90 Fed. Reg. 13612.

Plaintiffs rely on *Grace v. Barr* in support of their argument that Secretary Noem's supposed "failure to consider" the humanitarian goal of the statutory parole authority rendered her action arbitrary and capricious. ECF Doc. 129 at 15 (citing *Grace v. Barr*, 965 F.3d 883, 902 (D.C. Cir. 2020). Two problems arise with the conclusions they draw from this case, however. First, terminating the CHNV mass parole program does not mean that Secretary Noem has cast aside the humanitarian basis for parole. Nothing in the order indicates that the humanitarian needs of individual applicants from these four countries will be disregarded if they seek parole on a humanitarian basis. *See* U.S. Citizenship & Immigration Servs., Application for Travel Document, Form I-131 (Rev. 06/21/21) (permitting applicants to select "Humanitarian Parole" in Part 1 of the form). Humanitarian parole will continue; it will simply not be granted *en masse* to anyone from an entire nation, or nations.

Additionally, Plaintiffs gloss over the relevant fact that the statute at issue in *Grace*, mandated that asylum seekers be provided a credible-fear screening and referral to an immigration judge, creating a non-discretionary entitlement. *Grace*, 965 F.3d at 889-90. The issue in *Grace* was that the government failed to acknowledge that it had raised the standard that plaintiffs had to satisfy to meet the statutory "credible fear of persecution" requirement.  In the portion of *Grace* cited to by Plaintiffs (ECF Doc. 129 at 15), the D.C. Circuit is referring to § 1225(b)(1)(B),  the credible-fear screening provision of the INA, in noting that "the statute has a second, equally

important goal [of] ensuring that individuals with valid asylum claims are not returned to countries where they could face persecution." *Grace*, 965 F. 3d 883, 902. That statute establishes a mandatory process that USCIS officers must follow once an asylum applicant demonstrates a "reasonable fear of persecution". § 1225(b)(1)(B)(ii) (if an alien "indicates [. . .] a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B).") By contrast, 8 U.S.C. § 1182 grants the Secretary plenary, case-by-case discretion to parole aliens for "urgent humanitarian reasons or significant public benefit" and to terminate parole "when the purposes of such parole have been served." Unlike in *Grace*, Secretary Noem's CHNV termination is not an unacknowledged change in policy, but a properly documented and published change that is well within her discretionary authority, and does not endanger a statutory right.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment should be denied.

Dated: July 14, 2025                    Respectfully submitted,

                                        /s/ Rohan J. Samaraweera
                                        Rohan J. Samaraweera (BBO #439900)
                                        SAMARAWEERA LAW OFFICES
                                        382 Hammond Street, Suite 200
                                        Boston, MA 02467-1229
                                        T: (617) 731-1985
                                        Fax: (617) 731-1986
                                        E-M: Samaraweera-Law@comcast.net

                                        GABRIEL CANAAN*
                                        D.C. Bar No. 90025172
                                        Immigration Reform Law Institute
                                        25 Massachusetts Ave., NW, Ste 335
                                        Washington, DC 20001
                                        (202) 232-5590 gcanaan@irli.org

*Admitted *pro hac vice*

Attorneys for *Amicus Curiae*
Immigration Reform Law Institute

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2025, a true copy of the above document, filed through the CM/ECF system, will be sent electronically to the registered participants of record as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Rohan J. Samaraweera
Rohan J. Samaraweera

Attorney for *Amicus Curiae*
Immigration Reform Law Institute