IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, et al.,<br><br>Defendants. | Civil Action No.: 1:25-cv-10495-IT |

**PLAINTIFFS' REPLY WITH DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiffs submit this Reply to Defendants' [Corrected] Response to Plaintiffs' Statement of Uncontested Facts, Doc. No. 143.

### The CHNV Plaintiffs & Class Members

1. Secretary Noem's mass truncation of parole cut short the parole of eight individual Plaintiffs. Alejandro Doe Decl., Doc. No. 24-1; Carlos Doe. Decl., Doc. No. 24-4; Miguel Doe Decl., Doc. No. 64-4; Lucia Doe Decl., Doc. No. 64-3; Ana Doe Decl., Doc. No. 24-2; Armando Doe. Decl., Doc. No. 24-3; Daniel Doe Decl., Doc. No. 64-5; Andrea Doe Decl., Doc. No. 27-1.

**Defendants' Response: Admit except note that the Secretary "terminated" parole; she did not "truncate" it. 90 Fed. Reg. at 13611.**

2. Secretary Noem's mass truncation of parole cut short the parole of individuals sponsored by five of the individual sponsors. Gabriela Doe Decl., Doc. No. 64-6; Norma Lorena Dus Decl., Doc. No. 71-2; Sandra McAnany Decl., Doc. No. 24-9; Kyle Varner Decl., Doc. No. 24-10; Wilhen Pierre Victor Decl., Doc. No. 24-11.

1

**Defendants' Response: Admit except note that the Secretary "terminated" parole; she did not "truncate" it. 90 Fed. Reg. at 13611.**

3.  Plaintiff Haitian Bridge Alliance is a non-profit organization dedicated to serving the needs of Haitian migrants in the United States, including parolees. Decl. of Guerline Jozef on behalf of Plaintiff Haitian Bridge Alliance, Doc. No. 71-3.

**Defendants' Response: Admit.**

4.  Through the Federal Register notice published on March 25, 2025, Doc. No. 71-1, Secretary Noem cut short the parole of at least 426,151 individuals, which is the number of people whose parole would have expired on or after May 1, 2025. *See* Doc. No. 128-4.

**Defendants' Response: Defendants admit that there were about 426,151 CHNV beneficiaries whose parole was initially scheduled to expire on or after May 1, 2025. See Doc. No. 128-4.**

5.  Of those 426,151 individuals, 4,390 had acquired some form of permanent immigration status as of February 25, 2025. Doc. No. 128-4.

**Defendants' Response: Admit.**

6.  Of those 426,151 individuals, 51,828 had Temporary Protected Status as of February 25, 2025. Doc. No. 128-4.

**Defendants' Response: Admit.**

7.  Of those 426,151 individuals, 4,628 had departed the United States as of February 25, 2025. Ex 4.

**Defendants' Response: Admit.**

8.  Of those 426,151 individuals, 212,542 had an application pending for either adjustment of status (I-485), asylum (I-589), or Temporary Protected Status (I-821), as of February 25, 2025. Doc. No. 128-4.

**Defendants' Response: Admit.**

9.  A stated purpose of each of the CHNV parole processes was that, once here, parolees could apply for other forms of relief for which Congress has made them eligible. Doc. No. 24-21 at 3 ("The two-year period will also enable individuals to seek humanitarian relief or other immigration benefits for which they may be eligible"); Doc. No. 24-24 at 3 (same); Doc. No. 24-25 at 3 (same); Doc. No. 24-23 at 4 (same, plus specifically mentioning the Cuban Adjustment Act, which permits paroled Cubans to adjust to lawful permanent residence after one year); *see also* Doc. Nos. 128-2 & 128-3 ("Ukraine & CHNV Parolee Immigrant Benefit Tracking").

**Defendants' Response: Defendants state that the Federal Register Notices speak for themselves. To the extent a further response is required, Defendants deny that a "stated purpose" of the CHNV parole processes was that, once here, parolees could apply for other forms of relief for which Congress has made them eligible, but admit that the Federal Register Notices pertaining to the CHNV parole programs state that the two-year parole period will enable parolees to seek humanitarian relief or other benefits for which they may be eligible. *See e.g.* 24-21 at pg. 3, 24-24 at pg. 3. Defendants refer the Court to the four Federal Register notices for a full and accurate recitation of their contents.**

**The Administrative Record**

10. The Administrative Record ("AR") that Defendants produced for the March 25, 2025 Federal Register notice ending the CHNV parole processes has 68 entries consisting of two

3

native format Excel spreadsheets and 66 documents in PDF format totaling 840 pages. *See* Doc. No. 128-1.

**Defendants' Response: Admit.**

11. More than one-third of the documents—comprising more than half of the 840 pages—in the AR are various notices printed in the Federal Register. Doc. No. 128-1.

**Defendants' Response: Admit.**

12. Not counting those printed in the Federal Register, more than 25 of the documents are publicly available online. Doc. No. 128-1.

**Defendants' Response: Admit.**

13. At least nine of the documents in the AR have already been filed on the docket in this case. Compare Doc. No. 128-1 *with* Doc. Nos. 24-21, 24-22, 24-23, 24-24, 24-44, 24-45, 41-1, 41-3, and 71-1.[1]

**Defendants' Response: Admit.**

14. Of the 66 PDF documents, just eight documents (totaling 162 pages) had information that was not publicly available when Defendants produced the AR. They are described in the next seven paragraphs.

**Defendants' Response: Admit.**

15. One of those not previously public documents is [a] one-page "Decision Document" showing Secretary Noem chose to terminate the CHNV processes over an unknown number of other options (which are redacted). Doc. No. 128-5.

---

[1] Defendants produced a 49-page version of the FRN, CHNV-FRN-154, whereas Document 71-1 is 12-pages.

4

**Defendants' Response: Defendants decline to characterize, summarize, or otherwise describe the documents in the administrative record, as they speak for themselves, and must be assessed on their face.** *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, **No. 1:22-CV-11091-IT, 2023 WL 6691015, at \*5 (D. Mass. Oct. 12, 2023),** *aff'd*, **123 F.4th 1 (1st Cir. 2024) (On a motion for summary judgment governed by the APA, "[t]he court looks directly to the Administrative Record [] rather than the parties' characterizations of the Administrative Record.").**

Plaintiffs' Reply: Defendants' response is not a valid objection under Rule 56(c) and Local Rule 56.1 in that they have failed to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Moreover, the basis for Defendants' objection is without merit as heavily redacted documents simply do not "speak for themselves" as Defendants claim.

16. Two of those not previously public documents are detailed, 8-page reports (dated February 9, 2025 and March 9, 2025) of a USCIS system that tracks immigration benefit requests filed by CHNV and Uniting for Ukraine (U4U) parolees, broken down by benefit request, status of request, and processing time; with additional data on the age and gender of the applicant and graphs of weekly processing measures, by parolee nationality. Doc. Nos. 128-2 & 128-3.

**Defendants' Response: See response to No. 15.**

Plaintiffs' Reply: See reply to No. 15.

17. One of those not previously public documents is a five-page CBP memorandum dated March 14, 2025 sent only to "THE FILE" that summarizes impacts of the CHNV processes on Florida airports. Doc. No. 128-6. It refers to the March 25, 2025 FRN in the past tense. *Id.* at 1.

**Defendants' Response**: See response to No. 15.

<u>Plaintiffs' Reply</u>: See reply to No. 15.

18. One of those not previously public documents is two-page CBP memorandum dated January 27, 2025 entitled, "Implementation of Active Executive Orders." Doc. No. 128-7. This memorandum refers four times to an attached "muster." Defendants did not produce the "muster." Defendants have twice refused to produce the "muster" after Plaintiffs requested that they do so.

**Defendants' Response**: See response to No. 15.

<u>Plaintiffs' Reply</u>: See reply to No. 15.

19. Another of the not previously public documents is a one-page notice CBP sent to airline carriers on January 22, 2025. Doc. No. 128-9. It is similar to one sent two days later (Doc. No. 24-45).

**Defendants' Response**: See response to No. 15.

<u>Plaintiffs' Reply</u>: See reply to No. 15.

20. Another not previously public document is a 14-page May 2024 "Filing Trend Analysis" of the USCIS Fraud Detection and National Security Directorate. Doc. No. 128-10. This report analyzed filings of Form I-134A that were submitted by individuals seeking to sponsor a potential parolee through the CHNV or Uniting for Ukraine ("U4U") parole processes. *Id.* This is the "fraud" report referenced in the February 14, 2025 Davidson Memorandum (Doc. No. 41-3).

**Defendants' Response**: See response to No. 15.

<u>Plaintiffs' Reply</u>: See reply to No. 15.

21. The last of the not previously public documents are two virtually identical copies of a 63-page USCIS "Reviewer's Guide" providing technical guidance on the processing of CHNV, U4U and Family Reunification Parole ("FRP") parole requests filed by sponsors. Doc.

Nos. 128-12 & 128-13. The guides are dated five months apart and only a handful of pages, at most, are different between the two. *See id.*

**Defendants' Response: See response to No. 15.**

Plaintiffs' Reply: See reply to No. 15.

22.  Other than the Federal Register notices announcing the CHNV processes, there is no overlap between the AR for the CHNV termination does and the administrative records for the creation of the CHNV parole processes. *Compare* Doc. No. 128-1 *with* Doc. Nos. 128-14 through 128-17.

**Defendants' Response: See response to No. 15.**

Plaintiffs' Reply: See reply to No. 15.

**Secretary Noem's Decision to Mass Truncate CHNV Parole**

23.  The CHNV parole processes are a historically common use of the statutory parole authority. *See* Doc. Nos. 24-38 through 24-43.

**Defendants' Response: Deny. Plaintiffs' characterization of the CHNV parole programs as "historically common" is a relative and vague term. Further, Plaintiffs cite six documents, totaling 116 pages—with no other specificity—to support their conclusion. Further, none of these six documents are part of the Administrative Record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at \*5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those**

**documents were not part of the Administrative Record and the offering party never moved to supplement the record.)**

Plaintiffs' Reply: Defendants' response is not a valid objection under Rule 56(c) and Local Rule 56.1 in that they have failed to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."

Moreover, the basis for Defendants' objection is without merit: the Court's review of Defendants' actions is not limited to the administrative record for all purposes, but rather to evaluate the reasons given by the agency for its action. *See City of Taunton, Massachusetts v. U.S. Env't Prot. Agency*, 895 F.3d 120, 127 (1st Cir. 2018). The Court is not limited to the administrative record when interpreting a statute, and Plaintiffs' cited materials are relevant to the proper interpretation of the parole statute.

Additionally, no "other specificity" is needed here, in light of what the documents actually are:

- A non-comprehensive list of more than 125 programmatic (or "categorical") parole processes since the 1950s, in chronological order. David J. Bier, Cato Institute, *126 Parole Orders over 7 Decades: A Historical Review of Immigration Parole Orders* (July 17, 2023) (Doc. No. 24-38);

- An expert declaration from historian Dr. Yael Schacher that "explain[s] and summarize[s] the legislative and administrative history of parole programs under 8 U.S.C. § 1182(d)(5), with particular focus on the programmatic use of parole, including after the statute was revised in 1980 and 1996, and how the Cuban, Haitian, Nicaraguan, and Venezuelan (CHNV) parole processes compare to past

- parole programs," Doc. No. 24-39 ¶ 5, *see also* Doc. No. 24-36 ¶ 6 (providing additional background);

- Fact declarations from Eric Schwartz and Morton H. Halperin, former senior Executive Branch officials who discussed, based on their personal knowledge (and with the latter declaration attaching corroborating primary source documents), specific "programmatic" or "categorical" uses of the parole authority over a time period including the 1996 amendments to the parole statute, Doc. Nos. 24-40 & 24-41; *see also* Doc. No. 24-36 ¶¶ 7-8 (providing additional background);

- A fact declaration from Debra Rogers describing how and why DHS developed and implemented a specific "categorical" parole process, based on her intimate involvement in the creation of it, Doc. No. 24-42; *see also* Doc. No. 24-36 ¶ 9 (providing additional background);

- A June 15, 2001 memorandum from Bo Cooper, General Counsel of the U.S. Immigration and Naturalization Service, addressed to Jeffrey L. Weiss, the Director of the Office for International Affairs, providing a "Legal Opinion" on a particular "categorical" use of the parole authority, particularly as it relates to the 1996 amendments to the parole statute, Doc. No. 24-43. Although this memorandum is not part of the administrative record for the March 25, 2025 Federal Register notice, Doc. No. 24-43 *is* part of the administrative record for the creation of each of the four CHNV parole processes, and therefore it is relevant evidence concerning the Secretary's arbitrary refusal to consider the administrative records that were before DHS when each of the four CHNV parole processes were created. Doc. No. 128-14 (document 11 starting at Cuba AR_000092), Doc. No. 128-15 (document 11

9

starting at Haiti AR_000092), 128-16 (document 11 starting at Nicaragua AR_000092), Doc. No. 128-17 (document 14 starting at Venezuela AR_000111); *see also* Federal Defs.' Post-Trial Proposed Findings of Fact & Conclusions of Law (ECF No. 283) at 58-59, *Texas v. DHS*, No. 23cv7 (S.D. Tex. filed Sept. 9, 2023) (quoting from this memorandum, which was admitted as a trial exhibit, in context of discussing statutory case-by-case requirement); Federal Defs.' Post-Trial Br. of Federal Defendants (ECF No. 284) at 42, *Texas v. DHS*, No. 23cv7 (S.D. Tex. filed Sept. 9, 2023) (same).

24. DHS employees had authorized each CHNV parolee, on a case-by-case basis, to travel to an airport in United States to request parole. Doc. No. 71-1.

**Defendants' Response: Admit.**

25. Once each individual flew to an airport in the United States, that individual was inspected by one or more DHS employees who determined, on a case-by-case basis, that that individual warranted a grant of parole.

**Defendants' Response: Plaintiff has not indicated a source for its purported statement of fact, and therefore, in an abundance of caution, Defendants decline to respond to this statement, other than to refer the Court to the Federal Register Notices related to the CHNV parole programs for a full and accurate recitation of the programs.**

Plaintiffs' Reply: The Federal Register Notices related to the CHNV parole processes that Defendants agree provide "a full and accurate recitation" thereof confirm that the processes were case-by-case. Docs. No. 24-21 through 24-25.

26. When deciding to end the CHNV parole processes and to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the record before DHS when it created those processes. *Compare* Doc. No. 128-1 *with* Doc. Nos. 128-14 through 128-17.

**Defendants' Response: Deny. 90 Fed. Reg. at 13611-19.**

<u>Plaintiffs' Reply</u>: Defendants' response is not a valid objection under Rule 56(c) and Local Rule 56.1 in that they have failed to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Moreover, Defendants' dispute is not supported by the document cited, which says nothing about the administrative records for the CHNV parole processes (Doc. Nos. 128-14 through 128-17). Additionally, Defendants' Response to ¶ 23 objects to Plaintiff citing a document (Doc. No. 24-43) on the ground that it is not in the administrative record for Secretary Noem's action. As noted in Plaintiffs reply to ¶ 23, Doc. No. 24-43 is in the administrative records for all four CHNV parole processes, further establishing that there is no genuine dispute of material fact that Secretary Noem did not consider the administrative record for the CHNV parole processes when she ended them.

27. When deciding to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the record that was before the agency when agency employees authorized those individuals, on a case-by-case basis, to travel to the United States to request parole at an interior port of entry. *See* Doc. No. 128-1.

**Defendants' Response: Deny. 90 Fed. Reg. at 13611-19.**

<u>Plaintiffs' Reply</u>: Defendants' response is not a valid objection under Rule 56(c) and Local Rule 56.1 in that they have failed to "include a concise statement of the material facts of

record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."

Moreover, Defendants' dispute is not supported by the evidence cited, which says nothing about the case-by-case reasons provided in the applications (Form I-134A, *see* 90 Fed. Reg. at 13617 n.57) upon which individuals were authorized to travel to a port of entry to seek parole. That application informed potential sponsors that "A grant of parole is a discretionary determination granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit," and then it required applicants to "Please explain why a favorable exercise of discretion is merited for this individual." Doc No. 128-12 at 32, CHNV-FRN-00673 (emphasis added). In reviewing those applications, DHS personnel were required to consider whether the application presented specified public benefits and/or humanitarian considerations, including but not limited to "rejoining with family," "medical needs or treatment," "severe economic hardship," "civil strife or political unrest," "vulnerabilities of either the beneficiary or a US-based person, including the need to provide caregiving assistance." Doc. No. 128-12 at 32, CHNV-FRN-00736. Additionally, Defendants acknowledge in their Opposition to Plaintiffs' Motion for Partial Summary Judgment that Secretary Noem did not consider the individualized information about CHNV parolees provided during the application process, including the information that had been provided in Forms I-134A. Doc. No. 140 at 16.

28.     When deciding to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the record that was before the agency when agency employees determined, on a case-by-case basis, that each of those parolees warranted a discretionary grant of parole. Doc. No. 128-1.

**Defendants' Response: Deny. 90 Fed. Reg. at 13611-19.**

<u>Plaintiffs' Reply</u>: Defendants' response is not a valid objection under Rule 56(c) and Local Rule 56.1 in that they have failed to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."

Moreover, Defendants' dispute is not supported by the evidence cited, which says nothing about the case-by-case reasons provided in the applications (Form I-134A, *see* 90 Fed. Reg. at 13617 n.57) upon which individuals were authorized to travel to a port of entry to seek parole. That application informed potential sponsors that "A grant of parole is a discretionary determination granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit," and then it required applicants to "Please explain why a favorable exercise of discretion is merited for this individual." Doc No. 128-12 at 32, CHNV-FRN-00673 (emphasis added). In reviewing those applications, DHS personnel were required to consider whether the application presented specified public benefits and/or humanitarian considerations, including but not limited to "rejoining with family," "medical needs or treatment," "severe economic hardship," "civil strife or political unrest," "vulnerabilities of either the beneficiary or a US-based person, including the need to provide caregiving assistance." Doc. No. 128-12 at 32, CHNV-FRN-00736. Additionally, Defendants acknowledge in their Opposition to Plaintiffs' Motion for Partial Summary Judgment that Secretary Noem did not consider the individualized information about CHNV parolees provided during the application process, including the information that had been provided in Forms I-134A. Doc. No. 140 at 16.

29.     When deciding to end the CHNV parole processes and to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the humanitarian considerations on which the agency justified the creation of those processes and the individual grants thereunder. Doc. No. 128-1.

**Defendants' Response: Deny. 90 Fed. Reg. at 13612.**

Plaintiffs' Reply: Defendants' response is not a valid objection under Rule 56(c) and Local Rule 56.1 in that they have failed to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation.

Moreover, Defendants' dispute is not supported by the evidence cited, which is just the following one sentence: "Regarding previous arguments or determinations that these programs were consistent with the requirement of 'urgent humanitarian reasons' for granting parole, DHS believes that consideration of any urgent humanitarian reasons for granting parole is best addressed on a case-by-case basis consistent with the statute, and taking into consideration each alien's specific circumstances." Secretary Noem's statement does not even identify what the "previous arguments or determinations" *were*; she only said that they concerned whether the CHNV parole processes "were consistent with" the "urgent humanitarian reasons" prong of the parole statute. Secretary Noem also did not say whether she agreed or disagreed with these "previous arguments or determinations."

None of what Secretary Noem said, moreover, even suggests she was aware of the urgent humanitarian reasons on which the CHNV parole processes were based. *See* Doc. No. 24-21, 87 Fed. Reg. at 63,515 (discussing "the urgent humanitarian reasons faced by so many Venezuelans subject to the repressive regime of Nicolás Maduro" and how the

14

parole process would prevent "Venezuelan nationals who seek to leave their home country" from having to take a "dangerous journey to the United States"); Doc. No. 24-23, 88 Fed. Reg. at 1,275 (discussing "the urgent humanitarian needs of Cuban nationals who have fled crippling economic conditions and social unrest in Cuba" where the government "continues to repress and punish all forms of dissent and public criticism of the regime and has continued to take actions against those who oppose its positions"); Doc. No. 24-24, 88 Fed. Reg. at 1,251-52 (discussing Haitians' urgent humanitarian needs based on "escalating gang violence, the aftermaths of an earthquake, and a cholera outbreak" that "have worsened already concerning political, economic, and social conditions in Haiti," and how the parole "process provides a safe mechanism for Haitian nationals who seek to enter the United States for urgent humanitarian reasons without having to make a dangerous journey by land or sea"); Doc. No. 24-25, 88 Fed. Reg. at 1,262-63 (discussing the "urgent humanitarian needs of Nicaraguan nationals who have fled the Ortega regime and Nicaragua" because "[t]he Government of Nicaragua continues to repress and punish all forms of dissent and public criticism of the regime and has continued to take actions against those who oppose its positions")

Nothing that Secretary Noem said also indicates any awareness of the individual bases on which the individual grants of parole were granted, including the information provided in the applications (Form I-134A). *See* Ex. 21, (Form I-134A for Plaintiff Ana Doe).

30. When deciding to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the humanitarian impact on those parolees. Doc. No. 128-1.

**Defendants' Response: Deny. 90 Fed. Reg. at 13617-19.**

<u>Plaintiffs' Reply</u>: Defendants' response is not a valid objection under Rule 56(c) and Local Rule 56.1 in that they have failed to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. Defendants' dispute is also not supported by the evidence cited, which says nothing about the various ways that ending parole of individuals will impact the lives of parolees, particularly given their individual circumstances as reflected in their individual applications (Form I-134A).

31. When deciding to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the humanitarian impact on the families of parolees. Doc. No. 128-1.

**Defendants' Response: Deny. 90 Fed. Reg. at 13617-19.**

<u>Plaintiffs' Reply</u>: Defendants' response is not a valid objection under Rule 56(c) and Local Rule 56.1 in that they have failed to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. Defendants' dispute is also not supported by the evidence cited, which says nothing about the various ways that ending parole of individuals will impact the lives of parolees' families, particularly given their individual circumstances as reflected in the parolees' individual applications (Form I-134A).

32. The Administrative Record has no information about parolees' compliance with statutory and regulatory requirements that they keep DHS updated as to any change to their address. Doc. No. 128-1.

**Defendants' Response: Admit.**

33.     The AR contains no basis on which to evaluate the methods of service available to DHS to make CHNV parolees aware that DHS has truncated their parole and employment authorization. Doc. No. 128-1.

**Defendants' Response: Deny. 90 Fed. Reg. at 13620. The Secretary explained why she rejected the use of mail for the notice (the possibility of non-compliance with change-of-address requirements), why she believed use of the Federal Register was preferable (based on the size of the affected population), and explained why she believed that additional electronic notice would also be beneficial (because processing for the CHNV programs was done electronically, and 8 C.F.R. § 103.2(b)(19)(ii)(B) put aliens on notice that USCIS may use electronic means to provide aliens notices and decisions).**

<u>Plaintiffs' Reply</u>: Defendants' response is not a valid objection under Rule 56(c) and Local Rule 56.1 in that they have failed to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. Moreover, Defendants' dispute is not supported by the evidence cited, as the Federal Register notice does not evaluate methods of service at all. Additionally, it asserts nowhere that "8 C.F.R. § 103.2(b)(19)(ii)(B) put aliens on notice that USCIS may use electronic means to provide aliens notices and decisions." Moreover, by its own terms that regulation only applies where the noncitizen is represented by an attorney or accredited representative, and CHNV parolees were not required to be represented.

### DHS's Other Actions

34.     Attorney General Pam Bondi has directed federal prosecutors to prioritize "criminal immigration-related violations," including the misdemeanor offense in 8 U.S.C. § 1306 of a

17

noncitizen's failure to give DHS "written notice" of a change of address. Office of the Att'y Gen., *General Policy Regarding Charing, Plea Negotiations, and Sentencing* 3 (Feb. 5, 2025), https://www.justice.gov/ag/media/1388541/dl?inline.

**Defendants' Response: The document cited by Plaintiffs does not instruct federal prosecutors to "prioritize" for prosecution aliens who have failed to give DHS written notice of their change of address. Further, Defendants object to this citation, because for motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at \*5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.)**

Plaintiffs' Reply: Under the subheading "Investigative and Charging Priorities," page 3 of the document cited states that "The Department of Justice shall use all available criminal statutes to combat the flood of illegal immigration that took place over the last four year," specifically listing 8 U.S.C. § 1306, the criminal statute for failure to give DHS written notice of a change of address. Moreover, the basis for Defendants' objection is without merit: the Court's review of Defendants' actions is not limited to the administrative record for all purposes, and the Court can consider this publicly available document because it further demonstrates that Secretary Noem failed to consider all relevant factors when she decided not to mail written notices to class members to cut short their parole and employment authorization. *See City of Taunton, Massachusetts v. United States Env't Prot.*

*Agency*, 895 F.3d 120, 127 (1st Cir. 2018) (explaining that courts may consider evidence beyond the administrative record "to facilitate our comprehension of the record or the agency's decision" or "when we are faced with a 'failure to explain administrative action as to frustrate effective judicial review'") (citation omitted).

35. DHS's position under Secretary Noem is that it has the legal authority to subject CHNV parolees to expedited removal as "arriving aliens," and no matter how long they have been in the United States. *See, e.g.*, Doc. No. 89 at 12 n.4.

**Defendants' Response: Admit.**

36. On or about June 12, 2025, DHS stated it would email CHNV parolees (whom DHS referred to as "illegal aliens") to notify them that "both their parole is terminated, and their parole-based employment authorization is revoked—effective immediately." Doc. No. 128-20.

**Defendants' Response: Admit.**

| | |
|---|---|
| Dated: July 18, 2025 | Respectfully submitted, |
| | */s/ Justin B. Cox* |
| Esther H. Sung (*pro hac vice*) | Justin B. Cox (*pro hac vice*) |
| Karen C. Tumlin (*pro hac vice*) | **LAW OFFICE OF JUSTIN B. COX** |
| Hillary Li (*pro hac vice*) | *JAC Cooperating Attorney* |
| Laura Flores-Perilla (*pro hac vice*) | PO Box 1106 |
| Brandon Galli-Graves (*pro hac vice*) | Hood River, OR 97031 |
| **JUSTICE ACTION CENTER** | (541) 716-1818 |
| P.O. Box 27280 | justin@jcoxconsulting.org |
| Los Angeles, CA 90027 | |
| Telephone: (323) 450-7272 | John A. Freedman (BBO#629778) |
| esther.sung@justiceactioncenter.org | Laura Shores (*pro hac vice*) |
| karen.tumlin@justiceactioncenter.org | **ARNOLD & PORTER KAYE SCHOLER LLP** |
| hillary.li@justiceactioncenter.org | 601 Massachusetts Ave, NW |
| laura.flores-perilla@justiceactioncenter.org | Washington, D.C. 20001-3743 |
| brandon.galli-graves@justiceactioncenter.org | Telephone: (202) 942-5316 |
| | john.freedman@arnoldporter.com |
| | laura.shores@arnoldporter.com |
| Anwen Hughes (*pro hac vice*) | katie.weng@arnoldporter.com |
| Inyoung Hwang (*pro hac vice*) | |
| **HUMAN RIGHTS FIRST** | H. Tiffany Jang (BBO#691380) |

19

| | |
|---|---|
| 75 Broad St., 31st Fl.<br>New York, NY 10004<br>Telephone: (212) 845-5244<br>HughesA@humanrightsfirst.org<br><br>Robert Stout (*pro hac vice*)<br>Sarah Elnahal (*pro hac vice*)<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>250 West 55th Street<br>New York, NY 10019-9710<br>Telephone: (212) 836-8000<br>rob.stout@arnoldporter.com<br>sarah.elnahal@arnoldporter.com | **ARNOLD & PORTER KAYE SCHOLER LLP**<br>200 Clarendon Street, Fl. 53<br>Boston, MA 02116<br>Telephone: (617) 351-8053<br>tiffany.jang@arnoldporter.com<br><br>Daniel B. Asimow (*pro hac vice*)<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>Three Embarcadero Center<br>10th Floor<br>San Francisco, CA 94111-4024<br>Telephone: (415) 471-3142<br>daniel.asimow@arnoldporter.com |

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Justin B. Cox, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: July 18, 2025

                                                                     */s/ Justin B. Cox*
                                                                      Justin B. Cox