# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

SVITLANA DOE, et al.,

     Plaintiffs,

   *v.*

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, et al.,

     Defendants.

Civil Action No.: 1:25-cv-10495-IT

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE MASS TRUNCATION OF CHNV PAROLE

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................1

I.      DEFENDANTS' "THRESHOLD" ARGUMENTS ARE MERITLESS............................1

II.     SECRETARY NOEM'S DECISION TO MASS TRUNCATE CHNV PAROLE &
        EMPLOYMENT AUTHORIZATION WAS ARBITRARY & CAPRICIOUS..................4

        **A.**    Secretary Noem's Cursory Reference To "Humanitarian Reasons" Does
                  Not Constitute Reasoned Explanation & Confirms She Ignored a
                  Required Statutory Factor & an Important Aspect of The Problem. ......................4

        **B.**    Secretary Noem's Consideration Of Reliance Interests Was Inadequate,
                  Illogical, And Legally Erroneous. ............................................................8

III.    SECRETARY NOEM ACTED *ULTRA VIRES* & CONTRARY TO STATUTE .............12

IV.     SECRETARY NOEM'S NOTICE TO CLASS MEMBERS WAS CONTRARY TO LAW
        AND ARBITRARY & CAPRICIOUS ...............................................................16

V.      THE COURT SHOULD NOT LIMIT OR STAY RELIEF ...............................................19

CONCLUSION......................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Biden v. Nebraska,*
    600 U.S. 477 (2023).................................................................................2

*Bouarfa v. Mayorkas,*
    604 U.S. 6 (2024)...................................................................................2

*California v. U.S. Dep't of Educ.,*
    132 F.4th 92 (1st Cir. 2025)....................................................................3

*Chafin v. Chafin,*
    568 U.S. 165 (2013)................................................................................3

*City of Taunton, Mass. v. U.S. Env't Prot. Agency,*
    895 F.3d 120 (1st Cir. 2018)..................................................................13

*Dep't of Com. v. New York,*
    588 U.S. 752 (2019)..............................................................................12

*DHS v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020)........................................................................ *passim*

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016)................................................................5, 9, 10, 11

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009).................................................................9, 10, 11

*Grace v. Barr,*
    965 F.3d 883 (D.C. Cir. 2020) ................................................................7

*Guerrero-Lasprilla v. Barr,*
    589 U.S. 221 (2020)................................................................................3

*Kucana v. Holder,*
    558 U.S. 233 (2010).........................................................................2, 3, 8

*Lovgren v. Locke,*
    701 F.3d 5 (1st Cir. 2012).....................................................................13

*Mantena v. Johnson,*
    809 F.3d 721 (2d Cir. 2015)....................................................................3

*Mata Velasquez v. Kurzdorfer*,
    No. 25-CV-493-LJV, 2025 WL 1953796 (W.D.N.Y. July 16, 2025) ....................3, 6, 15, 18

*Merrill v. Milligan*,
    142 S. Ct. 879 (2022) ...........................................................................................19

*Michigan v. EPA*,
    576 U.S. 743 (2015) ...............................................................................................8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...........................................................................................6, 7, 18

*New York v. McMahon*,
    ___ F. Supp. 3d ___, No. 25-10601-MJJ, 2025 WL 1463009 (D. Mass.
    May 22, 2025) .........................................................................................................8

*New York v. U.S. Dep't of Com.*,
    351 F. Supp. 3d 502 (S.D.N.Y. 2019) ................................................................12

*Nw. Immigrant Rts. Project v. USCIS*,
    496 F. Supp. 3d 31 (D.D.C. 2020) .......................................................................8

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ...........................................................................................9, 10

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) ...............................................................................................5

*Smiley v. Citibank (S. Dakota), N.A.*,
    517 U.S. 735 (1996) .............................................................................................10

*Soltane v. U.S. Dep't of Justice*,
    381 F.3d 143 (3d Cir. 2004) (Alito, J.) .............................................................2, 3

*United States ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) .............................................................................................17

*Y-Z-L-H v. Bostock*,
    No. 3:25-CV-965-SI, 2025 WL 1898025 (D. Or. July 9, 2025) ...........................15

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ...............................................................................................4

## **Statutes**

5 U.S.C.
    § 701(a)(2) .........................................................................................................3, 4

8 U.S.C.
    § 1182(d)(5)(A) ............................................................................................. *passim*
    § 1252(a)(2)(B)(ii) ...............................................................................................2, 3

42 U.S.C. § 1981 ........................................................................................................11

Civil Rights Act of 1964 Title VI ..............................................................................11

Fair Labor Standards Act ............................................................................................10

## **Other Authorities**

8 C.F.R.
    § 103.2(b)(19)(ii)(B) ...................................................................................16, 17, 18
    § 212.5(e)(2)(i) ...........................................................................................7, 16, 17
    § 274a.14(b)(2) ...................................................................................................16

Form I-134A *Available at*
    https://www.uscis.gov/sites/default/files/document/forms/i-134a.pdf ...................14

## INTRODUCTION

Defendants' Opposition, Doc. No. 140, and their response to the Statement of Undisputed Facts ("SUF")[1] confirm that Secretary Noem did not take seriously her responsibilities to ensure that her exercise of authority was lawful, reasonable, and reasonably explained. Instead, she blew past specific procedural constraints on her authority imposed by statute and regulation, ignored most of what was relevant to her unprecedented decisions, gave a legally erroneous reason for cutting short every class member's parole that Defendants argue did no work anyway (i.e., was specious), and speculated that maybe class members did not comply with their obligation to keep DHS apprised of address changes to justify not mailing them the regulatorily required written notice. Unsurprisingly, Defendants continue to focus on their argument that this Court has no authority to review Secretary Noem's decision to pull the rug out from under hundreds of thousands of law-abiding people, no matter how unlawful it is. Defendants are wrong on that, too. Plaintiffs respectfully request that this Court vacate the mass truncation of class members' parole and employment authorization.

## I.    DEFENDANTS' "THRESHOLD" ARGUMENTS ARE MERITLESS

None of Defendants' three "threshold" arguments has merit. Doc. No. 140 at 4-6. First, Defendants claim Plaintiff Haitian Bridge Alliance and the sponsor Plaintiffs lack standing.[2] Doc. No. 140 at 4. Defendants are wrong for the reasons Plaintiffs have previously explained. Doc. No. 72 at 7-9; Doc. No. 104 at 53-57; Doc. No. 125 at 3-8. The Court has already held in the context

---

[1] Subsequent citations herein to the SUF are to the version filed with this Reply, Doc. No. 153.

[2] Defendants also claim that Carlos Doe's claims are moot, Doc. No. 140 at 4, but make no attempt to carry their burden of proving that the Court can no longer order anything that would address his injuries that Defendants caused. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("a case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'") (citation omitted).

of the Second Stay Order that sponsors of family members in the United States have standing, Doc. No. 107 at 25, and that conclusion likewise applies to the Plaintiffs Gabriela Doe (Doc. No. 64-6), Norma Lorena Dus (Doc. No. 71-2), and Wilhen Pierre Victor (Doc. No. 24-11). Regardless, the Court need not even address the issue given that Defendants do not contest the standing of the class representative Plaintiffs, which is sufficient to satisfy Article III's case-or-controversy requirement. *Biden v. Nebraska*, 600 U.S. 477, 489 (2023); Doc. No. 97 at 17.

Defendants next renew their argument that this Court twice previously properly rejected, Doc. No. 97 at 20-25; Doc. No. 107 at 26-28, that the Court's jurisdiction has been stripped by 8 U.S.C. § 1252(a)(2)(B)(ii) because, they claim, Congress has made all parole-related agency action categorically immune from review. *See* Doc. No. 140 at 4-5. Defendants dramatically exaggerate the scope of § 1252(a)(2)(B)(ii), ignoring that "[a] statute affecting federal jurisdiction must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes." *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (internal quotation marks omitted); *accord Bouarfa v. Mayorkas*, 604 U.S. 6, 10-11 (2024) ("[I]n the immigration realm, properly identifying the mandatory or discretionary nature of a particular agency decision can be critical, precisely because that status has implications for whether the agency's decision can be challenged in court."). Section 1252(a)(2)(B)(ii) only deprives courts of jurisdiction to review a decision of the Secretary "the authority for which is specified . . . to be in [her] discretion." The parole statute makes discretionary the Secretary's "opinion" that the "purposes" of someone's parole "have been served," 8 U.S.C. § 1182(d)(5)(A), but Plaintiffs do not ask this Court to review that opinion. Nothing in § 1252(a)(2)(B)(ii) strips jurisdiction to review whether Secretary Noem's exercise of the parole authority complied with the substantive and procedural limits and requirements that Congress imposed thereon. *See Soltane v. U.S. Dep't of Justice*, 381 F.3d 143, 146 (3d Cir. 2004)

(Alito, J.) ("The key to § 125[2](a)(2)(B)(ii) lies in its requirement that the discretion giving rise to the jurisdictional bar must be 'specified' by statute."); *see also Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025) (§ 1252(a)(2)(B)(ii) inapplicable to procedural claims regarding parole revocation because "even when a 'statute strips jurisdiction over a substantive discretionary decision, [it] does not strip jurisdiction over procedural challenges.'" (quoting *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015) (alteration in original)). Nor does 8 U.S.C. § 1252(a)(2)(B)(ii) affect this Court's jurisdiction to consider Secretary Noem's violations of DHS's own regulations, as *Kucana* unanimously held. 558 U.S. at 244-53. Moreover, even were the statute "reasonably susceptible to divergent interpretation," this Court must "'adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (quoting *Kucana*, 558 U.S. at 251).[3]

   Defendants' third threshold argument—that review under the Administrative Procedure Act ("APA") is foreclosed by 5 U.S.C. § 701(a)(2)—has also twice been properly rejected by this Court. Doc. No. 97 at 25; Doc. No. 107 at 28-29. While Defendants assert there is no "meaningful judicial standard [to] review" the Secretary's "opinion," Doc. No. 140 at 6, Plaintiffs do not seek review of the Secretary's opinion. Instead, Plaintiffs challenge her compliance with regulatory and statutory limits that "cabin [her] discretion" and provide ample law to apply. *California v. U.S.*

---

[3] *See also Soltane*, 381 F.3d at 147-48 (Alito, J.) ("[T]he question of whether discretionary authority has been specified by statute should be considered by examining the statute as a whole. But we do not think . . . that the use of marginally ambiguous statutory language, without more, is adequate to 'specific[y]' that a particular action is within the Attorney General's discretion for the purposes of § 1252(a)(2)(B)(ii). Of course, in a sense, an agency generally has 'discretion' under *Chevron* to interpret ambiguous language used in a statute it administers. But if that sort of ubiquitous 'discretion' were sufficient by itself to satisfy § 1252(a)(2)(B)(ii), the effects of that jurisdictional bar would be sweeping indeed. We do not believe that Congress intended such a result.") (second alteration in original).

*Dep't of Educ.*, 132 F.4th 92, 97-98 (1st Cir. 2025). Plaintiffs also seek review of the extent of her authority, which likewise "is not a matter of discretion," *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Section 701(a)(2) is inapplicable.

## II. SECRETARY NOEM'S DECISION TO MASS TRUNCATE CHNV PAROLE & EMPLOYMENT AUTHORIZATION WAS ARBITRARY & CAPRICIOUS

Defendants' attempts to defend Secretary Noem's decision to cut short every class member's parole and employment authorization demonstrate that she fell well short of the APA's basic procedural requirements.

### A. Secretary Noem's Cursory Reference To "Humanitarian Reasons" Does Not Constitute Reasoned Explanation & Confirms She Ignored a Required Statutory Factor & an Important Aspect of The Problem.

1. Defendants' brief confirms that Secretary Noem's entire explanation for her conclusion that the CHNV parole processes generally are no longer justified by urgent humanitarian considerations is contained in the single sentence block-quoted at Doc. No. 129 at 6-7. *See* Doc. No. 140 at 6-7. Notably, however, Defendants make no attempt to explain what Secretary Noem meant in saying "that consideration of any urgent humanitarian reasons for granting parole is best addressed on a case-by-case basis consistent with the statute." 90 Fed. Reg. at 13612. Defendants cannot identify any daylight between her stated view on how to best address urgent humanitarian reasons for granting parole and that of Secretary Mayorkas that Defendants argue that she was reversing.[4] Doc. No. 140 at 6-9. From Secretary Noem's single sentence, one

---

[4] Plaintiffs previously posited that this explanation is only cogent if one assumes that Secretary Noem is implicitly asserting that the CHNV parole processes were *not* case-by-case and/or unlawful (for not being case-by-case). Doc. No. 72 at 17-18. But Defendants disclaimed (to this Court anyway) Secretary Noem's decision being based on the legality of the processes under the parole statute. Doc. No. 89 at 15 (rejecting "Plaintiffs' false construction of DHS's rationale" in "the FRN, which nowhere asserts that the CHNV programs or grants of parole are being terminated because DHS believes them to violate the parole statute"); *but see* Doc. No. at 129 at 2-3. Likewise,

cannot even tell if the agency *has* changed its position. Doc. No. 129 at 8-9. Secretary Noem did say she was changing position; rather, she just referenced "previous arguments or determinations that [the CHNV parole processes] were consistent with [the parole statute]," and then states that "DHS believes" that urgent humanitarian considerations are "best addressed on a case-by-case basis consistent with the statute," without ever saying whether she agreed or disagreed with those "previous arguments or determinations." 90 Fed Reg. at 13612. Where, as here, one must "guess at the theory underlying" the agency acted, *SEC v. Chenery Corp.*, 332 U.S. 194, 197 (1947), the agency has failed the most basic of its explanatory obligations under the APA, which amply justifies vacatur. *Id.*; *see also Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016) ("the agency must at least display awareness that it is changing position and show that there are good reasons for the new policy") (internal quotation marks omitted); Doc. No. 129 at 8-9.

2.    Even if her one-sentence explanation had been intelligible and substantively reasonable, Secretary Noem's decision was still arbitrary and capricious due to her failure to sufficiently consider the relevant factors—most notably, the humanitarian bases and impacts of her decision. Defendants assert baldly, for example, that Secretary Noem addressed the country conditions that Secretary Mayorkas extensively discussed in establishing the processes, but their lone citation is to the same one sentence discussed above. Doc. No. 140 at 7; *see also* SUF ¶ 29. Similarly, Defendants neither address nor have any basis to deny that Secretary Noem failed to consider the administrative records that were before DHS when each of the four CHNV parole processes were created. SUF ¶ 26.

Defendants likewise contend Secretary Noem "extensively considered" alternatives, Doc.

---

Secretary Noem herself acknowledged that requests for parole through the CHNV processes were case-by-case, 90 Fed. Reg. at 13611, and again in opposing summary judgment, SUF ¶¶ 24-25.

No. 140 at 11, yet acknowledge she only considered two (a longer than 30-day winddown or letting the grants of parole expire naturally). *Compare* Doc. No. 140 at 11 *with* Doc. No. 129 at 11-12. "To be clear, DHS was not required . . . . to explore 'every alternative device and thought conceivable by the mind of man.'" *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 33 (2020). "But *State Farm* teaches that when an agency rescinds a prior policy its reasoned analysis must consider the 'alternative[s]' that are 'within the ambit of the existing [policy].'" *Id.* at 30 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 54 (1983) (alterations in original)). Here, one obvious alternative would have been not ending parole and work authorizations of parolees who had adjustment of status or other benefit applications pending. Defendants do not contest that this alternative was "within the ambit," nor could they given that parolees were told they could pursue such relief once here.[5] SUF ¶ 9.

Defendants also fail to address that Secretary Noem did not consider (and assembled no record to consider) the specific bases on which each class member was granted parole on a case-by-case basis, *compare* Doc. No. 129 at 15-16, *with* Doc. No. 140 at 5, 16, and thus cannot explain how it reflected reasoned decisionmaking. Instead, Defendants conflate the purposes of the CHNV parole processes generally with the individual bases on which class members were granted parole on a case-by-case basis, asserting that whatever Secretary Noem said about the former suffices for

---

[5] Defendants continue to suggest that parolees with pending claims for asylum are not prejudiced by Secretary Noem's failure to consider this alternative because removal proceedings "provide a prompt way to consider an alien's claim for asylum." Doc. No. 140 at 14 ("Plaintiffs' argument devolves to a request to string out asylum processing while remaining illegally in this country."). In addition to continuing to elide the differences between expedited and regular removal proceedings (and between either type and having one's affirmative asylum application adjudicated, which is what parolees expected), Defendants ignore the myriad other ways they are actively undermining parolees getting any other immigration relief. *See* Doc. No. 107; *Mata Velasquez*, 2025 WL 1953796, at *1 ("[W]hen Mata Velasquez came to court for a scheduled appearance in his asylum case in May of this year, he was arrested by [ICE]. He has been detained since.").

the latter. *See* Doc. No. 140 at 10-11; *see also* 90 Fed. Reg. at 13619 n.70 (Secretary Noem doing the same thing). But what Secretary Noem said about the programmatic processes did not even suffice to end those processes—and it is certainly not sufficient to terminate individual parole grants. The only other "explanation" that Defendants identify is Secretary Noem's statement "that 'neither humanitarian reasons nor public benefit warrants the continued presence of aliens paroled under the CHNV programs and the purposes of such parole therefore have been served.'"[6] Doc. No. 140 at 9-10 (quoting 90 Fed. at 13620). Defendants do not mention that this statement is just a recitation of the regulatory standard for revoking parole, 8 C.F.R. § 212.5(e)(2)(i),[7] meaning it explains nothing about the *factual* reasons for Secretary Noem's decisions, either as to the parole processes generally or any particular individual parole grant.

3.    Animating much of the Defendants' analysis is their contention that the parole statute purportedly does not have a humanitarian purpose and thus Secretary Noem can ignore the human cost of her actions. Doc. No. 140 at 9-10 (arguing as such claiming the statute "displays no entitlement to or preference for parole"). Defendants try to distinguish *Grace v. Barr*, 965 F.3d 883, 902 (D.C. Cir. 2020), on this basis, Doc. No. 140 at 9, but *Grace* also concerned a discretionary immigration benefit (asylum) and expressly rejected Defendants' suggestion that a statute can only have one purpose. More generally, it has long been clear that reasoned decisionmaking requires agencies "to look at the costs as well as the benefits" of their potential

---

[6] Tellingly, Defendants omit the beginning of that sentence, which says that the reasons for that conclusion are "set forth above," even though there are no such reasons "above."

[7] 8 C.F.R. § 212.5(e)(2)(i) ("On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.").

actions. *State Farm*, 463 U.S. at 54; *accord Michigan v. EPA*, 576 U.S. 743, 752-53 (2015) ("Agencies have long treated cost as a centrally relevant factor," and this "established administrative practice" "reflects the understanding that reasonable regulation ordinarily requires paying attention to the advantages *and* the disadvantages of agency decisions") (emphasis in original); *New York v. McMahon*, __ F. Supp. 3d __, No. 25-10601-MJJ, 2025 WL 1463009, at *27 (D. Mass. May 22, 2025); *Nw. Immigrant Rts. Project v. USCIS*, 496 F. Supp. 3d 31, 71 (D.D.C. 2020). Defendants ignore that "no law pursues its purpose at all costs." *Kucana*, 558 U.S. at 252 (citation omitted).

Finally, Defendants contend that Secretary Noem did take into account one humanitarian impact of her action—that it would cause class members to abandon pending applications for immigration relief, including those for permanent status—and that was "the intended purpose of the termination." Doc. 140 at 11-12. Defendants cite nothing—no statutory language, no case law—to support their contention that this was a "relevant" factor or that it was permissible for Secretary Noem to base her decision on that factor, which was plainly contrary to Congress's decision to make the parolees eligible for those immigration benefits. Doc. No. 140 at 6-12. Congress set eligibility requirements and created processes for noncitizens to access and receive these benefits, yet Secretary Noem apparently believes she may thwart those congressional judgments by using her coercive authority to force noncitizens to abandon their applications without them being adjudicated. Even if this type of agency action could ever be legally permissible (and it is not), it was still arbitrary and capricious for Secretary Noem to fail to explain why she believed it appropriate here.

**B.    Secretary Noem's Consideration Of Reliance Interests Was Inadequate, Illogical, And Legally Erroneous.**

1.    Defendants claim that Secretary Noem was not required to take class members'

reliance interests into account (and therefore did not have to provide a more substantial explanation than she otherwise would) because the processes were relatively short-lived and "there were no reasonable reliance interests because beneficiaries were advised both that the processes were discretionary and that their parole could be terminated at any time." Doc. No. 140 at 7-8. The Supreme Court has rejected these exact arguments. *Encino Motorcars* held that reliance interests must be considered even when the policy can be changed at the agency's discretion. 579 U.S. at 221-24 (holding that agency was required to consider that car dealerships had relied on informal agency opinion letter and handbook). And in *Regents*, the Supreme Court rejected the Trump Administration's same arguments presented here: that the short-term nature of the Deferred Action for Childhood Arrivals (DACA) program, the discretionary nature of deferred action, and a similar disclamatory warning to noncitizens that their deferred action could be terminated at any time relieved DHS from having to consider their reliance interests.[8] 591 U.S. at 30-33.

Defendants argue that because the policy in *Encino Motorcars* had been in place for decades, agencies need only consider reliance interests created by similarly long-standing policies. Doc. No. 140 at 7-8. They can cite no authority for their gloss on *Encino Motorcars*, and the Supreme Court has applied this same principle regarding reliance interests without regard to how long the policy has been in place. *See, e.g.*, *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 106 (2015) ("As we held in *Fox Television Stations*, and underscore again today, the APA requires an agency to provide more substantial justification when 'its new policy rests upon factual findings that

---

[8] *See, e.g.*, Pet'rs Reply Br., *DHS v. Regents*, No. 18-587, 2019 WL 5589031, at *16-17 (Oct. 28, 2019) ("[F]rom the outset, DACA was a temporary, discretionary policy; was granted in only two-year increments; and created no lawful status or substantive rights. Indeed, President Obama made clear that the policy represented only a 'stopgap measure,' not a 'permanent fix.' Against this backdrop, the DACA policy could not engender any legally cognizable reliance interests") (citations omitted); *see also* Pet'rs Opening Br., *DHS v. Regents*, No. 18-587, 2019 WL 3942900, at *42 (Aug. 19, 2019).

contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account. It would be arbitrary and capricious to ignore such matters.'") (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)); *Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 742 (1996) ("Sudden and unexplained change or change that does not take account of legitimate reliance on prior interpretation may be 'arbitrary, capricious [or] an abuse of discretion'") (citations omitted; alteration in original). The important question is whether the reliance interests are "serious," which can be informed by the length of time the policy has been in place (as in *Encino Motorcars*) but Defendants cite no case that holds it is required. Class members relied on the CHNV parole processes to *move to a foreign country*, fundamentally re-ordering their lives, and on the understanding that they would be able to use their time here to pursue additional immigration relief. Those reliance interests are at least as "serious" as those created by a policy under which certain car dealership employees ("service advisors") were exempt under the Fair Labor Standards Act, as in *Encino Motorcars*, or reliance on a policy on when broadcasters would be fined for profanity, as in *Fox Televisions*. Secretary Noem was therefore required to "provide *more* substantial justification" than she otherwise would, *Perez*, 575 U.S. at 106 (emphasis added), yet her explanation fails any standard for reasoned decisionmaking.

Finally, Defendants' contention that there are no "reasonable reliance interests," Doc. No. 140 at 7-8, ignores that at a minimum, class members were entitled to presume that if their parole was terminated, it would be pursuant to established legal processes and in the regular course, unlike what happened here.

2.      Defendants justify Secretary Noem's cavalier treatment of the reliance interests of third party employers, landlords, and sponsors with a claim of *caveat emptor*: if third parties employed or contracted with class members, Defendants say, "they did so at their own risk." Doc.

140 at 15. This is a *post hoc* argument; it is nowhere found in Secretary Noem's explanation. Moreover, it is wrong: in essence, Defendants suggest that all such third parties should have discriminated against class members based on their immigration status, ignoring that it would have been illegal for those third parties to do so under multiple federal statutes, including 42 U.S.C. § 1981, the Fair Housing Act, and Title VI of the Civil Rights Act of 1964, and for states and localities to do so under the Equal Protection Clause. More fundamentally, Defendants' argument proves far too much, as the same argument could have justified ignoring the reliance interests of car dealerships in *Encino Motorcars* and television stations in *Fox Television Stations*, too, who operate their businesses at their own risk, or the DREAMers and their communities in *Regents*. *But see Regents*, 591 U.S. at 31-33 (discussing variety of reliance interests the DHS Secretary failed to consider, including those of the families, employers, and schools; and how, had she considered them, "she might, for example, have considered a broader renewal period based on the need for DACA recipients to reorder their affairs . . . . [or] more accommodating termination dates for recipients caught in the middle of a time-bounded commitment, to allow them to, say, graduate from their course of study, complete their military service, or finish a medical treatment regimen").

3.     Defendants acknowledge that Secretary Noem's position is that she can subject class members to expedited removal indefinitely as "arriving aliens." SUF ¶ 35; Doc. No. 140 at 13. This was the only rationale Secretary Noem identified for overriding reliance interests and rejecting the only two alternatives that she considered—that otherwise, some parole recipients could be here longer than two years and thereby become ineligible for expedited removal. *See* Doc. No. 129 at 13 (explaining why this inconsistency justifies vacatur regardless of the extent of the Secretary's statutory authority). As this Court has noted, Defendants' position on perpetually "arriving aliens" is legally wrong and is predicated on basic errors of grammar and statutory

construction. Doc. No. 97 at 32-33. Defendants assert that the parties' "disagreement" regarding the scope of the term "arriving aliens" "only serves to underscore the reasonableness of the Secretary's rationale." Doc. No. 140 at 13. It does not: the Secretary's position is predicated on legal error and logical inconsistencies, and Defendants cannot cite any authority supporting their heads-we-win-tails-you-lose argument that, if accepted, would make a mockery of judicial review under the APA, subverting the APA's twin goals of promoting reasoned decision-making and ensuring agency accountability. *See Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019).

Most fundamentally, "[i]t is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Regents*, 591 U.S. at 20 (citation omitted). The only ground that Secretary Noem gave was based on a legal conclusion that was wrong and that, even if correct, is arbitrary and capricious due to its unexplained inconsistency with Defendants' concession that Secretary Noem's understanding of the law, actually, is that she can put class members through expedited removal no matter how long they have been here, SUF ¶ 35—which leaves no valid justification whatsoever for overriding their reliance interests and rejecting the only two alternatives she considered. Nothing her attorneys argue can make up for these deficiencies in her decisionmaking.

* * * * *

Defendants' opposition confirms that Secretary Noem committed a "veritable smorgasbord of classic, clear-cut APA violations." *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 516 (S.D.N.Y. 2019). Her decision should be vacated.

## III.    SECRETARY NOEM ACTED *ULTRA VIRES* & CONTRARY TO STATUTE

Defendants concede that Secretary Noem did not (and had no factual basis to) consider the purposes of the individual grants of parole to each class member when deciding that the purposes

of every class member's parole had been served. Doc. No. 140 at 15-16. Defendants nonetheless assert that Secretary Noem's actions were permissible, contending:

> The Secretary was under no obligation to consider the specific humanitarian concerns of each beneficiary to determine, *in her opinion*, that the purposes of CHNV parole—which had been based on categorical determinations that the statutory requirements for parole were met—had been served, and thus to terminate CHNV paroles.

Doc. No. 140 at 16 (alteration in original). In addition to being a post-hoc rationalization, Defendants' argument reflects a key flaw: Defendants (continue to) deliberately mischaracterize how the CHNV parole processes operated generally and how the class members' requests for parole were evaluated specifically.

Defendants' argument is premised on the notion that the Biden Administration made grants on a "categorical" basis. Doc. No. 140 at 1-2, 7, 16-17. That premise is false—and it must be treated as such in judicial review of Secretary Noem's actions, for at least two reasons. First, review under the APA is generally limited to the administrative record, as Defendants acknowledge.[9] SUF ¶¶ 15, 23, 34 (quoting *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012)). And here, the administrative record is unequivocal and conclusive: requests for parole through the CHNV parole processes were granted (and denied) on a case-by-case basis, with DHS's decisions based on the individual circumstances presented in each case. Indeed, Secretary Noem herself said in the FRN that the CHNV parole processes were "case-by-case," 90 Fed. Reg. at 13611, and Defendants admit the same, *see* SUF ¶¶ 24-25. Defendants are not permitted to defend Secretary Noem's actions by directly contradicting Secretary Noem's own explanation.

---

[9] There are exceptions, but none apply to this issue. *See City of Taunton, Mass. v. U.S. Env't Prot. Agency*, 895 F.3d 120, 127 (1st Cir. 2018).

Second, even assuming the Court could and should go further than Secretary Noem's own explanation in the FRN, there is no genuine dispute that individual grants of parole through the CHNV parole processes were based on case-by-case information and considerations. Each class member was granted parole after each class member's U.S.-based sponsor filed an individual application (Form I-134A[10]) on behalf of the beneficiary. 90 Fed. Reg. at 13617 n.57. That application informed potential sponsors that "A grant of parole is a discretionary determination granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit," followed by the instruction to "Please explain why a favorable exercise of discretion is merited *for this individual*." Doc. No. 128-12 at 32, CHNV-FRN-00736 (emphasis added); *see also* Ex. 21, Doc. No. 153-1 (Form I-134A for Plaintiff Ana Doe).[11] Following submission of each application, DHS personnel reviewed each application on a case-by-case basis to determine whether the eligibility criteria were met such that, if the potential beneficiary passed security and other vetting, that individual was authorized to fly to an airport in the United States to request a discretionary grant of parole. SUF ¶ 24. In reviewing those applications, DHS personnel were instructed to consider whether the application presented specified public benefits and/or humanitarian considerations, including "[r]ejoining with family," "[m]edical needs or treatment," "[s]evere economic hardship," "civil strife or political unrest," "[v]ulnerabilities of either the beneficiary or a US-based person, including the need to provide caregiving assistance." Doc. No. 128-12 at 31-32, CHNV-FRN-00735-36; *see also* 90 Fed. Reg. at 13617 (providing statistics showing 78 percent

---

[10] *Available at* https://www.uscis.gov/sites/default/files/document/forms/i-134a.pdf.

[11] In their footnote 4, Defendants assert, rather absurdly given what Plaintiffs have actually argued, that "Plaintiffs tellingly do not argue that any case-by-case consideration of a particular parolee's request for CHNV parole *required the alien* to demonstrate that urgent humanitarian reasons supported their specific request for parole." Doc. No. 140 at 17 n.4. (emphasis added). Defendants are playing with words here, by ignoring that applications were filed by the potential sponsors, rather than "the alien."

of those adjudicated were approved ("confirmed")). Each class member was then individually inspected and interviewed at the port of entry by CBP officers, who decided on a case-by-case basis whether parole of that specific individual was justified by significant public benefit and/or urgent humanitarian concerns. SUF ¶ 25. CBP regularly denied requests for parole by CHNV nationals authorized to request it at a port of entry, Doc. No. 128-6; indeed, Secretary Noem cited the logistical problems resulting from those denials as a justification for ending the CHNV processes generally, 90 Fed. Reg. at 13615; Doc. No. 129 at 8 n.9. In short, even assuming the Court could disregard what Secretary Noem said, Defendants' continued suggestion that class members were granted parole based on non-individualized circumstances is wholly contradicted by all record evidence.

The false premise of Defendants' post-hoc justification makes plain their error in statutory construction. Since each class members' parole was not granted "based on categorical determinations," Secretary Noem's *en masse* termination can't be justified on such a basis, and her insistence to the contrary exceeded her statutory authority. *See generally* Docs. 129 at 15-16; 72 at 11-12; 97 at 36-37. The parole statute does not permit Secretary Noem to decide that the "purposes" of a grant of parole "had been served" when, as Defendants concede, she did not and could not have considered what each of those purposes was. Secretary Noem's actions were thus contrary to the parole statute's requirements and in excess of statutory authority for that reason, in addition to those reasons the Court already determined. Doc. No. 97 at 36-37; *accord Y-Z-L-H v. Bostock*, No. 3:25-CV-965-SI, 2025 WL 1898025, at *7 (D. Or. July 9, 2025) (agreeing with this Court's analysis of the parole statute's case-by-case requirement in granting a habeas petition and ordering a parolee released from custody); *Mata Velasquez*, 2025 WL 1953796, at *11 (same), *11-17 (holding revocation also violated due process).

15

## IV.    SECRETARY NOEM'S NOTICE TO CLASS MEMBERS WAS CONTRARY TO LAW AND ARBITRARY & CAPRICIOUS

Secretary Noem's decision must also be vacated based on her failure to provide class members the legally required notice. Doc. No. 129 at 16-20. Notably, in their Opposition Defendants abandon their prior efforts to defend Secretary Noem's express decision in the FRN, to rely on "constructive notice" via publication in the Federal Register to comply with the regulatory requirement under 8 C.F.R. § 212.5(e)(2)(i) to provide "written notice to the [noncitizen]" to terminate that individual's parole, *compare* 90 Fed. Reg. at 13620, *and* Doc. No. 140 at 17-20, *with* Doc. No. 89 at 15-16; indeed that decision was plainly based on legal error, *see* Doc. No. 129 at 16-18. Defendants have likewise abandoned their prior contention that Secretary Noem complied with 8 C.F.R. § 274a.14(b)(2)'s requirement of notice and an opportunity to be heard before revoking employment authorization, Doc. No. 89 at 16-17; instead, they just assert that "the Secretary did not terminate any work authorizations through the Federal Register notice," Doc. No. 140 at 11. But this is counter to the Federal Register Notice's explicitly stated purpose: "to provide context and guidance to the public regarding the termination of the CHNV parole programs *and related employment authorization*." 90 Fed. Reg. at 13611 (emphasis added).

Defendants now defend Secretary Noem's compliance with 8 C.F.R. § 212.5(e)(2)(i)'s "written notice" requirement on just one basis, claiming that a different regulation, 8 C.F.R. § 103.2(b)(19)(ii)(B), "provides for electronic notice." Doc. No. 140 at 18. But Defendants do not explain how this separate regulation's provision regarding "electronic notice" can substitute, *sub silencio*, for the parole regulation's requirement of "written notice to the [noncitizen]" to terminate that individual's parole. Defendants assert that § 103.2(b)(19)(ii)(B) put parolees "on notice that decisions and notices could be sent via [their myUSCIS] account[s]." *Id.* at 19. Plaintiffs previously noted that § 103.2(b)(19)(ii)(B), by its own terms, applies "only where the individual

is represented by an 'authorized attorney.'" Doc. No. 129 at 18 (quoting the regulation). Defendants make no attempt to explain why it was permissible for Secretary Noem to rely on that regulation without regard to whether the parolees were represented; nor is there anything in the administrative record on how many CHNV parolees were represented by counsel.[12] In short, Secretary Noem's mass truncation of all class members' parole must be vacated due to her failure to adhere to agency regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-67 (1954).

Secretary Noem's decision not to provide class members written notice when cutting short their parole and employment authorization is also unsupported by any evidence, which additionally requires vacatur of her mass termination decision. Doc. No. 129 at 18-20. Defendants have confirmed that Secretary Noem's explanation for her decision not to mail written notice to parolees—"potential noncompliance with change-of-address reporting requirements," 90 Fed. Reg. at 13620—was based on pure speculation. SUF ¶¶ 32-33. Secretary Noem apparently has *no idea* whether there is *any* noncompliance with the statutory requirement—punishable through criminal prosecutions, *id.* ¶ 34—to keep DHS updated of mailing address changes. Defendants argue that "agencies can 'rely on common sense and predictive judgments within its expertise even if not explicitly backed by information in the record," Doc. No. 140 at 19 (citation omitted), but that principle has no application here: Secretary Noem did not say she was relying on common

---

[12] Even if electronic notice under 8 C.F.R. § 103.2(b)(19)(ii)(B) *could* satisfy 8 C.F.R. § 212.5(e)(2)(i)'s "written notice" requirement, Defendants have no evidence to support their factual claim that "every CHNV parolee received individualized notice of parole termination . . . via their USCIS online account." Doc. No. 140 at 18. Defendants cite for that proposition only the March 25 FRN, *id.*, which says only that DHS intended to send notices sometime in the future. 90 Fed. Reg. at 13620. In fact, the only evidence in the record about Defendants' ability to reliably send parolees electronic notices is that Defendants are exceedingly bad at it. *See* Doc. Nos. 83-1, 95.

sense or any predictive judgments (much less one within her expertise). Instead, she justified her decision on the mere *possibility* that parolees had not kept their mailing address updated with DHS, notwithstanding the criminal penalties for failing to do so and that approximately half of class members had applications pending with DHS for other relief. Doc. No. 129 at 19-20; SUF ¶ 8. Secretary Noem's justification was speculative and unsupported by evidence and so must be vacated. 5 U.S.C. § 706.

Secretary Noem's decision also must be vacated as arbitrary and capricious in light of its internal and logical inconsistencies and her failure to consider the obvious alternative of mailing written notices in addition to her chosen notification methods. Doc. 129 at 19-20. Defendants do not dispute that this option was "within the ambit" and so Secretary Noem was required to consider it. *Regents*, 591 U.S. at 30 (citation omitted). Defendants' response is to repeat Secretary Noem's speculation about "potential noncompliance" and their false contention that electronic notice to terminate class members' parole was authorized by 8 C.F.R. § 103.2(b)(19)(ii)(B), both addressed above, and further speculation to suggest that class members were not prejudiced by Secretary Noem failing to provide written notice. Doc. No. 140 at 19-20. As Plaintiffs have explained, class members were (and remain) under a legal obligation to keep the government updated on their mailing address—and *only* their mailing address—and no other form of service (other than personal service) is contemplated by that statutory scheme. Doc. No. 129 at 16-17. Secretary Noem's failure even to consider mailing written notices means that there are undoubtedly class members who are not aware that DHS no longer considers them lawfully present or authorized to work.[13] Secretary Noem herself acknowledged this likelihood. 90 Fed. Reg. at 13620 (stating that

---

[13] *Mata Velasquez*, 2025 WL 1953796, at *10 ("Mata Velasquez was arrested and detained before he was given any notice that his parole was revoked"); *id.* at *10 n.8 (holding that publication in the Federal Register does not comply with the regulatory requirement to revoke parole).

her notice would have legal consequences "regardless of actual knowledge or hardship resulting from ignorance"). Secretary Noem's failure to consider also using the method of service most calculated to provide *actual* notice was arbitrary and capricious, *State Farm*, and a violation of due process as well.

## V.    THE COURT SHOULD NOT LIMIT OR STAY RELIEF

The Court should reject Defendants' request to grant less relief than is provided by statute, 5 U.S.C. § 706(2). Doc. No. 140 at 20. Defendants' claim that the Supreme Court "stayed nearly identical relief pending appeal," *id.*, but that is not true. The Supreme Court considered only this Court's preliminary stay decision, based on the arguments and record available at that time and under significant time pressure, that Plaintiffs were likely to succeed on the merits of two discrete claims. Here, on the other hand, Plaintiffs seek partial vacatur based on all of their claims—most of which no court has yet considered—and upon "the whole record," 5 U.S.C. § 706, which was not available previously.[14] What is more, the Supreme Court itself chose not to provide any reasoning and its decision is not precedential (and would not have been even had the Court provided reasoning), *see, e.g.*, *Merrill v. Milligan*, 142 S. Ct. 879 (mem.) (2022) (Kavanaugh, J., concurring) (a "stay order is not a ruling on the merits")—which further undermine Defendants' suggestion that this Court should defer to it, as does Defendants unwillingness to repeat to any other court what they argued to the Supreme Court in obtaining the "emergency" stay. *See* Pls.' Br. on Appeal at 39 n.22; Defs.' Reply Br. on Appeal at 16 n.5; Doc. No. 129 at 2-3.

The Court should likewise decline to Defendants' conclusory suggestion that Justice Alito's

---

[14] Defendants have argued to the First Circuit that this Court erred in considering Plaintiffs' likelihood of success without first requiring Defendants to produce the administrative record, Defs.' Opening Br. on Appeal at 39 & n.3, even though they agreed to proceed without the administrative record, Doc. No. 55 at 4.

concurring opinion in *Trump v. CASA*—which concerned nationwide equitable injunctions in the absence of a certified class—provides any reason to revisit certification of the Early Revocation Sub-Class. Doc. No. 140 at 20. Defendants have yet to identify any error in this Court's class certification order, Doc. No. 98, the appeal of which they abandoned by not raising any issue related to class certification in their opening brief on appeal. *See* Defs.' Opening Br. on Appeal at 7-8 (Statement of the Issues).

Finally, the Court should deny Defendants' unsupported request to stay relief so that they can seek a stay of it pending appeal. Doc. No. 140 at 20. Depending on timing, vacatur would provide relief to hundreds of thousands of class members whom Defendants acknowledge they are trying to force out of the country without regard to established legal processes. Doc. No. 128-4 (showing that more than 345,000 class members were granted parole that was set to expire after July 2025). Vacatur means a great deal to class members and their families; if nothing else, it gives them the time and dignity of arranging their own exits, and with less risk of ending up in one of the far-flung places where DHS is currently detaining immigrants.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for partial summary judgment on Claims 1, 3, 5, 6, and 7, and vacate that part of the FRN that cut short class members' parole and related employment authorization, which Secretary Noem deemed severable, 90 Fed. Reg. at 13620, and which would benefit hundreds of thousands of people who did everything the federal government asked them to do and are in the country legally but nonetheless have been dehumanized and instrumentalized for political gain. Plaintiffs stand ready to submit expeditiously any further briefing or oral argument that would be helpful.

Dated: July 18, 2025

Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (*pro hac vice*)
Hillary Li (*pro hac vice*)
Laura Flores-Perilla (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org


Anwen Hughes (*pro hac vice*)
Inyoung Hwang (*pro hac vice*)
**HUMAN RIGHTS FIRST**
75 Broad St., 31st Fl.
New York, NY 10004
Telephone: (212) 845-5244
HughesA@humanrightsfirst.org

Robert Stout (*pro hac vice*)
Sarah Elnahal (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
rob.stout@arnoldporter.com
sarah.elnahal@arnoldporter.com

Respectfully submitted,

*/s/ Justin B. Cox*
Justin B. Cox (*pro hac vice*)
**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com
katie.weng@arnoldporter.com

H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, Fl. 53
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com

Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com


*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Justin B. Cox, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: July 18, 2025

> */s/ Justin B. Cox*
> Justin B. Cox