UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, et al.,<br><br>                      *Plaintiffs*,<br><br>    v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, et al.,<br><br>                      *Defendants*. | C.A. No: 1:25-cv-10495-IT |

**CORRECTED[1] MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
SUPPLEMENTAL MOTION FOR AN ORDER TO SHOW CAUSE AND FOR
ADDITIONAL RELIEF**

---

[1] This Memorandum is being refiled on September 16, 2025 in response to the clerk's request on September 15, 2025 that it be refiled with a Table of Contents and a Table of Authorities.

Table of Contents

Page

I. BACKGROUND ................................................................................................................. 2

    A. Procedural Background .......................................................................................... 2

    B. The Diversity Visa ................................................................................................. 4

II. ARGUMENT ....................................................................................................................... 5

III. CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Mohamed v. Pompeo*,
  2019 WL 4734927 (E.D. Cal. Sept. 27, 2019) ............................................................................5

*P.K. v. Tillerson*,
  302 F. Supp. 3d 1 (D.D.C. 2017) ........................................................................................4, 5

**Statutes**

8 U.S.C. § 1151(e) ..........................................................................................................................4

8 U.S.C. § 1153(c) .....................................................................................................................4, 5

8 U.S.C. § 1153(e)(2) .................................................................................................................4, 5

8 U.S.C. § 1154(a)(1)(I)(ii)(II) ........................................................................................................5

INA ..................................................................................................................................................4

INA 212(a) ......................................................................................................................................4

INA 221(g) ......................................................................................................................................4

**Other Authorities**

22 C.F.R. § 40.6 ..............................................................................................................................5

22 C.F.R. § 42.33 ............................................................................................................................4

9 FAM 502.6-4 ................................................................................................................................5

L.R. 7.1 ............................................................................................................................................8

Plaintiffs submit this Memorandum in Support of their Supplemental Motion for an Order to Show Cause addressing the Defendants' failure to resume adjudication of diversity visa applications pursuant to 8 U.S.C. § 1151(e) in accordance with the Court's May 28, 2025 Orders (Doc. Nos. 107 and 108). In the Orders, the Court stayed Defendants' suspension of the processing of applications for parole, re-parole, and immigration status or benefits and required Defendants to resume the processing of applications for parole, re-parole, and immigration status or benefits filed by individuals who received parole pursuant to certain categorical parole programs, and certified relevant classes. Those Orders cover diversity visa applications filed by individuals who received parole pursuant to certain categorical parole programs.

Since the Court issued its Orders ***over a month ago***, the diversity visa applications of multiple class members remain effectively suspended, as evidenced by ***Defendants' own public admission*** on July 16, 2025 as well as accounts from multiple class members submitted herewith which indicate that Defendants have not taken meaningful action with respect to diversity visa applications in accordance with the Court's Orders. *See* Declarations of Aleksandra Doe, Class Member, and Emily Martin (Doc. Nos. 151-1, 151-4, 151-5). Declarations submitted by Defendants (Doc. Nos. 120-1, 124-1, 132-1, 139-1) in response to Plaintiffs' Motion for Order to Show Cause (Doc. No. 116) and Reply (Doc. No. 137) also indicate that Defendants have not taken meaningful action to effectuate the Court's May 28, 2025 Order (Doc. No 107). Those declarations also state that Defendants have, in fact, taken steps to implement additional screening and vetting of certain parolee applications for immigration benefits as called for by the Davidson Memorandum—which was stayed by this Court in its May 28, 2025 Order. *See id.*

Because current diversity visas lottery winners must complete the adjudicative process in time for their visa to be issued on or before September 30, 2025, class members who have won the

1

diversity visa lottery but have not yet had their application processed are at imminent risk of losing their eligibility for this once-in-a-lifetime opportunity. Plaintiffs therefore respectfully request that the Court issue a supplemental order directing the Defendants to show cause as to why their failure to adjudicate diversity visa applications does not constitute a violation of the May 28 Order (Doc. No. 107), and to provide details on the steps that have been taken to comply with it. Plaintiffs also respectfully request that the Court schedule a status conference to discuss, among other things, compliance with the Court's May 28 Order.

I.     BACKGROUND

    A.     **Procedural Background**

Much of the procedural history relevant to this Supplemental Motion for Order to Show Cause and for Additional Relief has already been summarized in Plaintiffs' first Motion for Order to Show Cause (Doc. No. 118 at 1-2) and Reply in Support of Plaintiffs' Motion for Order to Show Cause (Doc. No. 137 at 2-4). Summarized below are key points from the declarations of USCIS Acting Deputy Director Kika Scott (Doc. Nos. 120-1, 124-1, 132-1, 139-1) submitted by Defendants in response to Plaintiffs' Motion for Order to Show Cause (Doc. No. 118) that, along with Exhibits 1-10 (Doc. Nos. 151-1 - 10) submitted herewith, provide evidence of Defendants' ongoing failure to meaningfully effectuate the Court's May 28 Order (Doc. No. 107), particularly with respect to diversity visa lottery winners.

    1. On June 9, 2025, Defendants submitted a declaration indicating that adjudication of immigration benefits applications submitted by parole beneficiaries had not yet resumed, and that instead, Defendants were continuing to implement the additional vetting requirements of the February 14 Davidson Memorandum. Doc. No 120-1. The declaration stated that on that same day, June 9 – twelve days after the Court's May 28 Orders – Acting Director for USCIS Angelica Alfonso-Royals issued a memo entitled "Adjudication of Requests filed by Parolees Under

Specified Parole Programs" ("Alfonso-Royals Memo"). *Id.*; Alfonso-Royals Memo, Doc No. 136-1. While the Alfonso-Royals Memo purportedly "authorizes [USCIS] officers to adjudicate all pending benefits requests filed by aliens who are or were paroled into the United States under the U4U, CHNV, and FRP processes," it by its express terms *only* permits adjudication of those pending requests to a final agency action "*once USCIS has completed the additional vetting required for the parolee's individual request to identify any fraud, public safety, or national security concerns.*" Doc. No. 136-1 (emphasis added). The Memo explicitly conditions processing of "[a] request for re-parole or other non-parole benefit that was subject to one of the previous administrative holds" on completion of "required background checks, screening, and vetting *of the subject applicant, petitioner, or beneficiary* of the relevant immigration benefit request." *Id.* (emphasis added).

2. On June 13, 2025, Defendants submitted a second declaration further confirming that Defendants are continuing to implement the additional vetting required by the Davidson Memorandum, as adjudication of immigration benefits applications submitted by parole beneficiaries remain subject to additional vetting procedures, and implementation of the Alfonso-Royals Memo was "ongoing." Doc. No. 124-1, ¶ 5.

3. On June 20, 2025, Defendants submitted a third declaration stating again that implementation of the Alfonso-Royals Memo was still "ongoing," confirming that adjudication of applications remains paused because Defendants are continuing to implement the additional vetting requirements of the Davidson Memorandum. Doc. No. 132-1, ¶ 8. The declaration specifically stated that USCIS adjudicative directorates "have begun developing guidance necessary for adjudicating each type of benefit request" that "instructs adjudicators to resume

processing of benefit requests that were previously on hold *and on vetting procedures for cases in which fraud or national security risk indicators have been identified.*" *Id.*, ¶ 9 (emphasis added).

4. On July 1, 2025, Defendants submitted a fourth declaration stating that implementation of the additional vetting requirements of the Davidson Memorandum is "not a prerequisite to beginning adjudication," but rather, "part of the standard adjudication process" and Doc. No. 139-1, ¶ 4.

### B. The Diversity Visa

Congress determined that it is important "to promote diversity in [the] immigration system," H.R. Rep. No. 101-723, pt. 1 (1990), and amended the Immigration and Nationality Act (INA) in 1990 to annually provide 55,000 diversity immigrant visas. *See* 8 U.S.C. § 1151(e). Importantly, Congress provided that the issuance of visas to recipients once selected is mandatory: 8 U.S.C. § 1153(e)(2) states that a diversity visa "*shall* be issued to eligible qualified immigrants . . . ." (emphasis added). Selected recipients "have a right to have their visa applications processed in accordance with the INA." *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 9 (D.D.C. 2017) (citing 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA . . . the consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law.")).

To qualify for a diversity visa, a foreign national must be a citizen of a country with historically low immigration to the United States and have either a high school diploma or two years of qualifying work experience within five years of the date of application for a diversity visa. 8 U.S.C. § 1153(c)(1)-(2). Eligible applicants enter a random lottery held once each fiscal year. 8 U.S.C. § 1153(c); 22 C.F.R. § 42.33. Each year, there are far more entries than the 55,000 diversity visas made available; in 2023, for example, approximately 9.6 million qualified entries were

4

made.[2] Lottery winners complete an application process that includes a visa interview and payment of a nonrefundable fee. *See* 8 U.S.C. §§ 1153(c)(1), 1153(e)(2); 22 C.F.R. § 40.6; 9 FAM 502.6-4. A diversity visa must issue by the end of the federal government's fiscal year, September 30th—now ***less than three months away***—for the year in which the applicant has won the lottery. 8 U.S.C. § 1154(a)(1)(I)(ii)(II). Failure to obtain the visa by that date results in ***permanent loss*** of the opportunity to immigrate based upon that year's diversity visa lottery. *Id.*

The class members who are diversity visa lottery winners are being irreparably harmed by Defendants' refusal to process their diversity visa applications, and that harm will be exponentially worsened if they do not receive a diversity visa that they may presently be entitled to by September 30, 2025. Because the chances of ever winning the lottery are miniscule, an unlawful refusal to process a visa to an otherwise qualified lottery winner before the deadline plainly causes great "irreparable harm," for which there is no "adequate alternative remedy." *P.K.*, 302 F. Supp. 3d at 9-10; *see also Mohamed v. Pompeo*, 2019 WL 4734927, at *4 (E.D. Cal. Sept. 27, 2019) (similar).

## II.   ARGUMENT

Since the Court issued its May 28 Orders, numerous class members and their family members have been informed by USCIS that class members' and their families' applications for diversity visas remain unadjudicated. As examples:

- A class member and her husband applied for the diversity visa lottery on October 7, 2023, and were notified in May 2024 that her husband's application had been selected. *See* Redacted Declaration of Class Member, Doc. No. 151-4, ¶¶ 6, 9. After the class member submitted the required paperwork in March 2025 on her and her husband's behalf,

---

[2] *DV 2023 - Selected Entrants*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/immigrate/diversity-visa-program-entry/dv-2023-selected-entrants.html (last visited July 8, 2025).

Congressman Thomas Kean and senator Cory Booker separately contacted USCIS with requests to expedite the class member's husband's application due to his acute health condition. *Id.*, ¶¶ 11, 13. Both lawmakers received responses from USCIS denying the requests and stating that the application remained pending. *Id.*, ¶ 13. The class member's husband's application remains unadjudicated. *Id.*, ¶ 14.

- On July 3, 2024, class member "W," a Nicaraguan CNHV parole beneficiary, informed class counsel that he was selected for a diversity visa on May 4, 2024, and submitted an adjustment of status application based on that visa on November 24, 2024. *See* Declaration of Emily Martin, Doc. No. 151-5, ¶ 9. On December 5, 2024, class member W completed his biometrics appointment for his application. *Id.* Class member W contacted USCIS in March 2025 to obtain updates on his applications and was told that they were subject to an administrative pause due to the President's Executive Order. *Id.* Class member W called USCIS again around the middle of June 2025 to inquire about his application. *Id.* The USCIS official that W spoke with gave him a generic response and only said that he had to continue to wait. *Id.* On June 23, 2025, he contacted his Congressional representative to check the status of his application. *Id.* Class member W has not received a response, and has yet to receive any other updates on his application, which remains unadjudicated. *Id.*

- Another class member, "Z," who came to the U.S. through U4U parole with her husband and two children, was selected for the diversity visa lottery in late 2024. *See* Doc. No. 151-5, ¶ 10. They promptly filed applications to adjust status, paying fees totalling over $9,700, and submitted biometrics. *Id.* Class member Z contacted her senator's office to request that they submit a case inquiry to USCIS on her family's behalf based on humanitarian hardship relating to the war in Ukraine. *Id.* USCIS responded to this request on June 11, 2025 and

stated that Z's case is pending and they do not know when the review process for the adjustment of status will be complete. *Id.* Class member Z's applications have not progressed further and remain unadjudicated. *Id.*

- Another class member, "X," was selected for the 2025 diversity visa lottery and submitted all the necessary paperwork for adjustment of status in connection with their diversity visa by the end of February 2025. *See* Doc. No. 151-5, ¶ 12. Class member X has not received any updates since submitting the paperwork. *Id.*, ¶ 13. On June 8, 2025, class member X and her husband submitted separate requests for expedited processing of their Employment Authorization Document ("EAD") applications based on their adjustment of status applications. *Id.*, ¶ 14. They both received identical responses stating that their cases were subject to an administrative hold. *Id.* Class member X submitted additional requests for expedited processing on June 14 and June 18 and was told by USCIS that the National Benefits Center would contact her within 10 days. *Id.* Class member X was never contacted. *Id.* Finally, on June 30, class member X submitted an expedited request for her I-485 adjustment of status application. *Id.* USCIS responded to her request through email stating she did not qualify for expedited processing. *Id.*

- Another class member, "Y," submitted applications on March 1, 2025, for himself and his wife to adjust status based on his wife's selection as a diversity visa lottery winner. *See* Doc. No. 151-5, ¶ 15. They have not received any updates on their application since March 7 when they were notified by USCIS that it would reuse biometrics previously provided by class member Y and his wife. *Id.* Class member Y has contacted USCIS repeatedly to inquire about their applications but has only received generic replies that the applications

7

remain pending due to "unresolved issues." *Id.* Class member Y has also enlisted help from his congressmember's office, but the inquiries have yielded no further progress. *Id.*

- In October 2023, while her U4U parole grants were valid, Plaintiff and Class Representative Aleksandra Doe and her family (consisting of her husband and her five-year-old son) applied for the diversity visa lottery. After being selected for the program for fiscal year 2025, they completed all the necessary medical examinations, I-485 applications, and biometrics required for this process. *See* Declaration of Aleksandra Doe, Doc. No. 151-1, ¶ 5. On February 19, 2025, they were notified by USCIS that their interview, which had been scheduled for February 27, was cancelled. *See* Aleksandra Doe Notice of Interview Cancellation by USCIS, Doc. No. 24-18. USCIS did not provide a reason for the cancellation. Since the May 28 Orders, Aleksandra Doe has made numerous efforts to inquire about her case and move her applications forward. *See* Declarations of Aleksandra Doe, Doc. No. 136-5, ¶¶ 9-12, Doc. No. 151-1, ¶¶ 7-12. Recently, on July 2, Aleksandra Doe visited her local USCIS field office, to request information about her application and to schedule a new interview. *See* Doc. No. 151-1, ¶ 9. She was advised by a USCIS official to write in her request instead. *Id.* She has not received a response to the letter she mailed on July 3, which was delivered on July 7. *Id.* Further, on July 8, Aleksandra Doe contacted USCIS about her and her family's application and was notified that their application was "in processing" and they would be scheduled for an interview "when the office has an opening." *See id*, ¶ 11. The status of Aleksandra Doe's diversity visa application remained frozen for seven weeks after this Court's May 28 Order (Doc. No. 107) and did not change until Plaintiffs' counsel conferred with Defendants' counsel on July 15, 2025. *See* Parties' L.R. 7.1 Conferral Emails, Doc. No. 151-11. Shortly after

that meeting, and after Plaintiffs' counsel authorized Defendants' counsel to inquire into the status of Aleksandra Doe's diversity visa application, an interview for Aleksandra Doe's diversity visa application was almost immediately scheduled. *See id.* Notably, the status of Aleksandra Doe's diversity visa application only changed after Plaintiffs' counsel inquired into its status in relation to the Court's May 28 Order.

As recently as July 16, 2025—just ***two days ago***—Defendants ***publicly acknowledged*** that for U4U parole beneficiaries, adjudications of immigration benefit applications, such as diversity visa applications, remain on "administrative hold."[3] A spokesperson for the Department of Homeland Security stated that the administrative hold "is pending the completion of additional vetting to identify any fraud, public safety, or national security concerns."[4] Importantly, this language ***mirrors*** language in the Davidson Memorandum ***stayed by this Court*** in its May 28, 2025 Order (Doc. No. 107), which stated that USCIS would "immediately place an administrative hold on all benefit requests filed by aliens who are or were paroled into the United States under the U4U, CHNV, or FRP processes, pending the completion of the required screening and vetting in ELIS to identify any fraud, public safety, or national security concerns." *See* Doc. No. 41-3.

### III.   CONCLUSION

The four declarations submitted by Defendants (Doc. Nos. 120-1, 124-1, 132-1, 139-1), the accounts of multiple class members submitted herewith, and Defendants' own recent public statements demonstrate clearly that Defendants have failed to resume processing of diversity visa applications in accordance with the Court's May 28 Order. Defendants' most recent declaration (Doc. No. 139-1) in fact ***confirms*** that additional vetting requirements contemplated by the Davidson Memo

---

[3] *See* Jackie DeFusco, *Ukrainians Face Uncertain Future as Legal Protections in US Expire*, KCCI Des Moines (July 16, 2025, 5:47PM CDT), https://www.kcci.com/article/ukrainians-face-uncertain-future-as-legal-protections-in-us-expire/65428758.

[4] *Id.*

9

are now a standard part of application processing, contributing to persistent processing delays. The fact that these delays continue in violation of the May 28 Order as the diversity visa fiscal year deadline of September 30 fast approaches demonstrates additional irreparable harm. Class members who have won the diversity visa lottery face the possibility that they will miss a once-in-a-lifetime opportunity to attain a diversity visa and be forced to return to the life-threatening conditions from which they had no choice but to flee.

For these reasons, Plaintiffs respectfully request that the Court issue a supplemental order directing Defendants to show cause as to why the failure to take meaningful action on diversity visa applications as shown by the declarations filed herewith does not constitute a violation of this Court's May 28 Order (Doc. No. 107); to provide details on the steps that Defendants have taken to return processing of diversity visa applications to the *status quo ante* before the February 14 Davidson Memorandum was adopted; to provide, as of this date and on a going-forward basis, weekly and cumulative reporting on how many class member diversity visa lottery winner applications have been adjudicated to final agency action; and to schedule a status conference so that the parties may discuss, among other things, compliance with the Court's May 28 Order.

Dated: July 18, 2025

Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (*pro hac vice*)
Hillary Li (*pro hac vice*)
Laura Flores-Perilla (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org


Justin B. Cox (*pro hac vice*)
**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org


Anwen Hughes (*pro hac vice*)
Inyoung Hwang (*pro hac vice*)
**HUMAN RIGHTS FIRST**
75 Broad St., 31st Fl.
New York, NY 10004
Telephone: (212) 845-5244
HughesA@humanrightsfirst.org
HwangS@humanrightsfirst.org

Respectfully submitted,

/s/ John A. Freedman
John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
Katie Weng (*pro hac vice* forthcoming)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com
katie.weng@arnoldporter.com


H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
500 Boylston Street, Fl. 20
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com


Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com


Robert Stout (*pro hac vice*)
Javier Ortega Alvarez (*pro hac vice*)
Sarah Elnahal (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
rob.stout@arnoldporter.com
javier.ortega@arnoldporter.com
sarah.elnahal@arnoldporter.com

*Attorneys for Plaintiffs*

11

## **CERTIFICATE OF SERVICE**

I, John A. Freedman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: September 16, 2025

*/s/ John A. Freedman*
John A. Freedman