**Review Process**

o ***Does the lawful Status have to be the front and back of the document?***

No, the evidence can be the front of the document if it provides enough information to confirm the lawful status (example LPR card front) in other USCIS systems.

o ***Can we accept an expired US passport for Lawful Status?***

Yes, we can accept an expired US passport to evidence lawful status (a US Citizen) for the supporter.

o ***Can I render a non-confirmation decision without a QA Review?***

We are only doing a QA review on a financial non-confirmation. If you wish to non-confirm a supporter for lack of financials, please place case receipt number on the Case Tracker on the Form I- 134 Review Team – Teams Page.

However, in the following categories, a decision can be rendered without a QA Review:

- If there is no beneficiary listed on Form I-134, please issue a non-confirmation, you do not need to place that case on the spreadsheet. We have seen some "over eager" folks just wanting to help, but they must name the individual they are helping.

- If a supporter does not submit ***any*** financial evidence, issue a non-confirmation. If you do not see any tax returns, any bank accounts, any investment accounts, any financials at all, go ahead and issue a non-confirmation. There is no need to submit the case on the spreadsheet.

- If you see a supporter that has an asylum application pending, that is not considered lawful status eligibility to support. We have seen supporters submit evidence of their asylum application pending to be either an asylum application receipt or an Employment Authorization (c)(8). You can render a non-confirmation without QA review.

  o Please note that some asylum applicants may have an underlying non-immigrant visa that allows them to be in lawful status, i.e. TPS, J-1 student visa, F-1 student visa, and/or work related visa. If you have any questions, please submit them in the "Reviewer Discussion" section of the U4U – Verifications Team site.

o ***Can I render a decision if there is an open TECS Task?***

Currently ELIS has corrected the TECS glitch and is not releasing any cases into Case Review unless the TECS check has been run. However, if you have any cases with an open TECS task. Do not assign the TECS task to yourself. It will be assigned automatically to someone in FDNS for review. So, if you have a case with a result and it isn't resolved, just put it aside and wait till the TECS hit is resolved. If you see this green light banner result you can proceed:

CHNV-FRN-00701



If you see this red light banner result, please place on the tracker for further review for now:



- o ***What do I do if the supporter leaves Part 3, Question 27, Question 28, or Question 29 blank or with a negative response on whether they intend to provide financial support to the Beneficiary?***

  These questions were added to understand the intent of the supporter. If a supporter simply answers "yes" for all three questions, you can non-confirm them. However, if there is a response, you should continue processing.

- o ***What do I do if the Beneficiary does not have a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Passport and/or the Beneficiary is not Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan?***

  If you see a Beneficiary that does not have a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Passport and/or the Beneficiary is not Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan, you should render a decision for the supporter (confirmation or non-confirmation), without it going for QA review. Based upon feedback with CBP, myUSCIS has built in an attestation for the Beneficiary to explain how they may be connected to a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Beneficiary. We are not reviewing the Beneficiary data as CBP will be making that final determination.

- o ***What do I do if I see on the worksheet it says "Applicant is a USC. This case should not be approved."***

  There is a process with the CIS worksheet for US Citizens, it will say "Applicant is a USC. This case should not be approved" or that you have to issue an A number. This is a statement in ELIS and does not affect our review process. Continue to review the case as normal and do ***Not*** issue an A number for a USC.

CHNV-FRN-00702

| Card Number | | |
| --- | --- | --- |
| Card Type | | |
| Class of Admission (COA) | • No Data ✕ | • USC ✕ ❶ |
| Port of Entry (POE) | • No Data ✕ | Applicant is a United States citizen. This case should not be approved. |
| Date of Entry | • No Data ✕ | • 05/15/2019 ✕ |

s Filighera

o   ***When do I update name and DOB and what happens?***

When the document or ELIS data clearly shows a supporter made a typo in the Form I-134A application process you can update name and DOB.  This will automatically initiate another TECS check and could create a task that will hold the case from being able to be rendered.  There is a known issue with ELIS where some DOBs may be off by 1 day due to time zone issues.  You *can* update the DOB if the supporter DOB entered on the form does not match the uploaded identity document.

5.   Under the Date of Birth section for the supporter, you can add a new DOB (upper right "+ Add" button
6.   Once added, at the far-right side for the correct DOB, click on the 3 dots
7.   A drop down will appear indicating Make Primary or Make Inactive
8.   Select Make Primary and the "N" in the Primary column will change to "Y"

We understand that a new TECS check will be re-run if a new DOB is entered into ELIS.  If you have any of these, you may correct the DOB based on the document upload.

o   ***Does relationship of beneficiary to supporter matter?***

No, we have seen the relationship question filled in and we have seen the relationship question to be empty.

o   ***What does it mean if my "Case Review - Suspended," in the context of 10+ or more Beneficiaries?***

ELIS has built in automatic referral to FDNS when a supporter files more than ten (10) I-134/I-134As beneficiary applications.  This automatic referral is triggered automatically when the eleventh application is filed.  The automatic referral for 11 cases also includes any duplicate filings that a supporter may have filed.  Once a referral is made to FDNS, the case will now be listed as "Case Review - Suspended."  Until FDNS releases it or resolves it, a reviewer will be unable to review the case.

FDNS completes a case by uploading a Record of Action (ROA) for a Tier 2 review before going back to reviewers.  In some cases, the application may be "taken" over by Tier 2 reviewer and finalized.

CHNV-FRN-00703

## Financial Questions

o *When reviewing a supporter tax return do I use adjusted gross income or taxable income?*

You will want to review the supporter's Adjusted Gross Income **NOT** their taxable income.

o *What should I do if question 20 (Q-19) under Part 3 is marked "Yes"?*

When reviewing Form I-134/I-134A, if question 20 (Q19), Does any of the income listed above come from an illegal activity or source (such as proceeds from illegal gambling or illegal drug sales)? is marked "Yes", please non-confirm, and use the following comment: Non-Confirm, cannot use financial support from illegal activity or sources.

o *What is considered Federal Means-Tested benefits?*

Income from Means-Tested public benefits, as defined in 8 CFR 213a.1, is excluded from consideration in meeting at least 100% of the HHS poverty guidelines.

This includes public benefit, which is funded in whole or in part by funds provided by the Federal Government and/or State Government.  Some examples we have seen include, but are not limited to, the Federal Child Tax Credit that was administered last Summer, public assistance funds, and/or state assistance funds.

o *What should I do if question 22 (Q-21) under Part 3 is marked "Yes"?*

When reviewing Form I-134/I-134A, if question 22 (Q-21), Does any of the income listed above come from means-tested public benefits as defined in 8 CFR 213a.1? is marked "Yes", please non-confirm, and use the following comment: Non-Confirm, cannot use financial support means-tested public benefits.

o *How do I calculate household total members?*

For calculating household total members for the purposes of the Form I-134, you look to see how many dependents is first declared on the Form I-134.  If there is evidence of a Tax Filing, you also look to see how many dependents are declared on the Tax Filing.  It is possible that there is a difference between the two forms as a spouse may not be included on the Form I-134.

Under the totality of the circumstances, look to see what the lowest number of dependents and/or highest income is to better assist the supporter.  Thus, if it helps them calculate a lower number as declared on the Form I-134 and you are only using the supporter's income, then use that information.  However, if you need to pull the spouse's income then you add the spouse as a dependent for household income purposes.

o *Is a supporter required to provide tax information?*

Tax documentation is not a requirement.  However, the supporter does need to provide evidence to show enough liquid assets to exceed the poverty threshold.

CHNV-FRN-00704

**Office of Policy & Strategy**

**Immigration Records and Identity Services Directorate**

# *Form I-134A – Reviewers Guide*

(Last Revision – July 9, 2024)

CHNV-FRN-00705

Version 8.0

| Version | Date | Updated by | Description of Changes |
|---------|------|------------|------------------------|
| 1.0 | April 27, 2022 | M. Dhanjal | Issuance of Draft Reviewers Guide |
| 2.0 | October 4, 2022 | M. Dhanjal | Addition of Step by Step Guides |
| 3.0 | October 19, 2022 | M. Dhanjal | Addition of Process for Venezuelans |
| 4.0 | January 17. 2023 | M. Dhanjal | Addition of CHNV and 134A |
| 5.0 | March 28, 2023 & April 11, 2023 | M. Dhanjal, M. Paredes | Preparation of Training, merging worksheets into the Guide; corrections |
| 6.0 | August 1, 2023 | M. Dhanjal, M. Paredes | Technical Updates, addition of Text Box |
| 7.0 | August 14, 2023 | J. Rondeau | Consolidating updated guidance |
| 8.0 | September 12, 2023 | J. Rondeau | Updated guidance for cases on hold, protected warning banners, cases on hold, duplicate case review, adding Alien Number to case, rendering Administratively Closed. |
| 9.0 | October 19, 2023 | J. Rondeau | Updated guidance for Text Box responses, Cases Placed on Hold for Other Reason, Tips for Reviewing Financial Evidence, Case Tracker Primary Reasons, Added appendices for Duplicate Case Process Map and TPS Evaluation Process Map. Inserted links to referenced appendices and chapters throughout document. |
| 10.0 | March 28, 2024 | M. Paredes | Updated guidance for co-supporter, Non-confirmation comments and contact for BOLO list. |
| 11.0 | July 9, 2024 | J. Rondeau | 1099s, Hosts, Shared ELIS Accounts, Business Accounts, Questions 27-29 (28-30) |

CHNV-FRN-00706

# 1.0  Introduction

## *1.1 Background – Uniting for Ukraine*

On April 21, 2022, President Biden announced Uniting for Ukraine, a new streamlined process to provide Ukrainian citizens who have fled Russia's unprovoked war of aggression opportunities to come to the United States, fulfilling President Biden's commitment to welcome up to 100,000 Ukrainians and others fleeing Russia's aggression in response to the ongoing Russia-Ukraine crisis.

For the full press release, see Appendix I(a) – Press Release – President Biden to Announce Uniting for Ukraine, a new Streamlined Process to Welcome Ukrainians Fleeing Russia's Invasion of Ukraine, OR visit https://www.dhs.gov/news/2022/04/21/president-biden- announce-uniting-ukraine-new-streamlined-process-welcome-ukrainians.

Uniting for Ukraine will provide a safe and orderly process for displaced Ukrainians with a supporter in the United States to be considered for parole, on a case-by-case basis, for a period of up to two years. Ukrainians participating in Uniting for Ukraine must have a supporter in the United States who agrees to provide them with financial support for the duration of their stay in the United States. The process begins when the supporter files Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, 1 with U.S. Citizenship and Immigration Services (USCIS) to include information both on the supporter and the Ukrainian beneficiary. Ukrainians who meet the requirements receive authorization to travel directly to the United States and seek parole, authorized by Customs and Border Patrol (CBP), at a port of entry. If granted parole under this process, Ukrainians are eligible for employment authorization.

More information on accessing and navigating procedures will be available on the DHS website at, https://www.dhs.gov/ukraine

## *1.2 Background – Process for Venezuelans*

On October 12, 2022, the Department of Homeland Security announced joint actions with Mexico to reduce the number of people arriving at our Southwest border and create a more orderly and safe process for people fleeing the humanitarian and economic crisis in Venezuela. DHS' effort to reduce the irregular migration of Venezuelans also includes a new process to lawfully and safely bring up to 24,000 qualifying Venezuelans into the United States. 2 The United States will not implement this process without Mexico keeping in place its independent but parallel effort to accept the return of Venezuelan nationals who bypass this process and attempt to enter irregularly.
This effort is intended to enhance border security by reducing the number of Venezuelans seeking to irregularly enter the United States. It is derived from the success of the Uniting for Ukraine (U4U) program, which decreased flows at the border by creating an orderly process for the entry of Ukrainians fleeing Russia's invasion of Ukraine.

DHS will closely monitor the implementation of this process, and Mexico's independent and parallel efforts, and may consider expanding it in the future.

---

1 The electronic Form I-134 was replaced by the Form I-134A. This user guide references the I- 134A, but the information still applies to any pending I-134 cases.
2 The 24,000 cap on Venezuelan travel authorizations was changed with the announcement of the Process for Cubans, Haitians, and Nicaraguans announced in January 2023.

CHNV-FRN-00707

For the full announcement, see Appendix I(b) – Announcement – DHS Announces New Migration Enforcement Process for Venezuelans OR visit https://www.dhs.gov/news/2022/10/12/dhs-announces-new-migration-enforcement-process-venezuelans.

## 1.3 Background – Process for Cubans, Haitians, and Nicaraguans

On January 5, 2023, DHS announced the establishment of new parole processes for Cubans, Haitians, and Nicaraguans, modeled on the successful processes for Venezuelans and Ukrainians, which combine safe, orderly, and lawful pathways to the United States, including authorization to work, with significant consequences for those who fail to use those pathways.

Building upon the success of Uniting for Ukraine and the Process for Venezuelans announced in October – which combine a safe and lawful pathway with a consequence for failing to use that pathway – today's announcement establishes similar processes for Cuban, Haitian, and Nicaraguan nationals who face unique challenges in their home countries. The Venezuelan process also will continue; Border Patrol saw a dramatic drop – 90 percent – in the number of Venezuelans encountered at the border following the establishment of the program in October. Nationals from Venezuela, Cuba, Haiti, and Nicaragua who do not avail themselves of this process, attempt to enter the United States without authorization, and cannot establish a legal basis to remain will be removed or returned to Mexico, which will accept returns of 30,000 individuals per month who fail to use these new pathways. The expansion of the Venezuela process to Cuba, Haiti, and Nicaragua is contingent on the Government of Mexico's willingness to accept the return or removal of nationals from those countries. It also is responsive to a request from the Government of Mexico to provide additional legal pathways for migrants, and it advances both countries' interests in addressing the effects throughout the hemisphere of deteriorated conditions in these countries.

Specifically, these processes will provide a lawful and streamlined way for qualifying nationals of Cuba, Haiti, Nicaragua, and Venezuela to apply to come to the United States, without having to make the dangerous journey to the border. Through a fully online process, individuals can seek advance authorization to travel to the United States and be considered, on a case-by-case basis, for a temporary grant of parole for up to two years, including employment authorization, provided that they: pass rigorous biometric and biographic national security and public safety screening and vetting; have a supporter in the United States who commits to providing financial and other support; and complete vaccinations and other public health requirements. Individuals who enter the United States, Mexico, or Panama without authorization following today's announcement will generally be ineligible for these processes. These processes will allow up to 30,000 qualifying nationals per month from all four of these countries to reside legally in the United States for up to two years and to receive permission to work here, during that period.

For the full announcement, see Appendix I(c) – Announcement – DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes OR visit https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new- border-enforcement-measures-and.

## 1.4 Parole Supporter Definition and Requirements

The parole supporter is the individual who makes a financial obligation to provide support to the beneficiary while he or she is in the United States for the duration of the parole authorization period.

CHNV-FRN-00708

Generally, the supporter is a lawful permanent resident (LPR) or U.S. citizen (USC) and has sufficient income or financial resources to meet the Health and Human Services (HHS) Federal poverty guidelines. The supporter is required to submit a FormI-134A, Online Request to be a supporter and Declaration of Financial Support for each parole request to establish the adequacy of financial resources to support the parolee during his or her stay in the United States. Occasionally, a non-profit organization or medical institution may serve as a supporter on a parole application, with an individual completing the individual Form I-134A. In those instances, reviewers may accept a letter of commitment from the organization.

### 1.4.1 Lawful Status

The supporter must be in the United States under lawful status to qualify as a supporter for a beneficiary of the above-mentioned parole programs.  Additionally, they must submit evidence of lawful status with their Form I-134A package.  Here are the acceptable types of status for becoming a supporter:

- A U.S. Citizen or national,
- Lawful Permanent Resident (including lawful temporary resident and conditional permanent resident),
- nonimmigrant in lawful status (i.e., maintains the nonimmigrant status and has not violated any of the terms or conditions of the nonimmigrant status),
- asylee,
- refugee,
- parolee,
- TPS holder,
- beneficiary of deferred action (including DACA) or Deferred Enforced Departure (DED)
- or anyone else in the United States with lawful immigration status meets this requirement.

A pending application/petition with USCIS is not sufficient; however, if a pending application/petition for lawful status, or deferred action is approved (or if the supporter has been paroled into the United States) between the time the Form I-134 is filed and the time of review, then the supporter has met the lawful status requirement.

Reviewers may refer to Appendix VI – TPS Evaluation Process Map for guidance on how to determine if an individual is granted Temporary Protected Status.

See the **I-134 Status – Reference Guide – 20221102** and additional resources under the Teams I- 134A – Review Team, General Channel, in the Files Tab, for further information.

### 1.4.2 Sufficient Financial Evidence

The supporter must show evidence of sufficient financial resources according to the Health & Human Services (HHS) Poverty Guidelines to qualify as a supporter of the above-mentioned parole programs.

The number of people residing in the household plus the number of beneficiaries the supporter is petitioning for are the total number to consider when using this chart. Locate these guidelines here:

CHNV-FRN-00709

https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines.

All financial evidence, including bank accounts in the U.S. must be in English or have a translation provided in English.

Here are some acceptable forms of financial evidence a supporter may provide:

- Taxes - 2022, 2021, and/or 2020 tax filings are sufficient evidence when submitted alone
    - Form 1040 U.S. Individual Income Tax Return - Use the Adjusted Gross Income (AGI)
        - Look for number of exemptions to determine number in household
        - Form 1040 – Line 11
        - Add anything listed in Lines 2a through 6a and any refund listed on page 2, line 35a
    - State Tax Refund
        - Money due to supporter
        - Check to see if wages or AGI are listed on state tax form
    - Business Taxes
        - Schedule C Profit or Loss from Business: Line 29 – Tentative Profit or Loss
        - 1120 U.S. Corporation Income Tax Return: Line 30 – Taxable Income
        - 1120-S Income Tax Return for an S Corporation: Line 21 – Ordinary business income (loss)
            - May look for Schedule K1, Part 11, Line E to see how many shareholders will split the total profit. Divide Line 21 by this number.
    - W-2 Wage and Tax Statement – Box 1, Wages, tips other compensation:
        - Don't worry about dependents if not listed on I-134A
    - 1099s
        - Form SSA-1099, dated within 12 months of the request/application received date is valid evidence of income.
        - Exclusions – 1099-G, 1099-MISC, and 1099-NEC, by themselves, should not be considered as valid evidence of income.
    - Paystubs – Look for pattern and add up for the past year – note whether pay period is weekly/bi-weekly/monthly
- Bank Accounts
    - Statements should be dated within 3 months of date supporter submitted the I-134A
    - Personal Accounts
        - Total: Available balance may be used toward the amount needed for poverty guidelines
        - Bi-monthly or regular deposits from business account (Example: If bi- monthly, multiply amount by 24)
    - Business Accounts – If we can discern the supporter is the business owner and is using their business account's financial information, we may accept this as financial evidence. (Signer, Cardholder, Business Owner must reflect supporter's name)
    - Bank statements in a foreign language must include a translation with uploaded evidence
- Letters
    - Statements from supporter's employer – We DO NOT accept offer letters from employers for work that has not started.

CHNV-FRN-00710

- o Statements from supporter's employer should include:
  - ▪ Date and nature of employment (Form I-134 Instructions 04/25/22 Page 6 of 8)
  - ▪ Salary paid; and
  - ▪ Whether the position is temporary or permanent
- o Letter from Corporation, Church, or other organization expressing authorization for supporter to use finances for the beneficiary/beneficiaries
- o Approval letters for other benefit programs that are NOT Means-Tested (Means-Tested benefits are not acceptable income for Form I-134A)
- o Veterans Affairs Benefits
  - ▪ VA benefits are considered tax free, please see: 2023 Veterans Disability Compensation Rates | Veterans Affairs (va.gov)

**Identifying Federal Means-Tested Programs**

| Means-Tested benefit programs that do NOT count as income for Form I-134A | Benefit programs that are not Means-Tested and DO count as income for Form I-134A |
|---|---|
| Some examples include:<br><br>• Supplemental Nutrition Assistance Program (SNAP, formerly called Food Stamps)<br><br>• Temporary Assistance to Needy Families (TANF)<br><br>• Supplemental Security Income (SSI) | Some examples include:<br><br>• Unemployment benefits<br><br>• Social Security benefits<br><br>• Social Security Disability Insurance (SSDI)<br><br>• Retirement, Survivors and Disability Insurance (RSDI)<br><br>• Student financial aid/loans/grants<br><br>• Veterans Affairs (VA) benefits |

See guidance for reviewing evidence in Section 7.3 Review Financial Evidence. See additional information, including images of acceptable financial evidence in the Files Tab of the I-134A – Review Team / General Channel.

# 2.0 Case Assignment and Case Administration in ELIS and Microsoft Teams

This section provides detailed guidance regarding case assignment, workflow, and requirements related to reviewing the Form I-134A, Online Request to be a Supporter and Declaration of Financial Support.

## 2.1 Case Assignment in ELIS

At this time, staff will assign cases to themselves for review in ELIS. However, it should be noted that

CHNV-FRN-00711

cases may be assigned based on the need to be expedited and on the age of the case. Once your profile has been updated in ELIS, you will click "Get Work" to find an available case to start reviewing.



ELIS allows you to work the previous Form I-134 as well as the Form I-134A. Depending on your case assignment, you may be asked to work the Form I-134 or the Form I-134A. In addition, you may also be asked to work a specific country.

The drop down for the Form Type looks like:



When you pull a specific country, it will look like:



Once you select the correct Form Type, Country, and Location, you will select "1 case(s) to pull" from the Case Review drop-down and click on the "Get 1 Case" button to assign the case to yourself.



8

CHNV-FRN-00712

The case will look like this in your queue:



Click the Receipt Number hyperlink to open and review the case. If the supporter submitted multiple cases, ELIS automatically assigns all related and unassigned cases to you upon opening the case. You will see a banner stating "You have been assigned to x case(s) for this same supporter".



### 2.2 Resources and Case Administration

This section provides detailed guidance for adding cases to the Case Tracker, creating and maintaining folders, viewing case assignment, and unassigning a case from your queue. Additionally, it provides housekeeping tips for how to stay organized and avoid common mistakes.

#### 2.2.1 Resources in Microsoft Teams

We store all resources pertinent to reviewing I-134A in the Files Tab of the I-134A – Review Team General Channel.



- 01 – Administrative Information folder stores only administrative guidance
- 02 – Case Tracker stores only the Case Tracker (NOTE: There should only be one)
- 03 – Form I-134-134A – Training Materials stores all guidance for reviewing I-134As

I-134A Review Team Leads will post updated guidance in the General channel. You may request assistance from subject matter experts (SMEs) in your designated Teams Chat:

CHNV-FRN-00713

- USCIS Detailee Reviewers Discussion
- VER Staff Reviewer Discussion

Tips for searching previous conversations and asking questions in Teams:

- Watch for updated guidance in the General Channel (Only I-134A Review Team Leaders may post in this channel).
- Use key word in Search Bar to search for previous conversations.
- Keep conversations in the same thread and only start new conversations when you have a unique inquiry.
- Always include the receipt number.
- No need to add a screen shot, the SMES will look up your case.
- It may take 24 hours for SMEs to respond to questions.
  - Place case aside and pull another case.
  - Your case queue may get lengthy - Remain flexible and stay organized.
- If you are unsure about anything, ask your SMEs.

### 2.2.2 BOLO List and Case Tracker in Microsoft Teams

You may need to add a case to the Case Tracker for various reasons. Additionally, you will look for EVERY supporter's name on the BOLO List of Serial Supporters and FDNS Review spreadsheets. Locate these documents in Teams under the I-134 – Review Team, General Channel, in the Files Tab.

- Case Tracker is in the "02 – Case Tracker" folder.
- BOLO List of Serial Supporters and FNDS Review spreadsheet is in the "03 – Form I-134-134A – Training Materials" folder.

#### 2.2.2.1 Search Supporter on BOLO List of Serial Supporters and FDNS Review

Open the BOLO List of Serial Supporters and FDNS Review spreadsheet from Teams. We recommend you click Open in Desktop App and keep this open and easily accessible while you review cases.

**NOTE:** Do not save or make copies of this spreadsheet, as we need to rely on one accurate list for all to use.

The **FDNS** tab displays supporters who have been flagged by FDNS for various reasons. The **SS** Tab displays names of confirmed serial supporters. If a supporter's name appears on either of these lists, you must stop processing, and place the case in a folder.

- If your case has a red banner attached, follow the guidance under 3.2 Review Banners.
- If the case does not have a banner, add the case to the Case Tracker following guidance in the next section.

#### 2.2.2.2 Add Case to Case Tracker in Teams

When you open the Case Tracker, select Open in Browser or Open in Desktop App so you can keep the tracker open and easily accessible while reviewing cases.  Reviewers should add each related case individually.  Subject matter experts (SMEs) from the I-134A Review Team review cases placed on this tracker and will pull each case from the initial reviewer's  queue when they are ready to review.

When adding cases to the Case Tracker, reviewers must include:

CHNV-FRN-00714

- Primary Reason
- Date
- Receipt Number
- Reviewer's name
- Brief comments to include the total number of beneficiaries + household members

Primary Reason options may change as deemed necessary.  Currently, these are the Primary Reasons reviewers may choose from when adding cases to the Case Tracker:

- FDNS Hold
- Financial
- Possible Serial Supporter 11+
- Red TECS Banner
- RFE Needed
- ROA
- Text Box

### *2.3 Create and Manage Folders in ELIS*

Using folders is essential for grouping and organizing cases in your assigned queue. Click the settings wheel to open Manage My Folders, where you may create up to 10 folders and edit folder names at any time. The number to the right of the folder name tells you how many cases you have in that folder.



### *2.4 View Case Assignment and Unassign Case in ELIS*

You may need to see who a related case is assigned to and communicate with that reviewer for various reasons. If you need to view the owner of a case, click the Case (receipt) number to the left of the Open Evidence button from within the Case Review tab.



Once the Case (receipt) number tab is open, click the Task tab to view the Owner of the case. If you are listed as the Owner and must unassign the case from your queue, click the Unassign link under your name and the case will return to the unassigned queue.

CHNV-FRN-00715



## 2.5 Case Statuses

The evolution of a case looks like this:

- Resolving Preprocessing Checks = case is ready for review.
- Awaiting Beneficiary Attestation = case was confirmed and is awaiting beneficiary attestation.
- Accepted = case is ready to review and/or Awaiting Beneficiary Attestation (this is found in the ELIS account page of the supporter at the bottom for the I-134A).
- Closed – Confirmation = case was confirmed, beneficiary attested, now closed.
- Closed – Not Confirmed = case was not confirmed, and it is now closed.
- Administratively Closed = case was administratively closed (probably because it was a duplicate).

## 2.6 Housekeeping Tips

- Open guidance material prior to reviewing a case for easy access to helpful information.

- Close ELIS tabs and Digital Evidence Viewer after reviewing each case to avoid using information that belongs to another case.

- Keep these URL browsers open while reviewing:
    o ELIS
    o PCIS
    o ASPE Poverty Guidelines: https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines

- The title of the ELIS tab you are working in will be highlighted blue. All other open tabs display gray titles.

- Pull only ONE case at a time and process all newly assigned cases before signing out for the day.

- Reach out to SMEs in the Teams channel assigned to your group when you are unsure how to proceed with a case. If you don't receive an immediate response, place the case(s) in a folder and get another case to review while you wait.

CHNV-FRN-00716

    o   VER Staff Reviewer Discussion – for Verification Division staff
    o   USCIS Detailee Reviewer Discussion – for USCIS detailees

# 3.0 Review Security Check and Banners in ELIS Case

### 3.1 Review Security Check

When a Supporter completes an application in ELIS, biographic security checks will be performed automatically on the Supporter.  If biographic security checks result in a TECS hit, the Form I-134A will be taken out of the queue, and SCOPS BCU (Texas Service Center Background Check Unit) will prepare a resolution memo and give a "red light" or resolve the hit before the reviewer reviews the case.

To review the TECS check, go to **"Case"** section, and click the **"Risk & Fraud"** accordion, to see TECS result run by SCOPS BCU.



In this example, the TECS check was conducted and there is no match and you can continue reviewing the case:



If there is a TECS/NCIC Hit, SCOPS BCU will place a "red banner" on the case in the following circumstances:

- Where the supporter is under investigation for, has been arrested for (without disposition), or has been convicted of any Egregious Public Safety (EPS) offenses (see Appendix II);

- Where the supporter is under investigation for, has been arrested for (without disposition), or has been convicted of any specified offense against a minor as defined by the Adam Walsh Act (see Appendix III); and

CHNV-FRN-00717

- Where the supporter is the subject of a protected person order, is under investigation for, has been arrested for (without disposition), or has been convicted of domestic violence, has been arrested for (without disposition), or has been convicted of sexual assault, or is under investigation for, has been arrested for (without disposition), or has been convicted of immigration fraud or passport or identity theft (not applicable for individuals who have had a passport lost or stolen).
- If FDNS otherwise determines in reviewing the TECS hit that the supporter poses a significant national security or public safety risk, they will issue a "red banner".

If a case falls into your queue that may have been bundled with related cases, and under the Task Tab workflow status states: "Backend TECS Review, Review Backend TECS Hit Check", unassign that case as it needs to complete the TECS Review prior to processing.

If you pull a case that has related cases with mixed TECS banners (green/red), place a comment in your assigned chat with the IOE#s and do not process until you receive a response.

### 3.2 Review Banners

#### 3.2.1 TECS Results Affect Eligibility

A TECS check with a "red banner" will look like this example, with the "TECS Results affect eligibility" message:



If you see this banner, keep the case and all related cases open, add the case information to the Case Tracker, select "Red TECS Banner" as the primary reason, and keep the case(s) in a folder in your queue. These cases will disappear from your queue when a SME pulls the case(s) for review.

#### 3.2.2 Cases Placed on Hold for Other Reason

If you see the below banner, keep the affected case and all associated cases in a folder even if only one or some of the associated cases have this banner.



Reviewers may receive assigned cases that do not contain this banner, but the ELIS account shows associated cases are

14

on hold, as displayed in the view below:



If you see this scenario, add the assigned case(s) in your queue to the Case Tracker, select "FDNS Hold" as the primary reason, and keep the case(s) in a folder in your queue. These cases will disappear from your queue when a SME pulls the case(s) for review.

### *3.2.3 Record of Action (ROA) Attached Warning*

If the case has a Record of Action (ROA) attached, you will see a yellow banner when you open the case. If you see this, add the case to the Case Tracker in Teams, select ROA as the Primary Reason, and place the case in a folder. A SME will pull the case from your queue to review. See below example of the ROA banner:



### *3.2.4 Duplicate Case Alert*

If the supporter submitted another case for the same beneficiary under the same ELIS account, ELIS displays a banner like this when you open the case.



If you see this banner, you must follow instructions under <u>5.0 Duplicate Case Review in ELIS</u>.

### *3.2.5 Number of Beneficiaries*

A supporter filing more than ten (10) Form I-134A, including duplicates, will result in a one-time automatic referral to FDNS for additional vetting. ELIS automatically refers to FDNS the eleventh (11th) Form I-134A filed by a supporter and suspends case review on other open Form I-134A associated with the same supporter. When the FDNS Immigration Officer completes review, a Record of Action will be uploaded to the ELIS file for the QA/SME team to review. See below example:

CHNV-FRN-00719



### 3.2.6 Protected Information Banners

DHS systems display a protected information banner to remind staff certain individuals hold protected status.  The warning for 8 U.S.C. § 1367 ("1367") is the confidentiality statute that applies to VAWA relief, Trafficking Victims nonimmigrants ("T visas") and U Victims of Crimes, nonimmigrants ("U visas").  The warning for individuals protected under 8 CFR 208.6 reminds that we are prohibited from disclosing information pertaining to asylum and refugee applications to third parties.

While we are charged with protecting personally identifiable information (PII) for all we serve, these banners are a reminder we must adhere to a special protected status for these individuals.  Reviewers may continue reviewing the I-134A if they see one or more of the below banners.







## 4.0 Check Number of Beneficiaries in ELIS

CHNV-FRN-00720

Locate the Alien Number and ELIS Account Number in the case number tab. This tab label only displays the case/receipt number. If the case number tab displays an Alien Number, click that hyperlink to view the supporter's ELIS accounts and cases associated with this Alien Number.



Click the Account Number hyperlink to view all I-134As submitted by this supporter. If there are multiple Account Numbers, you must open them all to search for the total number submitted and check to see if there are duplicate submissions for the case you are reviewing.



This is what the ELIS Account Number tab looks like:



Scroll to the bottom of the ELIS Account Number tab to locate the cases associated with this supporter.



CHNV-FRN-00721

Make a note of the total number of I-134As for this supporter, as you will need this information when determining if the supporter submitted sufficient financial evidence.

Sort the Beneficiary Name column in alphabetical order and search for duplicates. Look for your current assigned case number in the Receipt Number column, then locate beneficiary's name associated with this case. If there is a duplicate case for this beneficiary, follow instructions in the 5.0 Duplicate Case Review in ELIS section.

Tips for navigating case information:

- Click the light gray up & down arrows to sort any column header in ascending or descending order.
- Click the Receipt Number to open any associated case listed in this section.
- If there are more than 10 associated cases (may be other than I-134As), click the right facing arrow next to "Rows per page:  10" on the bottom right side of your screen.  If there are 10 or fewer associated cases, the arrow will be grayed out and inaccessible.
- Pay attention to the Submitted Date and Case Status when working a duplicate case.

## 5.0 Duplicate Case Review in ELIS

Supporters may submit additional I-134s for the same beneficiary for various reasons:

- They need to update key beneficiary information (name spelling, date of birth, passport number and/or expiration date, email address);
- The beneficiary's travel authorization expired from the previous case;
- Reviewer was unable to render confirmation on the initial I-134A;
- Sometimes supporters submit a 2nd I-134 because significant time has passed, and they think the first case didn't go through.

When the supporter submitted more than one I-134A for the same beneficiary under the same ELIS account number, ELIS provides the Duplicate Case Alert banner shown in 3.2.4 Duplicate Case Alert.  However, ELIS will not display this banner if the supporter submitted the second I-134A using a different ELIS account number.  Reviewers must search all available data and related ELIS Accounts to determine if there are multiple I-134s for the same beneficiary.

Reviewers may refer to Appendix V – Duplicate Case Process Map and the below tips for how to proceed when they determine there are duplicate I-134As for the same beneficiary:

| Scenario | Selection | Reason |
|---|---|---|
| You have more than one case from the same supporter for the same beneficiary in your queue that has not been rendered a decision and meets confirmation criteria. | Render the confirmation on the most recently filed case, then select Administratively Closed for the oldest case. Case Acceptance in the Task or History will show date and time of submission. | The case most recently submitted may have edited info for next phase of processing such as Name, DOB, passport number, passport expiration, passport country, or email address. |

CHNV-FRN-00722

| | | |
|---|---|---|
| You have one case that you would confirm and see an unassigned duplicate for the same supporter and beneficiary. | Assign the unassigned case to yourself and render confirmation on the most recently filed case. Select Administratively Closed for the oldest case. Case Acceptance in the Task or History will show date and time of submission. | The case most recently submitted may have edited info for next phase of processing such as Name, DOB, passport number, passport expiration, passport country, or email address. |
| You have one case that you would confirm and see an assigned duplicate for the same supporter and beneficiary with another reviewer. | If your case is the most recent render the confirm and notify the other reviewer. If your case is the oldest, do not Select Administratively Closed until the other reviewer renders the confirmation on their receipt. | The case most recently submitted may have edited info for next phase of processing such as email address. Admin close only after most recent has been confirmed to not confuse supporter notices. |
| You have a case to confirm that has an exact duplicate resolved by another reviewer as confirm. | Select Administratively Closed if Exact Duplicate. | Make sure it is an exact duplicate with no changes to name, dob, passport number, passport expiration, passport country, email address, or expired Travel Authorization. |
| Duplicate case in queue, assigned, or already worked that is a non-confirm and you have the associated duplicate case from the same supporter that still is non-confirm. | Select Non-confirm. | Supporter can submit for reconsideration multiple times. |
| Duplicate case in queue, assigned, or already worked that is a non-confirm and you have another case that now meets confirmation. | Select Confirm. | Supporter can submit for reconsideration multiple times. |
| Any scenario that has a duplicate that does not meet confirm criteria on the open case. | Select Non-confirm. | We should not confirm a case that does not meet confirmation criteria. We do not select Admin close on any case that is a non-confirmation. |

## 5.1 Compare Beneficiary Data

If you determine the supporter submitted more than one case for this beneficiary under the same ELIS account, you will see the duplicate cases under the Associated Cases section at the bottom of the ELIS Account Number tab. Locate the receipt number for the duplicate case (not the case currently in your queue) and click the Receipt Number hyperlink to open and view the duplicate case. This will open the receipt number (IOEXXXXXXXXX) tab where you may review case details and beneficiary information.

Click on Case Details to view case details and beneficiary information.

19

CHNV-FRN-00723



Scroll down and click Beneficiary Account to view beneficiary information.



Capture a screenshot of the Beneficiary Account section and compare this with the beneficiary information in the Beneficiary Account section of your assigned case. If the five highlighted data points are an exact match (**Name, Date of Birth, Passport Number, Passport Expiration Date, and Email Address**), then your assigned case is a true duplicate, and you will proceed to the next section 5.2 Add Beneficiary Alien Number. If it is not a true duplicate, continue processing as a new case and proceed to section 6.0 Conduct Supporter Review.



If the case is a true duplicate and the initial case was confirmed, administratively close the 2nd case following guidance in 8.3 Render Administratively Closed. However, before administratively closing the case, ensure the first case was travel authorized. If travel authorization has not yet expired, proceed to administratively closing the new filing. If the initial filing was NOT travel authorized OR if the travel authorization expired, continue to process the new case.

If the case is a true duplicate and the initial case is still open and not yet processed with a confirmation decision, confirm the most recently submitted case first, and then render Administratively Closed to the initial case and include a case comment referring to the receipt number of the confirmed case.

20

## 5.2 Add Beneficiary Alien Number

When a supporter submits Form I-134A and does not include an Alien Number for the beneficiary, ELIS automatically assigns the beneficiary an Alien Number when the case is confirmed.  If the supporter submits an additional case for the same beneficiary, reviewers must check to see that the new case includes the beneficiary's previously assigned Alien Number.  If the beneficiary's Alien Number was not included in the additional case, reviewers must manually add it prior to rendering another Confirmation.  Follow the below instructions to locate the beneficiary's Alien Number and issue date, then add them to the additional case.

Copy the Alien Number found in the Beneficiary account section in Case Details tab of the previously confirmed case.



Click the History tab in the previously confirmed case (next to Case Details) and look for the date the beneficiary's Alien Number was issued.



Return to the Beneficiary Account section in the additional case and click Add A-Number.

CHNV-FRN-00725



Type or paste the  Alien number and start date, then click Save.



## 5.3 Review Case Details from Initial Case

When you confirm you are assigned a duplicate case, you must research the initial case details and try to determine why the supporter submitted a 2nd case.  Click Case and check Render Decision to see the decision rendered for the initial case and whether the previous reviewer added comments explaining the decision.  If the previous reviewer non-confirmed the case for any reason, you may continue processing and proceed to the next section 6.0 Conduct Supporter Review and continue processing.



If the case was Confirmed, click Notices and Snapshots and look for a Travel Authorization Document.

22



Open the Travel Authorization Document and look for the expiration date. If the travel authorization expired, that is likely why the supporter submitted another case. Notate the date the travel authorization expired. In some instances, travel was not authorized in the previous case. If you encounter either situation, you will add a comment to your current assigned case.



Enter applicable comment in your current assigned case:

- Travel Authorization under IOEXXXXXXXXX expired on XX/XX/202X
- Travel not authorized under previous case IOEXXXXXXXXX

# 6.0 Conduct Supporter Review

We must conduct a thorough supporter review to look for various information: More than 10 submitted I-134As, supporter's status, and situations where individuals may be trying to use these programs to circumvent adoption or fiancé application processes. You will search for the supporter's name on the BOLO List and in ELIS to determine if the supporter submitted more than 10 Forms I-134A. You will search PCIS for the supporter's status and possible fiancé and adoption applications.

### 6.1 Search BOLO List in Microsoft Teams

Search for the supporter's name on the BOLO List of Serial Supporters and FDNS Review in the Files Tab of the I-134 – Review Team General Channel:
https://teams.microsoft.com/l/channel/19%3aN59r3yiXn0g4qpExCaocnoNUIgxTvKzBzEyxTPEs1KE1%40t
hread.tacv2/General?groupId=be5fc61a-f6b0-45f5-9fa4-b9b21ffc8a81&tenantId=5e41ee74-0d2d-4a72-
8975-998ce83205eb

See guidance in 2.2.2.1. Search Supporter on BOLO List of Serial Supporters and FDNS Review.

CHNV-FRN-00727

### 6.2 Search Supporter in ELIS

The name and date of birth displayed in the ELIS account should match the supporter's name and date of birth.  Supporters may not share ELIS accounts.  If you determine the supporter is sharing the ELIS account with one or more individuals, render non-confirmation following guidance in 8.2 Render Non-Confirmation.

Locate your supporter's name and date of birth from the Case Review tab.  If the supporter has an Alien Number, their information will appear in the worksheet portion of this tab.



If there is no Alien Number, you will have to click on Name and Date of Birth under the Financial Supporter Information Section to retrieve this information.  Notate the Name and Date of Birth to use in all supporter searches.



Click the Search tab next to My Cases in ELIS and enter the supporter's last name, first name and date of birth.  Use 01 as the month and 01 as the day in the date of birth range section and the supporter's actual birth year in the **Date of Birth From** box.  Then use 01 as the month, 01 as the day, and the year following the supporter's actual birth year in the **Date of Birth To** box.  If the supporter's date of birth was in the year 1993, you would enter 01/01/1993 in the Date of Birth From box and enter 01/01/1994 in the Date of Birth To box.  Click Search.  ELIS will return every case filed under different Alien Numbers and ELIS account numbers by this supporter.

CHNV-FRN-00728



If you discover the supporter submitted 11 or more unique Forms I-134A (not including duplicates) across one or multiple ELIS accounts, you must add this case to the Case Tracker, and select "Possible Serial Support 11+" as the primary reason.

If the supporter's name is not included on the BOLO List, place the case in a folder in your queue and notify Lead John Garside.  Please refer to the latest guidance provided by the Leads.

If the search returns no results, continue processing the case.

## 6.3 Search Supporter in PCIS

Reviewers must search PCIS for the supporter's status and evidence of adoption or fiancé applications. If the supporter has activity with USCIS, the Identity Details page in PCIS will display the supporter's name, biographical data, and Immigration Status.  The information you need to enter depends on whether the supporter has an Alien Number.  See each respective section for guidance on how to search the supporter in PCIS and how to review results.

### 6.3.1 Search Supporter with Alien Number

If the supporter has an Alien Number, enter it in the Identifier Search box and click the blue box with the magnifying glass (or press Enter).  PCIS will return an exact match.  Click View to open the Identity Details page.  PCIS displays the exact criteria you entered in a gray box under the Identifier Search box.



### 6.3.2 Search Supporter with No Alien Number

If the supporter does not have an Alien Number, enter the supporters last name, first name, and exact date of birth in the Advanced Search section and click Search (or press Enter).

CHNV-FRN-00729



Alternatively, you may click the drop-down next to Select Identifier and enter any of the unique identifiers available, such as Social Security Number (SSN).  You can find the supporter's SSN in ELIS under Financial Supporter Data in the Other Information field.



## 6.4 Review Results

### 6.4.1 No Results in PCIS

If the supporter has no activity with USCIS, PCIS will display "Your search criteria does not have any exact matches."

**Search Results**



Proceed to 7.0 Review Evidence in ELIS.

### 6.4.2 Exact Match in PCIS

The supporter's name and date of birth (DOB) will display at the top of the Summery Tab and the Immigration Status will display in the middle.

26



### 6.4.3 Search PCIS for Approved Lawful Status

If a supporter has lawful status granted by USCIS, PCIS should display the individual's approval in the **Timeline Tab**.  Click the Timeline Tab to search for an approval giving them status.  PCIS takes about 30 seconds to check multiple systems for updated information.  Click the blue circle with the carat next to the year to view activity for that year.  You may need to open all years to locate approved status.



**NOTE:**  If you are unable to locate an approved qualifying status in PCIS, contact your SMEs using the designated Teams channel and ask for assistance with confirming status.

- If SME confirms supporter does not have lawful status, issue Non-Confirmation following steps in 8.2 Render Non-Confirmation

- If SME confirms supporter does have lawful status, continue reviewing.

### 6.4.4 Search for Intercountry Adoptions and Petitions for Fiancé

Supporters are allowed to submit I-134A for family members (spouse/fiancé, child, sibling parent), but reviewers must watch for situations where individuals may be trying to circumvent normal application processes for adoption and fiancé petitions.

To ensure individuals are not circumventing intercountry adoption and fiancé petition procedures, reviewers must check

27

the Details Tab in PCIS for the below form types. Check the Form Type column for any of these forms:

- Form I-600
- Form I-600A
- Form I-800
- Form I-800A
- Form I-130 (on the basis of adoption)
- Form I-129F



### 6.4.4.1 Search for Intercountry Adoptions

To ensure individuals are not trying to circumvent the adoption process, you must check to see if the supporter also filed adoption related forms on behalf of the beneficiary.  If PCIS displays any of these forms submitted by the supporter, post a comment in your designated Teams chat and include the Case # (IOEXXXXXXXXXX). A SME will review and refer to FDNS if necessary.

- Form I-600
- Form I-600A
- Form I-800
- Form I-800A
- Form I-130 (on the basis of adoption)

### 6.4.4.2 Search for Petition for Alien Fiancé

To ensure individuals are not circumventing the Fiancé application process, you must check to see if the supporter previously filed three (3) or more Forms I-129F, Petition for Alien Fiancé. If PCIS displays three or more Forms I-129F, you must post a comment in your designated Teams chat and include the Case # (IOEXXXXXXXXXX). A SME will review and refer to FDNS if necessary.

It is ok if the supporter also filed one Form I-130 or I-129F for the same beneficiary.

## 7.0 Review Evidence in ELIS

Return to Case Review Tab in ELIS and click **Open Evidence**.  ELIS will open the Digital Evidence Viewer in a new browser where you may review all evidence submitted by the supporter.  Click the drop-down arrow next to the document title to view available documents.  Click the drop-down arrow in the Page to toggle between pages.  The Form I-134A should be the first document you see.

CHNV-FRN-00732



If evidence is blurry or illegible, try viewing the evidence in raw file to see if you can get a clearer image. Click Evidence and RFE in the Case Review Tab, locate the document you wish to view and click Raw File.



If the raw file is still blurry or illegible, reviewers may need to issue a Request for Evidence (RFE), following guidance in 7.4 Request for Evidence (RFE).

**Note**:  When you have a case where the supporter is filing for multiple beneficiaries and does not upload sufficient evidence/documents/proof of status for one case, but did include it in the other cases, you can confirm the one that lacks it, but must add a comment in the case that lacks the evidence referencing to the IOE# that contains the evidence.


## 7.1 Review I-134A

USCIS updated Form I-134A multiple times since we began supporting these parole programs. Depending on when the form was submitted, you may see variances in the format.  Forms submitted after 7/13/2023 will include a text box response reviewers must consider when reviewing the case.

Here are the key elements you will look for when reviewing Form I-134A:

- Did the supporter provide sufficient responses to questions 27-29 (or 28-30 in the 07/13/2023 form)?
- Did the supporter sign the form?
- Did the supporter provide a sufficient statement in the text box question (Forms submitted 7/13/2023 or later)?
- Did the Supporter provide additional information requesting we update Beneficiary's information (DOB/Passport #/Expiration date/Email), please update it under the Beneficiary Account.

Some portions of I-134A are not required for our financial review:

CHNV-FRN-00733

- Beneficiary's Anticipated Length of Stay is not required.
- Beneficiary's Financial Information is not required.
- Beneficiary signature and proof of status or photo ID are not required.

See the following sections for guidance on each element.

### 7.1.1 Responses to Questions

Reviewers must review the responses on page 8 of Form I-134 and determine whether the response is sufficient. Supporters must provide an affirmative response to questions 27-29 (28-30 for forms submitted 7/13/2023 or later), based on the following:

- Responses must be in English.  If not in English – issue non-confirmation according to guidance in 8.2 Render Non-Confirmation.
- Responses don't have to be lengthy, but "Yes" is not an acceptable response.  We're looking to see that the supporter responds affirmatively to accepting financial responsibility and assisting the beneficiary in their basic needs. If supporter responds only "Yes" under Intent to Provide Specific Contributions to the Beneficiary, reviewers will issue a non-confirmation.
  - The supporter's response does not have to specifically state "learn English" or "get a job" but needs to be an affirmative response.
  - If supporter responds only "Yes" to one of the questions, but affirms intent to support in other responses, ok to continue processing.  We're looking for the overall intent to support.
  - See below examples of Acceptable and Non-Acceptable responses:

| ACCEPTABLE | NOT ACCEPTABLE |
|---|---|
| • Yes, I have the resources to support (or some variation) <br> • I will support the beneficiary (or some variation) | • "Yes" to all 3 questions <br> • "Fine" to all 3 questions <br> • "Yes, I will" <br> • "Okay" |

- If the supporter references or alludes to a "host" (an unknown/unidentified 3rd party), but does not identify the host's name and doesn't provide a signed letter of intent from that individual, render non-confirmation following guidance under 8.2 Render Non-Confirmation. See below example.

> The host is the husband and father of this family. He has confirmed that he will provide financial support for as long as needed. Here is his name and contact information. They will live in

- If the supporter names a host and includes a signed letter from that person saying they agree to hosting, you may continue to process.
- If the supporter states the beneficiary will live elsewhere other than with the supporter, that is ok to process, no requirement for beneficiary to live with supporter.

CHNV-FRN-00734

### 7.1.2 Supporter Signature

Locate the supporter's signature block on page 11 of Form I-134A. If supporter digitally signed the form, continue to process. If supporter did not sign the form, issue a non-confirmation according to guidance in 8.2 Render Non-Confirmation.

Examples of acceptable signatures may include:

- The supporter's full name,
- The supporter's initials,
- An "X", and
- Two signatures are acceptable, but one signature must belong to the financial supporter.

### 7.1.3 Text Box Response

Forms I-134A submitted on 7/13/2023 or later will include a text box response in Part 2., Question 4. The text box response applies only to CHNV cases and is used to determine whether we will prioritize these cases for processing. The text box response does not apply to UKR cases and reviewers should continue processing UKR cases following all other guidance.

When reviewing CHNV I-134A cases, it is best to review in this order:

1. Status eligibility of supporter

2. Responses to Questions 28-30 are sufficient based on current guidance

3. Supporter signed the application

4. Financial eligibility of supporter

5. Text Box response is sufficient according to below guidance

If numbers 1-4 are sufficient to render the case confirmable, then move to number 5 to determine if the response in the Text Box question is sufficient to prioritize and process.

- If the response to the Text Box question is sufficient, then confirm the case.

- If the response to the Text Box question is not sufficient according to below guidance, place the case on hold as shown below and do not confirm the case.

- If numbers 1-4 would render the case non-confirmable, reviewers do not need to consider the Text Box response and should either issue the non-confirmation or add the case to the Case Tracker and keep the case in a folder, based on current guidance for the issue determining ineligibility.

#### 7.1.3.1 Required Elements for Text Box Response

Reviewers should look for these elements in the Text Box response:

- Does the response demonstrate the need for pressing or immediate action or attention?
- Does the response demonstrate a concern for the beneficiary's welfare?
- Does the response demonstrate that parole would be helpful to a community or population?

Example of response in text box:

CHNV-FRN-00735

4. A grant of parole is a discretionary determination granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit. Please explain why a favorable exercise of discretion is merited for this individual.

> MY GRAND FATHER IS AN OLD PERSON, WITH SOME MEDICAL CONDITIONS. OSTEOARTHRITIS, DIABETES
> AND HYPERTENTION ARE SOME OF THEM, IN CUBA HE DOES NOT HAVE THE MEDICAL ASSISTANT NEEDS
> AND MEDICATION FOR ALL THIS DISEASESTHE ACTUAL CONDITIONS IN CUBA ARE TERRIBLE, HE HAS TO
> SPEND ALL DAY IN LINES TO BUY SOME FOOD AND MEDICATIONS, HE LIVES ALONG AND DOES NOT HAVE
> ANY OTHER FAMILY MEMBER WHO CAN TAKE CARE OF HIMHE TRAVEL TO MEXICO TO INTENT ARRIVE AT

Reviewers must consider whether the response references any of the following:

- General civil strife or political unrest;
- Rejoining with family;
- Medical needs or treatment;
- Vulnerabilities of either the beneficiary or a US-based person, including the need to provide caregiving assistance;
- Severe economic hardship

If any of these elements are present in the supporter's response, continue processing the case.

If none of these elements are present, but the supporter otherwise meets all criteria for status and financial evidence, put the case on hold following the below steps.

### 7.1.3.2 Place Case on Hold for Insufficient Text Box Response

Reviewers should follow these steps to place the case on hold due to insufficient Text Box response:

1. Click "Put Case on hold" in ELIS (top right when receipt is in case view)



2. Add case comment when prompted in pop-up window: "*Eligible for Confirmation, being held for lack of prioritization.*"
3. Add case to Case Tracker with Primary Reason as Text Box and keep the case in a folder in your queue.

## *7.1.4 Additional Information – Update Needed*

If the supporter submitted an Additional Information supplement to Form I-134A, stating the beneficiary's DOB/Passport #/Expiration date/Email information should be updated, the reviewer may update the information in the Beneficiary Account. Additionally, supporters sometimes mistakenly enter incorrect information for the beneficiary. Reviewers should look for documents in evidence supporting the need to update beneficiary data.

When reviewers update the name and DOB, ELIS will automatically initiate another TECS check and could create a task that will hold the case from being able to be rendered.

Reviewers should follow these steps to update beneficiary DOB information in ELIS:

1. Under the Date of Birth section for the Supporter, you may add a new DOB (upper right "+ Add" button)
2. Once added, at the far-right side for the correct DOB, click on the 3 dots
3. A drop down will appear indicating Make Primary or Make Inactive
4. Select Make Primary and the "N" in the Primary column will change to "Y"

32

## 7.2 Review Evidence of Lawful Status

Click the drop-down arrow next to the Document field showing document title and look for an Immigration Status document in the evidence.



If submitted evidence meets criteria described in 1.4.1 Lawful Status, continue processing.

If supporter is a U.S. Citizen and submitted evidence does not meet criteria described in 1.4.1 Lawful status, follow guidance in 7.4 Request for Evidence (RFE).

If the supporter is not a U.S. Citizen, and did not include sufficient evidence of status, look for the individual's status in PCIS Timeline.

- If you locate an approved status in the Timeline, you may add a case comment: "PCIS confirmed status" and continue processing.
- If you are unable to locate an approved status in the Timeline, reach out to a SME in your designated chat and ask them to confirm status (include IOE#).
  - If SME confirms supporter does not have status, issue Non-Confirmation following steps in 8.2 Render Non-confirmation.
  - If SME confirms supporter does have lawful status, continue processing.

If the response to the RFE demonstrates the individual holds lawful status or has been paroled into the United States or granted deferred action or DED as of the date the response is received/reviewed, we will consider the Supporter to have met this requirement.

## 7.3 Review Financial Evidence

Reviewers must determine whether the income/liquid assets/outside support evidenced in the Form I-134A and supporting evidence meet at least 100% of the HHS Poverty Guidelines based on the number of persons in the family/household.  The number of persons in the family/household includes the supporter, any dependents, any beneficiaries already confirmed, and the beneficiary on whose behalf Form I-134A is being filed. The supporter should demonstrate that they are able to "receive, maintain, and support" the Beneficiary listed on the Form I-134A for two years (the anticipated period of parole).

- Regardless of the information submitted into the form fields, the supporting documentation should demonstrate that the supporter has income/liquid assets/outside support to meet at least 100% of the poverty guideline threshold for the supporter's household size.
- The 2023 HHS poverty guidelines are located at: https://aspe.hhs.gov/topics/poverty-

CHNV-FRN-00737

economic- mobility/poverty-guidelines, or see Appendix IV – Health and Human Services – 2023 Federal Poverty Guidelines

- Reviewers are to assume reported income will continue at the same rate for subsequent years, and household size will be static.  If there is insufficient income to meet the poverty guidelines threshold, we assume liquid assets would be spent over the course of the period of support.

Staff will assess income, liquid assets, and any commitments of support from outside organizations or additional individual supporters to determine in the totality of the circumstances whether the supporter is able to financially support the beneficiary for the duration of parole.  Totality of supporter's financial evidence must meet criteria outlined in 1.4.2 Sufficient Financial Evidence.

As defined in 8 CFR 213a.1, income from illegal sources or means-tested public benefits is excluded from consideration in meeting at least 100% of the HHS poverty guidelines.

### 7.3.1 Tips for Reviewing Financial Evidence:

- If the supporter failed to upload sufficient financial evidence in one case but they did upload sufficient financial evidence with a related I-134A for another beneficiary, reviewer may use the evidence from the related case to continue processing.
- Form 1040 and/or 1040 Tax Transcripts are not required, if there is other financial evidence present that meets specified criteria.
- If AGI from the supporter's Form 1040 taxes (usually line 11) or 1040 Tax Transcript, shows sufficient financial funds to support beneficiary(s) (unless they hit the 11+ limit), plus themselves and number of others living in household, case is ok to confirm, no need to look at all other financial documents provided.
- If the AGI is insufficient to meet guidelines or in some cases a negative dollar amount, but there is other evidence such as an employment validation letter, bank account balances, W2's etc. that do meet the guidelines – continue to process the case.
- When counting totality of beneficiaries + # in HH, remember to include prior confirmed I-134/I- 134As.
- If there is a co-supporter to assist with the financial support, we do not need to confirm co- supporter's status as long as the person signing the I-134/I-134A has status.
    - Co-supporter needs to be named in the application.
    - Places on application you may find co-supporters information.
        1. Page 4, Part 3. Information About the Individual Agreeing to Financially Support the Beneficiary Named in Part 2, #3. If "Parole Process" selected in Part 1., Item Number 2. Provide the name of the organization, group, or individual that is providing support to the beneficiary with you (if any)
        2. Page 7, #19, Income and/or #24, Assets
    - If there is mention of a co-supporter, but they are not named in one of the places above and/or not mentioned at all and financial information is uploaded for someone other than the supporter, unless it's the supporter's spouse, then we cannot use that information as financial evidence.
- We may not include home/vehicle equity when calculating income.
- We are currently awaiting a policy decision on whether we may include Form 1099 as sufficient

CHNV-FRN-00738

financial evidence.  If the supporter uploaded a Form 1099 and there is no other sufficient financial evidence present, add the case and all related cases to the Case Tracker with "1099" as the reason and keep the cases in a folder in your queue.

### 7.3.2 Decision Steps:

If financial evidence is sufficient and meets required criteria, and you verified the supporter has lawful status and has not submitted I-134As for 11+ beneficiaries, render Confirmation according to guidance in [8.1 Render Confirmation](#).

If financial evidence is insufficient and does not meet required criteria, add the case to the Case Tracker for SME review and place the case in a folder.

### 7.4 Request for Evidence (RFE)

There are only two instances in which we send RFEs.  Reviewers will add the case to the Case Tracker under the separate tab marked RFE and keep the case in a folder in their queue.

- If the supporter provided no proof of status and you cannot find any evidence of status in our databases (remember native born USC will not be in our databases); and/or
- If the evidence the supporter submits is blurry or illegible.
  - However, reviewers should first review the raw documents in the Case Review Tab. Reviewers can find the I-134 under Notices and Snapshots and raw files of all supporting documentation under Evidence and RFE.



If you encounter either scenario listed above and add the case to the RFE tab on the tracker, a SME or Team Lead will re-assign the case to their queue and address the RFE.

The following steps apply to the SME or Team Lead who will issue the RFE on the case.

**DO NOT** issue RFE for these scenarios:

- If supporter did not provide their A# or evidence of status, and you confirm they are a USC or have another acceptable status to support after a search in PCIS or other database, you can proceed with the case, no need to update their ELIS account or RFE. Add a case a comment: "Verified status via PCIS".
- If supporter provides no proof of financial support or no supporting documents at all, render Non-Confirmation.  Do not RFE and do not place on tracker.

CHNV-FRN-00739

### 7.4.1 Issue an RFE in ELIS

1. Under "Case Data" in Case Review Tab, click on "Evidence and RFE," you will see the RFE section under Evidence.
2. Click the drop-down under "Select Letter Type" and select "VER Request for Evidence Form I-134 (84 days)," then under RFE Type, select "Initial". Click Create.
3. This will launch you into the Enterprise Correspondence Handling Online (ECHO) system.



### 7.4.2 Complete RFE in ECHO

1. Click the plus sign next to the letter corresponding with your Form type.
   a. I-134
      i. VER 001 – No Evidence for Requirement Was Submitted
      ii. VER 002 – Illegible Documents – Legal Status and/or Finances
   b. I-134A
      i. VER 003 – No Evidence for Requirement Was Submitted
      ii. VER 004 – Illegible Documents – Legal Status and/or Finances
2. Click Compose – This opens the draft where you may add supporter and beneficiary names.
3. Click Edit Contact Info.
4. Click the spy glass in the Action column to edit beneficiary contact information.
   a. Replace the name of the sponsor with the name of the beneficiary (No need to remove other information).
   b. Click Save Applicant Beneficiary.
5. Click the green plus sign under Petitioner to add the Supporter's Name.
   a. Enter the supporter's first and last name.
   b. Click Save Petitioner.
   c. Click Close window.
6. Click Build.
7. Click Finalize Letter and Change Letter Date.
8. Click Mark Sent.

### 7.4.3 Link Letter in ELIS

1. On the RFE screen where you initiated the RFE, click the drop-down under Actions and select Link Notice.
2. ELIS provides a pop-up window
   a. Check box under Link
   b. Click Link Letter
3. RFE status updates to Issued
4. Place case in a RFE folder

### 7.4.4 Review RFE Response

Check your RFE folder periodically to watch for responses. When you receive a response to RFE, the case status updates to Awaiting Review. You may need to look at the evidence again to refresh your

CHNV-FRN-00740

memory on why you submitted the RFE.  Review the newly uploaded document in evidence to determine if it satisfies criteria and follow the below steps to mark it as reviewed.

1. Click receipt number to open response.
2. Select RFEID#hyperlink to populate the Response Received for RFE table.
3. Select the checkbox in the Document Reviewed column.
4. Select Mark Reviewed.
5. Select Go.

### 7.4.5 Cancel an RFE in ELIS

There may be instances where you need to cancel an RFE, such as the supporter withdraws their application.  You may only cancel the RFE if the supporter has not yet responded.  Follow the below steps to cancel the RFE in ELIS.

1. Navigate to the RFE page in Case Review Tab.
2. Click drop-down menu under Actions.
3. Select Cancel.
4. Click Go.
5. In the Update Notes pop-up window, enter an explanation in the comment field.
6. Click Save.
7. Click OK to confirm.

### 7.4.6 Process Expired RFE

Supporters have 87 days to respond to a RFE. If the supporter does not respond, the RFE will show expired in your queue. If this occurs, access the RFE under Case Details and update as follows:

1. Select Close - Response Not Received from drop-down menu under Actions.
2. Add a case comment "Issuing Non-Confirmation due to lack of response to RFE." and non- confirm the case.



# 8.0 Render Decision in ELIS

If you reviewed Form I-134A and submitted evidence, and determined the supporter has lawful status and is financially able to sponsor the beneficiary, you will render a Confirmation in ELIS.  Alternatively, if during review you determine the supporter does not have lawful status or did not provide sufficient responses to questions in the I-134A.  In this case, you would render a Non-Confirmation.

## 8.1 Render Confirmation

Scroll to the bottom of the Case Review Tab and click Render Decision.  Click the drop-down arrow under Render Decision and select Confirmation.  Click Save and Finalization.  Double check that you selected the correct decision and click Yes in the pop-up window to confirm your selection.

CHNV-FRN-00741



The case will disappear from your queue.


## *8.2 Render Non-Confirmation*

Reviewers must enter a case comment explaining the reason for issuing a Non-Confirmation.  When non-confirming a case, please be mindful that our case comments are subject to FOIA.  Reviewer should enter comments using the below language:


- Non-confirm for lack of status.
- Non-confirm for lack of evidence/supporting documents.
- Non-confirm for lack of or insufficient responses to questions #27-29. (#28-30)
- Non-confirm for lack of/insufficient supporter signature on Form I-134A.
- Non-confirm, duplicate case. (use when you have duplicates from different supporters)
- Administratively Close, duplicate filing. (use when you have duplicates from same supporter)
- Supporter asked to withdraw so USCIS non-confirmed the case, without prejudice. (use when you see a letter from the Supporter requesting to withdraw Form I-134/I-34A)


Scroll to the bottom of the Case Review Tab and click the plus sign to add Case Comment.  Type the comment, per above guidelines and click Save.



CHNV-FRN-00742

Click Render Decision and select Non-Confirmation from the drop-down arrow under Render Decision. Click Save and Finalization.  Double check that you selected the correct decision and click Yes in the pop- up window to confirm your selection.



The case will disappear from your queue.

### 8.3 Render Administratively Closed

Reviewers may determine a case should be administratively closed for various reasons.  Before rendering Administratively Closed on a case, reviewers should first consider the following:

- If you are going to render an Administratively Closed decision, you must ensure there is a previously confirmed case for the same beneficiary.

- See 5.0 Duplicate Case Review in ELIS for reasons to administratively close a case.

Reviewers may render an Administratively Closed decision by following these steps:

- Add a comment explaining why you are rendering Administratively Closed. (See instructions for adding comments under 8.2 Render Non-Confirmation.
  - Example: "True duplicate to IOEXXXXXXXXXX, confirmed on xx/xx/20xx."
- Open the Case Review Tab and click Render Decision, then select Administratively Closed from the drop-down arrow under Render Decision.
- Click Save and Finalization.
- Double check that you selected the correct decision and click Yes in the pop-up window to confirm your selection.

CHNV-FRN-00743



The case will disappear from your queue.

CHNV-FRN-00744

## Appendix I(a) – Press Release – President Biden to Announce Uniting for Ukraine, a new Streamlined Process to Welcome Ukrainians Fleeing Russia's Invasion of Ukraine

https://www.dhs.gov/news/2022/04/21/president-biden-announce-uniting-ukraine-new-streamlined-process-welcome-ukrainians

WASHINGTON – Today, the President will announce *Uniting for Ukraine*, a new streamlined process to provide Ukrainian citizens who have fled Russia's unprovoked war of aggression opportunities to come to the United States, fulfilling President Biden's commitment to welcome up to 100,000 Ukrainians and others fleeing Russia's aggression as a result of the ongoing Russia-Ukraine crisis. In addition, the State Department is announcing increased refugee resettlement processing and broadened access to visa processing at consular posts overseas.

This builds on the robust humanitarian assistance the U.S. government is providing to complement the efforts of generous countries throughout Europe who are hosting Ukrainian citizens who have been displaced.

"We are proud to deliver on President Biden's commitment to welcome 100,000 Ukrainians and others fleeing Russian aggression to the United States. The Ukrainian people continue to suffer immense tragedy and loss as a result of Putin's unprovoked and unjustified attack on their country," **said Secretary of Homeland Security Alejandro N. Mayorkas.** "DHS will continue to provide relief to the Ukrainian people, while supporting our European allies who have shouldered so much as the result of Russia's brutal invasion of Ukraine."

"The U.S. Department of State stands with the people of Ukraine," **said Secretary of State Antony J. Blinken.** "We will help deliver on the President's commitment to welcome 100,000 Ukrainian citizens and others forced to flee their homes in Ukraine, and our partnership with the Department of Homeland Security will help us fulfill that commitment."

*Uniting for Ukraine* is a streamlined process for Ukrainian citizens who have been displaced by Russia's aggression to apply for humanitarian parole in the United States. To be eligible, Ukrainians must have been residents in Ukraine as of February 11, 2022, have a sponsor in the United States, complete vaccinations and other public health requirements, and pass rigorous biometric and biographic screening and vetting security checks. Ukrainians approved via this process will be authorized to travel to the United States and be considered for parole, on a case-by-case basis, for a period of up to two years. Once paroled through this process, Ukrainians will be eligible for work authorization.

Beginning on April 25, 2022, U.S.-based individuals and entities can apply to DHS to sponsor Ukrainian citizens who have been displaced by Russia's aggression through the *Uniting for Ukraine* process, which will go live that day on the DHS website. Any U.S. citizen or individual, including representatives of non-government organizations, can supporter Ukrainian applicants. Individuals and organizations seeking to sponsor Ukrainian citizens in the United States will be required to declare their financial support and pass security background checks

CHNV-FRN-00745

to protect against exploitation and abuse. The Department of Homeland Security will administer the program. Eligibility requirements will include required vaccinations and other public health requirements, as well as biographic and biometric screening, vetting, and security checks.

The United States strongly encourages Ukrainians seeking refuge in the United States who do not have and are not eligible for a visa to seek entry via *Uniting for Ukraine* from Europe, this will be the safest and most efficient way to pursue temporary refuge in the United States. The
U.S. government is working with European partners to ensure Ukrainians can meet the vaccination requirements of *Uniting for Ukraine.*

Ukrainians should not travel to Mexico to pursue entry into the United States. Following the launch of *Uniting for Ukraine*, Ukrainians who present at land U.S. ports of entry without a valid visa or without pre-authorization to travel to the United States through *Uniting for Ukraine* will be denied entry and referred to apply through this program.

In addition to *Uniting for Ukraine*, the United States is announcing a series of measures designed to expand access to existing legal pathways for Ukrainian citizens.

The Department of State will expand U.S. Refugee Admissions Program (USRAP) operations in Europe to provide eligible Ukrainians with greater access to refugee resettlement processing under the Lautenberg program, while also expanding referral mechanisms for Ukrainians and others fleeing Russia's war in Ukraine who are in need of permanent resettlement.

As part of these efforts, the Department of State will expand U.S. resettlement operations in Europe to provide more resources to process Ukrainian citizens for refugee resettlement under the Lautenberg program, and will expand referral mechanisms for Ukrainian citizens and others fleeing Russia's war against Ukraine to the U.S. Refugee Admissions Program (USRAP). To do so, the United States is working with European partners, the UN High Commissioner for Refugees and NGOs to identify particularly vulnerable Ukrainian citizens and others fleeing the conflict who may warrant permanent resettlement through USRAP. These particularly vulnerable populations include women and girls, children, older persons with special needs, members of ethnic and religious minority groups, LGBTQI+ persons, persons with disabilities, medically fragile individuals, and stateless persons.

In addition, European embassies and consulates are increasing, to the extent possible, the number of nonimmigrant visa appointments and ensuring there is an expedited visa appointment program for individuals with humanitarian, medical, or other extraordinary circumstances to get priority access.

The Biden-Harris Administration remains committed to supporting the people of Ukraine and continues to closely coordinate our efforts with our European allies and partners who are on the frontlines of aiding Ukrainian citizens forced to flee due to Russian aggression. The United States has contributed nearly $300 million in humanitarian assistance to provide displaced Ukrainians with food, safe drinking water, shelter, and winterization services, and will continue to serve as a global leader in the international humanitarian response. The United

CHNV-FRN-00746

States is prepared to provide more than $1 billion in new funding toward humanitarian assistance for those affected by Russia's war in Ukraine and its severe impacts around the world.

###

CHNV-FRN-00747

## Appendix I(b) – Announcement – DHS Announces New Migration Enforcement Process for Venezuelans

https://www.dhs.gov/news/2022/10/12/dhs-announces-new-migration-enforcement-process-venezuelans

WASHINGTON – Today, as part of the Biden-Harris Administration's ongoing work to build a fair, orderly, and secure immigration system, the Department of Homeland Security (DHS) is announcing joint actions with Mexico to reduce the number of people arriving at our Southwest border and create a more orderly and safe process for people fleeing the humanitarian and economic crisis in Venezuela.

Almost four times as many Venezuelans as last year attempted to cross our southern border, placing their lives in the hands of ruthless smuggling organizations. Meanwhile, irregular migration from northern Central America is down by a quarter from the level encountered last year. The actions the United States and Mexico are announcing today are intended to address the most acute irregular migration and help ease pressure on the cities and states receiving these individuals.

Effective immediately, Venezuelans who enter the United States between ports of entry, without authorization, will be returned to Mexico. At the same time, the United States and Mexico are reinforcing their coordinated enforcement operations to target human smuggling organizations and bring them to justice. That campaign will include new migration checkpoints, additional resources and personnel, joint targeting of human smuggling organizations, and expanded information sharing related to transit nodes, hotels, stash houses, and staging locations. The United States is also planning to offer additional security assistance to support regional partners to address the migration challenges in the Darién Gap.

Our comprehensive effort to reduce the irregular migration of Venezuelans also includes a new process to lawfully and safely bring up to 24,000 qualifying Venezuelans into the United States.  The United States will not implement this process without Mexico keeping in place its independent but parallel effort to accept the return of Venezuelan nationals who bypass this process and attempt to enter irregularly.

"These actions make clear that there is a lawful and orderly way for Venezuelans to enter the United States, and lawful entry is the only way," **said Secretary of Homeland Security Alejandro N. Mayorkas**. "Those who attempt to cross the southern border of the United States illegally will be returned to Mexico and will be ineligible for this process in the future. Those who follow the lawful process will have the opportunity to travel safely to the United States and become eligible to work here."

This effort is intended to enhance border security by reducing the number of Venezuelans seeking to irregularly enter the United States. It is derived from the success of the Uniting for

CHNV-FRN-00748

Ukraine (U4U) program, which decreased flows at the border by creating an orderly process for the entry of Ukrainians fleeing Russia's invasion of Ukraine.

DHS will closely monitor the implementation of this process, and Mexico's independent and parallel efforts, and may consider expanding it in the future.

To be eligible, Venezuelans must:
- have a supporter in the United States who will provide financial and other support;
- pass rigorous biometric and biographic national security and public safety screening and vetting; and
- complete vaccinations and other public health

requirements. Venezuelans are ineligible if they:
- have been ordered removed from the United States in the previous five years;
- have crossed without authorization between ports of entry after the date of announcement;
- have irregularly entered Mexico or Panama after the date of announcement, or are a permanent resident or dual national of any country other than Venezuela, or currently hold refugee status in any country; or
- have not completed vaccinations and other public health

requirements. Venezuelans should not travel to Mexico to pursue entry into the United States.

Venezuelans approved via this process will be authorized on a case-by-case basis to travel to the United States by air directly to an interior port of entry, thus relieving pressure at the border.  Once in the United States, they will be eligible to apply for work authorization.

DHS will administer the process, working with communities and other partners. Any U.S.-based individual with lawful status, including representatives of businesses or other organizations or entities, can support a potential beneficiary from Venezuela. A supporter must prove that they have the means to provide financial and other support for the beneficiary. In the coming days, potential supporters can apply to DHS to support individual eligible Venezuelans via www.uscis.gov/Venezuela. Individuals and representatives of organizations seeking to apply as a supporter must declare the organization's financial support and they must pass security background checks to protect against exploitation and abuse.

The State Department will also engage in a robust in-region messaging campaign to communicate about this new process and the consequences of attempting irregular entry.

More information will be available at www.uscis.gov/Venezuela in the coming days.

Today's actions are part of the Biden-Harris Administration's ongoing efforts to reduce irregular migration throughout the Western Hemisphere, including through the U.S. Strategy for Addressing the Root Causes of Migration and the multinational Los Angeles Declaration on Migration and Protection. The process announced today is one more element of the United States' multilateral approach to addressing irregular migration that is impacting countries

CHNV-FRN-00749

throughout Latin America, and it is premised on pairing increased enforcement in response to irregular immigration with the development of lawful and safe pathways for qualifying individuals.

Venezuelans have been migrating throughout the hemisphere since approximately 2014, yet the level of irregular migration of Venezuelans has increased dramatically throughout the hemisphere in the past several years. There are currently 2.4 million Venezuelans residing in Colombia. More than 25% of Venezuela's population has left the country.  The United States is seeing a rising rate of Venezuelans encountered at our border over the past two years, which has surged in the last few months. Average monthly unique encounters of Venezuelan nationals at the land border totaled 15,494 in FY 2022, rising further to over 25,000 in August and 33,000 in September, compared to a monthly average of 127 unique encounters from FY 2014–
2019.  Of note, unique encounters of Venezuelan nationals rose 293 percent between FY 2021 and FY 2022, while unique encounters of all other nationalities combined increased 45 percent. Panama is currently seeing more than 3,000 people, mostly Venezuelan nationals, crossing into its territory from Colombia via the Darién jungle each day.

The United States, in partnership with Mexico, also is committing to further expanding lawful labor pathways for Mexican and Northern Central American nationals. This last year, the United States doubled the number of H-2 visas issued to nationals of the Northern Central American countries of Guatemala, Honduras, and El Salvador. Today, we are announcing the largest H-2B supplemental in history for Fiscal Year 2023: nearly 65,000 new H-2B visas, including a set-aside of 20,000 to nationals of Northern Central American countries and Haiti. Historically, approximately 90% of these visas have been used by Mexican nationals.  This increase is coupled with strong measures to protect both U.S. and H-2B workers. Concurrent with this announcement, the Biden-Harris Administration is launching a White House-led Worker Protection Task Force to ensure ethical recruitment and dignified labor standards for foreign workers alongside protections for U.S. workers.

The United States also is renewing its commitment to tackle the root causes of migration and support countries in the region that are most impacted by these flows. For that reason, the United States has announced nearly $817 million in new assistance since September 2022 under the Los Angeles Declaration on Migration and Protection. This includes more than $240 million in new regional humanitarian and security assistance, $376 million in additional humanitarian assistance for people affected by the Venezuela regional crisis, and more than $199 million in additional humanitarian assistance for Mexico and Central America.

###

CHNV-FRN-00750

## Appendix I(c) – Announcement – DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes

https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and

WASHINGTON – The Department of Homeland Security (DHS) continues to prepare for the end of the Title 42 public health order, which is currently the subject of multiple court orders, and a return to processing all noncitizens under the Department's Title 8 immigration authorities. To that end, DHS today announced new border enforcement measures to improve border security, limit irregular migration, and create additional safe and orderly processes for people fleeing humanitarian crises to lawfully come to the United States. These measures, taken together, are concrete steps to enhance the security of our border while the Title 42 public health order is in place, and that DHS will continue to build on in preparation for the Title 42 order being lifted.

- DHS is establishing new parole processes for Cubans, Haitians, and Nicaraguans, modeled on the successful processes for Venezuelans and Ukrainians, which combine safe, orderly, and lawful pathways to the United States, including authorization to work, with significant consequences for those who fail to use those pathways. We are also continuing the process with respect to Venezuelans.

- Through the CBP One app, we are also providing a new mechanism for noncitizens to schedule appointments to present themselves at ports of entry, facilitating safe and orderly arrivals. Initially this will be used for those seeking an exception from the Title 42 public health order. Once the Title 42 order is no longer in place, CBP One will be used to help ensure safe and orderly processing at ports of entry.

- DHS is increasing and enhancing the use of expedited removal under Title 8 authorities for those who cannot be processed under the Title 42 public health order. These efforts include surging personnel and resources and enrolling individuals under the asylum processing interim final rule published in March 2022.

- As a complement to these efforts, and in response to the unprecedented surge in migration across the hemisphere and to reduce encounters at our border, DHS and the Department of Justice (DOJ) intend to shortly issue a proposed rule that will, subject to public comment, incentivize the use of the new and existing lawful processes available in the Unites States and partner nations, and place certain conditions on asylum eligibility for those who fail to do so.

DHS will continue to monitor developments on the southwest border and will accelerate or implement additional measures, as needed, consistent with applicable court orders.

CHNV-FRN-00751

"We can provide humanitarian relief consistent with our values, cut out vicious smuggling organizations, and enforce our laws," said **Secretary Alejandro N. Mayorkas**. "Individuals without a legal basis to remain in the United States will be subject to prompt expulsion or removal. Individuals who are provided a safe, orderly, and lawful path to the United States are less likely to risk their lives traversing thousands of miles in the hands of ruthless smugglers, only to arrive at our southern border and face the legal consequences of unlawful entry."

As required by a combination of the Supreme Court's December 27 order and a separate district court injunction prohibiting the implementation of the CDC termination of the Title 42 public health order, the Title 42 order remains in effect, and individuals who attempt to enter the United States without authorization will continue to be expelled.

### *Country-Specific Enforcement Processes*

Building upon the success of Uniting for Ukraine and the process for Venezuelans announced in October – which combine a safe and lawful pathway with a consequence for failing to use that pathway – today's announcement establishes similar processes for Cuban, Haitian, and Nicaraguan nationals who face unique challenges in their home countries. The Venezuelan process also will continue; Border Patrol saw a dramatic drop – 90 percent – in the number of Venezuelans encountered at the border following the establishment of the program in October. Nationals from Venezuela, Cuba, Haiti, and Nicaragua who do not avail themselves of this process, attempt to enter the United States without authorization, and cannot establish a legal basis to remain will be removed or returned to Mexico, which will accept returns of 30,000 individuals per month who fail to use these new pathways. The expansion of the Venezuela process to Cuba, Haiti, and Nicaragua is contingent on the Government of Mexico's willingness to accept the return or removal of nationals from those countries. It also is responsive to a request from the Government of Mexico to provide additional legal pathways for migrants, and it advances both countries' interests in addressing the effects throughout the hemisphere of deteriorated conditions in these countries.

Specifically, these processes will provide a lawful and streamlined way for qualifying nationals of Cuba, Haiti, Nicaragua, and Venezuela to apply to come to the United States, without having to make the dangerous journey to the border. Through a fully online process, individuals can seek advance authorization to travel to the United States and be considered, on a case-by-case basis, for a temporary grant of parole for up to two years, including employment authorization, provided that they: pass rigorous biometric and biographic national security and public safety screening and vetting; have a supporter in the United States who commits to providing financial and other support; and complete vaccinations and other public health requirements.

Individuals who enter the United States, Mexico, or Panama without authorization following today's announcement will generally be ineligible for these processes. These processes will allow up to 30,000 qualifying nationals per month from all four of these countries to reside

CHNV-FRN-00752

legally in the United States for up to two years and to receive permission to work here, during that period.

Starting tomorrow, potential supporters can apply to DHS to support eligible individuals via www.uscis.gov/CHNV. Individuals and representatives of organizations seeking to apply as supporters must declare their financial support, and they must pass security background checks to protect against exploitation and abuse.

### *Safe and Orderly Processes at Ports of Entry*

To facilitate the safe and orderly arrival of noncitizens seeking an exception from the Title 42 public health order, DHS is expanding use of the free CBP One mobile app for noncitizens to schedule arrival times at ports of entry. Individuals do not need to be at the border to schedule an appointment; expanded access to the app in Central Mexico is designed to discourage noncitizens from congregating near the border in unsafe conditions. Initially, this new scheduling function will allow noncitizens to schedule a time and place to come to a port of entry to seek an exception from the Title 42 public health order for humanitarian reasons based on an individualized assessment of vulnerability. This will replace the current process for individuals seeking exceptions from the Title 42 public health order, which requires noncitizens to submit requests through third party organizations located near the border.

Once the Title 42 public health order is no longer in place, this scheduling mechanism will be available for noncitizens, including those who seek to make asylum claims, to schedule a time to present themselves at a port of entry for inspection and processing, rather than arriving unannounced at a port of entry or attempting to cross in-between ports of entry. Those who use this process will generally be eligible for work authorization during their period of authorized stay.

Individuals who use the CBP One app will be able to schedule an appointment to present themselves at the following ports of entry:

- Arizona: Nogales;

- Texas: Brownsville, Hidalgo, Laredo, Eagle Pass, and El Paso (Paso Del Norte); and

- California: Calexico and San Ysidro (Pedestrian West – El Chaparral).

During their inspection process, noncitizens must verbally attest to their COVID-19 vaccination status and provide, upon request, proof of vaccination against COVID-19 in accordance with Title 19 vaccination requirements.

Individuals will be able to schedule appointments in CBP One in the coming days. The CBP One application is free to download and available in the Apple and Google App Stores as well as at https://www.cbp.gov/about/mobile-apps-directory/cbpone.

49

### *Enhanced Use of Expedited Removal*

We will comply with the court orders that require us to continue enforcing the Title 42 public health order. There are, however, migrants who cannot be expelled pursuant to Title 42 authorities and as a result are processed under Title 8 authorities. For those processed under Title 8, we are increasing and enhancing our use of expedited removal, which allows for the prompt removal of those who do not claim a fear of persecution or torture or are determined not to have a credible fear after an interview with an Asylum Officer, in accordance with established procedures.

This enhanced expedited removal process will include: dedicating additional resources including personnel, transportation, and facilities; optimizing processes across DHS and DOJ; and working with the State Department and countries in the region to increase repatriations. We also will continue to process individuals under the interim final rule published in March 2022 outlining procedures for U.S. Citizenship and Immigration Services to process asylum requests for noncitizens found to have a credible fear. Together, these measures will allow for the prompt removal of those who do not have a legal basis to stay and improve our overall preparedness for when the Title 42 public health order is lifted. Individuals removed under Title 8 are subject to a five-year bar on admission and potential criminal prosecution should they seek to reenter.

### *Notice of Proposed Rulemaking*

As a complement to these efforts, and in response to the unprecedented surge in migration across the hemisphere and to reduce encounters at our border, DHS and DOJ intend to issue a proposed rule to provide that individuals who circumvent available, established pathways to lawful migration, and also fail to seek protection in a country through which they traveled on their way to the United States, will be subject to a rebuttable presumption of asylum ineligibility in the United States unless they meet exceptions that will be specified. Individuals who cannot establish a valid claim to protection under the standards set out in the new rule will be subject to prompt removal under Title 8 authorities, which carries a five-year ban on reentry. DHS and DOJ will invite public comment on the proposed rule.

Overall, through today's announcements, DHS is strengthening the availability of legal, orderly pathways to the United States while imposing consequences on those who fail to use pathways made available to them by the United States and its regional partners.

These new measures complement ongoing efforts to increase refugee resettlement from the Western Hemisphere. The U.S. Government intends to welcome at least 20,000 refugees from Latin America and the Caribbean in Fiscal Year 2023 and 2024, putting the United States on pace to more than triple refugee admissions from the Western Hemisphere this Fiscal Year

CHNV-FRN-00754

alone. This delivers on the President's commitment under the Los Angeles Declaration for Migration and Protection to scale up refugee admissions from the Western Hemisphere.

Taken together, these efforts will: reduce irregular migration by disincentivizing migrants from taking the dangerous journey to the southwest border of the United States and attempting to cross without authorization; significantly expand lawful pathways to the United States for vetted individuals; and reduce the role for – and profits of – smuggling networks that callously endanger migrants' lives for personal gain.

The Department is taking these measures in light of Congress's failure to pass the comprehensive immigration reform measures President Biden proposed on his first day in office and the economic and political instability around the world that is fueling the highest levels of migration since World War II, including throughout the Western Hemisphere. The surge in global migration is testing many nations' immigration systems, including that of the United States. The actions announced today are part of the Biden-Harris Administration's ongoing commitment to enforce our laws and build a fair, orderly, and humane immigration system, and build on efforts outlined in the Department's December 2022 Update on Southwest Border Security and Preparedness. Today's announcements also show the imperative of partner countries working together, as agreed in the Los Angeles Declaration following the Summit of the Americas, to take action against smugglers and provide protection to asylum seekers. Hemispheric challenges require hemispheric solutions.

Everyone agrees that we are operating within a fundamentally broken immigration system. The steps we are taking reflect the constraints of our outdated statutes, which have not been updated in decades and were designed to address a fundamentally different migratory reality than that which exists today along the southwest border and around the world. As it has since its first day in office, the Biden-Harris Administration continues to call on Congress to pass legislation that strengthens border security, holistically addresses the root causes of migration, and improves legal pathways. We also encourage Congress to provide critical funding and advance bipartisan efforts to create a fair, fast, and functioning asylum system – enabling those who merit protection to quickly receive it, and those who do not to quickly be removed. In the absence of such action, the Administration is committed to pursuing every avenue within its authority to secure our borders, enforce our laws, and stay true to our values as we build safe, orderly, and humane processes.

###

51

# Appendix II – Egregious Public Safety (EPS) Concerns

An **EPS** case is defined by USCIS and ICE in the 2020 Memorandum of Agreement (MOA) Between DHS USCIS and DHS ICE Regarding the Referral of Immigration Benefit Fraud and Public Safety Cases as a case where information indicates the noncitizen is under investigation for, has been arrested for (without disposition), or has been convicted of, any of the following:

a) Murder, rape, or sexual abuse of a minor as defined in section 101(a)(43)(A) of the Immigration and Nationality Act (INA).

b) Illicit trafficking of controlled substances as defined in section 101(a)(43)(B) of the INA.

c) Illicit trafficking in firearms or destructive devices as defined in section 101(a)(43)(C) of the INA.

d) Offenses relating to explosive materials or firearms as defined in section 101(a)(43)(E) of the INA.

e) Crimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA.

f) An offense relating to the demand for, or receipt of, ransom as defined in section 101(a)(43)(H) of the INA.

g) An offense relating to child pornography as defined in section 101(a)(43)(I) of the INA.

h) An offense relating to racketeer influenced corrupt organizations as defined in 101(a)(43)(J) of the INA.

i) An offense relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in section 101(a)(43)(K)(iii) of the INA.

j) An offense relating to alien smuggling as defined in section 101(a)(43)(N) of the INA.

k) An offense relating to an attempt or conspiracy to commit any EPS offense in accordance with 101(a)(43)(U) of the INA.

l) An offense related to Human Rights Violators, including aliens who persecuted others as described in sections 101(a)(42)(B), 212(a)(2)(G), 212(a)(3)(E), 212(a)(3)(G), 212e, 237(a)(4)(D), 237(a)(4)(E), 237(a)(4)(F) of the INA, known or suspected street gang members, or Interpol hits.

m) Re-entry after an order of exclusion, deportation or removal subsequent to a conviction for a felony where Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has not been approved.

CHNV-FRN-00756

# Appendix III – Adam Walsh Act

Under the **Adam Walsh Act**, the term "specified offense against a minor" means an offense against a minor (defined as an individual who has not attained the age of 18 years) that involves any of the following:

- An offense (unless committed by a parent or guardian) involving kidnapping;
- An offense (unless committed by a parent or guardian) involving false imprisonment;
- Solicitation to engage in sexual conduct;
- Use in a sexual performance;
- Solicitation to practice prostitution;
- Video voyeurism as described in 18 USC 1801;
- Possession, production, or distribution of child pornography;
- Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such
- conduct; or
- Any conduct that by its nature is a sex offense against a minor.

CHNV-FRN-00757

# Appendix IV – Health and Human Services – 2023 Federal Poverty Guidelines

*Poverty Guidelines for the District of Columbia and 48 Contiguous States*

| 2023 POVERTY GUIDELINES FOR THE 48 CONTIGUOUS STATES AND THE DISTRICT OF COLUMBIA | |
| --- | --- |
| **Persons in family/household** | **Poverty guideline** |
| 1 | $14,580 |
| 2 | $19,720 |
| 3 | $24,860 |
| 4 | $30,000 |
| 5 | $35,140 |
| 6 | $40,280 |
| 7 | $45,420 |
| 8 | $50,560 |
| For families/households with more than 8 persons, add $5,140 for each additional person. | |

54

*Poverty Guidelines for Alaska*

| 2023 POVERTY GUIDELINES FOR ALASKA | |
|---|---|
| Persons in family/household | Poverty guideline |
| 1 | $18,210 |
| 2 | $24,640 |
| 3 | $31,070 |
| 4 | $37,500 |
| 5 | $43,930 |
| 6 | $50,360 |
| 7 | $56,790 |
| 8 | $63,220 |

For families/households with more than 8 persons, add $6,430 for each additional person.

CHNV-FRN-00759

*Poverty Guidelines for Hawaii*

| 2023 POVERTY GUIDELINES FOR HAWAII | |
|---|---|
| **Persons in family/household** | **Poverty guideline** |
| 1 | $16,770 |
| 2 | $22,680 |
| 3 | $28,590 |
| 4 | $34,500 |
| 5 | $40,410 |
| 6 | $46,320 |
| 7 | $52,230 |
| 8 | $58,140 |
| For families/households with more than 8 persons, add $5,910 for each additional person. | |

CHNV-FRN-00760

# Appendix V – Duplicate Case Process Map



CHNV-FRN-00761

# Appendix VI – TPS Evaluation Process Map



CHNV-FRN-00762

## Administrative Issues

o *Why are there two form – Form I-134 and Form I-134A?  And what does it mean for my review?*

The Form I-134, Declaration of Financial Support, was utilized by supporters filing for individual beneficiaries for both *Uniting for Ukraine* and *Process for Venezuelans*.  In January 2023, when *Processes for Cuba, Haiti, and Nicaragua* was announced, USCIS amended the Form I-134 to the Form I-134A, *Online Request to be a Financial Supporter and Declaration of Financial Support*, under the direction of the Office of Information and Regulatory Affairs (OIRA), a Division within the Office of Management and Budget (OMB).

Form I-134A is the only form being used for both *Uniting for Ukraine (U4U) and Processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV).*

o *What Teams Channel should I post questions to?*

I-134A Review Team Leads will post updated guidance in the General channel. You may request assistance from subject matter experts (SMEs) in your designated Teams Chat:

- USCIS Detailees should use the USCIS Detailee Reviewers Discussion Channel
- VER Staff should use the VER Staff Reviewer Discussion Channel

o *Does a Supporter have to file a Form I-134A for every beneficiary including minor children of parents claimed on a Form I-134A?*

Yes, a Form I-134A needs to be filed for every individual separately; for every individual beneficiary including minor children.

o *If I catch a mistake, what should I do if I confirmed already?*

Be careful when selecting Confirmation or Non-confirmation.  But if you make a mistake and select the wrong decision (confirm vs non-confirm), please email your Lead and SC Marianna Paredes with the case information ASAP.

The ELIS team has developed a pop-up to remind you of the decision you are rendering.  The ELIS team has also created a re-assess (re-open) feature that is available to a Level 6 Supervisor.

CHNV-FRN-00763

**Review Process**

o  ***Does the lawful Status have to be the front and back of the document?***

No, the evidence can be the front of the document if it provides enough information to confirm the lawful status (example LPR card front) in other USCIS systems.

o  ***Can we accept an expired US passport for Lawful Status?***

Yes, we can accept an expired US passport to evidence lawful status (a US Citizen) for the supporter.

o  ***Can I render a non-confirmation decision without a QA Review?***

We are only doing a QA review on a financial non-confirmation.  If you wish to non-confirm a supporter for lack of financials, please place case receipt number on the Case Tracker on the Form I- 134 Review Team – Teams Page.

However, in the following categories, a decision can be rendered without a QA Review:

- If there is no beneficiary listed on Form I-134, please issue a non-confirmation, you do not need to place that case on the spreadsheet.  We have seen some "over eager" folks just wanting to help, but they must name the individual they are helping.

- If a supporter does not submit ***any*** financial evidence, issue a non-confirmation.  If you do not see any tax returns, any bank accounts, any investment accounts, any financials at all, go ahead and issue a non-confirmation.  There is no need to submit the case on the spreadsheet.

- If you see a supporter that has an asylum application pending, that is not considered lawful status eligibility to support.  We have seen supporters submit evidence of their asylum application pending to be either an asylum application receipt or an Employment Authorization (c)(8).  You can render a non-confirmation without QA review.

   o  Please note that some asylum applicants may have an underlying non-immigrant visa that allows them to be in lawful status, i.e. TPS, J-1 student visa, F-1 student visa, and/or work related visa.  If you have any questions, please submit them in the "Reviewer Discussion" section of the U4U – Verifications Team site.

o  ***Can I render a decision if there is an open TECS Task?***

Currently ELIS has corrected the TECS glitch and is not releasing any cases into Case Review unless the TECS check has been run.  However, if you have any cases with an open TECS task.  Do not assign the TECS task to yourself.  It will be assigned automatically to someone in FDNS for review.  So, if you have a case with a result and it isn't resolved, just put it aside and wait till the TECS hit is resolved.  If you see this green light banner result you can proceed:

CHNV-FRN-00764



If you see this red light banner result, please place on the tracker for further review for now:



o ***What do I do if the supporter leaves Part 3, Question 27, Question 28, or Question 29 blank or with a negative response on whether they intend to provide financial support to the Beneficiary?***

These questions were added to understand the intent of the supporter. If a supporter simply answers "yes" for all three questions, you can non-confirm them. However, if there is a response, you should continue processing.

o ***What do I do if the Beneficiary does not have a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Passport and/or the Beneficiary is not Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan?***

If you see a Beneficiary that does not have a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Passport and/or the Beneficiary is not Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan, you should render a decision for the supporter (confirmation or non-confirmation), without it going for QA review. Based upon feedback with CBP, myUSCIS has built in an attestation for the Beneficiary to explain how they may be connected to a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Beneficiary. We are not reviewing the Beneficiary data as CBP will be making that final determination.

o ***What do I do if I see on the worksheet it says "Applicant is a USC. This case should not be approved."***

There is a process with the CIS worksheet for US Citizens, it will say "Applicant is a USC. This case should not be approved" or that you have to issue an A number. This is a statement in ELIS and does not affect our review process. Continue to review the case as normal and do ***Not*** issue an A number for a USC.

CHNV-FRN-00765

| Card Number | | |
| Card Type | | |
| Class of Admission (COA) | • No Data ✕ | • USC ✕ ❶ |
| Port of Entry (POE) | • No Data ✕ | Applicant is a United States citizen. This case should not be approved. |
| Date of Entry | • No Data ✕ | • 05/15/2019 ✕ |

s Filighera

---

o **When do I update name and DOB and what happens?**

When the document or ELIS data clearly shows a supporter made a typo in the Form I-134A application process you can update name and DOB. This will automatically initiate another TECS check and could create a task that will hold the case from being able to be rendered. There is a known issue with ELIS where some DOBs may be off by 1 day due to time zone issues. You *can* update the DOB if the supporter DOB entered on the form does not match the uploaded identity document.

5. Under the Date of Birth section for the supporter, you can add a new DOB (upper right "+ Add" button
6. Once added, at the far-right side for the correct DOB, click on the 3 dots
7. A drop down will appear indicating Make Primary or Make Inactive
8. Select Make Primary and the "N" in the Primary column will change to "Y"

We understand that a new TECS check will be re-run if a new DOB is entered into ELIS. If you have any of these, you may correct the DOB based on the document upload.

o **Does relationship of beneficiary to supporter matter?**

No, we have seen the relationship question filled in and we have seen the relationship question to be empty.

o **What does it mean if my "Case Review - Suspended," in the context of 10+ or more Beneficiaries?**

ELIS has built in automatic referral to FDNS when a supporter files more than ten (10) I-134/I-134As beneficiary applications. This automatic referral is triggered automatically when the eleventh application is filed. The automatic referral for 11 cases also includes any duplicate filings that a supporter may have filed. Once a referral is made to FDNS, the case will now be listed as "Case Review - Suspended." Until FDNS releases it or resolves it, a reviewer will be unable to review the case.

FDNS completes a case by uploading a Record of Action (ROA) for a Tier 2 review before going back to reviewers. In some cases, the application may be "taken" over by Tier 2 reviewer and finalized.

CHNV-FRN-00766

## Financial Questions

o **When reviewing a supporter tax return do I use adjusted gross income or taxable income?**

You will want to review the supporter's Adjusted Gross Income **NOT** their taxable income.

o **What is considered Federal Means-Tested benefits?**

Income from illegal sources or Means-Tested public benefits, as defined in 8 CFR 213a.1, is excluded from consideration in meeting at least 100% of the HHS poverty guidelines.

This includes public benefit, which is funded in whole or in part by funds provided by the Federal Government and/or State Government. Some examples we have seen include, but are not limited to, the Federal Child Tax Credit that was administered last Summer, public assistance funds, and/or state assistance funds.

o **How do I calculate household total members?**

For calculating household total members for the purposes of the Form I-134, you look to see how many dependents is first declared on the Form I-134. If there is evidence of a Tax Filing, you also look to see how many dependents are declared on the Tax Filing. It is possible that there is a difference between the two forms as a spouse may not be included on the Form I-134.

Under the totality of the circumstances, look to see what the lowest number of dependents and/or highest income is to better assist the supporter. Thus, if it helps them calculate a lower number as declared on the Form I-134 and you are only using the supporter's income, then use that information. However, if you need to pull the spouse's income then you add the spouse as a dependent for household income purposes.

o **Is a supporter required to provide tax information?**

Tax documentation is not a requirement. However, the supporter does need to provide evidence to show enough liquid assets to exceed the poverty threshold.

CHNV-FRN-00767

**NOTICE OF REVOCATION OF PAROLE-BASED EMPLOYMENT AUTHORIZATION**

USCIS is hereby revoking your employment authorization for the reason(s) noted below.

Generally, we grant employment authorization under 8 CFR 274a.12(c)(11) to applicants who:

- Are in a valid period of parole as evidenced by a valid Form I-94, Arrival/Departure Record, that shows he or she was paroled into the United States under section 212(d)(5) of the Immigration and Nationality Act (INA).

DHS records indicate that your parole has expired or been terminated.  In response to the Notice of Intent to Revoke Parole-Based Employment Authorization, you did not submit any evidence showing that your parole was renewed or extended.

Because your parole has expired or been terminated, your employment authorization under 8 CFR 274a.12(c)(11) is revoked.  This decision has no effect on future applications, petitions, or requests you may file with USCIS or other employment authorization that was granted under another section of federal regulations.

You may not appeal this decision.  However, if you believe your employment authorization was revoked in error, you may file a motion to reopen and/or a motion to reconsider using Form I-290B, Notice of Appeal or Motion.  You must submit Form I-290B within 30 calendar days of the date of this notice.  Include the current fee when submitting Form I-290B, and mail to the correct address as provided on the Form I-290B website at https://www.uscis.gov/i-290b.  To find Form I-290B or if you need more information, you can use our many online tools (uscis.gov/tools) including our virtual assistant, Emma.  If you are not able to find the information you need online, you can reach out to the USCIS Contact Center by visiting uscis.gov/contact center.



MENU

Home > Humanitarian > Processes for Cubans, Haitians, Nicaraguans, and Venezuelans

# Processes for Cubans, Haitians, Nicaraguans, and Venezuelans

 **Archived Content**

The information on this page is out of date. However, some of the content may still be useful, so we have archived the page.

Español| Kreyòl Ayisyen|

**ALERT:** DHS has resumed processing of Advance Travel Authorizations (ATAs) in the parole processes for certain nationals of Cuba, Haiti, Nicaragua, and Venezuela (CHNV). As part of an internal review, DHS has implemented updated safeguards to the CHNV processes, incorporating rigorous enhanced vetting in the supporter application process. Potential CHNV beneficiaries should continue to monitor their myUSCIS account for updated information regarding their ATAs. Individuals with a valid, unexpired ATA are permitted to travel.

**ALERT:** You are likely eligible to apply for an employment authorization document (EAD) to legally work in the United States if:

- You were recently paroled into the United States and that parole remains valid; or
- You have applied for asylum and that application has been pending for at least 150 days.

If you have not already started the EAD application process, you can begin here by creating a USCIS account online and filing Form-I-765. We will mail your work permit to the address you provided in your application if your application is approved. If necessary, you can file a paper application for Form I-765 instead.

**ALERT:** Updated Review Process for the Processes for Cubans, Haitians, Nicaraguans, and Venezuelans

The U.S. government may grant advance travel authorization to up to 30,000 noncitizens each month to seek parole on a case-by-case basis under the processes for Cubans, Haitians, Nicaraguans, and Venezuelans. Due to high interest in these processes, we are updating the review process effective May 17, 2023. Under the new review process, we will randomly select about half of the monthly total of Forms I-134A, Online Request to be a Supporter and Declaration of Financial Support, regardless of filing date, from the entire pending workload to review. We will review the other half of the monthly total of Forms I-134A based on when the case was submitted under the first-in, first-out method, which prioritizes the oldest Forms I-134A for review. This is intended to maintain a meaningful and equitable opportunity for all beneficiaries of a Form I-134A to move forward through the process and seek advance travel authorization. For more information, see our web alert.

**ⓘ ALERT:** Access to the processes is free. Neither the U.S.-based supporter nor the beneficiary is required to pay the U.S. government a fee to file the Form I-134A, be considered for travel authorization, or parole. Beware of any scams or potential exploitation by anyone who asks for money associated with participation in this process.

DHS has announced processes through which nationals of Cuba, Haiti, Nicaragua, and Venezuela, and their immediate family members, may request to come to the United States temporarily in a safe and orderly way. Qualified beneficiaries who are outside the United States and lack U.S. entry documents may be considered, on a case-by-case basis, for advanced authorization to travel and a temporary period of parole for up to two years for urgent humanitarian reasons or significant public benefit. To participate, eligible beneficiaries must:

- Have a confirmed supporter in the United States;
- Undergo and clear robust security vetting;
- Meet other eligibility criteria; and
- Warrant a favorable exercise of discretion.

Individuals participating in these processes must have a supporter in the United States who agrees to provide them with financial support for the duration of their parole in the United States. The first step in the process is for the U.S.-based supporter to file a Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, with USCIS for each beneficiary they seek to support, including minor children. The U.S. government will then review the supporter information provided in the Form I-134 to ensure that they are able to financially support the beneficiaries they are agreeing to support.

If an individual is paroled into the United States under these processes, their parole will automatically expire at the end of their parole period. Re-parole is not available under these processes. Parolees will need to leave the United States before their parole period expires unless they have obtained or applied for an immigration benefit that would allow them to remain in the United States after their parole period expires.

See below for additional information on the processes and country specific eligibility requirements. Additional information is also available on our Frequently Asked Questions About the Processes for Cubans, Haitians, Nicaraguans, and Venezuelans page.

↗ Close All     ↗ Open All

## Eligibility    ⌃

| Term | Definition |
|------|-----------|
| Supporter | An individual who holds lawful status in the United States or is a parolee or beneficiary of deferred action or Deferred Enforced Departure (DED) who has passed security and background vetting and demonstrated sufficient financial resources to receive, maintain, and support the individual(s) whom they commit to supporting for the duration of their stay in the United States.<br><br>Examples of individuals who meet the supporter requirement include:<br><br>• U.S. citizens and nationals;<br>• Lawful permanent residents, lawful temporary residents, and conditional permanent residents;<br>• Nonimmigrants in lawful status (who maintain their nonimmigrant status and have not violated any of the terms or conditions of their nonimmigrant status);<br>• Asylees, refugees, and parolees;<br>• Individuals granted Temporary Protected Status (TPS); and<br><br>Beneficiaries of deferred action (including deferred action for childhood arrivals) or DED. |
| Beneficiary | A national of Cuba, Haiti, Nicaragua, or Venezuela (or their immediate family member of any nationality) who is outside the United States and who may be considered for parole under these processes.<br><br>Immediate family members of any nationality in these processes include:<br><br>• A spouse or common-law partner; and<br>• Unmarried child(ren) under the age of 21. NOTE: If a child is under 18, they must be traveling with a parent or legal guardian in order to use this process. |

**Who May be Considered for Advance Travel Authorization**

In order to be eligible to request and ultimately be considered for an advance authorization to travel to the United States to seek parole under these processes, beneficiaries must:

• Be outside the United States;
• Be a national of Cuba, Haiti, Nicaragua, or Venezuela; or be an immediate family member (spouse, common-law partner, and/or unmarried child under the age of 21) who is traveling with an eligible Cuban, Haitian, Nicaraguan, or Venezuelan;

- Have a U.S.-based supporter who filed a Form I-134A on their behalf that USCIS has vetted and confirmed;

- Possess an unexpired passport valid for international travel;

- Provide for their own commercial travel to an air U.S. port of entry and final U.S. destination;

  Undergo and pass required national security and public safety vetting;

- Comply with all additional requirements, including vaccination requirements and other public health guidelines; and

- Demonstrate that a grant of parole is warranted based on significant public benefit or urgent humanitarian reasons, and that a favorable exercise of discretion is otherwise merited.

An individual is ineligible to be considered for parole under these processes if that person is a dual national or permanent resident of, or holds refugee status in, another country, unless DHS operates a similar parole process for the country's nationals. This requirement does not apply to immediate family members (spouse, common-law partner, or unmarried child under the age of 21) of an eligible national of Cuba, Haiti, Nicaragua, or Venezuela with whom they are traveling.

In addition, a potential beneficiary is ineligible for advance authorization to travel to the United States as well as parole under these processes if that person:

- Fails to pass national security and public safety vetting or is otherwise deemed not to merit a favorable exercise of discretion;

- Has been ordered removed from the United States within the prior five years or is subject to a bar to admissibility based on a prior removal order;

- Has crossed irregularly into the United States, between the ports of entry, after the date the process was announced (for Venezuelans, after Oct. 19, 2022; for Cubans, Haitians, and Nicaraguans, after Jan. 9, 2023), except individuals permitted a single instance of voluntary departure pursuant to INA § 240B, 8 U.S.C. § 1229c or withdrawal of their application for admission pursuant to INA § 235(a)(4), 8 U.S.C. § 1225(a)(4) will remain eligible;

- Has irregularly crossed the Mexican or Panamanian border after the date the process was announced (for Venezuelans, after Oct. 19, 2022; for Cubans, Haitians, and Nicaraguans, after Jan. 9, 2023);

- Is Cuban or Haitian and has been interdicted at sea after April 27, 2023; or

- Is under 18 and not traveling through this process accompanied by a parent or legal guardian.

**Important Note about Venezuelan Passports**

The beneficiary must have a valid, unexpired passport. Certified extensions of passport validity serve to meet this requirement. If a beneficiary's passport validity has been extended, the expiration date of the extension should be reflected as the passport expiration date. U.S. Customs and Border Protection (CBP) will not authorize travel if the beneficiary's passport or extension is expired.

Specific to Venezuelan passports, consistent with the National Assembly decree of June 25, 2024, Venezuelan passports issued before the date of this decree remain valid for ten years beyond the

CHNV-FRN-00772

expiration date printed in the passport or beyond the expiration date of the last passport extension ("prórroga"), whichever is later.

## Unaccompanied Children 

**Children under the age of 18 arriving without their parent or legal guardian are not eligible for advance authorization to travel or consideration for parole under the processes for Cubans, Haitians, Nicaraguans, and Venezuelans.** If a child under age 18 arrives at a U.S. port of entry and is not traveling with their parent or legal guardian, they may be placed in the custody of the Department of Health and Human Services (HHS), as required by law under the Trafficking Victims Protection Reauthorization Act of 2008. For more information, please visit the HHS Unaccompanied Children webpage.

Children under age 18 who are not traveling with a parent or legal guardian, but who are coming to the United States to meet a parent or legal guardian, may instead seek parole through the standard Form I-131 parole process. In the standard Form I-131 parole process, children under age 18 who travel without a parent or legal guardian will need, among other evidence, written permission from all adults with legal custody of the child (that is, their parents or legal guardians) to travel to the United States.

Additional evidence submitted with the Form I-131 should include:

- The duration of their stay in the United States; and

- Evidence of relationship between the child under age 18 and the parent or legal guardian that the child is traveling to reunite with in the United States (see Step 5, below).

If the legal guardian is providing the written permission, the requestor must include proof of legal guardianship issued by the appropriate government authority. In addition, the application should include a statement about the relationship of the child to the person filing the Form I-131, and whether they intend to provide care and custody of the child in the United States or reunite the child with a parent or legal guardian in the United States. For more information, please see our Guidance on Evidence for Certain Types of Humanitarian or Significant Public Benefit Parole page, which has information about the requirements for requesting parole for children.

You may request a fee waiver when submitting a Form I-131 for a child as described in the above paragraph. For more information on how to request a fee waiver, please see the Form I-912, Request for Fee Waiver, webpage.

**Pathway for Children Under Age 18 Outside the United States Who Have Parents or Legal Guardians in the United States**

If a child's parents or legal guardians have lawful status in the United States, are parolees (including a parolee under the processes for Cubans, Haitians, Nicaraguans, and Venezuelans), or are beneficiaries of deferred action or Deferred Enforced Departure (DED), and the parents or legal guardians have documentation or authorization to reenter the United States after returning from a trip outside the United States, they may be eligible to travel outside the United States to accompany their child to the United States. The child must otherwise be eligible for consideration for parole under the processes for Cubans, Haitians, Nicaraguans, or Venezuelans.

CHNV-FRN-00773

To request consideration under the processes for Cubans, Haitians, Nicaraguans, or Venezuelans, a supporter must submit a Form I-134A on behalf of the child under age 18 seeking to reunite with their parent or legal guardian in the United States. The parent or legal guardian of the child may file Form I-134A on the child's behalf if the parent or legal guardian has lawful status in the United States, is a parolee, or is a beneficiary of deferred action or DED. However, the U.S.-based supporter does not need to be related to the beneficiary for whom they have filed Form I-134A.

**After** we have confirmed the Form I-134A, the supporter should follow these steps:

- Step 1: Log in to their online account.

- Step 2: From the top of the webpage, select the My Account drop-down menu and select Inbox.

- Step 3: Click on the New Message button.

- Step 4: For the subject, select "Other" from the drop-down menu, and for the case receipt number, select the receipt number for Form I-134A, Online Request to be a Supporter and Declaration of Financial Support.

- Step 5: In the message field, write "CHNV Child Reunification" and state that they are contacting USCIS on behalf of a child under age 18 who is eligible for the processes for Cubans, Haitians, Nicaraguans, or Venezuelans, and who has a parent or legal guardian who can depart and reenter the United States to accompany their child so the child can use the processes for Cubans, Haitians, Nicaraguans, or Venezuelans. In addition, the supporter should upload in their online account this supporting documentation:

- Evidence of the parental relationship or legal guardianship of the child. (Evidence may include a birth certificate for the child and identity documents for the parent or legal guardian. Generally, evidence of legal guardianship requires a legal or administrative process involving the courts or other recognized government entity. A power of attorney or written or notarized statement is not a formally recognized arrangement.)

- Evidence that the parent or legal guardian has documentation or authorization to reenter the United States. This documentation may include proof of U.S. citizenship, a Green Card, or an Advance Parole Document (Application for Travel Documents, Parole Documents, and Arrival/Departure Records Form I-131).

- A signed statement affirming that the parent or legal guardian will accompany the child to the United States and provide care and physical custody of that child in the United States.

## Who Can be a Supporter ⌃

U.S.-based supporters will initiate an online request on behalf of a named beneficiary, by submitting a Form I-134A to USCIS for each beneficiary, including minor children. Supporters can be individuals filing independently, filing with other individuals, or filing on behalf of organizations, businesses, or other entities. There is no fee required to file Form I-134A. The supporter will be vetted by the U.S. government to protect against exploitation and abuse and to ensure that they are able to financially support the beneficiary they are agreeing to support.

CHNV-FRN-00774

To serve as a supporter, an individual or individual representing an entity must:

- Be a U.S. citizen, national, or lawful permanent resident; hold a lawful status in the United States such as Temporary Protected Status or asylum; or be a parolee or recipient of deferred action or Deferred Enforced Departure;

- Pass security and background vetting, including for public safety, national security, human trafficking, and exploitation concerns; and

- Demonstrate sufficient financial resources to receive, maintain, and support the individual(s) they are agreeing to support for the duration of their parole period.

Supporters who file Form I-134A on behalf of a beneficiary under these processes must be willing and able to receive, maintain, and support the beneficiary listed in Form I-134A for the duration of their parole. Examples of the types of support for beneficiaries that supporters should keep in mind when considering their ability to meet this commitment include:

- Receiving the beneficiary upon arrival in the United States and transporting them to initial housing;

- Ensuring that the beneficiary has safe and appropriate housing for the duration of their parole and initial basic necessities;

- As appropriate, helping the beneficiary complete necessary paperwork such as for employment authorization, for a Social Security card, and for services for which they may be eligible;

- Ensuring that the beneficiary's health care and medical needs are met for the duration of the parole; and

- As appropriate, assisting the beneficiary with accessing education, learning English, securing employment, and enrolling children in school.

Supporters must include the name of the beneficiary on Form I-134A. Supporters may not file a Form I-134A on behalf of an unnamed beneficiary. A supporter may agree to support more than one beneficiary, such as for different members of a family group, but must file a separate Form I-134A for each beneficiary.

**Supporters must file a separate Form I-134A for each beneficiary, even minor children.** Multiple supporters may join together to support a beneficiary. In this case, a supporter should file a Form I-134A and in the filing include supplementary evidence demonstrating the identity of, and resources to be provided by, the additional supporters and attach a statement explaining the intent to share responsibility to support the beneficiary. These supporters' ability to support a beneficiary will be assessed collectively.

Organizations, businesses, and other entities can play a critical role in providing support for beneficiaries arriving through this process. Although an individual is required to file and sign the Form I-134A, they can do so in association with or on behalf of an organization, business, or other entity that will provide some or all of the necessary support to the beneficiary. Individual supporters filing with or on behalf of an organization, business, or other entity should submit evidence of the entity's commitment to support the beneficiary when they file the Form I-134A. This can be demonstrated through a letter of commitment or other documentation from an officer or other credible representative of the organization, business, or other entity describing the monetary or other types of support (such as housing, basic necessities, transportation, etc.) the entity will be providing to the specific beneficiary. Individuals who are filing in

association with an organization, business, or other entity do not need to submit their personal financial information, if the level of support demonstrated by the entity is sufficient to support the beneficiary.

Organizations outside of the government may be able to help potential supporters and beneficiaries to prepare for this process. Two organizations that specialize in providing the public with information about providing welcome to newcomers and resources to support participation in these processes are listed below.

- [Welcome.us](#)⧉ provides information on welcoming and supporting newcomer populations.
- [Community Sponsorship Hub](#)⧉ has established the [Sponsor Circle Program](#)⧉, which can provide resources and ongoing guidance to supporters.

This information is provided for informational purposes only. DHS does not endorse these entities. Using these entities in lieu of any other entity does not give any parolee preferential treatment in the adjudication of their application.

---

## Process Steps                                                                                  

Beneficiaries cannot directly apply for these processes. A supporter in the United States must first complete and file Form I-134A with USCIS on behalf of a beneficiary and include information about them and contact details, such as an email address. If we deem the Form I-134A sufficient, in our discretion, we will send the beneficiary information about the next step in the process to be considered for authorization to travel to the United States and parole consideration at an airport of entry.

Once beneficiaries receive their travel authorization, they should arrange to fly directly to their final destination in the United States. Upon arrival at the interior port of entry, individuals will be inspected by CBP and required to submit additional information, to include fingerprints, for further biometric vetting, and then be considered for a discretionary grant of parole. Those who attempt to enter the U.S. at land ports of entry will not be considered for parole through this process and will generally be denied entry.

The key steps in the processes include:

### *Step 1: Financial Support*

- A U.S.-based supporter will submit a Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, with USCIS through the online myUSCIS web portal to initiate the process. The Form I-134A identifies and collects information on both the supporter and the beneficiary. The supporter must submit a separate Form I-134A for each beneficiary they are seeking to support, including immediate family members and minor children.

- We will then vet the supporter to ensure that they are able to financially support the individual they are agreeing to support and to protect against exploitation and abuse. USCIS, in our discretion, must vet and confirm supporters before they move forward in the process.

### *Step 2: Submit Biographic Information*

- If we confirm a supporter, the listed beneficiary will receive an email from us with instructions on how to create a USCIS online account and other next steps. The beneficiary must confirm their

biographic information in myUSCIS and attest to meeting the eligibility requirements.

- As part of confirming eligibility in their online account, individuals who seek authorization to travel to the United States must confirm that they meet public health requirements, including certain vaccination requirements.

### Step 3: Submit Request in CBP One Mobile Application

- After confirming biographic information in their online account and completing required eligibility attestations, the beneficiary will receive instructions through myUSCIS on how to access the CBP One mobile application. The beneficiary must enter their biographic information into CBP One and provide a photo.

### Step 4: Advance Travel Authorization to the United States

- After completing Step 3, the beneficiary will receive a notice in their online account confirming whether CBP will, in its discretion, provide them with advance authorization to travel to the United States to seek a discretionary grant of parole on a case-by-case basis.

- If approved, this authorization is valid for 90 days. Beneficiaries are responsible for securing their own travel via air to the United States. Approval of advance authorization to travel does not guarantee entry or parole into the United States at a U.S. port of entry. Parole is a discretionary determination made by CBP at the port of entry, based on a finding that parole is warranted due to urgent humanitarian reasons or significant public benefit.

### Step 5: Seeking Parole at the Port of Entry

- When a beneficiary arrives a port of entry, CBP will inspect them and consider them for a grant of discretionary parole on a case-by-case basis.

- As part of the inspection, beneficiaries will undergo additional screening and vetting, to include additional fingerprint biometric vetting consistent with the CBP inspection process. Individuals who are determined to pose a national security or public safety threat, or otherwise not warrant parole as a matter of discretion upon inspection, will be processed under an appropriate processing pathway and may be referred to U.S. Immigration and Customs Enforcement (ICE).

### Step 6: Parole

- Individuals granted parole under these processes generally will be paroled into the United States for a period of up to two years, subject to applicable health and vetting requirements, and will be eligible to apply for employment authorization under existing regulations.

- Individuals granted parole may request work authorization from USCIS by filing a Form I-765, Application for Employment Authorization, either online or via mail.

---

## What to Expect After Filing Form I-134A                                    ^

After the supporter files the Form I-134A with USCIS, we will review the form and supporting evidence to ensure that the supporter has sufficient financial resources to support the beneficiary for the duration of the parole period and conduct background checks on the supporter. We will determine whether the

CHNV-FRN-00777

Form I-134A is sufficient, and we may request additional evidence to make our determination. If approved, beneficiaries will receive an email from USCIS with instructions on how to set up a USCIS online account and other next steps. Individuals should check their email, including spam and junk folders, for important messages from USCIS.

**If the Form I-134A is Sufficient**

If we confirm in our discretion that the Form I-134A is sufficient, the beneficiary will receive an email from USCIS with instructions on how to set up a USCIS online account and other next steps. The beneficiary must confirm their biographic information on myUSCIS and attest to completion of all requirements, including:

- An attestation affirming that
    - you are not a permanent resident or dual national of any country other than your country of nationality, and that you do not currently hold refugee status in any country, unless DHS operates a similar parole process for the country's nationals; or
    - you are the spouse, common-law partner, or unmarried child under the age of 21 and traveling with an eligible national;
- An attestation to certify understanding of the family relationship requirements for children under 18; and
- An attestation that you have completed vaccine requirements or are eligible for an exception to vaccine requirements for measles, polio, and the first dose of a COVID-19 vaccine approved or authorized by the U.S. Food and Drug Administration (FDA) or Emergency Use Listed (EUL) by the World Health Organization (WHO).

After arriving in the United States, the beneficiary must attest to receiving a medical screening for tuberculosis, including an Interferon-Gamma Release Assay (IGRA) test, within 90 days.

Find more information on vaccine requirements on the preview of the vaccine attestation page .

**If the Form I-134A is Insufficient**

If we are unable to confirm the Form I-134A is sufficient, that decision is final. The beneficiary will receive an email from USCIS notifying them that we determined the Form I-134A filed on their behalf was insufficient. We will not consider the beneficiary for parole under this parole process based on the insufficient Form I-134A. However, the supporter may file a new Form I-134A on behalf of the same or another beneficiary, or a different supporter may file a Form I-134A on behalf of the beneficiary.

**Authorization to Travel to the United States**

Once the beneficiary has confirmed their biographic information and attested to completing all other requirements, we will process their case further. Beneficiaries will receive an email instructing them to check their online account in myUSCIS for the result of their authorization to travel. This authorization is valid for 90 days.

CHNV-FRN-00778

If the beneficiary has been authorized to travel to the United States, they must arrange and fund their own travel. Beneficiaries must arrange to fly to the United States by air directly to an interior port of entry and their final destination.

## After the Beneficiary is Paroled into the United States   

### Applying for Employment Authorization

After you are paroled into the United States, you are eligible to apply for discretionary employment authorization from USCIS. To apply for an Employment Authorization Document (EAD), you must submit Form I-765, Application for Employment Authorization, using the (c)(11) category code with the required fee, or request a fee waiver.

To file Form I-765 online, eligible applicants will access their USCIS online account at my.uscis.gov. You can find the filing fee for Form I-765 by visiting our Fee Schedule page.

Applicants requesting a waiver of the Form I-765 filing fee must either submit Form I-765 on paper by mail or upload a PDF of the form through their USCIS Online Account, with Form I-912, Request for Fee Waiver.

### Obtaining a Social Security Number and Card

We encourage you to apply for a Social Security number (SSN) using Form I-765, Application for Employment Authorization, and following the form instructions. If you request an SSN in Part 2 (Items 13.a-17.b) of your Form I-765, and we approve your Form I-765, we will send that information to the Social Security Administration (SSA), and SSA will assign you an SSN and issue you a Social Security card. SSA will mail your Social Security card directly to the address you provide on Form I-765. SSNs generally are assigned to people who are authorized to work in the United States. SSNs are used to report your wages to the government and to determine your eligibility for Social Security benefits.

If you do not request an SSN on your Form I-765, you can apply for an SSN after you receive your EAD from USCIS using the instructions on SSA's Social Security Number and Card webpage.

### Address Updates

If you are residing in the United States longer than 30 days, you must report your physical address in the United States. If your address changes after you enter the United States, you must notify us within 10 days of the change. Find instructions on how to change your address at uscis.gov/addresschange.

Changing your address online will update the address on file with USCIS for each pending application, petition, or request for which you provide a receipt number when you complete the Online Change of Address form. We will mail secure documents to the address on file. It is important to include the receipt number for any cases pending with USCIS in your address change request, so that we can update the address associated with those cases. You can find the receipt number on the receipt notice (Form I-797C, Notice of Action) that we issued after you filed your application, petition, or request. We send receipt notices to the address listed on the application, petition, or request.

### Termination or Expiration of Your Parole

CHNV-FRN-00779

Your grant of parole only allows you to stay in the United States temporarily for the period on your Form I-94, Arrival/Departure Record, which was issued by U.S. Customs and Border Protection (CBP) during the inspection process at a U.S. port of entry when you arrived in the United States. During your period of parole, you are allowed to temporarily remain in the United States, apply for employment authorization, and apply for any benefits for which you are eligible. As a reminder, you can find the date your parole period expires on your Form I-94. At any time, you may view and print a copy of your most up-to-date Form I-94 at i94.cbp.dhs.gov.

If you have already been paroled into the United States, your parole will automatically be terminated if:

- You depart the United States ;
- You are issued a Notice to Appear and are placed in removal proceedings (unless the NTA indicates otherwise); or
- Your parole period expires.

DHS may also decide to terminate your parole at its discretion for other reasons, such as violating any laws of the United States. If you stay in the United States after your parole expires, officials who encounter you may refer you to ICE for removal immigration proceedings.

Re-parole is not available under these processes. Your parole will automatically expire at the end of your parole period, and you will need to leave the United States before your parole period expires unless you:

- Have applied for an immigration benefit that allows you to remain in the United States;
- Have been granted an immigration benefit that allows you to remain in the United States; or
- Are otherwise authorized by DHS to be in the United States.

When your parole period expires, if you have not applied for or been granted an immigration benefit that allows you to remain in the United States or are not otherwise authorized by DHS to be in the United States:

- Your work authorization is terminated.
- You will begin to accrue unlawful presence, which might impact your eligibility for certain immigration benefits.
- You may be placed in removal proceedings, which would require you to appear in court before an immigration judge and could result in your removal from the United States.

**Leaving the United States**

If DHS grants you advance travel authorization under these processes, you may present it only once for travel to the United States to seek parole at a U.S. port of entry. After you are paroled into the United States, if you want to leave the United States and then return as a parolee, you may request an advance parole document by filing Form I-131, Application for Travel Documents, Parole Documents, and Arrival/Departure Records, before traveling outside the United States. If you leave the United States without getting an advance parole document, you may not be allowed to return to the United States, as your parole will be automatically terminated when you depart. For information on how to apply for an advance parole document while you are in the United States, please see the Form I-131 page.

**Other Information on Immigration Benefits**

CHNV-FRN-00780

You may be eligible to apply for certain immigration benefits with USCIS, such as <u>Temporary Protected Status (TPS)</u> for Venezuelan nationals who resided in the United States before July 31, 2023 under the current TPS Venezuela designation and Haitian nationals who resided in the United States before June 3, 2024; <u>asylum</u>, regardless of country of nationality or current immigration status; or <u>adjustment of status</u> to that of a lawful permanent resident (also known as getting a Green Card). You can find more information on the immigration benefits described below or other options at <u>uscis.gov</u>.

## Contacting USCIS About Form I-134A    ⌃

The best way to contact us depends on the type of inquiry.

**Case Status Inquiries:** You can check the status of your Form I-134A in your <u>USCIS online account</u> or in <u>Case Status Online</u>. Please note that the USCIS Contact Center can only provide the same information about the status of your case that is available in your USCIS online account.

**Corrections:** You can generally correct a submitted Form I-134A in your USCIS online account or by sending a secure message from your USCIS online account. See the "Correcting a Submitted Form I-134A" section on the <u>Frequently Asked Questions about the Processes for Cubans, Haitians, Nicaraguans, and Venezuelans</u> page for more information.

**Other Inquiries:** For other inquiries, see the "Contacting USCIS About Form I-134A" section on the <u>Frequently Asked Questions about the Processes for Cubans, Haitians, Nicaraguans, and Venezuelans</u> page.

## Resources for Victims of Abuse, Violence, or Exploitation    ⌃

Please note that beneficiaries are not obligated to repay, reimburse, work for, serve, marry, or otherwise compensate their supporter in exchange for filing Form I-134 on their behalf or for providing financial support while they are in the United States.

Access to these processes is free. Neither the supporter nor the beneficiary is required to pay the U.S. government a fee for the Form I-134A. Beware of any scams or potential exploitation by anyone who asks for money associated with the Form I-134A or participation in these processes.

DHS recommends the following actions to avoid intimidating situations:

- Avoid individuals who promise to "get you to the United States quickly" if you pay an exorbitant sum of money.

- Keep your passport and other identity documents in your possession at all times.

- If you are concerned that the individual who filed Form I-134A on your behalf is not a legitimate organization or entity or legal representative, see the <u>Scams, Fraud, and Misconduct</u> webpage.

Call the 24-hour National Human Trafficking Hotline at 1-888-373-7888 or report an emergency to law enforcement by calling 911. Trafficking victims, whether or not U.S. citizens, are eligible for services and

CHNV-FRN-00781

immigration assistance.

There are many forms of abuse and exploitation, including domestic violence, forced marriage, and human trafficking. In the United States, there are laws that may help you avoid or escape an abusive situation.

- **Domestic Violence** is a pattern of behavior in a relationship that is used to gain or maintain power and control over an intimate partner, parent, or child. Domestic abuse can involve physical, sexual, emotional, financial, or psychological abuse or threats.

- **Forced marriage** is a marriage that takes place without the consent of one or both people in the marriage. Consent means that you have given your full, free, and informed agreement to marry your intended spouse and to the timing of the marriage. Forced marriage may occur when family members or others use physical or emotional abuse, threats, or deception to force you to marry without your consent. For additional information on forced marriage, please visit the Forced Marriage webpage.

- **Human Trafficking** involves exploiting someone to compel a commercial sex act or forced labor. Generally, this exploitation must involve force, fraud, or coercion to be considered human trafficking. However, if someone under 18 years old is induced to perform a commercial sex act, that is considered human trafficking even if there is no force, fraud, or coercion.

If you have experienced or fear forced marriage, domestic violence, human trafficking, or other abuse, please contact the resources below to receive free help in your language:

- **National Domestic Violence Hotline:** 800-799-7233, 800-787-3224 (TTY), www.ndvh.org ⧉
- **National Center for Missing and Exploited Children:** 800-843-5678, www.missingkids.com ⧉
- **The National Center for Victims of Crime:** 800-394-2255, 800-211-7996 (TTY), www.victimsofcrime.org ⧉
- **National Human Trafficking Hotline:** 888-373-7888, Text: 233733

For more information and additional resources related to gender-based violence, see the DHS Gender-Based Violence Pamphlets.

---

## Protect Yourself from Immigration Scams    ⌃

- We do not want you to become the victim of an immigration scam. If you need legal advice on immigration matters, make sure the person helping you is authorized to give legal advice. Only an attorney or accredited representative working for a Department of Justice recognized organization can give you legal advice. Visit the Avoid Scams page for information and resources.

Some common scams to be aware of include:

- **Government impersonators:**  Look out for individuals who pose as USCIS officials. USCIS will only contact you through official government channels and will not contact you through your personal social media accounts (such as Facebook, Twitter, LinkedIn, etc.).

CHNV-FRN-00782

- **Misleading offers of support:** Look out for individuals who attempt to contact you online or through your social media accounts to offer to be your supporter or connect you to a supporter in exchange for a fee or other form of compensation. Similarly, look out for individuals seeking biographic information from you, such as your passport number or date of birth, through your social media accounts, to offer to support you for parole. Supporters should be able to provide financial support to beneficiaries for up to a 2-year period of parole. Beneficiaries are not obligated to repay, reimburse, work for, serve, marry, or otherwise compensate their supporter in exchange for the potential supporter submitting Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, on their behalf or for providing financial support while they are in the United States. Find more information on potential exploitation and abuse in the Understand Your Rights (PDF) guide.

- **Scam Websites:** Some websites claim to be affiliated with USCIS and offer step-by-step guidance on completing a USCIS application or petition. Make sure your information is from uscis.gov, dhs.gov, or is affiliated with uscis.gov. Make sure the website address ends with .gov.

- **Payments by Phone or Email:** We will never ask you to transfer money to an individual. We do not accept Western Union, MoneyGram, PayPal, or gift cards as payment for immigration fees. In addition, we will never ask you to pay fees to a person on the phone or by email.

- **Notarios Públicos and unauthorized practitioners of immigration law:** In the United States, a notario público is not authorized to provide you with any legal services related to immigration benefits. Only an attorney or an accredited representative working for a Department of Justice (DOJ)-recognized organization can give you legal advice. For more information about finding legal services, visit our website.

## Related Links ⌃

- Employment Resources for Parolees in the United States
- Form I-134A, Online Request to be a Supporter and Declaration of Financial Support
- Form I-134A, Online Request to be a Supporter and Declaration of Financial Support
- Frequently Asked Questions About the Processes for Cubans, Haitians, Nicaraguans, and Venezuelans
- Processes for Cubans, Haitians, Nicaraguans, and Venezuelans Flyer
- Processes for Cubans, Haitians, Nicaraguans, and Venezuelans Flyer (Spanish)
- Processes for Cubans, Haitians, Nicaraguans, and Venezuelans Flyer (Haitian-Creole)

⤢ Close All     ⤢ Open All

Last Reviewed/Updated: 01/20/2025

CHNV-FRN-00783



CHNV-FRN-00784



# Ukraine & CHNV Parolee
# Immigrant Benefit Tracking
### Cumulative Statistics

**Purpose:** This page shows receipts, approvals, and pending for applications/petitions filed by Parolees between each country's program start date through **2/9/2025.** (Start dates: Ukraine: 4/21/22; Venezuela: 10/12/22; Cuba, Haiti, Nicaragua: 1/5/23)

|  | Parole Country | | | | | |
|---|---|---|---|---|---|---|
| **Cumulative Parolee Arrivals:** | Cuba | Haiti | Nicaragua | Ukraine | Venezuela | Total |
|  | 109,838 | 210,800 | 92,849 | 239,058 | 117,645 | 770,190 |

### Receipts

| Form Number | Parole Country | | | | | |
|---|---|---|---|---|---|---|
|  | Cuba | Haiti | Nicaragua | Ukraine | Venezuela | Total |
| I-130: Petition for Alien Relative | 1,191 | 6,412 | 2,371 | 6,396 | 2,302 | 18,672 |
| I-131: Applc. for Travel Doc. | 507 | 4,622 | 426 | 111,139 | 814 | 117,508 |
| I-140: Imm. Pet. for Aln. Wkr. | 0 | 13 | 17 | 300 | 106 | 436 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | 1 | 89 | 60 | 121 | 49 | 320 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | 63,653 | 6,151 | 1,368 | 6,101 | 1,761 | 79,034 |
| I-589: Applc. for Asylum | 408 | 14,868 | 23,479 | 2,228 | 30,949 | 71,932 |
| I-730: Ref/Asy Relative Pet. | 0 | 31 | 66 | 40 | 98 | 235 |
| I-765: Applc. for Emp. Auth. | 102,278 | 247,205 | 91,395 | 323,635 | 141,500 | 906,013 |
| I-821: Applc. for TPS | 10 | 171,126 | 364 | 111,512 | 62,559 | 345,571 |
| Grand Total | 168,048 | 450,517 | 119,546 | 561,472 | 240,138 | 1,539,721 |

### Approvals

| Form Number | Parole Country | | | | | |
|---|---|---|---|---|---|---|
|  | Cuba | Haiti | Nicaragua | Ukraine | Venezuela | Total |
| I-130: Petition for Alien Relative | 139 | 394 | 203 | 3,694 | 382 | 4,812 |
| I-131: Applc. for Travel Doc. | 56 | 885 | 193 | 6,616 | 328 | 8,078 |
| I-140: Imm. Pet. for Aln. Wkr. | 0 | 2 | 1 | 109 | 24 | 136 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | 0 | 24 | 37 | 86 | 28 | 175 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | 13,490 | 1,000 | 278 | 3,215 | 453 | 18,436 |
| I-589: Applc. for Asylum | 0 | 7 | 26 | 7 | 23 | 63 |
| I-730: Ref/Asy Relative Pet. | 0 | 5 | 4 | 9 | 13 | 31 |
| I-765: Applc. for Emp. Auth. | 93,286 | 208,395 | 85,290 | 289,581 | 119,325 | 795,877 |
| I-821: Applc. for TPS | 4 | 62,405 | 34 | 61,299 | 33,909 | 157,651 |
| Grand Total | 106,975 | 273,117 | 86,066 | 364,616 | 154,485 | 985,259 |

### Pending

| Form Number | Parole Country | | | | | |
|---|---|---|---|---|---|---|
|  | Cuba | Haiti | Nicaragua | Ukraine | Venezuela | Total |
| I-130: Petition for Alien Relative | 1,044 | 5,986 | 2,160 | 2,642 | 1,910 | 13,742 |
| I-131: Applc. for Travel Doc. | 326 | 3,559 | 172 | 102,992 | 392 | 107,441 |
| I-140: Imm. Pet. for Aln. Wkr. | 0 | 9 | 16 | 152 | 77 | 254 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | 1 | 64 | 23 | 34 | 21 | 143 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | 50,083 | 5,012 | 1,075 | 2,516 | 1,279 | 59,965 |
| I-589: Applc. for Asylum | 174 | 14,200 | 23,153 | 2,202 | 30,011 | 69,740 |
| I-730: Ref/Asy Relative Pet. | 0 | 26 | 62 | 28 | 85 | 201 |
| I-765: Applc. for Emp. Auth. | 7,885 | 35,780 | 5,033 | 29,116 | 20,250 | 98,064 |
| I-821: Applc. for TPS | 5 | 108,183 | 175 | 49,101 | 28,440 | 185,904 |
| Grand Total | 59,518 | 172,819 | 31,869 | 188,783 | 82,465 | 535,454 |

**Notes:**
See notes page for all notes and assumptions.

CHNV-FRN-00785



# Cuban Humanitarian Parole (CHP)
## Immigrant Benefit Tracking
### Cumulative Statistics

**Purpose:** This page shows summary statistics for applications/petitions filed by Cuban Parolees between **1/5/2023 - 2/9/2025.** The current number of parolee arrivals is **109,838.**

## Receipts, Completions, Pending and Processing Times

| Form Number | Sub Group | Receipts | Approvals | Denials | Admin Closed | Pending | Total Applicants | Proc. Time (Mths.) |
|---|---|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | Imm. Relative | 269 | 127 | 5 | 0 | 137 | 269 | 13.2 |
|  | Pref. Relative | 922 | 12 | 3 | 0 | 907 | 807 | 13.8 |
|  | I-130 Subtotal | 1,191 | 139 | 8 | 0 | 1,044 | 1,073 | 13.3 |
| I-131: Applc. for Travel Doc. | I-131 | 507 | 56 | 124 | 1 | 326 | 493 | 6.0 |
| I-140: Imm. Pet. for Aln. Wkr. | I-140 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | Spec. Imm. Juv. | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
|  | Spec. Imm. Vi... | 1 | 0 | 0 | 0 | 1 | 1 | 0.0 |
|  | I-360 Other | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
|  | I-360 Subtotal | 1 | 0 | 0 | 0 | 1 | 1 | 0.0 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | Asylee | 3 | 0 | 0 | 0 | 3 | 3 | 0.0 |
|  | Employment | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
|  | Family | 214 | 91 | 12 | 0 | 111 | 214 | 6.2 |
|  | Refugee | 1 | 0 | 0 | 0 | 1 | 1 | 0.0 |
|  | SIV | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
|  | Other | 63,435 | 13,399 | 65 | 3 | 49,968 | 63,397 | 4.8 |
|  | I-485 Subtotal | 63,653 | 13,490 | 77 | 3 | 50,083 | 63,599 | 4.8 |
| I-589: Applc. for Asylum | I-589 | 408 | 0 | 0 | 234 | 174 | 408 | 0.0 |
| I-730: Ref/Asy Relative Pet. | I-730 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| I-765: Applc. for Emp. Auth. | I-765 | 102,278 | 93,286 | 1,103 | 4 | 7,885 | 90,542 | 0.9 |
| I-821: Applc. for TPS | I-821 | 10 | 4 | 1 | 0 | 5 | 10 | 0.0 |
| Total |  | 168,048 | 106,976 | 1,314 | 242 | 59,522 | 100,222 | 0.0 |

## Demographics Data

### Age Group - Receipts

| Form Number | 0-20 | 21-30 | 31-40 | 41-50 | 51+ | Unk. | Grand Total |
|---|---|---|---|---|---|---|---|
| I-130 | 83 | 167 | 343 | 229 | 371 |  | 1,191 |
| I-131 | 95 | 88 | 102 | 101 | 120 | 3 | 507 |
| I-360 |  | 1 |  |  |  |  | 1 |
| I-485 | 13,541 | 12,692 | 13,355 | 8,389 | 15,549 | 127 | 63,653 |
| I-589 | 25 | 121 | 111 | 79 | 72 |  | 408 |
| I-765 | 14,070 | 24,041 | 25,009 | 15,867 | 23,235 | 56 | 102,278 |
| I-821 | 1 | 2 | 3 | 3 | 1 |  | 10 |
| Grand Total | 27,815 | 37,112 | 38,923 | 24,668 | 39,348 | 186 | 168,048 |

### Gender - Receipts

| Form Number | Female | Male | Unk. | Grand Total |
|---|---|---|---|---|
| I-130 | 642 | 539 | 11 | 1,191 |
| I-131 | 160 | 127 | 222 | 507 |
| I-360 | 1 |  |  | 1 |
| I-485 | 33,804 | 29,753 | 96 | 63,653 |
| I-589 | 190 | 217 | 1 | 408 |
| I-765 | 53,280 | 48,934 | 64 | 102,278 |
| I-821 | 2 | 8 |  | 10 |
| Grand Total | 88,079 | 79,578 | 394 | 168,048 |

**Notes:**
See notes page for all notes and assumptions.

CHNV-FRN-00786



# Haitian Humanitarian Parole (HHP)
## Immigrant Benefit Tracking
### Cumulative Statistics

**Purpose:** This page shows summary statistics for applications/petitions filed by Haitian Parolees between **1/5/2023 - 2/9/2025.** The current number of parolee arrivals is **210,800.**

## Receipts, Completions, Pending and Processing Times

| Form Number | Sub Group | Receipts | Approvals | Denials | Admin Closed | Pending | Total Applicants | Proc. Time (Mths.) |
|---|---|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | Imm. Relative | 3,381 | 379 | 32 | 0 | 2,970 | 3,371 | 8.4 |
| | Pref. Relative | 3,031 | 15 | 0 | 0 | 3,016 | 3,057 | 5.5 |
| | I-130 Subtotal | 6,412 | 394 | 32 | 0 | 5,986 | 6,410 | 8.3 |
| I-131: Applc. for Travel Doc. | I-131 | 4,622 | 885 | 178 | 0 | 3,559 | 4,529 | 2.6 |
| I-140: Imm. Pet. for Aln. Wkr. | I-140 | 13 | 2 | 2 | 0 | 9 | 12 | 0.0 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | Spec. Imm. Juv. | 40 | 23 | 0 | 0 | 17 | 40 | 2.8 |
| | Spec. Imm. Vi.. | 46 | 0 | 1 | 0 | 45 | 44 | 0.0 |
| | I-360 Other | 3 | 1 | 0 | 0 | 2 | 3 | 0.0 |
| | I-360 Subtotal | 89 | 24 | 1 | 0 | 64 | 87 | 3.1 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | Asylee | 20 | 0 | 0 | 0 | 20 | 20 | 0.0 |
| | Employment | 8 | 0 | 0 | 0 | 8 | 8 | 0.0 |
| | Family | 6,083 | 1,000 | 137 | 1 | 4,945 | 6,049 | 6.2 |
| | Refugee | 14 | 0 | 1 | 0 | 13 | 14 | 0.0 |
| | SIV | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Other | 26 | 0 | 0 | 0 | 26 | 26 | 0.0 |
| | I-485 Subtotal | 6,151 | 1,000 | 138 | 1 | 5,012 | 6,116 | 6.2 |
| I-589: Applc. for Asylum | I-589 | 14,868 | 7 | 14 | 647 | 14,200 | 14,868 | 6.1 |
| I-730: Ref/Asy Relative Pet. | I-730 | 31 | 5 | 0 | 0 | 26 | 25 | 0.0 |
| I-765: Applc. for Emp. Auth. | I-765 | 247,205 | 208,395 | 3,010 | 20 | 35,780 | 196,817 | 0.8 |
| I-821: Applc. for TPS | I-821 | 171,126 | 62,405 | 531 | 7 | 108,183 | 169,926 | 1.8 |
| Total | | 450,517 | 273,117 | 3,915 | 675 | 173,063 | 203,888 | 0.0 |

## Demographics Data

### Age Group - Receipts

| Form Number | 0-20 | 21-30 | 31-40 | 41-50 | 51+ | Unk. | Grand Total |
|---|---|---|---|---|---|---|---|
| I-130 | 815 | 1,609 | 2,004 | 1,103 | 970 | 4 | 6,412 |
| I-131 | 383 | 969 | 1,686 | 1,058 | 526 | 1 | 4,622 |
| I-140 | 1 | 1 | 10 | 1 | | | 13 |
| I-360 | 42 | 10 | 18 | 12 | 6 | 1 | 89 |
| I-485 | 1,450 | 1,131 | 1,630 | 883 | 1,052 | 5 | 6,151 |
| I-589 | 473 | 5,463 | 5,169 | 2,706 | 1,057 | | 14,868 |
| I-730 | 8 | 3 | 7 | 13 | | | 31 |
| I-765 | 32,194 | 77,603 | 75,436 | 40,771 | 21,163 | 38 | 247,205 |
| I-821 | 25,771 | 50,513 | 51,279 | 28,248 | 15,278 | 37 | 171,126 |
| Grand Total | 61,137 | 137,302 | 137,239 | 74,795 | 40,052 | 86 | 450,517 |

### Gender - Receipts

| Form Number | Female | Male | Unk. | Grand Total |
|---|---|---|---|---|
| I-130 | 3,320 | 3,127 | 19 | 6,412 |
| I-131 | 1,762 | 2,827 | 89 | 4,622 |
| I-140 | | | 13 | 13 |
| I-360 | 20 | 19 | 50 | 89 |
| I-485 | 3,211 | 2,888 | 52 | 6,151 |
| I-589 | 7,299 | 7,532 | 37 | 14,868 |
| I-730 | | | 31 | 31 |
| I-765 | 124,917 | 121,858 | 430 | 247,205 |
| I-821 | 86,875 | 83,841 | 410 | 171,126 |
| Grand Total | 227,404 | 222,092 | 1,131 | 450,517 |

**Notes:**
See notes page for all notes and assumptions.

Data Source: CLAIMS3, ELIS, CAMINO, & Global/Office of Performance & Quality - PAER Division          Data as of:  2/9/2025

CHNV-FRN-00787



## Nicaraguan Humanitarian Parole (NHP) Immigrant Benefit Tracking
**U.S. Citizenship and Immigration Services**
### Cumulative Statistics

**Purpose:** This page shows summary statistics for applications/petitions filed by Nicaraguan Parolees between **1/5/2023 - 2/9/2025**. The current number of parolee arrivals is **92,849.**

## Receipts, Completions, Pending and Processing Times

| Form Number | Sub Group | Receipts | Approvals | Denials | Admin Closed | Pending | Total Applicants | Proc. Time (Mths.) |
|---|---|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | Imm. Relative | 1,139 | 193 | 6 | 0 | 940 | 1,137 | 6.0 |
| | Pref. Relative | 1,232 | 10 | 2 | 0 | 1,220 | 1,237 | 9.5 |
| | I-130 Subtotal | 2,371 | 203 | 8 | 0 | 2,160 | 2,359 | 6.0 |
| I-131: Applc. for Travel Doc. | I-131 | 426 | 193 | 61 | 0 | 172 | 406 | 2.5 |
| I-140: Imm. Pet. for Aln. Wkr. | I-140 | 17 | 1 | 0 | 0 | 16 | 17 | 0.0 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | Spec. Imm. Juv. | 54 | 37 | 0 | 0 | 17 | 52 | 2.6 |
| | Spec. Imm. Vi.. | 4 | 0 | 0 | 0 | 4 | 4 | 0.0 |
| | I-360 Other | 2 | 0 | 0 | 0 | 2 | 2 | 0.0 |
| | I-360 Subtotal | 60 | 37 | 0 | 0 | 23 | 58 | 2.6 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | Asylee | 2 | 0 | 0 | 0 | 2 | 2 | 0.0 |
| | Employment | 1 | 0 | 0 | 0 | 1 | 1 | 0.0 |
| | Family | 1,271 | 270 | 14 | 0 | 987 | 1,266 | 5.3 |
| | Refugee | 1 | 0 | 0 | 0 | 1 | 1 | 0.0 |
| | SIV | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Other | 93 | 8 | 1 | 0 | 84 | 93 | 0.0 |
| | I-485 Subtotal | 1,368 | 278 | 15 | 0 | 1,075 | 1,363 | 5.3 |
| I-589: Applc. for Asylum | I-589 | 23,479 | 26 | 19 | 281 | 23,153 | 23,479 | 4.4 |
| I-730: Ref/Asy Relative Pet. | I-730 | 66 | 4 | 0 | 0 | 62 | 66 | 0.0 |
| I-765: Applc. for Emp. Auth. | I-765 | 91,395 | 85,290 | 1,069 | 3 | 5,033 | 82,489 | 0.8 |
| I-821: Applc. for TPS | I-821 | 364 | 34 | 155 | 0 | 175 | 353 | 0.8 |
| Total | | 119,546 | 86,067 | 1,329 | 284 | 31,899 | 83,103 | 0.0 |

## Demographics Data

### Age Group - Receipts

| Form Number | 0-20 | 21-30 | 31-40 | 41-50 | 51+ | Unk. | Grand Total |
|---|---|---|---|---|---|---|---|
| I-130 | 398 | 628 | 630 | 419 | 315 | 1 | 2,371 |
| I-131 | 64 | 107 | 130 | 79 | 45 | 1 | 426 |
| I-140 | | 5 | 7 | 5 | | | 17 |
| I-360 | 54 | | 3 | 2 | 1 | | 60 |
| I-485 | 358 | 346 | 280 | 190 | 193 | 1 | 1,368 |
| I-589 | 1,256 | 8,832 | 7,363 | 4,439 | 1,587 | 2 | 23,479 |
| I-730 | 41 | 8 | 12 | 5 | | | 66 |
| I-765 | 17,860 | 27,346 | 24,078 | 15,061 | 7,042 | 8 | 91,395 |
| I-821 | 40 | 129 | 95 | 68 | 32 | | 364 |
| Grand Total | 20,071 | 37,401 | 32,598 | 20,268 | 9,215 | 13 | 119,546 |

### Gender - Receipts

| Form Number | Female | Male | Unk. | Grand Total |
|---|---|---|---|---|
| I-130 | 1,388 | 989 | 10 | 2,371 |
| I-131 | 287 | 137 | 5 | 426 |
| I-140 | | 1 | 16 | 17 |
| I-360 | 24 | 20 | 16 | 60 |
| I-485 | 863 | 496 | 9 | 1,368 |
| I-589 | 12,416 | 11,019 | 44 | 23,479 |
| I-730 | | | 66 | 66 |
| I-765 | 48,220 | 43,138 | 37 | 91,395 |
| I-821 | 199 | 163 | 2 | 364 |
| Grand Total | 63,397 | 55,963 | 205 | 119,546 |

**Notes:**
See notes page for all notes and assumptions.

Data Source: CLAIMS3, ELIS, CAMINO, & Global/Office of Performance & Quality - PAER Division          Data as of:  2/9/2025



### U.S. Citizenship and Immigration Services

# Ukrainian Parolee (UHP)
# Immigrant Benefit Tracking
#### Cumulative Statistics

**Purpose:** This page shows summary statistics for applications/petitions filed by Ukrainian Parolees between **4/21/2022 - 2/9/2025.** The current number of parolee arrivals is **239,058.**

## Receipts, Completions, Pending and Processing Times

| Form Number | Sub Group | Receipts | Approvals | Denials | Admin Closed | Pending | Total Applicants | Proc. Time (Mths.) |
|---|---|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | Imm. Relative | 4,475 | 2,976 | 43 | 1 | 1,455 | 4,460 | 3.7 |
| | Pref. Relative | 1,921 | 718 | 16 | 0 | 1,187 | 2,041 | 2.2 |
| | I-130 Subtotal | 6,396 | 3,694 | 59 | 1 | 2,642 | 6,372 | 3.4 |
| I-131: Applc. for Travel Doc. | I-131 | 111,139 | 6,616 | 1,466 | 65 | 102,992 | 103,211 | 7.8 |
| I-140: Imm. Pet. for Aln. Wkr. | I-140 | 300 | 109 | 39 | 0 | 152 | 282 | 2.8 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | Spec. Imm. Juv. | 103 | 84 | 0 | 0 | 19 | 102 | 2.6 |
| | Spec. Imm. Vi… | 13 | 0 | 1 | 0 | 12 | 13 | 0.0 |
| | I-360 Other | 5 | 2 | 0 | 0 | 3 | 5 | 0.0 |
| | I-360 Subtotal | 121 | 86 | 1 | 0 | 34 | 120 | 2.7 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | Asylee | 19 | 2 | 8 | 0 | 9 | 19 | 8.5 |
| | Employment | 172 | 108 | 11 | 0 | 53 | 171 | 3.6 |
| | Family | 4,965 | 2,574 | 208 | 0 | 2,183 | 4,905 | 7.3 |
| | Refugee | 75 | 0 | 49 | 0 | 26 | 75 | 7.4 |
| | SIV | 2 | 1 | 1 | 0 | 0 | 2 | 0.0 |
| | Other | 868 | 530 | 89 | 4 | 245 | 860 | 1.9 |
| | I-485 Subtotal | 6,101 | 3,215 | 366 | 4 | 2,516 | 6,030 | 6.0 |
| I-589: Applc. for Asylum | I-589 | 2,228 | 7 | 4 | 15 | 2,202 | 2,228 | 5.4 |
| I-730: Ref/Asy Relative Pet. | I-730 | 40 | 9 | 3 | 0 | 28 | 35 | 9.9 |
| I-765: Applc. for Emp. Auth. | I-765 | 323,635 | 289,581 | 4,908 | 30 | 29,116 | 204,694 | 0.9 |
| I-821: Applc. for TPS | I-821 | 111,512 | 61,299 | 1,110 | 2 | 49,101 | 81,468 | 8.3 |
| Total | | 561,472 | 364,651 | 7,970 | 117 | 189,278 | 210,751 | 0.0 |

## Demographics Data

### Age Group - Receipts

| Form Number | 0-20 | 21-30 | 31-40 | 41-50 | 51+ | Unk. | Grand Total |
|---|---|---|---|---|---|---|---|
| I-130 | 827 | 1,162 | 1,082 | 953 | 2,501 | 18 | 6,396 |
| I-131 | 32,656 | 21,356 | 27,119 | 15,571 | 14,425 | 131 | 111,139 |
| I-140 | 3 | 50 | 167 | 64 | 16 | | 300 |
| I-360 | 103 | 7 | 5 | 3 | 3 | | 121 |
| I-485 | 1,199 | 1,018 | 986 | 768 | 2,115 | 15 | 6,101 |
| I-589 | 130 | 582 | 764 | 454 | 293 | 5 | 2,228 |
| I-730 | 19 | 8 | 4 | 8 | 1 | | 40 |
| I-765 | 86,465 | 71,544 | 82,844 | 45,761 | 36,889 | 132 | 323,635 |
| I-821 | 31,230 | 23,506 | 28,829 | 15,709 | 12,160 | 78 | 111,512 |
| Grand Total | 152,632 | 119,233 | 141,800 | 79,291 | 68,403 | 379 | 561,472 |

### Gender - Receipts

| Form Number | Female | Male | Unk. | Grand Total |
|---|---|---|---|---|
| I-130 | 4,375 | 2,109 | 27 | 6,396 |
| I-131 | 59,219 | 51,570 | 587 | 111,139 |
| I-140 | 1 | 6 | 293 | 300 |
| I-360 | 50 | 52 | 19 | 121 |
| I-485 | 4,048 | 2,023 | 30 | 6,101 |
| I-589 | 948 | 1,268 | 12 | 2,228 |
| I-730 | | | 40 | 40 |
| I-765 | 167,249 | 155,841 | 545 | 323,635 |
| I-821 | 58,686 | 52,565 | 261 | 111,512 |
| Grand Total | 294,576 | 265,434 | 1,814 | 561,472 |

**Notes:**
See notes page for all notes and assumptions.

Data Source: CLAIMS3, ELIS, CAMINO, & Global/Office of Performance & Quality - PAER Division          Data as of:   2/9/2025



**U.S. Citizenship and Immigration Services**

# Venezuelan Humanitarian Parole (VHP) Immigrant Benefit Tracking
### Cumulative Statistics

**Purpose:** This page shows summary statistics for applications/petitions filed by Venezuelan Parolees between **10/12/2022** - **2/9/2025**. The current number of parolee arrivals is **117,645**.

## Receipts, Completions, Pending and Processing Times

| Form Number | Sub Group | Receipts | Approvals | Denials | Admin Closed | Pending | Total Applicants | Proc. Time (Mths.) |
|---|---|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | Imm. Relative | 1,534 | 362 | 10 | 0 | 1,162 | 1,533 | 6.7 |
| | Pref. Relative | 768 | 20 | 0 | 0 | 748 | 780 | 7.6 |
| | I-130 Subtotal | 2,302 | 382 | 10 | 0 | 1,910 | 2,287 | 6.7 |
| I-131: Applc. for Travel Doc. | I-131 | 814 | 328 | 93 | 1 | 392 | 788 | 4.2 |
| I-140: Imm. Pet. for Aln. Wkr. | I-140 | 106 | 24 | 5 | 0 | 77 | 106 | 6.6 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | Spec. Imm. Juv. | 44 | 28 | 0 | 0 | 16 | 42 | 3.1 |
| | Spec. Imm. Vi... | 5 | 0 | 0 | 0 | 5 | 5 | 0.0 |
| | I-360 Other | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | I-360 Subtotal | 49 | 28 | 0 | 0 | 21 | 47 | 3.1 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | Asylee | 19 | 0 | 0 | 0 | 19 | 19 | 0.0 |
| | Employment | 16 | 4 | 5 | 0 | 7 | 16 | 0.0 |
| | Family | 1,479 | 419 | 20 | 0 | 1,040 | 1,467 | 5.7 |
| | Refugee | 9 | 0 | 2 | 0 | 7 | 9 | 0.0 |
| | SIV | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Other | 238 | 30 | 2 | 0 | 206 | 238 | 4.7 |
| | I-485 Subtotal | 1,761 | 453 | 29 | 0 | 1,279 | 1,747 | 5.5 |
| I-589: Applc. for Asylum | I-589 | 30,949 | 23 | 31 | 884 | 30,011 | 30,949 | 5.2 |
| I-730: Ref/Asy Relative Pet. | I-730 | 98 | 13 | 0 | 0 | 85 | 95 | 3.9 |
| I-765: Applc. for Emp. Auth. | I-765 | 141,500 | 119,325 | 1,923 | 2 | 20,250 | 106,592 | 0.9 |
| I-821: Applc. for TPS | I-821 | 62,559 | 33,909 | 210 | 0 | 28,440 | 47,149 | 5.5 |
| Total | | 240,138 | 154,488 | 2,307 | 887 | 82,506 | 108,645 | 0.0 |

## Demographics Data

### Age Group - Receipts

| Form Number | 0-20 | 21-30 | 31-40 | 41-50 | 51+ | Unk. | Grand Total |
|---|---|---|---|---|---|---|---|
| I-130 | 279 | 478 | 410 | 354 | 805 | 9 | 2,302 |
| I-131 | 72 | 211 | 167 | 115 | 246 | 3 | 814 |
| I-140 | | 10 | 37 | 29 | 30 | | 106 |
| I-360 | 44 | | 2 | 2 | 1 | | 49 |
| I-485 | 335 | 340 | 239 | 220 | 622 | 5 | 1,761 |
| I-589 | 1,162 | 9,987 | 8,580 | 5,924 | 5,277 | 19 | 30,949 |
| I-730 | 59 | 9 | 14 | 9 | 7 | | 98 |
| I-765 | 29,510 | 32,128 | 30,487 | 22,584 | 26,666 | 125 | 141,500 |
| I-821 | 13,919 | 13,321 | 12,821 | 9,893 | 12,546 | 59 | 62,559 |
| Grand Total | 45,380 | 56,484 | 52,757 | 39,130 | 46,200 | 220 | 240,138 |

### Gender - Receipts

| Form Number | Female | Male | Unk. | Grand Total |
|---|---|---|---|---|
| I-130 | 1,428 | 892 | 5 | 2,302 |
| I-131 | 452 | 358 | 8 | 814 |
| I-140 | | 1 | 105 | 106 |
| I-360 | 18 | 20 | 11 | 49 |
| I-485 | 1,106 | 641 | 14 | 1,761 |
| I-589 | 15,760 | 15,145 | 44 | 30,949 |
| I-730 | | | 98 | 98 |
| I-765 | 73,708 | 67,682 | 110 | 141,500 |
| I-821 | 32,755 | 29,731 | 73 | 62,559 |
| Grand Total | 125,227 | 114,470 | 468 | 240,138 |

**Notes:**
See notes page for all notes and assumptions.

Data Source: CLAIMS3, ELIS, CAMINO, & Global/Office of Performance & Quality - PAER Division    Data as of:  2/9/2025

## U.S. Citizenship and Immigration Services

# Ukraine & CHNV Parolee Immigrant Benefit Tracking
### Weekly Trends

**Purpose:** This page shows monthly cumulative arrivals and weekly receipt and completion trends for applications/petitions filed by parolees between **4/21/2022 - 2/9/2025**



**U.S. Citizenship and Immigration Services**

# Ukraine & CHNV Parolee Immigrant Benefit Tracking
### Notes and Assumptions

**Notes:**

**1)** The Parolee population is identified using alien numbers with 'CHP', 'HHP', 'NHP', 'UHP', or 'VHP' classes of admission in the Central Index System. Total parolee arrivals is based on the number of unique A-Numbers with each class of admission in the Central Index System.

**2)** This report counts applications and petitions filed by the Parolee population, including both domestic and international filings.

**3)** The number of total applicants represents the number of unique individuals who filed an application/petition with USCIS during the reporting period.  The count of total applicants in each form line represents the number of unique individuals who filed that particular form.  The count of total applicants in the 'Total' line represents the number of unique individuals who filed an application across all form types.  If one individual files multiple form types, they will be counted once in the 'Total' line.

**4)** Any application or petition filed by or on behalf of the parolee prior to their arrival is not included in this dataset (Ex. I-130).

**5)** For I-589, only principal applicants are counted in the total applicants column.

**6)** For I-589, only applications where the decision has been served are counted in the 'Approvals', 'Denials', and 'Admin Closed' columns.  Applications where the decision has been rendered, but not served, will be counted in the pending column.

**7)** For I-730, petitions processed in CLAIMS3 and CAMINO are included.

**8)** I-730 counts include petitions filed where the petitioner or beneficiary is in the Parolee population.

**9)** Processing time is represented by the median number of days between the receipt date and the decision date for applications/petitions with a completion. The days are converted into months using a factor of 30.4 days per month. Pending applications/petitions are not included.

**10)** Processing times are calculated using completions in the given time period (ex. cumulative, FYTD, Weekly).  Time periods with fewer than 10 completions have the processing time suppressed to 0.0 to avoid displaying small sample size outliers.

**11)** Age represents age at time of receipt.  Unknown in "Age Group" and "Gender" means the data are not available in the electronic systems.

Data Source: CLAIMS3, ELIS, CAMINO, & Global/Office of Performance & Quality - PAER Division          Data as of:  2/9/2025



# Ukraine & CHNV Parolee
# Immigrant Benefit Tracking
## Cumulative Statistics

**Purpose:** This page shows receipts, approvals, and pending for applications/petitions filed by Parolees between each program start date through **3/9/2025.**

| Cumulative Parolee Counts: | | Cuba | Haiti | Nicaragua | Ukraine | Venezu |
|---|---|---|---|---|---|---|
| | Arrivals | 109,838 | 210,810 | 92,826 | 259,287 | 117,6 |
| | No Filings | 38,826 | 31,537 | 63,578 | 141,249 | 45,7 |

## Receipts

| Form Number | Cuba | Haiti | Nicaragua | Ukraine | Venezu |
|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | 1,339 | 7,244 | 2,718 | 8,391 | 2,6 |
| I-131: Applc. for Travel Doc. | 512 | 4,687 | 448 | 127,833 | 8 |
| I-140: Imm. Pet. for Aln. Wkr. | 0 | 16 | 23 | 389 | 1 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | 2 | 104 | 73 | 182 | |
| I-485: Applc. to Register Perm. Res. or Adj. Status | 70,749 | 6,783 | 1,643 | 7,963 | 2,0 |
| I-589: Applc. for Asylum | 535 | 18,447 | 26,346 | 3,609 | 36,3 |
| I-730: Ref/Asy Relative Pet. | 0 | 31 | 69 | 60 | |
| I-765: Applc. for Emp. Auth. | 108,854 | 254,733 | 93,960 | 389,595 | 145,6 |
| I-821: Applc. for TPS | 10 | 172,056 | 379 | 178,922 | 63,1 |
| I-914: T Nonimm. Stus. | 0 | 1 | 3 | 10 | |
| I-918: U Nonimm. Stus. | 0 | 5 | 22 | 45 | |
| Total | 182,001 | 464,107 | 125,684 | 716,999 | 250,9 |

## Approvals

| Form Number | Cuba | Haiti | Nicaragua | Ukraine | Venezu |
|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | 139 | 398 | 206 | 4,948 | 3 |
| I-131: Applc. for Travel Doc. | 62 | 886 | 193 | 8,886 | 3 |
| I-140: Imm. Pet. for Aln. Wkr. | 0 | 2 | 1 | 135 | |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | 0 | 24 | 38 | 124 | |
| I-485: Applc. to Register Perm. Res. or Adj. Status | 14,173 | 1,024 | 283 | 4,203 | 4 |
| I-589: Applc. for Asylum | 0 | 7 | 26 | 11 | |
| I-730: Ref/Asy Relative Pet. | 0 | 4 | 4 | 28 | |
| I-765: Applc. for Emp. Auth. | 93,613 | 208,485 | 85,485 | 326,002 | 119,8 |
| I-821: Applc. for TPS | 4 | 62,438 | 30 | 85,102 | 33,9 |
| I-914: T Nonimm. Stus. | 0 | 1 | 0 | 6 | |
| I-918: U Nonimm. Stus. | 0 | 0 | 1 | 2 | |
| Total | 107,991 | 273,269 | 86,267 | 429,447 | 155,1 |

## Pending

| Form Number | Cuba | Haiti | Nicaragua | Ukraine | Venezu |
|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | 1,190 | 6,814 | 2,503 | 3,346 | 2,2 |
| I-131: Applc. for Travel Doc. | 318 | 3,606 | 191 | 116,863 | 4 |
| I-140: Imm. Pet. for Aln. Wkr. | 0 | 12 | 22 | 205 | |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | 2 | 79 | 35 | 55 | |
| I-485: Applc. to Register Perm. Res. or Adj. Status | 56,495 | 5,613 | 1,345 | 3,265 | 1,5 |
| I-589: Applc. for Asylum | 300 | 17,773 | 26,010 | 3,552 | 35,3 |
| I-730: Ref/Asy Relative Pet. | 0 | 26 | 65 | 29 | |
| I-765: Applc. for Emp. Auth. | 14,119 | 43,197 | 7,371 | 56,136 | 23,6 |
| I-821: Applc. for TPS | 5 | 109,062 | | | 28,0 |



# Ukraine & CHNV Parolee
# Immigrant Benefit Tracking
### Cumulative Statistics

**Purpose:** This page shows receipts, approvals, and pending for applications/petitions filed by Parolees between each country's program start date through **3/9/2025.**

| Cumulative Parolee Counts | | Cuba | Haiti | Nicaragua | Ukraine | Venezuela | Total |
|---|---|---|---|---|---|---|---|
| | Arrivals | 109,838 | 210,810 | 92,826 | 259,287 | 117,625 | 790,386 |
| | No Filings | 38,826 | 31,537 | 63,578 | 141,249 | 45,735 | 320,925 |

## Receipts

| Form Number | Cuba | Haiti | Nicaragua | Ukraine | Venezuela | Total |
|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | 1,339 | 7,244 | 2,718 | 8,391 | 2,691 | 22,383 |
| I-131: Applc. for Travel Doc. | 512 | 4,687 | 448 | 127,833 | 843 | 134,323 |
| I-140: Imm. Pet. for Aln. Wkr. | 0 | 16 | 23 | 389 | 121 | 549 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | 2 | 104 | 73 | 182 | 55 | 416 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | 70,749 | 6,783 | 1,643 | 7,963 | 2,045 | 89,183 |
| I-589: Applc. for Asylum | 535 | 18,447 | 26,346 | 3,609 | 36,346 | 85,283 |
| I-730: Ref/Asy Relative Pet. | 0 | 31 | 69 | 60 | 98 | 258 |
| I-765: Applc. for Emp. Auth. | 108,854 | 254,733 | 93,960 | 389,595 | 145,606 | 992,748 |
| I-821: Applc. for TPS | 10 | 172,056 | 379 | 178,922 | 63,141 | 414,508 |
| I-914: T Nonimm. Stus. | 0 | 1 | 3 | 10 | 7 | 21 |
| I-918: U Nonimm. Stus. | 0 | 5 | 22 | 45 | 25 | 97 |
| Total | 182,001 | 464,107 | 125,684 | 716,999 | 250,978 | 1,739,769 |

## Approvals

| Form Number | Cuba | Haiti | Nicaragua | Ukraine | Venezuela | Total |
|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | 139 | 398 | 206 | 4,948 | 390 | 6,081 |
| I-131: Applc. for Travel Doc. | 62 | 886 | 193 | 8,886 | 332 | 10,359 |
| I-140: Imm. Pet. for Aln. Wkr. | 0 | 2 | 1 | 135 | 24 | 162 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | 0 | 24 | 38 | 124 | 30 | 216 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | 14,173 | 1,024 | 283 | 4,203 | 461 | 20,144 |
| I-589: Applc. for Asylum | 0 | 7 | 26 | 11 | 26 | 70 |
| I-730: Ref/Asy Relative Pet. | 0 | 4 | 4 | 28 | 13 | 49 |
| I-765: Applc. for Emp. Auth. | 93,613 | 208,485 | 85,485 | 326,002 | 119,899 | 833,484 |
| I-821: Applc. for TPS | 4 | 62,438 | 30 | 85,102 | 33,960 | 181,534 |
| I-914: T Nonimm. Stus. | 0 | 1 | 0 | 6 | 1 | 8 |
| I-918: U Nonimm. Stus. | 0 | 0 | 1 | 2 | 0 | 3 |
| Total | 107,991 | 273,269 | 86,267 | 429,447 | 155,136 | 1,052,110 |

## Pending

| Form Number | Cuba | Haiti | Nicaragua | Ukraine | Venezuela | Total |
|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | 1,190 | 6,814 | 2,503 | 3,346 | 2,291 | 16,144 |
| I-131: Applc. for Travel Doc. | 318 | 3,606 | 191 | 116,863 | 414 | 121,392 |
| I-140: Imm. Pet. for Aln. Wkr. | 0 | 12 | 22 | 205 | 92 | 331 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | 2 | 79 | 35 | 55 | 25 | 196 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | 56,495 | 5,613 | 1,345 | 3,265 | 1,554 | 68,272 |
| I-589: Applc. for Asylum | 300 | 17,773 | 26,010 | 3,552 | 35,394 | 83,029 |
| I-730: Ref/Asy Relative Pet. | 0 | 26 | 65 | 29 | 85 | 205 |
| I-765: Applc. for Emp. Auth. | 14,119 | 43,197 | 7,371 | 56,136 | 23,691 | 144,514 |
| I-821: Applc. for TPS | 5 | 109,062 | 194 | 90,667 | 28,963 | 228,891 |
| I-914: T Nonimm. Stus. | 0 | 0 | 3 | 4 | 6 | 13 |
| I-918: U Nonimm. Stus. | 0 | 5 | 21 | 43 | 25 | 94 |
| Total | 72,429 | 186,187 | 37,760 | 274,165 | 92,540 | 663,081 |

Data Source: CLAIMS3, ELIS, CAMINO, & Global/Office of Performance & Quality - PAER Division          Data as of:  3/9/2025



**U.S. Citizenship and Immigration Services**

# Cuban Humanitarian Parole (CHP) Immigrant Benefit Tracking
## Cumulative Statistics

**Purpose:** This page shows summary statistics for applications/petitions filed by Cuban Parolees between **1/5/2023 - 3/9/2025.** The current number of parolee arrivals is **109,838.** From this, **38,826** do not have any filings with USCIS (excluding I131/I134A/I765).

### Receipts, Completions, Pending and Processing Times

| Form Number | Sub Group | Receipts | Approvals | Denials | Admin Closed | Pending | Total Applicants | Proc. Time (Mths.) |
|---|---|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | Imm. Relative | 287 | 127 | 6 | 1 | 153 | 287 | 13.3 |
| | Pref. Relative | 1,052 | 12 | 3 | 0 | 1,037 | 915 | 13.8 |
| | I-130 Subtotal | 1,339 | 139 | 9 | 1 | 1,190 | 1,199 | 13.3 |
| I-131: Applc. for Travel Doc. | I-131 | 512 | 62 | 131 | 1 | 318 | 498 | 6.1 |
| I-140: Imm. Pet. for Aln. Wkr. | I-140 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | SIV | 2 | 0 | 0 | 0 | 2 | 2 | 0.0 |
| | I-360 Other | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | I-360 Subtotal | 2 | 0 | 0 | 0 | 2 | 2 | 0.0 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | Asylee | 3 | 0 | 0 | 0 | 3 | 3 | 0.0 |
| | Employment | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Family | 225 | 93 | 11 | 0 | 121 | 225 | 6.3 |
| | Refugee | 1 | 0 | 0 | 0 | 1 | 1 | 0.0 |
| | SIV | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Other | 70,520 | 14,080 | 67 | 3 | 56,370 | 70,481 | 4.9 |
| | I-485 Subtotal | 70,749 | 14,173 | 78 | 3 | 56,495 | 70,690 | 4.9 |
| I-589: Applc. for Asylum | I-589 | 535 | 0 | 0 | 235 | 300 | 535 | 0.0 |
| I-730: Ref/Asy Relative Pet. | I-730 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| I-765: Applc. for Emp. Auth. | I-765 | 108,854 | 93,613 | 1,118 | 4 | 14,119 | 91,263 | 0.9 |
| I-821: Applc. for TPS | I-821 | 10 | 4 | 1 | 0 | 5 | 10 | 0.0 |
| I-914: T Nonimm. Stus. | I-914 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| I-918: U Nonimm. Stus. | I-918 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| Total | | 182,001 | 107,991 | 1,337 | 244 | 72,429 | 101,931 | 0.0 |

## Demographics Data

### Age Group - Receipts

| Form Number | 0-20 | 21-30 | 31-40 | 41-50 | 51+ | Unk. | Grand Total |
|---|---|---|---|---|---|---|---|
| I-130 | 89 | 192 | 388 | 260 | 412 | | 1,339 |
| I-131 | 96 | 88 | 103 | 102 | 122 | 3 | 512 |
| I-360 | | 1 | | | 1 | | 2 |
| I-485 | 15,216 | 14,012 | 14,793 | 9,276 | 17,308 | 144 | 70,749 |
| I-589 | 29 | 157 | 141 | 107 | 101 | | 535 |
| I-765 | 14,913 | 25,491 | 26,733 | 16,973 | 24,687 | 57 | 108,854 |
| I-821 | 1 | 2 | 3 | 3 | 1 | | 10 |
| Grand Total | 30,344 | 39,943 | 42,161 | 26,721 | 42,632 | 204 | 182,001 |

### Sex - Receipts

| Form Number | Female | Male | Unk. | Grand Total |
|---|---|---|---|---|
| I-130 | 709 | 619 | 13 | 1,339 |
| I-131 | 166 | 131 | 217 | 512 |
| I-360 | 2 | | | 2 |
| I-485 | 37,640 | 32,963 | 146 | 70,749 |
| I-589 | 242 | 292 | 1 | 535 |
| I-765 | 56,585 | 52,171 | 98 | 108,854 |
| I-821 | 2 | 8 | | 10 |
| Grand Total | 95,346 | 86,184 | 475 | 182,001 |

**Notes:** See notes page for all notes and assumptions.



# Haitian Humanitarian Parole (HHP)
## Immigrant Benefit Tracking
### Cumulative Statistics

**Purpose:** This page shows summary statistics for applications/petitions filed by Haitian Parolees between **1/5/2023 - 3/9/2025.** The current number of parolee arrivals is **210,810.** From this, **31,537** do not have any filings with USCIS (excluding I131/I134A/I765).

## Receipts, Completions, Pending and Processing Times

| Form Number | Sub Group | Receipts | Approvals | Denials | Admin Closed | Pending | Total Applicants | Proc. Time (Mths.) |
|---|---|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | Imm. Relative | 3,816 | 382 | 32 | 0 | 3,402 | 3,804 | 8.4 |
| | Pref. Relative | 3,428 | 16 | 0 | 0 | 3,412 | 3,454 | 6.1 |
| | I-130 Subtotal | 7,244 | 398 | 32 | 0 | 6,814 | 7,238 | 8.4 |
| I-131: Applc. for Travel Doc. | I-131 | 4,687 | 886 | 195 | 0 | 3,606 | 4,591 | 2.6 |
| I-140: Imm. Pet. for Aln. Wkr. | I-140 | 16 | 2 | 2 | 0 | 12 | 15 | 0.0 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | SIV | 57 | 0 | 1 | 0 | 56 | 55 | 0.0 |
| | I-360 Other | 5 | 1 | 0 | 0 | 4 | 5 | 0.0 |
| | I-360 Subtotal | 104 | 24 | 1 | 0 | 79 | 102 | 3.1 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | Asylee | 20 | 0 | 0 | 0 | 20 | 20 | 0.0 |
| | Employment | 8 | 0 | 0 | 0 | 8 | 8 | 0.0 |
| | Family | 6,706 | 1,024 | 144 | 1 | 5,537 | 6,670 | 6.3 |
| | Refugee | 16 | 0 | 1 | 0 | 15 | 16 | 0.0 |
| | SIV | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Other | 33 | 0 | 0 | 0 | 33 | 33 | 0.0 |
| | I-485 Subtotal | 6,783 | 1,024 | 145 | 1 | 5,613 | 6,746 | 6.3 |
| I-589: Applc. for Asylum | I-589 | 18,447 | 7 | 15 | 652 | 17,773 | 18,447 | 5.5 |
| I-730: Ref/Asy Relative Pet. | I-730 | 31 | 4 | 1 | 0 | 26 | 25 | 0.0 |
| I-765: Applc. for Emp. Auth. | I-765 | 254,733 | 208,485 | 3,031 | 20 | 43,197 | 197,254 | 0.8 |
| I-821: Applc. for TPS | I-821 | 172,056 | 62,438 | 549 | 7 | 109,062 | 170,802 | 1.8 |
| I-914: T Nonimm. Stus. | I-914 | 1 | 1 | 0 | 0 | 0 | 1 | 0.0 |
| I-918: U Nonimm. Stus. | I-918 | 5 | 0 | 0 | 0 | 5 | 5 | 0.0 |
| Total | | 464,107 | 273,269 | 3,971 | 680 | 186,187 | 204,302 | 0.0 |

## Demographics Data

### Age Group - Receipts

| Form Number | 0-20 | 21-30 | 31-40 | 41-50 | 51+ | Unk. | Grand Total |
|---|---|---|---|---|---|---|---|
| I-130 | 923 | 1,847 | 2,248 | 1,254 | 1,072 | 5 | 7,244 |
| I-131 | 388 | 985 | 1,715 | 1,065 | 534 | 1 | 4,687 |
| I-140 | 1 | 3 | 11 | 1 | | | 16 |
| I-360 | 45 | 11 | 23 | 15 | 8 | 2 | 104 |
| I-485 | 1,578 | 1,282 | 1,792 | 973 | 1,154 | 4 | 6,783 |
| I-589 | 576 | 6,660 | 6,446 | 3,448 | 1,317 | | 18,447 |
| I-730 | 8 | 3 | 7 | 13 | | | 31 |
| I-765 | 32,813 | 79,880 | 77,974 | 42,216 | 21,812 | 38 | 254,733 |
| I-821 | 26,072 | 50,717 | 51,474 | 28,361 | 15,395 | 37 | 172,056 |
| I-914 | 1 | | | | | | 1 |
| I-918 | 3 | 1 | 1 | | | | 5 |
| Grand Total | 62,408 | 141,389 | 141,691 | 77,346 | 41,292 | 87 | 464,107 |

### Sex - Receipts

| Form Number | Female | Male | Unk. | Grand Total |
|---|---|---|---|---|
| I-130 | 3,738 | 3,547 | 24 | 7,244 |
| I-131 | 1,781 | 2,870 | 92 | 4,687 |
| I-140 | | | 16 | 16 |
| I-360 | 34 | 38 | 32 | 104 |
| I-485 | 3,539 | 3,186 | 58 | 6,783 |
| I-589 | 9,032 | 9,368 | 47 | 18,447 |
| I-730 | | | 31 | 31 |
| I-765 | 128,658 | 125,624 | 451 | 254,733 |
| I-821 | 87,335 | 84,316 | 405 | 172,056 |
| I-914 | 1 | | | 1 |
| I-918 | 3 | 2 | | 5 |
| Grand Total | 234,121 | 228,951 | 1,156 | 464,107 |

**Notes:** See notes page for all notes and assumptions.

CHNV-FRN-00793.003



## U.S. Citizenship and Immigration Services
# Nicaraguan Humanitarian Parole (NHP)
## Immigrant Benefit Tracking
### Cumulative Statistics

**Purpose:** This page shows summary statistics for applications/petitions filed by Nicaraguan Parolees between **1/5/2023 - 3/9/2025.** The current number of parolee arrivals is **92,826.** From this, **63,578** do not have any filings with USCIS (excluding I131/I134A/I765).

### Receipts, Completions, Pending and Processing Times

| Form Number | Sub Group | Receipts | Approvals | Denials | Admin Closed | Pending | Total Applicants | Proc. Time (Mths.) |
|---|---|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | Imm. Relative | 1,379 | 196 | 7 | 0 | 1,176 | 1,374 | 6.0 |
| | Pref. Relative | 1,339 | 10 | 2 | 0 | 1,327 | 1,343 | 9.5 |
| | I-130 Subtotal | 2,718 | 206 | 9 | 0 | 2,503 | 2,699 | 6.0 |
| I-131: Applc. for Travel Doc. | I-131 | 448 | 193 | 64 | 0 | 191 | 428 | 2.5 |
| I-140: Imm. Pet. for Aln. Wkr. | I-140 | 23 | 1 | 0 | 0 | 22 | 23 | 0.0 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | SIV | 7 | 0 | 0 | 0 | 7 | 7 | 0.0 |
| | I-360 Other | 2 | 0 | 0 | 0 | 2 | 2 | 0.0 |
| | I-360 Subtotal | 73 | 38 | 0 | 0 | 35 | 70 | 2.6 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | Asylee | 3 | 0 | 0 | 0 | 3 | 3 | 0.0 |
| | Employment | 1 | 0 | 0 | 0 | 1 | 1 | 0.0 |
| | Family | 1,533 | 275 | 14 | 0 | 1,244 | 1,527 | 5.3 |
| | Refugee | 1 | 0 | 0 | 0 | 1 | 1 | 0.0 |
| | SIV | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Other | 105 | 8 | 1 | 0 | 96 | 105 | 0.0 |
| | I-485 Subtotal | 1,643 | 283 | 15 | 0 | 1,345 | 1,636 | 5.3 |
| I-589: Applc. for Asylum | I-589 | 26,346 | 26 | 21 | 289 | 26,010 | 26,346 | 4.5 |
| I-730: Ref/Asy Relative Pet. | I-730 | 69 | 4 | 0 | 0 | 65 | 67 | 0.0 |
| I-765: Applc. for Emp. Auth. | I-765 | 93,960 | 85,485 | 1,101 | 3 | 7,371 | 82,886 | 0.8 |
| I-821: Applc. for TPS | I-821 | 379 | 30 | 155 | 0 | 194 | 366 | 0.8 |
| I-914: T Nonimm. Stus. | I-914 | 3 | 0 | 0 | 0 | 3 | 3 | 0.0 |
| I-918: U Nonimm. Stus. | I-918 | 22 | 1 | 0 | 0 | 21 | 22 | 0.0 |
| Total | | 125,684 | 86,267 | 1,365 | 292 | 37,760 | 83,574 | 0.0 |

### Demographics Data

#### Age Group - Receipts

| Form Number | 0-20 | 21-30 | 31-40 | 41-50 | 51+ | Unk. | Grand Total |
|---|---|---|---|---|---|---|---|
| I-130 | 448 | 744 | 721 | 471 | 354 | 2 | 2,718 |
| I-131 | 65 | 116 | 135 | 84 | 47 | 1 | 448 |
| I-140 | | 5 | 9 | 7 | 2 | | 23 |
| I-360 | 64 | 1 | 5 | 2 | 1 | | 73 |
| I-485 | 414 | 424 | 356 | 231 | 216 | 2 | 1,643 |
| I-589 | 1,437 | 9,841 | 8,250 | 5,027 | 1,790 | 1 | 26,346 |
| I-730 | 41 | 8 | 15 | 5 | | | 69 |
| I-765 | 18,558 | 28,002 | 24,753 | 15,459 | 7,181 | 7 | 93,960 |
| I-821 | 41 | 132 | 99 | 73 | 34 | | 379 |
| I-914 | | 1 | 1 | 1 | | | 3 |
| I-918 | 8 | 4 | 6 | 2 | 2 | | 22 |
| Grand Total | 21,076 | 39,278 | 34,350 | 21,362 | 9,627 | 13 | 125,684 |

#### Sex - Receipts

| Form Number | Female | Male | Unk. | Grand Total |
|---|---|---|---|---|
| I-130 | 1,611 | 1,112 | 11 | 2,718 |
| I-131 | 298 | 148 | 5 | 448 |
| I-140 | | 1 | 22 | 23 |
| I-360 | 27 | 22 | 24 | 73 |
| I-485 | 1,032 | 597 | 14 | 1,643 |
| I-589 | 13,975 | 12,316 | 55 | 26,346 |
| I-730 | | | 69 | 69 |
| I-765 | 49,569 | 44,348 | 43 | 93,960 |
| I-821 | 208 | 170 | 1 | 379 |
| I-914 | 3 | | | 3 |
| I-918 | 12 | 10 | | 22 |
| Grand Total | 66,735 | 58,724 | 244 | 125,684 |

**Notes:** See notes page for all notes and assumptions.

Data Source: CLAIMS3, ELIS, CAMINO, & Global/Office of Performance & Quality - PAER Division    Data as of:  3/9/2025

CHNV-FRN-00793.004



**U.S. Citizenship and Immigration Services**

# Ukrainian Parolee (UHP)
# Immigrant Benefit Tracking
### Cumulative Statistics

**Purpose:** This page shows summary statistics for applications/petitions filed by Ukrainian Parolees between **2/24/2022 - 3/9/2025.** The current number of parolee arrivals is **259,287.** From this, **141,249** do not have any filings with USCIS (excluding I131/I134A/I765).

### Receipts, Completions, Pending and Processing Times

| Form Number | Sub Group | Receipts | Approvals | Denials | Admin Closed | Pending | Total Applicants | Proc. Time (Mths.) |
|---|---|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | Imm. Relative | 5,868 | 3,932 | 66 | 8 | 1,862 | 5,846 | 4.0 |
| | Pref. Relative | 2,523 | 1,016 | 23 | 0 | 1,484 | 2,691 | 2.8 |
| | I-130 Subtotal | 8,391 | 4,948 | 89 | 8 | 3,346 | 8,361 | 3.8 |
| I-131: Applc. for Travel Doc. | I-131 | 127,833 | 8,886 | 1,965 | 119 | 116,863 | 117,203 | 8.6 |
| I-140: Imm. Pet. for Aln. Wkr. | I-140 | 389 | 135 | 49 | 0 | 205 | 366 | 2.7 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | SIV | 18 | 0 | 1 | 0 | 17 | 18 | 0.0 |
| | I-360 Other | 6 | 2 | 0 | 0 | 4 | 6 | 0.0 |
| | I-360 Subtotal | 182 | 124 | 3 | 0 | 55 | 178 | 2.9 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | Asylee | 44 | 11 | 9 | 0 | 24 | 44 | 10.0 |
| | Employment | 240 | 148 | 15 | 1 | 76 | 239 | 3.9 |
| | Family | 6,440 | 3,374 | 300 | 0 | 2,766 | 6,344 | 7.7 |
| | Refugee | 108 | 4 | 56 | 0 | 48 | 108 | 7.6 |
| | SIV | 2 | 1 | 1 | 0 | 0 | 2 | 0.0 |
| | Other | 1,129 | 665 | 109 | 4 | 351 | 1,119 | 2.0 |
| | I-485 Subtotal | 7,963 | 4,203 | 490 | 5 | 3,265 | 7,851 | 6.3 |
| I-589: Applc. for Asylum | I-589 | 3,609 | 11 | 11 | 35 | 3,552 | 3,609 | 8.5 |
| I-730: Ref/Asy Relative Pet. | I-730 | 60 | 28 | 3 | 0 | 29 | 53 | 10.1 |
| I-765: Applc. for Emp. Auth. | I-765 | 389,595 | 326,002 | 7,408 | 49 | 56,136 | 224,498 | 0.9 |
| I-821: Applc. for TPS | I-821 | 178,922 | 85,102 | 3,144 | 9 | 90,667 | 109,662 | 6.8 |
| I-914: T Nonimm. Stus. | I-914 | 10 | 6 | 0 | 0 | 4 | 10 | 0.0 |
| I-918: U Nonimm. Stus. | I-918 | 45 | 2 | 0 | 0 | 43 | 45 | 0.0 |
| Total | | 716,999 | 429,447 | 13,162 | 225 | 274,165 | 231,345 | 0.0 |

### Demographics Data

#### Age Group - Receipts

| Form Number | 0-20 | 21-30 | 31-40 | 41-50 | 51+ | Unk. | Grand Total |
|---|---|---|---|---|---|---|---|
| I-130 | 1,160 | 1,706 | 1,470 | 1,201 | 3,046 | 21 | 8,391 |
| I-131 | 38,699 | 24,854 | 30,779 | 17,439 | 16,083 | 142 | 127,833 |
| I-140 | 3 | 73 | 212 | 85 | 16 | | 389 |
| I-360 | 159 | 8 | 7 | 4 | 4 | | 182 |
| I-485 | 1,639 | 1,519 | 1,297 | 975 | 2,516 | 17 | 7,963 |
| I-589 | 215 | 1,013 | 1,209 | 697 | 468 | 7 | 3,609 |
| I-730 | 31 | 10 | 6 | 12 | 1 | | 60 |
| I-765 | 107,431 | 87,061 | 98,435 | 53,725 | 42,803 | 140 | 389,595 |
| I-821 | 54,627 | 37,888 | 43,701 | 23,555 | 19,046 | 105 | 178,922 |
| I-914 | 3 | 4 | 2 | 1 | | | 10 |
| I-918 | 17 | 6 | 9 | 11 | 2 | | 45 |
| Grand Total | 203,984 | 154,142 | 177,127 | 97,705 | 83,985 | 432 | 716,999 |

#### Sex - Receipts

| Form Number | Female | Male | Unk. | Grand Total |
|---|---|---|---|---|
| I-130 | 5,770 | 2,716 | 64 | 8,391 |
| I-131 | 68,548 | 58,749 | 807 | 127,833 |
| I-140 | 2 | 9 | 378 | 389 |
| I-360 | 69 | 83 | 30 | 182 |
| I-485 | 5,325 | 2,570 | 68 | 7,963 |
| I-589 | 1,591 | 1,994 | 24 | 3,609 |
| I-730 | | | 60 | 60 |
| I-765 | 203,385 | 185,304 | 906 | 389,595 |
| I-821 | 95,497 | 82,840 | 585 | 178,922 |
| I-914 | 6 | 4 | | 10 |
| I-918 | 27 | 18 | | 45 |
| Grand Total | 380,220 | 334,287 | 2,922 | 716,999 |

**Notes:** See notes page for all notes and assumptions.

CHNV-FRN-00793.005



**U.S. Citizenship and Immigration Services**

# Venezuelan Humanitarian Parole (VHP) Immigrant Benefit Tracking
## Cumulative Statistics

**Purpose:** This page shows summary statistics for applications/petitions filed by Venezuelan Parolees between **10/12/2022 - 3/9/2025**. The current number of parolee arrivals is **117,625.** From this, **45,735** do not have any filings with USCIS (excluding I131/I134A/I765).

### Receipts, Completions, Pending and Processing Times

| Form Number | Sub Group | Receipts | Approvals | Denials | Admin Closed | Pending | Total Applicants | Proc. Time (Mths.) |
|---|---|---|---|---|---|---|---|---|
| I-130: Petition for Alien Relative | Imm. Relative | 1,808 | 370 | 10 | 0 | 1,428 | 1,807 | 6.8 |
| | Pref. Relative | 883 | 20 | 0 | 0 | 863 | 898 | 7.6 |
| | I-130 Subtotal | 2,691 | 390 | 10 | 0 | 2,291 | 2,676 | 6.8 |
| I-131: Applc. for Travel Doc. | I-131 | 843 | 332 | 96 | 1 | 414 | 817 | 4.2 |
| I-140: Imm. Pet. for Aln. Wkr. | I-140 | 121 | 24 | 5 | 0 | 92 | 121 | 6.6 |
| I-360: Pet. for Amerasian, Widow(er), or Spec. Imm. | SIV | 6 | 0 | 0 | 0 | 6 | 6 | 0.0 |
| | I-360 Other | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | I-360 Subtotal | 55 | 30 | 0 | 0 | 25 | 53 | 3.1 |
| I-485: Applc. to Register Perm. Res. or Adj. Status | Asylee | 24 | 0 | 0 | 0 | 24 | 24 | 0.0 |
| | Employment | 16 | 4 | 5 | 0 | 7 | 16 | 0.0 |
| | Family | 1,721 | 426 | 21 | 0 | 1,274 | 1,707 | 5.8 |
| | Refugee | 9 | 0 | 2 | 0 | 7 | 9 | 0.0 |
| | SIV | 0 | 0 | 0 | 0 | 0 | 0 | 0.0 |
| | Other | 275 | 31 | 2 | 0 | 242 | 275 | 4.9 |
| | I-485 Subtotal | 2,045 | 461 | 30 | 0 | 1,554 | 2,029 | 5.5 |
| I-589: Applc. for Asylum | I-589 | 36,346 | 26 | 34 | 892 | 35,394 | 36,346 | 5.2 |
| I-730: Ref/Asy Relative Pet. | I-730 | 98 | 13 | 0 | 0 | 85 | 95 | 3.9 |
| I-765: Applc. for Emp. Auth. | I-765 | 145,606 | 119,899 | 2,014 | 2 | 23,691 | 107,245 | 0.9 |
| I-821: Applc. for TPS | I-821 | 63,141 | 33,960 | 218 | 0 | 28,963 | 47,346 | 5.5 |
| I-914: T Nonimm. Stus. | I-914 | 7 | 1 | 0 | 0 | 6 | 7 | 0.0 |
| I-918: U Nonimm. Stus. | I-918 | 25 | 0 | 0 | 0 | 25 | 24 | 0.0 |
| Total | | 250,978 | 155,136 | 2,407 | 895 | 92,540 | 109,362 | 0.0 |

### Demographics Data

#### Age Group - Receipts

| Form Number | 0-20 | 21-30 | 31-40 | 41-50 | 51+ | Unk. | Grand Total |
|---|---|---|---|---|---|---|---|
| I-130 | 322 | 564 | 494 | 423 | 915 | 11 | 2,691 |
| I-131 | 76 | 216 | 176 | 125 | 247 | 3 | 843 |
| I-140 | | 11 | 43 | 32 | 35 | | 121 |
| I-360 | 49 | 1 | 2 | 2 | 1 | | 55 |
| I-485 | 376 | 400 | 297 | 258 | 706 | 8 | 2,045 |
| I-589 | 1,300 | 11,536 | 9,997 | 6,969 | 6,516 | 28 | 36,346 |
| I-730 | 59 | 9 | 14 | 9 | 7 | | 98 |
| I-765 | 30,710 | 32,959 | 31,331 | 23,213 | 27,266 | 127 | 145,606 |
| I-821 | 14,087 | 13,395 | 12,919 | 10,011 | 12,668 | 61 | 63,141 |
| I-914 | 4 | 3 | | | | | 7 |
| I-918 | 10 | 6 | 4 | 2 | 3 | | 25 |
| Grand Total | 46,993 | 59,100 | 55,277 | 41,044 | 48,364 | 238 | 250,978 |

#### Sex - Receipts

| Form Number | Female | Male | Unk. | Grand Total |
|---|---|---|---|---|
| I-130 | 1,668 | 1,048 | 4 | 2,691 |
| I-131 | 472 | 366 | 9 | 843 |
| I-140 | | 1 | 120 | 121 |
| I-360 | 19 | 24 | 12 | 55 |
| I-485 | 1,286 | 742 | 17 | 2,045 |
| I-589 | 18,637 | 17,657 | 52 | 36,346 |
| I-730 | | | 98 | 98 |
| I-765 | 75,860 | 69,633 | 113 | 145,606 |
| I-821 | 33,048 | 30,016 | 77 | 63,141 |
| I-914 | 4 | 3 | | 7 |
| I-918 | 18 | 6 | 1 | 25 |
| Grand Total | 131,012 | 119,496 | 503 | 250,978 |

**Notes:** See notes page for all notes and assumptions.



# Ukraine & CHNV Parolee
# Immigrant Benefit Tracking
### Weekly Trends

**Purpose:** This page shows monthly cumulative arrivals and weekly receipt and completion trends for applications/petitions filed by parolees between **4/21/2022 - 3/9/2025**





# Ukraine & CHNV Parolee
# Immigrant Benefit Tracking
#### Notes and Assumptions

**Notes:**

**1)** The Parolee population is identified using alien numbers with 'CHP', 'HHP', 'NHP', 'UHP', or 'VHP' classes of admission in the Central Index System. Ukranian parolees who were admitted under the "DT" class of admission between Feb 24, 2022 and Apr 24 2022 are also included in these counts. Total parolee arrivals is based on the number of unique A-Numbers with each class of admission in the Central Index System.  This count may include parolees who have departed the United States.

**2)** The number of parolees with "No Filings" are those who have not filed any of the following forms: I-129F, I-130, I-140, I-360, I-485, I-589, I-730, I-821, I-914, I-914A, I-918, I-918A, N-400.

**3)** This report counts applications and petitions filed by the Parolee population, including both domestic and international filings.

**4)** The number of total applicants represents the number of unique individuals who filed an application/petition with USCIS during the reporting period.  The count of total applicants in each form line represents the number of unique individuals who filed that particular form.  The count of total applicants in the 'Total' line represents the number of unique individuals who filled an application across all form types.  If one individual files multiple form types, they will be counted once in the 'Total' line.

**5)** Any application or petition filed by or on behalf of the parolee prior to their arrival is not included in this dataset (Ex. I-130).

**6)** For I-589, only principal applicants are counted in the 'Total Applicants' column.

**7)** For I-589, only applications where the decision has been served are counted in the 'Approvals', 'Denials', and 'Admin Closed' columns.  Applications where the decision has been rendered, but not served, will be counted in the pending column.

**8)** For I-730, petitions processed in CLAIMS3 and CAMINO are included.

**9)** I-730 counts include petitions filed where the petitioner or beneficiary is in the Parolee population.

**10)** I-914 data includes I-914 and I-914A counts.

**11)** I-918 data includes I-918 and I-918A counts.

**12)** Processing time is represented by the median number of days between the receipt date and the decision date for applications/petitions with a completion.  The days are converted into months using a factor of 30.4 days per month. Pending applications/petitions are not included.

**13)** Processing times are calculated using completions in the given time period (ex. cumulative, FYTD, Weekly).  Time periods with fewer than 10 completions have the processing time suppressed to 0.0 to avoid displaying small sample size outliers.

**14)** Age represents age at time of receipt.  Unknown in "Age Group" and "Sex" means the data are not available in the electronic systems.

CHNV-FRN-00793.008



MENU

Home > Newsroom > All News > Alerts > Update on Form I-134A

# Update on Form I-134A

Release Date : 01/28/2025

Due to the Jan. 20, 2025 Executive Order, Securing Our Borders, USCIS is pausing acceptance of Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, until we review all categorical parole processes as required by that order.

Last Reviewed/Updated: 01/28/2025



CHNV-FRN-00794

**U.S. Customs and Border Protection**

**Carrier Liaison Program**

January 22, 2025                                           CLP@cbp.dhs.gov

# Executive Order on Securing Our Borders

On January 20, 2025, the President of the United States issued an Executive Order on *Securing Our Borders.* The order directs the Department of Homeland Security to "terminate all categorical parole programs that are contrary to the policies of the United States." This includes parole processes for Cuban, Haitian, Nicaraguans, and Venezuelans.

Carriers are reminded that aliens must have a valid visa or other appropriate travel documentation upon arrival in the United States.

This guidance does not apply to those aliens arriving with valid Form I-512, or those aliens being processed for Significant Public Benefit Parole in coordination with federal law enforcement partners.

Carriers that transport aliens subject to the Presidential Executive Order may be subject to a carrier fine for each alien brought to the United States.

Any questions concerning the scope or implementation of the Presidential Executive Orders and the Federal Register Notices, including the authorization for any alien to board an aircraft or otherwise travel to the United States to seek admission, should be directed to the appropriate Regional Carrier Liaison Group (RCLG) or other designated CBP official for adjudication prior to aircraft departure.

| RCLG | SERVICE AREA | PHONE NUMBER |
|------|--------------|--------------|
| Honolulu | Asia, Pacific Rim | 808-237-4632 |
| Miami | Latin America, Caribbean | 305-874-5444 |
| New York | Europe, Africa, Middle East | 718-487-5321 |

Publication No. 4000-0125

**U.S. Customs and Border Protection**

**Carrier Liaison Program**

CLP@cbp.dhs.gov

# Updated Guidance: Executive Order on Securing Our Borders

On January 20, 2025, the President of the United States issued an Executive Order on *Securing Our Borders.* The order directs the Department of Homeland Security to "terminate all categorical parole programs that are contrary to the policies of the United States." The impacted programs include:

- Uniting for Ukraine (U4U)
- Operations Allies Welcome (OAW)
- Family Reunification Parole (FRP)
- Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV)
- Safe Mobility Office (SMO)
- Central American Minor (CAM)

Carriers are reminded that aliens must have a valid visa or other appropriate travel documentation upon arrival in the United States.

This guidance does not apply to those aliens arriving with valid Forms I-512, or those aliens being processed for Significant Public Benefit Parole in coordination with federal law enforcement partners.

Carriers that transport aliens subject to the Presidential Executive Order may be subject to a carrier fine for each alien brought to the United States.

Any questions concerning the implementation of this Presidential Executive Order, including the authorization for any alien to board an aircraft or otherwise travel to the United States to seek admission, should be directed to the appropriate Regional Carrier Liaison Group (RCLG) prior to aircraft departure.

| RCLG | SERVICE AREA | PHONE NUMBER |
|---|---|---|
| Honolulu | Asia, Pacific Rim | 808-237-4632 |
| Miami | Latin America, Caribbean | 305-874-5444 |
| New York | Europe, Africa, Middle East | 718-487-5321 |

CHNV-FRN-00796

 U.S. Customs and Border Protection

U.S. Customs and Border Protection

# CBP Removes Scheduling Functionality in CBP One™ App

**Release Date:** Tue, 01/21/2025

**WASHINGTON** – U.S. Customs and Border Protection (CBP) announced removal of the scheduling functionality within the CBP One™ mobile application, effective Jan. 20, 2025, at noon EST.

Previously, aliens were able to submit advanced information and schedule appointments at eight southwest border ports of entry. All appointments have been cancelled.

Aliens were notified of the cancellations. CBP remains dedicated to efficiently processing applicants for admission at U.S. ports of entry while upholding U.S. immigration laws.

---

*U.S. Customs and Border Protection (CBP) is America's frontline: the nation's largest law enforcement organization and the world's first unified border management agency. The 65,000+ men and women of CBP protect America on the ground, in the air, and on the seas. We facilitate safe, lawful travel and trade and ensure our country's economic prosperity. We enhance the nation's security through innovation, intelligence, collaboration, and trust.*

**Last Modified: Jan 22, 2025**

CHNV-FRN-00797



## Media Contacts

### Office of Public Affairs

 (202) 344-1780

 CBPMEDIARELATIONS

CHNV-FRN-00798

## CBP Information Center (for non-media inquiries)

- (202) 325-8000



## Social Media Directory

View a complete list of local and regional CBP social media accounts.

CHNV-FRN-00799

**View the Directory**

CHNV-FRN-00800



**Homeland Security**

U.S. Department of Homeland Security

# DHS Reinstates Migrant Protection Protocols, Allowing Officials to Return Applicants to Neighboring Countries

**Release Date:** January 21, 2025

WASHINGTON – The Department of Homeland Security (DHS) made the following announcement regarding restarting the Migrant Protection Protocols (MPP) immediately.

On January 25, 2019, Department of Homeland Security (DHS) Secretary Kirstjen Nielsen issued Policy Guidance for Implementation of the Migrant Protection Protocols (the MPP Policy). The MPP Policy is an exercise of the authority granted to DHS pursuant to Section 235(b)(2)(c) of the Immigration and Nationality Act (INA). That authority permits the Secretary of DHS to return certain applicants for admission to the adjoining country from which they are arriving pending the completion of removal proceedings pursuant to Section 240 of the INA.

Between Jan. 20, 2021, and Oct. 29, 2021, Acting Secretary David Pekoske, and later Secretary Alejandro Mayorkas, repeatedly attempted to suspend or terminate the MPP Policy. Following a series of legal actions, Secretary Mayorkas's final attempt to terminate the MPP Policy was stayed by a federal court. *See* Order Granting Stay, *Texas v. Biden*, 2:21-cv-67 (N.D. Tex. Dec. 15, 2022). The Department of Justice, seven months after that stay was entered, voluntarily dismissed the federal government's appeal, acquiescing to keeping the MPP Policy in effect for the foreseeable future. *See Texas v. Biden*, No. 23-10143 (5th Cir. Jul. 17, 2023).

According to representations made by the federal government in court, DHS at all times complied with that court order, but the facts on the ground "render[ed] restarting MPP impossible." Defendants' Supplemental Response Brief at 10, *Texas v. Biden*, 2:21-cv-67 (N.D. Tex. Oct. 6, 2023). The situation at the border has changed and the facts on the ground are favorable to resuming implementation of the 2019 MPP Policy.

## Topics

BORDER SECURITY (/TOPICS/BORDER-SECURITY)

## Keywords

BORDER SECURITY (/KEYWORDS/BORDER-SECURITY)     CUSTOMS AND BORDER PROTECTION (CBP) (/KEYWORDS/CUSTOMS-AND-BORDER-PROTECTION-CBP)
IMMIGRATION ENFORCEMENT (/KEYWORDS/IMMIGRATION-ENFORCEMENT)
MIGRANT PROTECTION PROTOCOLS (MPP) (/KEYWORDS/MIGRANT-PROTECTION-PROTOCOLS-MPP)

Last Updated: 01/21/2025

CHNV-FRN-00801

Document Produced in Native Format

CHNV-FRN-00802



An official website of the United States government    Here's how you know



MENU

Home  »  Key Homeland Security Metrics (KHSMs)  »  CBP Encounters

# CBP Encounters

On This Page: Data Visualizations | Data Source | Units of Measure and Descriptive Variables | Data Processing | Limitations | Reporting Period | Changes from Previous Releases | Related Data and Information | Download Data

U.S. Customs and Border Protection (CBP) prevents people from entering the country illegally or bringing anything harmful or illegal into the United States, while facilitating lawful international travel and trade.

The CBP Encounters Key Homeland Security Metric (KHSM) includes any encounter of a removable noncitizen. This includes three sets of data:

- People who unlawfully crossed the border between ports of entry.
- People who entered at a port of entry but are inadmissible.
- People expelled under the Title 42 public health order between March 2020 and May 2023 due to COVID-19.

Open All    Close All

## Data Visualizations

CHNV-FRN-00803

CBP Encounters | OHSS - Office of Homeland Security Statistics

## CBP Encounters in the Last 10 Years



| Fiscal Year | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 202 |
|---|---|---|---|---|---|---|---|
| Nationwide Total | 591,830 | 690,430 | 526,790 | 686,070 | 1,147,480 | 646,800 | 1,956,520 |
| Southwest Land Border | 444,860 | 558,990 | 415,200 | 519,940 | 977,230 | 458,080 | 1,734,680 |
| USBP Nationwide | 337,120 | 415,820 | 310,530 | 404,140 | 859,500 | 405,040 | 1,662,170 |
| OFO Nationwide | 254,710 | 274,620 | 216,260 | 281,930 | 287,980 | 241,760 | 294,350 |

Note: Data include nationwide United States Border Patrol (USBP) and Office of Field Operations (OFO) encounters. OFO encounters include people presenting at ports of entry with CBP One appointments and those arriving at airports with advance travel authorizations. We round data to the nearest 10.

CHNV-FRN-00804

Case 1:25-cv-10495-IT　　Document 20-13 - Filed 11/25/25　　Page 113 of 143

Source: OHSS Statistical System of Record based on data received from CBP.

## Data Source

All Encounters KHSM data are from the OHSS Statistical System of Record (SSOR).The SSOR is the authoritative source of DHS statistical data and undergoes rigorous validation. We construct SSOR data for CBP encounters datasets from CBP provided administrative records stored in the Enforcement Integrated Database (EID).

## Data Lineage

The United States Border Patrol (USBP) extracts EID e3Processing apprehension data from the Border Patrol Enforcement Tracking System (BPETS) Snapshot reporting system. The Office of Field Operations (OFO) extracts EID Unified Secondary (USEC) inadmissible data from the BorderStat reporting system. They both give us this data as a comma-separated values (CSV) file.

### Units of Measure and Descriptive Variables

## Units of Measure

### Encounters

Any encounter of a removable noncitizen by CBP's United States Border Patrol (USBP) or Office of Field Operations (OFO).

This includes:

- The apprehension of a removable noncitizen by USBP under Title 8 authority
- A determination of inadmissibility by OFO for a person requesting admission at a port of entry (land, sea, or air) under Title 8 authority
- An expulsion from the United States by USBP or OFO to prevent the spread of the COVID-19 disease pursuant to U.S. Centers for Disease Control and Prevention (CDC) Title 42 authority

CHNV-FRN-00805

CBP Encounters | DHS - Office of Homeland Security Statistics

The encounter unit of measure is CBP recorded encounters with removable noncitizens. We count people encountered more than once during a reporting period multiple times in the tables.

# Descriptive Variables

## Country of Citizenship

A country to which a person owes allegiance and by which they are entitled to be protected. Each country sets its own rules for granting citizenship. These rules may be based on birth or naturalization. Some people may not have a country of citizenship.

## Encounter Agency

- **OFO**: OFO encounters include a mix of administrative encounters and enforcement encounters.
- **USBP:** All USBP encounters are enforcement encounters.

## Family Status

The demographic status of the subject of a CBP encounter, at the time of the encounter.

Includes the following groups:

- **Accompanied minor (AM):** An individual younger than 18 years old encountered by CBP OFO who has no lawful immigration status and is traveling with a U.S. citizen or lawfully admissible noncitizen parent or legal guardian. AM data are limited to OFO encounters.
- **Family unit individual (FM):** A noncitizen encountered by CBP who belongs to a family unit. A family unit is defined as one or more minors plus their parent(s) or legal guardian(s) with whom they are traveling. The definition excludes minor children (under the age of 18) traveling with adult family members who are not their parents or legal guardians. All references to family units or FMs are to numbers of individuals in families, not to family groupings.
- **Single adult (SA):** A noncitizen encountered by CBP who is at least 18 years of age and not part of a family unit.
- **Unaccompanied child (UC):** A child under 18, who has no lawful immigration status in the United States and has no available parent or legal guardian in the United States.

CHNV-FRN-00806

## Field office (CBP OFO)

Any one of 20 geographic areas into which the United States is divided for OFO activities plus CBP preclearance activities abroad.

**List of Field Offices:** Laredo, Miami, San Diego, Buffalo, Houston, New York, Seattle, Boston, El Paso, Chicago, Los Angeles, Tampa, San Francisco, Tucson, Baltimore, Atlanta, Detroit, New Orleans, San Juan, and Portland

## Sector

Any one of 20 geographic areas into which the United States is divided for the DHS USBP activities.

**List of Sector Offices:** Big Bend, Blaine WA, Buffalo NY, Del Rio Tx, Detroit MI, El Centro CA, El Paso Tx, Grand Forks ND, Houlton ME, Havre MT, Laredo TX, Miami FL, New Orleans LA, Rio Grande TX, Ramey PR, San Diego CA, Spokane WA, Swanton VT, Tucson AZ, and Yuma AZ

## Region

Refers to one of four areas in which encounters occur:

- **Southwest land border:** Includes the 9 USBP sectors and 4 OFO field offices adjacent to the land border dividing the United States and Mexico. Doesn't include encounters at air and seaports in these OFO field offices.
- **Northern land border:** Includes the 8 USBP sectors and 4 OFO field offices adjacent to the land border dividing the continental United States and Canada. Doesn't include encounters at air and seaports in these OFO field offices.
- **Coastal border:** Includes the 3 USBP sectors adjacent to the Gulf of Mexico. Doesn't include the Rio Grande Valley sector and all OFO seaports.
- **Air Ports of Entry/Interior**: Includes all OFO encounters at airports, including those at the 15 OFO pre-clearance locations located within foreign airports. Includes referrals to OFO from other agencies.

# Data Processing

We clean and de-duplicate United States Border Patrol (USBP) Apprehensions and Office of Field Operations (OFO) Inadmissibles data. We define the descriptive variables of the KHSM by values found within each observation in the respective event's data. Data Cleaning

CHNV-FRN-00807

Case 1:25-cv-10495-IT          Document 203-13          Filed 11/25/25          Page 116 of 143

- De-duplicate OFO data using the Sigma Subject Person ID field.
- Strip time values from dates in date fields.
- Strip special characters from the data columns.
- Delete extra blank columns or rows.

## Integration

Once we stack USBP and OFO data into a CBP Master dataset. We produce all CBP data tables out of the CBP Master dataset.

## Imputation

We don't substitute any missing data for the CBP Encounter KHSM.

### Limitations

## Undercount and Overcount

This report includes every immigration encounter event by United States Border Patrol (USBP) and Office of Field Operations (OFO) secondary inspection of inadmissible non-citizen that took place during the reference period. Our de-duplication of OFO data indicates low rates of overlap (less than 0.1 percent).

From Fiscal Years 2020-2023, USBP identified all encounters of individuals in a family that resulted in a Title 42 Expulsion with a Family Unit/Group ID number. These encounters include a mix of family unit individuals (FMs) and other family members that classify as Single Adults (SAs), such as adult children, aunts, and uncles. We cannot differentiate between the FMs and SAs for these encounters, so we count them all as FMs. This results in an unknown overcount of FMs and undercount of SAs. The total number of these encounters is less than 320 thousand.

## Accuracy

We extract data from live systems that are subject to change. Statistical information is subject to change due to corrections, systems changes, changes in data definition or adding information.

CHNV-FRN-00808

Previous months' reporting may change during the same fiscal year as records mature and due to operational data quality efforts. We permanently lock data at the end of the fiscal year as part of the September monthly lock-down. Our encounter reporting always uses the most recent monthly updated data.

We round each row of data to the nearest 10 to protect privacy and security. As a result, the actual totals and the totals of the rounded rows can vary.

## Timeliness

We update this KHSM on a 45-day delay following the end of the month to allow time for operational data quality checks and other data maturity efforts before release. We update this KHSM on the third Thursday of each month. Data are current as of the report date and update previous releases.

## Linkage Error

There is currently no linkage of data for the Encounters KHSM report.

### Reporting Period

USBP Encounter data are available from Fiscal Years 2000–present. OFO Encounter data are available from Fiscal Years 2004–present.

### Changes from Previous Releases

The sources, methods, and definitions used in this report are not substantially different from previous reports. No special caution is required when comparing these statistics with those in previous reports.

### Related Data and Information

OHSS reports:

- Immigration Enforcement and Legal Processes Monthly Tables

CHNV-FRN-00809

- [Immigration Enforcement Actions Annual Flow Reports](#)
- [Yearbook of Immigration Statistics](#)
- [Border Security Metrics Report](#)

CBP reports:

- [CBP Enforcement Statistics | U.S. Customs and Border Protection](#)

## Download Data

Showing 1 to 4 of 4 files

| Data File | File Extension | File size | Date Posted | Report Year | Data Category |
|---|---|---|---|---|---|
| [CBP Encounters - USBP - November 2024](#) | xlsx | 1.11 MB | 01/16/2025 | 2024 | Key Homeland Security Metrics, CBP Encounters KHSM |
| [CBP Encounters - OFO - November 2024](#) | xlsx | 3.47 MB | 01/16/2025 | 2024 | Key Homeland Security Metrics, CBP Encounters KHSM |
| [CBP Encounters - OFO - September 2024](#) | xlsx | 3.4 MB | 12/19/2024 | 2024 | Key Homeland Security Metrics, CBP Encounters KHSM |
| [CBP Encounters - USBP - September 2024](#) | xlsx | 945.22 KB | 12/19/2024 | 2024 | Key Homeland Security Metrics, CBP Encounters KHSM |

CHNV-FRN-00810

## Key Metrics

### CBP Encounters

ICE Detentions

DHS Repatriations

DHS Fentanyl Disruption Seizures

FEMA Deployments

USCG Search and Rescue Responses

[Return to top](#)

**Data and Reports by Topic**

**Key Metrics**

**About Our Data**

**About OHSS**

**Glossary**



Email: ohss@hq.dhs.gov



OHSS.DHS.gov
**An official website of the U.S. Department of Homeland Security**

Accessibility

FOIA Requests

Privacy Policy

DHS.gov

# National Terrorism Advisory System

CHNV-FRN-00811



An official website of the United States government    Here's how you know

**MENU**

Home  »  Data and Reports by Topic  »  Immigration  »  Immigration Enforcement  »  Immigration Enforcement and Legal Processes Monthly Tables

# Immigration Enforcement and Legal Processes Monthly Tables

On This Page: Data Visualizations | About This Report | Methodology | Data Fields and Definitions | Download Data

Open All    Close All

## Data Visualizations

Dataset

Repatriations ⌄

When we send a noncitizen back to their country of citizenship or a third country, it's called repatriation. It can be a removal (which carries administrative penalties), a return (which does not carry administrative penalties), or an expulsion based on Title 42, which was enacted during COVID-19.

Timeframe



Fiscal Year    **Calendar Year**    **Monthly**

## Yearly Repatriations by Fiscal Year

Data available through November 2024



| Category | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| Title 42 Expulsions | | | | | |
| Administrative Returns | 45,670 | 43,240 | 30,340 | 15,070 | 72,760 |
| Enforcement Returns | 117,890 | 86,330 | 76,110 | 85,620 | 87,170 |
| Removals | 404,700 | 323,670 | 331,540 | 286,660 | 327,240 |
| **Total** | **568,250** | **453,240** | **437,990** | **387,340** | **487,160** |

## About This Report

This set of tables includes monthly data on immigration enforcement and legal processes.

We produced this report independently. It supports our mission to maximize DHS data quality and transparency.

We work with DHS Component Statistical Officials (CSOs) and subject-matter experts to standardize our reporting methodologies. All data in this report use validated reporting

CHNV-FRN-00813

standards. CSOs have reviewed data tables for accuracy. Records may not match component reporting due to differences in reporting methodologies or as-of dates.

> U.S. Border Patrol (USBP) has increased availability for some data fields beginning in June 2024. As such, we have assigned updated book-out outcomes for certain USBP encounters for Fiscal Years 2018 through 2022.

# Available Tables

### Encounters

- Nationwide Customs and Border Protection (CBP) Encounters by Encounter Type and Region
- SW Border Encounters by Citizenship, Family Status, and Sector or Field Office
- Nationwide United States Border Patrol (USBP) and Office of Field Operations (OFO) Encounters by Top 100 Citizenships
- SW Border USBP Encounters by Top 100 Citizenships

### CBP One

- CBP One Appointments

### CBP Book-Outs

- SW Border Encounters Book-Outs by Agency, Citizenship, and Family Status

### Administrative Arrests

- Immigration and Customs Enforce (ICE) Enforcement and Removal Operations (ERO) Administrative Arrests by Citizenship and Criminality

### Detentions

- ICE ERO Book-Ins to Detention by Citizenship, Criminality, and Initial Arresting Agency
- ICE ERO Book-Outs from Detention by Criminality and Initial Arresting Agency

CHNV-FRN-00814

## ICE Repatriations

- ICE ERO Removals and Returns by Citizenship, Criminality, and Initial Arresting Agency

## DHS Repatriations

- DHS Repatriations by Type
- DHS Removals by Citizenship, Criminality, and Initial Arresting Agency
- DHS Enforcement Returns by Citizenship
- DHS Administrative Returns by Citizenship

## Credible Fear

- SW Border Credible Fear Screenings Referred to USCIS by Citizenship
- SW Border Credible Fear Screenings Completed by Result
- Nationwide Credible Fear Screenings Referred to USCIS by Citizenship
- Nationwide Credible Fear Screenings Completed by Result

## Cuban, Haitian, Nicaraguan, and Venezuelan (CHNV) Process

- Confirmed Cuban, Haitian, Nicaraguan, and Venezuelan Parole Processes Beneficiaries
- Cuban, Haitian, Nicaraguan, and Venezuelan Parole Processes Travel Authorizations
- Confirmed Cuban, Haitian, Nicaraguan, and Venezuelan Parole Processes Parolees

## Methodology

# Data Source

All data are from the OHSS Persist Dataset except when noted. This is our immigration statistical system of record. We construct the Persist Dataset from DHS immigration components' operational reports monthly.

We identify other data sources in table sourcing notes. DHS operational components provide us these other data sources.

CHNV-FRN-00815

# Date

As of January 2025, we update this report monthly on the third Thursday of the month. We receive, process, analyze, and review data before publishing a report. This takes approximately 45 days following the reporting period for the data. For example, January's report will include data through November.

The newest report reflects our most up-to-date methodology and data. Numbers may differ from previously published figures.

# Data Processing

Our statisticians clean and validate component operational reports. We use unique record identifiers to deduplicate component data. We convert data to standardized formats according to published reporting standards. Component Statistical Officials validate the standardized formats. Our office and the Component Statistical Officials manage the standards together.

# Unit of Measure

Except as otherwise noted, the unit of measurement for all tables in this report is immigration events. This includes encounters, administrative arrests, and credible fear claims. We count people encountered (or arrested, etc.) more than once during the reporting period multiple times.

## Data Fields and Definitions

See the OHSS Glossary for definitions of terms used in these tables.

## Download Data



CHNV-FRN-00816

Showing 1 to 13 of 13 files

**Show:** 25 ⌄

| Data File | File Extension | File size | Date Posted ▼ | Report Year ▼ | Data Category |
|---|---|---|---|---|---|
| Immigration Enforcement and Legal Processes Monthly Tables - November 2024 | xlsx | 695.17 KB | 01/16/2025 | 2024 | Immigration Enforcement, ENF Legal Processes Monthly Tables |
| Immigration Enforcement and Legal Processes Monthly Tables - August 2024 | xlsx | 655.36 KB | 12/06/2024 | 2024 | Immigration Enforcement, ENF Legal Processes Monthly Tables |
| Immigration Enforcement and Legal Processes Monthly Tables - July 2024 | xlsx | 651.92 KB | 11/08/2024 | 2024 | Immigration Enforcement, ENF Legal Processes Monthly Tables |
| Immigration Enforcement and Legal Processes Monthly Tables - June 2024 | xlsx | 662.27 KB | 10/15/2024 | 2024 | Immigration Enforcement, ENF Legal Processes Monthly Tables |
| Immigration Enforcement | xlsx | 656.76 KB | 09/10/2024 | 2024 | Immigration Enforcement, |

CHNV-FRN-00817

| Data File | File Extension | File size | Date Posted ▼ | Report Year ▼ | Data Category |
|---|---|---|---|---|---|
| and Legal Processes Monthly Tables - May 2024 | | | | | ENF Legal Processes Monthly Tables |
| Immigration Enforcement and Legal Processes Monthly Tables - April 2024 | xlsx | 653.48 KB | 08/09/2024 | 2024 | Immigration Enforcement, ENF Legal Processes Monthly Tables |
| Immigration Enforcement and Legal Processes Monthly Tables - March 2024 | xlsx | 650.06 KB | 07/05/2024 | 2024 | Immigration Enforcement, ENF Legal Processes Monthly Tables |
| Immigration Enforcement and Legal Processes Monthly Tables - February 2024 | xlsx | 637.73 KB | 06/07/2024 | 2024 | Immigration Enforcement, ENF Legal Processes Monthly Tables |

CHNV-FRN-00818

| Data File | File Extension | File size | Date Posted ▼ | Report Year ▼ | Data Category |
|-----------|----------------|-----------|---------------|---------------|---------------|
| [Immigration Enforcement and Legal Processes Monthly Tables - January 2024](#) | xlsx | 629.07 KB | 05/10/2024 | 2024 | Immigration Enforcement, ENF Legal Processes Monthly Tables |
| [Immigration Enforcement and Legal Processes Monthly Tables - December 2023](#) | xlsx | 467.16 KB | 04/05/2024 | 2024 | Immigration Enforcement, ENF Legal Processes Monthly Tables |
| [Immigration Enforcement and Legal Processes Monthly Tables - November 2023](#) | xlsx | 396.09 KB | 03/08/2024 | 2023 | Immigration Enforcement, ENF Legal Processes Monthly Tables |
| [Immigration Enforcement and Legal Processes Monthly Tables: October 2023](#) | xlsx | 397.15 KB | 02/09/2024 | 2023 | Immigration Enforcement, ENF Legal Processes Monthly Tables |
| [Immigration Enforcement](#) | xlsx | 391.3 KB | 01/05/2024 | 2023 | Immigration Enforcement, |

CHNV-FRN-00819

| Data File | File Extension | File size | Date Posted ▼ | Report Year ▼ | Data Category |
|---|---|---|---|---|---|
| and Legal Processes Monthly Tables - September 2023 | | | | | ENF Legal Processes Monthly Tables |

*Last updated: January 16, 2025*

## Data and Reports by Topic

Immigration

Yearbook of Immigration Statistics

Lawful Permanent Residents

Refugees and Asylees

Naturalizations

Nonimmigrant Admissions (Temporary Visitors)

Unauthorized Immigrants

Immigration Enforcement

**Immigration Enforcement and Legal Processes Monthly Tables**

Immigration Enforcement Actions Annual Flow Report

Border Security Metrics Report

Family Unit Actions Reports

Southwest Border Enforcement Report

Efforts by DHS to Estimate Southwest Border Security between Ports of Entry

Enforcement Lifecycle Reports

CHNV-FRN-00820

Migrant Protection Protocols Cohort Reports

State Immigration Data

Archive

Law Enforcement

Emergency Management

Maritime

International Trade

Cybersecurity

Infrastructure Protection

Screening

[Return to top](#)

**Data and Reports by Topic**

**Key Metrics**

**About Our Data**

**About OHSS**

**Glossary**



Email: [ohss@hq.dhs.gov](mailto:ohss@hq.dhs.gov)

CHNV-FRN-00821



OHSS.DHS.gov
An official website of the **U.S. Department of Homeland Security**

Accessibility

FOIA Requests

Privacy Policy

DHS.gov

**National Terrorism Advisory System**

CHNV-FRN-00822

Case 1:25-cv-10495-IT   Document 203-13   Filed 11/25/25   Page 131 of 143

An official website of the United States Government  Here's how you know

Home  >  ...  > Secretary Rubio's Meeting with Panamanian Presi...

# Secretary Rubio's Meeting with Panamanian President Mulino

**READOUT**

**OFFICE OF THE SPOKESPERSON**

FEBRUARY 2, 2025

The below is attributable to Spokesperson Tammy Bruce:

Secretary of State Marco Rubio met with Panamanian President José Raúl Mulino and Foreign Minister Javier Martínez-Acha today in Panama City to address critical regional and global challenges.  Secretary Rubio informed President Mulino and Minister Martínez-Acha that President Trump has made a preliminary determination that the current position of influence and control of the Chinese Communist Party over the Panama Canal area is a threat to the canal and represents a violation of the Treaty Concerning the Permanent Neutrality and Operation of the Panama Canal. Secretary Rubio made clear that this status quo is unacceptable and that absent immediate changes, it would require the United States to take measures necessary to protect its rights under the Treaty.

Secretary Rubio also emphasized the importance of collaborative efforts to end the hemisphere's illegal migration crisis and thanked President Mulino for his support of a joint repatriation program, which has reduced illegal migration through the Darien Gap.  The Secretary underscored the desire for an improved investment climate and ensuring a level playing field for fair competition by U.S. firms.  The Secretary also praised President Mulino's regional leadership in support of a democratic, free Venezuela.

CHNV-FRN-00823

Case 1:25-cv-10495-IT    Document 203-13    Filed 11/25/25    Page 132 of 143

Secretary Rubio expressed his gratitude for the productive discussion and underscored the United States' dedication to making both nations safer, stronger, and more prosperous.  He noted this meeting marks an important step in reinvigorating the strategic relationship between the United States and Panama, in line with President Trump's vision.

TAGS

Bureau of Western Hemisphere Affairs    Office of the Spokesperson    Panama

The Secretary of State

White House

USA.gov

Office of the Inspector General

Archives

Contact Us

☐

Privacy Policy

Accessibility Statement

CHNV-FRN-00824

Copyright Information

FOIA

No FEAR Act

CHNV-FRN-00825

An official website of the United States Government  Here's how you know

◉ **Live Now:** Secretary Rubio Holds Joint Press Availability with Costa Rican President Chaves

**Home** > ... > Secretary Rubio's Meeting with Salvadoran Presid...

# Secretary Rubio's Meeting with Salvadoran President Nayib Bukele

**READOUT**

**OFFICE OF THE SPOKESPERSON**

FEBRUARY 3, 2025

The below is attributable to Spokesperson Tammy Bruce:

Secretary of State Marco Rubio met today with Salvadoran President Nayib Bukele in San Salvador. It was a tremendously successful meeting that will make both countries stronger, safer, and more prosperous.

Multiple agreements were struck to fight the waves of illegal mass migration currently destabilizing the entire region. President Bukele agreed to take back all Salvadoran MS-13 gang members who are in the United States unlawfully. He also promised to accept and incarcerate violent illegal immigrants, including members of the Venezuelan Tren de Aragua gang, but also criminal illegal migrants from any country. And in an extraordinary gesture never before extended by any country, President Bukele offered to house in his jails dangerous American criminals, including U.S. citizens and legal residents.

CHNV-FRN-00826

Case 1:25-cv-10495-IT   Document 203-13   Filed 11/25/25   Page 135 of 143

Secretary Rubio and President Bukele concluded a civil nuclear cooperation MOU, which was signed by the Secretary and Salvadoran Foreign Minister Alexandra Hill Tinoco hours later.

Secretary Rubio informed President Bukele that the United States will issue a waiver to unfreeze assistance to support the two countries' joint work to detect suspicious travelers at El Salvador's National Passenger Analysis Center (CNAP), resume operations at El Salvador's Border Security Information Group (GCIF), and support El Salvador's vetted units working with U.S. law enforcement.

Secretary Rubio also raised strategies to counter the influence of the Chinese Communist Party in the hemisphere to safeguard the sovereignty and interests of both nations and the region.

---

TAGS

Bilateral Relations and Engagement      Bureau of International Security and Nonproliferation

Bureau of Western Hemisphere Affairs      El Salvador      Office of the Spokesperson

The Secretary of State

---

White House

USA.gov

CHNV-FRN-00827

Office of the Inspector General

Archives

Contact Us

_____

☐

_____

Privacy Policy

Accessibility Statement

Copyright Information

FOIA

No FEAR Act

CHNV-FRN-00828

An official website of the United States Government    Here's how you know

⊙ **Live Now:** Secretary Rubio Holds Joint Press Availability with Costa Rican President Chaves

**Home** > ... > Priorities and Mission of the Second Trump Admin...

# Priorities and Mission of the Second Trump Administration's Department of State

**PRESS STATEMENT**

**MARCO RUBIO, SECRETARY OF STATE**

JANUARY 22, 2025

Serving as America's 72nd Secretary of State is the highest honor of my professional life. President Trump has given me a clear direction to place our core national interest as the guiding mission of American foreign policy. Every dollar we spend, every program we fund, and every policy we pursue must be justified with the answer to three simple questions:

> Does it make America safer?

> Does it make America stronger?

> Does it make America more prosperous?

To advance our national interest, we will build a more innovative, nimble, and focused State Department. This will require replacing some priorities, deemphasizing some issues, and eliminating some practices.

First, we must curb mass migration and secure our borders. The State Department will no longer undertake any activities that facilitate or encourage mass migration. Our diplomatic

CHNV-FRN-00829

relations with other countries, particularly in the Western Hemisphere, will prioritize securing America's borders, stopping illegal and destabilizing migration, and negotiating the repatriation of illegal immigrants.

Next, we must reward performance and merit, including within the State Department ranks. President Trump issued an executive order eliminating "DEIA" requirements, programs, and offices throughout the government. This order will be faithfully executed and observed in both letter and spirit.

Relatedly, we must return to the basics of diplomacy by eliminating our focus on political and cultural causes that are divisive at home and deeply unpopular abroad. This will allow us to conduct a pragmatic foreign policy in cooperation with other nations to advance our core national interests.

We must stop censorship and suppression of information. The State Department's efforts to combat malign propaganda have expanded and fundamentally changed since the Cold War era and we must reprioritize truth. The State Department I lead will support and defend Americans' rights to free speech, terminating any programs that in any way lead to censoring the American people. While we will combat genuine enemy propaganda, we will do so only with the fundamental truth that America is a great and just country whose people are generous and whose leaders now prioritize Americans' core interests while respecting the rights and interests of other nations.

Finally, we must leverage our strengths and do away with climate policies that weaken America. While we will not ignore threats to our natural environment and will support sensible environmental protections, the State Department will use diplomacy to help President Trump fulfill his promise for a return to American energy dominance.

In short, President Trump's forward-looking agenda for our country and foreign relations will guide the State Department's refocus on American national interests. Amid today's reemerging great power rivalry, I will empower our talented diplomatic corps to advance our mission to make America safer, stronger, and more prosperous.

CHNV-FRN-00830

TAGS

Office of the Spokesperson    The Secretary of State

---

White House

USA.gov

Office of the Inspector General

Archives

Contact Us

---

☐

---

Privacy Policy

Accessibility Statement

Copyright Information

FOIA

No FEAR Act

CHNV-FRN-00831

substantially prepared by the Exchange. The Exchange has designated this proposal for immediate effectiveness pursuant to Section 19(b)(3)(A) of the Act[4] and Rule 19b–4(f) thereunder.[5] The Commission is publishing this notice to solicit comments on the proposed rule change from interested persons.

## I. Self-Regulatory Organization's Statement of the Terms of Substance of the Proposed Rule Change

The Exchange proposes to amend its Price List to adopt fees for Directed Orders routed by the Exchange to an algorithm, effective March 3, 2025.

The proposed rule change, including the Exchange's statement of the purpose of, and statutory basis for, the proposed rule change, is available on the Exchange's website at *https://www.nyse.com* and on the Commission's website at *https://www.sec.gov/rules-regulations/self-regulatory-organization-rulemaking/national-securities-exchanges?file_number=SR-NYSE-2025-04.*

## II. Solicitation of Comments

Interested persons are invited to submit written data, views, and arguments concerning the foregoing, including whether the proposed rule change is consistent with the Act.[6] Comments may be submitted electronically by using the Commission's internet comment form (*https://www.sec.gov/rules-regulations/self-regulatory-organization-rulemaking/national-securities-exchanges?file_number=SR-NYSE-2025-04*) or by sending an email to *rule-comments@sec.gov.* Please include file number SR–NYSE–2025–04 on the subject line. Alternatively, paper

---

[4] 15 U.S.C. 78s(b)(3)(A).

[5] 17 CFR 240.19b–4(f). At any time within 60 days of the filing of the proposed rule change, the Commission summarily may temporarily suspend such rule change if it appears to the Commission that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of the Act. If the Commission takes such action, the Commission will institute proceedings to determine whether the proposed rule change should be approved or disapproved.

[6] Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written communications relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for website viewing and printing in the Commission's Public Reference Room, 100 F Street NE, Washington, DC 20549, on official business days between the hours of 10 a.m. and 3 p.m. Copies of the filing also will be available for inspection and copying at the principal office of the Exchange.

comments may be sent to Secretary, Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549–1090. All submissions should refer to file number SR–NYSE–2025–04. To help the Commission process and review your comments more efficiently, please use only one method. The Commission will post all comments on the Commission's internet website (*https://www.sec.gov/rules-regulations/self-regulatory-organization-rulemaking/national-securities-exchanges?file_number=NYSE-2025-04*). Do not include personal identifiable information in submissions; you should submit only information that you wish to make available publicly. We may redact in part or withhold entirely from publication submitted material that is obscene or subject to copyright protection. All submissions should refer to file number SR–NYSE–2025–04 and should be submitted on or before April 4, 2025.

For the Commission, by the Division of Trading and Markets, pursuant to delegated authority.[7]

**J. Matthew DeLesDernier,**
*Deputy Secretary.*
[FR Doc. 2025–04073 Filed 3–13–25; 8:45 am]
**BILLING CODE 8011–01–P**

---

## DEPARTMENT OF STATE

**[Public Notice: 12682]**

## Determination: Foreign Affairs Functions of the United States

1. Serving as America's 72nd Secretary of State is the highest honor of my professional life. In Executive Order 14150, President Trump has given me a clear direction to place our core national interests as the guiding mission of American foreign policy, and always put America and American citizens first.

2. Securing America's borders and protecting its citizens from external threats is the first priority foreign affairs function of the United States. This effort requires the United States to marshal all available resources and authorities. These resources and authorities also include, but are not limited to, those of the Department of State, the Department of Defense, the Department of Homeland Security, the Department of Justice, and many other federal agencies. See, *e.g.,* Executive Orders 14150, 14157, 14160, 14161, 14165.

3. The threats to U.S. citizens from an unsecured border can include foreign spies, contraband, and harmful

---

[7] 17 CFR 200.30–3(a)(12).

materials that flow across the border, as well as unchecked mass migration, narcotics trafficking, human smuggling and trafficking, and other destabilizing or unlawful activities, including the flow of dangerous drugs, weapons, and technology. Eliminating or mitigating these threats involves visa policies, export control enforcement policies and practices, and other foreign affairs functions entrusted to me, as Secretary of State, under the Constitution, at the direction of the President, and by statute.

4. The Department of State enjoys primacy among federal agencies in the conduct of our foreign policy. When he appointed me as Secretary of State, the President entrusted me with all matters respecting the conduct of foreign affairs, including my primary foreign affairs duty: the duty to protect the people of the United States from any threats originating from foreign actors or from foreign soil. For the Department of State, that includes all policy related to the protection and travel of U.S. citizens overseas, visa operations and visa issuance, implementation of the Arms Export Control Act, and implementation of the Mutual Educational and Cultural Exchange Act of 1961, as amended, among other authorities. But the scope of a foreign affairs function of the United States is much broader.

5. For these reasons, I hereby determine that all efforts, conducted by any agency of the federal government, to control the status, entry, and exit of people, and the transfer of goods, services, data, technology, and other items across the borders of the United States, constitute a foreign affairs function of the United States under the Administrative Procedure Act, 5 U.S.C. 553, 554.

Dated: February 21, 2025.

**Marco Rubio,**
*Secretary of State.*
[FR Doc. 2025–04116 Filed 3–13–25; 8:45 am]
**BILLING CODE 4710–10–P**

---

## SURFACE TRANSPORTATION BOARD

**[Docket No. FD 36842]**

## Mingus Mountain Railroad, LLC—Acquisition and Operation Exemption—Line of Clarkdale Arizona Central Railroad, L.C.

Mingus Mountain Railroad, LLC (MMRL), a noncarrier, has filed a verified notice of exemption under 49 CFR 1150.31 to acquire from Clarkdale Arizona Central Railroad, L.C. (CACR), and operate approximately 38.74 miles of rail line between milepost 0 + 15 feet

the topics in the "Agenda" section below. We encourage you to submit comments through Federal eRulemaking Portal at *https://www.regulations.gov*. If your material cannot be submitted using *https://www.regulations.gov*, email the individual in the **FOR FURTHER INFORMATION CONTACT** section of this document for alternate instructions. You must include the docket number USCG–2023–0397. Comments received will be posted without alteration at *https://www.regulations.gov* including any personal information provided. You may wish to review the Privacy and Security Notice found via a link on the homepage of *https://www.regulations.gov*, and DHS's eRulemaking System of Records notice (85 FR 14226, March 11, 2020). For more about privacy and submissions in response to this document, see DHS's eRulemaking System of Records notice (85 FR 14226, March 11, 2020). If you encounter technical difficulties with comment submission, contact the individual listed in the **FOR FURTHER INFORMATION CONTACT** section of this notice.

*Docket Search:* Documents mentioned in this notice as being available in the docket, and all public comments, will be in our online docket at *https://www.regulations.gov*, and can be viewed by following that website's instructions. Additionally, if you go to the online docket and sign-up for email alerts, you will be notified when comments are posted.

**FOR FURTHER INFORMATION CONTACT:** Mr. Matthew D. Layman, Designated Federal Officer of the National Towing Safety Advisory Committee, 2703 Martin Luther King Jr Ave SE, Stop 7509, Washington, DC 20593–7509, telephone 202–372–1421, or *Matthew.D.Layman@uscg.mil*.

**SUPPLEMENTARY INFORMATION:** Notice of these meetings is in compliance with *Federal Advisory Committee Act,* (Pub. L. 117–286, 5 U.S.C., ch. 10). The National Towing Safety Advisory Committee is authorized by section 601 of the *Frank LoBiondo Coast Guard Authorization Act of 2018,* (Pub. L. 115–282, 132 Stat. 4192), and is codified in 46 U.S.C. 15108. The Committee operates under the provisions of the *Federal Advisory Committee Act* and 46 U.S.C. 15109. The National Towing Safety Advisory Committee provides advice and recommendations to the Secretary of Homeland Security through the Commandant of the U.S. Coast Guard, on matters related to shallow-draft inland navigation, coastal waterway navigation, and towing safety.

**Agenda**

The agenda for the National Towing Safety Advisory Committee is as follows:

*The Committee Meeting Agenda, September 26, 2023*

I. Opening
   a. Call to order and DFO Remarks.
   b. NTSAC Chairperson Remarks.
II. Subcommittee Breakout Working Session
   a. Subcommittees: Task #21–03, Report On the Anticipated Challenges Expected to Impact the Towing Vessel Industry;
   b. Task #21–04, Report on the Challenges Faced by the Towing Vessel Industry as a Result of the Covid–19 Pandemic;
   c. Task #22–01, Recommendations to the Coast Guard for Rulemaking Improvements to Subchapter M;
   d. Task #22–02, Recommendation for Training and Instruction for Crewmembers Working Aboard Subchapter M Inspected Towing Vessels.
IV. Full Committee Working Session
   a. U.S. Coast Guard Administrative Business.
   b. Review of New Task Statements.
V. Adjournment of meeting

*The Committee Meeting Agenda, September 27, 2023*

I. Opening
   a. Call to Order and DFO Remarks.
   b. Committee Chairperson Remarks.
   c. Roll Call and Determination of Quorum.
   d. U.S. Coast Guard Leadership Remarks.
II. Administration
   a. Adoption of Meeting Agenda.
   b. Approval of Meeting Minutes for April 12, 2023 Committee Meeting.
III. Old Business
   a. Update from Subcommittees:
   ○ Task #21–03, Report On the Anticipated Challenges Expected to Impact the Towing Vessel Industry;
   ○ Task #21–04, Report on the Challenges Faced by the Towing Vessel Industry as a Result of the Covid–19 Pandemic;
   ○ Task #22–01, Recommendation to the Coast Guard for Rulemaking Improvements to Subchapter M;
   ○ Task #22–02, Recommendation for Training and Instruction for Crewmembers Working Aboard Subchapter M Inspected Towing Vessels.
   b. Vetting Subcommittee Update.
IV. New Business
   a. Committee Planning.
V. Information Session

   a. U.S. Coast Guard Sector New Orleans.
   b. CG–INV, Sexual Assault and Sexual Harassment (SASH) Reporting.
   c. Towing Vessel National Center of Expertise, 46 CFR Subchapter M Compliance.
   d. District 8 Towing Vessel Coordinator.
   e. Marine Compliance Alliance.
VI. Committee Discussion
VII. Public Comment Period
VIII. Closing Remarks and Plans for Next Meeting
IX. Adjournment of Meeting

A copy of all pre-meeting documentation, and referenced National Towing Safety Advisory Committee Task Statements, will be available at *https://www.dco.uscg.mil/Our-Organization/Assistant-Commandant-for-Prevention-Policy-CG-5P/Commercial-Regulations-standards-CG-5PS/Office-of-Operating-and-Environmental-Standards/vfos/TSAC/* no later than September 13, 2023. Alternatively, you may contact Mr. Matthew Layman as noted above in the **FOR FURTHER INFORMATION CONTACT** section above.

There will be a public comment period at the end of the meetings. Speakers are requested to limit their comments to 3 minutes. Please note that the public comment period may end before the period allotted, following the last call for comments. Please contact the individual listed in the **FOR FURTHER INFORMATION CONTACT SECTION** to register as a speaker.

Dated: August 28, 2023.

**Jeffrey M. Lantz,**
*Director of Commercial Regulations and Standards.*

[FR Doc. 2023–19760 Filed 9–12–23; 8:45 am]

**BILLING CODE 9110–04–P**

---

**DEPARTMENT OF HOMELAND SECURITY**

**U.S. Customs and Border Protection**

**[OMB Control Number 1651–0143]**

**Agency Information Collection Activities; Revision of an Existing Collection of Information; Advance Travel Authorization (ATA)**

**AGENCY:** U.S. Customs and Border Protection (CBP), Department of Homeland Security.

**ACTION:** 60-Day notice and request for comments.

---

**SUMMARY:** The Department of Homeland Security, U.S. Customs and Border Protection (CBP) will be submitting the following information collection request

to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995 (PRA). The information collection is published in the **Federal Register** to obtain comments from the public and affected agencies.

**DATES:** Comments are encouraged and must be submitted no later than November 13, 2023 to be assured of consideration.

**ADDRESSES:** Written comments and/or suggestions regarding the item(s) contained in this notice must include the OMB Control Number 1651–0143 in the subject line and the agency name. Please use the following method to submit comments:

*Email.* Submit comments to: *CBP_PRA@cbp.dhs.gov*.

**FOR FURTHER INFORMATION CONTACT:** Requests for additional PRA information should be directed to Seth Renkema, Chief, Economic Impact Analysis Branch, U.S. Customs and Border Protection, Office of Trade, Regulations and Rulings, 90 K Street NE, 10th Floor, Washington, DC 20229–1177, Telephone number 202–325–0056 or via email *CBP_PRA@cbp.dhs.gov*. Please note that the contact information provided here is solely for questions regarding this notice. Individuals seeking information about other CBP programs should contact the CBP National Customer Service Center at 877–227–5511, (TTY) 1–800–877–8339, or CBP website at *https://www.cbp.gov/*.

**SUPPLEMENTARY INFORMATION:** CBP invites the general public and other Federal agencies to comment on the proposed and/or continuing information collections pursuant to the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*). This process is conducted in accordance with 5 CFR 1320.8. Written comments and suggestions from the public and affected agencies should address one or more of the following four points: (1) whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility; (2) the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used; (3) suggestions to enhance the quality, utility, and clarity of the information to be collected; and (4) suggestions to minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.*, permitting electronic submission of responses. The comments that are submitted will be summarized and included in the request for approval. All comments will become a matter of public record.

**Overview of This Information Collection**

*Title:* Advance Travel Authorization (ATA).

*OMB Number:* 1651–0143.

*Form Number:* N/A.

*Current Actions:* Revision to an existing collection of information with an increase in total annual burden.

*Type of Review:* Revision.

*Affected Public:* Individuals.

*Abstract:* The Department of Homeland Security (DHS) established new parole processes to allow certain noncitizens and their qualifying immediate family members to request advance authorization to travel to the United States to seek a discretionary grant of parole, issued on a case-by-case basis. To support these processes, U.S. Customs and Border Protection (CBP) developed the Advance Travel Authorization (ATA) capability, which allows individuals to submit information within the CBP One™ application as part of the process. Through an emergency approval, CBP established the ATA collection. Initially, this capability was utilized by Venezuelan citizens and their qualifying immediate family members seeking authorization to travel to the United States under the DHS-established parole process for Venezuelans.[1] DHS later developed similar parole processes for citizens of Cuba,[2] Haiti,[3] and Nicaragua[4] and their qualifying immediate family members. The four processes are collectively known as CHNV. There is no numerical cap on the number of noncitizens from these four countries who may apply; however, there is a 30,000 limit on the number of travel authorizations DHS may issue each month across all four processes. Additionally, participation is limited in the ATA capability to those individuals who meet certain DHS-established criteria, including but not limited to, possession of a valid, unexpired passport, as well as having an approved U.S.-based financial supporter.

ATA requires the collection of a facial photograph via CBP One™ from those noncitizens who voluntarily elect to participate in the process to provide accurate identity information for completion of vetting in advance of issuance of a travel authorization.

**Advance Travel Authorization (ATA)**

The facial biometrics collected from the noncitizens will be linked to biographic information provided by the individual to U.S. Citizenship and Immigration Services (USCIS). This information collection will facilitate the vetting of noncitizens seeking to obtain advance authorization to travel. This collection will also give air carriers that participate in CBP's Document Validation (DocVal) program the ability to validate an approved advance authorization to travel, facilitating generation of a noncitizen's boarding pass without having to use other manual validation processes.

CBP One™ allows the user to capture the required biometrics, currently limited to a live facial photograph, and confirm submission after viewing the captured image. If the user is not satisfied with the image captured, the user can retake the image. If the image capture is unsuccessful, CBP One™ will provide the user with an error message stating that the submission was unsuccessful and permitting the user to try again. If the user continues to experience technical difficulties, the CBP One™ application provides a help desk email to request assistance.

CBP conducts vetting to determine whether the individual poses a security risk to the United States, and to determine whether the individual is eligible to receive advance authorization to travel to the United States to seek a discretionary grant of parole at the port of entry (POE). In the event that an advance authorization to travel may be denied because of a facial photograph match found in criminal databases or if there is a mismatch that limits the ability to confirm identity, then the match or mismatch will be verified by a CBP officer before the advance travel authorization is officially denied. Currently, ATA collects certain limited biographic and biometric information, and biometric collection is limited to the collection of a live facial photograph.

If the advance travel authorization is denied, the individual will not be authorized to travel to the United States to seek parole under this process. In the event that the user is not authorized to travel under this process, the user may still seek entry to the United States through another process, including by filing a request for consideration of parole with USCIS or applying with the

---

[1] 87 FR 63507 (Oct. 19, 2023); *see also* 88 FR 1279 (Jan. 9, 2023).

[2] 88 FR 1266 (Jan. 9, 2023); *see also* 88 FR 26329 (Apr. 28, 2023).

[3] 88 FR 1243 (Jan. 9, 2023); *see also* 26 FR 327 (Apr. 28, 2023).

[4] 88 FR 1255 (Jan. 9, 2023).

Department of State (DOS) to obtain a visa. If travel authorization is approved, the approval establishes that the individual has obtained advance authorization to travel to the United States to seek a discretionary grant of parole, consistent with 8 CFR 212.5(f), but does not guarantee boarding or a specific processing disposition at a POE. Upon arrival at a U.S. POE, the traveler will be subject to inspection by a CBP officer, who will make a case-by-case processing disposition determination.

This collection of information is authorized by 8 U.S.C. 1103 and 1182(d)(5), and 8 CFR 212.5(f). DHS has also publicly announced the policy and accompanying collection on its website and has also published a **Federal Register** notice for each of the named countries.

CBP One™ collects the following information from the individual submitting a request for an advance authorization to travel to the United States to seek parole under this process:
1. Facial Photograph
2. Photo obtained from the passport or Chip on ePassport, where available
3. Alien Registration Number
4. First and Last Name
5. Date of Birth
6. Passport Number

Additionally, CBP further revised this collection through another emergency submission to allow individuals seeking to travel to the United States as part of the Family Reunification Parole (FRP) processes for certain nationals of Cuba,[5] Haiti,[6] Colombia,[7] Guatemala,[8] Honduras,[9] and El Salvador [10] to use the existing ATA capability to submit information to CBP. The FRP processes begin with an invitation being sent to a petitioner who previously received an approved Form I–130, *Petition for Alien Relative,* on behalf of the potential principal beneficiary, and if applicable, the beneficiary's accompanying derivative beneficiaries. The petitioner then submits a Form I–134A, *Online Request to be a Supporter and Declaration of Financial Support,* on behalf of the potential principal beneficiary, and if applicable, the beneficiary's accompanying derivative beneficiaries. For those petitioners whose Form I–134A is confirmed by USCIS, the beneficiaries will receive an email with instructions to create an online account with myUSCIS. There, the potential beneficiary will confirm

their biographic information and complete attestations, and then receive instructions to download the CBP One™ mobile application to continue through the process. USCIS will send the biographic information to CBP. Additionally, once the beneficiary completes their CBP One™ submission, utilizing the ATA capability, CBP will conduct vetting, and if appropriate, issue an advance authorization to travel. The information collected as part of these new processes is the same as that which is already collected from other populations through ATA. This information collection will facilitate the vetting of noncitizens seeking to obtain advance authorization to travel and will give air carriers that participate in CBP's DocVal program the ability to validate an approved travel authorization, facilitating generation of a noncitizen's boarding pass without having to use other manual validation processes.

**New Changes**

1. *Adding Uniting for Ukraine (U4U) respondent group to collection:* In response to the President's commitment to welcome 100,000 Ukrainian citizens and others fleeing Russia's aggression, DHS, in coordination with DOS, established the Uniting for Ukraine [11] (U4U) parole process on April 25, 2022. This process allows Ukrainian citizens and their qualifying family members the ability to submit certain personal information to USCIS and CBP to facilitate the issuance of an advance authorization to travel to the United States to seek parole. At the time U4U was implemented, full ATA capability was not yet developed and CBP uses different processes to screen and vet Ukrainians seeking parole. Currently, individuals seeking to travel under U4U do not utilize CBP One™ or the ATA capability during their process. To align U4U with the other DHS parole processes, including CHNV and FRP, the ATA capability will be implemented for those individuals requesting authorization to fly directly to the United States to seek a discretionary grant of parole. The ATA capability will be added as part of a step in the U4U process to facilitate the vetting of noncitizens seeking to obtain advance authorization to travel and will give air carriers that participate in CBP's DocVal program the ability to validate an approved travel authorization, facilitating generation of a noncitizen's boarding pass without having to use other manual validation processes.

2. *Adjusted Burden:* Furthermore, coinciding with USCIS, CBP has added to the burden estimate for this collection, to account for any potential expansion(s) that align with new or revised policies or processing capacity over the next three years.

3. *New Data Element:* This revision also adds a new data element to this collection; the physical location (longitude/latitude) at the time of any biometric information submission. This data element will further secure the submission process and provide accurate identity information for completion of vetting in advance of issuance of a travel authorization.

CBP invites comments from the public on all changes established by previously approved emergency submissions and the new proposed revisions listed in this FRN.

*Type of Information Collection:* Advance Travel Authorization (ATA).
*Estimated Number of Respondents:* 562,000.
*Estimated Number of Annual Responses per Respondent:* 1.
*Estimated Number of Total Annual Responses:* 562,000.
*Estimated Time per Response:* 10 minutes.
*Estimated Total Annual Burden Hours:* 93,667.

Dated: September 7, 2023.

**Seth D. Renkema,**
*Branch Chief, Economic Impact Analysis Branch, U.S. Customs and Border Protection.*

[FR Doc. 2023–19720 Filed 9–12–23; 8:45 am]

**BILLING CODE P**

---

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**[Docket No. FR–6419–N–01]**

**Announcement of the Housing Counseling Federal Advisory Committee; Notice of Public Meeting**

**AGENCY:** Office of the Assistant Secretary for Housing—Federal Housing Commissioner, Department of Housing and Urban Development (HUD).

**ACTION:** Notice of Housing Counseling Federal Advisory Committee public meeting.

**SUMMARY:** This gives notice of a Housing Counseling Federal Advisory Committee (HCFAC) meeting and sets forth the proposed agenda. The HCFAC meeting will be held on Thursday September 28, 2023. The meeting is open to the public and is accessible to individuals with disabilities.

**DATES:** The virtual meeting will be held on Thursday September 28, 2023,

---

5 88 FR 54639 (Aug. 11, 2023).
6 88 FR 54635 (Aug. 11, 2023).
7 88 FR 43591 (July 10, 2023).
8 88 FR 43581 (July 10, 2023).
9 88 FR 43601 (July 10, 2023).
10 88 FR 43611 (July 10, 2023).

11 *See* Implementation of the Uniting for Ukraine Parole Process, 87 FR 25040 (Apr. 25, 2022).