YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

KATHERINE J. SHINNERS
*Senior Litigation Counsel*

ELISSA FUDIM
*Trial Attorney*

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ———————————————<br>Svitlana Doe, *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>Kristi Noem, in her official capacity as<br>Secretary of Homeland Security, *et al.*,<br><br>       Defendants.<br>——————————————— | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:25-cv-10495 |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

Background .................................................................................................................. 2

Argument .................................................................................................................... 4

   I.      Plaintiffs' Motion Should Be Denied for Threshold Reasons ................................ 4

   II.     The Termination of Parole Was Not Arbitrary and
         Capricious ............................................................................................................. 6

     i.    The Secretary Considered the Humanitarian Reasons for
         Parole .................................................................................................................. 7

     ii.   The Secretary considered alternatives ................................................................ 9

     iii.  The Secretary considered reliance interests ...................................................... 10

     iv.  The Secretary did not rely upon impermissible factors ..................................... 12

   III.    The Secretary's Rationale Regarding Expedited Removal was
         ot Pretexual or Legal Error ............................................................................... 14

   IV.    The Secretary Did Not Exceed Her Authority .................................................. 17

   V.     The Notice Was Sufficient and Complied With the Law ................................... 18

   VI.    The Court Should Stay or Limit Any Remedy .................................................. 20

Conclusion ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Aldea-Tirado v. PricewaterhouseCoopers, LLP,*
   101 F.4th 99 (1st Cir. 2024) ................................................................................. 19

*Amanullah v. Nelson,*
   811 F.2d 1 (1st Cir. 1987) ..................................................................................... 2

*Bank of Commerce v. Bd. of Governors of Fed. Res. Sys.,*
   513 F.2d 164 (10th Cir. 1975) ............................................................................... 19

*Celebi v. Mayorkas,*
   744 F. Supp. 3d 100 (D. Mass. 2024) ................................................................... 11

*CHIR v. Noem,* No. 25-cv-872, 2025 WL 2192986 (D.D.C. Aug. 1, 2025) ........................... 10, 17

*CHIR v. Noem,* No. 25-5289, 2025 WL 2649100 (D.C. Cir. Sept. 12, 2025) ........................ 10, 15

*Connecticut Bd. of Pardons v. Dumschat,*
   452 U.S. 458 (1981) ............................................................................................. 19

*Dep't of Commerce v. New York,*
   588 U.S. 752 (2019) ............................................................................................. 16

*Doe v. Noem,*
   152 F.4th 272 (1st Cir. 2025) ............................................................................... passim

*Encino Motorcars, LLC v. Navarro,*
   579 U.S. 211 (2016) ............................................................................................. 8

*Espinoza v. Farah Mfg. Co.,*
   414 U.S. 86 (1973) ............................................................................................... 12

*F.C.C. v. Fox Television Stations, Inc.,*
   556 U.S. 502 (2009) ............................................................................................. 20

*Fong Haw Tan v. Phelan,*
   333 U.S. 6 (1948) ................................................................................................. 16

*Grace v. Barr,*
   965 F.3d 883 (D.C. Cir. 2020) ............................................................................. 14

*Great Lakes Commc'n Corp. v. Fed. Commc'ns Comm'n,*
   3 F.4th 470 (D.C. Cir. 2021) ............................................................................... 20

*Harris v. Univ. of Massachusetts Lowell*,
  43 F.4th 187 (1st Cir. 2022) ................................................................................ 4

*Housatonic River Initiative v. U.S. EPA*,
  75 F.4th 248 (1st Cir. 2023) ................................................................................ 4

*Judulang v. Holder*,
  565 U.S. 42 (2011) ............................................................................................ 14

*Kucana v. Holder*,
  558 U.S. 233 (2010) ............................................................................................ 5

*Morgan v. United States*,
  304 U.S. 1 (1938) ................................................................................................ 7

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) .............................................................................................. 7

*Noem v. Doe*,
  145 S. Ct. 1524 (2025) ........................................................................................ 1

*Oceana, Inc. v. Ross*,
  920 F.3d 855 (D.C. Cir. 2019) ............................................................................ 7

*Regents of the Univ. of Calif.*,
  591 U.S. 1 (2020) ................................................................................................ 8

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947) ............................................................................................ 7

*Town of Norfolk v. U.S. Army Corps of Eng'rs*,
  968 F.2d 1438 (1st Cir. 1992) ............................................................................ 7

*Trump v. Casa, Inc.*,
  No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) .................................... 20

*United States ex rel. Knauff v. Shaughnessy*,
  338 U.S. 537 (1950) .......................................................................................... 13

*Webster v. Doe*,
  486 U.S. 592 (1988) ............................................................................................ 6

## **Statutes**

5 U.S.C. § 701(a)(1) .................................................................................................. 6

5 U.S.C. § 705 ......................................................................................................... 15

8 U.S.C. § 1101(a)(13)(B) ...................................................................................... 13

8 U.S.C. § 1182(d)(5) ................................................................................................. 13

8 U.S.C. § 1182(d)(5)(A) .......................................................................................... 2, 5

8 U.S.C. § 1252(a)(2)(B) ............................................................................................. 5

8 U.S.C. § 1182(d)(5)(A) .............................................................................................. 2

**<u>Regulations</u>**

8 C.F.R. § 212.5(e)(2) ............................................................................................. 2, 3

8 C.F.R. § 212.5(e)(2)(i) ............................................................................................ 19

Plaintiffs move for summary judgment on their claims challenging the government's termination of the parole of aliens who received parole under parole programs for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV) established in 2022 and 2023. Those programs relied on categorical findings of urgent humanitarian reasons or significant public benefit to justify the parole into the United States of 532,000 aliens who had not otherwise established any entitlement to come to or remain in the country. Parolees were not able to seek re-parole under the CHNV parole programs and were encouraged to file for asylum or other status where applicable. Parolees were also advised that their parole could be terminated at any time.

On March 25, 2025, the Secretary of Homeland Security terminated the CHNV parole programs as well as existing periods of parole for aliens paroled under the CHNV parole programs. *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans,* 90 Fed. Reg. 13611 (March 25, 2025) (the (FRN). Plaintiffs contend that the Secretary's decision was arbitrary and capricious, contrary to law, and effected without proper notice. *See generally* Doc. No. 198. These arguments are neither new nor correct. Plaintiffs made similar arguments in support of their motion for a preliminary injunction, in opposition to Defendants' requests to the First Circuit and to the Supreme Court seeking a stay of the district court's resulting injunctive-relief order, and in opposition to Defendants' appeal to the First Circuit on the merits of the district court's injunctive-relief order. In response to those arguments, the Supreme Court stayed this Court's preliminary order, in a decision with just two justices noting dissent. *Noem v. Doe*, 145 S. Ct. 1524 (2025). Essentially, the Supreme Court previewed what is already clear—the Secretary's discretionary decision was not reviewable and was, in any event, neither contrary to law nor arbitrary and capricious. The First Circuit likewise concluded that Plaintiffs did not demonstrate a strong likelihood of success in establishing that the termination was either contrary to law or arbitrary and capricious. *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025). The Court of Appeals was

1

right—and no different result is warranted now. Summary judgment for Plaintiffs should be denied, and this case should be dismissed as set forth in Defendants' Motion to Dismiss, *see* Doc. No. 114, or in the alternative, summary judgment should be granted to Defendants, *see* Fed. R. Civ. P. 56(f).

## BACKGROUND

Parole is, by definition, a temporary permission for an alien to proceed into the interior of the United States. In 8 U.S.C. § 1182(d)(5)(A), Congress granted the Secretary "remarkably broad" discretion with respect to parole. *Amanullah v. Nelson*, 811 F.2d 1, 6 (1st Cir. 1987). That statute authorizes the Secretary, "in [her] discretion," to "parole" applicants for admission "temporarily under such conditions as [the Secretary] may prescribe" "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). It further provides that parole may be terminated "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." *Id.*; *see also* 8 C.F.R. § 212.5(e)(2).

In 2022 and 2023, the U.S. Department of Homeland Security (DHS) created the CHNV parole programs. *See* Doc. No. 203, Administrative Record (AR) at 00232-00291. DHS cited categorical reasons that parole of nationals from these countries would provide a significant public benefit to the United States and address urgent humanitarian reasons, based on general migration and country conditions. *See* AR 00281-284; 00244-247; 00257-260; 00270-273. DHS stated that these programs would fulfill six goals: reducing "irregular migration" of nationals from those countries; enabling national-security and public-safety vetting of aliens before they arrive in the United States; reducing the strain on DHS personnel and resources from surges in southwest border and maritime encounters; minimizing the burden on border communities by routing aliens to communities in the interior; disincentivizing dangerous journeys through criminal smuggling networks; and addressing foreign-policy goals by managing migration collaboratively in the Western Hemisphere. *Id.*

Under those programs, DHS could consider granting beneficiaries advance authorization to travel by air to U.S. ports of entry to request parole for up two years. *See, e.g.*, AR 00247-248. Once paroled into the country, these aliens "could seek humanitarian relief or other [immigration] benefits and receive work authorization" during the two-year parole period, but "those 'who are not granted asylum or other immigration benefits will need to leave the United States at the expiration of their authorized period of parole or will generally be placed in removal proceedings after the period of parole expires.'" *E.g.*, AR at 00278. DHS later announced "there would be no 're-parole' beyond the initial two-year period" under the CHNV parole programs. 90 Fed. Reg. at 13614 n.24. Even within the two-year parole period, DHS expressly stated that it "may terminate parole in its discretion at any time." *E.g.*, AR at 00244. DHS granted parole to some 532,000 aliens under the CHNV parole programs in the ensuing two years. 90 Fed. Reg. at 13612.

On March 25, 2025, the Secretary published a notice in the Federal Register announcing that DHS was "terminating the CHNV parole programs as of March 25, 2025," and "[t]he temporary parole period of aliens in the United States under the CHNV parole programs and whose parole has not already expired by April 24, 2025 will terminate on that date unless the Secretary makes an individual determination to the contrary." 90 Fed. Reg. at 13611. The Secretary explained that the CHNV parole programs "do not serve a significant public benefit, are not necessary to reduce levels of illegal immigration, did not sufficiently mitigate the domestic effects of illegal immigration, are not serving their intended purposes, and are inconsistent with the Administration's foreign policy goals." *Id.* at 13612. She also explained why the original grounds for the CHNV programs did not warrant their continuation, and that "any urgent humanitarian reasons for granting parole are best addressed on a case-by-case basis." *Id.* at 13612-17.

The Secretary acknowledged reliance interests of parolees and others. *Id.* at 13617–19. But she found that any costs to parolees did not outweigh the government's "sovereign interest in

determining who is paroled into the United States" and "the U.S. government's strong interest in promptly removing parolees when the basis for the underlying program no longer exists." *Id.* at 13618–19. DHS chose to terminate parole in 30 days rather than allow parolees' two-year terms to expire because the latter option would "essentially foreclose DHS's ability to expeditiously remove those CHNV parolees with no lawful basis to remain in the United States" under expedited removal procedures in accordance with 8 U.S.C. § 1225(b)(1)(A)(iii)(II). *Id.* at 13620.

Following the Secretary's announcement, Plaintiffs amended their Complaint to challenge it. This memorandum assumes the Court's familiarity with the procedural history of this case and the arguments previously presented. Defendants refer the Court to its briefs at Doc. Nos. 89, 114.[1]

## ARGUMENT

### I.    Plaintiffs' Motion Should Be Denied for Threshold Reasons.

Threshold grounds preclude granting summary judgment to Plaintiffs. First, several Plaintiffs lack standing, *see* Doc. No. 114 at 5-9 (the organizational Plaintiff and sponsor Plaintiffs lack standing). Further, several plaintiffs' claims are moot because their parole would have already expired in any event,[2] and there is no further relief the Court can grant on their claims. *Harris v. Univ. of Massachusetts Lowell*, 43 F.4th 187, 191 (1st Cir. 2022).

Second, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes jurisdiction over claims challenging the discretionary parole termination decision. Doc. No. 114 at 12. The Secretary may terminate parole

---

[1] Plaintiffs include in their Index of Exhibits documents that are not part of the Administrative Record and bear no relevance to this motion. *See* Doc. Nos. 197-2, 128-2 through -4, 128-12, 128-14 through-17, 153-1, 196-1 and -2. Plaintiffs claim they do so because of the likelihood of Appellate review. Doc. No. 198 at 2, n.4. This is improper and the Court should strike the documents. The merits of the challenged agency actions are assessed based on the administrative record. *Housatonic River Initiative v. U.S. EPA*, 75 F.4th 248, 278 (1st Cir. 2023). Plaintiffs have not sought to supplement or correct the record, nor would such supplementation be warranted.
[2] Plaintiff Carlos Doe's challenge to the termination is moot, as his parole expired in June 2025, Doc. No. 24-4 at ¶ 6; Andrea Doe's expired in May 2025. Doc. 27-1.

4

when she determines, in her "opinion," that the "purposes" of parole "have been served." *See* 8 U.S.C. § 1182(d)(5)(A); *see also* 90 Fed. Reg. 13,612-17, 13,619 n.70. The statute thus specifies that the authority to terminate parole is in the Secretary's discretion, and § 1252(a)(2)(B)(ii)'s judicial-review bar applies. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Kucana v. Holder*, 558 U.S. 233, 247–48 (2010). Plaintiffs contend that they are not challenging the discretionary decision but instead the Secretary's alleged failure to abide by a requirement to assess whether the purpose of parole has been served on a case-by-case basis. Doc. No. 198 at 18-19. But no such requirement exists. Doc. No. 89 at 13-14. The First Circuit held the government would likely prevail because "the statutory text [] reflects a deliberate choice on the part of Congress to require the Secretary to implement a case-by-case approach to granting parole, but not to end such grants. The statutory text, therefore, favors an interpretation that the 'case-by-case' requirement only limits the Secretary's discretion to grant parole." *Doe*, 152 F.4th at 286. Moreover, Plaintiffs' reasoning cannot be squared with the fact that a court may not review the determination of whether the purposes of parole have been served. The language "no court shall have jurisdiction to review" in § 1252(a)(2)(B) is clear and specific—and this bar applies without exception and "notwithstanding any other provision of law (statutory or nonstatutory)." 8 U.S.C. § 1252(a)(2)(B). And the INA clearly bars review where the statute makes a determination discretionary, *regardless* of whether that discretion is exercised appropriately. *Cf. Kucana*, 558 U.S. at 247–48. Where the Secretary makes an *individual* parole-termination decision, that decision is not judicially reviewable. Left unexplained is why such a decision would become reviewable if made alongside approximately 500,000 others. Under Plaintiffs' logic, had the Secretary terminated each alien's parole in a separate notice—with no explanation whatsoever—that would be unreviewable. But those determinations become reviewable when combined and set forth in a notice explaining in detail the common reasons governing the parole terminations, with explicit consideration of parolees'

reliance interests.  Nothing in the statutory text suggests that Congress intended such a scheme.

Third, the parole termination decision is "committed to agency discretion by law" because Congress's delegation of authority to the "opinion" of the Secretary indicates that Congress committed this decision to her own judgment and "foreclose[s] the application of any meaningful judicial standard of review." *Webster v. Doe*, 486 U.S. 592, 600 (1988); 5 U.S.C. § 701(a)(1); *see also* Doc. No. 114 at 15. This forecloses, at minimum, any substantive review of the rationales for the Secretary's substantive opinion that the purposes of parole have been served.

## II.    The Termination of Parole Was Not Arbitrary and Capricious.

The termination of parole is committed to the Secretary's "opinion," and the APA's requirements do not compel the Secretary to painstakingly justify that opinion. But the Secretary nonetheless did lay out the reasons for her decision in detail, addressing the stated goals of the CHNV parole programs and why the purposes of parole had been served. *Doe*, 152 F.4th at 289 (the Secretary presented "a reasoned explanation for terminating grants of parole under the CHNV programs"). She also acknowledged the change from the prior policy and discussed reliance interests. *Id*. at 290 ("the Secretary [] considered the impact of the premature termination on the reliance interests of the parolees and their supporters in the United States."). Plaintiffs try to escape the First Circuit's conclusions by arguing those conclusions were "made without the benefit of the administrative record." Doc. No. 198 at 1, 6-9. But Plaintiffs point to nothing in the applicable administrative record that changes the picture, nor does the record otherwise show that these rationales are unsupported. To the extent Plaintiffs argue that the Secretary's decision was not deliberative, *id*. at 8, the First Circuit already approved of the Secretary's *stated* rationales—the grounds the agency invoked at the time of the decision—which is the focal point of the decision. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *SEC v. Chenery Corp.*, 332 U.S. 194 (1947). Courts do not require agencies to include in

6

the administrative record internal documents verifying deliberation. *Morgan v. United States*, 304 U.S. 1, 18 (1938) (noting it is "not the function of the court to probe the mental processes of the Secretary in reaching his conclusions"); *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (deliberative documents are generally not part of an administrative record); *Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992) (same).

The parole termination decision clearly withstands the APA's deferential standards of review—particularly given the discretion Congress has afforded her. *See State Farm*, 463 U.S. at 43 (an agency need only "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"). Plaintiffs may disagree with the Secretary's discretionary decision, but the Court cannot substitute its judgment for that of the agency. *Id.*; *Doe*, 152 F.4th at 290.

### (i)     The Secretary Considered the Humanitarian Reasons for Parole.

Plaintiffs argue the Secretary failed to consider the humanitarian concerns in the four subject countries as described in the notices announcing the programs. Doc. No. 198 at 6-8. But the Secretary did consider the "previous arguments [and] determinations that these programs were consistent with the requirement of 'urgent humanitarian reasons' for granting parole." 90 Fed. Reg. at 13612. She concluded that "consideration of any urgent humanitarian reasons for granting parole is best addressed on a case-by-case basis consistent with the statute, and taking into consideration each alien's specific circumstances." *Id.*

Plaintiffs also argue that the Secretary's reasoning is insufficient because DHS is changing its policy. Doc. No. 198 at 6. But "[a]gencies are free to change their existing policies." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). The agency need only "display awareness that it is changing position and show that there are good reasons for the new policy." *Id*. Only where there are "serious reliance interests" engendered by "longstanding policies" must an agency

go further to provide "a reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Id.* at 221–22. Here, the reliance interests of CHNV parolees are not the type of "serious reliance interests" engendered by "longstanding policies." *Encino*, 579 U.S. at 222. Unlike in *Encino*, which involved reliance interests generated by a multi-*decade* policy, the CHNV parole programs were in effect for fewer than three years, and beneficiaries were advised both that the processes were discretionary and that their two-year parole periods could be terminated at any time. 90 Fed. Reg. at 13618–19.[3] As such, the Secretary did not need to discuss in detail the humanitarian issues that previously underlaid, in part, the adoption of the CHNV parole programs. Nonetheless, the Secretary's reasoning meets either standard. The FRN addresses in detail each of the stated goals of CHNV parole programs. The Secretary also addressed the country conditions that, according to then-Secretary Mayorkas, warranted the parole for "urgent humanitarian reasons," but defended the policy change by observing that "[t]hese programs do not serve a significant public benefit, are not necessary to reduce levels of illegal immigration, did not sufficiently mitigate the domestic effects of illegal immigration, are not serving their intended purposes, and are inconsistent with the Administration's foreign policy goals." 90 Fed. Reg. at 13612. "[T]hese reasons," coupled with her assessment that "urgent humanitarian reasons for granting parole [are] best addressed on a case-by-case basis," "independently and cumulatively," sufficiently supported her decision to terminate the CHNV parole programs. The Court of Appeals agreed. *Doe*, 152 F.4th at 189-90.

---

[3] Plaintiffs argue, based on *DHS v. Regents of the Univ. of Calif.*, 591 U.S. 1, 30-33 (2020), that a policy need not be "longstanding" to create "serious" reliance interests because in *Regents* the challenged policy was not decades old as in *Encino*. *See* Doc. No. 198 at 10. This Court need not determine how longstanding a policy must be to create "serious" reliance interests. Here, unlike the Deferred Action for Childhood Arrivals in *Regents*, which was adopted eight years before the Court's decision, the CHNV programs were temporary, involved time-limited grants of parole terminable at any time, and were in place fewer than three years when they were terminated.

Plaintiffs argue that the Secretary cannot credibly claim to have considered the humanitarian conditions in Cuba, Haiti, Nicaragua, or Venezuela because the administrative record does not contain any documents evaluating whether the humanitarian crises in those countries persist. Doc. No. 198 at 7-8. But the Secretary did not need to—nor did she—base her decision on a determination that the humanitarian crises in the four countries subsided. Rather, her decision was based on her assessment that *notwithstanding* "previous . . . determinations that these programs were consistent with the requirement of 'urgent humanitarian reasons' for granting parole," 90 Fed. Reg. at 13612, "consideration of any urgent humanitarian reasons for granting parole is best addressed on a case-by-case basis consistent with the statute, and taking into consideration each alien's specific circumstances." *Id.* Plaintiffs do not explain what evidence is needed to support a finding that humanitarian reasons are best addressed on a case-by-case basis.

### (ii)    The Secretary considered alternatives.

Plaintiffs next argue that the Secretary failed to consider alternatives like preserving parole for those aliens who have pending applications for other immigration benefits, providing transition periods, or conducting a case-by-case review for those with compelling circumstances. Doc. No. 198 at 11-12. Leaving aside that there is no constraint on the Secretary's discretion to terminate parole, the Secretary extensively considered alternatives to terminating parole and the impact on those who already had parole. *See* 90 Fed. Reg. 13618-20. She considered both allowing parole to expire under existing time limits or providing a greater than 30-day termination period. But she rejected these options because they were ultimately inconsistent with the goal of "enforc[ing] the law promptly against parolees lacking a lawful basis to remain in the United States" and requiring those individuals to "depart the United States." 90 Fed. Reg. at 13618, 13620. There was also a risk that parolees would not be amenable to expedited removal if parole were not promptly terminated. *Id.*; *see also CHIR v. Noem*, No. 25-cv-872, 2025 WL 2192986, at *2 (D.D.C. Aug. 1,

2025), stay denied, No. 25-5289, 2025 WL 2649100 (D.C. Cir. Sept. 12, 2025) (enjoining the government from placing paroled arriving aliens into expedited removal). As for conducting a case-by-case review for those with compelling circumstances, the FRN specifically states that the Secretary will consider parolee requests on a case-by-case basis, upon filing of a new request for parole. 90 Fed. Reg. at 13612. Plaintiffs complain that this places the onus upon parolees, Doc. No. 198 at 11, n.11, but Plaintiffs do not explain why that is problematic. Indeed, no one would know better than a parolee himself whether he has "compelling circumstances" to present.

### (iii)    The Secretary considered reliance interests.

Plaintiffs claim that the Secretary failed to consider or inadequately considered reliance interests. Doc. 198 at 1, 8-10. But this is the same claim that the Court of Appeals squarely rejected. *Doe*, 152 F.4th at 291. Plaintiffs now argue that the Secretary's consideration of reliance interests was inadequate because she did not expressly account for the fact that "allowing parolees to seek humanitarian relief or other immigration benefits was an explicit purpose of the processes," Doc. No. 198 at 9, and that the termination decision prevents parolees from seeing such applications through to final adjudication. *Id*. At the outset, the stated purpose of the CHNV parole programs was to "enhance the security of our Southwest Border (SWB) by reducing the number of encounters of [CHNV] nationals crossing the border without authorization." Doc. No. 204 at ¶ 9; AR at 00232-291. While the CHNV parole programs "enable[d]" parolees to seek humanitarian relief or other benefits for which they may be eligible, this was not its stated purpose. Doc. No. 204 at ¶ 9.

Moreover, the fact that aliens paroled under the CHNV parole programs could apply for certain immigration benefits or protections does not mean they were eligible for them or could lawfully remain in the country long enough for their adjudication to be completed. Many applications for immigration status or benefits—in particular, asylum applications—were always

10

likely to remain undecided when parole ended. *See, e.g.*, *Celebi v. Mayorkas*, 744 F. Supp. 3d 100, 104 (D. Mass. 2024) (3.5-year wait for adjudication of asylum application). Even without the termination, CHNV beneficiaries were still required to leave the country when their parole expired if they had not obtained a lawful status or were not otherwise in a period of stay authorized by the Secretary. Plaintiffs begrudgingly acknowledge this, but they argue beneficiaries reasonably relied upon being able to stay for at least two years in a period of parole because "in the seven decades of similar parole processes, none had ever ended with an *en masse* early revocation of all existing grants." Doc. No. 198 at 10. Putting aside whether this is factually accurate, Doc. No. 204 at ¶ 2, the Secretary *did* consider parolees' reliance interests; Plaintiffs simply disagree with the weight she placed on those interests. *See Doe*, 152 F.4th at 290.

The Secretary also acknowledged the termination would affect third parties, such as supporters, employers and landlords, but she explained that this effect would have occurred regardless of whether the parole terms were allowed to expire or were terminated. 90 Fed. Reg. at 13620. Plaintiffs argue that the administrative record contains no data about how many parolees had children in school, entered employment contracts, signed leases, were having medical treatment, or made other decisions based on the two-year parole period. Doc. No. 198 at 9. This argument is not persuasive. The administrative record does not need to contain this data (which DHS does not have access to) to demonstrate that the Secretary considered beneficiary and third-party reliance interests. The FRN makes that clear. In fact, it was clear from the outset—indeed, from the statute itself—that the Secretary has discretion to terminate any person's parole at any time. If third parties entered two-year contracts with such aliens, they did so at their own risk.[4] But

---

[4] Plaintiffs raise a concern that third parties' reliance interests cannot be dismissed so easily because "discrimination (in hiring, housing, contracting, etc.) is generally unlawful under federal law." Doc. No. 198, n.9. This argument is a red herring. While the government cannot address in

again, the Secretary's discussion addressed this interest and determined that it did not override the government's interest in terminating parole.

<strong>(iv)    The Secretary did not rely upon impermissible factors.</strong>

Plaintiffs argue that the Secretary "affirmatively relied on impermissible considerations," claiming that "Secretary Noem's decision was explicitly intended to prevent CHNV parolees from pursuing meritorious immigration benefits." Doc. No. 198 at 12. In support, they refer to paragraph 33 of their 56.1 Statement. *Id*. That paragraph does not say that, though, and the evidence they cite also does not stand for that proposition. *See* Doc. No. 204 at ¶ 33. The stated purpose of the termination decision was to prevent additional nationals from the Cuba, Haiti, Nicaragua, and Venezuela from coming to the United States via those programs and for current parolees to depart the United States unless they had a lawful basis to remain. 90 Fed. Reg. at 13618-19. And while one of the consequences of leaving may be the abandonment of an immigration benefit application, nothing in the FRN suggests that such abandonment was its intended purpose. On the contrary, the FRN states that those with pending applications or petitions for immigration benefits will not be prioritized for removal. 90 Fed. Reg. at 13619.

Plaintiffs claim that the Secretary "complained about the 'significant downstream consequences' of parolees applying for benefits, including the 'strain' on USCIS and immigration courts." Doc. No. 198 at 12, quoting 90 Fed. Reg. at 13616-17. But these purported quotations do not appear in the FRN. *See generally* 90 Fed. Reg. at 13611-13622. What the FRN does say is that the affirmative asylum applications already filed by parolees exacerbated backlogs at USCIS. 90 Fed. Reg. at 13615. The FRN also states that if parolees who lack another lawful basis to remain

---

a footnote the breadth and complexity of discrimination law as it applies to hiring, housing and contracting, "nothing in [Title VII] makes it illegal to discriminate on the basis of citizenship or alienage." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973).

in the United States do not depart the United States at the conclusion of their term of parole, such parolees will need to be placed into removal proceedings, which would exacerbate backlogs at the Executive Office for Immigration Review. 90 Fed. Reg. at 13615. These backlogs were discussed among the negative "domestic impact of the CHNV parole program," *Id*. at 13614, and are legitimate factors the Secretary considered in making her decision. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950) (decision to admit or exclude an alien is an Executive function).

Not so, say Plaintiffs. They claim that because Congress created "avenues of immigration and other relief" to aliens "including parolees," Doc. No. 198 at 13, the Secretary's decision was arbitrary and capricious because it divests these parolees of those avenues. *Id*. This argument is fundamentally misguided. Taken to its logical conclusion, it would mean DHS could never terminate parole. Congress's decision to make parolees *eligible* for "avenues of immigration and other relief"—such as asylum, adjustment of status, or TPS—does not strip the Secretary of her explicit authority under § 1182(d)(5) to terminate parole programs when, in her judgment, they no longer serve a public benefit. Potential eligibility for a benefit is not an entitlement to the conditions that facilitate applying for that benefit. To the contrary, the parole statute expressly provides that parole is temporary, revocable, and never an admission. 8 U.S.C. § 1182(d)(5); *see also* 8 U.S.C. § 1101(a)(13)(B). That Congress has elsewhere created a statutory framework for other "avenues of immigration" does not transform parole into a protected status the Secretary must perpetuate to accommodate those collateral applications. The Secretary was well within her authority to take account of the backlogs caused by the CHNV parole programs, and Plaintiffs' suggestion that considering such effects contravenes congressional design is unfounded. In any event, parolees remain eligible for many of these benefits after their parole is terminated.

Plaintiffs' reliance on *Grace v. Barr*, 965 F.3d 883, 902 (D.C. Cir. 2020) and *Judulang v. Holder*, 565 U.S. 42, 55 (2011), Doc. No. 198 at 13, does not alter the analysis. *Grace* concerned

13

the expedited removal statute, and *Judulang* involved the BIA's adoption of a policy untethered to any statutory factor at all. Those cases have no application here. The parole statute provides no statutory constraints of the kind relied on in *Grace* or *Judulang*. To the contrary, § 1182(d)(5) gives the Secretary broad discretion to grant or terminate parole and expressly makes parole temporary and revocable. Nothing in *Grace* or *Judulang* supports limiting the Secretary's ability to consider administrative strain or other operational impacts when determining whether a parole program continues to provide a public benefit.

### III.    The Rationale Regarding Expedited Removal was Not Pretextual or Legal Error.

Plaintiffs claim that the Secretary's "sole" reason for terminating beneficiaries' parole was to allow DHS to place CHNV parolees in expedited removal proceedings—and that this reason was both legally erroneous and pretextual. Importantly, this is not a claim that the termination was contrary to law. Instead, it is a claim that the Secretary's decision was arbitrary and capricious for relying on an allegedly faulty rationale. And Plaintiffs are wrong. First, the Secretary did not rely *solely* on the expedited removal rational for terminating parole. Plaintiffs made the same argument to the First Circuit—that the Secretary's various rationales for terminating the CHNV programs should not be read to also support her decision to terminate existing grants of parole—and the Court held that the government would likely prevail on the argument. *Doe*, 152 F.4th at 290 ("[W]e agree with the Government that reviewing all of the reasons stated in the Termination Notice in conjunction better accords with our deferential standard of review.").

Second, Plaintiffs are wrong on the law. The context and text of § 1225(b)(1)(A)(iii)(II) indicates that DHS may subject to expedited removal aliens who were paroled in the past but who no longer have parole, so long as they have not been in the country for more than two years. *See* Doc. No. 89 at 12-13; Doc. No. 114 at 19-20. Indeed, the Court of Appeals concluded that the government's statutory interpretation—that "has been paroled" can "denote an event that continues

14

to be true into the present"—is sufficiently persuasive such that it could not conclude that the Secretary "made a clear legal error" rendering the termination arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Doe*, 152 F.4th at 289. Plaintiffs argue that the First Circuit's determination has "been overtaken by overwhelming judicial consensus," and then cites a string of district court cases declining to find that expedited removal applies to individuals who have previously been paroled. Doc. No. 198 at 14. But out-of-circuit, district court cases, cannot "overtake" a determination by the First Circuit on this specific issue. Plaintiffs also point to a D.C. Circuit decision declining to issue a stay pending appeal of a district court order staying (under 5 U.S.C. § 705) several agency policies to the extent they subjected CHNV parolees to expedited removal. Doc. No. 198 at 14 (citing *CHIR*, 2025 WL 2649100). But that preliminary decision was based on the court's finding that the government failed to show irreparable harm (rather than on the merits)—which was the product of Article III redressability defects in the section 705 stay itself. *CHIR*, 2025 WL 2649100, at *1 (concurrence, Walker, J.). More importantly, the statutory question played a fundamentally different role in that case. There, the district court confronted a direct challenge to DHS's authority to place parolees into expedited removal, where the court will ultimately be required to opine on the *correct* interpretation of the statute as part of the merits of the case. Here, by contrast, the statutory question arises only *indirectly*, as one of several policy considerations the Secretary cited in explaining the decision to terminate CHNV parole. The issue here is not what the best interpretation of the expedited removal statute is, but whether the Secretary acted arbitrarily or capriciously or committed a clear error of law, invoking a *plausible* understanding of that statute as one consideration when formulating policy.

Plaintiffs' reliance on the immigration rule of lenity, Doc. No. 198 at 15, n.13, is misplaced for the same reason. That canon is triggered only when a court must directly construe the scope of

a removal statute and, after employing the traditional tools of statutory construction, finds the removal statute truly ambiguous and must choose between competing interpretations. *See, e.g., Fong Haw Tan v. Phelan,* 333 U.S. 6, 10 (1948). This case presents a different posture. Plaintiffs do not challenge the expedited removal statute itself, but instead challenge under the APA a policy decision—termination of CHNV parole—that arises under a different statutory authority. In that context, the question is only whether it was arbitrarily or capricious to consider the risk that allowing parole terms to expire would preclude expedited removal. Under that deferential standard, agency action must be upheld so long as the agency's reading of the statute is at least reasonable. The First Circuit has already concluded that the government's reading of the expedited removal provision as potentially applicable to parolees is "plausible." *Doe*, 152 F.4th at 289. That is enough to foreclose Plaintiffs' argument: a reading that is at least plausible cannot constitute the kind of "clear legal error" required to invalidate agency action as arbitrary or capricious.

Plaintiffs' new argument that the Secretary's expedited removal rationale is pretextual likewise fails. *See* Doc. No. 198 at 15-16. Pretext arises when an agency offers a justification it did not actually rely upon or when the record reveals an entirely different motive than the one asserted. *Dep't of Commerce v. New York*, 588 U.S. 752, 785–86 (2019). Here, by contrast, the Secretary candidly cited DHS's desire to use expedited removal and reasonably sought to preserve the authority under § 1225(b)(1)(A)(iii)(II). Although the Secretary believes parolees are subject to expedited removal as "arriving aliens" even if they have been in the country more than two years, the Secretary recognized that others might disagree and challenge her actions, such that time limits might be imposed on her authority to use expedited removal. There is nothing inconsistent or pretextual about the Secretary's invocation of § 1225(b)(1)(A)(iii)(II) in this context or her acknowledgment of litigation risks. Indeed, Plaintiffs themselves disagree that § 1225(b)(1)(A)(i) applies to aliens paroled at a port of entry, and others have sued over that precise issue. *see CHIR*

16

*v. Noem*, 2025 WL 2192986 at *27-30 (Aug. 1, 2025). Although Plaintiffs are incorrect, this disagreement about the applicability of § 1225(b)(1)(A)(i) only serves to underscore the reasonableness of the Secretary's rationale. By safeguarding the ability to rely on § 1225(b)(1)(A)(iii)(II) as an authority for invoking expedited removal against parolees, the Secretary "preserve[s] the ability to initiate expedited removal proceedings to the maximum extent possible," 90 Fed. Reg. at 13620, even if § 1225(b)(1)(A)(i) presents an alternative authority.

## IV.    The Secretary Did Not Exceed Her Authority.

Plaintiffs argue that the Secretary exceeded her authority because, to terminate parole, she had to determine that "the purposes of such parole shall. . . have been served," and according to Plaintiffs, the Secretary never reached that conclusion nor had the means to reach it. Doc. No. 198 at 16-17. Plaintiffs are wrong. The Secretary concluded that "the purposes of parole under the CHNV programs have been served because, *inter alia*, the CHNV parole programs are unnecessary to achieve border security goals; the domestic impact of the CHNV parole programs was too great; and the programs are inconsistent with this Administration's foreign policy goals." 90 Fed. Reg. at 13619. These same factors supported the decision to terminate parole, as "one aspect" of the termination of the parole program. 90 Fed. Reg. at 13618, 13619 n.70. The Secretary's decision was based on a "complicated balancing of a number of factors which are peculiarly within [agency] expertise," including the Executive Branch's comprehensive efforts to manage foreign affairs and border security, 90 Fed. Reg. at 13616.

Plaintiffs contend that while this rationale may be sufficient to support the termination of the parole programs themselves, it is insufficient to support a determination as to "whether the purposes of individual grants thereunder 'have been served.'" Doc. No. 198 at 17. But this just repackages their argument to the First Circuit that the Secretary must make parole termination decisions on a case-by-case basis, which the First Circuit soundly rejected. *Doe*, 152 F.4th at 286

("Once the executive branch determines [] that achieving the policy aim is no longer possible or desired, then it takes no individualized determination in any way to ascertain those persons for whom it can no longer be said that parole furthers the country's interest.").

Plaintiffs also argue that regardless of whether the inquiry into whether the purposes of parole have been served is made at the individual level, the country-specific level, or more broadly—a question the Court of Appeals already answered—the Administrative Record doesn't contain support for the Secretary's conclusion that the purpose of parole "has been served." Doc. No. 198 at 18. Plaintiffs base this argument solely on the fact that the Administrative Record does not overlap with the administrative records supporting the creation of the four CHNV processes. *Id*. But the Record contains ample support for the Secretary's conclusion. *See, e.g.*, AR at 00207-213, 00227-231, 00306-323, 00331-335, 00342-349 (noting crowding, backlogs, and downstream costs from increased numbers of parolees). Moreover, this recycles Plaintiffs' misplaced argument that Secretary had to, and did not, consider the conditions in the four CHNV countries. The Secretary was under no obligation to consider the specific humanitarian concerns of each parolee, or the conditions in each of the CHNV countries, to determine, *in her opinion*, that the purposes of CHNV parole had been served, and thus to terminate CHNV paroles. Indeed, that § 1182(d)(5)(A) permits the Secretary to terminate parole based on *her opinion* that the purpose of parole has been served, demonstrates why her decision is not reviewable under the APA in the first place. *See* Doc. No. 114 at 15.

## V.    The Notice Was Sufficient and Complied with the Law.

The Secretary's method of notifying parolees of their parole termination through both the Federal Register and individualized notice through their USCIS online account followed agency regulations requiring "written notice" and in no way contravenes due process. *See* Doc. No. 114 at 22-23. First, Plaintiffs did not assert in their Amended Complaint a due process violation based on

insufficient notice. They alleged a due process claim only in connection with their assertion that beneficiaries have a protected interest in applying for parole, re-parole, and other immigration benefits. *See* Doc. No. 22 at ¶¶ 313-16. Because Plaintiffs did not allege a procedural due process claim based on insufficient notice, they cannot assert that claim now. *Cortés-Rivera v. Department of Corrections & Rehabilitation*, 626 F.3d 21, 28-29 (1st Cir. 2010) (plaintiff cannot assert new claims or re-characterize claims at summary judgment that are not asserted as such in the complaint). And, in any event, because Plaintiffs have no protected interest in discretionary parole, there can be no procedural due process claim. *See* Doc. No. 114 at 24-26; *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 463 (1981).

Plaintiffs' claim that DHS's notice violated regulatory requirements is wrong. Regulations addressing the mechanics of terminating parole before its expiration date provide that "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [the Secretary or her designees], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien[.]" 8 C.F.R. § 212.5(e)(2)(i). Neither the statute nor regulations define or limit "written notice" of termination. *See id.* The regulation does not specify a particular means of written notice or require DHS to "furnish individual notice." *See Bank of Commerce v. Bd. of Governors of Fed. Res. Sys.*, 513 F.2d 164, 167 (10th Cir. 1975). Even if it did, every CHNV parolee and their supporter received individualized notice via their USCIS online account. 90 Fed. Reg. at 13620. This notice complies with the provision for electronic notice where, as here, the benefit request was filed electronically, 8 C.F.R. § 103.2(b)(19)(ii)(B), and independently satisfies the regulatory notice requirement at 8 C.F.R. § 212.5(e)(2)(i). *Cf. Aldea-Tirado v. PricewaterhouseCoopers, LLP*, 101 F.4th 99, 103-06 (1st Cir. 2024) (finding email notice sufficient).

Plaintiffs argue that DHS should have mailed notices. But the Secretary explained that she

19

found publication more practicable in light of the size of the affected population and potential for noncompliance with change-of-address reporting requirements. 90 Fed. Reg. at 13620. That was proper as agencies can "rely on common sense and predictive judgments within its expertise even if not explicitly backed by information in the record." *Great Lakes Commc'n Corp. v. Fed. Commc'ns Comm'n*, 3 F.4th 470, 476 (D.C. Cir. 2021); *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 521 (2009) ("[E]ven in the absence of evidence, the agency's predictive judgment (which merits deference) makes entire sense."). Here, the Secretary's observation that some aliens may not comply with change-of-address requirements is an "exercise in logic rather than clairvoyance," *id.*, which is permissible without citation to supporting data. *Id.*

## VI.    The Court Should Stay or Limit Any Remedy.

In all events, the Court should decline to grant the requested relief of universal vacatur—especially as the Supreme Court has already stayed nearly identical relief pending appeal. Class-wide vacatur would be improper based on the Court's limited prior analysis of commonality and typicality, which did not address the particular merits theories asserted here. *See Trump v. Casa, Inc.*, No. 24A884, 2025 WL 1773631, at *18 (U.S. June 27, 2025) (Alito, J., concurring) (cautioning against certification without "scrupulous adherence to the rigors of Rule 23"). If the Court does grant relief, the government requests that the Court either grant a full stay pending appeal or, at a minimum, stay its ruling for at least 14 days to permit the government to seek a stay pending appeal in an orderly manner.

<u>**CONCLUSION**</u>

The Court should deny summary judgment to Plaintiffs. If the Court does not grant Defendants' motion to dismiss in its entirety or with respect to the claims at issue here, it should grant summary judgment to Defendants.

DATED: November 25, 2025                    Respectfully submitted

                                            By: /s/ Elissa Fudim
                                            ELISSA FUDIM
                                            Trial Attorney
                                            U.S. Department of Justice, Civil Division
                                            Office of Immigration Litigation
                                            (202) 598-6073
                                            Elissa.p.fudim@usdoj.gov
                                            *Counsel for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on November 25, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which provided an electronic notice and electronic link of the same to all attorneys of record.

*/s/ Elissa P. Fudim*
Elissa P. Fudim
Trial Attorney
United States Department of Justice
Civil Division
