**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SVITLANA DOE, et al., | |
| Plaintiffs, | |
| *v.* | Civil Action No.: 1:25-cv-10495-IT |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security, et al., | |
| Defendants. | |

**PLAINTIFFS' REPLY WITH DEFENDANTS' RESPONSE TO PLAINTIFFS'
STATEMENT OF UNDISPUTED FACTS IN SUPPORT
OF THEIR RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING THE MASS TRUNCATION OF CHNV PAROLE (Doc. No. 196)**

Plaintiffs submit this Reply to Defendants' Response (Doc. No. 204) to Plaintiffs' Statement of Uncontested Facts (Doc. No. 197).

**The CHNV Plaintiffs & Class Members**

1.      **Secretary Noem's mass truncation of parole cut short the parole of eight individual Plaintiffs.** Alejandro Doe Decl., Doc. No. 24-1; Carlos Doe Decl., Doc. No. 24-4; Miguel Doe Decl., Doc. No. 64-4; Lucia Doe Decl., Doc. No. 64-3; Ana Doe Decl., Doc. No. 24-2; Armando Doe Decl., Doc. No. 24-3; Daniel Doe Decl., Doc. No. 64-5; Andrea Doe Decl., Doc. No. 27-1.

Defendants' Response: Admit except note that the Secretary "terminated" parole; she did not "truncate" it. 90 Fed. Reg. at 13611.

Plaintiffs' Reply: Defendants' semantic quibble is meritless and does not even contradict Plaintiffs' description. The parole of each individual Plaintiff was authorized for approximately two years. The Secretary's action ended those parole periods early. That is truncation, even though

it may also be accurate to say that the Secretary terminated parole *en masse*; both can be true.

Defendants' insistence on the word 'terminated' is a transparent attempt to evade Plaintiffs' argument that the Secretary unlawfully changed the conditions of parole within the meaning of 8 U.S.C. § 1182(d)(5)(A) ("The Secretary of Homeland Security may . . . in h[er] discretion parole into the United States temporarily under such conditions as [s]he may prescribe only on a case-by-case basis . . . ."), thereby triggering its case-by-case requirement. But relabeling the action does not change its nature.

**2.    Secretary Noem's mass truncation of parole cut short the parole of individuals sponsored by five of the individual sponsors.** Gabriela Doe Decl., Doc. No. 64-6; Norma Lorena Dus Decl., Doc. No. 71-2; Sandra McAnany Decl., Doc. No. 24-9; Kyle Varner Decl., Doc. No. 24-10; Wilhen Pierre Victor Decl., Doc. No. 24-11.

Defendants' Response: Admit except note that the Secretary "terminated" parole; she did not "truncate" it. 90 Fed. Reg. at 13611.

Plaintiffs' Reply: See reply to No. 1.

**3.    Plaintiff Haitian Bridge Alliance is a non-profit organization dedicated to serving the needs of Haitian migrants in the United States, including parolees**. Decl. of Guerline Jozef on behalf of Plaintiff Haitian Bridge Alliance, Doc. No. 71-3.

Defendants' Response: Defendants have no basis to dispute.

**4.    Through the Federal Register notice published on March 25, 2025, Doc. No. 71-1, Secretary Noem cut short the parole of at least 426,151 individuals, which is the number of people whose parole would have expired on or after May 1, 2025.** *See* Doc. No. 128-4.

Defendants' Response: Defendants admit that there were about 426,151 aliens whose parole under the CHNV parole programs was initially scheduled to expire on or after May 1, 2025, *see* Doc.

No. 128-4, but otherwise dispute this statement, *see* Doc. No. 97 (temporarily staying the effective date of the termination); *Noem v. Doe*, 145 S.Ct. 1524 (U.S. May 30, 2025) (staying the district court's order); *infra* ¶ 7 (acknowledging that some of these aliens had departed the United States, which automatically terminates parole under 8 C.F.R. § 212.5(e)(1)(i)).

5.    **Of those 426,151 individuals, 4,390 had acquired some form of permanent immigration status as of February 25, 2025**. Doc. No. 128-4.

Defendants' Response: Admit.

6.    **Of those 426,151 individuals, 51,828 had Temporary Protected Status as of February 25, 2025.** Doc. No. 128-4.

Defendants' Response: Admit.

7.    **Of those 426,151 individuals, 4,628 had departed the United States as of February 25, 2025.** Doc. No. 128-4.

Defendants' Response: Admit.

8.    **Of those 426,151 individuals, 212,542 had an application pending for either adjustment of status (I-485), asylum (I-589), or Temporary Protected Status (I-821), as of February 25, 2025.** Doc. No. 128-4.

Defendants' Response: Admit.

9.    **A stated purpose of each of the CHNV parole processes was that, once here, parolees could apply for other forms of relief for which Congress has made them eligible.** Doc. No. 24-21 at 3 ("The two-year period will also enable individuals to seek humanitarian relief or other immigration benefits for which they may be eligible"); Doc. No. 24-24 at 3 (same); Doc. No. 24-25 at 3 (same); Doc. No. 24-23 at 4 (same, plus specifically mentioning the Cuban Adjustment Act, which permits paroled Cubans to adjust to lawful permanent residence after one

year); *see also* Doc. Nos. 128-2 & 128-3 ("Ukraine & CHNV Parolee Immigrant Benefit Tracking").

Defendants' Response: Defendants state that the cited Federal Register Notices speak for themselves. To the extent a further response is required, Defendants deny that a "stated purpose" of the CHNV parole programs was that, once here, parolees could apply for other forms of relief for which Congress has made them eligible, but admit that the Federal Register Notices pertaining to the CHNV parole programs state that the two-year parole period will enable parolees to seek humanitarian relief or other benefits for which they may be eligible. *See e.g.* 24-21 at pg. 3, 24-24 at pg. 3. Defendants refer the Court to the four Federal Register notices for a full and accurate recitation of their contents.

Plaintiffs' Reply: Defendants' response is self-contradictory. Defendants deny that a "stated purpose" of the CHNV programs was to enable parolees to apply for other relief, then admit in the same sentence that the Federal Register Notices "state that the two-year parole period will enable parolees to seek humanitarian relief or other benefits for which they may be eligible." That is a stated purpose. Defendants cannot simultaneously deny a fact and admit it. *See also* Defs.' Opp'n (Doc. No. 205) at 1 ("Parolees . . . were encouraged to file for asylum or other status where applicable"); *id.* at 3 ("Once paroled into the country, these aliens 'could seek humanitarian relief or other [immigration] benefits and receive work authorization' during the two-year parole period") (citation omitted, alteration in original).

Defendants' attempt to distinguish between what the notices "state" and what constitutes a "stated purpose" is wordplay. When an agency announces that a program "will enable" beneficiaries to do something, that is a statement of purpose. The notices do not describe this as an incidental byproduct or unintended consequence—they present it as an affirmative reason for

the two-year parole period and, moreover, *the* central mechanism by which DHS incentivized lawful pathways over irregular migration. *See* Doc. No. 24-21 at 3; Doc. No. 24-23 at 4; Doc. No. 24-24 at 3; Doc. No. 24-25 at 3. Defendants' invitation to review "the four Federal Register notices for a full and accurate recitation of their contents" only confirms Plaintiffs' point: the notices say exactly what Plaintiffs describe.

### The Administrative Record

**10.    The Administrative Record ("AR") that Defendants produced for the March 25, 2025 Federal Register notice ending the CHNV parole processes has 68 entries consisting of two native format Excel spreadsheets and 66 documents in PDF format totaling 840 pages.** *See* Doc. No. 128-1**.**

Defendants' Response: Admit.

**11.    Of the 66 PDF documents in the AR, 58 were already publicly available either because they were filed on the docket in this case, printed in the Federal Register, or otherwise made publicly available online (on news sites, for example).** Doc. No. 128-1; *compare id. with* Doc. Nos. 24-21, 24-22, 24-23, 24-24, 24-44, 24-45, 41-1, 41-3, and 71-1.

Defendants' Response: Admit.

**12.    Just 8 of the PDF documents in the AR (totaling 162 pages) contain information that was not publicly available when Defendants produced the AR.** Doc. Nos. 128-2, -3, -6, -7, -9, -10, -12, and -13.

Defendants' Response: Admit.

**13.    The AR has no information about country conditions in Cuba.** Doc. No. 128-1.

Defendants' Response: Defendants decline to characterize, summarize, or otherwise describe the

documents in the administrative record, as they speak for themselves, and must be assessed on their face. *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (On a motion for summary judgment governed by the APA, "[t]he court looks directly to the Administrative Record [] rather than the parties' characterizations of the Administrative Record.").

Plaintiffs' Reply: Defendants' response is a non-denial. Local Rule 56.1 provides that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted." L.R. 56.1. Defendants do not controvert—or even contest—Plaintiffs' statement that the administrative record contains no information about country conditions in Cuba. They simply "decline to characterize" the record.

The case Defendants cite undermines their position. *Seafreeze* holds that "[t]he court looks directly to the Administrative Record." 2023 WL 6691015, at *5 n.9. Plaintiffs agree. And when the Court looks directly at the 840-page administrative record for the termination of CHNV parole, it will find what Plaintiffs assert: zero pages addressing country conditions in Cuba. Defendants' refusal to say otherwise speaks volumes.

If Defendants believed the record contained country-conditions information for Cuba, they would cite it. They do not because they cannot.

**14.    The AR has no information about country conditions in Haiti.** Doc. No. 128-1.

Defendants' Response: See response to No. 13.

Plaintiffs' Reply: See reply to No. 13.

**15.    The AR has no information about country conditions in Nicaragua.** Doc. No. 128-1.

Defendants' Response: See response to No. 13.

Plaintiffs' Reply: See reply to No. 13.

**16.    The AR has no information about country conditions in Venezuela.** Doc. No. 128-1.

Defendants' Response: See response to No. 13.

Plaintiffs' Reply: See reply to No. 13.

**17.    The AR has no information about parolees' compliance with statutory and/or regulatory requirements that they keep DHS updated as to any change to their address.** Doc. No. 128-1.

Defendants' Response: Admit.

**18.    The index of the certified administrative record for DHS's Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1,266 (Jan. 9, 2023), has 100 entries**. Doc. No. 128-14.

Defendants' Response: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the extent a response is required, admit.

Plaintiffs' Reply:

Defendants admit this fact, and their objection is meritless. Plaintiffs do not offer the index

to the Cuba parole process's administrative record for the truth of any matter contained in the documents listed in it. They offer it to establish what the Secretary *did not consider* when terminating those processes and truncating existing grants of parole—a proper subject of arbitrary-and-capricious review. An agency acts arbitrarily and capriciously when it "entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), which includes the "facts and circumstances that underlay . . . the prior policy" being changed, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (citation omitted). Evidence showing what the agency failed to consider is a recognized exception to record-rule limitations. *See Dep't of Com. v. New York*, 588 U.S. 752, 781-82 (2019) (affirming consideration of evidence beyond the original administrative record where necessary to evaluate agency's stated rationale); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14-15 (2d Cir. 1997) (court may consider extra-record materials "to determine whether the agency considered" the relevant factors).

The cases Defendants cite do not hold otherwise. *Lovgren* merely recites (as part of the standard of review) the unremarkable proposition that review is "limited to the administrative record," 701 F.3d at 20—it does not address evidence offered to show what the agency failed to consider. And *Seafreeze* declined to consider documents because the party did not move to supplement the record, *see* 2023 WL 6691015, at *5 n.9—a procedural posture inapplicable here, where Plaintiffs are not seeking supplementation but rather demonstrating, by comparison, that the agency's administrative record lacks any of the evidentiary material, facts, or substantive analysis the agency considered when creating the parole process for Cubans that Secretary Noem ended.

**19.    None of the 100 entries in the index of the certified administrative record for DHS's Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1,266 (Jan. 9, 2023), is**

listed in the index of the certified administrative record for the March 25, 2025 Federal Register Notice terminating that parole process. *Compare* Doc. No. 128-1 *with* 128-14.

Defendants' Response: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the extent a response is required, admit.

Plaintiffs' Reply: See reply to No. 18.

20.     The index of the certified administrative record for DHS's Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1,243 (Jan. 9, 2023), has 145 entries. Doc. No. 128-15.

Defendants' Response: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the extent a response is required, admit.

Plaintiffs' Reply: See reply to No. 18.

21.     None of the 145 entries in the index of the certified administrative record for **DHS's Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1,243 (Jan. 9, 2023), is listed in the index of the certified administrative record for the March 25, 2025 Federal Register Notice terminating that parole process.** *Compare* Doc. No. 128-1 *with* 128-15.

Defendants' Response: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the extent a response is required, admit.

Plaintiffs' Reply: See reply to No. 18.

22.     **The index of the certified administrative record for DHS's Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1,255 (Jan. 9, 2023), has 101 entries**. Doc. No. 128-16.

Defendants' Response: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the extent a response is

required, admit.

Plaintiffs' Reply: See reply to No. 18.

**23.    None of the 101 entries in the index of the certified administrative record for DHS's Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1,255 (Jan. 9, 2023), is listed in the index of the certified administrative record for the March 25, 2025 Federal Register Notice terminating that parole process**. *Compare* Doc. No. 128-1 *with* 128-16.

Defendants' Response: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the extent a response is required, admit.

Plaintiffs' Reply: See reply to No. 18.

**24.    The index of the certified administrative record for DHS's Implementation of Changes to the Parole Process for Venezuelans, 88 Fed. Reg. 1,279 (Jan. 9, 2023), has 105 entries**. Doc. No. 128-17.

Defendants' Response: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents

cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the extent a response is required, admit.

Plaintiffs' Reply: See reply to No. 18.

**25.    None of the 105 entries in the index of the certified administrative record for DHS's Implementation of Changes to the Parole Process for Venezuelans, 88 Fed. Reg. 1,279 (Jan. 9, 2023), is listed in the index of the certified administrative record for the March 25, 2025 Federal Register Notice terminating that parole process**. *Compare* Doc. No. 128-1 *with* 128-17.

Defendants' Response: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the extent a response is required, admit.

Plaintiffs' Reply: See reply to No. 18.

### Secretary Noem's Decision to Mass Truncate CHNV Parole

**26.    Since the 1950s, there have been at least 125 parole processes similar to the CHNV parole processes**. *See* Doc. No. 24-38 (listing them).

Defendants' Response: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is

limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the extent a response is required, deny. Plaintiffs' characterization of the CHNV parole programs as "similar to" a list of 125 other programs is vague and ambiguous. Further, Plaintiffs cites a list of the names of 125 programs with no other details of the program to support their conclusion.

Plaintiffs' Reply: Defendants' "extra-record" objection fails. Evidence of the agency's historical practices is properly before the Court as background information necessary to evaluate whether the agency departed from longstanding policy without adequate explanation. *See Dep't of Com. v. New York*, 588 U.S. 752, 781-82 (2019); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (court may consider extra-record materials "to determine whether the agency considered" all the relevant factors). Courts cannot assess whether an agency adequately considered and explained its departure from prior practice without knowing what that prior practice was. That is precisely the background information the Cato Institute's historical review provides.

Defendants' merits denial is equally unavailing. The cited document is a historical catalog of parole processes created by the federal government that was compiled by a nonpartisan policy institute. It lists each program by name, date, and related statutory enactments. It also contains the URL (https://www.cato.org/blog/126-parole-orders-over-7-decades-historical-review-immigration-parole-orders) of the source for the list, which contains even more detail about each

example. Additionally, these parole processes were created by the federal government, and so Defendants have superior access to information about them, yet identify no factual basis for their position, as required by LR 56.1. Defendants do not dispute that these processes existed; they merely complain that Plaintiffs used the word "similar." But the salient point is undeniable: for seven decades, the Executive Branch has used the parole authority to admit populations of foreign nationals on a programmatic basis, and the March 25 FRN represents an unprecedented reversal of this historical practice. Defendants' quibble with the word "similar" does not create a genuine dispute of material fact.

**27.    Although the federal government has ended similar parole processes before, it has never before truncated or cut short existing grants of parole en masse**. Doc. No. 71-1 (March 25 FRN), 90 Fed. Reg. at 13619-20.

Defendants' Response: Deny. Plaintiffs' reference to "similar parole processes" is vague and ambiguous. Further, the document Plaintiffs point to—the Federal Register Notice terminating parole granted under the CHNV parole programs—does not stand for the proposition for which it is cited, and this sentence appears to refer to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.).

Plaintiffs' Reply: Defendants' denial is contradicted by their own Federal Register Notice. The March 25, 2025 FRN expressly acknowledges that when DHS has terminated parole processes in

the past, it has allowed existing grants of parole to expire naturally rather than truncating them:

> DHS has considered the alternative of permitting CHNV participants' parole to remain in effect until the natural expiration of the parole, *as DHS has in the past done with some parole terminations. See, e.g.*, 82 FR 38926, 38927 (Aug. 16, 2017). However, DHS has opted to not pursue this route.

90 Fed. Reg. at 13619–20 (emphasis added). This is precisely the proposition for which Plaintiffs cited the document: the government has ended parole programs before, but it has previously allowed existing grants to run their course rather than cutting them short *en masse*. The FRN's explicit comparison to "past" practice—and its acknowledgment that DHS "opted not to pursue" that established approach here—confirms that the mass truncation of existing parole grants is unprecedented.

Defendants' extra-record objection is meritless. Plaintiffs cite the March 25 FRN not for facts "outside" the record, but for Secretary Noem's own admissions within it.

**28.    DHS employees had authorized each CHNV parolee, on a case-by-case basis, to travel to an airport in the United States to request parole**. Doc. No. 71-1 (March 25 FRN), 90 Fed. Reg. at 13611; Docs. No. 24-21 through 24-25 (Federal Register notice for each parole process); Doc. No. 128-12 (I-134A Reviewer's Guide) at 32; Doc. No. 196-1 (Nuñez-Neto Decl.) ¶¶ 17, 19.

<u>Defendants' Response</u>: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the

extent a response is required, admit.

Plaintiffs' Reply: Defendants admit that DHS employees authorized each CHNV parolee on a case-by-case basis to travel to the United States to request parole at a port of entry. Their evidentiary objection should be disregarded.

Defendants' objection highlights a troubling inconsistency in their litigation positions. In seeking a stay from the Supreme Court, Defendants argued that "Secretary Mayorkas granted CHNV parole categorically. Yet the [district] court faulted only Secretary Noem's decision to *restore* the traditional case-by-case process by undoing the prior categorical grant of CHNV parole." Stay App.[1] at 5; *see also id.* at 19 ("Here, one independently sufficient ground for terminating the CHNV parole programs is that those programs granted parole to hundreds of thousands of aliens without any case-by-case determinations in the first place."). Yet here, Defendants admit that DHS employees authorized each parolee on a case-by-case basis. Defendants cannot defend telling the Supreme Court that the CHNV programs operated categorically (and explicitly were *not* case-by-case) to justify the Secretary's categorical termination while simultaneously admitting in this Court that individual adjudicators made case-by-case determinations. Both cannot be true. The documents cited here that are not in Defendants' administrative record—the Federal Register notices announcing the processes (which are also discussed in Plaintiffs' Reply to No. 18) and a sworn statement that the federal government itself submitted in *Texas v. DHS*, No. 6:23-cv-00007 (S.D. Tex.)—further demonstrate what Defendants have now admitted (that the agency made case-by-case determinations). They also show that Defendants' past and future representations to the contrary are false.

---

[1] *Available at* https://www.supremecourt.gov/docket/docketfiles/html/public/24a1079.html.

Regardless, the remaining citations—the March 25 FRN and the I-134A Reviewer's Guide—are within the administrative record and independently support this fact. The Court may also consider the Federal Register notices announcing the four CHNV parole processes for the reasons discussed in Plaintiffs' reply to No. 18.

29.     **Once each individual flew to an airport in the United States, that individual was inspected by one or more DHS employees who determined, on a case-by-case basis, that that individual warranted a grant of parole**. Doc. No. 71-1 (March 25 FRN), 90 Fed. Reg. at 13617; Docs. No. 24-21 through 24-25 (Federal Register notice for each parole process); Doc. No. 128-6; Doc. No. 128-12 (I-134A Reviewer's Guide) at 32; Doc. No. 153-1 (I-134A for Ana Doe); Doc. No. 196-1 (Nuñez-Neto Decl.) ¶¶ 17, 19; Doc. No. 196-2 (Nuñez-Neto Supp. Decl.) ¶ 3.

Defendants' Response: Defendants object to this paragraph to the extent it relies on materials that are outside the record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). Defendants also object that this paragraph also is a characterization of the law, and is not a statement of fact, and thus is not properly included in a Rule 56.1 Statement. Statements regarding the law or legal argument are also not properly a part of a LR. 56.1 statement of facts. *Latimore v. Trotman*, No. CV 14-13378-MBB, 2021 WL 5763009, at *7 (D. Mass. Dec. 3, 2021).  Admit that this sentence generally describes the process of inspection and a grant of parole, but deny any implication that the cited documents support the assertion that each DHS employee who granted parole engaged in an

individualized assessment of urgent humanitarian reasons or significant public benefit.

Plaintiffs' Reply: Defendants admit that the SUF "generally describes the process of inspection and a grant of parole." That admission establishes the fact as stated. But Defendants attempt to reserve a legal argument by denying "any implication that each DHS employee who granted parole engaged in an individualized assessment of urgent humanitarian reasons or significant public benefit."

Defendants' reservation is unavailing. A grant of parole is a determination that urgent humanitarian reasons or significant public benefit warrant the noncitizen's temporary presence. *See* 8 U.S.C. § 1182(d)(5)(A). The March 25 FRN confirms this: "The ultimate determination whether to parole an alien into the United States upon the alien's arrival at a POE is made by U.S. Customs and Border Protection ('CBP') officers." 90 Fed. Reg. at 13612. When a CBP officer granted parole, that officer necessarily determined that the statutory standard was satisfied for that individual. Defendants cannot now disclaim the legal significance of their own officers' actions.

Defendants' objection that this statement constitutes "a characterization of the law" is baseless. This statement describes what happened—DHS employees inspected each individual and granted parole (or not) on a case-by-case basis. That is a historical fact, not a legal conclusion.

Defendants' evidentiary objection should also be disregarded. First, it applies only to the Nuñez-Neto Declarations (Doc. Nos. 196-1 and 196-2) and Ana Doe's Form I-134A (Doc. No. 153-1), and the other citations fully establish this statement. Second, as discussed more in Plaintiffs' reply to No. 28, Defendants' have made conflicting factual representations regarding the degree to which the CHNV parole processes operated in a case-by-case basis, and the cited paragraphs of the Nuñez-Neto Declarations (sworn statements that the federal government submitted in *Texas v. DHS*, No. 6:23-cv-00007 (S.D. Tex.)) and Ana Doe's Form I-134A

demonstrate further that the processes were indisputably case-by-case as a factual matter.

**30.    DHS employees denied a significant number of parole requests of CHNV nationals who had been granted authorization to fly to a port of entry to request it.** Doc. No. 128-6.

Defendants' Response: Deny. The document cited by Plaintiffs does not stand for the proposition cited. Further, the phrase "significant number" is vague and ambiguous.

Plaintiffs' Reply: Defendants' denial is flatly contradicted by the document cited. The cited document—a March 14, 2025 CBP memorandum that references the March 25, 2025 FRN in the past tense—states that CBP "saw a progressive increase in aliens who arrived with approved CHNV ATAs [advance travel authorizations] but were ultimately not granted parole because they did not warrant a discretionary grant of parole." Doc. No. 128-6 at 2. The memo explained that such individuals had to be processed "for an appropriate adverse action under Title 8, including detention, expedited removal, or referral into section 240 removal proceedings, as appropriate." *Id*. The memorandum identifies airports in Miami, Fort Lauderdale, Orlando, Tampa, and Fort Meyers as "impacted" ports of entry.

As for Defendants' objection that "significant number" is too vague, the CBP Memo itself refers to a group of "approximately 1,500," but is written so ambiguously that it is not possible to tell whether that refers to a subset or the whole. Doc. No. 128-6 at 2. By its terms, the CBP Memo relays only what happened within CBP's Miami/Tampa Field Office. *Id.* at 1. And regardless of the precise number, Secretary Noem deemed the resulting adverse impact on CBP at ports of entry sufficiently significant to cite it (twice) as part of her justification for terminating the CHNV processes prospectively. 90 Fed. Reg. at 13615, 13617.

**31.    When deciding to truncate all unexpired grants of CHNV parole, Secretary**

**Noem did not consider the record that was before the agency when agency employees authorized those individuals, on a case-by-case basis, to travel to the United States to request parole at an interior port of entry.** Doc. No. 128-1 (AR index); Doc. No. 128-12 (I-134A Reviewer's Guide) at 32; Doc. No. 153-1 (I-134A for Ana Doe); Doc. No. 140 at 16.

Defendants' Response: Admit. However, Defendants deny any implication that the cited documents support the assertion that DHS employees who authorized individual aliens to travel to the United States engaged in an individualized assessment of urgent humanitarian reasons or significant public benefit before the alien arrived at a port of entry to request parole. The CHNV parole program FRNs also stand on their own for their conclusions, which were addressed in the CHNV termination FRN. Also note that the Secretary "terminated" parole; she did not "truncate" it. 90 Fed. Reg. At 13611.

Plaintiffs' Reply: Defendants admit the fact: Secretary Noem did not consider the record that was before the agency when DHS employees authorized each individual parolee to travel to the United States.

Defendants' attempted reservation fails for the reasons stated in Plaintiffs' reply to SUF ¶ 29. DHS employees did engage in individualized assessments before authorizing travel. The I-134A Reviewer's Guide (Doc. No. 128-12) sets forth the case-by-case review process, and each Form I-134A (including Ana Doe's) reflects an individualized determination. The March 25 FRN itself confirms that "potentially eligible beneficiaries were adjudicated on a case-by-case basis, for advance authorization to travel to a U.S. port of entry." 90 Fed. Reg. at 13611. When DHS "confirmed" a Form I-134A, the agency determined that the supporter was eligible and that the beneficiary warranted authorization to travel to the United States to seek parole. *See id.* at 13617.

The critical point, however, is what Defendants have admitted: Secretary Noem reviewed

none of those individualized determinations. She did not consider the circumstances of any individual parolee. She did not examine what information DHS had gathered about any of them. She made a categorical decision to truncate more than 420,000 existing parole grants without considering (or having any basis to consider) whether the purposes of those grants of parole had been served.

**32.    When deciding to truncate all unexpired grants of CHNV parole, Secretary Noem did not consider the record that was before the agency when agency employees authorized those individuals, on a case-by-case basis, that each of those parolees warranted a discretionary grant of parole.** Doc. No. 128-1 (AR index); Doc. No. 128-12 (I-134A Reviewer's Guide) at 32; Doc. No. 153-1 (I-134A for Ana Doe); Doc. No. 140 at 16.

Defendants' Response: Deny. 90 Fed. Reg. at 13611-19. Defendants also deny any implication that the cited documents support the assertion that each DHS employee who granted parole engaged in an individualized assessment of urgent humanitarian reasons or significant public benefit.

Plaintiffs' Reply: Defendants' denial is unsupported and contradicted by their own admissions. Defendants cite the FRN at 90 Fed. Reg. 13611-19, but nothing in those pages indicates that Secretary Noem reviewed any individual parolee's file before deciding to truncate all existing grants of parole.

Defendants have already admitted SUF ¶ 31 (that Secretary Noem never reviewed any individual parolee's file) and SUF ¶ 29 (that she did not consider the record before the agency when employees authorized individuals to travel to the United States). Having made those admissions, Defendants cannot now deny that she failed to consider the record before the agency when DHS employees granted parole at the port of entry.

Defendants' reservation regarding individualized assessments also fails, and for the same

reasons discussed in Plaintiffs' reply to SUF ¶¶ 29 and 31. When a CBP officer grants parole, that officer necessarily determines that urgent humanitarian reasons or significant public benefit warrant the noncitizen's temporary presence—that is what a grant of parole is under the statute. *See* 8 U.S.C. § 1182(d)(5)(A). The March 25 FRN confirms that "[t]he ultimate determination whether to parole an alien into the United States upon the alien's arrival at a POE is made by U.S. Customs and Border Protection ('CBP') officers." 90 Fed. Reg. at 13612. Secretary Noem considered none of those determinations.

**33.    When deciding to truncate all unexpired grants of CHNV parole, Secretary Noem's intended purpose was that the parolees leave the United States and abandon any pending applications for immigration relief**. Doc. No. 71-1 (March 25 FRN), 90 Fed. Reg. at 13618-19; Doc. No. 140 at 11-12.

Defendants' Response: Admit that a purpose of terminating parole was to encourage parolees to leave the United States. Deny that the intended purpose of parole termination was that parolees abandon any pending applications for immigration benefits. The documents cited by Plaintiffs do not support the statement. Doc. No. 71-1 (March 25 FRN), 90 Fed. Reg. at 13618-19; Doc. No. 140 at 11-12.

Plaintiffs' Reply: Defendants admit the Secretary's purpose was to "encourage" parolees to depart the United States but deny she intended them to abandon their pending applications for immigration benefits. This denial is contradicted by Defendants' own briefing, the March 25 FRN, and the administrative record.

First, Defendants have judicially admitted that coercing parolees to depart the United States is "the intended purpose of the termination." Doc. No. 140 at 12 ("the Secretary did more than consider that other aliens whose parole is terminated may voluntarily leave the United States—

that is the intended purpose of the termination"). Second, the administrative record establishes that Secretary Noem knew 212,542 of the individuals whose parole she was cutting short—approximately half—had pending applications for adjustment of status, asylum, or Temporary Protected Status. Doc. No. 128-4; SUF ¶ 8 (admitted). She also knew that the adjudication of those applications had been indefinitely suspended by the February 14, 2025 Davidson Memorandum. Doc. No. 41-3, CHNV-FRN-00328. Third, voluntary departure from the United States results in abandonment of pending applications for adjustment of status and asylum. *See* 8 C.F.R. § 245.2(a)(4)(ii)(A) (departure "shall be deemed an abandonment of the application constituting grounds for termination of any pending application for adjustment of status" absent advance parole); 8 C.F.R. § 208.8(a) (asylum applicant who departs without advance parole "shall be presumed to have abandoned his or her application"); 8 C.F.R. §§ 244.1, 244.2(b) (requiring continuous physical presence for TPS eligibility, preserved only by brief absences of short duration).[2] Secretary Noem admits she intended parolees to voluntarily depart, knowing that departure would result in the abandonment of over 200,000 pending applications for immigration relief.

Fourth, Secretary Noem said she rejected allowing parole to expire naturally specifically to preserve DHS's ability to use expedited removal before parolees accrued two years of continuous physical presence. 90 Fed. Reg. at 13619-20. Expedited removal forecloses pursuit of pending applications by physically removing applicants from the country and imposing a five-year bar on reentry. *See* 8 U.S.C. § 1182(a)(9)(A)(i).

In sum, parolees who comply with Secretary Noem's directive to "depart the United States

---

[2] *See also* USCIS, Temporary Protected Status, https://www.uscis.gov/humanitarian/temporary-protected-status ("If you have a pending TPS application and leave the United States without first obtaining advance parole, we may deny your application for TPS.")

before their parole termination date," 90 Fed. Reg. at 13618-19, abandon any pending applications as a matter of law. Those who do not comply face expedited removal, which achieves the same practical result and adds a reentry bar. Either way, the applications are foreclosed. The Secretary cannot intend the causes while disclaiming intent as to the known and necessary consequences.

**34.    DHS's position under Secretary Noem is that it has the legal authority to subject CHNV parolees to expedited removal as "arriving aliens," and no matter how long they have been in the United States**. *See, e.g.*, Doc. No. 140 at 13; Doc. No. 89 at 12 n.4.

Defendants' Response: This paragraph alleges a legal position taken in this matter, and is not a statement of fact, and thus is not properly included in a Rule 56.1 Statement. Statements regarding the law or legal argument are also not properly a part of a LR. 56.1 statement of facts. *Latimore v. Trotman*, No. CV 14-13378-MBB, 2021 WL 5763009, at *7 (D. Mass. Dec. 3, 2021). To the extent a response is required, admit.

Plaintiffs' Reply: Defendants admit this fact. Their objection is meritless. The SUF does not ask the Court to accept a legal proposition as undisputed; it identifies the legal position Defendants have taken in this litigation—and in the FRN itself, albeit obliquely. *See* 90 Fed. Reg. at 13612 ("In the absence of any subsequent application conferring an immigration benefit or status, and upon termination of parole, such [paroled] alien will remain an arriving alien.") (citing, *inter alia*, the regulatory definition of "arriving alien" in 8 C.F.R. § 1.2); 8 C.F.R. § 235.3(b)(i) (applying expedited removal to those defined as "arriving aliens" in 8 C.F.R. § 1.2). That Defendants have asserted a particular legal position is a fact, established by their own filings and the administrative record. *See* Doc. No. 140 at 13; Doc. No. 89 at 12 n.4; 90 Fed. Reg. at 13619-20.

This fact is directly relevant to evaluating Secretary Noem's stated justification for truncating parole. The FRN claims the Secretary rejected allowing parole to expire naturally in

order to "preserve the ability to initiate expedited removal proceedings to the maximum extent possible" under 8 U.S.C. § 1225(b)(1)(A)(iii)(II)—which applies to certain noncitizens who cannot demonstrate two years of continuous physical presence. 90 Fed. Reg. at 13619-20. But the Secretary simultaneously maintains that she can subject CHNV parolees to expedited removal as "arriving aliens" under § 1225(b)(1)(A)(i) regardless of how long they have been in the United States. If Secretary Noem believed she could use expedited removal under the "arriving alien" theory no matter how long parolees remained here, then the stated justification for truncating parole—preserving expedited removal authority that would otherwise be lost after two years—was no justification at all. The Secretary cannot rationally claim she needed to act urgently to preserve an authority she believed she already possessed unconditionally.

Further, Defendants have affirmatively *argued* that the Secretary would have done precisely the same thing even if she was completely wrong about the law. *See, e.g.*, Defs.' Emergency Mot. for Stay Pending Appeal at 18, *Doe v. Noem*, No. 25-1384 (1st Cir. Apr. 21, 2025) ("Plus, if the Secretary were incorrect in her premise that expedited removal is available, that would merely have been *more* reason for the Secretary to promptly terminate parole and begin the lengthy *non-expedited* removal process. So even if there were any legal error in the Secretary's reasoning, it would change nothing on the bottom line.") (emphases in original).

35.    **Prior to the current Administration, DHS had not subjected noncitizens who had been paroled into the country to expedited removal under 8 U.S.C. § 1225(b)(1)(A)(iii)(II).** *See* 8 C.F.R. § 235.3(b)(6) (explaining that if subjected to expedited removal, the noncitizen "will be given a reasonable opportunity to establish to the satisfaction of the examining immigration officer that he or she was admitted or paroled into the United States following inspection at a port-of-entry," and that a noncitizen "who cannot satisfy the examining

officer that he or she was lawfully admitted or paroled will be ordered removed pursuant to [expedited removal, 8 U.S.C. § 1225(b)(1)]."

Defendants' Response: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). Defendants also object that this paragraph also is a characterization of the law, and is not a statement of fact, and thus is not properly included in a Rule 56.1 Statement. Statements regarding the law or legal argument are also not properly a part of a LR. 56.1 statement of facts. *Latimore v. Trotman*, No. CV 14-13378-MBB, 2021 WL 5763009, at *7 (D. Mass. Dec. 3, 2021).  To the extent a response is required, Defendants deny.

Plaintiffs' Reply: Defendants' objections fail, and their bare denial is unsupported.

First, the regulation cited—8 C.F.R. § 235.3(b)(6)—is not "extra-record evidence." It is a published federal regulation that has been in effect for years. Courts may take judicial notice of federal regulations. *See* Fed. R. Evid. 201(b).

Second, whether DHS had previously subjected parolees to expedited removal under § 1225(b)(1)(A)(iii)(II) is a question of historical agency practice, not a "characterization of the law." Evidence of prior agency practice is properly considered as background information to assess whether the agency has departed from a prior policy. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016). Courts cannot evaluate whether an agency action represents an

unexplained departure from prior practice without knowing what that practice was.

Third, Defendants' denial is entitled to no weight. Local Rule 56.1 requires that denials be supported by citations to record evidence. L.R. 56.1(b)(1). Defendants cite nothing. If DHS had ever before subjected a parolee to expedited removal under § 1225(b)(1)(A)(iii)(II), Defendants were required to say so. The absence of any contrary evidence makes Plaintiffs' statement undisputed: applying expedited removal to parolees under this provision is a novel policy of this Administration, and one that Secretary Noem sought to maximize by truncating parole before parolees accrued two years of continuous presence.

**36.      As of August 1, 2025, DHS had granted a new period of parole to just two former CHNV parolees**. Defs.' 28(j) Letter, Doe v. Noem, No. 25-1384 (1st Cir. Aug. 1, 2025).

<u>Defendants' Response</u>: Defendants object to this paragraph as citing to facts outside the administrative record. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record." *Lovgren v. Locke*, 701 F.3d 5, 20 (1st Cir. 2012); *Seafreeze Shoreside, Inc. v. United States Dep't of the Interior*, No. 1:22-CV-11091-IT, 2023 WL 6691015, at *5 (D. Mass. Oct. 12, 2023), *aff'd*, 123 F.4th 1 (1st Cir. 2024) (declining to consider documents cited to in a Local Rule 56.1 Statement, where those documents were not part of the Administrative Record and the offering party never moved to supplement the record.). To the extent a response is required, Defendants admit.

<u>Plaintiffs' Reply</u>: Defendants admit this fact. Their extra-record objection borders on frivolous. The 28(j) letter was submitted by Defendants themselves to the First Circuit. Defendants cannot volunteer a fact to one federal court and then object to its consideration by another on the ground that it is "outside the administrative record."

Moreover, the fact is independently admissible. Post-decisional evidence is

properly considered where, as here, it bears on whether the agency's stated rationale was pretextual or its purported process illusory. *See Dep't of Com. v. New York*, 588 U.S. 752, 781-82 (2019). The FRN promised that individual parolees could seek case-by-case reparole based on their specific circumstances. 90 Fed. Reg. at 13612. That Secretary Noem granted reparole to just two affected individuals is powerful evidence that this promise was a sham—window dressing designed to create the appearance of individualized consideration where none exists. The Court is entitled to know whether the agency's stated process has any substance, and Defendants' voluntary submission to the First Circuit answers that question.

Dated: December 8, 2025

Respectfully submitted,

/s/ Justin B. Cox
Justin B. Cox (*pro hac vice*)
**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (*pro hac vice*)
Hillary Li (*pro hac vice*)
Laura Flores-Perilla (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com
katie.weng@arnoldporter.com

Anwen Hughes (*pro hac vice*)
Inyoung Hwang (*pro hac vice*)
**HUMAN RIGHTS FIRST**
75 Broad St., 31st Fl.
New York, NY 10004
Telephone: (212) 845-5244
HughesA@humanrightsfirst.org

H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, Fl. 53
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com

Robert Stout (*pro hac vice*)

Sarah Elnahal (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
rob.stout@arnoldporter.com
sarah.elnahal@arnoldporter.com

Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Justin B. Cox, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 8, 2025

/s/ *Justin B. Cox*
Justin B. Cox