# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SVITLANA DOE, et al.

*Plaintiffs*,

– *v.* –

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, et al.

*Defendants*.

Civil Action No.: 1:25-cv-10495-IT

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' <u>MOTION TO MODIFY CLASS DEFINITION</u>

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. BACKGROUND AND PROCEDURAL HISTORY ......................................... 3

    A.  Factual Background ................................................................................. 3

    B.  Procedural History ................................................................................. 7

III. THE PROPOSED MODIFICATION TO THE CLASS ................................... 9

IV. ARGUMENT ................................................................................................... 10

    B.  The Proposed Modified Class Satisfies Rule 23(a) Requirements ...................... 11

        1.  The Proposed Modified Class Meets the Numerosity Requirement ......... 11

        2.  The Proposed Modified Class Satisfies the Commonality Requirement ............................................................................. 12

        3.  The Proposed Modified Class Meets the Typicality Requirement ........... 14

        4.  The Proposed Modified Class is Adequately Represented ...................... 16

    C.  The Proposed Modified Class Satisfies Rule 23(b)(2) Requirements ................. 18

    D.  The Proposed Modification Does Not Unfairly Prejudice the Parties or the Class ............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997)................................................................................16

*Andrews v. Bechtel Power Corp.*,
　780 F.2d 124 (1st Cir. 1985)....................................................................16

*Baggett v. Ashe*,
　No. 11-cv-30223-MAP, 2013 WL 2302102 (D. Mass. May 23, 2013).............................14, 15

*Bowers v. Russell*,
　No. 22-cv-10457-PBS, 2025 WL 342077 (D. Mass. Jan. 30, 2025) ...........................11

*Brito v. Barr*,
　415 F. Supp. 3d 258 (D. Mass. 2019) .......................................................10

*Comcast Corp. v. Behrend*,
　569 U.S. 27 (2013)...............................................................................11

*In re Credit Suisse-AOL Sec. Litig.*,
　253 F.R.D. 17 (D. Mass. 2008).................................................................14

*Diggs v. Mici*,
　No. 22-cv-40003-MRG, 2024 WL 4425654 (D. Mass. Sept. 30, 2024) .................................12

*George v. Nat'l Water Main Cleaning Co.*,
　286 F.R.D. 168 (D. Mass. 2012)................................................................14

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
　247 F.R.D. 253 (D. Mass. 2008).............................................................10, 13

*In Re New Motor Vehicles Canadian Export Antitrust Litig.*,
　522 F.3d 6 (1st Cir. 2008).....................................................................12

*In re Pharm. Indus. Average Wholesale Price Litig.*,
　230 F.R.D. 61 (D. Mass. 2005).................................................................14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
　588 F.3d 24 (1st Cir. 2009)....................................................................10

*Raposo v. Garelick Farms, LLC*,
　293 F.R.D. 52 (D. Mass. 2013).................................................................12

*Reid v. Donelan*,
   No. 13-cv-30125, 2018 WL 5269992 (D. Mass. Oct. 23, 2018) ............................................10

*Riva v. Ashland, Inc.*,
   No. 09-12074-DJC, 2011 WL 6202888 (D. Mass. Dec. 13, 2011) ......................................11

*Connor B. ex rel. Vigurs v. Patrick*,
   272 F.R.D. 288 (D. Mass. 2011) ........................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................................12, 18

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ................................................................................................14

**Statutes**

8 U.S.C. 553(b)(A) ........................................................................................................................7

8 U.S.C. § 1182(d)(5)(A) .......................................................................................................1, 3, 8

**Regulations**

90 Fed. Reg. 13611 (Mar. 25, 2025) ............................................................................................5

90 Fed. Reg. 58032 (Dec. 15, 2025) ................................................................................... *passim*

Executive Order 14159 (Jan. 20, 2025) .......................................................................................4

Executive Order 14165 (Jan. 20, 2025) .......................................................................................4

**Court Rules**

Fed. R. Civ. P. 23 .......................................................................................................................11

Fed. R. Civ. P. 23(a) ..................................................................................................................11

Fed. R. Civ. P. 23(a)(2) ..............................................................................................................12

Fed. R. Civ. P. 23(a)(3) ..............................................................................................................14

Fed. R. Civ. P. 23(a)(4) ..............................................................................................................16

Fed. R. Civ. P. 23(b)(2) ..............................................................................................................18

Fed. R. Civ. P. 23(c)(1)(C) .........................................................................................................10

Fed. R. Civ. P. 23(c)(5) ..............................................................................................................10

**Other Authorities**

U.S. Gov't Accountability Off., GAO-26-107433, DHS Identified Fraud Risks in
      Parole Processes for Noncitizens and Should Assess Lessons Learned 1 (Dec.
      2025) ........................................................................................................................................12

## I.    INTRODUCTION

Plaintiffs move to modify the Early Revocation Parolee Subclass to include the thousands of individuals who have received parole through humanitarian parole processes subject to the December 15 Federal Register Notice "Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans," 90 Fed. Reg. 58032 (the "FRP FRN") rescinding individual grants of parole on a categorical and *en masse* basis, as well as to appoint additional class representatives John Doe, David Doe, Jose Doe, Francisca Doe, and Luciana Doe ("Proposed Additional Representatives").

The FRP FRN terminates the Family Reunification Parole ("FRP") processes, which have allowed nationals from seven Latin American countries with approved family-based visa petitions to reunite with their U.S. citizen or lawful permanent resident ("LPR") family members— including parents, spouses, and siblings—while waiting for their visas to become available. The FRP processes are humanitarian parole processes established pursuant to 8 U.S.C. § 1182(d)(5)(A). To participate, the U.S. citizen or LPR family member must have an approved family-based visa petition and be invited by the U.S. government to apply for FRP on behalf of the beneficiary/ices of the approved petition. *See* Third Am. Compl., Doc. No. 212-1 ¶¶ 139, 164. In addition to terminating the FRP processes, the FRP FRN also prematurely rescinds individual grants of parole (along with corresponding work authorization) as of January 14, 2026, for all FRP parolees in the United States, with limited exceptions.[1]

---

[1] There are two limited exceptions to this *en masse* termination: (1) if the Secretary determines on a case-by-case basis that parole should not be terminated; and (2) if the FRP parolee filed an adjustment of status application on or before December 15, 2025, that remains pending as of January 14, 2026 (most FRP parolees were unable to seek this exception because they were not yet eligible to file for adjustment of status or they may have had no notice of this requirement due to Defendants refusal to provide individual notice). *See* Doc. No. 212-1 ¶ 234; 90 Fed. Reg. at

Family Reunification Parole has been available for nationals of Cuba since 2007, for nationals of Haiti since 2014, and for nationals Colombia, Ecuador, El Salvador, Guatemala, and Honduras since 2023. The earliest FRP process was established in 2007 for Cubans with approved family-based visas awaiting visa availability ("legacy Cuban FRP"). *See* Third Am. Compl., Doc. No. 212-1 ¶¶ 138, 146. Then, in 2014, in the aftermath of the earthquake and resultant humanitarian crises in Haiti, the United States established a similar parole process for Haitians ("legacy Haitian FRP"). *Id.* ¶¶ 149–50. In 2023, similar FRP processes were established for nationals of Colombia, Ecuador, El Salvador, Guatemala, and Honduras, in recognition of the importance of family unity and the humanitarian conditions in those countries. *Id.* ¶¶ 157–62. In the same year, DHS made updates to "modernize" the FRP processes for Cubans and Haitians. Under the FRP processes established or "modernized" in 2023, FRP beneficiaries could be paroled for an initial three-year period and were eligible to seek re-parole. *Id.* ¶¶ 166, 170, 177. Since 2023, over 16,000 individuals have been granted parole under the now-terminated FRP processes. *See* 90 Fed. Reg. at 58037 & n.45.

Plaintiffs brought this class action to challenge Defendants' termination of humanitarian parole processes and premature *en masse* rescission of grants of parole, and to seek to restore the status-quo duration of class members' parole. Expansion of the class to include the thousands of additional individuals who have been or will imminently be harmed by another premature *en masse* rescission of parole is warranted. Like the March 25 Federal Register Notice terminating the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("March 25 CHNV FRN"), the FRP FRN rescinds nine parole processes that have been used for years, and truncates thousands of

58043. Plaintiffs do not include any FRP parolees who are granted an exception in the class they request the Court to certify.

individual grants of parole with little more than a month's notice. This Court recognized that the class's claims rest on the common legal question of "whether such termination was lawful." Doc. No. 97 at 29. The same underlying legal questions that govern the lawfulness of Defendants' truncation of parole under the March 25 CHNV FRN for existing class members govern the lawfulness of the truncation of parole under the FRP FRN for FRP parolees as well. In the FRP FRN, Defendants base termination on the same unsupported justifications, and draw on the same "discretion" to terminate parole "at any time." 90 Fed. Reg. at 58043. The FRP FRN is simply Defendants' most recent action terminating parole processes in a manner that is predicated upon fundamental legal errors, is *ultra vires* and contrary to law under the APA, and violates the Due Process Clause.

The Proposed Additional Representatives are appropriate class representatives because the remedy they seek is applicable to all individuals who were granted parole under now-terminated humanitarian parole processes and face premature *en masse* rescission of their respective parole. They seek restoration of the authorized periods of parole.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual Background

The statutory authority for the FRP processes, like the other humanitarian parole processes at issue in this case, is 8 U.S.C. § 1182(d)(5)(A). FRP processes were established, beginning in 2007, to promote family unity by allowing eligible family members from seven Latin American countries to be reunited with U.S. citizens and LPRs in safety in the United States while they wait for a visa to become available to them.

Starting on January 20, 2025, President Trump and his administration took a series of actions to terminate existing humanitarian parole processes, truncate active grants of parole, and suspend the ability of parolees to apply for changes of immigration status and benefits. These

executive orders and the relevant events that followed are described in the Third Amended Complaint (*see* Doc. No. 212-1) and summarized below.

1.    On January 20, 2025, the President signed Executive Order 14159, titled "Protecting the American People Against Invasion," directing the Secretary of Homeland Security and others to "rescind the policy decisions of the previous administration that led to the increased or continued presence of illegal aliens in the United States," including by "[e]nsuring that the parole authority . . . is exercised only on a case-by-case basis"; and Executive Order 14165, titled "Securing Our Borders," directing the Secretary of Homeland Security to terminate all "categorical parole programs."

2.    Also on January 20, 2025, Acting Secretary of Homeland Security Benjamine C. Huffman issued a memorandum (the "January 20 Huffman memorandum") to the heads of Immigration and Customs Enforcement ("ICE"), Customs and Border Protection ("CBP"), and U.S. Citizenship and Immigration Services ("USCIS"), titled "Exercising Appropriate Discretion Under Parole Authority," in which he authorized pausing and terminating "categorical parole programs." Acting Secretary Huffman directed the Department of Homeland Security ("DHS") staff to implement a completely novel agency policy—one that would treat the manner in which the parole authority has historically been used as unlawful.

3.    On January 20, 2025, Acting Commissioner of Customs and Border Protection ("CBP") Pete Flores issued a memorandum (the "January 20 Flores memorandum") restricting the CBP personnel authorized to grant parole and requiring that each instance of parole granted by any CBP official be reported to him and the Chief of Staff, along with a justification for the grant.

4.    A few days later, then-Acting Director of U.S. Citizenship and Immigration Services ("USCIS") Jennifer Higgins issued a directive (the "January Higgins directive")

prohibiting USCIS staff from making any further decisions on any request for, among other things, parole, or re-parole made through the Uniting for Ukraine ("U4U"), CHNV, Central American Minors ("CAM"), FRP, Operation Allies Welcome ("OAW"), or other named parole processes. This directive also prohibited USCIS staff from making decisions on requests from U4U, CHNV, CAM, FRP, OAW, and other parolees for any immigration benefit, including for asylum, Temporary Protected Status ("TPS"), adjustment of status, or a visa, etc.

5. On January 24, 2025, CBP notified airlines of President Trump's executive order to "terminate all categorical parole programs that are contrary to the policies of the United States" and identified the "impacted programs" as "includ[ing]" CHNV and FRP, among others. CBP warned: "Carriers that transport aliens subject to the Presidential Executive Order may be subject to a carrier fine for each alien brought to the United States."

6. On February 14, 2025, Acting Deputy Director of USCIS Andrew Davidson issued a memorandum (the "February 14 Davidson memorandum") to various USCIS directorates and program offices. The memorandum directed USCIS personnel not to adjudicate immigration benefit requests (including requests for asylum or temporary protected status) filed by noncitizens who are or were paroled into the United States under various programs, including U4U; CHNV; and family reunification parole for nationals of Colombia, Cuba, Ecuador, El Salvador, Guatemala, Haiti, and Honduras.

7. On March 21, 2025, DHS made public a Federal Register Notice entitled "Termination of Parole Processes: Cubans, Haitians, Nicaraguans, and Venezuelans," later published in the Federal Register on March 25, 2025 (the "March 25 CHNV FRN"), 90 Fed. Reg. 13611 (Mar. 25, 2025). The March 25 CHNV FRN "terminat[es] the categorical programs for inadmissible aliens from Cuba, Haiti, Nicaragua, and Venezuela and their immediate family

members" and further states that "[t]he temporary parole period of [individuals] in the United States under the CHNV parole programs and whose parole has not already expired by April 24, 2025 will terminate on that date unless the Secretary makes an individual determination to the contrary." *Id.* at 13611.

8.    On December 15, 2025, DHS published a Federal Register Notice titled "Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans" (the "FRP FRN"), 90 Fed. Reg. 58032 (Dec. 15, 2025). DHS explained it was terminating the seven FRP processes, as well as the legacy Cuban and Haitian processes. *See id*.

9.    The rationale that the FRP FRN provides for the termination is that the FRP "programs do not serve a significant public benefit," and that "[b]ut for the significant public benefit justification, DHS would not have established the FRP programs." *Id*. at 58034 & n.11. The FRP FRN does not address any of the humanitarian considerations or country conditions upon which DHS justified the creation of the various FRP processes. *See* Doc. No. 212-1 ¶ 229.

10.    The FRP FRN also announced that DHS is truncating existing grants of parole for most parolees who are in the United States under FRP processes. The FRP FRN provides that, absent two limited exceptions, "the parole of all [individuals] who have been paroled into the United States under the FRP programs described in this notice, and whose initial period of parole has not already expired by January 14, 2026, will terminate on that date." 90 Fed. Reg. at 58043. There are over 16,000 FRP parolees in the United States. 90 Fed. Reg. at 58037 & n.45.

10.    The FRP FRN confirms Defendants' intent to terminate humanitarian parole processes and make it easier to deport individuals paroled through these processes as quickly as possible: it states that "[f]ollowing this termination, and consistent with the direction in Executive

Order 14165, DHS generally intends to promptly remove [individuals] who entered the United States under the FRP programs and who stay in the United States beyond their parole termination date with no lawful basis to remain in the United States," and "[p]arolees without any other lawful basis to remain in the United States . . . should depart the United States before their parole termination date." 90 Fed. Reg. at 58043.

11.    The FRP FRN purports to serve as "Constructive Notice" of the termination of the FRP processes and the truncation of individual grants of parole. It alleges that such constructive notice is "sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance." *Id*. at 58045.

12.    The FRP FRN states that it is "exempt from notice-and-comment rulemaking requirements because DHS is merely adopting a general statement of policy." *Id.* (citing 8 U.S.C. 553(b)(A)). It provides that "[b]y terminating the FRP programs . . . DHS is explaining how it will implement the Secretary's broad discretion for exercising her narrow parole authority." *Id.*

### B.    Procedural History

Plaintiffs filed the original class action complaint on February 28, 2025, Doc. No. 1, in the weeks following the issuance of Executive Orders 14159 and 14165 on January 20, 2025, and as the imminent danger caused by those executive orders to Plaintiffs began to materialize. On March 17, 2025, Plaintiffs filed an amended complaint to add new plaintiffs, including a Family Reunification Parole sponsor. *See* Doc. No. 22. On March 27, 2025, Plaintiffs filed a second amended complaint, to add new plaintiffs, factual allegations, and claims relating to the March 25 CHNV FRN that formally terminated the humanitarian parole processes for Cuban, Haitian, Nicaraguan, and Venezuelan nationals ("CHNV Parole"). *See* Doc. No. 68. Plaintiffs allege in part that Defendants' actions are based on fundamental legal errors including an erroneous

interpretation of the parole statute, 8 U.S.C. § 1182(d)(5)(A), are *ultra vires* and contrary to law under the APA, and violate the Due Process Clause.

On April 14, 2025, the Court granted a class-wide stay of the March 25 CHNV FRN, insofar as it prematurely revoked the existing grants of parole and work authorization of individuals paroled into the United States through CHNV Parole processes on a categorical and *en masse* basis without case-by-case review. *See* Doc. No. 97. It accordingly certified an "Early Revocation Parolee Class" under Rule 23(b)(2), consisting of individuals with parole subject to the March 25 CHNV FRN. *See id.* at 28–31; *see also* Doc. No. 98; Doc. No. 107 at 42, 44 (referring to the class as the "Early Revocation Parolee Subclass" in the course of certifying additional subclasses). The Court recognized that Defendants' "categorical revocation [of existing grants of parole] was made on the same terms for every class member," and that the answer to "the question . . . whether such termination was lawful" would provide class-wide resolution regarding the duration of their grants of parole. Doc. No. 97 at 29. The Court also recognized that the class representatives and the class members' arguments as to why the categorical termination is unlawful rest on the same legal theories, and that there were no conflicts of interest. *See id.* at 29–30. Defendants' "rationale for why parole was no longer justified . . . did not depend on circumstances specific to any Plaintiff or to Plaintiffs from any of the . . . countries at issue." *Id.* at 30. In defining the class based on the March 25 CHNV FRN, the Court noted that "[i]f Defendants take or threaten further action affecting Plaintiffs, modification of the class definition might be warranted." *Id.* at 28 & n.27.

On May 28, 2025, the Court granted a class-wide stay of Defendants' other actions suspending immigration benefits adjudications. *See* Doc. No. 107. The Court correspondingly entered an amended order modifying the class to additionally certify a "Re-Parole Subclass," an

"Other Immigration Benefits Subclass," and a "Parole in Place Supporter Subclass." *See id*. at 43–48; *see also* Doc. No. 108. The "Re-Parole Subclass" and the "Other Immigration Benefits Subclass" encompass individuals who received parole through humanitarian parole processes including FRP and have pending applications for re-parole and other immigration benefits. *See* Doc. No. 107 at 43; Doc No. 108 at 1.[2]

Across its orders, the Court has found that the undersigned counsel is qualified, experienced, and able to vigorously conduct the litigation. *See* Doc. No. 97 at 30; Doc. No. 98 at 2; Doc. No 107 at 47; Doc. No. 108 at 3; Doc. No. 181 (certifying additional class counsel).

Plaintiffs filed a third amended complaint on December 29, 2025 to add plaintiffs, factual allegations, and claims relating to the FRP FRN (in addition to other actions Defendants have taken since the filing of Plaintiffs' Second Amended Complaint). Plaintiffs filed an emergency motion for preliminary injunction and stay of administrative action on December 29, 2025.

## III.    THE PROPOSED MODIFICATION TO THE CLASS

Plaintiffs propose modifying the Early Revocation Parolee Subclass to be defined as:

All individuals who have received a grant of parole that is subject to the *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13611 (Mar. 25, 2025), or subject to the *Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58032 (Dec. 15, 2025), rescinding individual grants of parole on a categorical and *en masse* basis,

Plaintiffs would exclude from the class definition any individuals or groups who choose to opt out of the class in order to seek relief in separate litigation.

---

[2] Defendants appealed the stay and the amended order granting class certification, but stipulated to voluntarily dismiss the appeal on November 4, 2025, before filing a brief. *See* Doc. No. 158; Doc. No. 194.

Plaintiffs also respectfully request to add John Doe, David Doe, Jose Doe, Francisca Doe, and Luciana Doe as class representatives for the Early Revocation Parolee Subclass.

The claims of the proposed modified subclass are all based on the same nucleus of facts, and their claims would be fully and finally resolved by this Court's orders. All claims are asserted on behalf of the subclass, all relief requested is based on Defendants' common course of conduct directed at the subclass, and all subclass members seek uniform relief, including restoration of their authorized periods of parole.

## IV.    ARGUMENT

Under Rule 23(c)(1)(C), "[a]n order that grants . . . class certification may be altered or amended before final judgment." Fed R. Civ. P. 23(c)(1)(C). *See also* Doc. No. 97 at 27; Doc. No. 107 at 42 (recognizing that the Court's class-certification order may be altered or amended under Fed. R. Civ. P. 23(c)(1)(C)). "The federal rules contemplate district courts issuing an order certifying a class and detailing the class composition and the case's issues and claims, an order the court can amend before final judgment." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 39 (1st Cir. 2009). In deciding whether to amend a class, courts consider "'the criteria of Rule 23(a) and (b) in light of factual and legal developments' and 'if the parties or the class would be unfairly prejudiced by a change in proceedings.'" *Reid v. Donelan*, No. 13-cv-30125, 2018 WL 5269992, at *3 (D. Mass. Oct. 23, 2018) (citation omitted) (granting motion to expand the class and add class representatives); *see also Brito v. Barr*, 415 F. Supp. 3d 258, 268–69 (D. Mass. 2019) (similar). Additionally, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class." Fed. R. Civ. P. 23(c)(5). "Subclasses can be created after an initial grant of class certification." *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 269 (D. Mass. 2008). Any subclass, though, must "independently meet the requirements of Rule 23 to

maintain a class action." *Riva v. Ashland, Inc.*, No. 09-12074-DJC, 2011 WL 6202888, at *12 (D. Mass. Dec. 13, 2011).

In order to certify a class (or subclass) under Rule 23, the Plaintiffs must satisfy the requirements under Rule 23(a) and fit into one of the categories under Rule 23(b). *See* Fed. R. Civ. P. 23. Rule 23(a) requires the proposed class to satisfy four criteria:

> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Bowers v. Russell*, No. 22-cv-10457-PBS, 2025 WL 342077, at *2 (D. Mass. Jan. 30, 2025).

"The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Here, the Court has certified a class for injunctive and declaratory relief under Rule 23(b)(2), finding that Defendants "have acted or refused to act on grounds that apply generally to the class," and that relief against the "FRN as to the revocation of existing grants of parole would address each [class member's] injuries." Doc. No. 97 at 30–31; *see also* Doc. No. 98 at 2; Doc. No. 108 at 3.

As demonstrated below, the proposed modified class satisfies each of the requirements for class certification under Rule 23(a) as well as the requirements under Rule 23(b)(2).

**B.    The Proposed Modified Class Satisfies Rule 23(a) Requirements**

**1.    The Proposed Modified Class Meets the Numerosity Requirement**

The proposed modified class easily meets Rule 23(a)(1)'s requirement that the class be "so numerous that joinder of all its members is impracticable." The certified class already includes hundreds of thousands of individuals subject to premature *en masse* rescission of parole, and the

proposed modification would add the thousands of individuals now subject to premature *en masse* rescission of their currently valid period of parole under the FRP processes. Since the implementation of all nine FRP processes beginning in 2023, over 16,000 individuals have come to the United States under the FRP processes after having been invited by the U.S. government to participate. 90 Fed. Reg. at 58037 & n.45. Most were granted a three-year period of parole, intended to allow them to be reunited with family in the United States, where they could safely await visa availability. As of January 2025, approximately 14,000 individuals are in the country under the "modernized" FRP processes. *Id.*[3] And as of April 2025, there are nearly 2,000 individuals with "valid parole" under the "legacy" Cuban and Haitian FRP processes. *Id.*[4]

**2.    The Proposed Modified Class Satisfies the Commonality Requirement**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[T]he commonality requirement is met where the questions that go to the heart of the elements of the cause of action will each be answered either 'yes' or 'no' for the entire class and the answers will not vary by individual class member." *Raposo v. Garelick Farms, LLC*, 293 F.R.D. 52, 55 (D. Mass. 2013) (internal quotations and citation omitted). "[A] plaintiff must demonstrate that the proposed class's claims 'depend upon a common contention,' the resolution of which is 'central to the validity' of each of the class's claims." *Diggs v. Mici*, No. 22-cv-40003-MRG, 2024 WL 4425654, at *4 (D. Mass. Sept. 30, 2024) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The commonality requirement is a "low bar." *In Re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008). It requires only the

---

[3] *See also* U.S. Gov't Accountability Off., GAO-26-107433, DHS Identified Fraud Risks in Parole Processes for Noncitizens and Should Assess Lessons Learned 1, 21–23 (Dec. 2025).

[4] *See* 90 Fed. Reg. at 58037 n.45 (citing USCIS estimates that there are 1,852 individuals with "valid parole" under the legacy Cuban Family Reunification parole process and 108 under the legacy Haitian Family Reunification parole process).

existence of a "*single issue common* to all members of the class." *Natchitoches*, 247 F.R.D. at 264 (emphasis in original).

The proposed modified class satisfies Rule 23(a)(2)'s commonality requirement because the same fundamental questions of fact and law are common to all class members, including the individuals who have been or will imminently be harmed by the FRP FRN. The claims of the proposed additional class members all arise from the common contention that Defendants terminated the FRP parole processes and will be prematurely terminating individual grants of FRP parole (and associated work authorization), in violation of the APA, statutory authority, and the Due Process Clause, all of which cause direct harm to class members.

Moreover, the reasons that the Court identified for finding that the original Early Revocation Parolee Subclass impacted by the March 25 CHNV FRN meets the commonality requirement extend to the proposed additional members impacted by the FRP FRN. The original members and the proposed additional members all challenge Defendants' "categorical revocation of their existing grants of parole"; the "categorical revocation was made on the same terms for every class member"; and "[a]nswering the question of whether such termination was lawful will resolve the issue of whether, in the absence of individual determinations, all [proposed] class members' parole should expire no later than the date specified in the FRN or, by contrast, on the date set forth on each class members' original grant of parole." Doc. No. 97 at 29. Specifically, like the members of the original Early Revocation Parolee Subclass, all of the proposed additional members were granted parole into the United States and received work authorization for a certain number of years; Defendants' actions "shortening of their grant of parole . . . cause[s] their lawful status in the United States to lapse early." *Id.* at 18. They will then either have to leave the

country—separating from their families and facing dangers in the countries they left—or face removal proceedings in the United States. *See id.* at 18–19.

Accordingly, the legal solution to each proposed modified class member's harm is identical: restoration of the *status quo ante*, under which parolees are entitled to the full duration of their authorized parole (i.e., from prior to the March 25 CHNV FRN or prior to the FRP FRN). Because all members of the subclass face a common problem (which has a common cause) and their harm would be abated through common relief, the commonality requirement under Rule 23(a)(2) is satisfied.

### 3.    The Proposed Modified Class Meets the Typicality Requirement

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). While "[c]ommonality looks at the relationships among the class members generally, . . . typicality focuses on the relationship between the proposed class representative and the rest of the class." *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 176 (D. Mass. 2012). "The typicality requirement 'is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004)). "The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008). When a plaintiff "herself [is] a subject of the policy" the class is challenging, her claims are "obviously typical" of the claims of the class. *Baggett v. Ashe*, No. 11-cv-30223-MAP, 2013 WL 2302102, at *1 (D. Mass. May 23, 2013).

The claims of the Proposed Additional Representatives are typical of the claims of the proposed additional class members who are subject to the FRP FRN, as well as the claims of the broader Early Revocation Parolee Subclass. Along with thousands of similarly situated individuals, the Proposed Additional Representatives will lose their parole on January 14 and must either return to the countries they left or face the accrual of unlawful presence and possible removal proceedings or expedited removal. They are each a "subject of the policy" that the other members are challenging. Similarly, like the class representatives and members of the original Early Revocation Parolee Subclass, each Proposed Additional Representative has an individual grant of parole that is being prematurely terminated on a categorical and *en masse* basis. All of the representatives and members of the proposed modified class have an interest in establishing that such termination without individualized case-by-case review is unlawful. There may be "minor variations in the applicable policies" between the March 25 CHNV FRN and the FRP FRN, and "[d]ifferences in the specific circumstances of individual class members," but "what [each plaintiff] challenges" is the same. *Baggett*, 2013 WL 2302102, at *1.

For example, David Doe is facing premature termination of his parole; his currently valid grant of parole is set to expire in July 2027. David Doe Decl., Doc. No. 214-2 ¶ 12. His father is a U.S. citizen, and he has many other family members in the United States. *Id.* ¶¶ 2, 5. Through the FRP process for Ecuador, David Doe and his wife came to the United States with their two children and now live and work in Arkansas. *Id.* ¶¶ 2, 9–12. They did not feel safe in Ecuador because of the presence of drug cartels, high levels of crime, and political instability. *Id.* ¶ 7. David Doe is now part of the management team at the poultry plant where he has worked for months. *Id.* ¶ 3. Premature termination of his parole would not only separate him from his family members in the United States but upend the life and career he has built here. Likewise, Francisca Doe came to the

United States with her husband and three children after being granted parole until August 2027 through the FRP process for Guatemalans. Francisca Doe Decl., Doc. No. 214-3 ¶¶ 3, 5, 11. They live near her mother and sister, who are U.S citizens. *Id.* ¶ 4. Her husband works full-time; Francisca Doe plans to start working soon as an assistant at a daycare business. *Id*. They face gang violence and crime if the premature termination of their parole forces them to return to Guatemala. *Id.* ¶¶ 7, 16. Remaining safely in the United States with her parole status until 2027 would enable Francisca Doe to provide for her family and maintain a stable environment for her children.

In sum, the Proposed Additional Representatives seek the same relief as the rest of the proposed class: restoration of their authorized periods of parole from prior to the March 25 CHNV FRN or the FRP FRN.

### 4.     The Proposed Modified Class is Adequately Represented

Rule 23(a)(4)'s adequacy requirement is met where the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

First, the Proposed Additional Representatives have claims that are the same as those of the proposed modified class, and accordingly seek the same remedies. In the same way that the March 25 CHNV FRN "does not differentiate between the CHNV programs," the FRP FRN does not differentiate between the FRP programs and "instead categorically revokes parole for all individuals paroled through [them]" on January 14. Doc. No. 97 at 30. Additionally, Defendants'

justification for the categorical revocation of parole "did not depend on circumstances specific to any Plaintiff or to Plaintiffs from any of the . . . countries at issue." *Id..* Defendants' justifications also do not materially "differentiate" between CHNV parole and FRP. Indeed, the FRP FRN justifies the "decision to terminate discretionary and temporary parole programs *like* the FRP programs" by referring generally to the "stark failure of categorical parole programs, *like* the FRP programs and CHNV parole programs . . . to deliver on their promises." 90 Fed. Reg. at 58037–38 (emphases added).

Plaintiffs are not otherwise aware of any conflicts of interest within the proposed class. The undersigned counsel are also not aware of any conflicts of interest between members of the proposed class. The Proposed Additional Representatives have demonstrated their commitment to vigorously prosecuting the action, including by providing declarations that illustrate the factual bases for the present action, Doc. Nos. 214-2–214-6, vigilantly monitoring the status of the case, and remaining in regular contact with counsel, thus representing the interests of the class.

The Proposed Additional Representatives have also retained adequate counsel; the proposed modified class will be represented by the same class counsel that this Court appointed for the originally certified class. *See* Doc. No. 108; Doc. No. 181 (granting motion for certification of additional class counsel).[5] As this Court specifically found, based on the undersigned counsels' declarations and filings, counsel "have conducted factual investigations leading to this lawsuit, have engaged in class action litigation or other complex litigation involving immigration matters,

---

[5] Plaintiffs ask the Court to appoint John A. Freedman, Laura S. Shores, Katie Weng, H. Tiffany Jang, Daniel B. Asimow, Robert Stout, Sarah Elnahal, and Javier Ortega Alvarez of Arnold & Porter; Esther H. Sung, Karen C. Tumlin, Hillary Li, Laura Flores-Perilla, and Brandon Galli-Graves of Justice Action Center; Anwen Hughes and Inyoung Hwang of Human Rights First; and Justin B. Cox of Law Office of Justin B. Cox. The proposed class counsel are attorneys of record and admitted to appear on behalf of Plaintiffs.

have demonstrated knowledge of the applicable immigration law, and have attested to having adequate resources to represent the class." Doc. No. 108 at 3; *see also* Doc. No. 178. The undersigned counsel have performed further work to identify and investigate potential claims in this action, which resulted in the submission of additional individualized declarations for individual plaintiffs subject to the FRP FRN. *See* Doc. Nos. 214-2–214-6. The undersigned counsel have committed and will continue to commit significant resources to representing the class and are prepared to continue zealously representing Plaintiffs and all class members throughout all stages of this litigation through trial.

### C.    The Proposed Modified Class Satisfies Rule 23(b)(2) Requirements

Certification of the proposed modified class remains appropriate under Rule 23(b)(2) because Defendants have, through the challenged agency actions all predicated on the same set of fundamental legal errors, "act[ed] on grounds that apply generally to the [whole] class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). "These requirements demand cohesiveness among class members with respect to their injuries." *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 297 (D. Mass. 2011) (internal quotation and citation omitted). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (citation omitted). Such a class is inappropriate, however, when each class member "would be entitled to a *different* injunction or declaratory judgment." *Id.*

Here, the requirements under Rule 23(b)(2) are satisfied. Plaintiffs seek injunctive and declaratory relief in response to Defendants' termination of humanitarian parole processes. Across the March 25 CHNV FRN and the FRP FRN, Defendants have indicated that they will act consistently with respect to class members by truncating currently valid grants of parole.

Defendants have also invoked the same justifications to end the parole processes, and failed to comply with the substantive and procedural requirements of the parole statute and agency regulations.

Injunctive relief that addresses Defendants' conduct at issue (i.e., vacating and enjoining implementation of the challenged agency actions and directing Defendants to restore the *status quo ante*) would address all of the Proposed Additional Representatives' claims as well as those of members of the proposed modified class. The appropriate remedy to these unlawful terminations is uniform among all class members: vacatur of the challenged agency action (i.e. the FRN) at issue, and restoration of the *status quo ante* with the reinstatement of the authorized periods of parole. Because all class members are victims of Defendants' unlawful and arbitrary and capricious conduct and all class members would benefit from the same injunctive and declaratory relief, Rule 23(b)(2)'s requirements are met.

### D.     The Proposed Modification Does Not Unfairly Prejudice the Parties or the Class

Defendants would not be prejudiced by the modification of the class to include individuals subject to the FRP FRN. Because the underlying questions in this case center on statutory interpretation and administrative law, Defendants will not incur any additional litigation expenses beyond what they have incurred defending against the claims of the original certified class.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court modify the Early Revocation Parolee Subclass to include individuals who have received a grant of parole subject to the FRP FRN, and add the Proposed Additional Representatives as representatives.

Dated: December 29, 2025

Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (*pro hac vice*)
Hillary Li (*pro hac vice*)
Laura Flores-Perilla (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org


Inyoung Hwang (*pro hac vice*)
Anwen Hughes (*pro hac vice*)
**HUMAN RIGHTS FIRST**
75 Broad St., 31st Fl.
New York, NY 10004
Telephone: (212) 845-5244
HughesA@humanrightsfirst.org


Justin B. Cox (*pro hac vice*)
**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

Respectfully submitted,

*/s/ John A. Freedman*
John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
Katie Weng (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com
katie.weng@arnoldporter.com

H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, Fl. 53
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com

Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com

Robert Stout (*pro hac vice*)
Sarah Elnahal (*pro hac vice*)
Javier Ortega Alvarez (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
rob.stout@arnoldporter.com
sarah.elnahal@arnoldporter.com


*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, John A. Freedman, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 29, 2025

*/s/ John A. Freedman*
John A. Freedman
