YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

KATHERINE J. SHINNERS
*Senior Litigation Counsel*

ELISSA FUDIM
*Trial Attorney*

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

Svitlana Doe, *et al.*,                          )          Civil Action No. 1:25-cv-10495
                                                 )
                    Plaintiffs,                  )
                                                 )
v.                                               )
                                                 )
Kristi Noem, in her official capacity as         )
Secretary of Homeland Security, *et al.*,        )
                                                 )
                    Defendants.                  )
_____)

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

LEGAL FRAMEWORK...........................................................................................2

BACKGROUND ........................................................................................................3

ARGUMENT .........................................................................................................10

    A.    Plaintiffs' motion to amend should be denied because it is procedurally improper...........................................................................................................10

    B.    Amendment does not serve the intersts of judicial economy and is prejudical ............................................................................. 11

    C.    Amendment to challenge the FRP FRN is futile....................................19

CONCLUSION ......................................................................................................20

## TABLE OF AUTHORITIES

## CASES

*Adorno v. Crowley Towing and Transp. Co.*,
  443 F.3d 122 (1st Cir. 2006) ..................................................... 19

*Anglers Conservation Network v. Pritzker*,
  No. CV 13-1761 (GK), 2014 WL 12776056 (D.D.C. Apr. 28, 2014) ............................... 13, 14

*Arizona v. Mayorkas*, 584 F. Supp. 3d 783 (D. Ariz. 2022), *appeal dismissed*,
  No. 22-15519, 2022 WL 6105386 (9th Cir. Sept. 12, 2022)..................................... 11

*Atieh v. Riordan*,
  727 F.3d 73 (1st Cir. 2013) ..................................................... 15

*Biden v. Texas*,
  142 S. Ct. 2528 (2022)........................................................ 10

*Camp v. Pitts*,
  411 U.S. 138 (1973).......................................................... 13

*Center for Food Safety v. Vilsack*,
  No. C–10–04038–JSW, 2011 WL 672802 (N.D. Cal. Feb. 8, 2011) ......................... 14

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971).......................................................... 13

*City of Bedford v. Locke*,
  No. 10–10789–RWZ, 2011 WL 2636863 (D. Mass. June 30, 2011)......................... 14

*Clean Water Action v. Pruitt*,
  315 F. Supp. 3d 72 (D.D.C. 2018) .............................................. 12

*Doe v. Noem*,
  152 F.4th 272 (1st Cir. 2025) .......................................... 2, 7, 19

*Evans v. Thompson*,
  No. 14-13024-JCD, 2016 U.S. Dist. LEXIS 65487 (D. Mass. May 18, 2016) ...................... 12

*EMW Women's Surgical Ctr., P.S.C. v. Sec'y of Kentucky's Cabinet for Health & Fam. Servs.*,
  No. 3:19-CV-178, 2022 WL 2824661 (W.D. Ky. Apr. 22, 2022) ....................... 15, 16

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985).......................................................... 13

*Forte v. Cty. of Merced*,
    No. 1:11-CV-00318-AWI, 2014 WL 1747166 (E.D. Cal. Apr. 30, 2014) ............................... 13

*Hassan v. Chertoff*,
    593 F.3d 785 (9th Cir. 2010) ................................................................................. 19

*Hatch v. Dep't for Child., Youth & Their Fams.*,
    274 F.3d 12 (1st Cir. 2001) ................................................................................... 16

*In re Exxon Valdez*,
    318 Fed.Appx. 545 (9th Cir. 2009) ........................................................................ 17

*Lowe v. Mills*,
    718 F. Supp. 3d 69 (D. Me. 2024), *aff'd sub nom* .................................................... 12

*Lowe v. Gagné-Holmes*,
    126 F.4th 747 (1st Cir. 2025) ................................................................................. 12

*Miss. Ass'n of Coops. v. Farmers Home Admin.*,
    139 F.R.D. 542 (D.D.C. 1991) ............................................................................... 12

*Lowe v. Gagne-Holmes*,
    145 S. Ct. 2795 (2025) ......................................................................................... 12

*Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
    412 F.3d 215 (1st Cir. 2005) ................................................................................. 18

*McLaughlin v. Bos. Harbor Cruises, Inc.*,
    No. 03-10905-GAO, 2006 WL 1998629 (D. Mass. July 17, 2006) ........................... 12

*Nat'l Treasury Emps. Union v. Helfer*,
    53 F.3D 1289 (D.C. Cir. 1995) .............................................................................. 17

*Negron v. Turco*,
    253 F. Supp. 3d 361 (D. Mass. 2017) ..................................................................... 16

*Noem v. Doe*,
    145 S. Ct. 1524 (2025) ........................................................................................... 7

*NVE, Inc. v. Dep't of Health & Human Servs.*,
    436 F.3d 182 (3d Cir. 2006) .................................................................................. 15

*Oregon Natural Resources Council, Inc. v. Grossarth*,
    979 F.2d 1377 (9th Cir. 1992) ............................................................................... 14

*Polansky v. Wrenn*,
  No. 12–cv–105–PB, 2013 WL 1165158 (D.N.H. Feb. 22, 2013)............................... 17

*Quaker State Oil Ref. Corp. v. Garrity Oil Co*.,
  884 F.2d 1510 (1st Cir. 1989) ........................................................................... 3

*Resolution Trust Corp. v. Gold,*
  30 F.3d 251 (1st Cir. 1994) ............................................................................. 16

*Samirah v. O'Connell*,
  335 F.3d 545 (7th Cir. 2003)............................................................................ 19

*Seamon v. Upham*,
  563 F. Supp. 396 (E.D. Tex. 1983)............................................................... 13, 17

*Steir v. Girl Scouts of the USA*,
  383 F.3d 7 (1st Cir. 2004) ................................................................................. 3

*Solomon v. Blinken*,
  No. 2:23-cv-00219-NT, 2024 WL 127019 (D. Me. Jan. 11, 2024)........................ 17

*Torres-Estrada v. Cases*,
  88 F.4th 14 (1st Cir. 2023) ................................................................................ 3

*Turner v. Liberty Mut. Ret. Benefit Plan*,
  350 F.R.D. 1 (D. Mass. 2025) ..................................................................... 18, 19

*U.S. v. Hicks*,
  283 F.3d 380 (D.C. Cir. 2002) (citing Fed. R. Civ. P. 15)............................... 2, 10

*USA Grp. Loan Servs. v. Riley*,
  82 F.3d 708 (7th Cir. 1996)............................................................................. 15

*United States ex rel. Gagne v. City of Worcester*,
  565 F.3d 40 (1st Cir. 2009) ............................................................................... 3

*Webster v. Doe*,
  486 U.S. 592 (1988).......................................................................................... 19

*Whitewater Draw*,
  5 F.4th 997 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 713 (2021) ....................... 10

*Williams v. Lackawanna Cty. Prison*,
  No. 1:12–CV–02274, 2016 WL 1393383, (M.D. Pa. Apr. 8, 2016) ......................... 18

# INTRODUCTION

Defendants submit this response in opposition to Plaintiffs' Motion for Leave to File a Third Amended Complaint, ECF No. 212, 213. Plaintiffs seek leave to add new individual plaintiffs, certify a new class, add a new claim for relief, and expand upon existing claims, to challenge two, new, discrete agency actions: (i) a December 2, 2025 policy memorandum, issued by U.S. Citizenship and Immigration Services ("USCIS") in the wake of the shooting of two national guardsmen, placing a temporary pause on the adjudication of immigration benefit requests filed by nationals of nineteen high-risk countries and of asylum applications in order to allow for additional security vetting;[1] and (ii) a December 15, 2025 Federal Register Notice terminating certain family reunification parole processes (FRP programs) and, effective January 14, 2026, terminating some existing grants of parole issued under those family reunification parole processes if the parolee does not have a pending adjustment of status application filed before December 15, 2025.[2] None of the existing Plaintiffs are affected by the termination of existing grants of FRP parole. *See* Doc. No. 212-1 at ¶ 412. USCIS's pause on adjudication of certain immigration benefit requests is not related to DHS's ongoing review of parole programs, and its applicability is not based on whether the applicant was a former beneficiary of a parole program.

Leave should be denied because Plaintiffs' proposed amendment seeks to inject new parties and new claims challenging distinct and later agency actions that bear only a tangential relationship to the claims and classes already at issue in this case. Plaintiffs also seek through their proposed

---

[1] *See* Doc. No. 224, USCIS, Policy Memorandum: "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries", PM-602-0192 (Dec. 2, 2025) ("USCIS Memo").

[2] *See* Doc. No. 225, *Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorans, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58032 (December 15, 2025) ("FRP FRN").

amendment to belatedly add a brand new claim that all of the previously-challenged actions, as well as these later actions, should have been subject to notice and comment rulemaking. *See* Doc. No. 212-1 at ¶¶ 469–477. This request to amend comes after Defendants have moved to dismiss the existing complaint, and after the parties completed briefing on a partial motion for summary judgment. Allowing amendment—or supplementation, which is the only conceivable procedural vehicle for Plaintiffs' request—would undermine judicial economy, prejudice Defendants, and transform this case into a multi-track proceeding requiring separate administrative records and renewed rounds of dispositive and class certification briefing. Moreover, amendment, at least with respect to the FRP Federal Register Notice (FRN), would be futile because the Secretary's discretionary decision to terminate the FRP programs, as well as her decision to terminate individual grants of FRP parole—like her decision to terminate the parole programs for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV) and individual grants of parole under the CHNV programs—falls squarely within Congress's jurisdiction-stripping provisions and is neither contrary to law nor arbitrary and capricious. *See Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025).

In short, whether styled as amendment or supplementation, Plaintiffs' request fails under Rule 15 because it seeks to inject new parties, new claims, and new agency actions based on distinct rationales into a mature case, causing undue delay and prejudice and defeating judicial economy.

## LEGAL FRAMEWORK

Rule 15 establishes two ways to update a pleading: by amendment and by supplement. Fed. R. Civ P. 15(a), (d). An amendment "rest[s] on matters in place prior to the filing of the original pleading" while a supplemental pleading "sets forth transactions or occurrences or events

which have happened since the date of the pleading sought to be supplemented." *U.S. v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (citing Fed. R. Civ. P. 15).

Under Rule 15(a), "leave to amend should be 'freely give[n]' when 'justice so requires.'" *Torres-Estrada v. Cases*, 88 F.4th 14, 26 (1st Cir. 2023). On its face, Rule 15(d) does not contain such a provision with respect to supplementation. *See* Federal Rules of Civil Procedure, Rule 15(d). Instead, Rule 15(d) is clear that the court *may* permit a supplemental pleading setting forth changed circumstances. *Id.* Notwithstanding this distinction, Courts have wide discretion to grant or deny motions to amend or supplement pleadings. *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009). Courts consider the totality of the circumstances and balance the pertinent equitable considerations including whether there has been delay, whether the case is well-advanced, and whether there is prejudice to the defendants. *Quaker State Oil Ref. Corp. v. Garrity Oil Co*., 884 F.2d 1510, 1517 (1st Cir. 1989). And notably, "[a]s a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004).

## **BACKGROUND**

Plaintiffs' Operative Second Amended Complaint and the Agency Actions It Challenges:

Plaintiffs' Second Amended Complaint ("SAC," Doc. No. 68) challenges several different Executive Branch actions that are related to various parole[3] programs administered by DHS over the past several years: the parole programs for nationals of Cuba, Haiti, Nicaragua, and Venezuela ("CHNV"); Uniting for Ukraine ("U4U") parole; Operation Allies Welcome ("OAW"); the Family Reunification Parole ("FRP") programs; Military Parole-in-Place ("MPIP"); and the Central

---

[3] As the court is aware, parole is a discretionary mechanism for temporarily releasing an alien applying for admission to the United States into the interior of the country on a case-by-case basis for urgent humanitarian reasons or a significant public benefit. 8 U.S.C. § 1182(d)(5)(A).

American Minors program ("CAM"). Doc. No. 68 at ¶¶ 68–157. These programs established processes by which individuals of certain nationalities or categories of aliens could request parole, or re-parole, often because DHS had made an assessment that providing such processes for these categories of aliens served urgent humanitarian reasons or provided a significant public benefit.[4]

On January 20, 2025, Acting Homeland Security Secretary Benjamine Huffman issued a memo (the Huffman Memo) directing DHS to review its existing parole policies and to "pause, modify or terminate" any parole policy that does not comport with the parole statute. Doc. No. 41-1. On January 20, 2025, Acting Commissioner of U.S. Customs and Border Protection (CBP) Pete Flores issued a memo (the Flores Memo) that Plaintiffs allege "restrict[ed] the CBP personnel authorized to grant parole and require[ed] that each parole granted by any CBP official be reported to" Flores and the Chief of Staff. Doc. No. 68 at ¶ 177. On January 23, 2025, Jennifer Higgins, Acting Director of USCIS, sent an email requesting that USCIS officers "not make any final decisions (approval, denial, closure) or issue a travel document or I-94 for any initial parole or re-parole application" for enumerated parole programs, including those identified by Plaintiffs except for MPIP, until further instructions are issued. Doc. No. 41-2. In a February 14, 2025

---

[4] *See* Doc. No. 68 at ¶¶ 98–99; 87 Fed. Reg. 63507 (Oct. 19, 2022) (parole process for Venezuelans); 88 Fed. Reg. 127 (Jan. 9, 2023) (changes to same); 88 Fed. Reg. 1266 (Jan. 9, 2023) (parole process for Cubans); 88 Fed. Reg. 1243 (Jan. 9, 2023) (parole process for Haitians); 88 Fed. Reg. 1255 (Jan. 9, 2023) (parole process for Nicaraguans); 87 Fed. Reg. 25040 (Apr. 17, 2022) (U4U); 88 Fed. Reg. 21694 (Apr. 11, 2023) (CAM); National Defense Authorization Act FY 2020, Pub. L. No. 116-92, § 1758 (2019), codified at 8 U.S.C. § 1182 note (MPIP); *Family Reunification Parole Process for Colombians*, 88 Fed. Reg. 43591 (July 10, 2023); *Family Reunification Parole Process for Ecuadorians*, 88 Fed. Reg. 78762 (Nov. 16, 2023); *Family Reunification Parole Process for Guatemalans*, 88 Fed. Reg. 43581 (July 10, 2023); *Family Reunification Parole Process for Hondurans*, 88 Fed. Reg. 43601 (July 10, 2023) (Ex. 29), Doc. No. 24-29; *Family Reunification Parole Process for Salvadorans*, 88 Fed. Reg. 43611 (July 10, 2023); *Changes to the Haitian Family Reunification Parole Process*, 88 Fed. Reg. 54635 (Aug. 11, 2023); *Changes to the Cuban Family Reunification Parole Process*, 88 Fed. Reg. 54639 (Aug. 11, 2023); *Haitian Family Reunification Parole Program*, 79 Fed. Reg. 75581 (Dec. 18, 2014); *Cuban Family Reunification Parole Program*, 72 Fed. Reg. 65588 (Nov. 15, 2007).

memorandum, USCIS Acting Deputy Director Andrew Davidson issued a memo (the Davidson Memo) directing USCIS to "place an administrative hold on all immigration benefit requests filed by aliens who are or were paroled under U4U, CHNV, or FRP processes, pending the completion of . . . required screening and vetting." Doc. No. 41-3.

In a Federal Register Notice published March 25, 2025, DHS terminated the CHNV parole programs. *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13611-01 (Mar. 25, 2025) (the CHNV FRN). Under the CHNV FRN, grants of parole under CHNV that had not already expired by April 24, 2025, were to terminate on that date unless the Secretary were to decide to the contrary in individual cases. *Id.* at 13611.

The existing Plaintiffs are aliens who claim they received parole under U4U, CHNV, OAW, and CAM (Parolee Plaintiffs), who had, at the time the SAC was filed, existing CHNV parole grants subject to termination, pending requests for re-parole under those programs, and/or pending requests for other immigration benefits such as asylum, employment authorization, adjustment of status, or other immigration benefits, *see* Doc. No. 68 at ¶¶ 16–27, 36–37; individuals who claim to be supporters of beneficiaries requesting parole under MPIP, CAM, FRP, or CHNV (Supporter Plaintiffs), *id.* ¶¶ 28–35, 381; and the Haitian Bridge Alliance, an organization that claims to provide legal and educational services and support to Haitian migrants and individuals looking to serve as a U.S. supporter to Haitian migrants under the now-terminated Haitian parole program, *id.* ¶¶ 281–93.

As the Court is aware, Plaintiffs filed two motions for a preliminary injunction under Fed. R. Civ. P. 65(a) and/or a stay of agency action under 5 U.S.C. § 705 and sought and obtained certification of four classes.

On March 17, 2025, Plaintiffs sought a preliminary injunction and/or administrative stay concerning Defendants' pause on adjudication of applications for parole and their moratorium on adjudicating requests for other immigration benefits filed by current or former parolees. Plaintiffs also moved for class certification, seeking to certify two classes: The Sponsor Subclass consisting of "[a]ll individuals with pending applications to sponsor a beneficiary for any humanitarian parole process, including but not limited to U4U, CHNV, FRP, MPIP, and CAM, which applications are subject to the January 20 Huffman memo and subsequent actions by Defendants to pause or otherwise terminate the processing of such applications"; and the "Immigration Benefits Subclass" consisting of "[a]ll individuals who have received humanitarian parole through already established humanitarian parole processes, such as the U4U, CHNV, OAW, FRP, MPIP, and CAM parole processes, with any pending applications for any additional immigration benefit, which applications are subject to the 'administrative hold' set out in the February 14 Davidson memorandum, the January Higgins Directive, and other subsequent actions by Defendants to pause or otherwise terminate the processing of such applications." On May 28, 2025, this Court issued an order, granting in part Plaintiffs' request for a stay of the Davidson Memo and Higgins Email. *See* Doc. No. 107.[5]

Plaintiffs also filed a second motion for a preliminary injunction and stay concerning the CHNV FRN. They also filed a supplemental class certification motion seeking certification of three classes—the Sponsor Subclass, the Immigration Benefits Subclass, and a new class, the

---

[5] The Court certified three additional classes: (i) All individuals who have received humanitarian parole through already established humanitarian parole processes that provide for re-parole, such as the U4U, OAW, FRP, MPIP, and CAM parole processes, with any pending applications for re-parole; (ii) All individuals who have received humanitarian parole through already established humanitarian parole processes and have a pending application for any additional immigration benefit (besides re-parole); and (iii) All individuals who have a pending application to support any family member for initial parole through the Military Parole in Place program.

Rescinded Parolee Subclass, consisting of "[a]ll individuals who have received parole through humanitarian parole processes, including but not limited to U4U, CHNV, OAW, FRP, MPIP, and CAM, which parole is subject to the [CHNV] FRN and subsequent similar actions by Defendants to rescind individual grants of parole on a categorical and *en masse* basis." This court certified a class of "[a]ll individuals who have received a grant of parole that is subject to the *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13611 (Mar. 25, 2025), rescinding individual grants of parole on a categorical and *en masse* basis," with some exceptions, and granted a stay of the termination of individual grants of parole. Doc. No. 97. The government appealed that decision and sought an emergency stay, which the First Circuit denied, but the Supreme Court granted, in a decision with just two justices noting dissent. *Noem v. Doe*, 145 S. Ct. 1524 (2025). Thereafter, the merits of the appeal regarding the CHNV FRN was briefed before the First Circuit, and that Court ultimately reversed this Court's preliminary relief order, concluding that Plaintiffs did not demonstrate a strong likelihood of success in establishing that the CHNV termination was either contrary to law or arbitrary and capricious. *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025).

Currently pending before this Court are Defendants' motion to dismiss the Second Amended Complaint, *see* Doc. No. 114, which has been fully briefed for more than six months, *see* Doc. No. 125, and Plaintiffs' motion for partial summary judgment concerning the Secretary's decision to terminate existing grants of CHNV parole, *see* Doc. No. 196—which has now been fully briefed twice.[6]

---

[6] Plaintiffs originally filed their motion for summary judgment more than six months ago, in June 2025, but the Court permitted Plaintiffs to refile a new motion to replace it following the First Circuit's decision. *See* Doc. No. 191.

<u>Plaintiffs' Proposed Third Amended Complaint:</u>

Plaintiffs proposed Third Amended Complaint seeks to add new claims and expand upon existing claims to challenge two distinct agency decisions: the USCIS Memo and the FRP FRN. Some background as to both:

On December 2, 2025, following two high-profile terrorist incidents—including a planned terrorist attack by an Afghan national on Election Day 2024, and the shooting of two national guardsmen by another Afghan national on November 26, 2025—USCIS issued a policy memorandum announcing a temporary hold and enhanced review of all pending applications for asylum, Form I-589, and pending immigration benefit applications filed by aliens from nineteen countries that had previously been identified as high risk by presidential Proclamation: Afghanistan, Burma, Burundi, Chad, Republic of the Congo, Cuba,  Equatorial Guinea, Eritrea, Haiti, Iran, Laos, Libya, Sierra Leone, Somalia, Sudan, Togo, Turkmenistan, Venezuela, and Yemen. *See* Doc. No. 224; *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 24497 (June 10, 2025). The USCIS Memo explains that the hold is intended to permit USCIS to assess information received from national security and law-enforcement partners regarding potential public-safety risks, including reports of violent criminal activity. Doc. No. 224. The policy was adopted as an interim measure while USCIS evaluates whether additional screening or procedural safeguards are warranted. Doc. No. 224.

On December 15, 2025, DHS published a Federal Register Notice terminating all categorical FRP programs for nationals of Colombia, Cuba, Ecuador, El Salvador, Guatemala, Haiti, and Honduras, and their immediate family members. *See* 90 Fed. Reg. 58032 (December 15, 2025). Additionally, under the terms of the notice, any individual currently paroled into the

United States under one of these FRP programs will have that parole terminated on January 14, 2026, unless the individual has a pending Form I-485 (Application to Register Permanent Residence or Adjust Status) filed by December 15, 2025 that remains pending on January 14, 2026, or the Secretary determines otherwise on a case-by-case basis. *Id.* The Secretary explained that in her opinion, "these programs do not serve a significant public benefit, are not necessary to reduce levels of unlawful immigration, and are not serving all their intended purposes." 90 Fed. Reg. at 58034. And in issuing the FRP FRN the Secretary relied upon her authority in 8 U.S.C. § 1182(d)(5) to terminate grants of parole. 90 Fed. Reg. at 58033, 58043.

Plaintiffs now seek to amend their complaint to challenge these two discrete agency actions. In doing so, they propose many amendments to their operative complaint. *See generally* 212-2. First, Plaintiffs seek to add *five* new plaintiffs to this lawsuit. Doc. No. 212-2 at 1; ¶ 358-384. They need to do so because as this case now exists, none of the named class representatives are recipients of parole through any of the FRP programs. Second, they add numerous factual allegations concerning the history of FRP programs and the Secretary's Federal Register Notice terminating the programs. Doc. No. 212-2 at ¶¶ 140-178, 227-246. Third, they seek to amend the class definitions. *Id*. at ¶¶ 385-398; Doc. No. 219. Fourth, they seek to amend existing causes of action to group disparate agency actions together into single claims. *See e.g. id*. at First Cause of Action, ¶¶ 399-418 (challenging the termination of CHNV parole and FRP parole); *id*. at Second Cause of Action, ¶¶ 419-430 (challenging "various" suspensions of benefit applications, related to the Davidson Memo and the December 2, 2025 USCIS Memo). And fifth, they seek to add a new cause of action claiming that the Administrative Procedure Act (APA) required notice and comment for all the "aforementioned agency actions." Doc. No. 213-2 at ¶¶ 469-477.

As set forth below, neither amendment nor supplementation should be permitted.

## ARGUMENT

The Court should deny Plaintiffs' motion to amend because it is procedurally improper in that it seeks to challenge two new and discrete agency actions—the USCIS Memo and the FRP FRN—that post-date Plaintiffs' original and operative pleadings and are based on different rationales (and different administrative records) than the agency actions at issue in those pleadings. The Court should also deny Plaintiffs' motion to amend in this well-advanced case because amendment is inefficient, prejudicial to Defendants, and undermines judicial economy and convenience. Amendment would also be futile as to the FRP FRN because the Secretary has unreviewable discretion to terminate parole under 8 U.S.C. § 1182(d)(5). Plaintiffs' request should also be denied for undue delay, to the extent it seeks to add an APA notice and comment claim to Plaintiffs' long-pending challenges to prior agency actions without any justification for waiting to assert this procedural APA claim until after moving for partial summary judgment.

**(A) Plaintiffs' motion to amend should be denied because it is procedurally improper.**

As noted above, an amendment "rest[s] on matters in place prior to the filing of the original pleading," while a supplemental pleading "sets forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *U.S. v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (citing Fed. R. Civ. P. 15). Here, there is no question that USCIS's December 2, 2025 memorandum and DHS's December 15, 2025 FRP FRN were transactions and occurrences that took place after the filing of Plaintiffs' original complaint in March of 2025.

Plaintiffs argue that amendment is permissible because the USCIS "Memo and FRP FRN simply constitute new administrative vehicles through which Defendants seek to impermissibly deprive parolees – on an expedited basis – of their right to seek lawful status and benefits." Doc. No. 213 at 2. But Plaintiffs cannot amalgamate discrete agency decisions into an alleged broader

policy. *Biden v. Texas*, 142 S. Ct. 2528, 2545 (2022) (holding that federal courts may not "postulat[e] the existence of an agency decision wholly apart from any agency statement . . . designed to implement that decision."); *Whitewater Draw*, 5 F.4th 997, 1012 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 713 (2021) (no APA review of a collection of individual actions pertaining to a single subject simply by labeling those individual actions a policy); *Arizona v. Mayorkas*, 584 F. Supp. 3d 783, 791 (D. Ariz. 2022), *appeal dismissed*, No. 22-15519, 2022 WL 6105386 (9th Cir. Sept. 12, 2022) (holding that State's challenge to a "collection of actions" as a "*de facto* program" that has encouraged migration and population growth is not actionable under the APA); *see also* 33 Charles Alan Wright et al., Fed. Prac. & Proc. Judicial Review § 8322 (2d ed., Apr. 2021 update) ("The APA authorizes challenges to specific actions—such as a particular rule or order. It does not authorize plaintiffs to pile together a mish-mash of discrete actions into a 'program' and then sue an agency to force broad policy changes to this 'program.'"). This case law underscores a consistent principle: courts evaluate discrete agency actions on their own terms, and procedural rules must be applied in a manner that preserves that distinction. Accordingly, Plaintiffs cannot support amendment under Rule 15 by trying to merge various post-complaint agency actions into a purported overarching policy; their new challenges must instead be raised, if at all, through a separate action. This is particularly so here, where, as discussed further below, this lawsuit is procedurally advanced, and the new agency actions are only tangentially related to the prior actions challenged. The USCIS Memo does not even facially relate to the parole programs that are at the heart of the original and operative complaints, and the FRP FRN did not terminate the parole of any existing named Plaintiff.

**(B) Amendment Does Not Serve the Interests of Judicial Economy and is Prejudicial.**

Plaintiffs' proposed Third Amended Complaint seeks to significantly expand this litigation by challenging two distinct agency actions—the USCIS Memo and the FRP FRN—that were not previously challenged in the Second Amended Complaint. Indeed, Plaintiffs unabashedly seek to amend their complaint; redefine their classes; add new plaintiffs; and file a new motion for injunctive relief, a supplemental motion to proceed via pseudonym, and a motion to expedite briefing as to all their motions. *See* Doc. Nos. 212, 213, 214, 215, 216, 218, 219, 220, and 221.

Where a proposed amendment "would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied." *Evans v. Thompson*, No. 14-13024-JCD, 2016 U.S. Dist. LEXIS 65487, at *5 (D. Mass. May 18, 2016) (quoting *Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991)). Indeed, courts in this District have repeatedly denied leave to amend where doing so would significantly broaden the scope of the litigation. *See Lowe v. Mills*, 718 F. Supp. 3d 69, 77 (D. Me. 2024), *aff'd sub nom. Lowe v. Gagné-Holmes*, 126 F.4th 747 (1st Cir. 2025), *cert. denied sub nom. Lowe v. Gagne-Holmes*, 145 S. Ct. 2795 (2025) ("[J]ustice does not require permitting the Plaintiffs to further amend the Amended Complaint to drastically broaden the scope of their claims to challenge all possible applications of [a] rule and the Department's authorizing statute."); *McLaughlin v. Bos. Harbor Cruises, Inc.*, No. 03-10905-GAO, 2006 WL 1998629, at *2 (D. Mass. July 17, 2006) (denying leave to amend where "amendment would substantially alter the nature of the case by adding two new plaintiffs who are said to bring claims on behalf of two putative classes"); *see also Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991) (denying leave because the amendment "would do far more than allow plaintiff to fully litigate all the legal dimensions of their initial action," but rather "permit plaintiff to transform

their case into something entirely new"); *Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72, 84 (D.D.C. 2018) (denying leave to file supplemental pleading that "significantly alter[s] the scope of this case").

The fact that the FRP FRN and the CHNV FRN both concern the termination of parole programs and therefore the same statutory provision should not lead to a different result. *See Seamon v. Upham*, 563 F. Supp. 396, 399 (E.D. Tex. 1983) (declining to permit supplementation because although "the controversy addressed in the proposed supplemental complaint involves the same parties and the same laws as the original dispute, it arises out of a completely discrete set of circumstances."); *Forte v. Cty. of Merced*, No. 1:11-CV-00318-AWI, 2014 WL 1747166, at *4 (E.D. Cal. Apr. 30, 2014) (denying motion to supplement because although the proposed claims and the original claims both concern 8 U.S.C. § 1983, they arise from entirely different facts).

This is especially true in APA cases, like this one, where the proposed amended pleading requires the filing of a distinct administrative record. *Anglers Conservation Network v. Pritzker*, No. CV 13-1761 (GK), 2014 WL 12776056, at *2 (D.D.C. Apr. 28, 2014). Here, because the Secretary's decision to terminate the FRP programs was separate and distinct from her earlier decision to terminate the CHNV parole programs—and was made many months later—each action is supported by its own administrative record. Indeed, Defendants already produced and filed the administrative record supporting the CHNV FRN. Doc. No. 203. Likewise, the USCIS Memo— issued about ten months after the Davidson Memo and other challenged adjudication holds—is also supported by its own rationales and would require a separate administrative record. Those rationales relate to national security and public safety concerns that are distinct from the rationales provided for the Davidson Memo and other prior adjudication holds. Under the APA, the court's review of merits issues must be "based on the record the agency presents to the reviewing court."

13

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Where amendment (or supplementation) requires the compilation and review of a separate administrative record, "few, if any, efficiencies" are served by amendment rather than the filing of a separate lawsuit. For example, the U.S. District Court for the District of Columbia observed in *Anglers Conservation Network*:

> Although the original and supplemental claims relate to the same general subject matter—namely, the failure to include the river herring and shad in the [Fishery Management Plan for Mackerel, Squid, and Butterfish]—they challenge two discrete decisions taken by two different decision-makers and involve two separate administrative records, each of which must be compiled and evaluated separately. Thus, permitting supplementation will create few, if any, efficiencies and is very likely to cause confusion by blurring the lines between two discrete decision-making processes undertaken by separate entities.

2014 WL 12776056, at *2. Other courts have adopted similar reasoning in denying motions to amend and supplement. *See, e.g.*, *Oregon Natural Resources Council, Inc. v. Grossarth,* 979 F.2d 1377, 1379–80 (9th Cir. 1992) (affirming dismissal and denying motion to supplement record with evidence of subsequent agency action involving matters which "should be considered in the first instance by a district court in separate litigation which can develop an independent record"); *City of Bedford v. Locke*, No. 10–10789–RWZ, 2011 WL 2636863, at *10 n.7 (D. Mass. June 30, 2011) (denying motion to supplement with new allegations related to different deficiencies in the same program because, among other reasons, "[a] new administrative record would have to be prepared, followed by new rounds of briefing, all subject to risk of further delay"); *Center for Food Safety v. Vilsack*, No. C–10–04038–JSW, 2011 WL 672802, at *3–5 (N.D. Cal. Feb. 8, 2011) (denying leave to supplement because, *inter alia*, the new allegations related to a new and distinct

agency action).

Because the USCIS Memo and FRP FRN are distinct agency actions from the Davidson Memo, Huffman Memo, Higgins Email, and CHNV FRN, judicial economy would not be advanced by litigating these two new agency actions together with the separate agency actions previously challenged in the SAC. Plaintiffs claim, however, that this case is still "at a preliminary stage." Doc. No. 213 at 7. Not so. This case has been pending for almost a year, a fully briefed motion to dismiss has been pending for more than six months, there have been two motions for class certification briefed and decided, two motions for preliminary injunctions briefed and decided, and two preliminary injunctions issued—one of which was already vacated by the First Circuit—and a fully (twice-)briefed partial motion for summary judgment filed. Plaintiffs base their statement that this case is still in its "preliminary stage" upon their contention that "the Court has yet to enter a scheduling order and discovery on the merits of the case has not yet commenced." Doc. No. 213 at 3. But this is an APA case. "APA review. . . involves neither discovery nor trial." *Atieh v. Riordan*, 727 F.3d 73, 76 (1st Cir. 2013). That is, discovery is typically not appropriate in an APA case where the claims are decided on the basis of the administrative record. *USA Grp. Loan Servs. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996). ("Discovery is rarely proper in the judicial review of administrative action."); *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 195 (3d Cir. 2006). And, at Plaintiffs' request, in May 2025, Defendants produced the administrative records for the actions challenged in the operative Complaint. *See* Doc. No. 199-1 at ¶ 3. In short, this case is by no measure in a "preliminary stage" as Plaintiffs claim, and given the history of this case, the prejudice here to Defendants is particularly acute.

Plaintiffs essentially suggest a lawsuit within a lawsuit. This case has already been divided into two tracks: claims relating to the CHNV FRN, and claims related to the pause on benefit

applications for aliens who are, were, or would be paroled under certain parole programs (as set forth in the Davidson Memo and the Higgins Email). Plaintiffs' proposed Third Amended Complaint would create a third, wholly independent track. This fragmented, multi-track litigation bears none of the hallmarks of judicial economy. *See EMW Women's Surgical Ctr., P.S.C. v. Sec'y of Kentucky's Cabinet for Health & Fam. Servs.*, No. 3:19-CV-178-DJH-RSE, 2022 WL 2824661, at *2 (W.D. Ky. Apr. 22, 2022) (denying motion to supplement where supplementation would "split this case into three tracks."); *Negron v. Turco*, 253 F. Supp. 3d 361, 363 (D. Mass. 2017) (Rule 15 should not be used to create a "a moving target of litigation" or "bombard the [c]ourt" with filing upon filing.").

Judicial economy is not served by amendment, and neither is convenience. The original claims in this lawsuit were supported by 21 class representatives. *See* Doc. No. 68, ¶ 294. But none of those class representatives can serve as class representatives with respect to the FRP FRN's termination of existing grants of parole. Indeed, that is precisely why Plaintiffs are seeking leave to add new parties to act as representatives for the new proposed class. Simply put, amendment unnecessarily confuses and complicates the issues in this case and delays its ultimate resolution. In June, Defendants moved to dismiss the Second Amended Complaint on threshold jurisdictional grounds. Doc. No. 113. If Plaintiffs are permitted to file the Third Amended Complaint, Defendants' motion to dismiss will no longer challenge the operative complaint, and thus, may need to be refiled and updated, rewinding this case to its start. Additionally, Plaintiffs' motion for partial summary judgment as to claims 1, 3, 5, 6, and 7 of their Second Amended Complaint, Doc. No. 196, would possibly also need to be re-filed and re-briefed—a *third time*—because Plaintiffs have materially altered their allegations in claims 1, 3, 5 and 7. *See generally* Doc. No. 212-2. When leave to amend is not sought until after "a summary judgment motion has been docketed,

the proposed amendment must be not only theoretically viable but also solidly grounded in the record." *Hatch v. Dep't for Child., Youth & Their Fams.*, 274 F.3d 12, 19 (1st Cir. 2001) (citing *Resolution Trust Corp. v. Gold,* 30 F.3d 251, 253 (1st Cir. 1994)). But here, as noted above, Plaintiffs' new challenges to the USCIS Memo and FRP FRN are not grounded in the record; on the contrary, they would require two entirely new administrative records.

Further, the five new proposed Plaintiffs and proposed class members they would represent will not be prejudiced if their motion to amend is denied—they can file a separate lawsuit under the local rules. *Nat'l Treasury Emps. Union v. Helfer*, 53 F.3d 1289, 1295 (D.C. Cir. 1995) (affirming denial where the amendment "bore only [a] tangential relationship to the original claim" and did not prejudice the plaintiff because the plaintiff "can file [the amendment as] an independent challenge"); *Solomon v. Blinken*, No. 2:23-cv-00219-NT, 2024 WL 127019, at *5 (D. Me. Jan. 11, 2024) ("Plaintiffs cannot… ask the Court to address an ever-evolving situation with endless new parties who take issue with the way the [Government] conducts its business. The proper way to bring new claims on behalf of new plaintiffs is to open a new civil case. That is what the Federal Rules of Civil Procedure contemplate and what this Court expects.")

Plaintiffs offer no explanation why their new claims challenging the FRP FRN (and the USCIS Memo) should be heard as part of this case other than that the claims relate the termination of a categorical parole termination and involve the same claimed injuries. But the USCIS Memo does not relate to parole and affects a different category of applicants than are represented by the current classes. Moreover, the mere fact that two actions involve exercises of the parole termination authority (or similar alleged injuries) does not justify artificially combining them into one lawsuit. Plaintiffs' logic for supplementation has no limiting principle, as one court has explained in a different context, *see Seamon*, 563 F. Supp. at 399:

> [O]ur adjudication of this case on the merits would signal a
> willingness on the part of this court to hear any and every Voting
> Rights Act case involving congressional districts that arises
> anywhere in Texas, at least until the original apportionment dispute
> is either resolved or mooted.

*Id.*

Just as the *Seamon* Court was not willing to hear "any and every Voting Rights Act case" simply because the original case concerned voting rights, neither should this Court hear "any and every" parole termination case simply because this case concerns parole termination. *Id.* "[W]hile leave to permit a supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action." *Polansky v. Wrenn*, No. 12–cv–105–PB, 2013 WL 1165158, at *2 (D.N.H. Feb. 22, 2013) (quoting *In re Exxon Valdez*, 318 Fed. Appx. 545, 547 (9th Cir. 2009); *see also Williams v. Lackawanna Cty. Prison*, No. 1:12–CV–02274, 2016 WL 1393383, at *2 (M.D. Pa. Apr. 8, 2016) ("A supplemental pleading cannot be used for the purpose of trying a new matter or a new cause of action."). Indeed, Plaintiffs acknowledge that as a case progresses, "a more rigorous standard than Rule 15(a)(2) may apply to determinations of a request to amend a complaint." Doc. No. 213 at 4, n.2; *Steir v*, 383 F.3d at 12 ("As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting."). Plaintiff does not meet that standard, and amendment should be denied.

Finally, Plaintiffs' proposed addition of a claim asserting that notice and comment was required for the already-challenged agency actions is unduly delayed. Plaintiffs provide no explanation for why they only now seek to assert this procedural APA claim, particularly after they themselves have already moved (twice) for summary judgment on their APA claims challenging the CHNV termination. *See Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc*., 412 F.3d 215, 231 (1st Cir. 2005) (affirming denial of motion to amend to add new legal theory

where plaintiffs failed to provide "some valid reason for [its] neglect and delay; "[w]here the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show substantial and convincing evidence to justify a belated attempt to amend a complaint.") (citations and quotations omitted); *Turner v. Liberty Mut. Ret. Benefit Plan*, 350 F.R.D. 1, 6 (D. Mass. 2025) (denying motion to amend to assert new legal theory after the parties had briefed three summary-judgment motions and a motion for class certification and after discovery had closed).

**(C) Amendment to challenge the FRP FRN is futile.**

Amendment is considered futile when the amended (or supplemented) pleading would not survive a motion to dismiss. *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006). That is the case here.

In 8 U.S.C. § 1252(a)(2)(B)(ii), Congress precluded review of DHS's decisions concerning the termination of parole programs, pauses on parole adjudication, and the termination of individual grants of parole. Section 1252(a)(2)(B)(ii) provides: "no court shall have jurisdiction to review ... any other decision or action ... the authority for which is specified ... to be in the discretion of the ... Secretary." The exercise of parole authority under § 1182(d)(5)(A)—which permits the Secretary to, "in [her] discretion" temporarily parole an applicant for admission into the United States and to terminate that parole "when the purposes of such parole ..., in [her] opinion ..., have been served"—is just such a "decision or action" that is subject to the bar. *See* 8 U.S.C. § 1182(d)(5)(A); *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003); *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010). Further, the statute commits this decision to the Secretary's discretion, rendering it unreviewable under the APA. 5 U.S.C. § 701(a)(2); *Webster v. Doe*, 486 U.S. 592, 599–600 (1988).  *See* Doc. No. 113.  Moreover, as with the decision to terminate

individual grants of CHNV parole, the First Circuit has held that Plaintiffs are unlikely to be succeed in establishing such decisions are either contrary to law or arbitrary and capricious. *See Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025).

## CONCLUSION

Amendment is a tool of judicial economy and convenience. Neither is achieved where the proposed amendment challenges new agency action, necessitates different administrative record(s), requires new class representatives, requires entirely new class definitions, and would result in the case proceeding on multiple different tracks. Accordingly, the Court should deny Plaintiffs' motion to amend the complaint.

DATED: December 31, 2025                 Respectfully submitted

                                         KATHERINE J.SHINNERS
                                         *Senior Litigation Counsel*

                                         By: /s/ *Elissa Fudim*
                                         ELISSA FUDIM
                                         *Trial Attorney*
                                         U.S. Department of Justice, Civil Division
                                         Office of Immigration Litigation
                                         *Counsel for Defendants*