YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

CARA E. ALSTERBERG
*Acting Assistant Director*

KATHERINE J. SHINNERS
*Senior Litigation Counsel*

ELISSA P. FUDIM
DANIEL SCHUTRUM-BOWARD
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-6073
Email: Elissa.P.Fudim@usdoj.gov
*Trial Attorneys*

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | Civil Action No. 1:25-cv-10495-IT |
| Svitlana Doe, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Kristi Noem, in her official capacity as ) | |
| Secretary of Homeland Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL HISTORY ........................................................... 2

LEGAL STANDARDS FOR CLASS CERTIFICATION AND MODIFICATION ..................... 6

ARGUMENT ................................................................................................................. 8

I.    Threshold Issues Preclude Consideration of Certification of Any Class. ........................ 8

II.   The Proposed Modified Early Revocation Parolee Class Lacks Commonality and
      Typicality. ........................................................................................................... 10

III.  The Proposed Modified Early Revocation Parolee Class Does Not Satisfy Rule 23(b)(2)'s
      Requirements ...................................................................................................... 15

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amanullah v. Nelson,*
    811 F.2d 1 (1st Cir. 1987) ............................................................................................. 8, 14, 16

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591, (1997) .................................................................................................................. 1

*Bertulli v. Indep. Ass'n of Cont'l Pilots,*
    242 F.3d 290 (5th Cir. 2001) ................................................................................................... 8

*Bryan v. Amrep Corp.,*
    429 F. Supp. 313 (S.D.N.Y. 1977) ......................................................................................... 7

*Connor B. ex rel. Vigurs v. Patrick,*
    272 F.R.D. 288 (D. Mass. 2011) ........................................................................................... 15

*Doe v. Noem,*
    152 F.4th 272 (1st Cir. 2025) ................................................................................................... 5

*Donovan v. Philip Morris USA, Inc.,*
    268 F.R.D. 1 (D. Mass. 2010) ............................................................................................... 17

*Eddlemon v. Bradley Univ.,*
    65 F.4th 335 (7th Cir. 2023) ................................................................................................... 7

*Food and Drug Admin. v. Alliance for Hippocratic Med.,*
    602 U.S. 367 (2024) ................................................................................................................ 14

*Forsythe v. Sun Life Fin., Inc.,*
    417 F. Supp. 2d 100 (D. Mass. 2006) ..................................................................................... 8

*Garcia v. E.J. Amusements of New Hampshire, Inc.,*
    98 F. Supp. 3d 277 (D. Mass. 2015) ..................................................................................... 10

*Gen. Tel. Co. of the Sw. v. Falcon,*
    457 U.S. 147 (1982) ................................................................................................................ 10

*Green v. Johnson,*
    513 F. Supp. 965 (D. Mass. 1981) ........................................................................................... 8

*Halliburton Co. v. Erica P. John Fund, Inc.,*
    573 U.S. 258 (2014) .................................................................................................................. 7

*In re Harcourt Brace Jovanovich, Inc. Sec. Litig.,*
    838 F. Supp. 109 (S.D.N.Y. 1993) ......................................................................................... 7

*In re Navy Chaplaincy*,
    306 F.R.D. 33 (D.D.C. 2014)................................................................................ 15

*Lemon v. Int'l Union of Operating Engr's, Local No. 139, AFL–CIO*,
    216 F.3d 577 (7th Cir. 2000) ............................................................................... 15

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990).............................................................................................. 11

*Norton v. Sw. Utah Wilderness All.*,
    542 U.S. 55 (2004) ............................................................................................... 11

*Quadrelli v. Moniz*,
    No. 20-cv-10685-ADB, 2020 WL 3051778 (D. Mass. June 8, 2020)................... 15

*Reid v. Donelan*,
    No. 13-cv-30125, 2018 WL 5269992 (D. Mass. Oct. 23, 2018) ............................ 7

*Reynolds v. Sheet Metal Workers, Local 102*,
    702 F.2d 221 (D.C. Cir. 1981) ............................................................................... 7

*Richardson v. Byrd*,
    709 F.2d 1016 (5th Cir. 1983) ............................................................................... 7

*Riva v. Ashland, Inc.*,
    No. 09-12074-DJC, 2011 WL 6202888 (D. Mass. Dec. 13, 2011) ......................... 7

*United States v. Texas*,
    599 U.S. 670 ........................................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................................. 6, 7, 10, 15

Statutes

8 U.S.C. § 1182(d)(5)(A).............................................................................................. 2, 8, 9

8 U.S.C. § 1254a ............................................................................................................... 13

## INTRODUCTION

The Court should deny Plaintiffs' motion to modify class definition in which they effectively request that the Court certify a new class of all individuals who have received parole through the Family Reunification Parole ("FRP") programs subject to the December 15, 2025 Federal Register Notice, "Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans," 90 Fed. Reg. 58032 ("FRP FRN" or "FRN"), for whom such parole will be terminated on January 14, 2026 (the "Early Revocation Parolee Class"). *See* Doc. Nos. 219, 220. This is not just a "modification" but a new class altogether, which, as Plaintiffs themselves acknowledge, must still independently meet the requirements of Rule 23. *See* Doc. No. 220 at 10–11. Plaintiffs seek an expedited ruling on class certification in aid of emergency relief from the FRP FRN's termination of existing grants of parole. *See* Doc. Nos. 216, 218.

Plaintiffs' proposed modified Early Revocation Parolee Class cannot be certified because Congress has precluded jurisdiction over challenges to the discretionary exercise of parole authority, like the FRP FRN. Because Plaintiffs cannot satisfy threshold jurisdictional requirements, the Court should deny Plaintiffs' motion. Indeed, Plaintiffs again seek classwide relief against an FRN that terminates the grant of discretionary parole under the FRP programs; as before, recognizing that individuals cannot obtain relief to compel reinstatement or grants of parole on an individual basis because such discretionary acts are unreviewable, Plaintiffs instead attempt to obtain similar relief by enjoining or setting aside the FRN on a classwide basis. But Rule 23 is a procedural rule that cannot be used to circumvent these substantive limitations on individual relief. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, (1997) (reiterating that Rule 23 "shall not abridge, enlarge or modify any substantive right").

1

To be sure, these limits on individualized relief likewise defeat Plaintiffs' request for class treatment. Because the U.S. Department of Homeland Security (DHS) retains underlying discretion concerning parole, an injunction or declaratory judgment against the FRN would not provide relief to all members of the proposed modified class and thus the requirements for certifying and maintaining an injunctive-relief class under Rule 23(b)(2) are not met.

Even assuming the Court had jurisdiction such that it could properly modify the class definition of the Early Revocation Parolee Class, the Court should still deny Plaintiffs' motion for several reasons. First, the putative representative Plaintiffs of the proposed modified class lack Article III standing. Second, the proposed modified class lacks commonality and typicality. Finally, the proposed modified class does not satisfy the specific requirements of Rule 23(b)(2). In sum, the proposed class does not meet the requirements of Rule 23, and this Court should deny Plaintiffs' motion.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs brought this lawsuit challenging various Executive Branch actions that relate broadly to programs governing requests for parole into the United States by certain categories of individuals under 8 U.S.C. § 1182(d)(5)(A). Second Am. Compl., Doc. No. 68 at ¶¶ 3, 158–200. The Individual Plaintiffs claim to be parole recipients or supporters of parole requests under various parole programs. *See* Doc. No. 68 at ¶¶ 3, 16–38. On December 29, 2025, Plaintiffs filed a motion for leave to file a third amended complaint, which Defendants opposed. Doc. Nos. 212, 213, 226.  As of the filing of this opposition, the Court has not ruled on the motion to amend. As relevant to this class certification motion, the proposed amendment seeks to add claims challenging the FRP FRN and to add the following proposed Plaintiffs, whom Plaintiffs seek to add as class representatives, who are parole recipients under the FRP programs: John Doe, David Doe, Jose

Doe, Francisca Doe, and Luciana Doe. *See* Doc. Nos. 212-1, 220 at 6.

Plaintiffs' lawsuit challenges, *inter alia*, agency memos or actions concerning the pause or termination of certain parole programs administered by DHS over the past several years: the parole processes for nationals of Cuba, Haiti, Nicaragua, and Venezuela ("CHNV"); Uniting for Ukraine ("U4U") parole; Operation Allies Welcome ("OAW"); certain processes for Family Reunification Parole ("FRP"); Military Parole-in-Place ("MPIP'); and the Central American Minors program ("CAM"). Doc. No. 68 at ¶¶ 68–188; Doc. No. 212-2 at ¶¶ 74–246.

On January 20, 2025, in accordance with several Executive Orders, Acting Homeland Security Secretary Benjamine Huffman issued a memorandum directing DHS to review over a 60-day period its existing parole policies and instructing DHS and its subagencies, following that review, to "pause, modify or terminate" any parole policy that does not comply if it "was not promulgated pursuant to the procedural requirements of the [APA] or any comparable scheme," DHS can do so in a manner that protects any "legitimate reliance interests," and "[d]oing so is otherwise consistent with applicable statutes, regulations, and court orders." Huffman Memo, Doc. No. 41-1 at 3.

On March 25, 2025, DHS published an FRN terminating the CHNV parole programs and providing notice to aliens in the United States under the CHNV parole programs, whose parole has not already expired by April 24, 2025, that their parole would terminate on April 24, 2025, unless the Secretary made an individual determination to the contrary. Doc. No. 71-1 at 2 (90 Fed. Reg. at 13,611).

On December 15, 2025, DHS published an FRN entitled "Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans," 90 Fed. Reg. 58032, which terminates the FRP programs, including

by terminating active grants of parole received under the FRP programs on January 14, 2026. *See* Doc. Nos. 219, 220. Background on the FRP programs is set forth in Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order filed concurrently. There are two exceptions to the termination of parole grants under the FRP programs: (1) the alien filed an application for adjustment of status that is postmarked as of December 15, 2025, that is still pending adjudication as of December 15; or (2) the Secretary determines otherwise on a case-by-case basis. 90 Fed. Reg. at 58032–33. If the alien has a pending application for adjustment of status, the parole will remain valid until either the initial expiration date, or the completion of the adjudication of the adjustment application. *Id.* at 58043. If the adjustment application is denied before the parole expires, the alien's parole will thus terminate as of the date of denial. *Id.*

Plaintiffs assert that these actions are *ultra vires*, Doc. No. 68 at ¶ 357; Doc. No. 212-1 at ¶ 462, violate constitutional due process, Doc. No. 68 at ¶ 362; Doc. No. 212-1 at ¶ 467, and violate the Administrative Procedure Act (APA) because they allegedly are based on an erroneous interpretation of the parole statute or fail to adhere to the terms of the statute or regulations, exceed statutory authority, *id.* at ¶ 328, and are arbitrary and capricious, Doc. No. 68 at ¶¶ 315, 324, 337–40, 345–46, 350; Doc. No. 212-1 at ¶¶ 408, 415, 434–42, 454–60.[1] Plaintiffs also now seek to add a claim asserting that notice and comment rulemaking was required before Defendants could terminate parole or manage the processing of immigration benefits. *See* Doc. No. 212-1 at ¶ 470–77.

---

[1] The operative and Third Amended Complaints also challenge certain pauses on adjudications of immigration benefits (only some of which relate to some parole programs), but Plaintiffs make no attempt to show that these pauses—to the extent they remain in existence—apply uniformly to the class they seek to certify here. *See* Doc. No. 220 at 13 (claiming that the "common contention" relates to Defendants' termination of FRP parole). Nor can they.

On April 14, 2025, the Court granted a classwide stay of the March 25 CHNV FRN, insofar as it terminated the existing grants of parole and work authorization of individuals paroled into the United States through CHNV Parole processes. *See* Doc. No. 97. The Court accordingly certified an "Early Revocation Parolee Class" under Rule 23(b)(2), consisting of individuals with parole subject to the CHNV FRN who are within the United States and do not opt out of the class to seek relief in separate litigation. *See id.* at 28–31; *see also* Doc. No. 98; Doc. No. 107 at 42, 44. That classwide stay was later reversed by the First Circuit. *Svitlana Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025).

Plaintiffs now seek modification of the Early Revocation Parolee Class to include all individuals within the United States who have received parole under the FRP programs that is subject to the FRP FRN's termination of grants of parole, and who do not opt out of the class to pursue separate litigation. Specifically, the Plaintiffs seek to modify the Early Revocation Parolee Class such that it is comprised of:

> All individuals who have received a grant of parole that is subject to the *Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, 90 Fed. Reg. 13611 (Mar. 25, 2025), or subject to the *Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58032 (Dec. 15, 2025), rescinding individual grants of parole on a categorical and *en masse* basis.

Doc. No. 220 at 14. For purposes of the current motion, Plaintiffs identify the following Plaintiffs as proposed representatives of the new portion of the modified Early Revocation Parole Class: John Doe, David Doe, Jose Doe, Francisca Doe, and Luciana Doe ("FRP Plaintiffs"). Doc. No. 220 at 15. Each of these proposed Plaintiffs assert that their parole will terminate on January 14, 2026, as a result of the FRP FRN. *See* Doc. No. 212-1 at ¶¶ 358–84. However, Francisca Doe asserts that her immigration lawyer submitted adjustment applications for her and her family by

mail on December 15, 2025. *See* Doc. No. 214-3 at ¶ 15. Although she asserts that her application was submitted too late, *see id.*, it is unclear why this is so if her application was postmarked on December 15, 2025, *see* 90 Fed. Reg. at 58032. USCIS is unable to independently verify her assertions without identifying information.

The Court has granted expedited briefing by January 6, 2026, for purpose of Plaintiffs' request for a temporary restraining order or emergency stay of agency action. *See* Doc. No. 229. The Court also has allowed Defendants to file additional arguments in opposition to a preliminary injunction and to class certification by January 13, 2026. *See id.* Defendants submit this opposition now in opposition to class certification for purposes emergency relief, but reserve any and all arguments—including but not limited to the adequacy of the proposed named representatives and of class counsel—that may be raised in subsequent briefing as permitted by the Court.

## LEGAL STANDARDS FOR CLASS CERTIFICATION AND MODIFICATION

The class action is a departure from "the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). To justify such departure, proposed class representatives must possess the same interest and same injury as the class members. *See id.* "[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance'" with Rule 23 and "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required[.]" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores*, 564 U.S. at 350*).* In addition to satisfying these Rule 23(a) prerequisites, a plaintiff must demonstrate that the action fits within at least one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b)(1)–(3). Here, Plaintiffs seek certification under Rule 23(b)(2), which requires the movant to show that "the party opposing the class has acted or refused

to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Courts must rigorously analyze Rule 23's requirements, *Wal-Mart Stores*, 564 U.S. at 350–51, which requires more than accepting Plaintiffs' claims as pleaded, *see Eddlemon v. Bradley Univ.*, 65 F.4th 335, 339 (7th Cir. 2023). Plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23," otherwise certification must be denied. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

In deciding whether to amend a class, courts consider "'the criteria of Rule 23(a) and (b) in light of factual and legal developments' and 'if the parties or the class would be unfairly prejudiced by a change in proceedings.'" *Reid v. Donelan*, No. 13-cv-30125, 2018 WL 5269992, at *3 (D. Mass. Oct. 23, 2018) (quoting *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 115 (S.D.N.Y. 1993) (denying motion to amend class action order)). The district court, under Rule 23(c)(1), is charged with "monitoring its class decisions in light of the evidentiary development of the case." *Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983), *cert. denied*, 104 S. Ct. 527 (1983); *see Reynolds v. Sheet Metal Workers, Local 102*, 702 F.2d 221, 226 (D.C. Cir. 1981).

The court may modify the class, establish subclasses, or decertify as appropriate in response to factual development. *See Richardson*, 709 F.2d at 1019; *Bryan v. Amrep Corp.*, 429 F. Supp. 313, 317 (S.D.N.Y. 1977). Thus, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class." Fed. R. Civ. P. 23(c)(5). Nevertheless, any modified class or new subclass must "independently meet the requirements of Rule 23 to maintain a class action." *Riva v. Ashland, Inc.*, No. 09-12074-DJC, 2011 WL 6202888, at *12 (D. Mass. Dec. 13, 2011). If a proposed modified class or subclass does not itself meet the requirements of Rule 23,

certification of that class is not appropriate. *See Green v. Johnson*, 513 F. Supp. 965, 976 (D. Mass. 1981) ("The subclass of inmates at Franklin probably would not independently satisfy the requirements of F.R.Civ.P. 23(a) and their claims would be left in isolation.").

## ARGUMENT

I.    **Threshold Issues Preclude Consideration of Certification or Modification of Any Class.**

Before this Court may consider whether Plaintiffs' proposed modified class is capable of certification, the Court must first determine that the FRP Plaintiffs have Article III standing. "This constitutional threshold must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by Rule 23." *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001) (cleaned up); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 118 (D. Mass. 2006) (standing is a "threshold" issue that should be resolved before class certification) (collecting cases).

The proposed FRP Plaintiffs lack standing to challenge the FRN. Like the CHNV Plaintiffs, these Plaintiffs allege a prospective injury: loss of employment authorization, the need to return to their own countries, accrual of unlawful presence, potential removal proceedings, and collateral legal consequences. Doc. No. 212-1 ¶ 472; *id.* ¶ 368 Doc. No. 218 at 25. But the FRP Plaintiffs' claimed injuries are not traceable to, and cannot be redressed by, relief enjoining or declaring unlawful the FRP FRN. Parole is discretionary and no one is entitled to it. *See* 8 U.S.C. § 1182(d)(5)(A); *see also Amanullah v. Nelson*, 811 F.2d 1, 14 (1st Cir. 1987). Indeed, the FRP programs themselves were clear that parole terminations are entirely discretionary. *See, e.g.*, *Implementation of a Family Reunification Parole Process for Colombians*, 88 Fed. Reg. 43591, 43593 (July 10, 2023) ("DHS may terminate parole upon notice in its discretion at any time."); *Implementation of a Family Reunification Parole Process for Ecuadorians*, 88 Fed. Reg. 78762,

78765 (Nov. 16, 2023) (same). In any event, the termination of the FRP programs does not prevent the FRP Plaintiffs, like the other Plaintiffs, from requesting parole outside of that program by filing a Form I-131, as is contemplated by the FRP FRN. *See* 90 Fed. Reg. at 58042. In other words, to the extent any of the FRP Plaintiffs is harmed, that harm is not traceable to the challenged agency action terminating FRP programs, but rather to pre-existing circumstances.

Indeed, these Plaintiffs' injuries are not redressable by an order setting aside, declaring unlawful, or enjoining the implementation of the FRP FRN. *See generally* Doc. No. 68 at 101 (Prayer for Relief regarding FRNs); Doc. No. 212-1 at 135–37; *see also* Doc. No. 89 at 13. Enjoining or declaring that the FRN is unlawful would not remedy the alleged harms the FRP Plaintiffs assert, because it would not create any enforceable legal obligations toward them or their class members concerning their continued parole or any additional pending applications for benefits. It would do nothing to change the fact that federal officials possess the same underlying discretion absent the FRN to terminate the FRP Plaintiffs' individual grants of parole. *See* Doc. No. 42 at 9 (citing *United States v. Texas*, 599 U.S. 670, 691 (Gorsuch, J., concurring)). Moreover, the FRP FRN makes clear that Plaintiffs may ask DHS for a new period of parole outside of the terminated programs, as DHS also retains its statutory authority to grant parole, at its discretion, based on the alien's demonstration of urgent humanitarian reason or significant public benefit specific to his or her individual circumstances, *see* 8 U.S.C. § 1182(d)(5)(A).

For these reasons, the FRP Plaintiffs lack standing. But standing is not the only threshold jurisdictional impediment to adjudicating class certification. Here, the jurisdictional bar in 8 U.S.C. § 1252(a)(2)(B)(ii) also precludes review of Plaintiffs' challenge to the FRP FRN and to the termination of each grant of parole. *See* Doc. No. 233, at 9-10; Doc. No. 89 at 14–15; Doc. No. 114 at 20. Because this Court lacks jurisdiction, it need not—and should not—adjudicate

Plaintiffs' class certification motion.

## II. The Proposed Modified Early Revocation Parolee Class Lacks Commonality and Typicality.

The differences among the proposed modified Early Revocation Parolees Class members' claims to relief preclude a finding of commonality or typicality. Rule 23(a)(2) requires questions of law or fact common to the class. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered *the same injury*.'" *Wal-Mart*, 564 U.S. at 350 (citation omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Instead, the "claims must depend upon a common contention" that "is capable of classwide resolution—which means that [the] determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Rule 23(a)(2) "is easy to misread, since [a]ny competently crafted class complaint literally raises common questions." *Wal-Mart Stores*, 564 U.S. at 349, 351 (citation and quotes omitted). "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350.

The commonality prong tends to merge with the requirement of typicality under Rule 23(a)(3), *see id.* at 350 n.5, because "the central inquiry in assessing whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class," *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015).

As an initial matter, the modified Early Revocation Parole Class proposed by Plaintiffs lacks commonality and typicality, because the class members are challenging two different agency actions. As Plaintiffs propose to modify the class, the class would include two discrete, non-

overlapping groups of people subject to two discrete termination decisions: former CHNV parolees and FRP parolees. The CHNV parole program terminations and the FRP program terminations are two different agency actions, each supported by their own rationale and administrative record, and each of which must be evaluated on its own under the APA, including for claimed violations of constitutional due process. As the Supreme Court has made clear, APA review necessarily involves "circumscribed, discrete agency actions." *Norton v. Sw. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). Plaintiffs may not amalgamate different actions for purposes of APA review. It is "entirely certain" that an "entire 'program'—consisting principally of the many individual actions referenced in the complaint, and presumably actions yet to be taken as well—cannot be laid before the courts for wholesale correction under the APA." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 892–93 (1990). Because the new proposed modified Early Revocation Parole Class seeks to challenge at least two different agency actions, there is no common question that can drive resolution of the litigation for the proposed modified Early Revocation Parole Class. Indeed, Plaintiffs do not seriously claim commonality as between those two groups, focusing instead on commonality among those impacted by the FRP termination FRN. *See* Doc. No. 220 at 13 (claiming the "common contention" that Defendants terminated the *FRP* programs in violation of the APA, statutory authority, and the Due Process Clause). For these same reasons, the proposed representatives of the FRP FRN lack typicality with the CHNV class members and representatives, and vice versa.

    The new portion of the proposed modified Early Revocation Parolee Class challenges the FPR FRN, which terminates prior grants of parole. The crux of the newly-proposed class's injury is that they will lose employment authorization and need to return to their countries of origin, or if they do not, they will accrue unlawful presence, face potential removal proceedings, and sustain

other collateral legal consequences. Doc. No. 212-1 ¶ 472 (citation omitted); *id.* ¶ 368; Doc. No. 218 at 25; Doc. Nos. 214-4 ¶¶ 11, 20-21 (Declaration of John Doe); 214-5 ¶18 (Declaration of Jose Doe); 214-3 ¶ 10 (Declaration of Francisca Doe); 214-2 ¶¶ 11, 17 (Declaration of David Doe); 214-6 ¶ 8 (Declaration of Luciana Doe).

Plaintiffs posit that common questions exist about whether the challenged agency actions are contrary to law under the APA. Doc. No. 220 at 17–19. But any determination on the legal justification for the challenged agency actions cannot drive the resolution of each class member's claim to relief. Notably, Plaintiffs have not yet informed Defendants of the putative representative Plaintiffs' identities and, therefore, Defendants are unable to investigate their particular circumstances and immigration records as they relate to Rule 23's commonality and typicality requirements.[2]

Nevertheless, the FRP Plaintiffs claim that the "common problem" they face is, *inter alia*, loss of employment, and having to leave the United States voluntarily or risk removal. Doc. No. 220 at 19; Doc. No 212-1 ¶ 472. As an initial matter, the fact that these class members' parole will end early does not give rise to a viable injury or claim to relief, because parole is discretionary and no one is entitled to it. *See supra* § I. The FRP programs themselves were clear that parole terminations are entirely discretionary, but FRP Plaintiffs may nonetheless request parole outside of those programs by filing a Form I-131. *See supra* § I.

But, to the extent any class member has standing, commonality is lacking as the class, as currently defined, includes individuals in different circumstances. For example, the class includes individuals whose priority dates occurred prior to December 15, 2025, who have already applied

---

[2] The putative representative Plaintiffs seek to proceed under pseudonym, and their motion with that request is pending. *See* Doc. No. 214.

for, and been denied adjustment of status. As to those individuals, the termination of parole is merely a culmination of the overall FRP programs and they cannot claim the same legal injury or reliance interests as those who are still awaiting an available visa to apply for adjustment of status. Likewise as to individuals in the class whose adjustment applications have already been filed and may be denied prior to January 14, 2026.

The class as defined also includes individuals who, though their parole is current, may be in Section 240 removal proceedings for any number of reasons, including the commission of crimes. The class also includes individuals who have another basis for remaining in the United States notwithstanding their parole termination. For example, some individuals in the proposed class were granted TPS. 8 U.S.C. § 1254a. The class also may include individuals, who, since their arrival in the United States, have married United States citizens or lawful permanent residents, who may now qualify as an immediate relative eligible for a visa without awaiting a priority date. The class also includes individuals who have been granted employment-based visas. And Cuban parolees and their immediate family members are generally eligible to apply for adjustment of status under the Cuban Adjustment Act one year after their parole, regardless of whether a visa is available in their original preference category or any accrual of unlawful presence. At least one individual in the proposed class received a certificate of citizenship, verifying that they derived or obtained U.S. citizenship from a parent. Finally, FRP parolees are not precluded from filing other benefit requests, such as the I-914, I-918, and/or I-360, if they are victims of crime, trafficking, or domestic abuse. For each of these categories of individuals, the termination of their FRP parole would have different significance.

In addition, the class includes both individuals whose priority date is likely to become current during their current period of parole, and those whose priority date is highly unlikely to

become current during their current period of parole. The latter group of individuals would thus require a discretionary grant of re-parole to remain in the United States until their visa is available. Such re-parole was never guaranteed and remains discretionary.

The variations in the attenuation of the injury among the FRP Plaintiffs and their putative class defeat commonality and typicality, particularly because class certification is sought in aid of emergency relief requiring a showing of irreparable harm. *See Food and Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (to show standing, the "links in the chain of causation . . . must not be too speculative or too attenuated").

Moreover, to the extent that the new portion of the proposed modified Early Revocation Parolee Class claims an injury based on an argument that they filed applications for immigration benefits (of whatever kind), which applications were paused as a result of actions challenged in this case, such that their parole will not expire on January 14 before the adjudication of their benefits applications may be decided—*see* Doc. No. 212-1 at ¶ 388 (Proposed Third Amended Complaint)—this is not a common injury among the class or even among the proposed Class Representatives. Not all new proposed Early Revocation Parolee Class members have pending requests for immigration benefits or eligibility for such benefits. As Defendants similarly argued previously, Plaintiffs' assertion that a pause (or hold) on adjudication of certain benefits, or discretionary termination of said benefits, is "contrary to the statutory regime" cannot be decided on a classwide basis because those benefits are subject to different statutes. Doc. No. 85 at 19. And the question of whether any current adjudication hold has unreasonably delayed adjudication is subject to the highly case-specific analysis of the *TRAC* factors, which would require a different analysis for each class member, rendering class treatment inappropriate. *See id.* at 18–20.

III.    **The Proposed Modified Early Revocation Parolee Class Does Not Satisfy Rule 23(b)(2)'s Requirements.**

A class may be maintained under Federal Rule of Civil Procedure 23(b)(2) only if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Quadrelli v. Moniz*, No. 20-cv-10685-ADB, 2020 WL 3051778, at *6 (D. Mass. June 8, 2020) (quoting *Wal-Mart*, 564 U.S. at 360 (emphasis added)); *see also In re Navy Chaplaincy*, 306 F.R.D. 33, 56 (D.D.C. 2014) (holding class not maintainable under Rule 23(b)(2)). "By virtue of its requirement that the plaintiffs seek to redress a common injury . . . Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive." *Lemon v. Int'l Union of Operating Engr's, Local No. 139, AFL–CIO*, 216 F.3d 577, 580 (7th Cir. 2000); *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 297 (D. Mass. 2011). The key to a (b)(2) class is that "the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360. Rule 23(b)(2) is not satisfied when each class member "would be entitled to a different injunction or declaratory judgment." *Id.*

Plaintiffs claim that Rule 23(b)(2) is satisfied because "[t]he appropriate remedy [] is uniform among all class members: vacatur of the challenged agency action (i.e.[,] the FRN) at issue, and restoration of the *status quo ante* with the reinstatement of the authorized periods of parole." Doc No. 220 at 24. But, as explained, that is not correct. *See supra* §§ I, II. This relief will not redress the injuries of all class members.

As noted above, the proposed modified Early Revocation Parolee Class may include those who filed requests for other immigration benefits, those who have been granted TPS, those who

have applied for or been granted asylum, those who have applied for and already been denied adjustment of status, those who have already been placed in removal proceedings, those who remain eligible to adjust of status even if they accrue unlawful presence, and those who have not. These are meaningful distinctions as to whether the injunction or declaratory judgment sought in this action could possibly provide relief to each member of the class.

The crux of the modified Early Revocation Parolee Class's claimed injury—and of their claims that the FRP FRN is unlawful—is that some of these individuals may lose employment and will have to self-deport, lest they accrue unlawful presence or risk being placed in expedited removal or § 1229a removal proceedings. *See, e.g.*, *supra* at 7. But no single injunction or declaratory relief against the challenged FRN can prevent these events for each class member. Parole is, by definition, temporary, and paroled arriving aliens like putative class members are subject to placement in removal proceedings or expedited removal notwithstanding the FRP FRN. This is true even if he or she has an approved Form I-130 or a pending USCIS benefits request, though the FRP FRN notes that those with a pending benefit request filed before the publication of the FRN on December 15, 2025, will not be among those prioritized for removal. 90 Fed. Reg. at 58043.

For this reason, the proposed modified Early Revocation Parolee Class will not be affected in the same way by relief pertaining to the challenged guidance. For most, to obtain relief that will even arguably stem their alleged series of harms—risk of job or housing loss, risk of unlawful presence accrual, inability to obtain a future immigration benefit, risk of being placed in some form of removal proceedings, and risk of being removed—modified Early Revocation Parolee Class members would need to file individual requests for parole through the Form I-131 process, or actions for unreasonable delay in adjudication of other immigration benefits, or dispute their

removal and seek relief as available in the context of the applicable procedures.

In fact, Plaintiffs acknowledge that unidentified class members may seek individual relief. Doc. No. 220 at 14 ("Plaintiffs would exclude from the class definition any individuals or groups who choose to opt out of the class in order to seek relief in separate litigation."). But under Rule 23(b)(2), "[c]lass members have no need to opt out because the best result absent class members could receive is the same relief they would have received as class members." *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 7 (D. Mass. 2010). The fact that the "best result" an absent class member could receive is different from the relief sought in this case, demonstrates why certification under Rule 23(b)(2) is improper.

## CONCLUSION

The Court should deny Plaintiffs' motion to modify the class definition.

Dated: January 6, 2026                    Respectfully submitted,

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

CARA E. ALSTERBERG
*Acting Assistant Director*

KATHERINE J. SHINNERS
*Senior Litigation Counsel*

DANIEL SCHUTRUM-BOWARD
*Trial Attorney*

By: */s/ Elissa P. Fudim*
ELISSA P. FUDIM
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2026, I electronically filed this motion with the Clerk of the Court for the United States Court of for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Elissa P. Fudim*
ELISSA P. FUDIM
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

*Counsel for Defendants*