UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, et al., | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | *   Civil Action No. 1:25-cv-10495-IT |
| KRISTI NOEM, in her official capacity as | * |
| Secretary of Homeland Security, et al., | * |
| | * |
| Defendants. | * |

TEMPORARY RESTRAINING ORDER

January 10, 2026

TALWANI, D.J.

Pending before the court is Plaintiffs' <u>Emergency Motion for a Temporary Restraining Order, Preliminary Injunction and/or Stay of *En Masse* Truncation of Family Reunification Parole</u> [Doc. No. 216]. Plaintiffs seek, on an emergency basis, a stay of the *Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58032 (Dec. 15, 2025) ("the Federal Register Notice"), insofar as it revokes previously granted parole and work authorization issued to noncitizens paroled into the United States pursuant to various Family Reunification Parole processes (the "FRP parole programs") prior to the noncitizens' originally stated parole end dates. For the reasons set forth below, the court grants an emergency fourteen-day stay and sets an expedited briefing schedule as to the request for a longer stay and/or preliminary injunction.

In evaluating a motion for a temporary restraining order, the court considers four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Esso Standard Oil Co. v. Monroig–Zayas, 445 F.3d 13, 17–18 (1st Cir.2006) (quoting Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)); see also Bourgoin v. Sebelius, 928 F.Supp.2d 258, 267 (D. Me. 2013) (standard for issuing TRO is "the same as for a preliminary injunction").

The Federal Register Notice, issued by the Department of Homeland Security ("DHS") on December 15, 2026, announced that the "temporary parole period of aliens who have been paroled into the United States under [nine Family Reunification Parole ("FRP")] programs, and whose initial period of parole has not already expired by January 14, 2026[,] will terminate on that date[,]" unless the Secretary of Homeland Security determines otherwise on a case-by-case basis. 90 Fed. Reg. 58032–33.[1] The Federal Register Notice provides further that noncitizens "without a lawful basis to remain in the United States following the termination of their parole must depart the United States before their parole termination date." Id. at 58033. It also warns that, following the January 14, 2026 termination, "DHS generally intends to promptly remove aliens, consistent with law, who entered the United States under the FRP programs and who stay in the United States beyond their parole termination date with no lawful basis to remain in the United States." Id. at 58043.

The Federal Register Notice acknowledges parolees' right to written notice of the termination. Id. at 58043 n.89; id. at 58045 n.100 (noting that when DHS finds that certain conditions are met, "parole shall be terminated upon written notice to the alien") (quoting and

---

[1] The Federal Register Notice does not explain how or through what process the Secretary will make that determination prior to the January 14 terminations. The Federal Register Notice also excluded from termination parolees who have filed a Form I-485, Application to Register Permanent Residence or Adjust Status, that has had been postmarked or electronically filed by December 15, 2025, and that is still pending adjudication as of that date. 90 Fed. Reg. 58032–33.

2

adding emphasis to 8 C.F.R. § 212.5 (e)(2)(i)). DHS asserts that "[t]his Federal Register notice serves as notice of the termination of the FRP programs and satisfies the requirement that DHS provide written notice upon the termination of parole." Id. at 58045.

DHS is mistaken. "Written notice" not only has a plain meaning, but the regulation explicitly requires that written notice must be provided "to the alien[.]" 8 C.F.R. § 212.5 (e)(2)(i).[2] This instruction indicates that the notice must be directly communicated to the parolee. Publication of the Federal Register Notice does not satisfy this requirement.

The parties dispute whether DHS has provided other written notice. The Federal Register Notice opined that "all FRP parolees under the modernized programs should have a USCIS online account" and that "DHS will . . . provide individual notice to each parolee through their USCIS online account." 90 Fed. Reg. 58045 (emphasis added).[3] But nothing in the record before the court suggests that most, let alone all, parolees do in fact have such accounts or when notice via such accounts was provided to the parolees. Plaintiffs' counsel reported at the TRO hearing on January 9, 2026, that class members who reported receiving electronic notice had received such notice weeks after the Federal Register Notice issued. Nor is it clear that notice through USCIS's online accounts would be sufficient to meet the regulation's written notice requirement for unrepresented parolees, where the regulation referenced in the Federal Register Notice, see id. at 58045 n.102, provides for electronic notice only for represented parties. 8 C.F.R. § 103.2(b)(19)(ii)(B).

---

[2] An "alien" is "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

[3] The "modernized programs" are FRP programs for noncitizens from Columbia, Cuba, Ecuador, El Salvador, Guatemala, Haiti, and Honduras announced or updated in 2023. 90 Fed. Reg. 58032.

3

Defendants also maintain that, "[f]or legacy FRP parolees, USCIS <u>will</u> provide personal, individual notice by mail if the parolee does not have a myUSCIS account." 90 Fed. Reg. at 58045 (emphasis added).[4] Again, nothing in the record suggests that any mailings have yet occurred. David Doe Decl. ¶ 14 [Doc. No. 214-2] ("I keep my contact information current with USCIS, and I check the MyUSCIS portal regularly—and I have continued to do so since Dec. 15, 2025. I have not received any emails, notices, or other communications directly from USCIS about the announcement."); Francisca Doe Decl. ¶ 13 [Doc. No. 214-3] ("I have not received any notification from the government, either online or by mail, telling me our parole would be ending in January 2026[.]"); John Doe Decl. ¶ 19 [Doc. No. 214-4] ("I still have not received any notice of this termination in the mail or in my MyUSCIS account."); Jose Doe Decl. ¶ 18 [214-5] ("I have not received any message from the government, in my online USCIS account or through the mail, about this announcement.").

Based on a preliminary review of the issue for purposes of a temporary restraining order, the court finds that Plaintiffs have a substantial likelihood of success on their argument that the Defendants failed to provide proper notice of DHS's decision to revoke grants of parole under the FRP program in contravention of DHS's own regulation, the Administrative Procedure Act, 5 U.S.C. § 706 (2)(D), and the Due Process Clause of the United States Constitution.

Plaintiffs indicate that revocation of parole will pose irreparable harm to Plaintiffs and the members of the putative class, requiring them to leave the country or risk accruing unlawful presence and thus threatening any future possibility of becoming lawful permanent residents and United States citizens. Mem. ISO Emergency Motion for a TRO 19–20 [Doc. No. 218]. This

---

[4] The legacy programs are the Cuban Family Reunification Parole program and the Haitian Family Reunification Parole program. <u>Id.</u> at 58032.

harm is compounded by the absence of notice of the revocation. Id. at 20. Plaintiffs have shown irreparable harm for the purposes of a temporary emergency stay.

Balancing the parties' interests, the court finds a grant of an emergency stay is warranted. While Plaintiffs and class members risk accruing unlawful presence should the revocation take place on January 14, 2026, Defendants' harms will be minimal during the pendency of the two-week stay.

For the foregoing reasons, Plaintiffs' Emergency Motion for A Temporary Restraining Order, Preliminary Injunction and/or Stay of En Masse Truncation of Family Reunification Parole [Doc. No. 216] is GRANTED in part as follows. The court grants an emergency fourteen-day stay of the *Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58032 (Dec. 15, 2025) insofar as it revokes previously granted parole and work authorization issued to noncitizens paroled into the United States pursuant to the FRP programs prior to the noncitizens' originally stated parole end dates.

Defendants are directed to produce the administrative record by January 13, 2026, and to file any opposition to Plaintiffs' Motion for a Preliminary Injunction and/or Stay of *En Masse* Truncation of Family Reunification Parole [Doc. No. 216] by January 15, 2026. Plaintiffs are directed to file any reply to Defendants' opposition by January 20, 2026.

IT IS SO ORDERED.

January 10, 2026                              /s/ Indira Talwani
                                                      United States District Judge