IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. |
| ) | |
| v. ) | 1:25-cv-10495-IT |
| ) | |
| KRISTI NOEM, in her official capacity as ) | |
| Secretary of Homeland Security, et al.; ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF JAMES KERNOCHAN

I, James Kernochan, make the following declaration, as provided by Section 1746 of Title 28 of the United States Code. I am aware that this declaration will be filed in the above-captioned civil action with the United States District Court for the District of Massachusetts. I hereby certify:

1. I am the Deputy Director of U.S. Citizenship and Immigration Services (USCIS), a component agency within the U.S. Department of Homeland Security (DHS). I have held this position since December 22, 2025. Previously, I served as Chief of Staff at the U.S. Customs and Border Protection from January 20, 2025.

2. The statements contained in this declaration are based upon my personal knowledge and upon information provided to me in my official capacity.

3. DHS established and first implemented the Cuban Family Reunification Parole program ("legacy CFRP") in 2007 and the Haitian Family Reunification Parole program ("legacy HFRP") in 2014 (collectively, the "legacy FRP programs").[1]

4. On July 10, 2023, DHS implemented Family Reunification Parole (FRP) programs for nationals of Colombia, El Salvador, Guatemala, and Honduras and their

---

[1] Cuban Family Reunification Parole Program, 72 FR 65588 (Nov. 21, 2007); Implementation of Haitian Family Reunification Parole Program, 79 FR 75581 (Dec. 18, 2014).

1

immediate family members.[2] Soon after, DHS implemented a similar program for nationals from Ecuador and announced updates to the existing FRP programs for Cuba and Haiti[3]

5. The parole programs were available to certain beneficiaries of an approved Form I-130 with a U.S.-based petitioner who was invited to participate. Under the programs, the beneficiary and his or her immediate family members could be authorized to travel to the United States to seek discretionary parole, on a temporary basis, while they waited for an immigrant visa to become available. The programs were based upon common justifications of urgent humanitarian reasons or significant public benefit for parole. Once inside the United States, the parolees could apply for any additional immigration benefits for which they may be eligible.

6. Consistent with President Trump's Executive Order 14165, "Securing Our Borders," on December 12, 2025, DHS announced the termination of all categorical FRP programs for aliens from Colombia, Cuba, Ecuador, El Salvador, Guatemala, Haiti, and Honduras, and their immediate family members. DHS published a Federal Register notice (FRN), titled "Termination of Family Reunification Parole Process for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans,"[4] terminating the FRP programs as of December 15, 2025. DHS further announced that there would be a return to a case-by-case review of parole requests, consistent with the policies of the current administration, and provided additional information in the FRN on how the termination of the FRP programs would be administered.

7. As part of the termination of the FRP programs, the FRN announced that the temporary parole period of aliens who had been paroled into the United States under the FRP programs, and whose initial period of parole had not already expired by

---

[2] "Implementation of a Family Reunification Parole Process for Colombians," 88 Fed. Reg. 43591, "Implementation of a Family Reunification Parole Process for Salvadorans," 88 Fed. Reg. 43611, "Implementation of a Family Reunification Parole Process for Guatemalans," 88 Fed. Reg. 43581, "Implementation of a Family Reunification Parole Process for Hondurans," 88 Fed. Reg. 43601.

[3] "Implementation of a Family Reunification Parole Process for Ecuadorians," 88 Fed. Reg. 78762, "Implementation of Changes to the Cuban Family Reunification Parole Process," 88 Fed. Reg. 54639, "Implementation of Changes to the Haitian Family Reunification Parole Process," 88 Fed. Reg. 54635.

[4] "Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans," 90 Fed. Reg. 58032.

8.  January 14, 2026, would terminate on that date, and any associated employment authorization would be revoked. The FRN further notified aliens who are without a lawful basis to remain in the United States following the termination of their parole that they must depart the United States before their parole termination date, or they will begin to accrue unlawful presence and could be subject to enforcement action.

8.  On January 10, 2026, the United States District Court for the District of Massachusetts issued a Temporary Restraining Order (TRO).[5] The order temporarily stayed the Termination of Family Reunification Parole programs for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans, 90 Fed. Reg. 58032 (Dec. 15, 2025), "insofar as it revokes previously granted parole and work authorization issued to noncitizens paroled into the United States" under the FRP programs.

## Modernized FRP Programs

9.  Under the modernized FRP programs, invitations to participate were sent to the approved Form I-130 Petitioner's mailing address of record or to the email address of record associated with the approved Form I-130. Petitioners who received invitations had to file Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, online for each beneficiary and any add-on derivative beneficiaries.

10. Once the Form I-134A was found to be sufficient and confirmed by USCIS, an email was sent to the beneficiary named in the Form I-134A with instructions on how to create an online account with myUSCIS and how to complete the next steps.

11. Beneficiaries were required to attest to their program eligibility, familial relationship to the Form I-130 petitioner, complete a medical examination by a Panel Physician, and acknowledge that if there were any derivative beneficiary children under the age of 18, that the child needed to travel with the principal beneficiary. Once complete, USCIS were confirmed the Form I-134A and transit data to U.S. Customs and Border Protection (CBP) to review. Beneficiaries also received instructions in their online account about how to access the CBPOne mobile application. CBP would then, in its discretion, post a notice in the beneficiary's online account confirming whether CBP

---

[5] *Svitlana Doe v. Noem*, No. 1:25-cv-10495, ECF #243 (D. Mass. Jan. 10, 2026).

12.     determined to issue the beneficiary advance authorization to travel to the United States.

12. Beneficiaries of the approved Form I-130 were required to create a myUSCIS online account in order to participate in the FRP process.[6] Beneficiaries were required to attest to their program eligibility, familial relationship to the Form I-130 petitioner, complete a medical examination by a Panel Physician, and acknowledge that if there were any derivative beneficiary children under the age of 18, that the child needed to travel with the principal beneficiary. Once complete, USCIS reviewed the Form I-134A and sent transit data to U.S. Customs and Border Protection (CBP) to review. Beneficiaries also received instructions in their online account about how to access the CBPOne mobile application. CBP would then, at its discretion, post a notice in the beneficiary's online account confirming whether CBP determined to issue the beneficiary advance authorization to travel to the United States. Upon arrival at the specified Port of Entry, CBP would make the final discretionary parole determination in person, on a case-by-case basis.

## Termination Notice Issuance

13. Because all FRP parolees under the modernized programs were required to have a USCIS online account, and all processing under these parole programs took place electronically, parole termination notices were also issued electronically to those accounts.

14. Once a termination notice is generated and electronically issued, it becomes available in the recipient's myUSCIS account as a document to view. At the time the notice is issued in a myUSCIS account, the recipient also receives a Case Status Online (CSOL) message notifying them that an action has been taken on their case. An email is also sent to the recipient notifying them to check their case on their myUSCIS account.

15. Of the 7,776 FRP parolees who were identified to have their parole terminated under the terms of the FRN, 3,501 termination notices were pushed out to FRP parolees'

---

[6] *See, e.g.*, 88 FR 43591, 43597-98 (Jul. 10, 2023).

        myUSCIS accounts on January 5, 2026. See attached example of the notice uploaded to a myUSCIS account.

16. On January 10, 2026, USCIS halted the issuance of parole termination notices pursuant to the TRO. There were approximately 4,213 modernized FRP parolees who had not yet been sent their individual parole termination notices at the time the TRO was issued.

17. USCIS can verify that, as of January 12, 2026, approximately 1,841 termination notices had been successfully accessed by the recipients from their myUSCIS accounts. All five of the new named Plaintiffs were sent notices via my USCIS on January 5, 2026. USCIS can verify that Plaintiff Jose Doe accessed the notice on January 10, 2026, and Plaintiff Francisca Doe accessed the notice on January 5, 2026.

### Legacy CFRP and HFRP Recipients

18. There are approximately 628 legacy FRP beneficiaries who are in an initial period of parole (3 years) and do not have a pending Form I-485 filed with USCIS on or before December 15, 2025, whose parole will be terminated under the FRP termination FRN.

19. USCIS had not yet mailed any of the individualized paper notices to aliens in an initial period of parole granted under legacy CFRP prior to the TRO and the pause on issuance of parole termination notices. USCIS has not identified any aliens who are still in an initial period of parole granted under legacy HFRP whose parole will be terminated by the FRP termination.

### New Parole and EAD Termination Notices

20. After the TRO was issued, an error was found in the portion of the parole termination notices issued on January 5, 2026 that addressed the revocation of the parolees' associated Employment Authorization Documents (EADs). The notice was intended to say that, if an alien did not respond or submit countervailing evidence to support the continued validity of their employment authorization by January 20, 2026, their EAD would be revoked as of January 20, 2026. However, we have found that the notices included a typo indicating

5

that the EADs would be revoked as of January 14, 2026, the date of parole termination, rather than January 20.

21. USCIS will correct this issue moving forward, once the stay is lifted, for the remaining parolees to whom USCIS has not yet sent individual parole termination notices once the stay is lifted. USCIS will also re-issue individualized parole termination notices and notices of intent to revoke parole-based employment authorization to all previously notified parolees in light of the error noted above.

22. Once the stay is lifted, USCIS intends to issue new notices to all impacted FRP parolees providing notice that their parole will terminate 30 days from the date of the notice. The notices will also provide that any associated EAD will be revoked no sooner than 30 days from the date of the notice, unless the FRP recipient submits countervailing evidence demonstrating their continued eligibility for parole-based employment authorization before that date.

23. The notices will be transmitted electronically to parolees who were granted parole through an electronic application process, and sent in paper form to the current address of record to parolees who were granted parole by filing a paper request.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 15th day of January, 2026, in Camp Springs, Maryland.

*[signature]*

James Kernoehan
Deputy Director
U.S. Citizenship and Immigration Services
Department of Homeland Security



U.S. Department of Homeland Security
Washington, DC 20528



A#:
Account #:

January 05, 2026

**Termination of Parole**

You were paroled into the United States under one of the Family Reunification Parole Processes for certain nationals of Colombia, Cuba, Ecuador, El Salvador, Guatemala, Haiti, and Honduras and their immediate family members (FRP programs). Effective December 15, 2025, the U.S. Department of Homeland Security (DHS) is terminating your parole by issuing this Notice of Termination of Parole.

Your parole will terminate upon the earlier of (1) your original parole expiration date or (2) January 14, 2026. Accordingly, you may be subject to expedited removal pursuant to section 235 of the Immigration and Nationality Act (INA) or removal proceedings pursuant to section 240 of the INA following the termination of your parole, consistent with law.

You must depart the United States if you have not otherwise obtained a lawful basis to remain in the United States. The U.S. Government will purchase your ticket and give you $1,000.00 as an exit bonus if you depart voluntarily now through the CBP Home Mobile App process. Use the CBP Home Mobile App on the Apple App Store or Google Play to complete a simple registration process and confirm your intention to voluntarily self-deport from the United States. Once you register, a CBP Home Representative will contact you to coordinate your cost-free travel. For more information, please visit: https://www.dhs.gov/cbphome.

**Download on Apple App Store**            **Download on Google Play**

                        

**If you do not depart, you may be subject to enforcement actions, including but not limited to detention and removal, without an opportunity to make personal arrangements and return to your country in a manner of your choosing.**

**Notice of Intent to Revoke Parole-Based Employment Authorization**

**If you have been granted employment authorization based on parole pursuant to 8 CFR 274a.12(c)(11), your employment authorization has not already automatically terminated as set forth in 8 CFR 274a.14(a), and is not scheduled to expire before January 14, 2026, the following applies to you:**

Consistent with 8 CFR 274a.14(b), DHS provides notice of intent to revoke your parole-based employment authorization under 8 CFR 274a.12(c)(11). DHS intends to revoke your employment authorization because the condition upon which your parole-based employment authorization was granted — being paroled into the United States under section 212(d)(5)(A) of the INA — no longer exists or will no longer exist as of January 14, 2026. See 8 CFR 274a.14(b)(1)(i). Additionally, DHS has for good cause determined that your employment authorization should be revoked upon the termination of your parole. See 8 CFR 274a.14(b)(1)(i).

By operation of this notice, your unexpired parole-based employment authorization will be revoked as of January 14, 2026, unless you submit countervailing evidence that you remain paroled into the United States under section 212(d)(5)(A) of the INA through the expiration date on your Employment Authorization Document by uploading your countervailing evidence in your myUSCIS online account before January 20, 2026. See 8 CFR 274a.14(b)(2).

The timely submission of countervailing evidence does not impact the termination of your parole originally granted under the FRP programs described above.

Any decision to revoke your employment authorization is final and no appeal shall lie from the decision to revoke employment authorization. See 8 CFR 274a.14(b)(2). If you work without employment authorization, you are in violation of the law.

**Disclaimer:** You are receiving this notice at this email address because you provided this email to USCIS when you were processed under the FRP programs.

