IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SVITLANA DOE, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, et al.,<br><br>　　　　　　　Defendants. | Civil Action No.: 1:25-cv-10495-IT |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR EXPEDITED DISCOVERY INTO DEFENDANTS' COMPLIANCE WITH THE COURT'S MAY 28, 2025 ORDER**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................3

I.      There Is Good Cause To Order Expedited Discovery ..........................................................3

         a.      Discovery Into Noncompliance with a Court-Ordered Injunction Is Permissible In APA Litigation ..............................................................................3

         b.      The Need For Discovery Is Clear ..........................................................................4

         c.      The Risk of Irreparable Harm Outweighs the Minimal Burden that Targeted Discovery Would Impose on Defendants ...............................................11

II.     The Discovery Requests Are Narrowly Tailored To The Noncompliance Issues .............12

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdi v. McAleenan*,
   No. 1:17-CV-00721, 2019 WL 1915306 (W.D.N.Y. Apr. 30, 2019).....................................4, 6

*California Dept. of Soc. Servs. v. Leavitt*,
   523 F.3d 1025 (9th Cir. 2008) ...............................................................................................4, 7

*Damus v. Nielsen*,
   328 F.R.D. 1 (D.D.C. 2018) ......................................................................................................4

*Four Women Health Servs., LLC v. Abundant Hope Pregnancy Res. Ctr., Inc.*,
   No. 1:24-cv-12283, 2024 WL 4425558 (D. Mass. Oct. 4, 2024) ............................................11

*Fraihat v. U.S. Immigr. & Customs Enf't*,
   No. EDCV 19-1546, 2020 WL 2758553 (C.D. Cal. May 15, 2020) .....................................5, 6

*Heredia Mons v. Wolf*,
   2020 WL 4201596 (D.D.C. July 22, 2020) ............................................................................4, 7

*Jimenez v. Nielsen*,
   326 F.R.D. 357 (D. Mass. 2018) .............................................................................................11

*Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*,
   842 F. Supp. 2d 127 (D.D.C. 2012) .......................................................................................4, 6

*Palmer v. Rice*,
   231 F.R.D. 21 (D.D.C. 2005) ....................................................................................................5

*Texas v. Biden*,
   No. 2:21-CV-067-Z, 2021 WL 5399844 (N.D. Tex. Nov. 18, 2021) .................................5, 12

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 705 ...............................................................................3

**Other Authorities**

*National SAR Initiative*, https://www.dhs.gov/publication/tecs-system-cbp-
   primary-and-secondary-processing-tecs-national-sar-initiative ..............................................10

Fed. R. Civ. P. 16............................................................................................................................5

Fed. R. Civ. P. 26(f).....................................................................................................................4, 5

Ted Hesson et al., *Nearly 200,000 Ukrainians in US Thrown Into Legal Limbo by Trump Immigration Crackdown*, Reuters, Nov. 23, 2025 ........................................................... 8

USCIS, *Re-Parole Process for Certain Ukrainian Citizens and Their Immediate Family Members*, https://www.uscis.gov/humanitarian/uniting-for-ukraine/re-parole-process-for-certain-ukrainian-citizens-and-their-immediate-family-members ................................................................................................................................. 8

**INTRODUCTION**

Defendants' opposition (Doc. No. 200) suggests that they believe compliance with the May 28th Order as to *some* class members (*i.e.* partial compliance) is sufficient. *Id*. at 2. Their reliance on statistical data reflecting general numbers of processed parole-related applications makes this clear. They likewise minimize the issues Plaintiffs have raised on behalf of specific class members by pointing out that they only reflect a "small" portion of the Class. *Id*. at 11. In other words, their opposition only confirms Defendants do not understand what "compliance" with the Order requires. *Id*. at 2. It does not mean that processing just *some* parole-related applications will suffice. It also does not mean that making broad-based reference to a system of adjudication will do. And it does not mean that Defendants' own conclusory and self-serving professions of good-faith make it so. This is particularly the case when conflicting facts raise well-grounded concerns about noncompliance.

The Order requires that Defendants ensure the processing of parole-related applications for *all* class members will proceed in the ordinary course. Not some. All. The Order requires that Defendants lift any administrative stay on the processing of parole-related applications covered by the Order for *all* members of the Class. Again, not for some class members, but for *all*. And the Order naturally requires that Defendants take meaningful steps to ensure administrative procedures put in place for the processing of applications are effective as to *all* class members. The Order covers *all* class members and as such, Defendants must take steps to effectuate the Order for the entirety of the Class.

Class Plaintiffs do not seek to "micromanage the adjudication of immigration benefits" or "rewrite [the May 28th] Order's requirements." *Id*. at 10. What Class Plaintiffs do seek, however, is some affirmation that Defendants are being proactive with the proper adjudication of applications for *all* class members as required by the Order. Given the issues that class members

1

have faced in the five months since issuance of the Order, combined with conflicting (and limited) explanations that Defendants and their counsel have repeatedly relayed about processing, targeted discovery into compliance is both appropriate and necessary - to figure out what exactly is going on.

      Class Plaintiffs' ongoing compliance concerns are not the result of mere guesswork or hollow assumptions. Rather, the concerns are backed by three truths: 1) delays in the processing of applications continue, 2) USCIS personnel have continued to inform class members of a hold or other type of administrative freeze in the adjudication of applications, and 3) contrary to what their clients have indicated to class members, Defendants' counsel have consistently refuted the existence of any suspension in the processing of applications. The inconsistent and contradictory representations by Defendants and their counsel make clear that factual ambiguity exists. Class Plaintiffs seek discovery to ensure that there is no *de facto* suspension of applications (as USCIS personnel have represented), and to ensure Defendants have meaningfully sought to proceed with adjudication of *all* applications. Nothing more. Limited discovery into compliance issues is appropriate.

      Importantly, Defendants concede that the differential treatment of class members in the processing of benefits applications because of their status as parolees (former or current) continues. *Id*. at 14. Additionally, the statistical data that Defendants have submitted to highlight the number of parole-related applications that have been processed (for purposes of establishing compliance) tells an incomplete story because it covers less than half of the parole-related applications subject to the Court's Order. *See* Doc. No. 199-3. Defendants, for example, have not provided statistics that establish the processing of initial applications for parole under the military parole-in-place program or re-parole. They have not addressed applications related to the

2

various Family Reunification Parole policies. They say nothing about the adjudication of family-based visa petitions (I-130), applications for Temporary Protected Status, or asylum adjudications. This is so despite the fact that there were more than 325,000 such requests pending as of March 9th for CHNV and U4U parolees alone. *See id*. at 10. The statistics that Defendants rely on in their opposition also raise more concerns than they assuage. Defendants have apparently adjudicated approximately 1,900 requests for re-parole (for U4U, CAM, and OAW parolees combined), though as of March 9th, there were about *100 times more* re-parole requests pending for Ukrainians alone. *See id*. Their most recent submissions therefore only highlight the need for discovery.

## ARGUMENT

### I. There Is Good Cause To Order Expedited Discovery

Defendants' opposition focuses on three points, none of which have merit: (1) discovery is unwarranted because this litigation is an action brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 705, (*see id*. at 8-9, 10, and 15-16); (2) Defendants' submissions to date refute any notion of noncompliance (*see id*. at 10-14); and (3) Plaintiffs have failed to establish the likelihood of irreparable harm as to any class member, much less how discovery would safeguard against it (*see id*. at 15-16).

#### a. Discovery Into Noncompliance with a Court-Ordered Injunction Is Permissible In APA Litigation

Defendants' contention that discovery is unwarranted because this litigation involves APA claims is baseless for the simple reason that Plaintiffs also assert non-APA claims which do entitle them to discovery. Defendants' argument also bears no relevance on the Court's ability to grant expedited discovery because, irrespective of whether litigation involves APA claims, courts

3

retain broad authority to order expedited discovery prior to a Rule 26(f) conference when the issues involve compliance with a court order. *See California Dept. of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (noting that district courts retain authority to order discovery "as part of its inherent power to enforce its judgments"); *Abdi v. McAleenan*, No. 1:17-CV-00721, 2019 WL 1915306, at *2 (W.D.N.Y. Apr. 30, 2019) ("Federal courts have broad discretion to fashion remedies as equity requires, to ensure compliance with their orders."); *Damus v. Nielsen*, 328 F.R.D. 1, 3-4 (D.D.C. 2018) (noting that courts retain "the inherent power" to order discovery "where compliance questions have been raised before [a] Rule 26(f) conference" and primarily "[when] the discovery sought goes to compliance, as opposed to the merits").

The general rules governing merits discovery in APA cases therefore bear no relevance on the Court's ability to order expedited discovery into breaches of its orders. The rules therefore should not hinder consideration of Plaintiffs' Motion. *See Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 131 (D.D.C. 2012) ("While, in reviewing agency action under the APA, the agency is ordinarily the finder of fact, when it comes to a court's enforcement and monitoring of its own orders, the court is the judge and jury").

### b. The Need For Discovery Is Clear

Class Plaintiffs need only establish "significant questions" about Defendants' compliance to warrant discovery; Class Plaintiffs need not establish with certainty that Defendants have definitively breached the May 28th Order. *See Heredia Mons v. Wolf*, 2020 WL 4201596, at *3 (D.D.C. July 22, 2020). Notably, the Court acknowledged persisting ambiguities in Defendants' representations about compliance at the last status conference, which prompted it to permit briefing on potential discovery. *See* Sept. 26 Hr'g Tr. at 7:18-20, 9:1-20, 10:14-11:11,

and 15:10-13. As set out in their Motion, Plaintiffs have raised credible concerns about Defendants' ongoing compliance with the Order. Months of *ad hoc* outreach about the systemic issues have failed to yield sufficient responses, and as already noted, the statistical data that Defendants have submitted to establish their compliance does quite the opposite.

Discovery to substantiate well-grounded suspicions of noncompliance with a court order is entirely permissible. *See Fraihat v. U.S. Immigr. & Customs Enf't*, No. EDCV 19-1546, 2020 WL 2758553, at *3 (C.D. Cal. May 15, 2020) (noting that courts have authority "to allow[] post judgment discovery to aid the court in determining whether a party has complied with [its] order"); *Palmer v. Rice*, 231 F.R.D. 21, 25 (D.D.C. 2005) (authorizing discovery when plaintiffs "would not be able to determine whether the government [had] complied with the court's injunctions" without it).

Expedited discovery to determine the nature and extent of potential noncompliance with a court order is also entirely permissible and constitutes "good cause" to permit pre-Rule 26(f) conference discovery.[1] *See, e.g.*, *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 5399844, at *4 (N.D. Tex. Nov. 18, 2021) (granting plaintiffs' request for limited discovery into compliance with an injunction ordering implementation of the Migrant Protection Protocols given plaintiffs had produced "some evidence that [d]efendants [were] not re-implementing MPP as quickly or as thoroughly as they should"); *Fraihat*, 2020 WL 2758553, at *5 (finding good cause to order discovery into compliance with a preliminary injunction prior to the Rule 26(f) conference when circumstances reflected defendants' "slow response" in effectuating the court's instructions in the order). Courts have also granted discovery requests to determine the reasonableness of

---

[1] Alternatively, the Court could also set a deadline for the Rule 26(f) conference and a date for the Rule 16 scheduling conference.

compliance initiatives, including remediation efforts. *See, e.g.*, *Abdi*, 2019 WL 1915306, at *3 (granting petitioner's request for limited discovery into the processes employed by respondents to effectuate the court's preliminary injunction and to determine whether remedial measures addressing flaws in the system were adequate).

There is a need to determine precisely what Defendants have done to effectuate the Order and to reinstate processing of parole-related applications, including immigration benefits applications, filed by parolees. The inconsistent and shifting representations that Defendants and their counsel have made about whether a hold or other administrative freeze remains in place makes this clear. *See Fraihat*, 2020 WL 2758553, at *5 (pointing out that "[d]efendants' own statements [can] raise significant questions" about compliance with an order"). These inconsistencies and the fact that class members continue to experience significant, life-altering delays in adjudication of their requests justify granting Plaintiffs' limited discovery requests.

Ongoing issues and the persistence of class members' complaints about suspended processing of benefits applications also highlight the need to delve into what Defendants have done to ensure that the lift of administrative stay is properly accounted for at an institutional level, and Defendants' own representations should not be treated as determinative of the facts. *See Abdi*, 2019 WL 1915306, at *3 (rejecting respondent's contention that compliance discovery was unnecessary due in part to the court's determination that the declarations previously submitted failed to address the issues raised by petitioner and "only [provided] cursory insight into [r]espondent's [] procedures"); *Nat'l L. Ctr. on Homelessness & Poverty*, 842 F. Supp. 2d at 131 ("Equity would not be achieved if a court decided simply to rubber-stamp an enjoined party's unsupported self-assessment of its compliance with a court order").

Defendants cite USCIS statistical data reflecting adjudication rates of parole-related benefits applications as proof of compliance. *See* Doc No. 200 at 10-12. They also minimize the significance of instances in which class members have been told of a hold or other systemic delay in adjudication. *Id.* at 11-12. To be clear, Class Plaintiffs acknowledge that Defendants have addressed some of the *ad hoc* inquiries they have made about specific cases and may be processing others that remain pending. But the processing of *some* applications does not excuse the failure to do so in others, primarily when circumstances raise questions about the reasons behind the failure to do so.

Since the Court issued its Order, the processing issues have not stopped. Instances in which class members have faced impediments in the adjudication of their applications have continued. Despite repeated *ad hoc* engagement with Defendants about problems class members have encountered, processing issues persist. Regardless of whether applications have been adjudicated in other cases, for those class members that have encountered processing issues, there are legitimate concerns that the failure to adjudicate signifies breach of the Court's Order. Partial noncompliance with an order as to some class members still constitutes noncompliance. *See Leavitt*, 523 F.3d at 1036 (recognizing that the failure to properly effectuate an injunction as to *all* protected by the order would properly be characterized as noncompliance). The Order makes clear that the lift on the suspension of applications on a system-wide basis applies to *all* class members. As such, if there is some type of freeze on adjudication - even as to a subset of class members, Defendants would be in breach of the Order. The fact that they may be in partial compliance is insufficient. *See generally Heredia Mons*, 2020 WL 4201596, at *3 (granting plaintiffs' request for limited discovery into defendants' compliance with the court's preliminary injunction which instructed government agencies to abide by administrative guidelines on

parole-related determinations; in doing so, rejecting defendants' reliance on parole grant rates given the statistical data failed to address noncompliance issues in certain cases).

Widespread issues with the processing of applications continue and the statistical data that Defendants have produced in support of their opposition only confirms this. For example, Class Counsel have previously noted that a large number of U4U parole beneficiaries have reported significant delays in the processing of their requests for re-parole. *See* Doc. No. 172-1.[2] Defendants' submissions in support of their opposition confirm that these processing delays are indeed systemic. According to the data, as of March 9th of this year, there were 116,863 pending requests for re-parole filed by U4U parolees via Form I-131. *See* Doc. No. 199-3 at 10. By November 6th, Defendants had only adjudicated a total of 1,898 re-parole requests from U4U, CAM, and OAW parolees combined. *See* Doc. No. 199-2 at ¶ 5; *see also* Hesson, *supra* n.2 (referencing previously unreported data reflecting that as of two months ago, there were 162,303 U4U parolees with expiring grants of parole). Notwithstanding what appears to be a years-long backlog in adjudication of U4U re-parole requests, USCIS continues to direct U4U parolees "to submit their re-parole requests [] no earlier than 180 days (6 months) before the expiration of their [existing] period of parole" while continuing to represent that they can deny applications filed earlier than that (without providing a refund of the filing fees).[3]

Defendants' arguments in opposition to Plaintiffs' Motion also raise more questions than they provide answers. Defendants reiterate their conclusory assertion that references to a "hold"

---

[2] *See also* Ted Hesson et al., *Nearly 200,000 Ukrainians in US Thrown Into Legal Limbo by Trump Immigration Crackdown*, Reuters, Nov. 23, 2025, www.reuters.com/world/europe/nearly-200000-ukrainians-us-thrown-into-legal-limbo-by-trump-immigration-2025-11-23.

[3] USCIS, *Re-Parole Process for Certain Ukrainian Citizens and Their Immediate Family Members*, https://www.uscis.gov/humanitarian/uniting-for-ukraine/re-parole-process-for-certain-ukrainian-citizens-and-their-immediate-family-members.

do not equate to suspension of adjudications as set out in the Davidson Memo. *See* Doc. No. 200 at 12. They again, however, fail to clarify how the two are different, what reference to a "hold" signifies, or why USCIS officials have continued to reference a "hold" in their communications with class members. The difference between a "hold" on applications and other bases for processing delays remains unclear.

The lack of clarity as to what "hold" and other terminology used by Defendants to characterize the status of applications signifies is notably what prompted the Court to seek further information after the September 26th status conference. *See* Doc. No. 182. Defendants' responses to the Court's information requests however failed to clarify the substantive distinction between terms employed. Ms. Alfonso-Royals represented that "USCIS employees will sometimes use the term 'hold' to describe the status of a case that remains pending, needs additional review before a decision can be made, or is continued for further processing." Doc. No. 189-1 at ¶ 5. She noted that "[o]fficers may use different variations of these phrases, but they all essentially mean the same thing: that a case is not yet ripe for final adjudication." *Id*. She likewise indicated that "[t]here are many reasons why a case may not be ready for final adjudication and it would be impossible to create an exhaustive list". *Id*. at ¶ 6. These explanations, however, fail to clarify whether the representations USCIS officers have made to class members about an administrative suspension in processing is credible.

In their opposition, Defendants also stress as they have previously that immigration benefit applicants remain subject to "vetting requirements and background checks" which, purportedly, "are not standing in the way of adjudication *generally*." *Id.* at 13-14 (emphasis added). Defendants attempt to distinguish the strikingly similar vetting requirements in the Davidson Memo by pointing out that the "blanket hold" as reflected in the Memo "is not the

9

same thing as employing vetting of applicants as part of the adjudication process." *Id.* at 13. Yet these representations fail to shed light on when the vetting processes for adjudication purposes were implemented (and in particular whether such procedures were in place prior to the Davidson Memo). They likewise do not explain what the substantive distinction actually is between the "vetting" process as called for by the Memo and that employed in the processing of applications, including why the enhanced vetting should not be understood as a subterfuge to circumvent the May 28th Order. Relatedly, the parameters for determining when "vetting" or "background checks" are even necessary in the ordinary course remain unclear. These issues are relevant - and material - to determining compliance with the Order.

What little guidance Defendants have produced thus far only confirms the need for more information about potential noncompliance. As another example, the evidence that Defendants have produced to demonstrate that they no longer have categorical holds in place actually reflects the opposite. In response to the Court's request for information about processing, Defendants submitted a USCIS memorandum dated July 1st (notably the same day that their responses to the Court were due). *See* Doc. No. 139-1. The memorandum was entitled "Guidance for Resolving Special Parole Machine Red and Machine Green TECS Records". *Id.* "TECS" is the primary database used by the Department of Homeland Security for screening purposes.[4] The memo "provide[d] updated guidance to offices adjudicating immigration benefit requests filed by [CHNV, U4U, and other parolees]". *Id.* at 7. The memo indicated at the outset that "[a]ll TECS records for special program parolees must be resolved prior to issuing a final decision on a benefit request". *Id.* at 5.

---

[4] *See* DHS, *TECS System: CBP Primary and Secondary Processing (TECS) National SAR Initiative*, https://www.dhs.gov/publication/tecs-system-cbp-primary-and-secondary-processing-tecs-national-sar-initiative.

10

Per the document, TECS "hits" (which are apparently used to "flag issues" in the system) had categorically been placed on the records of all CHNV nationals that had been paroled prior to September 2024. *See id*. at 7. Although the document indicates that all tagged individuals were subsequently "systematically vetted" and an unknown number were deemed to have no "derogatory" information (and assigned a "machine green TECS hit" as a result), the original TECS hits that had been made "ha[d] not yet been removed." *Id.* at 7. As a result, from the information set out in this memo, it appears that the adjudication of benefit requests for those who continued to bear a "hit" was suspended without justification.

    c. **The Risk of Irreparable Harm Outweighs the Minimal Burden that Targeted Discovery Would Impose on Defendants**

Contrary to what Defendants assert, Class Plaintiffs need not show that "discovery will avoid irreparable harm" in fact and they need not establish "[a] particular harm to any particular Plaintiff or class member that discovery would assist in avoiding." Doc. No. 200 at 15. Plaintiffs need only establish "a risk of irreparable harm" to class members and the potential for discovery to address it. *See Four Women Health Servs., LLC v. Abundant Hope Pregnancy Res. Ctr., Inc.*, No. 1:24-cv-12283, 2024 WL 4425558, at *2 (D. Mass. Oct. 4, 2024); *Jimenez v. Nielsen*, 326 F.R.D. 357, 361-62 (D. Mass. 2018). Plaintiffs have already explained the need for expedited and targeted discovery in their Motion and need not restate their arguments again here.

Defendants' conclusory assertion that any discovery - no matter how targeted or discrete - would cause undue burden is unsubstantiated by any evidence and baseless by its own terms. Their argument rests on two points: (1) "there is no serious suggestion of non-compliance," and (2) "discovery is not generally appropriate" in APA cases. Doc. No. 200 at 16. Both points, however, are irrelevant to the issue of burden, and as discussed above, neither is a basis to deny targeted discovery about Defendants' compliance with the May 28th Order. When considering

11

the potential risks to class members against the minimal burden on Defendants, the balance of interests clearly weigh in favor of granting limited discovery.

Relatedly, in conclusory fashion, Defendants argue there is no basis for expedited discovery due in part to Plaintiffs failure to "identif[y] any irreparable harm that discovery will remedy[.]" *See* Doc. No. 200 at 19. Plaintiffs disagree. Expedited discovery is appropriate because there is an urgent need to move forward with the processing of parole-related benefits applications as soon as possible. Plaintiffs have stressed on numerous occasions that time is of the essence for class members who remain in legal limbo with an ever-present fear of removal. Prompt resolution of issues hindering or otherwise causing significant delay in the adjudication of applications is critical. Expedited discovery would further resolution of cases.

**II.     The Discovery Requests Are Narrowly Tailored To The Noncompliance Issues**

All of Defendants' challenges to the proposed discovery requests are baseless. They make four points: (1) the requests are temporally overbroad in seeking items prior to May 28th, (2) Request No. 4 is overbroad because it seeks information on processing time for applications in the ordinary course, (3) Plaintiffs have not defined "distributed to USCIS personnel", and (4) materials related to form communications disseminated by USCIS personnel are irrelevant or otherwise available to Plaintiffs. *See* Opp. at 16-19.

On points (1) and (2), the production of materials that inform on how parole-related applications were processed in the ordinary course both prior to and after May 28th is critical to determining the nature and extent of Defendants' compliance. In fact, Defendants themselves make reference to statistical data both prior to and after issuance of the Order in support of their contention that applications are being processed in due course. *See* Doc. No. 200 at 11 n.3; *see also Texas*, 2021 WL 5399844, at *5 (granting plaintiffs request for material pre-dating issuance

12

of an injunction because the requests were "reasonable and in good faith" and because the information was necessary "to confirm whether [d]efendants' current actions and results represent a change from the time period before the injunction").

Point (3) reflects an immaterial issue given Defendants may object to specific requests on this basis, and Plaintiffs may correct through amendment. Point (4) is also baseless because materials relating to form communications speak to whether Defendants have ensured that the stay on administrative hold per the Order has been properly accounted for in relevant systems and protocols. The substance is therefore relevant.

## CONCLUSION

For the reasons stated in Plaintiffs' Motion for Expedited Discovery and this Reply, Plaintiffs respectfully request that the Court grant their Motion.

Respectfully submitted,

/s/  Inyoung Hwang
Inyoung Hwang (*pro hac vice*)
Anwen Hughes (*pro hac vice*)
**HUMAN RIGHTS FIRST**
121 W 36th Street
PMB 520
New York, NY 10018
Telephone: (212) 845-5200
HughesA@humanrightsfirst.org
HwangS@humanrightsfirst.org

John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
Katie Weng (*pro hac vice* pending)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com
katie.weng@arnoldporter.com

H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, Fl. 53
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com

Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com

Robert Stout (*pro hac vice*)
Sarah Elnahal (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000

rob.stout@arnoldporter.com
sarah.elnahal@arnoldporter.com

Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (*pro hac vice*)
Hillary Li (*pro hac vice*)
Laura Flores-Perilla (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

Justin B. Cox (*pro hac vice*)
**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

15