YAAKOV M. ROTH
*Acting Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
ELISSA FUDIM
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 451-7460
Email: elissa.p.fudim@usdoj.gov


*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ———————————————— | Civil Action No. 1:25-cv-10495 |
| Svitlana Doe, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Kristi Noem, in her official capacity as ) | |
| Secretary of Homeland Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ————————————————) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS SUPPLEMENTED COMPLAINT

# **TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................**1**

**PROCEDURAL BACKGROUND** ........................................................................**1**

**STANDARDS** .........................................................................................................**4**

**ARGUMENT** ..........................................................................................................**4**

I.    The FRP Parolee Plaintiffs Lack Article III Standing. ....................................... 4

II.    Section 1252(a)(2)(B) Precludes Jurisdiction Over Claims Challenging Discretionary Decisions Concerning Parole (Claims 1, 3, 5, 6, 7)................................................. 6

III.    Plaintiffs Do Not Identify Which, if Any, Plaintiffs Have Standing to Challenge the December 2 USCIS Memo. ................................................................................ 9

IV.    Plaintiffs' APA Claims Fail at the Threshold (Claims 1-5).............................. 9

V.    The Substantive APA Claims Do Not State a Claim....................................... 10

    A.    Plaintiffs' First Claim for Relief Does Not State a Claim As to the FRP FRN........... 10

    B.    Plaintiffs' Second and Fourth Claims Fail to State a Claim. ........................ 12

VI.    Plaintiffs Cannot State a Claim for Failure to Follow Agency Procedures (Claim Five). 14

VII.    Plaintiffs Cannot State a Claim for "Nonstatutory Review" (Claim Six)................. 17

VIII.    Plaintiffs Cannot State a Due Process Claim (Claim Seven)................................... 17

IX.    Plaintiffs' Eighth Claim for Relief Fails....................................................... 18

**CONCLUSION**………………………………………………………………**20**

# TABLE OF AUTHORITIES

Cases

*Am. Mining Cong. v. MSHA*,
  995 F.2d 1106 (D.C. Cir. 1993) ................................................................................ 19

*Bank of Commerce v. Bd. of Governors of Fed. Res. Sys.*,
  513 F.2d 164 (10th Cir. 1975) ........................................................................... 14, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 4

*Bernardo v. Johnson*,
  814 F.3d 481 (2016) ............................................................................................... 7

*Connecticut Bd. of Pardons v. Dumschat*,
  452 U.S. 458 (1981) ............................................................................................. 17

*Curran v. Cousins*,
  509 F.3d 36 (1st Cir. 2007) ................................................................................. 12

*DaimlerChrysler v. Cuno*,
  547 U.S. 332 (2006) ........................................................................................... 5, 9

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ............................................................................................... 9

*Doe v. McAleenan*,
  926 F.3d 910 (7th Cir. 2019) ................................................................................. 8

*Doe v. Noem*,
  152 F.4th 272 (1st Cir. 2025) .............................................................. 9, 10, 11, 12

*FDA v. Alliance for Hippocratic Medicine*,
  602 U.S. 367  (2024) ............................................................................................. 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
  528 U.S. 167 (2000) ............................................................................................... 5

*Hassan v. Chertoff*,
  593 F.3d 785 (9th Cir. 2010) ................................................................................. 7

*Hochendoner v. Genzyme Corp.*,
  823 F.3d 724 (1st Cir. 2016) ................................................................................. 9

*Kandamar v. Gonzales*,
    464 F.3d 65 (1st Cir. 2006) ................................................................................. 18

*Kisor v. Wilkie*,
    588 U.S. 558 (2019) ........................................................................................... 17

*Lewis v. Casey*,
    518 U.S. 343 (1996) ............................................................................................. 9

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ................................................................................ 9, 18, 20

*Mantena v. Johnson*,
    809 F.3d 721 (2d Cir. 2015) ................................................................................ 7

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ........................................................................................... 18

*Nisselson v. Lernout*,
    469 F.3d 143 (1st Cir. 2006) ............................................................................... 4

*Nouritajer v. Jaddou*,
    18 F.4th 85 (2d Cir. 2021) ............................................................................... 7, 8

*Ottey v. Barr*,
    965 F.3d 84 (2d Cir. 2020) .................................................................................. 8

*Pizzuto v. Homology Medicines, Inc.*,
    No. 1:23-cv-10858, 2024 WL 1436025 (D. Mass. Mar. 31, 2024) ........................ 12

*Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972) ........................................................................................... 17

*Samirah v. O'Connell*,
    335 F.3d 545 (7th Cir. 2003) ............................................................................... 7

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................. 5

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ........................................................................................... 13

*United States v. Herrera-Pagoada*,
    14 F.4th 311 (4th Cir. 2021) .............................................................................. 17

*Vainisi v. Comm'r*,
    599 F.3d 567 (7th Cir. 2010) ............................................................................. 16

*Vermont Yankee Nuclear Power Corp. v. NRDC,*
    435 U.S. 519 (1978) ........................................................................................ 16

*Viqueira v. First Bank*,
    140 F.3d 12 (1st Cir. 1998) ............................................................................. 4

Statutes

5 U.S.C. § 701(a)(2) ............................................................................................. 9

8 U.S.C. § 1152(a)(1)(A) ..................................................................................... 13

8 U.S.C. § 1182(d)(5) ................................................................................. 2, 6,7,19

8 U.S.C. § 1229a ................................................................................................... 6

8 U.S.C. §§ 1252(a)(5) ........................................................................................ 6

44 U.S.C. § 1507 ............................................................................................. 14, 16

Regulations

8 C.F.R. § 103.8(a)(1) .......................................................................................... 15

8 C.F.R. § 212.5(e)(2)(i) ................................................................................. 11, 14

## INTRODUCTION

Plaintiffs filed a Supplemented Complaint challenging the government's termination of the parole of aliens who received parole under the family reunification parole programs for nationals of Cuba, Haiti, Colombia, Ecuador, El Salvador, Guatemala, and Honduras and their immediate family members (the "FRP programs") and a policy memo from U.S. Citizenship and Immigration Services ("USCIS") designed to ensure proper vetting for public safety and national security risks before USCIS completes adjudication of asylum applications and certain requests for immigration benefits. Doc. No. 255. Defendants already have a pending motion to dismiss the Second Amended Complaint (Doc. No. 68). *See* Doc. No. 113. The new allegations in the Supplemented Complaint should likewise be dismissed for threshold jurisdictional reasons and on the merits.

## PROCEDURAL BACKGROUND

This motion assumes the Court's familiarity with the factual and procedural background of this case, and Defendants include background information here only to the extent it is unique to the new allegations in the Supplemented Complaint.

Plaintiffs filed this action on February 28, 2025, and the Second Amended Complaint was filed on March 27, 2025. Defendants' motion to dismiss the operative complaint (Doc. No. 113) is pending. The Supplemented Complaint adds claims and expands upon existing claims to challenge two distinct agency decisions: the December 2, 2025 USCIS Memo (the "USCIS Memo") and the December 15, 2025 Federal Register notice terminating the FRP programs ("FRP FRN"). Doc. No. 255 at ¶¶ 188(a)-(u), 200(a)-(f). It adds five new Plaintiffs (the "FRP Parolee Plaintiffs") who allege they are subject to the FRP FRN's termination of parole. *Id.* at ¶¶ 38(a)-(e).

On December 2, 2025, following two high-profile terrorist incidents—including a planned terrorist attack by an Afghan national on Election Day 2024, and the shooting of two national

guardsmen by another Afghan national on November 26, 2025—USCIS issued a policy memorandum announcing, as relevant here, a temporary hold on final adjudication of all pending applications for asylum (Forms I-589) and of all pending requests for immigration benefits filed by aliens from nineteen countries that had previously been identified as high risk by presidential Proclamation: Afghanistan, Burma, Burundi, Chad, Republic of the Congo, Cuba, Equatorial Guinea, Eritrea, Haiti, Iran, Laos, Libya, Sierra Leone, Somalia, Sudan, Togo, Turkmenistan, Venezuela, and Yemen. *See* Doc. No. 224; *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 24497 (June 10, 2025). The Memo explains that the hold on final adjudication of covered applications permits USCIS to assess information received from national security and law-enforcement partners regarding potential public-safety risks, including reports of violent criminal activity. Doc. No. 224. The policy was adopted as an interim measure while USCIS evaluates whether additional screening or procedural safeguards are warranted. Doc. No. 224.

On December 15, 2025, DHS published the FRN terminating all categorical Family Reunification Parole programs for nationals of seven countries and their immediate family members. *See* 90 Fed. Reg. 58032 (December 15, 2025). Under the terms of the FRN, any individual paroled into the United States under one of these FRP programs was to have that parole terminated on January 14, 2026, unless the individual had a pending Application to Register Permanent Residence or Adjust Status filed as of December 15, 2025, or the Secretary determines otherwise on a case-by-case basis. *Id.* The Secretary explained that in her opinion, "these programs do not serve a significant public benefit, are not necessary to reduce levels of unlawful immigration, and are not serving all their intended purposes." 90 Fed. Reg. at 58034. In issuing the FRP FRN, the Secretary relied upon her authority in 8 U.S.C. § 1182(d)(5) to terminate grants

of parole. *Id.* at 58033, 58043. This Court first temporarily/preliminarily stayed the FRP FRN's termination of grants of parole, Doc. No. 243 (the "TRO"), and subsequently issued a preliminary injunction enjoining the termination of individual grants of FRP parole, Doc. No. 258 ("PI").

On January 9, 2026, this Court gave Plaintiffs permission to supplement their Complaint to add claims pertaining to the newly proposed plaintiffs whose parole was to be terminated by the FRP FRN and with allegations concerning the FRP FRN and the USCIS Memo. Doc. No. 238. The Court instructed that "the supplemental complaint shall be drafted as a supplement to, and not a replacement for" the Second Amended Complaint. *Id.* The Court instructed Plaintiffs to add new allegations in separate paragraphs, identified by the paragraph number immediately preceding the new material. *Id.* At the hearing on Plaintiffs' Motion for a Temporary Restraining Order, the Court provided more clarity: "I don't want you to relist all of the paragraphs." Doc. No. 244, Tr. at 8. The Court explained that if the Plaintiffs wanted to allege that a prior allegation extends to this new group of Plaintiffs, Plaintiffs should insert a subparagraph a. *Id.* at 9 ("What I want you to do is when you get to a paragraph -- I think the first one I identified was paragraph 12, where you say what happened there also is happening to these people, drop a 12(a)").

Nonetheless, Plaintiffs filed a Supplemented Complaint relisting every prior allegation, later filing a "corrected" version that fixed only one paragraph-numbering issue. Doc. No. 239; Doc. No. 255. Where Plaintiffs sought to add new allegations, they did so with no numbers, only letters following numbered paragraphs, such that there are now *forty-five* paragraph "a"s in the Supplemented Complaint.[1] In some instances, those lettered paragraphs do what the Court instructed—explain that the prior allegation applies to the new plaintiffs challenging the new

---

[1] Even Plaintiffs' Eighth Claim for Relief, which appears at the end of the Supplemented Complaint does not have any paragraph numbers.

agency actions. *See e.g.* Doc. No. 255 at ¶ 314a (alleging "The FRP FRN is yet another such example" of the allegation in the previous paragraph). But more often, the new paragraphs are unrelated to those preceding them and could have been added as new numerical sequential paragraphs at the end of the Supplemented Complaint. The way Plaintiffs supplemented their complaint makes it difficult to discern which prior allegations and claims are now being asserted with respect to the new agency actions challenged. For example, Plaintiffs have added allegations to their First Claim for Relief (an APA contrary to law claim), such that it is clear Plaintiffs allege the FRP FRN violates the APA because, in their view, it is contrary to law. Doc No. 255 at ¶¶ 308-321. But elsewhere, Plaintiffs simply reiterate prior allegations without any additions, making it unclear if that claim now extends to the new agency actions challenged. For example, in the Seventh Claim for Relief (alleging a due process violation), Plaintiffs reiterate verbatim the allegations from the Second Amended Complaint without adding new allegations, making it unclear whether they allege the new agency actions also violate due process. Doc. No. 255, ¶¶ 360-364. In short, the Supplemented Complaint is not a model of clarity.

## STANDARDS

Federal courts are courts of limited jurisdiction, and the party asserting jurisdiction bears the burden of showing it exists. *Vigueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998). To survive a Rule 12(b)(6) motion, a "complaint must contain sufficient factual material to 'state a claim to relief that is plausible on its face.'" *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I.    The FRP Parolee Plaintiffs Lack Article III Standing.

The new Plaintiffs added by the Supplemented Complaint lack standing for reasons similar to the CHNV Plaintiffs. *See* Doc. No. 114 at 9-11. To allege standing, Plaintiffs must "clearly

allege facts demonstrating" a concrete injury that is fairly traceable to the challenged conduct and likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016). "[A] plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler v. Cuno*, 547 U.S. 332, 352 (2006), and "each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000).

The FRP Parolee Plaintiffs claim that they will be injured by termination of their parole because they either will need to leave the United States or be at risk of removal or will lose eligibility for employment authorization based on parole. *See, e.g.*, Doc. No. 255 at ¶¶ 293e-m,p.[2] This injury is not fairly traceable to the FRP FRN because the risk of removal is too attenuated from the challenged conduct, and any risks resulting from the loss of parole are attributable to the inherently discretionary nature of parole, not to the agency guidance.

First, the FRP Parolee Plaintiffs were granted only temporary, discretionary permission to enter the United States, without any guarantee of continuation of that permission or any future status. No one is entitled to parole, an extension or continuation of parole, or to re-parole under any of the FRP programs. Accordingly, a pause on the acceptance or adjudication of requests under the parole programs—or a termination of the program—does not take away any pre-existing rights or benefits. Second, the risk of removal from the United States is attenuated, as multiple, discretionary steps must occur before that could happen, even if Plaintiffs are not able to secure another lawful basis to remain. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 383  (2024) ("[W]here the government action is so far removed from its distant (even if

---

[2] The FRP Parolee Plaintiffs do not appear to assert any injury from the USCIS Memo or any prior adjudication pause challenged in the Second Amended Complaint. *See* Doc. No. 255 at ¶¶ 293a-aa. Accordingly, these Plaintiffs clearly lack standing to bring the Second and Fourth Claims for Relief, and any aspect of the Sixth and Seventh Claim for Relief that are based on any alleged suspension of benefits adjudication.

predictable) ripple effects . . . the plaintiffs cannot establish Article III standing."). Plaintiffs must first be placed in some form of removal proceedings, and any requests for asylum relief or protection from removal would have to be denied. If Plaintiffs were placed in removal proceedings under 8 U.S.C. § 1229a, they could seek asylum (if appropriate) before the immigration judge. *See* 8 U.S.C. § 1229a(c)(4), 1254a(b)(5)(b).

Further, even if the FRP Parolee Plaintiffs' injuries were traceable to the challenged agency actions, they are not redressable by their claims. Relief from the challenged actions would not alter Defendants' preexisting ability to terminate each FRP Parolee's parole on an individual basis and could thus not prevent the commencement of removal proceedings—relief Congress has said is unavailable. *See* 8 U.S.C. §§ 1252(a)(5), (g). Enjoining or vacating the challenged guidance would also not compel grants of re-parole because the Court cannot compel this discretionary action. *See infra* § II. DHS has the "discretion" to determine whether to parole any individual, regardless of the existence of any program or process for re-parole. 8 U.S.C. § 1182(d)(5)(A). For these reasons, the FRP Parolee Plaintiffs lack standing to pursue their claims.

## II.    Section 1252(a)(2)(B) Precludes Jurisdiction Over Claims Challenging Discretionary Decisions Concerning Parole (Claims 1, 3, 5, 6, 7).

Plaintiffs' claims challenging the termination of parole programs—including the new allegations challenging the FRP FRN termination of parole—should be dismissed for lack of jurisdiction. *See* Doc. No. 114. In 8 U.S.C. § 1252(a)(2)(B)(ii), Congress precluded review of DHS's decisions concerning the termination of parole programs, pauses on parole adjudication, and the termination of individual grants of parole that are challenged in the First, Third, Fifth, Sixth, and Seventh Claims. Section 1252(a)(2)(B)(ii) provides: "no court shall have jurisdiction to review ... any other decision or action ... the authority for which is specified ... to be in the discretion of the ... Secretary." The exercise of parole authority under § 1182(d)(5)(A)—which

permits the Secretary to, "in [her] discretion" temporarily parole an applicant for admission into the United States and to terminate that parole "when the purposes of such parole ..., in [her] opinion ..., have been served"—is just such a "decision or action" that is subject to the bar. *See* 8 U.S.C. § 1182(d)(5)(A); *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003); *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010). Congress's bestowal of discretion to the Secretary to grant or terminate parole necessarily encompasses decisions whether to terminate processes for the grant of parole and to place such programs—or individual requests under such programs—on hold.

In its decision granting a preliminary injunction, the Court held that Section 1252(a)(2)(B)(ii) does not apply because Plaintiffs are challenging the procedures the Secretary employed to reach her decision to terminate parole, rather than the ultimate discretionary decision to terminate parole. Doc. No. 258, at 12-14. At the outset, neither the Court nor Plaintiffs have pointed to any authority by the First Circuit exempting from the jurisdictional bar in Section 1252(a)(2)(B)(ii) procedural challenges. Defendants are likewise not aware of such authority. *See Bernardo v. Johnson*, 814 F.3d 481, 484-85, n.5 (2016) (noting the question was not presently before the Court). But even assuming that this substantive/procedural distinction adopted by other Circuits, *see Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015), would be recognized by the First Circuit Court of Appeals, it would not apply to exempt from review any claims that seek to overturn the Secretary's substantive termination decisions, including but not limited to Plaintiffs' arbitrary and capricious claims. *See, e.g.*, *Nouritajer v. Jaddou*, 18 F.4th 85, 88 (2d Cir. 2021) ("[W]here . . . the gravamen of Plaintiffs' claims challenges the Secretary of Homeland Security's exercise of discretion in making a revocation decision, subject matter jurisdiction is lacking.").

Chief among the allegations that the Court characterized as procedural was Plaintiffs' allegation that "DHS failed to properly consider the purpose of the FRP programs, the reliance

interests of Plaintiffs, and the alternatives available to the agency." Doc. No. 258 at 13. But these are not procedural challenges. They do not target some freestanding procedural obligation imposed by statute or regulation. They attack how the Secretary exercised her discretion and are not procedural claims. *Nouritajer*, 18 F.4th at 89; *Ottey v. Barr*, 965 F.3d 84, 91–92 (2d Cir. 2020) ("Regardless of the rhetoric and labels used in the petition for review, a challenge that merely quarrels over the correctness of the factual findings or justification for the discretionary choices is not reviewable."); *Doe v. McAleenan*, 926 F.3d 910, 915 (7th Cir. 2019) (recognizing that "[c]ourts may review identifiable procedural rulings that don't implicate a petition's merits" but not challenges to "discretionary revocations on nominally 'procedural' grounds."). Indeed, if such claims were sufficient to evade § 1252(a)(2)(B)(ii), the jurisdictional bar would be rendered a nullity, as virtually every discretionary immigration decision could be recast as a challenge to the "process" by which the agency reasoned its way to the outcome.

The Court also characterized as procedural Plaintiffs' notice and comment claim, their claim alleging the Secretary exceeded her statutory authority, and their claim concerning insufficient notice of termination. Doc. No. 258 at 13. These claims likewise attack, and seek relief from, the substantive decision. Even assuming, *arguendo*, that these claims constitute reviewable procedural challenges, that assumption would not confer jurisdiction over Plaintiffs' arbitrary-and-capricious claims. Jurisdiction under Section 1252(a)(2)(B)(ii) is claim-specific, not complaint-wide. The presence of one potentially reviewable procedural claim does not permit judicial review of separate claims that challenge the Secretary's discretionary decision-making and are independently barred by statute.[3] Accordingly, Plaintiffs' claims challenging those decisions are

---

[3] The Court has already concluded Plaintiffs are unlikely to succeed on the merits of their notice and comment claim. Doc. No. 258 at 26-30. As for Plaintiffs' claim that the Secretary exceeded

not subject to review and must be dismissed.[4]

### III. Plaintiffs Do Not Identify Which, if Any, Plaintiffs Have Standing to Challenge the December 2 USCIS Memo.

Plaintiffs must have standing for each of their claims. *DaimlerChrysler*, 547 U.S. at 352; *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734 (2008) ("[S]tanding is not dispensed in gross.") (quoting *Lewis v. Casey*, 518 U.S. 343, 358, n.6 (1996)); *Hochendoner v. Genzyme Corp*., 823 F.3d 724, 733 (1st Cir. 2016). Although Plaintiffs' Supplemented Complaint adds a challenge to the December 2 USCIS Memo insofar as it suspends final adjudication of certain applications for immigration benefits, Doc. No. 255 at ¶¶ 6a, 300a, 3001a, 303a, 347a. Plaintiffs do not point to which, if any, of the pre-existing Plaintiffs or new FRP Parolee Plaintiffs are allegedly injured or imminently injured by this adjudication hold. Nor do Plaintiffs supplement their Complaint with any updates concerning the pre-existing Plaintiffs' applications for immigration benefits. *See, e.g.*, *id.* at ¶ 326. Without such allegations, the Court cannot evaluate whether any Plaintiff even allegedly has Article III standing to assert this new claim. For this reason, the Court should dismiss the supplemental allegations challenging the December 2 USCIS Memo and implicating the Second, Fourth, Sixth, and Seventh Claims for Relief.

### IV. Plaintiffs' APA Claims Fail at the Threshold (Claims 1-5).

Plaintiffs' first five claims for relief, as supplemented to challenge the FRP FRN or the December 2 USCIS Memo, as applicable, fail at the threshold for the reasons previously set forth by Defendants. *See* Doc No. 114 at 12-15.

---

her statutory authority, that claim consists of two substantive allegations: Plaintiffs allegation that "DHS did not determine that the purposes of the individuals' grants of parole had been served," Doc. No. 255 at ¶ 319a, and Plaintiffs' allegation that DHS was required to terminate parole grants on a case-by-case basis, *id.* But this Court rejected the first of these arguments, Doc. No. 258 at 17, and the Court of Appeals rejected the second, *Doe v. Noem*, 152 F.4th 272, 286 (1st Cir. 2025).

[4] The Secretary's decision to terminate FRP parole is also not reviewable under the APA because it is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). *See* Doc. No. 114 at 14-15.

V.    **The Substantive APA Claims Do Not State a Claim.**

Even if Plaintiffs' APA claims were reviewable, the Court should dismiss the Plaintiffs' First, Second, and Fourth Claims for Relief for failure to state a claim as a matter of law.

**A.  Plaintiffs' First Claim for Relief Does Not State a Claim As to the FRP FRN.**

Plaintiffs supplement their complaint to allege that as to the FRP FRN, the Secretary did not determine that the purposes of parole "have been served," as the statute requires, Doc. No. 239 at ¶ 318a, but that is controverted by the face of the FRP FRN that documents the Secretary's decision. 90 Fed. Reg. at 58045. Over the course of ten pages, the Secretary explained that the FRP programs, inclusive of the parole grants bestowed upon beneficiaries, did not accomplish several of their intended purposes. 90 Fed. Reg. at 58034-44. The Secretary then explained that for the "same reasons set forth above. . . neither urgent humanitarian reasons nor significant public benefit warrants the continued presence of aliens paroled under the FRP programs and the purposes of such parole therefore have been served." *Id*. at 58045.

Plaintiffs have argued the Secretary cannot consider whether the purposes of parole have been served in just one sentence. Doc. 218 at 15. This argument lacks any basis. The Secretary is not barred from relying on the same considerations to terminate individual parole grants that she relied on to terminate the FRP programs, where the rationales substantially overlap. And in response to a virtually identical argument made by Plaintiffs with respect to the Secretary's decision to terminate CHNV parole grants, the Court of Appeals "agree[d] with the Government" that the appropriate scope of review requires consideration of the termination notice as a whole, including the overlapping rationales for terminating the parole programs and the individual grants issued under them. *Doe*, 152 F.4th at 290.

Plaintiffs' argument also rests on a faulty premise, seemingly conflating "have been served" with "have been accomplished." *See* Doc. No. 218 at 15 (asserting that the Secretary's

"explanation says nothing about whether the individual parolees have *accomplished* the family reunification purposes of their parole . . . . Had she considered that purpose, she would have had difficulty explaining how it 'has been served' with regards to FRP parolees who are not yet eligible to apply to adjust status to LPR.") (emphasis added). Plaintiffs seemingly believe that for the Secretary to determine that the purposes of parole "have been served," she needs to establish that *all* the objectives of the parole—including family reunification—were successfully "accomplished" to completion. *Id.* The statute imposes no such requirement. A grant of parole may rest on multiple purposes, and the Secretary may determine that those purposes have been served even if some objectives were not yet fully realized. The statute requires only a judgment that—in *the opinion of* the Secretary—the purpose has run its course, not that it succeeded, concluded, or achieved every hoped-for result. *Doe*, 152 F.4th at 286 ("Once the executive branch determines . . . that achieving the policy aim is *no longer possible or desired*, then it takes no individualized determination in any way to ascertain those persons for whom it can no longer be said that parole furthers the country's interest.") (emphasis added); 8 C.F.R. § 212.5(e)(2)(i) ("upon accomplishment of the purpose for which parole was authorized or when in the opinion [of the Secretary] . . . neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated."). Here, the Secretary determined that the goal of allowing certain relatives of LPRs or USCs to apply for adjustment of status in the United States rather than awaiting consular processing was outweighed by the national security and public safety risks engendered by FRP's insufficient vetting.

Plaintiffs also say the Secretary had to make that determination on a case-by-case basis. Doc. No. 255 at ¶ 319a. The First Circuit held that argument was unlikely to succeed: the parole "statute specifies that the Secretary's decision to grant parole must be carried out 'only on a case-

by-case basis' and 'for urgent humanitarian reasons or significant public benefit,'" but "the clause describing the Secretary's authority to terminate any grants of parole does not contain the same limiting language." *Doe*, 152 F.4th at 286. "The statutory text, therefore, favors an interpretation that the 'case-by-case' requirement only limits the Secretary's discretion to grant parole." *Id.*

### B.  Plaintiffs' Second and Fourth Claims Fail to State a Claim.

Plaintiffs seek to extend their Second and Fourth Claims for relief to the December 2 USCIS Memo. Doc. No. 255 at ¶¶ 322-330 (and subparts), at ¶¶ 343-349 (and subparts). As noted, the Supplemented Complaint does not identify which, if any, Plaintiffs have pending applications subject to a hold under the December 2 USCIS Memo. Regardless, these claims are subject to dismissal for the reasons stated in Defendants' prior motion to dismiss. Defendants refer the Court to Doc. No. 114 at 20-23 and incorporate these arguments as if set forth herein.

Further, Plaintiffs' new allegations do not state a claim that the December 2 USCIS memo is contrary to law. Contrary to those allegations, neither the December 2 USCIS Memo nor any prior adjudication holds "alter[ed]" any "condition" of parole. *See* Doc. No. 239 at ¶ 328a. No parolee Plaintiff alleges that DHS imposed any condition on parole concerning the processing of their potential or anticipated requests for relief from removal or an immigration benefit. Further, the December 2 USCIS Memo has nothing to do with parole: it temporarily pauses adjudication of applications for asylum, as well as other immigration benefits requests, for nationals of certain countries deemed to present a high risk from a national security perspective, irrespective of the basis for their presence in the United States. Doc. No. 224.[5]

---

[5] The Court may consider the December 2 USCIS Memo on this motion to dismiss because it is central to Plaintiffs' claim and incorporated by reference into the Supplemented Complaint. *See Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007); *Pizzuto v. Homology Medicines, Inc.*, No. 1:23-cv-10858, 2024 WL 1436025, at *1 (D. Mass. Mar. 31, 2024).

Next, contrary to Plaintiffs' allegations, the December 2 USCIS Memo does not implicate 8 U.S.C. § 1152(a)(1)(A), which prohibits discrimination in the issuance of immigrant visas. *See* Doc No. 255 at ¶ 329b. Section 1152(a)(1)(A) provides: "Except as specifically provided in [four specified statutory provisions], no person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence." 8 U.S.C. § 1152(a)(1)(A). However, the statute provides that "[n]othing in this paragraph shall be construed to limit the authority of the Secretary of State to determine the procedures for the processing of immigrant visa applications or the locations where such applications will be processed." *Id.* § 1152(a)(1)(B).

The December 2 USCIS Memo does not address the issuance of immigrant visas, which are issued by consular officers at the U.S. Department of State, and which allow an alien to "obtain transportation to the United States" and seek admission at a port of entry. 1 Charles Gordon et al., *Immigration Law and Procedure* § 8.04[1] (2016). By contrast, the applications at issue in the December 2 USCIS memo are applications for protection in the form of discretionary asylum as well as requests for various immigration benefits filed with USCIS, *see Trump v. Hawaii*, 585 U.S. 667, 695 (2018) (holding that section 1152(a)(1)(A) did not prohibit the President from barring entry of nationals from certain countries based on separate authority that operates in a "different sphere). To the extent Plaintiffs argue the statute extends to requests for permanent resident status submitted to USCIS, that argument is not supported by the statutory text, nor does the Complaint cite any other supporting authority. Moreover, the December 2 USCIS Memo does not set forth a policy to deny or withhold such status from nationals of certain countries; it does not itself address the outcome of any request for permanent resident status at all.  Rather, as relevant to Plaintiffs' claims, it simply pauses the final adjudication to permit additional national security vetting. *See*

Doc. No. 224. This action to enhance the procedures used to determine eligibility for a discretionary benefit and national security risk cannot possibly be read as discrimination in the issuance of immigrant visas.

## VI.    Plaintiffs Cannot State a Claim for Failure to Follow Agency Procedures (Claim Five).

To the extent that Plaintiffs allege that the Secretary's termination of parole does not comport with agency regulations, this claim also fails.[6] DHS's provision of notice of the termination of individual FRP parole grants through publication in the *Federal Register* and individualized notice to a USCIS online account meet its regulatory notice requirements. The regulation requires only that "parole shall be terminated upon written notice to the alien[.]" 8 C.F.R. § 212.5(e)(2)(i). Neither the statute nor regulations define or limit "written notice" of parole termination. *See id.* The regulation does not specify that written notice of parole termination must be accomplished by a particular means or require DHS to "furnish individual notice." *See Bank of Commerce v. Bd. of Governors of Fed. Res. Sys.*, 513 F.2d 164, 167 (10th Cir. 1975).

The Court held in its opinion supporting the issuance of a preliminary injunction that the requirement in 8 C.F.R. § 212.5(e)(2)(i) that parole can only be terminated "upon written notice to the alien" requires more than publication in the federal register because FRP parolees are not sophisticated business entities and would have had no reason to anticipate notice by publication in the federal register. Doc. No. 258 at 31-32. But whether notice by publication is "insufficient in law," *id.* quoting 44 U.S.C. § 1507, depends on whether a statute, regulation, or constitutional requirement mandates a different form of notice—not on the perceived sophistication or expectations of the affected individuals. Section 212.5(e)(2)(i) does not mandate a different form

---

[6] As noted above, the way Plaintiffs have "supplemented" their complaint is confusing. Despite the Court's instructions, Plaintiffs have repeated every paragraph of their prior complaint, such that it is not clear which allegations and claims relate to the new challenged actions.

of notice. It provides only that notice be "written"—which the federal register quintessentially is.

Earlier in issuing the TRO, the Court held that the requirement in Section 212.5(e)(2)(i) that parole be terminated "upon written notice <u>to the alien</u>" demands individualized, direct notice to each parolee. ECF No. 243 at 3 (emphasis in original). Respectfully, that reading is incorrect. It adds words to the regulation that are not there, conflicts with the structure of DHS's regulations as a whole, and disregards settled principles of administrative law regarding notice.

DHS has a regulatory framework governing service of notices. Section 103.8 defines "routine service" to include notice by ordinary mail to the affected party's last known address or, if requested, electronic delivery via the USCIS account. 8 C.F.R. § 103.8(a)(1). That framework, however, applies only where another provision explicitly requires "service" or otherwise invokes § 103.8. *See, e.g.*, 8 C.F.R. § 281.1(d) (requiring notice of decision imposing civil penalties to be provided "either in person or using routine service as outlined in § 103.8(a)(1)(i)"). Unlike other DHS regulations, § 212.5(e)(2)(i) contains no reference to "service" and does not invoke § 103.8. Instead, it simply provides that "parole shall be terminated upon written notice to the alien." 8 C.F.R. § 212.5(e)(2)(i). The regulation does not limit what constitutes "written notice," does not specify a method of delivery, and does not require that notice be individually delivered.

The phrase "to the alien" does not fill in the blank left open by those omissions. The phrase "to the alien" specifies the *audience* for the notice, not the *method* of delivery. It requires the alien to be an intended recipient of the notice, but that requirement can be met even in the absence of individuated notice. Consider these hypotheticals: A notice terminating the parole of Jane Doe, mailed or emailed to her husband, John Doe, would not satisfy the "to the alien" language in § 212.5(e)(2)(i). That is because Jane Doe was not a recipient of the notice. By contrast, a single notice terminating the parole of both Jane and John Doe would satisfy the "to the alien" language

in § 212.5(e)(2)(i) if that notice were mailed to John and Jane Doe jointly at their home (Dr. Mr. and Mrs. Doe), or emailed to them at their individual email addresses in a singular email. These examples clarify that the issue is not whether notice was individualized. By statute, publication in the federal register constitutes notice to every person "subject to or affected by it." 44 U.S.C. § 1507; *see Bank of Commerce v. Bd. of Governors*, 513 F.2d 164, 167 (10th Cir. 1975) ("By Act of Congress notice by publication in the Federal Register is declared to be notice to all persons residing within the States of the Union," unless "statute []or any regulation compels the [government] to furnish individual notice."). On its face, § 212.5(e)(2)(i) does not require individualized notice.

Reading the phrase "to the alien" to require individualized notice adds words to the regulation. Courts "cannot rewrite statutes and regulations merely because [they] think they imperfectly express congressional intent or wise social policy." *Vainisi v. Comm'r*, 599 F.3d 567, 572 (7th Cir. 2010). Nor may courts impose procedural obligations on agencies not required by statute or regulation. *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 524 (1978).

Had DHS intended the phrases "written notice" or "to the alien" to require individualized service of notice, it could have made that clear by saying "individualized written notice" or invoking the phrase "routine service" or referencing § 103.8. It did not do so, confirming that the regulation does not require individualized or mailed notice. This conclusion is reinforced by comparison to other immigration regulations, which expressly mandate individualized notice or specify the method of delivery. *See, e.g.*, 8 C.F.R. § 244.10 (requiring TPS denials be provided to applicants "in writing served in person or by mail to the alien's most recent address."); 8 C.F.R. § 281.1(d) (requiring notice of decision imposing civil penalties be provided "either in person or using routine service as outlined in § 103.8(a)(1)(i)"). And were there any doubt, the agency is

entitled to deference in its reasoned and considered interpretation of ambiguous regulations—as set forth in the FRN. *Kisor v. Wilkie*, 588 U.S. 558 (2019). The agency's interpretation is undoubtedly at least reasonable, for the reasons just explained. Appropriate and feasible means of affording notice of parole terminations also fall within the agency's expertise

## VII.    Plaintiffs Cannot State a Claim for "Nonstatutory Review" (Claim Six).

Plaintiffs' Sixth Claim asks the Court to use its inherent equitable authority to enjoin Defendants' actions terminating or pausing parole programs and pausing adjudication of certain immigration benefits as in excess of legal authority. Doc. No. 239 at ¶¶ 356-358.  Plaintiffs have not supplemented their complaint in any way that would indicate they are extending this claim to the new agency actions challenged. But to the extent they believe that restating these claims gives notice that they now apply to the FRP FRN and the December 2 USCIS Memo, this claim is subject to dismissal for the reasons previously briefed by Defendants. *See* Doc. No. 114 at 23-24.

## VIII.   Plaintiffs Cannot State a Due Process Claim (Claim Seven).

To the extent Plaintiffs contend that DHS's notice of parole revocation as to the FRP parolees fails to satisfy procedural due process,[7] that argument fails. To have a protected interest in a benefit for purposes of due process, "a person clearly must have more than an abstract need or desire . . . or a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972). Discretionary benefits do not meet that standard. *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 463 (1981) ("A constitutional entitlement cannot be created ... merely because a wholly and expressly discretionary state privilege has been granted generously in the past."); *United States v. Herrera-*

---

[7] Plaintiffs previously asserted a procedural due process claim in their seventh claim. Doc. 68, ¶ 359-363. They copied those allegations into their Supplemented Complaint verbatim, without supplementing them or in any way indicating they are now extending that claim to the new agency actions cha. Doc. No. 255 at ¶¶ 360-364.

*Pagoada*, 14 F.4th 311, 320 (4th Cir. 2021); *Kandamar v. Gonzales*, 464 F.3d 65, 69 (1st Cir. 2006).

Plaintiffs' due process claim fails for the reasons previously briefed and incorporated herein by reference. *See* Doc. No. 114 at 24-26; Doc. No. 251 at 20-21. The Court held that *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950) requires that FRP parolees receive adequate notice of termination, and that the notice was Constitutionally inadequate, Doc. No. 258 at 35-36, but the Court did not engage with Defendants' argument that because parole is discretionary, beneficiaries lack a constitutionally protected interest in parole. Doc. No. 252 at 20-21. Defendants again incorporate those arguments by reference here. *Id*.

## IX. Plaintiffs' Eighth Claim for Relief Fails.

As to their new Notice and Comment Claim, Plaintiffs do not allege that the Secretary's decision to terminate the FRP programs was required to go through notice-and-comment, but allege instead that the Secretary's subsidiary discretionary decision to terminate grants of parole issued pursuant to those programs does require notice-and-comment. Doc. No. 239 at ¶¶ 363a-i. This distinction is illusory. If the Secretary may, without notice-and-comment, terminate the FRP programs, she may exercise that same discretion to terminate parole grants under those programs.

The APA also does not require notice and comment for discretionary decisions terminating individual grants of parole, even when the agency announces those decisions through generally applicable guidelines. That is because the decision to terminate parole does not constitute rulemaking. That does not change merely because the Secretary chose to terminate multiple parole grants in a single action. Rather, she correctly identified her decision as a "general statement of policy," exempt from notice-and-comment. 90 Fed. Reg. at 58045. A general statement of policy is a "statement issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln*, 508 U.S. at 197.

Plaintiffs allege that the termination of parole grants is not a general statement of policy. Doc. No. 239 at ¶ 361c. Not so. The termination of FRP parole grants did not impose any rights or create any obligations. Parole is temporary and terminable at any time, and it confers no entitlement to remain in the United States, to employment authorization, or to future re-parole. *See* 8 U.S.C. § 1182(d)(5). An "obligation" for APA purposes refers to an affirmative legal duty imposed by agency action, not the loss of discretionary benefits or consequences that flow from that loss. *See Am. Mining Cong. v. MSHA*, 995 F.2d 1106, 1109–12 (D.C. Cir. 1993). Plaintiffs' Supplemented Complaint seemingly conflates the fact that practical *consequences* may follow from the termination of parole with the imposition of new, legally binding *obligations* created by the termination. Any consequences flowing from the termination of parole—including the need to depart the country, the loss of work authorization or accrual of unlawful presence—arise by operation of existing law, not because the Secretary promulgated a new rule.

Further, Plaintiffs' contention that the Secretary's decision to terminate existing grants of parole is "binding," Doc. No. 239 at ¶ 361(d), ignores the discretion the notice expressly preserves. The Secretary retained authority to exempt individual parolees from termination, 90 Fed. Reg. at 58033, and the statute, § 1182(d)(5) does the same work by giving the Secretary discretion to grant parole, re-parole on a case-by-case basis. Simply put, what Plaintiffs characterize as a "mass truncation" is simply the uniform application of a discretionary policy choice within the bounds of existing statutory authority. The APA does not require notice-and-comment rulemaking whenever an agency exercises discretion in a way that affects many people, nor is it required here.

Plaintiffs' allegation that the USCIS Memo is a binding rule fails for the same reason. The USCIS Memo temporarily defers agency action to permit USCIS to assess information received from national security and law-enforcement partners regarding potential public-safety risks,

including reports of violent criminal activity. Doc. No. 224. It does not alter the statutory or regulatory criteria governing eligibility for any immigration benefit, nor does it categorically deny relief to any applicant. A pause in adjudication is not the same as a denial of benefits, let alone a permanent or categorical one. Plaintiffs' characterization of the Memo as "categorically den[ying] an entire class of applicants access to congressionally authorized benefits" therefore rests on a false premise. Additionally, agencies have broad discretion to manage their dockets and sequence their adjudications, including the discretion to temporarily suspend adjudication while considering relevant policy, operational, or safety concerns. See, e.g., *Lincoln*, 508 U.S. at 193 (recognizing agency discretion over how to allocate resources and administer programs). Nothing in the APA requires notice-and-comment whenever an agency pauses adjudications to reassess how discretionary authority should be exercised. To the contrary, internal case-processing decisions are paradigmatic examples of non-rulemaking agency action. Indeed, if Plaintiffs were right, agencies would be required to engage in notice-and-comment rulemaking whenever they temporarily pause adjudications to address emergent concerns, reassess policy, or await necessary information. The APA imposes no such requirement. Indeed, the Court has already held that Plaintiffs are unlikely to succeed on the merits of their notice and comment claim. Doc. No. 258 at 22-23.

## **<u>CONCLUSION</u>**

For these reasons, the Court should dismiss the new claims asserted in the Supplemented Complaint.

Dated: January 30, 2026                    Respectfully submitted,

                                           By: /s/ *Elissa Fudim*
                                                ELISSA FUDIM
                                                *Trial Attorney*
                                                U.S. Department of Justice, Civil Division
                                                Office of Immigration Litigation

                                                KATHERINE J. SHINNERS
                                                *Senior Litigation Counsel*

                                                *Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2026, I electronically filed this memorandum with the Clerk of the Court for the United States District Court for the District of Massachusetts by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: <u>*/s/ Elissa Fudim*</u>
ELISSA FUDIM
*Trial Attorney*
United States Department of Justice

## CERTIFICATE UNDER LOCAL RULE 7.1(a)(2)

Defendants conferred with Plaintiffs' counsel about the relief requested in this motion by email on January 30, 2026, and Plaintiffs oppose the relief sought herein.

By: */s/ Elissa Fudim*
ELISSA FUDIM
*Trial Attorney*
United States Department of Justice