# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DMYTRO KULYK,<br><br>        Petitioner,<br><br>vs.<br><br>KRISTI NOEM, Secretary of U.S. Department of Homeland Security; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; PETER BERG, Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement; SAMUEL J. OLSON, Field Office Director of Enforcement and Removal Operations, Chicago Field Office, U.S. Immigration and Customs Enforcement; and ERIC TOLLEFSON, Sheriff of Kandiyohi County Jail, Minnesota, in their official capacities,<br><br>        Respondents. | Case No. 0:26-cv-00556-SHL-SGE<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION.

Petitioner Dmytro Kulyk is a citizen of Ukraine who, until very recently, had been released on parole in the United States for more than two years pursuant to a special humanitarian program for citizens of Ukraine. Immigration officials issued him a valid work permit, and he filed a timely application to renew his parole two months before it expired. Immigration officials have not ruled on his renewal request, however, and his parole has now expired. On January 1, 2026, officers with U.S. Immigration and Customs Enforcement ("ICE") arrested him. For reasons stated below, the Court reluctantly concludes that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) and therefore DENIES his Petition for Writ of Habeas Corpus.

## II.    FINDINGS OF FACT.

Petitioner is a citizen of Ukraine who arrived in the United States on or about September 29, 2023. (ECF 2, ¶ 1.) He entered the country lawfully as part of the Uniting for Ukraine parole program[1] under the class admission UHP. (Id.) This is a humanitarian program designed to provide temporary protection to Ukrainian nationals displaced by war. (Id.) The program is governed by 8

---

[1] *See* https://www.dhs.gov/archive/uniting-ukraine (last visited January 27, 2026).

1

U.S.C. § 1182(d)(5)(A). Petitioner was placed on parole on his date of entry in the United States. (ECF 2-3.) His parole was valid until September 27, 2025, although he timely filed an application to extend the parole on June 5, 2025. (ECF 2, ¶ 2.) Petitioner's application remains pending with U.S. Citizenship and Immigration Services ("USCIS"). (Id.) Petitioner also filed an application for asylum on January 22, 2026. (ECF 2, ¶ 4.) He has lived peaceably in Minnesota for nearly two years, with strong ties to the community. (Id., ¶ 5.) He has a valid work permit and no criminal history. (Id., ¶ 3.)

On January 1, 2026, Petitioner was taken into custody by ICE officers. (Id., ¶ 6.) On the same date, he was personally served a Notice to Appear. (ECF 2-4.) The Notice to Appear identifies Petitioner as "an arriving alien" and alleges that he is subject to removal pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act[2] (the "INA"), which provides:

> Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission . . . who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible.

The Notice to Appear sets a hearing date of February 5, 2026. (ECF 2-4, p. 1.) Petitioner is detained at the Kandiyohi County Jail.[3] (ECF 2, ¶ 7.)

Petitioner seeks a writ of habeas corpus ordering, among other things, that he be immediately released or, at least, granted an individualized bond hearing pursuant to 8 U.S.C. § 1226(a), not § 1225(b). (ECF 2, p. 17.) The Federal Respondents[4] resist, arguing that Petitioner is properly classified as an "arriving alien" for purposes of 8 U.S.C. § 1225(b) because he was "seeking admission" when he presented at a port of entry in September 2023, was paroled into the United States, and is continuing to "seek admission" to this day through a pending asylum application. (ECF 6, pp. 2, 8.) Accordingly, Respondents argue that Petitioner is subject to mandatory detention under § 1225(b). (Id., p. 9.)

---

[2] This section is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I).
[3] *See* https://locator.ice.gov/odls/#/results (last visited January 27, 2026).
[4] "Federal Respondents" are Kristi Noem, Secretary of Homeland Security; Todd M. Lyons, Acting Director of Immigration and Customs Enforcement; Peter Berg, Director, St. Paul Field Office, Immigration and Customs Enforcement; and Samuel J. Olson, Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement.

**III.     HABEAS CORPUS STANDARDS.**

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). The Court presumes that Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs.*, No. 22-3032-JWL, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

**IV.     LEGAL ANALYSIS.**

*A.  Petitioner's Notice to Appear Wrongly Designates Him as an "Arriving Alien."*

As a threshold matter, there is ambiguity in Respondents' documents regarding Petitioner's status. His Notice to Appear, which was not issued until January 1, 2026 (more than two years after he arrived in the United States), contained the following options:

> [X] You are an arriving alien.
> [ ] You are an alien present in the United States who has not been admitted or paroled.
> [ ] You have been admitted to the United States, but are removable for the reasons stated below.

(ECF 2-4, p. 1.) The immigration official chose to check the first box and identify Petitioner as an "arriving alien." (Id.) This is a term of art that implicates 8 U.S.C. § 1225(b)(1), which governs "an alien . . . who is arriving in the United States." When such an alien enters the United States, an asylum officer must conduct an interview to determine whether the alien "has a credible fear of persecution" for purposes of asylum laws. *Id.* § 1225(b)(1)(B)(i)–(ii). If so, "the alien shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii). If not, "the officer shall order the alien removed from the United States without further hearing or review." *Id.* § 1225(b)(1)(B)(iii)(I).

In context—and with one exception discussed below—there is no plausible way to read the words "arriving alien" in § 1225(b)(1) as applying to Petitioner. He entered the United States more than two years ago and has lived in the community, with the full awareness of immigration

3

officials, until his recent arrest. Moreover, there is nothing in the record to suggest that an "asylum officer" interviewed Petitioner following his recent arrest in the manner required by § 1225(b)(1)(B)(i), as would be required if Petitioner was truly an "arriving alien." The Notice to Appear is simply wrong in designating him in that way.

Granted, § 1225(b)(1)(A)(iii) gives the Attorney General discretion to treat other aliens as "arriving aliens" in some circumstances. This discretion only applies, however, to an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this paragraph." *Id.* § 1225(b)(1)(A)(iii)(II). Here, Petitioner *was* paroled into the United States and has been physically present for more than two years. Accordingly, again, there is no basis for immigration officials to treat him as an "arriving alien." Perhaps for this reason, the Federal Respondents' Response to Petition for Writ of Habeas Corpus hedges and encourages the Court to evaluate Petitioner "as an arriving alien with a pending asylum claim under [8 U.S.C. § 1225](b)(1) *or* through the 'catchall provision' in [8 U.S.C. § 1225](b)(2) for noncitizens seeking admission." (ECF 6, p. 9 (emphasis added).)

Before evaluating the Federal Respondents' position under § 1225(b)(2), it is important to note that the alternatives on the Notice to Appear also do not squarely fit Petitioner's situation. One alternative would have been to designate him as "an alien present in the United States who has not been admitted or paroled." (ECF 2-4, p. 1.) This doesn't work because Petitioner lawfully entered the United States pursuant to a humanitarian program governed by 8 U.S.C. § 1182(d)(5)(A), which states (with emphasis added):

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion **parole** into the United States temporarily under such conditions as [the Secretary] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such **parole** of such alien shall not be regarded as an admission of the alien and when the purposes of such **parole** shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was **paroled** and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

As this language shows, Petitioner has been "paroled." This is presumably why immigration officials did not designate him as "an alien present in the United States who has not been admitted

4

or paroled." It also would have been inaccurate for immigration officials to choose the third alternative and designate Petitioner as someone who "ha[s] been admitted to the United States, but [is] removable for the reasons stated below." (ECF 2-4, p. 1.) Section 1182(d)(5)(A) states in no uncertain terms that "parole of such alien shall not be regarded as an admission of the alien."

The inability of immigration officials to find an accurate designation for Petitioner on the Notice to Appear is representative of one of the problems presented by this case and thousands of others that have been litigated in recent months in courts across the country: The statutory language of the relevant provisions of the INA is sometimes internally inconsistent and often fails to provide a clear picture of where, exactly, a particular alien falls within the statutory framework. The problem is especially acute for Petitioner given his participation in the Uniting for Ukraine program, which gave him the legal right to live and work in the United States on a parole basis starting on September 29, 2023. While his documents show that his parole expired on September 27, 2025, he filed a timely application for renewal in June 2025 that, for unknown reasons, has not yet been decided. In these circumstances, he is not an "arriving alien" under § 1225(b)(1).

> B. Based on <u>Jennings v. Rodriguez</u>, Petitioner Is Subject to Mandatory Detention Pursuant to 8 U.S.C. § 1225(b)(2).

With "arriving alien" off the table, the question turns to how Petitioner should be categorized given his status as a parole recipient under § 1182(d)(5)(A). Respondents assert that he is an "applicant for admission" as defined in § 1225(a)(1) and thus is subject to mandatory detention pursuant to § 1225(b)(2)(A). With some reluctance, the Court agrees.

>> 1. Petitioner Is an "Applicant for Admission" Under 8 U.S.C. § 1225(b)(2)(A).

Section 1225(a)(1) defines "applicant for admission" to mean "[a]n alien present in the United States who has not been admitted or who arrives in the United States." Here, Petitioner was allowed to enter the United States on parole as part of a humanitarian program governed by § 1182(d)(5)(A). In relevant part, that statute states that "such parole of such alien shall not be regarded as an admission of the alien." *Id.* It further states that when the Secretary of Homeland Security decides that the purposes of the humanitarian parole have been satisfied, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* This language is unequivocal: Petitioner is an "applicant for admission" as defined in § 1225(a)(1).

5

Granted, Petitioner has a pending application to renew his parole. If this application is granted, then he will not have to remain in custody. At present, however, his parole has expired, and nothing has happened to extend it. Accordingly, he is an "applicant for admission" who is not—for now, at least—on parole status.

> 2. But for *Jennings v. Rodriguez*, the Court Would Conclude That Petitioner Is Entitled to a Bond Hearing Pursuant to 8 U.S.C. § 1226(a).

The question turns, then, to whether Petitioner is subject to mandatory detention under § 1225(b)(2)(A) without the opportunity for a bond hearing. Based on a recent Supreme Court decision, *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Court concludes that he is. The Court will, however, explain why it hopes it is interpreting *Jennings* incorrectly (or, more precisely, why it hopes the Supreme Court will narrow or clarify *Jennings* when given the chance to do so).

In *Jennings*, the petitioner was a lawful permanent resident of the United States until being convicted of a drug offense and theft of a vehicle, which led immigration officials to initiate removal proceedings against him. *Id.* at 289–90. He was subject to mandatory detention during these proceedings pursuant to § 1226(c). After losing his case at each stage in the immigration courts, the petitioner sought review in the United States Court of Appeals for the Ninth Circuit. *Id.* at 290. In the meantime, he filed a habeas petition—which later became a class action—in the Central District of California alleging that he was entitled to a bond hearing to determine whether ongoing detention was warranted. *Id.* The Ninth Circuit affirmed the entry of injunctive relief requiring the petitioner and other similarly situated individuals to have individualized bond hearings every six months. *Id.* at 291–92.

The Supreme Court reversed, concluding there was nothing in the language of § 1225(b)(1), § 1225(b)(2), or § 1226(c) that could be interpreted to "include an implicit 6-month time limit on the length of mandatory detention." *Id.* at 303–04. Specifically, *Jennings* concluded that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Id.* at 302. As for § 1226, *Jennings* explained that it "applies to aliens already present in the United States" and creates a "default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond [except in enumerated circumstances]." *Id.* at 303.

6

*Jennings* has played a significant role in thousands of habeas cases across the country in recent months where district courts have been asked to decide whether aliens who are arrested by ICE after being in the United States for extended periods of time are subject to mandatory detention under § 1225(b) or entitled to bond hearings under § 1226(a). In those cases, federal officials have relied heavily on *Jennings*'s conclusion that detention is mandatory under § 1225(b)(2) for "applicants for admission" for the duration of their removal proceedings. Because, in the view of these federal officials, the phrase "applicants for admission" is broad enough to capture most—if not all—of the aliens currently in the country without lawful status, federal officials have consistently argued that those aliens are subject to mandatory detention from the moment they are arrested by ICE agents until their removal proceedings end. No bond hearing is required. The habeas petitioners, by contrast, have relied on *Jennings*'s conclusion that § 1226 "applies to aliens already present in the United States." *Id.* The petitioners interpret this to mean that aliens who were not apprehended at the border upon their entry to the United States are not "applicants for admission" as defined in § 1225(a)(1) and thus are not subject to mandatory detention under § 1225(b). Most courts have agreed with petitioners, although a notable minority have not.

One of the challenges underlying these cases is that there is a plausible textual basis for interpreting "applicants for admission" as broadly as federal officials propose, and yet immigration officials have for dozens of years concluded (in Republican and Democratic administrations alike) that aliens who are already in the United States are entitled to bond hearings and other due process in accordance with § 1226(a). In other words, no one has interpreted or applied § 1225(b) in the way immigration officials are now attempting to interpret and apply it. Federal officials explain this incongruity by arguing that Attorney General and Security of the Department of Homeland Security can choose between § 1225(b) and § 1226(a) when they initiate removal proceedings. Thus, in their view, the fact that prior administrations have chosen to give aliens already present in the United States the opportunity for a bond hearing under § 1226(a) does not foreclose the current administration from choosing to proceed under § 1225(b), with its mandatory detention provisions. The habeas petitioners, by contrast, argue that past practice, combined with *Jennings*, shows that aliens who are already in the country are not governed by § 1225(b) at all.

In most of those cases, the aliens have not been on humanitarian parole under § 1182(d)(5)(A), and thus Petitioner's situation presents a different fact pattern. Even so, *Jennings* plays a role here, too, because it forecloses what this Court believes is the most natural and logical

7

way to interpret the interplay between §§ 1225 and 1226. But for *Jennings*, the Court would conclude that detention without the opportunity for bond is required only for aliens in expedited removal proceedings governed by § 1225(b)(1)(B)(iii) and/or who fall under one of the enumerated exceptions in § 1226(c). In other cases—including, especially, cases involving aliens who are arrested after already being in the country—the aliens are "applicants for admission" under § 1225(a)(1) **and** are eligible for bond under § 1226(a).

The Court would reach this conclusion for two reasons. First, and most importantly, the statutory language supports it. As it relates to mandatory detention, there are important differences in word choice between the expedited removal proceedings governed by § 1225(b)(1)(B)(iii) and the non-expedited proceedings governed by § 1225(b)(2). For aliens in expedited removal proceedings, there is a section entitled "Mandatory Detention" that states: "Any alien subject to the procedures under this clause [i.e., the clause governing expedited removal] shall be detained **pending a final determination** of credible fear of persecution and, if found not to have such a fear, until removed." *Id.* § 1225(b)(1)(B)(iii)(IV) (emphasis added). By contrast, for "applicants for admission" in non-expedited proceedings, there is no subsection entitled "Mandatory Detention." Instead, the detention language is found in a subsection entitled "In general" and states that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained **for a proceeding under section 1229a** of this title." *Id.* § 1225(b)(2)(A) (emphasis added).

The fact that aliens in expedited removal proceedings under § 1225(b)(1)(B)(iii)(IV) are are subject to detention "pending a final determination" but aliens in non-expedited proceedings under § 1225(b)(2)(A) are merely "detained for a proceeding under section 1229a" is noteworthy. The language of the former subsection expressly says that detention is required for the entire duration of the proceeding. The language of the latter subsection does not. Moreover, § 1225(b)(2)(A) cross-references 8 U.S.C. § 1229a, which sets out the procedural requirements for removal proceedings. Section 1229a and its corollary, 8 U.S.C. § 1229, assume that aliens in removal proceedings often will not be in custody. For example, § 1229(a)(1)(F) requires aliens to provide an address and telephone number "at which the alien may be contacted respecting proceedings under section 1229a of this title," as well requiring the alien to update this information if it changes. Similarly, § 1229a(b)(5) explains the consequences for an alien who fails to appear for a removal hearing. It would make little sense for Congress to have passed statutes

8

acknowledging that aliens routinely will be out of custody at the time of their hearings and yet also, as Respondents argue, have intended for virtually all aliens in the country without lawful status to be subject to mandatory detention. It likewise makes little sense for Congress to have enacted § 1226(a)—which specifically contemplates bail—if most or all aliens in the country unlawfully are subject to mandatory detention without the opportunity for bail.

These problems go away if "applicants for admission" under § 1225(b)(2)(A) are entitled to bond hearings pursuant to § 1226(a) when they are arrested after already being in the country. In other words, when § 1225(b)(2)(A) says "the alien shall be detained for a proceeding under section 1229a of this title," it simply means the alien must remain in custody until the removal proceeding is initiated, at which point the normal procedures associated with such a proceeding (including the right to a bond hearing under § 1226(a)) are given effect. Under this interpretation, the broad definition of "applicants for admission" in § 1225(a)(1) can live in harmony with §§ 1226(a), 1229, and 1229a, all of which anticipate that aliens will not be in custody during their removal proceedings. Which is to say, an alien can be both an "applicant for admission" and entitled to a bond hearing.

This leads to the second reason for interpreting §§ 1225 and 1226 as entitling "applicants for admission" to bond hearings except in expedited proceedings: It explains why, until very recently, the longstanding practice was for aliens without legal status to have bond hearings even when they arguably fit within the definition of "applicants for admission" under § 1225(a)(1). It's not that immigration officials were "choosing" § 1226(a) over § 1225 or ignoring a Congressional directive for mandatory detention. Rather, it simply reflects the fact that the two statutes work in harmony with one another.

> 3. The Court Is Compelled to Interpret *Jennings v. Rodriguez* as Requiring Mandatory Detention for Petitioner Even Though It Suspects This Is Not What the Supreme Court Intended.

Notwithstanding the analysis in the preceding section, the Court is of course obligated to follow Supreme Court precedent. To that end, the following sentence from *Jennings* is fatal to the Court's preferred interpretation: "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." 583 U.S. at 303. Based on this language—and no matter how much it might prefer to hold otherwise—the Court simply cannot conclude that an "applicant for admission" like Petitioner in non-expedited removal proceedings under § 1225(b)(2) is entitled to a bond hearing under

§ 1226(a). Instead, the Court must conclude that Petitioner is subject to mandatory detention either for the duration of his removal proceeding or until his parole is renewed.

To the extent the Supreme Court revisits the issue, it may well clarify or narrow what it said about the duration of mandatory detention under § 1225(b)(2). After all, the petitioner in *Jennings* was subject to mandatory detention under § 1226(c), not §§ 1225(b)(1) or (2). Moreover, the question was whether aliens who were in custody during removal proceedings were entitled to bond hearings every six months despite the lack of any statutory language saying so. In these circumstances, the sweeping statements about mandatory detention under §§ 1225(b)(1) and (2) were arguably dicta. Moreover, *Jennings* did not address the incongruity between (i) the many provisions of the INA that presume aliens in removal proceedings will be out of custody, and (ii) the fact that the broad definition of "applicant for admission" under § 1225 arguably makes virtually every alien in the country without lawful status subject to mandatory detention. Similarly, *Jennings* did not involve immigration officials in a new administration changing longstanding interpretations of the INA in a way that causes aliens who previously were entitled to bail hearings to suddenly become subject to mandatory detention. Had *Jennings* been forced to wrestle with these issues, it may very well have concluded that detention is mandatory under § 1225(b)(2) only until removal proceedings begin, at which point § 1229, § 1229a, and § 1226(a) kick in and entitle the alien to a bond hearing except when the exceptions in § 1226(c) apply. In other words, the Supreme Court may have concluded that §§ 1225 and 1226 can work in harmony.

For now, however, the Court must apply Supreme Court precedent as it currently exists. Accordingly, it concludes that Petitioner is subject to mandatory detention until and unless his parole is renewed. His Petition for Writ of Habeas Corpus therefore must be denied.

**V.     CONCLUSION.**

The Court DENIES Petitioner's Petition for Writ of Habeas Corpus. (ECF 1.) The Clerk's Office is directed to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

Dated: February 2, 2026

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE