YAAKOV M. ROTH
*Acting Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
ELISSA FUDIM
*Trial Attorney*

U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Svitlana Doe, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, in her official capacity as<br>Secretary of Homeland Security, *et al.*,<br><br>Defendants. | Civil Action No. 1:25-cv-10495<br><br>LEAVE TO FILE GRANTED ON 2/13/26 |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND STAY OF
## OF USCIS BENEFITS SUSPENSION AS TO THE CERTIFIED CLASS

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Background ................................................................................................................. 2

Argument .................................................................................................................... 3

    I.      Threshold jursidictional grounds compel denial of Plaintiffs' motion .................... 4

        a.   The December 2 USCIS Memo is not final agency action ....................................... 4

        b.   8 U.S.C. § 1252(a)(2)(B) bars review ...................................................................... 8

           1.   § 1252(a)(2)(B) bars review of the processing of adjustment of status
               applications ........................................................................................................ 8

           2.   Plaintiffs' re-parole arguments fail for the same reason ................................ 11

        c.   The national security based procedures for processing applications are
           committed to agency discretion and are not reviewable under the APA .............. 11

        d.   Plaintiffs lack standing ........................................................................................ 13

    II.     Plaintiffs are unlikely to succeed to the underlying merits ................................... 15

        a.   The December 2 USCIS Memo is not contrary to law .......................................... 15

        b.   Notice and comment was not required .................................................................. 19

        c.   The December 2 USCIS Memo is not arbitrary and capricious ............................ 21

        d.   Plaintiffs cannot prevail regarding a hold on adjustement applications .............. 24

    III.    Plaintiffs cannot establish irreparable harm ........................................................ 24

    IV.    The balance of the equities favor the government ................................................ 27

    V.    Any relief issued must be limited only to class members ...................................... 29

Conclusion ................................................................................................................ 29

# TABLE OF AUTHORITIES

Cases

*Abuzeid v. Mayorkas*,
    62 F. 4th 578 (D.C. Cir. 2023).................................................................................... 9

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
    141 S. Ct. 2485 (2021)................................................................................................ 18

*Alaska Indus. Dev. & Exp. Auth. v. Biden*,
    685 F. Supp. 3d 813 (D. Alaska 2023) ..................................................................... 17

*Am. Petroleum Inst. v. U.S. E.P.A.*,
    216 F.3d 50 (D.C. Cir. 2000)...................................................................................... 6

*Ameziane v. Obama*,
    699 F.3d 488 (D.C. Cir. 2012).................................................................................... 13

*Anversa v. Partners Healthcare Sys., Inc.*,
    835 F.3d 167 (1st Cir. 2016)................................................................................. 25, 26

*Bennett v. Spear*,
    520 U.S. 154 (1997).................................................................................................... 5

*Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*,
    814 F.3d 481 (1st Cir. 2016)...................................................................................... 12

*Beshir v. Holder*,
    10 F.Supp.3d 165 (D.D.C. 2014)................................................................. 10, 11, 12, 17

*Biden v. Texas*,
    142 S. Ct. 2528 (2022)................................................................................................ 5

*Bldg. & Const. Trades Dep't. v. Allbaugh*,
    295 F.3d 28 (D.C. Cir. 2002)...................................................................................... 22

*Celebi v. Mayorkas*,
    744 F. Supp. 3d 100 (D. Mass. 2024) ....................................................................... 7

*Charlesbank Equity Fund II, Ltd. P'ship*,
    370 F.3d 151 (1st Cir. 2004)................................................................................. 24, 27

*Chau Thuy Le v. USCIS*,
    No. 21-cv-501 (JMC), 2025 WL 1743942 (D.D.C. June 24, 2025) ......................... 20

*Cheejati v. Blinken*,
  106 F.4th 388 (5th Cir. 2024) ................................................................... 10

*Chrysler Corp.* v. *Brown*,
  441 U.S. 281 (1979) ................................................................................... 20

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................... 14

*Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*,
  77 F.4th 679 (D.C. Cir. 2023) ................................................................... 21

*Dep't of the Navy v. Egan*,
  484 U.S. 518 (1988) ............................................................................ 13, 28

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
  356 F.3d 1256 (10th Cir.2004) ................................................................. 24

*F.C.C. v. Schreiber*,
  381 U.S. 279 (1965) ................................................................................... 16

*FDA v. Wages & White Lion Invs., L.L.C.*,
  604 U.S. 542 (2025) ................................................................................... 21

*Fed. Commc'ns Comm'n v. Consumers' Rsch.*,
  606 U.S. 656 (2025) ................................................................................... 18

*Fofana v. Noem*,
  163 F.4th 1135 (8th Cir. 2026) ................................................................... 9

*Forest Guardians v. Babbitt*,
  174 F.3d 1178 (10th Cir. 1999) ................................................................... 7

*Geda v. Director of U.S. Citizenship and Immigration Servs.*,
  126 F.4th 835 (3d Cir. 2025) ..................................................................... 10

*Gem Cty. Mosquito Abatement Dist. v. EPA*,
  398 F. Supp. 2d 1 (D.D.C. 2005) ............................................................ 5, 6

*Grant v. Trial Ct.*,
  784 F. Supp. 3d 475 (D. Mass. 2025) ....................................................... 27

*Great Lakes Commc'n Corp. v. Fed. Commc'ns Comm'n*,
  3 F.4th 470 (D.C. Cir. 2021) ..................................................................... 20

*Guedes v. Mayorkas*,
  123 F.4th 68 (1st Cir. 2024) ........................................................................ 8

*Gupta v. Jaddou,*
   118 F.4th 475 (1st Cir. 2024)..................................................................... 10, 24

*Harisiades v. Shaughnessy,*
   342 U.S. 580 (1952)..................................................................................... 13

*Trump v. Hawaii,*
   585 U.S 667 (2018)................................................................................. 17, 28

*Heckler v. Chaney,*
   470 U.S. 821 (1985)................................................................................ 11, 12

*Holder v. Humanitarian Law Project,*
   561 U.S. 1 (2010)................................................................................... 27, 29

*Holistic Candlers v. FDA,*
   664 F.3d 940 (D.C. Cir. 2012)....................................................................... 5

*James V. Hurson Assocs., Inc. v. Glickman,*
   229 F.3d 277 (D.C. Cir. 2000)...................................................................... 20

*Kale v. Alfonso-Royals,*
   139 F.4th 329 (4th Cir. 2025) ...................................................................... 10

*Kanapuram v. USCIS,*
   131 F.4th  (11th Cir. 2025) .......................................................................... 10

*Kapoor v. Blinken,*
   No. 21-CV-01961-BLF, 2022 WL 181217 (N.D. Cal. Jan. 20, 2022) ................... 13

*Kewayfati v. Bondi,*
   165 F.4th 342 (5th Cir. 2026) ........................................................................ 6

*Khachutorov v. Britten,*
   792 F. Supp. 3d 1106 (C.D. Cal. July 23, 2025)........................................... 25

*Kiobel v. Royal Dutch Petroleum Co.,*
   569 U.S. 108 (2013)..................................................................................... 28

*Kondapally v. U.S. Citizenship & Immigr. Servs.,*
   No. CV 20-00920 (BAH), 2020 WL 5061735 (D.D.C. Aug. 27, 2020) ................. 12

*Kurt v. Mayorkas,*
   No. 24-cv-02792-SK, 2024 WL 5161950 (N.D. Cal. Dec. 18, 2024)................... 25

*La Casa Del Convaleciente v. Sullivan,*
   965 F.2d 1175 (1st Cir. 1992)....................................................................... 19

*LaMarche v. Mayorkas*, No.,
   23-cv-30029, 2024 WL 2502929 (D. Mass. May 22, 2024)................................................ 7

*Lewis v. Casey*,
   518 U.S. 343 (1996)....................................................................................................... 13, 15

*Lincoln* v. *Vigil*,
   508 U.S. 182 (1993).............................................................................................................. 20

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).............................................................................................................. 13

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990)................................................................................................................ 5

*Maine Forest Prods. Council v. Cormier*,
   51 F.4th 1 (1st Cir. 2022)...................................................................................................... 3

*Maryland* v. *King*,
   567 U.S. 1301 (2012)............................................................................................................ 28

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*,
   463 U.S. 29 (1983)................................................................................................................ 21

*Myers* v. *United States*,
   272 U.S. 52 (1926)................................................................................................................ 28

*N.H. Hosp. Ass'n v. Azar*,
   887 F.3d 62 (1st Cir. 2018)................................................................................................. 19

*Nakka v. United States Citizenship & Immigr. Servs.*,
   111 F.4th 995 (9th Cir. 2024)............................................................................................ 10

*Nken v. Holder*,
   556 U.S. 418 (2009).............................................................................................................. 27

*Norton v. So. Utah Wilderness All.*,
   542 U.S. 55 (2004)............................................................................................................. 5, 7

*O'Shea v. Littleton*,
   414 U.S. 488 (1974).............................................................................................................. 14

*Patel v. Garland*,
   596 U.S. 328 (2022)........................................................................................................... 8, 9

*Patel v. Jaddou*,
   695 F.Supp.3d 158 (D. Mass. 2023)................................................................................ 10

*Perales v. Casillas*,
　903 F.2d 1043 (5th Cir. 1990) ................................................ 12

*Puerto Rico v. United States*,
　490 F.3d 50 (1st Cir. 2007) ..................................................... 4

*Regents of the Univ. of California*,
　591 U.S. 1 (2020) ............................................................ 23, 25

*Roe v. Noem*,
　800 F. Supp. 3d 146 (D. Mass. 2025) ...................................... 16

*Salinas v. Railroad Retirement Board*,
　592 U.S. 188 (2021) .............................................................. 6

*Sequoia Orange Co. v. Yeutter*,
　973 F.2d 752 (9th Cir. 1992) ................................................. 20

*Serrano v. U.S. Att'y Gen.*,
　655 F.3d 1260 (11th Cir. 2011) ............................................... 9

*Sherley v. Sebelius*,
　689 F.3d 776 (D.C. Cir. 2012) ............................................... 22

*Singh v. Napolitano*,
　710 F.Supp.2d 123 (D.D.C. 2010) .......................................... 16

*Sandoval Suarez v. Cowan*,
　1:19-CV-124, 2020 WL 80641 (S.D. Tex. Jan. 7, 2020) ............. 11

*Sandoval Suarez v. Cowan*,
　No. 19-CV-124, 2019 WL 7494391 (S.D. Tex. Oct. 29, 2019) ...... 11, 12

*Sulaiman v. Mayorkas*,
　No. 8:24-CV-01733-FWS-KES, 2024 WL 5410126 (C.D. Cal. Dec. 11, 2024) ...... 13

*Thigulla v. Jaddou*,
　94 F.4th 770 (8th Cir. 2024) ................................................. 10

*Together Emps. v. Mass Gen. Brigham Inc.*,
　32 F.4th 82 (1st Cir. 2022) ..................................................... 4

*TransUnion LLC v. Ramirez*,
　594 U.S. 413 (2021) ............................................................ 15

*U.S. Army Corps of Engineers v. Hawkes Co.*,
　578 U.S. 590 (2016) .............................................................. 6

*United States Telecom Ass'n* v. *FCC*,
   855 F.3d 381 (D.C. Cir. 2017) ..................................................................... 18

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ..................................................................................... 16

*Washington v. Mayorkas*,
   No. 24-10318-RGS, 2024 WL 3835029 (D. Mass. Aug. 15, 2024) ............. 12

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ............................................................................... 27, 28

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022) ................................................................................ 18

*Wild Fish Conservancy v. Jewell*,
   730 F.3d 791 (9th Cir. 2013) ........................................................................ 5

*Zia v. Garland*,
   112 F.4th 1194 (9th Cir. 2024) ..................................................................... 9

*Ziae v. Garland*, 3:24-cv-01122-S-B,
   3:24-cv-01122-S-BT, 2024 WL 5171622 (N.D. Tex. Nov. 8, 2024) ........... 11

Statutes

5 U.S.C. § 553(b)(A) ............................................................................... 19, 20

5 U.S.C. § 555(b) .......................................................................................... 7

5 U.S.C. § 701(a)(2) .................................................................................... 11

5 U.S.C. § 704 .............................................................................................. 4

5 U.S.C. § 706(1) ....................................................................................... 6, 7

5 U.S.C. § 706(2) ....................................................................................... 1, 7

6 U.S.C. § 557 .............................................................................................. 9

8 U.S.C. § 1105(a) ...................................................................................... 16

8 U.S.C. § 1105(b) ...................................................................................... 16

8 U.S.C. § 1152(a)(1)(A) ............................................................................. 18

8 U.S.C. § 1182(d)(5)(A) ............................................................................. 25

8 U.S.C. § 1252(a)(2)(B) ........................................................................... 1, 8

8 U.S.C. § 1252(a)(2)(D) ........................................................................................ 9

8 U.S.C. § 1255 ..................................................................................................... 10

8 U.S.C. § 1255(a) ............................................................................................ 9, 16

8 U.S.C. § 1324a(a)(1)(A) ................................................................................ 11, 12

8 U.S.C. § 1427 ..................................................................................................... 15

8 U.S.C. §§1105 .................................................................................................... 19

8 U.S.C. §§ 1105(a)-(b) ......................................................................................... 28

8 U.S.C. §§ 1158 ................................................................................................... 14

8 U.S.C. §§ 1229a(c)(4) ........................................................................................ 26

Regulations

8 C.F.R. § 103.2(b)(18) ......................................................................................... 19

8 C.F.R. § 208.7 .................................................................................................... 14

8 C.F.R. § 274a.12(c) ............................................................................................ 11

8 C.F.R. § 274a.12(c)(8) .......................................................................................... 3

8 C.F.R. § 274a.13(a)(1) ........................................................................................ 11

## INTRODUCTION

Plaintiffs seek a preliminary injunction and stay requiring that USCIS resume processing, through final adjudication, the immigration benefit applications of certain class members. The motion should be denied. ***First***, this Court lacks subject matter jurisdiction. The challenged memorandum is not "final agency action," which is a prerequisite to judicial review under 5 U.S.C. § 706(2). Additionally, 8 U.S.C. § 1252(a)(2)(B) strips jurisdiction over discretionary benefits and decisions committed to agency discretion: five circuits hold this provision bars review of adjudication-hold policies. Plaintiffs also lack standing to challenge the memorandum because none of the named Plaintiffs have established they will suffer a concrete and imminent injury.

***Second***, even if jurisdiction existed, Plaintiffs cannot show likelihood of success. The challenged policy implements security mandates responding to Presidential findings that identify systematic vetting deficiencies in 19 countries. The policy need not be issued after notice-and-comment rulemaking (it is a procedural rule) and does not impermissibly discriminate by nationality (it implements lawful security distinctions). ***Third***, Plaintiffs cannot establish irreparable harm: the First Circuit requires harm that is "certain and great" and imminent. Processing delays and economic difficulties do not meet this standard. A preliminary injunction cannot guarantee favorable adjudications; at most, it could compel premature adjudications before enhanced security vetting completes, which is not in the public interest. ***Fourth***, the equities favor Defendants. The Government and the public have compelling national security and public safety interests in thorough vetting before granting benefits, particularly where Presidential findings document systematic deficiencies preventing adequate verification for certain countries. ***Finally,*** any injunction should be limited to members of the certified classes, as Plaintiffs appear to recognize in their request for relief.

1

**BACKGROUND**

We assume the Court's familiarity with the factual and procedural background of this case.

Triggered by a recently thwarted terrorist attack and the November 26, 2025 shooting of two National Guard Members[1] involving Afghan nationals, on December 2, 2025, USCIS issued PM-602-0192 (the "USCIS Memo") to implement a "comprehensive re-review, potential interview, and re-interview of all aliens from [19] high-risk countries of concern who entered the United States on or after January 20, 2021[.]" *See* Doc. No. 224, p. 2 (incorporating Presidential Proclamation No. 10949, 90 FR 24497 (2025), which identifies the high-risk countries). To accomplish this, USCIS implemented "an adjudicative hold on all [] pending benefit requests[,]" including but not limited to applications for adjustment of status, or I-485s, "filed by aliens from high-risk countries" until "lifted by the USCIS Director through a subsequent memorandum." Doc. No. 224, at 2-3. One stated purpose of this temporary hold is to "ensure[] that USCIS exercises its full authority to investigate immigration benefit requests filed by aliens who may pose risks to the national security and public safety of the United States." *Id*. at 3. Contrary to Plaintiffs' characterization, the Memo does not impose an "indefinite suspension," Doc. No. 265 at 8; it establishes a temporary hold while USCIS conducts a comprehensive review, with further operational guidance to be issued within 90 days. Doc. No. 224 at 3 ("USCIS will prioritize a list for review, interview, re-interview, and referral to ICE and other law enforcement agencies as appropriate, and, in consultation with the Office of Policy and Strategy and the Fraud Detection and National Security Directorate, issue operational guidance.").

In deciding whether to pause adjudication of applications, USCIS "weighed" any potential

---

[1] Army Specialist Sarah Beckstrom, 20 years old, died from her injuries on Thanksgiving Day. Staff Sergeant Andrew Wolfe, 24, is recovering from a gunshot wound to the head.

resultant "delay to the adjudication of some pending applications" against the "urgent need for the agency to ensure that applicants are vetted and screened to the maximum degree possible." *Id.* USCIS "determined that the burden of processing delays that will fall on some applicants is necessary and appropriate" given its "obligation to protect and preserve national security."

On January 1, 2026, USCIS issued Policy Memorandum PM-602-0194, which expanded the scope of the USCIS Memo by introducing additional country-based restrictions based on a subsequent Presidential Proclamation, clarified that the adjudications hold "allows a case to proceed through processing, up to a final adjudication[;]" and added a detailed list of exceptions. *See* Doc. No. 264-1. This includes exceptions for certain categories of applications for employment authorization, including initial applications for employment authorization based on having a pending asylum application (as provided for in 8 C.F.R. § 274a.12(c)(8)), and certain aliens temporarily present in the United States who are providing assistance to law enforcement. *See id.* at 4-5 & nn.13-15.

## ARGUMENT

The USCIS Memo is a procedural policy regarding immigration adjudications to promote national security and public safety. It sets forth a temporary suspension of final adjudication of immigration benefit requests—many of which are discretionary—that are subject to review and further guidance to be issued soon. It is based on legitimate concerns with tightening the vetting of applicants. Plaintiffs cannot establish entitlement to the "extraordinary" remedy of a preliminary injunction, particularly as to an entire class. *See Maine Forest Prods. Council v. Cormier*, 51 F.4th 1, 5 (1st Cir. 2022). They are unlikely to succeed on the merits due to applicable jurisdictional bars and because the USCIS Memo is reasonable and well within USCIS's authority; they cannot show irreparable harm as to any particular person, let alone as to all impacted class members; and the

equities and the public interest favors allowing USCIS to take steps to ensure proper vetting of applicants for immigration benefits. *See Together Emps. v. Mass Gen. Brigham Inc*., 32 F.4th 82, 85 (1st Cir. 2022) (explaining factors for granting preliminary injunction). Indeed, the preliminary injunction would effectively operate like a final injunction, compelling in some cases premature adjudication of applications before the tightening of vetting procedures is completed, which is not in the public interest.

## I.    Threshold jurisdictional grounds compel denial of Plaintiffs' motion.

### a.    The December 2 USCIS Memo is not final agency action.

Plaintiffs assert they are likely to succeed on their claims brought under the Administrative Procedure Act (APA). Doc. No. 255 at ¶¶ 322-330, 342-348, 363a-363i; Doc. No. 265 at 7-16.[2] But the USCIS Memo does not meet the prerequisites for APA review, because only actions made reviewable by statute and "final agency action for which there is no adequate remedy in a court" are reviewable under the APA. 5 U.S.C. § 704. Because the USCIS Memo is not final agency action, this court lacks statutory jurisdiction to grant preliminary injunctive relief. *Puerto Rico v. United States*, 490 F.3d 50, 70 (1st Cir. 2007) ("The issue of whether there was final agency action implicates the jurisdiction of the federal courts, and such final action is normally a prerequisite to judicial review… [T]he question of whether there has been final agency action is one that implicates statutory, rather than constitutional jurisdiction."). In this motion, Plaintiffs challenge only the USCIS Memo, which specifically states that it is temporary guidance, and that more guidance will be forthcoming.[3] *See* Doc. No. 224. Agency action is final only if it

---

[2] It is unclear whether Plaintiffs are relying on their non-statutory "ultra vires" claim in their Sixth Claim for Relief. That claim is not cognizable; the APA provides the method for judicial review of agency actions allegedly in excess of statutory authority. *See* Doc. No. 114 at 23-24.

[3] Plaintiffs write that "The agency action challenged here cannot be viewed devoid of its context, including this administration's unrelenting assault on parolees." Doc. No. 265 at 1. But in fact,

(1) marks "consummation" of the agency's decisionmaking process and (2) determines rights or obligations or creates legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

A challenged action fails the first prong if it is "tentative or interlocutory" and does not express an agency's "unequivocal position." *Holistic Candlers v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012). Here, the USCIS Memo is interim guidance and expressly contemplates further action: "within 90 days." Doc. No. 224 at 3. Holds "remain in effect until lifted or modified by the USCIS Director through subsequent memorandum." *Id*. Thus, the USCIS Memo is not final agency action and is unreviewable by this court. *See Gem Cty. Mosquito Abatement Dist. v. EPA,* 398 F. Supp. 2d 1, 11 (D.D.C. 2005) (agency's interim guidance was not final agency action).

Further, the ongoing nature of USCIS's work demonstrates that the USCIS Memo does not constitute the consummation of decision-making. No plaintiff or class member alleges that their petition or application (whether for adjustment, asylum, or work authorization) has been denied. The January 1 Memo, which expands upon the USCIS Memo, defines "hold" to mean "a case [can] proceed through processing, up to final adjudication," with "only the decision deferred." Doc No. 264-1 at 1 n.2. Thus, USCIS continues processing applications while the hold is in place: collecting and processing biometrics, conducting background checks through multiple databases, performing internal security screenings and case-by-case reviews, and scheduling and conducting

---

plaintiffs cannot amalgamate discrete agency actions and challenge them together; rather, each agency action must be viewed on its own. An APA plaintiff must identify and challenge a "circumscribed, discrete agency action[]." *Norton v. So. Utah Wilderness All.*, 542 U.S. 55, 62 (2004); *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801 (9th Cir. 2013). Plaintiffs cannot use the APA to obtain "wholesale" or "programmatic" improvement of agency conduct, but must rather challenge "some concrete action applying" a particular policy "to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990); *see also Biden v. Texas*, 142 S. Ct. 2528, 2545 (2022) (holding that federal courts may not "postulat[e] the existence of an agency decision wholly apart from any agency statement . . . designed to implement that decision.").

interviews where appropriate. *Id.* at 3-4. These processes are individualized, case-specific, and must be completed before any application can be approved regardless of whether a hold is in place. This ongoing work confirms there has been no consummation of decision-making regarding applications and petitions subject to the USCIS Memos because USCIS has not reached any final determination on any affected application. This contrasts with cases where an agency made a definitive determination. *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (agency determination final where issued "after extensive factfinding").

The USCIS Memo is also not final agency action because no rights or obligations flow from it. Instead, the memorandum and final adjudication holds pursuant to it are procedural and merely "mark a midstream pause in an ongoing administrative process—one that remains open to further agency consideration." *Kewayfati v. Bondi*, 165 F.4th 342, 346 (5th Cir. 2026); *Am. Petroleum Inst. v. U.S. E.P.A.*, 216 F.3d 50 (D.C. Cir. 2000) ("A decision by an agency to defer taking action is not a final action reviewable by the court."). The administrative process *is* ongoing, both in terms of the memorandum itself and the individual benefit requests. USCIS stated it will issue "operational guidance" within 90 days. Doc No. 224 at 3. There has been no "terminal event." *Salinas v. Railroad Retirement Board*, 592 U.S. 188, 194-95 (2021) (addressing statutory requirement of "final decision" similar to "final agency action"). And, to the extent any individual applicant can demonstrate unreasonable delay or withholding of agency action, the APA provides a remedy to compel adjudication of their individual application unless other review exclusions (such as those discussed just below) apply. *See* 5 U.S.C. § 706(1) (stating that a court may compel agency action "unlawfully withheld or unreasonably delayed"); *id.* § 701(a) (providing exclusions, including where statutes preclude review).

Plaintiffs perhaps could have avoided this problem by styling their claims as challenging

the timing of adjudicating their applications as agency action wrongly withheld (under 5 U.S.C. § 706(1)) instead of as contrary to law and arbitrary and capricious (under § 706(2)). Unlike § 706(2), § 706(1) does not require "final agency action" – but Plaintiffs may have chosen not to bring their claims under § 706(1) because they recognized they could not meet its more demanding standard. Under § 706(1), a plaintiff must identify a "discrete agency action" that the agency is legally "required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). "The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, or course, agency regulations that have the force of law)." *Id*. at 65. Under § 706(1), Plaintiffs would either need to show either a complete failure to take a required agency action within a concrete, mandatory time frame, or that their applications are unreasonably delayed. *See Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999) ("[I]f an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions—such as the APA's general admonition that agencies conclude matters presented to them "within a reasonable time," *see* 5 U.S.C. § 555(b)— a court must compel only action that is delayed unreasonably."); *see also Celebi v. Mayorkas*, 744 F. Supp. 3d 100, 105 (D. Mass. 2024). Plaintiffs can do neither here. They have not pointed to any mandatory time frame for final adjudication of affected applications, let alone that any individual application has reached that timeframe. Nor can they show unreasonable delay, particularly on a class-wide basis spanning multiple types of benefit requests, because the unreasonable-delay analysis involves highly individualized factors. *See LaMarche v. Mayorkas*, No. 23-cv-30029, 2024 WL 2502929, at *8 (D. Mass. May 22, 2024) (denying certification of a class of parole applicants and sponsors seeking to compel adjudication based on necessity of "individualized analysis"). Plaintiffs' attempt to reframe delay claims as a § 706(2) challenge to a "policy" is an

impermissible effort to circumvent the demanding and individualized § 706(1) standard. Plaintiffs did not plead a claim under § 706(1), and indeed they expressly and emphatically deny such a claim, Doc. No. 264, at 9, n.5.

### b.  8 U.S.C. § 1252(a)(2)(B) bars review.

Plaintiffs claim that as relevant to the class members in this case, the USCIS Memo primarily affects adjudication of adjustment of status, employment authorization and re-parole applications. Doc. No. 265 at 7. Section 1252(a)(2)(B) precludes jurisdiction in each instance.

### 1.  § 1252(a)(2)(B) bars review of the processing of adjustment of status applications.

Section 1252(a)(2)(B) provides: "[N]otwithstanding any other provision of law … no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section … 1255 …, or (ii) any other decision or action … the authority for which is specified under this subchapter to be in the discretion of the [Secretary], other than the granting of relief under section 1158(a)." 8 U.S.C. § 1252(a)(2)(B). Adjustment of status is a discretionary benefit within § 1255, so § 1252(a)(2)(B)(i) bars judicial review of "any judgment regarding the granting of" adjustment of status under that statute. *See Guedes v. Mayorkas*, 123 F.4th 68, 70 (1st Cir. 2024).

In *Patel v. Garland*, 596 U.S. 328 (2022), the Supreme Court held that § 1252(a)(2)(B)(i) precludes judicial review of all determinations relating to adjustment of status, not just the ultimate discretionary decision. The Court reasoned that the word "any" has "expansive meaning," indicating the bar applies to judgments "of whatever kind" under § 1255, "not just discretionary judgments or the last-in-time judgment." *Id*. at 338. And "regarding" "generally has a broadening effect, ensuring that the scope covers not only its subject but also matters relating to that subject."

*Id.* at 339. Thus, the bar precludes jurisdiction over "all aspects" of the adjustment decision.[4] *Zia v. Garland*, 112 F.4th 1194, 1200 (9th Cir. 2024) ("The [Supreme] Court made clear that § 1252(a)(2)(B)(i) applies to *all* aspects of the [agency's] decision regardless of whether underlying determinations are characterized as discretionary or factual . . . ."); *Abuzeid v. Mayorkas*, 62 F. 4th 578, 583-84 (D.C. Cir. 2023).

*Patel's* reasoning applies fully to pre-decision processing determinations. Decisions about when to adjudicate, what security procedures to complete, and whether investigations are sufficient all constitute "matters relating to" adjustment relief. *See Patel*, 596 U.S. at 339. Each determination that an application requires further investigation, that security checks are incomplete, or that adjudication should be withheld pending resolution of security concerns constitutes a "judgment" regarding the granting of relief. *See id.*[5]

Subsection (ii) of this provision also bars review of the plaintiffs' claims regarding a policy to delay adjudication of adjustment of status applications because such a policy is "any other decision or action" where "the authority for which is specified under this subchapter to be in the discretion" of the Secretary. 8 U.S.C. § 1252(a)(2)(B)(ii). For adjustment, § 1255(a) provides status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a).[6] This language confers broad discretion over not only

---

[4] Section 1252(a)(2)(D) provides a carve out for legal and constitutional questions, but only on a petition for review of a removal order. *See* 8 U.S.C. § 1252(a)(2)(D); *Patel*, 596 U.S. at 345.

[5] *See also Fofana v. Noem*, 163 F.4th 1135, 1138 (8th Cir. 2026) (deeming *Patel's* 1252(a)(2)(B)(i) analysis relevant to subclause (ii) in holding no jurisdiction to review determination that adjustment applicant was inadmissible for supporting terrorists).

[6] Because "Congress has transferred the adjudications of the former Immigration and Naturalization Service (INS) to the Secretary of Homeland Security and his delegate at the U.S. Citizenship and Immigration Services," *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1264 n.2 (11th Cir. 2011), references to the Attorney General in § 1255(a) are deemed to be references to the DHS and USCIS. *See* 6 U.S.C. § 557.

whether to grant adjustment, but also how and when to adjudicate applications. Multiple courts of appeals have thus held that a USCIS policy to hold adjudications on adjustment of status applications pending visa availability was unreviewable under § 1252(a)(2)(B)(ii). *Kale v. Alfonso-Royals*, 139 F.4th Cir. 329, 335-36 (4th Cir. 2025) (USCIS policy to hold applications for adjustment of status in abeyance until visa number became available was not subject to judicial review); *Kanapuram v. USCIS*, 131 F.4th 1306, 1306-07 (11th Cir. 2025); *Thigulla v. Jaddou*, 94 F.4th 770, 775 (8th Cir. 2024); *Cheejati v. Blinken*, 106 F.4th 388, 394, 396 (5th Cir. 2024); *Geda v. Director of U.S. Citizenship and Immigration Servs.*, 126 F.4th 835, 843 (3d Cir. 2025) (whether and how to adjust foreign nationals' status was explicitly committed to Secretary of Homeland Security's discretion); *see also Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 & n.11 (9th Cir. 2024) ("'other decision or action' more broadly includes other types of agency decisions—including those that may not qualify as 'judgments'"); *Patel v. Jaddou*, 695 F.Supp.3d 158 (D. Mass. 2023), *aff'd on other grounds by Gupta v. Jaddou*, 118 F.4th 475, 487 (1st Cir. 2024); *Beshir v. Holder*, 10 F.Supp.3d 165 (D.D.C. 2014) (applying § 1252(a)(2)(B)(ii) to adjudication hold policy to reassess terrorism related exemptions from inadmissibility).

As *Kale* well explains, "8 U.S.C. § 1255 confers discretionary authority on USCIS to establish procedures for adjudicating adjustment applications, which constitutes an agency 'decision' or 'action.' As a result, a challenge to procedures chosen and implemented by USCIS 'cannot be reviewed by federal courts.'" 139 F.4th at 336 (quoting *Cheejati*, 106 F.4th at 394). Put another way, "the decision to put [plaintiffs'] applications on hold and the inextricably intertwined process prescribed by the Secretary for reaching that decision" are both covered by § 1252(a)(2)(B)(ii)'s bar. *Geda*, 126 F.4th at 844 (internal quotations omitted). This consensus supports recognition that "granting the [Secretary] discretion to promulgate regulations governing

the process of adjudication necessarily includes a grant of discretion over the pace of adjudication." *Beshir*, 10 F. Supp. 3d at 174. So too here. The USCIS Memo sets forth a policy for temporarily holding adjudication on certain applications until further background investigations can be completed for national security reasons. As multiple courts have held, adjudication hold policies in the adjustment of status context are unreviewable.

### 2. Plaintiffs' re-parole arguments fail for the same reason.

Like initial parole, re-parole is an entirely discretionary benefit under § 1182(d)(5)(A). Accordingly, challenges to the procedures and timing for processing requests for parole fall under § 1252(a)(2)(B)(ii). *See, e.g.*, *Ziae v. Garland*, 3:24-cv-01122-S-BT, 2024 WL 5171622, at *3 (N.D. Tex. Nov. 8, 2024) (relying on *Cheejati* to find that 1252(a)(2)(B)(ii) precludes review of delays in processing humanitarian parole pursuant to 1182(d)(5)(A)).

### c. The national-security based procedures for processing applicants are committed to agency discretion and thus not reviewable under the APA.

Decisions committed to agency discretion are not reviewable under the APA. 5 U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Approval or denial of applications for employment authorization filed (on Form I-765) pursuant 8 C.F.R. § 274a.12(c)—other than those by an alien seeking asylum or withholding of removal—is "within the discretion of USCIS." 8 C.F.R. § 274a.13(a)(1). There are no textual limitations on that discretion. Indeed, the regulations "list no standards for making the decision and do[] not require the agency to make any sort of factual findings when making that decision." *Suarez v. Cowan*, No. 19-CV-124, 2019 WL 7494391, at *7 (S.D. Tex. Oct. 29, 2019) (Report and Recommendation), *adopted sub nom. Sandoval Suarez v. Cowan*, Civ. No. 1:19-CV-124, 2020 WL 80641 (S.D. Tex. Jan. 7, 2020). Aside from banning the hiring ... "for employment in the United States [of] an alien knowing the alien is an unauthorized alien," 8 U.S.C. § 1324a(a)(1)(A), and an oblique reference to aliens

11

"authorized to be...employed...by this chapter or by the Attorney General," *id*. § 1324a(h)(3), "Congress has neither directly addressed nor mandated the issuance of employment authorization documents to noncitizen workers." *Kondapally v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-00920 (BAH), 2020 WL 5061735, at *4 (D.D.C. Aug. 27, 2020) (cleaned up). Rather, employment authorization for aliens is "purely a creature of regulation." *Id*. (quoting *Perales v. Casillas*, 903 F.2d 1043, 1048 (5th Cir. 1990) (cleaned up)). Given Congress's silence on the issue, "statutory law" does not provide a standard for a court to apply when reviewing a challenge to the processing of an I-765 application for employment authorization. *Id*. "Thus, it can be fairly said that Congress has given USCIS unfettered discretion concerning the issuance of employment authorization to aliens." *Suarez,* 2019 WL 7494391, at *6.

Further, for the same reasons that the adjustment of status and parole decisions are not reviewable under § 1252(a)(2)(B), they are also not reviewable under § 701(a)(2) of the APA. *Perales v. Casillas*, 903 F.2d 1043, 1048 (5th Cir. 1990); *Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 491, n.15 (1st Cir. 2016).[7]

Much the same goes for the executive's determination that final adjudications must temporarily halt to permit additional vetting and review in the interest of national security and public safety. Courts have traditionally declined to interfere with such determinations as

---

[7] Plaintiffs have not identified any class members with pending asylum claims. But even if they did, any claim associated with a pause in such adjudication would be unreviewable under the APA. Congress imposed no mandatory timeline for asylum adjudications. *Washington v. Mayorkas*, No. 24-10318-RGS, 2024 WL 3835029, at *1 (D. Mass. Aug. 15, 2024) ("§ 1158(d)(7) of the INA bars Plaintiff from claiming any legally enforceable right to have [his] application[] adjudicated within the provided timeframes"). Where Congress has not imposed a deadline, timing and sequencing are committed to agency discretion. *Heckler*, 470 U.S. at 830. "[G]ranting discretion to promulgate regulations governing the process of adjudication necessarily includes a grant of discretion over the pace of adjudication." *Beshir*, 10 F. Supp. 3d at 174.

exclusively within the province of the Executive Branch's discretion. *See, e.g.*, *Kapoor v. Blinken*, No. 21-CV-01961-BLF, 2022 WL 181217, *5 (N.D. Cal. Jan. 20, 2022) (declining to order adjudication where "Defendant has presented substantial evidence that the COVID-19 pandemic has negatively impacted the NVC's ability to provide visa services"); *Sulaiman v. Mayorkas*, No. 8:24-CV-01733-FWS-KES, 2024 WL 5410126, *3 (C.D. Cal. Dec. 11, 2024) (remanding delayed adjudication to USCIS because of their expertise in investigating and fact-finding, especially where more information needs to be evaluated). This court should respect the commitment of national security matters to the Executive Branch and should not substitute its judgment for that of the executive in the national security realm. *See, e.g., Dep't of the Navy v. Egan*, 484 U.S. 518, 530 (1988) ("[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs."); *Ameziane v. Obama*, 699 F.3d 488, 494 (D.C. Cir. 2012) ("It is not within the role of the courts to second-guess executive judgments made in furtherance of" acquiring and exercising expertise of protecting national security by the executive.). Foreign affairs decision-making relating to national security is beyond the purview of this Court. *See Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952).

### d. Plaintiffs lack standing.

Plaintiffs must establish Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To do so, they must demonstrate an injury in fact that is concrete and particularized, actual or imminent, fairly traceable to the challenged action, and likely to be redressed by the requested relief. *Id.* "Plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal

quotations omitted). At least one named class representative must have standing for each claim and each form of relief sought. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Plaintiffs fail to meet that burden. Although Plaintiffs assert that the USCIS Memo affects some members of previously-certified classes, they identify only one class representative—Omar Doe—who is allegedly subject to the adjudication hold. But even he has not suffered a cognizable injury sufficient to establish standing to challenge the USCIS Memo, and Plaintiffs may not rely on unidentified or hypothetical class members to cure that defect.

Omar Doe alleges that his pending adjustment of status application has been placed on hold pursuant to the USCIS Memo. Doc. No. 265 at 16; Doc. No. 264-3 at ¶ 6. But Omar currently holds asylum status, Doc. No. 264-3 at ¶ 4, which provides lawful presence, protection from removal, and authorization to work in the United States. *See* 8 U.S.C. §§ 1158, 1227(b)(1); 8 C.F.R. § 208.7. Plaintiffs claim that adjustment provides a "more durable" status than asylum. Doc. No. 265 at 16. Perhaps, but Omar Doe was never entitled to any specific pace of adjudication with respect to his adjustment application, it ultimately may not be granted, and given his asylum status, he remains statutorily eligible to seek adjustment of status. His adjustment application was filed relatively recently, in July 2025, and he has not shown that the pause on final adjudication has impacted his application specifically. He therefore has no concrete and imminent injury from the temporary pause in final adjudication of his adjustment application. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (injury must be "certainly impending" to show injury-in-fact). Moreover, Omar Doe's alleged injury is individualized and narrow. It cannot support Plaintiffs' broader claims of impact to adjustment of status, visa processing, employment authorization, or

14

naturalization eligibility,[8] nor can it justify the sweeping relief Plaintiffs seek. Standing must be established "for each claim . . . and for each form of relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Omar's circumstances do not supply standing to litigate harms he does not face.

Plaintiffs attempt to bolster their standing by referring to unnamed individuals—identified only as Class Members "O," "N," "P," "Q," "L," "M," and so on, Doc. No. 265 at 17-18—who are purportedly affected by the adjudication hold. But standing must be established by a named plaintiff, not by unidentified or hypothetical class members. *Lewis*, 518 U.S. at 357. Because Plaintiffs have failed to identify a class representative who has suffered a concrete, actual, and redressable injury traceable to the USCIS Memo's adjudication pause, this Court lacks jurisdiction to entertain their claims or grant the extraordinary relief they seek.

## II.    Plaintiffs are unlikely to succeed on the underlying merits.

### a.    The December 2 USCIS Memo is not contrary to law.

Plaintiffs first argue that the USCIS Memo is contrary to law because it allegedly exceeds USCIS's authority. They argue that "Congress has not granted USCIS the authority to suspend the adjudication of immigration benefit requests that are duly filed pursuant to the applicable statutory and regulatory scheme." Doc. No. 265 at 7. This argument is flawed. First, Plaintiffs repeatedly refer to the USCIS Memo as creating an "indefinite suspension" of benefits. Doc. No. 265 at 8. But that is a mischaracterization. The USCIS Memo does not impose an indefinite suspension; it establishes a temporary hold on final adjudications while USCIS conducts a comprehensive

---

[8] Plaintiffs assert that the adjudication hold affects naturalization eligibility. Doc. No. 265 at 5. But none of the named class representatives—and no identified class member—alleges that they are currently eligible to apply for naturalization. Naturalization requires lawful permanent residence and years of continuous residence thereafter. 8 U.S.C. § 1427. Plaintiffs do not allege that any representative plaintiff is eligible to naturalize.

review, with further operational guidance to be issued within 90 days. Moreover, this argument too narrowly frames the question of legal authority. USCIS undoubtedly has the authority to adjudicate the applications that are subject to its Memo. Inherent in that authority is USCIS's ability to manage that adjudication process, so long as it does not conflict with the statute or USCIS's own regulations. *Roe v. Noem*, 800 F. Supp. 3d 146 (D. Mass. 2025) ("Re-evaluating and re-prioritizing how to expend its efforts, as Defendants have done here, is squarely within the agency's prerogative."). It is axiomatic that "absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543-44 (1978) (quoting *F.C.C. v. Schreiber*, 381 U.S. 279, 290 (1965)) (cleaned up); *see also Singh v. Napolitano*, 710 F.Supp.2d 123, 130 (D.D.C. 2010).

In any event, there is legal authority for USCIS to pause adjudications to address national-security and public safety concerns. The INA requires USCIS to conduct adequate investigations before granting benefits. For example, adjustment applicants must be "admissible to the United States for permanent residence." 8 U.S.C. § 1255(a). The INA also directs the Secretary of Homeland Security to liaise with FBI, CIA, and other national-security agencies regarding "internal and border security." 8 U.S.C. § 1105(a). It gives the Secretary "authority to obtain such information from any such department or agency as may be made available." 8 U.S.C. § 1105(b). The Secretary must obtain sufficient information before adjudicating applications, or else deny them. The INA nowhere permits adjudication with insufficient information or prohibits a temporary pause on final adjudications while the agency ensures it is properly complying with its affirmative statutory obligations. These provisions thus impose affirmative duties to obtain and

exchange national security information: duties that cannot be fulfilled if applications are adjudicated before adequate information is obtained. Thus, contrary to Plaintiffs' assertions, the USCIS Memo is consistent with the INA and not unlawful.

Plaintiffs argue that if Congress had intended to permit an agency, or even the President, to suspend adjudication of immigration benefits, it would have done so explicitly as it did in § 1182(f). Doc. No. 265 at 9. But the analogy is inapt. Section 1182(f) authorizes the President to suspend the entry of classes of aliens upon making certain findings—which, in most contexts, means that aliens whose entry is suspended cannot obtain visas to travel to the United States. *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667, 668 (2018). The USCIS Memo does not attempt to exercise such authority to suspend entry. It does not dictate the denial of benefits or create any sort of separate inadmissibility ground. It is instead a temporary pause on completing adjudications of immigration benefits, with a 90-day operational review, and ensures that statutory vetting and security obligations are fulfilled before final adjudication.

Plaintiffs assert that USCIS "has never previously claimed powers of this magnitude," Doc. No. 265 at 9, but novelty alone does not render an action unlawful. Moreover, this is not a novelty: temporarily pausing final adjudication of categories of applications is within the agency's discretion and statutory authority. Agencies frequently take temporary operational pauses or issue guidance to address emergent circumstances within their statutory authority, even if they have not done so in exactly the same form before. *See, e.g.*, *Beshir*, 10 F.Supp.3d 165 (addressing 2008 adjudication hold policy to allow time for possible exemptions from terrorism-related inadmissibility grounds); *Alaska Indus. Dev. & Exp. Auth. v. Biden*, 685 F. Supp. 3d 813, 833 (D. Alaska 2023) (addressing moratorium suspending oil and gas leasing program pending ongoing environmental review). Further, Plaintiffs' invocation of the major questions doctrine is a red

herring. That doctrine is a method of statutory interpretation that presumes Congress does not delegate extraordinary regulatory authority over issues of major political or economic significance without providing clear statutory authorization. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2608-09 (2022). And this policy involves national security and exclusive Executive Branch authority—areas in which the major questions doctrine does not apply. *Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 606 U.S. 656, 707 (2025).

The doctrine has no application here, where USCIS undoubtedly has the authority to adjudicate applications and conduct vetting and investigations. The doctrine has been applied by the Supreme Court only in "extraordinary cases" where there is a gross mismatch between an agency's assertion of regulatory authority and the history and context of the supposed statutory authorization, *see West Virginia*, 142 S. Ct. at 2608-09, and where the alleged action has "vast 'economic and political significance,'" without statutory authorization, *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021).

Applicability of the doctrine is tailored to assertions of "expansive regulatory authority over some major social or economic activity." *United States Telecom Ass'n v. FCC*, 855 F.3d 381, 421 (D.C. Cir. 2017) (Kavanaugh, J., dissenting from the denial of rehearing en banc). The USCIS Memo is a statement of agency policy that does not involve any new regulation or any new assertion of regulatory authority.

Plaintiffs next argue the USCIS Memo is contrary to law because it unlawfully discriminates against class members based on nationality and place of birth. Doc. No. 265 at 10-11. This case does not concern the issuance (or not) of any visa, and there is no allegation here that USCIS is refusing to process any visa application based on Plaintiffs' nationality (and indeed, USCIS does not process visa applications). Even if 8 U.S.C. § 1152(a)(1)(A) applied to domestic

processing—it does not—that provision does not prohibit nationality-based distinctions premised on security and vetting concerns. It must be read in harmony with § 1182(a)(3), which requires determining applicants are not inadmissible on security ground – determinations that necessarily depend on quality of available documentation and other information from the applicant's country of origin. The USCIS Memo does not "discriminate" because it preserves individualized adjudication and merely directs enhanced vetting protocols, not denials. Doc. No. 224. Every application remains subject to case-by-case review.

### b. Notice and comment was not required.

Nor is the USCIS Memo a legislative rule required to undergo notice and comment. Notice and comment is required for legislative rules, but it is not required prior to issuance of "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(A). "[A] legislative rule (interchangeably called a substantive rule)" is "one that 'creates rights, assigns duties, or imposes obligations, the basic tenor of which is not already outlined in the law itself.'" *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018) (quoting *La Casa Del Convaleciente v. Sullivan*, 965 F.2d 1175, 1178 (1st Cir. 1992)).

Here, the USCIS Memo is a rule of agency procedure, not a legislative rule.  It does not create any rights, assign any duties, or impose any obligations. Instead, it is a "general statement of policy" exempt from the notice and comment requirement. *See* 5 U.S.C. § 553(b)(A). That policy concerns agency practice and procedure and implements the agency's discretion under existing statutory security requirements—specifically 8 U.S.C. §§1105 (investigations), 1255 (adjustment of status eligibility), and 1446 (naturalization investigations)—and existing regulatory authority under 8 C.F.R. § 103.2(b)(18) (withholding adjudication during security investigations). The USCIS Memo does not create new substantive requirements or alter applicants' substantive

rights; rather, it provides operational guidance on applying existing security mandates in light of Presidential findings documenting systematic vetting deficiencies.[9] Instead, the USCIS memo is a "statement [ ] issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln* v. *Vigil,* 508 U.S. 182, 197 (1993) (quoting *Chrysler Corp.* v. *Brown,* 441 U.S. 281, 302 n.31 (1979).

Alternatively, the USCIS Memo would qualify as a rule or statement of agency procedure also exempt from notice and comment rulemaking. *See* 5 U.S.C. § 553(b)(A). A "critical feature" of the procedural exception is that it "covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the partis present themselves or their viewpoints to the agency." *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000). That a procedural policy or rule may have some impact on benefits applicants does not make it a substantive rule. *Sequoia Orange Co. v. Yeutter*, 973 F.2d 752, 757 (9th Cir. 1992).

Moreover, the USCIS Memo does not dictate substantive agency decisionmaking and expressly preserves officer discretion in final adjudicatory decisions. Doc. No. 224 at 4 ("This policy memorandum is intended solely for the guidance of USCIS personnel in the performance of their official duties, but it does not remove their discretion in making adjudicatory decisions."). This is the paradigmatic interpretive rule.[10] *See Chau Thuy Le v. USCIS*, No. 21-cv-501 (JMC),

---

[9] Plaintiffs argue that the Memo "cites no reason to believe the premise that expedience was prioritized or that there was a lack of screening or vetting." Doc. No. 265 at 5. In view of the murder and terrorist plot described in the Memo, it was reasonable for the agency to infer that prior screening and vetting procedures had gaps. *Great Lakes Commc'n Corp. v. Fed. Commc'ns Comm'n*, 3 F.4th 470, 476 (D.C. Cir. 2021) (Agencies can "rely on common sense . . . even if not explicitly backed by information in the record.").

[10] Plaintiffs argue the Memo eliminates discretion because, they say, it does not "permit agency personnel to grant a benefit when court ordered." Doc. No. 265 at 16. But the Memo does not even mention court orders. And its Director-approval requirement for requests to lift the hold simply

2025 WL 1743942, at *12 (D.D.C. June 24, 2025) (USCIS policy on currency swaps not legislative because it does not work substantive changes to the text of the regulation already promulgated).

Furthermore, because the agency is following a Presidential directive, any consideration of public comments on additional security vetting would not have led to a different outcome, and thus any error is harmless. *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 690 (D.C. Cir. 2023) (error harmless if comments "would not alter the legal conclusion of the rule.").

### c. The December 2 USCIS Memo is not arbitrary and capricious.

The USCIS Memo is also not arbitrary and capricious. It cites particular facts to support the agency's decision that more vetting is required, including the killing of a National Guardsman in Washington, D.C. in November 2025, and a pattern of security lapses since 2021 tied to a foiled plot for a terrorist attack on Election Day 2024. Doc. No. 224 at 2-3; *see also* Presidential Proclamation 10949 (incorporated into the USCIS Memo by reference).[11] The arbitrary and capricious standard is deferential. *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 567 (2025). The APA requires agencies to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983). Here, the agency explained the facts found and choices made, and that is all that is required.

---

ensures that the temporary pause is applied consistently; once the hold is lifted, it does not remove officers' discretion in adjudicating benefits or alter substantive eligibility requirements.

[11] Plaintiffs argue that USCIS cannot rely upon the Presidential Proclamation because it invoked § 1182(f), which grants only the President permission to suspend entry of foreign nationals. Doc. No. 265 at 10. But USCIS relied upon the Proclamation to identify the high-risk countries that present security concerns. USCIS did not invoke § 1182(f), nor does the USCIS Memo purport to suspend the entry of foreign nationals.

Plaintiffs argue that the USCIS Memo fails to explain why two isolated incidents support the suspension of benefits for millions of people from different countries. Doc. No. 265 at 11-12. The USCIS Memo does not rely on "isolated acts" as a definitive finding that all applicants pose a threat; rather, it cites concrete, recent incidents as evidence of vulnerabilities in existing screening and vetting processes, which is a rational basis for initiating a comprehensive review.

Furthermore, the USCIS Memo is not only consistent with the INA and supported by current events, it is also consistent with Presidential policies concerning increased vetting. For example, Presidential Proclamation 10949 requires comprehensive review to identify countries "for which vetting and screening information is so deficient as to warrant" restrictions, and mandated ongoing engagement with such countries on measures needed to comply with U.S. vetting requirements. Procl. 10949, §1(c), (d) (Doc. No. 266-1 at 19).

Executive Order 14161 also reflects Presidential policies and directives to increase vetting and screening, "to the maximum degree possible all aliens who intend to be admitted, enter, or are already inside the United States, particularly those aliens coming from regions or nations with identified security risks." Procl. § 14161, § 2(iv) (Doc. No. 266-1, at 15). "[A]s an agency under the direction of the executive branch, [defendants] must implement the President's policy directives to the extent permitted by law." *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012) (citing *Bldg. & Const. Trades Dep't. v. Allbaugh*, 295 F.3d 28, 32-33 (D.C. Cir. 2002). Pausing on final adjudicatory decisions (but not processing) to obtain more vetting and screening and to review agency policies, is not arbitrary and capricious.

Plaintiffs correctly point out that USCIS routinely conducts the types of security assessments identified in the USCIS Memo—but that is precisely the point. Recent events revealed potential gaps or failures in how existing screening and vetting processes were implemented,

prompting the agency to reassess whether those procedures were adequate and uniformly applied. The fact that these assessments are part of ordinary adjudications does not preclude USCIS from determining that additional review, re-review, or re-interview is necessary to ensure their effectiveness. Additionally, Plaintiffs' claim that "USCIS did not even acknowledge its sudden about-face on a decades-long policy of individualized benefit adjudications," entirely misses the mark. There has been no abandonment of individualized benefit adjudications; the USCIS Memo merely implements a pause in final individualized adjudications.

Plaintiffs also argue the USCIS Memo is arbitrary and capricious because it focuses solely upon enforcement and "ignores that the primary purpose of the INA is to *provide* the immigration benefits." Doc. No. 265 at 13. This is wrong in two ways. First, the USCIS Memo does not focus on enforcement; it focuses on national security. Second, the INA does not have a single, primary purpose. The INA is a comprehensive statutory scheme that balances multiple objectives, including the admission of aliens, the regulation of their presence, protection of national security, and the enforcement of the Nation's immigration laws through removal and other mechanisms.

As for Plaintiffs' "reasonable alternatives" argument, *see* Doc. No. 265 at 15, it misapprehends the nature of the challenged action and the administrative-law duty they invoke. *DHS v. Regents of the Univ. of California*, 591 U.S. 1 (2020), requires consideration of alternatives when an agency makes a final, substantive policy choice; it does not obligate an agency, in the midst of an interim pause, to preselect among options the pause is designed to evaluate. Here, USCIS did not terminate a program or adopt a permanent rule, but temporarily deferred only final adjudications while continuing to process applications—including collecting biometrics, conducting background checks, and performing individualized security reviews—precisely so it could assess whether existing vetting procedures are adequate and what modifications, if any, are

necessary. The USCIS Memo expressly acknowledges that delays may result, weighed that consequence against urgent national-security concerns, and reasonably prioritized security where recent events demonstrated concrete vetting failures.

### d.   Plaintiffs cannot prevail regarding a hold on adjustment applications.

Finally, even leaving aside that the USCIS memo is generally within USCIS's authority and is otherwise consistent with the INA and the APA, Plaintiffs, at a minimum, cannot succeed on a claim that the USCIS Memo improperly pauses adjudication of applications for adjustment of status (the only claim as to which Plaintiffs even arguably have standing for via Omar Doe). In *Gupta v. Jaddou*, the plaintiff challenged USCIS's adjudication hold policy. The First Circuit declined to address whether such claims were reviewable despite § 1252(a)(2)(B), because it found the claims without merit. USCIS's "decision to hold in abeyance applications that lack an immediately available visa is not precluded by § 1255(a)" and "[b]ecause this policy is within the agency's discretion, plaintiffs failed to state a claim under the APA." *Gupta*, 118 F.4th at 483-87. The Court held the policy did not conflict with the requirements for adjustment of status under the INA and was permissible. *See id.* So too here. Nothing in § 1255 limits USCIS's discretion to conduct additional security vetting and screening on adjustment of status applications or to temporarily hold pending applications for those checks and pending additional guidance. Rather, such decisions are within the agency's discretion and not unlawful.

### III.   Plaintiffs cannot establish irreparable harm.

Plaintiffs cannot carry their substantial burden of demonstrating irreparable harm. Irreparable harm is a "necessary threshold showing," *Charlesbank Equity Fund II, Ltd. P'ship*, 370 F.3d 151, 162 (1st Cir. 2004) and that harm must be "certain and great," *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir.2004) – not speculative or unverified.

As an initial matter, Plaintiff has identified only one named Plaintiff who is potentially subject to the USCIS Memo's pause on adjudications, and he has failed to show any irreparable harm. *See supra* at 11-12.

Delay in final adjudication does not establish irreparable harm. Delay in application processing is routinely experienced across the immigration system at any given time. If delay alone constituted irreparable harm, every applicant whose case takes longer than desired could obtain preliminary relief. Courts have rejected this. *Khachutorov v. Britten*, 792 F. Supp. 3d 1106, 1116 (C.D. Cal. July 23, 2025); *Kurt v. Mayorkas*, No. 24-cv-02792-SK, 2024 WL 5161950, at *5 (N.D. Cal. Dec. 18, 2024). The First Circuit held that delay in administrative processing, without more, does not constitute irreparable harm. *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 178 (1st Cir. 2016).

Plaintiffs' declarations invoke potential dangers and family separation some class members would face *if* removed. Doc. No. 265 at 17-18. But those alleged harms are not caused by the USCIS Memo, which does not revoke parole, does not place anyone in removal proceedings, and does not alter any individual's removability under the INA. It simply pauses final adjudication of certain (largely discretionary) benefits while security vetting is reassessed. The possibility that a parolee may fall out of lawful status before obtaining a discretionary benefit is not a consequence of the adjudication pause; it is an inherent feature of parole itself, which Congress expressly made temporary and revocable. *See* 8 U.S.C. § 1182(d)(5)(A).

Plaintiffs also say that the adjudication pause has prevented the release of certain unnamed CHNV parolees from detention. Doc. No. 265 at 17. But the USCIS Memo has nothing to do with detention. And Plaintiffs tellingly fail to demonstrate that any individual was detained *because* of the pause, rather than pursuant to independent enforcement decisions authorized by statute.

Further, Plaintiffs cannot show when or if these class members' applications for temporary protected status (TPS) would be granted absent the USCIS memo. Additionally, the USCIS Memo does not prevent aliens from applying for TPS or preclude vetting and processing of the application. It precludes only final adjudication. Adjudication of a TPS application takes on average 5-6 months. Doc. No. 41-5. Further, any alien placed in § 1229a removal proceedings can renew his request for TPS in that proceeding. *See, e.g.*, 8 U.S.C. §§ 1229a(c)(4), 1254a(b)(5)(B); 8 C.F.R.§ 1244.18(b).

Plaintiffs also assert that delays in adjudication will result in loss of work authorization and financial hardship for those whose parole was previously terminated. Doc. No. 265 at 18. But delay, without more, does not constitute irreparable harm. *Anversa*, 835 F.3d at 178. And the risk that a parolee's work authorization may lapse before adjudication of a discretionary benefit is not new and is not attributable to the USCIS Memo. It is a function of the temporary nature of parole and the well-documented processing times for immigration benefits.

As for the possibility of family separation, Doc. No. 265 at 17-18, Defendants do not minimize the seriousness of that concern, but the possibility of separation is not a new consequence of the USCIS Memo. Plaintiffs' alleged risk of family separation does not stem from the adjudication pause. Rather, it reflects the legal reality that the parole they previously received is temporary and discretionary, and that approval of immigration benefits is never guaranteed. From the moment parole was granted, Plaintiffs faced the legally foreseeable risk that parole could end or that a requested immigration benefit could be denied before permanent status was obtained. Plaintiffs therefore identify no harm that is qualitatively different from the risk they faced before the USCIS Memo issued.

Plaintiffs' use of pseudonyms for unidentified class members compounds their evidentiary burden. Irreparable harm must be concrete; that is, it "must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II, Ltd. P'ship,* 370 F.3d at 162. Without true identities, neither Defendants nor this court may verify: (1) whether claimed harms are real or hypothetical; (2) whether Plaintiffs remain employed or have alternate income; (3) whether professional setbacks result from the challenged policies or other factors; or (4) the accuracy of hardship claims. Plaintiffs ask this Court to grant extraordinary relief based on unverifiable allegations from unidentified parties.

Plaintiffs have simply not established that a preliminary injunction would address any harm they allege. A preliminary injunction cannot guarantee favorable adjudications: it can only compel premature adjudications before enhanced security vetting is complete. And, critically, if a premature adjudication is compelled without completed security screening, the result will be for USCIS to deny the application or petition because to do otherwise would violate statute, regulation, policy, and the Presidential directive.

## IV.    The balance of the equities favors the government.

When the Government is a party, the balance of equities and public interest merge. *Nken v. Holder*, 556 U.S. 418,435 (2009); *Grant v. Trial Ct.*, 784 F. Supp. 3d 475, 490–91 (D. Mass. 2025). A preliminary injunction is an extraordinary remedy requiring careful balancing. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). The Government's interest in national security is "an urgent objective of the highest order." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010). The Government "is not required to conclusively link all the pieces in the puzzle" before courts afford weight to its conclusions. *Id.* at 35. The USCIS Memo responds to

concerns of inadequate vetting and screening that led to murder and terrorism plots. The memo directs a comprehensive review of existing vetting and screening procedures. Requiring immediate adjudications before completing these reviews would undermine their purpose and could result in approving applications where security concerns have not been adequately addressed. "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger*, 456 U.S. at 312. The public interest favors thorough security vetting, particularly where documented deficiencies exist. Congress enacted provisions mandating investigation, not just adjudication. 8 U.S.C. §§ 1105(a)-(b).

Courts must be particularly cautious about issuing injunctions that interfere with executive branch functions, especially in areas of national security and foreign affairs, and particularly those functions in furtherance of Presidential policy. Whenever a district court issues an injunction against the Executive Branch, the United States suffers a form of irreparable harm. The President is "a representative of the people" and holds "the mandate of the people to exercise his executive power." *Myers* v. *United States*, 272 U.S. 52, 123 (1926). The government has a substantial interest in carrying out the President's policies. Courts irreparably injure our democratic system when they forbid the government from effectuating those policies against anyone anywhere in the nation. *Cf. Maryland* v. *King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Those concerns escalate when, as here, the injunction undermines the Executive Branch's constitutional and statutory authority over immigration and the admission of aliens, thereby engaging in "unwarranted judicial interference in the conduct of foreign policy." *Kiobel* v. *Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013). Judicial inquiry into the national-security realm similarly intrudes "on the President's constitutional responsibilities in the area of foreign affairs." *Hawaii*, 585 U.S. at 704; *see also Egan*, 484 U.S. at 530. The requested relief would require

resumption of adjudications under procedures that the Executive has determined inadequate to address documented vetting deficiencies. This substitutes judicial judgment for executive expertise on matters where deference is appropriate. *Holder*, 561 U.S. at 33-34.

Plaintiffs, on the other hand, at most, must wait to have their applications adjudicated and undergo additional security checks to receive the immigration benefits they seek. They effectively ask the Court to require USCIS to adjudicate benefits with sufficient speed in order to avoid family separation. But Congress did not structure the immigration system to guarantee family unity, and courts may not rewrite the statutory scheme through equitable relief. The national security concerns identified in the USCIS Memo outweigh any possible risk to plaintiffs from the delay in adjudication of pending benefit requests. And while that wait may result in some class members falling out of status, that was always a risk, as adjudication of immigration benefits was never guaranteed on a particular schedule.

## V.    Any relief issued must be limited only to class members.

Plaintiffs acknowledge, as they must, that the USCIS Memo is relevant to class members in this action (if at all) only insofar as they are from Afghanistan, Cuba, Haiti, and Venezuela and have pending benefits applications. Doc. No 265 at 1. They acknowledge they seek relief only with respect to the "Other Immigration Benefits Subclass" and the "Re-Parole Subclass." Doc No. 265 at 1, citing definitions in Doc. No. 108.  If this Court is inclined to grant relief, relief should be limited to class members. The Government also respectfully requests relief be stayed pending disposition of any appeal, or at minimum administratively stayed for fourteen days to allow opportunity to seek expedited relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

29

DATED: February 17, 2026                    Respectfully submitted

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

KATHERINE J. SHINNERS
*Senior Litigation Counsel*

By: /s/ *Elissa Fudim*
ELISSA FUDIM
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2026, I electronically filed this motion with the Clerk of the Court for the United States Court of for the District of Massachusetts by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Elissa Fudim*
ELISSA FUDIM
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

*Counsel for Defendants*