UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

SVITLANA DOE, *et. al.*,

                                    *Plaintiffs*,

          v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, *et. al.*,

                                    *Defendants*.

Case No.: 1:25-cv-10495-IT

**CERTIFICATION OF CORRECTED
ADMINISTRATIVE RECORD**

### CERTIFICATION

I, Juliana Blackwell, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1.      I am employed with the U.S. Department of Homeland Security ("DHS"), as the Deputy Executive Secretary. I am responsible for the oversight and management of the Office of the Executive Secretary, which oversees the management of written communications intended for, and originated by, the Secretary and Deputy Secretary of Homeland Security, and the maintenance of official Department records. I have held this position since August 2019.

2.      These documents relate to the decision-making process to terminate the categorical parole processes for aliens from Colombia, Cuba, Ecuador, El Salvador, Guatemala, Haiti, and Honduras, and their immediate family members, under the Family Reunification Parole (FRP) processes announced, or updated, by DHS in 2023. *Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58,032 (Dec. 15, 2025) ("the FRN").

1

3.     The record was initially filed with the Court on January 13, 2026, with the exception of five documents recently identified by U.S. Citizenship and Immigration Services (USCIS) as having been erroneously excluded from the initial record production.  In our haste to provide the court with a complete administrative record in a timely manner, USCIS experts have determined that a few documents that were considered in the decision-making process were not included.  We are amending the record to provide these documents.

4.     To the best of my knowledge and belief on the date of certification, the documents reflected in the index appended to this certification now constitute the true and correct administrative record the agency considered in issuing the Federal Register Notice entitled *Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58,032 (Dec. 15, 2025).

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on:  March 6, 2026

JULIANA J BLACKWELL

Digitally signed by
JULIANA J BLACKWELL
Date: 2026.03.06
15:27:03 -05'00'

Juliana Blackwell
Deputy Executive Secretary

**Certified Administrative Record Index:**
*Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58032 (Dec. 15, 2025)

| Starting Bates No. | Document Title |
|---|---|
| FRP-FRN-00001 | Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans, 90 FR 58032 (CIS No. 2806-25, RIN 1615-ZC12) |
| FRP-FRN-00017 | Decision Document, USCIS Notice: Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans |
| FRP-FRN-00018 | Certain DHS Immigration Fees Required by HR-1 Fiscal Year 2026 Adjustments for Inflation, 90 FR 52085 |
| FRP-FRN-00021 | Circumvention of Lawful Pathways, 88 FR 31314 |
| FRP-FRN-00160 | Cuban Family Reunification Parole Program, 72 FR 65588 |
| FRP-FRN-00161 | Designating Aliens for Expedited Removal, 90 FR 8139 |
| FRP-FRN-00163 | Determination: Foreign Affairs Functions of the United States, 90 FR 12200 |
| FRP-FRN-00164 | E.O. 14150, America First Policy Directive to the Secretary of State, 90 FR 8337 |
| FRP-FRN-00165 | E.O.14165, Securing Our Borders, 90 FR 8467 |
| FRP-FRN-00168 | E.O. 14194, Imposing Duties to Address the Situation at our Southern Border, 90 FR 9117 |
| FRP-FRN-00172 | E.O. 14159, Protecting the American People Against Invasion, 90 FR 8443 |
| FRP-FRN-00178 | E.O. 14198, Progress on the Situation at Our Southern Border, 90 FR 9185 |
| FRP-FRN-00180 | E.O. 14227, Amendment to Duties to Address the Situation at Out Southern Border, 90 FR 11371 |
| FRP-FRN-00182 | EOP, E.O. 14157, Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists, 90 FR 8439 |
| FRP-FRN-00184 | Foreign Terrorist Organization Designations of Tren de Aragua, Mara Salvatrucha, Cartel de Sinaloa, Cartel de Jalisco Nueva Generación, Carteles Unidos, Cartel del Noreste, Cartel del Golfo, and La Nueva Familia Michoacana, 90 FR 10030 |
| FRP-FRN-00185 | Foreign Terrorist Organization Designations of Viv Ansanm and Gran Grif, 90 FR 19065 |
| FRP-FRN-00186 | Immigration Parole Fee Required by HR-1 Reconciliation Bill, 90 FR 48317 |
| FRP-FRN-00188 | Implementation of a Family Reunification Parole Process for Colombians, 88 FR 43591 |
| FRP-FRN-00199 | Implementation of a Family Reunification Parole Process for Ecuadorians, 88 FR 78762 |
| FRP-FRN-00212 | Implementation of a Family Reunification Parole Process for Guatemalans, 88 FR 43581 |
| FRP-FRN-00223 | Implementation of a Family Reunification Parole Process for Hondurans, 88 FR 43601 |
| FRP-FRN-00233 | Implementation of a Family Reunification Parole Process for Salvadorans, 88 FR 43611 |

| Starting Bates No. | Document Title |
|---|---|
| FRP-FRN-00245 | Implementation of Changes to the Cuban Family Reunification Parole Process, 88 FR 54639 |
| FRP-FRN-00250 | Implementation of Changes to the Haitian Family Reunification Parole Process, 88 FR 54635 |
| FRP-FRN-00255 | Implementation of Haitian Family Reunification Parole Program, 79 FR 75581 |
| FRP-FRN-00258 | Inflation Adjustment to HR-1 Immigration Fees, 90 FR 52693 |
| FRP-FRN-00261 | Notice of Changes to Application Procedures for the Cuban Family Reunification Parole Program, 79 FR 75579 |
| FRP-FRN-00264 | Proclamation 10773 of June 3, 2024, Securing the Border, 89 FR 48487 |
| FRP-FRN-00271 | Proclamation 10817 of September 27, 2024, Amending Proclamation 10773, 89 FR 80351 |
| FRP-FRN-00274 | Securing the Border, 89 FR 48710 |
| FRP-FRN-00337 | Securing the Border, 89 FR 81156 |
| FRP-FRN-00467 | Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 FR 13611 |
| FRP-FRN-00479 | USCIS Immigration Fees Required by HR-1 Reconciliation Bill, 90 FR 34511 |
| FRP-FRN-00485 | CBP, DHS, CBP Releases December 2024 Monthly Update |
| FRP-FRN-00497 | CBP, DHS, Nationwide Encounters Filtered for Region-Southwest Land Border, Citizenship-Haiti |
| FRP-FRN-00506 | CBP, DHS, Nationwide Encounters, Filtered for Region - Southwest Land Border, Citizenship - Ecuador |
| FRP-FRN-00512 | CBP, DHS, Nationwide Encounters |
| FRP-FRN-00520 | CBP, DHS, Nationwide Encounters |
| FRP-FRN-00523 | CBP, DHS, U.S. CBP Nationwide Encounters, filtered by Region (Southwest Land Border) and Citizenship (Columbia, Cuba, Ecuador, El Salvador, Guatemala, Haiti, and Honduras) |
| FRP-FRN-00532 | DHS, DHS CBP PIA – 021 TECS System-Platform |
| FRP-FRN-00533 | DHS, DHS Announces Historic Travel Assistance and Stipend for Voluntary Self-Deportation |
| FRP-FRN-00534 | DHS, DHS CBP PIA-021 TECS System, Platform - August 2016 - Appendix Update - April 2022 |
| FRP-FRN-00588 | DHS, DHS Reinstates Migrant Protection Protocols, Allowing Officials to Return Applicants to Neighboring Countries |
| FRP-FRN-00589 | DHS, Nat'l Environmental Protection Act, Memo for Record for Categorical Excluded Actions, FRP |
| FRP-FRN-00605 | DHS, System of Records Notices (SORNs) _ Homeland Security |
| FRP-FRN-00618 | OHSS, DHS, Lawful Pathways and Processes Report |
| FRP-FRN-00632 | USCIS, DHS, Jan. 23, 2025 Acting Director Higgins, Securing Our Borders EO and Parole Processing Email |
| FRP-FRN-00633 | USCIS, DHS, Supp. Statement for Online Request to be a Supporter and Declaration of Financial Support, OMB Control No. 1615-0157, Form I-134A, page 10, question 12 |
| FRP-FRN-00646 | USCIS, DHS, The Cuban Family Reunification Parole Program, (Process Steps) |

| Starting Bates No. | Document Title |
|---|---|
| FRP-FRN-00663 | Cong. Rsch. Serv., Straut-Eppsteiner, H., FY2024 EOIR Immigration Court Data, Caseloads and the Pending Cases Backlog |
| FRP-FRN-00667 | Congress, H.R. Rep. 104-469, pt. 1, at 140 |
| FRP-FRN-01217 | DOS, Dispatch Magazine (1995), U.S.-Cuba Joint Communique on Migration, Article 5 |
| FRP-FRN-01220 | DOS, Migration and Refugees, Joint Statement Between the United States and Cuba |
| FRP-FRN-01231 | DOS, Press Release, Secretary Rubio's Call with Mexican Foreign Secretary de la Fuente |
| FRP-FRN-01233 | DOS, Press Release, Secretary Rubio's Call with Mexican Foreign Secretary de la Fuente |
| FRP-FRN-01235 | DOS, Press Release, Secretary Rubio's Call with Mexican Foreign Secretary de la Fuente |
| FRP-FRN-01237 | DOS, Press Releases, Visa Restrictions on Travel Agencies Facilitating Illegal Immigration to the United States |
| FRP-FRN-01239 | DOS, Press Statement, Priorities and Mission of the Second Trump Administration's Department of State |
| FRP-FRN-01243 | DOS, Readout, Secretary Rubio's Meeting with Salvadoran President Nayib Bukele |
| FRP-FRN-01247 | DOS, Secretary Rubio's Meeting with Panamanian President Mulino |
| FRP-FRN-01250 | EOP, Office of the Press Secretary, Joint Statement |
| FRP-FRN-01251 | EOP, Readout of President Donald J. Trump's Call with President Nayib Bukele |
| FRP-FRN-01254 | EOP, Statement From the Press Secretary |
| FRP-FRN-01258 | Council on Foreign Relations, Why Six Countries Account for Most Migrants at the U.S.-Mexico Border |
| FRP-FRN-01290 | George J. Borjas, The Earnings of Undocumented Immigrants, National Bureau of Economic Research |
| FRP-FRN-01333 | Meryl Sebastian, Trump Says India 'Will Do What's Right' on Illegal Immigration, BBC News |
| FRP-FRN-01337 | Panama Receives First US Deportation Flight Under Trump Administration, The Tico Times |
| FRP-FRN-01341 | The Dialogue, Family Remittances in 2024 Looking Ahead amid Possible Shifts in Flows |
| FRP-FRN-01354 | The Dialogue, Family Remittances to Latin America and the Caribbean 2023, Slide 6, Leadership for the Americas |
| FRP-FRN-01397 | The Dialogue, Orozco, M., Future Flows of Family Remittances to Latin America and the Caribbean |
| FRP-FRN-01484 | OHSS, DHS, OHSS analysis of December 2024 OHSS Persist Dataset [OHSS tab 2] |
| FRP-FRN-01485 | OHSS, DHS, OHSS analysis of May 2025 OHSS Persist Dataset [OHSS tab 1] |
| FRP-FRN-01486 | USCIS, DHS, Data pulled from internal DHS reports on parole processing [OHSS tab 12] |

| Starting Bates No. | Document Title |
|---|---|
| FRP-FRN-01487 | USCIS, DHS, USCIS analysis of CBP FRP parole data as of Jan. 23, 2025 [OHSS tab 6] |
| FRP-FRN-01527 | USCIS, DHS, USCIS analysis of CBP FRP parole data as of Jan. 23, 2025 [OHSS tab 5, 7, 8, 9] |
| FRP-FRN-01570 | USCIS, DHS, USCIS analysis of FRP response rates as of Feb. 18, 2025 [OHSS tab 3] |
| FRP-FRN-01571 | USCIS, DHS, USCIS analysis of legacy FRP filings as of Apr. 2, 2025 [OHSS tabs 10 & 11] |
| FRP-FRN-01573 | U.S. Citizenship and Immigr. Serv., Fraud Detection & Nat'l Sec. Directorate, *Brief Analysis of Family Reunification Parole Data* (Dec. 4, 2024) |
| FRP-FRN-01583 | Office of Policy & Strategy, Immigration Records and Identity Services Directorate, *Form I-134A – Reviewers Guide* (Oct. 19, 2023) |
| FRP-FRN-01645 | Office of Policy & Strategy, Immigration Records and Identity Services Directorate, *Form I-134A – Reviewers Guide* (Dec. 2, 2024) |
| FRP-FRN-01708 | Form I-134A Family Reunification Parole Process ELIS Guide |
| FRP-FRN-01728 | USCIS, DHS, USCIS analysis of FRP response rates as of Feb. 18, 2025 [OHSS tab 4] |



# Brief Analysis of Family Reunification Parole Data

**U.S. Citizenship and Immigration Services**
**Fraud Detection and National Security Directorate**
**Fraud Division**

**December 4th, 2024**

FOR OFFICIAL USE ONLY (FOUO) – LAW ENFORCEMENT SENSITIVE

This document is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO. It contains information that may be exempt from release under the Freedom of Information Act (5 U.S.C.§ 552). This information shall not be  distributed beyond the original addressees without prior authorization of the originator

FRP-FRN-01573

## Overview

HQFDNS Fraud Division (FD) reviewed Family Reunification Parole Process (FRP) data provided by the Department of State (DOS) to assess program integrity issues that could be readily identified. DOS provided FD with a list of 35,688 rows of data containing Form I-130 receipt numbers and petitioner names. There were no other datapoints to assist with the analysis. FD analyzed these data and found that several hundred receipts are associated with deceased petitioners. These individuals represent a program integrity concern because a decedent's approved petition is automatically revoked unless certain conditions are met (regarding revocation, see 8 CFR § 205.1(a)(3)(i)(C); regarding the conditions, see § 204(l) of the Immigration and Nationality Act and the USCIS Consolidated Handbook of Adjudication Procedures, Chapter 9, *Death of Petitioner or Principal Beneficiary*).

Update: Since completing the initial draft of this report on December 4, 2024, FD received I-130 data from the USCIS Office of Policy and Strategy on December 20, 2024. Analysis based on that additional data is provided at the end of this report. Full manual review was not completed but FD identified 700+ additional deceased petitioners.

## FRP Overview

FRP is available by invitation only to certain petitioners who filed a Form I-130, *Petition for Alien Relative*, that USCIS approved. It allows an eligible beneficiary and their immediate family to be paroled into the United States for the purpose of reunification with the petitioner while the beneficiary waits for a family-based immigrant visa to become available. USCIS sends invitations are sent to certain petitioners, who can then file Form I-134A, *Online Request to be a Supporter and Declaration of Financial Support*, for the I-130 beneficiary and any derivative beneficiaries. The invitation to file a Form I-134A is not transferable if the petitioner dies. Petitioners that live abroad cannot submit Forms I-134A.

Case 1:25-cv-10495-IT   Document 276-1   Filed 03/06/26   Page 8 of 162

FRP-FRN-01574

## Data

FD identified 29,026 unique Forms I-130 ("receipts") and 22,854 unique petitioners based on the 35,688 rows of data received from DOS.[1] Of these, 8,201 petitioners filed at least one Form I-134A. The diagram to the right depicts the flow of receipts to petitioners.

FD identified 33,274 total Forms I-134A filed by these 8,201 petitioners. Closer review revealed 9,576 duplicates, meaning that petitioners filed two or more Forms I-134A for the same I-130 beneficiary in some instances (see table below).

FD also double-checked petitioners' social security numbers (SSNs) listed on the Forms I-130 against the USCIS Central Index System (CIS) to ensure they matched. In 1,066 instances they did not. Cursory review indicates at least a few of these mismatches represent typographical errors, but others are so different that fraud may be involved. FD's analysis below represents only the SSNs listed on the Forms I-130. FD plans to review the 1,066 SSNs found in CIS at a later date to determine if they are associated with deceased individuals.

| Count of Form I-134A Receipts by Beneficiary Type | |
| --- | --- |
| **Beneficiary Type** | **Unique Form I-134A Receipt Numbers** |
| Unique Beneficiary | 23,698 |
| Same Beneficiary | 9,576 |
| **Grand Total** | **33,274** |

## Machine Vetting Deceased Petitioners - Death Index Analysis[2]

FD compared the SSNs of the 22,854 unique petitioners against two different death index data sets ███████████████████████████████

---

[1] FD used social security numbers (SSNs) to identify unique petitioners because SSNs are themselves unique and can be directly matched to other data sets.

[2] FD was unable to locate receipts for the 6,662 names that were not themselves accompanied by receipt numbers due to the number of possible name combinations. There were 27,385 unique name combinations combining first and last names from the DOS source data, and 16,037 unique name combinations combining first, middle, and last name from these same source data.

For Official Use Only (FOUO) / Law Enforcement Sensitive

2

FRP-FRN-01575

he tables below depict the counts by match type and number of Forms I-130 receipted:

| Unique Petitioners Who Appear on a Death Index[3] | | | | |
|---|---|---|---|---|
| **Death Index** | **SSN Match** | **Name Match** | **DOB Match** | **SSN, Name, and DOB Match** |
| | 575 | 385 | 407 | 372 |
| | 323 | 196 | 287 | 191 |

| Unique Receipts That Appear on a Death Index | | | | |
|---|---|---|---|---|
| **Death Index** | **SSN Match** | **Name Match** | **DOB Match** | **SSN, Name, and DOB Match** |
| | 703 | 474 | 509 | 459 |
| | 395 | 240 | 354 | 232 |

FD found an additional 201 petitioner names and dates of birth associated with SSNs that matched against different names and dates of birth in



one or both death indices. This could be for a variety of reasons, such as a new married name, switched first and last names, or an incorrectly entered SSN or DOB. FD manually reviewed these 201 petitioners and determined 158 were in fact deceased. The table below depicts the starting point of SSNs that match a death index, followed by the name and DOB matches, and then the name and DOB no matches:

Out of the 8,201 unique petitioners that filed I-134As, there are 32 SSNs that appear on a death index. Of these, 17 SSNs matched to individuals reported as deceased prior to the filing of their I-134As. Below are the confirmation statuses of these 17 I-134As:

| Confirmation Status of Receipts After Supporters Name Appeared on a Death Index |
|---|

**For Official Use Only (FOUO) / Law Enforcement Sensitive**

FRP-FRN-01576

| I-134A Status | Count | SSN match in ▮▮▮▮ | SSN match in ▮▮▮▮ |
|---|---|---|---|
| Confirmed | 12 | 12 | 5 |
| Nonconfirmed | 4 | 4 | 2 |
| Pending | 1 | 1 | 1 |

## Petitioner Age Analysis

FD analyzed the Form I-130 receipt data to determine both the length of time a petition has been waiting for a priority date to become current as well as petitioner current age. This analysis revealed that a petition has waited 9.8 years on average and that there are 2,497 petitioners over the age of 80. The chart below depicts the age distribution of the petitioners:



Receipt Count by Petitioner's Current Age Range

| | Age 20-29 | Age 30-39 | Age 40-49 | Age 50-59 | Age 60-69 | Age 70-79 | Age 80-89 | Age 90-99 | Age 100-109 | Age 110-120 |
|---|---|---|---|---|---|---|---|---|---|---|
| Count of Receipts | 5 | 143 | 1526 | 6578 | 7456 | 4645 | 1845 | 582 | 69 | 1 |

As of 2022, the average life expectancy in the United States was estimated at 77.5 years.[4] One petitioner not found on either death index was born

---

[4] See Social Security Admiration data available at https://www.ssa.gov/oact/STATS/table4c6.html and https://www.ssa.gov/oact/NOTES/as120/LifeTables_Body.html

Case 1:25-cv-10495-IT    Document 276-1    Filed 03/06/26    Page 11 of 162

FRP-FRN-01577

in 1907 and would be 117 years old. She would be the oldest U.S. citizen if still alive.[5] This demonstrates that not everyone who is deceased appears on a death index.

| Petitioner Age at Filing | |
|---|---|
| **Max** | 104 |
| **Average** | 54.5 |
| **Median** | 54 |

| Petitioner Current Age | |
|---|---|
| **Max** | 117 |
| **Average** | 64.8 |
| **Median** | 63 |

| Years Petition Awaiting Priority Date to Become Current | |
|---|---|
| **Max** | 28 |
| **Average** | 9.8 |
| **Median** | 7 |

| Petitioners and Receipts that Appear on the Death Index by Age Range | | | | | |
|---|---|---|---|---|---|
| **Age Range** | Unique Petitioners | Petitioner on Death Index | % of Petitioners on Death Index | Unique Form I-130 Receipts | Form I-130 Receipts on Death Index | % of Form I-130 Receipts on Death Index |
| **60-69** | 7,465 | 64 | 0.85% | 9,571 | 79 | 0.83% |
| **70-79** | 4,646 | 148 | 3.18% | 6,017 | 176 | 2.93% |
| **80-89** | 1,845 | 176 | 9.53% | 2,289 | 206 | 9.00% |
| **90-99** | 584 | 122 | 20.89% | 749 | 158 | 21.09% |
| **100 +** | 70 | 28 | 40.00% | 89 | 37 | 41.57% |

## Manual Vetting Petitioner Deaths

Death index data confirmed dates of death for only 28 of the 70 petitioners aged 100 years or more (see the table immediately above). Based on the average life span information cited above, the death index data did not appear to capture all death information. To test this, FD manually reviewed the 42 petitioners aged 100 or more who did not show up on a death index. Manual review included ███████████████████████████████████████████████████████████████████████ FD was able to confirm an additional 19 deaths through manual review, including the death of the petitioner born in 1907.[6] FD also checked CBP entry/departure records and found departure records not linked to subsequent re-entries for an additional 86 petitioners aged 100 or more.[7] This left 13 petitioners, aged 100 to 105, with no

---

[5] https://www.grg-supercentenarians.org/world-supercentenarian-rankings-list/
[6] This petitioner passed away on ███████████, at the age of 106.
[7] It is not unlawful for a U.S. citizen who has retired abroad or is otherwise permanently residing abroad to file a family-based petition for a qualifying relative; however, supporting such a petition becomes problematic because only individuals domiciled (residing permanently) in the United States are eligible to file a

FRP-FRN-01578

evidence of death. While some of these 13 may be alive, it is likely most are deceased even though FD was unable to locate records of their passing. FD then queried DHS entry/departure records and discovered 10 petitioners in this age group who had departed the United States without evidence of a subsequent re-entry.

Death index data only confirmed dates of death for 122 out of 584 petitioners aged 90 to 99, so FD also manually reviewed this group. This review identified 129 additional deaths as well as 76 petitioners who had departed the United States without evidence of a subsequent re-entry.

| | Deceased | | | | Not in the United States | Unknown | Total |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| **100 +** | 15 | 13 | 14 | 5 | 10 | 13 | 70 |
| **90 to 99** | 68 | 54 | 108 | 21 | 76 | 255 | 582 |

---

Form I-864, *Affidavit of Support*, which is statutorily required for a noncitizen to adjust status/obtain admission as an immigrant (see § 213A(f)(1)(C) of the Immigration and Nationality Act (INA)). Similarly, an individual filing a Form I-134A pursuant to Family Reunification Parole must be "in the United States" (see USCIS Form I-134A instructions, available online at https://www.uscis.gov/FRP). FD believes that petitioners residing permanently abroad may represent a more general program integrity concern, particularly in this environment of increased agency reliance on interview-waiver adjudications. FD will analyze this issue further.

**For Official Use Only (FOUO) / Law Enforcement Sensitive**

Case 1:25-cv-10495-IT    Document 276-1    Filed 03/06/26    Page 13 of 162

FRP-FRN-01579

U.S. Citizenship
and Immigration
Services

Brief Analysis of Family Reunification Parole Data

**Issued**: December 4, 2024
**Data as of**: October 25, 2024



## Totals

To date, FD has found:

- 672 FRP invitation recipients (Form I-130 petitioners) who have been identified as deceased;
- 797 Form I-130 receipts filed by petitioners who have been identified as deceased; and
- 256 FRP Form I-134A receipts filed by supporters (petitioners) who have been identified as deceased.

The table below depicts Form I-134A confirmation status where a supporter has been identified by FD to have died:

| Form I-134A Confirmation Status of Receipts Associated with Supporters Appearing on a Death Index | |
|---|---|
| Form I-134A Status: | Count: |
| Confirmed | 111 |
| Nonconfirmed | 133 |
| Pending | 12 |
| TOTAL | 256 |

Case 1:25-cv-10495-IT    Document 276-1    Filed 03/06/26    Page 14 of 162

FRP-FRN-01580

## Concerns Identified

1. USCIS has received and confirmed I-134As filed by petitioners who have died because current processes do not include checks to prevent or detect such filings.
   a. Invitations for FRP should not be sent without verifying that an elderly petitioner is still alive.
   b. I-134A filings should not be confirmed without verifying the petitioner is still alive.

2. Checking death indices is insufficient to determine if someone is alive. Fingerprinting and/or requiring evidence of a petitioner's physical presence in the United States is recommended to improve program integrity.

3. USCIS has received I-134As filed by petitioners who were not in the United States at the time of filing and petitioners who appear to have abandoned the United States for domiciles abroad.
   a. Invitations for FRP should not be sent without verifying that the petitioner still resides in the United States.
   b. I-134A filings should not be confirmed without verifying that the petitioner was in the United States at the time of filing and still resides permanently in the United States.

4. Other petition- and supporter-based filings are vulnerable to the same risks and should be analyzed, especially in light of the agency's increased reliance on interview waivers.

## Update: January 23, 2025

On December 20, 2024, FD received Form I-130 receipt data from the USCIS Office of Policy and Strategy's Humanitarian Affairs Division (OP&S HAD) – specifically, the 6,662 petitions for which no receipt numbers were initially provided in the DOS data. FD re-queried all petitioner information, i.e., both the petitioner information discussed above and the petitioner information found on the recently obtained additional 6,662 receipts. FD used ██████████████████████████████████████████████████ due to access issues. The results are reported in the tables below. Full manual review has not been completed on all cases in this additional round of analysis. However, cases with SSN, Name and DOB all matching and providing a high level of confidence it's the same person.

| Unique Petitioners Who Appear on a Death Index | | | |
|---|---|---|---|
| **Death Index** | **SSN Match** | **Name Match** | **DOB Match** | **SSN, Name, DOB Match** |
| ██████████████ | 1,528 | 1,131 | 1,101 | 1,035 |
| | 417 | 310 | 300 | 281 |

| Unique Receipts That Appear on a Death Index | | | |
|---|---|---|---|
| **Death Index** | **SSN Match** | **Name Match** | **DOB Match** | **SSN, Name, DOB Match** |
| ██████████████ | 1,850 | 1,339 | 1,314 | 1,219 |

**For Official Use Only (FOUO) / Law Enforcement Sensitive**

8

Case 1:25-cv-10495-IT    Document 276-1    Filed 03/06/26    Page 16 of 162

FRP-FRN-01582

| | 519 | 324 | 324 | 309 |

The table below depicts updated I-134A confirmation status where a supporter has been identified by FD to have died:[9]

| I-134A Confirmation Status of Receipts Associated with Supporters Appearing on a Death Index | |
|---|---|
| **I-134A Status:** | **Count:** |
| Confirmed | 364 |
| Nonconfirmed | 350 |
| Pending | 14 |
| **TOTAL** | **728** |

---

[9] As a reminder, the data in this table are based o█████████████████████████████████████ Additionally, the data in the table here do not include manual verifications of death, unlike the similar tables appearing earlier in this document. Full manual review was not completed due to limited time and in light of Executive Order 14157.

**Office of Policy & Strategy**

**Immigration Records and Identity Services Directorate**

# *Form I-134A – Reviewers Guide*

(Last Revision – October 19, 2023)

FRP-FRN-01583

Version 8.0

| Version | Date | Updated by | Description of Changes |
|---------|------|------------|------------------------|
| 1.0 | April 27, 2022 | | Issuance of Draft Reviewers Guide |
| 2.0 | October 4, 2022 | | Addition of Step by Step Guides |
| 3.0 | October 19, 2022 | | Addition of Process for Venezuelans |
| 4.0 | January 17. 2023 | | Addition of CHNV and 134A |
| 5.0 | March 28, 2023 & April 11, 2023 | | Preparation of Training, merging worksheets into the Guide; corrections |
| 6.0 | August 1, 2023 | | Technical Updates, addition of Text Box |
| 7.0 | August 14, 2023 | | Consolidating updated guidance |
| 8.0 | September 12, 2023 | | Updated guidance for cases on hold, protected warning banners, cases on hold, duplicate case review, adding Alien Number to case, rendering Administratively Closed. |
| 9.0 | October 19, 2023 | | Updated guidance for Text Box responses, Cases Placed on Hold for Other Reason, Tips for Reviewing Financial Evidence, Case Tracker Primary Reasons, Added appendices for Duplicate Case Process Map and TPS Evaluation Process Map. Inserted links to referenced appendices and chapters throughout document. |
| 10.0 | March 28, 2024 | | Updated guidance for co-supporter, Non-confirmation comments and contact for BOLO list. |

2

FRP-FRN-01584

# 1.0  Introduction

### *1.1 Background – Uniting for Ukraine*

On April 21, 2022, President Biden announced Uniting for Ukraine, a new streamlined process to provide Ukrainian citizens who have fled Russia's unprovoked war of aggression opportunities to come to the United States, fulfilling President Biden's commitment to welcome up to 100,000 Ukrainians and others fleeing Russia's aggression in response to the ongoing Russia-Ukraine crisis.

For the full press release, see Appendix I(a) – Press Release – President Biden to Announce Uniting for Ukraine, a new Streamlined Process to Welcome Ukrainians Fleeing Russia's Invasion of Ukraine, OR visit https://www.dhs.gov/news/2022/04/21/president-biden- announce-uniting-ukraine-new-streamlined-process-welcome-ukrainians.

Uniting for Ukraine will provide a safe and orderly process for displaced Ukrainians with a supporter in the United States to be considered for parole, on a case-by-case basis, for a period of up to two years. Ukrainians participating in Uniting for Ukraine must have a supporter in the United States who agrees to provide them with financial support for the duration of their stay in the United States. The process begins when the supporter files Form I-134A, Online Request to be a Supporter and Declaration of Financial Support,1 with U.S. Citizenship and Immigration Services (USCIS) to include information both on the supporter and the Ukrainian beneficiary. Ukrainians who meet the requirements receive authorization to travel directly to the United States and seek parole, authorized by Customs and Border Patrol (CBP), at a port of entry. If granted parole under this process, Ukrainians are eligible for employment authorization.

More information on accessing and navigating procedures will be available on the DHS website at, https://www.dhs.gov/ukraine

### *1.2 Background – Process for Venezuelans*

On October 12, 2022, the Department of Homeland Security announced joint actions with Mexico to reduce the number of people arriving at our Southwest border and create a more orderly and safe process for people fleeing the humanitarian and economic crisis in Venezuela. DHS' effort to reduce the irregular migration of Venezuelans also includes a new process to lawfully and safely bring up to 24,000 qualifying Venezuelans into the United States.2 The United States will not implement this process without Mexico keeping in place its independent but parallel effort to accept the return of Venezuelan nationals who bypass this process and attempt to enter irregularly.
This effort is intended to enhance border security by reducing the number of Venezuelans seeking to irregularly enter the United States. It is derived from the success of the Uniting for Ukraine (U4U) program, which decreased flows at the border by creating an orderly process for the entry of Ukrainians fleeing Russia's invasion of Ukraine.

DHS will closely monitor the implementation of this process, and Mexico's independent and parallel efforts, and may consider expanding it in the future.

---

[1] The electronic Form I-134 was replaced by the Form I-134A. This user guide references the I- 134A, but the information still applies to any pending I-134 cases.
[2] The 24,000 cap on Venezuelan travel authorizations was changed with the announcement of the Process for Cubans, Haitians, and Nicaraguans announced in January 2023.

FRP-FRN-01585

For the full announcement, see Appendix I(b) – Announcement – DHS Announces New Migration Enforcement Process for Venezuelans OR visit https://www.dhs.gov/news/2022/10/12/dhs-announces-new-migration-enforcement-process-venezuelans.

## *1.3 Background – Process for Cubans, Haitians, and Nicaraguans*

On January 5, 2023, DHS announced the establishment of new parole processes for Cubans, Haitians, and Nicaraguans, modeled on the successful processes for Venezuelans and Ukrainians, which combine safe, orderly, and lawful pathways to the United States, including authorization to work, with significant consequences for those who fail to use those pathways.

Building upon the success of Uniting for Ukraine and the Process for Venezuelans announced in October – which combine a safe and lawful pathway with a consequence for failing to use that pathway – today's announcement establishes similar processes for Cuban, Haitian, and Nicaraguan nationals who face unique challenges in their home countries. The Venezuelan process also will continue; Border Patrol saw a dramatic drop – 90 percent – in the number of Venezuelans encountered at the border following the establishment of the program in October. Nationals from Venezuela, Cuba, Haiti, and Nicaragua who do not avail themselves of this process, attempt to enter the United States without authorization, and cannot establish a legal basis to remain will be removed or returned to Mexico, which will accept returns of 30,000 individuals per month who fail to use these new pathways. The expansion of the Venezuela process to Cuba, Haiti, and Nicaragua is contingent on the Government of Mexico's willingness to accept the return or removal of nationals from those countries. It also is responsive to a request from the Government of Mexico to provide additional legal pathways for migrants, and it advances both countries' interests in addressing the effects throughout the hemisphere of deteriorated conditions in these countries.

Specifically, these processes will provide a lawful and streamlined way for qualifying nationals of Cuba, Haiti, Nicaragua, and Venezuela to apply to come to the United States, without having to make the dangerous journey to the border. Through a fully online process, individuals can seek advance authorization to travel to the United States and be considered, on a case-by-case basis, for a temporary grant of parole for up to two years, including employment authorization, provided that they: pass rigorous biometric and biographic national security and public safety screening and vetting; have a supporter in the United States who commits to providing financial and other support; and complete vaccinations and other public health requirements. Individuals who enter the United States, Mexico, or Panama without authorization following today's announcement will generally be ineligible for these processes. These processes will allow up to 30,000 qualifying nationals per month from all four of these countries to reside legally in the United States for up to two years and to receive permission to work here, during that period.

For the full announcement, see Appendix I(c) – Announcement – DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes OR visit https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new- border-enforcement-measures-and.

## *1.4 Parole Supporter Definition and Requirements*

The parole supporter is the individual who makes a financial obligation to provide support to the beneficiary while he or she is in the United States for the duration of the parole authorization period.

FRP-FRN-01586

Generally, the supporter is a lawful permanent resident (LPR) or U.S. citizen (USC) and has sufficient income or financial resources to meet the Health and Human Services (HHS) Federal poverty guidelines. The supporter is required to submit a FormI-134A, Online Request to be a supporter and Declaration of Financial Support for each parole request to establish the adequacy of financial resources to support the parolee during his or her stay in the United States. Occasionally, a non-profit organization or medical institution may serve as a supporter on a parole application, with an individual completing the individual Form I-134A. In those instances, reviewers may accept a letter of commitment from the organization.

### 1.4.1 Lawful Status

The supporter must be in the United States under lawful status to qualify as a supporter for a beneficiary of the above-mentioned parole programs.  Additionally, they must submit evidence of lawful status with their Form I-134A package.  Here are the acceptable types of status for becoming a supporter:

- A U.S. Citizen or national,
- Lawful Permanent Resident (including lawful temporary resident and conditional permanent resident),
- nonimmigrant in lawful status (i.e., maintains the nonimmigrant status and has not violated any of the terms or conditions of the nonimmigrant status),
- asylee,
- refugee,
- parolee,
- TPS holder,
- beneficiary of deferred action (including DACA) or Deferred Enforced Departure (DED)
- or anyone else in the United States with lawful immigration status meets this requirement.

A pending application/petition with USCIS is not sufficient; however, if a pending application/petition for lawful status, or deferred action is approved (or if the supporter has been paroled into the United States) between the time the Form I-134 is filed and the time of review, then the supporter has met the lawful status requirement.

Reviewers may refer to Appendix VI – TPS Evaluation Process Map for guidance on how to determine if an individual is granted Temporary Protected Status.

See the **I-134 Status – Reference Guide – 20221102** and additional resources under the Teams I- 134A – Review Team, General Channel, in the Files Tab, for further information.

### 1.4.2 Sufficient Financial Evidence

The supporter must show evidence of sufficient financial resources according to the Health & Human Services (HHS) Poverty Guidelines to qualify as a supporter of the above-mentioned parole programs.

The number of people residing in the household plus the number of beneficiaries the supporter is petitioning for are the total number to consider when using this chart. Locate these guidelines here:

FRP-FRN-01587

https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines.

All financial evidence, including bank accounts in the U.S. must be in English or have a translation provided in English.

Here are some acceptable forms of financial evidence a supporter may provide:

- Taxes - 2022, 2021, and/or 2020 tax filings are sufficient evidence when submitted alone
    - Form 1040 U.S. Individual Income Tax Return - Use the Adjusted Gross Income (AGI)
        - Look for number of exemptions to determine number in household
        - Form 1040 – Line 11
        - Add anything listed in Lines 2a through 6a and any refund listed on page 2, line 35a
    - State Tax Refund
        - Money due to supporter
        - Check to see if wages or AGI are listed on state tax form
    - Business Taxes
        - Schedule C Profit or Loss from Business: Line 29 – Tentative Profit or Loss
        - 1120 U.S. Corporation Income Tax Return: Line 30 – Taxable Income
        - 1120-S Income Tax Return for an S Corporation: Line 21 – Ordinary business income (loss)
            - May look for Schedule K1, Part 11, Line E to see how many shareholders will split the total profit. Divide Line 21 by this number.
    - W-2 Wage and Tax Statement – Box 1, Wages, tips other compensation:
        - Don't worry about dependents if not listed on I-134A
    - Paystubs – Look for pattern and add up for the past year – note whether pay period is weekly/bi-weekly/monthly
- Bank Accounts
    - Personal Accounts
        - Total: Available balance may be used toward the amount needed for poverty guidelines
        - Bi-monthly or regular deposits from business account (Example: If bi- monthly, multiply amount by 24)
    - Business Accounts (Signer, Cardholder, Business Owner must reflect supporter's name)
    - Bank statements in a foreign language must include a translation with uploaded evidence
- Letters
    - Statements from supporter's employer – We DO NOT accept offer letters from employers for work that has not started.
    - Statements from supporter's employer should include:
        - Date and nature of employment (Form I-134 Instructions 04/25/22 Page 6 of 8)
        - Salary paid; and
        - Whether the position is temporary or permanent
    - Letter from Corporation, Church, or other organization expressing authorization for supporter to use finances for the beneficiary/beneficiaries
    - Approval letters for other benefit programs that are NOT Means-Tested (Means-

FRP-FRN-01588

Tested benefits are not acceptable income for Form I-134A)
- o  Veterans Affairs Benefits
    - ▪  VA benefits are considered tax free, please see: 2023 Veterans Disability Compensation Rates | Veterans Affairs (va.gov)

**Identifying Federal Means-Tested Programs**

| Means-Tested benefit programs that do NOT count as income for Form I-134A | Benefit programs that are not Means-Tested and DO count as income for Form I-134A |
|---|---|
| Some examples include:<br><br>• Supplemental Nutrition Assistance Program (SNAP, formerly called Food Stamps)<br>• Temporary Assistance to Needy Families (TANF)<br>• Supplemental Security Income (SSI) | Some examples include:<br><br>• Unemployment benefits<br>• Social Security benefits<br>• Social Security Disability Insurance (SSDI)<br>• Retirement, Survivors and Disability Insurance (RSDI)<br>• Student financial aid/loans/grants<br>• Veterans Affairs (VA) benefits |

See guidance for reviewing evidence in Section 7.3 Review Financial Evidence. See additional information, including images of acceptable financial evidence in the Files Tab of the I-134A – Review Team / General Channel.

# 2.0 Case Assignment and Case Administration in ELIS and Microsoft Teams

This section provides detailed guidance regarding case assignment, workflow, and requirements related to reviewing the Form I-134A, Online Request to be a Supporter and Declaration of Financial Support.

## 2.1 Case Assignment in ELIS

At this time, staff will assign cases to themselves for review in ELIS. However, it should be noted that cases may be assigned based on the need to be expedited and on the age of the case. Once your profile has been updated in ELIS, you will click "Get Work" to find an available case to start reviewing.

FRP-FRN-01589



ELIS allows you to work the previous Form I-134 as well as the Form I-134A. Depending on your case assignment, you may be asked to work the Form I-134 or the Form I-134A. In addition, you may also be asked to work a specific country.

The drop down for the Form Type looks like:



When you pull a specific country, it will look like:



Once you select the correct Form Type, Country, and Location, you will select "1 case(s) to pull" from the Case Review drop-down and click on the "Get 1 Case" button to assign the case to yourself.



8

FRP-FRN-01590

The case will look like this in your queue:



Click the Receipt Number hyperlink to open and review the case. If the supporter submitted multiple cases, ELIS automatically assigns all related and unassigned cases to you upon opening the case. You will see a banner stating "You have been assigned to x case(s) for this same supporter".

> ℹ️ You have been assigned to 2 case(s) for this same supporter

## 2.2 Resources and Case Administration

This section provides detailed guidance for adding cases to the Case Tracker, creating and maintaining folders, viewing case assignment, and unassigning a case from your queue. Additionally, it provides housekeeping tips for how to stay organized and avoid common mistakes.

### 2.2.1 Resources in Microsoft Teams

We store all resources pertinent to reviewing I-134A in the Files Tab of the I-134A – Review Team General Channel.



- 01 – Administrative Information folder stores only administrative guidance
- 02 – Case Tracker stores only the Case Tracker (NOTE: There should only be one)
- 03 – Form I-134-134A – Training Materials stores all guidance for reviewing I-134As

I-134A Review Team Leads will post updated guidance in the General channel. You may request assistance from subject matter experts (SMEs) in your designated Teams Chat:

FRP-FRN-01591

- USCIS Detailee Reviewers Discussion
- VER Staff Reviewer Discussion

Tips for searching previous conversations and asking questions in Teams:

- Watch for updated guidance in the General Channel (Only I-134A Review Team Leaders may post in this channel).
- Use key word in Search Bar to search for previous conversations.
- Keep conversations in the same thread and only start new conversations when you have a unique inquiry.
- Always include the receipt number.
- No need to add a screen shot, the SMES will look up your case.
- It may take 24 hours for SMEs to respond to questions.
  - Place case aside and pull another case.
  - Your case queue may get lengthy - Remain flexible and stay organized.
- If you are unsure about anything, ask your SMEs.

## 2.2.2 BOLO List and Case Tracker in Microsoft Teams

You may need to add a case to the Case Tracker for various reasons. Additionally, you will look for EVERY supporter's name on the BOLO List of Serial Supporters and FDNS Review spreadsheets. Locate these documents in Teams under the I-134 – Review Team, General Channel, in the Files Tab.

- Case Tracker is in the "02 – Case Tracker" folder.
- BOLO List of Serial Supporters and FNDS Review spreadsheet is in the "03 – Form I-134-134A – Training Materials" folder.

**2.2.2.1 Search Supporter on BOLO List of Serial Supporters and FDNS Review**

Open the BOLO List of Serial Supporters and FDNS Review spreadsheet from Teams. We recommend you click Open in Desktop App and keep this open and easily accessible while you review cases.

**NOTE:** Do not save or make copies of this spreadsheet, as we need to rely on one accurate list for all to use.

The **FDNS** tab displays supporters who have been flagged by FDNS for various reasons. The **SS** Tab displays names of confirmed serial supporters. If a supporter's name appears on either of these lists, you must stop processing, and place the case in a folder.

- If your case has a red banner attached, follow the guidance under 3.2 Review Banners.
- If the case does not have a banner, add the case to the Case Tracker following guidance in the next section.

**2.2.2.2 Add Case to Case Tracker in Teams**

When you open the Case Tracker, select Open in Browser or Open in Desktop App so you can keep the tracker open and easily accessible while reviewing cases.  Reviewers should add each related case individually.  Subject matter experts (SMEs) from the I-134A Review Team review cases placed on this tracker and will pull each case from the initial reviewer's  queue when they are ready to review.

When adding cases to the Case Tracker, reviewers must include:

10

- Primary Reason
- Date
- Receipt Number
- Reviewer's name
- Brief comments to include the total number of beneficiaries + household members

Primary Reason options may change as deemed necessary.  Currently, these are the Primary Reasons reviewers may choose from when adding cases to the Case Tracker:

- FDNS Hold
- Financial
- Possible Serial Supporter 11+
- Red TECS Banner
- RFE Needed
- ROA
- Text Box

## 2.3 Create and Manage Folders in ELIS

Using folders is essential for grouping and organizing cases in your assigned queue. Click the settings wheel to open Manage My Folders, where you may create up to 10 folders and edit folder names at any time. The number to the right of the folder name tells you how many cases you have in that folder.



## 2.4 View Case Assignment and Unassign Case in ELIS

You may need to see who a related case is assigned to and communicate with that reviewer for various reasons. If you need to view the owner of a case, click the Case (receipt) number to the left of the Open Evidence button from within the Case Review tab.



Once the Case (receipt) number tab is open, click the Task tab to view the Owner of the case. If you are listed as the Owner and must unassign the case from your queue, click the Unassign link under your name and the case will return to the unassigned queue.

11

FRP-FRN-01593



## 2.5 Case Statuses

The evolution of a case looks like this:

- Resolving Preprocessing Checks = case is ready for review.
- Awaiting Beneficiary Attestation = case was confirmed and is awaiting beneficiary attestation.
- Accepted = case is ready to review and/or Awaiting Beneficiary Attestation (this is found in the ELIS account page of the supporter at the bottom for the I-134A).
- Closed – Confirmation = case was confirmed, beneficiary attested, now closed.
- Closed – Not Confirmed = case was not confirmed, and it is now closed.
- Administratively Closed = case was administratively closed (probably because it was a duplicate).

## 2.6 Housekeeping Tips

- Open guidance material prior to reviewing a case for easy access to helpful information.

- Close ELIS tabs and Digital Evidence Viewer after reviewing each case to avoid using information that belongs to another case.

- Keep these URL browsers open while reviewing:
  - ELIS
  - PCIS
  - ASPE Poverty Guidelines: https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines

- The title of the ELIS tab you are working in will be highlighted blue. All other open tabs display gray titles.

- Pull only ONE case at a time and process all newly assigned cases before signing out for the day.

FRP-FRN-01594

- Reach out to SMEs in the Teams channel assigned to your group when you are unsure how to proceed with a case. If you don't receive an immediate response, place the case(s) in a folder and get another case to review while you wait.
    - o   VER Staff Reviewer Discussion – for Verification Division staff
    - o   USCIS Detailee Reviewer Discussion – for USCIS detailees

# 3.0 Review Security Check and Banners in ELIS Case

## 3.1 Review Security Check

When a Supporter completes an application in ELIS, biographic security checks will be performed automatically on the Supporter.  If biographic security checks result in a TECS hit, the Form I-134A will be taken out of the queue, and SCOPS BCU (Texas Service Center Background Check Unit) will prepare a resolution memo and give a "red light" or resolve the hit before the reviewer reviews the case.

To review the TECS check, go to **"Case"** section, and click the **"Risk & Fraud"** accordion, to see TECS result run by SCOPS BCU.



In this example, the TECS check was conducted and there is no match and you can continue reviewing the case:



If there is a TECS/NCIC Hit, SCOPS BCU will place a "red banner" on the case in the following circumstances:

- Where the supporter is under investigation for, has been arrested for (without disposition), or has been convicted of any Egregious Public Safety (EPS) offenses (see Appendix II);

13

FRP-FRN-01595

- Where the supporter is under investigation for, has been arrested for (without disposition), or has been convicted of any specified offense against a minor as defined by the Adam Walsh Act (see Appendix III); and
- Where the supporter is the subject of a protected person order, is under investigation for, has been arrested for (without disposition), or has been convicted of domestic violence, has been arrested for (without disposition), or has been convicted of sexual assault, or is under investigation for, has been arrested for (without disposition), or has been convicted of immigration fraud or passport or identity theft (not applicable for individuals who have had a passport lost or stolen).
- If FDNS otherwise determines in reviewing the TECS hit that the supporter poses a significant national security or public safety risk, they will issue a "red banner".

If a case falls into your queue that may have been bundled with related cases, and under the Task Tab workflow status states: "Backend TECS Review, Review Backend TECS Hit Check", unassign that case as it needs to complete the TECS Review prior to processing.

If you pull a case that has related cases with mixed TECS banners (green/red), place a comment in your assigned chat with the IOE#s and do not process until you receive a response.

### 3.2 Review Banners

### 3.2.1 TECS Results Affect Eligibility

A TECS check with a "red banner" will look like this example, with the "TECS Results affect eligibility" message:



If you see this banner, keep the case and all related cases open, add the case information to the Case Tracker, select "Red TECS Banner" as the primary reason, and keep the case(s) in a folder in your queue.  These cases will disappear from your queue when a SME pulls the case(s) for review.

### 3.2.2 Cases Placed on Hold for Other Reason

If you see the below banner, keep the affected case and all associated cases in a folder even if only one or some of the associated cases have this banner.



14

FRP-FRN-01596

Reviewers may receive assigned cases that do not contain this banner, but the ELIS account shows associated cases are on hold, as displayed in the view below:



If you see this scenario, add the assigned case(s) in your queue to the Case Tracker, select "FDNS Hold" as the primary reason, and keep the case(s) in a folder in your queue. These cases will disappear from your queue when a SME pulls the case(s) for review.

### 3.2.3 Record of Action (ROA) Attached Warning

If the case has a Record of Action (ROA) attached, you will see a yellow banner when you open the case. If you see this, add the case to the Case Tracker in Teams, select ROA as the Primary Reason, and place the case in a folder. A SME will pull the case from your queue to review. See below example of the ROA banner:



### 3.2.4 Duplicate Case Alert

If the supporter submitted another case for the same beneficiary under the same ELIS account, ELIS displays a banner like this when you open the case.



If you see this banner, you must follow instructions under 5.0 Duplicate Case Review in ELIS.

### 3.2.5 Number of Beneficiaries
A supporter filing more than ten (10) Form I-134A, including duplicates, will result in a one-time automatic referral to FDNS for additional vetting. ELIS automatically refers to FDNS the eleventh (11th) Form I-134A filed by a supporter and suspends case review on other open Form I-134A associated with the same supporter. When the FDNS Immigration Officer completes review, a Record of Action will be uploaded to the ELIS file for the QA/SME team to review. See below example:

15



### 3.2.6 Protected Information Banners

DHS systems display a protected information banner to remind staff certain individuals hold protected status.  The warning for 8 U.S.C. § 1367 ("1367") is the confidentiality statute that applies to VAWA relief, Trafficking Victims nonimmigrants ("T visas") and U Victims of Crimes, nonimmigrants ("U visas").  The warning for individuals protected under 8 CFR 208.6 reminds that we are prohibited from disclosing information pertaining to asylum and refugee applications to third parties.

While we are charged with protecting personally identifiable information (PII) for all we serve, these banners are a reminder we must adhere to a special protected status for these individuals.  Reviewers may continue reviewing the I-134A if they see one or more of the below banners.







## 4.0 Check Number of Beneficiaries in ELIS

FRP-FRN-01598

Locate the Alien Number and ELIS Account Number in the case number tab. This tab label only displays the case/receipt number. If the case number tab displays an Alien Number, click that hyperlink to view the supporter's ELIS accounts and cases associated with this Alien Number.



Click the Account Number hyperlink to view all I-134As submitted by this supporter. If there are multiple Account Numbers, you must open them all to search for the total number submitted and check to see if there are duplicate submissions for the case you are reviewing.



This is what the ELIS Account Number tab looks like:



Scroll to the bottom of the ELIS Account Number tab to locate the cases associated with this supporter.



17

Make a note of the total number of I-134As for this supporter, as you will need this information when determining if the supporter submitted sufficient financial evidence.

Sort the Beneficiary Name column in alphabetical order and search for duplicates. Look for your current assigned case number in the Receipt Number column, then locate beneficiary's name associated with this case. If there is a duplicate case for this beneficiary, follow instructions in the 5.0 Duplicate Case Review in ELIS section.

Tips for navigating case information:

- Click the light gray up & down arrows to sort any column header in ascending or descending order.
- Click the Receipt Number to open any associated case listed in this section.
- If there are more than 10 associated cases (may be other than I-134As), click the right facing arrow next to "Rows per page:  10" on the bottom right side of your screen.  If there are 10 or fewer associated cases, the arrow will be grayed out and inaccessible.
- Pay attention to the Submitted Date and Case Status when working a duplicate case.

## 5.0 Duplicate Case Review in ELIS

Supporters may submit additional I-134s for the same beneficiary for various reasons:

- They need to update key beneficiary information (name spelling, date of birth, passport number and/or expiration date, email address);
- The beneficiary's travel authorization expired from the previous case;
- Reviewer was unable to render confirmation on the initial I-134A;
- Sometimes supporters submit a 2nd I-134 because significant time has passed, and they think the first case didn't go through.

When the supporter submitted more than one I-134A for the same beneficiary under the same ELIS account number, ELIS provides the Duplicate Case Alert banner shown in 3.2.4 Duplicate Case Alert.  However, ELIS will not display this banner if the supporter submitted the second I-134A using a different ELIS account number.  Reviewers must search all available data and related ELIS Accounts to determine if there are multiple I-134s for the same beneficiary.

Reviewers may refer to Appendix V – Duplicate Case Process Map and the below tips for how to proceed when they determine there are duplicate I-134As for the same beneficiary:

| Scenario | Selection | Reason |
| --- | --- | --- |
| You have more than one case from the same supporter for the same beneficiary in your queue that has not been rendered a decision and meets confirmation criteria. | Render the confirmation on the most recently filed case, then select Administratively Closed for the oldest case. Case Acceptance in the Task or History will show date and time of submission. | The case most recently submitted may have edited info for next phase of processing such as Name, DOB, passport number, passport expiration, passport country, or email address. |

18

| You have one case that you would confirm and see an unassigned duplicate for the same supporter and beneficiary. | Assign the unassigned case to yourself and render confirmation on the most recently filed case. Select Administratively Closed for the oldest case. Case Acceptance in the Task or History will show date and time of submission. | The case most recently submitted may have edited info for next phase of processing such as Name, DOB, passport number, passport expiration, passport country, or email address. |
|---|---|---|
| You have one case that you would confirm and see an assigned duplicate for the same supporter and beneficiary with another reviewer. | If your case is the most recent render the confirm and notify the other reviewer. If your case is the oldest, do not Select Administratively Closed until the other reviewer renders the confirmation on their receipt. | The case most recently submitted may have edited info for next phase of processing such as email address. Admin close only after most recent has been confirmed to not confuse supporter notices. |
| You have a case to confirm that has an exact duplicate resolved by another reviewer as confirm. | Select Administratively Closed if Exact Duplicate. | Make sure it is an exact duplicate with no changes to name, dob, passport number, passport expiration, passport country, email address, or expired Travel Authorization. |
| Duplicate case in queue, assigned, or already worked that is a non-confirm and you have the associated duplicate case from the same supporter that still is non-confirm. | Select Non-confirm. | Supporter can submit for reconsideration multiple times. |
| Duplicate case in queue, assigned, or already worked that is a non-confirm and you have another case that now meets confirmation. | Select Confirm. | Supporter can submit for reconsideration multiple times. |
| Any scenario that has a duplicate that does not meet confirm criteria on the open case. | Select Non-confirm. | We should not confirm a case that does not meet confirmation criteria. We do not select Admin close on any case that is a non-confirmation. |

## 5.1 Compare Beneficiary Data

If you determine the supporter submitted more than one case for this beneficiary under the same ELIS account, you will see the duplicate cases under the Associated Cases section at the bottom of the ELIS Account Number tab. Locate the receipt number for the duplicate case (not the case currently in your queue) and click the Receipt Number hyperlink to open and view the duplicate case. This will open the receipt number (IOEXXXXXXXXXX) tab where you may review case details and beneficiary information.

Click on Case Details to view case details and beneficiary information.

19



Scroll down and click Beneficiary Account to view beneficiary information.



Capture a screenshot of the Beneficiary Account section and compare this with the beneficiary information in the Beneficiary Account section of your assigned case. If the five highlighted data points are an exact match (**Name, Date of Birth, Passport Number, Passport Expiration Date, and Email Address**), then your assigned case is a true duplicate, and you will proceed to the next section 5.2 Add Beneficiary Alien Number. If it is not a true duplicate, continue processing as a new case and proceed to section 6.0 Conduct Supporter Review.



If the case is a true duplicate and the initial case was confirmed, administratively close the 2nd case following guidance in 8.3 Render Administratively Closed. However, before administratively closing the case, ensure the first case was travel authorized. If travel authorization has not yet expired, proceed to administratively closing the new filing. If the initial filing was NOT travel authorized OR if the travel authorization expired, continue to process the new case.

If the case is a true duplicate and the initial case is still open and not yet processed with a confirmation decision, confirm the most recently submitted case first, and then render Administratively Closed to the initial case and include a case comment referring to the receipt number of the confirmed case.

FRP-FRN-01602

## 5.2 Add Beneficiary Alien Number

When a supporter submits Form I-134A and does not include an Alien Number for the beneficiary, ELIS automatically assigns the beneficiary an Alien Number when the case is confirmed. If the supporter submits an additional case for the same beneficiary, reviewers must check to see that the new case includes the beneficiary's previously assigned Alien Number. If the beneficiary's Alien Number was not included in the additional case, reviewers must manually add it prior to rendering another Confirmation. Follow the below instructions to locate the beneficiary's Alien Number and issue date, then add them to the additional case.

Copy the Alien Number found in the Beneficiary account section in Case Details tab of the previously confirmed case.



Click the History tab in the previously confirmed case (next to Case Details) and look for the date the beneficiary's Alien Number was issued.



Return to the Beneficiary Account section in the additional case and click Add A-Number.

21



Type or paste the Alien number and start date, then click Save.



## 5.3 Review Case Details from Initial Case

When you confirm you are assigned a duplicate case, you must research the initial case details and try to determine why the supporter submitted a 2nd case. Click Case and check Render Decision to see the decision rendered for the initial case and whether the previous reviewer added comments explaining the decision. If the previous reviewer non-confirmed the case for any reason, you may continue processing and proceed to the next section 6.0 Conduct Supporter Review and continue processing.



If the case was Confirmed, click Notices and Snapshots and look for a Travel Authorization Document.

22

FRP-FRN-01604



Open the Travel Authorization Document and look for the expiration date. If the travel authorization expired, that is likely why the supporter submitted another case. Notate the date the travel authorization expired. In some instances, travel was not authorized in the previous case. If you encounter either situation, you will add a comment to your current assigned case.



Enter applicable comment in your current assigned case:

- Travel Authorization under IOEXXXXXXXXXXX expired on XX/XX/202X
- Travel not authorized under previous case IOEXXXXXXXXXX

# 6.0 Conduct Supporter Review

We must conduct a thorough supporter review to look for various information: More than 10 submitted I-134As, supporter's status, and situations where individuals may be trying to use these programs to circumvent adoption or fiancé application processes. You will search for the supporter's name on the BOLO List and in ELIS to determine if the supporter submitted more than 10 Forms I-134A. You will search PCIS for the supporter's status and possible fiancé and adoption applications.

## 6.1 Search BOLO List in Microsoft Teams

Search for the supporter's name on the BOLO List of Serial Supporters and FDNS Review in the Files Tab of the I-134 – Review Team General Channel:

https://teams.microsoft.com/l/channel/19%3aN59r3yiXn0g4qpExCaocnoNUIgxTvKzBzEyxTPEs1KE1%40t hread.tacv2/General?groupId=be5fc61a-f6b0-45f5-9fa4-b9b21ffc8a81&tenantId=5e41ee74-0d2d-4a72-8975-998ce83205eb

See guidance in 2.2.2.1. Search Supporter on BOLO List of Serial Supporters and FDNS Review.

FRP-FRN-01605

### 6.2 Search Supporter in ELIS

Locate your supporter's name and date of birth from the Case Review tab.  If the supporter has an Alien Number, their information will appear in the worksheet portion of this tab.



If there is no Alien Number, you will have to click on Name and Date of Birth under the Financial Supporter Information Section to retrieve this information.  Notate the Name and Date of Birth to use in all supporter searches.



Click the Search tab next to My Cases in ELIS and enter the supporter's last name, first name and date of birth.  Use 01 as the month and 01 as the day in the date of birth range section and the supporter's actual birth year in the **Date of Birth From** box.  Then use 01 as the month, 01 as the day, and the year following the supporter's actual birth year in the **Date of Birth To** box.  If the supporter's date of birth was in the year 1993, you would enter 01/01/1993 in the Date of Birth From box and enter 01/01/1994 in the Date of Birth To box.  Click Search.  ELIS will return every case filed under different Alien Numbers and ELIS account numbers by this supporter.



If you discover the supporter submitted 11 or more unique Forms I-134A (not including duplicates) across one or multiple ELIS accounts, you must add this case to the Case Tracker, and select "Possible

24

FRP-FRN-01606

Serial Support 11+" as the primary reason.

If the supporter's name is not included on the BOLO List, place the case in a folder in your queue and notify a Lead John Gardside.  Please refer to the latest guidance provided by the Leads.

If the search returns no results, continue processing the case.

## 6.3 Search Supporter in PCIS

Reviewers must search PCIS for the supporter's status and evidence of adoption or fiancé applications. If the supporter has activity with USCIS, the Identity Details page in PCIS will display the supporter's name, biographical data, and Immigration Status.  The information you need to enter depends on whether the supporter has an Alien Number.  See each respective section for guidance on how to search the supporter in PCIS and how to review results.

### 6.3.1 Search Supporter with Alien Number

If the supporter has an Alien Number, enter it in the Identifier Search box and click the blue box with the magnifying glass (or press Enter).  PCIS will return an exact match.  Click View to open the Identity Details page.  PCIS displays the exact criteria you entered in a gray box under the Identifier Search box.



### 6.3.2 Search Supporter with No Alien Number

If the supporter does not have an Alien Number, enter the supporters last name, first name, and exact date of birth in the Advanced Search section and click Search (or press Enter).



25

FRP-FRN-01607

Alternatively, you may click the drop-down next to Select Identifier and enter any of the unique identifiers available, such as Social Security Number (SSN).  You can find the supporter's SSN in ELIS under Financial Supporter Data in the Other Information field.



## *6.4 Review Results*

### *6.4.1 No Results in PCIS*

If the supporter has no activity with USCIS, PCIS will display "Your search criteria does not have any exact matches."



Proceed to 7.0 Review Evidence in ELIS.

### *6.4.2 Exact Match in PCIS*

The supporter's name and date of birth (DOB) will display at the top of the Summery Tab and the Immigration Status will display in the middle.



26

FRP-FRN-01608

### 6.4.3 Search PCIS for Approved Lawful Status

If a supporter has lawful status granted by USCIS, PCIS should display the individual's approval in the **Timeline Tab**.  Click the Timeline Tab to search for an approval giving them status.  PCIS takes about 30 seconds to check multiple systems for updated information.  Click the blue circle with the carat next to the yar to view activity for that year.  You may need to open all years to locate approved status.



**NOTE:**  If you are unable to locate an approved qualifying status in PCIS, contact your SMEs using the designated Teams channel and ask for assistance with confirming status.

- If SME confirms supporter does not have lawful status, issue Non-Confirmation following steps in 8.2 Render Non-Confirmation

- If SME confirms supporter does have lawful status, continue reviewing.


### 6.4.4 Search for Intercountry Adoptions and Petitions for Fiancé

Supporters are allowed to submit I-134A for family members (spouse/fiancé, child, sibling parent), but reviewers must watch for situations where individuals may be trying to circumvent normal application processes for adoption and fiancé petitions.

To ensure individuals are not circumventing intercountry adoption and fiancé petition procedures, reviewers must check the Details Tab in PCIS for the below form types. Check the Form Type column for any of these forms:

- Form I-600
- Form I-600A
- Form I-800
- Form I-800A
- Form I-130 (on the basis of adoption)
- Form I-129F

FRP-FRN-01609



### 6.4.4.1 Search for Intercountry Adoptions

To ensure individuals are not trying to circumvent the adoption process, you must check to see if the supporter also filed adoption related forms on behalf of the beneficiary. If PCIS displays any of these forms submitted by the supporter, post a comment in your designated Teams chat and include the Case # (IOEXXXXXXXXX). A SME will review and refer to FDNS if necessary.

- Form I-600
- Form I-600A
- Form I-800
- Form I-800A
- Form I-130 (on the basis of adoption)

### 6.4.4.2 Search for Petition for Alien Fiancé

To ensure individuals are not circumventing the Fiancé application process, you must check to see if the supporter previously filed three (3) or more Forms I-129F, Petition for Alien Fiancé. If PCIS displays three or more Forms I-129F, you must post a comment in your designated Teams chat and include the Case # (IOEXXXXXXXXX). A SME will review and refer to FDNS if necessary.

It is ok if the supporter also filed one Form I-130 or I-129F for the same beneficiary.

## 7.0 Review Evidence in ELIS

Return to Case Review Tab in ELIS and click **Open Evidence**. ELIS will open the Digital Evidence Viewer in a new browser where you may review all evidence submitted by the supporter. Click the drop-down arrow next to the document title to view available documents. Click the drop-down arrow in the Page to toggle between pages. The Form I-134A should be the first document you see.



If evidence is blurry or illegible, try viewing the evidence in raw file to see if you can get a clearer

FRP-FRN-01610

image. Click Evidence and RFE in the Case Review Tab, locate the document you wish to view and click Raw File.



If the raw file is still blurry or illegible, reviewers may need to issue a Request for Evidence (RFE), following guidance in 7.4 Request for Evidence (RFE).

**Note**: When you have a case where the supporter is filing for multiple beneficiaries and does not upload sufficient evidence/documents/proof of status for one case, but did include it in the other cases, you can confirm the one that lacks it, but must add a comment in the case that lacks the evidence referencing to the IOE# that contains the evidence.

## 7.1 Review I-134A

USCIS updated Form I-134A multiple times since we began supporting these parole programs. Depending on when the form was submitted, you may see variances in the format. Forms submitted after 7/13/2023 will include a text box response reviewers must consider when reviewing the case.

Here are the key elements you will look for when reviewing Form I-134A:

- Did the supporter provide sufficient responses to questions 27-29 (or 28-30 in the 07/13/2023 form)?
- Did the supporter sign the form?
- Did the supporter provide a sufficient statement in the text box question (Forms submitted 7/13/2023 or later)?
- Did the Supporter provide additional information requesting we update Beneficiary's information (DOB/Passport #/Expiration date/Email), please update it under the Beneficiary Account.

Some portions of I-134A are not required for our financial review:

- Beneficiary's Anticipated Length of Stay is not required.
- Beneficiary's Financial Information is not required.
- Beneficiary signature and proof of status or photo ID are not required.

See the following sections for guidance on each element.

### 7.1.1 Responses to Questions

Reviewers must review the responses on page 8 of Form I-134 and determine whether the response is sufficient. Supporters must provide an affirmative response to questions 27-29 (28-30 for forms submitted 7/13/2023 or later), based on the following:

29

FRP-FRN-01611

- Responses must be in English.  If not in English – issue non-confirmation according to guidance in 8.2 Render Non-Confirmation.
- Responses don't have to be lengthy, but "Yes" is not an acceptable response.  We're looking to see that the supporter responds affirmatively to accepting financial responsibility and assisting the beneficiary in their basic needs. If supporter responds only "Yes" under Intent to Provide Specific Contributions to the Beneficiary, reviewers will issue a non-confirmation.
    - The supporter's response does not have to specifically state "learn English" or "get a job" but needs to be an affirmative response.
    - If supporter responds only "Yes" to one of the questions, but affirms intent to support in other responses, ok to continue processing.  We're looking for the overall intent to support.
- If the supporter references or alludes to a "host" (an unknown/unidentified 3rd party), with no signed letter of intent from that individual, add the case and all related cases to the Case Tracker with "Host" as the primary reason and keep the case in a folder in your queue. We are currently awaiting a policy decision for how to proceed with these cases. See below example.

> The host is the husband and father of this family. He has confirmed that he will provide financial support for as long as needed. Here is his name and contact information. They will live in ▚▚▚▚▚▚.

- If the supporter names a host and includes a signed letter from that person saying they agree to hosting, you may continue to process.
- If the supporter states the beneficiary will live elsewhere other than with the supporter, that is ok to process, no requirement for beneficiary to live with supporter.

### 7.1.2 Supporter Signature

Locate the supporter's signature block on page 11 of Form I-134A.  If supporter digitally signed the form, continue to process.  If supporter did not sign the form, issue a non-confirmation according to guidance in 8.2 Render Non-Confirmation.

Examples of acceptable signatures may include:

- The supporter's full name,
- The supporter's initials,
- An "X", and
- Two signatures are acceptable, but one signature must belong to the financial supporter.

### 7.1.3 Text Box Response

Forms I-134A submitted on 7/13/2023 or later will include a text box response in Part 2., Question 4. The text box response applies only to CHNV cases and is used to determine whether we will prioritize these cases for processing.  The text box response does not apply to UKR cases and reviewers should continue processing UKR cases following all other guidance.

When reviewing CHNV I-134A cases, it is best to review in this order:

FRP-FRN-01612

1. Status eligibility of supporter

2. Responses to Questions 28-30 are sufficient based on current guidance

3. Supporter signed the application

4. Financial eligibility of supporter

5. Text Box response is sufficient according to below guidance

If numbers 1-4 are sufficient to render the case confirmable, then move to number 5 to determine if the response in the Text Box question is sufficient to prioritize and process.

- If the response to the Text Box question is sufficient, then confirm the case.

- If the response to the Text Box question is not sufficient according to below guidance, place the case on hold as shown below and do not confirm the case.

- If numbers 1-4 would render the case non-confirmable, reviewers do not need to consider the Text Box response and should either issue the non-confirmation or add the case to the Case Tracker and keep the case in a folder, based on current guidance for the issue determining ineligibility.

### 7.1.3.1 Required Elements for Text Box Response

Reviewers should look for these elements in the Text Box response:

- Does the response demonstrate the need for pressing or immediate action or attention?
- Does the response demonstrate a concern for the beneficiary's welfare?
- Does the response demonstrate that parole would be helpful to a community or population?

Example of response in text box:

4. A grant of parole is a discretionary determination granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit. Please explain why a favorable exercise of discretion is merited for this individual.

MY GRAND FATHER IS AN OLD PERSON, WITH SOME MEDICAL CONDITIONS. OSTEOARTHRITIS, DIABETES AND HYPERTENTION ARE SOME OF THEM. IN CUBA HE DOES NOT HAVE THE MEDICAL ASSISTANT NEEDS AND MEDICATION FOR ALL THIS DISEASES THE ACTUAL CONDITIONS IN CUBA ARE TERRIBLE, HE HAS TO SPEND ALL DAY IN LINES TO BUY SOME FOOD AND MEDICATIONS, HE LIVES ALONG AND DOES NOT HAVE ANY OTHER FAMILY MEMBER WHO CAN TAKE CARE OF HIM HE TRAVEL TO MEXICO TO INTENT ARRIVE AT

Reviewers must consider whether the response references any of the following:

- General civil strife or political unrest;
- Rejoining with family;
- Medical needs or treatment;
- Vulnerabilities of either the beneficiary or a US-based person, including the need to provide caregiving assistance;
- Severe economic hardship

If any of these elements are present in the supporter's response, continue processing the case.

If none of these elements are present, but the supporter otherwise meets all criteria for status and financial evidence, put the case on hold following the below steps.

### 7.1.3.2 Place Case on Hold for Insufficient Text Box Response

Reviewers should follow these steps to place the case on hold due to insufficient Text Box response:

31

FRP-FRN-01613

1. Click "Put Case on hold" in ELIS (top right when receipt is in case view)



2. Add case comment when prompted in pop-up window: "*Eligible for Confirmation, being held for lack of prioritization.*"
3. Add case to Case Tracker with Primary Reason as Text Box and keep the case in a folder in your queue.

### 7.1.4 Additional Information – Update Needed

If the supporter submitted an Additional Information supplement to Form I-134A, stating the beneficiary's DOB/Passport #/Expiration date/Email information should be updated, the reviewer may update the information in the Beneficiary Account.  Additionally, supporters sometimes mistakenly enter incorrect information for the beneficiary.  Reviewers should look for documents in evidence supporting the need to update beneficiary data.

When reviewers update the name and DOB, ELIS will automatically initiate another TECS check and could create a task that will hold the case from being able to be rendered.

Reviewers should follow these steps to update beneficiary DOB information in ELIS:

1. Under the Date of Birth section for the Supporter, you may add a new DOB (upper right "+ Add" button)
2. Once added, at the far-right side for the correct DOB, click on the 3 dots
3. A drop down will appear indicating Make Primary or Make Inactive
4. Select Make Primary and the "N" in the Primary column will change to "Y"

### 7.2 Review Evidence of Lawful Status

Click the drop-down arrow next to the Document field showing document title and look for an Immigration Status document in the evidence.



If submitted evidence meets criteria described in 1.4.1 Lawful Status, continue processing.

If supporter is a U.S. Citizen and submitted evidence does not meet criteria described in 1.4.1 Lawful status, follow guidance in 7.4 Request for Evidence (RFE).

If the supporter is not a U.S. Citizen, and did not include sufficient evidence of status, look for the individual's status in PCIS Timeline.

- If you locate an approved status in the Timeline, you may add a case comment: "PCIS

FRP-FRN-01614

confirmed status" and continue processing.

- If you are unable to locate an approved status in the Timeline, reach out to a SME in your designated chat and ask them to confirm status (include IOE#).
  - o If SME confirms supporter does not have status, issue Non-Confirmation following steps in 8.2 Render Non-confirmation.
  - o If SME confirms supporter does have lawful status, continue processing.

If the response to the RFE demonstrates the individual holds lawful status or has been paroled into the United States or granted deferred action or DED as of the date the response is received/reviewed, we will consider the Supporter to have met this requirement.

## 7.3 Review Financial Evidence

Reviewers must determine whether the income/liquid assets/outside support evidenced in the Form I-134A and supporting evidence meet at least 100% of the HHS Poverty Guidelines based on the number of persons in the family/household.  The number of persons in the family/household includes the supporter, any dependents, any beneficiaries already confirmed, and the beneficiary on whose behalf Form I-134A is being filed. The supporter should demonstrate that they are able to "receive, maintain, and support" the Beneficiary listed on the Form I-134A for two years (the anticipated period of parole).

- Regardless of the information submitted into the form fields, the supporting documentation should demonstrate that the supporter has income/liquid assets/outside support to meet at least 100% of the poverty guideline threshold for the supporter's household size.
- The 2023 HHS poverty guidelines are located at: https://aspe.hhs.gov/topics/poverty-economic- mobility/poverty-guidelines, or see Appendix IV – Health and Human Services – 2023 Federal Poverty Guidelines
- Reviewers are to assume reported income will continue at the same rate for subsequent years, and household size will be static.  If there is insufficient income to meet the poverty guidelines threshold, we assume liquid assets would be spent over the course of the period of support.

Staff will assess income, liquid assets, and any commitments of support from outside organizations or additional individual supporters to determine in the totality of the circumstances whether the supporter is able to financially support the beneficiary for the duration of parole.  Totality of supporter's financial evidence must meet criteria outlined in 1.4.2 Sufficient Financial Evidence.

As defined in 8 CFR 213a.1, income from illegal sources or means-tested public benefits is excluded from consideration in meeting at least 100% of the HHS poverty guidelines.

## 7.3.1 Tips for Reviewing Financial Evidence:

- If the supporter failed to upload sufficient financial evidence in one case but they did upload sufficient financial evidence with a related I-134A for another beneficiary, reviewer may use the evidence from the related case to continue processing.
- Form 1040 and/or 1040 Tax Transcripts are not required, if there is other financial evidence present that meets specified criteria.

33

FRP-FRN-01615

- If AGI from the supporter's Form 1040 taxes (usually line 11) or 1040 Tax Transcript, shows sufficient financial funds to support beneficiary(s) (unless they hit the 11+ limit), plus themselves and number of others living in household, case is ok to confirm, no need to look at all other financial documents provided.
- If the AGI is insufficient to meet guidelines or in some cases a negative dollar amount, but there is other evidence such as an employment validation letter, bank account balances, W2's etc. that do meet the guidelines – continue to process the case.
- When counting totality of beneficiaries + # in HH, remember to include prior confirmed I-134/I- 134As.
- If there is a co-supporter to assist with the financial support, we do not need to confirm co- supporter's status as long as the person signing the I-134/I-134A has status.
    - Co-supporter needs to be named in the application.
    - Places on application you may find co-supporters information.
        1. Page 4, Part 3. Information About the Individual Agreeing to Financially Support the Beneficiary Named in Part 2, #3. If "Parole Process" selected in Part 1., Item Number 2. Provide the name of the organization, group, or individual that is providing support to the beneficiary with you (if any)
        2. Page 7, #19, Income and/or #24, Assets
    - If there is mention of a co-supporter, but they are not named in one of the places above and/or not mentioned at all and financial information is uploaded for someone other than the supporter, unless it's the supporter's spouse, then we cannot use that information as financial evidence.
- We may not include home/vehicle equity when calculating income.
- We are currently awaiting a policy decision on whether we may include Form 1099 as sufficient financial evidence.  If the supporter uploaded a Form 1099 and there is no other sufficient financial evidence present, add the case and all related cases to the Case Tracker with "1099" as the reason and keep the cases in a folder in your queue.

## 7.3.2 Decision Steps:

If financial evidence is sufficient and meets required criteria, and you verified the supporter has lawful status and has not submitted I-134As for 11+ beneficiaries, render Confirmation according to guidance in 8.1 Render Confirmation.

If financial evidence is insufficient and does not meet required criteria, add the case to the Case Tracker for SME review and place the case in a folder.

## 7.4 Request for Evidence (RFE)

There are only two instances in which we send RFEs.  Reviewers will add the case to the Case Tracker under the separate tab marked RFE and keep the case in a folder in their queue.

- If the supporter provided no proof of status and you cannot find any evidence of status in our databases (remember native born USC will not be in our databases); and/or
- If the evidence the supporter submits is blurry or illegible.
    - However, reviewers should first review the raw documents in the Case Review Tab. Reviewers can find the I-134 under Notices and Snapshots and raw files of all

34

FRP-FRN-01616

supporting documentation under Evidence and RFE.



If you encounter either scenario listed above and add the case to the RFE tab on the tracker, a SME or Team Lead will re-assign the case to their queue and address the RFE.

The following steps apply to the SME or Team Lead who will issue the RFE on the case.

**DO NOT** issue RFE for these scenarios:

- If supporter did not provide their A# or evidence of status, and you confirm they are a USC or have another acceptable status to support after a search in PCIS or other database, you can proceed with the case, no need to update their ELIS account or RFE. Add a case a comment: "Verified status via PCIS".
- If supporter provides no proof of financial support or no supporting documents at all, render Non-Confirmation. Do not RFE and do not place on tracker.

### 7.4.1 Issue an RFE in ELIS

1. Under "Case Data" in Case Review Tab, click on "Evidence and RFE," you will see the RFE section under Evidence.
2. Click the drop-down under "Select Letter Type" and select "VER Request for Evidence Form I- 134 (84 days)," then under RFE Type, select "Initial". Click Create.
3. This will launch you into the Enterprise Correspondence Handling Online (ECHO) system.



### 7.4.2 Complete RFE in ECHO

1. Click the plus sign next to the letter corresponding with your Form type.
   a. I-134
       i. VER 001 – No Evidence for Requirement Was Submitted
       ii. VER 002 – Illegible Documents – Legal Status and/or Finances
   b. I-134A
       i. VER 003 – No Evidence for Requirement Was Submitted
       ii. VER 004 – Illegible Documents – Legal Status and/or Finances

FRP-FRN-01617

2. Click Compose – This opens the draft where you may add supporter and beneficiary names.
3. Click Edit Contact Info.
4. Click the spy glass in the Action column to edit beneficiary contact information.
   a. Replace the name of the sponsor with the name of the beneficiary (No need to remove other information).
   b. Click Save Applicant Beneficiary.
5. Click the green plus sign under Petitioner to add the Supporter's Name.
   a. Enter the supporter's first and last name.
   b. Click Save Petitioner.
   c. Click Close window.
6. Click Build.
7. Click Finalize Letter and Change Letter Date.
8. Click Mark Sent.

### 7.4.3 Link Letter in ELIS

1. On the RFE screen where you initiated the RFE, click the drop-down under Actions and select Link Notice.
2. ELIS provides a pop-up window
   a. Check box under Link
   b. Click Link Letter
3. RFE status updates to Issued
4. Place case in a RFE folder

### 7.4.4 Review RFE Response

Check your RFE folder periodically to watch for responses.  When you receive a response to RFE, the case status updates to Awaiting Review.  You may need to look at the evidence again to refresh your memory on why you submitted the RFE.  Review the newly uploaded document in evidence to determine if it satisfies criteria and follow the below steps to mark it as reviewed.

1. Click receipt number to open response.
2. Select RFEID#hyperlink to populate the Response Received for RFE table.
3. Select the checkbox in the Document Reviewed column.
4. Select Mark Reviewed.
5. Select Go.

### 7.4.5 Cancel an RFE in ELIS

There may be instances where you need to cancel an RFE, such as the supporter withdraws their application.  You may only cancel the RFE if the supporter has not yet responded.  Follow the below steps to cancel the RFE in ELIS.

1. Navigate to the RFE page in Case Review Tab.
2. Click drop-down menu under Actions.
3. Select Cancel.
4. Click Go.
5. In the Update Notes pop-up window, enter an explanation in the comment field.
6. Click Save.
7. Click OK to confirm.

FRP-FRN-01618

### 7.4.6 Process Expired RFE

Supporters have 87 days to respond to a RFE. If the supporter does not respond, the RFE will show expired in your queue. If this occurs, access the RFE under Case Details and update as follows:

1. Select Close - Response Not Received from drop-down menu under Actions.
2. Add a case comment "Issuing Non-Confirmation due to lack of response to RFE." and non- confirm the case.



# 8.0 Render Decision in ELIS

If you reviewed Form I-134A and submitted evidence, and determined the supporter has lawful status and is financially able to sponsor the beneficiary, you will render a Confirmation in ELIS.  Alternatively, if during review you determine the supporter does not have lawful status or did not provide sufficient responses to questions in the I-134A.  In this case, you would render a Non-Confirmation.

## 8.1 Render Confirmation

Scroll to the bottom of the Case Review Tab and click Render Decision.  Click the drop-down arrow under Render Decision and select Confirmation.  Click Save and Finalization.  Double check that you selected the correct decision and click Yes in the pop-up window to confirm your selection.



The case will disappear from your queue.

## 8.2 Render Non-Confirmation

Reviewers must enter a case comment explaining the reason for issuing a Non-Confirmation.  When non-confirming a case, please be mindful that our case comments are subject to FOIA.  Reviewer should enter comments using the below language:

- Non-confirm for lack of status.
- Non-confirm for lack of evidence/supporting documents.

37

FRP-FRN-01619

- Non-confirm for lack of or insufficient responses to questions #27-29. (#28-30)
- Non-confirm for lack of/insufficient supporter signature on Form I-134A.
- Non-confirm, duplicate case. (use when you have duplicates from different supporters)
- Administratively Close, duplicate filing. (use when you have duplicates from same supporter)
- Supporter asked to withdraw so USCIS non-confirmed the case, without prejudice. (use when you see a letter from the Supporter requesting to withdraw Form I-134/I-34A)

Scroll to the bottom of the Case Review Tab and click the plus sign to add Case Comment. Type the comment, per above guidelines and click Save.



Click Render Decision and select Non-Confirmation from the drop-down arrow under Render Decision. Click Save and Finalization. Double check that you selected the correct decision and click Yes in the pop- up window to confirm your selection.



The case will disappear from your queue.

## 8.3 Render Administratively Closed

Reviewers may determine a case should be administratively closed for various reasons. Before rendering Administratively Closed on a case, reviewers should first consider the following:

- If you are going to render an Administratively Closed decision, you must ensure there is a previously confirmed case for the same beneficiary.

38

FRP-FRN-01620

- See 5.0 Duplicate Case Review in ELIS for reasons to administratively close a case.

Reviewers may render an Administratively Closed decision by following these steps:

- Add a comment explaining why you are rendering Administratively Closed. (See instructions for adding comments under 8.2 Render Non-Confirmation.
    - Example: "True duplicate to IOEXXXXXXXXXX, confirmed on xx/xx/20xx."
- Open the Case Review Tab and click Render Decision, then select Administratively Closed from the drop-down arrow under Render Decision.
- Click Save and Finalization.
- Double check that you selected the correct decision and click Yes in the pop-up window to confirm your selection.



The case will disappear from your queue.

FRP-FRN-01621

## Appendix I(a) – Press Release – President Biden to Announce Uniting for Ukraine, a new Streamlined Process to Welcome Ukrainians Fleeing Russia's Invasion of Ukraine

https://www.dhs.gov/news/2022/04/21/president-biden-announce-uniting-ukraine-new-streamlined-process-welcome-ukrainians

WASHINGTON – Today, the President will announce *Uniting for Ukraine*, a new streamlined process to provide Ukrainian citizens who have fled Russia's unprovoked war of aggression opportunities to come to the United States, fulfilling President Biden's commitment to welcome up to 100,000 Ukrainians and others fleeing Russia's aggression as a result of the ongoing Russia-Ukraine crisis. In addition, the State Department is announcing increased refugee resettlement processing and broadened access to visa processing at consular posts overseas.
This builds on the robust humanitarian assistance the U.S. government is providing to complement the efforts of generous countries throughout Europe who are hosting Ukrainian citizens who have been displaced.

"We are proud to deliver on President Biden's commitment to welcome 100,000 Ukrainians and others fleeing Russian aggression to the United States. The Ukrainian people continue to suffer immense tragedy and loss as a result of Putin's unprovoked and unjustified attack on their country," **said Secretary of Homeland Security Alejandro N. Mayorkas.** "DHS will continue to provide relief to the Ukrainian people, while supporting our European allies who have shouldered so much as the result of Russia's brutal invasion of Ukraine."

"The U.S. Department of State stands with the people of Ukraine," **said Secretary of State Antony J. Blinken.** "We will help deliver on the President's commitment to welcome 100,000 Ukrainian citizens and others forced to flee their homes in Ukraine, and our partnership with the Department of Homeland Security will help us fulfill that commitment."

*Uniting for Ukraine* is a streamlined process for Ukrainian citizens who have been displaced by Russia's aggression to apply for humanitarian parole in the United States. To be eligible, Ukrainians must have been residents in Ukraine as of February 11, 2022, have a sponsor in the United States, complete vaccinations and other public health requirements, and pass rigorous biometric and biographic screening and vetting security checks. Ukrainians approved via this process will be authorized to travel to the United States and be considered for parole, on a case-by-case basis, for a period of up to two years. Once paroled through this process, Ukrainians will be eligible for work authorization.

Beginning on April 25, 2022, U.S.-based individuals and entities can apply to DHS to sponsor Ukrainian citizens who have been displaced by Russia's aggression through the *Uniting for Ukraine* process, which will go live that day on the DHS website. Any U.S. citizen or individual, including representatives of non-government organizations, can supporter Ukrainian applicants. Individuals and organizations seeking to sponsor Ukrainian citizens in the United States will be required to declare their financial support and pass security background checks

40

to protect against exploitation and abuse. The Department of Homeland Security will administer the program. Eligibility requirements will include required vaccinations and other public health requirements, as well as biographic and biometric screening, vetting, and security checks.

The United States strongly encourages Ukrainians seeking refuge in the United States who do not have and are not eligible for a visa to seek entry via *Uniting for Ukraine* from Europe, this will be the safest and most efficient way to pursue temporary refuge in the United States. The
U.S. government is working with European partners to ensure Ukrainians can meet the vaccination requirements of *Uniting for Ukraine.*

Ukrainians should not travel to Mexico to pursue entry into the United States. Following the launch of *Uniting for Ukraine*, Ukrainians who present at land U.S. ports of entry without a valid visa or without pre-authorization to travel to the United States through *Uniting for Ukraine* will be denied entry and referred to apply through this program.

In addition to *Uniting for Ukraine*, the United States is announcing a series of measures designed to expand access to existing legal pathways for Ukrainian citizens.

The Department of State will expand U.S. Refugee Admissions Program (USRAP) operations in Europe to provide eligible Ukrainians with greater access to refugee resettlement processing under the Lautenberg program, while also expanding referral mechanisms for Ukrainians and others fleeing Russia's war in Ukraine who are in need of permanent resettlement.

As part of these efforts, the Department of State will expand U.S. resettlement operations in Europe to provide more resources to process Ukrainian citizens for refugee resettlement under the Lautenberg program, and will expand referral mechanisms for Ukrainian citizens and others fleeing Russia's war against Ukraine to the U.S. Refugee Admissions Program (USRAP). To do so, the United States is working with European partners, the UN High Commissioner for Refugees and NGOs to identify particularly vulnerable Ukrainian citizens and others fleeing the conflict who may warrant permanent resettlement through USRAP. These particularly vulnerable populations include women and girls, children, older persons with special needs, members of ethnic and religious minority groups, LGBTQI+ persons, persons with disabilities, medically fragile individuals, and stateless persons.

In addition, European embassies and consulates are increasing, to the extent possible, the number of nonimmigrant visa appointments and ensuring there is an expedited visa appointment program for individuals with humanitarian, medical, or other extraordinary circumstances to get priority access.

The Biden-Harris Administration remains committed to supporting the people of Ukraine and continues to closely coordinate our efforts with our European allies and partners who are on the frontlines of aiding Ukrainian citizens forced to flee due to Russian aggression. The United States has contributed nearly $300 million in humanitarian assistance to provide displaced Ukrainians with food, safe drinking water, shelter, and winterization services, and will continue to serve as a global leader in the international humanitarian response. The United

41

FRP-FRN-01623

States is prepared to provide more than $1 billion in new funding toward humanitarian assistance for those affected by Russia's war in Ukraine and its severe impacts around the world.

    ###

42

FRP-FRN-01624

# Appendix I(b) – Announcement – DHS Announces New Migration Enforcement Process for Venezuelans

https://www.dhs.gov/news/2022/10/12/dhs-announces-new-migration-enforcement-process-venezuelans

WASHINGTON – Today, as part of the Biden-Harris Administration's ongoing work to build a fair, orderly, and secure immigration system, the Department of Homeland Security (DHS) is announcing joint actions with Mexico to reduce the number of people arriving at our Southwest border and create a more orderly and safe process for people fleeing the humanitarian and economic crisis in Venezuela.

Almost four times as many Venezuelans as last year attempted to cross our southern border, placing their lives in the hands of ruthless smuggling organizations. Meanwhile, irregular migration from northern Central America is down by a quarter from the level encountered last year. The actions the United States and Mexico are announcing today are intended to address the most acute irregular migration and help ease pressure on the cities and states receiving these individuals.

Effective immediately, Venezuelans who enter the United States between ports of entry, without authorization, will be returned to Mexico. At the same time, the United States and Mexico are reinforcing their coordinated enforcement operations to target human smuggling organizations and bring them to justice. That campaign will include new migration checkpoints, additional resources and personnel, joint targeting of human smuggling organizations, and expanded information sharing related to transit nodes, hotels, stash houses, and staging locations. The United States is also planning to offer additional security assistance to support regional partners to address the migration challenges in the Darién Gap.

Our comprehensive effort to reduce the irregular migration of Venezuelans also includes a new process to lawfully and safely bring up to 24,000 qualifying Venezuelans into the United States.  The United States will not implement this process without Mexico keeping in place its independent but parallel effort to accept the return of Venezuelan nationals who bypass this process and attempt to enter irregularly.

"These actions make clear that there is a lawful and orderly way for Venezuelans to enter the United States, and lawful entry is the only way," **said Secretary of Homeland Security Alejandro N. Mayorkas**. "Those who attempt to cross the southern border of the United States illegally will be returned to Mexico and will be ineligible for this process in the future. Those who follow the lawful process will have the opportunity to travel safely to the United States and become eligible to work here."

This effort is intended to enhance border security by reducing the number of Venezuelans seeking to irregularly enter the United States. It is derived from the success of the Uniting for

FRP-FRN-01625

Ukraine (U4U) program, which decreased flows at the border by creating an orderly process for the entry of Ukrainians fleeing Russia's invasion of Ukraine.

DHS will closely monitor the implementation of this process, and Mexico's independent and parallel efforts, and may consider expanding it in the future.

To be eligible, Venezuelans must:
- have a supporter in the United States who will provide financial and other support;
- pass rigorous biometric and biographic national security and public safety screening and vetting; and
- complete vaccinations and other public health

requirements. Venezuelans are ineligible if they:
- have been ordered removed from the United States in the previous five years;
- have crossed without authorization between ports of entry after the date of announcement;
- have irregularly entered Mexico or Panama after the date of announcement, or are a permanent resident or dual national of any country other than Venezuela, or currently hold refugee status in any country; or
- have not completed vaccinations and other public health

requirements. Venezuelans should not travel to Mexico to pursue entry into the United States.

Venezuelans approved via this process will be authorized on a case-by-case basis to travel to the United States by air directly to an interior port of entry, thus relieving pressure at the border.  Once in the United States, they will be eligible to apply for work authorization.

DHS will administer the process, working with communities and other partners. Any U.S.-based individual with lawful status, including representatives of businesses or other organizations or entities, can support a potential beneficiary from Venezuela. A supporter must prove that they have the means to provide financial and other support for the beneficiary. In the coming days, potential supporters can apply to DHS to support individual eligible Venezuelans via [www.uscis.gov/Venezuela](http://www.uscis.gov/Venezuela). Individuals and representatives of organizations seeking to apply as a supporter must declare the organization's financial support and they must pass security background checks to protect against exploitation and abuse.

The State Department will also engage in a robust in-region messaging campaign to communicate about this new process and the consequences of attempting irregular entry.

More information will be available at [www.uscis.gov/Venezuela](http://www.uscis.gov/Venezuela) in the coming days.

Today's actions are part of the Biden-Harris Administration's ongoing efforts to reduce irregular migration throughout the Western Hemisphere, including through the U.S. Strategy for Addressing the Root Causes of Migration and the multinational Los Angeles Declaration on Migration and Protection. The process announced today is one more element of the United States' multilateral approach to addressing irregular migration that is impacting countries

FRP-FRN-01626

throughout Latin America, and it is premised on pairing increased enforcement in response to irregular immigration with the development of lawful and safe pathways for qualifying individuals.

Venezuelans have been migrating throughout the hemisphere since approximately 2014, yet the level of irregular migration of Venezuelans has increased dramatically throughout the hemisphere in the past several years. There are currently 2.4 million Venezuelans residing in Colombia. More than 25% of Venezuela's population has left the country.  The United States is seeing a rising rate of Venezuelans encountered at our border over the past two years, which has surged in the last few months. Average monthly unique encounters of Venezuelan nationals at the land border totaled 15,494 in FY 2022, rising further to over 25,000 in August and 33,000 in September, compared to a monthly average of 127 unique encounters from FY 2014–
2019.  Of note, unique encounters of Venezuelan nationals rose 293 percent between FY 2021 and FY 2022, while unique encounters of all other nationalities combined increased 45 percent. Panama is currently seeing more than 3,000 people, mostly Venezuelan nationals, crossing into its territory from Colombia via the Darién jungle each day.

The United States, in partnership with Mexico, also is committing to further expanding lawful labor pathways for Mexican and Northern Central American nationals. This last year, the United States doubled the number of H-2 visas issued to nationals of the Northern Central American countries of Guatemala, Honduras, and El Salvador. Today, we are announcing the largest H-2B supplemental in history for Fiscal Year 2023: nearly 65,000 new H-2B visas, including a set-aside of 20,000 to nationals of Northern Central American countries and Haiti. Historically, approximately 90% of these visas have been used by Mexican nationals.  This increase is coupled with strong measures to protect both U.S. and H-2B workers. Concurrent with this announcement, the Biden-Harris Administration is launching a White House-led Worker Protection Task Force to ensure ethical recruitment and dignified labor standards for foreign workers alongside protections for U.S. workers.

The United States also is renewing its commitment to tackle the root causes of migration and support countries in the region that are most impacted by these flows. For that reason, the United States has announced nearly $817 million in new assistance since September 2022 under the Los Angeles Declaration on Migration and Protection. This includes more than $240 million in new regional humanitarian and security assistance, $376 million in additional humanitarian assistance for people affected by the Venezuela regional crisis, and more than $199 million in additional humanitarian assistance for Mexico and Central America.

###

45

FRP-FRN-01627

# Appendix I(c) – Announcement – DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes

https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and

WASHINGTON – The Department of Homeland Security (DHS) continues to prepare for the end of the Title 42 public health order, which is currently the subject of multiple court orders, and a return to processing all noncitizens under the Department's Title 8 immigration authorities. To that end, DHS today announced new border enforcement measures to improve border security, limit irregular migration, and create additional safe and orderly processes for people fleeing humanitarian crises to lawfully come to the United States. These measures, taken together, are concrete steps to enhance the security of our border while the Title 42 public health order is in place, and that DHS will continue to build on in preparation for the Title 42 order being lifted.

- DHS is establishing new parole processes for Cubans, Haitians, and Nicaraguans, modeled on the successful processes for Venezuelans and Ukrainians, which combine safe, orderly, and lawful pathways to the United States, including authorization to work, with significant consequences for those who fail to use those pathways. We are also continuing the process with respect to Venezuelans.

- Through the CBP One app, we are also providing a new mechanism for noncitizens to schedule appointments to present themselves at ports of entry, facilitating safe and orderly arrivals. Initially this will be used for those seeking an exception from the Title 42 public health order. Once the Title 42 order is no longer in place, CBP One will be used  to help ensure safe and orderly processing at ports of entry.

- DHS is increasing and enhancing the use of expedited removal under Title 8 authorities for those who cannot be processed under the Title 42 public health order. These efforts include surging personnel and resources and enrolling individuals under the asylum processing interim final rule published in March 2022.

- As a complement to these efforts, and in response to the unprecedented surge in migration across the hemisphere and to reduce encounters at our border, DHS and the Department of Justice (DOJ) intend to shortly issue a proposed rule that will, subject to public comment, incentivize the use of the new and existing lawful processes available in the Unites States and partner nations, and place certain conditions on asylum eligibility for those who fail to do so.

DHS will continue to monitor developments on the southwest border and will accelerate or implement additional measures, as needed, consistent with applicable court orders.

FRP-FRN-01628

"We can provide humanitarian relief consistent with our values, cut out vicious smuggling organizations, and enforce our laws," said **Secretary Alejandro N. Mayorkas**. "Individuals without a legal basis to remain in the United States will be subject to prompt expulsion or removal. Individuals who are provided a safe, orderly, and lawful path to the United States are less likely to risk their lives traversing thousands of miles in the hands of ruthless smugglers, only to arrive at our southern border and face the legal consequences of unlawful entry."

As required by a combination of the Supreme Court's December 27 order and a separate district court injunction prohibiting the implementation of the CDC termination of the Title 42 public health order, the Title 42 order remains in effect, and individuals who attempt to enter the United States without authorization will continue to be expelled.

### Country-Specific Enforcement Processes

Building upon the success of Uniting for Ukraine and the process for Venezuelans announced in October – which combine a safe and lawful pathway with a consequence for failing to use that pathway – today's announcement establishes similar processes for Cuban, Haitian, and Nicaraguan nationals who face unique challenges in their home countries. The Venezuelan process also will continue; Border Patrol saw a dramatic drop – 90 percent – in the number of Venezuelans encountered at the border following the establishment of the program in October. Nationals from Venezuela, Cuba, Haiti, and Nicaragua who do not avail themselves of this process, attempt to enter the United States without authorization, and cannot establish a legal basis to remain will be removed or returned to Mexico, which will accept returns of 30,000 individuals per month who fail to use these new pathways. The expansion of the Venezuela process to Cuba, Haiti, and Nicaragua is contingent on the Government of Mexico's willingness to accept the return or removal of nationals from those countries. It also is responsive to a request from the Government of Mexico to provide additional legal pathways for migrants, and it advances both countries' interests in addressing the effects throughout the hemisphere of deteriorated conditions in these countries.

Specifically, these processes will provide a lawful and streamlined way for qualifying nationals of Cuba, Haiti, Nicaragua, and Venezuela to apply to come to the United States, without having to make the dangerous journey to the border. Through a fully online process, individuals can seek advance authorization to travel to the United States and be considered, on a case-by-case basis, for a temporary grant of parole for up to two years, including employment authorization, provided that they: pass rigorous biometric and biographic national security and public safety screening and vetting; have a supporter in the United States who commits to providing financial and other support; and complete vaccinations and other public health requirements.

Individuals who enter the United States, Mexico, or Panama without authorization following today's announcement will generally be ineligible for these processes. These processes will allow up to 30,000 qualifying nationals per month from all four of these countries to reside

47

FRP-FRN-01629

legally in the United States for up to two years and to receive permission to work here, during that period.

Starting tomorrow, potential supporters can apply to DHS to support eligible individuals via www.uscis.gov/CHNV. Individuals and representatives of organizations seeking to apply as supporters must declare their financial support, and they must pass security background checks to protect against exploitation and abuse.

### *Safe and Orderly Processes at Ports of Entry*

To facilitate the safe and orderly arrival of noncitizens seeking an exception from the Title 42 public health order, DHS is expanding use of the free CBP One mobile app for noncitizens to schedule arrival times at ports of entry. Individuals do not need to be at the border to schedule an appointment; expanded access to the app in Central Mexico is designed to discourage noncitizens from congregating near the border in unsafe conditions. Initially, this new scheduling function will allow noncitizens to schedule a time and place to come to a port of entry to seek an exception from the Title 42 public health order for humanitarian reasons based on an individualized assessment of vulnerability. This will replace the current process for individuals seeking exceptions from the Title 42 public health order, which requires noncitizens to submit requests through third party organizations located near the border.

Once the Title 42 public health order is no longer in place, this scheduling mechanism will be available for noncitizens, including those who seek to make asylum claims, to schedule a time to present themselves at a port of entry for inspection and processing, rather than arriving unannounced at a port of entry or attempting to cross in-between ports of entry. Those who use this process will generally be eligible for work authorization during their period of authorized stay.

Individuals who use the CBP One app will be able to schedule an appointment to present themselves at the following ports of entry:

- Arizona: Nogales;

- Texas: Brownsville, Hidalgo, Laredo, Eagle Pass, and El Paso (Paso Del Norte); and

- California: Calexico and San Ysidro (Pedestrian West – El Chaparral).

During their inspection process, noncitizens must verbally attest to their COVID-19 vaccination status and provide, upon request, proof of vaccination against COVID-19 in accordance with Title 19 vaccination requirements.

Individuals will be able to schedule appointments in CBP One in the coming days. The CBP One application is free to download and available in the Apple and Google App Stores as well as at https://www.cbp.gov/about/mobile-apps-directory/cbpone.

48

FRP-FRN-01630

*Enhanced Use of Expedited Removal*

We will comply with the court orders that require us to continue enforcing the Title 42 public health order. There are, however, migrants who cannot be expelled pursuant to Title 42 authorities and as a result are processed under Title 8 authorities. For those processed under Title 8, we are increasing and enhancing our use of expedited removal, which allows for the prompt removal of those who do not claim a fear of persecution or torture or are determined not to have a credible fear after an interview with an Asylum Officer, in accordance with established procedures.

This enhanced expedited removal process will include: dedicating additional resources including personnel, transportation, and facilities; optimizing processes across DHS and DOJ; and working with the State Department and countries in the region to increase repatriations. We also will continue to process individuals under the interim final rule published in March 2022 outlining procedures for U.S. Citizenship and Immigration Services to process asylum requests for noncitizens found to have a credible fear. Together, these measures will allow for the prompt removal of those who do not have a legal basis to stay and improve our overall preparedness for when the Title 42 public health order is lifted. Individuals removed under Title 8 are subject to a five-year bar on admission and potential criminal prosecution should they seek to reenter.

*Notice of Proposed Rulemaking*

As a complement to these efforts, and in response to the unprecedented surge in migration across the hemisphere and to reduce encounters at our border, DHS and DOJ intend to issue a proposed rule to provide that individuals who circumvent available, established pathways to lawful migration, and also fail to seek protection in a country through which they traveled on their way to the United States, will be subject to a rebuttable presumption of asylum ineligibility in the United States unless they meet exceptions that will be specified. Individuals who cannot establish a valid claim to protection under the standards set out in the new rule will be subject to prompt removal under Title 8 authorities, which carries a five-year ban on reentry. DHS and DOJ will invite public comment on the proposed rule.

Overall, through today's announcements, DHS is strengthening the availability of legal, orderly pathways to the United States while imposing consequences on those who fail to use pathways made available to them by the United States and its regional partners.

These new measures complement ongoing efforts to increase refugee resettlement from the Western Hemisphere. The U.S. Government intends to welcome at least 20,000 refugees from Latin America and the Caribbean in Fiscal Year 2023 and 2024, putting the United States on pace to more than triple refugee admissions from the Western Hemisphere this Fiscal Year

49

FRP-FRN-01631

alone. This delivers on the President's commitment under the Los Angeles Declaration for Migration and Protection to scale up refugee admissions from the Western Hemisphere.

Taken together, these efforts will: reduce irregular migration by disincentivizing migrants from taking the dangerous journey to the southwest border of the United States and attempting to cross without authorization; significantly expand lawful pathways to the United States for vetted individuals; and reduce the role for – and profits of – smuggling networks that callously endanger migrants' lives for personal gain.

The Department is taking these measures in light of Congress's failure to pass the comprehensive immigration reform measures President Biden proposed on his first day in office and the economic and political instability around the world that is fueling the highest levels of migration since World War II, including throughout the Western Hemisphere. The surge in global migration is testing many nations' immigration systems, including that of the United States. The actions announced today are part of the Biden-Harris Administration's ongoing commitment to enforce our laws and build a fair, orderly, and humane immigration system, and build on efforts outlined in the Department's December 2022 Update on Southwest Border Security and Preparedness. Today's announcements also show the imperative of partner countries working together, as agreed in the Los Angeles Declaration following the Summit of the Americas, to take action against smugglers and provide protection to asylum seekers. Hemispheric challenges require hemispheric solutions.

Everyone agrees that we are operating within a fundamentally broken immigration system. The steps we are taking reflect the constraints of our outdated statutes, which have not been updated in decades and were designed to address a fundamentally different migratory reality than that which exists today along the southwest border and around the world. As it has since its first day in office, the Biden-Harris Administration continues to call on Congress to pass legislation that strengthens border security, holistically addresses the root causes of migration, and improves legal pathways. We also encourage Congress to provide critical funding and advance bipartisan efforts to create a fair, fast, and functioning asylum system – enabling those who merit protection to quickly receive it, and those who do not to quickly be removed. In the absence of such action, the Administration is committed to pursuing every avenue within its authority to secure our borders, enforce our laws, and stay true to our values as we build safe, orderly, and humane processes.

###

FRP-FRN-01632

# Appendix II – Egregious Public Safety (EPS) Concerns

An **EPS** case is defined by USCIS and ICE in the 2020 Memorandum of Agreement (MOA) Between DHS USCIS and DHS ICE Regarding the Referral of Immigration Benefit Fraud and Public Safety Cases as a case where information indicates the noncitizen is under investigation for, has been arrested for (without disposition), or has been convicted of, any of the following:

a) Murder, rape, or sexual abuse of a minor as defined in section 101(a)(43)(A) of the Immigration and Nationality Act (INA).
b) Illicit trafficking of controlled substances as defined in section 101(a)(43)(B) of the INA.
c) Illicit trafficking in firearms or destructive devices as defined in section 101(a)(43)(C) of the INA.
d) Offenses relating to explosive materials or firearms as defined in section 101(a)(43)(E) of the INA.
e) Crimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA.
f) An offense relating to the demand for, or receipt of, ransom as defined in section 101(a)(43)(H) of the INA.
g) An offense relating to child pornography as defined in section 101(a)(43)(I) of the INA.
h) An offense relating to racketeer influenced corrupt organizations as defined in 101(a)(43)(J) of the INA.
i) An offense relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in section 101(a)(43)(K)(iii) of the INA.
j) An offense relating to alien smuggling as defined in section 101(a)(43)(N) of the INA.
k) An offense relating to an attempt or conspiracy to commit any EPS offense in accordance with 101(a)(43)(U) of the INA.
l) An offense related to Human Rights Violators, including aliens who persecuted others as described in sections 101(a)(42)(B), 212(a)(2)(G), 212(a)(3)(E), 212(a)(3)(G), 212e, 237(a)(4)(D),
237(a)(4)(E), 237(a)(4)(F) of the INA, known or suspected street gang members, or Interpol hits.
m) Re-entry after an order of exclusion, deportation or removal subsequent to a conviction for a felony where Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has not been approved.

FRP-FRN-01633

# Appendix III – Adam Walsh Act

Under the **Adam Walsh Act**, the term "specified offense against a minor" means an offense against a minor (defined as an individual who has not attained the age of 18 years) that involves any of the following:

- An offense (unless committed by a parent or guardian) involving kidnapping;
- An offense (unless committed by a parent or guardian) involving false imprisonment;
- Solicitation to engage in sexual conduct;
- Use in a sexual performance;
- Solicitation to practice prostitution;
- Video voyeurism as described in 18 USC 1801;
- Possession, production, or distribution of child pornography;
- Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such
- conduct; or
- Any conduct that by its nature is a sex offense against a minor.

FRP-FRN-01634

# Appendix IV – Health and Human Services – 2023 Federal Poverty Guidelines

*Poverty Guidelines for the District of Columbia and 48 Contiguous States*

| 2023 POVERTY GUIDELINES FOR THE 48 CONTIGUOUS STATES AND THE DISTRICT OF COLUMBIA | |
|---|---|
| **Persons in family/household** | **Poverty guideline** |
| 1 | $14,580 |
| 2 | $19,720 |
| 3 | $24,860 |
| 4 | $30,000 |
| 5 | $35,140 |
| 6 | $40,280 |
| 7 | $45,420 |
| 8 | $50,560 |
| For families/households with more than 8 persons, add $5,140 for each additional person. | |

FRP-FRN-01635

*Poverty Guidelines for Alaska*

| 2023 POVERTY GUIDELINES FOR ALASKA | |
| --- | --- |
| **Persons in family/household** | **Poverty guideline** |
| 1 | $18,210 |
| 2 | $24,640 |
| 3 | $31,070 |
| 4 | $37,500 |
| 5 | $43,930 |
| 6 | $50,360 |
| 7 | $56,790 |
| 8 | $63,220 |

For families/households with more than 8 persons, add $6,430 for each additional person.

54

FRP-FRN-01636

*Poverty Guidelines for Hawaii*

| 2023 POVERTY GUIDELINES FOR HAWAII | |
| --- | --- |
| **Persons in family/household** | **Poverty guideline** |
| 1 | $16,770 |
| 2 | $22,680 |
| 3 | $28,590 |
| 4 | $34,500 |
| 5 | $40,410 |
| 6 | $46,320 |
| 7 | $52,230 |
| 8 | $58,140 |
| For families/households with more than 8 persons, add $5,910 for each additional person. | |

FRP-FRN-01637

## Appendix V – Duplicate Case Process Map



FRP-FRN-01638

## Appendix VI – TPS Evaluation Process Map



FRP-FRN-01639

## Administrative Issues

o   *Why are there two form – Form I-134 and Form I-134A?  And what does it mean for my review?*

The Form I-134, Declaration of Financial Support, was utilized by supporters filing for individual beneficiaries for both *Uniting for Ukraine* and *Process for Venezuelans.*  In January 2023, when *Processes for Cuba, Haiti, and Nicaragua* was announced, USCIS amended the Form I-134 to the Form I-134A, *Online Request to be a Financial Supporter and Declaration of Financial Support*, under the direction of the Office of Information and Regulatory Affairs (OIRA), a Division within the Office of Management and Budget (OMB).

Form I-134A is the only form being used for both *Uniting for Ukraine (U4U) and Processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV).*

o   *What Teams Channel should I post questions to?*

I-134A Review Team Leads will post updated guidance in the General channel. You may request assistance from subject matter experts (SMEs) in your designated Teams Chat:

- USCIS Detailees should use the USCIS Detailee Reviewers Discussion Channel
- VER Staff should use the VER Staff Reviewer Discussion Channel

o   *Does a Supporter have to file a Form I-134A for every beneficiary including minor children of parents claimed on a Form I-134A?*

Yes, a Form I-134A needs to be filed for every individual separately; for every individual beneficiary including minor children.

o   *If I catch a mistake, what should I do if I confirmed already?*

Be careful when selecting Confirmation or Non-confirmation.  But if you make a mistake and select the wrong decision (confirm vs non-confirm), please email your Lead and SC Marianna Paredes with the case information ASAP.

The ELIS team has developed a pop-up to remind you of the decision you are rendering.  The ELIS team has also created a re-assess (re-open) feature that is available to a Level 6 Supervisor.

FRP-FRN-01640

**Review Process**

o ***Does the lawful Status have to be the front and back of the document?***

No, the evidence can be the front of the document if it provides enough information to confirm the lawful status (example LPR card front) in other USCIS systems.

o ***Can we accept an expired US passport for Lawful Status?***

Yes, we can accept an expired US passport to evidence lawful status (a US Citizen) for the supporter.

o ***Can I render a non-confirmation decision without a QA Review?***

We are only doing a QA review on a financial non-confirmation.  If you wish to non-confirm a supporter for lack of financials, please place case receipt number on the Case Tracker on the Form I- 134 Review Team – Teams Page.

However, in the following categories, a decision can be rendered without a QA Review:

• If there is no beneficiary listed on Form I-134, please issue a non-confirmation, you do not need to place that case on the spreadsheet.  We have seen some "over eager" folks just wanting to help, but they must name the individual they are helping.

• If a supporter does not submit ***any*** financial evidence, issue a non-confirmation.  If you do not see any tax returns, any bank accounts, any investment accounts, any financials at all, go ahead and issue a non-confirmation.  There is no need to submit the case on the spreadsheet.

• If you see a supporter that has an asylum application pending, that is not considered lawful status eligibility to support.  We have seen supporters submit evidence of their asylum application pending to be either an asylum application receipt or an Employment Authorization (c)(8).  You can render a non-confirmation without QA review.

  o Please note that some asylum applicants may have an underlying non-immigrant visa that allows them to be in lawful status, i.e. TPS, J-1 student visa, F-1 student visa, and/or work related visa.  If you have any questions, please submit them in the "Reviewer Discussion" section of the U4U – Verifications Team site.

o ***Can I render a decision if there is an open TECS Task?***

Currently ELIS has corrected the TECS glitch and is not releasing any cases into Case Review unless the TECS check has been run.  However, if you have any cases with an open TECS task.  Do not assign the TECS task to yourself.  It will be assigned automatically to someone in FDNS for review.  So, if  you have a case with a result and it isn't resolved, just put it aside and wait till the TECS hit is resolved.  If you see this green light banner result you can proceed:

59

FRP-FRN-01641



**I-134 Task** - *Case Review Read Only* -

⊘ TECS Results do not affect eligibility

**Risk and Fraud**

If you see this red light banner result, please place on the tracker for further review for now:



**I-134** - *Declaration of Financial Support*

⊗ TECS Results affect eligibility

- o ***What do I do if the supporter leaves Part 3, Question 27, Question 28, or Question 29 blank or with a negative response on whether they intend to provide financial support to the Beneficiary?***

  These questions were added to understand the intent of the supporter. If a supporter simply answers "yes" for all three questions, you can non-confirm them. However, if there is a response, you should continue processing.

- o ***What do I do if the Beneficiary does not have a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Passport and/or the Beneficiary is not Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan?***

  If you see a Beneficiary that does not have a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Passport and/or the Beneficiary is not Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan, you should render a decision for the supporter (confirmation or non-confirmation), without it going for QA review. Based upon feedback with CBP, myUSCIS has built in an attestation for the Beneficiary to explain how they may be connected to a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Beneficiary. We are not reviewing the Beneficiary data as CBP will be making that final determination.

- o ***What do I do if I see on the worksheet it says "Applicant is a USC. This case should not be approved."***

  There is a process with the CIS worksheet for US Citizens, it will say "Applicant is a USC. This case should not be approved" or that you have to issue an A number. This is a statement in ELIS and does not affect our review process. Continue to review the case as normal and do *Not* issue an A number for a USC.

60



o   ***When do I update name and DOB and what happens?***

When the document or ELIS data clearly shows a supporter made a typo in the Form I-134A application process you can update name and DOB.  This will automatically initiate another TECS check and could create a task that will hold the case from being able to be rendered.  There is a known issue with ELIS where some DOBs may be off by 1 day due to time zone issues.  You *can* update the DOB if the supporter DOB entered on the form does not match the uploaded identity document.

5. Under the Date of Birth section for the supporter, you can add a new DOB (upper right "+ Add" button
6. Once added, at the far-right side for the correct DOB, click on the 3 dots
7. A drop down will appear indicating Make Primary or Make Inactive
8. Select Make Primary and the "N" in the Primary column will change to "Y"

We understand that a new TECS check will be re-run if a new DOB is ██████████ ███████████

o   ***Does relationship of beneficiary to supporter matter?***

No, we have seen the relationship question filled in and we have seen the relationship question to be empty.

o   ***What does it mean if my "Case Review - Suspended," in the context of 10+ or more Beneficiaries?***

ELIS has built in automatic referral to FDNS when a supporter files more than ten (10) I-134/I-134As beneficiary applications.  This automatic referral is triggered automatically when the eleventh application is filed.  The automatic referral for 11 cases also includes any duplicate filings that a supporter may have filed.  Once a referral is made to FDNS, the case will now be listed as "Case Review - Suspended."  Until FDNS releases it or resolves it, a reviewer will be unable to review the case.

FDNS completes a case by uploading a Record of Action (ROA) for a Tier 2 review before going back to reviewers.  In some cases, the application may be "taken" over by Tier 2 reviewer and finalized.

FRP-FRN-01643

## Financial Questions

o **When reviewing a supporter tax return do I use adjusted gross income or taxable income?**

You will want to review the supporter's Adjusted Gross Income **NOT** their taxable income.

o **What is considered Federal Means-Tested benefits?**

Income from illegal sources or Means-Tested public benefits, as defined in 8 CFR 213a.1, is excluded from consideration in meeting at least 100% of the HHS poverty guidelines.

This includes public benefit, which is funded in whole or in part by funds provided by the Federal Government and/or State Government. Some examples we have seen include, but are not limited to, the Federal Child Tax Credit that was administered last Summer, public assistance funds, and/or state assistance funds.

o **How do I calculate household total members?**

For calculating household total members for the purposes of the Form I-134, you look to see how many dependents is first declared on the Form I-134. If there is evidence of a Tax Filing, you also look to see how many dependents are declared on the Tax Filing. It is possible that there is a difference between the two forms as a spouse may not be included on the Form I-134.

Under the totality of the circumstances, look to see what the lowest number of dependents and/or highest income is to better assist the supporter. Thus, if it helps them calculate a lower number as declared on the Form I-134 and you are only using the supporter's income, then use that information. However, if you need to pull the spouse's income then you add the spouse as a dependent for household income purposes.

o **Is a supporter required to provide tax information?**

Tax documentation is not a requirement. However, the supporter does need to provide evidence to show enough liquid assets to exceed the poverty threshold.

FRP-FRN-01644

**Office of Policy & Strategy**

**Immigration Records and Identity Services Directorate**

# *Form I-134A – Reviewers Guide*

(Last Revision – December 2, 2024)

For Internal Use Only/Not for Public Distribution    FRP-FRN-01645

Version 8.0

| Version | Date | Updated by | Description of Changes |
|---|---|---|---|
| 1.0 | April 27, 2022 | ███ | ███ |
| | | | Addition of CHNV and 134A |
| 5.0 | March 28, 2023 & April 11, 2023 | M. Dhanjal, M. Paredes | Preparation of Training, merging worksheets into the Guide; corrections |
| 6.0 | August 1, 2023 | M. Dhanjal, M. Paredes | Technical Updates, addition of Text Box |
| 7.0 | August 14, 2023 | J. Rondeau | Consolidating updated guidance |
| 8.0 | September 12, 2023 | J. Rondeau | Updated guidance for cases on hold, protected warning banners, cases on hold, duplicate case review, adding Alien Number to case, rendering Administratively Closed. |
| 9.0 | October 19, 2023 | J. Rondeau | Updated guidance for Text Box responses, Cases Placed on Hold for Other Reason, Tips for Reviewing Financial Evidence, Case Tracker Primary Reasons, Added appendices for Duplicate Case Process Map and TPS Evaluation Process Map. Inserted links to referenced appendices and chapters throughout document. |
| 10.0 | March 28, 2024 | M. Paredes | Updated guidance for co-supporter, Non-confirmation comments and contact for BOLO list. |
| 11.0 | July 9, 2024 | J. Rondeau | 1099s, Hosts, Shared ELIS Accounts, Business Accounts, Questions 27-29 (28-30) |
| 12.0 | August 6, 2024 | R. Alberre | Part 3, Question 20 (19) process. 7.3 Review Financial Evidence. 8.2 Render Non-Confirmation. Financial Questions |
| 13.0 | December 2, 2024 | R. Alberre | Part 3, Question 22 (21) process. 7.3 Review Financial Evidence. 8.2 Render Non-Confirmation. Financial Questions |

2

For Internal Use Only/Not for Public Distribution    FRP-FRN-01646

# 1.0  Introduction

### *1.1 Background – Uniting for Ukraine*

On April 21, 2022, President Biden announced Uniting for Ukraine, a new streamlined process to provide Ukrainian citizens who have fled Russia's unprovoked war of aggression opportunities to come to the United States, fulfilling President Biden's commitment to welcome up to 100,000 Ukrainians and others fleeing Russia's aggression in response to the ongoing Russia-Ukraine crisis.

For the full press release, see Appendix I(a) – Press Release – President Biden to Announce Uniting for Ukraine, a new Streamlined Process to Welcome Ukrainians Fleeing Russia's Invasion of Ukraine, OR visit https://www.dhs.gov/news/2022/04/21/president-biden- announce-uniting-ukraine-new-streamlined-process-welcome-ukrainians.

Uniting for Ukraine will provide a safe and orderly process for displaced Ukrainians with a supporter in the United States to be considered for parole, on a case-by-case basis, for a period of up to two years. Ukrainians participating in Uniting for Ukraine must have a supporter in the United States who agrees to provide them with financial support for the duration of their stay in the United States. The process begins when the supporter files Form I-134A, Online Request to be a Supporter and Declaration of Financial Support,[1] with U.S. Citizenship and Immigration Services (USCIS) to include information both on the supporter and the Ukrainian beneficiary. Ukrainians who meet the requirements receive authorization to travel directly to the United States and seek parole, authorized by Customs and Border Patrol (CBP), at a port of entry. If granted parole under this process, Ukrainians are eligible for employment authorization.

More information on accessing and navigating procedures will be available on the DHS website at, https://www.dhs.gov/ukraine

### *1.2 Background – Process for Venezuelans*

On October 12, 2022, the Department of Homeland Security announced joint actions with Mexico to reduce the number of people arriving at our Southwest border and create a more orderly and safe process for people fleeing the humanitarian and economic crisis in Venezuela. DHS' effort to reduce the irregular migration of Venezuelans also includes a new process to lawfully and safely bring up to 24,000 qualifying Venezuelans into the United States.[2] The United States will not implement this process without Mexico keeping in place its independent but parallel effort to accept the return of Venezuelan nationals who bypass this process and attempt to enter irregularly.
This effort is intended to enhance border security by reducing the number of Venezuelans seeking to irregularly enter the United States. It is derived from the success of the Uniting for Ukraine (U4U) program, which decreased flows at the border by creating an orderly process for the entry of Ukrainians fleeing Russia's invasion of Ukraine.

DHS will closely monitor the implementation of this process, and Mexico's independent and parallel efforts, and may consider expanding it in the future.

---

[1] The electronic Form I-134 was replaced by the Form I-134A. This user guide references the I- 134A, but the information still applies to any pending I-134 cases.
[2] The 24,000 cap on Venezuelan travel authorizations was changed with the announcement of the Process for Cubans, Haitians, and Nicaraguans announced in January 2023.

3

For Internal Use Only/Not for Public Distribution        FRP-FRN-01647

For the full announcement, see Appendix I(b) – Announcement – DHS Announces New Migration Enforcement Process for Venezuelans OR visit https://www.dhs.gov/news/2022/10/12/dhs-announces-new-migration-enforcement-process-venezuelans.

## 1.3 Background – Process for Cubans, Haitians, and Nicaraguans

On January 5, 2023, DHS announced the establishment of new parole processes for Cubans, Haitians, and Nicaraguans, modeled on the successful processes for Venezuelans and Ukrainians, which combine safe, orderly, and lawful pathways to the United States, including authorization to work, with significant consequences for those who fail to use those pathways.

Building upon the success of Uniting for Ukraine and the Process for Venezuelans announced in October – which combine a safe and lawful pathway with a consequence for failing to use that pathway – today's announcement establishes similar processes for Cuban, Haitian, and Nicaraguan nationals who face unique challenges in their home countries. The Venezuelan process also will continue; Border Patrol saw a dramatic drop – 90 percent – in the number of Venezuelans encountered at the border following the establishment of the program in October. Nationals from Venezuela, Cuba, Haiti, and Nicaragua who do not avail themselves of this process, attempt to enter the United States without authorization, and cannot establish a legal basis to remain will be removed or returned to Mexico, which will accept returns of 30,000 individuals per month who fail to use these new pathways. The expansion of the Venezuela process to Cuba, Haiti, and Nicaragua is contingent on the Government of Mexico's willingness to accept the return or removal of nationals from those countries. It also is responsive to a request from the Government of Mexico to provide additional legal pathways for migrants, and it advances both countries' interests in addressing the effects throughout the hemisphere of deteriorated conditions in these countries.

Specifically, these processes will provide a lawful and streamlined way for qualifying nationals of Cuba, Haiti, Nicaragua, and Venezuela to apply to come to the United States, without having to make the dangerous journey to the border. Through a fully online process, individuals can seek advance authorization to travel to the United States and be considered, on a case-by-case basis, for a temporary grant of parole for up to two years, including employment authorization, provided that they: pass rigorous biometric and biographic national security and public safety screening and vetting; have a supporter in the United States who commits to providing financial and other support; and complete vaccinations and other public health requirements. Individuals who enter the United States, Mexico, or Panama without authorization following today's announcement will generally be ineligible for these processes. These processes will allow up to 30,000 qualifying nationals per month from all four of these countries to reside legally in the United States for up to two years and to receive permission to work here, during that period.

For the full announcement, see Appendix I(c) – Announcement – DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes OR visit https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new- border-enforcement-measures-and.

## 1.4 Parole Supporter Definition and Requirements

The parole supporter is the individual who makes a financial obligation to provide support to the beneficiary while he or she is in the United States for the duration of the parole authorization period.

For Internal Use Only/Not for Public Distribution        FRP-FRN-01648

Generally, the supporter is a lawful permanent resident (LPR) or U.S. citizen (USC) and has sufficient income or financial resources to meet the Health and Human Services (HHS) Federal poverty guidelines. The supporter is required to submit a FormI-134A, Online Request to be a supporter and Declaration of Financial Support for each parole request to establish the adequacy of financial resources to support the parolee during his or her stay in the United States. Occasionally, a non-profit organization or medical institution may serve as a supporter on a parole application, with an individual completing the individual Form I-134A. In those instances, reviewers may accept a letter of commitment from the organization.

### 1.4.1 Lawful Status

The supporter must be in the United States under lawful status to qualify as a supporter for a beneficiary of the above-mentioned parole programs.  Additionally, they must submit evidence of lawful status with their Form I-134A package.  Here are the acceptable types of status for becoming a supporter:

- A U.S. Citizen or national,
- Lawful Permanent Resident (including lawful temporary resident and conditional permanent resident),
- nonimmigrant in lawful status (i.e., maintains the nonimmigrant status and has not violated any of the terms or conditions of the nonimmigrant status),
- asylee,
- refugee,
- parolee,
- TPS holder,
- beneficiary of deferred action (including DACA) or Deferred Enforced Departure (DED)
- or anyone else in the United States with lawful immigration status meets this requirement.

A pending application/petition with USCIS is not sufficient; however, if a pending application/petition for lawful status, or deferred action is approved (or if the supporter has been paroled into the United States) between the time the Form I-134 is filed and the time of review, then the supporter has met the lawful status requirement.

Reviewers may refer to Appendix VI – TPS Evaluation Process Map for guidance on how to determine if an individual is granted Temporary Protected Status.

See the **I-134 Status – Reference Guide – 20221102** and additional resources under the Teams I- 134A – Review Team, General Channel, in the Files Tab, for further information.

### 1.4.2 Sufficient Financial Evidence

The supporter must show evidence of sufficient financial resources according to the Health & Human Services (HHS) Poverty Guidelines to qualify as a supporter of the above-mentioned parole programs.

The number of people residing in the household plus the number of beneficiaries the supporter is petitioning for are the total number to consider when using this chart. Locate these guidelines here:

5

https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines.

All financial evidence, including bank accounts in the U.S. must be in English or have a translation provided in English.

Here are some acceptable forms of financial evidence a supporter may provide:

- Taxes - 2022, 2021, and/or 2020 tax filings are sufficient evidence when submitted alone
  - Form 1040 U.S. Individual Income Tax Return - Use the Adjusted Gross Income (AGI)
    - Look for number of exemptions to determine number in household
    - Form 1040 – Line 11
    - Add anything listed in Lines 2a through 6a and any refund listed on page 2, line 35a
  - State Tax Refund
    - Money due to supporter
    - Check to see if wages or AGI are listed on state tax form
  - Business Taxes
    - Schedule C Profit or Loss from Business: Line 29 – Tentative Profit or Loss
    - 1120 U.S. Corporation Income Tax Return: Line 30 – Taxable Income
    - 1120-S Income Tax Return for an S Corporation: Line 21 – Ordinary business income (loss)
      - May look for Schedule K1, Part 11, Line E to see how many shareholders will split the total profit.  Divide Line 21 by this number.
  - W-2 Wage and Tax Statement – Box 1, Wages, tips other compensation:
    - Don't worry about dependents if not listed on I-134A
  - 1099s
    - Form SSA-1099, dated within 12 months of the request/application received date is valid evidence of income.
    - Exclusions – 1099-G, 1099-MISC, and 1099-NEC, by themselves, should not be considered as valid evidence of income.
  - Paystubs – Look for pattern and add up for the past year – note whether pay period is weekly/bi-weekly/monthly
- Bank Accounts
  - Statements should be dated within 3 months of date supporter submitted the I-134A
  - Personal Accounts
    - Total: Available balance may be used toward the amount needed for poverty guidelines
    - Bi-monthly or regular deposits from business account (Example: If bi- monthly, multiply amount by 24)
  - Business Accounts – If we can discern the supporter is the business owner and is using their business account's financial information, we may accept this as financial evidence. (Signer, Cardholder, Business Owner must reflect supporter's name)
  - Bank statements in a foreign language must include a translation with uploaded evidence
- Letters
  - Statements from supporter's employer – We DO NOT accept offer letters from employers for work that has not started.

6

For Internal Use Only/Not for Public Distribution        FRP-FRN-01650

- o Statements from supporter's employer should include:
  - ▪ Date and nature of employment (Form I-134 Instructions 04/25/22 Page 6 of 8)
  - ▪ Salary paid; and
  - ▪ Whether the position is temporary or permanent
- o Letter from Corporation, Church, or other organization expressing authorization for supporter to use finances for the beneficiary/beneficiaries
- o Approval letters for other benefit programs that are NOT Means-Tested (Means-Tested benefits are not acceptable income for Form I-134A)
- o Veterans Affairs Benefits
  - ▪ VA benefits are considered tax free, please see: 2023 Veterans Disability Compensation Rates | Veterans Affairs (va.gov)

**Identifying Federal Means-Tested Programs**

| Means-Tested benefit programs that do NOT count as income for Form I-134A | Benefit programs that are not Means-Tested and DO count as income for Form I-134A |
| --- | --- |
| Some examples include:<br><br>• Supplemental Nutrition Assistance Program (SNAP, formerly called Food Stamps)<br><br>• Temporary Assistance to Needy Families (TANF)<br><br>• Supplemental Security Income (SSI) | Some examples include:<br><br>• Unemployment benefits<br><br>• Social Security benefits<br><br>• Social Security Disability Insurance (SSDI)<br><br>• Retirement, Survivors and Disability Insurance (RSDI)<br><br>• Student financial aid/loans/grants<br><br>• Veterans Affairs (VA) benefits |

See guidance for reviewing evidence in Section 7.3 Review Financial Evidence. See additional information, including images of acceptable financial evidence in the Files Tab of the I-134A – Review Team / General Channel.

# 2.0 Case Assignment and Case Administration in ELIS and Microsoft Teams

This section provides detailed guidance regarding case assignment, workflow, and requirements related to reviewing the Form I-134A, Online Request to be a Supporter and Declaration of Financial Support.

## 2.1 Case Assignment in ELIS

At this time, staff will assign cases to themselves for review in ELIS. However, it should be noted that

7

cases may be assigned based on the need to be expedited and on the age of the case. Once your profile has been updated in ELIS, you will click "Get Work" to find an available case to start reviewing.



ELIS allows you to work the previous Form I-134 as well as the Form I-134A. Depending on your case assignment, you may be asked to work the Form I-134 or the Form I-134A. In addition, you may also be asked to work a specific country.

The drop down for the Form Type looks like:



When you pull a specific country, it will look like:



Once you select the correct Form Type, Country, and Location, you will select "1 case(s) to pull" from the Case Review drop-down and click on the "Get 1 Case" button to assign the case to yourself.



8

For Internal Use Only/Not for Public Distribution    FRP-FRN-01652

The case will look like this in your queue:



Click the Receipt Number hyperlink to open and review the case. If the supporter submitted multiple cases, ELIS automatically assigns all related and unassigned cases to you upon opening the case. You will see a banner stating "You have been assigned to x case(s) for this same supporter".

> ℹ️ You have been assigned to 2 case(s) for this same supporter

## 2.2 Resources and Case Administration

This section provides detailed guidance for adding cases to the Case Tracker, creating and maintaining folders, viewing case assignment, and unassigning a case from your queue. Additionally, it provides housekeeping tips for how to stay organized and avoid common mistakes.

### 2.2.1 Resources in Microsoft Teams

We store all resources pertinent to reviewing I-134A in the Files Tab of the I-134A – Review Team General Channel.



- 01 – Administrative Information folder stores only administrative guidance
- 02 – Case Tracker stores only the Case Tracker (NOTE: There should only be one)
- 03 – Form I-134-134A – Training Materials stores all guidance for reviewing I-134As

I-134A Review Team Leads will post updated guidance in the General channel. You may request assistance from subject matter experts (SMEs) in your designated Teams Chat:

For Internal Use Only/Not for Public Distribution      FRP-FRN-01653

- USCIS Detailee Reviewers Discussion
- VER Staff Reviewer Discussion

Tips for searching previous conversations and asking questions in Teams:

- Watch for updated guidance in the General Channel (Only I-134A Review Team Leaders may post in this channel).
- Use key word in Search Bar to search for previous conversations.
- Keep conversations in the same thread and only start new conversations when you have a unique inquiry.
- Always include the receipt number.
- No need to add a screen shot, the SMES will look up your case.
- It may take 24 hours for SMEs to respond to questions.
    - Place case aside and pull another case.
    - Your case queue may get lengthy - Remain flexible and stay organized.
- If you are unsure about anything, ask your SMEs.

## 2.2.2 BOLO List and Case Tracker in Microsoft Teams

You may need to add a case to the Case Tracker for various reasons. Additionally, you will look for EVERY supporter's name on the BOLO List of Serial Supporters and FDNS Review spreadsheets. Locate these documents in Teams under the I-134 – Review Team, General Channel, in the Files Tab.

- Case Tracker is in the "02 – Case Tracker" folder.
- BOLO List of Serial Supporters and FNDS Review spreadsheet is in the "03 – Form I-134-134A – Training Materials" folder.

**2.2.2.1 Search Supporter on BOLO List of Serial Supporters and FDNS Review**

Open the BOLO List of Serial Supporters and FDNS Review spreadsheet from Teams. We recommend you click Open in Desktop App and keep this open and easily accessible while you review cases.

**NOTE:** Do not save or make copies of this spreadsheet, as we need to rely on one accurate list for all to use.

The **FDNS** tab displays supporters who have been flagged by FDNS for various reasons. The **SS** Tab displays names of confirmed serial supporters. If a supporter's name appears on either of these lists, you must stop processing, and place the case in a folder.

- If your case has a red banner attached, follow the guidance under 3.2 Review Banners.
- If the case does not have a banner, add the case to the Case Tracker following guidance in the next section.

**2.2.2.2 Add Case to Case Tracker in Teams**

When you open the Case Tracker, select Open in Browser or Open in Desktop App so you can keep the tracker open and easily accessible while reviewing cases.  Reviewers should add each related case individually.  Subject matter experts (SMEs) from the I-134A Review Team review cases placed on this tracker and will pull each case from the initial reviewer's  queue when they are ready to review.

When adding cases to the Case Tracker, reviewers must include:

For Internal Use Only/Not for Public Distribution       FRP-FRN-01654

- Primary Reason
- Date
- Receipt Number
- Reviewer's name
- Brief comments to include the total number of beneficiaries + household members

Primary Reason options may change as deemed necessary.  Currently, these are the Primary Reasons reviewers may choose from when adding cases to the Case Tracker:

- FDNS Hold
- Financial
- Possible Serial Supporter 11+
- Red TECS Banner
- RFE Needed
- ROA
- Text Box

## 2.3 Create and Manage Folders in ELIS

Using folders is essential for grouping and organizing cases in your assigned queue. Click the settings wheel to open Manage My Folders, where you may create up to 10 folders and edit folder names at any time. The number to the right of the folder name tells you how many cases you have in that folder.



## 2.4 View Case Assignment and Unassign Case in ELIS

You may need to see who a related case is assigned to and communicate with that reviewer for various reasons. If you need to view the owner of a case, click the Case (receipt) number to the left of the Open Evidence button from within the Case Review tab.



Once the Case (receipt) number tab is open, click the Task tab to view the Owner of the case. If you are listed as the Owner and must unassign the case from your queue, click the Unassign link under your name and the case will return to the unassigned queue.

11



## 2.5 Case Statuses

The evolution of a case looks like this:

- Resolving Preprocessing Checks = case is ready for review.
- Awaiting Beneficiary Attestation = case was confirmed and is awaiting beneficiary attestation.
- Accepted = case is ready to review and/or Awaiting Beneficiary Attestation (this is found in the ELIS account page of the supporter at the bottom for the I-134A).
- Closed – Confirmation = case was confirmed, beneficiary attested, now closed.
- Closed – Not Confirmed = case was not confirmed, and it is now closed.
- Administratively Closed = case was administratively closed (probably because it was a duplicate).

## 2.6 Housekeeping Tips

- Open guidance material prior to reviewing a case for easy access to helpful information.

- Close ELIS tabs and Digital Evidence Viewer after reviewing each case to avoid using information that belongs to another case.

- Keep these URL browsers open while reviewing:
    - ELIS
    - PCIS
    - ASPE Poverty Guidelines: https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines

- The title of the ELIS tab you are working in will be highlighted blue. All other open tabs display gray titles.

- Pull only ONE case at a time and process all newly assigned cases before signing out for the day.

- Reach out to SMEs in the Teams channel assigned to your group when you are unsure how to proceed with a case. If you don't receive an immediate response, place the case(s) in a folder and get another case to review while you wait.

12

For Internal Use Only/Not for Public Distribution     FRP-FRN-01656

- o   VER Staff Reviewer Discussion – for Verification Division staff
- o   USCIS Detailee Reviewer Discussion – for USCIS detailees

# 3.0 Review Security Check and Banners in ELIS Case

## 3.1 Review Security Check

When a Supporter completes an application in ELIS, biographic security checks will be performed automatically on the Supporter.  If biographic security checks result in a TECS hit, the Form I-134A will be taken out of the queue, and SCOPS BCU (Texas Service Center Background Check Unit) will prepare a resolution memo and give a "red light" or resolve the hit before the reviewer reviews the case.

To review the TECS check, go to **"Case"** section, and click the **"Risk & Fraud"** accordion, to see TECS result run by SCOPS BCU.



In this example, the TECS check was conducted and there is no match and you can continue reviewing the case:



If there is a TECS/NCIC Hit, SCOPS BCU will place a "red banner" on the case in the following circumstances:

- Where the supporter is under investigation for, has been arrested for (without disposition), or has been convicted of any Egregious Public Safety (EPS) offenses (see Appendix II);
- Where the supporter is under investigation for, has been arrested for (without disposition), or has been convicted of any specified offense against a minor as defined by the Adam Walsh Act (see Appendix III); and

13

- Where the supporter is the subject of a protected person order, is under investigation for, has been arrested for (without disposition), or has been convicted of domestic violence, has been arrested for (without disposition), or has been convicted of sexual assault, or is under investigation for, has been arrested for (without disposition), or has been convicted of immigration fraud or passport or identity theft (not applicable for individuals who have had a passport lost or stolen).
- If FDNS otherwise determines in reviewing the TECS hit that the supporter poses a significant national security or public safety risk, they will issue a "red banner".

If a case falls into your queue that may have been bundled with related cases, and under the Task Tab workflow status states: "Backend TECS Review, Review Backend TECS Hit Check", unassign that case as it needs to complete the TECS Review prior to processing.

If you pull a case that has related cases with mixed TECS banners (green/red), place a comment in your assigned chat with the IOE#s and do not process until you receive a response.

## 3.2 Review Banners

### 3.2.1 TECS Results Affect Eligibility

A TECS check with a "red banner" will look like this example, with the "TECS Results affect eligibility" message:



If you see this banner, keep the case and all related cases open, add the case information to the Case Tracker, select "Red TECS Banner" as the primary reason, and keep the case(s) in a folder in your queue.  These cases will disappear from your queue when a SME pulls the case(s) for review.

### 3.2.2 Cases Placed on Hold for Other Reason

If you see the below banner, keep the affected case and all associated cases in a folder even if only one or some of the associated cases have this banner.



Reviewers may receive assigned cases that do not contain this banner, but the ELIS account shows associated cases are

14

on hold, as displayed in the view below:



If you see this scenario, add the assigned case(s) in your queue to the Case Tracker, select "FDNS Hold" as the primary reason, and keep the case(s) in a folder in your queue.  These cases will disappear from your queue when a SME pulls the case(s) for review.

### 3.2.3 Record of Action (ROA) Attached Warning

If the case has a Record of Action (ROA) attached, you will see a yellow banner when you open the case.  If you see this, add the case to the Case Tracker in Teams, select ROA as the Primary Reason, and place the case in a folder.  A SME will pull the case from your queue to review.  See below example of the ROA banner:



### 3.2.4 Duplicate Case Alert

If the supporter submitted another case for the same beneficiary under the same ELIS account, ELIS displays a banner like this when you open the case.



If you see this banner, you must follow instructions under 5.0 Duplicate Case Review in ELIS.

### 3.2.5 Number of Beneficiaries
A supporter filing more than ten (10) Form I-134A, including duplicates, will result in a one-time automatic referral to FDNS for additional vetting. ELIS automatically refers to FDNS the eleventh (11th) Form I-134A filed by a supporter and suspends case review on other open Form I-134A associated with the same supporter.  When the FDNS Immigration Officer completes review, a Record of Action will be uploaded to the ELIS file for the QA/SME team to review.  See below example:

15



### 3.2.6 Protected Information Banners

DHS systems display a protected information banner to remind staff certain individuals hold protected status.  The warning for 8 U.S.C. § 1367 ("1367") is the confidentiality statute that applies to VAWA relief, Trafficking Victims nonimmigrants ("T visas") and U Victims of Crimes, nonimmigrants ("U visas").  The warning for individuals protected under 8 CFR 208.6 reminds that we are prohibited from disclosing information pertaining to asylum and refugee applications to third parties.

While we are charged with protecting personally identifiable information (PII) for all we serve, these banners are a reminder we must adhere to a special protected status for these individuals.  Reviewers may continue reviewing the I-134A if they see one or more of the below banners.







## 4.0 Check Number of Beneficiaries in ELIS

For Internal Use Only/Not for Public Distribution        FRP-FRN-01660

Locate the Alien Number and ELIS Account Number in the case number tab. This tab label only displays the case/receipt number. If the case number tab displays an Alien Number, click that hyperlink to view the supporter's ELIS accounts and cases associated with this Alien Number.



Click the Account Number hyperlink to view all I-134As submitted by this supporter. If there are multiple Account Numbers, you must open them all to search for the total number submitted and check to see if there are duplicate submissions for the case you are reviewing.



This is what the ELIS Account Number tab looks like:



Scroll to the bottom of the ELIS Account Number tab to locate the cases associated with this supporter.



17

Make a note of the total number of I-134As for this supporter, as you will need this information when determining if the supporter submitted sufficient financial evidence.

Sort the Beneficiary Name column in alphabetical order and search for duplicates. Look for your current assigned case number in the Receipt Number column, then locate beneficiary's name associated with this case. If there is a duplicate case for this beneficiary, follow instructions in the 5.0 Duplicate Case Review in ELIS section.

Tips for navigating case information:

- Click the light gray up & down arrows to sort any column header in ascending or descending order.
- Click the Receipt Number to open any associated case listed in this section.
- If there are more than 10 associated cases (may be other than I-134As), click the right facing arrow next to "Rows per page:  10" on the bottom right side of your screen.  If there are 10 or fewer associated cases, the arrow will be grayed out and inaccessible.
- Pay attention to the Submitted Date and Case Status when working a duplicate case.

## 5.0 Duplicate Case Review in ELIS

Supporters may submit additional I-134s for the same beneficiary for various reasons:

- They need to update key beneficiary information (name spelling, date of birth, passport number and/or expiration date, email address);
- The beneficiary's travel authorization expired from the previous case;
- Reviewer was unable to render confirmation on the initial I-134A;
- Sometimes supporters submit a 2nd I-134 because significant time has passed, and they think the first case didn't go through.

When the supporter submitted more than one I-134A for the same beneficiary under the same ELIS account number, ELIS provides the Duplicate Case Alert banner shown in 3.2.4 Duplicate Case Alert.  However, ELIS will not display this banner if the supporter submitted the second I-134A using a different ELIS account number.  Reviewers must search all available data and related ELIS Accounts to determine if there are multiple I-134s for the same beneficiary.

Reviewers may refer to Appendix V – Duplicate Case Process Map and the below tips for how to proceed when they determine there are duplicate I-134As for the same beneficiary:

| Scenario | Selection | Reason |
|---|---|---|
| You have more than one case from the same supporter for the same beneficiary in your queue that has not been rendered a decision and meets confirmation criteria. | Render the confirmation on the most recently filed case, then select Administratively Closed for the oldest case. Case Acceptance in the Task or History will show date and time of submission. | The case most recently submitted may have edited info for next phase of processing such as Name, DOB, passport number, passport expiration, passport country, or email address. |

18

For Internal Use Only/Not for Public Distribution        FRP-FRN-01662

| You have one case that you would confirm and see an unassigned duplicate for the same supporter and beneficiary. | Assign the unassigned case to yourself and render confirmation on the most recently filed case.  Select Administratively Closed for the oldest case. Case Acceptance in the Task or History will show date and time of submission. | The case most recently submitted may have edited info for next phase of processing such as Name, DOB, passport number, passport expiration, passport country, or email address. |
|---|---|---|
| You have one case that you would confirm and see an assigned duplicate for the same supporter and beneficiary with another reviewer. | If your case is the most recent render the confirm and notify the other reviewer.  If your case is the oldest, do not Select Administratively Closed until the other reviewer renders the confirmation on their receipt. | The case most recently submitted may have edited info for next phase of processing such as email address.  Admin close only after most recent has been confirmed to not confuse supporter notices. |
| You have a case to confirm that has an exact duplicate resolved by another reviewer as confirm. | Select Administratively Closed if Exact Duplicate. | Make sure it is an exact duplicate with no changes to name, dob, passport number, passport expiration, passport country, email address, or expired Travel Authorization. |
| Duplicate case in queue, assigned, or already worked that is a non-confirm and you have the associated duplicate case from the same supporter that still is non-confirm. | Select Non-confirm. | Supporter can submit for reconsideration multiple times. |
| Duplicate case in queue, assigned, or already worked that is a non-confirm and you have another case that now meets confirmation. | Select Confirm. | Supporter can submit for reconsideration multiple times. |
| Any scenario that has a duplicate that does not meet confirm criteria on the open case. | Select Non-confirm. | We should not confirm a case that does not meet confirmation criteria. We do not select Admin close on any case that is a non-confirmation. |

## 5.1 Compare Beneficiary Data

If you determine the supporter submitted more than one case for this beneficiary under the same ELIS account, you will see the duplicate cases under the Associated Cases section at the bottom of the ELIS Account Number tab. Locate the receipt number for the duplicate case (not the case currently in your queue) and click the Receipt Number hyperlink to open and view the duplicate case.  This will open the receipt number (IOEXXXXXXXXX) tab where you may review case details and beneficiary information.

Click on Case Details to view case details and beneficiary information.

19



Scroll down and click Beneficiary Account to view beneficiary information.



Capture a screenshot of the Beneficiary Account section and compare this with the beneficiary information in the Beneficiary Account section of your assigned case.  If the five highlighted data points are an exact match (**Name, Date of Birth, Passport Number, Passport Expiration Date, and Email Address**), then your assigned case is a true duplicate, and you will proceed to the next section 5.2 Add Beneficiary Alien Number.  If it is not a true duplicate, continue processing as a new case and proceed to section 6.0 Conduct Supporter Review.



If the case is a true duplicate and the initial case was confirmed, administratively close the 2nd case following guidance in 8.3 Render Administratively Closed.  However, before administratively closing the case, ensure the first case was travel authorized.  If travel authorization has not yet expired, proceed to administratively closing the new filing.  If the initial filing was NOT travel authorized OR if the travel authorization expired, continue to process the new case.

If the case is a true duplicate and the initial case is still open and not yet processed with a confirmation decision, confirm the most recently submitted case first, and then render Administratively Closed to the initial case and include a case comment referring to the receipt number of the confirmed case.

20

### 5.2 Add Beneficiary Alien Number

When a supporter submits Form I-134A and does not include an Alien Number for the beneficiary, ELIS automatically assigns the beneficiary an Alien Number when the case is confirmed.  If the supporter submits an additional case for the same beneficiary, reviewers must check to see that the new case includes the beneficiary's previously assigned Alien Number.  If the beneficiary's Alien Number was not included in the additional case, reviewers must manually add it prior to rendering another Confirmation.  Follow the below instructions to locate the beneficiary's Alien Number and issue date, then add them to the additional case.

Copy the Alien Number found in the Beneficiary account section in Case Details tab of the previously confirmed case.



Click the History tab in the previously confirmed case (next to Case Details) and look for the date the beneficiary's Alien Number was issued.



Return to the Beneficiary Account section in the additional case and click Add A-Number.

21

For Internal Use Only/Not for Public Distribution        FRP-FRN-01665



Type or paste the Alien number and start date, then click Save.



## 5.3 Review Case Details from Initial Case

When you confirm you are assigned a duplicate case, you must research the initial case details and try to determine why the supporter submitted a 2nd case. Click Case and check Render Decision to see the decision rendered for the initial case and whether the previous reviewer added comments explaining the decision. If the previous reviewer non-confirmed the case for any reason, you may continue processing and proceed to the next section 6.0 Conduct Supporter Review and continue processing.



If the case was Confirmed, click Notices and Snapshots and look for a Travel Authorization Document.

22

For Internal Use Only/Not for Public Distribution        FRP-FRN-01666



Open the Travel Authorization Document and look for the expiration date. If the travel authorization expired, that is likely why the supporter submitted another case. Notate the date the travel authorization expired. In some instances, travel was not authorized in the previous case. If you encounter either situation, you will add a comment to your current assigned case.



Enter applicable comment in your current assigned case:

- Travel Authorization under IOEXXXXXXXXXX expired on XX/XX/202X
- Travel not authorized under previous case IOEXXXXXXXXXX

# 6.0 Conduct Supporter Review

We must conduct a thorough supporter review to look for various information: More than 10 submitted I-134As, supporter's status, and situations where individuals may be trying to use these programs to circumvent adoption or fiancé application processes. You will search for the supporter's name on the BOLO List and in ELIS to determine if the supporter submitted more than 10 Forms I-134A. You will search PCIS for the supporter's status and possible fiancé and adoption applications.

## 6.1 Search BOLO List in Microsoft Teams

Search for the supporter's name on the BOLO List of Serial Supporters and FDNS Review in the Files Tab of the I-134 – Review Team General Channel:

https://teams.microsoft.com/l/channel/19%3aN59r3yiXn0g4qpExCaocnoNUIgxTvKzBzEyxTPEs1KE1%40t hread.tacv2/General?groupId=be5fc61a-f6b0-45f5-9fa4-b9b21ffc8a81&tenantId=5e41ee74-0d2d-4a72-8975-998ce83205eb

See guidance in 2.2.2.1. Search Supporter on BOLO List of Serial Supporters and FDNS Review.

23

## *6.2 Search Supporter in ELIS*

The name and date of birth displayed in the ELIS account should match the supporter's name and date of birth.  Supporters may not share ELIS accounts.  If you determine the supporter is sharing the ELIS account with one or more individuals, render non-confirmation following guidance in 8.2 Render Non-Confirmation.

Locate your supporter's name and date of birth from the Case Review tab.  If the supporter has an Alien Number, their information will appear in the worksheet portion of this tab.



If there is no Alien Number, you will have to click on Name and Date of Birth under the Financial Supporter Information Section to retrieve this information.  Notate the Name and Date of Birth to use in all supporter searches.



Click the Search tab next to My Cases in ELIS and enter the supporter's last name, first name and date of birth.  Use 01 as the month and 01 as the day in the date of birth range section and the supporter's actual birth year in the **Date of Birth From** box.  Then use 01 as the month, 01 as the day, and the year following the supporter's actual birth year in the **Date of Birth To** box.  If the supporter's date of birth was in the year 1993, you would enter 01/01/1993 in the Date of Birth From box and enter 01/01/1994 in the Date of Birth To box.  Click Search.  ELIS will return every case filed under different Alien Numbers and ELIS account numbers by this supporter.

24



If you discover the supporter submitted 11 or more unique Forms I-134A (not including duplicates) across one or multiple ELIS accounts, you must add this case to the Case Tracker, and select "Possible Serial Support 11+" as the primary reason.

If the supporter's name is not included on the BOLO List, place the case in a folder in your queue and notify Lead John Garside.  Please refer to the latest guidance provided by the Leads.

If the search returns no results, continue processing the case.

### 6.3 Search Supporter in PCIS

Reviewers must search PCIS for the supporter's status and evidence of adoption or fiancé applications. If the supporter has activity with USCIS, the Identity Details page in PCIS will display the supporter's name, biographical data, and Immigration Status.  The information you need to enter depends on whether the supporter has an Alien Number.  See each respective section for guidance on how to search the supporter in PCIS and how to review results.

### 6.3.1 Search Supporter with Alien Number

If the supporter has an Alien Number, enter it in the Identifier Search box and click the blue box with the magnifying glass (or press Enter).  PCIS will return an exact match.  Click View to open the Identity Details page.  PCIS displays the exact criteria you entered in a gray box under the Identifier Search box.



### 6.3.2 Search Supporter with No Alien Number

If the supporter does not have an Alien Number, enter the supporters last name, first name, and exact date of birth in the Advanced Search section and click Search (or press Enter).

25



Alternatively, you may click the drop-down next to Select Identifier and enter any of the unique identifiers available, such as Social Security Number (SSN).  You can find the supporter's SSN in ELIS under Financial Supporter Data in the Other Information field.



## 6.4 Review Results

### 6.4.1 No Results in PCIS

If the supporter has no activity with USCIS, PCIS will display "Your search criteria does not have any exact matches."



Proceed to 7.0 Review Evidence in ELIS.

### 6.4.2 Exact Match in PCIS

The supporter's name and date of birth (DOB) will display at the top of the Summery Tab and the Immigration Status will display in the middle.

26

For Internal Use Only/Not for Public Distribution        FRP-FRN-01670



## 6.4.3 Search PCIS for Approved Lawful Status

If a supporter has lawful status granted by USCIS, PCIS should display the individual's approval in the **Timeline Tab**. Click the Timeline Tab to search for an approval giving them status. PCIS takes about 30 seconds to check multiple systems for updated information. Click the blue circle with the carat next to the yar to view activity for that year. You may need to open all years to locate approved status.



**NOTE:** If you are unable to locate an approved qualifying status in PCIS, contact your SMEs using the designated Teams channel and ask for assistance with confirming status.

- If SME confirms supporter does not have lawful status, issue Non-Confirmation following steps in 8.2 Render Non-Confirmation
- If SME confirms supporter does have lawful status, continue reviewing.

## 6.4.4 Search for Intercountry Adoptions and Petitions for Fiancé

Supporters are allowed to submit I-134A for family members (spouse/fiancé, child, sibling parent), but reviewers must watch for situations where individuals may be trying to circumvent normal application processes for adoption and fiancé petitions.

To ensure individuals are not circumventing intercountry adoption and fiancé petition procedures, reviewers must check

27

the Details Tab in PCIS for the below form types. Check the Form Type column for any of these forms:

- Form I-600
- Form I-600A
- Form I-800
- Form I-800A
- Form I-130 (on the basis of adoption)
- Form I-129F



### 6.4.4.1 Search for Intercountry Adoptions

To ensure individuals are not trying to circumvent the adoption process, you must check to see if the supporter also filed adoption related forms on behalf of the beneficiary.  If PCIS displays any of these forms submitted by the supporter, post a comment in your designated Teams chat and include the Case # (IOEXXXXXXXXXX). A SME will review and refer to FDNS if necessary.

- Form I-600
- Form I-600A
- Form I-800
- Form I-800A
- Form I-130 (on the basis of adoption)

### 6.4.4.2 Search for Petition for Alien Fiancé

To ensure individuals are not circumventing the Fiancé application process, you must check to see if the supporter previously filed three (3) or more Forms I-129F, Petition for Alien Fiancé. If PCIS displays three or more Forms I-129F, you must post a comment in your designated Teams chat and include the Case # (IOEXXXXXXXXXX). A SME will review and refer to FDNS if necessary.

It is ok if the supporter also filed one Form I-130 or I-129F for the same beneficiary.

## 7.0 Review Evidence in ELIS

Return to Case Review Tab in ELIS and click **Open Evidence**.  ELIS will open the Digital Evidence Viewer in a new browser where you may review all evidence submitted by the supporter.  Click the drop-down arrow next to the document title to view available documents.  Click the drop-down arrow in the Page to toggle between pages.  The Form I-134A should be the first document you see.

28

For Internal Use Only/Not for Public Distribution        FRP-FRN-01672



If evidence is blurry or illegible, try viewing the evidence in raw file to see if you can get a clearer image. Click Evidence and RFE in the Case Review Tab, locate the document you wish to view and click Raw File.



If the raw file is still blurry or illegible, reviewers may need to issue a Request for Evidence (RFE), following guidance in 7.4 Request for Evidence (RFE).

**Note**: When you have a case where the supporter is filing for multiple beneficiaries and does not upload sufficient evidence/documents/proof of status for one case, but did include it in the other cases, you can confirm the one that lacks it, but must add a comment in the case that lacks the evidence referencing to the IOE# that contains the evidence.

## 7.1 Review I-134A

USCIS updated Form I-134A multiple times since we began supporting these parole programs. Depending on when the form was submitted, you may see variances in the format. Forms submitted after 7/13/2023 will include a text box response reviewers must consider when reviewing the case.

Here are the key elements you will look for when reviewing Form I-134A:

- Did the supporter provide sufficient responses to questions 27-29 (or 28-30 in the 07/13/2023 form)?
- Did the supporter sign the form?
- Did the supporter provide a sufficient statement in the text box question (Forms submitted 7/13/2023 or later)?
- Did the Supporter provide additional information requesting we update Beneficiary's information (DOB/Passport #/Expiration date/Email), please update it under the Beneficiary Account.

Some portions of I-134A are not required for our financial review:

29

- Beneficiary's Anticipated Length of Stay is not required.
- Beneficiary's Financial Information is not required.
- Beneficiary signature and proof of status or photo ID are not required.

See the following sections for guidance on each element.

### 7.1.1 Responses to Questions

Reviewers must review the responses on page 8 of Form I-134 and determine whether the response is sufficient. Supporters must provide an affirmative response to questions 27-29 (28-30 for forms submitted 7/13/2023 or later), based on the following:

- Responses must be in English.  If not in English – issue non-confirmation according to guidance in 8.2 Render Non-Confirmation.
- Responses don't have to be lengthy, but "Yes" is not an acceptable response.  We're looking to see that the supporter responds affirmatively to accepting financial responsibility and assisting the beneficiary in their basic needs. If supporter responds only "Yes" under Intent to Provide Specific Contributions to the Beneficiary, reviewers will issue a non-confirmation.
    - The supporter's response does not have to specifically state "learn English" or "get a job" but needs to be an affirmative response.
    - If supporter responds only "Yes" to one of the questions, but affirms intent to support in other responses, ok to continue processing.  We're looking for the overall intent to support.
    - See below examples of Acceptable and Non-Acceptable responses:

| ACCEPTABLE | NOT ACCEPTABLE |
|---|---|
| • Yes, I have the resources to support (or some variation) <br> • I will support the beneficiary (or some variation) | • "Yes" to all 3 questions <br> • "Fine" to all 3 questions <br> • "Yes, I will" <br> • "Okay" |

- If the supporter references or alludes to a "host" (an unknown/unidentified 3rd party), but does not identify the host's name and doesn't provide a signed letter of intent from that individual, render non-confirmation following guidance under 8.2 Render Non-Confirmation. See below example.

> The host is the husband and father of this family. He has confirmed that he will provide financial support for as long as needed. Here is his name and contact information. They will live in

- If the supporter names a host and includes a signed letter from that person saying they agree to hosting, you may continue to process.
- If the supporter states the beneficiary will live elsewhere other than with the supporter, that is ok to process, no requirement for beneficiary to live with supporter.

30

For Internal Use Only/Not for Public Distribution        FRP-FRN-01674

### 7.1.2 Supporter Signature

Locate the supporter's signature block on page 11 of Form I-134A.  If supporter digitally signed the form, continue to process.  If supporter did not sign the form, issue a non-confirmation according to guidance in 8.2 Render Non-Confirmation.

Examples of acceptable signatures may include:

- The supporter's full name,
- The supporter's initials,
- An "X", and
- Two signatures are acceptable, but one signature must belong to the financial supporter.

### 7.1.3 Text Box Response

Forms I-134A submitted on 7/13/2023 or later will include a text box response in Part 2., Question 4. The text box response applies only to CHNV cases and is used to determine whether we will prioritize these cases for processing.  The text box response does not apply to UKR cases and reviewers should continue processing UKR cases following all other guidance.

When reviewing CHNV I-134A cases, it is best to review in this order:

1. Status eligibility of supporter

2. Responses to Questions 28-30 are sufficient based on current guidance

3. Supporter signed the application

4. Financial eligibility of supporter

5. Text Box response is sufficient according to below guidance

If numbers 1-4 are sufficient to render the case confirmable, then move to number 5 to determine if the response in the Text Box question is sufficient to prioritize and process.

- If the response to the Text Box question is sufficient, then confirm the case.

- If the response to the Text Box question is not sufficient according to below guidance, place the case on hold as shown below and do not confirm the case.

- If numbers 1-4 would render the case non-confirmable, reviewers do not need to consider the Text Box response and should either issue the non-confirmation or add the case to the Case Tracker and keep the case in a folder, based on current guidance for the issue determining ineligibility.

#### 7.1.3.1 Required Elements for Text Box Response

Reviewers should look for these elements in the Text Box response:

- Does the response demonstrate the need for pressing or immediate action or attention?
- Does the response demonstrate a concern for the beneficiary's welfare?
- Does the response demonstrate that parole would be helpful to a community or population?

Example of response in text box:

31

4. A grant of parole is a discretionary determination granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit. Please explain why a favorable exercise of discretion is merited for this individual.

```
MY GRAND FATHER IS AN OLD PERSON, WITH SOME MEDICAL CONDITIONS. OSTEOARTHRITIS, DIABETES
AND HYPERTENTION ARE SOME OF THEM. IN CUBA HE DOES NOT HAVE THE MEDICAL ASSISTANT NEEDS
AND MEDICATION FOR ALL THIS DISEASESTHE ACTUAL CONDITIONS IN CUBA ARE TERRIBLE, HE HAS TO
SPEND ALL DAY IN LINES TO BUY SOME FOOD AND MEDICATIONS, HE LIVES ALONG AND DOES NOT HAVE
ANY OTHER FAMILY MEMBER WHO CAN TAKE CARE OF HIMHE TRAVEL TO MEXICO TO INTENT ARRIVE AT
```

Reviewers must consider whether the response references any of the following:

- General civil strife or political unrest;
- Rejoining with family;
- Medical needs or treatment;
- Vulnerabilities of either the beneficiary or a US-based person, including the need to provide caregiving assistance;
- Severe economic hardship

If any of these elements are present in the supporter's response, continue processing the case.

If none of these elements are present, but the supporter otherwise meets all criteria for status and financial evidence, put the case on hold following the below steps.

**7.1.3.2 Place Case on Hold for Insufficient Text Box Response**

Reviewers should follow these steps to place the case on hold due to insufficient Text Box response:

1. Click "Put Case on hold" in ELIS (top right when receipt is in case view)



2. Add case comment when prompted in pop-up window: "*Eligible for Confirmation, being held for lack of prioritization.*"
3. Add case to Case Tracker with Primary Reason as Text Box and keep the case in a folder in your queue.

## *7.1.4 Additional Information – Update Needed*

If the supporter submitted an Additional Information supplement to Form I-134A, stating the beneficiary's DOB/Passport #/Expiration date/Email information should be updated, the reviewer may update the information in the Beneficiary Account.  Additionally, supporters sometimes mistakenly enter incorrect information for the beneficiary.  Reviewers should look for documents in evidence supporting the need to update beneficiary data.

When reviewers update the name and DOB, ELIS will automatically initiate another TECS check and could create a task that will hold the case from being able to be rendered.

Reviewers should follow these steps to update beneficiary DOB information in ELIS:

1. Under the Date of Birth section for the Supporter, you may add a new DOB (upper right "+ Add" button)
2. Once added, at the far-right side for the correct DOB, click on the 3 dots
3. A drop down will appear indicating Make Primary or Make Inactive
4. Select Make Primary and the "N" in the Primary column will change to "Y"

32

## 7.2 Review Evidence of Lawful Status

Click the drop-down arrow next to the Document field showing document title and look for an Immigration Status document in the evidence.



If submitted evidence meets criteria described in 1.4.1 Lawful Status, continue processing.

If supporter is a U.S. Citizen and submitted evidence does not meet criteria described in 1.4.1 Lawful status, follow guidance in 7.4 Request for Evidence (RFE).

If the supporter is not a U.S. Citizen, and did not include sufficient evidence of status, look for the individual's status in PCIS Timeline.

- If you locate an approved status in the Timeline, you may add a case comment: "PCIS confirmed status" and continue processing.
- If you are unable to locate an approved status in the Timeline, reach out to a SME in your designated chat and ask them to confirm status (include IOE#).
  - o If SME confirms supporter does not have status, issue Non-Confirmation following steps in 8.2 Render Non-confirmation.
  - o If SME confirms supporter does have lawful status, continue processing.

If the response to the RFE demonstrates the individual holds lawful status or has been paroled into the United States or granted deferred action or DED as of the date the response is received/reviewed, we will consider the Supporter to have met this requirement.

## 7.3 Review Financial Evidence

Reviewers must determine whether the income/liquid assets/outside support evidenced in the Form I-134A and supporting evidence meet at least 100% of the HHS Poverty Guidelines based on the number of persons in the family/household.  The number of persons in the family/household includes the supporter, any dependents, any beneficiaries already confirmed, and the beneficiary on whose behalf Form I-134A is being filed. The supporter should demonstrate that they are able to "receive, maintain, and support" the Beneficiary listed on the Form I-134A for two years (the anticipated period of parole).

- Regardless of the information submitted into the form fields, the supporting documentation should demonstrate that the supporter has income/liquid assets/outside support to meet at least 100% of the poverty guideline threshold for the supporter's household size.
- The 2023 HHS poverty guidelines are located at: https://aspe.hhs.gov/topics/poverty-

33

economic- mobility/poverty-guidelines, or see Appendix IV – Health and Human Services – 2023 Federal Poverty Guidelines

- Reviewers are to assume reported income will continue at the same rate for subsequent years, and household size will be static.  If there is insufficient income to meet the poverty guidelines threshold, we assume liquid assets would be spent over the course of the period of support.

Staff will assess income, liquid assets, and any commitments of support from outside organizations or additional individual supporters to determine in the totality of the circumstances whether the supporter is able to financially support the beneficiary for the duration of parole.  Totality of supporter's financial evidence must meet criteria outlined in 1.4.2 Sufficient Financial Evidence.

## 7.3.1 Tips for Reviewing Financial Evidence:

- If the supporter failed to upload sufficient financial evidence in one case but they did upload sufficient financial evidence with a related I-134A for another beneficiary, reviewer may use the evidence from the related case to continue processing.
- Form 1040 and/or 1040 Tax Transcripts are not required, if there is other financial evidence present that meets specified criteria.
- If AGI from the supporter's Form 1040 taxes (usually line 11) or 1040 Tax Transcript, shows sufficient financial funds to support beneficiary(s) (unless they hit the 11+ limit), plus themselves and number of others living in household, case is ok to confirm, no need to look at all other financial documents provided.
- If the AGI is insufficient to meet guidelines or in some cases a negative dollar amount, but there is other evidence such as an employment validation letter, bank account balances, W2's etc. that do meet the guidelines – continue to process the case.
- If Part 3. Information about the Individual Agreeing to Financially Support Beneficiary Named in Part 2. question 20 (Q-19), Does any of the income listed above come from an illegal activity or source (such as proceeds from illegal gambling or illegal drug sales)? is marked "Yes", please non-confirm, and use the following comment: Non-Confirm, cannot use financial support from illegal activity or sources.
- If Part 3. Information about the Individual Agreeing to Financially Support Beneficiary Named in Part 2. Question 22 (Q-21), Does any of the income listed above come from means-tested public benefits as defined in 8 CFR 213a.1? is marked "Yes", please non-confirm, and use the following comment: Non-Confirm, cannot use financial support means-tested public benefits.
- When counting totality of beneficiaries + # in HH, remember to include prior confirmed I-134/I- 134As.
- If there is a co-supporter to assist with the financial support, we do not need to confirm co- supporter's status as long as the person signing the I-134/I-134A has status.
  - Co-supporter needs to be named in the application.
  - Places on application you may find co-supporters information.
    1. Page 4, Part 3. Information About the Individual Agreeing to Financially Support the Beneficiary Named in Part 2, #3. If "Parole Process" selected in Part 1., Item Number 2. Provide the name of the organization, group, or individual that is providing support to the beneficiary with you (if any)

34

2.  Page 7, #19, Income and/or #24, Assets

o  If there is mention of a co-supporter, but they are not named in one of the places above and/or not mentioned at all and financial information is uploaded for someone other than the supporter, unless it's the supporter's spouse, then we cannot use that information as financial evidence.

- We may not include home/vehicle equity when calculating income.
- We are currently awaiting a policy decision on whether we may include Form 1099 as sufficient financial evidence.  If the supporter uploaded a Form 1099 and there is no other sufficient financial evidence present, add the case and all related cases to the Case Tracker with "1099" as the reason and keep the cases in a folder in your queue.

### 7.3.2 Decision Steps:

If financial evidence is sufficient and meets required criteria, and you verified the supporter has lawful status and has not submitted I-134As for 11+ beneficiaries, render Confirmation according to guidance in 8.1 Render Confirmation.

If financial evidence is insufficient and does not meet required criteria, add the case to the Case Tracker for SME review and place the case in a folder.

If question 20 (Q-19 on applications prior to July, 2023), is marked "Yes", render Non-confirmation according to guidance 8.2 Render Non-Confirmation.

If question 22 (Q-21 on applications prior to July, 2023), is marked "Yes", render Non-confirmation according to guidance 8.2 Render Non-Confirmation.

### 7.4 Request for Evidence (RFE)

There are only two instances in which we send RFEs.  Reviewers will add the case to the Case Tracker under the separate tab marked RFE and keep the case in a folder in their queue.

- If the supporter provided no proof of status and you cannot find any evidence of status in our databases (remember native born USC will not be in our databases); and/or
- If the evidence the supporter submits is blurry or illegible.
    o  However, reviewers should first review the raw documents in the Case Review Tab. Reviewers can find the I-134 under Notices and Snapshots and raw files of all supporting documentation under Evidence and RFE.



For Internal Use Only/Not for Public Distribution          FRP-FRN-01679

If you encounter either scenario listed above and add the case to the RFE tab on the tracker, a SME or Team Lead will re-assign the case to their queue and address the RFE.

The following steps apply to the SME or Team Lead who will issue the RFE on the case.

**DO NOT** issue RFE for these scenarios:

- If supporter did not provide their A# or evidence of status, and you confirm they are a USC or have another acceptable status to support after a search in PCIS or other database, you can proceed with the case, no need to update their ELIS account or RFE. Add a case a comment: "Verified status via PCIS".
- If supporter provides no proof of financial support or no supporting documents at all, render Non-Confirmation.  Do not RFE and do not place on tracker.

## 7.4.1 Issue an RFE in ELIS

1. Under "Case Data" in Case Review Tab, click on "Evidence and RFE," you will see the RFE section under Evidence.
2. Click the drop-down under "Select Letter Type" and select "VER Request for Evidence Form I- 134 (84 days)," then under RFE Type, select "Initial".  Click Create.
3. This will launch you into the Enterprise Correspondence Handling Online (ECHO) system.



## 7.4.2 Complete RFE in ECHO

1. Click the plus sign next to the letter corresponding with your Form type.
   a. I-134
      i. VER 001 – No Evidence for Requirement Was Submitted
      ii. VER 002 – Illegible Documents – Legal Status and/or Finances
   b. I-134A
      i. VER 003 – No Evidence for Requirement Was Submitted
      ii. VER 004 – Illegible Documents – Legal Status and/or Finances
2. Click Compose – This opens the draft where you may add supporter and beneficiary names.
3. Click Edit Contact Info.
4. Click the spy glass in the Action column to edit beneficiary contact information.
   a. Replace the name of the sponsor with the name of the beneficiary (No need to remove other information).
   b. Click Save Applicant Beneficiary.
5. Click the green plus sign under Petitioner to add the Supporter's Name.
   a. Enter the supporter's first and last name.
   b. Click Save Petitioner.
   c. Click Close window.
6. Click Build.
7. Click Finalize Letter and Change Letter Date.
8. Click Mark Sent.

36

### 7.4.3 Link Letter in ELIS

1. On the RFE screen where you initiated the RFE, click the drop-down under Actions and select Link Notice.
2. ELIS provides a pop-up window
    a. Check box under Link
    b. Click Link Letter
3. RFE status updates to Issued
4. Place case in a RFE folder

### 7.4.4 Review RFE Response

Check your RFE folder periodically to watch for responses.  When you receive a response to RFE, the case status updates to Awaiting Review.  You may need to look at the evidence again to refresh your memory on why you submitted the RFE.  Review the newly uploaded document in evidence to determine if it satisfies criteria and follow the below steps to mark it as reviewed.

1. Click receipt number to open response.
2. Select RFEID#hyperlink to populate the Response Received for RFE table.
3. Select the checkbox in the Document Reviewed column.
4. Select Mark Reviewed.
5. Select Go.

### 7.4.5 Cancel an RFE in ELIS

There may be instances where you need to cancel an RFE, such as the supporter withdraws their application.  You may only cancel the RFE if the supporter has not yet responded.  Follow the below steps to cancel the RFE in ELIS.

1. Navigate to the RFE page in Case Review Tab.
2. Click drop-down menu under Actions.
3. Select Cancel.
4. Click Go.
5. In the Update Notes pop-up window, enter an explanation in the comment field.
6. Click Save.
7. Click OK to confirm.

### 7.4.6 Process Expired RFE

Supporters have 87 days to respond to a RFE. If the supporter does not respond, the RFE will show expired in your queue. If this occurs, access the RFE under Case Details and update as follows:

1. Select Close - Response Not Received from drop-down menu under Actions.
2. Add a case comment "Issuing Non-Confirmation due to lack of response to RFE." and non- confirm the case.



| RFE | | | | | | | |
|---|---|---|---|---|---|---|---|
| RFE ID# | Type ⬧ | Issued On ⬧ | Response Period ⬧ | Due Date ⬧ | Status ⬧ | RFE Notes ⬧ | Actions ⬧ |
| 181069753 | Initial | 08/10/2022 | 84 Days | 11/02/2022 | Expired | | Close - Response Not Received ⌄  Go |

Showing 1 to 1 of 1 entries

37

# 8.0 Render Decision in ELIS

If you reviewed Form I-134A and submitted evidence, and determined the supporter has lawful status and is financially able to sponsor the beneficiary, you will render a Confirmation in ELIS. Alternatively, if during review you determine the supporter does not have lawful status or did not provide sufficient responses to questions in the I-134A. In this case, you would render a Non-Confirmation.

## *8.1 Render Confirmation*

Scroll to the bottom of the Case Review Tab and click Render Decision. Click the drop-down arrow under Render Decision and select Confirmation. Click Save and Finalization. Double check that you selected the correct decision and click Yes in the pop-up window to confirm your selection.



The case will disappear from your queue.

## *8.2 Render Non-Confirmation*

Reviewers must enter a case comment explaining the reason for issuing a Non-Confirmation. When non-confirming a case, please be mindful that our case comments are subject to FOIA. Reviewer should enter comments using the below language:

- Non-confirm for lack of status.
- Non-confirm for lack of evidence/supporting documents.
- Non-confirm for marking "Yes" to question 20 (Q-19).
- Non-confirm for marking "Yes" to question 22 (Q-21).
- Non-confirm for lack of or insufficient responses to questions #27-29. (#28-30)
- Non-confirm for lack of/insufficient supporter signature on Form I-134A.
- Non-confirm, duplicate case. (use when you have duplicates from different supporters)
- Administratively Close, duplicate filing. (use when you have duplicates from same supporter)
- Supporter asked to withdraw so USCIS non-confirmed the case, without prejudice. (use when you see a letter from the Supporter requesting to withdraw Form I-134/I-34A)

Scroll to the bottom of the Case Review Tab and click the plus sign to add Case Comment. Type the comment, per above guidelines and click Save.

38



Click Render Decision and select Non-Confirmation from the drop-down arrow under Render Decision. Click Save and Finalization.  Double check that you selected the correct decision and click Yes in the pop- up window to confirm your selection.



The case will disappear from your queue.

## 8.3 Render Administratively Closed

Reviewers may determine a case should be administratively closed for various reasons.  Before rendering Administratively Closed on a case, reviewers should first consider the following:

- If you are going to render an Administratively Closed decision, you must ensure there is a previously confirmed case for the same beneficiary.

- See 5.0 Duplicate Case Review in ELIS for reasons to administratively close a case.

Reviewers may render an Administratively Closed decision by following these steps:

- Add a comment explaining why you are rendering Administratively Closed. (See instructions for adding comments under 8.2 Render Non-Confirmation.
    - Example: "True duplicate to IOEXXXXXXXXXX, confirmed on xx/xx/20xx."
- Open the Case Review Tab and click Render Decision, then select Administratively Closed from

39

For Internal Use Only/Not for Public Distribution        FRP-FRN-01683

the drop-down arrow under Render Decision.

- Click Save and Finalization.
- Double check that you selected the correct decision and click Yes in the pop-up window to confirm your selection.



The case will disappear from your queue.

40

# Appendix I(a) – Press Release – President Biden to Announce Uniting for Ukraine, a new Streamlined Process to Welcome Ukrainians Fleeing Russia's Invasion of Ukraine

https://www.dhs.gov/news/2022/04/21/president-biden-announce-uniting-ukraine-new-streamlined-process-welcome-ukrainians

WASHINGTON – Today, the President will announce *Uniting for Ukraine*, a new streamlined process to provide Ukrainian citizens who have fled Russia's unprovoked war of aggression opportunities to come to the United States, fulfilling President Biden's commitment to welcome up to 100,000 Ukrainians and others fleeing Russia's aggression as a result of the ongoing Russia-Ukraine crisis. In addition, the State Department is announcing increased refugee resettlement processing and broadened access to visa processing at consular posts overseas.
This builds on the robust humanitarian assistance the U.S. government is providing to complement the efforts of generous countries throughout Europe who are hosting Ukrainian citizens who have been displaced.

"We are proud to deliver on President Biden's commitment to welcome 100,000 Ukrainians and others fleeing Russian aggression to the United States. The Ukrainian people continue to suffer immense tragedy and loss as a result of Putin's unprovoked and unjustified attack on their country," **said Secretary of Homeland Security Alejandro N. Mayorkas.** "DHS will continue to provide relief to the Ukrainian people, while supporting our European allies who have shouldered so much as the result of Russia's brutal invasion of Ukraine."

"The U.S. Department of State stands with the people of Ukraine," **said Secretary of State Antony J. Blinken.** "We will help deliver on the President's commitment to welcome 100,000 Ukrainian citizens and others forced to flee their homes in Ukraine, and our partnership with the Department of Homeland Security will help us fulfill that commitment."

*Uniting for Ukraine* is a streamlined process for Ukrainian citizens who have been displaced by Russia's aggression to apply for humanitarian parole in the United States. To be eligible, Ukrainians must have been residents in Ukraine as of February 11, 2022, have a sponsor in the United States, complete vaccinations and other public health requirements, and pass rigorous biometric and biographic screening and vetting security checks. Ukrainians approved via this process will be authorized to travel to the United States and be considered for parole, on a case-by-case basis, for a period of up to two years. Once paroled through this process, Ukrainians will be eligible for work authorization.

Beginning on April 25, 2022, U.S.-based individuals and entities can apply to DHS to sponsor Ukrainian citizens who have been displaced by Russia's aggression through the *Uniting for Ukraine* process, which will go live that day on the DHS website. Any U.S. citizen or individual, including representatives of non-government organizations, can supporter Ukrainian applicants. Individuals and organizations seeking to sponsor Ukrainian citizens in the United States will be required to declare their financial support and pass security background checks

41

For Internal Use Only/Not for Public Distribution          FRP-FRN-01685

to protect against exploitation and abuse. The Department of Homeland Security will administer the program. Eligibility requirements will include required vaccinations and other public health requirements, as well as biographic and biometric screening, vetting, and security checks.

The United States strongly encourages Ukrainians seeking refuge in the United States who do not have and are not eligible for a visa to seek entry via *Uniting for Ukraine* from Europe, this will be the safest and most efficient way to pursue temporary refuge in the United States. The U.S. government is working with European partners to ensure Ukrainians can meet the vaccination requirements of *Uniting for Ukraine.*

Ukrainians should not travel to Mexico to pursue entry into the United States. Following the launch of *Uniting for Ukraine*, Ukrainians who present at land U.S. ports of entry without a valid visa or without pre-authorization to travel to the United States through *Uniting for Ukraine* will be denied entry and referred to apply through this program.

In addition to *Uniting for Ukraine*, the United States is announcing a series of measures designed to expand access to existing legal pathways for Ukrainian citizens.

The Department of State will expand U.S. Refugee Admissions Program (USRAP) operations in Europe to provide eligible Ukrainians with greater access to refugee resettlement processing under the Lautenberg program, while also expanding referral mechanisms for Ukrainians and others fleeing Russia's war in Ukraine who are in need of permanent resettlement.

As part of these efforts, the Department of State will expand U.S. resettlement operations in Europe to provide more resources to process Ukrainian citizens for refugee resettlement under the Lautenberg program, and will expand referral mechanisms for Ukrainian citizens and others fleeing Russia's war against Ukraine to the U.S. Refugee Admissions Program (USRAP). To do so, the United States is working with European partners, the UN High Commissioner for Refugees and NGOs to identify particularly vulnerable Ukrainian citizens and others fleeing the conflict who may warrant permanent resettlement through USRAP. These particularly vulnerable populations include women and girls, children, older persons with special needs, members of ethnic and religious minority groups, LGBTQI+ persons, persons with disabilities, medically fragile individuals, and stateless persons.

In addition, European embassies and consulates are increasing, to the extent possible, the number of nonimmigrant visa appointments and ensuring there is an expedited visa appointment program for individuals with humanitarian, medical, or other extraordinary circumstances to get priority access.

The Biden-Harris Administration remains committed to supporting the people of Ukraine and continues to closely coordinate our efforts with our European allies and partners who are on the frontlines of aiding Ukrainian citizens forced to flee due to Russian aggression. The United States has contributed nearly $300 million in humanitarian assistance to provide displaced Ukrainians with food, safe drinking water, shelter, and winterization services, and will continue to serve as a global leader in the international humanitarian response. The United

42

For Internal Use Only/Not for Public Distribution        FRP-FRN-01686

States is prepared to provide more than $1 billion in new funding toward humanitarian assistance for those affected by Russia's war in Ukraine and its severe impacts around the world.

###

43

For Internal Use Only/Not for Public Distribution     FRP-FRN-01687

# Appendix I(b) – Announcement – DHS Announces New Migration Enforcement Process for Venezuelans

https://www.dhs.gov/news/2022/10/12/dhs-announces-new-migration-enforcement-process-venezuelans

WASHINGTON – Today, as part of the Biden-Harris Administration's ongoing work to build a fair, orderly, and secure immigration system, the Department of Homeland Security (DHS) is announcing joint actions with Mexico to reduce the number of people arriving at our Southwest border and create a more orderly and safe process for people fleeing the humanitarian and economic crisis in Venezuela.

Almost four times as many Venezuelans as last year attempted to cross our southern border, placing their lives in the hands of ruthless smuggling organizations. Meanwhile, irregular migration from northern Central America is down by a quarter from the level encountered last year. The actions the United States and Mexico are announcing today are intended to address the most acute irregular migration and help ease pressure on the cities and states receiving these individuals.

Effective immediately, Venezuelans who enter the United States between ports of entry, without authorization, will be returned to Mexico. At the same time, the United States and Mexico are reinforcing their coordinated enforcement operations to target human smuggling organizations and bring them to justice. That campaign will include new migration checkpoints, additional resources and personnel, joint targeting of human smuggling organizations, and expanded information sharing related to transit nodes, hotels, stash houses, and staging locations. The United States is also planning to offer additional security assistance to support regional partners to address the migration challenges in the Darién Gap.

Our comprehensive effort to reduce the irregular migration of Venezuelans also includes a new process to lawfully and safely bring up to 24,000 qualifying Venezuelans into the United States. The United States will not implement this process without Mexico keeping in place its independent but parallel effort to accept the return of Venezuelan nationals who bypass this process and attempt to enter irregularly.

"These actions make clear that there is a lawful and orderly way for Venezuelans to enter the United States, and lawful entry is the only way," **said Secretary of Homeland Security Alejandro N. Mayorkas**. "Those who attempt to cross the southern border of the United States illegally will be returned to Mexico and will be ineligible for this process in the future. Those who follow the lawful process will have the opportunity to travel safely to the United States and become eligible to work here."

This effort is intended to enhance border security by reducing the number of Venezuelans seeking to irregularly enter the United States. It is derived from the success of the Uniting for

44

For Internal Use Only/Not for Public Distribution        FRP-FRN-01688

Ukraine (U4U) program, which decreased flows at the border by creating an orderly process for the entry of Ukrainians fleeing Russia's invasion of Ukraine.

DHS will closely monitor the implementation of this process, and Mexico's independent and parallel efforts, and may consider expanding it in the future.

To be eligible, Venezuelans must:
- have a supporter in the United States who will provide financial and other support;
- pass rigorous biometric and biographic national security and public safety screening and vetting; and
- complete vaccinations and other public health

requirements. Venezuelans are ineligible if they:
- have been ordered removed from the United States in the previous five years;
- have crossed without authorization between ports of entry after the date of announcement;
- have irregularly entered Mexico or Panama after the date of announcement, or are a permanent resident or dual national of any country other than Venezuela, or currently hold refugee status in any country; or
- have not completed vaccinations and other public health

requirements. Venezuelans should not travel to Mexico to pursue entry into the United States.

Venezuelans approved via this process will be authorized on a case-by-case basis to travel to the United States by air directly to an interior port of entry, thus relieving pressure at the border.  Once in the United States, they will be eligible to apply for work authorization.

DHS will administer the process, working with communities and other partners. Any U.S.-based individual with lawful status, including representatives of businesses or other organizations or entities, can support a potential beneficiary from Venezuela. A supporter must prove that they have the means to provide financial and other support for the beneficiary. In the coming days, potential supporters can apply to DHS to support individual eligible Venezuelans via [www.uscis.gov/Venezuela](www.uscis.gov/Venezuela). Individuals and representatives of organizations seeking to apply as a supporter must declare the organization's financial support and they must pass security background checks to protect against exploitation and abuse.

The State Department will also engage in a robust in-region messaging campaign to communicate about this new process and the consequences of attempting irregular entry.

More information will be available at [www.uscis.gov/Venezuela](www.uscis.gov/Venezuela) in the coming days.

Today's actions are part of the Biden-Harris Administration's ongoing efforts to reduce irregular migration throughout the Western Hemisphere, including through the U.S. Strategy for Addressing the Root Causes of Migration and the multinational Los Angeles Declaration on Migration and Protection. The process announced today is one more element of the United States' multilateral approach to addressing irregular migration that is impacting countries

For Internal Use Only/Not for Public Distribution        FRP-FRN-01689

throughout Latin America, and it is premised on pairing increased enforcement in response to irregular immigration with the development of lawful and safe pathways for qualifying individuals.

Venezuelans have been migrating throughout the hemisphere since approximately 2014, yet the level of irregular migration of Venezuelans has increased dramatically throughout the hemisphere in the past several years. There are currently 2.4 million Venezuelans residing in Colombia. More than 25% of Venezuela's population has left the country.  The United States is seeing a rising rate of Venezuelans encountered at our border over the past two years, which has surged in the last few months. Average monthly unique encounters of Venezuelan nationals at the land border totaled 15,494 in FY 2022, rising further to over 25,000 in August and 33,000 in September, compared to a monthly average of 127 unique encounters from FY 2014–
2019.  Of note, unique encounters of Venezuelan nationals rose 293 percent between FY 2021 and FY 2022, while unique encounters of all other nationalities combined increased 45 percent. Panama is currently seeing more than 3,000 people, mostly Venezuelan nationals, crossing into its territory from Colombia via the Darién jungle each day.

The United States, in partnership with Mexico, also is committing to further expanding lawful labor pathways for Mexican and Northern Central American nationals. This last year, the United States doubled the number of H-2 visas issued to nationals of the Northern Central American countries of Guatemala, Honduras, and El Salvador. Today, we are announcing the largest H-2B supplemental in history for Fiscal Year 2023: nearly 65,000 new H-2B visas, including a set-aside of 20,000 to nationals of Northern Central American countries and Haiti. Historically, approximately 90% of these visas have been used by Mexican nationals.  This increase is coupled with strong measures to protect both U.S. and H-2B workers. Concurrent with this announcement, the Biden-Harris Administration is launching a White House-led Worker Protection Task Force to ensure ethical recruitment and dignified labor standards for foreign workers alongside protections for U.S. workers.

The United States also is renewing its commitment to tackle the root causes of migration and support countries in the region that are most impacted by these flows. For that reason, the United States has announced nearly $817 million in new assistance since September 2022 under the Los Angeles Declaration on Migration and Protection. This includes more than $240 million in new regional humanitarian and security assistance, $376 million in additional humanitarian assistance for people affected by the Venezuela regional crisis, and more than $199 million in additional humanitarian assistance for Mexico and Central America.

###

For Internal Use Only/Not for Public Distribution      FRP-FRN-01690

## Appendix I(c) – Announcement – DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes

https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and

WASHINGTON – The Department of Homeland Security (DHS) continues to prepare for the end of the Title 42 public health order, which is currently the subject of multiple court orders, and a return to processing all noncitizens under the Department's Title 8 immigration authorities. To that end, DHS today announced new border enforcement measures to improve border security, limit irregular migration, and create additional safe and orderly processes for people fleeing humanitarian crises to lawfully come to the United States. These measures, taken together, are concrete steps to enhance the security of our border while the Title 42 public health order is in place, and that DHS will continue to build on in preparation for the Title 42 order being lifted.

- DHS is establishing new parole processes for Cubans, Haitians, and Nicaraguans, modeled on the successful processes for Venezuelans and Ukrainians, which combine safe, orderly, and lawful pathways to the United States, including authorization to work, with significant consequences for those who fail to use those pathways. We are also continuing the process with respect to Venezuelans.

- Through the CBP One app, we are also providing a new mechanism for noncitizens to schedule appointments to present themselves at ports of entry, facilitating safe and orderly arrivals. Initially this will be used for those seeking an exception from the Title 42 public health order. Once the Title 42 order is no longer in place, CBP One will be used to help ensure safe and orderly processing at ports of entry.

- DHS is increasing and enhancing the use of expedited removal under Title 8 authorities for those who cannot be processed under the Title 42 public health order. These efforts include surging personnel and resources and enrolling individuals under the asylum processing interim final rule published in March 2022.

- As a complement to these efforts, and in response to the unprecedented surge in migration across the hemisphere and to reduce encounters at our border, DHS and the Department of Justice (DOJ) intend to shortly issue a proposed rule that will, subject to public comment, incentivize the use of the new and existing lawful processes available in the Unites States and partner nations, and place certain conditions on asylum eligibility for those who fail to do so.

DHS will continue to monitor developments on the southwest border and will accelerate or implement additional measures, as needed, consistent with applicable court orders.

47

For Internal Use Only/Not for Public Distribution          FRP-FRN-01691

"We can provide humanitarian relief consistent with our values, cut out vicious smuggling organizations, and enforce our laws," said **Secretary Alejandro N. Mayorkas**. "Individuals without a legal basis to remain in the United States will be subject to prompt expulsion or removal. Individuals who are provided a safe, orderly, and lawful path to the United States are less likely to risk their lives traversing thousands of miles in the hands of ruthless smugglers, only to arrive at our southern border and face the legal consequences of unlawful entry."

As required by a combination of the Supreme Court's December 27 order and a separate district court injunction prohibiting the implementation of the CDC termination of the Title 42 public health order, the Title 42 order remains in effect, and individuals who attempt to enter the United States without authorization will continue to be expelled.

### Country-Specific Enforcement Processes

Building upon the success of Uniting for Ukraine and the process for Venezuelans announced in October – which combine a safe and lawful pathway with a consequence for failing to use that pathway – today's announcement establishes similar processes for Cuban, Haitian, and Nicaraguan nationals who face unique challenges in their home countries. The Venezuelan process also will continue; Border Patrol saw a dramatic drop – 90 percent – in the number of Venezuelans encountered at the border following the establishment of the program in October. Nationals from Venezuela, Cuba, Haiti, and Nicaragua who do not avail themselves of this process, attempt to enter the United States without authorization, and cannot establish a legal basis to remain will be removed or returned to Mexico, which will accept returns of 30,000 individuals per month who fail to use these new pathways. The expansion of the Venezuela process to Cuba, Haiti, and Nicaragua is contingent on the Government of Mexico's willingness to accept the return or removal of nationals from those countries. It also is responsive to a request from the Government of Mexico to provide additional legal pathways for migrants, and it advances both countries' interests in addressing the effects throughout the hemisphere of deteriorated conditions in these countries.

Specifically, these processes will provide a lawful and streamlined way for qualifying nationals of Cuba, Haiti, Nicaragua, and Venezuela to apply to come to the United States, without having to make the dangerous journey to the border. Through a fully online process, individuals can seek advance authorization to travel to the United States and be considered, on a case-by-case basis, for a temporary grant of parole for up to two years, including employment authorization, provided that they: pass rigorous biometric and biographic national security and public safety screening and vetting; have a supporter in the United States who commits to providing financial and other support; and complete vaccinations and other public health requirements.

Individuals who enter the United States, Mexico, or Panama without authorization following today's announcement will generally be ineligible for these processes. These processes will allow up to 30,000 qualifying nationals per month from all four of these countries to reside

For Internal Use Only/Not for Public Distribution          FRP-FRN-01692

legally in the United States for up to two years and to receive permission to work here, during that period.

Starting tomorrow, potential supporters can apply to DHS to support eligible individuals via www.uscis.gov/CHNV. Individuals and representatives of organizations seeking to apply as supporters must declare their financial support, and they must pass security background checks to protect against exploitation and abuse.

### *Safe and Orderly Processes at Ports of Entry*

To facilitate the safe and orderly arrival of noncitizens seeking an exception from the Title 42 public health order, DHS is expanding use of the free CBP One mobile app for noncitizens to schedule arrival times at ports of entry. Individuals do not need to be at the border to schedule an appointment; expanded access to the app in Central Mexico is designed to discourage noncitizens from congregating near the border in unsafe conditions. Initially, this new scheduling function will allow noncitizens to schedule a time and place to come to a port of entry to seek an exception from the Title 42 public health order for humanitarian reasons based on an individualized assessment of vulnerability. This will replace the current process for individuals seeking exceptions from the Title 42 public health order, which requires noncitizens to submit requests through third party organizations located near the border.

Once the Title 42 public health order is no longer in place, this scheduling mechanism will be available for noncitizens, including those who seek to make asylum claims, to schedule a time to present themselves at a port of entry for inspection and processing, rather than arriving unannounced at a port of entry or attempting to cross in-between ports of entry. Those who use this process will generally be eligible for work authorization during their period of authorized stay.

Individuals who use the CBP One app will be able to schedule an appointment to present themselves at the following ports of entry:

- Arizona: Nogales;
- Texas: Brownsville, Hidalgo, Laredo, Eagle Pass, and El Paso (Paso Del Norte); and
- California: Calexico and San Ysidro (Pedestrian West – El Chaparral).

During their inspection process, noncitizens must verbally attest to their COVID-19 vaccination status and provide, upon request, proof of vaccination against COVID-19 in accordance with Title 19 vaccination requirements.

Individuals will be able to schedule appointments in CBP One in the coming days. The CBP One application is free to download and available in the Apple and Google App Stores as well as at https://www.cbp.gov/about/mobile-apps-directory/cbpone.

For Internal Use Only/Not for Public Distribution          FRP-FRN-01693

*Enhanced Use of Expedited Removal*

We will comply with the court orders that require us to continue enforcing the Title 42 public health order. There are, however, migrants who cannot be expelled pursuant to Title 42 authorities and as a result are processed under Title 8 authorities. For those processed under Title 8, we are increasing and enhancing our use of expedited removal, which allows for the prompt removal of those who do not claim a fear of persecution or torture or are determined not to have a credible fear after an interview with an Asylum Officer, in accordance with established procedures.

This enhanced expedited removal process will include: dedicating additional resources including personnel, transportation, and facilities; optimizing processes across DHS and DOJ; and working with the State Department and countries in the region to increase repatriations. We also will continue to process individuals under the interim final rule published in March 2022 outlining procedures for U.S. Citizenship and Immigration Services to process asylum requests for noncitizens found to have a credible fear. Together, these measures will allow for the prompt removal of those who do not have a legal basis to stay and improve our overall preparedness for when the Title 42 public health order is lifted. Individuals removed under Title 8 are subject to a five-year bar on admission and potential criminal prosecution should they seek to reenter.

*Notice of Proposed Rulemaking*

As a complement to these efforts, and in response to the unprecedented surge in migration across the hemisphere and to reduce encounters at our border, DHS and DOJ intend to issue a proposed rule to provide that individuals who circumvent available, established pathways to lawful migration, and also fail to seek protection in a country through which they traveled on their way to the United States, will be subject to a rebuttable presumption of asylum ineligibility in the United States unless they meet exceptions that will be specified. Individuals who cannot establish a valid claim to protection under the standards set out in the new rule will be subject to prompt removal under Title 8 authorities, which carries a five-year ban on reentry. DHS and DOJ will invite public comment on the proposed rule.

Overall, through today's announcements, DHS is strengthening the availability of legal, orderly pathways to the United States while imposing consequences on those who fail to use pathways made available to them by the United States and its regional partners.

These new measures complement ongoing efforts to increase refugee resettlement from the Western Hemisphere. The U.S. Government intends to welcome at least 20,000 refugees from Latin America and the Caribbean in Fiscal Year 2023 and 2024, putting the United States on pace to more than triple refugee admissions from the Western Hemisphere this Fiscal Year

50

For Internal Use Only/Not for Public Distribution          FRP-FRN-01694

alone. This delivers on the President's commitment under the Los Angeles Declaration for Migration and Protection to scale up refugee admissions from the Western Hemisphere.

Taken together, these efforts will: reduce irregular migration by disincentivizing migrants from taking the dangerous journey to the southwest border of the United States and attempting to cross without authorization; significantly expand lawful pathways to the United States for vetted individuals; and reduce the role for – and profits of – smuggling networks that callously endanger migrants' lives for personal gain.

The Department is taking these measures in light of Congress's failure to pass the comprehensive immigration reform measures President Biden proposed on his first day in office and the economic and political instability around the world that is fueling the highest levels of migration since World War II, including throughout the Western Hemisphere. The surge in global migration is testing many nations' immigration systems, including that of the United States. The actions announced today are part of the Biden-Harris Administration's ongoing commitment to enforce our laws and build a fair, orderly, and humane immigration system, and build on efforts outlined in the Department's December 2022 Update on Southwest Border Security and Preparedness. Today's announcements also show the imperative of partner countries working together, as agreed in the Los Angeles Declaration following the Summit of the Americas, to take action against smugglers and provide protection to asylum seekers. Hemispheric challenges require hemispheric solutions.

Everyone agrees that we are operating within a fundamentally broken immigration system. The steps we are taking reflect the constraints of our outdated statutes, which have not been updated in decades and were designed to address a fundamentally different migratory reality than that which exists today along the southwest border and around the world. As it has since its first day in office, the Biden-Harris Administration continues to call on Congress to pass legislation that strengthens border security, holistically addresses the root causes of migration, and improves legal pathways. We also encourage Congress to provide critical funding and advance bipartisan efforts to create a fair, fast, and functioning asylum system – enabling those who merit protection to quickly receive it, and those who do not to quickly be removed. In the absence of such action, the Administration is committed to pursuing every avenue within its authority to secure our borders, enforce our laws, and stay true to our values as we build safe, orderly, and humane processes.

    ###

For Internal Use Only/Not for Public Distribution          FRP-FRN-01695

# Appendix II – Egregious Public Safety (EPS) Concerns

An **EPS** case is defined by USCIS and ICE in the 2020 Memorandum of Agreement (MOA) Between DHS USCIS and DHS ICE Regarding the Referral of Immigration Benefit Fraud and Public Safety Cases as a case where information indicates the noncitizen is under investigation for, has been arrested for (without disposition), or has been convicted of, any of the following:

a) Murder, rape, or sexual abuse of a minor as defined in section 101(a)(43)(A) of the Immigration and Nationality Act (INA).

b) Illicit trafficking of controlled substances as defined in section 101(a)(43)(B) of the INA.

c) Illicit trafficking in firearms or destructive devices as defined in section 101(a)(43)(C) of the INA.

d) Offenses relating to explosive materials or firearms as defined in section 101(a)(43)(E) of the INA.

e) Crimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA.

f) An offense relating to the demand for, or receipt of, ransom as defined in section 101(a)(43)(H) of the INA.

g) An offense relating to child pornography as defined in section 101(a)(43)(I) of the INA.

h) An offense relating to racketeer influenced corrupt organizations as defined in 101(a)(43)(J) of the INA.

i) An offense relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in section 101(a)(43)(K)(iii) of the INA.

j) An offense relating to alien smuggling as defined in section 101(a)(43)(N) of the INA.

k) An offense relating to an attempt or conspiracy to commit any EPS offense in accordance with 101(a)(43)(U) of the INA.

l) An offense related to Human Rights Violators, including aliens who persecuted others as described in sections 101(a)(42)(B), 212(a)(2)(G), 212(a)(3)(E), 212(a)(3)(G), 212e, 237(a)(4)(D), 237(a)(4)(E), 237(a)(4)(F) of the INA, known or suspected street gang members, or Interpol hits.

m) Re-entry after an order of exclusion, deportation or removal subsequent to a conviction for a felony where Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has not been approved.

For Internal Use Only/Not for Public Distribution        FRP-FRN-01696

# Appendix III – Adam Walsh Act

Under the **Adam Walsh Act**, the term "specified offense against a minor" means an offense against a minor (defined as an individual who has not attained the age of 18 years) that involves any of the following:

- An offense (unless committed by a parent or guardian) involving kidnapping;
- An offense (unless committed by a parent or guardian) involving false imprisonment;
- Solicitation to engage in sexual conduct;
- Use in a sexual performance;
- Solicitation to practice prostitution;
- Video voyeurism as described in 18 USC 1801;
- Possession, production, or distribution of child pornography;
- Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such
- conduct; or
- Any conduct that by its nature is a sex offense against a minor.

For Internal Use Only/Not for Public Distribution        FRP-FRN-01697

# Appendix IV – Health and Human Services – 2023 Federal Poverty Guidelines

*Poverty Guidelines for the District of Columbia and 48 Contiguous States*

| 2023 POVERTY GUIDELINES FOR THE 48 CONTIGUOUS STATES AND THE DISTRICT OF COLUMBIA | |
|---|---|
| Persons in family/household | Poverty guideline |
| 1 | $14,580 |
| 2 | $19,720 |
| 3 | $24,860 |
| 4 | $30,000 |
| 5 | $35,140 |
| 6 | $40,280 |
| 7 | $45,420 |
| 8 | $50,560 |
| For families/households with more than 8 persons, add $5,140 for each additional person. | |

54

For Internal Use Only/Not for Public Distribution    FRP-FRN-01698

*Poverty Guidelines for Alaska*

| 2023 POVERTY GUIDELINES FOR ALASKA | |
| --- | --- |
| **Persons in family/household** | **Poverty guideline** |
| 1 | $18,210 |
| 2 | $24,640 |
| 3 | $31,070 |
| 4 | $37,500 |
| 5 | $43,930 |
| 6 | $50,360 |
| 7 | $56,790 |
| 8 | $63,220 |

For families/households with more than 8 persons, add $6,430 for each additional person.

55

For Internal Use Only/Not for Public Distribution    FRP-FRN-01699

*Poverty Guidelines for Hawaii*

| 2023 POVERTY GUIDELINES FOR HAWAII | |
|---|---|
| **Persons in family/household** | **Poverty guideline** |
| 1 | $16,770 |
| 2 | $22,680 |
| 3 | $28,590 |
| 4 | $34,500 |
| 5 | $40,410 |
| 6 | $46,320 |
| 7 | $52,230 |
| 8 | $58,140 |
| For families/households with more than 8 persons, add $5,910 for each additional person. | |

56

For Internal Use Only/Not for Public Distribution    FRP-FRN-01700

## Appendix V – Duplicate Case Process Map



57

## Appendix VI – TPS Evaluation Process Map



58

## Administrative Issues

o **_Why are there two form – Form I-134 and Form I-134A?  And what does it mean for my review?_**

The Form I-134, Declaration of Financial Support, was utilized by supporters filing for individual beneficiaries for both _Uniting for Ukraine_ and _Process for Venezuelans._  In January 2023, when _Processes for Cuba, Haiti, and Nicaragua_ was announced, USCIS amended the Form I-134 to the Form I-134A, _Online Request to be a Financial Supporter and Declaration of Financial Support_, under the direction of the Office of Information and Regulatory Affairs (OIRA), a Division within the Office of Management and Budget (OMB).

Form I-134A is the only form being used for both _Uniting for Ukraine (U4U) and Processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV)._

o **_What Teams Channel should I post questions to?_**

I-134A Review Team Leads will post updated guidance in the General channel. You may request assistance from subject matter experts (SMEs) in your designated Teams Chat:

- USCIS Detailees should use the USCIS Detailee Reviewers Discussion Channel
- VER Staff should use the VER Staff Reviewer Discussion Channel

o **_Does a Supporter have to file a Form I-134A for every beneficiary including minor children of parents claimed on a Form I-134A?_**

Yes, a Form I-134A needs to be filed for every individual separately; for every individual beneficiary including minor children.

o **_If I catch a mistake, what should I do if I confirmed already?_**

Be careful when selecting Confirmation or Non-confirmation.  But if you make a mistake and select the wrong decision (confirm vs non-confirm), please email your Lead and SC Marianna Paredes with the case information ASAP.

The ELIS team has developed a pop-up to remind you of the decision you are rendering.  The ELIS team has also created a re-assess (re-open) feature that is available to a Level 6 Supervisor.

For Internal Use Only/Not for Public Distribution        FRP-FRN-01703

**Review Process**

o ***Does the lawful Status have to be the front and back of the document?***

No, the evidence can be the front of the document if it provides enough information to confirm the lawful status (example LPR card front) in other USCIS systems.

o ***Can we accept an expired US passport for Lawful Status?***

Yes, we can accept an expired US passport to evidence lawful status (a US Citizen) for the supporter.

o ***Can I render a non-confirmation decision without a QA Review?***

We are only doing a QA review on a financial non-confirmation. If you wish to non-confirm a supporter for lack of financials, please place case receipt number on the Case Tracker on the Form I- 134 Review Team – Teams Page.

However, in the following categories, a decision can be rendered without a QA Review:

- If there is no beneficiary listed on Form I-134, please issue a non-confirmation, you do not need to place that case on the spreadsheet. We have seen some "over eager" folks just wanting to help, but they must name the individual they are helping.

- If a supporter does not submit *any* financial evidence, issue a non-confirmation. If you do not see any tax returns, any bank accounts, any investment accounts, any financials at all, go ahead and issue a non-confirmation. There is no need to submit the case on the spreadsheet.

- If you see a supporter that has an asylum application pending, that is not considered lawful status eligibility to support. We have seen supporters submit evidence of their asylum application pending to be either an asylum application receipt or an Employment Authorization (c)(8). You can render a non-confirmation without QA review.

  o Please note that some asylum applicants may have an underlying non-immigrant visa that allows them to be in lawful status, i.e. TPS, J-1 student visa, F-1 student visa, and/or work related visa. If you have any questions, please submit them in the "Reviewer Discussion" section of the U4U – Verifications Team site.

o ***Can I render a decision if there is an open TECS Task?***

Currently ELIS has corrected the TECS glitch and is not releasing any cases into Case Review unless the TECS check has been run. However, if you have any cases with an open TECS task. Do not assign the TECS task to yourself. It will be assigned automatically to someone in FDNS for review. So, if you have a case with a result and it isn't resolved, just put it aside and wait till the TECS hit is resolved. If you see this green light banner result you can proceed:

60

For Internal Use Only/Not for Public Distribution    FRP-FRN-01704



**Risk and Fraud**

If you see this red light banner result, please place on the tracker for further review for now:



- o ***What do I do if the supporter leaves Part 3, Question 27, Question 28, or Question 29 blank or with a negative response on whether they intend to provide financial support to the Beneficiary?***

  These questions were added to understand the intent of the supporter. If a supporter simply answers "yes" for all three questions, you can non-confirm them. However, if there is a response, you should continue processing.

- o ***What do I do if the Beneficiary does not have a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Passport and/or the Beneficiary is not Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan?***

  If you see a Beneficiary that does not have a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Passport and/or the Beneficiary is not Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan, you should render a decision for the supporter (confirmation or non-confirmation), without it going for QA review. Based upon feedback with CBP, myUSCIS has built in an attestation for the Beneficiary to explain how they may be connected to a Ukrainian/Cuban/Haitian/Nicaraguan/Venezuelan Beneficiary. We are not reviewing the Beneficiary data as CBP will be making that final determination.

- o ***What do I do if I see on the worksheet it says "Applicant is a USC. This case should not be approved."***

  There is a process with the CIS worksheet for US Citizens, it will say "Applicant is a USC. This case should not be approved" or that you have to issue an A number. This is a statement in ELIS and does not affect our review process. Continue to review the case as normal and do ***Not*** issue an A number for a USC.

61



- ***When do I update name and DOB and what happens?***

  When the document or ELIS data clearly shows a supporter made a typo in the Form I-134A application process you can update name and DOB.  This will automatically initiate another TECS check and could create a task that will hold the case from being able to be rendered.  There is a known issue with ELIS where some DOBs may be off by 1 day due to time zone issues.  You *can* update the DOB if the supporter DOB entered on the form does not match the uploaded identity document.

  5. Under the Date of Birth section for the supporter, you can add a new DOB (upper right "+ Add" button
  6. Once added, at the far-right side for the correct DOB, click on the 3 dots
  7. A drop down will appear indicating Make Primary or Make Inactive
  8. Select Make Primary and the "N" in the Primary column will change to "Y"

  We understand that a new TECS check will be re-run if a new DOB is entered into ELIS.  If you have any of these, you may correct the DOB based on the document upload.

- ***Does relationship of beneficiary to supporter matter?***

  No, we have seen the relationship question filled in and we have seen the relationship question to be empty.

- ***What does it mean if my "Case Review - Suspended," in the context of 10+ or more Beneficiaries?***

  ELIS has built in automatic referral to FDNS when a supporter files more than ten (10) I-134/I-134As beneficiary applications.  This automatic referral is triggered automatically when the eleventh application is filed.  The automatic referral for 11 cases also includes any duplicate filings that a supporter may have filed.  Once a referral is made to FDNS, the case will now be listed as "Case Review - Suspended."  Until FDNS releases it or resolves it, a reviewer will be unable to review the case.

  FDNS completes a case by uploading a Record of Action (ROA) for a Tier 2 review before going back to reviewers.  In some cases, the application may be "taken" over by Tier 2 reviewer and finalized.

62

## Financial Questions

o  *When reviewing a supporter tax return do I use adjusted gross income or taxable income?*

You will want to review the supporter's Adjusted Gross Income **NOT** their taxable income.

o  *What should I do if question 20 (Q-19) under Part 3 is marked "Yes"?*

When reviewing Form I-134/I-134A, if question 20 (Q19), Does any of the income listed above come from an illegal activity or source (such as proceeds from illegal gambling or illegal drug sales)? is marked "Yes", please non-confirm, and use the following comment: Non-Confirm, cannot use financial support from illegal activity or sources.

o  *What is considered Federal Means-Tested benefits?*

Income from Means-Tested public benefits, as defined in 8 CFR 213a.1, is excluded from consideration in meeting at least 100% of the HHS poverty guidelines.

This includes public benefit, which is funded in whole or in part by funds provided by the Federal Government and/or State Government.  Some examples we have seen include, but are not limited to, the Federal Child Tax Credit that was administered last Summer, public assistance funds, and/or state assistance funds.

o  *What should I do if question 22 (Q-21) under Part 3 is marked "Yes"?*

When reviewing Form I-134/I-134A, if question 22 (Q-21), Does any of the income listed above come from means-tested public benefits as defined in 8 CFR 213a.1? is marked "Yes", please non-confirm, and use the following comment: Non-Confirm, cannot use financial support means-tested public benefits.

o  *How do I calculate household total members?*

For calculating household total members for the purposes of the Form I-134, you look to see how many dependents is first declared on the Form I-134.  If there is evidence of a Tax Filing, you also look to see how many dependents are declared on the Tax Filing.  It is possible that there is a difference between the two forms as a spouse may not be included on the Form I-134.

Under the totality of the circumstances, look to see what the lowest number of dependents and/or highest income is to better assist the supporter.  Thus, if it helps them calculate a lower number as declared on the Form I-134 and you are only using the supporter's income, then use that information.  However, if you need to pull the spouse's income then you add the spouse as a dependent for household income purposes.

o  *Is a supporter required to provide tax information?*

Tax documentation is not a requirement.  However, the supporter does need to provide evidence to show enough liquid assets to exceed the poverty threshold.

63

# Form I-134A Family Reunification Parole Process ELIS Guide

## Assignment of Work

## A. Get Work

Obtain a case from ELIS by selecting "Get Work" from the ELIS My Cases Dashboard.



You will need to ensure you select "SCOPS" and then under Form Type Select "Form I-134A."



Under Program, select "Legacy CFRP" and then "CUB" under Country. Officers must work cases from this work queue first. If no cases are available under this program type, you will select "FRP." Unless specifically directed by your management to do otherwise, you will make sure "ALL" is selected under Country if you are pulling from the "FRP" program type.



Select the number of cases you wish to pull from the queue you are assigned to work.

**B. Manual A-Number Validation/Issuance**

Please see screenshot below displaying the Manual A-number Validation/Issuance task.



After reviewing the issue, the individual completing the task will update with the appropriate action and complete the task.

FRP-FRN-01709

## C. Background Checks

Under Risk and Fraud, you will verify that TECS checks have been completed. If there is a TECS hit that relates, you will need to review the results from the BCU. If there is a TECS hit that does not relate or there are no TECS hits, you will continue with adjudication. USCIS is only conducting TECS checks on the petitioner/supporter before confirming or non-confirming the Form I-134A. You may need to run TECS checks on additional name and date of birth combinations you encounter for the petitioner/supporter in the supporting evidence if those name and date of birth combinations have not already been checked in connection with the filing. Please see the National Background and Security Checks Operating Procedures (NaBISCOP) for further guidance on TECS checks.

The below screenshot shows how to find the Risk and Fraud section of a specific case within "Case Details" tab under "Case":



## D. Family Packs and Form I-130

To view all other FRP Forms I-134A filed by the petitioner/supporter using the same invitation number, click on "Linked Cases" under the "Case Details" tab. This view will show all Form I-134A filed under the same invitation number, including previously filed cases for the same family members. The family pack will be assigned to the same officer and should be worked at the same time.

FRP-FRN-01710



**Note:** The "Family Pack" view may not display all Form I-134As submitted by the petitioner/supporter. As noted above, it only displays those filings that are tied to the same invitation number. If the petitioner/supporter has received filing invitations on multiple Form I-130s, those cases will not be linked under the "Family Pack" view.

To see <u>all</u> Forms I-134A that have been filed by the petitioner/supporter, you will need to click on the hyperlink for the petitioner/supporter's A-number (if any):



If the petitioner/supporter does not have an A-number, you may need to click on the hyperlink for the petitioner/supporter's ELIS Account Number or conduct a search in ELIS using the individual's name and date of birth:



You may need to add the number of pending and confirmed Forms I-134A filed by the petitioner/supporter to calculate the household size for purposes of determining the amount of income and assets needed to meet 100 percent of the Federal Poverty Guidelines.

Review the associated cases tab in the petitioner/supporter's account to see if the petitioner/supporter has filed other Forms I-134A for this beneficiary that have been non-confirmed. You will need to review any previous Form I-134A filed by the same petitioner/sponsor on behalf of the same beneficiary.

To determine which Form I-134A is marked as the principal beneficiary of a family pack, click on the "Case Details" tab and select "Family" under "Beneficiary Account" for each case.



Where there have been multiple filings for a principal beneficiary (for example, the previous Form I-134A for the principal beneficiary was non-confirmed and the petitioner/supporter has refiled a new Form I-134A for that person), you may need to update the new filing for the

principal beneficiary to mark the current case as the Principal Beneficiary before rendering a decision. You will need to click on the "Beneficiary Account" section, and then open the "Family" accordion. You will want to click "Edit" and then the button "Make Principal Beneficiary."



To view the status of the Form I-130 associated with the Form I-134A, click on "Related Cases" under the "Case Details" tab.



## E. Financial Support

The financial support data can be reviewed by clicking on "Open Evidence" or you can access it in ELIS as shown below when working the Case Review task:



To determine whether there is a co-supporter identified that will be providing financial support for the beneficiary, you can review the form or click on the "Case Details" tab and select "Family" under "Beneficiary Account" for the case.



As a reminder, you must review all the evidence when determining whether the petitioner/supporter has met their burden. Please consult with your supervisor if you plan to non-confirm the case solely for lack of sufficient financial support.

**F. Petitioner/Supporter Statement Regarding Favorable Exercise of Discretion**

To review the supporter's explanation as to the reason(s) the beneficiary warrants a favorable exercise of discretion, click on the "Case Details" tab and select "Family" under "Beneficiary Account."



**G. Final Review**

1. Non-Confirmation Notice

To issue a Non-confirmation Notice, you will need to select "Non-Confirmation" from the drop down under "Render Decision" during Case Review.

FRP-FRN-01715



You will need to check the box(es) for each reason that the Form I-134A needs to be non-confirmed. Once all applicable boxes have been selected, you will click "Save and Finalize."

**Note:** You **must** first render a decision on the principal beneficiary's Form I-134A or you will receive an error message. Additionally, issuance of a Non-confirmation Notice to a principal beneficiary will result in issuance of a Non-confirmation Notice for any derivative beneficiaries associated with that principal beneficiary.

2. Confirmation Notice

To issue a Confirmation Notice, you will need to select "Confirmation" from the drop down under "Render Decision" during Case Review.



**Note:** You **must** first render a decision on the principal beneficiary's Form I-134A or you will receive an error message.

## H. Medical Exam Review

The Medical Exam Review task will trigger once the beneficiary attests that they have completed the modified panel physician immigration medical examination. This is a separate task that will be triggered when you select a case from ELIS by selecting "Get Work" from the ELIS My Cases Dashboard. You will need to ensure you select "SCOPS" and then under Form Type Select "Form I-134A." Under Program, you will select "FRP." Select the number of cases you wish to pull from the "Medical Exam Review" queue.

Once cases have been assigned to you, you may begin case review. From My Cases, select "Actions" next to the case and open case details. From Case Details, go to "Tasks" and select "Pending" from work status. This will bring you to the I-134A Medical Exam Review page.

The eMedical system is found at www/e.medical.immi.gov.au/eMEDUI/eMedical. Access can be obtained by contacting SCOPS-HQADJ through your chain of command. You will need to provide your title, first name, last name, date of birth, and government email address. Users will be suspended from their account if they do not use it for 90 days. If you lose access to your account or forget your password, you will need to email MHINx@cdc.gov. If you are no longer working Form I-134A FRP cases, you or your supervisor will need to notify SCOPS-HQADJ so that your access to the eMedical system is terminated.

You will access the beneficiary's medical results in eMedical using their A-number. Generally, you do not include the leading "A". However, you may need to run the A-number in eMedical

FRP-FRN-01717

with the leading A or include spaces to find the medical exam record (for example, A#########, A### ### ###, or ### ### ###):



Click the box by the beneficiary's name and click "Manage Case."





The results will display with a green pill for "Medically Cleared."



The results will display with a yellow pill for "Medically NOT Cleared."



You will update ELIS with the appropriate selection for the beneficiary and click on the button to complete the task.

If neither of these results appear, the exam is still pending.



If you select "Medically Cleared" or "Medically NOT Cleared" in ELIS, this information will be transmitted to CBP for use in their decision on whether to issue an Advance Travel Authorization (ATA) letter.

1. Exam Still Pending or Unable to Locate Record

If you are unable to locate the beneficiary's information under their A-number or where the medical exam is still pending, you should look at the History tab to see if the case has been updated with "Medical Exam Reviewed-Not Completed" previously:



If the history shows that this is the first time the case is in the queue (the history does not show "Medical Exam Reviewed-Not Completed") or the case has only been updated with "Medical Exam Reviewed-Not Completed" one time, you will select "Medicals Not Completed" in ELIS and click [Hold case for 30 days].



When you select "Medicals Not Completed" in ELIS, the system will generate a notice to the beneficiary to remind them of the medical exam requirements and place the case on hold for 30 days. After 30 days, the case will fall back into the medical exam review queue.

FRP-FRN-01720

Please contact HQSCO through your chain of command if the case history shows that it has been updated as "Medical Exam Reviewed-Not Completed" twice in the past and there are still no medical results in eMedical.

2. <u>Typos in eMedical</u>

Please verify whether the typo is in ELIS or eMedical by reviewing evidence uploaded to the Form I-134A and to eMedical (e.g., passport, birth certificate, marriage certificate, etc.). If the typo is in ELIS, you will need to work with the officer who reviewed the Form I-134A to have ELIS updated. If you encounter an apparent typo in the name or date of birth in the eMedical record, you will need to report that to SCOPS-HQADJ so that they can ask CDC to work with the physician to update the record.

3. <u>eMedical System Outages</u>

Officers with access to eMedical will receive an email from Australia Home Affairs if there is a system outage. If you're experiencing issues with the system, you can contact the help support box within the eMedical system or email CDCQAP@cdc.gov.

**I. Extensions of Advance Travel Authorization and Updates to Biographic Data**

If the beneficiary has requested an extension on their advance travel authorization document as they were unable to travel to the United States prior to their expiration date and you have determined that granting the request is appropriate OR the beneficiary updated their biographic data (name, date of birth, passport information, etc.) *after* the medical task was completed, you will need to see if the data can/should be resent to ADIS.

1. <u>Check Eligibility</u>

Please complete all of the below steps to see if the case is eligible to have the data resent to ADIS.

a. <u>Verify Beneficiary Has Not Entered the United States</u>

Verify that the beneficiary has not already been paroled into the United States. You may need to run add hoc ADIS queries under both "Search By Identification" and "Search by Name and DOB". This can be found under "Beneficiary Travel" in the "Beneficiary Account" accordion in the Case Details Tab:



If no travel events are found or if the travel events are old entries (e.g., a trip in 2010 on a B-2 visa), you can proceed to b. Verify Case Data Has Not Been Resent to ADIS.

However, the case is ineligible for an extension if the beneficiary is currently inside the United States or has already been paroled under the FRP program under the COA of RCO, RCU, RGT, RHN, RHT, RSV, or RED. See below example of the results that show the beneficiary has already been paroled under the FRP program:



You will not resend the data to ADIS where the beneficiary is inside the United States.

FRP-FRN-01722

b. Verify Case Data Has Not Been Resent to ADIS

Verify that the case data was not already resent to ADIS after the date the extension request was resubmitted.



If the case history does not show "Case Data Sent to ADIS" on or after the date of the inquiry, you can proceed to c. Verify Validity of Medical Results. If however, the case data was resubmitted *after* the date of the inquiry, you do not need to take further action as the request has already been processed.

c. Verify Validity of Medical Results

Verify that the beneficiary's medical results are still valid and cleared in eMedical. You will access the beneficiary's medical record in eMedical and look to make sure that the pill reads "Medically Cleared":

FRP-FRN-01723



Continue to scroll to the bottom of the page and select [Print health case]:



Scroll back up to the address bar and click the "Pop-ups were blocked on this page" icon:



You will then click the link that displays in the box that appears:



A new window with the medical records will display. Verify that the "Health Case Expiry" date has not passed as of the day you will be resending the data to ADIS:



If the medical results are still valid **and** cleared, you can proceed to d. Verify Beneficiary Passport Validity. If the medical results are "Medically Not Cleared" or the Health Case Expiry date has passed, you will not resend the data to ADIS.

d. Verify Beneficiary Passport Validity

Verify the beneficiary's passport remains valid in the Case Details tab under the "Beneficiary Account" accordion:

FRP-FRN-01725



If the beneficiary's passport is valid, you may proceed to 2. Resend Data to ELIS. If it has expired, you will NOT resend the data to ADIS.

2. Resend Data to ADIS

If the beneficiary meets all eligibility criteria above, you may resend the data to ADIS. Click the [Resend Beneficiary Data to ADIS] button under "Beneficiary Travel" in the "Beneficiary Account" accordion in the Case Details Tab:



Click [Yes] to confirm the action:



If you are successful, you will see the below green "SUCCESS" message:



You can confirm resubmission by reviewing the History tab, which will show the action of "Case Data Sent to ADIS" under your user name:



FRP-FRN-01727

| Legacy CFRP | |
|---|---|
| Total Benes Invited | 94000 |
| Total I-131 Filings | 21,300 |
| % Applied | 22.66 |

| Legacy HFRP | |
|---|---|
| Total Benes Invited | 23,993 |
| Total I-131 Filings | 10,507 |
| % Applied | 43.79 |

| Legacy Totals | |
|---|---|
| Total Benes Invited | 117993 |
| Total I-131 Filings | 31,807 |
| % Applied | 26.96 |

FRP-FRN-001728