YAAKOV M. ROTH
*Acting Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Email: katherine.j.shinners@usdoj.gov
ELISSA FUDIM
*Trial Attorney*

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ———————————————— ) | Civil Action No. 1:25-cv-10495 |
| Svitlana Doe, *et al.*, ) | |
| ) | |
|        Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Kristi Noem, in her official capacity as ) | |
| Secretary of Homeland Security, *et al.*, ) | |
| ) | |
|        Defendants. ) | |
| ————————————————) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR RECONSIDERATION OR STAY

## <u>TABLE OF CONTENTS</u>

Introduction ................................................................................................................ 1

Standard ................................................................................................................... 2

Argument ................................................................................................................. 3

    I.     The Correction of the Record Warrants Reconsideration and
          Dissolution of the Preliminary Injunction ................................................ 4

    II.    The Court Should Reconsider Other Aspects of Its Analysis ................................ 6

       a.  Section 1252(a)(2)(B)(ii) deprived the Court of jurisdiction ................................ 6

       b.  The Termination is Committed To Agency Discretion ......................................... 10

    III.   Alternatively, the Court Should Stay its Preliminary Injunction ........................... 11

Conclusion ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

Cases

*Amgen Inc. v. Smith*,
357 F.3d 103 (D.C. Cir. 2004) ................................................................................... 9

*Arizona v. United States*,
567 U.S. 387 (2012).................................................................................................. 13

*Associated Fisheries of Maine, Inc. v. Daley*,
127 F.3d 104 (1st Cir. 1997) ...................................................................................... 5

*Bernardo v. Johnson*,
814 F.3d 481 (1st Cir. 2016) ...................................................................................... 7

*Campanale & Sons, Inc. v. Evans*,
311 F.3d 109 (1st Cir. 2002) .................................................................................... 10

*Castaneira v. Noem*,
138 F.4th 540 (D.C. Cir. 2025) .................................................................................. 7

*Cent. Me. Power Co. v. Fed. Energy Regulatory Comm'n*,
252 F.3d 34 (1st Cir.2001) ....................................................................................... 10

*DCH Reg'l Med. Ctr. v. Azar*,
925 F.3d 503 (D.C. Cir. 2019) ................................................................................... 9

*Doe v. McAleenan*,
926 F.3d 910 (7th Cir. 2019)...................................................................................... 8

*Doe v. Noem*,
152 F.4th 272 (1st Cir. 2025) ................................................................................... 10

*DraftKings Inc. v. Hermalyn*,
118 F.4th 416 (1st Cir. 2024) ................................................................................... 13

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
319 F. Supp. 3d 70 (D.D.C. 2018) ............................................................................. 2

*El Conejo Americano of Texas, Inc. v. Dep't of Transp.*,
278 F.3d 17 (D.C. Cir. 2002) ..................................................................................... 6

*Greene v. Union Mut. Life Ins. Co.*,
764 F.2d 19 (1st Cir. 1985) ....................................................................................... 2

*In re Guantanamo Bay Detainee Litig.*,
706 F. Supp. 2d 120 (D.D.C. 2010) ........................................................................... 2

*In re Spenlinhauer,*
  572 B.R. 18 (Bankr. D. Mass. 2017)................................................................ 12

*INS v. Legalization Assistance Project,*
  510 U.S. 1301 (1993)........................................................................................ 14

*Karakenyan v. U.S. Citizenship & Immigr.,*
  468 F. Supp. 3d 50 (D.D.C. 2020) ..................................................................... 8

*Kiobel v. Royal Dutch Petroleum Co.,*
  569 U.S. 108 (2013).......................................................................................... 13

*Kollett v. Harris,*
  619 F.2d 134 (1st Cir. 1980) ............................................................................ 10

*Kreis v. Sec'y of Air Force,*
  866 F.2d 1508 (D.C. Cir. 1989) ....................................................................... 11

*Lincoln v. Vigil,*
  508 U.S. 182 (1993).......................................................................................... 11

*Lukac v. Mayorkas,*
  No. 22-CV-7156, 2023 WL 3918967 (N.D. Ill. June 9, 2023) ............................ 8, 9

*Mantena v. Johnson,*
  809 F.3d 721 (2d Cir. 2015) ............................................................................... 7

*Maryland v. King,*
  567 U.S. 1301 (2012)........................................................................................ 13

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983).............................................................................................. 5

*Nken v. Holder,*
  556 U.S. 418 (2009)..................................................................................... 11, 13

*Nouritajer v. Jaddou,*
  18 F.4th 85 (2d Cir. 2021) .................................................................................. 7

*Ottey v. Barr,*
  965 F.3d 84 (2d Cir. 2020) ................................................................................. 7

*Ovist v. Unum Life Ins. Co. of Am.,*
  14 F.4th 106 (1st Cir. 2021) ............................................................................... 5

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,*
  217 F.3d 8 (1st Cir. 2000) ................................................................................. 13

*U.S. Anesthesia Partners of Texas, P.A. v. U.S.P.H.S.*,
  126 F.4th 1057 (5th Cir. 2025) ........................................................................... 9

*United States v. Allen*,
  573 F.3d 42 (1st Cir. 2009) ................................................................................. 3

*Webster v. Doe*,
  486 U.S. 592 (1988) .................................................................................... 11, 12

*Yale New Haven Hosp. v. Becerra*,
  56 F.4th 9 (2d Cir. 2022) ..................................................................................... 9

Statutes

5 U.S.C. § 701(a)(1) ................................................................................................ 12

5 U.S.C. § 701(a)(2) ................................................................................................ 10

5 U.S.C. § 705 ...................................................................................................... 1, 2

8 U.S.C. § 1182(d)(5)(A) ..................................................................................... 6, 10

Rules

Federal Rule of Civil Procedure 54(b) ................................................................... 1, 2

## INTRODUCTION

The government respectfully requests that the Court reconsider and dissolve the order entered on January 24, 2026, granting a preliminary injunction and stay of agency action under 5 U.S.C. § 705. That order preliminarily enjoined the termination of parole for certain aliens who received parole under the Family Reunification Parole (FRP) programs. The Court may reconsider that order at any time as justice requires as provided in Federal Rule of Civil Procedure 54(b), and reconsideration is warranted here for two reasons. First, in its haste to provide the Court with the administrative record for the FRP termination decision on review by the Court on the accelerated briefing schedule for the motion for preliminary injunction, DHS inadvertently omitted five documents from the record. *See* Doc. No. 276-1 at pg. 2. Most importantly, it did not include in the Certified Administrative Record of the decision under review by this Court an internal audit considered and expressly relied upon by the Department in its decision to terminate the FRP programs. *See* 90 Fed. Reg. 58032, 58041 (Dec. 15, 2025) (referring to "a recent internal audit [that] revealed that over 700 requests to be a supporter were filed under the names of deceased individuals of which USCIS confirmed approximately half."). In reaching its decision, this Court observed that the record lacked evidentiary support for the Secretary's claims of insufficient vetting and fraud. Doc. No. 258 at 23. Because the audit explicitly provides the evidentiary support for the Secretary's insufficient vetting and fraud concerns that the Court found lacking, the Court should reconsider and dissolve its decision granting the preliminary injunction in light of the corrected record.

Second, and independently, DHS respectfully submits that the Court should reconsider three aspects of its ruling: (i) the conclusion that jurisdiction exists under § 1252(a)(2)(B)(ii) because Plaintiffs' arbitrary-and-capricious claim purportedly raises a procedural challenge, even

though their claim seeks to overturn the Secretary's substantive discretionary parole-termination decision; (ii) the determination that the Secretary's parole termination decision is reviewable under the Administrative Procedure Act (APA) despite statutory language committing such decision to the Secretary's opinion; and (iii) the finding that Plaintiffs are likely to succeed on their arbitrary-and-capricious claim based on the Court's own weighing of reliance interests against the government's fraud and security concerns.

Defendants also respectfully request additional relief in anticipation of a potential appeal from the preliminary injunction. Defendants request a stay of the preliminary injunction order pending reconsideration of the decision and pending any potential appeal. Should the Court decline to issue a stay, Defendants respectfully request that the Court issue a decision on the motion for reconsideration prior to the March 25, 2026 deadline to appeal the preliminary injunction.

## STANDARD

A motion to reconsider the entry of a preliminary injunction or a stay under 5 U.S.C. § 705 is appropriately brought under Federal Rule of Civil Procedure Rule 54(b). *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 81 (D.D.C. 2018) (applying the Rule 54(b) standard to a motion to reconsider the entry of a preliminary injunction); *cf. In re Guantanamo Bay Detainee Litig.*, 706 F. Supp. 2d 120, 122–23 (D.D.C. 2010) (applying the Rule 54(b) standard to a motion to reconsider and order dissolving a preliminary injunction). Under Rule 54(b), "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." A motion brought under Rule 54(b) may be granted "as justice requires." *Greene v. Union Mut. Life Ins. Co.*, 764 F.2d 19, 22 (1st Cir. 1985). Justice has been understood to require courts to grant motions for reconsideration

"if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009).

## ARGUMENT

Defendants present two reasons for the Court to reconsider its order granting Plaintiffs' motion for a preliminary injunction. First, in its haste to respond to the motion for a preliminary injunction, alongside briefing on the amendment to the class definition, the motion to amend the complaint, the motion for a temporary restraining order, the motion to proceed via pseudonym, and the motion to expedite briefing as to all these motions, DHS inadvertently omitted certain documents reflecting information considered as part of the decision-making process in the Certified Administrative Record, including an internal audit relied upon and referred to by the Department in support of its decision to terminate grants of parole under the FRP programs. This audit is reflected in the document titled "Brief Analysis of Family Reunification Parole Data"—a report prepared by the USCIS Fraud Detection and National Security Directorate, Fraud Division (FDNS), and issued on December 4, 2024. Indeed, the Court's decision to grant the preliminary injunction was based, in part, on its finding that "the Secretary overstated countervailing concerns regarding insufficient vetting and fraud where these concerns were unsupported by the Administrative Record and the Federal Register Notice itself." Doc. No. 258 at 18-19. Contemporaneous with this motion, DHS has filed a Notice of Corrected Certified Administrative Record providing the audit report that the Court noted was missing. The Court should reconsider its decision in light of this additional evidence.

Second, Defendants respectfully submit that the Court erred in three respects. First, Defendants submit that the Court mis-designated Plaintiffs' arbitrary-and-capricious claim as

procedural in nature so as to avoid application of the jurisdictional bar in § 1252(a)(2)(B)(ii). Second, Defendants submit the Court's determination that the Secretary's parole termination decision is reviewable under the APA despite statutory language committing such decision to the Secretary's opinion is error and ought to be reconsidered. Third, Defendants submit the Court erred in re-weighing FRP parolees' reliance interests against the government's fraud and security concerns, in contravention of the deferential standard of APA review.

For all these reasons, the Court should grant reconsideration and, upon reconsideration, dissolve the preliminary injunction.

## I.    The Correction of the Record Warrants Reconsideration and Dissolution of the Preliminary Injunction.

In reaching her decision to terminate individual grants of parole under the FRP programs, the Secretary weighed the tempered expectations of parolees—tempered because they were always advised that parole is temporary and could be terminated at any time—against the government's interests in discontinuing the use of parole as a pathway to adjustment of status and in mitigating the risk posed by the continued presence of parolees whose entrance to the United States was marked by insufficient vetting, which introduced significant opportunities for fraud. 90 Fed. Reg. at 58041. In particular, the FRN states that "a recent internal audit revealed that over 700 requests to be a supporter were filed under the names of deceased individuals of which USCIS confirmed approximately half." *Id*. It also states that "the vetting standards applied to co-supporters under the modernized FRP programs were even weaker than those for primary supporters, further compromising program integrity." *Id*. This Court observed, however, that the audit was not included in the Certified Administrative Record, and therefore there was no evidence supporting the Secretary's claims regarding insufficient vetting and fraud. Doc. No. 258 at 18-19.

4

As noted in the certification accompanying the Corrected Certified Administrative Record, the omission from the record of the above-referenced audit and related guidance documents that substantiate these conclusions was an oversight, which has now been corrected. *See* Doc. No. 276-1 at pg. 2. The 2024 Fraud Detection and National Security report included in the corrected record provides support for the program integrity concerns referenced by the Secretary in the FRN. Doc. No. 276-1, at FRP-FRN-01573, et seq. The guidance documents included in the corrected record, [], support the Secretary's concerns regarding the absence of vetting for co-supporters.

For this reason, Defendants respectfully request that the Court reconsider its conclusion that the Secretary's reasoning lacked adequate support in the record and that she thus "overstated" the government's national security and fraud concerns. Doc. No. 258 at 18-19. The Court relied heavily on the absence of factual support to determine that the Secretary had overstated the fraud and national security concerns, but that factual support in fact exists. This conclusion is thus supported by evidence in the record and does not "run[] counter to the evidence before" the Department. *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983). The record need not conclusively demonstrate that any particular parolee was associated with a fraudulent application to support the Secretary's decision. This represents a far more demanding evidentiary standard than the APA requires, particularly given the parole termination decision is committed to the Secretary's discretion. Although this Court may disagree with the weight the Secretary gave to national-security and fraud concerns and other governmental interests in terminating parole granted under the FRP programs, that is not the function of the reviewing court under the APA's arbitrary-and-capricious standard. *Ovist v. Unum Life Ins. Co. of Am.*, 14 F.4th 106, 120 (1st Cir. 2021) ("Under the arbitrary and capricious standard, our task is not to re-weigh the evidence in the record."). A court may not substitute its

judgment for that of the agency. *Associated Fisheries of Maine, Inc. v. Daley,* 127 F.3d 104, 109 (1st Cir. 1997) ("Even if a reviewing court disagrees with the agency's conclusions, it cannot substitute its  judgment for that of the agency."); *El Conejo Americano of Texas, Inc. v. Dep't of Transp.*, 278 F.3d 17, 20 (D.C. Cir. 2002) (court's role is not to reweigh the interest at stake). And, unlike in cases where the agency failed to conduct *any* reliance interest analysis, the Secretary here performed a robust reliance analysis—albeit one with which the Court disagreed. In short, this Court erred by substituting its judgment for that of the Secretary in weighing reliance against government interests.

But even if the Court could weigh the comparative reliance interests of FRP parolees against the government's national security and other interests to reach a conclusion as to whether the parole terminations were arbitrary-and-capricious, the Court acknowledged that its assessment of the government's security concerns was colored by the lack of evidentiary support in the record. Doc. No. 258 at 18-19, 23. As the government has corrected the record, the Court should now consider the government's stated national security concerns in light of the evidentiary support underlying those concerns.

## II.    The Court Should Reconsider Other Aspects of Its Analysis.

### a.    Section 1252(a)(2)(B)(ii) deprived the Court of jurisdiction.

Section 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review ... any other decision or action ... the authority for which is specified ... to be in the discretion of the ... Secretary." Here, the decision to terminate existing grants of FRP parole falls within this jurisdictional bar. The parole statute specifies that the Secretary may terminate parole "when the purposes of such parole ..., in [her] opinion ..., have been served." 8 U.S.C. § 1182(d)(5)(A). Although the Court agreed that Congress placed "the decision of whether to revoke . . . individual

6

grants of parole . . . within the Secretary's discretion," the Court held that the issue here is "whether the procedures adopted in this case for the exercise of such discretion are in accordance with the law." Doc. No. 258 at 12-13 (citing *Castaneira v. Noem*, 138 F.4th 540, 549 (D.C. Cir. 2025)). The Court reasoned that because the parole statute does not specify that the procedures that the Secretary uses to terminate parole are in her discretion, and because Plaintiffs are challenging the procedures the Secretary employed to reach her decision to terminate parole, rather than the ultimate discretionary decision to terminate parole, Doc. No. 258, at 12-14, § 1252(a)(2)(B)(ii) does not preclude jurisdiction. *Id.* at 14.

At the outset, neither the Court nor Plaintiffs have pointed to any authority by the First Circuit exempting procedural challenges from the jurisdictional bar in Section 1252(a)(2)(B)(ii). Defendants are likewise not aware of such authority. *See Bernardo v. Johnson*, 814 F.3d 481, 484-85, n.5 (1st Cir. 2016) (noting the question was not presently before the Court). But even assuming that this substantive/procedural distinction adopted by other Circuits, *see Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015), would be recognized by the First Circuit Court of Appeals, it would not apply to exempt from review any claims that seek to overturn the Secretary's substantive termination decisions, including but not limited to Plaintiffs' arbitrary and capricious claims. *See, e.g., Nouritajer v. Jaddou*, 18 F.4th 85, 89 (2d Cir. 2021) ("[W]here . . . the gravamen of Plaintiffs' claims challenges the Secretary of Homeland Security's exercise of discretion in making a revocation decision, subject matter jurisdiction is lacking.").

Chief among the allegations that the Court characterized as procedural was Plaintiffs' allegation that "DHS failed to properly consider the purpose of the FRP programs, the reliance interests of Plaintiffs, and the alternatives available to the agency." Doc. No. 258 at 13. But these are not procedural challenges. They do not target an independent, freestanding procedural

obligation imposed by statute or regulation. They attack how the Secretary exercised her discretion and are not procedural claims. *See Nouritajer*, 18 F.4th at 89; *Ottey v. Barr*, 965 F.3d 84, 91–92 (2d Cir. 2020) ("Regardless of the rhetoric and labels used in the petition for review, a challenge that merely quarrels over the correctness of the factual findings or justification for the discretionary choices is not reviewable.") (quotations and citations omitted); *Doe v. McAleenan*, 926 F.3d 910, 915 (7th Cir. 2019) (recognizing that "[c]ourts may review identifiable procedural rulings that don't implicate a petition's merits" but not challenges to "discretionary revocations on nominally 'procedural' grounds."). The fact that Plaintiffs' arbitrary-and-capricious claim is substantive and not procedural is further evidenced by the relief Plaintiffs seek. They do not seek a procedural remedy; they instead asked the Court to vacate and stay the termination of parole. *Karakenyan v. U.S. Citizenship & Immigr.*, 468 F. Supp. 3d 50, 57 (D.D.C. 2020) (challenge to EB-5 denial is not procedural where plaintiff does not seek a procedural remedy but rather a reweighing of the evidence and a different substantive outcome). If merely claiming that an arbitrary-and-capricious claim is a procedural claim were sufficient to evade § 1252(a)(2)(B)(ii), the jurisdictional bar would be rendered a nullity, as virtually every discretionary immigration decision could be recast as a challenge to the "process" by which the agency reasoned its way to the outcome. But as one Court aptly explained:

> [T]here isn't much difference between challenging the decision itself and challenging how an agency got to the decision. After all, the end goal of challenging the process is to challenge the outcome of the process. That's the whole point. If courts could review the process of reaching the decision, that review might lead the agency to change its decision. But statute prevents anyone from second-guessing the decision . . . . Allowing a challenge to the process is more than a foot in the door. It would create an opening that would blow a hole in statute. If that works, it's not exactly like going through the back door. It's more like blowing through the back door with a pickup truck.

*Lukac v. Mayorkas*, No. 22-CV-7156, 2023 WL 3918967, at *5 (N.D. Ill. June 9, 2023) (discussing § 1252(a)(2)(B)(ii)'s application to 8 U.S.C. § 1154(a)(1)(A)(viii)(I)). That is the longstanding view of other courts, too. *See DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 505-507 (D.C. Cir. 2019) (such review "would eviscerate the statutory bar, for almost any challenge to [a determination] could be recast as a challenge to its underlying methodology"); *Amgen Inc. v. Smith*, 357 F.3d 103, 113 (D.C. Cir. 2004) ("[I]f a no-review provision shields particular types of administrative action, a court may not inquire whether a challenged agency decision is arbitrary, capricious, *or procedurally defective*."); *Yale New Haven Hosp. v. Becerra,* 56 F.4th 9, 18 (2d Cir. 2022) (similar); *U.S. Anesthesia Partners of Texas, P.A. v. U.S.P.H.S.*, 126 F.4th 1057, 1063-64 & n.2 (5th Cir. 2025).

"The need to respect statutory boundaries is especially great when Congress has vested one branch, but not the other, with the power to make a particular decision. When Congress has opened the door to the executive branch, and closed the door to the judiciary, courts must be leery of inviting themselves inside and taking a seat at the table." *Lukac*, 2023 WL 3918967, at *5. But here the Court did just that. Section 1252(a)(2)(B)(ii) clearly divests courts of jurisdiction to second-guess discretionary decisions made by the Secretary. And Section 1182(d)(5) clearly vests in the Secretary the decision to terminate parole, when, in her opinion, the purposes of parole have been served. By categorizing Plaintiffs' arbitrary-and-capricious claim challenging the Secretary's weighing of parolees' reliance interests against the government's national security concerns and other interests as a procedural claim, the Court has impermissibly neutered § 1252(a)(2)(B)(ii).

The Court also characterized as procedural Plaintiffs' notice and comment claim, their claim alleging the Secretary exceeded her statutory authority, and their claim concerning insufficient notice of termination. Doc. No. 258 at 13. These claims likewise attack, and seek relief

from, the substantive decision. But even assuming, *arguendo*, that these claims constitute reviewable procedural challenges, that assumption would not confer jurisdiction over Plaintiffs' arbitrary-and-capricious claims. The applicability of § 1252(a)(2)(B)(ii) is claim-specific, not complaint-wide. The presence of one potentially reviewable procedural claim does not permit judicial review of separate claims that squarely challenge the Secretary's discretionary decision-making and are independently barred by the statute. Accordingly, the Court should reconsider its determination that it has jurisdiction to review Plaintiffs' claim that the Secretary's decision to terminate grants of parole under the FRP program was arbitrary and capricious, and upon such reconsideration should dissolve its preliminary injunction on that basis.[1]

### b. The Termination is Committed To Agency Discretion.

The APA is also not a side door to circumvent § 1252(a)(2)(B)(ii). On the contrary, the APA does not permit review of actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Here, the determination to end parole is committed to the Secretary's discretion because the Secretary may end a parole grant whenever "the purposes of such parole shall, *in the opinion*

---

[1] The Court has already concluded Plaintiffs are unlikely to succeed on the merits of their notice and comment claim. Doc. No. 258 at 26-30. As for Plaintiffs' claim that the Secretary exceeded her statutory authority, that claim consists of two substantive allegations:  Plaintiffs allegation that "DHS did not determine that the purposes of the individuals' grants of parole had been served," Doc. No. 255 at ¶ 319a, and Plaintiffs' allegation that DHS was required to terminate parole grants on a case-by-case basis, *id.* But this Court rejected the first of these arguments, Doc. No. 258 at 17, and the Court of Appeals rejected the second, *Doe v. Noem*, 152 F.4th 272, 286 (1st Cir. 2025). As for the Court's determination that Plaintiffs' notice claim is procedural and that Defendants did not provide proper notice of parole termination to FRP parolees, Defendants disagree, but even assuming a notice defect, the appropriate remedy is remand to the agency to correct the procedural defect, rather than issuing injunctive relief. *Campanale & Sons, Inc. v. Evans*, 311 F.3d 109, 127 (1st Cir. 2002) (Lynch, J., dissenting) ("It is in the reviewing court's sound discretion to remand a rule to an agency to mend procedural defects without overturning it in its entirety."); *see also Cent. Me. Power Co. v. Fed. Energy Regulatory Comm'n*, 252 F.3d 34, 48 (1st Cir.2001) (declining to enjoin regulation while case remanded to agency for further explanation); *Kollett v. Harris*, 619 F.2d 134, 146 (1st Cir. 1980) (where notice and comment was lacking, appropriate remedy is to remand to the agency).

*of the Secretary of Homeland Security*, have been served." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). The statute provides no judicially manageable standards on which a court may base its review of that opinion. *See Lincoln v. Vigil*, 508 U.S. 182, 191–94 (1993); *Webster v. Doe*, 486 U.S. 592, 600 (1988) (CIA director's authority to fire an employee "whenever [he] shall deem such termination necessary or advisable in the interests of the United States" was unreviewable); *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1513 (D.C. Cir. 1989) (statutes that turn on "an administrator's determination of the existence of [a] condition," as opposed to the objective existence of that condition, "exude deference[]" to that determination). The Secretary made just such a determination here.

Nonetheless, this Court found that the statute itself provided a meaningful standard for review by requiring the Secretary make a finding that the purposes of parole have been served. But, respectfully, the Court ignored the statutory language that it is the Secretary's "opinion" that the purposes of parole have been served, which means there is no basis whereby to judge that "opinion." Further, the Court preliminary found that the Secretary *did* make the requisite finding that the purposes of parole were served, *see* Doc. No. 258 at 16-17, which ends any possible inquiry permitted under this theory. The reasons behind that determination are certainly committed to the Secretary's "opinion" and discretion, and the district court's opinion included no reasoning to the contrary.

### III.    Alternatively, the Court Should Stay its Preliminary Injunction.

If the Court declines to dissolve the preliminary injunction, Defendants respectfully request that the Court stay that injunction pending a potential appeal. Defendants are likely to succeed on any potential appeal, for the reasons stated above as well as in their opposition to preliminary injunctive relief. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (in considering whether to grant a

stay pending appeal, courts consider "whether the stay applicant has made a strong showing that he is likely to succeed on the merits"). Even if § 1252(a)(2)(B)(ii) did not preclude review, the parole termination decision is "committed to agency discretion by law." *Webster v. Doe*, 486 U.S. 592, 600 (1988); 5 U.S.C. § 701(a)(1); *see also* Doc. No. 114 at 15. No "meaningful judicial standard of review," *Webster*, 486 U.S. at 600, exists to evaluate the Secretary's opinion that the purposes of parole have been served and that parole termination is warranted. This forecloses, at minimum, this Court's substantive disagreement with the Secretary's rationale for the termination, including its disagreement with the weight afforded to various reasons for the termination. The Court did not explain why it could look behind the Secretary's "opinion" that the "purposes of such parole . . . have been served"—nor has the Court pointed to any other meaningful standard that would somehow constrain the Secretary's exercise of discretion to terminate parole to allow judicial review of any aspect of the Secretary's decisionmaking. *See* Doc. No. 258 at 15. Further, even if APA review were available, the Court's reweighing of the reliance interests of parolees and the government's national-security and immigration-enforcement concerns was improper under the APA's arbitrary-and-capricious standard. *See supra* § I; Doc. No. 258 at 17-27.

Defendants are also likely to succeed on any potential appeal because—assuming the question of notice of parole termination is reviewable—the notice provided was adequate. The written notice published in the federal register complied with the statute and regulations, and there is no constitutional due process interest in a discretionary decision to terminate a discretionary benefit. *See* Doc. No. 251 at 16-21. Further, the Court acknowledged that many parolees were in fact provided individualized written notice of their parole termination before the Court paused the issuance of such notices through its temporary restraining order. *See* Doc. No. 258 at 34.  Whether all recipients *viewed* that notice is not relevant. *In re Spenlinhauer*, 572 B.R. 18, 33 (Bankr. D.

Mass. 2017) (relevant question regarding notice is "whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice"). In any event, the Court could not have based its injunction solely on its finding of inadequate notice. *See* Doc. No. 258 at 31-36. A court must "tailor[ ] [an injunction] to the specific harm to be prevented." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 14 (1st Cir. 2000); *see also DraftKings Inc. v. Hermalyn*, 118 F.4th 416, 423 (1st Cir. 2024) ("Judges must closely tailor injunctive relief to the specific harm alleged."). The appropriate injunctive remedy for notice deemed inadequate by the Court would be to require Defendants to provide renewed written notice of the termination of parole grants to individual parolees (which Defendants represented they would do in the absence of an injunction), not to enjoin the parole termination.

Further, as set forth in Defendants' opposition to the motion for preliminary injunction, the government and the public are being irreparably harmed by the injunction, which outweighs any harm to parolees. *See Nken*, 556 U.S. at 434 (setting forth remaining factors to consider when granting a stay); Doc. No. 251 at 23-25.  Irreparable harm occurs when the government is unable to enforce the President's policies, particularly in the field of immigration, which involves sovereign prerogatives of admission of aliens and foreign policy. *See* Doc. No. 251 at 23 (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) and *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013)). The injunction stymies the government's ability to terminate parole grants that the Secretary has determined undermine U.S. interests, raise national security concerns, and thus inhibit the government's pursuit of its foreign policy goals. Further, the Secretary explained that administering the parole programs, including the application and adjudication process for re-parole under the process, consumes agency resources that this Administration has determined would be better focused elsewhere. 90 Fed. Reg. at 58044. In this

way, staying parole terminations improperly encroaches on the core Executive function of managing the immigration system. *See Arizona v. United States*, 567 U.S. 387, 394-396 (2012); *INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-1306 (1993) (O'Connor, J., in chambers) (warning against "intrusion by a federal court into the workings of a coordinate branch of the Government").

On the flip side, Plaintiffs and the class are not likely to suffer irreparable injury if the Secretary is permitted to move forward with the parole termination decision pending a decision on a potential appeal. Parole was always a discretionary benefit, terminable at any time. And each class member may still apply for another period of parole. *See* 90 Fed. Reg. at 58034 ("[T]he Secretary retains discretion to grant a new period of parole, also known as re-parole, to any alien who was paroled into the United States under the FRP programs . . . ."). Finally, if the Court grants a stay pending appeal, parolees who do choose to leave the country pending appeal or a final decision on the merits may still pursue an immigrant visa. They may still seek a family-based immigrant visa from abroad via consular processing once their priority date is current. There was also never any guarantee to any beneficiary of the FRP programs that he or she would ultimately be eligible for adjustment or warrant a favorable exercise of discretion on their adjustment application. *See, e.g.*, Doc. No. 24-28, 88 Fed. Reg. at 43588. Finally, those parolees whose adjustment applications have been or will be denied lack any argument to remain in the United States and lack any harm from the termination of their parole.

For these reasons, the court should grant a stay pending appeal.

14

**CONCLUSION**

Defendant respectfully requests that the Court reconsider its decision and dissolve its previously issued order granting the preliminary injunction, or, in the alternative, stay its preliminary injunction.

Dated: March 6, 2026        Respectfully submitted,

By: /s/ *Elissa Fudim*
ELISSA FUDIM
*Trial Attorney*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

KATHERINE J. SHINNERS
*Senior Litigation Counsel*

*Counsel for Defendants*

15

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, I electronically filed this memorandum with the Clerk of the Court for the United States District Court for the District of Massachusetts by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Elissa Fudim*
ELISSA FUDIM
*Trial Attorney*
United States Department of Justice