UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SVITLANA DOE, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-10495-IT |
| | * | |
| KRISTI NOEM, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

MEMORANDUM

March 11, 2026

TALWANI, D.J.

This litigation challenges actions taken by the Department of Homeland Security
("DHS") in early 2025 regarding humanitarian parole programs. In December 2025, after DHS
issued a further policy memorandum and federal register notice impacting noncitizens who have
received parole under some of these programs, Plaintiffs sought to amend their complaint, add
additional Named Plaintiffs, and modify the class definition for the previously certified class.

The court allowed Plaintiffs to supplement their complaint and to modify the class
definition in two orders, each issued with memorandum to follow. See Electronic Order [Doc.
No. 238]; Electronic Order [Doc. No. 241]. This Memorandum sets forth the court's reasoning.

I.    **Background**

A.    *The Litigation Prior to December 2025 as Relevant Here*

This action was initiated on February 28, 2025. Compl. [Doc. No. 1]. On March 27,
2025, Plaintiffs filed a Second Amended Complaint [Doc. No. 68]. Through these pleadings,
Plaintiffs have challenged DHS's issuance of a Federal Register Notice terminating *en masse*
grants of parole for noncitizens from Cuba, Haiti, Nicaragua, and Venezuela ("CHNV") under

the CHNV parole programs (the "CHNV Federal Register Notice"). See Doe v. Noem, 778 F.

Supp. 3d 311 (D. Mass.), vacated and remanded, 152 F.4th 272 (1st Cir. 2025). Plaintiffs have

additionally challenged a series of decisions by Defendants to suspend adjudications of re-parole

applications, initial parole applications, and applications for non-parole immigration benefits by

parole recipients under other humanitarian parole programs, including the Family Reunification

Parole ("FRP") Processes. See Doe v. Noem, 784 F. Supp. 3d 437 (D. Mass. 2025).

On April 14, 2025, the court entered its first Order Granting Class Certification [Doc. No.

98], and on May 28, 2025, the court entered a superseding Amended Order Granting Class

Certification [Doc. No. 108] to include additional class representatives and subclasses.[1]

B.    *The December 2025 Events*

1.    The Policy Memorandum

On December 2, 2025, United States Citizenship and Immigration Services ("USCIS")

issued a Policy Memorandum directing USCIS personnel, effective immediately, to:

1. Place a hold on all Forms I-589 (Application for Asylum and for Withholding of Removal), regardless of the alien's country of nationality, pending a comprehensive review;

2. Place a hold on pending benefit requests for aliens from countries listed in Presidential Proclamation (PP) 10949, Restricting the Entry of Foreign Nationals [t]o Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats, pending a comprehensive review, regardless of entry date; and

3. Conduct a comprehensive re-review of approved benefit requests for aliens from countries listed in PP 10949 who entered the United States on or after January 20, 2021.

---

[1] Defendants filed notices of appeal as to both orders. See Notice of Appeal [Doc. No. 100]; Notice of Appeal [Doc. No. 158]. Defendants, however, did not address class certification in the first appeal (which focused instead on the entry of a preliminary injunction), see Doe v. Noem, 152 F.4th 272, 279 (1st Cir. 2025), and stipulated to the dismissal of the second appeal, see Doe v. Noem, No. 25-1715 (1st Cir. Nov. 5, 2025).

U.S. Citizenship and Immigration Services, PM-602-0192, Policy Memorandum 1 (Dec. 2, 2025) (the "Policy Memorandum") [Doc. No. 224].[2] The hold on asylum applications impacts applicants from all countries. Meanwhile, the hold on new and pending benefit requests and the re-review of approved benefit requests are limited to nineteen countries Presidential Proclamation 10949 classifies as "Countries of Identified Concern." Id. at 1 n.1; Proclamation No. 10949, 90 Fed. Reg. 24497, 24499–24502 (Jun. 4, 2025).[3]

The benefit requests subject to the hold include "Form I-485 (Application to Register Permanent Residence or Adjust Status), Form I-90 (Application to Replace Permanent Resident Card (Green Card)), Form N-470 (Application to Preserve Residence for Naturalization Purposes), Form I-751[] (Petition to Remove Conditions on Residence), and Form I-131 (Application for Travel Documents, Parole Documents, and Arrival/Departure Records)." Policy Memorandum 1 n.4 [Doc. No. 224]. The re-review of benefit requests is directed at individuals who entered the United States on or after January 20, 2021, but the Policy Memorandum notes "USCIS may, when appropriate, extend this review and re-interview process to aliens who entered the United States outside of this timeframe." Id. at 2.

The hold on benefit adjudication, the Policy Memorandum notes, "will remain in effect until lifted by the USCIS Director through a subsequent memorandum." Id. at 2–3. The Policy Memorandum additionally directs USCIS, within 90 days of December 2, 2025, to "prioritize a list [of noncitizens] for review, interview, re-interview, and referral to ICE and other law

---

[2] An "alien" is "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3).

[3] The 19 countries are: Afghanistan, Burma, Burundi, Chad, Republic of the Congo, Cuba, Equatorial Guinea, Eritrea, Haiti, Iran, Laos, Libya, Sierra Leone, Somalia, Sudan, Togo, Turkmenistan, Venezuela, and Yemen. Proclamation No. 10949, 90 Fed. Reg. 24497, 24499–24502 (Jun. 4, 2025).

enforcement agencies as appropriate, and, in consultation with the Office of Policy and Strategy and the Fraud Detection and National Security Directorate, [to] issue operational guidance." Id. at 3.

2.   The Federal Register Notice

On December 15, 2025, the DHS issued the Federal Register Notice at issue here. See Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans, 90 Fed. Reg. 58032 (Dec. 15, 2025) (the "Federal Register Notice" or the "Notice").

The Federal Register Notice terminates nine FRP programs for nationals of seven countries. The first seven programs are "for aliens from Colombia, Cuba, Ecuador, El Salvador, Guatemala, Haiti, and Honduras, and their immediate family members, under the Family Reunification Parole processes announced, or updated, by DHS in 2023[.]" Termination of Family Reunification Parole Processes, 90 Fed. Reg. at 58032.[4] The final two programs are older ones for noncitizens from Cuba and Haiti, which were first implemented by USCIS in 2007 and 2014, respectively.[5]

_____

[4] See Implementation of a Family Reunification Parole Process for Guatemalans, 88 Fed. Reg. 43581 (July 10, 2023); Implementation of a Family Reunification Parole Process for Colombians, 88 Fed. Reg. 43591 (July 10, 2023); Implementation of a Family Reunification Parole Process for Hondurans, 88 Fed. Reg. 43601 (July 10, 2023); Implementation of a Family Reunification Parole Process for Salvadorans, 88 Fed. Reg. 43611 (July 10, 2023); Implementation of Changes to the Haitian Family Reunification Parole Process, 88 Fed. Reg. 54635 (Aug. 11, 2023); Implementation of Changes to the Cuban Family Reunification Parole Process, 88 Fed. Reg. 54639 (Aug. 11, 2023); Implementation of a Family Reunification Parole Process for Ecuadorians, 88 Fed. Reg. 78762 (Nov. 16, 2023). The programs are referred to here and in the challenged Federal Register Notice as the "modernized FRP programs." See Termination of Family Reunification Parole Processes, 90 Fed. Reg. at 58032–33.

[5] See Cuban Family Reunification Parole Program, 72 Fed. Reg. 65588 (Nov. 21, 2007); Implementation of Haitian Family Reunification Parole Program, 79 Fed. Reg. 75581 (Dec. 18,

The Federal Register Notice announced that the "temporary parole period of aliens who have been paroled into the United States under the FRP programs, and whose initial period of parole has not already expired by January 14, 2026[,] will terminate on that date." Id.[6]

Pursuant to the Notice, all parolees "without a lawful basis to remain in the United States following the termination of their parole must depart the United States before their parole termination date." Id. at 58033. The Notice provided further that "[f]ollowing this termination, . . . DHS generally intends to promptly remove aliens, consistent with law, who entered the United States under the FRP programs and who stay in the United States beyond their parole termination date with no lawful basis to remain in the United States." Id. at 58043.

C.    *Relevant Procedural History*

On December 29, 2025, Plaintiffs moved on an emergency basis (1) to amend their complaint to challenge these December 2025 actions, Pls.' Mot. for Leave to File a Third Am. Compl. [Doc. No. 212]; (2) to allow five additional Plaintiffs to proceed under pseudonyms, Pls.' Third Suppl. Mot. to Proceed Under Pseudonym [Doc. No. 214]; (3) to modify the class

---

2014). These programs are collectively referred to here and in the challenged Federal Register Notice as the "legacy FRP programs." See Termination of Family Reunification Parole Processes, 90 Fed. Reg. at 58032; id. at 58033 n.1.

[6] The Federal Register Notice reported that since July 10, 2023, DHS granted parole to roughly 14,000 noncitizens through the modernized FRP programs, and that all of these parolees are within the initial three-year grant of parole. Termination of Family Reunification Parole Processes, 90 Fed. Reg. at 58043. The Federal Register Notice reported further that approximately 1,060 Cubans and 100 Haitians are in the United States with valid grants of parole under legacy FRP programs but did not initially identify how many of these parolees are within an initial three-year grant. Id. Respondents have subsequently explained that 140 legacy Cuban FRP beneficiaries would be affected by the parole termination. Suppl. Kernochan Decl. ¶ 6 [Doc. No. 275].

certification order by amending one previously certified subclass[7] and adding the additional Plaintiffs as class representatives, Pls.' Mot. to Modify Class Definition [Doc. No. 219]; and (4) for a temporary restraining order, preliminary injunction, and stay in response to the issuance of the Federal Register Notice, Emergency Mot. for a TRO, Prelim. Inj., and/or Stay of *En Masse* Truncation of Family Reunification Parole [Doc. No. 216].

This court directed Defendants to file any opposition to the motions "for purposes of the request for emergency relief" on an expedited basis and to file "any further opposition to Plaintiffs' Motion to Modify Class Definition" under the court's usual fourteen-day response time, unless that date was further modified by the court. Electronic Order [Doc. No. 229].[8]

After Defendants filed their first oppositions, see Defs.' Mem. in Opp'n to Pls.' Mot. to Proceed by Pseudonym [Doc. No. 232]; Defs.' Mem. in Opp'n to Pls.' Emergency Mot. for a TRO and/or Stay of the Termination of Existing Grants of FRP Parole [Doc. No. 233]; Defs.' Opp'n to Pls.' Mot. to Modify Class Definition [Doc. No. 234], the court granted five additional Plaintiffs leave to proceed under Pseudonym, subject to the same terms and conditions set forth in the parties' Stipulated Protective Order Concerning Confidential Doe PII [Doc. No. 57], see Order [Doc. No. 240]. The court additionally granted leave to file a supplemental complaint

---

[7] Plaintiffs proposed that the subclass be modified to

> include individuals who have received parole through humanitarian parole processes subject to the December 15 Federal Register Notice "Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans," 90 Fed. Reg. 58032 (Dec. 15, 2025), rescinding individual grants of parole on a categorical and *en masse* basis[.]

Pls.' Mot. to Modify Class Definition 1 [Doc. No. 219].

[8] The court subsequently modified this deadline by a few days. See Electronic Clerk's Notes [Doc. No. 247].

adding: five named Plaintiffs who claimed to be affected by the issuance of the Family

Reunification Program Federal Register Notice; allegations relevant to either or both of the

December 2025 actions; and a proposed eighth claim for relief as it applies to the December

2025 actions only. Electronic Order [Doc. No. 238]. Plaintiffs filed their Supplemented Second

Amended Complaint for Declaratory and Injunctive Relief [Doc. No. 239] the same day.

On January 10, 2026, this court granted Plaintiffs' Motion to Modify Class Definition

[Doc. No. 219] on an emergency basis. Electronic Order [Doc. No. 241]. Rather than modifying

the Amended Order Granting Class Certification [Doc. No. 108] by amending the Early

Revocation Parolee Subclass, the court added a new subclass covering:

> [a]ll individuals who have received a grant of parole that is subject to the
> *Termination of Family Reunification Parole Processes for Colombians, Cubans,*
> *Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg.
> 58032 (Dec. 15, 2025), rescinding individual grants of parole on a categorical and
> *en masse* basis.

Order Modifying Class Definition and Appointing Additional Named Plaintiffs 1 [Doc. No.

241]. The court also named the five new Plaintiffs as additional class representatives. Id.

Defendants' Further Opposition to Plaintiffs' Motion to Modify Class Definition [Doc.

No. 252] requested that the court revisit that Order.[9]

## II.     The Motion to Amend the Pleading

A. *Standard of Review*

A party may amend its pleadings once as a matter of course within twenty-one days of

serving it or within twenty-one days after service of a responsive pleading or Rule 12 motion.

---

[9] Defendants also filed a further opposition to the motion for injunctive relief. Defs.' Mem. in
Opp'n to Pls.' Mot. for a Prelim. Inj. and/or Stay of the Termination of Existing Grants of FRP
Parole [Doc. No. 251]. The court thereafter granted Plaintiffs' motion for injunctive relief. See
Doe v. Noem, No. 1:25-CV-10495-IT, 2026 WL 184883 (D. Mass. Jan. 25, 2026).

Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its pleading only with the consent

of the other party or leave of the court. Fed. R. Civ. P. 15(a)(2).

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading shall be freely

granted "when justice so requires." Id. Nevertheless, a motion for leave to amend may be denied

in cases of (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, or (4) futility of

amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962).

Separately, a court may, "on just terms, permit a party to serve a supplemental pleading

setting out any transaction, occurrence, or event that happened after the date of the pleading to be

supplemented." Fed. R. Civ. P. 15(d).

> Amended and supplemental pleadings differ in two respects. The former relate to
> matters that occurred prior to the filing of the original pleading and entirely replace
> the earlier pleading; the latter deal with events subsequent to the pleading to be
> altered and represent additions to or continuations of the earlier pleadings.

6A Charles Alan Wright et al., Federal Practice and Procedure § 1504 (3d ed. 2010).

While Rule 15(d) provides limited guidance, "courts customarily have treated requests to

supplement under Rule 15(d) liberally." U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 7

(1st Cir. 2015) (citing Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1278 (10th Cir.

2001)). In reviewing a motion for leave to supplement, the court "must weigh the totality of the

circumstances," including considering the potential futility of supplementation, the extent of

prejudice to the opposing party, and the presence of unreasonable delay in attempting to

supplement. Id. A court "may permit supplementation even though the original pleading is

defective in stating a claim or defense." Fed. R. Civ. P. 15(d). This sentence was added to Rule

15 in 1963 and "was designed to ensure that the amended rule would 'give the court broad

discretion in allowing a supplemental pleading' so that plaintiffs would not be 'needlessly

remitted to the difficulties of commencing a new action even though events occurring after the

commencement of the original action have made clear the right to relief.'" Gadbois, 809 F.3d at 5 (quoting Fed. R. Civ. P. 15(d) advisory committee's note to 1963 amendment).

A.    *The Proposed Third Amended Complaint*

Plaintiffs' proposed Third Amended Complaint sought to add new allegations, a new claim, and new named Plaintiffs. Pls.' Mot. for Leave to File a Third Am. Compl. 2 [Doc. No. 212].[10]

1.    Additional Allegations as to Existing Claims

Plaintiffs moved to add allegations regarding the December 2 Policy Memorandum and the December 15 Federal Register Notice and to amend existing claims to cover these two new actions.[11] The Policy Memorandum's hold on all Forms I-589 (Application for Asylum and for Withholding of Removal), see Policy Memorandum 1 [Doc. No. 224], has the potential to affect any class member. Further, the suspension of benefit and re-review of benefit requests from noncitizens from the countries listed in Presidential Proclamation 10949, id. at 1 n.1; Proclamation No. 10949, 90 Fed. Reg. at 24499–24502 (Jun. 4, 2025), includes a suspension of requests made by class members from Afghanistan, Cuba, Haiti, and Venezuela.

Plaintiffs' First Claim for Relief asserted that Defendants' termination of parole processes was contrary to law, in violation of the Administrative Procedure Act ("APA"). Second Am. Compl. ¶¶ 308–21 [Doc. No. 68]. Plaintiffs sought to amend this claim to include

---

[10] Plaintiffs also sought to substitute certain Defendants named in their official capacity with other personnel on account of staffing changes at the relevant agencies, see Mot. for Leave to File a Third Am. Compl. 1 n.1 [Doc. No. 212], which the court allows *nunc pro tunc*.

[11] Plaintiffs also sought to make modifications to existing claims unrelated to the December 2025 actions. See, e.g., Mot. for Leave to File Third Am. Compl. Ex. B, at ¶¶ 191–193 [Doc. No. 212-2] (Redlined Proposed Third Amended Complaint adding additional allegations regarding the Central American Minors parole program). Those proposed changes remain under advisement and are not addressed further here.

the Federal Register Notice's termination of the Family Reunification Parole program. Mot. for Leave to File Third Am. Compl. Ex. A, at ¶¶ 399–418 ("Proposed TAC") [Doc. No. 212-1].

Plaintiffs' Third Claim for Relief asserted that termination of parole processes was arbitrary and capricious in violation of the APA. Second Am. Compl. ¶¶ 331–41 [Doc. No. 68]. Plaintiffs similarly sought leave to extend this claim to include the termination of the Family Reunification Parole programs. Proposed TAC ¶¶ 431–42 [Doc. No. 212-1].

Plaintiffs' Second and Fourth Claims for Relief concerned Defendants' suspension of benefits adjudication. Second Am. Compl. ¶¶ 322–30, 342–48 [Doc. No. 68]. The second claim argued that suspension of benefits adjudication for parolees was contrary to law under the APA and *ultra vires*, while the fourth claim argued that the suspensions were arbitrary and capricious. Plaintiffs sought to amend both claims to challenge the Policy Memorandum. Proposed TAC ¶¶ 419–30, 443–52 [Doc. No. 212-1].

Plaintiffs' Fifth Claim for Relief asserted that Defendants failed to follow agency revocation procedures, and Plaintiffs' Seventh Claim for Relief presented a Due Process Clause claim under the Fifth Amendment. Second Am. Compl. ¶¶ 349–55, 359–63 [Doc. No. 68]. Plaintiffs moved to amend both claims to include the December 2025 actions. Proposed TAC ¶¶ 453–60, 464–68 [Doc No. 212-1].

2.  The New Claim

Plaintiffs also sought to add a new, eighth claim for relief. Proposed TAC ¶¶ 469–77 [Doc No. 212-1]. This claim contends that both the mass truncation of parole and suspensions of benefits adjudication were subject to notice-and-comment requirements under the APA. Id. Plaintiffs argue that because Defendants did not follow notice-and-comment requirements before taking these actions, such actions were "'without observance of procedure required by law' and

therefore must be vacated." Proposed TAC ¶¶ 475–77 [Doc. No. 212-1] (quoting 5 U.S.C. § 706(2)(D)).[12]

3.  Addition of Named Plaintiffs

Plaintiffs moved to add five additional named Plaintiffs—David Doe, Jose Doe, Luciana Doe, Francisca Doe, and John Doe—each of whom allegedly has received parole under the FRP processes. Proposed TAC ¶¶ 39–43 [Doc No. 212-1]. These five Plaintiffs are discussed in detail below in connection with the motion to amend the class certification order. See infra Part III.

B.    *Discussion*

Defendants contend that Plaintiffs' motion should be denied because it is procedurally improper; it is inefficient, prejudicial, and would undermine judicial economy; it would result in undue delay to the extent that it seeks to add an APA notice and comment claim; and because Plaintiffs' challenge of the Federal Register Notice is futile. Defs.' Opp'n to Pls.' Mot. for Leave to File a Third Am. Compl. 10 ("Opp'n to File Third Compl.") [Doc. No. 226]. The court addresses each argument in turn and finds that Plaintiffs may file a supplemental complaint addressing the actions taken by Defendants in December 2025. Where Plaintiffs seek to add an additional eighth claim that would cover both the December 2025 actions and all prior actions taken by Defendants, the court also allows the addition of the claim as to the December 2025 actions.

---

[12] As proposed by Plaintiffs, this eighth claim would apply both to the December 2025 actions and earlier challenged actions, including the termination of grants of parole to class members under the CHNV parole programs and all prior actions suspending benefits adjudication, as alleged in the Second Amended Class Action Complaint. Proposed TAC ¶¶ 469–77 [Doc No. 212-1]. The proposed additional claim as to the earlier actions remains under advisement.

1.  Procedurally Improper

Defendants note that "an amendment 'rest[s] on matters in place prior to the filing of the original pleading,' while a supplemental pleading 'sets forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.'" Id. (quoting U.S. v. Hicks, 283 F.3d 380, 385 (D.C. Cir. 2002)).

Because the Policy Memorandum and the Federal Register Notice were issued after the filing of the original complaint in March of 2025, Defendants contend that amending the complaint to include these actions would be improper. Id.

Plaintiffs meanwhile characterize the Policy Memorandum and the Federal Register Notice as two new attempts by Defendants to effectuate the policies Plaintiffs have been challenging since filing their original complaint. Pls.' Mem. ISO of Mot. for Leave to File a Third Am. Compl. 2 [Doc. No. 213] ("It is clear that both the Memo and FRP [Federal Register Notice] simply constitute new administrative vehicles through which Defendants seek to impermissibly deprive parolees—on an expedited basis—of their right to seek lawful status and benefits.").

Whether the December events are part of a continuing effort to effectuate certain policies or not, Defendants are correct that the December actions are new discrete events that occurred after the filing of the prior pleading. Where a motion to amend is based on events which occurred subsequent to the filing of the prior pleading, it may be treated as a motion to supplement pursuant to Fed. R. Civ. P. 15(d). See Arch Insurance Co. v. Graphic Builders LLC, 519 F. Supp. 3d 54, 57–58 (D. Mass. 2021); Structural Systems, Inc. v. Sulfaro, 692 F. Supp. 34, 35–36 (D. Mass. 1988). Moreover, Plaintiffs' failure to label their motion as such is of no moment. See also 6A Charles Alan Wright et al., Fed. Prac. and Proc. Civ. § 1504 (3d ed. 2010) ("Parties and courts occasionally confuse supplemental pleadings with amended pleadings and mislabeling is

common. These misnomers are not of any significance, however, and they do not prevent the court from considering a motion to amend or supplement under the proper portion of Rule 15."). Accordingly, to the extent that the proposed amendment is directed at those new actions, the court will treat Plaintiffs' motion as a motion to supplement.

    2.   Prejudice

Defendants suggest that granting leave to amend would be improper where it "would significantly broaden the scope of the litigation." Opp'n to File Third Compl. 12 [Doc. No. 226].

Supplementation in this case would not impermissibly broaden the litigation. The new agency actions affect grants of parole and the adjudication of immigration benefits requests in a similar manner as the earlier challenged actions, and they took place less than a year after those actions.

Defendants contend that even though the December 2025 actions concern the termination of parole programs, allowing the proposed amendment could require the filing of new administrative records documenting the rationales supporting the Federal Register Notice and the Policy Memorandum. Id. at 13. Defendants argue that the five new proposed Plaintiffs should instead proceed by filing a separate lawsuit to address these claims. Id. at 17. However, it is not evident that such an approach would be significantly more efficient than allowing Plaintiffs to file a supplemental pleading. Were Plaintiffs to file a separate lawsuit in this court, Defendants would still need to submit a new administrative record. If Plaintiffs are allowed to file a supplemental pleading, Defendants indeed may need to supplement existing briefing concerning their pending motion to dismiss. Yet, requiring Plaintiffs to file a separate lawsuit would mean Defendants would need to file a new responsive pleading altogether. Accordingly, while Defendants warn against "multi-track litigation," id. at 16, filing a separate lawsuit would not mitigate this concern.

13

Further, Defendants note that their Motion to Dismiss [Doc. No. 113] the Second Amended Complaint [Doc. No. 68] and Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 196] are both fully briefed. Opp'n to File Third Compl. 7 [Doc. No. 226]. Allowing an amendment to the pleadings, they argue, could delay adjudication of these motions. Id. at 15–16. Defendants are correct that dispositive motions have been briefed and not yet resolved. But supplementation, rather than amendment, will avoid the need for rebriefing and will not delay adjudication of the earlier filed motions. Defendants are directed that their response to the Plaintiffs' supplemental pleading need only address the new allegations and claims.

3.  Futility

As to the Federal Register Notice, Defendants contend that any amendment to include challenges to this action would be futile, because the action falls within Congress' jurisdiction stripping provisions and is neither contrary to law nor arbitrary and capricious. Id. at 19–20 [Doc. No. 226]. The court disagrees. As to whether 8 U.S.C. § 1252(a)(2)(B)(ii) precludes review, the court details this argument below. See infra Part IV. Defendants' argument that DHS's actions are unreviewable under the APA is addressed in the recent preliminary injunction order, Doe v. Noem, No. 1:25-CV-10495-IT, 2026 WL 184883, at *8 (D. Mass. Jan. 25, 2026), which the court incorporates by reference here.

Defendants also argue that "as with the decision to terminate individual grants of CHNV parole, the First Circuit has held that Plaintiffs are unlikely to be succe[ssful] in establishing such decisions are either contrary to law or arbitrary and capricious." Opp'n to File Third Compl. 19–20 [Doc. No. 226] (citing Doe v. Noem, 152 F.4th 272 (1st Cir. 2025)). The First Circuit's finding as to those claims do not bar the remaining claims in the Second Amended Complaint or the proposed supplementation here. To the contrary, the First Circuit specifically noted "that Plaintiffs' second amended complaint includes a constitutional due process cause of action as

14

well as other claims not before us. Our holding today is limited to only those arguments raised in this appeal." Doe, 152 F.4th at 292 n.8.

Finally, even as to the contrary to law or arbitrary and capricious claims that were before the First Circuit in connection with the termination of CHNV parole, the court did not address the termination at issue here, but the termination of a different program. Moreover, the court found that Plaintiffs were unlikely to succeed, not that Plaintiffs failed to state a claim. "In assessing futility, the court applies 'the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion[.]'" Arch Ins. Co. v. Graphic Builders LLC, 519 F. Supp. 3d 54, 58 (D. Mass. 2021), aff'd, 36 F.4th 12 (1st Cir. 2022) (quoting Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

Accordingly, the court finds that the proposed supplementation is not barred on futility grounds.

### 4.  Undue Delay

As part of their motion to amend, Plaintiffs seek leave to include an eighth claim for relief alleging that the mass truncation of parole and suspension of benefits adjudication violated the APA's Notice and Comment requirements. Proposed TAC ¶¶ 469–77 [Doc. No. 212-1]. As proposed, this claim for relief would apply to all actions taken by Defendants, not just the December 2025 actions. Id. ¶¶ 471–73 (arguing that "[e]ach of the aforementioned agency actions is a legislative rule" and thus subject to notice-and-comment requirements).

Defendants argue that the addition is unduly delayed, where Plaintiffs have already moved for summary judgment on their APA claims challenging the CHNV Federal Register Notice. Opp'n to File Third Compl. 18 [Doc. No. 226].

The court's January 9, 2026, Electronic Order [Doc. No. 238], however, granted Plaintiffs' leave to include the proposed eighth claim for relief "as it applies to the December

2025 actions only." Id. Defendants' challenge of the addition of the claim as it would apply to any earlier actions remains under advisement and will be addressed with Defendants' pending Motion to Dismiss [Doc. No. 113].

### III.    The Five New Plaintiffs

Plaintiffs' Motion to Modify Class Definition [Doc. No. 219] sought to add the five newly added named Plaintiffs as class representatives.

### A.    *David Doe*

David Doe is an Ecuadorian national residing in Arkansas with his wife and two sons. Pls.' Third Suppl. Mot. to Proceed Under Pseudonym Ex. 2, ¶¶ 2–3 ("David Doe Decl.") [Doc. No. 214-2].

David Doe and his family are beneficiaries of an I-130 family petition filed in October 2012, by David Doe's father. Id. ¶ 5. Because David Doe's father is a U.S. citizen, David Doe and his family qualify for the "F3 family visa preference category" with a priority date of October 6, 2021. Id. ¶¶ 5, 15. In February 2020, David Doe's father's I-130 petition was approved. Id. ¶ 5. In November 2023, based on the approval of the I-130 family petition, David Doe's father received an invitation from the United States government to sponsor David Doe and his family for family reunification parole. Id. ¶ 6.

In February 2024, David Doe's father submitted the I-134A, Online Request to be a Supporter and Declaration of Financial Support. Id. ¶ 9. David Doe's father and David Doe completed the required steps, and after David Doe incurred approximately $1,800 in costs for the medical exams and vaccinations, David Doe and his family received travel authorization in May 2024. Id. ¶ 10. After selling many of their belongings, David Doe and his family moved to the United States in July 2024 and were granted a three-year grant of parole. Id. ¶¶ 11–12. David Doe and his wife applied for work authorization the day after they arrived in the United States

and received their work permits in August 2024. Id. ¶ 12. These permits are set to expire in July 2027. Id.

David Doe has a myUSCIS account, which he checks regularly. Id. ¶ 14. As of December 23, 2025, he had "not received any emails, notices, or other communications directly from USCIS about" the Federal Register Notice terminating grants of parole awarded under FRP processes. Id. His father, who keeps his contact information including his address current with USCIS, likewise has not received notices or communications. Id.

David Doe and his family have not filed their adjustment of status applications yet because their priority date is not current. Id. ¶ 15. David Doe's priority date is October 6, 2012, but the State Department is only accepting adjustment of status applications for family-based visa applications in the F3 category with a priority date of July 22, 2012, or earlier. Id. Absent a stay of the Federal Register Notice, David Doe and his family's parole, as well as his and his wife's work authorization, would terminate on January 14, 2026. Id.

B.    *Francisca Doe*

Francisca Doe is a Guatemalan national living in Massachusetts with her husband and three children. Pls.' Third Suppl. Mot. to Proceed Under Pseudonym Ex. 3, ¶¶ 1–3 ("Francisca Doe Decl.") [Doc. No. 214-3]. In or around July 2012, Francisca Doe's mother submitted an I-130 family petition to sponsor Francisca Doe and her family. Id. ¶ 5. Because Francisca Doe's mother is U.S. citizen, Francisca Doe and her family qualified for an immigrant visa in the F3 visa preference category. Id. Francisca Doe and her family's priority date for her visa is July 12, 2012. Id. ¶ 6. In August 2013, Francisca Doe's mother's I-130 petition was approved. Id.

In August 2023, the United States government invited Francisca Doe's mother to sponsor Francisca Doe and her family for family reunification parole. Id. ¶ 9. In or around March 2024, Francisca Doe's mother submitted an I-134A application. Id. ¶ 10. After the application was

approved, Francisca Doe and her family provided all requested information, completed biometric and other background checks, and completed medical exams for each member of the family, at a cost of more than $2,000. Id. The family sold their car, their house, and their bookstore to afford the move to the United States. Id.

In June 2024, Francisca Doe and her family were approved to travel to the United States. Id. ¶ 11. The family arrived in the United States in August 2024, went through additional screening, and were granted a three-year period of parole. Id. Francisca Doe and her husband received work authorization in September 2024. Id.

On December 12, 2025, Francisca Doe heard through social media that the federal government would be terminating grants of family reunification parole. Id. ¶ 13. As of December 27, 2025, Francisca Doe had "not received any notification from the government, either online or by mail, telling [her that her] parole would be ending in January 2026[.]" Id. ¶ 13.

Francisca Doe and her family's priority date on their visa applications is July 12, 2012. Id. ¶ 6. Her attorney submitted her and her family's I-485 applications through the mail on December 15, 2025, but they were not accepted in time to qualify for the exception established in the Federal Register Notice, even though as of December 27, 2025, "[t]he priority date listed on the U.S. visa bulletin [as of December 27, 2025] is July 22, 2012." Id. ¶ 15. Pursuant to the Federal Register Notice, Francisca Doe and her family's parole would terminate in January 2026. Id. ¶ 13.

C.    *John Doe*

John Doe is a Salvadoran national living in Texas. Pls.' Third Suppl. Mot. to Proceed Under Pseudonym Ex. 4, ¶¶ 1–2 ("John Doe Decl.") [Doc. No. 214-4]. John Doe's father, a U.S. citizen, filed an I-130 family-based petition for John Doe in August 2018. Id. ¶ 6. The petition

was approved in October 2019. Id. John Doe's immigration visa priority date for an F1 visa preference category is August 20, 2018. Id.

In July 2023, the United States government invited John Doe's father to sponsor John Doe for the FRP process. Id. ¶ 10. John Doe received travel authorization in January 2024. Id. Before leaving El Salvador, John Doe paid for and underwent medical examinations, at a cost of approximately $650, sold his vehicle and belongings, and ended the lease on his apartment. Id. ¶ 11. John Doe arrived in the United States in March 2024, where he was inspected and interviewed by immigration officers. Id. ¶ 12. He was granted parole for a three-year period. Id. ¶¶ 12–13. John Doe received his work authorization in April 2024. Id. ¶ 13.

John Doe notes that, as of December 24, 2026, he has "not received any notice of this termination [of parole] in the mail or in [his] MyUSCIS account" and is consequently unsure how to prepare for the termination. Id. ¶ 19.

John Doe has not yet filed an adjustment of status application because his priority date is not current. Id. ¶ 7, 16. John Doe's parole and work authorization would therefore terminate on January 14, 2026, pursuant to the Federal Register Notice. Id. ¶ 17.

D.    *Jose Doe*

Jose Doe is a Honduran national living in Florida with his wife and two children. Jose's children are United States citizens. Pls.' Third Suppl. Mot. to Proceed Under Pseudonym Ex. 5, ¶¶ 1–3 ("Jose Doe Decl.") [Doc. No. 214-5].[13] Jose Doe and his family are the beneficiaries of

---

[13] Jose Doe and his wife had previously lived in the United States for four years from 2018 to 2022, while his wife had an exchange visitor visa. Jose Doe Decl. ¶ 7 [Doc. No. 214-5]. Their son was born in the United States during this time. Id. Jose Doe's daughter is ten months old and was born after Jose Doe and his family returned to the United States after being granted family reunification parole. Id. ¶¶ 2–3.

an I-130 family petition filed in October 2012, by Jose Doe's father, who is a U.S. citizen. Id. ¶¶ 5–6. Jose Doe and his wife qualify for an immigrant visa in the F3 visa preference category, and their priority date is October 3, 2012. Id. ¶ 6. Jose Doe's father's I-130 petition was approved in June 2013. Id.

In August 2023, Jose Doe's father received an invitation from the United States government for Jose Doe and his wife to participate in the family reunification parole process. Id. ¶ 8. After his application was approved, Jose Doe and his wife completed medical exams at a cost of approximately $500 each. Id. ¶ 9.

In January 2024, Jose Doe and his wife sold everything they had to come to the United States. Id. ¶ 10. They underwent additional screening when they arrived in the United States and both received a three-year grant of parole in March 2024. Id. ¶ 11. They applied for and received work authorization in April 2024. Id.

Jose Doe regularly checks his online USCIS account and has kept his address current with the government. Id. ¶ 18. He claims he has "not received any message from the government, in [his] online USCIS account or through the mail" regarding the termination of grants of family reunification parole. Id.

Neither Jose Doe nor his wife have filed their adjustment of status applications because neither of their priority dates are current. Id. ¶ 14. Accordingly, pursuant to the Federal Register Notice, Jose Doe and his wife's parole and work authorization would terminate on January 14, 2026. Id. ¶ 13.

E.    *Luciana Doe*

Luciana Doe is a Colombian national residing in Texas with her daughter. See Pls.' Third Suppl. Mot. to Proceed Under Pseudonym Ex. 6, ¶¶ 1–2 ("Luciana Doe Decl.") [Doc. No. 216-6]. In December 2017, Luciana Doe's mother filed a Form I-130 application for Luciana Doe. Id.

20

¶ 3. Because Luciana Doe's parents are lawful permanent residents, Luciana Doe will be eligible to apply for a family-based visa in the F2B category. Id. Luciana Doe's priority date to apply for an adjustment of status to that of a lawful permanent resident is December 1, 2017. Id. In December 2020, Luciana Doe's mother's Form I-130 application was approved. Id.

In August 2023, the United States government invited Luciana Doe's sister, a United States citizen, to sponsor Luciana Doe through the FRP process. Id. ¶¶ 2, 5. Luciana Doe was granted travel authorization in December 2023 but waited until her daughter's authorization was granted in February 2024 to travel to the United States. Id. ¶ 7. Luciana Doe completed a comprehensive medical examination at a cost of approximately $1,600, sold her car, apartment, and all her possessions, and left her university studies. Id. ¶¶ 6–8. She has not yet filed an adjustment of status application because her priority date is not current. Id. ¶ 3. As a result, Luciana Doe's parole and work authorization would terminate on January 14, 2026.

## IV.    Standing and Jurisdiction

Defendants contend the new Plaintiffs lack standing and that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes this court's review of Plaintiffs' challenge of the Federal Register Notice entirely, including Plaintiffs' motion to modify the class definition. Defs.' Opp'n to Pls.' Mot. to Modify Class Definition 8–9 [Doc. No. 234].

As to standing, Defendants do not challenge Plaintiffs' claimed injury-in-fact. Defendants do contend, however, that these injuries are not traceable to Defendants' actions because the granting of parole is discretionary and because "termination of the FRP programs does not prevent the FRP Plaintiffs . . . from requesting parole outside of that program by filing a form I-131, as is contemplated by the FRP [Federal Register Notice]." Id. They further argue that any injury cannot be redressed by any relief that enjoins the Federal Register Notice or declares it

unlawful because such an order "would not create any enforceable legal obligations toward

them . . . concerning their continued parole or any additional pending applications for benefits."

Id. at 9. Federal officials, Defendants note, would still possess the same discretion to terminate

individual grants of parole. Id. Further, Defendants argue Plaintiffs may request DHS for a new

period of parole outside of the terminated program, which could be granted "based on the alien's

demonstration of urgent humanitarian reason or significant public benefit" pursuant to 8 U.S.C.

§ 1182 (d)(5)(A). Id.

These arguments are unavailing. Plaintiffs have standing even though they seek

discretionary benefits to which they cannot claim a legal entitlement. Fed. Election Comm'n v.

Akins, 524 U.S. 11, 25 (1998) ("[T]hose adversely affected by a discretionary agency decision

generally have standing to complain that the agency based its decision upon an improper legal

ground."). Plaintiffs who were paroled into the United States were awarded grants of parole that

are now being terminated by Defendants' actions. That such a grant was discretionarily awarded

does not change that the current termination can be traced back to Defendants' actions.

Additionally, the existence of a hypothetical other avenue for relief—offered without specifics or

timing to make it a potential alternative to the termination of parole—does not defeat Plaintiffs'

claim that their injuries are traceable to the challenged actions.

Plaintiffs need not prove that DHS could not cause Plaintiffs' same injuries through some

other action to satisfy the redressability requirement. Though the Secretary could in the future

revoke noncitizens' parole and subsequently place them in removal proceedings, this point does

not go to the issue of standing. At issue here is whether enjoining Defendants' actions would

redress the early—and, as Plaintiffs allege, improper—termination of Plaintiffs' parole and

subsequent injuries Plaintiffs are likely to face. It would.

Plaintiffs have alleged an injury-in-fact, caused by Defendants, that may be redressed by the court. Accordingly, Plaintiffs have standing to challenge Defendants' termination of existing grants of family reunification parole.

Defendants additionally argue that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes this court's review of "Plaintiffs' challenge to the FRP [Federal Register Notice] and to the termination of each grant of parole." Defs.' Opp'n to Pls.' Mot. to Modify Class Definition 9 [Doc. No. 234]. That is incorrect.

The court has already addressed this argument in its order granting Plaintiffs' preliminary injunction. Doe v. Noem, No. 1:25-CV-10495-IT, 2026 WL 184883, at *7–8 (D. Mass. Jan. 25, 2026). Accordingly, the court only briefly restates its reasoning below.

Section 1252(a)(2)(B)(ii) establishes that no court shall have jurisdiction to review:

> [A]ny . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii). It is uncontroversial that the decision whether to terminate individual FRP grants is within the Secretary's discretion. Under 8 U.S.C. § 1182(d)(5)(A), Congress has placed, by statute, individual parole determinations, and the decision to revoke grants of parole, within the Secretary's discretion.

But whether Congress, by statute, also sought to divest courts of jurisdiction to hear challenges to the procedures employed by the Secretary to reach such determinations is a separate question. In short, at issue is not whether the Secretary may exercise her discretion to terminate an individual's parole—she may—but rather whether the procedures adopted in this case for the exercise of such discretion are in accordance with law. See, e.g., Castaneira v. Noem, 138 F.4th 540, 549 (D.C. Cir. 2025) ("In other words, the issue before us is whether 8

23

U.S.C. § 1154(a)(1)(A)(viii)(I), in granting USCIS 'sole and unreviewable discretion' to 'determine[ ] that the citizen poses no risk,' also affords the agency discretion to depart from its own binding regulations or precedents in making this determination. We hold that it does not."). The answer to that question is no.

 Here, Plaintiffs seek to challenge the procedure, or lack thereof, relied upon to terminate Plaintiffs' grants of parole.

The statute is silent on whether the procedure relied on to terminate grants of parole is likewise left to the discretion of the Secretary. In Kucana v. Holder, 558 U.S. 233 (2010), in considering whether Section 1252(a)(2)(B)(ii) barred judicial review of an administrative determination, the Supreme Court emphasized "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." Id. at 251. "When a statute is 'reasonably susceptible to divergent interpretation, [the Court] adopt[s] the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" Id. (citing Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995)).

Pursuant to Kucana, the First Circuit has further held that "a statutory provision must expressly and specifically vest discretion in the Attorney General (for example, by explicitly using the words 'in the discretion of the Attorney General') rather than simply leave to the executive branch certain decisions and determinations that happen to be discretionary in nature." Valerio-Ramirez v. Sessions, 882 F.3d 289, 294 (1st Cir. 2018). Here, where the statute does not explicitly state that the procedures employed by the Secretary are left entirely to her discretion, the court declines to adopt an interpretation that would run counter to the presumption of

reviewability. Accordingly, the court finds Section 1252(a)(2)(B)(ii) does not bar the court's jurisdiction.

## V.    Class Treatment

The court previously certified a class with several subclasses in its Amended Order Granting Class Certification [Doc. No. 108]. Plaintiffs' Motion to Modify Class Definition [Doc. No. 219] sought to modify one of the previously certified subclasses to include individuals subject to the termination of FRP grants. Pls.' Mot. to Modify Class Definition [Doc. No. 219].

"An order that certifies a class action must define the class and the class claims, issues, or defenses[.]" Fed. R. Civ. P. 23(c)(1)(B). "When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). A court may alter or amend such an order at any point prior to issuing a final judgment. Fed. R. Civ. P. 23(c)(1)(C).

### A.    *Rule 23(a) Requirements*

Under Rule 23(a), one or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The subclass defined in the court's Order Modifying Class Definition and Appointing Additional Named Plaintiffs [Doc. No. 241] (the "FRP Termination Subclass") satisfies each of these requirements.

1.  Numerosity

The FRP Termination Subclass is numerous because it includes at least 7,776 members. Kernochan Decl. ¶ 15 [Doc. No. 250-1] (claiming USCIS found "7,776 FRP parolees who were identified to have their parole terminated under the terms of the [Federal Register Notice]"). Defendants do not dispute these figures and raise no arguments that the numerosity requirement has not been met. The court therefore finds the subclass fulfills the numerosity requirement.

2.  Commonality

The subclass also meets the commonality requirement, as it shares common issues of law and fact capable of class-wide resolution.

"What matters to class certification . . . is not the raising of common 'questions' . . . but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)) (first alteration in original) (citation omitted). "Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a permissive application." In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 19 (1st Cir. 2008) (citation omitted).

a.  Commonality in Agency Actions

All members of the subclass challenge the Defendants' categorical revocation of their grants of parole. That revocation was made on the same terms for every subclass member. The subclass therefore shares a common injury which could be resolved by answering a common question. Accordingly, the subclass fulfills the commonality requirement.[14]

---

[14] Defendants' initial opposition argued that modifying the Early Revocation Parole Class, which included individuals affected by the termination of parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans, to include noncitizens affected by the Federal Register Notice would eliminate commonality and typicality because the class members would be challenging

b.  Common Question

Defendants state that the FRP Termination Subclass, as currently defined, includes individuals in different circumstances and therefore cannot meet the commonality requirement. Defs.' Opp'n to Pls.' Mot. to Modify Class Definition 12 [Doc. No. 234].

The FRP Termination Subclass, Defendants contend, may include "individuals whose priority dates occurred prior to December 15, 2025, who have already applied for, and been denied adjustment of status." Id. at 12–13. With respect to those individuals, Defendants contend that "termination of parole is merely a culmination of the overall FRP programs and [these Plaintiffs] cannot claim the same legal injury or reliance interests as those who are still awaiting an available visa to apply for adjustment of status." Id. at 13.

Yet, Defendants do not suggest that individuals who have been denied adjustment of status would subsequently have their parole immediately terminated upon receiving the denial. In the absence of such an outcome, these individuals would be able to remain in the United States until their parole grant expires. The Federal Register Notice establishes two exceptions where FRP recipients' grants of parole would not terminate on January 14, 2026. The first exception is if a parolee has filed a Form I-485, Application to Register Permanent Residence or Adjust States that has been postmarked or electronically filed by December 15, 2025, and is still pending adjudication as of December 15, 2025. Termination of Family Reunification Parole

---

two different agency actions. Defs.' Opp'n to Pls.' Mot. to Modify Class Definition 10–11 [Doc. No. 234]. After the court entered its Order Modifying Class Definition and Appointing Additional Named Plaintiffs [Doc. No. 241] creating a distinct subclass covering only FRP parolees, Defendants have since noted they "do not re-assert their argument that Plaintiffs improperly sought to merge the new proposed class with a preexisting class who challenged a separate agency action." Defs.' Further Opp'n to Pls.' Mot. to Modify Class Definition 2 n.2 [Doc. No. 252].

Processes, 90 Fed. Reg. at 58032–33.[15] In the case Defendants describe, the individuals would not have an application that is still pending adjudication. These individuals, therefore, would not be exempt from the termination and would suffer the same injury as other class members: premature termination of their parole. This is true even if such plaintiffs would not be able to adjust status in the future.[16]

Defendants additionally allege that the class may include, for example, individuals who "may be in Section 240 removal proceedings for any number of reasons, including the commissions of crimes." Defs.' Opp'n to Pls.' Mot. to Modify Class Definition 13 [Doc. No. 234]. If those individuals have already had their parole individually revoked because of those proceedings, they would not be subject to the Federal Register Notice rescinding grants of parole on a categorical and *en masse* basis and, accordingly, would not be a member of the class. And if they have not had their parole individually revoked, losing their grant of parole would mean the loss of a benefit conferred to them, even if they may be subject to removal in the future for another reason. Accordingly, this possibility of other proceedings would not undermine the commonality of this injury.

On a related note, Defendants argue that "FRP parolees are not precluded from filing other benefit requests . . . if they are victims of crime, trafficking or domestic abuse." Id. In such cases, Defendants contend that "the termination of . . . FRP parole would have different

---

[15] The second is if the Secretary of Homeland Security "determines otherwise on a case-by-case basis." Termination of Family Reunification Parole Processes, 90 Fed. Reg. at 58032–33.

[16] Defendants note this group would also include "individuals in the class whose adjustment applications have already been filed and may be denied prior to January 14, 2026." Defs.' Opp'n to Pls.' Mot. to Modify Class Definition 13 [Doc. No. 234]. Similarly, such group would then experience the same injury of having their parole terminated prematurely.

significance." Id.[17] Yet, that some Plaintiffs may be able to apply for other forms of relief does not alter that these Plaintiffs will have experienced an injury if their parole is improperly revoked, particularly where that revocation of parole may impact their eligibility for other forms of relief.

The common question that applies to all Plaintiffs is whether Defendants have properly revoked Plaintiffs' parole status or whether Defendants must abide by the original expiration dates of each Plaintiffs' grant of parole. Plaintiffs all seek a common remedy: the reinstatement of their parole. That different Plaintiffs may experience different downstream injuries based on individual circumstances does not negate that they seek a common remedy.

        c.   Individuals with Permanent Status

Defendants contend that at least one individual in the class has already received a certificate of citizenship. Defs.' Opp'n to Pls.' Mot. to Modify Class Definition 13 [Doc. No. 234]. An individual paroled into the United States pursuant to a humanitarian parole program who is now lawfully in the United States not based on parole or a non-immigrant visa, but as a lawful permanent resident or citizen, does not have commonality with those who do not yet have that status. But such an individual also does not fall within the class, which the court has limited to those individuals "who have received a grant of parole that is subject to the [Federal Register Notice] rescinding individual grants of parole on a categorical and en masse basis." Order

---

[17] Defendants cite numerous other potential differences where some Plaintiffs may have "another basis for remaining in the United States notwithstanding their parole termination." Defs.' Opp'n to Pls.' Mot. to Modify Class Definition 13 [Doc. No. 234]. Defendants note this could include individuals who were granted TPS; individuals who have since arriving to the United States married United States citizens or lawful permanent residents and who "may now qualify as an immediate relative eligible for a visa without awaiting a priority date[;]" individuals who have been granted employment-based visas; and Cuban FRP parolees who may be eligible to apply for adjustment of status under the Cuban Adjustment Act. Id.

Modifying Class Definition and Appointing Additional Named Plaintiffs [Doc. No. 241]. Where such an individual has had their status adjusted to be a lawful permanent resident or citizen, such individual is not subject to the Federal Register Notice.

### 3. Typicality

The claims of the representative Plaintiffs, accounting for the addition of the new Class Representatives described above, are typical of the claims of the modified class. "[P]laintiff[s] can meet [the typicality] requirement by showing that [their] injuries arise from the same events or course of conduct as do the injuries of the class, and that [their] claims are based on the same legal theory as those of the class." In re Bos. Sci. Corp. Sec. Litig., 604 F. Supp. 2d 275, 282 (D. Mass. 2009). The claims of the representative Plaintiffs described above are typical in that all class members advance the same arguments as to why the categorical termination of their grants of parole, their common injury, was unlawful.

### 4. Fair and Adequate Representation of Class Interests

The representative Plaintiffs fairly and adequately protect the interests of the subclass. "The First Circuit requires two elements to establish adequacy under Rule 23(a)(4): (1) 'that the interests of the representative party will not conflict with the interests of any of the class members,' and (2) 'that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'" Bowers v. Russell, 766 F. Supp. 3d 136, 148–49 (D. Mass. 2025) (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985)). The interests of the representative Plaintiffs will not conflict with those of any subclass members because the Defendant's revocation of parole status applies equally to representative Plaintiffs and subclass members. Additionally, DHS's reasoning in support of its decision to terminate parole grants did not depend on circumstances specific to only certain members of the

subclass. Finally, this court finds that Plaintiffs' attorneys are qualified, experienced, and able to vigorously conduct the proposed litigation.

Therefore, the Rule 23(a) requirements are satisfied as to the Early Revocation Parolee Class.

B.    *Rule 23(b)(2)*

Plaintiffs argue that certification is appropriate here under Fed. R. Civ. P. 23(b)(2), where Defendants have "acted or refused to act on grounds that apply generally to the class." Mem. ISO Mot. to Modify Class 11 [Doc. No. 220]. "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a <u>different</u> injunction or declaratory judgment against the defendant." <u>Wal-Mart</u>, 564 U.S. at 360.

Defendants argue that vacatur of the Federal Register Notice will not redress the injuries of all class members due to the individualized circumstances of class members. Defs.' Opp'n to Pls.' Mot. to Modify Class Definition 15–16 [Doc. No. 234]. The "crux" of the subclass's claimed injury, Defendants contend, "is that some of these individuals may lose employment and will have to self-deport, lest they accrue unlawful presence or risk being placed in expedited removal or § 1229a removal proceedings." <u>Id.</u> at 16. From this, Defendants conclude that no single injunction could prevent these events for each class member because parole "is, by definition, temporary," meaning class members could be placed in removal proceedings or expedited removal notwithstanding the Federal Register Notice. <u>Id.</u>

Defendants' argument, like their arguments with respect to commonality, misconstrue Plaintiffs' injury and the relief sought. Plaintiffs' injury is not the risk of being placed in removal proceedings, and Plaintiffs are not seeking continued employment authorization or continued lawful presence for class members. Instead, Plaintiffs' alleged injury is an improper termination

of parole status, which may in turn precipitate significant risks, including a risk of removal, loss of work authorization, and the potential accrual of unlawful presence.

That in the future Plaintiffs may otherwise lose their grant of parole for different reasons is irrelevant to Plaintiffs' claims. The relief sought is a return to the *status quo ante* regarding the end date of their respective grants of parole, not the indefinite preservation of their grants of parole. This relief would remedy Plaintiffs' injuries entirely. And enjoining the Federal Register Notice would provide all class members, regardless of their individualized circumstances, with this relief.

Accordingly, certification under Rule 23(b)(2) is appropriate here.

C.    *Impact of Notice on Creation of Subclass*

In their <u>Further Opposition to Plaintiffs' Motion to Modify Class Definition</u> [Doc. No. 252], Defendants additionally contend that the subclass does not meet the commonality and typicality requirements because class members differ on whether they received notice of their termination of parole status. <u>Id.</u> at 2–5.

This court's grant of a temporary stay found that publication of the Federal Register Notice alone did not constitute written notice as required by 8 C.F.R. § 212.5(e)(2)(i). Temporary Restraining Order 3 [Doc. No. 243]. The Federal Register Notice, however, indicated that it would separately provide parole recipients with individual notice, either online through their myUSCIS account for Modernized FRP parolees or by mail for Legacy FRP parolees. Termination of Family Reunification Parole Processes, 90 Fed. Reg. at 58045. Where no evidence submitted indicated that notice had been provided to all parolees, the court found Plaintiffs had shown a likelihood of success as to their claim that the termination was improper to justify granting a temporary stay. Temporary Restraining Order 4 [Doc. No. 243].

Defendants contend that, to the extent that the claims in this case turn on whether each class member received individualized notice, the receipt of individualized notice is not a common question among class members. Further Opposition to Plaintiffs' Motion to Modify Class Definition 3 [Doc. No. 252]. USCIS's supporting declaration explains that USCIS provided 3,589 parolees with electronic notice on January 5, 2026, nine days before the January 14, 2026, revocation date. Suppl. Kernochan Decl. ¶ 8 [Doc. No. 275].

A brief review of the timeline of events is necessary. The Federal Register Notice, issued on December 15, 2025, stated that DHS would provide individual notice to all affected individuals. Termination of Family Reunification Parole Processes, 90 Fed. Reg. at 58045. Despite this assurance, no individual notice was provided at that time. Fourteen days later, on December 29, 2025, Plaintiffs filed their Motion to Modify Class Definition [Doc. No. 219]. On January 5, 2026, after another week had passed, Defendants directed the notices to only 3,589 parolees, leaving "fewer than 4,200 [people]" without individual notices. Suppl. Kernochan Decl. ¶ 8 [Doc. No. 275]. Defendants assert that they stopped any further efforts to send notices after this court issued its TRO on January 10. Kernochan Decl. ¶ 16 [Doc. No. 250-1].

According to Defendants' logic, the subclass met the commonality requirement from December 29 to January 5 but no longer met that requirement once Defendants sent notice to some of the parolees. Applying this reasoning, had the court ruled on Plaintiffs' motion before January 5, there would be no commonality issue because no one had received notice. Had Defendants issued all notices at once, then the class would have continued to satisfy the commonality requirement after January 5. But, because Defendants chose to only send out some notices after receiving Plaintiffs' motion, Defendants' own actions during the pendency of the litigation would thwart commonality. The court rejects this logic and instead evaluates Plaintiffs'

33

motion at the time that it was filed. At that point, the legal impact of class members receiving no individual notice presented a common question that could be resolved by an answer common to all class members. That some class members received notice two weeks later is not a sufficient basis to find a lack of commonality.

## VI.    Conclusion

For the foregoing reasons, the court's <u>Electronic Order</u> [Doc. No. 238] granted Plaintiffs leave to file a supplemental complaint that would include "the proposed additional named Plaintiffs who claim to be affected by the issuance of the Family Reunification Program Federal Register Notice . . . [,] any allegations relevant to either or both of the December 2025 actions[,] and Plaintiffs' proposed eighth claim for relief as it applies to the December 2025 actions only." <u>Id.</u> The court also reaffirms its <u>Order Modifying Class Definition and Appointing Additional Named Plaintiffs</u> [Doc. No. 241] granting Plaintiff's <u>Motion to Modify Class Definition</u> [Doc. No. 219].

March 11, 2026                              /s/ Indira Talwani
                                              United States District Judge