2026 WL 555624
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

VALENTINA AMARO BOWSER
and BRANDON BOWSER, Plaintiffs,

v.

KRISTI NOEM, Secretary, U.S. Department
of Homeland Security; JOSEPH B. EDLOW,
Director U.S. Citizenship and Immigration Services;
JERRY SCOTT AMMONS, Field Office Director,
U.S. Citizenship and Immigration Services,
Boston Field Office; U.S. DEPARTMENT OF
HOMELAND SECURITY; and U.S. CITIZENSHIP
AND IMMIGRATION SERVICES, Defendants.

Civil Action No. 26-CV-10382-AK
|
Filed 02/27/2026

**Attorneys and Law Firms**

Anthony Drago Jr., Anthony Drago, Jr., P.C., Boston, MA, for Plaintiffs.

Michael Fitzgerald, DOJ-United States Attorney's Office, Boston, MA, for Defendants Kristi Noem, Joseph B. Edlow, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, Boston Field Office, U.S. Citizenship and Immigration Services.

## MEMORANDUM AND ORDER ON PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION REQUIRING ADJUDICATION OF PENDING APPLICATION

Hon. Angel Kelley United States District Judge

**\*1** On January 27, 2026, Plaintiffs Valentina Amaro Bowser ("Amaro Bowser"), a Venezuelan national living and working in Massachusetts on a valid H-1B visa, and Brandon Bowser ("Bowser"), her U.S. Citizen spouse, filed a Complaint requesting that the Court order the adjudication of their long-pending I-130 (Petition for Non-Citizen Relative), I-485 (Application to Register Permanent Residence or Adjust Status), and I-765 (Application for Employment Authorization) Applications. [Dkt. 1]. On February 6, 2026, Plaintiffs filed this Emergency Motion for

Preliminary Injunction Requiring Adjudication of Pending Application, requesting an order to adjudicate the I-765 Application by February 28, 2026 at which point Amaro Bowser will permanently lose her current job as the Media Director for the Commonwealth of Massachusetts. [Dkt. 5]. Defendants opposed. [Dkt. 17]. At the Courts request, Plaintiffs filed a Reply specifically addressing Defendants' claims regarding the Court's lack of jurisdiction. [Dkt. 19]. For the following reasons, Plaintiffs' Emergency Motion for Preliminary Injunction Requiring Adjudication of Pending Application is **GRANTED.**

## I. BACKGROUND

### A. USCIS Hold

On January 25, 2025, President Trump's first day in office, he issued Executive Order 14161 ("EO 14161"), which directs enhanced vetting for "all aliens who intend to be admitted, enter, or are already inside the United States," focusing on "aliens coming from regions or nations with identified security risks." EO 14161, § 2. On June 4, 2025, President Trump issued Presidential Proclamation 10949, which "implemented initial findings of the ongoing review and directed continued assessment of vetting procedures." [Dkt. 17 at 2 (citing Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025)). The Proclamation specifically identified 19 nations as Countries of Identified Concern, including Venezuela, which was targeted for the "Partial Suspension of Entry for Nationals." Proclamation No. 10949, 90 Fed. Reg. at 24501-02. A further Proclamation, issued on December 16, 2025, expanded the list of Countries of Identified Concern to 39 nations. Proclamation No. 10998, 90 Fed. Reg. 59717 (Dec. 16, 2025).

In response to these Proclamations, the Department of Homeland Security, on December 2, 2025, issued Policy Memorandum PM-602-0192, titled "Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries." Relevant here, PM-602-0192 "[p]lace[s] a hold on pending benefit requests for aliens from countries listed" in Proclamation 10949, including Venezuela. Dep't of Homeland Sec., USCIS, Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries, PM-602-0192 (December 2, 2025) ("PM-602-1092"). A later issued Policy Memorandum, PM-602-0194 issued on January 1, 2026, states that a "hold" allows a benefits request to proceed fully through processing, but prevents any final adjudication,

meaning a final decision on a case such as an approval, denial, or dismissal. Dep't of Homeland Sec., USCIS, Hold and Review of USCIS Benefit Applications Filed by Aliens from Additional High-Risk Countries, PM-602-0194, at 1 n.2 (January 1, 2026) ("PM-602-0194").

**\*2** The length of this hold is unclear at best, with competing provisions within both PM-602-0192 and PM-602-0194. Both Policy Memoranda state, "[t]his hold will remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum." PM-602-0192, at 2-3; PM-602-0194, at 3. However, later in PM-602-0192, the Policy Memorandum reads, "[w]ithin 90 days of issuance of this memorandum, USCIS will prioritize a list for review, interview, re-interview, and referral to ICE and other law enforcement agencies as appropriate, and, in consultation with the Office of Policy and Strategy and the Fraud Detection and National Security Directorate, issue operational guidance." PM-602-0192, at 3. PM-602-0194 includes a similar 90-day provision. PM-602-0194, at 5. Neither Policy Memoranda explain what happens with the created list or the nature of any forthcoming operational guidance. Finally, PM-602-0194 added a list of exceptions to the hold, allowing for final adjudication of certain applications in some circumstances. Id. at 4-5.

### B. The Plaintiffs

In 2013, Amaro Bowser entered the United States with a valid F-1 visa to attend university in Miami, Florida. [Dkt. 6 at 1-2]. After transferring, she graduated from Emerson College in Boston, Massachusetts, in May of 2018 with a degree in Marketing and Political Communications. [Id. at 2]. After graduating, Amaro Bowser began working with a valid Employment Authorization Document. [Id.]. She then subsequently received an H-1B visa, a nonimmigrant classification that applies to people who wish to perform services in a specialty occupation, which was later extended. [Id.]. In 2023, Amaro Bowser began working in her current role as Media Director for the Commonwealth of Massachusetts, in line with her prior education and work experience. [Id.]. "All told, the Plaintiff has been granted two (2) F-1 visas and two (2) H-1B visas by the U.S. Department of State and has never violated the terms of any visa she properly obtained. Further, the Plaintiff has never been arrested or charged with a crime anywhere in the world ...." [Id. at 3]. Based on her existing approvals and pending applications, Amaro Bowser could continue in her current role until February 14, 2026. [Id.]. The

Commonwealth agreed to keep her role open until February 28, 2026. [Id. at 5].

Turning to the Plaintiffs' pending applications, on November 29, 2024, Amaro Bowser married her now spouse, Brandon Bowser, a U.S. citizen. [Id. at 3]. On January 8, 2025, more than a year before the expiration of her employment authorization and nearly a year before the issuance of PM-602-0192, Bowser filed a Form I-130, known as a Petition for Non-Citizen Relative. [Id.]. On the same day, Amaro Bowser filed a Form I-485, known as an Application to Register Permanent Residence or Adjust Status. [Id.]. "On July 10, 2025, November 6, 2025, and again on November 26, 2025, the Defendant, USCIS, fingerprinted the Plaintiff in connection with her pending Form I-485." [Id.]. On December 3, the Plaintiffs were scheduled for an interview in connection with their pending applications, which was successfully completed on January 7, 2026. [Id. at 4]. At the interview, the USCIS officer indicated that there were no issues with the interview, but PM-602-1092 prevented a final adjudication. [Id.].

Separately, by December of 2025, Plaintiffs recognized their applications had been pending significantly longer than the anticipated processing time of 7.5 months. [Id. at 4]. In light of the February expiration of her work authorization, on December 11, 2025, Amaro Bowser filed a Form I-765, known as an Application for Employment Authorization. [Id. at 3], which would allow her to remain in her role pending adjudication of the Plaintiffs' other applications. [Id.].

### C. Framework for Adjustment of Status and Employment Authorization

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., authorizes certain individuals to apply for immigrant visas or lawful permanent residence, including spouses of U.S. citizens legally present in the United States. See 8 U.S.C. § 1255(a); 8 U.S.C. § 1151(a)(1) & (b)(2)(A)(i); see also Dep't of Homeland Sec., USCIS, Green Card for Immediate Relatives of U.S. Citizen, at https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-immediate-relatives-of-us-citizen (last visited February 26, 2026). According to Section 1255(a), "[t]he status of an alien who was inspected and admitted ... into the United States ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible

to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." To the last point, "[f]or immediate relatives of United States citizens, including spouses ..., an immigrant visa number is automatically available upon approval of the visa petition." Succar v. Ashcroft, 394 F.3d 8, 14 n.6 (1st Cir. 2005). This process is initiated by the filing of Form I-130 by the U.S. citizen spouse, establishing the qualifying relationship, and the filing of Form I-485 by the applicant for adjustment of status. After submitting the I-485, applicants must provide biometric data, including fingerprints, a photograph, and signature, which will be used to verify the applicant's identify and conduct required background and security checks. Dep't of Homeland Sec., USCIS, Green Card for Immediate Relatives of U.S. Citizen, at https://www.uscis.gov/green-card/green-card-eligibility/green-card-for-immediate-relatives-of-us-citizen (last visited February 26, 2026). In most cases, and as required for nationals of Venezuela, the applicant will then take part in an interview with a USCIS officer. Id.; PM-602-0192, at 1 n.6. Only then will the applicant receive a final adjudication.

**\*3** An applicant for adjustment of status may also apply for employment authorization using Form I-765. 8 C.F.R. § 274a.12(c)(9). Of note, as stated in PM-602-0194, "when USCIS approves an individual's Form I-485 [(adjustment of status)], any associated or underlying applications, such as Form I-765 [(employment authorization)], will be automatically terminated, as the benefit provided by the ancillary form is no longer necessary." PM-602-0194, at 5 n.17.

## II. LEGAL STANDARD

The "extraordinary and drastic" remedy of a preliminary injunction requires a showing of four elements: (1) substantial likelihood of success on the merits; (2) a high likelihood of irreparable harm if injunctive relief is not granted; (3) a balance of equities tips in the movant's favor; and (4) the injunctive relief is in the public interest. See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 19-20 (2008)). The last two factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The most important of the four elements is the likelihood of success on the merits. Ryan v. U.S. Immigr. & Customs Enf't, 974 F.3d 9, 18 (1st Cir. 2020) (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)). However, "[a]t this stage, courts use a sliding-scale approach between likelihood of success on the merits

and likelihood of irreparable harm, such that '[t]he strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.' " Nantucket Wine & Food Festival, LLC v. Gordon Cos., Inc., 759 F. Supp. 3d 259, 280-81 (D. Mass. Dec. 12, 2024) (quoting Braintree Labs., Inc. v. Citigroup Glob. Mkts. Inc., 622 F.3d 36, 43 (1st Cir. 2010)).

The evaluating court need not conclusively determine the merits of the movant's claim but should evaluate the likelihood or not that the movant will prevail on the merits. Id. (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc. (Ross-Simons I), 102 F.3d 12, 16 (1st Cir. 1996)). The court may accept as true well-pleaded allegations in the complaint and uncontroverted affidavits. Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc., 759 F. Supp. 2d 110, 114 n.2 (D. Mass. Dec. 22, 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350 n.1 (1976)). The court may also rely upon otherwise inadmissible evidence in deciding a motion for preliminary injunction. Howe v. U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr. Series 2016-CTT, 440 F. Supp. 3d 99, 102 (D. Mass. Feb. 13, 2020) (citing Asseo v. Pan Am. Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986)).

## III. DISCUSSION

In their Emergency Motion for Preliminary Injunction Requiring Adjudication of Pending Application [Dkt. 5], Plaintiffs argue that USCIS's hold on the adjudication of benefits applications is arbitrary and capricious. Before turning to the merits, Defendants claim this Court lacks jurisdiction over the claim because Section 1252(a)(2)(B)(ii) bars jurisdiction and the Policy Memoranda do not constitute final agency action. [Dkt. 17]. The Court will address each of the jurisdictional arguments and the merits below.

### A. Jurisdiction

#### 1. Section 1252(a)(2)(B)(ii)

Section 1252, titled "Judicial review of orders of removal," provides in relevant part: "[N]o court shall have jurisdiction to review ... any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security ...." 28 U.S.C. § 1252(a)(2)(B)(ii). Defendants thus argue that the provision of an Employment Authorization Document is left to the discretion of the Secretary of Homeland Security.

See 8 U.S.C. § 1324(a)(h)(3); Ariz. Dream Act Coal. v. Brewer, 757 F.3d 1053, 1062 (9th Cir. 2014). However, this misunderstands the nature of Plaintiffs' claim. They do not contest the adjudication of their applications to adjust status or for employment authorization; instead, they seek review of the *failure to adjudicate* the application. "An overarching problem with Defendants' argument is that numerous courts have concluded that subsection (B)(ii) only precludes judicial review of decisions denying discretionary relief on individual applications and does not preclude judicial review of the Government's decision to categorically act or withhold action." Varniab v. Edlow, No. 25-CV-10602-SVK, 2026 WL 485490, at *7 (N.D. Cal. Feb. 20, 2026) (collecting cases).

 **\*4**  Further, a panoply of courts have found that "while it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all." Tang v. Chertoff, 493 F. Supp. 2d 148, 154 (D. Mass. June 26, 2007). Conversely, Defendants cite to a single case for the proposition that the grant of discretion for adjudication strips jurisdiction over "challenges to policies to 'hold' such applications 'in abeyance.' " [Dkt. 17 at 8 (citing Patel v. Jaddou, 695 F. Supp. 3d 158, 173 (D. Mass. Sep. 27, 2023)). This citation is unavailing. Patel involves a "retrogression hold" under which the State Department and USCIS will hold an application in abeyance until a visa is immediately available, as visas must be available both at the time of the application to adjust status and at the time the application is adjudicated. Patel, 695 F. Supp. 3d at 173. Essentially, the application is held in abeyance until a condition precedent is met—the availability of a visa at the time of adjudication. "Here, by contrast, Defendants have not identified the 'condition precedent' for the PM-0192 adjudication hold to be lifted, and no end point is apparent from the Policy Memorandum itself." Varniab, 2026 WL 485490, at *7.

Moreover, even the parties in Patel "agree[d] that § 1252(a)(2)(B)(ii) does not strip courts of jurisdiction to consider a challenge to the pace of [adjustment of status] adjudication." Patel, 695 F. Supp. 3d at 169 (citing Tang, 493 F. Supp. 2d at 153 ("The subchapter at issue specifies only that it is within the discretion of the Attorney General to adjust one's status; it does not address, much less specify any discretion associated with, the pace of application processing.")). It is important to note that while the specific remedy requested here is the adjudication of the Employment Authorization, as acknowledged in the Policy Memorandum, Employment Authorization is an "ancillary" benefit to adjustment of

status, and thus the reasoning requiring timely adjudication remains pertinent here—no employment authorization would be necessary had the Form I-485 application not been placed on hold pursuant to PM-602-0192.

On a final note, "the retrogression hold policy finds support in 8 C.F.R. § 245.2(a)(5)(ii), which provides that certain applications for adjustment of status 'shall not be approved until an immigrant visa number has been allocated by the Department of State.' " Varniab, 2026 WL 485490, at *8. No such support exists for the hold described in PM-602-0192. This is particularly true here, as Amaro Bowser's adjustment of status is based on her marriage to a U.S. citizen. The issue of visa availability upon adjudication does not exist here. Again, "[f]or immediate relatives of United States citizens, including spouses ..., an immigrant visa number is automatically available upon approval of the visa petition." Succar, 394 F.3d at, 15 n.6.

Thus, in light of the above, Section 1252(a)(2)(B)(ii) does not strip this Court of jurisdiction.

### 2. Final Agency Action

As discussed above, Plaintiffs contend the Policy Memoranda are arbitrary and capricious in violation of the Administrative Procedure Act ("APA"). Before proceeding to the merits of the claim, Defendants argue the APA does not provide the Court with jurisdiction to hear the claim. The APA only allows for judicial review of "[a]gency action made reviewable by statute" and "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "The issue of whether there was final agency action implicates the jurisdiction of the federal courts, and such final action is normally a prerequisite to judicial review." Puerto Rico v. United States, 490 F.3d 50, 70 (1st Cir. 2007). Plaintiffs do not claim that the Policy Memoranda are reviewable by statute, so instead, the Policy Memoranda are only properly reviewable before this Court if they constitute final agency action. The Parties agree that the operative test to determine if an agency action is final is as follows: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (citation modified). Importantly, "[t]he cases dealing with judicial review of administrative actions have

interpreted the 'finality' element in a pragmatic way." Abbott Lab'ys v. Gardner, 387 U.S. 136, 149 (1967), abrogated by Califano v. Sanders, 430 U.S. 99 (1977).

**\*5** As to the first prong, Defendants argue that the Policy Memoranda are only "interim guidance and expressly contemplate further action: 'within 90 days ... USCIS components will review current operations and issue operational guidance.' " [Dkt. 17 at 6 (quoting PM-602-0192 at 3; PM-602-0194 at 5)]. However, it remains entirely unclear to the Court what will occur 90 days after the release of these Policy Memoranda. It seems it is unclear to Defendants as well. More specifically, PM-602-0192 reads, "[w]ithin 90 days of issuance of this memorandum, USCIS will prioritize a list for review, interview, re-interview, and referral to ICE and other law enforcement agencies as appropriate, and, in consultation with the Office of Policy and Strategy and the Fraud Detection and National Security Directorate, issue operational guidance." PM-602-0192, at 3. PM-602-0194 includes a similar provision. PM-602-0194, at 5. Neither Policy Memoranda explain what happens with the created list or the nature of any forthcoming operational guidance.

In fact, in another case nearly identical to this, when asked what the prioritized list is, counsel for the defendants stated, "I don't know about that, your Honor. I'm not sure what that would be. We would have to – my understanding is that we would wait until March to understand that further." Varniab, 2026 WL 485490, at \*15. Counsel also could not provide any information as to the nature of any forthcoming guidance or who would be providing the guidance, instead stating: "So applications that are subject to this hold would still go through all of those processes, until they are ready for the final decision, and then that's where they would be held, and then we're looking for further guidance as to kind of what to do at that point." Id. Thus, there is no actual evidence before the Court that the hold itself will be lifted after 90 days. All that remains is the following within each Policy Memoranda: "This hold will remain in effect until lifted or modified by the USCIS Director through a subsequent memorandum." PM-602-0192, at 2-3; PM-602-0194, at 3.

Just because the policy is subject to change does not mean it is interim. In fact, "all laws are subject to change. Even that most enduring of documents, the Constitution of the United States, may be amended from time to time. The fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment."

Appalachian Power Co. v. E.P.A., 208 F.3d 1015, 1022 (D.C. Cir. 2000); see also Sackett v. EPA, 566 U.S. 120, 127 (2012); U.S. Army Corps of Eng'rs v. Hawkes Co., 578 U.S. 590, 598 (2016). Further, it is of no debate that the Policy Memoranda place a hold on the adjudication of benefits applications from, together, a total of 39 countries, including Venezuela. "[A] number of cases support the proposition that significant pauses and blanket moratoria are final agency actions that cannot be exempted from judicial review merely by being characterized as intermediate." Massachusetts v. Trump, 790 F. Supp. 3d 8, 26 (D. Mass. July 3, 2025) (collecting cases); Varniab, 2026 WL 485490, at \*17 ("For example, in the immigration context, a memorandum issued by the Department of Homeland Security that called for a department-wide review of policies and practices concerning immigration enforcement and ordered an immediate 100-day pause on the removal of any noncitizen with a final order of removal was held to meet the Bennett criteria for final agency action, notwithstanding that the Secretary retained the discretion to change or abandon the nonenforcement policy at any time.") (citing Texas v. United States, 524 F. Supp. 3d 598, 642 (S.D. Tex. Feb. 23, 2021)).

Finally, Defendants seemingly argue that because the adjudication itself is not yet final, there is no consummation of agency decisionmaking. But that entirely misses the point. The issue before the Court is not if the decision regarding the benefits is final; it is if the Policy Memoranda themselves are final. According to the Defendants, "[d]uring holds, USCIS continues collecting and processing biometrics, conducting background checks through multiple databases, performing internal security screenings and case-by-case reviews, and scheduling and conducting interviews where appropriate.... This ongoing work confirms that there has been no consummation of decisionmaking regarding applications and petitions subject to the agency memoranda because USCIS has not reached any final determination on any affected application." [Dkt. 17 at 7]. Defendants are correct that no final agency action has been taken as to the benefits applications, although that decision is not reviewable by the Court for a series of other reasons discussed above. But to say that because no final adjudication of any application has been made means the Policy Memoranda are not final agency actions is entirely circular. No final adjudication has been made *because of* the hold. To follow the Defendants' reasoning would make any judicial review impossible under any circumstance.

**\*6** As this appears to be an indefinite moratorium on applications for immigration benefits from these 39 countries, including Venezuela, the first prong of <u>Bennett</u> is satisfied.

Turning to the second prong of <u>Bennett</u>, Defendants argue, "[t]he challenged memoranda are also not final actions because no rights or obligations flow from them. Instead, ... [t]he administrative process *remains ongoing*, both in terms of the memoranda themselves and the individual determinations." [Dkt. 17 at 7]. This ignores the very serious consequences that will result for Amaro Bowser and others like her as this indefinite hold remains in place. The hold itself will result in Amaro Bowser losing her ability to legally work in the United States. This is not simply the loss of employment—the hold prevents Amaro Bowser from continuing her current employment or from pursuing any other employment. With this at the forefront, "[c]ourts have regularly determined that this condition is satisfied when an indefinite pause is imposed by an agency." <u>New York v. Trump</u>, No. 25-CV-11221-PBS, 2025 WL 3514301, at \*9 (D. Mass. Dec. 8, 2025) (collecting cases); <u>Doe v. Trump, 288 F. Supp. 3d 1045, 1070 (W.D. Wash. 2017)</u> (holding that memoranda issued by agencies including DHS that suspended for at least 90 days the entry of refugees who are nationals of or residents of certain countries was a final agency action because "whether the Agency Memo produces a 'suspension' or an indefinite delay, [it] has significant real-world impacts on Plaintiffs' various situations."). Even short delays can have serious consequences. <u>Doe v. Trump, 288 F. Supp. 3d at 1070</u>; <u>Varniab, 2026 WL 485490, at \*17</u>.

Here, taking the "pragmatic" approach counseled by the Supreme Court, the Policy Memoranda announced a policy that marked the consummation of the agency's decisionmaking process, and the practical, legal consequences for the Plaintiffs are clear. As a result, the Policy Memoranda constitute final agency action and the Court has jurisdiction over the Plaintiffs' APA claim. "This conclusion is consistent with the 'well-settled' and 'strong' presumption in favor of judicial review of administrative action, which courts 'consistently' apply to 'legislation regarding immigration.' " <u>Varniab, 2026 WL 485490, at \*11</u> (first quoting <u>Guerrero-Lasprilla v. Barr, 589 U.S. 221, 229 (2020)</u>; then quoting <u>Kucana v. Holder, 558 U.S. 233, 251 (2010)</u>).

**B. The Merits**

Now that it has been established that jurisdiction exists, the Court will turn to the preliminary injunction factors as applied

to the Plaintiffs' APA claim: (1) a substantial likelihood of success on the merits; (2) a high likelihood of irreparable harm if injunctive relief is not granted; (3) a balance of equities tips in the movant's favor; and (4) the injunctive relief is in the public interest. See <u>Voice of the Arab World, Inc., 645 F.3d at 32</u>.

**1. Arbitrary & Capricious**

It has long been recognized that "[t]he agency's action ... may be set aside if found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 41 (1983)</u> (quoting <u>5 U.S.C. § 706(2)(A)</u>); see also <u>U.S. Dep't of Homeland Sec. v. Regents of Univ. of Cal., 591 U.S. 1, 16 (2020)</u> (noting that the APA "requires agencies to engage in 'reasoned decisionmaking' " (quoting <u>Michigan v. EPA, 576 U.S. 743, 750 (2015)</u>)). With that said, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." <u>State Farm, 463 U.S. at 43</u>; see also <u>Regents, 591 U.S. at 16</u>; <u>F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 513-14 (2009)</u>.

**\*7** Although the scope of review is narrow, "the court must undertake 'a thorough, probing, in-depth review' and a 'searching and careful' inquiry into the record." <u>Penobscot Air Servs., Ltd. v. FAA, 164 F.3d 713, 720 (1st Cir. 1999)</u> (quoting <u>Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16 (1971)</u>). "Only by 'carefully reviewing the record and satisfying [itself] that the agency has made a reasoned decision' can the court 'ensure that agency decisions are founded on a reasoned evaluation of the relevant factors.' " <u>Id.</u> (quoting <u>Marsh v. Or. Nat. Res. Council, 490 U.S. 360, 378 (1989)</u> (alteration in original)). To put a finer point on the issue, "[w]hile this is a highly deferential standard of review, it is not a rubber stamp." <u>Penobscot, 164 F.3d at 720</u> (quoting <u>Dubois v. U.S. Dep't of Agric., 102 F.3d 1273, 1285 (1st Cir. 1996)</u>); see also <u>Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)</u>. Agencies must provide reasons that both exhibit sufficient consideration of the relevant factors and pertinent aspects of the problem and demonstrate a rational connection between the facts and choice that was made. See <u>Regents, 591 U.S. at 16</u>. "[T]o this end, conclusory statements will not do; an 'agency's statement must be one of *reasoning*.' " <u>Amerijet Intern, Inc. v. Pistole, 753 F.3d 1343, 1350 (D.C. Cir. 2014)</u> (quoting <u>Butte Cnty.,</u>

Cal. v. Hogen, 613 F.3d 190, 194 (D.C. Cir. 2010)) (emphasis in original).

Important here, Plaintiffs do not question the wisdom of the Department of Homeland Security's decisions in implementing Presidential Proclamation 10949, titled "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats." For the purposes of argument, the reasons provided in PM-602-0192, including two incidents of violence in 2024 and 2025 that involved Afghan nationals, arguably justifies the provisions focused on the admission of those from Countries of Identified Concern, as well as those recently admitted to the country. The Proclamation itself provides additional justification, including that "a number of countries remain deficient with regards to screening and vetting. Many of these countries have also taken advantage of the United States in their exploitation of our visa system and their historic failure to accept back their removable nationals." Proclamation No. 10949, 90 Fed. Reg. at 24497. A rational connection plausibly exists between the entry, as described in the Proclamation, and the limitations imposed on entry (or recent entry) by the Policy Memoranda, as well as the contemplated new guidance.

But "Plaintiffs' arbitrary and capricious claim focuses on the hold component of PM-0192 rather than other portions of the Policy Memorandum that anticipate implementation of new re-review processes and a comprehensive review of all policies, procedures, and guidance.... [T]he adjudicatory hold extends far beyond that context because it applies to nearly all pending benefit requests from applicants such as Plaintiffs *who have already been admitted to the United States*. There is no evidence that Defendants considered reasonable alternatives to the expansive hold policy." Varniab, 2026 WL 485490, at *18-19. Here, Amaro Bowser has been in the Country for more than a decade—since 2013. "[T]he Plaintiff has been granted two (2) F-1 visas and two (2) H-1B visas by the U.S. Department of State and has never violated the terms of any visa she properly obtained. The Plaintiff has never been arrested or charged with a crime anywhere in the world ...." [Dkt. 6 at 3]. There is no reasoned explanation, beyond conclusory statements, why such a broad hold is necessary for applicants for immigration benefits like Amaro Bowser. And to this end, "[t]here is no evidence that Defendants considered reasonable alternatives to the expansive hold policy." Varniab, 2026 WL 485490, at *19 (citing AIDS Vaccine Advoc. Coalition v. U.S. Dep't of State, 766 F. Supp. 3d 74, 82 (D.D.C. Feb. 13, 2025) ("Defendants

have not offered any explanation for why a blanket suspension of all congressionally appropriate foreign aid, which set off a shockwave and upended reliance interests for thousands of agreements with businesses, nonprofits, and organizations around the country, was a rational precursor to reviewing programs.")).

**\*8** Defendants ostensibly rely on the talisman of public safety and national security as justification for the hold. Although never explained, it appears USCIS is concerned that it may provide immigration benefits to those who are later discovered to pose a threat. But in those circumstances, the government still has remedy, including the rescission of any grant of residency, criminal charges, and the initiation of removal proceedings. Varniab, 2026 WL 485490, at *20 (citing Hong Wang v. Chertoff, 550 F. Supp. 2d 1253, 1260 (W.D. Wash. 2008); Singh v. Still, 470 F. Supp. 2d 1064, 1070 (N.D. Cal. 2007)). Further, this justification for the hold makes even less sense for those, like Amaro Bowser, who are already in the country. "If [an applicant present in the country] presents a threat to national security and public safety, the Government does not ameliorate that threat by delaying a decision on his I–485 application.... If the Government is concerned about public safety and national security, it should find a way to process name checks more rapidly, thereby revealing threats to security more quickly. The Government protects no one by delaying a decision on [an] application ...." Hong Wang, 550 F. Supp. 2d at 1260. With this in mind, there is no rational connection between the facts and the decision to put a hold on all applications for immigration benefits. Instead, the justification for the hold is conclusory at best.

Potentially of even greater concern, the Policy Memoranda fail to sufficiently grapple with the serious reliance interests at stake as a result of this hold, which is a clear departure from the existing policy. "Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." Encino Motorcars, LLC v. Navarro, 579 U.S. 211, t 221 (2016) (citation omitted). Further, courts have long recognized that "[w]hen an agency changes course ... it must 'be cognizant that longstanding policies may have "engendered serious reliance interests that must be taken into account.' '" Regents, 591 U.S. at 30 (quoting Encino Motorcars, 579 U.S. at 222). Although a change in policy does not result in a heightened standard of review, "when its prior policy has engendered serious reliance interests" an agency's failure to consider such factors "would be arbitrary or capricious." Fox Television Stations, 556 U.S. at 515; see also Regents, 591 U.S. at 30; Perez v. Mortg. Bankers Ass'n,

575 U.S. 92, 106 (2015); Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 742 (1996).

There are a great deal of reliance interests at issue here. For example, in reliance on the timely adjudication of the application for immigration benefits, the Bowsers fundamentally organized their lives, including their marriage, employment, insurance, family planning, savings, and long-term career goals. [See Dkt. 5-1 at ¶ 4]. USCIS seems to be cognizant that the hold threatens existing long-term reliance interests, stating: "USCIS has considered that this direction may result in delay to the adjudication of some pending applications and has weighed that consequence against the urgent need for the agency to ensure that applicants are vetted and screened to the maximum degree possible. Ultimately, USCIS has determined that the burden of processing delays that will fall on some applicants is necessary and appropriate in this instance, when weighed against the agency's obligation to protect and preserve national security." PM-602-0192 at 3. But this neither offers reasoned explanation for the weighing of these reliance interests, nor does it establish that USCIS "consider[ed] the 'alternative[s]' that are 'within the ambit of the existing [policy].' " Regents, 591 U.S. at 30 (quoting State Farm, 463 U.S. at 51). Instead, the explanation is plainly conclusory. "[S]ummary discussion may suffice in other circumstances, but here—in particular because of decades of ... reliance on the Department's prior policy—the explanation fell short of the agency's duty to explain why it deemed it necessary to overrule its previous position." Encino Motorcars, 579 U.S. at 222. The discussion in the Policy Memoranda "provides no explanation as to how USCIS 'weighed' the competing factors and 'determined' that the burdens imposed by the hold are necessary. It provides no indication that the agency actually considered the consequence of indefinitely delaying final adjudication of pending applications.... Nowhere does PM-0192 reflect that the agency considered the professional and other consequences and burdens imposed on applicants such as Plaintiffs." Varniab, 2026 WL 485490, at *19.

**\*9** Because Defendants fail to provide a rational connection between the facts and the decision that was made and fail to grapple with the serious reliance interests at stake based on the change in policy, Plaintiffs are likely to succeed on their claim that the adjudicatory hold aspects of the Policy Memoranda are arbitrary and capricious under the APA.

### 2. Irreparable Harm

The irreparable harm at issue is serious and concerning. Defendants are correct that "loss of employment 'does not usually constitute irreparable injury,' even when considering a loss of income and damage to reputation." Gillan v. Town of Carver, No. 24-CV-12212-AK, 2025 WL 1836609, at *2 (D. Mass. July 3, 2025) (citation omitted). But there is a reason the Court cabined its analysis to the usual case. Conversely, "the harm here extends beyond ordinary economic injury. Plaintiffs would not only suffer lost wages. [Amaro Bowser] would lose the legal ability to work at all. It would implicate [her] fundamental ability to earn a livelihood, support [her] famil[y], and remain self-sufficient. [She] could not simply find another job, as [she] would be categorically barred from lawful employment. The loss of work authorization therefore constitutes irreparable harm." Miot v. Trump, No. 25-CV-02471-ACR, 2026 WL 266413, at *36 (D.D.C. Feb. 2, 2026). Further, "[a]side from the imminent and irreparable professional harm they face in the absence of a preliminary injunction, Plaintiffs have also presented evidence of other irreparable harm they will suffer if their applications remain frozen. These harms include inability to travel to visit family, inability to make basic life decisions, and significant emotional strain." Varniab, 2026 WL 485490, at *23; [see also Dkt. 5-1]. The Plaintiffs will suffer irreparable harm absent a preliminary injunction.

### 3.Balance of Equities and Public Interest

The final factors to consider are if a balance of equities tips in the movant's favor and if the injunctive relief is in the public interest. See Voice of the Arab World, Inc., 645 F.3d at 32. These factors "merge when the Government is the opposing party." Nken, 556 U.S. at 435. The preliminary injunction sought by the Plaintiffs is incredibly limited in scope. Plaintiffs request the adjudication of Form I-765, an application for an Employment Authorization Document, while their Forms I-130 and I-485 are pending. Should Amaro Bowser fail to receive employment authorization, she will not only lose her current job but will be ineligible for any job. The harms described above will cascade in short order. Defendants claim any interests of the Plaintiffs are countervailed by the government's interest in national security: "Requiring immediate adjudications before completing these reviews would undermine their purpose and could result in approving applications where security

concerns have not been adequately addressed." [Dkt. 17 at 12]. The government's argument is unavailing and misplaced. Plaintiffs do not request that all of their applications be adjudicated, including the adjustment of status that seems to be of particular concern to the government. They only request a preliminary injunction as to the adjudication of the employment authorization. [Dkt. 6 at 13]. Amaro Bowser will remain in the country whether she is granted employment authorization or not. [See Dkt. 6 at 3, 11]. The only result of denying the injunction here would be that Amaro Bowser would no longer be able to work. Further, "Defendants' invocation of national security concerns is even less salient in the context of [the] Plaintiff[ ] in this case, who ha[s] been living and [studying/]working in the United States since [2013] and about whom Defendants have identified no specific national security concerns." Varniab, 2026 WL 485490, at *14. As a result, no interest of the government, including national security, would be served by denying the injunction, while Plaintiffs face immediate and irreparable harms.

## IV. CONCLUSION

**\*10** For the foregoing reasons, Plaintiffs' Emergency Motion for Preliminary Injunction Requiring Adjudication of Pending Application [Dkt. 5] is **GRANTED**. The Court **ORDERS** as follows:

1. Defendants and all of their respective officers, agents, servants, employees, attorneys, and any person in active concert or participation with them who receive actual notice of this Order are **ENJOINED** from applying the adjudication hold of the December 2, 2025 and January 1, 2026 USCIS Policy Memoranda (PM-602-0192 and PM-602-0194) to Plaintiff Valentina Amaro Bowser's Form I-765, Application for Employment Authorization.

2. Within **ten (10)** days of the date of this Order, Defendants shall adjudicate Plaintiff Valentina Amaro Bowser's Form I-765, Application for Employment Authorization, and inform Plaintiff of the decision and, if denied, the reasons for denial.

3. Counsel for Defendants must provide written notice of this Order to all Defendants by March 2, 2026 at 5:00 PM. Defendants must file a copy of the notice on the docket at the same time.

4. The Court finds that a bond is not required under Federal Rule of Civil Procedure 65(c) because Defendants did not request a bond or submit any evidence that they are likely to suffer damages from the injunction.

**SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 555624

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.