**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SVITLANA DOE, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>– *versus* –<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*,<br><br>　　　　　　　　Defendants. | **Civil Action No.: 1:25-cv-10495-IT** |

<u>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN ORDER TO SHOW CAUSE, OR IN THE ALTERNATIVE, TO STRIKE IMPROPER AND UNTIMELY SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD**</u>

Plaintiffs submit this Memorandum in Support of Their Motion for an Order to Show Cause, or in the Alternative, to Strike Defendants' improper and untimely supplementation of their "corrected" administrative record. Doc. Nos. 276, 276-1. While Plaintiffs of course possess an interest in having the full administrative record, this motion is directed at the lack of integrity in and unreliability of the record compilation process itself. Plaintiffs respectfully request the Court direct Defendants to explain why the circumstances of their filing the "corrected" administrative record do not evince bad faith or improper behavior, and to provide a detailed explanation of the record compilation process in this case. In the alternative, Plaintiffs request that the untimely supplementation to the record be stricken.

**PROCEDURAL BACKGROUND**

1. On January 9, 2026, the Court held a hearing on various motions filed by Plaintiffs. Doc. No. 247. At the hearing, Defendants offered to produce the administrative record pertaining to the termination of Family Reunification Parole ("FRP") by January 13, 2026. Tr. of Mot. Hr'g at 26:3–7, Jan. 9, 2026, Doc. No 244 ("[W]e are happy to supplement when we produce the administrative

record . . . by the 13th . . . ."); *id.* at 37:7–10 (confirming Defendants would produce the administrative record by January 13).

2. The Court formalized that deadline in its January 10, 2026 Electronic Order. Doc. No. 242.

3. Defendants produced the administrative record on January 13, 2026, Doc. No. 246, including a sworn certification as to its completeness, *see* Doc. No. 246-1 at 1.

4. On January 24, 2026, the Court granted Plaintiffs' motion for a preliminary injunction and stay "insofar as it terminates previously granted parole and revokes work authorization issued to noncitizens paroled into the United States pursuant to the FRP Programs prior to the noncitizens' originally stated parole expiration dates." Doc. No. 258 at 42. The Court held that Plaintiffs were likely to succeed on the merits of their arbitrary and capricious and notice claims. *Id.* at 17–36. On their arbitrary and capricious claim, the Court agreed with Plaintiffs both that the government improperly *understated* FRP parolees' reliance interests, *id.* at 18–22; and that it *overstated* DHS's countervailing interests concerning alleged insufficient vetting and fraud, *id.* at 22–27, which the Court found to be "unsupported by the factual record, and, as introduced in the Federal Register Notice, not relevant to the Secretary's decision to terminate grants of parole," *id.* at 22. The Court was clear that each of these failures independently rendered the government's action arbitrary and capricious. *Id.* at 22, 27.

5. Three weeks after the Court's preliminary injunction decision, on February 13, 2026, Defendants' counsel emailed Plaintiffs' counsel, asking whether Plaintiffs would stipulate to Defendants filing a corrected administrative record to provide evidence the Court found absent in its January 24 decision. Defendants' message read:

> The Court noted that certain evidentiary materials cited in the FRP FRN were missing from the record. The omission was an agency oversight, and the agency intends to correct the

record to include those missing materials. Please let us know if you will stipulate to the filing of a corrected administrative record.

Exh. 1 to Esther Sung Decl., Doc. No. 284-1 at 2. Plaintiffs responded that they opposed and would "not stipulate to any attempt to modify the record already certified and filed in this case." *Id.*

6. From the date of that conversation, Defendants then waited an additional three weeks to notify the Court. On March 6, 2026, Defendants filed a replacement administrative record with supplemental materials as a "Notice," without seeking leave of court. Doc. Nos. 276, 276-1. Defendants' "Notice" also failed to notify the Court of Plaintiffs' opposition to filing a revised administrative record. *See id.*

7. Although Defendants offered on January 9, 2026 to produce the administrative record by January 13, 2026, Defendants now claim that it was their "haste to provide the court with a complete administrative record in a timely manner" that led to five documents being "erroneously excluded from the initial record production." Doc. No. 276-1 at 2.

8. On March 6, Defendants also filed a Motion for Reconsideration of the Court's preliminary injunction and stay. Doc. Nos. 277, 278. Defendants argue, *inter alia*, that because the five purportedly omitted documents provide evidentiary support the Court found missing as to Defendants' vetting and fraud arguments, the Court should "reconsider and dissolve its decision." Doc. No. 278 at 6.

9. Despite waiting 41 days from this Court's Order to file their "corrected" administrative record (and at least 21 days from discovering the purported error in record compilation), Defendants request the Court issue a decision on its motion for reconsideration a mere five days from now, prior to their impending deadline to appeal the preliminary injunction. Doc. No. 277 at 2.

3

## ARGUMENT

Plaintiffs respectfully request that the Court issue an order to show cause for two reasons. First, Defendants have failed to provide a detailed explanation for their violation of the Court's January 10, 2026 order (Doc. No. 242) requiring production of the complete administrative record by January 13, 2026. Second, the timing and substance of Defendants' "correction" to the Administrative Record are highly irregular and indicative of bad faith.

**First,** Defendants have failed to provide a detailed explanation for their violation of the Court's January 10, 2026 Order requiring the production of the complete administrative record by January 13, 2026. At the January 9, 2026 hearing, Defendants *volunteered* to produce the administrative record by January 13. And when Defendants filed their original administrative record on January 13, 2026, they certified as to the record's completion, attesting that "the documents listed in the accompanying Index and annexed hereto constitute the nonprivileged documents and materials directly or indirectly considered by DHS and that these documents constitute the administrative record the agency considered in issuing the Federal Register Notice . . . ." Doc. No. 246-1.

Although the "'designation of the Administrative Record . . . is entitled to a presumption of administrative regularity,'"[1] that presumption "may be rebutted by clear evidence that the record omits relevant materials." *Roe v. Mayorkas*, No. 22-CV-10808-ADB, 2024 WL 5198705, at *2 (D. Mass. Oct. 2, 2024) (internal quotation marks omitted). Defendants themselves now concede the original produced record was incomplete, and that they submitted an inaccurate sworn certification to the Court, *see* Doc. No. 276-1 at 2, thereby rebutting the presumption of regularity.

---

[1] *Roe v. Mayorkas*, No. 22-CV-10808-ADB, 2024 WL 5198705, at *2 (D. Mass. Oct. 2, 2024) (quoting *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019)).

Aside from a passing reference to "haste," *id.*, Defendants have offered no explanation as to why those documents were left out of the original, certified administrative record. Nor is that explanation satisfactory in light of Defendants' insistence that these five documents are material enough to merit a motion to reconsider the Court's preliminary injunction and stay.

**Second,** both the timing and substance of Defendants' effort to "correct" the administrative record are highly irregular, and suggest, at a minimum, a lack of assiduousness in rectifying the purported error, and at worst bad faith. Defendants have been on notice since at least December 29, 2025, that their vetting and fraud allegations were wholly unsupported by the administrative record. *See* Pls' Memorandum ISO Motion for TRO/PI/Stay, Doc. No. 218 at 13 (noting that Defendants' purported concerns were "based on an unreleased, internal report."); Reply ISO Motion for TRO/PI/Stay, Doc. No. 253 at 8 ("[E]ven though Secretary Noem twice referenced a 'recent internal audit' as allegedly raising fraud or security concerns about the FRP processes, that 'internal audit' is not in the AR; nor does anything in the AR even corroborate its existence or alleged findings."); *id.* at 7, 25. Defendants made no attempt to explain, let alone refute, this deficiency in their briefing, *see generally* Doc. No. 251, or at oral argument, where Plaintiffs once again raised and discussed the matter with the Court, *see, e.g.*, Tr. of Mot. Hr'g at 54–56, Jan. 9, 2026, Doc. No. 244.[2]

Moreover, in the weeks following the Court's January 24 Order finding Defendants' vetting and fraud allegations to be "unsupported by the factual record," Doc. No. 258 at 22, Defendants did not move expeditiously to correct the purported omission. Instead, they emailed

---

[2] In particular, it is noteworthy that although the Court directly asked whether there was "anything in the record of any suggestion of any fraud or national security issue relating to the people who are here," and counsel for Plaintiffs reiterated that no such evidence existed, Tr. of Mot. Hr'g at 56, Jan. 9, 2026, Doc. No. 244, Defendants offered no response, *see generally id.*

Plaintiffs *three weeks* after the decision to inquire whether Plaintiffs would stipulate to their filing a "corrected" record, Exh. 1 to Esther Sung Decl., Doc. No. 284-1 at 2, and then waited an *additional three weeks* to actually file it, failing to note Plaintiffs' stated opposition, *see* Doc. No. 276. If Defendants' omissions were truly "inadvertent," Doc. No. 276 at 2, one would expect them to be caught quickly—if not during briefing, then at oral argument, and even if not then, immediately after the Court's ruling on January 24, 2026. Moreover, one would expect that an inadvertent error might have resulted in one, or maybe two, stray documents not being included in the certified administrative record—not five. That Defendants waited *41 days* after the Court's decision raises serious questions as to whether the documents were offered only after strategic deliberation about whether or how to use them.

The substance of those documents—which purport to fill some of the key gaps the Court noted in its decision—compound such suspicions. Indeed, that Defendants filed the "corrected" record simultaneously with a motion to reconsider the Court's express finding on the vetting and fraud issue should heighten the Court's concern. Together, the circumstances strongly suggest the "correction" was assembled *post hoc* in response to the court's specific findings, not as a genuine error; as such, there is a serious question whether the purportedly "corrected" administrative record represents "the full administrative record that was before the Secretary at the time [s]he made h[er] decision," rather than "merely 'post hoc' rationalizations." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419–20 (1971).

In sum, the timing and substance of Defendants' "corrected" administrative record raise an inference that either the originally certified record was knowingly incomplete—signifying bad faith—or the record-compilation process was so unreliable that materials directly relevant to this issue were negligently excluded—constituting improper behavior. *See generally Overton Park*,

6

401 U.S. at 420 (permitting limited discovery into the completeness of the record based on "bad faith or improper behavior" on the part of the agency decisionmaker). In either event, the circumstances warrant a far more detailed explanation than what the Defendants have provided to date.

Accordingly, more information is needed to ensure: (a) the documents Defendant now offer were indeed part of the original administrative record; and (b) that record is now complete. At a minimum, Plaintiffs request the Court require Defendants to provide a more detailed accounting of how the original record was compiled, when the purported "omission" was discovered, and why Defendants delayed so long in bringing the purportedly "omitted" documents to the Court's attention.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request the Court issue an order directing Defendants to show cause as to why the circumstances of their filing the "corrected" administrative record do not evince bad faith or improper behavior, and to provide details on the record compilation process in this case. In the alternative, Plaintiffs request the Court strike Defendants' "corrected" administrative record.

Dated: March 20, 2026                    Respectfully submitted,

Inyoung Hwang (*pro hac vice*)           */s/ Brandon Galli-Graves*
Anwen Hughes (*pro hac vice*)            Brandon Galli-Graves (*pro hac vice*)
**Human Rights First**                   Esther H. Sung (*pro hac vice*)
121 W 36th Street                        Karen C. Tumlin (*pro hac vice*)
PMB 520                                  Hillary Li (*pro hac vice*)
New York, NY 10018                       Laura Flores-Perilla (*pro hac vice*)
Telephone: (212) 845-5200                **JUSTICE ACTION CENTER**
HughesA@humanrightsfirst.org             P.O. Box 27280
HwangS@humanrightsfirst.org              Los Angeles, CA 90027
                                         Telephone: (323) 450-7272
Justin B. Cox (*pro hac vice*)           brandon.galli-graves@justiceactioncenter.org

7

**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com

H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, Fl. 53
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com

esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
laura.flores-perilla@justiceactioncenter.org

Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com

Robert Stout (*pro hac vice*)
Sarah Elnahal (*pro hac vice*)
Javier Ortega Alvarez (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
rob.stout@arnoldporter.com
sarah.elnahal@arnoldporter.com
javier.ortega@arnoldporter.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Brandon Galli-Graves, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 20, 2026

/s/ Brandon Galli-Graves
Brandon Galli-Graves

8