**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SVITLANA DOE, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>KRISTI NOEM, in her official capacity as<br>Secretary of Homeland Security, et al.,<br><br>　　　　　Defendants. | Civil Action No.: 1:25-cv-10495-IT |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR RECONSIDERATION OR STAY OF THE COURT'S PRELIMINARY
INJUNCTION AND STAY (Doc. No. 278)**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

      A.    Procedural History ................................................................................................2

      B.    The "Corrected" Administrative Record..............................................................3

LEGAL STANDARD ..........................................................................................................7

ARGUMENT .......................................................................................................................8

I.     The "Corrected" Administrative Record Does Not Justify Reconsideration.......................8

      A.    The "Corrected" Administrative Record Is Not "Newly Discovered Evidence." ...8

      B.    The "Corrected" Administrative Record Strengthens, Rather Than Undermines, the Court's Analysis. ........................................................................................10

II.    Defendants' Recycled Legal Arguments Do Not Establish Error. ....................................11

      A.    The Court Properly Exercised Jurisdiction Over Procedural Claims. ...................12

            i.     8 U.S.C. § 1252(a)(2)(B)(ii) does not bar review. ....................................12

            ii.    The Court properly rejected Defendants' § 701(a)(2) argument................14

            iii.   The Court's Ultra Vires Holding Does Not Foreclose APA Review. .........15

      B.    The Court did not err in holding that the Secretary's failure to adequately assess reliance interests was arbitrary and capricious. ....................................................17

      C.    The Injunctive Relief the Court Issued is Proper....................................................18

III.   The Court Should Deny Defendants' Stay Request. .........................................................19

CONCLUSION...................................................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alicea v. Machete Music*,
    744 F.3d 773 (1st Cir. 2014)............................................................................................9

*Am. Hosp. Ass'n v. Kennedy*,
    164 F.4th 28 (1st Cir. 2026)..........................................................................................18

*Biltcliffe v. CitiMortgage, Inc.*,
    772 F.3d 925 (1st Cir. 2014)............................................................................................8

*California v. U.S. Dep't of Educ.*,
    132 F.4th 92 (1st Cir. 2025)..........................................................................................14

*Castaneira v. Noem*,
    138 F.4th 540 (D.C. Cir. 2025)...............................................................................12, 14

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
    370 F.3d 151 (1st Cir. 2004).........................................................................................19

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988)........................................................................................................8

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*,
    46 F.4th 22 (1st Cir. 2022)..............................................................................................9

*Department of Commerce v. New York*,
    588 U.S. 752 (2019)......................................................................................................15

*Doe v. McAleenan*,
    926 F.3d 910 (7th Cir. 2019) .......................................................................................13

*Doe v. Noem*,
    152 F.4th 272 (1st Cir. 2025)........................................................................................16

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016)......................................................................................................17

*Global Naps, Inc. v. Verizon New England, Inc.*,
    489 F.3d 13 (1st Cir. 2007)......................................................................................8, 18

*Guerrero-Lasprilla v. Barr*,
    589 U.S. 221 (2020)......................................................................................................13

*In re Telexfree Sec. Litig.*,
  652 F. Supp. 3d 233 (D. Mass. 2023) ................................................................7

*Karakenyan v. USCIS.*,
  468 F. Supp. 3d 50 (D.D.C. 2020) ...................................................................13

*Kucana v. Holder*,
  558 U.S. 233 (2010) ........................................................................................12

*Lyons v. Fed. Nat'l Mortg. Assn.*,
  No. 1:18-CV-10365-ADB, 2019 WL 1961072 (D. Mass. May 1, 2019) ...............15

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ..........................................................................................17

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................19

*Nouritajer v. Jaddou*,
  18 F.4th 85 (2d Cir. 2021) ..............................................................................13

*Palmer v. Champion Mortg.*,
  465 F.3d 24 (1st Cir. 2006) .........................................................................8, 12

*Pineda v. Skinner Servs., Inc.*,
  No. CV 16-12217-FDS, 2020 WL 1310035 (D. Mass. Jan. 24, 2020) ...................7

*Ruiz Rivera v. Pfizer Pharms., LLC*,
  521 F.3d 76 (1st Cir. 2008) ...............................................................................8

*Spiegel v. Trustees of Tufts College*,
  843 F.2d 38 (1st Cir. 1988) ...............................................................................7

*United States v. Allen*,
  573 F.3d 42 (1st Cir. 2009) .....................................................................8, 11, 12

*Valerio Ramirez v. Sessions*,
  882 F.3d 289 (1st Cir. 2018) ...........................................................................12

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ........................................................................................14

**Statutes**

8 U.S.C. § 1182(d)(5)(A) ......................................................................................12

8 U.S.C. § 1252(a)(2)(B)(ii) .......................................................................12, 13, 14

8 U.S.C. § 1252(a)(2)(C)-(D) ...............................................................................13

5 U.S.C. § 706(2) ..............................................................................................................................15

**<u>Other Authorities</u>**

90 Fed. Reg. 58037 ...........................................................................................................................4

90 Fed. Reg. 58041 ...............................................................................................................6, 7, 9, 11

90 Fed. Reg. 58043 ...........................................................................................................................5

90 Fed. Reg. 8439 .............................................................................................................................6

15 Federal Register Notice............................................................................................ *passim*

Executive Order 14157 ....................................................................................................................6

USCIS, "Receipt Number," https://www.uscis.gov/glossary-term/66907 .....................................4

Rule 54(b) .........................................................................................................................................7

Rule 59 .............................................................................................................................................7

Rule 59(e)..........................................................................................................................................7

**INTRODUCTION**

The Court should deny Defendants' motion for reconsideration, or in the alternative, motion for a stay pending "potential" appeal (Doc. No. 278, hereinafter, "Mot."). This motion is Defendants' latest effort to relitigate issues the Court has repeatedly considered and decided, with the aim to dissolve the Court's January 24, 2026 preliminary injunction and stay (Doc. No. 258) of the *en masse* truncation of grants of Family Reunification Parole ("FRP") as Defendants' March 25, 2026 deadline to appeal approaches.

Defendants cannot justify their request that this Court reconsider its January 24 Order. Without a proper basis to revisit the opinion and no change in intervening law, Defendants ask the Court to reconsider its decision based solely on Defendants' inexplicably belated attempt to "correct" the administrative record ("AR") by filing five additional documents that could have been (and were required to be) produced earlier.[1] These documents—particularly the 2024 USCIS Fraud Detection & Nat'l Sec. Directorate ("FDNS") report[2]—are not "newly discovered evidence" justifying the extraordinary relief Defendants seek; in fact, they reinforce, rather than undermine, the Court's conclusion that the Secretary's claims regarding security and fraud lacked evidentiary support. Defendants also recycle their arguments that the Court erred in its jurisdictional and reviewability analysis, and claim this Court improperly "re-weighed" the relevant interests. None of these arguments meet the standard for reconsideration.

Finally, Defendants' request in the alternative for a stay pending "any potential appeal," Mot. at 2, fares no better. Defendants have neither noticed an appeal nor committed to doing so— they just say they might do so—and so this request is unripe. On its merits, Defendants do not

---

[1] Plaintiffs have filed a Motion for an Order to Show Cause, or in the alternative, Motion to Strike Defendants' improper and untimely supplementation of the Administrative Record. *See* Doc. Nos. 283-285.

[2] Doc. No. 276-1 at FRP-FRN-01573 to -01582.

engage the standard for a stay pending appeal; they simply repackage their already-rejected arguments.

## BACKGROUND

### A.    Procedural History

On December 29, 2025, Plaintiffs filed their emergency motion for a temporary restraining order ("TRO"), preliminary injunction ("PI"), and/or stay of Secretary Noem's *en masse* termination of FRP grants announced in the December 15 Federal Register Notice ("FRN"), Doc. No. 216, to take effect on January 14, 2026. During the January 9 oral argument on Plaintiffs' motion, Defendants volunteered that to produce the AR to the Court by January 13, 2026. *See* Tr. of Jan. 9, 2026 Mot. Hr'g (Doc. No. 244) at 37:7-10; *see also id.* at 26:3-7. The following day, the Court granted a limited TRO of the FRP FRN. At the same time and in both an electronic docket entry (Doc. No. 242) and its written TRO opinion (Doc. No. 243 at 5), the Court directed Defendants to produce the AR by January 13, as they had offered. *See also* Doc. No. 247 (electronic clerk's notes reflecting the same order given at oral argument). Defendants did so and included a sworn statement certifying its completeness from Juliana Blackwell, DHS Deputy Executive Secretary. Doc. No. 276.

Thereafter, the parties were permitted to file supplemental briefs; in theirs, Plaintiffs twice noted the absence of the "internal audit" in the AR. Doc. No. 253 at 2-3, 20; *see also* Doc. No. 218 at 13 (noting the centrality of this internal report to Secretary Noem's stated reasoning). Defendants chose not to address the AR at all. *See* Doc. No. 251. On January 24, the Court granted in part Plaintiffs' motion for a PI and stay. Doc. Nos. 257, 258. In its opinion, the Court likewise noted that the AR did not contain the "internal audit" referenced in the FRP FRN, to explain one aspect of its conclusion that Plaintiffs are likely to succeed on their arbitrary and capricious claim. Doc. No. 258 at 23.

Three weeks later, on February 13, Defendants' counsel emailed Plaintiffs' counsel stating:

> The Court noted that certain evidentiary materials cited in the FRP FRN were missing from the record. The omission was an agency oversight, and the agency intends to correct the record to include those missing materials. Please let us know if you will stipulate to the filing of a corrected administrative record.

Doc. No. 285 at 2-3. Plaintiffs responded the same day, declining to so stipulate. *Id.*

Three weeks after that, on March 6, Defendants filed their motion for reconsideration and a "Notice of Corrected Certified Administrative Record," containing five new documents and a new certification from Ms. Blackwell.[3] Doc. No. 276. In their Notice, Defendants' counsel represented that the "omission" of these documents "was inadvertent," as purportedly "explained by Ms. Blackwell." *Id.* at 2; *see also* Mot. at 1, 3, and 5 (likewise asserting twice that the omission was inadvertent and once that it was an "oversight"). In her sworn statement, however, Ms. Blackwell gave no such explanation; in fact, she does not even assert that the omission was unintentional (she does describe it as "erroneous[]"). Doc. No. 276-1 ¶ 3. Instead, Ms. Blackwell notes the "haste" of early January and relays that, at some point since then, unnamed "USCIS experts have determined that a few documents that were considered in the decision-making process were not included" in the administrative record. *Id.*; *but compare with* Mot. at 1 ("[I]n its haste to provide the Court with the administrative record for the FRP termination decision . . . , DHS inadvertently omitted five documents from the record") (emphasis added); *and id.* at 3 (same).

### B.    The "Corrected" Administrative Record

In addition to the FDNS "internal audit" (discussed below), the "corrected" AR includes four other new documents. One contains (limited) statistics regarding the "legacy" Cuban and Haitian FRP processes. FRP-FRN-01728. The other three (totaling 146 pages) are internal

---

[3] Defendants did not file a motion for leave of the Court to file their "corrected" AR.

guidance documents; they were not cited in the FRP FRN and have no obvious relevance. FRP-FRN-01583 to -01727.

The FDNS report is entitled "Brief Analysis of Family Reunification Parole Data" and is dated December 4, 2024 and "updated" on January 23, 2025. The report contains FDNS' analysis of data regarding the approximately 35,700 invitations that the Department of State sent to U.S. citizens and LPRs with certain approved I-130 petitions to participate in the relevant FRP process. Specifically, the State Department provided a spreadsheet with 35,688 rows of names and their associated Form I-130 receipt numbers.[4] The Department of State provided "no other datapoints to assist with the analysis." FRP-FRN-01574. FDNS used the FRP data "to assess program integrity issues that could be readily identified." *Id.* The report solely analyzes data concerning the I-130 petitioners; it does not analyze data regarding beneficiaries (e.g., the potential parolees).

FDNS began by weeding out the spreadsheet entries with incomplete data: 6,662 of the rows (18.7%) contained names but not receipt numbers. FRP-FRN-01575. Of the roughly 29,000 that remained, another 6,172 rows (21%) were duplicative. That left 22,854 unique I-130 petitioners/FRP invitees in the data set. *Id.* FDNS determined that 8,201 of these individuals (36%)[5] filed at least one request to sponsor an individual through one of the "modernized" FRP processes, by filing Form I-134A. *Id.*

Collectively, those 8,201 petitioners filed more than 33,000 total Form I-134As, but nearly 30% of those requests (9,576) were duplicative. After removing duplicates, those 8,201 petitioners collectively filed I-134As on behalf of 23,698 unique beneficiaries (an average of 2.9 each). *Id.*

---

[4] "The receipt number is a unique 13-character identifier USCIS provides for each application or petition it receives." USCIS, "Receipt Number," https://www.uscis.gov/glossary-term/66907 (last visited March 20, 2026).

[5] In the FRP FRN, 90 Fed. Reg. 58037 n.44, Secretary Noem claimed the FRP response rate was approximately 30 percent by including duplicative requests.

The report contains no information about any of those 23,698 beneficiaries—the actual noncitizens on whose behalf I-134As were filed, approximately 14,100 of whom were ultimately granted parole and entered the United States. *See* 90 Fed. Reg. at 58043.

From there, FDNS set out to determine how many of the individuals the Department of State invited to participate in the "modernized" FRP processes had died. FDNS cross-referenced the 22,854 petitioner Social Security numbers ("SSN") against two death indices, then manually reviewed elderly petitioner subgroups and ambiguous SSN matches. FRP-FRN-01576 to -01580. That manual review identified a 21% false-positive rate in ambiguous SSN matches—43 petitioners whose SSNs matched a death index but who were not in fact deceased. FRP-FRN-01576. Through this methodology, FDNS identified 672 deceased petitioners out of the 22,854 invitees (2.9%).[6] FRP-FRN-01580. Notably, FDNS did not determine *when* these petitioners had died—not even whether they had died before or after the Department of State's invitation.

FDNS identified a total of 256 I-134A requests to sponsor an FRP parolee filed by that group of 672 currently deceased petitioners. *Id.* FDNS did not identify how many unique petitioners filed at least one I-134A; at the overall average of 2.9 per petitioner, *see supra*, those 256 requests would have been filed by 85 currently deceased petitioners. Of those 256 requests, 111 reached "Confirmed" status.[7] FRP-FRN-01580.

FDNS performed a distinct analysis of the 8,201 petitioners who filed I-134As, this time controlling for the timing of their death relative to the I-134A filing. This is the only analysis in

---

[6] The report's petitioner age analysis explains the prevalence of deceased petitioners: petitions had been pending an average of 9.8 years; the median petitioner age was 63; and 2,497 petitioners were over age 80. FRP-FRN-01577.

[7] "Confirmed" in this context means that USCIS determined that the petitioner met the threshold eligibility requirements to be an FRP sponsor—step two in the seven stage FRP application process. *See* Doc. No. 218 at 7 n.8.

the report capable of distinguishing potential fraud from the natural mortality of an aging petitioner population with decade-long visa backlogs. Of those 8,201 individuals, FDNS determined that just 17 (0.2%) were "reported as deceased *prior* to their filing of their I-134As." FRP-FRN-01576 (emphasis added). Twelve of those were "Confirmed." FRP-FRN-01577. FDNS did not examine whether anyone was ever paroled through one of these 12 requests.

The December 4, 2024 report concludes by recommending that USCIS verify whether petitioners are still alive before the Department of State sends invitations and again before USCIS confirms an I-134A request. FRP-FRN-01581. The report did not recommend terminating FRP processes or existing grants of parole.

In late December 2024, FDNS received the 6,662 receipt numbers that were missing in the initial data set of 35,688 FRP invitees, and then "re-queried all petitioner information" in that largest dataset. FRP-FRN-01581. That second analysis, however, was never completed "in light of Executive Order 14157,"[8] and was additionally limited by "access issues." FRP-FRN-01582. Nonetheless, FDNS "updated" its report on January 23, 2025 with the incomplete results of its truncated analysis, reporting 728 requests to sponsor a FRP parolee were filed by petitioners who are deceased, with 364 requests "Confirmed." FRP-FRN-01582. These two data points are the only ones referenced in the FRP FRN. *See* 90 Fed. Reg. at 58041 ("[O]ver 700 requests to be a supporter were filed under the names of deceased individuals of which USCIS confirmed approximately half.").

---

[8] Executive Order 14157 is entitled "Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists," and was signed by President Trump on January 20, 2025. 90 Fed. Reg. 8439. It created a process for designating certain international cartels and other organizations as Foreign Terrorist Organizations and/or Specially Designated Global Terrorists and directed the Attorney General and the DHS Secretary to make operational preparations regarding potential invocation of the Alien Enemies Act.

The report notes that these "updated" figures "do not include manual verifications of death, unlike the similar tables appearing earlier in this document." FRP-FRN-01582. The numbers also include false positive SSN matches that were screened out in the initial analysis. And most critically, the updated numbers do not control for the timing of the petitioner's death—a striking omission given that two-thirds of the petitioners are over the age of 60 and that approximately 2,500 of them are over age 80. Secretary Noem did not mention any of these methodological limitations in the FRP FRN. Nor did she disclose the results of the initial, completed analysis— which covered approximately 93% of all I-134As filed—or its finding that just 17 of the 8,201 petitioners who filed I-134As were reported deceased before filing. Nor did Secretary Noem mention that the "over 700 requests to be a supporter" that were filed "under the names of deceased individuals," 90 Fed. Reg. at 58041, were filed, in the vast majority of cases, when the petitioners were very much still alive.

## LEGAL STANDARD[9]

The procedural authority for Defendants' motion is unclear, but motions for reconsideration are generally evaluated under the standards set under Rule 59(e) following a judgment. *See, e.g.*, *In re Telexfree Sec. Litig.*, 652 F. Supp. 3d 233, 235 (D. Mass. 2023) (motions for reconsideration of interlocutory orders "are interpreted under the same standard as under 59(e)") (citation omitted); *Pineda v. Skinner Servs., Inc.*, Civil Action No. 16-12217-FDS, 2020 WL 1310035, at *2 (D. Mass. Jan. 24, 2020) (assessing motion for reconsideration of preliminary injunction under Rule 59

---

[9] Defendants misstate the relevant legal standard, claiming their motion is properly brought under Rule 54(b). Mot. at 2-3. Rule 54(b) does not govern reconsideration—rather, the rule "permits the entry of judgment, and thus an appeal, on fewer than all the claims in a multi-claim action." *Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 42 (1st Cir. 1988). When Defendants claim that this motion should be granted "as justice requires," Mot. at 2, they are citing the standard for a district court granting partial judgment to foster appellate review, not the standard for reconsideration.

factors). A motion to reconsider is "an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (internal quotation marks and citation omitted). It is not a "mechanism to regurgitate 'old arguments previously considered and rejected,'" *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) (citation omitted), nor is it the proper vehicle for advancing new arguments—particularly those that could have been raised earlier, *see Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 26 (1st Cir. 2007). While courts have "substantial discretion and broad authority" in deciding whether to grant or deny reconsideration, *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 81 (1st Cir. 2008), the Supreme Court has instructed that "courts should be loathe to [reconsider orders] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citation omitted). Accordingly, a movant must present "newly discovered evidence, . . . an intervening change in the law, or . . . demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009).

## ARGUMENT

### I.    The "Corrected" Administrative Record Does Not Justify Reconsideration.

Defendants fail to proffer anything warranting reconsideration. They present neither "newly discovered evidence" nor "an intervening change in the law," nor do they "demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *Allen*, 573 F.3d at 53.

#### A.    The "Corrected" Administrative Record Is Not "Newly Discovered Evidence."

The FDNS report and the four other new documents that Defendants submitted to "correct" the AR do not justify reconsideration. Defendants do not suggest there has been an intervening

change in law or that the Court committed a manifest error of law. Nor could Defendants characterize the documents as *newly* discovered evidence, because they cannot show that they "could not in the exercise of reasonable diligence have obtained [the] new evidence earlier." *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36 (1st Cir. 2022). Courts focus the inquiry on what the moving party "knew or reasonably could have learned" prior to the district court entering its order. *See City of Miami Fire Fighters' & Police Officers' Ret. Tr.*, 46 F.4th at 36. The FDNS report and four other documents are documents that Defendants cited and ostensibly relied upon in the FRP FRN (and thus clearly knew about), 90 Fed. Reg. at 58041, and that they had in their possession since long before the date they offered to produce the AR to the Court (January 13, 2026), *see* Mot. at 3. Defendants provide no reason why these documents could not have been presented at that time.

Defendants have, instead, inexplicably delayed their presentation of the "corrected" AR to the Court. *See supra* at 2-3 (detailing the sequence of events illustrating that Defendants waited 41 days to present these documents to the Court following the Court's preliminary injunction order). Defendants argue that omitting these documents was inadvertent oversight due to its "haste" to respond to several motions, Mot. at 3, but the facts indicate that Defendants' delay was intentional. Defendants affirmatively volunteered to produce the AR on a date certain, *see* Tr. of Jan. 9, 2026 Mot. Hr'g (Doc. No. 244) at 26:3-7, 37:7-10, at which point most of the motions Defendants cite were already fully briefed. *See* Doc. Nos. 226, 227 (oppositions to Plaintiffs' motions for leave to file third-amended complaint and expedited briefing filed on December 31, 2025); Doc. Nos. 232, 233 (oppositions to Plaintiffs' motion to proceed under pseudonym and motion for TRO filed on January 6, 2026). Far from being "'excusably ignorant of the facts despite using due diligence to learn about them,'" *Alicea v. Machete Music*, 744 F.3d 773, 781 (1st Cir. 2014) (quoting 11 Charles

Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2808), Defendants instead chose to present these documents right before their time to appeal the Court's preliminary injunction expires.

### B.    The "Corrected" Administrative Record Strengthens, Rather Than Undermines, the Court's Analysis.

Defendants argue that the FDNS report "explicitly provides the evidentiary support for the Secretary's insufficient vetting and fraud concerns that the Court found lacking." Mot. at 1.  A close read of the report reveals the opposite.

As an initial matter, the FDNS report is irrelevant to most of Plaintiffs' claims and most of the Court's merits findings, including Secretary Noem's failure to adequately consider reliance interests (Doc. No. 258 at 18-22), the deficient notice of termination (*id*. at 31-36), the due process violation (*id*. at 35-36), and the FRN's failure to explain why its security rationale also justifies terminating legacy parolees who were interviewed abroad (*id*. at 26-27). The PI would survive on any one of these independent grounds even if the report said everything Defendants claim.

As to what it does address, the FDNS report undermines Defendants' position in four respects. *First*, and at most, the report documents a USCIS process failure—not fraud. USCIS received I-134As filed in the names of deceased petitioners "because current processes do not include checks to prevent or detect such filings." FRP-FRN-01581. Every recommendation targets USCIS's own processes, not parolees or even petitioners.

*Second*, the report contains no findings about FRP beneficiaries whose parole the Secretary terminated. It does not trace a single deceased-petitioner I-134A to any grant of parole. The Court found "no evidence in the record that any individuals who were awarded parole were associated in any way with those fraudulent applications." Doc. No. 258 at 23. That remains true.

10

*Third*, the FRN materially mischaracterized the report's findings. The FRN claimed "over 700 requests to be a supporter were filed under the names of deceased individuals of which USCIS confirmed approximately half." 90 Fed. Reg. at 58041. As described above, the "over 700" figure came from an incomplete update that FDNS itself disclaimed, that did not control for the timing of death, and that did not screen for false positives. *See supra* at 6-7. The completed analysis—covering approximately 93% of all I-134As filed—found 17 pre-death filings. *Id.* The Secretary had both numbers. She reported "over 700" without disclosing that the completed analysis told a fundamentally different story. And her statement that "USCIS confirmed approximately half" exploits the double meaning of "confirmed," which refers to the program eligibility, not to any confirmation of death or fraud. A rational decisionmaker does not discard a significantly more rigorous analysis of the vast majority of the data in favor of a disclaimed analysis producing a result scales of magnitude larger. *See State Farm*, 463 U.S. at 43.

*Fourth*, the report strengthens the Court's conclusion that "the Secretary overstated countervailing concerns regarding insufficient vetting and fraud where these concerns were unsupported by the Administrative Record and the Federal Register Notice itself." Doc. No. 258 at 18-19. The Court reached that conclusion without the FDNS report. With it, that conclusion is stronger. The data underlying the Secretary's fraud claims was incomplete, disclaimed by the analysts who produced it, knowingly inflated, and disconnected from any actual parolee.

In short, the previously withheld FDNS report makes the Secretary's decision more arbitrary, not less.

## II.    Defendants' Recycled Legal Arguments Do Not Establish Error.

In their discussion of various legal issues, Defendants fail to identify any "intervening change in the law," nor do they present "a manifest error of law" that would provide grounds for reconsideration. *Allen*, 573 F.3d at 53.

11

A.      **The Court Properly Exercised Jurisdiction Over Procedural Claims.**

i.      8 U.S.C. § 1252(a)(2)(B)(ii) does not bar review.

The Court did not err in finding that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar the Court's jurisdiction. Doc. No. 258 at 12-14. Defendants repeat their argument—which the Court has rejected four times now[10]—that because the decision to terminate individual grants of parole is within the Secretary's discretion under 8 U.S.C. § 1182(d)(5)(A), it is precluded from review by Section 1252(a)(2)(B)(ii). Mot. at 6. But a motion for reconsideration is not the appropriate place to "revisit[ ] a party's case" or "reargu[e] theories previously advanced and rejected," *Palmer*, 465 F.3d 24 at 30, and Defendants point to no "intervening change in the law" or "manifest error of law" in the Court's analysis that justifies reconsideration, *Allen*, 573 F.3d at 53. To the contrary, the Court correctly: (1) held that while Section 1182(d)(5)(A) gives the Secretary discretion to terminate individual grants of parole, it is "silent on whether the *procedures* employed by the Secretary" to do so are also left to her discretion, Doc. No. 258 at 12-13 (emphasis added); (2) identified Plaintiffs' claims seeking review of "how the decision [to terminate parole] was made" and "contend[ing] that the Secretary's reasoning was arbitrary and capricious" as challenges to *procedures*, *id.* at 13; and (3) relied on the relevant case law to hold that such challenges are not barred by Section 1252(a)(2)(B)(ii), *id.* at 13-14 (citing *Kucana v. Holder*, 558 U.S. 233, 251 (2010); *Valerio-Ramirez v. Sessions*, 882 F.3d 289, 294 (1st Cir. 2018); *Castaneira v. Noem*, 138 F.4th 540, 549 (D.C. Cir. 2025)).

The cases Defendants cite to argue that Plaintiffs' claims are not procedural do not constitute an "intervening change in the law," *Allen*, 573 F.3d at 53, and regardless, they are not applicable. *Ottey v. Barr* is inapposite because it addresses the jurisdictional bars in 8 U.S.C. §

---

[10] Doc. No. 97 at 20-25; Doc. No. 107 at 26-28; Doc. No. 258 at 12-14; Doc. 281 at 23-25.

1252(a)(2)(C)-(D), not 8 U.S.C. § 1252(a)(2)(B)(ii). 965 F.3d 84, 91–92 (2d Cir. 2020). And unlike in *Nouritajer* or *Doe*, Plaintiffs here are not challenging the Secretary's "exercise of discretion," *Nouritajer v. Jaddou,* 18 F.4th 85, 89 (2d Cir. 2021), or "the substance" or "merits" of an agency's decision, *Doe v. McAleenan,* 926 F.3d 910, 915 (7th Cir. 2019). Plaintiffs challenge "the extent of the Secretary's authority and her failure to adhere to legal limits and requirements— none of which Congress made discretionary." Doc. No. 253 at 8. These include "the failure to follow notice regulations, the failure to engage in notice-and-comment rulemaking, and the failure to consider all the relevant factors concerning various discrete decisions made though the FRP FRN." Doc. No. 268 at 4. Defendants argue that Plaintiffs' claims are substantive because Plaintiffs sought a preliminary injunction and stay rather than "a procedural remedy." Mot. at 8 (citing *Karakenyan v. USCIS.,* 468 F. Supp. 3d 50, 57 (D.D.C. 2020)). But a preliminary injunction *is* a procedural remedy—it does not decide the merits, vacate the FRN, or grant anyone parole. It preserves the status quo while the Court determines whether the agency followed the law.[11] Accepting Defendants' argument would render preliminary relief unavailable whenever § 1252(a)(2)(B)(ii) applies; that is plainly not the law. And *Karakenyan* is inapposite: there, the plaintiff asked the court to grant a visa. 468 F. Supp. 3d at 57.

Defendants also repeat their argument that allowing procedural challenges would render the jurisdictional bar a "nullity." Mot. at 8; *see* Doc. No. 263 at 8. Defendants raise no precedent (new or otherwise) to support this point, and their argument inverts the presumption of reviewability. *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020); Doc. No. 268 at 6. As

---

[11] The Court's order confirms this: it does not "prohibit early termination of FRP grants of parole following an administrative process that fairly weighs reliance interests, avoids unsubstantiated fraud allegations, provides proper notice of changes, and allows time for the Secretary's discretionary review before such termination." Doc. No. 258 at 40.

13

the Court properly held, § 1252(a)(2)(B)(ii) prevents courts from second-guessing the Secretary's ultimate decision but does not immunize the procedures by which that decision was made. *See* Doc. No. 258 at 12-14; *Castaneira*, 138 F.4th at 549.

             ii.      The Court properly rejected Defendants' § 701(a)(2) argument.

The Court should also decline to reconsider its conclusion that Section 701(a)(2) of the APA does not preclude review of the parole statute. The Court properly rejected Defendants' argument that parole terminations are committed to agency discretion by law and therefore unreviewable, concluding that the narrow exception to the presumption of reviewability does not apply here. Doc. No. 258 at 15. In requesting that the Court reconsider its conclusion, Defendants present no intervening case law or new evidence. Rather, they repeat another recycled argument—also considered and rejected by this Court multiple times—that the parole statute includes no meaningful standards against which to assess the Secretary's exercise of discretion in terminating grants of parole. Mot. at 11. Defendants contend the Court "ignored the statutory language that it is the Secretary's 'opinion' that the purposes of parole have been served," and argue there is no basis on which courts can assess an "opinion." *Id.*

Plaintiffs, however, seek review not of the Secretary's opinion, but rather her compliance with regulatory and statutory limits that provide ample law to apply, such that review is not precluded. *See California v. U.S. Dep't of Educ.*, 132 F.4th 92, 97-98 (1st Cir. 2025). Plaintiffs also seek review of the extent of the Secretary's authority, which too is "not a matter of discretion." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). In its most recent rejection of Defendants' argument, the Court held that "the parole statute *does* include meaningful standards for the Secretary's exercise of discretion both in granting parole . . . and terminating the grant of parole"—i.e., that grants must be made on a case-by-case basis for urgent humanitarian reasons or public benefit, and that terminations require the Secretary's determination that the purposes of parole have been

14

served. Doc. No. 258 at 15 (emphasis added). This conclusion was not error, much less clear error warranting reconsideration; Defendants' reiterated arguments do not show otherwise. Having put forth no permissible basis for reconsideration, Defendants' request for the Court to revisit its decision on Section 701(a)(2) reviewability should be denied. *See Lyons v. Fed. Nat'l Mortg. Assn.*, Civil Action No. 1:18-CV-10365-ADB, 2019 WL 1961072, at *3 (D. Mass. May 1, 2019) ("A disagreement with the Court's decision is not a basis for reconsideration.").

> ### iii. The Court's Ultra Vires Holding Does Not Foreclose APA Review.

Defendants also appear to argue that the Court's holding that the Secretary did not exceed her statutory authority in terminating parole granted under the FRP processes, Doc. No. 258 at 17, forecloses further APA review by the Court, including of Plaintiffs' arbitrary and capricious claim. Mot. at 10-12 ("The Court did not explain why it could look behind the Secretary's 'opinion' that the 'purposes of such parole . . . have been served'"—nor has the Court pointed to any other meaningful standard that would somehow constrain the Secretary's exercise of discretion to terminate parole to allow judicial review of any aspect of the Secretary's decisionmaking."). This argument fails.

First, the APA makes clear that statutory violations and "arbitrary and capricious" claims are independent bases for holding an agency action illegal. 5 U.S.C. § 706(2) (reviewing court can set aside agency action as either "arbitrary [and] capricious" under § 706(2)(A) *or,* separately, "in excess of statutory [ ] authority" under § 706(2)(C)"). It is beyond cavil that agency action that is determined to not be *ultra vires* of the statute can still be arbitrary and capricious, as these are two separate inquiries. *See Regents*, 591 U.S. at 26, 31 (conducting review of consideration of reliance interests and other APA arguments even where "[DHS] plainly exercised [its] discretionary authority in winding down [DACA]."); *Department of Commerce v. New York*, 588 U.S. 752, 777-

15

85 (2019) (holding that the Secretary of Commerce did not violate the Census Act, but affirming remand because he did not provide a reasonable explanation for agency action).

Additionally, the Court here did identify several "meaningful standard[s]" by which to evaluate the termination of FRP grants beyond that in the parole statute. These include, for Plaintiffs' arbitrary and capricious claim, the *State Farm* requirements for a "reasonable explanation for the agency's decision," 463 U.S. at 43, and the *Regents* framework for the weighing of reliance interests, 591 U.S. at 33. Doc. No. 258 at 17-18, 22. For Plaintiffs' claims related to improper notice of parole termination, the Court used DHS's regulations requiring "written notice" for parole termination and the Fifth Amendment's Due Process standard. *Id.* at 31-36. These meaningful standards confirm that the agency's action is not shielded from APA review as "committed to agency discretion by law," *see supra* at 14-15.

The First Circuit's decision reviewing the Court's preliminary injunction of the termination of grants of parole for the Cuban, Haitian, Nicaraguan, and Venezuelan processes confirms that the Court's analysis should continue beyond determining that the Secretary met her statutory obligation. The First Circuit did not end its analysis of Plaintiffs' claims after it determined that the Secretary had satisfied the statutory requirements to terminate grants of parole. *Doe v. Noem*, 152 F.4th 272, 285-87 (1st Cir. 2025). It went on to review the Court's decisions on Plaintiffs' other APA claims that the terminations were based on legal error, *id.* at 28-30, or lacked reasoned explanation, *id.* at 289-91.

The government's argument would mean that any agency that satisfies the statutory requirements for action is then immune from APA review of its reasoning. This runs contrary to the purpose and requirements of the APA, and it cannot stand.

16

**B.** **The Court did not err in holding that the Secretary's failure to adequately assess reliance interests was arbitrary and capricious.**

Defendants argue that the Court erred in impermissibly "reweighing" the interests at stake for parolees and the government, Mot. at 12, but this mischaracterizes the Court's analysis and does not provide a basis for reconsideration. Instead, the Court carefully parsed the record before her to determine that the Secretary "understated the reliance interests of FRP parolees" as the FRP FRN "did not consider what parolees gave up in their home countries after being invited by the United States to apply" or "how feasible it would be for parolees to return to their home countries after selling their homes and belongings and giving up their jobs to move to the United States." Doc. No. 258 at 18, 21-22 (citing Plaintiff declarations). Additionally, the Court determined that the Secretary "overstated the agency's countervailing interests," as "DHS's purported concerns regarding insufficient vetting and fraud" were "unsupported by the factual record" and, clear from the FRP FRN, "not relevant to the Secretary's decision to terminate grants of parole." Doc. No. 258 at 22. While the Secretary made various suggestions as to how parole beneficiaries or petitioners *could* commit fraud, the Court correctly found that she failed to provide any "credible facts to suggest that fraud [in acquiring a grant of parole] *had actually occurred*," or any "analysis of whether FRP parolees pose security risks...comparison of vetting outcomes...[or] data" to support her rationale. *Id.* at 22-23 (emphasis added). She presented no "tangible evidence that individuals currently holding grants of parole were responsible for fraud." *Id.* at 26.

Given the absence of *any* evidence in the administrative record (corrected or otherwise) substantiating the purported reasoning of the agency, the Secretary failed to provide a "reasoned explanation" for her actions. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016); *see also Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43

17

(1983) (requiring an agency provide a "satisfactory explanation for its action including a rational connection between the facts found and the choice made."). The Court did not "substitute its judgment for that of the agency" or "reweigh" the reliance interests of parolees against the government's expressed concerns, Mot. at 12, but rather reviewed the Secretary's weighing based on the record and the stated rationale in the Federal Register Notice and identified gaps and "unsupported allegations" in the Secretary's reasoning as to reliance interests. *See* Doc. No. 258 at 18, 27. Given these gaps, the Secretary violated the APA. *Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28, 33-34 (1st Cir. 2026) (where the agency's administrative record "[did] not contain *any* evidence" that the government considered reliance interests, the district court correctly held that the agency action was likely arbitrary and capricious) (emphasis added). Defendants raise no "manifest error of law" or finding that was "clearly unjust" that justifies reconsideration.

###     C.    The Injunctive Relief the Court Issued is Proper.

Defendants argue for the first time that the Court should have ordered the agency to provide proper notice rather than enjoining the mass termination.[12] Mot. at 10 n.1; 12-13. This is not a legitimate basis for reconsideration. A motion for reconsideration is not the vehicle for arguments Defendants could have raised previously. *See Global Naps*, 489 F.3d at 26.

Regardless, the argument is meritless. The PI was not based solely on deficient notice. The Court independently held that the Secretary's termination of grants of parole was likely arbitrary and capricious because she failed to adequately consider reliance interests and relied on unsupported fraud allegations. Doc. No. 258 at 18-27. Ordering the agency to fix notice alone

---

[12] Defendants also attempt to re-litigate whether the notice Defendants provided was adequate. Mot. at 12-13. The Court already resolved this question. Publication in the Federal Register does not constitute "written notice to the [noncitizen]," and where DHS sent electronic notices, they reached less than a quarter of the affected parolees and included faulty, incomplete information. Doc. No. 258 at 31-36. Defendants identify no manifest error warranting reconsideration.

18

would not have remedied "the procedurally defective FRP [FRN]." *Id.* at 40. Therefore, the proper remedy to address both failures was to "maintain the status quo" while this case proceeds to final judgment. *Id.*

### III. The Court Should Deny Defendants' Stay Request.

The Court should deny Defendants' request in the alternative to stay its preliminary injunction order "pending a potential appeal." Mot. at 11. First, as a threshold matter, the Court should reject Defendants' request because it is not ripe for consideration; Defendants have not noticed an appeal nor committed to appealing the Court's preliminary injunction order. *Id.* Essentially, Defendants are asking this Court to stay its own order on a contingency (a possible appeal) that may never occur, undermining the legal framework required for a stay pending appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

Even assuming, *arguendo*, that Defendants' stay request is not premature, the Court should still deny it. Defendants repeat the same legal arguments they assert in their request for reconsideration, *see supra* Section II, and they repeat arguments from prior briefing, *see* Doc. No. 251 at 23-25, that the government and public are irreparably harmed by the preliminary injunction, and that those interests outweigh harm to FRP beneficiaries. Mot. at 13. In reasserting (almost verbatim) the same irreparable harm and equity arguments that this Court has already considered and dismissed, *see* Doc. No. 258 at 37-41—Defendants once again sweep under the rug "the significant real-world harms" Plaintiffs and class members face if their grant of FRP parole is prematurely terminated, *accord* Doc. No. 258 at 38; *see also* Doc. No. 218 at 19-20. Moreover, Defendants' long delay in seeking this relief against Plaintiffs—41 days after the injunction was entered and mere weeks before their deadline to appeal the Court's injunction—makes clear that they are not irreparably harmed by the status quo. *See Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004) (finding that delay between an action and the injunctive

19

relief sought "detracts from the movant's claim to irreparable harm," and "the longer the delay, the more pervasive the doubt.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Reconsideration or Stay of the Court's January 24, 2026 Preliminary Injunction and Stay (Doc. No. 278).

Dated: March 20, 2026

Respectfully submitted,

/s/ Laura Flores-Perilla

John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com

H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, Fl. 53
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com

Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com

Robert Stout (*pro hac vice*)
Sarah Elnahal (*pro hac vice*)
Javier Ortega Alvarez (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000

Laura Flores-Perilla (*pro hac vice*)
Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (*pro hac vice*)
Hillary Li (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
laura.flores-perilla@justiceactioncenter.org
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

Inyoung Hwang (*pro hac vice*)
Anwen Hughes (*pro hac vice*)
**Human Rights First**
121 W 36th Street
PMB 520
New York, NY 10018
Telephone: (212) 845-5200
HughesA@humanrightsfirst.org
HwangS@humanrightsfirst.org

Justin B. Cox (*pro hac vice*)
**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106

20

rob.stout@arnoldporter.com
sarah.elnahal@arnoldporter.com
javier.ortega@arnoldporter.com

Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

*Attorneys for Plaintiffs*

21

**CERTIFICATE OF SERVICE**

I, Laura Flores-Perilla, hereby certify that this document filed through the ECF system will

be sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF).

Dated: March 20, 2026

/s/ Laura Flores-Perilla

22