**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **SVITLANA DOE**, *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No.** |
| | ) | |
| **v.** | ) | **1:25-cv-10495-IT** |
| | ) | |
| **KRISTI NOEM, in her official capacity as** | ) | |
| **Secretary of Homeland Security, et al.;** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DECLARATION OF NATHANIEL I. STIEFEL**

I, Nathaniel I. Stiefel make the following declaration, as provided by Section 1746 of Title 28 of the United States Code. I am aware that this declaration will be filed in the above-captioned civil action with the United States District Court for the District of Massachusetts. I hereby certify:

1. I serve as the Deputy Chief for the Office of Policy and Strategy (OP&S), of U.S. Citizenship and Immigration Services (USCIS), a component agency within the U.S. Department of Homeland Security (DHS). I have held this position since May 2025. Since 2006, I have served in a variety of roles at USCIS, including my current role, which I also held prior to my appointment as the Deputy Ombudsman within the DHS Office of the Citizenship and Immigration Services Ombudsman. I also previously served as Deputy Chief of the USCIS Office of Citizenship.

2. OP&S was the lead office for development, clearance, and publication of the notices that announced creation of the Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans as well as the Federal Register Notice (FRN) entitled "Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans," 90 Fed. Reg. 58032 (Dec. 15, 2025) (hereafter referred to as the termination of the FRP programs).

1

3. OP&S leads the development, coordination, and governance of immigration policy and the regulatory development process for USCIS to ensure compliance with leadership's policy goals.

4. The statements contained in this declaration are based upon my personal knowledge, information provided to me in my official capacity, and conclusions and determinations reached and made in accordance therewith.

5. On January 13, 2026, DHS produced and filed with this Court the Certified Administrative Record (CAR) for the FRN.

6. On March 6, 2026, DHS filed a corrected CAR with this Court for the FRN. DHS produced a corrected CAR because certain documents that were directly or indirectly considered as part of the decision-making process were inadvertently omitted from the original administrative record. These materials were indirectly considered in the analysis conducted to evaluate and ultimately terminate the FRP programs.

7. On or near January 20, 2026, Plaintiffs' counsel filed a brief stating that certain material that was referenced in the FRN was not included in the CAR that had been filed. USCIS investigated and determined that it had inadvertently excluded the material that formed the basis for the statement that the Plaintiffs' counsel referenced from the FRN from the CAR. USCIS determined that the source material was a draft, pre-decisional, deliberative report on the USCIS special parole processes that was written by the U.S. Government Accountability Office (GAO). The source document was overlooked during the initial compilation of the CAR because the FRN did not specifically cite to the source document. The final GAO report was published on December 11, 2025. *See* Government Accountability Office, *Humanitarian Parole: DHS Identified Fraud Risks in Parole Processes for Noncitizens and Should Assess Lessons Learned* (Dec. 11, 2025), *available at https://www.gao.gov/products/gao-26-107433*.

8. As a pre-decisional, deliberative document, the draft GAO report was not part of the record. The statements in the draft report, however, were references to specific information provided by USCIS to GAO. USCIS, therefore, identified the documents

2

containing that underlying information that were submitted to GAO. Those are the first four of the five documents included in the CAR supplementation.

9. The first document provided in the supplemental record that was provided to GAO is entitled "Brief Analysis of Family Reunification Parole Data," dated December 4, 2024, and updated on January 23, 2025. This report by the USCIS Fraud Detection and National Security Directorate provides an analysis of Form I-130, *Petition for Alien Relative*, and Form I-134A, *Online Request to be a Supporter and Declaration of Financial Support,* receipt data to assess program integrity of the FRP programs.

10. DHS also relied on the draft GAO report for the following statement in the FRN: "Additionally, the same internal audit concluded that the vetting standards applied to co-supporters under the modernized FRP programs were even weaker than those for primary supporters, further compromising program integrity." For the purposes of GAO's audit and report, USCIS had provided GAO with information about security and vetting procedures for supporters in the following documents:

    a. USCIS Immigration Records and Identity Services Directorate (IRIS) Form I-134A – Reviewers Guide for the parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV) and Uniting for Ukraine (U4U) programs (Oct. 19, 2023 & Dec. 2, 2024).

    b. USCIS Service Center Operations Directorate (SCOPS) Form I-134A Family Reunification Parole Process ELIS Guide; and,

    c. USCIS IRIS Form I-134A – Reviewers Guides and the SCOPS Form I-134A Family Reunification Parole Process ELIS Guide.

    Those reviewers guides were silent on the vetting of co-supporters and only required officers to review the co-supporter's ability to financially support the alien beneficiary. The guides make no mention of performing any background security checks or vetting of the co-supporters.

11. In addition, the original FRN record contained documents supporting a comprehensive data analysis of the FRP programs, including response rate of the legacy FRP programs which utilized the Form I-131, *Application for Travel Documents, Parole Documents, and Arrival/Departure Records*. The report

results were detailed in a spreadsheet from which Tabs 1-3 and 5-12 were in the original CAR. On or around January 16, 2025, plaintiffs requested the native format Excel spreadsheets from the CAR that DHS filed. When reviewing the native Excel files, USCIS found that Tab 4 had been inadvertently excluded from the record that had been produced. Tab 4 was part of the larger spreadsheet and was considered, but because it was not directly cited or mentioned in the FRN, it was inadvertently omitted from the original CAR.

12. Because the administrative record was compiled on an expedited timeline, the employees compiling the administrative record for the case mistakenly omitted the above documents from the initial submission of the administrative record. After DHS realized certain record material was not included in the CAR that had been filed and why, DHS and USCIS began to work on correcting the record. This process took some time to ensure that privileged and law-enforcement sensitive material was properly redacted or excluded.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 3rd day of April, 2026, in Camp Springs, Maryland.

NATHANIEL I STIEFEL
Digitally signed by NATHANIEL I STIEFEL
Date: 2026.04.03 15:21:27 -04'00'

Nathaniel I. Stiefel
Deputy Chief, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security