BRETT A. SHUMATE
*Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Email: katherine.j.shinners@usdoj.gov
ELISSA FUDIM
*Trial Attorney*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Svitlana Doe, *et al.*, | Civil Action No. 1:25-cv-10495 |
| Plaintiffs, |  |
| v. |  |
| Markwayne Mullin,[1] in his official capacity as Secretary of Homeland Security, *et al.*, |  |
| Defendants. |  |

## DEFENDANTS' SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE (Doc. No. 283)

---

[1] Secretary Mullin is automatically substituted for his predecessor, former Secretary Noem, under Federal Rule of Civil Procedure 25(d).

i

## TABLE OF CONTENTS

Introduction..............................................................................................................1

Factual and Procedural Background .........................................................................2

Argument .................................................................................................................9

    I.      The Previously Omitted Documents are Part of the Administrative
           Record ......................................................................................................9

    II.     Plaintiffs Provide No Basis for Show Cause Relief.................................13

Conclusion .............................................................................................................16

## TABLE OF AUTHORITIES

Cases

*Ad Hoc Metals Coal. v. Whitman*,
227 F. Supp. 2d 134 (D.D.C. 2002) ...................................................................... 10

*Am. Fed'n of Gov't Emps. v. U.S. Dep't of Health & Human Servs.,*
63 F.Supp.2d 104 (D. Mass. 1999) ....................................................................... 11

*Am. Hosp. Ass'n v. Kennedy*,
164 F.4th 28 (1st Cir. 2026) .................................................................................. 14

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*,
143 F. Supp. 2d 7 (D.D.C. 2001) .......................................................................... 10

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971) ........................................................................................... 9, 14

*Ctr. for Native Ecosystems v. Salazar*,
711 F. Supp. 2d 1267 (D. Colo. 2010) .............................................................. 10, 12

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
140 S. Ct. 1891 (2020) .......................................................................................... 14

*Forest Cnty. Potawatomi Cmty. v. United States*,
270 F. Supp. 3d 174 (D.D.C. 2017) ........................................................................ 9

*New York v. McMahon*,
No. 25-10601-MJJ, 2026 WL 622484 (D. Mass. Feb. 11, 2026) ........................... 10

*Oceana v. Ross*,
920 F.3d 855 (D.C. Cir. 2019) ............................................................................... 10

*Sensor Sys. Support, Inc. v. F.A.A.*,
851 F. Supp. 2d 321 (D.N.H. 2012) ............................................................... 6, 7, 11

*Tafas v. Dudas*,
530 F. Supp. 2d 786 (E.D. Va. 2008) ............................................................... 10, 11

*Town of Norfolk v. U.S. Army Corps of Eng'rs*,
137 F.R.D. 183 (D. Mass. 1991) .............................................................................. 9

*Town of Norfolk v. U.S. Army Corps of Eng'rs*,
968 F.2d 1438 (1st Cir. 1992) ................................................................................ 10

Statutes

5 U.S.C. § 706 ................................................................................................................. 9

5 U.S.C. § 706(a)(1)-(2) ................................................................................................. 9

**INTRODUCTION**

In their Motion for an Order to Show Cause, Plaintiffs mischaracterize a proper procedural correction as misconduct. *See* Doc 284. On March 6, 2026, Defendants filed a Notice of Corrected Administrative Record, with certification, to add five erroneously omitted documents to the administrative record for the Federal Register Notice, *Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans*, 90 Fed. Reg. 58032 (Dec. 15, 2025) (the "FRP FRN"). Docs. No. 276, 276-1. This correction was not only appropriate, but arguably necessary to avoid maintaining an inaccurate declaration before the Court. For the reasons explained in the Declaration of Nathan Stiefel (Doc. No. 293), submitted herewith, the added documents are properly part of the administrative record for the FRP termination decision because they were considered, directly or indirectly, in reaching that decision. Given the procedural posture of this case—where a preliminary injunction was issued on an expedited timeframe (Doc. No. 257), but the case has yet to proceed to final judgment on the merits—it behooves all parties to ensure that the administrative record is complete. Plaintiffs may make whatever arguments they wish about the contents of the record and the Secretary's reasoning, but the added documents should still be considered.

Plaintiffs take issue with the timing and process of Defendants' correction of the administrative record, asking the Court to order Defendants to provide an explanation or to strike the correction. *See* Doc. Nos. 283, 283-1, 285. There is no requirement that corrections to the administrative record be made by motion, and indeed, there is nothing extraordinary about doing so via a Notice. *See, e.g.*, *Roe v. Mayorkas*, No. 22-cv-10808-ADB, Doc. No. 85 (D. Mass. June 27, 2023) (Notice of Filing USCIS's Corrected Administrative Record). Nor does the timing or substance of the correction raise any inference of bad faith. As noted, DHS has attested that the five documents were part of the administrative record for the FRP FRN. There is also no concern

1

here with "*post hoc*" rationalization, Doc. No. 285 at 6, because the reasons for the FRP termination are already memorialized in the decisional document (the FRP FRN). *See* Doc. No. 216-1, 276-1. Defendants acknowledge that the five documents should have been included in their initial designation of the administrative record, but Defendants worked to correct the record after realizing their erroneous omission. And there is no reason whatsoever to think that DHS could have intentionally omitted the documents or delayed correcting the record to gain some litigation advantage. As the Court's opinion reflects, the absence of the documents from the administrative record disadvantaged DHS. Plaintiffs can point to no actual advantage gained by Defendants as a result of their purported delay in correcting the record. Nor are Plaintiffs prejudiced by the correction to the administrative record or by the timing of the correction, as up to this point, the Court's preliminary injunction of the FRP FRN's termination of parole grants has remained in place. On the contrary, Plaintiffs concede they "possess an interest in having the full administrative record." Doc No. 285 at 1.

The Court should thus deny Plaintiffs' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

The Family Reunification Parole (FRP) programs are a series of legacy and modernized programs that, in general, provided a process for certain beneficiaries of approved Form I-130 family-based visa petitions who are from certain countries to seek and obtain time-limited parole in the United States. *See generally* Doc. No. 233 at 3–5. On December 15, 2025, the Secretary of Homeland Security announced that DHS had independently evaluated the FRP programs and was terminating these FRP programs because they "do not serve a significant public benefit, are not necessary to reduce levels of unlawful immigration, and are not serving all their intended purposes." 90 Fed. Reg. at 58034. As part of that termination, the Secretary announced that existing

2

parole periods granted under the FRP programs would terminate as of January 14, 2026, with two exceptions: (1) the alien filed an application for adjustment of status that is postmarked as of December 15, 2025, that is still pending adjudication as of December 15, 2025; or (2) the Secretary determines otherwise on a case-by-case basis. *Id.* at 58032–33.

The then-Secretary provided the reasons for her discretionary termination decision, addressing each of the goals of the various FRP programs. As most relevant here, the Secretary acknowledged that the programs were created, in part, for the purpose of promoting family unity, but determined that national security and fraud concerns, as well as the current Administration's policy priorities, outweighed that interest. *Id.* Unlike with the process for applying for an immigrant visa through a U.S. consulate abroad, under the modernized FRP programs there was no collection of biometrics or in-person interview for the beneficiary prior to his or her arrival in the United States, and only "minimal public safety and national security vetting of potential beneficiaries" before issuing an advance travel authorization. *Id.* at 58034–35. Accordingly, the programs created "security gaps not present in" consular processing, and created an "untenable likelihood" of the entry of bad actors, "posing an unacceptable level of risk to the United States' national security and public safety." *Id.* at 58035. The Secretary also addressed the risk of abuse and fraud where biometrics collection does not occur before arrival in the United States and where beneficiaries are from countries with weak civil registry systems. *See id.* DHS "determined that the desire to reunite families" does not outweigh these weighty fraud, national security, and public safety concerns. *Id.* In evaluating these weighty concerns alongside other reasons for terminating the program, DHS further noted that, although "the modernized FRP programs established a framework for vetting," there were still significant opportunities for fraud. "For instance, a recent internal audit revealed that over 700 requests to be a supporter were filed under the names of

3

deceased individuals of which USCIS confirmed approximately half." *Id.* at 58041. This presented

a concern because family-based visa petitions are generally automatically revoked upon the death

of the petitioner, and, for the FRP programs, the petitioner is required to be the primary supporter.

*Id.* (citing 8 CFR § 205.1(a)(3)(i)(B) and (C)). DHS further noted that "the same internal audit

concluded that the vetting standards applied to co-supporters under the modernized FRP programs

were even weaker than those for primary supporters, further compromising program integrity." *Id.*

On December 29, 2025, the existing named Plaintiffs in this case—none of whom were

directly impacted by the FRP FRN—filed five motions, seeking to add claims challenging the

parole terminations and other unrelated actions, to add pseudonymous plaintiffs who were

impacted by the action, to expand the class definition to include those impacted by the termination

of parole granted under the FRP parole programs, and to obtain expedited injunctive relief against

the upcoming January 14, 2026 parole terminations. *See generally* Doc. Nos. 212, 214, 216, 219,

221. The procedural history regarding the deadlines for briefing on these motions is somewhat

complicated, but ultimately, Defendants filed their oppositions to the motions for expedited

briefing and to amend the complaint on December 31, 2025, *see* Doc. Nos. 226, 227, and their

oppositions to the motion to modify the class definition, the motion for preliminary injunctive

relief to the extent it sought a temporary restraining order, and the motion to proceed under

pseudonym on January 6, 2026, *see* Doc. Nos. 232, 233, 234. The Court had set a hearing for

January 9, 2026, on the motions for a temporary restraining order and to modify the class

definition. *See* Doc. No. 229.

In their efforts to assist the Court in expeditiously resolving the pending motions for

preliminary injunctive relief, Defendants offered at the January 9 hearing to provide the

administrative record for the FRP FRN by Tuesday, January 13, 2026. Tr. of Mot. Hr'g (Jan. 9,

4

2026), Doc. No. 244 at 37. The Court then issued an order requiring production of the administrative record by January 13, 2026. *See* Doc. No. 242.

On January 10, 2026, the Court issued a temporary restraining order of the FRP FRN's termination of existing parole grants. Doc. No. 243. On January 13, 2026, Defendants filed and produced an administrative record, including a certification and index of included documents. Doc. No. 246. On January 15, 2026, Defendants filed their opposition to Plaintiffs' motion for a preliminary injunction and a supplemental opposition to the motion to modify the class definition, which completed Defendants' opportunity for briefing. Doc. Nos. 251, 252. Plaintiffs then filed a reply on January 20, 2026, in which they pointed out that the "internal audit" referenced in the FRP FRN was not found in the recently-filed administrative record. Doc. No. 256 at 2, 3. On January 24, 2026, the Court issued a preliminary injunction of the FRP FRN's termination of existing parole grants, noting in its supporting opinion the absence of the referenced "internal audit" that might constitute evidence of fraud concerns relating to the FRP programs. *See* Doc. No. 258 at 23 ("Defendants' administrative record, however, includes no such audit . . . .").[2]

Defendants began investigating this issue and looking into the completeness of the administrative record. Doc. No. 293, Decl. ¶¶ 7, 11. U.S. Citizenship and Immigration Services (USCIS), whose Office of Policy and Strategy was the lead office for the development, clearance,

---

[2] Plaintiffs fault Defendants for failing to raise or explain this particular "deficiency" (the absence of an internal audit from the administrative record) at the January 9 TRO hearing, yet the administrative record had not yet been produced,  the particular deficiency had not been raised, and counsel for Defendants had yet to even see the initial compiled administrative record. *See* Doc. No. 285 at 5 & n.2. Nor did Plaintiffs include any argument about an "unreleased, internal report" in their initial December 29 memorandum; this quote is from one line from the background section of Plaintiffs' memorandum. *See* Doc. No. 218 at 7. The argument section contained no argument specifically about this report—or about the evidence of vetting or fraud at all—to which Defendants would have had occasion to directly respond in their oppositions or at the TRO hearing. *See* Doc. No. 218 at 9–20.

and publication of the FRP FRN, first determined that it had inadvertently omitted certain data that was part of the data analysis underlying the evaluation of the FRP programs. Doc. No. 293, Decl. ¶¶ 2, 11. It also determined that the agency had considered, but did not specifically cite in the FRP FRN, a draft, predecisional, deliberative report by the Government Accountability Office (GAO) as support for the following statements: "For instance, a recent internal audit revealed that over 700 requests to be a supporter were filed under the names of deceased individuals of which USCIS confirmed approximately half," 90 Fed. Reg. at 58041, and that "the vetting standards applied to co-supporters under the modernized FRP programs were even weaker than those for primary supporters, further compromising program integrity," *id.*; Doc. No. 293, Decl. ¶¶ 7–10.  Because the draft GAO Report was not directly cited in the FRP FRN, this aspect of the factual record for the decision was overlooked in the initial compilation of the administrative record. *Id.* ¶ 7. Also, because it is a draft GAO Report and protected by the deliberative process privilege, it is not part of the administrative record. *Id.* ¶ 8; *Sensor Sys. Support, Inc. v. F.A.A.*, 851 F. Supp. 2d 321, 329 (D.N.H. 2012).[3] However, USCIS determined that the underlying source materials related to those conclusions were directly or indirectly considered by decisionmakers, as USCIS had provided those materials to GAO for purposes of its report: a report from USCIS's Fraud Detection and National Security Directorate and several procedural guidance documents that provided evidence of the vetting conducted (or lack thereof) for supporters and co-supporters upon review of supporters' requests to be a financial supporter for a beneficiary under the FRP programs (Forms I-134A). Doc. No. 293, Decl. ¶ 10. It then took some time for USCIS to complete the process of

---

[3] The final GAO report was published on December 11, 2025. *See* Government Accountability Office, *Humanitarian Parole: DHS Identified Fraud Risks in Parole Processes for Noncitizens and Should Assess Lessons Learned* (Dec. 11, 2025), *available at* https://www.gao.gov/products/gao-26-107433 (citing FDNS report).

correcting the record, including to ensure that proper redactions were made and that privileged material was excluded from the record. *Id.* ¶ 12.

On March 6, 2026, Defendants filed a Notice of Corrected Administrative Record. Doc. No. 276. The certification to the corrected record explained that, in Defendants' "haste to provide the court with a complete administrative record in a timely manner," five documents that "were considered in the decision-making process" were erroneously excluded, and that the error was being corrected through the amendment to the administrative record. Doc. No. 276-1 at 2. These documents added were:

- U.S. Citizenship and Immigration Services (USCIS), Fraud Detection and National Security Directorate (FDNS), Fraud Division, *Brief Analysis of Family Reunification Parole Data* (Dec. 4, 2024, updated January 23, 2025), at FRP-FRN-01573 (Doc. No. 276-1 at 7–16) (hereafter the "FDNS Report");

- USCIS, Office of Policy & Strategy, Immigration Records and Identity Services Directorate, *Form I-134A – Reviewers Guide* (Oct. 19, 2023), at FRP-FRN-01583 (Doc. No. 276-1 at 17–78);

- USCIS, Office of Policy & Strategy, Immigration Records and Identity Services Directorate, *Form I-134A – Reviewers Guide* (Dec. 2, 2024), at FRP-FRN-01645 (Doc. No. 276-1 at 79–141);

- Form I-134A Family Reunification Parole Process ELIS Guide, at FRP-FRN-01708 (Doc. No. 276-1 at 142–161);

- USCIS analysis of FRP response rates as of Feb. 18, 2025, at FRP-FRN-01728 (Doc. No. 276-1 at 162).

The FDNS Report, which was initially issued December 4, 2024, but includes an update

7

from January 23, 2025, assessed "program integrity issues" with the FRP programs by using data provided by the Department of State (DOS) and USCIS.  Doc. No. 276-1 at 8 (FRP-FRN-01574). The Report states that FDNS conducted an analysis using the DOS data and initially determined that 256 FRP supporter requests (Form I-134A) were filed by supporters/petitioners who were identified as deceased. Doc. No. 276-1 at 14 (FRP-FRN-01580). The FDNS Report then states in a section labeled "Update: January 23, 2025," that it received additional data on the Form I-130 visa petition receipts from another USCIS division, and that its updated analysis showed that 728 petitioners who filed FRP I-134A supporter requests appeared on a death index, 364 of whom were confirmed as supporters by USCIS. Doc. No. 276-1 at 15–16 (FRP-FRN-01581–82).

The USCIS procedural guides ("USCIS procedures documents") set forth guidance for review of Forms I-134A under  humanitarian parole processes. *See* Doc. No. 276-1 at 17–161. These documents regarding vetting processes for supporters and co-supporters of parole beneficiaries under the modernized FRP programs were submitted to GAO for purposes of its study. Doc. No. 293, Decl. ¶ 10.

The same date Defendants submitted the corrected administrative record, Defendants also filed a Motion for Reconsideration, which was based in part on the corrected administrative record. *See* Doc. No. 258. Among other arguments, Defendants requested that, in light of the correction to the record to include the FDNS Report and the USCIS procedures documents regarding I-134A supporter requests, the Court reconsider its rulings that the Secretary's reasoning concerning vetting and fraud lacked adequate support in the record and that the Secretary "overstated" the government's national security and fraud concerns. Doc. No. 258 at 18–19.

Plaintiffs subsequently filed the instant Motion for Order to Show Cause, to which Defendants filed a short opposition. *See* Doc. Nos. 283, 287. In its order denying Defendants'

Motion for Reconsideration, the Court assessed certain of the documents added in the corrected administrative record and determined that Defendants should file an amended opposition, and declaration(s) as appropriate, "to support their contention that the late-discovered documents were part of the record considered by DHS in issuing the December 15, 2025 Federal Register Notice." *See* Doc. No. 288 at 9.

## ARGUMENT

The documents added to the Certified Administrative Record are properly part of the record of decision. To the extent the Court may even review the agency decision, that review should be based on the complete record. Plaintiffs' attempt to bind Defendants to the initially-filed administrative record is contrary to the principles of record review under the Administrative Procedure Act (APA), particularly at this stage of this litigation, and there is no basis to issue an order to show cause.

### I.      The Previously Omitted Documents are Part of the Administrative Record.

Assuming, for argument's sake, arbitrary-and-capricious review is permissible here,[4] the five previously omitted documents are properly part of the administrative record for judicial review. The APA directs the Court to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. This requires the Court to review "the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). The whole record for an agency decision includes "all documents and materials that the agency directly or indirectly considered." *Forest Cnty. Potawatomi Cmty. v. United States*, 270 F. Supp. 3d 174, 178 (D.D.C. 2017); *see also Town of Norfolk v. U.S. Army*

---

[4] Defendants maintain that there is no arbitrary-and-capricious review available because the termination of parole is discretionary and is thus precluded from review by 8 U.S.C. § 1252(a)(2)(B)(ii) and the APA, 5 U.S.C. § 706(a)(1)-(2). *See, e.g.*, Doc. No. 263 at 6–9.

*Corps of Eng'rs*, 137 F.R.D. 183, 185 (D. Mass. 1991) (holding that administrative record must consist of "all documents and materials directly or indirectly considered by [the] agency decision-makers and includes evidence contrary to the agency's position"), *aff'd,* 968 F.2d 1438 (1st Cir. 1992); *New York v. McMahon*, No. 25-10601-MJJ, 2026 WL 622484, at *2 (D. Mass. Feb. 11, 2026); *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002) (requiring inclusion in the record of information referred to by the agency leading up to its decision). This may include documents besides those which "literally pass[ed] before the eyes of the final agency decisionmaker[s]." *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275 (D. Colo. 2010) (citations and quotations omitted). Thus, for example, "if the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included [in the record] as well." *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). The administrative record is "entitled to a presumption of administrative regularity." *McMahon*, 2026 WL 622484, at *2. Privileged materials are ordinarily not part of the administrative record, *see Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992), and "do not need to be logged as withheld from the administrative record," *Oceana v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). That is, "[a] complete administrative record . . . does not include privileged materials, such as documents that fall within the deliberative process privilege, attorney-client privilege, and work product privilege." *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008).

Here, the erroneously-omitted documents that Defendants sought to add are: (1) the USCIS FDNS Report; (2) three USCIS procedures documents concerning the process for review and processing of Form I-134A supporter requests under the modernized FRP programs; and (3) data reflecting the numbers of invitations and resulting applications for the legacy Cuban and Haitian

FRP programs. *See* Doc. No. 276-1; *supra* at 7. Each of these documents were indirectly or directly considered in the FRP termination decision. *See* Doc. No. 293, Decl. ¶ 6.

The first document, the FDNS Report, includes internal analysis and findings that were indirectly considered by the agency decisionmakers. Among other things, the FDNS Report found, based on an analysis of internal data and death indexes, that 728 FRP supporters—that is, the petitioners who had filed family-based visa petitions on behalf of the intended FRP beneficiary and then filed Form I-134A supporter requests as part of the FRP programs—were reported as deceased, 364 of whom were confirmed as supporters by USCIS. Doc. No. 276-1 at 15–16 (FRP-FRN-015821–82). This information was referenced in the FRP FRN as evidence of concerns with fraud and program integrity of the FRP programs. *See* 90 Fed. Reg. at 58041. Although the FRP FRN decisionmakers relied upon the FDNS findings as set forth in a draft GAO report, the underlying FDNS Report was provided to GAO for purposes of its own report. Doc. No. 293, Decl. ¶¶ 8–9.[5] The draft GAO report itself is not part of the administrative record because it is a privileged draft. *See id.* ¶ 8; *Sensor Sys. Support, Inc. v. F.A.A.*, 851 F. Supp. 2d 321, 329 (D.N.H. 2012) ("Draft documents in general are deemed deliberative 'because comparing them to final documents can disclose editorial judgments that reflect the agency decisionmaking process.'") (quoting *Am. Fed'n of Gov't Emps. v. U.S. Dep't of Health & Human Servs.,* 63 F.Supp.2d 104, 108 (D. Mass. 1999)); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) (privileged documents are not part of the administrative record). The underlying source data in the FDNS

---

[5] The final GAO report states that "some invitations to apply [for FRP] were sent to deceased petitioners, FDNS found. These invitations resulted in 728 supporter applications filed under the names of deceased individuals—of which USCIS confirmed half." *See* Government Accountability Office, *Humanitarian Parole: DHS Identified Fraud Risks in Parole Processes for Noncitizens and Should Assess Lessons Learned* at 38 (Dec. 11, 2025), *available at* https://www.gao.gov/products/gao-26-107433 (citing FDNS report)

Report itself is properly part of the administrative record, however, because it forms the basis for statements in the draft GAO report and thus, the decisionmakers "constructively considered it." *See Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275. Indeed, given GAO's privilege over its draft report, it was incumbent upon Defendants to produce the underlying factual material that was provided to GAO and referenced in the FRP FRN, as that allows the Court to evaluate the factual record for those conclusions (assuming such APA review is permissible; Defendants acknowledge that this Court has found that it is). Plaintiffs may argue against the import of FDNS's findings, but that does not alter the fact that the FDNS Report constitutes record support for the findings cited in the FRP FRN.

The Court questioned whether the FDNS Report included in the record was indeed the source of information in the FRP FRN. First, the Court questioned the date of the report because the report was initially dated December 4, 2024, but contained updates from January 23, 2025, and the index to the administrative record referred to the report as dated December 4, 2024. Doc. No. 288 at 6. Regardless of which date was listed on the index, the FDNS Report findings pre-date the FRP FRN by approximately one year and were at minimum indirectly considered by decisionmakers. *See* Doc. No. 293, Decl. ¶¶ 6–9.

Next, the Court noted that the FDNS Report does not contain the conclusion stated in the FRP FRN that "the vetting standards applied to co-supporters under the modernized FRP programs were even weaker than those for primary supporters." Doc. No. 288 at 6. However, although the FRP FRN refers to this conclusion as emanating from the same "internal audit" as the findings regarding deceased supporters, 90 Fed. Reg. at 58041, USCIS's declaration clarifies that the direct source for this conclusion concerning vetting standards for co-supporters was the draft GAO report, and explains that three USCIS procedures documents in the correction to the administrative

12

record were the USCIS procedures for reviewing supporters' applications that USCIS provided to GAO for purposes of the audit. *See* Doc. No. 293, Decl. ¶¶ 7–8, 10. Again, this underlying material is appropriately part of the administrative record because the decisionmakers indirectly considered it by relying on the draft GAO report.

Finally, the fifth document—data about the legacy FRP programs—was part of the data package prepared by USCIS for evaluation of the FRP programs. *See* Doc. No. 293, Decl. ¶ 11. This particular document was inadvertently omitted from the initially-compiled administrative record because the worksheet was not specifically cited in the document. *See id.*

In sum, the corrections to the administrative record were proper under the governing APA standards for record review. Given the procedural posture of this case—where a preliminary injunction was issued on an expedited timeframe, but the case has yet to proceed to final judgment on the merits—it behooves all parties to ensure that the administrative record is complete.

## II.    Plaintiffs Provide No Basis for "Show Cause" Relief.

As part of their efforts to block consideration of the administrative record, Plaintiffs ask the Court to issue an order to show cause based on insinuations of bad faith and an alleged violation of the deadline to produce the administrative record. There is no basis to infer bad faith from unintentional omissions that offered no possible benefit to Defendants and caused no possible harm to Plaintiffs. The Court should reject Plaintiffs' request for "show cause" relief on this basis.

First, Defendants acknowledge Plaintiffs' and the Court's questions about certain of the supplemental documents, *see* Doc. No. 288, and have herein provided an explanation why the five additional documents are properly part of the administrative record. *See supra* § I. Plaintiffs' concern with "post hoc" rationalization, Doc. No. 285 at 6, is entirely misplaced, because the reasons for the FRP termination were already memorialized in the FRP FRN. "Post hoc"

rationalization occurs when the agency relies on reasons not reflected in the decisional document. *See, e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1908 (2020) (noting that post-decisional grounds for DACA recission that did not appear in the original decision memo could not support decision); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971) (holding that post-decisional affidavits prepared for litigation do not constitute the administrative record and were also post hoc rationalizations); *Am. Hosp. Ass'n v. Kennedy*, 164 F.4th 28, 34 (1st Cir. 2026) ("[A]n agency . . . cannot rely on post-hoc rationalizations developed and presented during litigation. . . .  Although agencies may later "elaborate" on the reasons initially provided to justify agency action, they may not provide altogether new reasons after-the-fact." (internal citations and quotations omitted)). Here, Defendants do not, and did not, rely on the corrected administrative record to provide any "altogether new" rationales for the FRP termination decision.  *See id.*

To the extent Plaintiffs suggest that Defendants belatedly *found* documents that were never considered at all (whether directly or indirectly) by agency decisionmakers, and now seek to use those documents to support the statements in the FRN so as to address the Court's concerns about the absence of such documents, *See* Doc. No. 285 at 6, this suggestion is baseless. The FRP FRN cites specific numerical data regarding deceased petitioners/supporters. Defendants have submitted an authentic document containing that specific numerical data that pre-dates the FRP FRN. This is not a coincidence. The reason Defendants were able to *find* the documents supporting the contentions in the FRP FRN is because the factual material in those documents was *relied upon* in drafting the FRP FRN. Indeed, as confirmed by the supplemental certification for the corrected administrative record and the Declaration submitted herewith: the FRN referenced or relied on

14

factual material that existed at the time of decision and was simply erroneously omitted from the initial compilation of the administrative record.

Second, any purported delay in correcting the record after Plaintiffs pointed out one of the omissions in their January 20 reply brief does not support the relief Plaintiffs seek. Defendants worked reasonably diligently to properly correct the record—including to confirm that privileged information was not produced and that proper redactions were made—before filing a notice of correction and an updated certification with the Court. *See* Doc. No. 293, Decl. ¶ 12. Although the process to complete and certify the corrected administrative record took more time than Defendants would have liked, Plaintiffs cite no procedural advantage that Defendants gained (or could have gained) from the time they took to conduct and complete the task. The parties submitted no filings during that time that involved the administrative record for the FRP FRN. The delay did not affect the progress of the litigation in any way. And Plaintiffs have had the benefit of the Court's preliminary injunction throughout that time. From the standpoint of the litigation and the practical realities, there was no difference between a correction made the day after the Court's ruling and Defendants' correction made on March 6, 2026.

Similarly, Plaintiffs do not explain for what reason the materials would have been the subject of "strategic deliberation." Doc. No. 285 at 6. Plaintiffs also cannot cite any disadvantage (let alone prejudice) to Plaintiffs resulting from the purported delay, because, as noted, the preliminary injunction of the challenged FRP terminations meanwhile remained in place—and continues to remain in place. Plaintiffs also had ample opportunity to address the added material in an opposition to Defendants' Motion for Reconsideration—which they have done. *See* Doc. No. 286 at 10–11 (analyzing the FDNS Report). Indeed, Plaintiffs claim (however implausibly) that the newly added documents *help* their case. *See id.* Further, as Plaintiffs' challenge to the FRP

15

FRN is still in its preliminary stages, there is no prejudice from Defendants' correction of the administrative record, as that corrected record is fully available to Plaintiffs for purposes of summary judgment arguments.

Finally, Plaintiffs cite no authority for issuing an "order to show cause" in this scenario. Plaintiffs cite an alleged failure to abide by the January 13 deadline to produce the administrative record. Doc. No. 283 at 1. Yet Defendants substantially complied with that deadline and believed at the time that they were complying therewith.  Any later-discovered failure to produce the complete administrative record was remedied by Defendants' efforts to correct the administrative record.

## **CONCLUSION**

For these reasons, the Court should deny Plaintiffs' motion.


Dated: April 3, 2026                               Respectfully submitted,


By:  /s/ *Katherine J. Shinners*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8259
Email: katherine.j.shinners@usdoj.gov

ELISSA FUDIM
*Trial Attorney*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2026, I electronically filed this motion and accompanying memorandum with the Clerk of the Court for the United States District Court for the District of Massachusetts by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: */s/ Katherine J. Shinners*
    KATHERINE J. SHINNERS
    *Senior Litigation Counsel*
    United States Department of Justice

17