2026 WL 880442

2026 WL 880442
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

SILEIRI DOE, on behalf of herself and all others similarly situated, et al., Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY et al., Defendants.

Civil Action No. 25-cv-12245-ADB
|
Filed 03/31/2026

**Attorneys and Law Firms**

Cortney Robinson Henderson, Democracy Forward Foundation, Washington, DC, Allyson R. Scher, Democracy Forward Foundation, Washington, DC, Brian D. Netter, Democracy Forward Foundation, Washington, DC, Catherine Carroll, Democracy Forward Foundation, Washington, DC, Heather Perez Arroyo, Massachusetts Law Reform Institute, Boston, MA, Iris Gomez, Massachusetts Law Reform Institute, Boston, MA, Melanie Chaput, Melanie Chaput - Attorney at Law, Nashua, NH, for Plaintiffs.

Shawna Yen, DOJ-United States Attorney's Office, Boston, MA, for Defendants.

**MEMORANDUM AND ORDER**

ALLISON D. BURROUGHS U.S. DISTRICT JUDGE

**\*1** In this action, Plaintiffs challenge notices sent by the Department of Homeland Security announcing the termination of certain noncitizens' humanitarian parole, claiming Defendants' actions run afoul of the Administrative Procedure Act ("APA"), Pub. L. No. 79-404, 60 Stat. 237 (1946) (codified as amended in scattered sections of 5 U.S.C.). Before the Court are Plaintiffs' Motion for Leave to File Pseudonymously, [ECF No. 4]; Plaintiffs' motion to certify class, [ECF No. 5]; Plaintiffs' motion for summary judgment, [ECF No. 32]; Defendants' consolidated motion to dismiss and cross-motion for summary judgment, [ECF No. 39]; and Plaintiffs' motion for hearing, [ECF No. 47]. For the following reasons, leave to file pseudonymously, [ECF No. 4], is **GRANTED**. Plaintiffs' motion to certify class, [ECF No. 5], is **GRANTED IN PART** and **DENIED IN PART**.

Defendants' consolidated motion to dismiss and cross-motion for summary judgment, [ECF No. 39], is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' motion for summary judgment, [ECF No. 32], is **GRANTED IN PART** and **DENIED IN PART**. [1]

**I. BACKGROUND**

**A. Parties**

The individual plaintiffs in this action are citizens of Venezuela, Cuba, and Haiti who used the CBP One app to make appointments for inspection at ports of entry in Texas. [ECF No. 1 ¶¶ 5, 9–11]. Plaintiff Venezuelan Association of Massachusetts ("VAM") is a "nonprofit membership-based organization that provides services to noncitizens who recently arrived from Venezuela and other countries." [Id. ¶ 12]. Defendants are federal agencies responsible for the decision to terminate parole. [Id. ¶¶ 13–18].

**B. Statutory Authority**

The statute governing humanitarian parole provides in pertinent part:

> The Secretary of Homeland Security may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission into the United States, but ... when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A) (emphasis added).

**C. Factual History**

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 880442

The impacted parole recipients made appointments for inspection to enter the United States using CBP One, a mobile app and scheduling tool. [ECF No. 1 ¶¶ 23–24, 30]. At their appointments, officers of United States Customs and Border Protection ("CBP") began processing their applications for admission. [Id. ¶¶ 27, 30–32]. While their applications were pending, the impacted parole recipients were paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). [Id. ¶¶ 27, 33]. They were generally given two-year terms of parole, and after entering the United States, "many applied for employment authorization ... and other benefits." [Id. ¶¶ 33–34].

**\*2** Plaintiffs allege that in April 2025, many noncitizens who had received parole pursuant to the process just described received the following email ("Termination Email"):

Notice of Termination of Parole

It is time for you to leave the United States.

You are currently here because the Department of Homeland Security (DHS) paroled you into the United [States] for a limited parole period. Pursuant to 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e), DHS is now exercising its discretion to terminate your parole. Unless it expires sooner, your parole will terminate 7 days from the date of this notice.

....

Again, DHS is terminating your parole. Do not attempt to remain in the United States—the federal government will find you. Please depart the United States immediately.

[ECF No. 1 ¶¶ 36–38]. Other noncitizens did not receive the Termination Email, but instead discovered, upon looking up their proof of legal visitor status, that their parole had been revoked. [Id. ¶ 42]. Plaintiffs allege that these emails effectively terminated parole for everyone who applied for entry to the United States using the CBP One app. [Id. ¶¶ 36, 38]; accord [id. ¶ 41 (quoting an agency spokesperson acknowledging the categorical terminations)].

### D. Procedural History
Plaintiffs filed their complaint on August 11, 2025. [ECF No. 1]. On August 12, they moved for leave to file pseudonymously, [ECF No. 4], and for class certification, [ECF No. 5]. Defendants opposed both motions on September 25, 2025, [ECF Nos. 27, 28], and Plaintiffs replied on October

9, 2025, [ECF Nos. 29, 30]. On September 9, 2025, the parties moved to establish an expedited briefing schedule, [ECF No. 16], pursuant to which Plaintiffs filed a motion for summary judgment on October 16, 2025, [ECF No. 32]; accord [ECF No. 32-1]; Defendants filed a consolidated opposition, motion to dismiss, and cross-motion for summary judgment on November 6, 2025, [ECF No. 39]; accord [ECF No. 40]; Plaintiffs filed an opposition and reply on November 25, 2025, [ECF No. 43]; and Defendants filed a reply on December 11, 2025, [ECF No. 46]. Plaintiffs then moved for a hearing on January 16, 2026. [ECF No. 47].

## II. MOTION TO PROCEED PSEUDONYMOUSLY
Although "there is a 'strong presumption against the use of pseudonyms in civil litigation,' " Doe v. Mass. Inst. Tech., 46 F.4th 61, 67 (1st Cir. 2022) (quoting Does 1–3 v. Mills, 39 F.4th 20, 25 (1st Cir. 2022)), the First Circuit has recognized "four general categories of exceptional cases in which party anonymity ordinarily will be warranted," id. at 71. As relevant here, one of those categories "involves a would-be Doe who reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)," id., including "extraordinary retaliation, such as deportation, arrest, and imprisonment," id. (quoting Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1071 (9th Cir. 2000)). In deciding a motion to proceed pseudonymously, the First Circuit instructs district courts to "balance the interests asserted by the movant in favor of privacy against the public interest in transparency, taking all relevant circumstances into account" and exercising "broad discretion to quantify the need for anonymity in the case before it." Id. at 72.

**\*3** Here, the Court finds that Plaintiffs have carried their burden of "rebutting the strong presumption against" pseudonymity. Mass. Inst. Tech., 46 F.4th at 73. They are noncitizens challenging the government's revocation of a legal status without which their presence in this country is unlawful. E.g., [ECF No. 1 ¶ 67]. This alone is sufficient to establish a justified fear for their "safety and the safety of their families and loved ones," [ECF No. 4-1 at 1], in light of the inherent "threat of detention and deportation" that they each face, [id. at 2]. [2]

The government's opposition to this motion indicates that "Defendants have asked Plaintiffs for the names, dates of birth and Alien Registration Number[s] ... [of] each of the individual plaintiffs," [ECF No. 27 at 6], and reserves the

2026 WL 880442

government's right to use any "lawfully obtained information for a lawful purpose should such purpose arise," [id. at 4], which validates the concern that Plaintiffs might be identified through their participation in this lawsuit and then subjected to removal from the United States. Further, the Court is not persuaded that Defendants require "pertinent information about the Plaintiffs" in order to defend the lawfulness of the termination of Plaintiffs' parole, [id. at 6], because as explained below, challenges under the APA are generally limited to the evidence in the administrative record, see Massachusetts ex rel. Div. of Marine Fisheries v. Daley, 170 F.3d 23, 28 n.4 (1st Cir. 1999); Lovgren v. Locke, 701 F.3d 5, 20 (1st Cir. 2012). Finally, given that Plaintiffs specifically challenge the termination decisions on the basis that they were reached without consideration of individual circumstances, [ECF No. 1 ¶ 2], Plaintiffs' individual identities are not relevant to any claim or defense.

As such, the Court, mindful of its obligation to avoid "deter[ring] the legitimate exercise of the right to seek a peaceful redress of grievances through judicial means," Mass. Inst. Tech., 46 F.4th at 71 (quoting Talamini v. Allstate Ins. Co., 470 U.S. 1067, 1070–71 (1985) (Stevens, J., concurring)), grants Plaintiffs' motion to proceed pseudonymously, [ECF No. 4].

## III. MOTION FOR CLASS CERTIFICATION

### A. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–01 (1979)). To be certified, proposed classes must satisfy the threshold requirements of Rule 23(a) of the Federal Rules of Civil Procedure and fit into one of the categories enumerated by Rule 23(b). See Silow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997)). Under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1); the claims of the class must involve common questions of law or fact, Fed. R. Civ. P. 23(a)(2); the claims asserted must be typical of the claims of the class as a whole, Fed. R. Civ. P. 23(a)(3); and the parties representing the class must "fairly and adequately protect" its interests, Fed. R. Civ. P. 23(a)(4). Under Rule 23(b), the class must fit one of three permissible types. Fed. R. Civ. P. 23(b). As relevant here, Rule 23(b)(2) permits class actions where "the party opposing the class has acted ... on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### B. Discussion

*4 Defendants raise a variety of threshold objections to class certification that parallel those raised in their consolidated motion to dismiss and for summary judgment. The Court will defer discussion of standing and jurisdiction until it addresses the consolidated motion. Here, the Court considers the parties' positions on class certification. Plaintiffs propose certification of the following class:

> All individuals who (i) scheduled their appointments for entry to the United States using the CBP One app; (ii) were paroled into the United States between May 16, 2023 and January 19, 2025; (iii) had their parole terminated in April 2025; and (iv) remain in the United States.

[ECF No. 5 at 1].

#### 1. Numerosity

Plaintiffs estimate that the class, as defined, may involve "over 900,000 individuals," [ECF No. 5-1 at 7], and Plaintiff VAM estimates that about 675 of its own members were affected, [ECF No. 1 ¶ 12]. Defendants do not contest numerosity, see [ECF No. 28 at 10–15], and the parties' briefing makes clear that many people scheduled an appointment through CBP One, received parole thereafter, and then had their parole terminated in April 2025, see, e.g., [id. at 5–6]. The Court is thus satisfied that the class is sufficiently numerous to make joinder of all members impracticable.

#### 2. Commonality

As Plaintiffs articulate, "the relevant inquiry is not whether the class raises common questions but rather whether 'a class-wide proceeding [can] generate common answers apt to drive the resolution of the litigation.' " [ECF No. 5-1 at 12 (quoting

2026 WL 880442

Doe v. Noem, 784 F. Supp. 3d 437, 468 (D. Mass. 2025))]. The focus on the availability of common answers, affirmed by the Supreme Court in Wal-Mart, 564 U.S. at 350; see also Richard Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009), guides the Court's inquiry.

Defendants contend that "Plaintiffs' class definition fails to take into consideration the specific circumstances of each individual," including "why that person was granted parole" and "why that person's parole was terminated." [ECF No. 28 at 12]. The Court agrees in part. Plaintiffs allege two distinct factual circumstances that concern two discrete groups of affected individuals. The first group of people were notified that their parole had been revoked through the mass delivery of emails that did not set forth a basis, other than the agency's discretionary authority, for the revocation. See [ECF No. 1 ¶¶ 35–40]; Wal-Mart, 564 U.S. at 351 (noting that the determination whether a class properly satisfies the requirements of the Federal Rules of Civil Procedure often "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action" (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982))). The second group "did not receive any notice" of their parole termination, but rather "learned that DHS had terminated [their] parole" when they looked up the online record of their proof of legal visitor status. [ECF No. 1 ¶ 42]. The first group of claims—people who can all point to the same waves of emails and the administrative record underlying them as the basis for their challenge—presents a common question. The second, by contrast, does not, because there are numerous possible explanations for why one's parole was terminated or why one did not receive notice of that termination. Without any written record (such as a common email) connecting the cases, the Court cannot determine whether those cases all derive from the same agency decision and administrative record.

 **\*5** In sum, the Court agrees with Defendants that as written, the proposed class, to the extent that it includes those who found out about their parole terminations through means other than the mass emails, lacks commonality. Nonetheless, "issues of over-breadth ... 'can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.' " O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 468 (D. Mass. 2018) (quoting St. Louis Heart Ctr., Inc. v. Forest Pharms., Inc., No. 12-cv-02224, 2013 WL 1076540, at \*6 n.7 (E.D. Mo. Mar. 13, 2023)) (citing Campbell v. First Am. Title Ins. Co., 269 F.R.D. 68, 74 (D. Me. 2010)). "[T]he district court 'is not bound

by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly.' " Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc., 348 F.R.D. 268, 283 (D. Mass. 2025) (alteration in original) (quoting Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp., 993 F.2d 11, 14 (2d Cir. 1993)). Here, because a more narrowly drawn class would enable Plaintiffs to challenge the lawfulness of the Termination Email, the Court will modify the proposed class definition to read as follows:

> All individuals who (i) scheduled their appointments for entry to the United States using the CBP One app; (ii) were paroled into the United States between May 16, 2023 and January 19, 2025; (iii) had their parole terminated in April 2025 pursuant to an email substantially similar to the one reproduced at paragraph 38 of the Complaint without any further explanation; and (iv) remain in the United States.

By excluding people whose parole terminations were not accompanied by any communication whatsoever and people whose parole terminations were explained by more particular communications, the amended class definition satisfies the commonality requirement as set forth by Rule 23.

### 3. Typicality

Concerning typicality, Defendants again urge the Court to inquire into "the specific reasons why each of the Representatives were paroled into the United States, and why each of their paroles was terminated." [ECF No. 28 at 14]. The modified class described above does not require this inquiry, as it includes only people whose parole was terminated pursuant to a categorical email without any individual-specific reasons being given. The class representatives' claims are thus typical of the class's claims in relevant aspect: Namely, each of the class representatives received a mass email terminating her parole pursuant to DHS's discretionary authority, without any particular reason being given for the termination and without reference to the reasons that parole was granted in the first place. See [ECF No. 1 ¶¶ 9–11].

There is no risk of the representatives having "claims and defenses ... for their own cases" that are not reflective of "the circumstances and thus claims and defenses of the rest of the class." [ECF No. 28 at 14].

#### 4. Adequacy of Representation

The Court is satisfied that Plaintiffs will adequately protect the interests of the class as a whole. As explained above, the Plaintiffs' interest in the relief sought is aligned with all other potential class members, and a judgment for Plaintiffs in this action would benefit all other potential class members equally. See Amchem, 521 U.S. at 625 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." (citing Gen. Tel. Co., 457 U.S. at 157–58 & n.13)). Because Plaintiffs seek to declare unlawful a single administrative action, which acted to the detriment of all class members regardless of their specific circumstances, there is no risk of "disparity between ... categories of plaintiffs" or "within [such] categor[ies]." Id. at 626. Nor is there the eventual possibility of a "common fund ... that must be allocated among class members," such that "a benefit to one group of class members ... [would] come[ ] at the detriment of the other class members." Murray v. Grocery Delivery E-Services USA Inc., 55 F.4th 340, 345 (1st Cir. 2022).

#### 5. Requirements of Rule 23(b)(2)

**\*6** Plaintiffs contend that they seek an "indivisible ... injunctive or declaratory remedy ... such that [the decision to terminate parole] can be enjoined or declared unlawful only as to all of the class members or as to none of them." [ECF No. 5-1 at 16 (quoting Wal-Mart, 564 U.S. at 360) (citation omitted)]. Defendants do not dispute that Rule 23(b)(2) permits certification of such a class, [ECF No. 28 at 15], but they contend that the relief Plaintiffs seek is not actually uniform, [id. at 15–16]. Specifically, they aver that because Plaintiffs' "proposed class includes members whose parole may have been terminated for reasons independent of, and unrelated to the fact that the proposed class members used the CBP One App to make an appointment to present at a [point of entry] in the United States," it is necessary to review each termination individually. [Id. at 16]. The Court disagrees in light of its modification to the class definition. As modified, the class concerns only those people whose parole was terminated pursuant to the mass emails that were

sent in April 2025. There has been no suggestion by either party that these emails reflected individual circumstances or were based on an individualized evaluation of each person's situation. See, e.g., [ECF No. 40 at 17–18 (arguing the termination of parole was based on "an acknowledgement that the large-scale parole of those who presented themselves at [points of entry] with CBP One appointments is not in the public interest")]. The challenged action was categorical, and declaratory or injunctive relief setting aside that action would impact all people affected by it. See Fed. R. Civ. P. 23(b)(2).

Defendants also contest the availability of injunctive relief under these circumstances, citing 8 U.S.C. § 1252(f)(1), which deprives all courts but the Supreme Court of "jurisdiction ... to enjoin or restrain the operation of provisions of part IV of this subchapter," subject to certain exceptions. [ECF No. 28 at 16 (emphasis added)]. This argument falls flat as the subsection at issue, 8 U.S.C. § 1182, appears in Part II, not Part IV, of Chapter 12, Subchapter 2 of Title 8 of the United States Code. See 8 U.S.C. § 1182.

### IV. CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION TO DISMISS

#### A. Legal Standard

##### 1. Motion to Dismiss

Though Defendants do not expressly state the basis for their motion to dismiss, the Court construes it as a motion to dismiss for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). In evaluating a motion to dismiss under Rule 12(b)(1), the Court must determine whether the facts as alleged in the complaint, "taken at face value," support the existence of subject matter jurisdiction. Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017) (citing Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003)). The Court "appl[ies] a standard of review 'similar to that accorded a dismissal for failure to state a claim' under subsection 12(b)(6)." Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). The Court must "accept the factual averments of the complaint as true, and construe those facts in the light most congenial to [Plaintiffs'] cause." Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 1 (1st Cir. 1987) (first citing Guessefeldt v. McGrath, 342 U.S. 308, 310 (1952); and then citing Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)). "Dismissal can be justified only if it clearly appears that no colorable hook exists upon which

subject matter jurisdiction can be hung." Id. Even so, "a plaintiff who seeks to bring her suit in a federal forum bears the burden of establishing that the federal court has subject-matter jurisdiction." Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 64 (1st Cir. 2018) (citing Gordo-González, 873 F.3d at 35).

**2. Cross-Motions for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a court considers an APA challenge to an action or actions taken on an administrative record, judicial review is generally limited to the evidence in that record. See Daley, 170 F.3d at 28 n.4; Lovgren, 701 F.3d at 20. In this case, there is no reason for the Court to look beyond the administrative record.

**B. Discussion**

Plaintiffs seek a stay of the parole terminations and subsequent terminations of work authorization, a permanent injunction against enforcement of the terminations, vacatur of the terminations, and a declaration that the terminations were unlawful. [ECF No. 1 at 24–25]. They argue that the terminations violated the APA's prohibition on agency action that is arbitrary, capricious, or contrary to law, 5 U.S.C. § 706(2)(A), see [ECF No. 32-1 at 15–24], which Defendants dispute, see [ECF No. 40 at 9–19]. The Court first considers the threshold issues raised by Defendants, [id. at 9–12], before moving on to their arguments on the merits, [id. at 13–19].

**1. Standing**

**\*7** Defendants first argue that VAM lacks associational standing and begin by challenging the constitutional validity of the associational standing doctrine. [ECF No. 40 at 11–12 (citing FDA v. All. for Hippocratic Med., 602 U.S. 367, 398 (2024) (Thomas, J., concurring))]. That challenge fails, however, because the Court is bound by the decisions of the First Circuit, which recognizes the doctrine. See, e.g., In re Fin. Oversight & Mgmt. Bd. for P.R., 110 F.4th 295, 321 (1st Cir. 2024). Defendants next contend that VAM does not satisfy the requirements of associational standing. [ECF No. 40 at 12]. To have associational standing, an organization must meet the following three criteria: "(a) its members would

otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977). "The first two prongs of this test have constitutional dimensions; the third prong is prudential." Housatonic River Initiative v. U.S. Env't Prot. Agency, 75 F.4th 248, 265 (1st Cir. 2023) (first citing United Food & Com. Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 554–58 (1996); and then citing Back Beach Neighbors Comm. v. Town of Rockport, 63 F.4th 126, 129 n.2 (1st Cir. 2023)).

i. Members' standing

VAM members whose parole was revoked have standing to challenge that revocation. "[T]he irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). To have Article III standing, a person must show that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citing Lujan, 504 U.S. at 560–61). Defendants do not dispute that people whose parole was revoked suffered and will suffer injuries in fact, including loss of benefits, detention, and removal. [ECF No. 46 at 6–7 & n.3]. Those injuries are plainly traceable to the parole revocations at issue here. See Conservation L. Found., Inc. v. Acad. Express, LLC, 129 F.4th 78, 90 (1st Cir. 2025) (holding that the touchstone of traceability is the presence of "a causal connection between the injury and the conduct complained of" (quoting Lujan, 504 U.S. at 560)). Finally, a decision invalidating the revocations would redress those harms. See Housatonic River Initiative, 75 F.4th at 265. VAM members whose parole was revoked thus have individual standing.

"While [VAM] has thus clearly alleged that [some members] have suffered an Article III injury, it must also show that it is a proper party to sue on their behalf, according to [associational] standing principles." Fin. Oversight & Mgmt. Bd., 110 F.4th at 308. Defendants contend that because "membership in [VAM] is free and [it] has 'members who are not of Venezuelan origin nor have Venezuelan heritage,' " [ECF No. 40 at 12 (quoting [ECF No. 32-7 ¶¶ 6–7])], the organization should be treated as "a large amorphous group with varied interests" that does not have an adequately

particularized interest in the litigation, [id.]. The Court disagrees. In Warth v. Seldin, 422 U.S. 490 (1975), the Supreme Court laid out the required relationship between an association and individuals injured by a challenged action:

> The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.... So long as this can be established, and so long as ... the individual participation of each injured party [is not] indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

**\*8** Id. at 511 (citation omitted); accord Playboy Enters., Inc. v. Pub. Serv. Comm'n of P.R., 906 F.2d 25, 34 (1st Cir. 1990). Approximately 675 of VAM's roughly 3,000 members are "noncitizens that secured appointments for inspection via the CBP One app, were ... lawfully granted parole ..., and had their parole terminated in April 2025." [ECF No. 1 ¶ 12]; see also [ECF No. 32-1 at 7–10 (describing certain of these members' stories in more detail)]. Because VAM has "identif[ied] a particular affected member, not merely a 'statistical probability that some of [its] members are threatened with concrete injury,' " [ECF No. 40 at 12 (quoting Summers v. Earth Island Inst., 555 U.S. 488, 497 (2009))], the Court concludes that VAM is "an appropriate representative of its members, entitled to invoke the court's jurisdiction," Warth, 422 U.S. at 511.

### ii. Interests advanced

VAM has adequately shown that the interests that it seeks to protect are germane to its purpose. In addition to representing its membership, VAM also "provides services to noncitizens who recently arrived from Venezuela and other countries ... rang[ing] from assistance with employment and obtaining driver's licenses, to legal guidance on adjustment of immigration status and applying for asylum." [ECF No. 1

¶ 12]. The direct relationship between the consequences of parole revocation and the support services provided by VAM, as well as the direct effect of the challenged revocation on a significant share of its members, satisfies the germaneness-of-interest factor. See Housatonic River Initiative, 75 F.4th at 265 (holding germaneness requirement satisfied where "[t]he 'interests at stake' in [the] litigation are clearly 'related to the [association's] core purposes,' " (citing Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006))).

### iii. Necessity of individual participation

The relief sought in this case does not require the participation of individual members. Defendants contend that "to establish injury in fact ... would require the participation of individual members of the lawsuit." [ECF No. 40 at 12]. But "just because a claim may provide proof specific to individual members of an association does not mean the members are required to participate as parties in the lawsuit." Playboy Enters., 906 F.2d at 35. "The nub of [Plaintiffs'] claim," Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 12 (1st Cir. 1986), which is that Defendants revoked parole for a category of recipients in violation of the APA, [ECF No. 32-1 at 15–16], does not depend "on evidence that differs from member to member," Camel Hair, 799 F.3d at 12. Recognizing that actions seeking to set aside agency action "have generally been held particularly suited to group representation," id. (first citing Warth, 422 U.S. at 515; then citing Olagues v. Russoniello, 770 F.2d 791, 799 (9th Cir. 1985); and then citing Chi.-Midwest Meat Ass'n v. City of Evanston, 589 F.2d 278, 281 (7th Cir. 1978)), the Court concludes that the association may bring this action without the participation of its individual members.

### 2. Subject Matter Jurisdiction

Defendants next contend that the Court lacks subject matter jurisdiction. [ECF No. 40 at 9–10]. Although "executive determinations generally are subject to judicial review," Kucana v. Holder, 558 U.S. 233, 251 (2010) (quoting Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995)), Congress can overcome the presumption of judicial review by "clearly indicat[ing] that judicial review ... is precluded," Patel v. Garland, 596 U.S. 328, 347 (2022). This is true even when Congress's decision to insulate a

decision from judicial review means that "nothing can be done" about an executive-branch decision that results in "dire consequences for countless [people]." Id. at 347–48 (Gorsuch, J., dissenting). As relevant here, federal district courts lack jurisdiction to review "any ... decision or action of ... the Secretary of Homeland Security the authority for which is specified ... to be in [his] discretion," subject to exceptions not relevant to this case. 8 U.S.C. § 1252(a)(2)(B)(ii).

**\*9** Defendants argue that the disputed Termination Email was sent pursuant to the Secretary's discretion and is thus unreviewable. [ECF No. 40 at 10 (citing 8 U.S.C. §§ 1182(d)(5)(A), 1252(a)(2)(B)(ii))]. Plaintiffs do not dispute that the statute grants the Secretary unreviewable discretion over the decision that the purposes of parole have been served in a particular case. [ECF No. 43 at 7–8]. Rather, they argue that (1) the Secretary must proceed case by case in deciding whether the purposes of parole have been served, and (2) the Court has jurisdiction to review termination of parole, even if it cannot review the determination that the purposes of parole have been served. [Id. at 9]. In order to determine its subject matter jurisdiction, the Court must therefore parse the parole statute in light of the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii).

i. Whether the Secretary has discretion to categorically conclude that the purposes of parole have been served

Plaintiffs first argue that the statute requires the Secretary to proceed on a case-by-case basis in determining whether the purposes of parole have been served. [ECF No. 43 at 8–9]. That argument is foreclosed by a recent First Circuit decision, Doe v. Noem, 152 F.4th 272 (1st Cir. 2025), which considered the same issue. The First Circuit concluded that "the statutory text ... reflects a deliberate choice on the part of Congress to require the Secretary to implement a case-by-case approach to granting parole, but not to end such grants," and that the legislative history "also weighs in favor of" this interpretation. Id. at 286. Accordingly, whether to conclude, on a categorical basis, that the purposes of parole have been served—thus terminating parole—is committed to the Secretary's unreviewable discretion.

Plaintiffs' attempts to distinguish this case are unavailing. First, they argue that the instant case concerns modification of the duration of parole, not termination of it. [ECF No. 32-1 at 22 & n.5]. The Court is not persuaded that what happened here

was simply a modification. Plaintiffs were notified that their parole would "terminate" within seven days of the notice, [ECF No. 1 ¶ 38], and regardless of what word was used, the effect of the emails was to bring an end to Plaintiffs' parole status, [ECF No. 32-1 at 13–14]. Indeed, appearing to recognize as much, Plaintiffs refer throughout their pleadings to Defendants' "termination" (as opposed to "modification") of their parole. E.g., [ECF No. 1 at 16–22]; [ECF No. 32-1 at 10–13, 16–24].

Second, Plaintiffs contend that because Doe v. Noem concerned nationals of a few specific countries who had all received parole pursuant to a single written policy, whereas the facts of this case involve nationals of many countries whose only common trait is that they applied for admission using CBP One, the Court should distinguish its analysis from the First Circuit's in Doe v. Noem. [ECF No. 32-1 at 21–22]. The First Circuit's holding cannot be read to draw the distinction that Plaintiffs propose. The panel did not conclude that the Secretary's power to proceed categorically in terminating parole was limited to certain fact patterns. See Doe v. Noem, 152 F.4th at 285–87. Nor is there reason from the statutory language to suppose that the First Circuit's decision should be so limited. See 8 U.S.C. § 1182(d)(5)(A) (prescribing the same parole procedures for "any alien applying for admission to the United States"); Doe v. Noem, 152 F.4th at 285–87.

Finally, Plaintiffs argue that even after Doe v. Noem, the Court can still hear a challenge to a "policy decision[ ] that direct[s] DHS's exercise of its parole authority." [ECF No. 43 at 9–10]. That statement of law, although correct, applies only where an agency has allegedly exceeded limits on its discretion as imposed by statute, regulation, or binding agency precedent. See, e.g., Aracely, R. v. Nielsen, 319 F. Supp. 3d 110, 124, 135–36, 149–51 (D.D.C. 2018) (collecting cases) ("[T]he statutory bar does not prevent the Court from evaluating Defendants' failure to follow procedures set out in [an agency policy directive] and their unlawful consideration of deterrence as a heavily weighted criterion when evaluating requests for parole." Id. at 134 (citation modified).); Damus v. Nielsen, 313 F. Supp. 3d 317, 323, 327 (D.D.C. 2018) ("[Plaintiffs] allege that ICE is, as a matter of course, not complying with the policies and procedures of the parole directive." Id. at 327.); Abdi v. Duke, 280 F. Supp. 3d 373, 380–81, 383–84 (W.D.N.Y. 2017) ("Petitioners do not challenge the ultimate parole decision .... Rather, Petitioners allege that Respondents have violated and continue to violate the ICE Directive that they claim to be following." Id. at

384–85.); R.F.M. v. Nielsen, 365 F. Supp. 3d 350, 360, 373 (S.D.N.Y. 2019) ("[W]hile the defendants point out that § 1252(a)(2)(B)(ii) bars review of discretionary decisions made under § 1155, the plaintiffs challenge this policy as falling outside the bounds of the agency's discretion." Id. at 373.); Doe 1 v. Nielsen, 357 F. Supp. 3d 972, 995 (N.D. Cal. 2018) ("Plaintiffs request this Court to determine whether DHS complied with its mandatory duties under the Lautenberg Amendment and applicable regulations."). Consistent with Doe v. Noem, because the statute does not prohibit the Secretary from proceeding categorically in terminating parole,[3] the categorical nature of the terminations at issue here does not give rise to a justiciable claim that the Secretary exceeded her authority.

**\*10** Accordingly, the Court will dismiss for lack of jurisdiction Plaintiffs' fourth through sixth claims for relief, which allege that the parole termination improperly proceeded on a categorical basis, [ECF No. 1 ¶¶ 78–96].

ii. Whether parole termination is reviewable for compliance with statutory and regulatory requirements

Plaintiffs next argue that the Court can review the terminations to determine whether, prior to terminating parole, the Secretary concluded, as she was required to by statute and regulation, that the purposes of the impacted recipients' parole had been served. E.g., [ECF No. 42-1 at 9]. Defendants assert that there was no statutory or regulatory limit on the Secretary's ability to terminate parole because the determination of whether parole's purpose had been served was committed to her discretion. [ECF No. 46 at 5–6]. Contrary to Defendants' position, the Court finds that both the statute and the agency's own regulations impose justiciable limits on the Secretary's power to terminate parole.

The statute mandates a conditional relationship such that when the purposes of parole, "in the opinion of the Secretary of Homeland Security, have been served," the parole terminates. 8 U.S.C. § 1182(d)(5)(A). In other words, parole terminates only if the condition precedent has been satisfied. This is different from Defendants' construction, which assumes that if parole was terminated, the Secretary must have concluded that its purposes had been served. See [ECF No. 46 at 9 (arguing that "the determination that the purposes of parole have been served is implicit in the discretionary and unreviewable decision to terminate")]. In practice, Defendants' formulation could allow parole to be terminated without a prior determination that its purposes had been served, which would constitute agency action inconsistent with the discretion granted to it by Congress. The Court may thus review the challenged action to determine whether it presents such a circumstance.

Similarly, the Court has jurisdiction to consider whether DHS followed its own regulations, as required by United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954). Even where 8 U.S.C. § 1252(a)(2)(B)(ii) "explicitly preclude[s] judicial review," Castaneira v. Noem, 138 F.4th 540, 548–49 (D.C. Cir. 2025), courts retain jurisdiction to review "challenges to the agency's departure from its own precedent [or regulation]," id. at 548. See Manguriu v. Lynch, 794 F.3d 119, 122 (1st Cir. 2015) ("It is an abecedarian principle of administrative law that agencies must comply with their own regulations." (citing Fort Stewart Sch. v. Fed. Lab. Rels. Auth., 495 U.S. 641, 654 (1990))); cf. Doe v. Noem, No. 25-cv-10495, 2026 WL 184883, at \*7 (D. Mass. Jan 25, 2026) (concluding, more broadly, that courts may hear "challenges to the procedures employed by the Secretary to reach such determinations" even where the determinations themselves are unreviewable).

### 3. Merits

i. Statutory and regulatory requirements

As explained above, the Court has jurisdiction to consider whether the parole terminations followed statutory and regulatory requirements. Having already explained that the statute requires the Secretary to determine that parole's purposes have been served before terminating it, the Court will briefly review the regulatory requirements set forth in 8 C.F.R. § 212.5(e)(2)(i), which govern the revocation of parole.

**\*11** Plaintiffs contend that § 212.5(e)(2)(i) requires (1) "case-by-case determinations" that "identify [the] individual recipient by name, ... provide [a] basis for the termination specific to [the] recipient, and ... consider [the] individual recipient's reliance interests in their lawful status to remain in the United States," and (2) approval of parole terminations by an authorized official, communicated in a writing that includes the official's name. [ECF No. 1 ¶¶ 75–77].

Defendants maintain that the regulations (1) require nothing more than a "written notice ... advis[ing] the alien that his/

her parole is being terminated," and (2) do not require a written record of a decision that the purposes of parole had been served. [ECF No. 46 at 9]. The Court agrees with Defendants that the regulations do not require case-by-case terminations or consideration of reliance interests, but agrees with Plaintiffs that the regulations require parole terminations to be supported by some record of a decision by an authorized official that the purposes of parole have been served.

The First Circuit has concluded that the Secretary may proceed on a categorical basis when terminating parole pursuant to his or her authority under 8 U.S.C. § 1182(d)(5)(A). Doe v. Noem, 152 F.4th at 286–87. The regulation, using substantially the same language as the statute, provides that parole may be terminated either "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [an authorized official], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i). Also like the statute, the regulation provides that parole must be granted on a case-by-case basis but does not impose similar limiting language on the termination of parole. Compare 8 C.F.R. § 212.5(b)–(c), with id. § 212.5(e). Thus, the same logic that underlies the First Circuit's interpretation of 8 U.S.C. § 1182(d)(5)(A) requires the conclusion that the regulations (like the statute they implement) permit the agency to proceed on a categorical basis in terminating parole. See Doe v. Noem, 152 F.4th at 286–87. Further, the Court is unable to locate textual support for Plaintiffs' contention that the determinations must be based on individual-specific reasons or consideration of individual-specific reliance interests. The regulations do not specify how an official should form his or her "opinion ... [that] neither humanitarian reasons nor public benefit warrants [parole]," 8 C.F.R. § 212.5(e)(2)(i), and apart from "humanitarian reasons" and "public benefit," they do not identify any other factors that need be considered, see 8 C.F.R. § 212.5(e).

Still, the regulations do not give the agency unfettered discretion to terminate parole. The regulations provide that parole may be terminated only "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [an authorized official] ... neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added). As explained above, the agency's decision to terminate parole does not, by itself, imply that an authorized official made the requisite antecedent finding

(here, that parole was no longer supported by humanitarian reasons or public benefit).

### ii. Whether the revocations were lawful

Here, although by statute and by regulation, the agency must conclude that parole's humanitarian or public-benefit purposes have been served before revoking it, the Termination Notices reference DHS's "discretion" but do not indicate that the purpose of parole was accomplished or that an authorized official ever made any decision to that effect. See [ECF No. 40-1 at 143]; [ECF No. 1 ¶ 38].[4] Plaintiffs contend such a decision was never made. [ECF No. 1 ¶¶ 75–76]; [ECF No. 32-1 at 18–19]. The only evidence in the record that Defendants identify as contradicting Plaintiffs' contention is a memorandum by Acting Secretary Benjamine Huffman, which instructs DHS components to, for "any alien who [was not amenable to expedited removal] but ha[d] been granted parole ... [,] review the alien's parole status to determine ... whether parole remains appropriate in light of any changed legal or factual circumstances." [ECF No. 40-1 at 5]; [ECF No. 32-3 at 5]; [ECF No. 40 at 17–18]. That memorandum, however, simply instructs officials to "review" noncitizens' parole statuses but does not draw or reflect any conclusions about the result of the review or if the review even took place. See [ECF No. 40-1 at 4–5]; [ECF No. 32-3 at 4–5]. Accordingly, the parole terminations exceeded the agency's statutory authority and contradicted the procedures set forth in its own regulations.

**\*12** Although Defendants are correct that section 701(a)(2) of the APA excludes actions that are "committed to agency discretion by law" from judicial review, [ECF No. 40 at 11 (quoting 5 U.S.C. § 701(a)(2))]; see Webster v. Doe, 486 U.S. 592, 600 (1988) (discussing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971), and Heckler v. Chaney, 470 U.S. 821 (1985)), that section applies only where a statute is "drawn in such broad terms that in a given case there is no law to apply," Overton Park, 401 U.S. at 410 (quoting S. Rep. No. 79-752, at 26 (1945)). Here, the decision committed to agency discretion is the determination that the purposes of parole have been served. This determination would be shielded from judicial review. The termination of parole, however, is not a matter of agency discretion but rather an event that follows automatically from the decision that parole is no longer warranted. Thus, although the court may not review the antecedent decision, it may review the termination of parole to determine whether, as

Case 1:25-cv-10495-JT    Document 295-1    Filed 04/08/26    Page 11 of 12
SILEIRI DOE, on behalf of herself and all others similarly..., Slip Copy (2026)
2026 WL 880442

required by statute, it followed a decision by the Secretary that the purposes of parole had been served. Similarly, the Court can "enforc[e] the agency's duty to comply with its own legislative rules" through the APA. Thomas W. Merrill, The Accardi Principle, 74 Geo. Wash. L. Rev. 569, 612 (2006); see Mia. Nation of Indians of Ind., Inc. v. U.S. Dep't of the Interior, 255 F.3d 342, 348 (7th Cir. 2001); Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020) (collecting sources).

When Defendants terminated the impacted noncitizens' parole without observing the process mandated by statute and by their own regulations, they took action that was "not in accordance with law." 5 U.S.C. § 706(2)(A). Accordingly, the Court must "hold [the terminations] unlawful and set [them] aside." Id. § 706(2).

## V. CONCLUSION

Leave to file pseudonymously, [ECF No. 4], is **GRANTED**. Plaintiffs' motion for class certification, [ECF No. 5], is **GRANTED IN PART** and **DENIED IN PART**. The Court certifies the following class:

> All individuals who (i) scheduled their appointments for entry to the United States using the CBP One app; (ii) were paroled into the United States between May 16, 2023 and January 19, 2025; (iii) had their parole terminated in April 2025 pursuant to an email substantially similar to the one reproduced at paragraph 38 of the Complaint without any further explanation; and (iv) remain in the United States.

The Court appoints Sileiri Doe, Meryem Doe, and Olivia Doe as representatives of the class and Democracy Forward Foundation and Massachusetts Law Reform Institute as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

Defendants' consolidated motion to dismiss and cross-motion for summary judgment, [ECF No. 39], is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiffs' motion for summary judgment, [ECF No. 32], is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' fourth, fifth, and sixth claims are dismissed for lack of subject-matter jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii). Summary judgment is hereby entered for Plaintiffs on their first through third claims. The terminations of class members' parole statuses announced by the April 2025 Termination Email are **VACATED** pursuant to 5 U.S.C. § 706. Defendants are ordered to return class members to the parole status that they held prior to the April 2025 Termination Email. The motion for hearing is **DENIED AS MOOT** as the Court was able to resolve this matter on the parties' filings.

**SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 880442

---

## Footnotes

1    The motion for hearing, [ECF No. 47], is **DENIED AS MOOT**, as the Court is resolving this matter on the parties' filings.

2    Plaintiffs have also identified specific fears of retaliation by third parties if their identities are publicized. See [ECF No. 4-1 at 4–5].

3    As discussed further infra, nor do the applicable regulations.

4    ECF No. 40-1 is the certified administrative record, which was filed manually with the Court. For accessibility, where it cites to the certified administrative record, the Court will also cite to other filings that reproduce the relevant language.

2026 WL 880442

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.