**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SVITLANA DOE, et al.,<br><br>               Plaintiffs,<br><br>      *v.*<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, et al.,<br><br>               Defendants. | Civil Action No.: 1:25-cv-10495-IT |

**<u>PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR AN ORDER TO SHOW
CAUSE (Doc. No. 283)</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................3

ARGUMENT..............................................................................................................................7

I.      The Administrative Record Is Not Complete. ...................................................................7

          A.      Defendants compiled the AR using the wrong standard. ......................................7

          B.      Defendants are withholding a document the decisionmakers directly relied on based on an inapplicable privilege....................................................................9

II.     Defendants' Conduct Has Harmed Plaintiffs and the Court.............................................13

CONCLUSION.........................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Gov't Emps. v. U.S. Dep't of Health & Hum. Servs.*,
    63 F. Supp. 2d 104 (D. Mass. 1999) ...................................................................................11

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)...........................................................................................7, 8, 9, 17

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001).................................................................................................................10

*Exxon Mobil Corp. v. Mnuchin*,
    No. 17-cv-1930, 2018 WL 10396585 (N.D. Tex. June 26, 2018) ...........................................13

*In re Franklin Nat'l Bank Sec. Litig.*,
    478 F. Supp. 577 (E.D.N.Y. 1979) ......................................................................................11

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) .............................................................................................10

*Kiakombua v. McAleenan*,
    No. 19-cv-1872 (KBJ), 2019 WL 4051021 (D.D.C. Aug. 27, 2019) .......................................9

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) .........................................................................................9, 10

*Nat'l TPS All. v. Noem*,
    No. 25-cv-05687-TLT (SK), 2025 WL 2419266 (N.D. Cal. Aug. 21, 2025).........................13

*Roe v. Mayorkas*,
    No. 22-cv-10808-ADB, Doc. No. 85 (D. Mass. June 27, 2023).............................................16

*Sierra Club v. U.S. Army Corps of Engineers*,
    No. 2:20-cv-00396-LEW, 2022 WL 2953075 (D. Me. July 26, 2022) ...................................13

*State of N.Y. v. McMahon*,
    2026 WL 622484 (D. Mass. Feb. 11, 2026) ...............................................................7, 11, 17

*Texaco P.R., Inc. v. Dep't of Consumer Affs.*,
    60 F.3d 867 (1st Cir. 1995)............................................................................................10, 11

*United States v. Reynolds*,
    345 U.S. 1 (1953)................................................................................................................10

**Statutes**

31 U.S.C. § 702 .................................................................................................................10

31 U.S.C. § 720 .................................................................................................................13

**Other Authorities**

90 Fed. Reg. at 58041 ...............................................................................1, 4, 5, 12

GAO, *GAO's Agency Protocols, GAO-05-35G* (Oct. 21, 2004) ......................................13

GAO, *Humanitarian Parole: DHS Identified Fraud Risks in Parole Processes for Noncitizens and Should Assess Lessons Learned* (Dec. 11, 2025) ........................3, 4, 5, 11, 12

## INTRODUCTION

Meaningful judicial review under the APA depends on a complete and reliable administrative record ("AR"). As this Court has recognized, the AR in this case falls short on both counts. Doc. No. 288 at 5-9. Defendants' supplemental filing (Doc. No. 294), filed in response to the Court's order to substantiate the corrected record, confirms that the motion to show cause should be granted: it confirms the lack of integrity and unreliability of the administrative record compilation and raises more questions than it answers—most critically about what materials beyond the five belatedly produced documents were directly or indirectly considered as part of the decision making process and should be in the administrative record but have been withheld.

On substance, Defendants now admit that the FRN misrepresented its sources. The FRN attributed one conclusion to "a recent internal audit" and another to "the same internal audit." 90 Fed. Reg. at 58041. But neither conclusion came from an "internal audit." One came from a USCIS data review so preliminary that its authors titled it a "Brief Analysis" and acknowledged they lacked the data to complete it. FRP-FRN-01575, -01579, -01581. The other, by Defendants' own account, came from the Government Accountability Office (GAO)—which conducts audits for Congress, not "internal audits" for DHS; Defendants have withheld what they characterize as "GAO's draft report" in its entirety, invoking a privilege that belongs to GAO, not to them, and that, in any event, protects only deliberations within the executive branch, not a legislative branch audit thereof. Four of the five documents Defendants placed in the "corrected" record are not what the unnamed (and inexplicably plural) "decisionmakers" actually relied on; those documents are, instead, a subset of the information that USCIS gave GAO for the "draft report." *See* Doc. No. 293 ¶¶ 6-10.

On process, Defendants now claim that the AR was compiled based on what the FRP FRN "directly cited." This is a standard far narrower than the "directly or indirectly *considered*"

1

standard their certification claimed, Doc. No. 246-1 ¶ 2 (emphasis added), or that the law requires in compiling an administrative record. Defendants' submission indicates that Defendants selectively applied the broader standard merely to backfill a specific gap Plaintiffs and this Court identified. *See* Doc. No. 293 ¶¶ 6-8; Doc. No. 294 at 6.

On timing, Defendants should have known the AR was incomplete long before they claim they began investigating. The December 15, 2025 FRN's central fraud rationale cited a document that was not in the record Defendants certified as complete on January 13. Plaintiffs flagged the centrality of that "internal audit" to the fraud rationale in their December 29 brief. Doc. No. 218 at 7. The Court asked about fraud evidence at the January 9 hearing. Tr. of Jan. 9, 2026 Hr'g (Doc. No. 244) at 56:6-9. The Stiefel Declaration itself reveals that Defendants discovered at least one omission on or around January 16. Doc. No. 293 ¶ 11. Yet Defendants say they did not begin investigating until January 20, *id.* ¶ 7, and their sole explanation for not "correcting" the AR until six weeks later is that they needed to review those 156 (mostly duplicative) pages for privilege. Doc. No. 293 ¶ 12.

In short, Defendants compiled the AR under the wrong standard, certified it as complete under a different standard, withheld at least one document the decisionmakers directly relied on, and their submission strongly suggests more materials that should have been disclosed have been withheld. They then took six weeks to partially correct the problem. When they finally acted, they filed without seeking leave of court and over Plaintiffs' express objection—all while knowingly remaining out of compliance with this Court's production order, Doc. No. 242, and saying nothing to the Court. The result has been months of unnecessary litigation imposed on both. Critical questions raised by this Court and deepened by Defendants' own submissions remain unanswered.

The relief Plaintiffs seek is straightforward: production of the withheld document, recompilation of the administrative record under the correct legal standard, and a privilege log for any other documents withheld on claims of privilege.

**BACKGROUND[1]**

On March 25, 2026, the Court denied Defendants' motion for reconsideration without prejudice, finding that Plaintiffs' "objections and concerns as to the compilation of the Administrative Record warrant further review." Doc. No. 288 at 6. The Court ordered Defendants to file a supplemental opposition and supporting declaration(s). *Id.* at 9.

1. *Substance*: The Stiefel Declaration reveals that the decisionmakers who terminated the FRP programs did not review the FDNS report or other documents in the "corrected" AR. Instead, they relied on what he characterizes as a "draft GAO report."[2] Doc. No. 293 ¶¶ 6-10. That document, in turn, drew from an undisclosed subset of documents that included the FDNS report and three procedural guidance documents. *Id.* ¶ 10. Defendants have withheld the GAO document actually relied upon in its entirety. Doc. No. 294 at 6; Doc. No. 293 ¶ 8. In doing so, Defendants invoke what they describe as "GAO's privilege over its draft report." Doc. No. 294 at 12; *see also id.* at 6 ("it is a draft GAO Report"); *accord* Doc. No. 293 ¶ 8 ("the draft GAO report").

---

[1] Plaintiffs incorporate by reference the procedural history and description of the corrected administrative record set forth in their opposition to Defendants' motion for reconsideration. Doc. No. 286 at 2-6.

[2] GAO is an independent entity within the legislative branch that conducts audits and investigations on behalf of Congress. The final version of this report was published on December 11, 2025. *See* GAO, *Humanitarian Parole: DHS Identified Fraud Risks in Parole Processes for Noncitizens and Should Assess Lessons Learned* (Dec. 11, 2025), *available at* gao.gov/products/gao-26-107433 (hereinafter, "Final GAO Rep.").

Four of the five documents now in the "corrected" AR are what USCIS apparently sent to GAO—again, not what the decisionmakers reviewed.[3] The final GAO report confirms the pass-through nature of the arrangement: its discussion of the deceased-petitioner findings cites the FDNS report as the only source. Final GAO Rep. at 38; *see also* Doc. No. 244 at 56:6-9 (discussing the same GAO report). Importantly, GAO did not validate or endorse the FDNS's findings: in its final report, GAO attributes the information it relays entirely to FDNS, reporting what "FDNS found," what "FDNS officials said," and what "FDNS officials told us." *Id.* And consistent with the generally accepted government auditing standards under which GAO conducted its review, *see id.* at 5, the Final GAO Report includes an explanatory caveat that the FRP FRN and FDNS report both omit: "FDNS officials told us there may be reasons other than fraudulent activity why someone might apply under a deceased petitioner's name." *Id.* at 38 ("For example, if the original petitioner passed away, a family member may have filed under their name because the visa applicant still wanted to come to the U.S. and the family member did not realize they were not permitted to file the application.").

The Secretary's FRP FRN stripped the hedging, dropped the attribution, omitted the caveats, and presented the result as the finding of "a recent internal audit," 90 Fed. Reg. at 58041, while treating as established fact what the underlying (but unexamined) data could not support. *See* Doc. No. 286 at 10-11. In other words, the DHS decisionmakers relied on a (i) draft version of (ii) a legislative branch entity's (iii) hedged  (iv) summary of (v) USCIS's own characterization of the FDNS report (vi) without directly considering the FDNS report itself, Doc. No. 293 ¶¶ 7-8,

---

[3] The fifth document is a single page of "legacy" FRP response-rate data—Tab 4 of a larger spreadsheet, the other tabs of which were already in the original AR. Doc. No. 293 ¶ 11. Defendants say they discovered this omission on or around January 16, when Plaintiffs requested the native Excel files and USCIS found that Tab 4 had been "inadvertently excluded." *Id.*

not an "internal audit." Meanwhile, the specific conclusion the FRP FRN attributed to "the same internal audit"—that "the vetting standards applied to co-supporters under the modernized FRP programs were even weaker than those for primary supporters," 90 Fed. Reg. at 58041—appears in neither the FDNS report nor the final GAO report. Defendants attest that "DHS also relied on the draft GAO report" for that statement, Doc. No. 293 ¶ 10; *accord* Doc. No. 294 at 12-13 (same), which reflects either that the draft GAO report did not include language about co-supporters or the GAO removed such language about co-supporters before publishing its final report four days before the FRP FRN was published.

Defendants have chosen to withhold the GAO document on the ground that it is "a draft, predecisional, deliberative report" that is "protected by the deliberative process privilege." Doc. No. 294 at 6; Doc. No. 293 ¶¶ 7-8. The Stiefel Declaration states that the report was "written by the U.S. Government Accountability Office," Doc. No. 293 ¶ 7, and that USCIS provided the FDNS report and procedural guides to GAO "for purposes of its report." *Id.* ¶¶ 8-10. GAO is not a party to this litigation and has not asserted any privilege. Defendants have not produced a declaration from anyone entitled to invoke the purported privilege. Nor have Defendants provided a privilege log reflecting this document, USCIS' communications with GAO, or other documents, if any, they are still withholding, or the basis for withholding them.

2. *Process*: The AR was compiled by USCIS's Office of Policy and Strategy ("OP&S")— "the lead office for the development, clearance, and publication of the FRP FRN." Doc. No. 294 at 5-6; Doc. No. 293 ¶ 2.[4] Defendants report that OP&S compiled the record using only material

---

[4] More generally, OP&S is responsible for aligning USCIS with the policy goals of its politically appointed leadership. Doc. No. 293 ¶ 3 ("OP&S leads the development, coordination, and governance of immigration policy and the regulatory development process for USCIS to ensure compliance with leadership's policy goals.").

"directly cited" in the FRN. Doc. No. 293 ¶ 7; Doc. No. 294 at 6; *but see* Doc. No. 246-1 ¶ 2 (certifying to the "directly or indirectly considered" standard). Despite OP&S's lead role in the development of the FRP FRN *and* the compilation of its AR, neither the original nor "corrected" AR was certified by anyone from OP&S. Both certifications came from the Deputy Executive Secretary, whose role is to "oversee[] the management of written communications intended for, and originated by, the Secretary and Deputy Secretary," Doc. No. 246-1 ¶ 1. The certifier attested "to the best of [her] knowledge, information, and belief," *id.* ¶ 2, which was undisclosed but apparently quite limited.

3. *Timing*: Defendants' sole explanation for their delay in correcting the AR and complying with this Court's order to produce it by January 13 is the need to "ensure that proper redactions were made and that privileged material was excluded from the record."[5] Doc. No. 293 ¶ 12; Doc. No. 294 at 15. Of the 156 new pages, 125 were two virtually identical versions (one from October 2023 and the other December 2024) of the Form I-134A Reviewer's Guide; and Defendants had already produced the December 2024 version of that Guide (as well as the nearly identical July 2024 version) unredacted in the CHNV administrative record (CHNV-FRN-00642–00767), certified months earlier by the same official. The Stiefel Declaration says nothing about how long Defendants' re-review of these 156 mostly duplicative pages actually took or when it was begun or completed.

---

[5] Defendants assert they "had [no] occasion to directly respond" to the missing-audit issue at the TRO hearing or in their oppositions. Doc. No. 294 at 5 n.2. Even setting aside the obligation to ensure the representations made to the Court have a factual basis, this issue was a notable topic of questioning at the January 9 hearing, in which Plaintiffs' counsel specifically referenced the GAO report Defendants now claim was considered but inadvertently omitted. *See* Doc. No. 244 at 55:12-20.

6

**ARGUMENT**

**I.      The Administrative Record Is Not Complete.**

Defendants' revelations establish that the Administrative Record is incomplete for at least two reasons: Defendants have applied an erroneous standard to compile the AR; and they have withheld from it at least one document (the "draft GAO report") on an unjustified claim of privilege.

A.      <u>Defendants compiled the AR using the wrong standard.</u>

Defendants compiled the AR under the wrong standard. The record must be comprised of "the full administrative record that was before the [decisionmakers] at the time [they] made [the] decision," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), meaning "all documents and materials directly or indirectly considered by the agency decision-makers." *State of N.Y. v. McMahon*, Nos. 25-10601-MJJ, 25-10677-MJJ, 2026 WL 622484, at *2 (D. Mass. Feb. 11, 2026). Yet the Stiefel Declaration confirms that the AR was compiled based on what the FRN "specifically cite[d] to": "The source document was overlooked during the initial compilation of the CAR because the FRN did not specifically cite to the source document." Doc. No. 293 ¶ 7. That is not the correct standard—and Defendants have never defended it as one. The gap between "directly *cited*" and "directly *or* indirectly *considered*" is significant: an agency may consider hundreds of documents in the course of rulemaking and cite only a handful. Worse, "directly cited" is not even the same as "directly considered"—and the significance of that distinction is evidenced by the failure to identify the withheld GAO report. Defendants now concede that the decisionmakers directly considered the withheld GAO document, Doc. No. 293 ¶¶ 7-8, yet it was excluded from the original AR because the FRP FRN did not cite it. If the compilation methodology missed the document Defendants themselves call central to the decision, there is no reason to believe it captured the rest.

Defendants did not respond to questions raised by Plaintiffs or the Court in December and January by recompiling the AR under the correct standard. They responded by trying to patch it under another. They added documents on the theory that they were "indirectly considered" through the withheld GAO document, Doc. No. 294 at 6, and left the rest of the AR untouched. Defendants attribute the original omission of those documents to OP&S assembling the AR based on what the FRN "directly cited." Doc. No. 294 at 6; Doc. No. 293 ¶ 7. Yet the AR itself contradicts that account, containing at least sixteen documents the FRN does not directly cite.[6] So the "corrected" AR is an amalgam of documents gathered under three incompatible and incorrect criteria: an "indirectly considered" theory for the five corrected-AR additions; a "directly cited" standard explaining the bulk of the original AR; and no articulated theory at all for the sixteen uncited documents that have been in the AR since January. That is not a methodology; it is litigation-driven improvisation. *Cf. Overton Park*, 401 U.S. at 419-20 (judicial review must be based on the "full administrative record" not "post hoc rationalizations"). And it gives the Court no reason to believe that the record is complete.

The compilation defects were obscured by a boilerplate certification that attested to a standard the compilation never applied. The sequence is clear from Defendants' own filings: OP&S

---

[6] The original AR contains sixteen documents totaling (226 pages) that the FRP FRN does not directly cite: DHS NEPA Memo for Categorical Excluded Actions, FRP-FRN-00589–00604; TECS Privacy Impact Assessment appendix update, FRP-FRN-00534–00587; OHSS Lawful Pathways and Processes Report, FRP-FRN-00618–00631; DHS System of Records Notices compilation, FRP-FRN-00605–00617; Orozco paper on future remittance flows, FRP-FRN-01397–01483; four Federal Register notices implementing parole and immigration fees under the One Big Beautiful Bill Act, FRP-FRN-00018–00020, -00186–00187, -00258–00260, -00479–00484; Proclamation 10817, FRP-FRN-00271–00273; CRS report on FY2024 EOIR caseloads, FRP-FRN-00663–00666; DHS notice on expedited removal, FRP-FRN-00161–00162; two State Department documents on the 1995 U.S.-Cuba migration framework, FRP-FRN-01217–01230; corresponding Executive Office of the President joint statement, FRP-FRN-01250; and a mostly redacted internal Decision Document, FRP-FRN-00017.

decided what to put in the AR, applied the wrong standard (or none at all) in doing so, and somehow passed the result to the Deputy Executive Secretary, who then certified the AR as complete under the correct legal standard. *See* Doc. No. 246-1 ¶¶ 1-2; Doc. No. 276-1 ¶ 1. No one in OP&S—the lead office for the FRN *and* the AR, with actual knowledge of what was considered—certified either the original or the corrected AR. *Cf. Kiakombua v. McAleenan*, No.19-cv-1872 (KBJ), 2019 WL 4051021, at *2 (D.D.C. Aug. 27, 2019) (Jackson, J.) (finding certification adequate where certifier was the Deputy Chief of the division that issued the challenged action and had held that position at the time the decision was made). Defendants have thus far offered the Court certifications that vouch for everything yet verify nothing.

To be clear: Plaintiffs do not seek to bind Defendants to the original, incomplete record. The problem is not that Defendants added documents—it is that they did so selectively, to suit their litigation goals. *Cf. Overton Park*, 401 U.S. at 419-20. The AR—even as "corrected"—has not been compiled under the correct standard, as Defendants have only reluctantly revealed. Until Defendants apply the correct standard to the entire record, the Court cannot have confidence that it is reviewing the full administrative record, as the law requires.

B.    <u>Defendants are withholding a document the decisionmakers directly relied on based on an inapplicable privilege.</u>

Defendants acknowledge that a critical document directly relied upon by the decisionmakers was withheld from the Administrative Record. In so doing, they argue that the "draft GAO report" is properly excluded from the Administrative Record because it is protected by the "deliberative process privilege." Doc. No. 294 at 6-7, 11-13. This argument fails for several reasons.

First, the deliberative process privilege protects the internal deliberative process of *executive* branch agencies. *See Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242,

9

256-58 (D.C. Cir. 1977). GAO is neither an executive branch agency, nor is it internal to DHS: it is a non-partisan entity that reports to Congress and is statutorily defined as "independent of executive departments." 31 U.S.C. § 702. The withheld GAO report would not reveal any internal deliberative processes of executive branch agencies; to the contrary, all the information at issue was exchanged between DHS and an entity outside the Executive branch. Communications between an executive branch agency and a legislative branch entity are not "intra-agency" deliberations. *See Texaco P.R., Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 884 (1st Cir. 1995); *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997). Defendants do not claim, and their declaration does not suggest, that the draft reveals anything about DHS's own internal policy deliberations; instead, Defendants say, it was "written by the [GAO]," Doc. No. 293 ¶ 7, and they claim to invoke "GAO's privilege over its draft report." Doc. No. 294 at 12.

Second, Defendants lack standing to assert privilege on behalf of GAO. A government privilege must be formally asserted by the head of the department with control over the matter. *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953). DHS is not the GAO, and GAO has asserted nothing. *See also Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001) (communications from outside entities fall outside the "intra-agency" threshold for the deliberative process privilege).

Third, even assuming the privilege could apply to an inter-branch communication—and even assuming DHS has standing to assert it on GAO's behalf—the withheld GAO report still would not qualify under this Circuit's binding precedent, which Defendants ignore. To qualify for the deliberative privilege, Defendants would have the burden of proving (with evidence) that the withheld GAO report was "pre-decisional" ("precedes in time the decision to which it was applied") and "deliberative" ("constitutes a statement of opinion regarding final policy rather than

10

a description of the ultimate policy itself."). *McMahon*, 2026 WL 622484, at *4. Moreover, even where the privilege applies to portions of a document, it does not protect factual information therein. *See Texaco P.R.*, 60 F.3d at 885; *accord Am. Fed'n of Gov't Emps. v. U.S. Dep't of Health & Hum. Servs.*, 63 F. Supp. 2d 104, 109 (D. Mass. 1999). And contrary to Defendants' assertion that deliberative documents are automatically excluded from the administrative record, *see* Doc. No. 294 at 10-11, the privilege is not automatic in this Circuit and is instead subject to a balancing test. Thereunder, courts exercise their discretion and consider numerous factors to balance the competing interests regarding disclosure, like "the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." *Texaco P.R.*, 60 F.3d at 885; *accord McMahon*, 2026 WL 622484, at *4-5 (applying the balancing test and rejecting privilege claim); *see also In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979) (other factors include "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." (internal quotation marks and citations omitted)).

Each of these factors compels disclosure in this case. For starters, the evidence is not only relevant, it is the sole source for key contentions in the FRP FRN. To summarize Defendants' description: as part of GAO's audit, USCIS provided information that someone drew on in writing the withheld document. Only after this Court granted preliminary relief did USCIS go back and identify what it now claims were the source documents for the FRN's two fraud assertions: one regarding deceased petitioners, the other regarding co-supporter vetting. *See* Doc. No. 293 ¶¶ 8-10. In its final report published December 11, 2025, GAO reported *some* of what USCIS told it—

in hedged, attributed terms—but nothing about co-supporters. Final GAO Rep. at 38. Whatever USCIS told GAO about co-supporter vetting, *see* Doc. No. 293 ¶ 10, GAO apparently cut it. Notwithstanding this, four days after the Final GAO Report was published, Defendants now claim that Secretary Noem relied on the "draft GAO report" to justify both her co-supporter vetting conclusion and her assertions about deceased petitioner fraud, 90 Fed. Reg. at 58041, without directly considering the FDNS report or the process guides that Defendants assert are the source of whatever the withheld document says. Defendants initially omitted the FDNS report itself—with its acknowledged data gaps, incomplete manual review, and significant methodological limitations—from the AR because it was not "directly cited" in the FRP FRN (as discussed more in the next subsection), and have been withholding the draft GAO report all along on an unstated privilege claim.

Now that this sleight of hand has come to light, every consideration relevant to the privilege determination favors disclosure. The withheld GAO report is the sole document the decisionmakers are said to have relied on for the FRN's fraud rationale. Doc. No. 293 ¶¶ 7-8; Doc. No. 294 at 6, 11. No other evidence in the record can substitute for it. The litigation involves the status of thousands of future U.S. citizens and LPRs who the United States government invited to come on parole for the last few years before their visa is available, and this Court has already held they are likely to succeed on the merits and face irreparable injury. Doc. No. 288 at 8-9. And the "future timidity" rationale has no purchase here—the deliberations at issue (if any) are GAO's, the final report is public, and the underlying data originated with Defendants. Moreover, GAO's own protocols require it to share draft reports with audited agencies for comment as a standard part of the audit process, such that if this Court directed disclosure of the draft to this Court, it would not

12

chill a practice that is mandatory.[7] Accepting Defendants' privilege claim would leave this Court unable to review the one document that connects the FRN's fraud rationale to its purported evidentiary basis—which is precisely what APA review requires.

* * * * *

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to: (1) produce all documents the decisionmakers directly considered, including the "draft GAO report"; (2) recompile of the AR consistent with the correct standard; and (3) produce a privilege log of all documents withheld in whole or in part on claims of privilege.[8]

## II.    Defendants' Conduct Has Harmed Plaintiffs and the Court.

Defendants assert that their handling of the administrative record "offered no possible benefit to Defendants and caused no possible harm to Plaintiffs." Doc. No. 294 at 13. Both claims are demonstrably false. The benefit is visible in Defendants' own filings. After Plaintiffs identified the gap in the record, USCIS "investigated," traced the evidentiary gap to a withheld GAO document, and then "identified the documents containing th[e] underlying information" that

---

[7] *See* GAO, *GAO's Agency Protocols, GAO-05-35G* (Oct. 21, 2004) at 5 (Highlights), 18 (Agency Comments), *available at* www.gao.gov/products/gao-05-35g; *see also* 31 U.S.C. § 720 (requiring agency responses to GAO recommendations).

[8] Defendants cite no controlling authority for their position that no privilege log is required, Doc. No. 294, and their position cannot survive their own concession that the certified AR was incomplete and their overbroad assertion of privilege. *See Sierra Club v. U.S. Army Corps of Eng'rs*, No. 2:20-cv-00396-LEW, 2022 WL 2953075, at *4, *8 (D. Me. July 26, 2022) (ordering defendants to produce privilege logs "describing any deliberative process materials (or any other allegedly privileged information) withheld from their certified administrative records."); *Nat'l TPS All. v. Noem*, No. 25-cv-05687-TLT (SK), 2025 WL 2419266, at *4 (N.D. Cal. Aug. 21, 2025) (ordering federal government to produce documents currently withheld based on deliberative due process and an accompanying privilege log); *see also Exxon Mobil Corp. v. Mnuchin*, No. 3:17-CV-1930-B, 2018 WL 10396585, at *4 (N.D. Tex. June 26, 2018) (rejecting a blanket invocation of deliberative process privilege and holding that "[w]ithout a [privilege] log, Plaintiffs would have no way of knowing what materials were withheld, whether they are relevant, or whether they contain information available from another source.").

USCIS had provided to GAO. Doc. No. 293 ¶¶ 7-8. Defendants then filed this partially and selectively reverse-engineered record on the same day they moved to reconsider this Court's preliminary injunction, which centrally relied on the corrected AR to justify reconsideration. Doc. No. 278. The harm to Plaintiffs is equally concrete: three additional rounds of briefing on the AR's completeness on a problem of Defendants' own making, at a time when Plaintiffs are addressing Defendants' other unlawful actions in parallel. *See, e.g.*, Pls.' Mot. for Prelim. Inj. of USCIS's Benefits Suspension (Doc. No. 264). And Defendants say nothing at all about the burden they have imposed on this Court.

This Court—like courts across this district—is managing an extraordinary volume of complex emergency litigation generated in no small part by Defendants themselves. *See* Tr. of Sept. 26, 2025 Status Videoconference (Doc. No. 186) at 24:18-20. This case alone involves multiple pending motions of considerable complexity filed by Plaintiffs and Defendants alike, each demanding careful judicial attention. Defendants' AR failures consume this Court's time that would otherwise be available for these and other matters—a cost Defendants do not even acknowledge, let alone justify, and one compounded by entirely avoidable delay. Defendants certified the AR as complete under penalty of perjury on January 13. Doc. No. 246-1 ¶ 2. By their own account, they knew within days that it was not.[9] Yet Defendants delayed until March 6 to act on that knowledge—without alerting the Court that they were not in compliance with its production order, Doc. No. 242—only filing the "corrected" record days before their appeal

---

[9] *See* Doc. No. 253 at 3-5 (noting that the "internal audit" the FRN twice referenced was "not in the AR" and that "nothing in the AR even corroborate[d] its existence or alleged findings"); Doc. No. 293 ¶ 7 (USCIS "investigated and determined that it had inadvertently excluded the material that formed the basis for the statement that the Plaintiffs' counsel referenced from the FRN" "[o]n or near January 20, 2026"); *id.* ¶ 11 (USCIS discovered the missing Tab 4 spreadsheet "[o]n or around January 16, 2025 [sic]" after Plaintiffs requested the native files).

14

deadline. Defendants then used that manufactured urgency to demand that this Court resolve their opposed motion by their appeal deadline. Doc. No. 288 at 1.

Defendants claim "the delay did not affect the progress of the litigation in any way" and that Plaintiffs suffered no prejudice because "the Court's preliminary injunction . . . has remained in place." Doc. No. 294 at 15; *see also id.* at 2, 16 (same). The preceding paragraph proves the first claim wrong. As to the second, it misunderstands the nature of the prejudice. The preliminary injunction protects class members from some of the FRN's immediate effects.[10] It does not compensate Plaintiffs for the cost of litigating on an incomplete record, nor does it relieve this Court of the burdens Defendants have needlessly imposed on it. And it does not cure the fundamental problem: the AR remains incomplete, and for more reasons than one. *See* § I, *supra*.

Nor can Defendants justify the delay itself, and they do not meaningfully try. Their sole explanation is that they needed time "to ensure that proper redactions were made and that privileged material was excluded from the record." Doc. No. 293 ¶ 12; Doc. No. 294 at 15. That explanation does not withstand the mildest of scrutiny. The task involved 156 pages, the majority of which required no redactions at all. Of those, 125 consisted of two nearly identical versions of the same I-134A Reviewer's Guide—a document Defendants had already produced unredacted in the CHNV administrative record, certified months earlier by the same official. *See* CHNV-FRN-00642–00767. A single reviewer could have completed the work in less than an afternoon. The Stiefel Declaration does not say when the redaction process began, when it ended, who performed it, or what Defendants were doing between January 20 and whenever the redaction

---

[10] But not all Plaintiffs. Plaintiffs Valentin Rosales Tabares and Haitian Bridge Alliance—who, contrary to Defendants' suggestion, were "existing named Plaintiffs in this case," Doc. No. 294 at 4—are injured by the FRP FRN but are not covered by the preliminary injunction.

work started. Doc. No. 293 ¶ 12. In short, Defendants ask this Court to accept a six-week delay on the strength of one conclusory sentence with a conspicuous absence of details.

Defendants' procedural defenses fare no better. They insist there is "nothing extraordinary" about filing a corrected AR by notice, citing *Roe v. Mayorkas*, No. 22-cv-10808-ADB, Doc. No. 85 (D. Mass. June 27, 2023). Doc. No. 294 at 5. But *Roe* illustrates the opposite of what Defendants claim. There, the corrected AR was filed twenty days after the original, before any merits ruling, and the plaintiffs immediately challenged it. The court ordered further completion of the record and required a privilege log. *See id.*, Doc. Nos. 90, 94, 142; *see also* note 8, *supra*. *Roe* thus confirms that AR composition is subject to judicial oversight, not agency fiat.

Defendants characterize Plaintiffs' motion as an "effort[ ] to block consideration of the administrative record" and an "attempt to bind Defendants to the initially-filed administrative record." Doc. No. 294 at 13, 9. Neither is accurate. Plaintiffs seek what they have sought from the outset: a complete and reliable record of everything DHS directly and indirectly considered, as the law requires. What Defendants have produced so far consists of documents chosen as citations in the FRN, plus a handful of other documents reverse-engineered to fill a hole that Plaintiffs and this Court identified months ago. Critical questions the Court identified in its March 25 Order remain unanswered or have been answered in ways that deepen rather than resolve the underlying concerns.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to: (1) produce all documents the decisionmakers directly considered, including the withheld document the decisionmakers directly relied on; (2) recompile the administrative record under the

16

correct legal standard; and (3) produce a privilege log of all documents withheld in whole or in part on claims of privilege.[11]

---

[11] Plaintiffs reserve the right to seek discovery into Defendants' AR compilation process, including depositions, should questions persist. *See Overton Park*, 401 U.S. at 420; *see also McMahon*, 2026 WL 622484, at *7-8 (ordering depositions where record compilation raised questions about the agency's decision making process). Plaintiffs also reserve their right to seek their attorneys' fees.

Dated: April 10, 2026

Respectfully submitted,

*/s/ Laura Flores-Perilla*

John A. Freedman (BBO#629778)
Laura Shores (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5316
john.freedman@arnoldporter.com
laura.shores@arnoldporter.com

Laura Flores-Perilla (*pro hac vice*)
Esther H. Sung (*pro hac vice*)
Karen C. Tumlin (*pro hac vice*)
Hillary Li (*pro hac vice*)
Brandon Galli-Graves (*pro hac vice*)
**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
laura.flores-perilla@justiceactioncenter.org
esther.sung@justiceactioncenter.org
karen.tumlin@justiceactioncenter.org
hillary.li@justiceactioncenter.org
brandon.galli-graves@justiceactioncenter.org

H. Tiffany Jang (BBO#691380)
**ARNOLD & PORTER KAYE SCHOLER LLP**
200 Clarendon Street, Fl. 53
Boston, MA 02116
Telephone: (617) 351-8053
tiffany.jang@arnoldporter.com

Daniel B. Asimow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3142
daniel.asimow@arnoldporter.com

Inyoung Hwang (*pro hac vice*)
Anwen Hughes (*pro hac vice*)
**Human Rights First**
121 W 36th Street
PMB 520
New York, NY 10018
Telephone: (212) 845-5200
HughesA@humanrightsfirst.org
HwangS@humanrightsfirst.org

Robert Stout (*pro hac vice*)
Sarah Elnahal (*pro hac vice*)
Javier Ortega Alvarez (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
rob.stout@arnoldporter.com
sarah.elnahal@arnoldporter.com
javier.ortega@arnoldporter.com

Justin B. Cox (*pro hac vice*)
**LAW OFFICE OF JUSTIN B. COX**
*JAC Cooperating Attorney*
PO Box 1106
Hood River, OR 97031
(541) 716-1818
justin@jcoxconsulting.org

*Attorneys for Plaintiffs*

18

**CERTIFICATE OF SERVICE**

I, Laura Flores-Perilla, hereby certify that this document filed through the ECF system will

be sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF).

Dated: April 10, 2026

*/s/ Laura Flores-Perilla*