**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| SVITLANA DOE, *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No.** |
| | ) | |
| v. | ) | **1:25-cv-10495-IT** |
| | ) | |
| MARKWAYNE MULLIN, in his official capacity as | ) | |
| Secretary of Homeland Security, et al.; | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>DECLARATION OF NATHANIEL STIEFEL</u>

I, Nathaniel I. Stiefel make the following declaration, as provided by Section 1746 of Title 28 of the United States Code. I am aware that this declaration will be filed in the above-captioned civil action with the United States District Court for the District of Massachusetts. I hereby certify:

1. I am the Deputy Chief for the Office of Policy and Strategy (OP&S), of U.S. Citizenship and Immigration Services (USCIS), a component agency within the U.S. Department of Homeland Security (DHS). I have held this position since May 2025. Since 2006, I have served in a variety of roles at USCIS, including my current role, which I also held prior to my appointment as the Deputy Ombudsman within the DHS Office of the Citizenship and Immigration Services Ombudsman. I also previously served as Deputy Chief of the USCIS Office of Citizenship.

2. OP&S was the lead office for development, clearance, and publication of the notices that announced creation of the Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans as well as the Federal Register notice (FRN) entitled "Termination of Family Reunification Parole Processes for Colombians, Cubans, Ecuadorians, Guatemalans, Haitians, Hondurans, and Salvadorans," 90 Fed. Reg. 58032 (Dec. 15, 2025) (hereafter referred to as the "termination of the FRP programs").

1

3. OP&S leads the development, coordination, and governance of immigration policy and the regulatory development process for USCIS to ensure compliance with leadership's policy goals.

4. The statements contained in this declaration are based upon my personal knowledge, information provided to me in my official capacity, and conclusions and determinations reached and made in accordance therewith.

5. On January 13, 2026, DHS produced and filed with this Court the Certified Administrative Record (CAR) for the FRN.

6. On March 6, 2026, DHS filed a corrected CAR with this Court for the FRN.

7. On April 3, 2026, DHS filed its Supplemental Opposition to Plaintiffs' Motion for an Order to Show Cause.

8. The April 3, 2026, filing included a declaration from me, wherein I explained why DHS had inadvertently omitted certain documents from the original CAR and why the documents should be included in the CAR correction.

9. The April 3, 2026, declaration stated that material that was referenced in the FRN was not included in the January 13, 2026 CAR, because that source material was a draft, pre-decisional, deliberative report on the USCIS special parole processes that was written by the U.S. Government Accountability Office (GAO).  Doc. No. 293 at ¶¶ 7-8.

10. The April 3, 2026 declaration, in paragraph 10, also stated that USCIS relied on the draft GAO report for the statement in the FRN that "the same internal audit concluded that the vetting standards applied to co-supporters under the modernized FRP programs were even weaker than those for primary supporters, further compromising program integrity." The same paragraph of the declaration explained that USCIS had provided GAO with information about security and vetting procedures for supporters in certain documents that were included in the corrected CAR.

11. The statement in paragraph 10 of the declaration was not entirely correct: the draft report on the USCIS special parole processes written by GAO did not include the conclusion that the vetting standards applied to co-supporters under the modernized FRP programs were even weaker than those for primary supporters. DHS thus did not rely on the draft GAO report for this statement in the FRP FRN. USCIS has not

2

identified any internal audit that includes this information about the vetting standards for co-supporters and has concluded that the FRN's attribution of this statement to an "internal audit" was in error.

12. However, the error is limited to the *source* of the information supporting the conclusion that vetting standards were weaker for co-supporters than for primary supporters, not to the FRN's substantive conclusion itself. The documents discussed in paragraph 10 of the declaration and filed with the corrected CAR on March 6, 2026 reflect that USCIS did in fact apply weaker vetting standards to co-supporters for the FRP programs than for primary supporters. DHS considered the USCIS Service Center Operations Directorate (SCOPS) Form I-134A Family Reunification Parole Process ELIS Guide—as well as the experience of Form I-134A reviewers for the Family Reunification Parole program—in reaching its conclusion about vetting standards for co-supporters. DHS also indirectly considered the USCIS Immigration Records and Identity Services Directorate (IRIS) Form I-134A – Reviewers Guides for the parole programs for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV) and Uniting for Ukraine (U4U) (Oct. 19, 2023 and Dec. 2, 2024 versions), as the agency was more broadly considering the deficiencies in vetting for parole programs that utilized the Form I-134A process.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 8th day of May, 2026, in Camp Springs, Maryland.

NATHANIEL I STIEFEL
Digitally signed by NATHANIEL I STIEFEL
Date: 2026.05.08 17:56:45 -04'00'

_____
Nathaniel I. Stiefel
Deputy Chief, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security